UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND



The Estates of YARON UNGAR and
EFRAT UNGAR by and through the
Administrator of their estates David
Strachman, DVIR UNGAR, minor,
by his guardians and next friend, YISHAI
UNGAR, minor, by his guardians
and next friend, PROFESSOR MEYER
UNGAR, JUDITH UNGAR, RABBI URI
DASBERG,  JUDITH DASBERG,
(individually and in their capacity as legal
guardians of plaintiffs Dvir Ungar and
Yishai Ungar); AMICHAI UNGAR,
DAFNA UNGAR and MICHAL COHEN


PLAINTIFFS,


vs.


THE PALESTINIAN AUTHORITY
(A.K.A. "THE PALESTINIAN  INTERIM
SELF-GOVERNMENT AUTHORITY"),
THE PALESTINE LIBERATION
ORGANIZATION, YASSER ARAFAT,  JIBRIL
RAJOUB,  MUHAMMED DAHLAN, AMIN
AL-HINDI, TAWFIK TIRAWI, RAZI JABALI,
HAMAS -- ISLAMIC RESISTANCE MOVEMENT
(A.K.A. "HARAKAT AL-MUQAWAMA
AL-ISLAMIYYA"), ABDEL RAHMAN ISMAIL ABDEL
RAHMAN GHANIMAT, JAMAL ABDEL FATAH
TZABICH AL HOR, RAED FAKHRI ABU HAMDIYA,
IBRAHIM GHANIMAT and IMAN MAHMUD HASSAN
FUAD KAFISHE

DEFENDANTS



## COMPLAINT

## INTRODUCTION

1.      This action is brought pursuant to federal counterterrorism statutes by the estates, survivors and heirs of Yaron Ungar, a United States citizen, and Efrat Ungar, who were murdered by machine-gun fire on June 9, 1996 near Beit Shemesh, Israel, for damages caused by defendants to plaintiffs by reason of acts of international terrorism, as defined in 18 U.S.C. 2331, and by reason of related tortious behavior.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter and over defendants pursuant to 18 U.S.C. Sec. 2333 and Sec. 2334 and the rules of supplemental jurisdiction.

3.      The district for Rhode Island is the proper venue pursuant to 18 U.S.C. Sec. 2334(a)  since this action is brought by and in the name of the administrator of the estates of Yaron and Efrat Ungar, who is domiciled in this District.

## THE PARTIES

4.      The Estate of Yaron Ungar and the Estate of Efrat Ungar are represented in this action by a court-appointed administrator, attorney David Strachman, a resident and domiciliary of the State of Rhode Island.

5.      Plaintiffs DVIR UNGAR and YISHAI UNGAR at all times relevant hereto are and were the minor children and heirs-at-law of Yaron Ungar and Efrat Ungar.

2

6.      Plaintiffs PROFESSOR MEYER UNGAR and JUDITH UNGAR at all times relevant hereto are and were the parents of Yaron Ungar, and the legal guardians of plaintiffs DVIR and YISHAI UNGAR, and bring this action both as legal guardians of plaintiffs DVIR and YISHAI UNGAR and in their individual capacity.

7.      Plaintiffs RABBI URI DASBERG and JUDITH DASBERG at all times relevant hereto are and were the parents of Efrat Ungar, and the legal guardians of plaintiffs DVIR and YISHAI UNGAR, and bring this action both as legal guardians of plaintiffs DVIR and YISHAI UNGAR and in their individual capacity.

8.      Plaintiffs AMICHAI UNGAR, DAFNA UNGAR and MICHAL COHEN at all times relevant hereto are and were siblings of Yaron Ungar.

9.      Defendant THE PALESTINIAN AUTHORITY, also known as THE PALESTINIAN INTERIM SELF- GOVERNMENT AUTHORITY, (hereinafter "PA") is and at all times relevant hereto was, a legal person as defined in 18 U.S.C. Sec. 2331(3), established by and existing under and by virtue of international instruments, customary international law and local law, in *de jure* and *de facto* control of territories in the Gaza Strip and in the West Bank.

10.     Defendant THE PALESTINE LIBERATION ORGANIZATION (hereinafter "PLO") is, and at all times relevant hereto was, a legal person as defined in 18 U.S.C. Sec. 2331(3), in *de jure* and *de facto* control of defendant PA, by virtue of being party to and beneficiary of the international instruments by which defendant PA was established.

