UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

The Estates of YARON UNGAR       )
and EFRAT UNGAR, by and          )
through the Administrator of     )
their estates David Strachman;)
DVIR UNGAR, minor, by his        )
guardians and next friend;       )
YISHAI UNGAR, minor, by his      )
guardians and next friend;       )
PROFESSOR MEYER UNGAR, JUDITH )
UNGAR, RABBI URI DASBERG,        )
JUDITH DASBERG, (individually )
and in their capacities as       )
legal guardians of plaintiffs )
Dvir Ungar and Yishai Ungar); )
AMICHAI UNGAR; DAFNA UNGAR        )
AND MICHAL COHEN,                )
                                 )
          Plaintiffs             )
                                 )
     v.                          )     C.A. No. 00-105L
                                 )
THE PALESTINIAN AUTHORITY        )
(A.K.A. "THE PALESTINIAN         )
INTERIM SELF-GOVERNMENT          )
AUTHORITY"), THE PALESTINE       )
LIBERATION ORGANIZATION,         )
YASSER ARAFAT, JIBRIL RAJOUB, )
MUHAMMED DAHLAN, AMIN            )
AL-HINDI, TAWFIK TIRAWI, RAZI )
JABALI, HAMAS – ISLAMIC          )
RESISTANCE MOVEMENT (A.K.A.      )
"HARAKAT AL-MUQAWAMA             )
AL-ISLAMIYYA"), ABDEL RAHMAN )
ISMAIL ABDEL RAHMAN GHANIMAT, )
JAMAL ABDEL FATAH TZABICH AL )
HOR, RAED FAKHRI ABU HAMDIYA, )
IBRAHIM GHANIMAT and IMAN        )
MAHMUD HASSAN FUAD KAFISHE,      )
                                 )
          Defendants             )

DECISION AND ORDER

Ronald R. Lagueux, United States District Judge

     Plaintiffs filed the instant action pursuant to 18 U.S.C. §



2333 et seq. after Yaron Ungar, a United States citizen, and his wife, Efrat Ungar, were killed in Israel by the terrorist group Hamas.  Enacted as part of the Antiterrorism Act of 1991 ("ATA"), 18 U.S.C. § 2333 provides a cause of action for American nationals injured in their person, property, or business by reason of an act of international terrorism.  The complaint names the Palestinian Authority ("PA"), the Palestine Liberation Organization ("PLO"), Yasser Arafat ("Arafat"), and the officers of various law enforcement and intelligence agencies operating within the territories controlled by the PA and the PLO as defendants (hereinafter "the PA defendants"), as well as Hamas and the individual Hamas members responsible for the Ungars' deaths.

This matter is before the Court on the PA defendants' motion to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficient service of process, failure to state a claim upon which relief can be granted, and inconvenience of the forum.  However, the most significant issue this Court must address is whether the Court's exercise of personal jurisdiction over the PA defendants is consistent with the constitutional requirements of minimum contacts and due process.  For the reasons that follow, this Court concludes that it may exercise personal jurisdiction over defendant PA and defendant PLO, but cannot exercise jurisdiction

over the remaining PA defendants.  Because the Court concludes
that it has jurisdiction over defendants PA and PLO, it also
addresses the additional 12(b) motions filed by the PA
defendants.

I. Background

On June 9, 1996, United States citizen Yaron Ungar, his wife
Efrat Ungar, and their nine month old son, plaintiff Yishai
Ungar, were traveling home from a wedding.  Near Beit Shemesh,
Israel, a vehicle driven by defendant Raed Fakhri Abu Hamdiya
("Abu Hamdiya") approached the Ungars' vehicle.  Defendants Abdel
Rahman Ismail Abdel Rahman Ghanimat ("Rahman Ghanimat") and Jamal
Abdel Fatah Tzabich Al Hor ("Hor"), opened fire on the Ungars'
car with two Kalashnikov machine guns.  Yaron and Efrat Ungar
were killed in the shooting attack.  Yishai Ungar survived the
attack unscathed.  Plaintiff Dvir Ungar, the Ungars' older son,
was not in the car at the time of the shooting.

Abu Hamdiya, Rahman Ghanimat, and Hor were arrested
following the shooting attack.  A fourth man, defendant Iman
Mahmud Hassan Fuad Kafishe ("Kafishe") was also arrested in
connection with the shooting.  In addition, a warrant was issued
for the arrest of Ibrahim Ghanimat on charges relating to the
murders of Yaron and Efrat Ungar.  Ibrahim Ghanimat remains at
large and is believed to be residing within territory controlled
by defendant PA.

All five men involved in the shooting are members of Hamas-Islamic Resistance Movement, also known as "Harakat Al-Muqawama Al-Islamiyya" ("Hamas"). A terrorist group dedicated to murdering Israeli and Jewish individuals through bombings, shootings, and other violent acts, Hamas is based in and operates from territories controlled by defendants PA, PLO, and Yasser Arafat. Terrorist attacks are staged by small groups of Hamas members organized as a cell for the purpose of carrying out terrorist activities. Abu Hamdiya, Rahman Ghanimat, Hor, Kafishe, and Ibrahim Ghanimat comprised the terrorist cell that murdered the Ungars.

On May 3, 1998, Abu Hamdiya was convicted by an Israeli court of membership in Hamas and of abetting the shooting murders of Yaron Ungar and Efrat Ungar. On October 21, 1998, an Israeli court convicted Rahman Ghanimat and Hor of membership in defendant Hamas and of the murders of Yaron Ungar and Efrat Ungar. On November 3, 1998, Kafishe was convicted by an Israeli court of membership in Hamas and of being an accessory to the murders of Yaron and Efrat Ungar.

Thereafter, on October 25, 1999, an Israeli court appointed attorney David Strachman ("Strachman") as administrator of the Estates of Yaron and Efrat Ungar. Strachman was appointed as the administrator of the Ungars' estates for the express purpose of administering and realizing assets, rights, and causes of action

4

that could be pursued on behalf of the Ungars' estates within the United States.

On March 13, 2000, plaintiffs filed an action pursuant to 18 U.S.C. § 2333 et seq. and related torts in the United States District Court for the District of Rhode Island.  The following parties are listed as plaintiffs: the Estate of Yaron Ungar and the Estate of Efrat Ungar, represented by Strachman; Dvir Ungar and Yishai Ungar, the minor children and heirs-at-law of Yaron Ungar and Efrat Ungar; Professor Meyer Ungar and Judith Ungar, the parents of Yaron Ungar and the legal guardians of plaintiffs Dvir and Yishai Ungar; Rabbi Uri Dasberg and Judith Dasberg, the parents of Efrat Ungar and the legal guardians of plaintiffs Dvir and Yishai Ungar; and Amichai Ungar, Dafna Ungar, and Michal Cohen, the siblings of Yaron Ungar.  Plaintiffs Professor Meyer Ungar and Judith Ungar bring this action both as the legal guardians of plaintiffs Dvir and Yishai Ungar and in their individual capacities.  Similarly, plaintiffs Rabbi Uri Dasberg and Judith Dasberg bring this action both as the legal guardians of plaintiffs Dvir and Yishai Ungar and in their individual capacities.

