UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

The Estates of YARON UNGAR and
EFRAT UNGAR by and through the
Administrator of their estates David
Strachman, DVIR UNGAR, minor,
by his guardians and next friend, YISHAI
UNGAR, minor, by his guardians
and next friend, PROFESSOR MEYER
UNGAR, JUDITH UNGAR, RABBI URI
DASBERG, JUDITH DASBERG,
(individually and in their capacity as legal
guardians of plaintiffs Dvir Ungar and
Yishai Ungar); AMICHAI UNGAR,
DAFNA UNGAR and MICHAL COHEN

PLAINTIFFS,

vs.                                                    00-105L

THE PALESTINIAN AUTHORITY
(A.K.A. "THE PALESTINIAN INTERIM
SELF-GOVERNMENT AUTHORITY"),
THE PALESTINE LIBERATION
ORGANIZATION, HAMAS -- ISLAMIC
RESISTANCE MOVEMENT (A.K.A.
"HARAKAT AL-MUQAWAMA AL-ISLAMIYYA"),
ABDEL RAHMAN ISMAIL ABDEL RAHMAN
GHANIMAT, JAMAL ABDEL FATAH TZABICH
AL HOR, RAED FAKHRI ABU HAMDIYA,
IBRAHIM GHANIMAT and IMAN MAHMUD
HASSAN FUAD KAFISHE

DEFENDANTS

**AMENDED COMPLAINT**

## INTRODUCTION

1.      This action is brought pursuant to federal counterterrorism statutes by the estates, survivors and heirs of Yaron Ungar, a United States citizen, and Efrat Ungar, who were murdered by machine-gun fire on June 9, 1996 near Beit Shemesh, Israel, for damages caused by defendants to plaintiffs by reason of acts of international terrorism, as defined in 18 U.S.C. §2331, and by reason of related tortious behavior.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter and over defendants pursuant to 18 U.S.C. §2333 and §2334 and the rules of supplemental jurisdiction.

3.      The district for Rhode Island is the proper venue pursuant to 18 U.S.C. §2334(a) since this action is brought by and in the name of the administrator of the estates of Yaron and Efrat Ungar, who is domiciled in this District.

## THE PARTIES

4.      The Estate of Yaron Ungar and the Estate of Efrat Ungar are represented in this action by a court-appointed administrator, attorney David Strachman, a resident and domiciliary of the State of Rhode Island.

5.      Plaintiffs DVIR UNGAR and YISHAI UNGAR at all times relevant hereto are and were the minor children and heirs-at-law of Yaron Ungar and Efrat Ungar.

6.      Plaintiffs PROFESSOR MEYER UNGAR and JUDITH UNGAR at all times relevant hereto are and were the parents of Yaron Ungar, and the legal guardians of plaintiffs

DVIR and YISHAI UNGAR, and bring this action both as legal guardians of plaintiffs DVIR and YISHAI UNGAR and in their individual capacity.

7.     Plaintiffs RABBI URI DASBERG and JUDITH DASBERG at all times relevant hereto are and were the parents of Efrat Ungar, and the legal guardians of plaintiffs DVIR and YISHAI UNGAR, and bring this action both as legal guardians of plaintiffs DVIR and YISHAI UNGAR and in their individual capacity.

8.     Plaintiffs AMICHAI UNGAR, DAFNA UNGAR and MICHAL COHEN at all times relevant hereto are and were siblings of Yaron Ungar.

9.     Defendant THE PALESTINIAN AUTHORITY, also known as THE PALESTINIAN INTERIM SELF- GOVERNMENT AUTHORITY, (hereinafter "PA") is and at all times relevant hereto was, a legal person as defined in 18 U.S.C. §2331(3), established by and existing under and by virtue of international instruments, customary international law and local law, in *de jure* and *de facto* control of territories in the Gaza Strip and in the West Bank.

10.     Defendant THE PALESTINE LIBERATION ORGANIZATION (hereinafter "PLO") is, and at all times relevant hereto was, a legal person as defined in 18 U.S.C. §2331(3), in *de jure* and *de facto* control of defendant PA, by virtue of being party to and beneficiary of the international instruments by which defendant PA was established.

