UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * *

THE ESTATE OF YARON UNGAR,          C.A. NO. 00-105L
AND OTHERS

VS.                                  PROVIDENCE, R.I.
                                     JUNE 7, 2002

THE PALESTINIAN AUTHORITY AND THE
PALESTINIAN LIBERATION ORGANIZATION

* * * * * * * * *

BEFORE SENIOR DISTRICT JUDGE RONALD R. LAGUEUX

APPEARANCES:
FOR THE PLAINTIFFS:        DAVID J. STRACHMAN, ESQ
                           32 SOUTH MAIN STREET
                           SUITE 400
                           PROVIDENCE, R.I. 02903
                           351-7700

FOR THE DEFENDANTS:        LAWRENCE W. SCHILLING, ESQ.
                           36 EAST 12TH STREET
                           NEW YORK, NEW YORK 10003
                           212-475-3232

                           DEMING E. SHERMAN, ESQ.
                           EDWARDS & ANGELL
                           274-9200

Court Reporter:            JOSEPH A. FONTES
                           Two Exchange Terrace
                           Providence, RI 02903
                           401-273-0344

Proceeding reported and produced by computer-aided
stenography

```
 1   JUNE 7, 2002 - MORNING SESSION
 2              THE COURT:  Good morning, everyone.  The
 3   matter before the Court is Civil Action 2000-105 L, the
 4   Estate of Yaron Ungar, and others versus the
 5   Palestinian Authority and the Palestinian Liberation
 6   Organization.  The matter is here on defendant's motion
 7   to dismiss the complaint.  Will the attorneys identify
 8   themselves for the record please.
 9              MR. STRACHMAN:  David Strachman for the
10   plaintiffs.
11              MR. SCHILLING:  Lawrence Schilling, your
12   Honor, for the defendants.
13              MR. SHERMAN:  Deming Sherman for the
14   defendants.
15              THE COURT:  All right.  It's the motion of
16   the defendants.  So I'll hear that side first.
17   Mr. Schilling.
18              MR. SCHILLING:  Thank you, your Honor.  Your
19   Honor, Mr. Clark lead counsel is unable to be here. He
20   asked me to express his regrets to you and to send his
21   regards.  As your Honor indicated, we have on the table
22   today the defendant's motion to dismiss the amended
23   complaint which carries with it a request, in the
24   alternative, for certification of an interlocutory
25   appeal.  We also have pending a motion to assert
```

```
 1   defenses under Section 2337-2 of Title 18 which is part
 2   of the statute involved here as well as sovereign
 3   immunity.
 4              THE COURT:  Well, that's an affirmative
 5   defense and we haven't reached that stage of the case
 6   yet.
 7              MR. SCHILLING:  Well, your Honor, I think
 8   that 2337 goes either to subject matter jurisdiction,
 9   or to legal sufficiency of the claim because the
10   language of the statute begins, "No action shall be
11   maintained..." And in the legislative history that the
12   plaintiffs called to our attention, there is the
13   statement by Mr. Kresco that no cause of action for
14   international terrorism exists against foreign states.
15   So the plaintiffs --
16              THE COURT:  Well, that depends on the facts,
17   the facts as developed.  And on a motion to dismiss I
18   only determine the sufficiency of the complaint.
19              MR. SCHILLING:  Well, if it's a question of
20   immunity.  If the defendants are correct in their
21   argument that Palestine is a foreign state, I think the
22   application of 2337 becomes pretty clear.
23              THE COURT:  Well, that motion is really not
24   before me, I'm not considering it.  I'm only
25   considering the motion to dismiss today.
```

```
 1              MR. SCHILLING:  I'd also point out, your
 2   Honor, as I think we mentioned in one of our motions
 3   for a protective order, that --
 4              THE COURT:  Well, that's not before me
 5   either.
 6              MR. SCHILLING:  I understand.  But the
 7   certification may be unnecessary.  If the -- because
 8   the denial of an immunity defense -- defense for
 9   sovereign immunity is appealable, directly appealable,
10   as an interlocutory order.  So I think that that's, you
11   know, an additional wrinkle here.  The motion to
