UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

The Estates of YARON UNGAR )
and EFRAT UNGAR, by and )
through the Administrator of )
their estates David Strachman;)
DVIR UNGAR, minor, by his )
guardians and next friend; )
YISHAI UNGAR, minor, by his )
guardians and next friend; )
PROFESSOR MEYER UNGAR, JUDITH )
UNGAR, RABBI URI DASBERG, )
JUDITH DASBERG, (individually )
and in their capacities as )
legal guardians of plaintiffs )
Dvir Ungar and Yishai Ungar); )
AMICHAI UNGAR; DAFNA UNGAR )
AND MICHAL COHEN, )
)
            Plaintiffs )
)
        v. )        C.A. No. 00-105L
)
THE PALESTINIAN AUTHORITY )
(A.K.A. "THE PALESTINIAN )
INTERIM SELF-GOVERNMENT )
AUTHORITY"), THE PALESTINE )
LIBERATION ORGANIZATION, )
YASSER ARAFAT, JIBRIL RAJOUB, )
MUHAMMED DAHLAN, AMIN )
AL-HINDI, TAWFIK TIRAWI, RAZI )
JABALI, HAMAS - ISLAMIC )
RESISTANCE MOVEMENT (A.K.A. )
"HARAKAT AL-MUQAWAMA )
AL-ISLAMIYYA"), ABDEL RAHMAN )
ISMAIL ABDEL RAHMAN GHANIMAT, )
JAMAL ABDEL FATAH TZABICH AL )
HOR, RAED FAKHRI ABU HAMDIYA, )
IBRAHIM GHANIMAT and IMAN )
MAHMUD HASSAN FUAD KAFISHE, )
)
            Defendants )

DECISION AND ORDER

Ronald R. Lagueux, Senior United States District Judge

Plaintiffs filed this amended action for damages under the federal counterterroism statutes, 18 U.S.C. § 2333 (2000) et seq. after Yaron Ungar, a United States citizen, and his wife, Efrat Ungar, were killed in Israel by the terrorist group Hamas. As part of what was initially enacted as the Antiterrorism Act of 1991 ("ATA"),[1] section 2333 provides a cause of action for any national of the United States who was injured in his or her person, property, or business by reason of an act of international terrorism. Section 2333 also permits the estate, survivors or heirs of any national injured by an act of international terrorism to bring suit in any appropriate United States district court. The amended complaint names the Palestinian Authority ("PA"), and the Palestine Liberation Organization ("PLO") as defendants ("the PA defendants"), as well as Hamas and the individual Hamas members responsible for the Ungars' deaths.

This matter is before the Court on the PA defendants' motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted and, in the alternative, for

---

[1] Sections 2331-2338 were originally enacted in 1990 as part of the Antiterrorism Act of 1990, Pub.L. No. 101-519, sec. 132, 104 Stat. 2250-2253 (1990). This Public Law, however, has no currently effective sections. Nevertheless, these sections were subsequently re-enacted as part of the Federal Courts Administration Act of 1992, Pub.L. No. 102-572, sec. 1003(a)(1)-(5) 106 Stat. 4521-4524 (1992).

2

certification of an interlocutory appeal under 28 U.S.C. §
1292(b) (2000) and a corresponding stay pending disposition of
the motion for certification and/or appeal.  In light of this
Court's July 24, 2001 opinion deciding a comparable motion to
dismiss in this case, this Court today concludes that the PA
defendants' motion to dismiss must be denied.  Likewise, the PA
defendants' motion for certification of an interlocutory appeal
and a stay pending disposition of the motion and/or appeal is
denied in accordance with the broad discretion granted to United
States district courts under 28 U.S.C. § 1292(b).

I.  Background

     As this Court discussed in its opinion in <u>The Estates of
Ungar ex rel. Strachman v. The Palestinian Authority</u>, 153 F.
Supp. 2d 76 (D.R.I. 2001) ("<u>Ungar I</u>"), on June 9, 1996, Yaron and
Efrat Ungar were traveling home from a wedding in Israel with
their nine month old son, plaintiff Yishai Ungar, when a vehicle
driven by defendant Raed Fakhri Abu Hamdiya ("Abu Hamdiya")
approached the Ungars' vehicle.  Defendants Abdel Rahman Ismail
Abdel Rahman Ghanimat ("Rahman Ghanimat") and Jamal Abdel Fatah
Tzabich Al Hor ("Hor"), opened fire on the Ungars' car killing
both Yaron and Efrat.  Yishai Ungar was not injured in the
attack.  Plaintiff Dvir Ungar, the Ungar's older son, was not in
the car at the time.

