Jewish Law - Legal Briefs ("Estate of Ungar v. Palestinian Authority")

**Legal Briefs Index**

Copyright ©1997-2003
by Ira Kasdan.
All rights reserved.
**DISCLAIMER**




**Estate of Ungar v. Palestinian Authority**
(D. R.I. 2000)

UNITED STATES DISTRICT COURT STATE OF RHODE ISLAND

================================================

The Estate of YARON UNGAR, The Estate of EFRAT UNGAR, DVIR UNGAR, YISHAI UNGAR, PROFESSOR MEIR UNGAR, YEHUDIT UNGAR, RABBI URI DASSBERG, YEHUDIT DASSBERG, (individually and in their capacity as legal guardians of plaintiffs Dvir Ungar and Yishai Ungar); AMICHAI UNGAR, DAFNA UNGAR and MICHAL COHEN

PLAINTIFFS,

vs.

THE PALESTINIAN AUTHORITY (A.K.A. "THE PALESTINIAN INTERIM SELF-GOVERNMENT AUTHORITY"), THE PALESTINE LIBERATION ORGANIZATION, YASSER ARAFAT, JIBRIL RAJOUB, MUHAMMED DAHLAN, AMIN AL-HINDI, TAWFIK TIRAWI, RAZI JABALI, HAMAS -- ISLAMIC RESISTANCE MOVEMENT (A.K.A. "HARAKAT AL-MUQAWAMA AL-ISLAMIYYA"), ABDEL RAHMAN ISMAIL ABDEL RAHMAN GHANIMAT, JAMAL ABDEL FATAH TZABICH AL HOR, RAED FAKHRI ABU HAMDIYA, IBRAHIM GHANIMAT, and IMAN MAHMUD HASSAN FUAD KAFISHE

DEFENDANTS

================================================

**COMPLAINT**

================================================

## NATURE OF ACTION

1. This action is brought pursuant to federal counterterrorism statutes by the estates, survivors and heirs of Yaron Ungar, a United States citizen, and Efrat Ungar, who were murdered by machine-gun fire on June 9, 1996 near Beit Shemesh, Israel, for

damages caused by defendants to plaintiffs by reason of acts of international terrorism, as defined in federal law, and by reason of related tortious behavior.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter and over defendants pursuant to 18 U.S.C. Sec. 2333 and Sec. 2334 and the Rules of Supplemental Jurisdiction.

3. The district for Rhode Island is the proper venue pursuant to 18 U.S.C. Sec. 2334(a), as the administrator of the estates of Yaron and Efrat Ungar, is domiciled in this District.

## THE PARTIES

4. The Estate of Yaron Ungar and the Estate of Efrat Ungar are represented by an administrator resident in and a domiciliary of the State of Rhode Island.

5. Plaintiff DVIR UNGAR at all times relevant hereto is and was the minor child and heir-at-law of Yaron Ungar and Efrat Ungar.

6. Plaintiff YISHAI UNGAR at all times relevant hereto is and was the minor child and heir-at-law of Yaron Ungar and Efrat Ungar.

7. Plaintiff PROFESSOR MEIR UNGAR at all times relevant hereto is and was the father of Yaron Ungar, and the legal guardian of plaintiffs DVIR and YISHAI UNGAR. Plaintiff MEIR UNGAR brings this action both as legal guardian of plaintiffs DVIR and YISHAI UNGAR and in his individual capacity.

8. Plaintiff YEHUDIT UNGAR at all times relevant hereto is and was the mother of Yaron Ungar, and the legal guardian of plaintiffs DVIR and YISHAI UNGAR. Plaintiff YEHUDIT UNGAR brings this action both as legal guardian of plaintiffs DVIR and YISHAI UNGAR and in her individual capacity.

9. Plaintiff RABBI URI DASSBERG at all times relevant hereto is and was the father of Efrat Ungar, and the legal guardian of plaintiffs DVIR and YISHAI UNGAR. Plaintiff URI DASSBERG brings this action both as legal guardian of plaintiffs DVIR and YISHAI UNGAR and in his individual capacity.

10. Plaintiff YEHUDIT DASSBERG at all times relevant hereto is and was the mother of Efrat Ungar, and the legal guardian of plaintiffs DVIR and YISHAI UNGAR. Plaintiff YEHUDIT DASSBERG brings this action both as legal guardian of plaintiffs DVIR and YISHAI UNGAR and in her individual capacity.

