UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE ESTATE OF YARON UNGAR, et al | ) ) ) |
| v. | ) ) C.A. No. 00-105L |
| THE PALESTINIAN AUTHORITY, et al | ) ) ) ) ) |

**PALESTINIAN DEFENDANTS'**
**MOTION FOR RECONSIDERATION**

Defendants, the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO"), together constituting the present Palestinian government, respectfully move (1) for reconsideration of the Court's opinion and order entered on November 5, 2002, on the grounds that significant matters have been overlooked and not fully considered and that under all of the circumstances of this case, reconsideration is warranted for the reasons set forth in the supporting Memorandum submitted herewith, (2) that upon reconsideration the Court grant their pending motion filed on January 30, 2002, for leave to assert defenses showing that subject matter jurisdiction is lacking because defendants are entitled to sovereign immunity and maintenance of the action under 18 U.S.C. sec. 2333 is barred by sec. 2337(2), the issues thus raised are fundamental and immediate and should be decided at the outset on defendants' motion to dismiss and not deferred as affirmative defenses; (3) that following the briefing of these defenses by the parties, which has not yet occurred, this action should be dismissed for lack of subject matter jurisdiction based upon sovereign immunity and sec. 2337(2); and (4) that a stay of further proceedings other than those bearing on immunity be issued pending the determination of the within motion and if dismissal of the action is denied, that a further stay be issued pending

determination of defendants' appeal to the Court of Appeals, and for such other and further relief as the Court may deem just and proper.

A Memorandum is submitted in support of this Motion.

Dated: November 20, 2002

*[signature]*

Deming E. Sherman (#1138)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, Rhode Island 02903
401-274-9200
401-276-6611 (FAX)

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003
212-475-3232
212-979-1583 (FAX)

Attorneys for Defendants
The Palestinian Authority and
The PLO

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of November, 2002, I faxed and mailed a copy of the within Motion for Reconsideration to David J. Strachman, Esq., Skolnik, McIntyre & Tate Esqs., Ltd., Suite 400, 321 South Main Street, Providence, RI 02903 and mailed to Nitsana Darshan-Leitner, Esq., 28 Emek Ayalon Street, Modi'in 71770, Israel.

*[signature]*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, )
et al )
)
)
v. ) C.A. No. 00-105L
)
)
THE PALESTINIAN AUTHORITY, )
et al )
)
)

## MEMORANDUM IN SUPPORT OF PALESTINIAN DEFENDANTS' MOTION FOR RECONSIDERATION

This memorandum is submitted in support of a motion by defendants Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO"), together constituting the present government of Palestine for reconsideration of the Court's opinion, decision and order entered on November 5, 2002, denying defendants' motion to dismiss and ruling against their alternative request for certification of an interlocutory appeal. This motion is being made within the 10-day period following the entry of the decision computed in accordance with Fed.R.Civ.P. 6(a).

Reconsideration is warranted for the following reasons:

(1) The Court's opinion of November 5 left unaddressed defendants' pending motion for leave to assert two defenses which go to subject matter jurisdiction -- defendants' entitlement to sovereign immunity and application of 18 U.S.C. sec. 2337(2) as a bar to any exercise of jurisdiction under 18 U.S.C. sec. 2333. The motion sought leave to present these defenses which were only briefly developed in the papers on the motion. In objecting to the motion to assert these defenses, plaintiffs as a matter of strategy, expressly declined to address the merits of the

defenses and argued instead that the two defenses were really one and the same -- a defense of sovereign immunity -- and that defendants had waived this one defense. Plaintiffs are wrong. The language of sec. 2337 is plain and leaves no room for waiver by the parties. The Foreign Sovereign Immunities Act, 28 U.S.C. secs. 1330 and 1602 et seq. (FSIA) does make provision for waiver, but it is well-established that the waiver for which plaintiffs are arguing cannot be predicated on the positions taken by defendants on the motions in this case that were made before answer. See Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A., 727 F.2d 274, 277-78 (2d Cir. 1984); cf. Foremost-McKesson v. Islamic Republic of Iran, 905 F.2d 438, 443- 45 (D.C. Cir. 1990).

The Court in its November 5 decision ruled defendants were not a foreign state for purposes of sovereign immunity and sec. 2337(2), but did so without the issues having been briefed by the parties. Defendants seek to rectify this absence of adversarial presentation by their present motion for reconsideration so that the issues can be fully briefed.

