UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.

vs.                                        C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.

**PLAINTIFFS' MOTION TO STRIKE**

For the reasons presented in the accompanying memorandum in support of this motion, plaintiffs hereby move:

(1) that the Court strike sections 2(c) (in toto) and 2(d) (second sentence only) of the memorandum submitted by defendants PA and PLO in support of their Motion for Reconsideration dated November 20, 2002 (the "memorandum"), which sections contain statements prohibited by Fed.R.Civ.P. 11 and 12(f);

(2) that the Court strike sections 3 though 12 of the memorandum, which sections contain statements prohibited by Fed.R.Civ.P. 11 and 12(f);

(3) that the Court strike the attachments/exhibits to the memorandum as the inclusion of said documents in defendants' filing is prohibited by Fed.R.Civ.P. 11 and 12(f);

(4) that the Court stay the time for plaintiffs' answer to defendants' Motion for Reconsideration January 27, 2003, pending the Court's decision on the instant motion.

Plaintiffs, by their Attorneys,

_____
David J. Strachman #4404
McIntyre, Tate, Lynch & Holt
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)

## CERTIFICATION

I hereby certify that on the ___5th___ day of February, 2003 I mailed a true copy of the within to:

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003

Deming E. Sherman
EDWARDS & ANGELL, LLP
2800 Bank Boston Plaza
Providence, RI 02903

_____

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.

vs.  C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE

### I   INTRODUCTION

This case involves the wrongful death of an American citizen and his pregnant wife, and the question of whether the named defendants are liable for those deaths. Despite defendants' frivolous efforts to paint it as such, this case is not about politics or the Middle East conflict.

Indeed, the murder of Yaron Ungar, and the punishment of those responsible, has been a matter of priority for the United States. Between March 6-10, 1998, an interagency task force from the Department of State, Justice Department, FBI and National Security Commission traveled to Israel and the PA to investigate the murder of Yaron Ungar and eight other U.S. citizens killed by Palestinian terrorists. See Congressional Record S5573 (June 2, 1998). (Exhibits A and B)

Similarly, the U.S. Senate and House of Representatives have demanded that Yaron's murderers (i.e. the individual Hamas defendants in this action) be prosecuted in a U.S. court, and specifically listed them by name. (Exhibits A and B)  Numerous Senators and Congressmen have lambasted the PA for harboring the murderers and refusing to cooperate in the investigation. Id. The Senators and Congressmen emphasized that Yaron and the other Americans victims "*are not random or unknown people. These people are our children and citizens*" (Exhibit B) and that they are "*our parents, our children, and our citizens.*" (Exhibit A)

In April, 1998, over 60 members of the House of Representatives, including the Speaker of the House, sent a letter to Attorney General Reno, demanding that the Department of Justice take action to apprehend the terrorists responsible for the murder of Yaron Ungar and nine other Americans. The letter specifically requested the prosecution of Ibrahim Ghanimat, a defendant in this action.[1] (Exhibit C)

On March 25, 1999, the Foreign Operations Subcommittee of the Senate Appropriations Committee held a hearing on the matter of American citizens killed by Palestinian terrorists. At the hearing, the murder of Yaron Ungar was specifically discussed by Mark Richard, Deputy Assistant Attorney General, U.S. Department of Justice.

The plaintiffs in this case are neither policemen nor prosecutors. They are the orphaned children of the victims, and the parents and siblings of the victims. The plaintiffs seek nothing more than redress for the harm they have suffered, though such redress cannot begin to compensate them for their loss. No one can deny the plaintiffs their right to seek such redress. No one can impugn the motives of the grieving family members of the victims in bringing this action.

## II   DEFENDANTS' FRIVOLOUS AND VEXATIOUS STATEMENTS SHOULD BE STRIKEN

From the very outset, defendants have made heavy-handed and transparent attempts to turn this tort action into a political charade. Defendants have filled their pleadings with lengthy political diatribes and "supported" those pleadings with newspaper clippings about political speeches and events, none of which have any bearing on the legal questions before this Court.

---

[1] In December, 1998, several of the plaintiffs met privately with Senator Arlen Spector, at the latter's request, to discuss the investigation of the murder. Congressmen Jon Fox and Brad Sherman also invited plaintiffs to a similar meeting, which took place in December, 1998. Similarly, in February, 1999, plaintiffs were invited to a meeting with Senator Connie Mack and his staff, to discuss the involvement of the PA the attack.

2

Defendants have demanded (apparently in all seriousness) that this Court recognize them as sovereign entities to avoid unfairly "skewing" their political battle with Israel, and have argued, as they did in the <u>Klinghoffer</u> case, that terror attacks are political and therefore exempt from civil liability or sanctions.

