## SENATE CONCURRENT RESOLUTION 100—REGARDING AMERICAN VICTIMS OF TERRORISM

Mr. LOTT (for Mr. SPECTER) submitted the following concurrent resolution; which was referred to the Committee on Foreign Relations:

### S. CON. RES. 100

Whereas the traditional policy of the United States, reiterated by this Administration, has been to vigorously pursue and apprehend terrorists who have killed American citizens in other countries;

Whereas numerous American citizens have been killed by Palestinian terrorists, most of them in Israel or the Israeli administered territories, including 9 since the signing of the Oslo Accords in 1993, namely Nachshon Wachsman (New York, Alisa Flatow (New Jersey), Sara Duker (New Jersey), Matthew Eisenfeld (Connecticut), Joan Davenny (Connecticut), David Boim (New York), Yaron Ungar (New York), Leah Stern (New Jersey), and Yael Botwin (California);

Whereas at least 20 of the terrorists suspected in the killings of American citizens in Israel or the Israeli administered territories during 1993–1997 have been identified by Israel as Mohammed Dief, Nabil Sharihi, Nafez Sabih, Imjad Hinawi, Abd al-Maid Dudin, Adel Awadallah, Ibrahim Ghneimat, and Mahmoud Abu Hanudeh, Abd al-Rahman Ghanelmat, Jamal al-Hur, Raid Abu Hamadayah, Mohammad Abu Wardah, Hassan Salamah, Abd Rabu Shaykh'Id, Hamdallah Tzramah, Abd Al-Nasser Atallah Issa, Hataham Ibrahim Ismail, Jihad Mahammad Shaker Yamur, and Mohammad Abbasm;

Whereas, according to the Israeli Government, 10 of those 20 terrorist suspects are currently believed to be free men;

Whereas the Anti-Terrorism Act of 1986 permits the prosecution, in the United States, of individuals who murder American citizens abroad; and

Whereas the United States has previously acted to bring to justice those responsible for the deaths of American citizens and has established a precedent of United States intervention by demanding that Libyan leader Moammar Qadaffi transfer to the United States the Libyan terrorists suspected of bombing Pan Am flight 103: Now, therefore, be it

*Resolved by the House of Representatives (the Senate concurring),* That it is the sense of the Congress that—

(1) the United States should demand the prosecution of all suspected perpetrators of these attacks against the United States citizens;

(2) the United States should seek the cooperation of the Palestinian Authority and all other appropriate authorities in the prosecution of these cases; and

(3) the suspects should be tried in the United States unless it is determined that such action is contrary to effective prosecution.

● Mr. SPECTER. Mr. President, this measure expresses the sense of the Congress regarding the murder of U.S. citizens by Palestinian terrorists. This resolution addresses specific concerns that I have regarding the failure of the Palestinian Authority to apprehend and bring to justice perpetrators of terrorist acts involving American citizens who have been killed in recent months and years in terrorist attacks in Israel. A companion resolution, introduced by Congressman JON FOX, passed the House by a vote of 406–0 on May 5, 1998.

Since the signing of the Oslo Accords in 1993, at least nine American citizens in Israel have been killed by Palestinian terrorists. They are our parents, our children, and our citizens. The traditional policy of our nation has been to pursue and apprehend any terrorists who have killed American citizens abroad. This in no way contravenes or conflicts with either international or constitutional law. While criminal jurisdiction is customarily limited to the place where the crime occurred, it is well established constitutional doctrine that Congress has the power to apply U.S. law extra territorially if it so chooses. *United States* versus *Bowman,* 260 U.S. 94, 98 (1922). It was on the basis of this doctrine that I spearheaded efforts to enact the Anti-Terrorism Act of 1986, which extended the reach of U.S. criminal jurisdiction to acts of violence perpetrated against Americans anywhere in the world. But, making murder committed by terrorists a U.S. crime will not, on its own, protect Americans abroad. We must also demonstrate our seriousness by applying the law regularly and consistently.

