**REGARDING AMERICAN VICTIMS OF TERRORISM (House of Representatives - May 05, 1998)**

[Page: H2756]

Mr. GILMAN. Mr. Speaker, I move to suspend the rules and agree to the concurrent resolution (H. Con. Res. 220) regarding American victims of terrorism, as amended.

The Clerk read as follows:

# H. Con. Res. 220

Whereas the traditional policy of the United States, reiterated by this Administration, has been to vigorously pursue and apprehend terrorists who have killed American citizens in other countries;

Whereas numerous American citizens have been killed by Palestinian terrorists, most of them in Israel or the Israeli administered territories, including 9 since the signing of the Oslo Accords in 1993, namely Nachshon Wachsman (New York), Alisa Flatow (New Jersey), Sara Duker (New Jersey), Matthew Eisenfeld (Connecticut), Joan Davenny (Connecticut), David Boim (New York), Yaron Ungar (New York), Leah Stern (New Jersey), and Yael Botwin (California);

Whereas at least 20 of the terrorists suspected in the killings of American citizens in Israel or the Israeli administered territories during 1993-1997 have been identified by Israel as Mohammed Dief, Nabil Sharihi, Nafez Sabih, Imjad Hinawi, Abd al-Majid Dudin, Adel Awadallah, Ibrahim Ghneimat, and Mahmoud Abu Hanudeh, Abd al-Rahman Ghanelmat, Jamal al-Hur, Raid Abu Hamadayah, Mohammad Abu Wardah, Hassan Salamah, Abd Rabu Shaykh 'Id, Hamdallah Tzramah, Abd Al-Nasser Atallah Issa, Hataham Ibrahim Ismail, Jihad Mahammad Shaker Yamur, and Mohammad Abbasm;

Whereas, according to the Israeli Government, 10 of those 20 terrorist suspects are currently believed to be free men;

Whereas the Anti-Terrorism Act of 1987 permits the prosecution, in the United States, of individuals who murder American citizens abroad; and

Whereas the United States has previously acted to bring to justice those responsible for the deaths of American citizens and has established a precedence of United States intervention by demanding that Libyan leader Moammar Qadaffi transfer to the United States the Libyan terrorists suspected of bombing Pan Am flight 103: Now, therefore, be it
*Resolved by the House of Representatives (the Senate concurring)*, That it is the sense of the Congress that--

(1) the United States should demand the prosecution of all suspected perpetrators of these attacks against United States citizens;

(2) the United States should seek the cooperation of the Palestinian Authority and all other appropriate authorities in the prosecution of these cases; and

(3) the suspects should be tried in the United States unless it is determined that such action is contrary to effective prosecution.

The SPEAKER pro tempore. Pursuant to the rule, the gentleman from New York (Mr. **Gilman**) and the gentleman from Indiana (Mr. **Hamilton**) each will control 20 minutes.

The Chair recognizes the gentleman from New York (Mr. **Gilman**).

## GENERAL LEAVE

Mr. GILMAN. Mr. Speaker, I ask unanimous consent that all Members may have 5 legislative days within which to revise and extend their remarks on the resolution now being considered.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from New York?

There was no objection.

Mr. GILMAN. Mr. Speaker, I yield myself such time as I may consume.

(Mr. GILMAN asked and was given permission to revise and extend his remarks.)

Mr. GILMAN. Mr. Speaker, I want to commend our colleague, the gentleman from Pennsylvania (Mr. **Fox**), for sponsoring H. Con. Res. 220, which expresses the sense of the Congress regarding the murder of U.S. citizens by Palestinian terrorists.

As Secretary of State Albright meets with Israeli Prime Minister Benjamin Netanyahu and PLO Chairman Yassir Arafat, it is critical that security concerns be the basis for any movement in the negotiations. In that vein, H. Con. Res. 220 recognizes that the traditional policy of our Nation is to vigorously pursue and apprehend any terrorists who have killed American citizens in other countries.

Regrettably, even as more Israelis have been killed since the beginning of the Oslo process than at any other time during the Intifada, at least nine American citizens have been killed by Palestinian terrorists since the handshake on the White House lawn in September 1993. They are: Nachshon Wachsman, David Boim, and Yaron Ungar of New York; Alisa Flatow, Sara Duker and Leah Stern of New Jersey; Matthew Eisenfeld and Joan Davenny of Connecticut, and Yael Botwin of California.

