UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE ESTATE OF YARON UNGAR, et al | ) ) ) ) |
| v. | ) C.A. No. 00-105L |
| THE PALESTINIAN AUTHORITY, et al | ) ) ) ) ) |

### PALESTINIAN DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Defendants the Palestinian Authority and the Palestine Liberation Organization, hereby move for a protective order against the taking of the depositions of President Yasser Arafat and six other Palestinian leaders.

A copy of the January 27, 2003 letter from Ambassador Al-Kidwa to Magistrate Judge Martin is attached hereto and incorporated by reference.

A Memorandum is filed herewith.

Dated: March 12, 2003

_____
Deming E. Sherman (#1138)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, Rhode Island 02903
401-274-9200
401-276-6611 (FAX)

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003
212-475-3232
212-979-1583 (FAX)

Attorneys for Defendants
The Palestinian Authority and
The PLO



- 2 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March, 2003, I faxed and mailed a copy of the within Palestinian Defendants' Motion for Protective Order to David J. Strachman, Esq., Skolnik, McIntyre & Tate Esqs., Ltd., Suite 400, 321 South Main Street, Providence, RI 02903 and mailed to Nitsana Darshan-Leitner, Esq., 28 Emek Ayalon Street, Modi'in 71770, Israel.

*/s/ Deming E. Sherman*

*Permanent Observer Mission of Palestine to the United Nations*



البعثة الراقبة الدائمة
لفلسطين
لدى الأمم المتحدة

January 27, 2003

Honorable David L. Martin
Magistrate Judge
U.S. District Court
Office of the Clerk
Providence, Rhode Island 02903-1720
Re: Ungar v. The Palestinian Authority
C.A. No. 00-105L D.R.I.

Dear Judge Martin,

We have carefully analyzed the three discovery documents in this case and the possibility of our responding to them in the near future.

Our communications with officials from the PNA and the PLO who would normally be concerned with legal requests of this kind have been extremely difficult.

As you know there has been intense violence throughout occupied Palestine for more than two years. The offices of the PNA in Gaza City have been destroyed. Offices in Ramallah have been attacked and partially destroyed and left under continuing siege. Other offices of both the PNA and the PLO have been damaged. Records have been destroyed, damaged, dispersed and lost. Personnel responsible for record keeping have been separated from their offices and records and unable to perform their assigned tasks.

President Arafat has been virtually trapped in the ruins of his office in Ramallah since March of 2002. Other officials and administrators have had similar difficulties. More than 2100 Palestinians have been killed by the Israeli occupying forces on our own soil during the last 28 months affecting everyone's life.

Government offices and officials cannot work effectively or organize even on matters of extreme urgency. It has been impossible under such circumstances to locate people who could seek and find documents, who could gather information and prepare answers to interrogatories and could respond to requests for admissions.

We find the scope of inquiry to be incredibly broad and often unrelated to the claims being made by plaintiffs. Much of it seems politically motivated and seeks records usually deemed confidential including communications between the PNA, or the PLO with foreign states, even with the United States government.

115 East 65th Street   New York, NY 10021   Tel. (212) 288-8500   Fax (212) 517-2377

We don't understand how plaintiffs can claim the PNA and PLO are responsible for what HAMAS does. The history of the PNA/PLO-HAMAS relationship is public and well known and the claim that the PNA and PLO are responsible for what HAMAS does is simply not credible.

Nor do we understand how plaintiffs can sue the PNA and PLO for this death and at the same time sue the government of Iran in a separate case in Washington, D.C. for the same death claiming Iran is responsible for what HAMAS does. Yet we've been advised plaintiffs are doing this. We notice what appears to be a multiplicity of suits coming from the same lawyers and political statements publicly made by them in connection with the suits, which makes it difficult to believe their aim is to pursue the interests of the individual plaintiffs.

It would seem fair and just to wait until there is a final decision on the issue whether the U.S. Court has jurisdiction over the PNA and the PLO for these events before proceeding to these requests. Nothing else is possible for us. Plaintiffs waited nearly four years from the time of the assault to file this case. The time we request which is necessary to make presentation of our defense possible, if a defense becomes necessary, ought to be comparatively short. Only the achievement of a level of stability, free from the threat of daily attacks in our territory can make it possible to free personnel to gather the materials and information needed to proceed with a defense.

