```
            UNITED STATES DISTRICT COURT

            FOR THE DISTRICT OF RHODE ISLAND



++++++++++++++++++++++++++++

EFRAT UNGAR                         CA No. 00-105 L



     v                              PROVIDENCE, RI
                                    1 APRIL 2003

THE PALESTINIAN LIBERATION
ORGANIZATION

+++++++++++++++++++++++++++++



        BEFORE MAGISTRATE JUDGE DAVID L. MARTIN


APPEARANCES:

FOR THE PLAINTIFF:         DAVID J. STRACHMAN, ESQ.
                           321 S. Main St
                           Providence, RI 02903
                           351-7700


FOR THE DEFENDANT:         RAMSEY CLARK, ESQ.
                           LARRY W. SCHILLING, ESQ.
                           36 East 12th St.
                           New York, NY 10003
                           1-212-475-3232
```

```
 1   1 APRIL 2003
 2           THE COURT:  This is the matter of the estate
 3   of Yaron Ungar, et al vs the Palestinian Authority, et
 4   al, Civil Action 00-105 L.  Before the Court is the
 5   plaintiff's motion to enter default against defendants
 6   Palestinian Authority and PLO.  The attorneys will
 7   identify themselves.
 8           MR. STRACHMAN:  David Strachman for the
 9   plaintiffs.
10           MR. CLARK:  Ramsey Clark for the defendants.
11   With me is Larry Schilling.
12           THE COURT:  I have also had referred to me
13   the Palestinian defendant's motion for a protective
14   order, and I have received the plaintiff's objection to
15   Palestinian defendant's motion for a protective order.
16   I'll first hear argument on the motion then for default
17   against the defendants Palestinian Authority and PLO,
18   and at that point I will assess what we need to do
19   about the other motion.
20           Mr. Strachman, I'll hear you on the motion
21   for entry of default.
22           MR. STRACHMAN:  Thank you.  Your Honor, just
23   as a preliminary matter, I wasn't aware that the second
24   motion was referred to your Honor for hearing today.
25           THE COURT:  Well, it's not scheduled for
```

```
 1  hearing.
 2              MR. STRACHMAN:  Okay.
 3              THE COURT:  And it was referred to me on
 4  March 27th and notice has not been sent to counsel of
 5  the pendency of that motion, and if counsel are not
 6  prepared -- it's not before me.  I just note -- I've
 7  had it referred to me, and when I saw it and I looked
 8  at the present motion that was scheduled for today's
 9  hearing, I thought there may be an interrelationship
10  between the two that one may have an affect on the
11  other, at least this motion may affect the motion for
12  protective order.  I'll hear you on what's scheduled
13  for today, which is the motion to enter default.
14              MR. STRACHMAN:  Thank you, your Honor.  If
15  your Honor please, this matter has a long history.  It
16  is now past the 3 year anniversary of this case.
17              On November 4, this past year, Judge Lagueux
18  rendered a very lengthy and detailed decision on the
19  defendant's motion to amend -- excuse me, motion to
20  dismiss the amended complaint.  Very simply, pursuant
21  to Rule 12(a)(4)(A), the defendants have 10 days to
22  file an answer, 10 days from November 4, 2002.  And
23  just some sort of very simple side history, the Court
24  had a conference with counsel telephonically on 12/2.
25  We had a hearing on 12/12 before your Honor concerning
```

```
 1   discovery issues.  At the 12/2 -- excuse me, the 12/12
 2   hearing, your Honor made it very clear that a stay that
 3   had entered previously was not applicable now that
 4   Judge Lagueux had rendered his decision on November
 5   4th.  Your Honor followed that up with a letter to
 6   counsel, and this case has proceeded in the sense that
 7   a series of motions have been filed concerning
 8   discovery, and defendant's counsel and I worked out
 9   over the course of a month the exact language of a
10   discovery order following your Honor's ruling.  We find
11   ourselves now 145 days after the answer was due, and we
12   still have no answer, and it's -- there's just no
13   excuse for not filing an answer.  We're entitled to it
14   under the rules.  The defendants have had the amended
15   complaint for 20 months.  So for 20 months, because it
16   was filed August of 2001, they had 20 months to prepare
17   an answer.  Defendants indicate, I believe somewhat
18   brazenly to this Court, on Page 2 of their objection in
19   the memorandum in support of their objection, they
20   indicate that they "had the abil -- that drafting and
21   filing an answer is within defendant's limited
22   capabilities although inadvisable."  So they've
23   admitted to the Court they have the capacity, which I
24   don't think anyone could really plausibly question, to
25   begin with, and we have no answer.  We have no answer.
```

