1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


* * * * * * * * * * * * * CIVIL ACTION

EFRAT UNGAR                    NO. 00-105L
              Plaintiff

VS.                           FRIDAY,
                              APRIL 11, 2003

PALESTINIAN AUTHORITY
              Defendant
* * * * * * * * * * * * * Providence, RI



HEARD BEFORE THE HONORABLE RONALD R. LAGUEUX
             SENIOR JUDGE
             (MOTIONS)



A-P-P-E-A-R-A-N-C-E:

For the Plaintiff:      David J. Strachman, Esquire
                        McIntyre, Tate, Lynch & Holt
                        321 South Main Street - Suite 400
                        Providence, RI 02903


For the Defendant:      Ramsey Clark, Esquire
                        Lawrence W. Schilling, Esquire
                        Ramsey Clark & Lawrence W. Schilling
                        Law Offices
                        36 East 12th Street
                        New York, NY 10003

                        Deming E. Sherman, Esquire
                        Edwards & Angell
                        2800 Financial Plaza
                        Providence, RI 02903


Court Reporter:         Judith L. Montie
                        203 Federal Courthouse
                        1 Exchange Terrace
                        Providence, RI 02903

2

1                  FRIDAY, APRIL 11, 2003

2                     MOTIONS

3           THE COURT:  Good morning, everyone.

4           ALL:  Good morning, Your Honor.

5           THE COURT:  The matter before the Court

6  is Civil Action 2000-105L, the Estate of Yaron Ungar and

7  others versus the Palestinian Authority and others.

8               The matter is here on the motion of

9  the Palestinian Defendants for reconsideration and

10  Plaintiff's motion to strike certain portions of the

11  memoranda in support of that motion for reconsideration.

12              Will the attorneys please identify

13  themselves for the record.

14          MR. STRACHMAN:  David Strachman for the

15  Plaintiffs.

16          MR. CLARK:  Ramsey Clark.

17          MR. SCHILLING:  Deming Sherman and Larry

18  Schilling for the Defendants, Your Honor.

19          THE COURT:  I will first hear the motion

20  for reconsideration.

21          MR. CLARK:  Thank Your Honor for setting

22  this motion.  We were quite concerned as our recent

23  letter to you --

24          THE COURT:  I am sorry.  I can't hear

25  you.  You'll have to keep your voice up.

3

MR. CLARK:  I have a bad couch.  I'll do my best.  I said we appreciate your scheduling this motion for reconsideration because as our recent letter indicated --

THE COURT:  They get lost in the cracks. I am sorry to say I wasn't aware that such a motion was pending and my calender clerk had sent whatever pending motions there were to the Magistrate/Judge.  But this was not among them of course and it wasn't until I received that letter that I realized that this motion was pending so I set it down for hearing.  I would have set it down for hearing immediately if I had known about it.

MR. CLARK:  You did indeed and we appreciate that.  I also have to apologize for being late.  The train was about 20 minutes late this morning. The weather in New York was bad as promised last night so we didn't think we should fly.

This motion for reconsideration is of great importance to the people of Palestine who seek to have a determination of whether their Government, as they see it, is immune for the various reasons asserted and the Court has previously passed on, the November 5 decision of last year.  We move for reconsideration in large part because we felt that the Appellate Court

4

1    should have a full review of all of the issues by Your

2    Honor.  We had filed a motion on January 30 of 2002, in

3    which we sought leave of the Court to further state the

4    defenses and the material in support of them.  We were

5    particularly anxious to put in a matter that was not

6    before the Court because it had been not fully briefed

7    by the parties on the motion to dismiss.

8              THE COURT:  I beg to differ.  The whole

9    issue of sovereign immunity was thoroughly briefed and

10   thoroughly argued on the motion to dismiss and I made a

11   thorough and complete ruling on that subject.  If you

12   wanted to appeal that, you could have appealed.  And it

13   is unnecessary for me to grant a motion to assert

14   affirmative defenses because you should have asserted

15   your affirmative defenses when you filed an answer.  You

16   didn't file an answer and you are now in default; that's

17   the status of this case right now.

18             MR. CLARK:  That's part of the status of

19   this case right now.  It has got some other elements.

20   Our motion of January 30, 2002 sought to present to the

21   Court law on the reasons that this question of sovereign

22   immunity was not a defense but it is something that must

23   be acted on first.  And that on that issue we think we

24   have right of appeal.

25             THE COURT:  Then you should appeal

5

1    because I have ruled on it.  I have ruled twice on that

2    subject.  I ruled in the first case, in my first opinion

3    that there was no diplomatic immunity and I ruled in my

4    second decision that there was no sovereign immunity;

5    that the PA and the PLO do not amount to a foreign state

6    under the statute.  It can't be any clearer than that

7    and if you think you have a right to appeal, you should

8    go up to the first Circuit Court of appeals.  I doubt

9    that they'll hear you but that's your prerogative.

