Case 1:00-cv-00105-L-DLM   Document 153-1   Filed 05/13/03   Page 1 of 9 PageID #: 12109

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, )
et al. )
)
v. ) C.A. No. 00-105L
)
THE PALESTINIAN AUTHORITY, )
et al. )

## MEMORANDUM OF DEFENDANTS PALESTINIAN AUTHORITY AND PALESTINIAN LIBERATION ORGANIZATION IN SUPPORT OF OBJECTION TO PLAINTIFFS' MOTION TO ENTER DEFAULT PURSUANT TO FED.R.CIV.P. 55(A)

This Memorandum by the defendants Palestinian Authority and Palestinian Liberation Organization, constituting the present government of Palestine, is submitted in support of their objection to plaintiffs' motion to enter default against them pursuant to Fed.R.Civ.P. 55(a) mailed on February 7, 2003.

### ARGUMENT

**1.  The entry of default sought by plaintiffs is unwarranted.**

Plaintiffs are seeking the entry of default on the ground that defendants' answer has not yet been filed and is overdue. Plaintiffs make no assertion they need the answer or are prejudiced by its absence. Plaintiffs did not ask defendants to file an answer or otherwise press for the pleading to be filed before making this motion seeking default. Of course, it is not plaintiffs' burden to make such a request, but their failure to do so strongly suggests that their motion for default is more a tactic than the expression of a real need for the pleading.

This case is being actively litigated. It is clear defendants intend no default. Under all of the circumstances of this case, the overdue answer does not warrant the entry of default.

Defendants in a previous submission have informed the Court of the extent to which their ability to litigate has been drastically compromised by the chaotic and volatile situation that has

prevailed for some time in the Mid-East.

Defendants respectfully incorporate by reference the statement of these factors as set forth in their January 27, 2003 motion for reconsideration and supporting memorandum and particularly the letter of Amb. Al-Kidwa, dated January 27, 2003, a copy of which is attached for the Court's ease of reference to defendants' present objection.

The drafting and filing of an answer is within defendants' limited capacities, although inadvisable at this time, because it would of necessity be based on incomplete, fragmentary information without full consultation within the government by appropriate officials. Defendants request that the filing of an answer not be ordered at this time, but rather be stayed as previously requested, not only because of their limited ability to respond, but for the reasons that follow.

2.  **There Should Be No Entry Of Default Or Further Pleadings Or Discovery Prior To Defendants' Interlocutory Appeal Of The Denial Of Their Related Claims Of Immunity And Lack Of Subject Matter Jurisdiction.**

The immunity to which defendants are entitled offers broad protection.

> "Sovereign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." The infliction of those burdens may compromise it just as clearly as would an ultimate determination of liability. For that reason a trial court's denial of an immunity defense entitles the defendant to an immediate appeal under Cohen. ("Deprivation of the right not to be tried satisfies the . . . requirement of being 'effectively unreviewable on appeal from a final judgment'"). The scope of jurisdictional discovery under FSIA poses the same issue, writ slightly smaller. Here too, we think, immediate review is appropriate. (Citations omitted).

In Re Minister Papandreou, 139 F.3d 247, 251 (D.C.Cir. 1998) issuing a writ of mandamus to vacate a discovery order for the taking of depositions of senior Ministers of the Greek government on issues of immunity.

- 2 -

Defendants' fundamental contention is that they constitute the present government of Palestine and are entitled to immunity because Palestine is a foreign state within the Restatement's definition. (Restatement 3d, The Foreign Relations Law of the United States, §§ 201 and 202, comment b (ALI 1986)). Alternatively, defendants constitute a government in law and fact elected by the Palestinian people and functioning on their behalf exercising powers conferred by the Oslo Accords formerly exercised by the State of Israeli, including police and law enforcement powers, and as such are a functioning arm of the state entitled to sovereign immunity. See Wojcik v. Massachusetts State Lottery Commission, 300 F.3d R2, 99-101 (1st Cir. 2002), upholding the sovereign immunity claim under the 11th Amendment of the Massachusetts State Lottery Commission as "an arm of the state." In addition, for purposes of 18 U.S.C. sec. 2337, defendants should be treated as a foreign state or agency against whom maintenance of an action under sec. 2333 is barred.

