1    UNITED STATES DISTRICT COURT

2
     FOR THE DISTRICT OF RHODE ISLAND
3

4

5    +++++++++++++++++++++++++++

6    YARON UNGAR, et al          CA No. 00-105 L

7

8       v                       PROVIDENCE, RI
                                 14 MAY 2003
9

10   PALESTINIAN AUTHORITY, et al

11   +++++++++++++++++++++++++++

12

13        BEFORE MAGISTRATE JUDGE DAVID L. MARTIN

14

15   APPEARANCES:

16   FOR THE PLAINTIFF:          DAVID J. STRACHMAN, ESQ.
                                 321 S. Main St.
17                               Suite 400
                                 Providence, RI 02903
18                               351-7700

19

20   FOR THE DEFENDANT:          LAWRENCE SCHILLING, ESQ.
                                 Ramsey Clark & Lawrence
21                               Schilling Law Offices
                                 36 East 12th Street
22                               New York, NY 10003
                                 1-212-475-3232
23

24

25

1    14 MAY 2003

2            THE COURT:  This is the matter of the estate

3    of Yaron Ungar, et al v the Palestinian Authority, et

4    al, Civil Action 00-105 L.  Before the Court are three

5    motions, defendant's motion for a protective order,

6    plaintiff's motion for judgment by default against

7    Palestinian Authority based on alleged failure to

8    respond to interrogatories, request for production, and

9    request for admissions, and the third motion is

10   plaintiff's motion for judgment by default against

11   Palestinian Authority for refusal to submit to

12   depositions.

13           The attorneys will identify themselves,

14   please.

15           MR. STRACHMAN:  David Strachman for the

16   plaintiffs.

17           MR. SCHILLING:  Lawrence Schilling for the

18   Palestinian Authority.

19           MR. SHERMAN:  Deming Sherman for the same.

20           THE COURT:  All right.  The Court will first

21   hear the defendant's motion for a protective order.

22   Mr. Schilling, you may proceed.

23           MR. SCHILLING:  If your Honor please, I'd

24   like to touch on some of the elements that are common

25   to all three motions.

1          The defendants are the Government of

2     Palestine.  It's a functioning Government, and we think

3     meets the definition of the Restatment of foreign

4     relations of the United States in that it is a state.

5          We have informed your Honor, I think on

6     several occasions, that we thought it was extremely

7     important to wait for the final word on immunity and

8     related issues.  As an entity entitled to immunity, we

9     were concerned about the burdens of litigation which we

10    thought we had an entitlement to avoid.  We thought we

11    had a privilege not to be sued, and what the cases have

12    sometimes referred to as a dignitary interest.

13    Affecting this was the peace process again with which

14    we're very much concerned.  It's now the roadmap what

15    we think that this body of litigation, because we view

16    the cases against us as a body of litigation, might

17    have an impact on the peace process, on the roadmap.

18         A third factor is the extraordinary period

19    of five months during which our motion for

20    reconsideration that was filed on November 20, 2002,

21    was pending.  This was a motion to reconsider the

22    Court's decision and order entered on November 5, 2002.

23    Once the motion for reconsideration was filed, it

24    wasn't possible for us to take an appeal until the

25    motion was decided.  It's unusual because if the motion

1    had been decided more quickly, the proliferation of

2    discovery would not have taken place.  We think -- when

3    I said the final word on immunity and related issues,

4    that very much included an appeal and a decision by the

5    Court of Appeals.

6              The plaintiffs doubted during this period

7    that we had a right of appeal, or that we would appeal,

8    in a reply filed at the beginning of March, the

9    plaintiff said an appeal the defendant claims it

10   intends to file at some future date.  That same

11   document went on to say, "We're not entitled to an

12   appeal as a right.  But even if the defendants had a

13   right, the time to file such an appeal has long since

14   expired."  Well, it hadn't expired, and our rights to

15   appeal came into effect on April 22 when the order

16   denying our motion for reconsideration was entered.  We

17   immediately filed an appeal and the appeal has been

18   extremely active.  We filed a motion for a stay on the

19   same day that we took the appeal.  I think your Honor

20   may have the motion for a stay.  It was an exhibit to

21   one of our -- one of our documents, and I think we very

22   recently got permission to file the exhibit.

23              THE COURT:  Yes, that's correct,

24   Mr. Schilling.  I've read the motion for stay and the

25   memorandum in support thereof.

