UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.

vs.                                        No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.

**PLAINTIFFS' MOTION FOR JUDGMENT BY DEFAULT PURSUANT TO
FED.R.CIV.P. 55(b)(2) AGAINST DEFENDANTS THE PALESTINIAN AUTHORITY
AND THE PALESTINE LIBERATION ORGANIZATION**

For the reasons presented in the accompanying memorandum in support of this motion, plaintiffs hereby move, pursuant to Fed.R.Civ.P. 55(b)(2), for judgment by default against defendants The Palestinian Authority and The Palestine Liberation Organization. Plaintiffs' motion is also supported by the attached exhibits.

Plaintiffs, by their Attorneys,

David J. Strachman #4404
McIntyre, Tate, Lynch & Holt
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)



## CERTIFICATION

I hereby certify that on the _30_ day of May, 2003 I mailed and faxed a true copy of this motion and supporting memorandum to:

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003
**(Fax 212-979-1583)**

Deming E. Sherman
EDWARDS & ANGELL, LLP
2800 Bank Boston Plaza
Providence, RI 02903
**(Fax 401- 276-6611)**

_[signature]_

Ungar/Motions/Motion for Default Judgment 5-29-03

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.

vs.                                                    No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION
FOR JUDGMENT BY DEFAULT PURSUANT TO FED.R.CIV.P. 55(b)(2)
AGAINST DEFENDANTS THE PALESTINIAN AUTHORITY
AND THE PALESTINE LIBERATION ORGANIZATION**

## I.    INTRODUCTION

On November 4, 2002, the Court rendered a Decision and Order denying a motion by
defendants The Palestinian Authority ("PA") and The Palestine Liberation Organization ("PLO")
to dismiss plaintiffs' Amended Complaint.[1]    Defendants PA and PLO did not answer the
Amended Complaint following the denial of their motion to dismiss, and on February 7, 2003,
plaintiffs moved for entry of default against the PA and PLO pursuant to Fed.R.Civ.P. 55(a).
Defendants PA and PLO objected to plaintiffs' motion to enter default.

Plaintiffs' motion to enter default was referred to Magistrate Judge David L. Martin, who
held a hearing on April 1, 2003, on the matter of the motion and the objection thereto.  On April
18, 2003, Magistrate Judge Martin issued a Memorandum and Order finding (on the basis of
defendants' own statements and admissions) that their failure to answer was *"the result of a
deliberate choice,"* granting plaintiffs' motion, and directing the Clerk of the Court to enter the
default of the PA and PLO.  The Clerk entered the default of the PA and the PLO on April 21,

---

[1] <u>Estates of Ungar v. The Palestinian Authority</u>, 228 F. Supp.2d 40 (D.R.I. 2002) ("Ungar II").

2003. [2]

By deliberately defaulting this action, the PA and PLO have, as a matter of law, conceded the facts alleged in plaintiffs' Amended Complaint and established their own liability for plaintiffs' damages. Plaintiffs are therefore entitled to judgment by default against defendants PA and PLO pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. Brockton Savings Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985) cert. denied, 475 U.S. 1018 (1986) ("there is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its . . . claims must be considered established as a matter of law."); Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 693 (1st Cir. 1993) ("entry of a default against a defendant establishes the defendant's liability"); In Re: The Home Restaurants, Inc., 285 F.3d 111, 114 (1st Cir. 2002) ("it is precisely the right to contest liability that a party gives up" by defaulting); Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated."); Forteza e Hijos, Inc. v. Mills, 534 F.2d 415, 419 (1st Cir. 1976) ("issue of liability [is] . . . foreclosed" by entry of default).

This memorandum briefly recaps the basis of the Court's personal and subject-matter jurisdiction in this action, and addresses the legal standards and evidence relevant to determination of plaintiffs' damages, which matters are the only remaining prerequisites to entry of judgment by default.

---

[2] Defendants have filed an Objection to Magistrate Judge Martin's Memorandum and Order of April 18, 2003, which remains pending. Plaintiffs respectfully request that the Court deny defendants' objection and affirm the Memorandum and Order of April 18, 2003.