11.     Defendant YASSER ARAFAT (hereinafter "ARAFAT") is, and at all times relevant hereto was, President of defendant PA and Chairman of defendant PLO,

3

and by virtue of these positions, in complete *de jure* and *de facto* control of defendant PA and defendant PLO and their various organs.

12.    Defendants    JIBRIL    RAJOUB    (hereinafter    "RAJOUB")    and MUHAMMED DAHLAN (hereinafter "DAHLAN"), at all times relevant hereto, operated, maintained, managed, supervised, commanded and controlled the Palestinian Preventive Security Services, an official law enforcement agency of defendant PA responsible for law enforcement, maintaining public order and prevention of violence and terrorism in the territories controlled by defendants PA, PLO and ARAFAT.

13.    Defendants AMIN AL-HINDI (hereinafter "AL-HINDI") and TAWFIK TIRAWI (hereinafter "TIRAWI"), at all times relevant hereto, operated, maintained, managed, supervised, commanded and controlled the Palestinian General Intelligence Services, an official law enforcement and intelligence agency of defendant PA responsible for law enforcement, maintaining public order and prevention of violence and terrorism in the territories controlled by defendants PA, PLO and ARAFAT.

14.    Defendant RAZI JABALI, (hereinafter "JABALI") at all times relevant hereto, operated, maintained, managed, supervised, commanded and controlled the Palestinian Police, an official law enforcement agency of defendant PA responsible for law enforcement, maintaining public order and prevention of violence and terrorism in the territories controlled by defendants PA, PLO and ARAFAT.

15.    Defendant HAMAS -- ISLAMIC RESISTANCE MOVEMENT, also known as "HARAKAT AL-MUQAWAMA AL-ISLAMIYYA", (hereinafter HAMAS), is a legal person as defined in 18 U.S.C. Sec. 2331(3), which is based in and operates from territories controlled by defendants PA, PLO and ARAFAT, and which is dedicated to

4

murdering Israeli and Jewish individuals through bombings, shootings and other violent means.

16.    Defendants ABDEL RAHMAN ISMAIL ABDEL RAHMAN GHANIMAT (hereinafter RAHMAN GHANIMAT), JAMAL ABDEL FATAH TZABICH AL HOR (hereinafter HOR), RAED FAKHRI ABU HAMDIYA (hereinafter ABU HAMDIYA), IBRAHIM GHANIMAT and IMAN MAHMUD HASSAN FUAD KAFISHE (hereinafter KAFISHE) are and at all times relevant hereto were, members, operatives and trained agents of defendant HAMAS.

## STATEMENT OF FACTS

17.    At all times relevant hereto, defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI were in *de jure* and *de facto* control of territories in the Gaza Strip and the West Bank.

18.    At all times relevant hereto, defendant HAMAS and its operatives and agents maintained and operated a leadership command, organizational hierarchy and operational infrastructure including, *inter alia*, training facilities and depots for storage of weapons and explosives in territories controlled by defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI.

19.    At all times relevant hereto defendants RAHMAN GHANIMAT, HOR, ABU HAMDIYA, IBRAHIM GHANIMAT, and KAFISHE were members of defendant HAMAS, and were collectively organized as a cell for the purpose of carrying out terrorist activities (hereinafter "the terrorist cell").

20.    The terrorist cell was subordinate to, and received instructions, weapons, money and material support from, commanders and leaders of defendant HAMAS who

5

operated from territories controlled by defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI.

21.     At an unknown date or dates prior to June 9, 1996, defendants HAMAS, RAHMAN GHANIMAT, HOR, ABU HAMDIYA, IBRAHIM GHANIMAT, and KAFISHE conspired, planned and made preparations to carry out a machine-gun attack on a random Israeli vehicle.

22.     On June 9, 1996, near Beit Shemesh in the State of Israel, defendants RAHMAN GHANIMAT and HOR acting on behalf of and as agents of defendant HAMAS and without provocation, opened fire from a moving vehicle with two Kalashnikov machine guns on a passenger car in which Yaron Ungar, Efrat Ungar and plaintiff YISHAI UNGAR were traveling (hereinafter: "the shooting attack"). Defendant ABU HAMDIYA drove the vehicle from which the shooting attack was carried out, on behalf of and as an agent of defendant HAMAS.