The defendants named in this lawsuit can be divided into two groups.  The first group is comprised of the PA defendants. Included in this group are: the PA; the PLO; Arafat, President of defendant PA and Chairman of defendant PLO; Jibril Rajoub

5

("Rajoub") and Muhammed Dahlan ("Dahlan"), who commanded and controlled the Palestinian Preventive Security Services; Amin Al-Hindi ("Al-Hindi") and Tawfik Tirawi ("Tirawi"), who commanded and controlled the Palestinian General Intelligence Services; and Razi Jabali ("Jabali"), who commanded and controlled the Palestinian Police.  The Palestinian Preventive Security Services, Palestinian General Intelligence Services, and Palestinian Police are all official law enforcement agencies of defendant PA responsible for law enforcement, maintaining public order and the prevention of violence and terrorism in the territories controlled by the PA and PLO.

The second group of defendants is comprised of the Hamas defendants ("Hamas defendants").  This group includes Hamas, as well as the individual operatives of Hamas responsible for the shooting attack that killed Yaron and Efrat Ungar: Rahman Ghanimat, Hor, Abu Hamdiya, Kafishe, and Ibrahim Ghanimat.

Plaintiffs' complaint states five causes of action.  With the exception of Count III, all claims are brought on behalf of all plaintiffs as against all defendants.  Count I alleges that defendants engaged in acts of international terrorism as defined by 18 U.S.C. §§ 2331 and 2333.  Count II of the complaint alleges death by wrongful act.  Count III of the complaint, which is brought against the PA defendants only, is for negligence.  Count IV alleges intentional infliction of emotional distress, and

Count V alleges negligent infliction of emotional distress.

The factual basis for each claim is the same. Essentially, plaintiffs' allege that the PA defendants failed to maintain public order and security in the territories under their control, and instead "provided defendant Hamas and its members with safe haven, a base of operations, shelter, financial support and other material support and resources." Pls.' Compl. ¶ 41. Plaintiffs further allege that the Hamas defendants planned and executed acts of violence against civilians in Israel, Gaza and the West Bank, including the murders of Yaron and Efrat Ungar. Plaintiffs contend that defendants' actions constitute acts of international terrorism because their actions: (1) were dangerous to human life and are a violation of the criminal laws of the United States,[1] (2) appear to be intended to intimidate or coerce a civilian population, or to influence the policy of a government by means of intimidation or coercion, and (3) occurred outside the territorial jurisdiction of the United States.

On June 15, 2000, the PA defendants filed a motion pursuant to Fed. R. Civ. P. 12(b) to dismiss the complaint against them on the grounds of lack of jurisdiction over the subject matter, lack

---

[1] Specifically, plaintiffs allege that the actions of the Hamas defendants constitute violations of 18 U.S.C. § 2332 (homicide of a United States national outside of the United States), and that the actions of the PA defendants constitute, inter alia, violations of 18 U.S.C. § 3 (Accessory After the Fact) and of 18 U.S.C. § 2339A (Providing Material Support to Terrorists).

of jurisdiction over the person, insufficiency of service of process, improper venue, failure to state a claim upon which relief can be granted, and inconvenience of the forum. Plaintiffs objected to the PA defendants' motion, and a hearing was scheduled on the matter.

Thereafter, this Court held a hearing on the PA defendants' motion to dismiss.[2] At the conclusion of the hearing, the Court took the matter under advisement and granted the parties additional time to prepare supplemental briefs on the issue of personal jurisdiction. Those briefs have been received and considered, and the matter is now in order for decision.

II. Discussion

The PA defendants' motion to dismiss the complaint is made on several grounds. First, the PA defendants challenge the Court's authority to hear this lawsuit on three bases: lack of subject matter jurisdiction, lack of personal jurisdiction over the PA defendants, and insufficient service of process. Second, the PA defendants assert that the District of Rhode Island is an improper venue for this lawsuit, or in the alternative, move to dismiss based on inconvenience of the forum. Finally, the PA

---

[2] Prior to the hearing on the PA defendants' motion to dismiss, plaintiffs filed a motion for entry of default as to the Hamas defendants. A default was entered as to the Hamas defendants on September 7, 2000. It is questionable whether this Court has personal jurisdiction over any of the Hamas defendants, but that issue is not presently before the Court.

defendants attack the sufficiency of the pleadings, arguing that
plaintiffs have failed to state a claim upon which relief can be
granted.   This Court will deal with each of the PA defendants'
arguments in turn.

A.   Subject Matter Jurisdiction

The PA defendants request dismissal of the complaint under
12(b)(1) for lack of jurisdiction over the subject matter.
Because federal courts are courts of limited jurisdiction,
plaintiffs bear the burden of proving the existence of subject
matter jurisdiction.   Viqueira v. First Bank, 140 F.3d 12, 16
(1st Cir. 1998).   In determining whether subject matter
jurisdiction exists, "the district court must construe the
complaint liberally, treating all well-pleaded facts as true and
indulging all reasonable inferences in favor of the plaintiff."
Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).   If
any evidence has been submitted in the case, such as depositions
or exhibits, the court may consider the motion to dismiss in
light of that evidence.   Id. at 1210.

Count I of plaintiffs' complaint pleads a federal cause of
action pursuant to 18 U.S.C. § 2333.   18 U.S.C. § 2333 provides
that:

> [a]ny national of the United States injured in his or
> her person, property, or business by reason of an act
> of international terrorism, or his or her estate,
> survivors, or heirs, may sue therefor in any
> appropriate district court of the United States and
> shall recover threefold the damages he or she sustains

9

and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a).  In addition, 18 U.S.C. § 2338 provides that

"[t]he district courts of the United States shall have exclusive

jurisdiction over an action brought under this chapter."  18

U.S.C. § 2338 (1994).  Therefore, this Court has subject matter

jurisdiction over Count I of plaintiffs' complaint if plaintiffs

have alleged sufficient facts to invoke § 2333.

Plaintiffs' complaint alleges that Yaron Ungar is a United

States citizen.  Pls.' Compl. ¶ 1.  It further alleges that Yaron

Ungar was murdered by an act of international terrorism as

defined by 18 U.S.C. § 2331.  Id. at ¶¶ 1, 21-23.  The Estate of

Yaron Ungar is represented by a court-appointed administrator,

plaintiff Strachman, a resident and domiciliary of the State of

Rhode Island.  Id. at ¶ 4.  Although the complaint alleges

additional facts demonstrating the existence of subject matter

jurisdiction as to Count I of the complaint, the Court need not

go any further.  Viewing the complaint in the light most

favorable to plaintiffs, they have alleged sufficient facts to

demonstrate that this Court has subject matter jurisdiction over

Count I of the complaint.

The remaining counts in plaintiffs' complaint are state law

claims.  Accordingly, this Court can only have subject matter

jurisdiction over the state law claims under the doctrine of

supplemental jurisdiction.  28 U.S.C. § 1367 provides that "in

10

any civil action of which the district courts have original

jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims

in the action . . . that they form part of the same case or

controversy."  28 U.S.C. § 1367 (1994).  Thus, this Court has the

power to hear both state and federal claims if they would

ordinarily be expected to be tried in one judicial proceeding.

See Penobscot Indian Nation v. Key Bank of Maine, 112 F.3d 538,

563-64 (1st Cir. 1997).  In particular, "[t]he state and federal

claims must derive from a common nucleus of operative fact."