11.     Defendant HAMAS -- ISLAMIC RESISTANCE MOVEMENT, also known as "HARAKAT AL-MUQAWAMA AL-ISLAMIYYA", (hereinafter HAMAS), is a legal person as defined in 18 U.S.C. §2331(3), which is based in and operates from territories controlled by defendants PA and PLO,  and which is dedicated to murdering Israeli and Jewish individuals through bombings, shootings and other violent means.

12.     Defendants ABDEL RAHMAN ISMAIL ABDEL RAHMAN GHANIMAT (hereinafter RAHMAN GHANIMAT), JAMAL ABDEL FATAH TZABICH AL HOR (hereinafter HOR), RAED FAKHRI ABU HAMDIYA (hereinafter ABU HAMDIYA), IBRAHIM GHANIMAT and IMAN MAHMUD HASSAN FUAD KAFISHE (hereinafter KAFISHE) are and at all times relevant hereto were, members, operatives and trained agents of defendant HAMAS.

## STATEMENT OF FACTS

13.     At all times relevant hereto, defendants PA and PLO were in *de jure* and *de facto* control of territories in the Gaza Strip and the West Bank.

14.     At all times relevant hereto, defendant HAMAS and its operatives and agents maintained and operated a leadership command, organizational hierarchy and operational infrastructure including, *inter alia*, training facilities and depots for storage of weapons and explosives in territories controlled by defendants PA and PLO.

15.     At all times relevant hereto defendants RAHMAN GHANIMAT, HOR, ABU HAMDIYA, IBRAHIM GHANIMAT, and KAFISHE were members of defendant HAMAS, and were collectively organized as a cell for the purpose of carrying out terrorist activities (hereinafter "the terrorist cell").

16.     The terrorist cell was subordinate to, and received instructions, weapons, money and material support from, commanders and leaders of defendant HAMAS who operated from territories controlled by defendants PA and PLO.

17.     At an unknown date or dates prior to June 9, 1996, defendants HAMAS, RAHMAN GHANIMAT, HOR, ABU HAMDIYA, IBRAHIM GHANIMAT, and KAFISHE

4

conspired, planned and made preparations to carry out a machine-gun attack on a random Israeli vehicle.

18.     On June 9, 1996, near Beit Shemesh in the State of Israel, defendants RAHMAN GHANIMAT and HOR, acting on behalf and as agents of defendant HAMAS and without provocation, opened fire from a moving vehicle with two Kalashnikov machine guns on a passenger car in which Yaron Ungar, Efrat Ungar and plaintiff YISHAI UNGAR were traveling (hereinafter: "the shooting attack").  Defendant ABU HAMDIYA drove the vehicle from which the shooting attack was carried out, on behalf of and as an agent of defendant HAMAS.

19.     Yaron Ungar and Efrat Ungar were struck and killed by bullets fired by defendants RAHMAN GHANIMAT and HOR in the shooting attack.

20.     On May 3, 1998, an Israeli court convicted defendant ABU HAMDIYA of membership in defendant HAMAS and of abetting the shooting murders of Yaron Ungar and Efrat Ungar. On October 21, 1998, an Israeli court convicted defendants RAHMAN GHANIMAT and HOR of membership in defendant HAMAS and of the shooting murders of Yaron Ungar and Efrat Ungar. On November 3, 1998, an Israeli court convicted defendant KAFISHE of membership in defendant HAMAS and of being an accessory to the shooting murders of Yaron Ungar and Efrat Ungar.

21.     Defendants' convictions estop them from denying the essential allegations of this complaint, pursuant to 18 U.S.C. §2333(c).

22.     Defendant IBRAHIM GHANIMAT is currently at large in the territory controlled by defendant P.A.  An Israeli court has issued a warrant for his arrest on charges relating to the murder of Yaron and Efrat Ungar. On September 17, 1997, the Israeli Justice Ministry submitted

to defendant PA a request for his arrest and extradition to Israel. Defendant PA has refused to honor this request, and continues to shelter defendant IBRAHIM GHANIMAT.