12   dismiss asserts in part that the, that the claims of
13   the plaintiffs are nonjusticiable and, basically, the
14   claims are that there's been an inadequate exercise of
15   police power by the Palestinian authority and the PLO.
16   The relationship in failing to prevent the incident
17   that occurred to the Ungars, and in failing to control
18   HAMAS generally.
19              THE COURT:  Well, that all raises factual
20   matters.  I can't make factual findings at this point
21   in the litigation.  That's going to require discovery,
22   it's going to require the development of the facts.
23   I'm here only to judge the sufficiency of the complaint
24   on a motion to dismiss.
25              MR. SCHILLING: Yeah, but you  --
```

```
 1              THE COURT:  You could have answered the
 2    case.  You could have asserted defenses, and you could
 3    have then made a motion for summary judgment at the
 4    appropriate time if you thought you had the factual
 5    matters not in dispute would result in that
 6    disposition.  But here, this is a motion to dismiss and
 7    it's very limited.  And the case that you sent me
 8    yesterday from the Seventh Circuit that was just
 9    decided a couple of days ago stresses that.  And all
10    that's necessary is a short concise statement of the
11    cause of action by the plaintiffs in this case.  And if
12    they've stated a cause of action that could be
13    supported by facts, then the complaint survives.  Then
14    it's a factual matter.
15              MR. SCHILLING:  Well, I recognize that, your
16    Honor.  But the issues that are raised, this complaint,
17    is actually, in order to see its full political effect
18    needs to be seen as related to two other actions that
19    are in the District of Columbia being brought also
20    against the PA, the PLO, and officials.
21              THE COURT:  Well, I'm not concerned with
22    those two actions, I'm concerned with this one and
23    whether a cause of action has been stated.
24              MR. SCHILLING:  Well, the --
25              THE COURT:  I've already ruled that a cause
```

```
 1   of action was stated under the Anti-Terrorism Statute.
 2           MR. SCHILLING:  Yes, sir, and  --
 3           THE COURT:  I've already ruled on that.
 4           MR. SCHILLING:  -- and we've asked you to
 5   reconsider that in the motion, and ask that there be a
 6   certification of that matter for an interlocutory
 7   appeal as did happen in the Boim Case.
 8           THE COURT:  So, your motion really comes
 9   down to a discussion of whether there is a cause of
10   action stated in each of the separate counts under
11   Israeli Law.  That's what it amounts to.  And you're
12   telling me there is no justiciable controversy in that
13   area?
14           MR. SCHILLING: No, we're saying that when
15   this case is viewed together with the other cases,
16   what's seen here is that there's been an all out
17   attack, largely political, on the PLO and the PA.
18   The actions in D.C. involve an incident -- carefully
19   selected, involve an incident in the GASA Strip, and
20   another incident in East Jerusalem, so that the three
21   cases all together bring in the entire Palestinian
22   Leadership, and the charges against them are very
23   extreme and almost impossible to prove or disprove.
24           THE COURT:  Well, that's the problem.
25           MR. SCHILLING:  But that's what makes --
```

            THE COURT: Theoretically there may be a cause of action here, but then it may be very difficult to prove. But that's something that we'll have to face at some later time.

            MR. SCHILLING: Well, except that nonjusticiability often is recognized when there is a lack of judicial standards by which to judge the issues that are being tendered. Now, the extent to which the PA and the PLO should have controlled, if that's the right word, HAMAS, raises all sorts of political considerations including popular support for the PA and the PLO. And, it's, you know, it's something that I think a court will be unable to judge. And that's why we make the argument. I would like to return though, your Honor, to the question of immunity and the effect of Section 2337--

            THE COURT: All right.