     Abu Hamdiya, Rahman Ghanimat, Hor and defendant Iman Mahmud

3

Hassan Fuad Kafishe ("Kafishe") were convicted by Israeli courts for their membership in Hamas and on charges relating to the murders of Yaron Ungar and Efrat Ungar. A warrant was issued for the arrest of defendant Ibrahim Ghanimat on charges relating to the murders of the Ungars, but he remains at large and is believed to be residing within territory controlled by defendant PA.

David Strachman ("Strachman") was appointed administrator of the Estates of Yaron and Efrat Ungar by an Israeli court on October 25, 1999. Strachman filed suit in this court on March 13, 2000 pursuant to 18 U.S.C. § 2333 et seq. seeking damages on behalf of plaintiffs under the ATA.

In Ungar I, this Court determined that it had subject matter jurisdiction in this case and also personal jurisdiction over the PA defendants. This Court also held that venue and service of process were proper and denied the PA defendants' motion to dismiss for inconvenience of the forum. This Court dismissed claims involving the Estate of Efrat Ungar pursuant to 18 U.S.C. § 2333, because Efrat Ungar did not qualify as a national of the United States under the statute. This Court also denied the PA defendants' motion to dismiss with regard to the remaining counts under § 2333. As for the state law claims for death by wrongful act, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress, this Court

4

granted defendants' motion to dismiss and granted plaintiffs
leave to amend, because plaintiffs failed to plead those causes
of action under Israeli law as required by Rhode Island's choice
of law rules in tort matters.

Plaintiffs subsequently filed an amended complaint on August
23, 2001.  Plaintiffs' amended complaint states four causes of
action.  With the exception of Count I, all claims are brought on
behalf of all plaintiffs as against all defendants.  Count I of
the amended complaint which is brought only on behalf of
plaintiffs The Estate of Yaron Ungar, Dvir Ungar, Yishai Ungar,
Meyer Ungar, Judith Ungar, Amichai Ungar, Dafna Ungar and Michael
Cohen, alleges that defendants engaged in acts of international
terrorism as defined in 18 U.S.C. §§ 2331 and 2333 and that
defendants' behavior likewise constitutes aiding and abetting
acts of international terrorism.  Pursuant to the Israeli Civil
Wrongs Ordinances, Counts II, III and IV of the complaint allege
negligence, breach of statutory obligation, and assault,
respectively.

The factual basis for each claim is essentially the same.
Plaintiffs allege that the PA defendants repeatedly praised
defendant Hamas and its operatives who engaged in terrorist
activities and violence against Jewish civilians and Israeli
targets.  See Pls.' Am. Compl. ¶ 43.  Plaintiffs also allege that
the PA defendants "praised, advocated, encouraged, solicited and

incited" terrorist activities.  <u>Id.</u>  Furthermore, Plaintiffs allege that as a result of the acts of international terrorism and the aiding and abetting of acts of international terrorism committed by the individually named defendants, Yaron and Efrat Ungar were killed, thereby causing the decedents and named plaintiffs severe physical, emotional and financial injury.  <u>See</u> <u>id.</u> ¶ 47.

Plaintiffs assert in the amended complaint (Count I) that the actions of the defendants constitute acts of international terrorism pursuant to 18 U.S.C. § 2331 because those actions: (1) constitute a violation of the criminal laws of the United States and would constitute criminal violations if committed within the jurisdiction of the United States, (2) appear to be intended to intimidate or coerce a civilian population and to influence the policy of a government by intimidation or coercion, and (3) occurred outside the United States.  <u>See id.</u> ¶¶ 41-43.

In Count II, plaintiffs allege that pursuant to Israeli law codified in § 35 of the <u>Civil Wrongs Ordinance (New Version) –</u> <u>1968</u>, ("CWO") the defendants acted negligently.  Plaintiffs allege that the PA defendants were obligated not to act as they did since a reasonable person under the same circumstances would have foreseen that in the ordinary course of events the plaintiffs would likely be injured by defendants' acts and omissions.  <u>See id.</u> ¶ 60.  Plaintiffs allege that the PA

6

defendants and their agents, acting within the scope of their employment and agency, did not use the skill or exercise the degree of caution which a reasonable person would have used under similar circumstances. See id. ¶ 59.