11. Plaintiff AMICHAI UNGAR at all times relevant hereto is and was the brother of Yaron Ungar.

12. Plaintiff DAFNA UNGAR at all times relevant hereto is and was the sister of Yaron Ungar.

13. Plaintiff MICHAL COHEN at all times relevant hereto is and was the sister of Yaron Ungar.

14. Defendant THE PALESTINIAN AUTHORITY, also known as THE PALESTINIAN INTERIM SELF- GOVERNMENT AUTHORITY, (hereinafter: "PA") is and at all times relevant hereto was, a legal person as defined in 18 U.S.C. Sec. 2331(3), established by and existing under and by virtue of international instruments, customary international law and local law, in de jure and de facto control of territories in the Gaza Strip and in the Judea and Samaria regions of the West Bank.

15. Defendant THE PALESTINE LIBERATION ORGANIZATION (hereinafter: "PLO") is, and at all times relevant here to was, a legal person as defined in 18 U.S.C. Sec. 2331(3), in de jure and de facto control of defendant PA, by virtue of being party to and beneficiary of the international instruments by which defendant PA was established.

16. Defendant YASSER ARAFAT (hereinafter: "ARAFAT") is, and at all times relevant hereto was, President of defendant PA and Chairman of defendant PLO, and by virtue of these positions, in complete de jure and de facto control of defendant PA and defendant PLO and their various organs.

17. Defendant JIBRIL RAJOUB, (hereinafter: "RAJOUB") at all times relevant hereto, operated, maintained, managed, supervised, commanded and controlled the Palestinian Preventive Security Services, an official law enforcement agency of defendant PA responsible for law enforcement, maintaining public order and prevention of violence and terrorism in the territories controlled by defendants PA, PLO and ARAFAT.

18. Defendant MUHAMMED DAHLAN, (hereinafter: "DAHLAN") at all times relevant hereto, operated, maintained, managed, supervised, commanded and controlled the Palestinian Preventive Security Services, an official law enforcement agency of defendant PA responsible for law enforcement, maintaining public order and prevention of violence and terrorism in the territories controlled by defendants PA, PLO and ARAFAT.

19. Defendant AMIN AL-HINDI, (hereinafter: "AL-HINDI") at all times relevant hereto, operated, maintained, managed, supervised, commanded and controlled the Palestinian General Intelligence Services, an official law enforcement and intelligence agency of defendant PA responsible for law enforcement, maintaining public order and prevention of violence and terrorism in the territories controlled by defendants PA, PLO and ARAFAT.

20. Defendant TAWFIK TIRAWI, (hereinafter: "TIRAWI") at all times relevant hereto, operated, maintained, managed, supervised, commanded and controlled the Palestinian General Intelligence Services, an official law enforcement and intelligence agency of defendant PA responsible for law enforcement, maintaining public order and prevention of violence and terrorism in the territories controlled by defendants PA, PLO and ARAFAT.

21. Defendant RAZI JABALI, (hereinafter: "JABALI") at all times relevant hereto,

operated, maintained, managed, supervised, commanded and controlled the Palestinian Police, an official law enforcement agency of defendant PA responsible for law enforcement, maintaining public order and prevention of violence and terrorism in the territories controlled by defendants PA, PLO and ARAFAT.

22. Defendant HAMAS -- ISLAMIC RESISTANCE MOVEMENT, also known as "HARAKAT AL-MUQAWAMA AL-ISLAMIYYA", (hereinafter: HAMAS), is a legal person as defined in 18 U.S.C. Sec. 2331(3), which is based in and operates from territories controlled by defendants PA, PLO and ARAFAT, and which is dedicated to murdering Israeli and Jewish individuals through bombings, shootings and other violent means.

23. Defendant ABDEL RAHMAN ISMAIL ABDEL RAHMAN GHANIMAT (hereinafter: RAHMAN GHANIMAT) is and at all times relevant hereto was, a member, operative and trained agent of defendant HAMAS.

24. Defendant JAMAL ABDEL FATAH TZABICH AL HOR (hereinafter: HOR) is and at all times relevant hereto was, a member, operative and trained agent of defendant HAMAS.

25. Defendant RAED FAKHRI ABU HAMDIYA (hereinafter: ABU HAMDIYA) is and at all times relevant hereto was, a member, operative and trained agent of defendant HAMAS.

26. Defendant IBRAHIM GHANIMAT is and at all times relevant hereto was, a member, operative and trained agent of defendant HAMAS.

27. Defendant IMAN MAHMUD HASSAN FUAD KAFISHE (hereinafter: KAFISHE) is and at all times relevant hereto was, a member, operative and trained agent of defendant HAMAS.