Because the defenses go to subject matter jurisdiction, it is incorrect as a matter of law and inadvisable if there is any room for discretion, for the issues presented in this case pertaining to sovereign immunity and the application of sec. 2337(2) to be considered affirmative defenses.

Despite some legislative history to the contrary, sovereign immunity is not simply an affirmative defense. See Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 494 (1983). The issues of immunity in this case should be resolved at the outset of the action. See Foremost McKesson, supra, 905 F.2d at 449 ("immunity involves protection from suit, not merely a defense to liability").

(2) The briefing of the defenses will develop among other points,

(a) that statehood is not dependent on recognition if the definitional criteria are met as they are in the present case, that recognition is unnecessary to status as a foreign state, citing and quoting as did defendants' motion for leave to assert defenses, Restatement Third, the Foreign Relations Law of the United States, secs. 201 and 202 Comment b. the latter providing:

b. Statehood not dependent on recognition.

An entity that satisfies the requirements of sec. 201 is a state whether or not its statehood is formally recognized by other states. As a practical matter, however, an entity will fully enjoy the status and benefits of statehood only if a significant number of other states consider it to be a state and treat it as such, in bilateral relations or by admitting it to major international organizations.

This Comment is of particular significance because the Court's decision accords considerable weight to the absence of formal recognition of Palestine by the United Nations and its status as Permanent Observer rather than Member contrary to the above quoted Comment, which the decision may well have overlooked. The United Nations and the United States have both recognized and approved the imminence of recognition of full statehood which should be considered in determining immunity together with the many accords and resolutions pertaining to the Palestinian Authority since the Oslo Accord. A substantial majority of nations recognize the full statehood of Palestine. The Palestine National Council as long ago as November 15, 1988 proclaimed Palestine an independent state, and

(b) that a government may be recognized as a foreign state for some purposes and not for others; in the present case, in order to give effect to the policies underlying 18 U.S.C. sec. 2337 and the inappropriateness of attempting to ascertain whether a functioning government acted with the requisite intent and engaged in an act of international terrorism as defined in 28

U.S.C. sec. 2331, the Palestinian government should be treated as a foreign state, even if it falls short of meeting the criteria for statehood. Cf. e.g. Walter C. Hutchens, <u>Note: Alienage Jurisdiction And The Problem Of Stateless Corporations: What Is A Foreign State For Purposes of 28 U.S.C. sec. 1332(a)(2)?</u>, 76 Wash. U. L. Q. 1067 (1998).

(c) In statements made and published after the November 5 decision plaintiffs' attorneys have said that they view themselves as soldiers fighting a war, that this case and other cases and activities they have commenced and are pursuing elsewhere in the United States, in Israel and in Europe, are part of the war. Plaintiffs' attorneys have stated other political intentions including bankrupting the Palestinian Authority and PLO while deaths and injuries to thousands of Palestinians and Israelis are uncompensated. They refer pointedly to documents of the Palestinian government the Israeli army illegally seized by improper use of military force, with the implication that these documents have an evidentiary value. An article from the Jerusalem Post of October 21, 2002 espousing such views is attached hereto to illustrate these motives and purposes.

(d) Private causes of action such as sec. 2333 creates are susceptible to misuse that might embarrass or interfere with U.S. foreign policy, and other important vital public interests. The use of actions under sec. 2333 to wage war as plaintiffs' counsel say they are doing, including economic warfare and bankruptcy as part of an all-out political attack upon the Palestinian government and its leadership, constitutes serious misuse of these statutory private causes of action, jeopardizing the rule of law and threatening to impair and prejudice prospects of peace in the mid-east. It is partisan and political and totally indifferent to the suffering of the Palestinian people that is being inflicted by the illegal use against the Palestinian people and government of Israeli military superiority and the unlawful occupation by Israeli settlers of

Palestinian territories repeatedly declared illegal and condemned by the United Nations and by the vast majority of nations around the world, including the United States. It is equally partisan and political and totally indifferent to the suffering of the Israeli people and the families and friends of Israeli victims of the ongoing violence. Defendants' briefing of these issues, if permitted, will include consideration whether the views of the U.S. State Department should be sought with respect to the application of sec. 2337(2) to bar the use plaintiffs' attorneys are seeking to make of sec. 2333 in this case as well as the appropriateness and justiciability of issues plaintiffs propose to litigate in an attempt to establish what they contend are derelictions of duty on the part of the Palestinian government with respect to HAMAS, and the appropriateness as a matter of U.S. foreign relations of treating the Palestinian government for purposes of this case as an unincorporated association.