In short, defendants' defense strategy has been to make repeated attempts to taint this action as "political."

In their Motion for Reconsideration dated November 20, 2002, defendants moved from arguing merely that this case is "political" to an accusation that the Israeli lawyer who originally referred this case to plaintiffs' trial counsel and who thereafter had no further participation in the case, is waging a political campaign against defendants.[2] <u>See</u> §2(c) and (d) of defendants' Memorandum in support of their motion.

Plaintiffs elected at the time to essentially ignore the ad hominem attack contained in the Memorandum dated November 20, 2002. Plaintiffs did not want to dignify defendants' absurd diatribe by moving for sanctions or to strike. Plaintiffs simply pointed out the impropriety of these remarks (which is self-evident in any case), anticipating that defendants' counsel would take heed and desist of their own accord. <u>See</u> plaintiffs' Memorandum in Opposition to defendants' Motion to Reconsider of November 20, 2002).

Unfortunately, defendants have misinterpreted plaintiffs' restraint. The Memorandum submitted by defendants in support of their Motion to Reconsider dated January 27, 2003, consists of several pages of lurid accusations regarding the alleged motives, political beliefs and character of the Israeli lawyer who originally referred this case. Defendants' Memorandum is "supported" once again by newspaper clippings.

---

[2] The same Israeli lawyer, Ms. Darshan-Leitner, recently obtained a $13 million prejudgment attachment against the PA in an Israeli court on behalf of the family of an Israeli who was lynched by PA policemen. This may explain defendants' particular enmity toward Ms. Darshan-Leitner.

3

Plaintiffs can no longer remain silent in the face of defendants' improper attempts to defame and delegitimize them by association, and thereby prevent them from seeking legal redress for the murder of Yaron and Efrat Ungar. The Court should strike defendants' vexatious and frivolous statements.

Even if the Israeli lawyer who originally referred this case did represent plaintiffs in this action (she does not), and even if any or all of defendants' statements about her were accurate (on information and belief most are not), <u>none of these statements could have any bearing on the merits</u> of defendants' two motions to reconsider, or the case in general. It hardly needs to be noted that, <u>as a matter of law</u>, the political beliefs, motives and character of a party's counsel (or, *a fortiori*, those of a referring attorney) can have no influence whatsoever on the merits of the issues before the Court.[3] Defendants' attacks are therefore "immaterial" and should be stricken pursuant to Fed.R.Civ.P. 12(f).

Moreover, defendants, who are represented by experienced counsel, know full well that their attacks on the political beliefs, motives and character of an attorney cannot advance defendants' motion by one iota on the merits. Therefore, these ad hominem attacks are not good faith arguments, but rather constitute <u>a knowing and intentional attempt to defame, delegitimize and taint the plaintiffs by association</u>. In another era and political context, attacks of this type were known as "McCarthyism." These statements and the exhibits "supporting" them are therefore "impertinent" and "scandalous" within the meaning of Fed.R.Civ.P. 12(f), and should be stricken.

---

[3] Therefore, as a matter of principle, plaintiffs will not waste the Court's time rebutting the substance of the statements. Plaintiffs note, however, that defendants' entire approach appears not a little ironic. Some of the most celebrated lawyers in American legal history have been motivated by an unconcealed desire to use the law to fight for what they considered a better society. The names of Daniel Webster, Clarence Darrow, Thurgood Marshall, William O. Douglas, and more recently William Kunstler, Morris Dees, David Klayman -- and Ramsey Clark -- come to mind as prominent examples.

4

The statements and exhibits contained in defendants' memorandum also violate Fed.R.Civ.P. 11(b), which forbids the assertion of claims *"for any improper purpose, such as to harass"* and requires that claims be *"warranted by existing law."*

These vexatious and irrelevant statements are contained in sections 2(c) (in toto) and 2(d) (second sentence only) of the Memorandum dated November 20, 2002, and in sections 3 through 12 of the Memorandum dated January 27, 2003, and the Court is respectfully requested to strike those sections as well as the exhibits filed along with defendants' motion.

The Court is requested to stay the time for plaintiffs' answer to defendants' Motion for Reconsideration dated January 27, 2003, pending the Court's decision on the instant motion.

Plaintiffs, by their Attorneys,

_____
David J. Strachman #4404
McIntyre, Tate, Lynch & Holt
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)

## CERTIFICATION

I hereby certify that on the ____ day of February, 2003 I mailed a true copy of the within to:

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003

Deming E. Sherman
EDWARDS & ANGELL, LLP
2800 Bank Boston Plaza
Providence, RI 02903

_____