At the heart of the Anti-Terrorism Act was the fundamental notion that international terrorists are criminals and ought to be treated as such—they should be promptly located, apprehended, and brought to trial for their heinous crimes. The United States government in conjunction with the government of Israel knows the location of 10 of the 20 terrorists suspected in the murders of these United States citizens. I am aware that from March 6–10, an interagency task force comprised of individuals from the Department of State, Justice Department, FBI and National Security Commission was in Israel in the Palestinian controlled areas to investigate the deaths of these Americans. Cooperation from the Palestinian Authority is critical as investigative authorities attempt to discover and develop evidence for prosecution. However, the Palestinian Authority has failed to cooperate and has not honored requests for the transfer of many of these suspects.

The Anti-Terrorism Act of 1986 provides the necessary subject matter jurisdiction to prosecute those who attack U.S. citizens abroad. But, to obtain personal jurisdiction over the culprits themselves, the suspect must first be seized or arrested and brought to the United States to stand trial. Under current constitutional doctrine, both U.S. citizens and foreign nationals can be seized and brought to stand trial in the United States without violating due process of law. *Frisbie* versus *Collins,* 342 U.S. 519, 522 (1952).

My resolution calls for the United States to demand the prosecution of all suspected perpetrators of these attacks against United States citizens by seeking the cooperation of the Palestinian Authority and all other appropriate authorities in the prosecution of these cases. In addition, my resolution calls

for these suspects to be tried in the United States unless it is determined that such action is contrary to effective prosecution.

We must utilize all our laws properly and remain persistent in seeking justice for these American families. We must remain vigilant in our search for all suspected perpetrators of these atrocious attacks against U.S. citizens. I urge my colleagues to support this measure and to help push for justice in this important matter.●

## SENATE RESOLUTION 240—EXPRESSING THE SENSE OF THE SENATE WITH RESPECT TO DEMOCRACY AND HUMAN RIGHTS IN THE LAO PEOPLE'S DEMOCRATIC REPUBLIC

Mr. THOMAS (for himself, Mr. GRAMS, and Mr. SMITH of Oregon) submitted the following resolution; which was referred to the Committee on Foreign Relations.

### S. RES. 240

Whereas in 1975, the Pathet Lao party supplanted the existing Lao government and the Lao Royal Family, and established a "people's democratic republic," in violation of the 1962 Declaration on the Neutrality of Laos and it's Protocol, as well as the 1973 Vientiane Agreement on Laos;

Whereas since the 1975 overthrow of the existing Lao government, Laos has been under the sole control of the Lao People's Democratic Party;

Whereas the present Lao Constitution provides for human rights protection for the Lao people, the Laos is a signatory to international agreements on civil and political rights; and

Whereas Laos has become a member of the Association of Southeast Asian Nations, which calls for the creation of open societies in each of its member states by the year 2020;

Whereas despite that, the State Department's "Country Reports on Human Rights Practices for 1997" notes that the government has only slowly eased restrictions on basic freedoms and begun codification of implementing legislation for rights stipulated in the Lao Constitution, and continues to significantly restrict the freedoms of speech, assembly and religion; and

Whereas on January 30, 1998, the Lao government arrested and detained forty-four individuals at a Bible study meeting in Vientiane and on March 25 sentenced thirteen Christians from the group to prison terms of three to five years for "creating division among the people, undermining the government, and accepting foreign funds to promote religion;" Now therefore, be it

*Resolved by the Senate,* That it is the sense of the Senate that the present government of Laos should—

(1) respect international norms of human rights and democratic freedoms for the Lao people, and fully honor its commitments to those norms and freedoms as embodied in its constitution and international agreements, and in the 1962 Declaration on the Neutrality of Laos and it's Protocol and the 1973 Vientiane Agreement on Laos;

(2) issue a public statement specifically reaffirming its commitment to protecting religious freedom;

(3) fully institute a process of democracy, human rights and openly-contested free and fair elections in Laos, and ensure specifically the National Assembly elections—currently scheduled for 2002—are openly contested.