At least 20 of the terrorists suspected in these killings have been identified by the Government of Israel, although at least 10 are believed to be free, despite repeated Israeli transfer requests to the Palestinian Authority.

Mr. Speaker, this clearly undermines the process envisaged by the Oslo Accords. Because these families deserve justice, and since the Antiterrorism Act permits the prosecution in our Nation of individuals who murder American citizens abroad, this resolution expresses the sense of Congress that our Nation should demand the prosecution of all suspected perpetrators of these attacks; that we should seek the cooperation of the Palestinian Authority, and all other appropriate authorities in the prosecution of these cases; and unless effective prosecution elsewhere expresses the sense of Congress, that the suspects should be tried in the United States.

Recently, a task force comprised of individuals from the Justice Department and the FBI were in Israel in the Palestinian areas to investigate the death of these American citizens. Cooperation from the Palestinian Authority is critical as investigative authorities attempt to discover and develop evidence for prosecution.

I therefore want to commend the gentleman from Pennsylvania (Mr. **Fox**), for his leadership on this issue and for his persistence in seeking justice for these American families. I urge my colleagues to support this measure unanimously.

Mr. Speaker, I ask unanimous consent to yield the balance of my time to the gentleman from Pennsylvania (Mr. **Fox**), the original sponsor of this measure, and that he may control the time.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from New York?

There was no objection.

[Page: H2757]

Mr. HAMILTON. Mr. Speaker, I yield myself such time as I may consume, and I rise in support of the resolution. I would be glad to have the gentleman from Pennsylvania speak first, if he would like to do so.

Mr. FOX of Pennsylvania. Mr. Speaker, if the gentleman will yield, we would be glad to hear from the ranking member of the committee whose support we accept and for whom our admiration is endless.

Mr. HAMILTON. Mr. Speaker, I support H. Con. Res. 220 and I commend the gentleman from Pennsylvania (Mr. **Fox**) for introducing it and working very hard to get it approved.

I also appreciate the gentleman from Pennsylvania and the gentleman from New York (Mr. **Gilman**), the chairman of the committee, for accommodating several of our suggestions in committee, I think largely to make the resolution more accurate.

These changes included several changes recommended by the administration. They will help ensure that the resolution reflects the current set of facts as best they can be determined.

I certainly agree with the heart of this resolution; namely, that suspects in terrorist attacks against innocent civilians should be brought to justice. Where those attacks involve U.S. citizens, the United States should try to prosecute them in the United States if that serves the interests of justice.

As the headlines in the newspaper suggest almost daily, nothing is easy in the Middle East, and everything becomes very complicated. Several of the cases addressed in this resolution are complicated. The facts are murky. It is unclear in some instances which suspects are in the custody of the Palestinian Authority, which suspects are in Israeli custody, which suspects are still at large in territories controlled by the Palestinian Authority, or controlled jointly by Israel and the Palestinian Authority. It is sometimes difficult to know which suspects Israel has requested the Palestinian Authority to transfer to Israeli jurisdiction, or what Israeli prosecution plans are with regard to various cases.

The Department of State, I am told, cannot vouch for some of the specific information in the resolution. The administration may have a similar list of names to those included in the resolution, but many of these cases are still actively under investigation, and the finalist of suspects may look different. We simply do not know. At this point in time, the Department of State has not indicated that they have all of the names.

In addition, the United States may not have been given all of the evidence against the individuals listed in the resolution that the Israeli Government has or other appropriate authorities have. It is clear that the United States cannot proceed with prosecution until it has all of the relevant evidence.

Mr. Speaker, in the spirit of this resolution, let me urge parties with such evidence to cooperate fully with the United States in sharing information in order to bring the suspects to justice. The United States is currently reviewing a number of the cases mentioned in the resolution. A team from the Departments of Justice and State recently returned from a visit to Israel, and this team is now reviewing evidence in several of these cases with much of that evidence being classified.

[TIME: 1430]

The United States is and should be doing everything it appropriately can to pursue information and justice in these terrorism cases. In some cases, that may mean that it is best for Israel to try and to sentence the suspects.

For example, in one case described by the administration, over a dozen Israelis and one U.S.-Israeli dual national were victims of the attack. Clearly, Israeli authorities would be in a better position than the United States to impose the appropriately severe penalties in such a case. Our goal of swift and appropriate justice might be best served then with a prosecution in Israel.