While we wait until violence subsides and hopefully peace comes, to respond to appropriate discovery requests if jurisdiction is upheld, we must state that neither the PNA nor the PLO played any role and neither had any responsibility for the deaths in this case. We regret these deaths as we do the thousands before them and since in these tragic years of violence.

Under exceedingly difficult circumstances the PNA and PLO have done what they can do to reach a peace agreement and to protect lives even while they have themselves been attacked. We grieve over the deaths and injuries on both sides from the constant physical violence and the impoverishment and economic deprivation inflicted on the Palestinian people. And we fully understand that all who live in these Holy Lands will suffer until peace based on justice and international legitimacy is achieved.

We hope this case will not become an obstacle to such a day.

Sincerely,

Dr. Nasser Al-Kidwa
Ambassador, Permanent Observer of Palestine
to the United Nations

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE ESTATE OF YARON UNGAR, et al ) ) ) v. ) ) THE PALESTINIAN AUTHORITY, ) et al ) ) ) | C.A. No. 00-105L |

## MEMORANDUM IN SUPPORT OF
## PALESTINIAN DEFENDANTS' MOTION FOR PROTECTIVE ORDER

This memorandum is submitted by the defendants the Palestinian Authority ("PO") and the Palestine Liberation Organization, the present government of Palestine, in support of their motion for a protective order against the depositions of President Yasser Arafat and six other Palestinian leaders -- Razi Jabali, Jibril Rajoub, Muhammed Dahlan, Amin Al-Hindi, Tawfik Tirawi, and Marwan Barghouti -- that have been noticed by plaintiffs to begin on March 31, 2003.

### ARGUMENT

The chaotic and violent conditions that have long prevailed and are continuing in the Palestinian territories preclude the availability for depositions of President Arafat and the six other Palestinian leaders named in plaintiffs' notices to take depositions beginning March 31, 2003.

These conditions are the overriding and basic reason for the inability of the PA to meet plaintiffs' discovery demands as appears from defendants' filings with regard to pending motions, see e.g. defendants' motion for reconsideration and a stay filed on January 27, 2003 and defendants' objections filed February 27, 2003 and March 3, 2003 to plaintiffs' motions for

default and default judgment. The letter of Ambassador Al-Kidwa to Magistrate Judge Martin in this action, dated January 27, 2003, previously filed and attached also to this motion for a protective order for the Court's ease of reference, succinctly describes the violence and destruction and its devastating impact on the Palestinian government:

> As you know there has been intense violence throughout occupied Palestine for more than two years. The offices of the PNA in Gaza City have been destroyed. Offices in Ramallah have been attacked and partially destroyed and left under continuing siege. Other offices of both the PNA and the PLO have been damaged. Records have been destroyed, damaged, dispersed and lost. Personnel responsible for record keeping have been separated from their offices and records and unable to perform their assigned tasks.
>
> President Arafat has been virtually trapped in the ruins of his office in Ramallah since March of 2002. Other officials and administrators have had similar difficulties. More than 2100 Palestinians have been killed by the Israeli occupying forces on our own soil during the last 28 months affecting everyone's life.
>
> Government offices and officials cannot work effectively or organize even on matters of extreme urgency. It has been impossible under such circumstances to locate people who could seek and find documents, who could gather information and prepare answers to interrogatories and could respond to requests for admissions.

A current report in the New York Times on Monday, March 10, 2003, In Leaderless Gaza, Israeli Forces and Hamas Fight It out, p. A4 (Ex. 1 hereto) demonstrates the further deterioration of conditions since Amb. Al-Kidwa's assessment of the violence and chaos in the Palestinian territories and the severe handicaps under which the Palestinian government is operating.

More so than plaintiffs' earlier discovery demands against the PA -- for answers to interrogatories, admissions and the production of documents -- excessive and overly intrusive as they were and beyond the capability of the PA to answer, the depositions plaintiffs have noticed

pose a greater risk of harm to vital public interests -- to order and tranquility in daily Palestinian affairs, to the prospects of peace in the Middle East and to the resolution or easing of the Palestinian-Israeli conflict.