1  We have no way of knowing what their defenses are,
2  factual, legal or otherwise, other than the defenses
3  that were rejected now twice in a motion to dismiss the
4  complaint and in a motion to dismiss the amended
5  complaint.  We have an order of discovery which has not
6  been complied with and is the subject of other motions
7  but clearly contemplates that the case is finally going
8  to get moving and move along a specific track already
9  ordered by your Honor in terms of discovery,
10 interrogatories and depositions, and we find ourselves
11 without an answer even as yesterday's first deposition
12 was suppose to go forward, after 4 and a half months
13 since the rules require an answer to be filed.
14 Thank you.
15            THE COURT:  Thank you, Mr. Strachman.
16 Mr. Clark.
17            MR. CLARK:  Thank you, sir.  Good afternoon,
18 Judge.
19            THE COURT:  Good afternoon.
20            MR. CLARK:  This is, as our presence
21 attests, in both the matter to the defendants and the
22 Palestinian people (inaudible).
23            The defendants have been anxious, and I
24 think it's been apparent in getting to have a full and
25 final determination and review of their motion to

1   dismiss, which they think is meritorious.  They have a
2   motion for reconsideration pending to Judge Lagueux's
3   order of November 5, all the time that we've been
4   talking about, without knowing that we'll be held to
5   answer in this court.  My instructions have been do not
6   answer, do not take any steps that would replace us
7   here, and we have anxiously awaited the decision on
8   motion for reconsideration.  I think in this connection
9   the Papandreo case which we cited to you from the
10  District of Columbia, Court of Appeals -- United States
11  Court of Appeals for the District of Columbia, they
12  have two other courts there, which observed that the
13  importance of determining immunity applies not only to
14  what you're held in court but to all of the burdens of
15  litigation, and it observes that proposed burdens of
16  litigation before that issue is determined can
17  compromise the rights and well-being of the defendant,
18  and that's why the Court of Appeals granted a Writ of
19  Mandamus in that case, prevent the case from going
20  forward.
21              We've now, of course, had a, I guess it's an
22  order, from Judge Lagueux, on the 27th of, which is now
23  last month, March, setting the hearing not only on the
24  motion for reconsideration but on the other motion
25  we're talking about, the motion for default and the

1  motion for protective order on discovery.  So it would
2  seriously prejudice the rights of the accused here -- I
3  practice too much criminal law -- to be forced to
4  answer and proceed until their status is clear.  I
5  don't want to argue the merits of the jurisdiction, but
6  I will observe that there has been steady development
7  in the legal status of Palestine.
8      You'll note that (inaudible) doesn't refer
9  anymore to the permanent representative of the PLO, now
10 refers to, this is by vote of the United Nations, the
11 Permanent Representative from Palestine.  President
12 Bush has just recently as two weeks ago described his
13 intense interest in a statement in the Rose Garden, in
14 proceeding as quickly as possible, not only with the
15 peace process but with the full recognition of the
16 government of Palestine.  You know, (inaudible) because
17 a great majority of the members of the United Nations
18 have recognized Palestine, their Embassies.  So the
19 point is that since the Achille Laura and other cases,
20 you have entirely different legal factual status, and
21 we're anxious for Judge Lagueux to reconsider and
22 review his decision on that basis, and we're anxious
23 that the prejudice, irrevocable injury that can flow
24 from trying to get into depositions, that it not occur
25 prematurely.

1    THE COURT:  Mr. Clark, let me interrupt you
2  with a question.  If Judge Lagueux denies your motion
3  for reconsideration, would your client then file an
4  answer at that point, or would your client continue
5  with the position, that I gather from your filings your
6  client takes, which is they are immune from suit, and
7  that they ought to have, if Judge Lagueux won't
8  reconsider his ruling, then they will continue with
9  their present course of action and seek review
10 ultimately by the First Circuit?
11   MR. CLARK:  I hope the answer is clear, but
12 I will make it as clear as I can.  The desire to
13 (inaudible) is set forth in Papandreo to have those
14 issues determined before proceeding to answer and all
15 of the discovery and other matters that follow, and
16 burdens of litigation, as they call it, is ripe, and we
17 will seek, we don't know what Judge Lagueux's
18 disposition will be now, but we would seek an opinion
19 from that ruling and process it as quickly as we could.
20   THE COURT:  Thank you for answering.
21   MR. CLARK:  Now the other consideration is
22 existing conditions which make proceeding essentially
23 impossible.  I went to Rhamalla in mid December, the
24 15th and 16th, maybe the 16th and 17th of December, and
25 met with the leadership, including President Arafat.