10            MR. CLARK:  We had cited three cases in

11   motion for reconsideration that we think established the

12   right to appeal and we more recently cited to the Court

13   the case of in re: *Minister Papandreou*, 139 F.3d 247, it

14   is a District of Columbia Court of appeals because most

15   of these cases come up there and the Court there --

16            THE COURT:  That's not for me to

17   consider.  I don't care whether you have the right to

18   appeal or not.  I have made my decision and I am

19   satisfied with it and there it is and this case will

20   continue.  If you think you have the right to appeal,

21   you just go right up Route 95 to Boston and file your

22   appeal.  And see if they will hear you.  That doesn't

23   concern me.

24            You have made a motion for me to

25   reconsider my decision on sovereign immunity and I've

6

1    made a thorough and complete decision considering every

2    one of your arguments and my decision is that there is

3    no sovereign immunity and that's my decision.  And it

4    stands.

5                    MR. CLARK:  Well, we won't bother to

6    reargue that.

7                    I would like to point out about the

8    *Papandreou* case because Your Honor might not have

9    reviewed the submission of it.  It says and this is

10   important cross the board on the issues that are before

11   you today.  "Sovereign immunity is an immunity from

12   trial and the attendant burdens of litigation and not

13   just a defense to liability on the merits."

14                    THE COURT:  I am well-aware of that

15   concept, well-aware of it and that's why I dealt with

16   the issue of sovereign immunity on the motion to

17   dismiss.  You submitted it to me.  Your partner

18   Mr. Schilling made an extensive argument on it and there

19   was an extensive memorandum on it and I considered every

20   facet of it.

21                    MR. CLARK:  Well, we did have a motion

22   pending at that time, January 30, 2002 seeking leave to

23   file more extensive papers simply because we thought

24   that they should be before you and that motion was never

25   acted on.

1      THE COURT:  There was no need to act on

2  it because I had all the material that I needed when you

3  argued the motion to dismiss.  That was an issue and I

4  dealt with it.

5      MR. CLARK:  The *Papandreou* case is a

6  mandamus, Your Honor, and it's a mandamus in a case in

7  which the District Court in the District of Columbia was

8  proceeding to discovery toward trial having acted on

9  immunity in a way that did not prevent the case from

10  going to trial, to proceedings and the Court of Appeals

11  there said that the infliction of those burdens of

12  litigation may compromise a Government or non-

13  Government just as clearly as would an ultimate

14  determination of liability.  For that reason, a trail

15  Court's denial of an immunity defense entitles the

16  Defendant to an immediate appeal under *Cohen*, the

17  Supreme Court case, *Cohen* versus *Beneficial Industrial*

18  *Finance Corporation*.  Deprivation of the right not to be

19  tried satisfies the requirement of being effectively

20  unreviewable on appeal for a final judgment.  The scope

21  of jurisdictional discovery under the FSIA  poses the

22  same issue.  Here, too, we think immediate review is

23  appropriate.  Now --

24      THE COURT:  Go ahead, appeal.  Appeal to

25  the First Circuit.

8

1          MR. CLARK:  If that's your -- if you

2     don't want any more material, then we request you,

3     respectfully, to deny our motion for reconsideration and

4     we'll --

5          THE COURT:  That's what I plan to do.

6          MR. CLARK:  Very good.

7          THE COURT:  Deny your motion for

8     reconsideration.  Appeal if you want to.

9          MR. CLARK:  Okay.

10         THE COURT:  We'll see whether the First

11    Circuit takes it.

12         MR. CLARK:  We'll take that motion as

13    denied and --

14         THE COURT:  I will deny it.  I will deny

15    it on the record.

16         MR. CLARK:  Do you want me to address

17    this motion to strike as well?

18         THE COURT:  I'll hear from the other side

19    first on the motion to strike.

20         MR. CLARK:  Thank you, Your Honor.

21         THE COURT:  Mr. Strachman, do you want to

22    be heard on the motion for reconsideration?

23         MR. STRACHMAN:  I don't think I need to,

24    Judge, in light of the representations --

25         THE COURT:  A wise decision.  I will deny

1    the motion for reconsideration.  And I will deny the

2    part of it that asks for a stray pending appeal.  This

3    case is going forward whether or not there is an

4    interlocutory appeal.

5                         I will hear you on your motion to

6    strike.

7                    MR. STRACHMAN:  Thank you, Your Honor.

8                         Having denied the motion for

9    reconsideration, Your Honor, and also having

10   Magistrate/Judge Martin deny the motion to reconsider

11   the discovery order, our motion to strike is in a little

12   bit somewhat different posture, now.  In other words, we

13   filed a motion to strike portions of two motions.  Both

14   of those motions have now been denied.  But if we could

15   simply indulge the Court to make a ruling on the motion

16   to strike even though most of the motions have been

17   denied by the Defendant where the scandalous materials

18   have been included because we feel that it's

19   inappropriate and I think we need some direction from

20   the Court as to whether the life or activities or the

21   alleged activities of a spouse, of a lawyer living in

22   Israel who has never set foot in Rhode Island, not

23   involved in this case, whether those types of issues,

24   representations even belong in this courtroom and I know

25   that at some level it is somewhat moot in the sense

1   because both of the motions have been denied at this

2   point but we would still ask that these, that our motion

3   be granted and that Your Honor strike those materials so

4   that the Defendants can be told once and for all that

5   the case is going to go forward on the merits.  We are

6   not going to litigate the political views of spouses of

7   lawyers who are not even involved in this case and that

8   the issues that are before the Court are whether in fact

9   the PA and the PLO can be held responsible for the

10  murder of Ungar.