Defendants intend to file an interlocutory appeal but the pendency of their timely motion of November 20, 2002 for reconsideration of the Court's decision entered on November 5, 2002, may be an obstacle. Cf. FRAP 4(a)(4) which in effect treats as premature a notice of appeal filed during the pendency of a timely motion for reconsideration. Defendants believe also it would be in the interests of justice to request further views of the District Court before taking the appeal as well as the opportunity to brief the issues beforehand, as they have requested in their November 20, 2002 motion for reconsideration.

Defendants have repeatedly requested stays which have either been denied or not acted upon, and are coming under pressure, akin to the pressure that led the ministers in Papandreou to petition for mandamus. The pressure results in part not only from the absence of the stays they have requested but also from orders of the Court mandating discovery and the operation of the Federal Rules. These are "burdens of litigation" that may compromise a party entitled to immunity "just as clearly as would an ultimate determination of liability." They are burdens that would be unreviewable absent the protection that is afforded by an interlocutory appeal. See

Papandreou, 300 F.2d at 251 quoted supra. In this situation, the course it may be advisable for defendants to follow, for which there is precedent, would be to file simultaneously and in the alternative an interlocutory appeal and a petition for mandamus, see e.g. In re Republic of the Philippines, 309 F3d 443 (9th Cir. 2002) (reversing the denial of immunity, remanding for dismissal of the action and thereby mooting the mandamus petition filed in the alternative.)

## Conclusion

Plaintiffs' motion for entry of default should be denied. Defendants' pending request for a stay of all proceedings, made as part of its pending motion of November 20, 2002 for reconsideration, which would include a stay of the filing of an answer, should be granted.

Dated: February 27, 2003

Respectfully submitted,

*[signature]*

Deming E. Sherman (#1138)
Edwards & Angell, LLP
2800 Financial Plaza
Providence, Rhode Island 02903
(401) 274-9200
(401) 276-6611 (FAX)

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003
(212) 475-3232
(212) 979-1583 (FAX)

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2003, I mailed a copy of the within Memorandum to David J. Strachman, Esq., Skolnik, McIntyre & Tate, Ltd., Suite 400, 321 South Main Street, Providence, RI 02903 and mailed to Nitsana Darshan-Leitner, Esq., 28 Emek Ayalon Street, Modi'in 71770, Israel.

_/s/ Dennis E. Sherman_

# EDWARDS & ANGELL, LLP

COUNSELLORS AT LAW
*since 1894*

2800 FINANCIAL PLAZA
PROVIDENCE, RI 02903-2499
(401) 274-9200
FAX (401) 276-6611

**Deming E. Sherman**
Direct Dial: (401) 276-6443
Direct Fax: (888) 325-9061
E-Mail: dsherman@ealaw.com

March 3, 2003

Clerk of U.S. District Court
District of Rhode Island
United States Courthouse
One Exchange Terrace
Providence, RI 02903

RECEIVED
MAR 03 2003
Property of U.S. District Court
District of Rhode Island

RE:  **The Estates of Yaron Ungar and Efrat Ungar, et al v.
The Palestinian Authority, et al/C.A. No. 00-105L**

Dear Sir/Madam:

Enclosed are three copies of the letter from Ambassador Al-Kidwa to Magistrate Judge Martin dated January 27, 2003, which should have been attached to the Memorandum of Defendants Palestinian Authority and Palestine Liberation Organization in Support of Objection to Plaintiffs' Motion to Enter Default Pursuant to Fed.R.Civ.P. 55(a) filed on February 27 but was inadvertently omitted.

I apologize for any inconvenience.

Thank you.