1          MR. SCHILLING:  Thank you.  In addition to

2     the motion for a stay, the plaintiffs have filed on the

3     appeal an opposition for a stay.  They've also filed a

4     motion for summary disposition asking that the appeal

5     be dismissed or that it be summarily disposed of.  They

6     asked permission to file a surreply on the stay motion.

7     And in connection both with the stay motion and the

8     summary disposition, plaintiff had requested oral

9     argument.  The defendants filed an opposition to the

10    summary disposition, and a reply on the motion for a

11    stay, and there the matter sits.  The Court of Appeals

12    has not issued -- has not issued an order, and it seems

13    to us, I guess this is in the nature of an application,

14    that it makes sense to wait a brief time for the Court

15    of Appeals to rule.  If it rules against us, then we

16    will have to reassess our position in light of whatever

17    action the Court of Appeals takes.  If it rules in our

18    favor, then depending on what they do, the case will

19    have a much different posture.

20          So my suggestion, your Honor, is that we

21    wait a brief period of say a week or two weeks until we

22    see what the Court of Appeals is going to do.

23          THE COURT:  Is it your expectation,

24    Mr. Schilling, that the Court of Appeals will take some

25    action within the next week or two on this application

1  for stay?

2      MR. SCHILLING:  It's my expectation, but I

3  don't base that on anything that the Court has said.  I

4  know that the clerk's office there has said, the clerk

5  said she'd fax to us as soon as she received the order,

6  and I gathered from that that she thinks something will

7  be coming fairly soon.  Of course, the stay and the

8  appeal itself may not be decided at the same time.  But

9  --

10      You're suggesting that perhaps the Court

11  might grant the stay but not decide the appeal, but

12  simply to stay the proceedings down here in the

13  District Court?

14      MR. SCHILLING:  Or might deny the stay and

15  still go on with the appeal, but they might write

16  something, as well, when they take action.

17      THE COURT:  All right.  Is there anything

18  else you wish to add?

19      MR. SCHILLING:  Well, there's a lot on the

20  motions, but on this particular application, I'd say

21  no.

22      THE COURT:  The motion for a protective

23  order, which I'm hearing first.  Is there anything else

24  you want to argue about that?

25      MR. SCHILLING:  Your Honor, there's quite a

1    bit.  The depositions of President Arafat and several

2    top leaders were noticed and we think that the

3    foundation for those depositions has not been properly

4    laid.  But overriding the entire problem that the

5    motion presents, it is, as I say, our desire to wait

6    until the immunity and related issues are decided, and

7    especially until they are decided by the Court of

8    Appeals.  There are problems with practicality.  These

9    officials can't leave with any assurance that they will

10   be able to return if they come to the United States.

11        Plaintiffs make the point that we haven't

12   negotiated the details of the depositions with them,

13   and that's true, but again it's because we think we are

14   entitled to avoid the burdens of litigation and to

15   preserve the dignitary interests that are involved.

16   And so a lot of the minutia that Mr. Strachman raises

17   on these depositions, we think is subsumed by this

18   desire of ours which has now been expressed on the

19   appeal.  We think there's been no showing that these

20   deponents have any information that would be of

21   interest.  We think that the Popandreau case indicates

22   that there should be such a showing before the senior

23   most officals of the government are deposed.

24        But again, the detail of that hasn't been

25   laid out because our basic position is that we think

1    we're entitled to wait until there's a final word on

2    immunity and related issues.  Thank you, your Honor.

3                THE COURT:  All right.  Mr. Strachman.

4                MR. STRACHMAN:  Thank you, your Honor.

5    First, if I could, your Honor, in terms of the

6    procedure, procedural issue raised for the first time

7    now by Mr. Schilling, it's not in his motion for

8    protective order, but we have no indication at all that

9    the First Circuit will entertain a motion for a stay.

10   The request was made several weeks ago.  The request

11   was made that the Court handle the matter on an

12   emergency expedited matter.  As Mr. Schilling

13   explained, we've responded appropriately and there are

14   several pleadings pending before the Court.  But it

15   sounds somewhat disingenuous to now come to this Court

16   and say today that the reason we can't take

17   depositions, or the reason we need a protective order,

18   is because of the First Circuit.

19              They filed a motion several weeks ago and

20   your Honor struck probably three quarters of that

21   motion because it was in that Hamas attack upon certain

22   individuals.