## II.    PERSONAL JURISDICTION

Despite defendants' default, before entering judgment the Court must nonetheless determine whether it may exercise in personam jurisdiction over the defendants. See System Pipe v. Kurnatovskiy, 242 F.3d 322, 324 (5th Cir. 2001), citing In re Tuli, 172 F.3d 707 (9th Cir. 1999), Dennis Garberg & Assoc., Inc. v. Pack-Tech Int'l Corp, 115 F.3d 767 (10th Cir. 1997) and Williams v. Life Savings and Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

In its Decision and Order of July 24, 2001,[3] the Court found that it has personal jurisdiction over defendants PA and PLO pursuant to the nationwide service of process provision of 18 U.S.C. §2334(a) and Fed.R.Civ.P. 4(k)(1)(D), since both defendants had been served with process in this action through the delivery of a copy of the summons and complaint to their managing or general agents, Messrs. Hasan Abdel Rahman and Marwan Jilani. The Court also found that the PA and PLO have minimum contacts with the United States as a whole, and that the exercise of personal jurisdiction over defendants PA and PLO therefore comported with the Due Process Clause of the Fifth Amendment of the Constitution.

However, because the Court's findings and holding in the matter of personal jurisdiction were made in response to defendants' Rule 12(b) motion to dismiss the complaint for lack of personal jurisdiction, the Court was not required to test and determine the truth of the factual claims made by plaintiffs' in support of exercise of personal jurisdiction over defendants PA and PLO. Id. at 86. Rather, the Court employed a prima facie standard, and "accept[ed] properly supported evidence proffered by the plaintiff as true." Id. citing Microfibres v. McDevitt-Askew, 20 F. Supp. 2d 316, 319 (D.R.I. 1998).

---

[3] Estates of Ungar v. The Palestinian Authority, 153 F. Supp. 2d 76 (D.R.I. 2001) ("Ungar I").

Now, in order to give judgment, the Court must make an express determination that the factual claims made by plaintiffs in support of exercise of personal jurisdiction, which were accepted as true under the prima facie standard employed in ruling on the motion to dismiss, have been proven under the "preponderance of the evidence" standard required for judgment. Credit Lyonnais Securities (USA), Inc., v. Alcantara, 183 F.3d 151, 153-4 (2nd Cir. 1999) (court entering default judgment must determine whether previous finding of personal jurisdiction made under prima facie standard in context of Rule 12(b) motion also meets "preponderance of the evidence" standard necessary for judgment).

The facts adduced by plaintiffs in support of the exercise of personal jurisdiction over defendants PA and PLO, i.e. the factual claims regarding defendants' extensive activities in and "minimum contacts" with the United States, and regarding the status of Hasan Abdel Rahman and Marwan Jilani as "managing or general agents" of defendants for the purpose of service of process, easily meet the "preponderance of the evidence" standard. These factual claims were based in large part upon admissions and statements contained in the declarations of Messrs. Rahman and Jilani submitted in support of defendants' motion to dismiss, upon Mr. Rahman's own curriculum vitae obtained from defendants' Washington, D.C. offices, and upon other documents published by and originating from defendants. Other elements of plaintiffs' jurisdictional allegations were supported by public documents, such as official publications and reports of the United States Department of Justice. None of the facts raised or documents introduced by plaintiffs in any of their numerous previous memorandum have been contested or challenged by the PLO or PA. While most of these documents and exhibits may be judicially noticed, plaintiffs are resubmitting them, for the sake of thoroughness, with supporting affidavit attesting to their authenticity and origin. (Exhibits A-N)

4

Defendants did not object to or contest the veracity of any of these documents and exhibits. Moreover, defendants did not dispute the specific factual allegations made by plaintiffs, and relied upon by the Court, in support of the exercise of personal jurisdiction. Defendants opposed only the legal conclusions reached by the Court on the basis of these undisputed facts.[4]

Thus, the indisputable (and undisputed) facts adduced by plaintiffs in support of the exercise of personal jurisdiction over defendants PA and PLO have been proven by the preponderance of the evidence. The Court has already held on the basis of these factual predicates that the exercise of personal jurisdiction over defendants conforms with both the Federal Rules of Civil Procedure and constitutional due process requirements. This Court therefore has personal jurisdiction over and may enter default judgment against defendants PA and PLO.

## III.    SUBJECT-MATTER JURISDICTION

It is well settled that a court has a duty to examine its own subject-matter jurisdiction. See e.g. Mitchell v. Maurer, 293 U.S. 237, 243 (1934); Prou v. U.S., 199 F.3d 37 (1st Cir. 1999). This suit is brought under 18 U.S.C. §2333, which provides a federal cause of action for U.S. citizens harmed by an act of international terrorism, and for their estates, survivors or heirs.[5] Plaintiffs' Amended Complaint also pleads three supplemental causes of action under Israeli tort law.