23.     Yaron Ungar and Efrat Ungar were struck and killed by bullets fired by defendants RAHMAN GHANIMAT and HOR in the shooting attack.

24.     On May 3, 1998, an Israeli court convicted defendant ABU HAMDIYA of membership in defendant HAMAS and of abetting the shooting murders of Yaron Ungar and Efrat Ungar. On October 21, 1998, an Israeli court convicted defendants RAHMAN GHANIMAT and HOR of membership in defendant HAMAS and of the shooting murders of Yaron Ungar and Efrat Ungar. On November 3, 1998, an Israeli court convicted defendant KAFISHE of membership in defendant HAMAS and of being an accessory to the shooting murders of Yaron Ungar and Efrat Ungar.

6

25.    Defendants' convictions estop them from denying the essential allegations of this complaint, pursuant to 18 U.S.C. section 2333(c).   Attached hereto, as Exhibit "A", are certified translations of the convictions of defendants ABU HAMDIYA, RAHMAN GHANIMAT, HOR and KAFISHE of the aforementioned crimes.

26.    Defendant IBRAHIM GHANIMAT is currently at large in the territory controlled by defendant PA.   An Israeli court has issued a warrant for his arrest on charges relating to the murder of Yaron and Efrat Ungar.   On September 17, 1997, the Israeli Justice Ministry submitted to defendant PA a request for his arrest and extradition to Israel. Defendant PA has refused to honor this request, and continues to shelter defendant IBRAHIM GHANIMAT.

FIRST CLAIM FOR RELIEF
AS AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS:
**INTERNATIONAL TERRORISM**

27.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

28.    Defendant PA is authorized and responsible, under international instruments, customary international law and local law applying in the West Bank and Gaza, to exercise law enforcement powers and to maintain public order and security in the territories under its control.

29.    At all times relevant hereto, defendants PA, PLO and ARAFAT operated, maintained, managed, supervised, and controlled various police forces, militias, paramilitary forces, intelligence services, law-enforcement personnel, jails and penal institutions, in the territories under their control.

30.    At all times relevant hereto, defendants RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI operated, maintained, managed, supervised, commanded and controlled various police, security and intelligence agencies on behalf and as agents of defendant PA, PLO and ARAFAT.

31.    During the period relevant hereto defendant HAMAS, operating from territories controlled by defendants PA, PLO and ARAFAT, advocated, encouraged, solicited, facilitated, incited for, sponsored, organized, planned and executed acts of violence and terrorism against civilians in Israel, Gaza and the West Bank.  During the period relevant hereto defendant HAMAS carried out scores of terrorist attacks, murdering hundreds of civilians and injuring hundreds more.

32.    Among the hundreds of civilians murdered and wounded by HAMAS terrorist attacks during the period relevant hereto were over a dozen United States citizens. Prior to the murder of American citizen Yaron Ungar, defendant HAMAS, operating from territories controlled by defendants PA, PLO and ARAFAT, murdered the following American citizens: Nachshon Wachsman (on October 14, 1994), Joan Davenny (on August 21, 1995), Sara Duker, Matthew Eisenfeld, Ira Weinstein (all on February 25 1996), and David Boim (on May 13, 1996).

33.    During the period relevant hereto the government of the United States, the Congress of the United States, and the government of the State of Israel repeatedly demanded from defendants PA, PLO and ARAFAT that they take effective measures to prevent further terrorist attacks by defendant HAMAS, including: criminalizing the existence of and membership in HAMAS; the apprehension, prosecution and imprisonment of HAMAS' leadership and members; the closure of HAMAS' offices and

8

facilities; the seizure of HAMAS' property and resources including funds, weapons and explosives, and; prosecuting HAMAS' incitement to violence and terrorism.

34.    Defendants PA, PLO and ARAFAT refused and/or ignored American and Israeli demands to take effective measures to prevent further terrorist attacks by defendant HAMAS.

35.    On the contrary, at all times relevant hereto, defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI provided defendant HAMAS with safe haven and a base of operations, by permitting and/or encouraging defendant HAMAS to operate freely and conduct activities in the territory under their control or in which they maintained a police presence, and to advocate, encourage, solicit, facilitate, incite for, sponsor, organize, plan and execute acts of violence and terrorism against Jewish civilians in Israel, Gaza and the West Bank.