United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

In the case at bar, plaintiffs allege that Yaron and Efrat

Ungar were murdered in a terrorist attack perpetrated by the

Hamas defendants.  Plaintiffs also allege the PA defendants knew

that Hamas was based in and operated out of territories

controlled by the PA and the PLO, that the PA defendants failed

to apprehend the Hamas defendant or curtail Hamas' terrorist

activities, and that the PA defendants provided material support

to Hamas.  Thus, the federal claim and the state law claims

derive from a common nucleus of operative fact, and this Court

has subject matter jurisdiction over the state law claims under

the doctrine of supplemental jurisdiction.

B.    Personal Jurisdiction

The PA defendants also request dismissal of the complaint

11

under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. The PA defendants argue that they do not have minimum contacts with the State of Rhode Island; therefore, this Court could not exercise personal jurisdiction over them without running afoul of the constitutional requirements of minimum contacts and due process.

Plaintiffs contend that the Court may exercise personal jurisdiction over the PA defendants consistent with the Due Process Clause of the Fifth Amendment. As to defendants PA and PLO, plaintiffs argue that this Court has personal jurisdiction through nationwide service of process pursuant to 18 U.S.C. § 2334(a) and Federal Rule of Civil Procedure 4(k)(1)(D), or, in the alternative, pursuant to Federal Rule of Civil Procedure 4(k)(2). As to defendants Arafat, Rajoub, Dahlan, Al-Hindi, Tirawi, and Jibali (hereinafter "the individual defendants"), plaintiffs argue that this Court has personal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2).

In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must provide competent evidence to establish a prima facie showing of personal jurisdiction. Under the most common approach, referred to simply as the prima facie standard, the district court must "restrict its inquiry to whether the plaintiff has proffered evidence which, if credited, suffices to support a finding of personal jurisdiction." Barrett

12

v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001).  The court need not "credit conclusory allegations or draw farfetched inferences," Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994), but must credit specific facts set forth in the record and supported by competent evidence, see Barrett, 239 F.3d at 26. The role of the district court in this regard is not to act as a fact finder, but rather to accept properly supported evidence proffered by the plaintiff as true.  See Microfibers, Inc. v. McDevitt-Askew, 20 F. Supp. 2d 316, 319 (D.R.I. 1998).  In addition, the court considers all uncontradicted facts put forward by the defendant.  Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Assoc., 142 F.3d 26, 34 (1st Cir. 1998)(citing Topp v. CompAir, Inc., 814 F.2d 830, 836-37 (1st Cir. 1987)).

In a federal question case, the starting point of this Court's minimum contacts analysis is the Due Process Clause of the Fifth Amendment.  U.S. Const. amend. V.  "When the district court's subject-matter jurisdiction rests wholly or in part on the existence of a federal question, the constitutional limits of the court's personal jurisdiction are drawn in the first instance with reference to the due process clause of the fifth amendment." Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991).  The relevant inquiry under such circumstances is whether the defendant has minimum contacts with the United States as a whole, rather than whether the defendant has minimum contacts

with the particular state in which the federal court sits.  <u>See</u>
<u>id.</u> at 719-20.

The reasoning behind this rule of law was aptly explained by
Judge Selya in <u>United Elec., Radio and Mach. Workers v. 163</u>
<u>Pleasant St. Corp.</u>, 960 F.2d 1080 (1st Cir. 1992).

> Inasmuch as the federalism concerns which hover over
> the jurisdictional equation in a diversity case are
> absent in a federal question case, a federal court's
> power to assert personal jurisdiction is geographically
> expanded.  In such circumstances, the Constitution
> requires only that the defendant have the requisite
> "minimum contacts" with the United States, rather than
> with the particular forum state (as would be required
> in a diversity case).

<u>Id.</u> at 1085 (citing <u>Lorelei</u>, 940 F.2d at 719; <u>Trans-Asiatic Oil</u>
<u>Ltd. v. Apex Oil Co.</u>, 743 F.2d 956, 959 (1st Cir. 1984)).

Despite the fact that "the physical scope of the court's
constitutional power is broad," <u>Lorelei</u>, 940 F.2d at 719, this
Court's inquiry is not yet complete.  Before a district court can
exercise personal jurisdiction over a defendant in a federal
question case, plaintiff must also establish that service of
process is authorized by a federal statute or rule.  <u>See id</u>.
This statutory limitation on the district court's exercise of
personal jurisdiction must be satisfied, for although service of
process and personal jurisdiction are distinct concepts, they are
also closely related, and a court cannot obtain personal
jurisdiction without effective service of process.  <u>Lorelei</u>, 940
F.2d at 719-20 n. 1 (citing <u>Driver v. Helms</u>, 577 F.2d 147, 155

(1st Cir. 1978)).

<u>Defendants PA and PLO</u>

Plaintiffs argue that jurisdiction over defendants PA and PLO is established through the nationwide service of process provision found at 18 U.S.C. § 2334(a) and Federal Rule of Civil Procedure 4(k)(1)(D).  Rule 4(k)(1)(D) provides that "[s]ervice of a summons . . . is effective to establish jurisdiction over the person of a defendant when authorized by a statute of the United States."  Fed. R. Civ. P. 4(k)(1)(D).  18 U.S.C. § 2334(a) states that "[p]rocess in [a civil action under section 2333 of this title] may be served in any district where the defendant resides, is found, or has an agent."  18 U.S.C. § 2334(a). Therefore, plaintiffs have made a prima facie showing of personal jurisdiction as to defendants PA and PLO if: (1) defendants PA and PLO have minimum contacts with the United States as a whole, and (2) defendants PA and PLO were served in any district where they reside, are found, or have an agent.

Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Pls.' Mem.") and Memorandum in Further Opposition to Defendants' Motion to Dismiss ("Pls.' Supp. Mem.") provide this Court with sufficient evidence to conclude that defendants PA and PLO have minimum contacts with the United States.  First, the PLO maintains an office in Washington, D.C.  The office is headed by Hasan Abdel Rahman, the Chief Representative of both the PLO and

15

the PA in the United States, and employs nine staff members.
Pls.' Supp. Mem., Exs. A and B.  For the six month period ending
March 31, 1999, the office expended $200,132.74 on activities
ranging from conducting interviews, giving lectures, and
contacting the media.  See Report of the Attorney General to the
Congress of the United States on the Administration of the
Foreign Agents Registration Act of 1938, as amended, for the Six
Months Ending June 30, 1999, available at http://www.doj.gov/
criminal/fara/fara1st99/COUNTRY/PALESTIN.HTM.  Because Rahman
represents himself as the Chief Representative of both the PA and
PLO, plaintiffs contend that these activities constitute contacts
on behalf of the PA and the PLO with the United States.

Defendant PLO also maintains an Observer Mission to the
United Nations in New York.  The Permanent Observer and Deputy
Permanent Observer employed by the Observer Mission represent the
views of Palestine to the U.N., but also participate in public
speaking engagements outside of the U.N.  The PLO's activities in
New York were examined by the Second Circuit on appeal in
Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44 (2d Cir. 1991).
Although the appeals court ruled that the PLO's U.N. activities
could not be considered for purposes of establishing personal
jurisdiction, it also held that all of the PLO's activities
unrelated to its observer status could be considered.  See id. at
51.  On remand, the district court concluded that the PLO's

16

fundraising activities and other public speaking engagements were sufficient for purposes of New York's long-arm statute. Klinghoffer v. S.N.C. Achille Lauro, 795 F. Supp. 112, 114 (S.D.N.Y. 1992).