23.     Defendants PA and PLO are authorized and responsible, under international instruments, customary international law and local law applying in the West Bank and Gaza, to exercise law enforcement powers and to maintain public order and security in the territories under their control.

24.     At all times relevant hereto, defendants PA and PLO, by and through their officials, employees and agents, operated, maintained, managed, supervised, and controlled various police forces, militias, paramilitary forces, intelligence services, law-enforcement personnel, jails and penal institutions, in the territories under their control.

25.     During the period relevant hereto defendant HAMAS, operating from territories controlled by defendants PA and PLO, advocated, encouraged, solicited, facilitated, incited for, sponsored, organized, planned and executed acts of violence and terrorism against civilians in Israel, Gaza and the West Bank.  During the period relevant hereto defendant HAMAS carried out scores of terrorist attacks, murdering hundreds of civilians and injuring hundreds more.

26.     Among the hundreds of civilians murdered and wounded by HAMAS terrorist attacks during the period relevant hereto were over a dozen United States citizens. Prior to the murder of American citizen Yaron Ungar, defendant HAMAS, operating from territories controlled by defendants PA and PLO, murdered the following American citizens:  Nachshon Wachsman (October 14, 1994), Joan Davenny (August 21, 1995), Sara Duker, Matthew Eisenfeld, Ira Weinstein (all on February 25 1996), Yitzchak Weinstock (December 2, 1993) and David Boim (May 13, 1996).

27.    During the period relevant hereto the government of the United States, the Congress of the United States, and the government of the State of Israel repeatedly demanded from defendants PA and PLO that they take effective measures to prevent further terrorist attacks by defendant HAMAS, including: criminalizing the existence of and membership in HAMAS; the apprehension, prosecution and imprisonment of HAMAS' leadership and members; the closure of HAMAS' offices and facilities; the seizure of HAMAS' property and resources including funds, weapons and explosives, and; prosecuting HAMAS' incitement to violence and terrorism.

28.    Defendants PA and PLO refused and/or ignored American and Israeli demands to take effective measures to prevent further terrorist attacks by defendant HAMAS.

29.    On the contrary, at all times relevant hereto, defendants PA and PLO, by and through their officials, employees and agents acting within the scope and course of their employment and agency, pursuant to the authorization and instructions of defendants PA and PLO and in furtherance of the goals and purposes of defendants PA and PLO, provided defendant HAMAS with safe haven and a base of operations, by permitting and/or encouraging defendant HAMAS to operate freely and conduct activities in the territory under their control or in which they maintained a police presence, and to advocate, encourage, solicit, facilitate, incite for, sponsor, organize, plan and execute acts of violence and terrorism against Jewish civilians in Israel, Gaza and the West Bank.

30.    Moreover, during the period relevant hereto, the State of Israel submitted to defendant PA dozens of requests to surrender for prosecution members of defendant HAMAS suspected of or charged with terrorist murders, including individuals suspected of murdering United States citizens.

31.     Defendants PA and PLO have consistently refused these requests for the surrender of terrorist suspects, and at all times relevant hereto, provided shelter and safe haven to dozens of members of defendant HAMAS and other terrorist groups suspected of or charged with terrorist murders, including the murders of American citizens.

32.     Moreover, during the period relevant hereto, several members of defendant HAMAS and other terrorist groups suspected of or charged with terrorist murders, including murders of U.S. citizens, whose surrender was requested by Israel, were provided salaries and employment by defendant PA as policemen and/or security officials in the various police, security and intelligence forces under the control of defendant PA.

33.     In addition, defendants PA and PLO, at all times relevant hereto, by and through their officials, employees and agents acting within the scope and course of their employment and agency, pursuant to the prior authorization and instructions of defendants PA and PLO and in furtherance of the goals and purposes of defendants PA and PLO, granted material and financial support to the families of members of defendant HAMAS who had been captured or killed while carrying out acts of terrorist violence against Jewish civilians in Israel, Gaza and the West Bank, thereby providing defendant HAMAS and its members with strong financial incentive to continue to carry out violence and terrorism against such victims.