            MR. SCHILLING: -- because I do think that those should be considered at this time. I would point out that on that motion, the plaintiffs opposed granting leave for the Court to consider these matters, but did not reach the merits themselves. They said they'd hold back on it. Now we've raised these matters in the two actions down in the District of Columbia and the answer to these defenses is due in one of these

```
 1   cases on June 23.  There's also in the District of
 2   Columbia, your Honor, a case brought by these
 3   plaintiffs against Iran, Ungar versus Iran.  It's got
 4   some parallels to this case.  For example, there's been
 5   a motion in that case for the Court to sign a judicial
 6   request under the Hague Convention for documents.  I
 7   believe your Honor has a request of that kind in this
 8   case.  The request was granted down in D.C. so it
 9   really moots the request here.  The Court down in D.C.,
10   I think observed that the action up here was not called
11   to its attention by the parties.  And so far as I know,
12   the case down in D.C. hasn't been called to your
13   attention either.  But we learned of it fairly
14   recently.  We think that there's no real question that
15   the -- excuse me.  That the PA and the PLO meet the
16   definition of estate as it's set forth in the
17   restatement of American Foreign Law.  It's an entity
18   that has a defined territory, a permanent population,
19   it's under the control of its own Government, and
20   engages in and has the capacity to engage in formal
21   relations with other Governments.
22              THE COURT:  But that requires a development
23   of facts.  I don't accept those facts.
24              MR. SCHILLING:  Well, --
25              THE COURT:  I don't accept those facts as
```

1  true.  I don't have any way of judging them, they'll
2  have to be developed.
3          MR. SCHILLING:  Well, we would request that
4  they be developed, your Honor, because the question of
5  immunity.
6          THE COURT:  Well, that has no bearing on a
7  motion to dismiss.  We'll develop those after the
8  motion to dismiss is denied and this case moves on --
9          MR. SCHILLING:  Yeah, but the question --
10         THE COURT:  -- and there's discovery.
11         MR. SCHILLING:  The question of immunity and
12 a question of this sort, as we say, goes -- may well go
13 to subject matter jurisdiction.  And, generally
14 speaking, a defense of immunity needs to be disposed of
15 before there is any discovery, except for discovery
16 that may be necessary to determine the issue itself.
17         THE COURT:  That's right.  That's just what
18 I'm telling you.
19         MR. SCHILLING:  Yes.
20         THE COURT:  That's just what I'm telling
21 you, those facts will have to be developed so that I
22 can make a decision on whether there's sovereign
23 immunity in this case.
24         MR. SCHILLING:  I guess what I'm reacting to
25 is there is a -- there are discovery requests that the

```
 1  plaintiff has made that covered the waterfront and I'm
 2  I guess  --
 3          THE COURT:  Well, those will be dealt with
 4  later by the Magistrate Judge.  Right now, I'm
 5  concerned with a motion to dismiss the second
 6  complaint.  The amended complaint that sets forth a
 7  cause of action under the Anti-Terrorism Statute and
 8  sets forth three causes of action under Israeli Law
 9  pursuant to my prior decision.
10          MR. SCHILLING:  I guess the point I'm making
11  though, your Honor, is that there should be a -- on a
12  motion to dismiss the Court has the option and
13  discretion to make whatever factual inquiries may seem
14  appropriate, and I'm  --
15          THE COURT:  No, I can't.  I can't make
16  factual determinations on a motion to dismiss.  I have
17  to accept the pleadings as true.
18          MR. SCHILLING:  But you have the option to
19  treat it as a motion, say for summary judgment and take
20  into account.
21          THE COURT:  Oh, well, if we're going to
22  treat it as a motion for summary judgment we're going
23  to have a lot, a lot, of pretrial discovery.
24          MR. SCHILLING:  But, what I'm saying --
25          THE COURT:  We're going to have a lot of
```