Similarly, plaintiffs allege in Counts III and IV that defendants violated CWO § 63 (breach of statutory obligation) and CWO § 23 (assault). Section 63 provides a cause of action for failure to comply with an obligation imposed under any enactment of the CWO. Plaintiffs, allege, for example, that some of the statutory obligations breached by defendants include § 300 (murder), § 3 (membership in a terrorist organization), and Article XV of the Interim Agreement on the West Bank and the Gaza Strip of September 28, 1995 which has been enacted into law and imposes a duty upon officials to prevent acts of terrorism in the region.[2] See id. ¶ 69(a)-(b), (d). Section 23, on the other hand, provides a cause of action for the intentional use of any kind of force against a person's body without that person's consent. Plaintiffs allege that Hamas and the individually named Hamas defendants attempted to use and intentionally used force against the Ungars without their consent. Id. ¶¶ 76-77. Plaintiffs further contend that the PA defendants solicited and advised the Hamas defendants to commit the alleged assault and

---

[2]Plaintiffs allege the violation of a multitude of other statutory obligations. For a complete list, see ¶ 69 of plaintiff's amended complaint.

that the PA defendants aided and abetted the commission of that assault. Id. ¶ 79.

On November 28, 2001, the PA defendants filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the amended complaint against them as non justiciable and for failure to state a claim upon which relief can be granted.  In the alternative, the PA defendants moved for certification of an interlocutory appeal to the Court of Appeals pursuant to 28 U.S.C. § 1292(b) and a stay pending disposition of the motion and/or appeal.  Plaintiffs objected to the PA defendants' motion, and a hearing was scheduled on the matter.

Thereafter, on June 7, 2002, this Court held a hearing on the PA defendants' motion to dismiss.  At the conclusion of the hearing, the Court took the matter under advisement.  The matter is now in order for decision.

II.  Discussion

The PA defendants' motion to dismiss the amended complaint is made on several grounds.  First, the PA defendants assert that a lack of existing manageable judicial standards in conjunction with the difficulties that may exist in obtaining information in the present case render these claims non justiciable.  Second, the PA defendants ask that this Court reconsider its prior decision to deny the PA defendants' motion to dismiss on the grounds that the amended complaint fails to state a claim upon

which relief can be granted. Finally, the PA defendants move in the alternative for certification of an interlocutory appeal and a stay pending disposition of the application for certification and/or appeal. This Court will deal with each of the PA defendants' arguments in turn.

A. Motion to Dismiss

In ruling on a motion to dismiss, the Court examines the complaint as a whole and construes it in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. See Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998). Federal Rule 8(a)(2) requires a plaintiff to set forth in the complaint a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Nevertheless, the facts alleged in the complaint must suffice to establish all elements of the asserted claim. See Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp., 246 F.3d 1, 5 (1st Cir. 2001). Mere conclusory statements are insufficient to survive a motion to dismiss. See id. In accordance with this standard, this Court will first address the existence of judicially manageable

9

standards and the difficulty in obtaining information.

i.    Foreign Affairs and the Political Question Doctrine

The Supreme Court in <u>Baker v. Carr</u>, 369 U.S. 186 (1962) specifically discussed when a question relating to foreign relations becomes a non justiciable political question.   In <u>Baker</u>, the Supreme Court stated:

> Our cases in this field seem invariably to show a discriminating analysis of the particular question posed, in terms of the history of its management by the political branches, of its susceptibility to judicial handling in the light of its nature and posture in the specific case, and of the possible consequences of judicial action.