**STATEMENT OF FACTS**

28. At all times relevant hereto defendants RAHMAN GHANIMAT, HOR, ABU HAMDIYA, IBRAHIM GHANIMAT, and KAFISHE were members of defendant HAMAS, and were collectively organized as a cell for the purpose of carrying out terrorist activities against Israeli civilian and military targets (hereinafter: "the terrorist cell").

29. The terrorist cell was subordinate to, and received instructions, weapons, money and material support from, commanders and leaders of defendant HAMAS who operated from territories controlled by defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI.

30. At an unknown date or dates prior to June 9, 1996, defendants HAMAS, RAHMAN GHANIMAT, HOR, ABU HAMDIYA, IBRAHIM GHANIMAT, and KAFISHE conspired, planned and made preparations to carry out a machine-gun attack on a random Israeli vehicle.

31. On June 9, 1996, near Beit Shemesh in the State of Israel, defendants RAHMAN GHANIMAT and HOR acting on behalf of and as agents of defendant HAMAS and

without provocation, opened fire from a moving vehicle with two Kalashnikov machine guns on a passenger car in which Yaron Ungar, Efrat Ungar and plaintiff YISHAI UNGAR were traveling (hereinafter: "the shooting attack"). Defendant ABU HAMDIYA drove the vehicle from which the shooting attack was carried out, on behalf of and as an agent of defendant HAMAS.

32. Yaron Ungar and Efrat Ungar were struck and killed by bullets fired by defendants RAHMAN GHANIMAT and HOR in the shooting attack.

33. On May 3, 1998, an Israeli court convicted defendant ABU HAMDIYA of membership in defendant HAMAS and of abetting the shooting murders of Yaron Ungar and Efrat Ungar. On October 21, 1998, an Israeli court convicted defendants RAHMAN GHANIMAT and HOR of membership in defendant HAMAS and of the shooting murders of Yaron Ungar and Efrat Ungar. On November 3 1998 an Israeli court convicted defendant KAFISHE of membership in defendant HAMAS and of being an accessory, before and after the fact, to the shooting murders of Yaron Ungar and Efrat Ungar.

34. Defendants' convictions estop them from denying the essential allegations of this complaint, pursuant to 18 U.S.C. section 2333(c).

35. Defendant IBRAHIM GHANIMAT is currently at large in the territory controlled by defendant PA. An Israeli court has issued a warrant for the arrest of defendant IBRAHIM GHANIMAT, on charges relating to terrorist activities and the government of Israel submitted to defendant PA a request for his arrest and transfer to Israel. Defendant PA has refused to honor this request, and continues to shelter defendant IBRAHIM GHANIMAT.

36. Beginning in 1993, defendant PLO entered into a series of agreements with the State of Israel (including, inter alia, the "Declaration of Principles on Interim Self-Government Arrangements" of September 13, 1993, the "Agreement on the Gaza Strip and the Jericho Area" of May 4, 1994, and the "Israeli-Palestinian Interim Agreement on the West Bank and the Gaza Strip" of September 28, 1995), known collectively (along with their appendices and accompanying letters) as the Oslo Accords (hereinafter: the Oslo Accords).

37. In the Oslo Accords, which were signed on behalf of defendant PLO by defendant ARAFAT, the State of Israel obligated itself to withdraw from territories it held in Gaza and the West Bank and to place these areas under the control of a Palestinian Interim Self-Government Authority (commonly known as the Palestinian Authority, which is defendant PA), to be established and controlled by leading officials of defendant PLO.

38. In exchange for these Israeli commitments, defendant PLO undertook to recognize the Jewish state's right to exist and to desist from engaging in further terrorist attacks and other acts of violence against Israel's civilian population and armed forces.

39. Moreover, under the Oslo Accords defendant PLO undertook to formally amend all clauses in its organizational covenant which called for armed struggle and terrorist violence against the Jewish State.



40. Additionally, defendants PLO and PA obligated themselves, under the terms of the Oslo Accords, to actively prevent incitement and encouragement of acts of violence against any person by individuals and groups within territory under their control, to denounce and condemn all acts of terror, to apprehend, prosecute and imprison persons involved directly and indirectly in acts of terrorism against Israel and to outlaw and dismantle the material and organizational infrastructure of terrorist organizations within the territories under their control.