The Palestinian government believes it is entitled to the dismissal of this case on grounds of sovereign immunity and under sec. 2337(2), and that if dismissal is denied, the denial will be immediately reviewable on interlocutory appeal. See Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 91 (D.C. Cir. 2002); Foremost McKesson, supra, 905 F.2d at 443; Jungquist v. Sheikh Sultan Binkhalifa Al Nahyan, 115 F.3d 1020, 1025-27 (D.C. Cir. 1997); the Court of Appeals in this Circuit has apparently not yet decided the question of the appealability of a denial of sovereign immunity, see as of 1993 the cases collected in Federal Ins. Co. v. Richard I. Rubin & Co. Inc., 12 F. 3d 1270, 1282 (3d Cir. 1993) but its many decisions upholding jurisdiction over interlocutory appeals of the denial of qualified immunity and cases such as Lyons v. Brown, 158 F.3d 605 (1st Cir. 1998) presage that the Court will agree with the apparently unanimous view of those courts of appeal that have decided the question. Lyons

upheld jurisdiction over an interlocutory appeal of an order denying a motion for substitution by the United States under the Federal Tort Claims Act, as equivalent to a denial of immunity.

On defendants' interlocutory appeal the Court will have pendent jurisdiction to consider other issues such as the legal sufficiency of plaintiffs' claims against the Palestinian government under sec. 2333 and the appropriateness of treating defendants as an unincorporated association. See Jungquist, 115 F.3d at 1026-27.

As part of the present motion therefore, defendants request the Court to issue a stay of further proceedings herein other than those bearing on immunity pending the disposition of this motion and any subsequent appeal.

## Conclusion

Defendants' motion for reconsideration should be granted and a stay of proceedings should be granted as requested pending the determination of the motion and any interlocutory appeal by defendants.

Dated: November 20, 2002

/s/ Deming E. Sherman
Deming E. Sherman (#1138)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
401-274-9200
401-276-6611 (FAX)

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003
212-475-3232
212-979-1583 (FAX)

Attorneys for Defendants
The Palestinian Authority and
The PLO

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of November, 2002, I faxed and mailed a copy of the within Memorandum in Support of Palestinian Defendants' Motion for Reconsideration to David J. Strachman, Esq., Skolnik, McIntyre & Tate Esqs., Ltd., Suite 400, 321 South Main Street, Providence, RI 02903 and mailed to Nitsana Darshan-Leitner, Esq., 28 Emek Ayalon Street, Modi'in 71770, Israel.

*[signature]*



# JERUSALEM POST

# Legal Eagle

Hilary Leila Krieger                                                                                 Oct. 21, 2002

Known for racking up multi-million dollar judgements in her fight to punish those responsible for terrorism, attorney Nitsana Darshan-Leitner says it's only the beginning.

In a war without battlefields and uniforms, Nitsana Darshan-Leitner is a soldier on the front lines.

"We are in a war, and everyone should take any measures they can to fight this war," says the firebrand lawyer, right before taking to the stage to give a lecture to a packed Jerusalem auditorium.

"I see myself as a soldier," says the 29-year-old who has taken the European Union, Iran, the Palestinian Authority, and Hamas to court for sponsoring terrorism. She hopes her suits, alleging monetary support and even outright complicity in terror, will bankrupt the organizations that carry out attacks and stop the flow of money from states that sponsor them.

Last week the Jerusalem District Court announced a NIS 64 million lien on the Palestinian Authority in anticipation of a judgment in Darshan-Leitner's suit against the PA for its role in the lynching of IDF reservist Cpl. Vadim Novesche on October 11, 2000.

In February 2002, Darshan-Leitner won a $183 million verdict against Iran for funding Hamas following the bombing of a No. 18 Jerusalem bus on February 25, 1996 that killed American-Israeli Ira Weinstein and 25 others. Darshan-Leitner represented the Weinstein family in Jerusalem.

The list of potential actions keeps growing, with a suit in the works seeking the extradition of Palestinian terrorists deported to Europe in the wake of the siege of the Church of the Nativity in Bethlehem in April.