It may not always be in the best interest of justice for the United States to insist on prosecution. I am pleased to see that the resolution makes this distinction. There is no question, though, that suspects in these terrorist incidents, as well as all other incidents leading to the loss of life, should be tried and should be sentenced if convicted.

Mr. Speaker, I commend the gentleman from Pennsylvania (Mr. **Fox**) and the other sponsors of the resolution for bringing it forward. I urge the adoption of the resolution.

Mr. Speaker, I reserve the balance of my time.

Mr. FOX of Pennsylvania. Mr. Speaker, I yield myself such time as I may consume.

Mr. Speaker, this resolution has moved quickly from its inception in the Committee on International Relations to the floor today under the chairmanship of the gentleman from New York (Mr. **Gilman**), our colleague and friend, a testament to the strength and determination of the American people and their representatives to right the wrongs against our countrymen and women.

Mr. Speaker, I also thank the gentleman from Indiana (Mr. **Hamilton**), the ranking member, for his assistance in this regard.

H. Con. Res. 220 is a resolution that addresses some specific concerns that I and many of my colleagues have about current U.S. policy regarding terrorism involving American victims, specifically regarding American citizens who have been killed in recent months and years in terrorist attacks in Israel.

Since the beginning of the Oslo Accords in 1993, at least nine American citizens in Israel, and now I understand 11, have been killed by Palestinian terrorists. These are not random or unknown people. These people are our children and citizens.

They include Nachshon Wachsman, Alisa Flatow, Sara Duker, Matthew Eisenfeld, Joan Davenny, David Boim, Yaron Ungar, Leah Stern, and Yael Botwin. Recently, unfortunately, we have had to add two additional names to that list: Ira Weinstein and Dove Dribben.

To add insult to injury, Mr. Speaker, the United States Government in conjunction with the government of Israel knows the location of 10 of the 20 terrorists suspected in the murders of these United States citizens. The Palestinian Authority has not honored Israel's formal requests for the transfer of many of these suspects. Their lack of compliance tremendously undermines the process envisaged by the Oslo Accords. Annex 4, Article 2, paragraph 7(f)(1). The United States must now invoke the Anti-Terrorism Act of 1987, which permits the transfer of individuals accused of murdering Americans abroad.

The time has come for the United States to stand up and fight for the families of victims killed overseas. No longer can we simply assume that American citizens abroad are safe. When unfortunately they are endangered or in this case killed, this Nation must utilize its laws properly to ensure that justice is carried out.

Mr. Speaker, I thank my colleagues for their attention and look forward to their support on the resolution.

Mr. Speaker, I reserve the balance of my time.

- 

[Page: H2758]

- Mr. ROTHMAN. Mr. Speaker, today America has the opportunity to deliver a powerful and poignant message to terrorists: If you murder innocent Americans and tear innocent families apart, the United States of America will demand justice.

- Mr. Speaker, as we debate this bill on the Floor of the U.S. House of Representatives, Israeli and PLO leaders are in Great Britain being pressured to come together for a lasting peace.

- But since the PLO signed the Oslo Accords, ten Americans have been killed by Arab terrorists--one of them was a constituent of mine. Her name is Sara Duker. And the Palestinian leadership headed by Yassir Arafat has done nothing to bring her terrorist murderers to justice.

- When my good friend **John Fox** and I announced that we were going to fight for her killer's transfer to the United States, Sara's mother Arline came down to Washington to join us for the announcement. All Arline wants to see is justice. Her daughter was taken away from her. She should expect no less from us.

- Since giving his word at Oslo, Yassir Arafat has made a total mockery of his written commitment to transfer to Israel for prosecution any terrorist who has killed innocent people. In fact, not one of the accused terrorists that Israeli authorities have identified and requested has been turned over to Israel for justice.

- Justice cannot wait any longer. We must seek the terrorists' transfer to the United States before the trail of evidence dries up. To do any less would represent a serious failure of the United States government to safeguard the sanctity of our citizenry.

- We cannot let the murder of American citizens anywhere in the world go unanswered. We must have our message heard loud and clear: Terrorists will never win.