The notices of deposition are objectionable in many respects that are mooted by the deponents' unavailability. Plaintiffs have made no showing that the top echelons of the Palestinian government have knowledge or information directly related to the attack on the Ungars or why lesser officials could not equally well be queried. Cf. In re Papandreou, 139 F.3d 247 (D.C.Cir. 1998) issuing a writ of mandamus against the taking of the depositions of the Greek Ministers of Tourism and of the Economy.

There remains the question of political motive and manipulation behind the pursuit of discovery by plaintiffs' attorneys when its impossibility is patent.

Defendants' prior submissions have developed the role of plaintiffs' Israeli attorneys in this case and many others, including their public assertions, especially by Ms. Nitsana Darshan-Leitner and her husband Avi Leitner (formerly Craig Arthur Leitner), that they have 25 terrorism cases pending, including this one, that they are awaiting a first-of-its-kind default judgment against Hamas, and that they are engaged in a war against the PA and PLO and other governments and groups that they consider terroristic and are seeking to bankrupt and destroy them. This is an independent agenda the Israeli attorneys are pursuing for their own extreme purposes. Avi Leitner's background of extremism includes violent criminal acts against Palestinian civilians, as reported in Exhibits 5A and 5B to defendants' memorandum in support of their motion for reconsideration of January 27, 2003.

This history of criminal violence undoubtedly largely accounts for the denial of Mr. Leitner's application for admission to the New York bar. The denial led him to file a federal

action in 1999 against many defendants, including the State of New York, the New York Court of Appeals, the Character and Fitness Committee and disciplinary officials who denied his application, John Doe No. 1 and John and Jane Does Nos. 2-99. See Leitner v. State of New York, 2000 U.S.Dist. LEXIS 3767, 99 Cv 1743 (JG) (EDNY 2000). The action is of interest for the present case because the complaint makes far-fetched and improbable charges that strikingly parallel in rhetoric and accusatory excess the charges in this case and other cases by these Israeli attorneys -- charges of conspiracy, intentional and negligent infliction of mental distress, and libel and slander, among others -- and tellingly confirms the proclivity of these attorneys to assert intemperate and baseless charges against governmental defendants. Mr. Leitner probably drafted or was instrumental in drafting the Complaint in this action. See Exhibit 3 to defendants' January 27, 2003 motion for reconsideration, the draft complaint posted on the internet, in which Ms. Darshan-Leitner appears as attorney for the plaintiffs and David Strachman as local counsel. The EDNY action was dismissed in March 2000 on defendants' motion before answer for lack of jurisdiction. The Court's opinion describes the acts of violence by Craig Leitner at *2, as do U.S. v. Leitner, 627 F.Supp. 739 (EDNY 1986) (reversing the Magistrate Judge's admission of the defendant to bail while awaiting extradition) and U.S. v. Leitner, 784 F.2d 159 (2d Cir. 1986) (affirming the District Court's denial of bail).

Mr. Leitner's participation in organized violence and extremism is well documented, and amply justifies continuing and present-day concern. See e.g. Ehud Sprinzak, The Ascendance of Israel's Radical Right, (Oxford University Press 1991), quoting an account by Mr. Leitner describing his participation in typical mid-1980's violence against Arab civilians at pp. 236-37 (Ex. 2 hereto); see also Robert I. Friedman, The False Prophet, Rabbi Meir Kahane, From FBI Informant to Knesset Member (Lawrence Hill Books 1990) quoting from Craig Leitner's signed

confession and describing his role as a Kach Party member in co-planning an attack on an Arab bus, at pp. 205-07 (Ex. 3 hereto).

## Conclusion

The motion of the defendants PA and PLO for a protective order should be granted and plaintiffs' notices to take the depositions of Yasser Arafat and six other Palestinian leaders should be set aside.

Respectfully submitted,

Dated: March 12, 2003

_____
Deming E. Sherman (#1138)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, Rhode Island 02903
401-274-9200
401-276-6611 (FAX)

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003
212-475-3232
212-979-1583 (FAX)

Attorneys for Defendants
The Palestinian Authority and
The PLO

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March, 2003, I faxed and mailed a copy of the within Memorandum in Support of Palestinian Defendants' Motion for Protective Order to David J. Strachman, Esq., Skolnik, McIntyre & Tate Esqs., Ltd., Suite 400, 321 South Main Street, Providence, RI 02903 and mailed to Nitsana Darshan-Leitner, Esq., 28 Emek Ayalon Street, Modi'in 71770, Israel.

_____