1  This was the only business that I had, this case, and
2  several cases, but this is the what we call the lead
3  case. I say that even though there's, as you know,
4  there's a similar case -- I say similar, there's a
5  virtually identical case pending in the District of
6  Columbia (inaudible). In that case claiming that Hamas
7  was controlled by Iran for the Ungars, the same
8  plaintiffs, the same factual claims, only there
9  claiming it's Iran and Hamas while here the claim is
10 Palestine and Hamas, and it's not likely that both can
11 be true, but can observe that there Judge Robertson has
12 refused. There's no appearance there. Iran has
13 failed, if not refused, to appear in a number of cases
14 like that. There have been default judgments up in the
15 billions of dollars entered against it. So, but the
16 conditions, to get in to see the leadership of the PLO,
17 knowing the government's situation there for some time,
18 of all the government buildings that I've ever been in,
19 in Gaza are destroyed, and and quite often there are
20 tanks out there. Records destroyed. And in many
21 cases, the headquarters to the Palestinian National
22 Guard image, or even in existence during the
23 (inaudible), is rubble. I've (inaudible) break my neck
24 climbing over literally rubble of (inaudible) to get in
25 there. The president has been essentially a prisoner

1  there, Mr. Arafat, since sometime last March, a year
2  ago, March of 2002. He has not been out. (Inaudible).
3  But that's been his way to try to keep his people
4  alive.
5          So the ability -- we were generous when we
6  said that with the resources and the opportunities
7  available, we can probably file an answer, but the fact
8  is that to file an answer would cross the line, it
9  would be (inaudible) unnecessary, creates an appearance
10 that we hope will prove to be fallacious. We have a
11 duty under the U.S. law to respond, and then the next
12 day we'd file such an answer. We'd be immediately
13 confronted with an impossibility. Observed it
14 yesterday, President Araft, (inaudible) testify here in
15 Rhode Island, before a notary public yesterday.
16 (Inaudible). He didn't come here. A default would be
17 based on that theory. So when you're starting down a
18 road, you can only create political usage in the media,
19 appearances that may prove to be misleading, if not
20 will be harmful under any circumstances, and then
21 (inaudible) very tough over there. Six people killed
22 in Bethlehem a couple of days ago, 3 in one little
23 family. American killed by a bulldozer in Gaza last
24 week. So we really -- I (inaudible) when it's
25 impossible to defend because of circumstances beyond

1  our control.  So going forward at this time, I think,
2  would be -- may be terribly unfair.  I think it would
3  be contrary at least to the decision in Papandreo where
4  a district judge decided to go ahead and was
5  (inaudible) that it would deny due process.  It would
6  make absolutely no progress.  We'd be confronted with
7  the same problems the next day.  So all of (inaudible),
8  which can't go forward.  Can't give discovery.  That's
9  why I was pressing to suggest this other motion, as you
10 mentioned, might be discussed today, could be relevant
11 on this issue.  It certainly is.
12         There's also a question, we don't know,
13 (inaudible) it would seem that it would be improvident,
14 improvident in Providence, to proceed when Judge
15 Lagueux has just announced an intention to consider all
16 these motions.  So I would urge, as strong as I can,
17 that the Court defer.  If the Judge says go ahead,
18 there would be no need for another argument, as far as
19 I can tell on this motion.  (Inaudible)
20         THE COURT:  I'm sorry, if the Judge says go
21 ahead and what, Mr. Clark?
22         MR. CLARK:  If he said after the hearing on
23 the 11th, did he decide, could he say he's going to
24 consider all of these motions, four or five, we assume
25 that you have seen his or her motion, his record