11              So to that extent, Your Honor, I

12  would like to -- based on what we filed and based on our

13  motion and based on the memorandum that we cite some

14  significant authority from this jurisdiction and others

15  which talk about litigating the political beliefs of

16  lawyers and those obviously involve cases of lawyers who

17  are involved in the case, not spouses of lawyers who

18  aren't involved in the case.  So it is even all the more

19  so that these materials should been stricken from the

20  file.  They have no place in this docket.  They have no

21  basis for clogging up this docket, taking the

22  Plaintiffs' time or the Court's time or allowing the

23  case to be diverted to political beliefs of any counsel

24  but certainly not spouses of counsel.  Thank you.

25              THE COURT:  Your response?

1          MR. CLARK:  Briefly, Your Honor, we

2    assume that this is moot now because of the decision on

3    motion for reconsideration but that aside, the Plaintiff

4    misunderstands the nature and the purpose of the

5    allegations that he seeks to strike.  They have to do

6    specifically with our right, we believe, not to be

7    forced to litigate, not to be forced to present an

8    answer in depositions, not to engage in the pursuit of

9    settling this or determining the issues in this

10   controversy until sovereign immunity has been decided.

11   What you see is that these allegations, that we haven't

12   made the allegation, we have simply quoted the

13   allegations that he wants to strike from lawyers who

14   have been associated in some degree in the case

15   apparently or claim that they have been.

16          THE COURT:  It is a personal attack on

17   the Plaintiffs' attorneys in this case.  What possible

18   justification is there for making a personal attack on

19   Plaintiffs' attorneys?

20          MR. CLARK:  Your Honor, all we're doing

21   is reciting what the attorney has been reported to say

22   in the press to show that their effort in this case is a

23   political effort to attack the PLO and the PA and that's

24   the very sort of thing we are not supposed to have to

25   get into until immunity has been finally decided.  If

12

1    you read *Papandreou*, there is no question about it and

2    there was mandamus granted in that case.  The other

3    three cases make it clear that we have cited but you

4    have decided that.  If you want to go ahead and do this,

5    even though it is moot, decide it if you want to but the

6    clear reason and the clear justification for it and the

7    thing that makes it proper, is that it shows that while

8    we have sovereign immunity, we are being politically

9    attacked by these people and had there been sovereign

10   immunity, we wouldn't be subjected to that.

11               I would ask this, may it please the

12   Court, for you to consider a stay pending our ability to

13   obtain a stay if they are willing to grant it in the

14   First Circuit.

15               THE COURT:  I have already denied that.

16   I said there will be no stay of this proceeding --

17               MR. CLARK:  This is a different --

18               THE COURT:  -- pending any appeal.

19               MR. CLARK:  If you denied it, that's all

20   we need.

21               THE COURT:  This case is going forward.

22               MR. CLARK:  Thank you, Your Honor.

23               THE COURT:  What I have before me on a

24   motion to strike is very precise.  Plaintiffs' counsel

25   request that I strike section 2C in toto and the second

13

1   sentence only of 2D in the memorandum in support of the

2   motion for reconsideration and the document which is a

3   press clipping attached to the motion.  There is a

4   second part to the motion to strike but that motion is

5   not before me.  That motion for reconsideration was not

6   before me.  That was before Judge Martin.  So I will not

7   deal with that matter.

8                    It is obvious to me that this

9   portion of the memorandum is a personal attack on

10  Plaintiffs' attorneys.  And that it is totally

11  irrelevant to any issues in this case.  This case is a

12  tort case.  Pure and simply.  It is not a political

13  case.  The issue in this case is whether the PLO and the

14  PA are, at least, partially responsible for the brutal

15  killing of Mr. Ungar, an American national in Israel and

16  whether those two Defendants will be required to respond

17  in damage.  I have ruled that this case is properly

18  before this Court and that there is no defense of

19  sovereign immunity.  And that's all that's before this

20  Court.  And this case will go forward and be resolved.

21                    As I have indicated, if Defendants'

22  counsel think that there is a right to appeal that

23  determination, then they can take their appeal to the

24  First Circuit.  Because I think these statements that

25  are contained in this memorandum have no place in this

14

1    trial, in this case, or any part of this case, I grant

2    the motion to strike and I issue a warning that if there

3    is further conduct of this kind in this case, there will

4    be some dire consequences.  The first consequence will

5    be the revocation of pro hac vice status by these

6    attorneys.  And the second will be monetary sanctions.

7    A word to the wise should be sufficient.  Enough said.

8                    Draft an order on all the matters we

9    have dealt with this morning, Mr. Strachman.

10                   MR. STRACHMAN:  Yes, Your Honor.  Thank

11   you.

12

13                       (COURT ADJOURNED)

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

       I, Judith L. Montie, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the matter before Ronald R. Lagueux, Senior Judge.


Judith L. Montie

April 16, 2003