Sincerely,

Deming E. Sherman

Enclosure

cc: David J. Strachman, Esq.
    Nitsana Darshan-Leitner, Esq.
    Ramsey Clark, Esq.
    Lawrence W. Schilling, Esq.

PRV_386234_1.DOC/DSHERMAN

*Permanent Observer Mission of Palestine to the United Nations*



البعثة المراقبة الدائمة
لفلسطين
لدى الأمم المتحدة

January 27, 2003

Honorable David L. Martin
Magistrate Judge
U.S. District Court
Office of the Clerk
Providence, Rhode Island 02903-1720
Re: Ungar v. The Palestinian Authority
C.A. No. 00-105L D.R.I.

Dear Judge Martin,

We have carefully analyzed the three discovery documents in this case and the possibility of our responding to them in the near future.

Our communications with officials from the PNA and the PLO who would normally be concerned with legal requests of this kind have been extremely difficult.

As you know there has been intense violence throughout occupied Palestine for more than two years. The offices of the PNA in Gaza City have been destroyed. Offices in Ramallah have been attacked and partially destroyed and left under continuing siege. Other offices of both the PNA and the PLO have been damaged. Records have been destroyed, damaged, dispersed and lost. Personnel responsible for record keeping have been separated from their offices and records and unable to perform their assigned tasks.

President Arafat has been virtually trapped in the ruins of his office in Ramallah since March of 2002. Other officials and administrators have had similar difficulties. More than 2100 Palestinians have been killed by the Israeli occupying forces on our own soil during the last 28 months affecting everyone's life.

Government offices and officials cannot work effectively or organize even on matters of extreme urgency. It has been impossible under such circumstances to locate people who could seek and find documents, who could gather information and prepare answers to interrogatories and could respond to requests for admissions.

We find the scope of inquiry to be incredibly broad and often unrelated to the claims being made by plaintiffs. Much of it seems politically motivated and seeks records usually deemed confidential including communications between the PNA, or the PLO with foreign states, even with the United States government.

We don't understand how plaintiffs can claim the PNA and PLO are responsible for what HAMAS does. The history of the PNA/PLO-HAMAS relationship is public and well known and the claim that the PNA and PLO are responsible for what HAMAS does is simply not credible.

Nor do we understand how plaintiffs can sue the PNA and PLO for this death and at the same time sue the government of Iran in a separate case in Washington, D.C. for the same death claiming Iran is responsible for what HAMAS does. Yet we've been advised plaintiffs are doing this. We notice what appears to be a multiplicity of suits coming from the same lawyers and political statements publicly made by them in connection with the suits, which makes it difficult to believe their aim is to pursue the interests of the individual plaintiffs.

It would seem fair and just to wait until there is a final decision on the issue whether the U.S. Court has jurisdiction over the PNA and the PLO for these events before proceeding to these requests. Nothing else is possible for us. Plaintiffs waited nearly four years from the time of the assault to file this case. The time we request which is necessary to make presentation of our defense possible, if a defense becomes necessary, ought to be comparatively short. Only the achievement of a level of stability, free from the threat of daily attacks in our territory can make it possible to free personnel to gather the materials and information needed to proceed with a defense.

While we wait until violence subsides and hopefully peace comes, to respond to appropriate discovery requests if jurisdiction is upheld, we must state that neither the PNA nor the PLO played any role and neither had any responsibility for the deaths in this case. We regret these deaths as we do the thousands before them and since in these tragic years of violence.

Under exceedingly difficult circumstances the PNA and PLO have done what they can do to reach a peace agreement and to protect lives even while they have themselves been attacked. We grieve over the deaths and injuries on both sides from the constant physical violence and the impoverishment and economic deprivation inflicted on the Palestinian people. And we fully understand that all who live in these Holy Lands will suffer until peace based on justice and international legitimacy is achieved.

We hope this case will not become an obstacle to such a day.

Sincerely,

Dr. Nasser Al-Kidwa
Ambassador, Permanent Observer of Palestine
to the United Nations