23              What's left in their motion is basically a

24   representation by a Dr. Nassar Al-Kidwa who is not the

25   first Palenstinian official to make a representation to

1  this Court.  The first, as the Court is aware, is

2  Mr. Hassan Abdle Rahman, who Judge Lagueux effectively

3  found misled the Court in terms of just service of

4  process.  So what we have in terms of their motion, and

5  what they filed other than the representation of Mr.

6  Al-Kidwa, New Times articles basically saying that they

7  don't want to appear, and it's to me disingenuous for

8  several reasons.

9          First, just some very brief history.  The

10  depositions and discovery were stayed in the spring of

11  last year.  Following Judge Lagueux's ruling on

12  November 4, the stay was lifted.  That was confirmed

13  both in a hearing that we had before your Honor on

14  December 12th this past year, and also in a letter that

15  your Honor wrote to counsel indicating very clearly

16  that the discovery stay stopped on November 4, and that

17  we had every right to proceed.

18          Your Honor granted an order.  Mr. Schilling

19  and I negotiated the terms of that order over the

20  course of a month.  It was entered on January 14.  And

21  on January 14, the order says very clearly that we have

22  the right to set up depositions.  We did exactly what

23  the order said.  We did exactly what we intended and we

24  represented to the Court on December 12 what we would

25  do.  The exact same deponents that were scheduled for

1  depositions last year ultimately stayed, with the exact

2  same people.  We wrote a letter to Mr. Schilling and to

3  Mr. Clark on March 4 saying the depositions are coming

4  up in a few weeks, we want to confirm that they will go

5  forward.  No response.  No reply at all.

6       We have a motion for protective order.  The

7  motion for protective order makes no mention at all of

8  the certification under Rule 26(c), a certification

9  that the parties confirmed.  There is no representation

10 at all that some of the deponents can't be here, some

11 could.  The time is no good.  The date's no good.  Even

12 the location is no good.  You know, can we discuss

13 this?  Nothing at all.

14      So the position, frankly, that the PLO and

15 the PA, and these officials that we've requested

16 depositions for, are simultaneously officials of both

17 organizations, the PA and the political party, the PLO.

18      It's somewhat disingenuous to now come in

19 and say that, you know, we just don't want to take

20 these depositions and when they've not gone through

21 what your Honor set forth on December 12th, what they

22 were told on December 12th, what Judge Lagueux

23 effectively told them on November 4 when he effectively

24 lifted the discovery stay, when the rules provide

25 certain mechanism to deal with objections to discovery

1  and to address concerns that might be reasonable under

2  the circumstances, we have nothing.  And we had very

3  frank admissions by both Mr. Schilling and Mr. Clark in

4  this very room a month ago basically saying he spoke

5  with Mr. Arafat in mid-December and was told basically

6  don't go forward.  So their position is that although

7  the law of this case is we have the right to go

8  forward, Judge Lagueux said emphatically on April 18th

9  this case was going forward, we have -- you know, we

10  have parties who think they can just rewrite the orders

11  of this Court, rewrite the rules of procedure, rewrite

12  the law of this case, and their position is very clear

13  that they won't do any discovery.

14           And I don't want to argue the other two

15  motions, but just to touch base, it's consistent with

16  the position in the other two motions.  Not a single

17  piece of paper has been provided in discovery.  Not a

18  single answer to interrogatories.  Not a single

19  response to request for admissions.  So their position

20  is we're denying the authority of this Court to do

21  exactly what Judge Lagueux said, bring this case to

22  discovery, bring this case to trial, and I would ask

23  that your Honor basically has, in a sense, has very

24  limited choices in light of -- in light of those

25  representations.  In light of those representations,

1   there is no other alternative than to strike this

2   motion, or to deny this motion, to let us proceed with

3   the other two motions right now, because there is no

4   telling at all, you know, what could happen in the

5   First Circuit.  And obviously if the First Circuit were

6   to issue a stay next week, or the week after, obviously

7   the parties would be, you know, governed accordingly.

8   But there is no reason now to stop this proceeding.

9          And just so we're absolutely clear, if I

10  could indulge the Court for one minute.  The people

11  that we've asked to depose, besides Mr. Arafat, who is

12  obviously a sort of colorful figure, but we've asked to

13  depose very specific individuals who have been

14  identified very clearly with facts and very specific

15  information about the PA and the PLO support of

16  terrorism.