---

[4] The "factual" component of defendants' personal jurisdiction pleadings consisted wholly of pro forma, conclusory statements generally disputing the status of Messrs. Rahman and Jilani as their agents, and the presence of the PA in the United States. Defendants did not contest, much less refute, any of the specific facts upon which the Court based its determination.

[5] Decedent Yaron Ungar was a U.S. citizen from the day his birth in New York, until the day of his murder. Evidence relating to Yaron Ungar's citizenship is included in the testimony and evidence presented to the Court on July 12 and 15, 2002. Plaintiffs incorporate the record, transcript, and evidence of that hearing in this motion. This action is brought by Yaron Ungar's survivors and the administrator of his estate.

This Court has already determined that plaintiffs have adequately plead causes of action under 18 U.S.C. §2333 and under their supplemental claims.[6]  The Court has also determined that plaintiffs' federal and supplemental causes of action "derive from a common nucleus of operative fact," and that the Court therefore has jurisdiction over the supplemental causes of action pursuant to 28 U.S.C. §1367.[7]  Consequently, the Court found that it has original subject-matter jurisdiction over plaintiffs' federal cause of action pursuant to 18 U.S.C. §2333, as well as supplementary jurisdiction over plaintiffs' pendant non-federal claims under 28 U.S.C. §1367.[8]  The Court may therefore enter default judgment against defendants PA and PLO.

Defendants have attempted to challenge the Court's subject-matter jurisdiction by raising claims to foreign sovereign immunity. These claims were raised in a "Motion for Leave to Assert Defenses" dated January 30, 2002 and in a "Motion for Reconsideration" dated November 20, 2002.  The Court denied defendants' sovereign immunity claims in a Decision and Order dated November 4, 2002, Ungar v. Palestinian Authority, 228 F.Supp.2d 40 (D.R.I. 2002), and again in an Order dated April 22, 2003.

Defendants PA and PLO filed a Notice of Appeal of this Court's decisions of November 4, 2002 and April 22, 2003.  Defendants also moved the Court of Appeals for a stay pending appeal.  Plaintiffs opposed defendants' motion for a stay, and filed a Motion for Summary Disposition requesting that the Court of Appeals either summarily dismiss defendants' appeal or summarily affirm the decisions that were the subject of defendants' appeal.

---

[6] Ungar I at 97; Ungar II at 47-48.

[7] Ungar I at 86; Ungar II at 48.

[8] Id.

On May 27, 2003, the Court of Appeals granted plaintiffs' motion, and summarily affirmed the Decision and Order of November 4, 2002 and the Order dated April 22, 2003, denying defendants' sovereign immunity claims.  Efrat Ungar et al. v. The Palestinian Liberation Organization et al., No. 03-1544  (1st Cir. May 27, 2003).

The Court's subject-matter jurisdiction is therefore incontrovertible.

## IV.   EVIDENCE OF DAMAGES

Fed.R.Civ.P. 55(b) provides that when entering judgment by default for relief other than a sum certain, *"the court may conduct such hearings or order such references as it deems necessary and proper . . . "* in order to determine plaintiffs' quantum of damages.

The Court is granted broad discretion in deciding the type of evidence necessary to compute damages, and whether a damages hearing is required.  KPS & Associates v. Designs by FMC, 318 F.3d 1, 21 (1st Cir. 2003) ("In limited circumstances we have permitted district courts to dispense with a Rule 55(b)(2) hearing, even in the face of apparently unliquidated claims."); Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 64 (1st Cir. 2002) ("Rule 55 grant[s] wide discretion to the district court . . . Discretion as to the judgment or the need for a hearing on damages is vested with the district court."); Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993) (affirming a finding of damages following entry of default in tort action, made on basis of plaintiff's unchallenged testimony).