36.    Moreover, during the period relevant hereto, the State of Israel submitted to defendant PA dozens of requests to surrender for prosecution members of defendant HAMAS suspected of or charged with terrorist murders, including individuals suspected of murdering United States citizens.

37.    Defendants PA, PLO and ARAFAT have consistently refused these requests for the surrender of terrorist suspects, and at all times relevant hereto, provided shelter and safe haven to dozens of members of defendant HAMAS and other terrorist groups suspected of or charged with terrorist murders, including the murders of American citizens.

38.    Moreover, during the period relevant hereto, several members of defendant HAMAS and other terrorist groups suspected of or charged with terrorist murders,

including murders of U.S. citizens, whose surrender was requested by Israel, were employed by defendants PA, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI as policemen and/or security officials in the various police, security and intelligence forces under the control of these defendants.

39.    In addition, defendants ARAFAT, PA and PLO, at all times relevant hereto, granted material and financial support to the families of members of defendant HAMAS who had been captured or killed while carrying out acts of terrorist violence against Jewish civilians in Israel, Gaza and the West Bank, thereby providing defendant HAMAS and its members with strong financial incentive to continue to carry out violence and terrorism against such victims.

40.    At all times relevant hereto defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI, knew that defendant HAMAS had committed hundreds of serious offenses against the United States, including the murder of U.S. citizens Nachshon Wachsman, Joan Davenny, Sara Duker, Matthew Eisenfeld, Ira Weinstein, and David Boim, and that defendant HAMAS planned to continue committing such offenses, yet these defendants openly and consistently sheltered and received, relieved, comforted and assisted defendant HAMAS and its operatives and agents, within the meaning of 18 U.S.C. Sec. 3, in order to hinder and prevent their apprehension, trial and punishment.

41.    At all times relevant hereto defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI knew that defendant HAMAS had committed hundreds of serious offenses against the United States, including the murder of the aforementioned U.S. citizens, and that defendant HAMAS planned to continue

10

committing such offenses, yet these defendants openly and consistently provided defendant HAMAS and its members with safe haven, a base of operations, shelter, financial support and other material support and resources within the meaning of 18 U.S.C. Sec. 2339A.

42.    Defendants' acts constitute a violation of the criminal laws of the United States and of the several States, or would constitute criminal violations if committed within the jurisdiction of the United States and of the several States.

43.    The acts of defendants HAMAS, RAHMAN GHANIMAT, HOR, KAFISHA, ABU HAMDIYA and IBRAHIM GHANIMAT constitute, *inter alia*, violations of 18 U.S.C. Sec. 2332 (homicide of a U.S. national outside the United States).

44.    The acts of defendants ARAFAT, PA, PLO, JABALI, AL-HINDI, TIRAWI, RAJOUB AND DAHLAN if committed within the jurisdiction of the United States would constitute, *inter alia*, violations of 18 U.S.C. Sec. 3 ("Accessory After the Fact") and of 18 U.S.C. Sec. 2339A ("Providing Material Support to Terrorists").

45.    The acts of defendants HAMAS, RAHMAN GHANIMAT, HOR, KAFISHA, ABU HAMDIYA and IBRAHIM GHANIMAT appear to be intended to intimidate or coerce a civilian population, and to influence the policy of a government by intimidation or coercion, within the meaning of 18 U.S.C. Sec. 2331, in light of the openly declared goals and purposes of defendant HAMAS and in light of statements made by several of these defendants at their trials.

46.    The acts of defendants ARAFAT, PA, PLO, JABALI, AL-HINDI, TIRAWI, RAJOUB AND DAHLAN appear to be intended to intimidate or coerce a civilian population, and to influence the policy of a government by intimidation or

11

coercion, within the meaning of 18 U.S.C. Sec. 2331, in light of the fact that at all times relevant hereto, these defendants, themselves and through their respective representatives, spokesmen and organs: repeatedly praised and lauded defendant HAMAS and HAMAS operatives who had engaged in acts of terrorism and violence against Jewish civilians and Israeli targets; praised, advocated, encouraged, solicited and incited for such terrorist acts; and threatened the further occurrence of such terrorist acts.