In addition to the above activities, defendant PA employs the lobbying firm of Bannerman & Associates to assist the PA with advocacy training and developing a public relations campaign in the United States.  See Pls.' Supp. Mem., Exs. E and F. Furthermore, plaintiffs allege that the PLO and the PA have significant commercial contacts with the United States, citing a recent case arising from a dispute over a telecommunications contract that the PLO and the PA entered into with International Technologies Integration, Inc.  See Int'l Techs. Integration, Inc. v. Palestine Liberation Organization, 66 F. Supp. 2d 3 (D.D.C. 1999).  The proceedings in that case revealed that the PA and the PLO maintain several bank accounts in New York with deposits totaling approximately $18 million dollars.  See Pls.' Supp. Mem., Ex. G.

On the basis of this evidence, the Court concludes that plaintiffs' have made a prima facie showing that defendants PA and PLO have minimum contacts with the United States as a whole. Plaintiffs' evidence goes beyond the allegations in the complaint, providing competent evidence of defendant PA's and defendant PLO's contacts with the United States as a whole.

However, before this Court can conclude that it may constitutionally exercise personal jurisdiction over the PA defendants, plaintiffs must also demonstrate that the PA defendants were served in a district where they reside, are found, or have an agent.

Plaintiffs contend that defendants PA and PLO were served with process in this action pursuant to Federal Rule of Civil Procedure 4(h)(1), which pertains to service upon corporations and associations. "An unincorporated association is defined as a body of persons acting together and using certain methods for prosecuting a special purpose or common enterprise." Motta v. Samuel Weiser, Inc., 768 F.2d 481, 485 (1st Cir. 1985)(citing Black's Law Dictionary 111 (5th ed. 1979)), cert. denied, 474 U.S. 1033 (1985).

It has previously been determined that the PLO qualifies as an unincorporated association because "[i]t is composed of individuals, without a legal identity apart from its membership, formed for specific objectives." Klinghoffer, 739 F. Supp. 854, 858 (S.D.N.Y. 1990). Defendant PA also qualifies as an unincorporated association for purposes of service of process. The PA is not presently recognized as a foreign state by the United States. Therefore, it may also be categorized as an organization composed of individuals seeking to achieve specific objectives, and which has no legal identity in the United States

18

apart from its membership.

Under Rule 4(h)(1), service of process on an unincorporated association shall be effected "by delivering a copy of the summons and of the complaint to an officer, [or] a managing or general agent." Fed. R. Civ. P. 4(h)(1). Plaintiffs allege that service of process was delivered to Hasan Abdel Rahman (the Chief Representative of the PA and the PLO in the United States) on April 13, 2000, in Washington, D.C., and to Marwan Jilani (the PLO's Deputy Permanent Observer to the United Nations) on March 23, 2000 in Massachusetts. Plaintiffs provided affidavits of service of process as exhibits to their Memorandum in Opposition to Defendants' Motion to Dismiss.

Delivery of a copy of the summons and complaint to Jilani and Rahman is effective to confer jurisdiction over defendant PA and defendant PLO only if Jilani and Rahman are officers and/or managing or general agents of the PA and the PLO. Defendant PA and defendant PLO claim that Jilani and Rahman do not qualify as managing or general agents because they are not authorized to accept service of process on behalf of the PA or the PLO. In addition, they claim that Jilani is immune from service pursuant to the Headquarters Agreement treaty between the U.N. and the United States, 22 U.S.C. § 287 Note (1994)("the Headquarters Agreement"), and that Rahman is immune from service under the Foreign Missions Act ("FMA"), 22 U.S.C. § 4301 et seq.

19

In a federal question case, federal law determines whether a person is an agent for purposes of service under Rule 4.  See Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 316 (1964); Dodco, Inc. v. Am. Bonding Co., 7 F.3d 1387, 1388 (8th Cir. 1993).  In Klinghoffer, the district court addressed the question of whether the PLO's Permanent Observer to the U.N. qualified as a managing or general agent where he was not specifically designated as such by the PLO.  See Klinghoffer, 739 F. Supp. 854.  The district court stated that service "is not limited to titled officials of the association or those expressly authorized to accept service," and held that a general or managing agent is an individual with the authority to exercise independent judgment and discretion in the performance of his or her duties.  Id. at 867 (citing Grammenos v. Lemos, 457 F.2d 1067, 1073 (2d Cir. 1972)).  Thus, "service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service."  Id. (citations omitted).

In the present case, plaintiffs contend that Jilani and Rahman are both managing or general agents of defendant PA and defendant PLO.  The PLO is not a member of the United Nations, but does maintain a Permanent Observer Mission to the U.N.  In 1988, the U.N. adopted a resolution to use the designation "Palestine" instead of the designation "PLO" in the United

Nations system.  Pls.' Mem., Ex. C.  Significantly, the PA also identifies the Observer Mission as its official representative to the U.N.  Id., Ex. J.  Mr. Jilani is the Deputy Permanent Observer of the Permanent Observer Mission of Palestine to the United Nations, and has served in the Mission since 1996.  Decl. of Marwan Jilani, ¶ 1.  In his declaration, Mr. Jilani stated that he acts at the direction of the Permanent Observer, but also stated that he acts for the Permanent Observer in his absence. Id. at ¶ 2.  As Mr. Jilani indicated, the purpose of the Permanent Observer is to present the views of Palestine, not only before the U.N., but "in all activities, discussion, dialogues and debates . . . to the people of the world who are concerned with those issues."  Id.

At the time he was served, Mr. Jilani was participating as a guest speaker in a program on the Middle East peace process held in Brookline, Massachusetts.  See id.  Mr. Jilani attended the program to present the views of Palestine to the interested public.  Under these circumstances, it is reasonable to conclude that Jilani is a managing or general agent of the PLO and the PA. Mr. Jilani's presence as the representative of the Observer Mission renders it "fair, reasonable and just" to imply his authority to receive service on behalf of the PLO and the PA because both entities have designated the Observer Mission as their official representative to the U.N.  Given the fact that

21

Jilani attended the panel discussion as the sole representative of the Observer Mission to present the views of Palestine, it also reasonable to conclude that he was not "under direct superior control," but instead exercised some degree of discretion and judgment in the fulfillment of his duties.

The declaration of Mr. Rahman establishes that he is the Chief Representative of the PLO in the United States. Decl. of Hasan Abdel Rahman, ¶ 1. He is also registered with the U.S. Department of Justice as an agent for the PLO. Pls.' Mem., Ex. F ("Short Form Listing of Registrant's Foreign Agents", available at http://www.usdoj.gov/criminal/fara/fara1st99/SHRTFORM/ SHRTFORM.HTM). Mr. Rahman states that defendant PA has no representatives in the United States. Decl. of Hasan Abdel Rahman, ¶ 3. However, plaintiffs have submitted the biography of Mr. Rahman, allegedly distributed by Rahman's office in Washington D.C., which describes Rahman as the Chief Representative of the Palestine Liberation Organization and the Palestinian National Authority. Pls.' Supp. Mem., Ex. A. In addition, plaintiffs point out that Mr. Rahman has spoken on behalf of both the PLO and the PA on more than one occasion. See id. at Exs. B and C.

This evidence is sufficient to establish that Rahman qualifies as a general or managing agent of the PLO and the PA. As the Chief Representative of both entities in the United

States, it is reasonable to conclude that he exercises independent judgment and discretion in the performance of his duties.  It is also fair, reasonable and just to imply his authority to accept service on behalf of the PLO and the PA, notwithstanding his assertions to the contrary.