34.     At all times relevant hereto defendants PA and PLO and their officials, employees and agents knew that defendant HAMAS had committed hundreds of serious offenses against the United States, including the murder of U.S. citizens Nachshon Wachsman, Joan Davenny, Sara Duker, Matthew Eisenfeld, Ira Weinstein, Yitzchak Weinstock, and David Boim, and that defendant HAMAS planned to continue committing such offenses, yet defendants PA and PLO openly and consistently sheltered and received, relieved, comforted and assisted defendant

8

HAMAS and its operatives and agents, within the meaning of 18 U.S.C. § 3, in order to hinder and prevent their apprehension, trial and punishment.

35.     At all times relevant hereto defendants PA and PLO and their officials, employees and agents knew that defendant HAMAS had committed hundreds of serious offenses against the United States, including the murder of the aforementioned U.S. citizens, and that defendant HAMAS planned to continue committing such offenses, yet defendants PA and PLO openly and consistently provided defendant HAMAS and its members with safe haven, a base of operations, shelter, financial support and other material support and resources within the meaning of 18 U.S.C. § 2339A.

36.     Additionally, defendants PA and PLO and their officials, employees and agents solicited and advised defendants HAMAS, RAHMAN GHANIMAT, HOR, KAFISHA, ABU HAMDIYA and IBRAHIM GHANIMAT to commit the acts attributed to those defendants herein, and aided, abetted, authorized, ratified and participated in those acts.

37.     The acts and omissions of defendants PA and PLO described herein were committed by and through their officials, employees and agents acting within the scope and course of their employment and agency, with the authorization and ratification, and pursuant to the instructions. of defendants PA and PLO, and in furtherance of the goals and purposes of defendants PA and PLO.

**FIRST CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS THE ESTATE OF YARON UNGAR, DVIR UNGAR, YISHAI UNGAR, MEYER UNGAR, JUDITH UNGAR, AMICHAI UNGAR, DAFNA UNGAR AND MICHAL COHEN**
**INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. §2333**

9

38.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

39.    Defendants' acts constitute a violation of the criminal laws of the United States and of the several States, or would constitute criminal violations if committed within the jurisdiction of the United States and of the several states.

40.    The acts of defendants HAMAS, RAHMAN GHANIMAT, HOR, KAFISHA, ABU HAMDIYA and IBRAHIM GHANIMAT constitute, *inter alia*, without limitation, violations of 18 U.S.C. § 2332 (homicide of a U.S. national outside the United States).

41.    The acts of defendants PA and PLO, if committed within the jurisdiction of the United States, would constitute, *inter alia*, without limitation, violations of 18 U.S.C. § 3 ("Accessory After the Fact") and of 18 U.S.C. § 2339A ("Providing Material Support to Terrorists").

42.    The acts of defendants HAMAS, RAHMAN GHANIMAT, HOR, KAFISHA, ABU HAMDIYA and IBRAHIM GHANIMAT "appear to be intended to intimidate or coerce a civilian population," and ''to influence the policy of a government by intimidation or coercion," within the meaning of 18 U.S.C. § 2331, in light of the openly declared goals and purposes of defendant HAMAS and in light of admissions several of these defendants made at their trials.

43.    The acts of defendants PA and PLO "appear to be intended to intimidate or coerce a civilian population", and "to influence the policy of a government by intimidation or coercion," within the meaning of 18 U.S.C. §2331, because at all times relevant hereto, these defendants, themselves and through their respective representatives, spokesmen and organs: repeatedly praised and lauded defendant HAMAS and HAMAS operatives who had engaged in acts of terrorism and

violence against Jewish civilians and Israeli targets; praised, advocated, encouraged, solicited and incited for such terrorist acts; and threatened the further occurrence of such terrorist acts.

44.  Defendants' acts were dangerous to human life, by their nature and as evidenced by their consequences.

45.  Defendants' acts occurred outside the territorial jurisdiction of the United States.

46.  Defendants' action constitute acts of international terrorism as defined in 18 U.S.C. §§2331 and 2333. Defendants' behavior also constitutes aiding and abetting acts of international terrorism.