1   discovery and we're not going to try it as a battle of
2   affidavits.
3               MR. SCHILLING:  What I'm saying, your Honor,
4   is that the effect of Section 2337 should be given
5   priority. And if there's any discovery, -- I'm not sure
6   what discovery is necessary because they haven't
7   responded to the arguments.  They haven't said why they
8   think that the Palastine Authority is not, is not a
9   foreign state. If it is a foreign state, the
10  application of 2337 seems straightforward.  No action
11  shall be maintained against it.  And I submit that
12  that's something that needs to be adjudicated first.
13  And if that motion -- if that defense is denied, I'm
14  not sure it's a defense, It may go to subject matter or
15  legal sufficiency.  There's an interlocutory appeal as
16  of right. And for that reason I think that it should
17  get priority.
18              THE COURT:  All right.
19              MR. SCHILLING:  Thank you, your Honor.
20              THE COURT:  Mr. Strachman.
21              MR. STRACHMAN:  Thank you, your Honor.
22  Judge, your Honor, I don't want to repeat what we
23  extensively briefed, both parties extensively briefed,
24  but I think what's significant is, as your Honor framed
25  the issue today as to what is before us today.

1  A simple, the second motion to dismiss that was filed
2  after we filed our amended complaint. As to that
3  motion, and I say this respectfully, virtually nothing
4  that my brother just mentioned is relevant to that
5  motion. There may be another motion he wants to file,
6  there may be all kinds of issues with discovery and
7  other potential cases. It has nothing to do with the
8  issues that they raise in their second motion to
9  dismiss the amended complaint. They raise no issues in
10 that motion as to the sufficiency of the three Israeli
11 causes of action. In fact, they virtually do not
12 mention them in their entire brief. What they do say is
13 that there no justiciable standard. And I would just
14 direct the Court to the Klinghoffer Case when the same
15 issue was raised, the same argument, by same counsel
16 without the benefit of our present statute. The
17 Klinghoffers were murdered, I believe, -- Klinghoffer
18 was murdered in 1986. Our statute was enacted in 1991,
19 and then again in '92. There is in that case, the
20 Second Circuit said, "We're faced with an ordinary tort
21 suit." And that's exactly what we have here, a very
22 ordinary tort suit. It has nothing to do with the
23 political movement or political causes, it has to do
24 with a simple murder of a young man and his wife, and
25 whether in fact we can prove the standards that are

1  clearly demarcated in the statute.  And we have very
2  clear definitional statutes, 2333 and 2339 clearly
3  define what the standards are for this Court to make an
4  inquiry at trial.
5          THE COURT:  Now you're talking about the
6  Anti-Terrorism Act?
7          MR. STRACHMAN:  That's right.
8          THE COURT:  You're not talking about the
9  Israeli cause of action?
10         MR. STRACHMAN: That's right. But even in the
11 Israeli cause of action, as we've demonstrated in our
12 brief, those causes of action were basically
13 codification of British and American Common Law.  Very
14 simple claims for negligence, et cetera.  And my
15 Brother's raise the argument in their brief that there
16 are no standards.  The standards are very clear,
17 they're crystal clear. They were so clear that
18 Klinghoffer, without the benefit of our present
19 statute, and without a definition of International
20 Terrorism, and without the whole legislative history
21 and whole body of law regarding the terrorism
22 legislation, said that clear and well settled rules of
23 law can easily -- which can easily be relied on can be
24 utilized in that case.  All the more so now when we
25 fast forward several years later and have the benefit

```
 1  of the anti-terrorism legislation.  The attempt by the
 2  defendants to make this into a political case has --
 3  there's just no basis for it.  It's a very simple
 4  claim, it should be tried in a simple manner. It's no
 5  different than numerous other cases that happen to
 6  involve people who end up in the newspapers everyday.
 7  The mere fact that they're in the newspapers, the mere
 8  fact -- and I say that because we've repeatedly had
 9  clippings of the New York Times attached to briefs as
10  to where Mr. Arafat is, and whether he can respond on
11  time, et cetera.  That has nothing to do with it.
12  Either they are responsible under the law and we can
13  peg them to the categories and definitions of the law
14  or we can't.  And I agree with, I think, your Honor's
15  analysis that we need to simply just move this case
16  forward.  It's now been 27 months since the complaint
17  was filed.  Your Honor wrote a lengthy detailed
18  decision.  My brothers now raise on the fourth time
19  they're taking in their motion which is not before us,
20  but which is the motion to for leave to add even new
21  defenses.  This is now their fourth response to this
22  court, and they are now asking to raise these new
23  defenses that were explicitly and implicitly waived,
24  and we briefed that very clearly in our response to
25  their motion for leave to amend their second motion.
```

```
 1   They've waived these issues. They can't come back into
 2   this court every other week and say they've got a new
 3   defense.  The law is clear.
 4           THE COURT:  Well those defenses -- defenses
 5   have to be pleaded.  And when an answer is filed, if I
 6   deny the motion to dismiss, an answer is filed and they
 7   can plead their defenses and then we'll deal with
 8   those.  Either by motions for summary judgment or
 9   whatever other motions.
10           MR. STRACHMAN:  In conclusion, your Honor, I
11   would just like to ask that when your Honor feels it's
12   appropriate, now, or later today, or at another time.
13   I would like the Court to address some matters that
14   have been outstanding.  The Hague request that we made,
15   for a Hague letter was filed in July of 2000.  It
16   simply requires the Court to sign the letter requesting
17   the documents that we'd like to have from the Israeli
18   Government. They can be transferred here. There's a
19   bureaucracy in Israel.  The Justice Ministry would need
20   to get the records, we could share them with my brother
21   and we could get that underway.  The discovery motions
22   that we have pending, as my Brother mentioned,
23   discovery was filed in January after we filed our
24   amended complaint. At some point I would request that
25   your Honor allow us to deal with the motions to compel
```