<u>Id.</u> at 211-212.   One of the factors in determining whether a court should characterize a question as non justiciable focuses on whether judicially discoverable and manageable standards exist for resolving it.   <u>United States v. Munoz-Flores</u>, 495 U.S. 385, 389 (1990) (citation omitted).   A court also considers whether there is a "textually demonstrable constitutional commitment of the issue to a coordinate political department...or the impossibility of deciding [the question] without an initial policy determination of a kind clearly for nonjudicial discretion." <u>Id.</u>[3] (quoting <u>Baker</u>, 369 U.S. at 217).   The

---

[3]Other factors a court considers in determining the existence of a non justiciable political question are: (1)  the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;" or (2) "an unusual need for unquestioning adherence to a political decision already made;" or (3) "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." <u>Munoz-Flores</u>, 495 U.S. at 389-390

existence of a foreign affairs question, however, does not automatically render the case non justiciable.  The Supreme Court has warned "it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." Baker, 369 U.S. at 211.  In fact, "significant political overtones," do not themselves transform a controversy into a political question case.  Planned Parenthd. Fed'n of Am., Inc. v. Agency for Int'l Dev., 838 F.2d 649, 656 (2nd Cir. 1988). A foreign affairs issue with significant political overtones, therefore, is not inherently non justiciable.

Indeed, the Second Circuit said as much in Klinghoffer v. S.N.C. Achille Lauro ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 937 F.2d 44 (2nd Cir. 1991).  The Second Circuit in Klinghoffer spoke directly to the issue of non justiciability in the context of the PLO and politically charged tort claims.  See id.  In that case, plaintiffs brought suit seeking damages in connection with the October 1985 seizure of the Italian cruise liner, Achille Lauro, and the murder of Leon Klinghoffer, an elderly Jewish-American passenger who was thrown overboard in his wheelchair by the hijackers.  Id. at 46.  The PLO claimed that the Klinghoffer case constituted a non justiciable political question, because it "raises foreign policy questions and political questions in a volatile context lacking

---

(quoting Baker, 369 U.S. at 217).

11

satisfactory criteria for judicial determination." Id. at 49
(quotation omitted).  The Second Circuit disagreed by emphasizing
that the doctrine is "one of 'political questions,' not one of
'political cases.'" Id. (quoting Baker, 369 U.S. at 217).  That
Circuit Court noted that simply because issues "arise in a
politically charged context does not convert what is essentially
an ordinary tort suit into a non justiciable political question."
Id.  Rather, the political question doctrine precludes review
when a controversy involves "policy choices and value
determinations constitutionally committed for resolution" in a
different political branch.  Japan Whaling Ass'n v. American
Cetacean Soc'y, 478 U.S. 221, 230 (1986).  The need to make
policy choices and value determinations of that sort, however,
are not before this Court at the current time.  The plaintiffs in
the case before this Court brought a cause of action in tort
under federal law seeking damages.  As the Second Circuit in
Klinghoffer stated, an ordinary tort suit in which the plaintiffs
allege that the defendants breached a duty of care owed to the
plaintiffs or their decedents is an issue which has been
"constitutionally committed...[to] none other than our own-the
Judiciary."  937 F.2d at 49.  Thus, it is evident that simply
because the events which resulted in the filing of this case took
place in a politically volatile area in which the United States
has a strong foreign policy interest does not transform what is

otherwise an ordinary tort action into a non justiciable political question.

Furthermore, despite the PA defendants' assertion that the present case lacks judicially discoverable and manageable standards for resolving the plaintiff's claims, the PA defendants fail to identify precisely what standards are lacking.  The PA defendants assert that Linder v. Portocarrero, 963 F.2d 332 (11th Cir. 1992) is direct authority which supports their position.  However, this is simply not true.

In Linder, the survivors of an American citizen who was tortured and killed in Nicaragua by anti-government military forces sued the individuals allegedly responsible as well as three organizations which controlled the Nicaraguan anti-government military forces.  Id. at 333.  While the facts in Linder may at first blush appear comparable to the facts before this Court, there are stark differences between the two cases.  The Eleventh Circuit in Linder agreed with the district court's determination that the courts in that case would be "required to discern between military, quasi-military, industrial, economic and other strategic targets, and rule upon the legitimacy of targeting such sites as hydroelectric plants on Nicaraguan soil in the course of a civil war."  Id. at 335.  The Eleventh Circuit noted that a court in such a case would also be required to evaluate the merits of using violence in the course of a foreign

civil war and to inquire into the United States' policy on the contras. <u>See id.</u>  Furthermore, the plaintiffs in <u>Linder</u> conceded that it would be "difficult to find discoverable and manageable standards to adjudicate the nature and methods by which the contras chose to wage war in Nicaragua."  <u>Id.</u> at 336.