41. The Oslo Accords placed upon defendant PA authority and responsibility for law enforcement and public order and security in the territory under its control and permitted defendant PA to establish a massive police force, an intelligence apparatus, a prison system, courts and a justice system for this purpose.

42. Additionally, at all times relevant hereto, defendant PA was obligated under international customary law and local law applying in the West Bank and Gaza, to maintain public order and security and enforce the law in the areas under its control.

43. At all times relevant hereto, defendants PA, PLO and ARAFAT operated, maintained, managed, supervised, and controlled various police forces, militias, paramilitary forces, intelligence services, law-enforcement personnel, jails and penal institutions as part of and in conjunction with their functions and duties under the Oslo Accords and under international customary law and local law applying in the West Bank and Gaza.

44. At all times relevant hereto, defendants RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI operated, maintained, managed, supervised, commanded and controlled various police, security and intelligence agencies on behalf and as agents of defendant PA.

45. At all times relevant hereto, defendant HAMAS and its operatives and agents maintained and operated a leadership command, organizational and operational hierarchy and infrastructure, training facilities and depots for storage of weapons and explosives in territories controlled by defendants PA, PLO and ARAFAT.

46. During the period relevant hereto defendant HAMAS, operating from territories controlled by defendants PA, PLO and ARAFAT, advocated, encouraged, solicited, facilitated, incited for, sponsored, organized, planned and executed acts of violence and terrorism against Jewish civilians in Israel, Gaza and the Judea and Samaria regions of the West Bank. During the period relevant hereto defendant HAMAS carried out scores of terrorist attacks, murdering hundreds of civilians and injuring hundreds more.

47. Among the hundreds of civilians murdered and wounded by HAMAS terrorist attacks during the period relevant hereto were over a dozen United States citizens.

48. During the period relevant hereto the government of the United States, the Congress of the United States, and the government of the State of Israel repeatedly demanded from defendants PA, PLO and ARAFAT that they take effective measures to prevent further terrorist attacks by defendant HAMAS, including: criminalizing the existence of and membership in HAMAS; the apprehension, prosecution and

imprisonment of HAMAS' leadership and members; the closure of HAMAS's offices and facilities; the seizure of HAMAS' property and resources including funds, weapons and explosives, and; prosecuting HAMAS's incitement to violence and terrorism.

49. Moreover, during the period relevant hereto, the State of Israel submitted to defendant PA dozens of requests to surrender members of defendant HAMAS suspected of or charged with terrorist murders, including individuals suspected of murdering United States citizens. These Israeli requests for the surrender of suspects were submitted to defendant PA pursuant to specific provisions of the Oslo Accords which control the surrender of suspects and fugitives by defendant PA, and which obligate defendant PA to surrender such suspects to Israel.

50. In violation of their undertakings and obligations under the Oslo Accords and under international customary law and local law, defendants PA, PLO and ARAFAT refused and ignored American and Israeli demands to take effective measures to prevent further terrorist attacks by defendant HAMAS.

51. On the contrary, at all times relevant hereto, defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI permitted and/or encouraged defendant HAMAS to operate freely in the territory under their control or in which they maintained a police presence, and to advocate, encourage, solicit, facilitate, incite for, sponsor, organize, plan and execute acts of violence and terrorism against Jewish civilians in Israel, Gaza and the Judea and Samaria regions of the West Bank.

52. Likewise, in violation of their undertakings and obligations under the Oslo Accords and under international customary law and local law, during the period relevant hereto, defendants PA, PLO and ARAFAT consistently refused repeated Israeli requests to surrender members of defendant HAMAS suspected of or charged with terrorist murders, including the murders of American nationals.

53. Moreover, during the period relevant hereto, several members of defendant HAMAS suspected of or charged with terrorist murders, including murders of U.S. nationals, whose surrender was requested by Israel pursuant to the Oslo Accords, were employed by defendants PA, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI as policemen and/or security officials in the various police, security and intelligence forces under the control of these defendants.

54. In addition, defendants ARAFAT, PA and PLO, at all times relevant hereto, granted financial support to the families of members of defendant HAMAS who had been captured or killed while carrying out acts of terrorist violence against Jewish civilians in Israel, Gaza and the Judea and Samaria regions of the West Bank, thereby providing defendant HAMAS and its members with strong financial incentive to continue to carry out violence and terrorism against such victims.

55. At all times relevant hereto defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI, knew that defendant HAMAS had committed hundreds of serious offenses against the United States, including the murder of U.S. citizens, yet these defendants openly and consistently received, relieved, comforted and assisted defendant HAMAS and its operatives and agents, as

defined in 18 U.S.C. Sec. 3, in order to hinder and prevent their apprehension, trial and punishment.