Since May, Darshan-Leitner has pressed for a NIS 100 million judgment against the EU, arguing some of the aid it gives to the PA each month ends up in terrorist coffers.

"The European Union is today one of the biggest funders of Palestinian terror," Darshan-Leitner said, making her case at the Jerusalem talk sponsored by AMIT Women, a religious women's organization.

She noted that when Palestinian Authority Chairman Yasser Arafat couldn't provide adequate accounting to explain how he spent $100 million in American aid allocated under the Oslo Accords, the United States refused to give him more money.

But to this day, the European Union pays $10 million a month to the PA with little ability to track its use. Pointing to the desolation and poverty in the West Bank and Gaza - following $1 billion in European funding - Darshan-Leitner asked, "Where did the money of the EU go?"

She answered by pointing to the 70 checks confiscated from Arafat's Ramallah headquarters by Israel in April during Operation Defensive Shield paying out money from EU deposits to individuals who carried out terror attacks.

Darshan-Leitner claimed the EU was willing to turn a blind eye to the accounting discrepancies in order to get a foothold in the peace process as a key bankroller. Now it claims to see no connection between its transferred funds and terrorism.

Darshan-Leitner said in response to her charges, the EU has invoked the shield of diplomatic immunity - a claim the lawyer believes she can disprove when she faces the EU in court.

"The European Union doesn't deny the allegations. They didn't say, 'We have nothing to do with these allegations.' They didn't say, 'We are willing to come to court to show that we have nothing to do with terror.' They said one thing: 'We have diplomatic immunity. You can't sue [us] in Israel,'" the lawyer declared.

"If you have nothing to hide, if you have nothing to do with terror, if your hands are clean, come to court. Don't run away to Brussels," she challenged.

"Face the Blumberg family and sho( you have ... nothing to do with their mother's dea( )n't hide," she said, referring to the family she represents in the European Union suit.

The mother, Techiya, five months pregnant, was fatally shot on August 5, 2001 by Palestinian policemen as she and her family drove past them near their West Bank home in Karnei Shomron. The father, Stephen, has been permanently paralyzed as a result of the attack, as has his 14-year-old daughter Tzipora.

Darshan-Leitner insists that the crusade she leads isn't just her own. She also wants "to let the terror victims fight back, to give them the ability to stop being victims."

Because Palestinian policemen carried out the attack on the Blumbergs, Darshan-Leitner feels the connection to EU money - which funds the PA operation as a whole - is clear.

She also argues the PA is responsible for the Ramallah lynching of Novesche, whose family she's representing in its suit, and Sgt.-Maj. Yosef Avrahami, since the murders took place at a PA police station and Palestinian police involvement was shown in the widely publicized video of the attack.

Any day now, Darshan-Leitner expects a first-of-its-kind judgment against Hamas.

But getting the ruling can be easier than collecting the payment due from the decision.

In the case of Iran, assets in the United States (where the judgment was rendered) have been frozen. But due to political considerations, the US government has declined to pay money owed to victims from these funds.

There are also times when Darshan-Leitner can't even bring a case to trial. She declined to pursue the United Nations Relief and Works Agency - for failing to stop or at least inform Israel about terrorist activity in refugee camp sites that they operate - because of the diplomatic immunity treaties in place between Israel and the United Nations.

In January 2001, she petitioned the PA justice ministry to represent Alam Bani Odeh, the first Palestinian accused of collaborating with Israel since the outbreak of the intifada. No Palestinian lawyer was willing to represent Bani Odeh and the PA justice minister said he would consider Darshan-Leitner's request.

However, Bani Odeh was executed several days later following a lightning-quick trial with a PA attorney appointed to represent him.

Darshan-Leitner is also fully aware that the attempt to extradite the Palestinians deported from the Church of the Nativity to European countries will be an uphill battle.

Despite her full docket of complicated and volatile cases, she remains undeterred, saying "There is no limit to this war."

| JewishCafe.com Connecting Jewish Singles Online | | |
|---|---|---|
| Jewish? | Yes | No |

This article can also be read at http://www.jpost.com/servlet/Satellite?pagename=JPost/A/JPArticle/ShowFull&cid=1035172997842

[ Back to the Article ]

Copyright 1995-2002 The Jerusalem Post - http://www.jpost.com/