- 

- Mr. SALMON. Mr. Speaker, this important resolution expresses the sense of the Congress that the United States should demand that Palestinian Authority (PA) Chairman Yasser Arafat transfer the United Stats for prosecution the terrorists who have murdered American citizens. The refusal by the PA to assist American in the fight against terrorism, calls into question its commitment to peace.

- At least 10 U.S. citizens have been killed in Israel by Palestinian terrorists since the Oslo Accords were signed in 1993. About 20 Palestinians have been implicated in the attacks. Not a single terrorist implicated in the attacks has been transferred to Israel to stand trial as the Oslo Accords require. And in spite of sufficient evidence to do so, the U.S. Department of Justice has not indicted any of the terrorist involved in the spilling of American blood. The majority of the terrorists are believed to be living freely in territories controlled by Chairman Arafat. In a twist of irony, one terrorist, according to reports, is employed as a jailer at a Palestinian detention facility.

- The Resolution continues the bi-partisan congressional effort to secure justice for the murdered Americans. I would briefly note some of the other attempts to prod the Administration to do its job and pressure Chairman Arafat to transfer the Palestinian murders.

- On January 20, I drafted a letter with Representative **Jim Saxton**, signed by 29 other Members of the House and four Senators, which called on Secretary of State Albright to direct U.S. efforts to obtain the transfer of those who have murdered American citizens.

- The State Department's response of February 25 was woefully inadequate. The State Department responded that it would be permissible for the PA to prosecute the murderers of Americans. For the State Department to refer these

-

- cases back to the PA is a sad joke. The PA criminal justice system is a circuit of kangaroo courts. Everybody knows it's a revolving door of justice. The Secretary of State has in the past admitted as much. Representative **Saxton** and I followed-up the State Department's non-response with a March 25 letter to Secretary Albright. In the letter, we demanded action, noting that: `That failure of the United States to do everything in its power to prosecute Palestinian killers of Americans puts other Americans at risk, and is contrary to longstanding U.S. policy to pursue territories most aggressively. The time has come for results.' We also questioned why the U.S. continues to provide aid for the Palestinian Authority, and is not willing to impose economic sanctions against the PA, as it does in the case of Libya for its refusal to transfer the terrorists suspected of bombing Pan Am flight 103.

- The State Department's letter was useful, however, in pointing out the role the U.S. Department of Justice and the FBI play in capturing terrorists. U.S. law makes it a capital offense to kill a national of the United States anywhere in the world. On April 28, Representative **Jim Saxton** and I sent a letter to Attorney General Janet Reno that has been signed by a group of over 60 Members of the House, including Speaker **Newt Gingrich** (Senator **Alfonse D'Amato** also signed the letter), which states that: `The DOJ should pursue these killers of American citizens abroad with the same vigor it has pursued the murderers of Americans killed in terrorism attacks here in the U.S. Americans traveling or living abroad have often been desirable targets for terrorist attacks. If we are to deter such attacks in the future, it is essential that our law enforcement agencies pursue these cases aggressively and to the fullest extent of the law. It is our view that the DOJ must investigate, indict and prosecute these individuals without further delay.'

- I will conclude my remarks with an excerpt from a letter that Israeli Prime Minister Benjamin Netanyahu sent to me in February on the importance of punishing terrorists. `That murderers are allowed to go free and live without fear of prosecution in areas ruled by the Palestinian Authority is particularly worrisome. This is not just a travesty of justice but a very strong message to potential terrorists.'

- The blood of the victims cries from the dust for justice. Killers of Americans must be brought to justice. I commend Representative **Fox** for his sponsorship of the Resolution, and Chairman **Gilman**'s leadership in speedily bringing it to the floor.

Mr. HAMILTON. Mr. Speaker, I have no further requests for time, and I yield back the balance of my time.

Mr. FOX of Pennsylvania. Mr. Speaker, I yield back the balance of my time.

The SPEAKER pro tempore (Mr. **Nethercutt**). The question on the motion offered by the gentleman from New York (Mr. **Gilman**) that the House suspend the rules and agree to the concurrent resolution, H. Con. Res. 220, as amended.

The question was taken.

Mr. FOX of Pennsylvania. Mr. Speaker, on that I demand the yeas and nays.

The yeas and nays were ordered.

The SPEAKER pro tempore. Pursuant to clause 5 of rule 1, and the Chair's prior announcement, further proceedings on this motion will be postponed.

*END*