1  (inaudible).
2           THE COURT:  I'm aware that he has scheduled
3  a hearing on several motions for, I believe, April 13th
4  or thereabouts.  Is it the 11th?
5           MR. CLARK:  The 11th.
6           THE COURT:  And among the motions that he's
7  scheduled a hearing on is your motion for
8  reconsideration.  I'm aware of that, Mr. Clark.
9           MR. CLARK:  Yes.  Also two motions to
10 dismiss, which would therefore (inaudible).
11          THE COURT:  All right.  You're suggesting to
12 me that if he rules favorably on the motion for
13 reconsideration, then that would have an impact on the
14 motion for entry of default here.
15          MR. CLARK:  Well, what I'm concerned is,
16 he's considering all of them.  That's what I'm saying,
17 he's considering all of them.  He would -- I would
18 (inaudible) naturally, whatever he decides on
19 reconsideration.  If he decides no reconsideration, he
20 decides whether -- the last time, you know, he refused
21 a stay pending appeal, and discussed the problem of
22 certification, the issue of certification.  It was not
23 clear exactly to me what was intended here, but
24 presumably he would say what he thinks should be done
25 with all of these matters.  He already referred this

```
 1   issue to you, your Honor, but that was before the
 2   letter of March 27th, which notified all of us that he
 3   was going to hear all of these matters on the 11th.  So
 4   if he wants to hear all these matters on the 11th, you
 5   could take this under advisement, or however you want
 6   to do, see what he says on the 11th and then proceed if
 7   that's what's indicated.  To proceed before that I
 8   think might be improvident.
 9            THE COURT:  All right, Mr. Clark.  Thank
10   you.
11            MR. STRACHMAN:  May I briefly respond?
12            THE COURT:  Yes, Mr. Strachman.
13            MR. STRACHMAN:  Thank you.  First in terms
14   of the scheduling, your Honor, as I indicated in the
15   letter Friday, this motion was scheduled and referred
16   to your Honor by Judge Lagueux while all of the other
17   motions were pending before the Court.  So he referred
18   this matter, with the docket entry, for all of the
19   other motions having already been made, (inaudible)
20   until the motions were pending.
21            Second, your Honor, it's even respectfully
22   more brazen now to say that the defendants cannot file
23   an answer after having met with counsel in December,
24   and I'm sort of shocked to hear that counsel would meet
25   with the clients, and as Mr. Clark said, primarily on
```

1  this case.  That's what primarily (inaudible) to meet
2  with his clients, and then wait 4 and a half months,
3  not file an answer, not ask this Court for additional
4  time, not send a letter or request or stipulation
5  amongst the parties, never having discussion with the
6  Court or counsel about extending the time.
7       And in response to your Honor's, I think,
8  questions, really gets to the exact nub of the issue,
9  and that is, if the motion for reconsideration is
10 denied, are you going to file an answer?  Mr. Clark
11 essentially says no.  That means this case is even more
12 so than when we wrote our initial memo within the
13 Conetta case, and that involves a wilful determination
14 of not filing an answer, and now we see it even more so
15 flushed out before the Court.
16      Also as has been made clear in many cases,
17 as been made clear by your Honor in the discovery
18 matter, the mere filing of a motion to reconsider a,
19 for reconsideration, does not stay the whole case.  You
20 can't file a motion for reconsideration and then get
21 out of, sort of get out of jail free pass, from all the
22 rules of civil procedure, and frankly because each and
23 every motion has an order of this case, there's been a
24 motion to reconsider, we're litigating the litigation
25 in this case, I would fully expect that we would have

1  many more such motions down the road.  That doesn't
2  stop the rules of procedure from operating.  That
3  doesn't excuse this defendant, these defendants from
4  their obligations.
5              Also, your Honor, the discussion concerning
6  alleged (inaudible) and all these kinds of things have
7  all been dealt with by Judge Lagueux, and even if they
8  -- at some point there was some different status that
9  happened to the PA, we have two defendants here, the
10 PLO, which is a political organization, and the PA,
11 which is a entity that is clearly not a state, has
12 never been found a state, by any judge, by any court,
13 by any legal treatise.
14             Lastly, your Honor, the arguments concerning
15 what goes on in Rhamalla, I'm concerned because the
16 Court is inundated with articles from newspapers and
17 testimony from lawyers, and letters from alleged
18 Ambassadors about facts.  If those individuals want to
19 submit facts to this Court, there's a proper way to do
20 that and we should have an opportunity to cross-examine
21 them, and if counsel wants to testify, then we should
22 have a right to cross-examine him, as well.  Letters by
23 Mr. Al-Kibla (phonetic spelling) and other newspaper
24 articles from the New York Times are of no concern to
25 this Court, should be of no concern to this Court.  The