17         So, for instance, we've asked to depose

18  Mr. Razzi Jabali.  We have a tape of Mr. Jabali

19  indicating that he provides Hamas terrorists support.

20  He puts them into his own security forces.  We have

21  Mr. Dahlan.  Mr. Dahlan met with Mr. Deif who is the

22  Hamas leader right around the time of the Ungar murder.

23  And we have information that he was given a green light

24  to specifically conduct terrorist activities in June of

25  1996.  We've asked to depose Mr. Rajoub.  His men, men

1   under his control, were the ones who gave the fake PA

2   police documents to the actual murders of the Ungars.

3   They're the ones who supervised the Tzurif gang, the

4   actual gang that was involved in killing the Ungars.

5   We've asked to depose Tawiq Tarrari.  He gave money.

6   It's been proven and documented that he gave money and

7   weapons for specific terrorist attacks during this

8   period of time.  Mr. Al-Hindi has been accused and has

9   documents of his same activities.  Mr. Boughati is a

10  mastermind of a series of activities during this entire

11  period of time. Mr. Arafat, he is not just a person who

12  happens to be a Palestinian Authority, but he himself

13  has a direct hand in various forms of terrorism, and

14  more specifically his signature itself was on a piece

15  of paper indicating approval for the killing of

16  Americans after the fact.  He rewarded Palestinian

17  terrorists in the form of compensation, financial

18  compensation, for killing Americans.  And these

19  individuals involve not just in the policy level,

20  setting the policy for terrorism, but in the actual

21  operational level, actually approving operations,

22  giving the green light to operations, and to conducting

23  a campaign of terror in which a series of Americans

24  have been killed, to the extent that Congress passed a

25  law in 1999, 22 USC 2656(f) note, and that's the law

1   that requires the U.S. Government to monitor the PLO's

2   support for terrorism, the PA's support for terrorism,

3   and specifically conducted against Americans.

4          And lastly, your Honor, the inability to

5   come to this country to testify, I know that it could

6   not be Mr. Schilling or Mr. Clark who could make these

7   false representations.  I'm sure it comes only from

8   their clients.  But we've provided to the Court, I've

9   provided to counsel, and I think we previously provided

10  to the Court, but I wasn't exactly sure, so I just

11  wanted to double-check, that that was a deposition

12  transcript of Gassan Ramadan, an official of a PA

13  Ministry of the Environment.  He came to court --

14  excuse me, he came to Washington on March 31, and he

15  testified in Washington at a deposition.  He stayed

16  because he testified at the Bucheit trial that occurred

17  two days later.  I mentioned that trial when we first

18  were in court a month ago on the Rule 55 motion, but I

19  did not have the deposition transcript.  Now we have

20  the deposition transcript and we can prove to this

21  Court that the very day the depositions were supposed

22  to start in this case, we have PA officials been flown

23  into this country, testifying in this country, and

24  picking and choosing whether they can come to Rhode

25  Island, testify in depositions that have been court

1  ordered already, or whether they choose to go to a

2  different deposition and provide deponents for a

3  different deposition in a case against these very same

4  defendants in Washington.

5      THE COURT:  Mr. Strachman, this was not one

6  of the people that you had notice for deposition.

7      MR. STRACHMAN:  Absolutely not, your Honor.

8  Absolutely not.

9      THE COURT:  But you're citing this as

10  evidence that, in fact, some officials have the ability

11  to travel to this country and appear for depositions if

12  they so desire.

13      MR. STRACHMAN:  Absolutely, and appear at

14  trial, and in this same case, your Honor, we've also

15  listed in our response briefs there has been the

16  so-called assistant finance minister of the Palestinian

17  Authority testify at a court in Jerusalem in mid March

18  of this year, two weeks before the depositions were to

19  occur, and those are --

20      THE COURT:  Was he one of the people that

21  you wished to depose?

22      MR. STRACHMAN:  Absolutely not, your Honor.

23      THE COURT:  But again the same point you're

24  saying some officials from the PA have the ability to

25  travel into other countries and appear in judicial

1  proceedings.

2         MR. STRACHMAN:  Absolutely, and that goes to

3  the lack of good faith in terms of the response to the

4  deposition notices in this court.  No one has said,

5  hey, we can't bring this official but we could bring

6  another person.  We could bring people with records.