Specifically, in appropriate circumstances, the district court may make its determination of damages without holding a further hearing, on the basis of evidence already in the record.  KPS & Associates v. Designs by FMC, 318 F.3d 1, 21 (1st Cir. 2003) (citing as examples HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 919 (1st Cir. 1988); Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991); Dundee Cement Co. v. Howard

7

Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983)). The record before the Court already contains full and complete evidence of plaintiffs' damages. On July 12 and 15, 2002, Magistrate Judge David L. Martin heard sworn testimony and received evidence relating to plaintiffs' damages, in the context of plaintiffs' pending motion for judgment by default against the Hamas defendants. The testimony and evidence already presented by plaintiffs on July 12 and 15, 2002, is identical to the testimony and evidence that plaintiffs would present in any future damages hearing.[9] Therefore, a further damages hearing would be a massive waste of judicial resources, and would needlessly force the plaintiffs to relive and reiterate the emotionally excruciating testimony previously given by them. Therefore, the plaintiffs incorporate in this motion transcripts of the testimony and copies of the evidence and exhibits presented to the Court during the hearing on July 12 and 15, 2002.

Defendants PA and PLO had prior notice of the damages hearing on July 12 and 15, 2002, and a full opportunity to cross-examine plaintiffs and their witnesses and to challenge the evidence presented. They were provided advanced copies of exhibits. Indeed, defendants PA and PLO attempted to stop the hearing precisely because they did not want the testimony and evidence introduced at the hearing to be used to establish a damage award against them in the future. "*It is unclear and of concern to the PA and PLO whether an immediate assessment of damages against a defaulting HAMAS defendant would be binding in any way on the PA and PLO in the event they are held liable at a later stage of this action.*" Memorandum in Support of Palestinian Defendants' Objection to Entry of Default Judgment dated July 10, 2002, p. 3. [10]

---

[9] Except in respect to attorneys fees, as explained below.

[10] Defendants' motion was denied as untimely by Magistrate Judge Martin.

Yet, though defendants were fully cognizant that the testimony and evidence presented on July 12 and 15, 2002, might be used to assess damages against them in the future, counsel for defendants appeared at the damages hearing, read a prepared statement, requested to be excused, and left the hearing without cross-examining plaintiffs' witness. See Tr. July 12, 2002, p. 3 ("*As your Honor indicated in the telephone conference that we had yesterday with all counsel, it is the option of the Palestinian defendants not to participate in the hearing. Accordingly, we do not intend to participate.*"). Moreover, defendants' counsel left the hearing after counsel for plaintiffs made clear that, in the opinion of plaintiffs, the evidence and testimony introduced in the hearing would have a binding effect on defendants PA and PLO. Id. p. 17.

Thus, defendants had prior notice of the hearing, were fully aware that the evidence and testimony introduced could be used in the future to establish a damage award against them, and were represented by counsel at the hearing. Defendants nonetheless elected not to cross-examine plaintiffs' testimony or challenge their evidence.

Therefore, the Court may and should enter default judgment on the basis of the testimony and evidence introduced during the hearing on July 12 and 15, 2002.

## V.    QUANTUM OF DAMAGES

In support of their pending Motion for Judgment by Default against Hamas defendants, plaintiffs filed a "Damages Memorandum" that analyzes in great detail, on the basis of the text of the statute and its legislative intent and history, the scope and type of damages and remedies mandated under 18 U.S.C. §2333. (Exhibit O)

Plaintiffs also filed, subsequent to the damages hearing on July 12 and 15, 2002, a "Proposed Findings of Fact and Conclusions of Law" that summarizes the testimony and evidence presented regarding plaintiffs' damages, and describes their actual quantum of damages.

(Exhibit P)  Plaintiffs' incorporate their "Damages Memorandum" and "Proposed Findings of Fact and Conclusions of Law" into this motion and request that the Court enter judgment by default against defendants PA and PLO for damages in the amounts stated therein.

## VI.    CONCLUSION

For the reasons stated above, the Court should enter judgment by default against defendants PA and PLO pursuant to Fed.R.Civ.P. 55(b)(2) for damages in the amounts referenced and described in Section V above.

Plaintiffs, by their Attorneys,

David J. Strachman #4404
McIntyre, Tate, Lynch & Holt
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095  (fax)

Ungar/Motions/Memo for Default Judgment 5-29-03

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


THE ESTATE OF YARON UNGAR, et al.

        v.                                   C.A. No.: 00-105L

THE PALESTINIAN AUTHORITY, et al.