47.    Defendants' acts were dangerous to human life, by their nature and as evidenced by their consequences.

48.    Defendants' acts occurred outside the territorial jurisdiction of the United States.

49.    Defendants' acts are therefore acts of international terrorism as defined under 18 U.S.C. Sections 2331 and 2333.

50.    By reason and as a result of the acts of international terrorism committed by defendants, Yaron Ungar and Efrat Ungar were killed, thereby causing the decedents and the plaintiffs severe injury, including: pain and suffering; loss of pecuniary support; loss of consortium; emotional distress; loss of parental society and companionship and loss of solatium.

51.    For the reasons stated above, defendants are jointly and severally liable to plaintiffs.

## SECOND CLAIM FOR RELIEF
### AS AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS:
## **DEATH BY WRONGFUL ACT**

52.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

53.     Defendants HAMAS, RAHMAN GHANIMAT, HOR, ABU HAMDIYA, IBRAHIM GHANIMAT, and KAFISHE willfully and deliberately organized, planned and executed the shooting attack in which Yaron Ungar and Efrat Ungar were killed.

54.     The behavior of defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI violated obligations and duties applying to them under international customary law and/or under local law and/or stemming from the terms and conditions of their official positions, to desist from incitement and encouragement of acts of violence, to actively prevent such incitement and encouragement of acts of violence by individuals and groups within territory under their control, to denounce and condemn acts of terrorism, to apprehend, prosecute, imprison and/or surrender for prosecution persons involved directly and indirectly in acts of terrorism and to outlaw and dismantle the infrastructure of terrorist organizations within the territories under their control, and generally to conduct themselves in such a manner as not to wantonly, and/or negligently cause or allow the infliction of injuries to persons such as the plaintiffs herein.

55.     By reason and as a result of their aforementioned wrongful acts, neglects or defaults, defendants caused the death of Yaron Ungar and Efrat Ungar, thereby causing the decedents and the plaintiffs severe injury, including pain and suffering; loss of

pecuniary support; loss of consortium; emotional distress; loss of parental society and companionship and loss of solatium.

56.    For the reasons stated above, defendants are jointly and severally liable to plaintiffs.

## THIRD CLAIM FOR RELIEF
### AS AGAINST DEFENDANTS PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI
### ON BEHALF OF ALL PLAINTIFFS:
### NEGLIGENCE

57.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

58.    Defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI foresaw, or should have reasonably foreseen, that their actions and/or their failure to take actions and fulfill duties and obligations incumbent upon them under international customary law and/or under local law, and/or which stemmed from the terms and conditions of their official positions, would create unreasonable risk of injury to persons such as the decedents and the plaintiffs.

59.    By their aforementioned actions and/or failure to take action, defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI are guilty of negligence.

60.    By reason and as a result of the aforementioned negligent behavior of defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI, Yaron Ungar and Efrat Ungar were killed, thereby causing the decedents and the plaintiffs severe injury, including pain and suffering; loss of pecuniary support; loss

14

of consortium; emotional distress; loss of parental society and companionship and loss of solatium.

61.    For the reasons stated above, defendants are jointly and severally liable to plaintiffs.

## FOURTH CLAIM FOR RELIEF
### AS AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

63.    Defendants' conduct was willful, outrageous, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

64.    Defendants' conduct caused the plaintiffs egregious emotional distress.

65.    For the reasons stated above, defendants are jointly and severally liable to plaintiffs.

## FIFTH CLAIM FOR RELIEF
### AS AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

66.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

67.    Defendants' conduct was willful, outrageous and/or grossly negligent, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

68.    Defendants' conduct caused the plaintiffs egregious emotional distress.

15

69.    For the reasons stated above, defendants are jointly and severally liable to plaintiffs.

WHEREFORE, Plaintiffs request judgment against the Defendants jointly and severally, for each of the above causes of action, for compensatory damages, costs and attorneys' fees in the amount of $250,000,000.00 and punitive damages, and such other relief as the Court finds just and equitable.

Plaintiffs demand jury trial.

Plaintiffs, by their Attorneys,

David J. Strachman #4404
Skolnik, McIntyre & Tate Esqs, Ltd.
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700

Israeli Counsel

Nitsana Darshan-Leitner
13 Leonardo da-Vinci Street
Tel Aviv, Israel

16