In Klinghoffer, the district court also rejected the PLO's argument that the PLO's Permanent Observer to the United Nations is immune from service of process under the Headquarters Agreement, concluding that the Headquarters Agreement only confers diplomatic immunity on Members of the United Nations. Klinghoffer, 739 F. Supp. at 864; aff'd, 937 F.2d at 48.  Because the PLO is not a Member of the U.N., but only an Observer, the PLO has no claim to diplomatic immunity.  Klinghoffer, 739 F. Supp. at 864-65.  In the case at bar, defendants offer nothing new in support of this claim, but merely reiterate the same arguments made in Klinghoffer.  Therefore, the argument must fail here as well.

This Court also rejects the PA defendants' claim that the FMA confers immunity from service of process on Rahman.  As noted by plaintiffs, the PA defendants have not cited any specific provision or interpretation of the FMA to support this position. The sole provision in the Act related to immunities is 22 U.S.C. § 4310, which provides in pertinent part that "[n]o act or omission by any foreign mission . . . in compliance with this

23

chapter shall be deemed to be an implied waiver of any immunity otherwise provided for by law." 22 U.S.C. § 4310 (1994). This provision does not render representatives of foreign missions immune from service; it simply preserves immunities that may be provided for by law. The PA defendants have not identified any such immunity. Therefore, the FMA does not render Mr. Rahman immune from service of process.

Accordingly, it is the determination of this Court that it has personal jurisdiction over defendant PA and defendant PLO pursuant to the nationwide service of process provision of 18 U.S.C. § 2334(a) and Rule 4(k)(1)(D).[3] Defendant PA and defendant PLO have minimum contacts with the United States as a whole, and each defendant was served through the delivery of a copy of the summons and complaint to a managing or general agent of each defendant. Therefore, this Court may exercise personal jurisdiction over defendant PA and defendant PLO consistent with the Due Process Clause of the Fifth Amendment.

<u>Individual PA Defendants</u>

This Court must now determine whether it has personal jurisdiction over the individual PA defendants. Plaintiffs argue that personal jurisdiction has been established pursuant to

---

[3] Because the Court concludes that it has personal jurisdiction over defendants PA and PLO on these grounds, it does not reach the question of whether it could exercise personal jurisdiction over defendants PA and PLO pursuant to Rule 4(k)(2).

Federal Rule of Civil Procedure 4(k)(2).  Rule 4(k)(2) states:

> If the exercise of jurisdiction is consistent with the
> Constitution and laws of the United States, serving a
> summons or filing a waiver of service is also
> effective, with respect to claims arising under federal
> law, to establish personal jurisdiction over the person
> of any defendant who is not subject to the jurisdiction
> of the courts of general jurisdiction of any state.

Fed. R. Civ. P. 4(k)(2).

The PA defendants strenuously argue that plaintiffs cannot
establish personal jurisdiction pursuant to Rule 4(k)(2) because
plaintiffs cannot show that this Court's exercise of personal
jurisdiction over the individual PA defendants would be
consistent with the United States Constitution.

The PA defendants' argument is based in large part on
United States v. Swiss Am. Bank, Ltd., 191 F.3d 30 (1st Cir.
1999), wherein the First Circuit delineated the circumstances
under which a plaintiff may utilize Rule 4(k)(2) to establish
personal jurisdiction over a defendant.  By its terms, Rule
4(k)(2) requires that the following factors be present: (1) the
plaintiff's claim must arise under federal law, (2) no state
court of general jurisdiction can have personal jurisdiction over
the putative defendant, and (3) the federal court's exercise of
personal jurisdiction over the defendant must be consistent with
the Constitution or other federal law.  Id. at 38; Fed. R. Civ.
P. 4(k)(2).

However, the First Circuit recognized that requiring a

plaintiff to prove the so-called "negation prong" (that the defendant is beyond the reach of any state court of general jurisdiction), "in effect requires a plaintiff to prove a negative fifty times over—an epistemological quandary which is compounded by the fact that the defendant typically controls much of the information needed to determine the existence and/or magnitude of its contacts with any given jurisdiction." Swiss American, 191 F.3d at 40.  Accordingly, the court of appeals devised the following burden-shifting framework.

As a initial matter, a plaintiff seeking to invoke Rule 4(k)(2) must make out a prima facie case for applicability of the rule.  Plaintiff's prima facie case consists of three elements: (1) the claim arises under federal law, (2) no situation-specific federal statute confers personal jurisdiction over the defendant, and (3) the defendant's contacts with the nation as a whole are sufficient to comply with the constitutional requirements of due process and minimum contacts.  Id. at 41.  In addition, plaintiff must certify that "based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state."  Id.

At this point, the burden of production shifts to the defendant to produce evidence which, if credited, demonstrates either that the defendant's contacts with the United States are

constitutionally insufficient, or that it is subject to suit in a
state court of general jurisdiction. <u>Id.</u> If the defendant
chooses the latter course, the plaintiff may either move for
transfer to a district within that state, discontinue the action,
or contest the defendant's evidence on this score. <u>Id.</u> at 42.
If the defendant instead contends that it does not have
sufficient contacts with the United States to justify the
exercise of personal jurisdiction, the negation requirement is
conceded, and the plaintiff "need only prove that his claim
arises under federal law and that the defendant has contacts with
the United States as a whole sufficient to permit a federal court
constitutionally to exercise personal jurisdiction over it." <u>Id.</u>

In the instant case, the PA defendants argue that plaintiffs
failed to make out their prima facie case because they cannot
demonstrate that the individual defendants' contacts with the
nation as a whole meet the constitutional requirements of due
process and minimum contacts. Because plaintiffs argue that the
individual defendants' contacts with the United States as a whole
are sufficient to confer general personal jurisdiction,
plaintiffs must demonstrate that the individual defendants have
engaged in "continuous and systematic activity, unrelated to the
suit" in the forum. <u>Noonan v. Winston</u>, 135 F.3d 85, 89 (1st Cir.
1998).

It is patently obvious to this Court that plaintiffs cannot

27

meet this burden.   Plaintiffs have not offered any evidence that demonstrates that the individual defendants have any contact with the United States whatsoever.   Instead, plaintiffs seek to persuade this Court to adopt the due process analysis applied by the district courts in the District of Columbia and the Eastern District of New York in several recent decisions interpreting and applying the state-sponsored terrorism exception of the Federal Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(7) and § 1605 Note (Supp. 2001).

The state-sponsored terrorism exception was enacted as an amendment to the FSIA by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").   It provides that a foreign state which has been officially designated as a state sponsor of terrorism by the Department of State[4] shall not be immune from suit where the foreign state, or an official, employee, or agent of the foreign state causes personal injury or death to a United States citizen as a result of an act of terrorism, or through the provision of material support and resources to an individual or entity that commits such an act.   28 U.S.C. § 1605(a)(7).

Confronted with the question of whether the federal courts could exercise personal jurisdiction over foreign state

---

[4] Currently, Cuba, Iran, Iraq, North Korea, Sudan, and Syria are designated as sponsors of terrorism pursuant to 50 U.S.C. App. § 2405(j).  See 22 C.F.R. § 126.1(d) (current through June 5, 2001).

defendants, the district courts in the District of Columbia and the Eastern District of New York concluded that the due process analysis applicable to foreign state defendants that are sued pursuant to § 1605(a)(7) differs from the traditional due process analysis. E.g., Flatow v. Islamic Republic of Iran, 999 F. Supp. 1 (D.D.C. 1998); Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D.N.Y. 1998).