47.  By reason and as a result of the acts of international terrorism and the aiding and abetting of acts of international terrorism committed by defendants, Yaron Ungar was killed, thereby causing the decedent and plaintiffs Dvir Ungar, Yishai Ungar, Meyer Ungar, Judith Ungar, Amichai Ungar, Dafna Ungar and Michal Cohen severe injury, including: pain and suffering; loss of pecuniary support; loss of income; loss of consortium; emotional distress; loss of parental society and companionship and loss of solatium.

48.  For the reasons stated above, defendants are jointly and severally liable to plaintiffs the Estate of Yaron Ungar, Dvir Ungar, Yishai Ungar, Meyer Ungar, Judith Ungar, Amichai Ungar, Dafna Ungar and Michal Cohen.

### SECOND CLAIM FOR RELIEF
### AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS
### PURSUANT TO THE ISRAELI CIVIL WRONGS ORDINANCE §35
### NEGLIGENCE

49.  The preceding paragraphs are incorporated by reference as though fully set forth herein.

11

50.    In a Decision and Order given on July 24, 2001, this Court ruled that plaintiffs' supplemental causes of action be brought under and governed by Israeli law.

51.    Causes of action in tort in Israeli law are codified in the <u>Civil Wrongs Ordinance (New Version) - 1968</u>, (hereinafter "CWO"). The CWO provides that any person injured or harmed by the civil wrongs enumerated in the CWO is entitled to relief from the person liable or responsible for the wrong.

52.    CWO §12 provides that a person who participates in, assists, advises or solicits an act or omission, committed or about to be committed by another person, or who orders, authorizes, or ratifies such an act or omission, is liable for such act or omission.

53.    CWO §13 provides that an employer is liable for an act or omission committed by his employee, if the employer authorized or ratified the act or omission, or if the employee committed the act or omission in the course of his employment.

54.    CWO §14 provides that a person who employs an agent for the performance of an act or a category of acts is liable for everything the agent does in the performance of that act or category of acts, and for the manner in which the agent performs them.

55.    CWO §35 creates a "civil wrong" of Negligence.

56.    CWO §35 provides that a person is liable for the "civil wrong" of Negligence when he commits an act which a reasonable and prudent person would not have committed under the same circumstances; or refrains from committing an act which a reasonable and prudent person would have committed under the same circumstances; or, in the performance of his occupation, does not use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation would have used or exercised under the same circumstances, and thereby causes

damage to another person toward whom, under those circumstances he is obligated not to act as he did.

57.     CWO §36 provides that the obligation stated § 35 is toward all persons, to the extent that a reasonable person would have under the same circumstances foreseen that, in the ordinary course of events, they were liable to be injured by the act or omission.

58.     Defendants PA and PLO and their officials, employees and agents acting within the scope and course of their employment and agency and with authorization committed acts which a reasonable and prudent person would not have committed under the same circumstances, and refrained from committing acts which a reasonable and prudent person would have committed under the same circumstances, within the meaning of the CWO.

59.     Defendants PA and PLO and their officials, employees and agents acting within the scope and course of their employment and agency and with authorization and ratification did not, in the performance of their occupations, use the skill or exercise the degree of caution which a reasonable person qualified to act in those occupations would have used or exercised under the same circumstances, within the meaning of the CWO.

60.     Defendants' acted negligently in connection with Yaron and Efrat Ungar and the plaintiffs, toward whom, in the circumstances described herein, defendants had an obligation not to act as they did.  Defendants were obligated not to act as they did because a reasonable person would, under the same circumstances, have foreseen that, in the ordinary course of events, the decedents and plaintiffs were liable to be injured by defendants' acts and omissions described herein.

61.     Defendants' behavior constitutes Negligence under the CWO, and defendants' negligent behavior caused the death of Yaron Ungar and Efrat Ungar, thereby causing the

decedents and the plaintiffs severe injury and damage, including: death; pain and suffering; loss of pecuniary support; loss of income; loss of consortium; emotional distress; loss of parental society and companionship and loss of solatium.