1  and also the motions for protective orders that my
2  brother filed. And lastly, Judge, we -- this Court
3  entered default against HAMAS, a co-defendant, in
4  September of 2000. There's some very significant
5  reasons why we'd like to move forward on a damage
6  hearing. We renewed our request, I believe in January
7  for hearing. My brothers did not object and
8  specifically indicated that they were not objecting to
9  us going forward on that. Since, recent events in the
10 last year, the Government -- our Government has
11 confiscated HAMAS assets. We'd like to move forward to
12 obtain judgment against HAMAS. And I would appreciate
13 it if your Honor could consider these issues which have
14 been outstanding for some time. Thank you.
15         THE COURT: Those are all matters that will
16 be dealt with by the Magistrate Judge after I've ruled
17 on this motion to dismiss.
18    I'm going to take this matter under advisement and
19 I'm going to write another -- yet another opinion on
20 the subject. I want to point out to you that the
21 Klinghoffer Case was brought under the Death On The
22 High Seas Act, so that there was a statutory basis for
23 that action. Mr. Klinghoffer was thrown off the boat
24 in the Mediterranean and so that was the basis for the
25 action.

1    Here, now you have the Anti-Terrorism Statute and
2 the elements that Congress has set forth for proof of a
3 claim, and so you're relying on the Anti-Terrorism
4 Statute.  I've already ruled that you've set forth a
5 cause of action under the Anti-Terrorism Statute.
6    All right.  I'll take this matter under advisement
7 and I'll write an opinion.  I'll try to do that as
8 expeditiously as possible, but I've got some other
9 matters ahead of it and I'll get to it when I can.
10            MR. STRACHMAN: Thank you, your Honor.
11            MR. SCHILLING:  Thank you, your Honor.
12            THE COURT:   Thank you.
13            THE CLERK:   All rise.
14
15 (R E C E S S)

```
 1
 2
 3                    C E R T I F I C A T I O N
 4
 5        I hereby certify that the foregoing is a correct
 6   transcript from the record of proceedings in the
 7   above-entitled matter.
 8
 9
10   _____
11   JOSEPH A. FONTES
12
13   _____
14   Date
15
...
25   .
```

Signature: *Joseph A. Fontes*
Date: *June 12, 2002*