Given that the case before this Court is a tort action seeking damages under § 2333 <u>et seq.</u>, there is no indication at this time that this Court will need to delve into the nature and methods by which any country or organization wages war.  Indeed, Congress has specifically set forth the elements of plaintiffs' cause of action in § 2333 and has defined those elements in § 2331.[4]  It is those elements which this Court must consider in light of the PA defendants' motion to dismiss.

Plaintiffs in the present matter essentially allege that the

---

[4] Section 2333 states:
>    Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a).

"International terrorism" is defined as any activity which involves "violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any States." <u>Id.</u> § 2331(1)(A).

"National of the United States" adopts the same meaning that the term is given in section 101(a)(22) of the Immigration and Nationality Act.  <u>Id.</u> § 2331(2).

PA defendants provided Hamas and its operatives and agents with safe haven and financial and material support within the meaning of 18 U.S.C. § 2339A (2000 & Supp. 2002).[5]  The PA defendants claim that the allegations set forth in the amended complaint allege that the PA defendants failed to provide police protection in the State of Israel against the dangers presented by Hamas. The PA defendants also argue that the PA defendants were operating their police power in "good faith and under extremely difficult circumstances for law enforcement purposes." Defs.' Mot. Dismiss at 13.  The PA defendants further assert that

---

[5]18 U.S.C. § 2339A reads in relevant part:
    (a) Whoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of section...2332, 2332a, 2332b, 2332c, 2332f...or in preparation for, or in carrying out, the concealment or an escape from the commission of any such violation, or attempts or conspires to do such an act, shall be fined under this title, imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. A violation of this section may be prosecuted in any Federal judicial district in which the underlying offense was committed, or in any other Federal judicial district as provided by law.
    (b) Definition.--In this section, the term "material support or resources" means currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

difficulties in obtaining information exist in the present case. Id. at 10.

Yet whether or not the PA defendants provided adequate police protection is a factual matter to be decided at a later time. Furthermore, the PA defendants have failed to inform this Court as to why obtaining information in this tort action will be particularly difficult. In an apparent attempt to shed light on this assertion, the PA defendants attached to their motion to dismiss a copy of the Sharm el-Sheikh Fact-Finding Committee report commonly referred to as the "Mitchell Report."[6]  The report traces the historical bases for the current difficulties permeating the Israeli-Palestinian peace process while simultaneously offering suggestions on how confidence in the process can be restored by both sides in order to help bring an end to the violence. The report, however, does little to shed light on why peculiar difficulties would arise in obtaining information in the present civil action. This Court, therefore, is unwilling to speculate as to whether or not discovery will present unusual difficulties in this case.

All that currently concerns this Court is whether plaintiffs have alleged in their complaint sufficient facts which, if true, would entitle them to relief. Having alleged one cause of action

---

[6] The Committee included two former U.S. Senators, George J. Mitchell, Chairman and Warren B. Rudman.

16

under 18 U.S.C. § 2333 and three accompanying Israeli causes of action under the CWO, this Court concludes that plaintiffs would be entitled to relief if the allegations in the amended complaint are true.

   ii.  Failure to State a Claim upon which Relief can be Granted.

<u>The Federal Claim</u>

  The PA defendants also move for reconsideration of the denial of their prior motion to dismiss based on plaintiffs' failure to state a claim upon which relief can be granted.  As this Court held in <u>Ungar I</u>, all plaintiffs with the exception of those who sought relief under 18 U.S.C. § 2333 in connection with the death of Efrat Ungar stated a claim upon which relief could be granted.  153 F. Supp. 2d at 97.  In accordance with that opinion, the amended complaint in Count I does not include plaintiffs The Estate of Efrat Ungar, and Rabbi Uri and Judith Dasberg.  Count I in the amended complaint also does not include plaintiffs Dvir and Yishai Ungar to the extent that they seek damages for losses suffered on account of the death of their mother, Efrat Ungar.  Furthermore, as this Court determined in its prior opinion, the remaining plaintiffs do allege sufficient facts to invoke § 2333.  <u>Id.</u> at 98.  Consequently, the PA defendants' motion to dismiss Count I of the amended complaint is denied.