56. At all times relevant hereto defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI knew that defendant HAMAS had committed hundreds of serious offenses against the United States, including the murder of U.S. citizens, and that defendant HAMAS planned to continue committing such offenses, yet these defendants openly and consistently provided defendant HAMAS and its members with material support and resources, as defined in 18 U.S.C. Sec. 2339A, including financial services, lodging, training, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets.

57. Moreover, in violation of their undertakings and obligations under the Oslo Accords and under international customary law and local law, at all times relevant hereto defendants PA, PLO and ARAFAT themselves and/or through their respective representatives, spokesmen and officers and/or through the means of mass communication under their control, continuously advocated, encouraged, solicited, facilitated and incited for the use of violence and terrorism against Jewish civilians in Israel, Gaza and the Judea and Samaria regions of the West Bank.

58. In addition, at all times relevant hereto defendant PLO itself organized, planned and executed acts of violence and terrorism against Jewish civilians in Israel, Gaza and the Judea and Samaria regions of the West Bank.

FIRST CLAIM FOR RELIEF
AS AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS:
**INTERNATIONAL TERRORISM**

59. The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

60. Defendants' acts constitute a violation of the criminal laws of the United States, or would constitute criminal violations if committed within the jurisdiction of the United States.

61. The acts of defendants HAMAS, RAHMAN GHANIMAT, HOR, KAFISHA, ABU HAMDIYA and IBRAHIM GHANIMAT constitute, inter alia, violations of 18 U.S.C. Sec. 2332 (homicide of a U.S. national outside the United States).

62. The acts of defendants ARAFAT, PA, PLO, JABALI, AL-HINDI, TIRAWI, RAJOUB AND DAHLAN if committed within the jurisdiction of the United States would constitute, inter alia, violations of 18 U.S.C. Sec. 2339A ("Providing Material Support to Terrorists") and of 18 U.S.C. ("Accessory After the Fact").

63. Defendants' acts were dangerous to human life and were intended to intimidate or coerce the civilian population of Gaza, the Judea and Samaria regions of the West Bank and the State of Israel, and to influence the policy of the government of Israel and other governments by intimidation or coercion.

64. Defendants' acts occurred outside the territorial jurisdiction of the United States.


65. Defendants' acts are therefore acts of international terrorism as defined under 18 U.S.C. Sections 2331 and 2333.

66. By reason and as a result of the acts of international terrorism committed by defendants, Yaron Ungar and Efrat Ungar were killed, thereby causing the decedents and the plaintiffs severe injury, including: pain and suffering; loss of pecuniary support; loss of consortium; emotional distress; loss of parental society and companionship and loss of solatium.

67. For the reasons stated above, defendants are jointly and severally liable to plaintiffs.

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages, costs and attorneys' fees in the amount of two hundred and fifty million dollars ($250,000,000.00) and for punitive damages.

SECOND CLAIM FOR RELIEF
AS AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS:
**DEATH BY WRONGFUL ACT**

68. The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

69. Defendants HAMAS, RAHMAN GHANIMAT, HOR, ABU HAMDIYA, IBRAHIM GHANIMAT, and KAFISHE willfully and deliberately caused the deaths of Yaron Ungar and Efrat Ungar.

70. Defendants PA, PLO and ARAFAT willfully and/or negligently caused the deaths of Yaron Ungar and Efrat Ungar by breaching obligations and undertakings which they took upon themselves in the international instruments known collectively as the Oslo Accords and/or applying to them under international customary law and local law, to actively prevent incitement and encouragement of acts of violence against any person by individuals and groups within territory under their control, to denounce and condemn all acts of terror, to apprehend, prosecute and imprison persons involved directly and indirectly in acts of terrorism and to outlaw and dismantle the infrastructure of terrorist organizations within the territories under their control, and generally to conduct themselves in such a manner as not to wantonly, and/or negligently cause or allow the infliction of injuries to persons such as the plaintiffs herein.

71. Defendants RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI willfully and/or negligently caused the deaths of Yaron Ungar and Efrat Ungar by breaching obligations and duties applying to them under local law and/or stemming from the terms and conditions of their official positions, to actively prevent incitement and encouragement of acts of violence against any person by individuals and groups within territory under their control, to apprehend, prosecute and imprison persons involved directly and indirectly in acts of terrorism and to dismantle the infrastructure of terrorist organizations within the territories under their control, and generally to conduct themselves in such a manner as not to wantonly, and/or negligently cause or

allow the infliction of injuries to persons such as the plaintiffs herein.