1  rule states 10 days.  We waited 4 and a half months.
2  We weren't quick with the trigger, and we have the
3  right to proceed with this case.  And if we don't nip
4  this type of matter in the bud now, the issue of
5  default, we'll be here forever, because we just passed
6  the 3 year anniversary.  I presume there is no case in
7  this district that an answer has not been filed 3 years
8  after litigation.  And I would urge your Honor to look
9  at this matter in a very simplistic way, actually,
10 because it's really just a simple application of Rule
11 12, and the representations by Mr. Clark that he met
12 with his counsel, he's been instructed not to file an
13 answer, and he was instructed in December, even after
14 talking about this specific case, and his response to
15 your Honor's question, that even if the motion to
16 reconsider would be denied, there would be no answer
17 forthcoming because there's some appeal that they may
18 decide to file.
19         Just so we're clear, your Honor, there is no
20 motion for an interlocutory decision.  No appeal has
21 been taken.  No further action has been taken.  So the
22 threats about taking appeals, et cetera, cannot give a
23 -- cannot be a carte blanche for just stopping this
24 litigation.  Thank you, your Honor.
25         Oh, I'd just like to add one other thing,

1  which has been neglected to be mentioned.  Tomorrow, in
2  Washington, the PLO is going on trial.  The PLO and the
3  PA are going on trial in the case of Burkheit v
4  Palestine Liberation Organization, 00-CV-1455.  I have
5  the docket sheet which I'd like to provide to the Court
6  and also to counsel.  They're going to trial tomorrow
7  in a case that was scheduled several months ago.  They
8  have counsel defending the case, and presumably the PLO
9  is giving instructions in one case how to answer, and
10 the PA, as well, and how to respond to a case and how
11 to litigate a case, and how to show up for trial, and
12 yet we have instructions from allegedly Mr. Arafat
13 suggesting in December he's not going to file an answer
14 in this case, and that type of conduct can't be
15 sanctioned.  And if I could, your Honor, I'd like to
16 provide just the docket sheet that I received  --
17         THE COURT:  Have opposing counsel -- do you
18 have a copy for them, please?
19         MR. STRACHMAN:  I presume they have it, but
20 I do have a copy for them.
21         MR. CLARK:  We don't have it.
22         THE COURT:  Mr. Clark, would you like to
23 briefly respond?
24         MR. CLARK:  Very briefly, your Honor.
25         THE COURT:  All right.

```
 1            MR. CLARK:  I will say first I've never --
 2   I'm unaware of this case (inaudible), but what it is,
 3   if it's commercial payments, something like that,
 4   whatever it is, this case is this case.  And April 11th
 5   is hardly forever.  And the point I said about our
 6   instruction was that we were told not to file an answer
 7   until the issue of jurisdiction had been finally
 8   resolved by "appeals", and that's our right under
 9   (inaudible) and it's our right under simple justice.
10   Thank you.
11            THE COURT:  All right.  Thank you,
12   Mr. Clark.
13            The Court is conscious of how long this case
14   has been pending, and of the history that was recited
15   by Mr. Strachman, and of the need for a prompt decision
16   on the pending motion.  I am, however, not going to
17   rule from the bench today.  I do want to look at the
18   Papandreo case again that Mr. Clark has cited both in
19   the memo and in his oral argument today.  I do not know
20   whether I will accede to the request, Mr. Clark, of not
21   ruling prior to the hearing before Judge Lagueux, but I
22   can assure all parties that a decision would be made
23   promptly after Judge Lagueux's hearing at the latest on
24   the present motion before me.
25            Regarding the motion for a protective order,
```

```
 1   since that was not scheduled for hearing, I will not
 2   take that up.  It seems to the Court that, as I
 3   indicated in my remarks at the beginning of the
 4   hearing, that the present motion could impact the need
 5   to have a hearing on the motion for protective order.
 6   That's the reason why I should proceed promptly to
 7   decide this pending motion.  I will include a footnote
 8   in my decision, or some -- perhaps not a footnote in
 9   the decision, but some notice to the parties regarding
10   the status of the motion for a protective order at the
11   time I impact upon the motion for entry of default
12   judgment, which as I say will be done promptly.  I
13   thank the attorneys for their arguments.  The Court
14   will stand in recess.
15   (RECESS)
16
17
18
19
20
21
22
23
24
25
```

```
 3                C E R T I F I C A T I O N

 4    I, court approved transcriber, certify that the

 5    foregoing is a correct transcript from the official

 6    electronic sound recording of the proceedings in the

 7    above-entitled matter.


 9    [signature: Alfred Gallucci]
10    _____
11    ALFRED GALLUCCI, COURT REPORTER
```