7  They won't do anything, but yet they can in two other

8  courts, and pursuant to the rules in two other

9  jurisdictions, they're perfectly able to do that.  So I

10  think that's very significant for this Court to

11  consider, and this information has been out, at least

12  the information that we have received, has been made

13  known to the Palestinian Authority and the PLO at least

14  for the last month, and none of it has been rebutted,

15  and there hasn't even been a response to these

16  allegations.  Thank you.

17         THE COURT:  Do you want to respond briefly,

18  Mr. Schilling?

19         MR. SCHILLING:  Briefly, your Honor.

20         THE COURT:  All right, I'll let you respond

21  briefly.

22         MR. SCHILLING:  Thank you.  Gassan Ramadan,

23  it's true, works -- apparently works for the Ministry

24  of Environmental something or other.  But he came here

25  as a private individual.  The case had nothing to do

1  with the Ministry.  It had nothing to do with his

2  duties at the Ministry.  And it's not at all equivalent

3  to the depositions that the plaintiffs have noticed.

4  I make one technical point, your Honor.  All

5  of the discovery has been against the Palestinian

6  Authority and the depositions themselves read the name

7  of the individual slash Palestinian Authority.  The

8  notices are probably defective in some respect in not

9  designating the capacity in which the individuals are

10  being deposed, since they're not parties, but that's a

11  minor point.  Thank you, your Honor.

12  THE COURT: Thank you, Mr. Schilling.  Before

13  the Court is the Palestinian defendant's motion for

14  protective order.  This motion has been referred to me

15  by Senior District Judge Lagueux for determination.

16  The defendants, by this motion, move for a

17  protective order against the taking of the depositions

18  of President Yassar Arafat and six other Palestinian

19  leaders.  Mr. Schilling has argued that the motion

20  should be granted for a number of reasons beyond those

21  stated in the actual written memorandum.

22  I find that the motion should be denied for

23  the following reasons:

24  First and foremost, the defendant did not

25  respond at all to the request for discovery propounded

1    by the plaintiffs.  When the plaintiffs noticed the

2    depositions and sought confirmation from the plaintiffs

3    whether or not the deponents would be appearing, their

4    letter was not responded to.  This Court had indicated

5    that if there was a problem with the location or other

6    matters regarding the deposition that the defendants

7    could raise that, because the defendants had indicated

8    in prior court proceedings about the difficulty of the

9    deponents coming from Palestine, the conditions there,

10   and the Court was clear, as I recall, in indicating

11   that objections as to location or other matters

12   concerning the depositions would be -- at least the

13   defendants could raise that and the Court would address

14   it.  But, in fact, the defendants have adhered to their

15   course of conduct, which is not to participate in terms

16   of the discovery process, not to participate in this

17   action by answering, which they are now in default.

18          I do not find that any of the reasons

19   offered by the defendants warrant issuance of a

20   protective order.  I agree with the arguments made by

21   the plaintiffs in opposition to the motion for a

22   protective order, particularly the fact that the

23   support offered for the protective order is a letter

24   dated January 27, 2003, from Dr. Nassar Al-Kidwa,

25   Ambassador, permanent observer of Palestine, United

1    Nations.  As plaintiffs correctly note, this is an

2    unsworn document.  It's not an affidavit.  The Court

3    read it, but I find that it is certainly insufficient

4    to persuade this Court that a protective order should

5    issue.

6         The arguments made by Mr. Schilling

7    regarding foreign immunity, the peace process, have

8    previously been made in their efforts to defeat

9    jurisdiction in this matter, and Judge Lagueux has

10   ruled against them.  That matter, they are now seeking

11   review in the First Circuit.

12        I do not find, however, the fact that they

13   are seeking review in the First Circuit is a basis to

14   grant a protective order, particularly in view of the

15   fact that the defendants essentially ignored the

16   request for discovery and made no attempt to respond in

17   any manner to the request for discovery.

18        So the Court denies the Palestinian

19   defendant's motion for a protective order.

20        We'll now proceed to the motions for

21   judgment by default against the Palestinian Authority.

22   Mr. Strachman.

23        MR. STRACHMAN:  Thank you, your Honor.  Your

24   Honor, we filed discovery requests initially in January

25   of 2002.  Discovery was stayed in the spring.  The stay

1   was lifted by operation of Judge Lagueux's order.  On

2   November 4, the Court indicated to the defendants on

3   December 12 that they were advised that any objection

4   to discovery may be waived for their failure to file

5   objections prior to December 12, as some of the

6   discovery was then, in fact, due.