AFFIDAVIT OF DAVID J. STRACHMAN


    I, David J. Strachman, affirm and declare:

    The attached documents, Exhibits B through N, are true and accurate copies of originals obtained by counsel as indicated:

B.    Curriculum vitae of Hasan Abdel Rahman, Chief Representative of the PLO and the Palestinian Authority in the United States. This document, prepared by Mr. Rahman, indicates that he is the Chief Representative of both the PLO and the Palestinian Authority in the United States. This document was obtained directly from Mr. Rahman's office by a public relations agency and provided to plaintiffs' counsel.

C.    New York Times article of October 16, 2000. This article contains Mr. Rahman's admissions and indicates his role as "representative of the Palestine Liberation Organization and Palestinian National Authority," and that he employs nine staff members in his Washington office. This document was obtained by plaintiffs' counsel from the New York Times website archive.

D.    Washington Post website of Thursday, October 12, 2000. This document is a transcript of an online live chat with Mr. Rahman and was obtained by plaintiffs' counsel from the Washington Post website archive.

E.    Reports of the Attorney General to Congress of the United States on the Administration of Foreign Agents Registration Act of 1938, as amended, for the six months ending June 26, 1999, October 31, 1999, September 30, 2001 and April 28, 2002. These documents indicate that both the Palestine Liberation Organization and Palestinian Authority have had a fully staffed Washington office for many years, spend hundreds of thousands of dollars per annum in the United States, and retain counsel and a public relations firm in the U.S. For example, for the six-month period ending March 31, 1999, the office expended $200,132.74 on

activities ranging from conducting interviews, giving lectures, and contacting the media. See Report of the Attorney General to the Congress of the United States on the Administration of the Foreign Agents Registration Act of 1938, as amended, for the Six Months Ending June 30, 1999, available at http://www.doj.gov/ criminal/fara/faralst99/COUNTRY/PALESTIN.HTM.  These documents were obtained by counsel from the Department of Justice website, www.doj.gov/criminal/fara.

F.      Washington Post article of Thursday, January 20, 2000.  This article is a profile of and contains admissions from Edward B. Abington of the public relations and lobbying firm of Bannerman & Associates, an agent of the PLO and PA.  It indicates that PA and PLO activities in the United States include advocacy training and developing a public relations campaign. The three year budget for these activities was $2.25 million. This article was obtained by plaintiffs' counsel from the Washington Post's website archive.

G.      Forward article, January 2000. This article provides information about and admissions from Edward B. Abington, PLO and PA agent in the United States. This article was obtained by plaintiffs' counsel from the Forward website archive.

H.      Int'l Techs. Integration, Inc. v. Palestine Liberation Organization, 66 F.Supp. 2d 3 (D.D.C. 1999).  This decision details some of the commercial activities of the PLO and PA in the United States.

I.      Int'l Techs. Integration, Inc. v. Palestine Liberation Organization, 98-00756 (CKK) order of July 2, 1999.  This order reveals that the PA and the PLO maintain several bank accounts in New York at three U.S. banks with deposits totaling approximately $18 million dollars.  This document is a true and accurate copy of the original order filed in the U.S. District Court for the District of Columbia.

J.      Affidavits of Norfork County Deputy Sheriff Peter J. Morin.  This proof of service on the PA and PLO indicates service was made in Brookline, Massachusetts.

K.      Affidavit of Process Server Freeman R. Woodbury.  This proof of service on Mr. Rahman on behalf of the PA and PLO indicates that service was made in Washington, DC.

L.      Declaration of Mr. Marwan Jilani. This declaration indicates that he acknowledges participating in political and public relations activities on behalf the PLO and PA in the United States and that both maintain an office in New York. This document was provided to the Court by defendants' counsel.

M.     Declaration of Hasan Abdel Rahman. The declaration of Mr. Rahman establishes that he is the Chief Representative of the PLO in the United States. This document was provided to the Court by defendants' counsel.

N.     Short Form Listing of Registrant's Foreign Agents.  This document proves that Mr. Rahman is one of three registered agents of the PLO in the United States. This document was obtained by plaintiffs' counsel from the Department of Justice Website. ("Short Form Listing of Registrant's Foreign Agents", available at http://www.usdoj.gov/criminal/fara/faralst99/SHRTFORM/ SHRTFORM.HTM).

_____
David J. Strachman

STATE OF RHODE ISLAND
PROVIDENCE, SC.

Subscribed and affirmed to before me in Providence on the ____30____ day of May, 2003.

_____
Notary Public

My Commission Expires _____10/10/04_____

3