The primary reason behind the analysis of those courts is that 28 U.S.C. § 1330(b) provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction . . . where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b); see also 28 U.S.C. § 1608 (providing for the manner of service upon a foreign state or political subdivision of a foreign state). Relying on this statutory provision, the courts have determined that "subject-matter jurisdiction together with proper service of process gives the court personal jurisdiction." Rein, 995 F. Supp. at 330.

However, the Flatow Court also looked beyond § 1330(b), grounding its conclusion that the exercise of personal jurisdiction over foreign state defendants in accordance with §§ 1605(a)(7) and 1330(b) is consistent with the due process clause on several additional bases. In particular, the court found that the exceptions to sovereign immunity contained in the FSIA

encompass conduct that, by definition, goes beyond what is necessary to establish minimum contacts.  See <u>Flatow</u>, 999 F. Supp. at 20.  Thus, "an inquiry into personal jurisdiction over a foreign state need not consider the rubric of 'minimum contacts'; the concept of 'minimum contacts' is inherently subsumed within the exceptions to immunity defined by the statute."  <u>Id.</u>

For example, a foreign state subject to suit under the "commercial activities" exception to the FSIA necessarily has minimum contacts with the United States because § 1605(a)(2) requires that the action be based on a commercial activity carried on in the United States, an act performed in the United States, or on act that causes a "direct effect" in the United States.  28 U.S.C. § 1605(a)(2).  This conduct "requires something more substantial than 'minimum contacts' with the United States," rendering an independent minimum contacts analysis unnecessary.  <u>Flatow</u>, 999 F. Supp. at 20.

Whether or not the minimum contacts analysis is subsumed by the state-sponsored terrorism exception of § 1605(a)(7) appears to be somewhat of an open question.  The district courts have stated that it is, noting that minimum contacts with the United States are established through the victim's nationality.  <u>See</u> <u>Rein</u>, 995 F. Supp. at 330.  However, the Second Circuit, hearing <u>Rein</u> on appeal, stated that "[t]he elements of § 1605(a)(7), unlike those of the commercial activities exception . . . do not

entail any finding of minimum contacts." <u>Rein v. Socialist
People's Libyan Arab Jamahiriya</u>, 162 F.3d 748, 761 (2d Cir.
1998).  This statement seriously undermines the idea that the due
process clause is satisfied merely by alleging a cause of action
under the state-sponsored terrorism exception to the FSIA.

A third justification for the approach used by these
district courts focuses on the extent of contacts that must be
present in the context of a case brought pursuant to §
1605(a)(7).  As stated in <u>Flatow</u>, "a foreign state that sponsors
terrorist activities which causes the death or personal injury of
a United States national will invariably have sufficient contacts
with the United States to satisfy Due Process."  999 F. Supp. at
23.  The contacts likely to be present in such a case are the
sovereign contacts between the foreign state defendant and the
United States, as well as the nationality of the victim.  In
light of the policy decisions inherent in Congress' enactment of
the state-sponsored terrorist exception to the FSIA, the <u>Flatow</u>
Court concluded that such contacts, seemingly inadequate under a
traditional due process analysis, are nonetheless reasonable in
the context of the FSIA.  <u>See id.</u> at 22.

Finally, the <u>Flatow</u> Court held that a foreign state is not a
"person" for purposes of constitutional due process analysis.
<u>Id.</u> at 19-21.  Accordingly, the Court found that no minimum
contacts analysis is required.

Plaintiffs suggest that the due process analysis applied by the courts in <u>Flatow</u> and <u>Rein</u> should also be applied in cases brought pursuant to § 2333.  To support their argument, plaintiffs cite to the legislative history of the ATA, under which 18 U.S.C. § 2333 was enacted, and compare it with the legislative purpose behind the AEDPA.  The purpose of the ATA is to "provide for Federal civil remedies for American victims of international terrorism . . .  The ATA removes the jurisdictional hurdles in the courts confronting victims and it empowers victims with all the weapons available in civil litigation."  137 Cong. Rec. 8143 (1991).  Likewise, the AEDPA "was created as part of a federal initiative to combat international terrorism."  <u>Flatow</u>, 999 F. Supp. at 14.  Plaintiffs also point out that the provision of material support and resources to terrorists "is actionable under both the AEDPA (against a foreign state) and the ATA (against a non-state defendant), clearly indicating the common purpose and Congressional intent which produced both statutes." Pls.' Supp. Mem., p. 20.

Despite the apparent similarity in legislative purpose, there are several important differences between the ATA and the AEDPA.  First and foremost, there is no express provision for the district court's exercise of personal jurisdiction over the defendant in an action brought pursuant to 18 U.S.C. § 2333. While § 2334(a) provides for venue and nationwide service of

32

process, it does not contain a statutory basis for the exercise of personal jurisdiction similar to the one provided for by 28 U.S.C. § 1330(b) in FSIA actions. Second, unlike the exceptions to sovereign immunity contained in 18 U.S.C. § 1605(a), the elements of a § 2333 claim do not, by definition, subsume a minimum contacts analysis. Third, non-state defendants, such as the individual defendants in this case, do not have sovereign contacts with the United States sufficient to confer general personal jurisdiction. Finally, there is no question as to whether an individual defendant, as opposed to a foreign state defendant, is entitled to the constitutional protections afforded by the Due Process Clause.

In light of these differences, this Court declines plaintiffs' invitation to extend the due process analysis applied by the district courts under the state-sponsored terrorist exception to the FSIA to the case currently before the Court. In reaching this decision, the Court notes that it does not decide whether the approach to personal jurisdiction used by the district courts of the District of Columbia and the Eastern District of New York in FSIA cases is consistent with the Due Process Clause. Rather, this Court holds that, in cases brought pursuant to 18 U.S.C. § 2333, a plaintiff must demonstrate that the defendant has sufficient minimum contacts to satisfy a traditional due process analysis. In the instant case, the Court

33

cannot conclude that the individual defendants engaged in the kind of systematic and continuous activity necessary to support the exercise of general personal jurisdiction over the individual PA defendants.  Accordingly, the claims against the individual defendants must be dismissed for lack of personal jurisdiction.

     C.   Improper Venue

The PA defendants also move to dismiss the complaint under Rule 12(b)(3) on the grounds that the District of Rhode Island is not the proper venue for this lawsuit.  Defendants argue that venue is improper in the instant case because no plaintiff is authorized to bring an action pursuant to § 2333.  This argument can be disposed of quickly.

18 U.S.C. § 2334(a) provides that "[a]ny civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent."  18 U.S.C. § 2334(a).  Thus, venue is proper in this case as long as at least one plaintiff is a resident of the State of Rhode Island.  Plaintiffs allege that plaintiff David Strachman is a resident and domiciliary of the State of Rhode Island.  He was appointed as the administrator of the Estate of Yaron Ungar and the Estate of Efrat Ungar, for the limited purpose of realizing and handling assets, rights, and causes of action in the United States, by the Jerusalem District

Rabbinical Court of the State of Israel.  Pls.' Mem., Ex. A.
Therefore, venue is proper because plaintiff Strachman is a
resident of the State of Rhode Island.