62.     Defendants committed and are responsible for the civil wrong of Negligence under the CWO, and are therefore jointly and severally liable to the decedents and the plaintiffs for their damages and injuries resulting therefrom.

63.     Defendants PA and PLO and their officials, employees and agents solicited and advised defendants HAMAS, RAHMAN GHANIMAT, HOR, KAFISHA, ABU HAMDIYA and IBRAHIM GHANIMAT to commit the acts attributed to those defendants herein, and aided, abetted, authorized, ratified and participated in those acts, and all defendants are therefore jointly and severally liable for those acts pursuant to the CWO.

64.     The negligent acts and omissions of defendants PA and PLO described herein were committed by and through their officials, employees and agents acting within the scope and course of their employment and agency, with the authorization and ratification and pursuant to the instructions of defendants PA and PLO, and in furtherance of the goals and purposes of defendants PA and PLO.  Defendants PA and PLO are therefore vicariously liable under the CWO for the negligent acts and omissions of their officials, employees and agents.

### THIRD CLAIM FOR RELIEF
### AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS
### PURSUANT TO THE ISRAELI CIVIL WRONGS ORDINANCE §63
### BREACH OF STATUTORY OBLIGATION

65.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

66.    CWO §63 creates a "civil wrong" of Breach of Statutory Obligation defined as the failure to comply with an obligation imposed under any enactment, if the enactment is intended for the benefit or protection of another person, and if the breach caused that person damage of the kind or nature of damage intended by the enactment.

67.    CWO §63(b) provides that for the purpose of CWO §63, an enactment is deemed to have been enacted for the benefit or protection of a specific person, if intended for the benefit or protection of that person, or for the benefit or protection of persons in general, or of persons of a category or definition to which that specific person belongs.

68.    Defendants breached and failed to comply with obligations imposed upon them by numerous enactments, which were intended for the benefit and protection of persons in general, and for the benefit and protection of persons of the type, category and definition to which decedents and plaintiffs belong, within the meaning of the CWO.

69.    The statutory obligations breached by defendants include, without limitation, the provisions of the following enactments:

a.    The Penal Code - 1977: §300 (murder); §99 (aiding a terrorist organization); §498 (provision of means for commission of a felony); §499 (criminal conspiracy); §30 (solicitation of a crime); §31 (abetting a crime); §95 (non-prevention of national security offense); §262 (non-prevention of a felony).

b.    The Terrorism Prevention Ordinance - 1948: §2 (activity in a terrorist organization); §3 (membership in a terrorist organization); §4 (provision of support to a terrorist organization).

c.    The Defense Regulations (Emergency) - 1945: Reg. 58 (use of firearms against a person); Reg. 64 (provision of shelter or resources to national security offender);

Reg. 66 (abetting); Reg. 85 (membership in or provision of assistance to an illegal organization).

    d.    <u>The Agreement on the Gaza Strip and the Jericho Area of May 4, 1994</u> (which was enacted into local law): Article IX(2) (duty to prevent operation of irregular armed forces in PA areas); Article IX(3) (duty to prohibit possession of weapons and explosives in PA areas); Article XVIII (duty to prevent acts of terrorism); Annex III Article II (duty to surrender suspects).

    e.    <u>Interim Agreement on the West Bank and the Gaza Strip of September 28, 1995</u> (which was enacted into local law): Article XIV(3) (duty to prevent operation of irregular armed forces in PA areas); Article XIV(4) (duty to prevent possession of weapons and explosives in PA areas); Article XV (duty to prevent acts of terrorism); Annex I Article II (duty to act against terrorism, confiscate arms, arrest and prosecute terrorists) Annex IV Article II (duty to surrender suspects).

70.    Defendants' breach of their statutory obligations caused the deaths of Yaron and Efrat Ungar, and caused plaintiffs damage of the kind and nature intended to be prevented by the statutory enactments which were breached by defendants, including: death; pain and suffering; loss of income; loss of pecuniary support; loss of consortium; emotional distress; loss of parental society and companionship and loss of solatium.