17

<u>The State Law Claims</u>

The three remaining counts in the amended complaint are state law claims for negligence (Count II), breach of statutory obligation (Count III), and assault (Count IV). This Court stated in <u>Ungar I</u> that it has subject matter jurisdiction over state and federal claims which "derive from a common nucleus of operative fact." <u>Id.</u> at 86 (quoting <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966)). This Court has already determined that it has original subject matter jurisdiction over plaintiffs' § 2333 claim. <u>Id.</u> at 85. Therefore, it likewise has subject matter jurisdiction over those state law claims under the doctrine of supplemental jurisdiction which "are so related to claims in the action...that they form part of the same case or controversy. 28 U.S.C. § 1367 (2000). The plaintiffs' claims of negligence, breach of statutory obligation and assault all stem from the alleged terrorist activities which plaintiffs claim the PA defendants incited in Palestinian territory, thereby resulting in the murders of Yaron and Efrat Ungar. Consequently, this Court determines that it can exercise subject matter jurisdiction over plaintiffs' state law claims, because the state and federal claims "derive from a common nucleus of operative fact." <u>Ungar I</u>, 153 F. Supp. 2d at 86.

This Court in <u>Ungar I</u> determined that the state law claims which plaintiffs alleged in their original complaint sounded in

18

tort. _Id._ at 98.  This Court likewise concludes today that Counts II, III and IV of the amended complaint are tort claims. This Court has previously explained that Rhode Island law requires the application of Israeli law to the state law claims alleged by plaintiffs.  _Id._ at 99. This Court dismissed plaintiffs' state law claims alleged in the complaint, because plaintiffs failed to allege causes of action under Israeli law. This Court, however, granted plaintiffs leave to amend, and therefore, it is the state law claims in the amended complaint to which this Court now turns.

In accordance with Rhode Island law, plaintiffs have pled their state law claims under Israeli law in their amended complaint. _See_ R.I. Gen. Laws § 9-19-7 (1997).  Plaintiffs' claim for negligence under Israeli law is embodied in Count II. Plaintiffs allege under the Israeli statutory provision for negligence (CWO § 35) that the PA defendants had a duty to act as a reasonable person would under the circumstances. _See_ Pls.' Am. Comp ¶¶ 55-64.  Plaintiffs claim that the PA defendants failed to act reasonably under those circumstances and that the PA defendants' unreasonable acts and omissions caused the deaths of Yaron and Efrat Ungar, thereby injuring plaintiffs.  _See id._

With regard to Count III, plaintiffs allege that the PA defendants violated CWO § 63 by committing breaches of statutory obligations.  Section 63 creates a civil wrong defined as "the

19

failure to comply with an obligation imposed under any enactment...intended for the benefit or protection of another person, and if the breach caused that person damage of the kind or nature of damage intended by the enactment." Id. ¶ 66. Plaintiffs claim that the PA defendants breached and failed to comply with numerous statutory obligations which were intended to benefit and protect a person in plaintiffs' position. See id. ¶¶ 68-70 (claiming that the PA defendants breached statutory obligations which included, for example, aiding a terrorist organization, non-prevention of a felony, provision of shelter or resources to a national security offender, and duty to act against terrorism, confiscate arms, arrest and prosecute terrorists).

As for plaintiffs' assault claim (Count IV), plaintiffs allege that the PA defendants are jointly and severally liable for the assault which Hamas and the individually named defendants allegedly committed against the Ungars. Plaintiffs claim that the PA defendants "aided, abetted, authorized, ratified and participated" in the assault on the Ungars, and that this assault caused the death of Yaron and Efrat Ungar. Id. ¶¶ 79-81.

Upon examination of the amended complaint, it is evident that plaintiffs have alleged three statutory violations under Israeli law and have likewise alleged sufficient facts to maintain a cause of action under each. Consequently, the PA

defendants' motion to dismiss the state law claims for failure to assert claims upon which relief can be granted is denied.

Sovereign Immunity and the Palestinian Authority

The PA defendants assert that the PA's claim to immunity is stronger than it ever has been, because its status at the United Nations is more firmly established and closer to full membership than at any time in the past. See Defs.' Mot. Dismiss at 12. As this Court explained in Ungar I, in which it rejected the PLO's claim that it should be immune from service of process, the fundamental problem with the PA defendants' argument is that neither the PLO nor the PA is a Member of the United Nations. See 153 F. Supp. 2d at 91. Rather, the PLO maintains an Observer Mission to the United Nations and consequently represents the views of Palestine in that capacity. See id. at 88. The fact that neither the PA nor the PLO is a Member of the United Nations bears enormous significance. Simply put, Members enjoy diplomatic immunity, Permanent Observers do not.