72. By reason of their wrongful acts, neglects or defaults, defendants caused the death of Yaron Ungar and Efrat Ungar, thereby causing the decedents and the plaintiffs severe injury, including pain and suffering; loss of pecuniary support; loss of consortium; emotional distress; loss of parental society and companionship and loss of solatium.

73. For the reasons stated above, defendants are jointly and severally liable to plaintiffs.

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages, costs and attorneys' fees in the amount of two hundred and fifty million dollars ($250,000,000.00) and for punitive damages.

THIRD CLAIM FOR RELIEF
AS AGAINST DEFENDANTS PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI
ON BEHALF OF ALL PLAINTIFFS:
**NEGLIGENCE**

74. The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

75. Defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI foresaw, or should have reasonably foreseen, that their actions and/or their failure to take actions and fulfill duties and obligations which they accepted upon themselves and/or which were incumbent upon them under the international instruments known collectively as the Oslo Accords, under international customary law and/or under local law, and/or which stemmed from the terms and conditions of their official positions, would create unreasonable risk of injury to persons such as the decedents and the plaintiffs.

76. By their aforementioned actions and/or failure to take action, defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI are guilty of negligence.

77. The aforementioned negligent behavior of defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI caused the death of Yaron Ungar and Efrat Ungar, thereby causing the decedents and the plaintiffs severe injury, including pain and suffering; loss of pecuniary support; loss of consortium; emotional distress; loss of parental society and companionship and loss of solatium.

78. For the reasons stated above, defendants are jointly and severally liable to plaintiffs.

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages, costs and attorneys' fees in the amount of two hundred and fifty million dollars ($250,000,000.00) and for punitive damages.

FOURTH CLAIM FOR RELIEF
AS AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS:
**BREACH OF STATUTORY DUTY**

79. The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

80. By their aforementioned actions, defendants HAMAS, RAHMAN GHANIMAT, HOR, ABU HAMDIYA, IBRAHIM GHANIMAT, and KAFISHE breached statutory prohibitions against homicide and conspiracy to commit homicide applying in Israel and the Judea and Samaria regions of the West Bank.

81. By their aforementioned actions and/or failure to act, defendants PA, PLO, ARAFAT, RAJOUB, DAHLAN, AL-HINDI, TIRAWI and JABALI breached duties to combat incitement, crime and terrorism contained in provisions of the Oslo Accords. Because these provisions of the Oslo Accords were adopted into local law in Israel, Gaza and the Judea and Samaria regions of the West Bank, defendants' behavior constitutes a breach of statutory duties.

82. The statutory duties breached by the defendants were intended to protect persons such as the decedents and the plaintiffs from injury of the type caused to the decedents and the plaintiffs.

83. Defendants' aforementioned breaches of statutory duties caused the death of Yaron Ungar and Efrat Ungar, thereby causing the decedents and the plaintiffs severe injury, including pain and suffering; loss of pecuniary support; loss of consortium; emotional distress; loss of parental society and companionship and loss of solatium.

84. For the reasons stated above, defendants are jointly and severally liable to plaintiffs.

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages, costs and attorneys' fees in the amount of two hundred and fifty million dollars ($250,000,000.00) and for punitive damages.


FIFTH CLAIM FOR RELIEF
AS AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS:
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

85. The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

86. Defendants' conduct was willful, outrageous, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

87. Defendants' conduct caused the plaintiffs egregious emotional distress.

88. For the reasons stated above, defendants are jointly and severally liable to plaintiffs.

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages, costs and attorneys' fees in the amount of two hundred and fifty million dollars ($250,000,000.00) and for punitive damages.

FOURTH CLAIM FOR RELIEF
AS AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS:
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

89. The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

90. Defendants' conduct was willful, outrageous and/or grossly negligent, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

91. Defendants' conduct caused the plaintiffs egregious emotional distress.

92. For the reasons stated above, defendants are jointly and severally liable to plaintiffs.

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages, costs and attorneys' fees in the amount of $250,000,000.00 and punitive damages.

Plaintiffs demand jury trial.

        Plaintiffs,
        by their Attorneys,


_____
Nitsana Darshan-Leitner
13 Leonardo da-Vinci Street
Tel Aviv, Israel
64733

Local Counsel,


_____
David J. Strachman
Skolnik, McIntyre & Tate Esqs, Ltd.
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700