7        We had a hearing.  They asked for additional

8   time.  Sixty days, I believe.  The Court said no.  The

9   Court said in response to my request that there'd be --

10  when the Court granted 45 days -- excuse me, when the

11  Court granted the defendants 45 days to respond to

12  discovery, in response to my request, the Court began

13  to tick that time, or start that time, from December

14  12th.  So from December 12th they had an additional 45

15  days to respond to discovery.

16       Mr. Schilling and I spent a month of faxes

17  and letters back and forth. In fact, we're prompted, I

18  believe, by a call from your Honor's clerk, where is

19  the order, because he and I spent a month negotiating

20  the exact terms of an order that ultimately entered on

21  January 14.  They were ordered to comply with discovery

22  by 45 days from December 12.  They were specifically

23  told that they could object.  They would have to

24  provide specific objections, and also, as I said

25  before, those objections could be waived, may be deemed

1    waived because they did not comply initially in the

2    first period of time.  We waited.  We didn't, you know,

3    file the motion on the 46th day or the 50th day or the

4    55th day.  We waited to give them time.  We get no

5    response at all, not a single response at all from them

6    other than a spate of pleadings which pretty much, in

7    terms of motion for reconsideration.  In fact, they

8    asked to reconsider your Honor's ruling of December

9    12th.  Your Honor denied that and said very

10   specifically that the reasons were for the reasons

11   provided in our, the plaintiffs', memorandum in

12   response to their motion for reconsideration.  And that

13   indicated very clearly that they were refusing to

14   comply with discovery.

15          We filed a motion to enter default judgment

16   because as we've indicated the cases very clearly

17   support the proposition that when a party tells the

18   Court there will be no discovery, we are not complying,

19   we are not going to do anything consistent with the

20   rules of discovery, the rules of this Court with

21   respect to discovery, then the Court can take the most

22   drastic sanction.  It need not wait yet another period

23   of time to allow compliance.

24          In fact, so we're very clear, the defendants

25   have not responded to our motion for default judgment

1   asking for more time.  They haven't asked that

2   interrogatories 1 through 10 may be inappropriate, and

3   here's how we'd like to answer them.  They haven't said

4   we need another month.  They haven't come to the

5   plaintiffs and asked the plaintiffs could they be

6   tailored a certain way, could they be fashioned, we

7   can't answer subpart (a) but we can answer subpart (f).

8   None of that.  So just like with the protective order

9   in terms of the depositions, they have said discovery

10  has come to a close.  They will control how this case

11  is handled, not your Honor, not Judge Lagueux who said

12  just most recently on April 18th, this case will

13  proceed to discovery and to proceed to trial.

14          The interrogatories, the request for

15  production of documents, the request for admissions,

16  they have had for over a year.  So again, it wasn't as

17  if we were here on December 12th and all of a sudden

18  for the first time they got a set of written

19  interrogatories.  Although discovery was stayed, they

20  certainly had them.

21          And I find even more disingenuous the

22  position taken by Mr. Clark when we were here last

23  month and he acknowledged to the Court that he said he

24  had time to speak directly with Mr. Arafat about this

25  specific case.  That was the main reason he went to see

1   him, according to his words.  And instead of sitting

2   down with him with a legal pad and jotting out some

3   answers and trying to work in a good faith manner to

4   respond to discovery, they take the position that

5   they're just not going to respond at all, and that they

6   will dictate the terms of this litigation.

7         So again as I said in terms of the motion

8   for protective order, I think they sort of narrowed the

9   issues so that the Court really has only one response,

10  and that is entry of default judgment.  A conditional

11  order doesn't make sense because they've told us

12  they're not going to comply.

13        We'd also ask that the Court impose

14  sanctions, both the sanction, if you will, in favor of

15  the Court so that the defendants can be punished for

16  their activity, also a sanction in the form of counsel

17  fees for plaintiffs' counsel for having to appear both

18  December 12th, and now for these discovery violations.

19  Thank you.

20        THE COURT:  Mr. Schilling.

21        MR. SCHILLING:  Your Honor, the matters at

22  stake here, and the concerns that are motivating the

23  defendants are very serious, and we are concerned again

24  with the peace process, and with the effect that

25  assuming burdens of litigation would have upon us and

1    the public perception of the Government.