 D.   Insufficient Service of Process

 A motion to dismiss for insufficient service of process
pursuant to Rule 12(b)(5) challenges the mode of delivery or the
lack of delivery of the summons and complaint.  5A Charles Alan
Wright & Arthur R. Miller, Federal Practice and Procedure § 1353
(2d ed. 1987).  Plaintiffs bear the burden of proving proper
service.  Rivera-Lopez v. Municipality of Dorado, 979 F.2d 885,
887 (1st Cir. 1992).

 In the instant case, the PA defendants have not articulated
any objection to the mode of delivery of the summonses and
complaints to Jilani, nor have they argued that the summonses and
complaints were not delivered to Jilani.[5]  However, they allege a
defect in service on Rahman.  In his declaration, Mr. Rahman
states that "a bundle of papers was found in the front room of
the Mission office containing separate Summonses and Complaints."
Decl. of Hasan Abdel Rahman, ¶ 2.  Thus, the objection raised by
the PA defendants is directed at the delivery of the summonses
and complaints.

───────────────

 [5] To the extent that the PA defendants challenge service of
process on the grounds of a lack of agency relationship between
Jilani or Rahman and the PA defendants, that argument has been
addressed in the preceding section discussing this Court's
exercise of personal jurisdiction.

However, plaintiffs provided proof of service on Rahman through the affidavit of Freeman R. Woodbury, the process server who delivered the summonses and complaints to Rahman at the PLO office in Washington, D.C.  In his affidavit, Mr. Woodbury states that on April 13, 2000, he identified Mr. Rahman from a picture he was carrying, and rode alongside Mr. Rahman in the elevator of the building where the PLO's Washington, D.C. office is located. Aff. of Freeman R. Woodbury, ¶ 1.  In the elevator, Mr. Woodbury identified himself and notified Rahman that he was being served with summonses and complaints.  Id. at ¶ 3.  Mr. Woodbury followed Rahman to his office, and repeated that he was serving summonses and complaints on Rahman.  Id. at ¶ 4.  Mr. Woodbury states that Mr. Rahman "refused to accept the documentation so I placed the summonses and complaints on the desk beside him."  Id. at ¶ 5.

The purpose of Rule 4 is to provide notice to the party to be served.  With this objective in mind, Mr. Woodbury twice informed Rahman that he was being served, and left the papers on the desk in Rahman's office only after Rahman refused to accept the summonses and complaints.  An agent of a defendant cannot successfully thwart service of process by simply refusing hand delivery of the summons and complaint.  In fact, it has been stated that:

> [i]f defendant attempts to evade service or <u>refuses to accept delivery after being informed by the process</u>

> server of the nature of the papers, it usually is
> sufficient for the process server to touch the party to
> be served with the papers and leave them in defendant's
> presence or, if a touching is impossible, simply to
> leave them in defendant's physical proximity.

4A Charles Alan Wright and Arthur R. Miller, Federal Practice and

Procedure § 1095 (2d ed. 1987)(emphasis added).   Therefore,

under the circumstances of the delivery as attested to by Mr.

Woodbury, it is the determination of this Court that the delivery

of the summonses and complaints to Rahman was sufficient.

> E.   Failure to State a Claim Upon Which Relief Can Be
>      Granted

The PA defendants also move to dismiss the complaint

pursuant to Rule 12(b)(6) for failure to state a claim upon which

relief can be granted.   In ruling on a motion to dismiss for

failure to state a claim, the court construes the complaint in

the light most favorable to the plaintiff, taking all well-

pleaded allegations as true and giving plaintiff the benefit of

all reasonable inferences.   Figueroa v. Rivera, 147 F.3d 77, 80

(1st Cir. 1998).   Dismissal under Rule 12(b)(6) is appropriate

only if there is no set of facts under which the plaintiff could

prevail on his or her claim.   Conley v. Gibson, 355 U.S. 41, 45-

46 (1957).

The Federal Claim

As an initial matter, the PA defendants contend that the §

2333 claim filed by the Estate of Efrat Ungar must be dismissed

because there is no allegation that Efrat Ungar was a national of

37

the United States.  This Court is in agreement.  Section 2333 authorizes civil actions only on behalf on United States nationals, or their estates, survivors, or heirs.  There is no allegation in the complaint that Efrat Ungar was a national of the United States.  Therefore, the § 2333 claim on behalf of the Estate of Efrat Ungar must be dismissed for failure to state a claim upon which relief can be granted.

In addition, the § 2333 claims filed by the survivors and/or heirs of Efrat Ungar must also be dismissed for failure to state a claim, as these claims are dependent on Efrat Ungar's status as a United States national.  Accordingly, the § 2333 claims filed by plaintiffs Rabbi Uri Dasberg and Judith Dasberg in their individual capacities must be dismissed for failure to state a claim.  The Court also notes that, insofar as the § 2333 claims filed on behalf of plaintiffs Dvir and Yishai Ungar seek damages for losses suffered as a result of the death of Efrat Ungar, those claims cannot be maintained under this statute.

The PA defendants argue that the remaining § 2333 claims must be dismissed because the activity attributed to the PA defendants in plaintiffs' complaint, the alleged facilitation, condonation, and failure to prevent terrorist activities in general, does not amount to acts of "international terrorism" as defined by 18 U.S.C. § 2331, and is therefore not actionable under 18 U.S.C. § 2333.

Section 2331 (1) defines "international terrorism" as activities that:

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
> (B) appear to be intended—
>    (i) to intimidate or coerce a civilian population;
>    (ii) to influence the policy of a government by intimidation or coercion; or
>    (iii)to affect the conduct of a government by assassination or kidnapping; and
> (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18 U.S.C. § 2331(1).

Plaintiffs allege that the PA defendants provided defendant Hamas "with safe haven and a base of operations, by permitting and/or encouraging defendant HAMAS to operate freely and conduct activities in the territory in their control or in which they maintained a police presence." Pls.' Compl., ¶ 35. Plaintiffs further allege that the PA defendants granted material and financial support to the families of Hamas members who had been captured or killed while carrying out terrorist attacks, employed member of Hamas as policemen or security officials, repeatedly praised and lauded defendant Hamas and its members who engaged in acts of terrorism against Israeli targets and Jewish civilians,

and repeatedly refused the requests of Israeli officials to surrender for prosecution suspected terrorists. <u>See id.</u> at ¶¶ 37-39, 46.

Plaintiffs allege that these activities involve violent acts or acts dangerous to human life, which, if committed within the jurisdiction of the United States, would constitute violations of 18 U.S.C. § 3 ("Accessory After the Fact"), and of 18 U.S.C. § 2339A ("Providing Material Support to Terrorists"). <u>Id.</u> at ¶ 44. Plaintiffs also allege that the PA defendants' activities appear to be intended to intimidate or coerce a civilian population, and to influence the policy of a government by intimidation or coercion. <u>Id.</u> at ¶ 46. Finally, plaintiffs allege that these activities occurred outside the territorial jurisdiction of the United States. <u>See id.</u> at ¶¶ 27-48.

Viewing the allegations in the complaint in the light most favorable to plaintiffs and giving plaintiffs the benefit of all reasonable inferences, it is the determination of this Court that the complaint sufficiently states a cause of action under 18 U.S.C. § 2333.