71.    Defendants committed the "civil wrong" of Breach of Statutory Obligation CWO §63, and are therefore jointly and severally liable to the decedents and the plaintiffs for their damages and injuries resulting therefrom.

72.    Additionally, defendants PA and PLO and their officials, employees and agents solicited and advised defendants HAMAS, RAHMAN GHANIMAT, HOR, KAFISHA, ABU

HAMDIYA and IBRAHIM GHANIMAT to commit the breaches of statutory obligations attributed to those defendants herein, and aided, abetted, authorized, ratified and participated in those breaches, and all defendants are therefore jointly and severally liable for those acts pursuant to the CWO.

73.     PA and PLO breaches of statutory obligations were committed by and through their officials, employees and agents acting within the scope and course of their employment and agency, with the authorization and ratification and pursuant to PA and PLO instructions, and in furtherance of their goals and purposes. PA and PLO are therefore vicariously liable under the CWO for the breaches of statutory obligations committed by their officials, employees and agents.

## FOURTH CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS
## PURSUANT TO THE ISRAELI CIVIL WRONGS ORDINANCE §23
## ASSAULT

74.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

75.     CWO §23 creates a "civil wrong" of Assult defined as the intentional use of any kind of force, directly or indirectly, against a person's body, in any manner, without that person's consent; or an attempt or threat, by act or gesture, to use force against a person's body, when the person making the attempt or threat can be reasonably assumed to be have the intent and ability to carry out the attempt or threat.

76.     Defendants HAMAS, RAHMAN GHANIMAT, HOR, KAFISHA, ABU HAMDIYA and IBRAHIM GHANIMAT intentionally used force against Yaron and Efrat Ungar without consent.

77.     Defendants HAMAS, RAHMAN GHANIMAT, HOR, KAFISHA, ABU HAMDIYA and IBRAHIM GHANIMAT attempted to use force against YISHAI UNGAR.

78.     The acts of defendants HAMAS, RAHMAN GHANIMAT, HOR, KAFISHA, ABU HAMDIYA and IBRAHIM GHANIMAT constitute the civil wrong of Assault pursuant to the CWO.

79.     Defendants PA and PLO and their officials, employees and agents solicited and advised defendants HAMAS, RAHMAN GHANIMAT, HOR, KAFISHA, ABU HAMDIYA and IBRAHIM GHANIMAT to commit the assault attributed to those defendants herein, and aided, abetted, authorized, ratified and participated in that assault, and all defendants are therefore jointly and severally liable for that assault pursuant to the CWO.

80.     The acts and omissions of defendants PA and PLO described herein were committed by and through their officials, employees and agents acting within the scope and course of their employment and agency, with the express authorization and ratification and pursuant to the instructions of defendants PA and PLO, and in furtherance of the goals and purposes of defendants PA and PLO. Defendants PA and PLO are therefore vicariously liable under the CWO for the acts and omissions of their officials, employees and agents.

81.     The assault for which defendants are liable caused the death of Yaron and Efrat Ungar, and caused decedents and plaintiffs severe harm and damage, including: death; pain and suffering; loss of income; loss of pecuniary support; loss of consortium; emotional distress; loss of parental society and companionship and loss of solatium.

82.    Defendants are therefore jointly and severally liable to the decedents and the plaintiffs for their damages and injuries resulting from the assault.

WHEREFORE, Plaintiffs request judgment against the Defendants jointly and severally, for each of the above causes of action, for compensatory damages, costs and attorneys' fees in the amount of $250,000,000 and punitive damages, and such other relief as the Court finds just and equitable.

Plaintiffs demand trial by jury.

Plaintiffs by their Attorneys,
McIntyre, Tate, Lynch & Holt

David J. Strachman Bar #4404
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700

I herbey certify that on August 13 2001 a copy of this Amended Complaint was mailed to Ramsey Clark and Lawrence Schilling, 36 East 12th St., New York, New York 10003 and Deming Sherman, Edwards and Angell LLP, 2800 Bank Boston Plaza, Providence, RI 02903.