The Second Circuit in Klinghoffer clearly stated this point when it rejected the argument that the United Nations Headquarters Agreement renders the PLO's Permanent Observer immune from service of process. 937 F.2d at 48 (concluding that because the PLO is a Permanent Observer to the United Nations, and not a Member of the United Nations, it is not entitled to claim diplomatic immunity). This writer noted in Ungar I that

21

the PA defendants merely reiterated to this Court the same arguments that the PLO had propounded in Klinghoffer. 153 F. Supp. 2d at 91. Consequently, like the Second Circuit, this Court held that the PA defendants were not entitled to immunity. Id.

Today, this Court once again reaches the same conclusion. The PA defendants' assertion that the PA is closer to full membership than it has been in the past does not make it a Member. Close is simply not good enough.

It must be borne in mind that although the PA is a governmental entity controlled by the PLO, which is a political organization, the PA has never attained sovereignty among nations. While the debate may continue for some time to come, it may or may not be resolved in favor of the PA gaining full statehood. The fact remains that the PA is not a Member of the United Nations and has never been fully recognized as a sovereign state. Therefore, the PA is not a "foreign state" within the meaning of 18 U.S.C. § 2337(2) (2000), and consequently is not immune from suit under 18 U.S.C. § 2333.[7]

    B.  Interlocutory Appeal

    Lastly, the PA defendants move, in the alternative, for

---

[7] "No action shall be maintained under section 2333 of this title against...(2) a foreign state, an agency of a foreign state, or an officer or employee of a foreign state or an agency thereof acting within his or her official capacity or under color of legal authority." 18 U.S.C. § 2337(2).

certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and for a stay pending disposition of the motion and/or appeal.  Federal appellate courts ordinarily adhere to the final judgment rule that permits review of a district court decision only upon the completion of the litigation on the merits when there remains nothing more for the district court to do but execute the judgment.  <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 467 (1978).  As this writer discussed in <u>Cummins v. EG & G Sealol, Inc.</u>, 697 F. Supp. 2d 64, 67 (D.R.I. 1988), the final judgment rule prevents the creation of additional burdens on courts and litigants which could result from a multitude of interlocutory appeals whose issues might later become moot.  Consequently, certification for appellate review of an interlocutory order under § 1292(b) should be granted only in very rare circumstances.  <u>Id.</u> at 66.  Indeed, federal law "abhors piecemeal appeals disputing interlocutory district court orders." <u>Id.</u> at 67.  <u>See also</u> <u>Heddendorf v. Goldfine</u>, 263 F.2d 887, 888 (1st Cir. 1959) (stating that § 1292(b) should be used "sparingly" and only in "exceptional cases").  This sentiment is widely shared across the circuits.  <u>See, e.g.</u>, <u>Milbert v. Bison Labs., Inc.</u>, 260 F.2d 431, 433 (3rd Cir. 1958); <u>Vitols v. Citizen Banking Co.</u>, 984 F.2d 168, 170 (6th Cir. 1993); <u>White v. Nix</u>, 43 F.3d 374, 376 (8th Cir. 1994).

Section 1292(b), however, does provide a limited narrow

exception to the final judgment rule.  While non final orders are not appealable as a matter of right, the district court judge maintains the discretion to certify an issue for appeal in limited circumstances.  Coopers, 437 U.S. at 474.  Before certifying the issue for appeal, the district court judge should be of the opinion that the interlocutory order (1) "involves a controlling question of law as to which" (2) "there is substantial ground for difference of opinion, and" (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b) (2000).  Not only does the decision whether to grant an interlocutory appeal involve a substantial amount of discretion on the part of the district court judge, the party moving for review under § 1292(b) has the burden of convincing the trial judge, and later the appeals court, that the motion for interlocutory review satisfies all three factors.  Cummins, 697 F. Supp. at 68.

The PA defendants assert that there are three controlling issues of law that merit certification.  In essence, the PA defendants argue that (1) the present case does not belong in the United State District Court for the District of Rhode Island, (2) the PLO and PA should be deemed immune from suit and (3) the actions of the PLO and PA do not constitute acts of international terrorism.