2            We have consistently taken the position that

3    we are entitled to wait until there is a final

4    disposition of immunity and related issues.  It has not

5    been a flat refusal, and I frankly don't know what will

6    happen, depending on what the Court of Appeals does,

7    what will happen in the future.

8            But I think that these are very serious

9    matters, and we don't intend any disrespect.  We are

10   trying to protect the interests.  There are millions of

11   people involved here.  People are dying every day.  And

12   we think -- we take all of this very very seriously.

13           I would mention one factor, your Honor, it's

14   almost a point of personal privilege.  When we -- your

15   Honor has written a letter, and it's been concerned

16   with our understanding of when the stay ended.  We put

17   in a motion way back asking for a stay, and it

18   contained a second paragraph which addressed when the

19   discovery obligation would resume if the stay ended.

20   The order that your Honor entered was an order that

21   simply said the matter is stayed, and didn't address

22   the second point of when -- what would happen when the

23   stay ended and how long we would have to make

24   discovery.  That was the confusion that was in my mind

25   at the hearing.  Do you recall this, your Honor,

1    because I --

2         THE COURT:  I recall sending the letter

3    following the hearing, Mr. Schilling.  My letter was

4    not intended to imply that you had acted improperly or

5    had not been candid with the Court, but it was more of

6    an acknowledgement that during the hearing I just

7    didn't have the order in front of me and I felt it

8    important to state clearly the Court's position.  But

9    my letter was not intended as criticism of you.  It

10   was, if anything, an attempt to make clear to counsel

11   something that I should have made clear during the

12   hearing, and had failed to do so because I did not have

13   the order in front of me at the time of the hearing.

14   After the hearing, I looked at it and that's the reason

15   I sent the letter.  But the letter should not be

16   considered by you as criticism.

17        MR. SCHILLING:  Okay.  But the source of the

18   confusion was that our suggested proposed order was in

19   two parts and the second part was not addressed, and

20   there was, I think, at about this time our motion for

21   reconsideration was pending, which asked for a stay,

22   and that created the uncertainty that we expressed at

23   the hearing.  Thank you, your Honor.

24        THE COURT:  All right, Mr. Schilling.

25        MR. STRACHMAN:  May I just respond for a

1    moment, Judge?

2              THE COURT:  You may, Mr. Strachman.

3              MR. STRACHMAN:  I didn't point out just a

4    moment ago, but I did in our filings with regard to the

5    depositions.  In the Bucheit case, we've represented

6    that there was an exchange of discovery, and that

7    discovery was made and complied with in that case.  And

8    we represented that some time ago with our filings.

9    That also has not been rebutted.  So it seems clear to

10   me that the PA has the ability to comply with discovery

11   requests down in Washington in the cases against

12   identical parties, both the PA and the PLO, and we know

13   that they were able to search records and find

14   documents to produce in discovery.  But in this case,

15   despite a court order, they can't do so.

16             THE COURT:  The Court has looked at the

17   case law concerning default judgments, entry thereof,

18   and it's clear that the entry of judgment by default,

19   the entry of a default judgment is not favored.  It is

20   a last resort.  The case law lists factors the Court

21   should consider in deciding whether or not to grant a

22   motion for entry of default judgment.

23             I find that almost all the factors have been

24   satisfied with the exception that the Court has not

25   explicitly warned the defendants of something that the

1    Court believes is probably obvious, that a failure to

2    comply with discovery requirements can result in the

3    entry of default judgment.  The plaintiffs have cited

4    case law that indicates that this is not an essential

5    requirement for the entry of default judgment.  It's

6    not absolutely necessary that the Court first

7    explicitly warn a party who is being noncompliant, that

8    the continued noncompliance will result in the entry of

9    default judgment.  Plaintiffs have cited case law which

10   would indicate the Court is within its rights to order

11   a default judgment even though the Court has not

12   previously explicitly warned the defendants that a

13   failure to comply with their discovery obligations will

14   result in the entry of default judgment.

15           Notwithstanding that, however, I have

16   concluded I am going to make that explicit warning to

17   the defendants, that their continued failure to comply

18   with their discovery obligations may well result in the

19   entry of default judgment, and that the reasons that

20   Mr. Schilling has mentioned in his arguments, such as

21   back last December, as I understood his argument, one

22   of the reasons the defendants were not responding to

23   their request for discovery was there was a pending

24   motion for reconsideration before Judge Lagueux, and

25   they had hopes, I gather, I infer from his argument,

1    they had hopes that he would grant that motion and,

2    therefore, there would be no need to respond to the

3    request for discovery, and he mentioned that the motion

4    for reconsideration was pending for five months and

5    suggested, perhaps, that while it was pending, the

6    defendants could not respond to discovery or were

7    uncertain.