<u>The State Law Claims</u>

The remaining counts in the complaint are state law claims for death by wrongful act (Count II), negligence (Count III), intentional infliction of emotional distress (Count IV), and negligent infliction of emotional distress (Count V). Because

40

the state law claims arise from the same set of facts as the §
2333 claim, the complaint incorporates the allegations made in
support of the federal claim.  In short, plaintiffs allege that
the PA defendants failed to prevent terrorist activities in the
territories under their control, and instead actively encouraged
and incited terrorist activities.  Plaintiffs further allege that
those acts and/or omissions resulted in the murders of Yaron and
Efrat Ungar.  The PA defendants contend that these allegations
are legally insufficient to sustain the causes of action alleged,
and ask that the state law claims be dismissed.

     In order to determine whether the allegations in a complaint
are sufficient to state a claim upon which relief can be granted,
a court must necessarily refer to the law on which the complaint
is grounded.  In the present case, the complaint does not
identify the law that is to be applied by this Court in measuring
the sufficiency of the state law claims.  This Court applies
Rhode Island law to issues of state law that arise in federal
court because the Erie doctrine extends to actions in which
federal jurisdiction is premised on supplemental jurisdiction
over state law claims.  Doty v. Sewall, 908 F.2d 1053, 1063 (1st
Cir. 1990)(citing United Mine Workers v. Gibbs, 383 U.S. 715, 722
(1966)).  This includes the application of Rhode Island's
conflict-of-laws provisions.  See Dykes v. Depuy, Inc., 140 F.3d
31, 39 (1st Cir. 1998).  Therefore, this Court must determine

what law a Rhode Island court would apply.

All four of the state law claims sound in tort. "Rhode Island employs an 'interest-weighing' approach to choice of law in tort matters." Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1092 (1st Cir. 1989)(citing Berardi, U.S.A., Ltd. v. Employers Mut. Cas. Co., 526 A.2d 515 (R.I. 1987)). The "interest weighing" approach requires a court to consider "numerous factors which include the place of injury; the place where the tortious conduct occurred; the domicile, residence, and place of business of the parties; and the place where the relationship, if any, between the parties was centered." Berardi, 526 A.2d at 516-17.

Applying these factors to the case at bar, this Court finds that the injuries occurred in Israel; the tortious conduct occurred in Israel or in territories controlled by the PA defendants; and that all parties, with the exception of plaintiff Strachman, appear to be domiciled in either Israel or in territories controlled by the PA defendants. Accordingly, it is the determination of this Court that Rhode Island law requires the application of Israeli law to the state law claims contained in plaintiffs' complaint.

It is the obligation of the plaintiff to plead and prove foreign law. See R.I. Gen. Laws § 9-19-7. Plaintiffs here did not plead Israeli law in their complaint. The Court has no way

of knowing whether Israeli law recognizes these four causes of action based on the facts pleaded in this case.   Therefore, Counts II, III, IV, and V must be dismissed for failure to state a cause of action.   However, plaintiffs will be given 30 days from the date hereof to file an amended complaint against defendants PA and PLO under Israeli law making the necessary allegations.

F.   Inconvenience of the Forum

As a final matter, the PA defendants contend that the complaint against them should be dismissed under the doctrine of forum non conveniens.   This doctrine permits a district court "to dismiss a case where an alternative forum is available in another country that is fair to the parties and substantially more convenient for them or the courts."   Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 719 (1st Cir. 1996).

There is a strong presumption in favor of the plaintiff's choice of forum.   See Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 423-24 (1st Cir. 1991).   As a result, the defendant bears the burden of demonstrating both that: (1) an adequate alternative forum exists, and (2) considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum.   Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000).

In general, the first requirement is usually satisfied if

the defendant shows that an alternative forum provides redress
for the type of claims alleged in the plaintiff's complaint and
that the defendant is amenable to suit in the alternative forum.
Id. (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n. 22
(1981)).  To satisfy the second requirement, the defendant must
demonstrate that the balance of factors "relevant to the private
and public interests implicated by the case strongly favors
dismissal."  Id. (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501,
508-509 (1947)).

An illustrative list of considerations relevant to the
private interest includes: "the relative ease of access to
sources of proof; availability of compulsory process for
attendance of unwilling, and the cost of obtaining attendance of
willing, witnesses; possibility of view of premises, if view
would be appropriate to the action; and all other practical
problems that make trial of a case easy, expeditious, and
inexpensive."  Gulf Oil Corp. v. Gilbert, 330 U.S. at 508.
Factors of public interest include administrative difficulties
for courts with overloaded dockets, the imposition of jury duty
on a community with no connection to the underlying dispute, the
"local interest in having localized controversies decided at
home," and the court's familiarity with the law to be applied in
the case.  Id. at 508-509.

In the usual case, the court has the discretion to grant or

deny a motion to dismiss based on the doctrine of forum non
conveniens after consideration of the relevant factors.   The case
at bar presents a different situation.   18 U.S.C. § 2334(d)
limits the circumstances under which a court can entertain a
motion to dismiss on the grounds of the inconvenience of the
forum.   Specifically, § 2334(d) provides:

> The district court shall not dismiss any action brought
> under section 2333 of this title on the grounds of the
> inconvenience or inappropriateness of the forum chosen,
> unless—
> (1) the action may be maintained in a foreign court
> that has jurisdiction over the subject matter and over
> all the defendants;
> (2) that foreign court is significantly more convenient
> and appropriate; and
> (3) that foreign court offers a remedy which is
> substantially the same as the one available in the
> courts of the United States.

18 U.S.C. § 2334(d).

The PA defendants argue that this case should be dismissed
because all defendants, potential witnesses, physical evidence
related to the Ungars' murders, and all plaintiffs, with the
exception of plaintiff Strachman, are located in Israel or
elsewhere in the Middle East.   The PA defendants also contend
that courts "functioning and available in the immediate area" are
significantly more convenient, offer remedies substantially the
same as those available in the United States, and are familiar
with the law that will govern most issues in the case.   Defs.'
Mem. Supp. Mot. Dismiss Compl., p. 6-7.

Notably absent from the PA defendants' argument is the

naming of a _specific_ adequate alternative forum. The First Circuit has stated that "[i]n considering a forum non conveniens claim, an inquiring court should begin by determining the existence _vel_ _non_ of an adequate alternative forum for the prosecution of the action." _Iragorri_, 203 F.3d at 13. This Court cannot begin to evaluate whether an alternative forum is adequate where the PA defendants have failed to designate such a forum and without some degree of proof as to whether the alternative forum has jurisdiction over the subject matter and all defendants, and offers a remedy which is substantially the same as the one available in this Court. For these reasons, the PA defendants' motion to dismiss under the doctrine of forum non conveniens is denied.

III.   Conclusion

For the preceding reasons, the PA defendants' motion to dismiss for lack of subject matter jurisdiction is denied; the motion to dismiss for lack of jurisdiction over the person is granted as to the individual PA defendants: Arafat, Rajoub, Dahlan, Al-Hindi, Tirawi, and Jabali, but denied as to defendants PA and PLO; the motion to dismiss for improper venue is denied; the motion to dismiss for insufficient service of process is denied; the motion to dismiss for failure to state a claim with respect to Count I is granted as to plaintiff Estate of Efrat Ungar and plaintiffs Rabbi Uri Dasberg and Judith Dasberg, in

their individual capacities, but denied as to the remaining

plaintiffs; the motion to dismiss for failure to state a claim

with respect to Counts II, III, IV, and V is granted with leave

to amend; and the motion to dismiss for inconvenience of the

forum is denied.

It is so ordered:


Ronald R. Lagueux
U.S. District Court Judge
July 24 , 2001