First, as has been previously discussed, this tort matter is properly before this Court.  Second, it is well-established that the PLO and PA are not immune from suit.  The PA defendants argue that since the status of the PLO was a factor supporting certification of an interlocutory appeal in <u>Klinghoffer</u>, this should serve as a basis for certification in this case.  <u>See</u> Defs.' Mot. Dismiss at 12.  Yet the very fact that the PLO's status was a factor in <u>Klinghoffer</u> is precisely why it is not a factor in the present case.  Simply put, certification should be reserved for unsettled questions of law, and the status of the PLO and PA is not unsettled.  They are simply not foreign states for immunity purposes.  The Second Circuit made that determination in <u>Klinghoffer</u>, and this Court comes to the same conclusion today.  <u>See</u> 937 F.2d at 47-49.  Third, whether the PA defendants engaged in terrorist activities as defined under § 2333 <u>et seq.</u> is a factual issue to be determined at a later date. All that concerns this Court at the present time is whether plaintiffs have pled sufficient facts to maintain a cause of action.  As has been previously discussed, this Court is of the opinion that plaintiffs would be entitled to relief if the allegations in the amended complaint are proven.

Nevertheless, even if the moving party satisfies the three prong test of § 1292(b), the First Circuit has indicated that it "would not normally allow an appeal from a denial of a motion to

dismiss." McGillicuddy v. Clements, 746 F.2d 76, 76 n. 1 (1st Cir. 1984). In McGillicuddy, the private accounting partnership, Ernst & Whinney, appealed from an order of the United States District Court for the District of New Hampshire denying its motion to dismiss for failure to state a claim in a civil rights suit brought under 42 U.S.C. § 1983. Id. at 76-77. The First Circuit in McGillicuddy reversed the order from below, but noted that it had erred in hearing the appeal in the first place. Id. at 76 n. 1. The Court of Appeals stated that not only should interlocutory certification rarely be granted, certification should be used "only in *exceptional* circumstances, and where the proposed intermediate appeal presents one or more *difficult and pivotal* questions of law not settled by controlling authority." Id. (emphasis added). Indeed, as this Court noted in Cummins, the denial of a motion to dismiss is "not the proper subject for § 1292(b) review." 697 F. Supp. at 69. Since the case at bar should be regarded as an ordinary tort suit properly placed in the hands of the judiciary, the PA defendants have failed to convince this Court that plaintiffs' case presents difficult and pivotal questions of unsettled law. Consequently, this Court concludes that the PA defendants have failed to carry their burden of persuading the Court that this case is the type of extraordinary matter that justifies §1292(b) certification.

26

III.   Conclusion

For the aforementioned reasons, the PA defendants' motion to dismiss the amended complaint as non justiciable and lacking in manageable judicial standards is denied; the motion to dismiss for failure to state a claim upon which relief can be granted is also denied; and the motion for certification of an interlocutory appeal to the Court of Appeals and a stay pending disposition of the application for certification and/or appeal is likewise denied.

It is so ordered.

Ronald R. Lagueux
Senior District Judge
November 4 , 2002

27

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR,      )
et al                           )
                                )
                                )
         v.                     )         C.A. No. 00-105L
                                )
THE PALESTINIAN AUTHORITY,      )
et al                           )
                                )
                                )
_____ )

**EXHIBITS TO PALESTINIAN DEFENDANTS' MEMORANDUM
IN SUPPORT OF MOTION FOR RECONSIDERATION
DATED JANUARY 27, 2003**

Defendants, the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO"), file herewith the exhibits to their Memorandum in Support of Motion for Reconsideration dated January 27, 2003. The exhibits are filed pursuant to the Court's Order entered January 30, 2003 granting Defendants' Motion to Exceed Ten-Page Limit for Exhibits.

Dated:  February 3, 2003

Deming E. Sherman (#1138)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, Rhode Island 02903
401-274-9200
401-276-6611 (FAX)

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003
212-475-3232
212-979-1583 (FAX)

Attorneys for Defendants
The Palestinian Authority and
The PLO

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of February, 2003, I mailed a copy of the within Exhibits to Memorandum in Support of Palestinian Defendants' Motion for Reconsideration Dated January 27, 2003 to David J. Strachman, Esq., Skolnik, McIntyre & Tate Esqs., Ltd., Suite 400, 321 South Main Street, Providence, RI 02903 and mailed to Nitsana Darshan-Leitner, Esq., 28 Emek Ayalon Street, Modi'in 71770, Israel.

PRV_552534_1.DOC/DSHERMAN