8              Well, that situation has totally changed.

9    Judge Lagueux has denied the motion for reconsideration

10   and made abundantly clear that this case is going

11   forward.  There can be no doubt in the defendants'

12   mind, and I want there to be no doubt in the

13   defendants' mind, that a continued failure to comply

14   with their discovery obligations in this matter may

15   well result in the entry of default judgment.

16   Particularly in view of the fact, as I've indicated, I

17   find almost all the other factors that would be

18   addressed by a court in considering whether to enter

19   default judgment are already present.

20             I'm going to continue this matter 60 days.

21   The defendants are ordered to comply with their

22   discovery obligations.  They are to respond to the

23   request for interrogatories, the request for

24   admissions, the request for productions.  They are to

25   communicate to the plaintiffs when and where they will

1    produce the named deponents.  They shall communicate

2    that to the plaintiffs within 30 days.

3              I also want defendants to be aware that the

4    Court believes that the plaintiffs are entitled to

5    attorneys fees for the additional work that has

6    resulted from their failure to comply with discovery

7    requests to date.  The fact that counsel have had to

8    file additional motions, I will address that matter at

9    a future date.  But I want the defendants to be clear

10   I'm not simply giving them an extra 60 days at no cost.

11   They have failed to comply with their discovery

12   obligations.  This has necessitated the plaintiffs

13   incurring additional attorneys fees and the defendants

14   are responsible for those fees.

15             Miss Saucier, may I have two dates, one 30

16   days from today and one 60 days from today, please.

17   Court dates, please.

18             Defendants are advised that they are to

19   comply with the discovery obligations within 60 days by

20   July 14, 2003.  The Court will continue this hearing

21   until, the hearing on the motion for judgment by

22   default, until that date.  The defendants are to advise

23   the plaintiffs by June 16th of when and where the named

24   deponents can be deposed.  Since the notices are for

25   the District of Rhode Island, the defendants seek to

1    have the depositions take place other than the District

2    of Rhode Island, defendants must file a motion seeking

3    that relief and setting forth why it should take place

4    in the District of Rhode Island.  Is that clear,

5    Mr. Schilling -- why it should take place other than in

6    the District of Rhode Island.

7            Mr. Strachman, you may prepare an order

8    reflecting the fact that the defendants' motion for a

9    protective order has been denied by the Court.  The

10   Court will prepare its own order reflecting the

11   continuance of the two motions for judgment by default.

12   The order will contain the dates that I've just

13   announced and the requirements the Court has set.

14           Is there anything further, Mr. Strachman?

15           MR. STRACHMAN:  Just wondering, your Honor,

16   in light of the representations that have been made if

17   it might be more expeditious if we could have a

18   representation by the defendants within the next ten

19   days as to whether they are complying at all because if

20   they take the position that they've had for the last

21   six months, that they will not comply and not submit to

22   discovery, then it might make sense not to wait until

23   July to hear that.  If we were told they're going to

24   maintain the same position, in other words, not the

25   actual scheduling of the depositions, but whether they

1   are going to even engage in that process, ten days

2   should be sufficient for the defendants to communicate

3   with their counsel and learn whether they are taking a

4   position other than the position communicated to

5   Mr. Clark in the middle of December, and that would

6   advance this matter, and then we would not have to be

7   here on July 14th just to learn what I think we all

8   would expect to be the same position.

9            THE COURT:  Mr. Schilling.

10           MR. SCHILLING:  I think the 30 days and the

11  60 days are tough enough, your Honor.  I don't -- I

12  think that this is an unrealistic suggestion by

13  Mr. Strachman.

14           THE COURT:  I've made my ruling,

15  Mr. Strachman.

16           MR. STRACHMAN:  Thank you.

17           THE COURT:  The Court will be in recess.

18  (RECESS)

19

20

21

22

23

24

25

1

2

C E R T I F I C A T I O N

I, court approved transcriber, certify that the

foregoing is a correct transcript from the official

electronic sound recording of the proceedings in the

above-entitled matter.

ALFRED GALLUCCI, COURT REPORTER