UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.

vs.                                        C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.

<u>PLAINTIFFS' FIRST SET OF INTERROGATORIES PROPOUNDED
TO DEFENDANT, THE PALESTINIAN AUTHORITY</u>

Your attention is respectfully directed to Fed. R. Civ. P. 33 which requires you to furnish "Such information as is available to the party." Therefore, kindly make inquiry to and/or reference to such documents, business associates, employees, agents and/or servants as will enable you to answer these interrogatories fully and accurately.

Interrogating party requires that within thirty (30) days after service of these written interrogatories, interrogated party shall answer, under oath, the following questions. If affiant cannot answer the following interrogatories in full and complete detail after exercising due diligence to secure the information to do so; so state and answer to the extent possible, specifying affiant's inability to answer the remainder and stating whatever information or knowledge affiant has concerning the unanswered portion.

If any question is objected to on any grounds, state such grounds completely and if said question is only partially objectionable, answer the remainder of the question as fully as above; where knowledge or information in possession of a party is requested, such a request includes knowledge of the parties, agents, representatives, and unless privileged, attorney of interrogated party.

In addition to answering the information called for in each interrogatory, provide the following information separately with respect to each interrogatory answer: (a) the name of each person providing the information upon which the answer is based if different from affiant; (b) identify each document in answering the interrogatory or upon which the interrogatory answer is based. When identifying a document, in addition to the specific means of identification requested in the interrogatory, the following information shall also be furnished: (1) the author and identity of the person who prepared the document; (2) if published, its date of publication; (3) a summary of its contents; (4) its publisher, if any; (5) if not a publication, each person to whom copies were sent, delivered, given and/or disclosed; (6) its present location, and custodian or person who has possession or control over the document.

The word "account" as used herein means any checking, savings, investment, and/or deposit account of any nature and kind in any bank, brokerage or financial institution.

The word "Palestinian Authority" means The Palestinian Authority, Palestine National Authority, Palestinian Interim Self-Government Authority, Palestinian Legislative Counsel, General Intelligence Services, Preventative Security Services, Palestinian Police, Palestinian National Fund, Department of Finance, Palestine Monetary Fund, Joint Investment Fund, Palestinian National Authority Pension Fund, P.E.C.D.A.R., P.C.S.C., P.A., SAMED, Palestine Monetary Authority, P.M.A., Investment Department, and any agency, instrumentality, and/or subdivision of same.

The word "HAMAS" refers to the Islamic Resistance Movement (a.k.a. "Harakat Al-Muqawama Al Islamiyya") including the Dawa and military wing.

The word "support" refers to cash, any grant, benefit, gift, gratuity, loan, scholarship, mortgage, honorarium, award, prize, and anything of material value.

The interrogatories are as follows:

1.      Please state your name, address, social security number and/or identification number, position with defendant, Palestinian Authority, length of service, and the name of each individual (other than counsel) you consulted or obtained information from in answering this set of interrogatories.

2.      Please describe any actions taken by the Palestinian Authority to investigate and arrest individuals responsible for the murder of the Ungars with reference to:

    a.      which person(s) and/or agency(ies) were responsible for investigating the Ungar murder;
    b.      the results of any investigation;
    c.      whether the  investigation results were reduced to a written report;
    d.      the custodian of said report;
    e.      whether the Palestinian Authority received any information and assistance from the United States or the Israeli Police or other agency regarding the murder.

3.      Please state the names of all Palestinian Authority officials, police officers, security service agents, employees, prosecutors or investigators who took any investigative measures, conducted interviews or any interrogations, made any inquiries, gathered any evidence, conducted any forensic examinations, carried out any research or maintain any files or data bases concerning the investigation of the murder of Yaron and Effi Ungar.

4.      Please state the names of all suspects, witnesses, informants or residents of the Palestinian Authority who have been summoned, detained, questioned, investigated, canvassed, had their movements, phones or mail monitored, were ordered by any court or any government agency to appear, or who are sought by law enforcement officials either in the Palestinian Authority, in Israel or abroad in connection with the murder of Yaron and Effi Ungar or who are believed to have evidence and/or information, either material and/or circumstantial concerning these murders.

5.      Please state the names, dates and the circumstances of the detention, arrest or imprisonment of all individuals by the Palestinian Authority for carrying out terror attacks against American and/or Israeli citizens.

6.      Please state the names and locations of the facilities at which HAMAS members were quartered, interned or detained by the Palestinian Authority.

7.      Regarding Abdel Rahman Ismail Abdel Rahman Ghanimat, Jamal Abdel Fatah Tzabich Al Hor, Raed Fakhri Abu Hamdiya, Ibrahim Ghanimat, and Iman Mahmud Hassan Fuad Kafishe, please state all communication by the Palestinian Authority officials and agents concerning:

    a.      preparation and planning for the murder of Yaron and Efrat Ungar;
    b.      evading Israeli authorities following the murder of Yaron and Efrat Ungar;
    c.      the details of the communication.

8.      Please state all assistance provided by the Palestinian Authority to Abdel Rahman Ismail Abdel Rahman Ghanimat, Jamal Abdel Fatah Tzabich Al Hor, Raed Fakhri Abu Hamdiya, Ibrahim Ghanimat, and Iman Mahmud Hassan Fuad Kafishe:

    a.      prior to June 9, 1996;
    b.      subsequent to June 9, 1996.

9.      Regarding all meetings between Mohammed Dahlan and Mohammed Dief, please state:

    a.      date of meetings;
    b.      location;
    c.      nature of discussion and topic.

10.      Please fully describe the relationship between the Palestinian Authority and the newspaper Al-Hayat Al-Jadida with reference to:

    a.      whether, and to what extent, the Palestinian Authority provides financial support;
    b.      the nature and level of control exercised by the Palestinian Authority over Al-Hayat Al-Jadida;
    c.      whether any editor, publisher, staff member, or employee of Al-Hayat Al-Jadida is or has been an employee of the Palestinian Authority.

11.      Please state the names of all employees of Al-Hayat Al-Jadida that have been paid by the Palestinian Authority since 1993, including:

    a.      job title;

      b.     salary;

      c.     dates of employment.

12.     Please fully describe the relationship between the Palestinian Authority and the Voice of Palestine radio network with reference to:

      a.     whether and to what extent the Palestinian Authority provides financial support;

      b.     the level of control exercised by the Palestinian Authority over the Voice of Palestine;

      c.     whether any editor, writer, news presenter, program host, reporter, disc jockey, tape editor, on-air personality, radio technicians or salesman is or has been an employee of the Palestinian Authority;

      d.     whether the Palestinian Authority exercises control over the Voice of Palestine's productions and broadcasts.

13.     Please fully describe the relationship between the Palestinian Authority and the Palestinian Television (Palestine TV) network with reference to:

      a.     whether and to what extent the Palestinian Authority provides financial support;

      b.     the level of control exercised by the Palestinian Authority over the Palestine TV;

      c.     whether any editor, writer, news presenter, program host, reporter, weather person, tape editor, on-air personality, radio technicians,  or salesperson is or has been an employee of the Palestinian Authority;

      d.     whether the Palestinian Authority exercises control over Palestine TV's productions and broadcasts.

14.     Please state the name of all bureaus, sections, and agencies charged with the responsibility of providing support to individuals and/or their families who are killed, arrested, detained, or imprisoned by Israel or other nations in the course of their armed struggle, acts of defense, attempts at martyrdom or terror attacks against Israel.

15.     From 1993 to the present, please state all support paid by the Palestinian Authority to persons, or to the families of persons, who were captured or killed while carrying out, or while attempting to carry out, activities on behalf of HAMAS or any other Palestinian organization.

16.     Please describe the specific nature, amounts and duration of the support given to the individuals, their widows, children, parents, sibling or other family members.

17.     Please state the names and positions of the individuals, officials, board members, and staff who decide, choose, analyze, investigate or select appropriate individuals or families to receive support.

18.    Please state the criteria, standards and considerations employed by the above individuals, officials, board members, and staff in making their decisions, choices, analysis, investigations, selections and determinations concerning who are appropriate individuals or families to receive support.

19.    Please state the names and circumstances of all individuals or family members receiving such support, including but not limited to any of the defendants in the instant action, stating for each the amount of support received.

20.    Please state the names, circumstances, and amount provided to all HAMAS members or their family members receiving such support.

21.    Please state the exact legal status of HAMAS (a.k.a. "Harakat Al-Muqawama Al Islamiyya") in the Palestinian Authority, including but not limited to the following:

    a.    whether HAMAS is and has ever been a licensed or registered organization in the Palestinian Authority;

    b.    the name of any agency or subdivision of the Palestinian Authority granting any license to HAMAS;

    c.    the type of support HAMAS receives from the Palestinian Authority;

    d.    whether the Palestinian Authority provides HAMAS with facilities of any type ;

    e.    whether HAMAS operates freely;

    f.    whether HAMAS is an illegal organization.

22.    Please state the exact address of all HAMAS offices, facilities and institutions in areas within Palestinian Authority territory, rule and/or control.

23.    Please state the exact amounts and locations of all HAMAS accounts and other assets held by or in any bank, financial institution, subsidiary or agency owned or controlled by the Palestinian Authority.

24.    Please identify and describe all agreements entered between the Palestinian Authority and HAMAS, stating :

    a.    date of the agreement;

    b.    the individuals and official bodies who approved the agreement;

    c.    the name, rank and position of the individual who executed the agreement;

    d.    the sum and substance of the agreement.

25.    Concerning the meeting between Salim Al-Za'nun and Khalid Mash'al in Cairo on December 18 through 21, 1995, please state:

a.    the nature and extent of the discussion between the Palestinian Authority and HAMAS representatives;

b.    the terms of any agreement between the parties;

c.    whether a joint committee was formed subsequent to the Cairo meetings.

26.    Concerning the August 1997 National Unity Conference to Confront the Challenge held in Gaza by the Palestinian Authority, please state:

a.    the extent of HAMAS participation in the conference;

b.    whether HAMAS was invited by the Palestinian Authority;

c.    whether HAMAS members and/or representatives attended the conference.

27.    Please describe the meeting of March 9, 1997 between Yasser Arafat and HAMAS leaders in Gaza detailing:

a.    the time and exact location of the meeting;

b.    the individuals present;

c.    the sum and substance of the discussion;

d.    who initiated the meeting and the reason the meeting was requested.

28.    Please describe in detail all meetings between officials and/or employees of the Palestinian Authority in Sudan and HAMAS operative Mahmoud al-Hindi detailing:

a.    the time and exact location of the meeting;

b.    the individuals present;

c.    the sum and substance of the discussion;

d.    who initiated the meeting and the reason the meeting was requested.

29.    Please describe in detail all material and/or financial support provided by officials and/or employees of the Palestinian Authority in Sudan to HAMAS operative Mahmoud al-Hindi.

30.    For each international conference, assembly, congress, gathering, seminar and meeting in which representatives and/or delegations from the Palestinian Authority have included members of HAMAS, state:

a.    date and location;

b.    the names of all HAMAS members who participated as members of an official Palestinian Authority delegation.

31.    From 1993 to the present, please describe the purpose, substance and nature of each and every meeting and /or official conversation between any official, employee and/or agent of the Palestinian Authority and any official or leader of HAMAS.

32.     From 1993 to the present, please describe in detail all material support, assistance or resources of whatever nature and kind provided by the Palestinian Authority to HAMAS and HAMAS officials, operatives and leaders.

33.     For each current and former HAMAS operative and/or member employed by the Palestinian Authority since 1993, please state:

       a.     name and address;
       b.     occupation, rank/position;
       c.     length of service;
       d.     agency of Palestinian Authority of employment;
       e.     salary and benefits;
       f.     reason for termination;
       g.     nature, type and extent of training provided;
       h.     whether said individual was issued and/or permitted to carry a firearm and, if so:
            i.     type of weapon;
            ii.     reason for issuance and/or permission.

34.     For each request of the United States government made to the Palestinian Authority to take actions against HAMAS from 1993 to the present, please state:

       a.     date of the request;
       b.     name and title/position of person making the request;
       c.     exact description of the request;
       d.     method of request (if written, identify the document);
       e.     response of the Palestinian Authority.

35.     For each request of the Israeli Government made to the Palestinian Authority to take action against HAMAS from 1993 to the present, please state:

       a.     date of the request;
       b.     name and title/position of person making the request;
       c.     exact description of the request;
       d.     method of request (if written, identify the document);
       e.     response of the Palestinian Authority.

36.     For each request made by the Israeli Government to the Palestinian Authority to surrender for prosecution a HAMAS member, please state:

       a.     name of the HAMAS member;
       b.     date of Israeli request;
       c.     the offense for which the HAMAS member was sought;
       d.     action taken by the Palestinian Authority;
       e.     current whereabouts of the HAMAS member.

37.    For the requests made by the U.S. and Israeli governments to the Palestinian
Authority to arrest and imprison HAMAS commander Salah Talachmeh (aka Nasser Salah
Talachmeh) please state:

    a.    dates of American requests;

    b.    dates of Israeli requests;

    c.    the allegations and/or charges against Salah Talachmeh cited in the
American and Israeli requests;

    d.    action taken by the Palestinian Authority against Salah Talachmeh;

    e.    current whereabouts of Salah Talachmeh.

    f.    the dates on, and locations at which, Salah Talachmeh was questioned,
detained, interned or quartered by the Palestinian Authority, and the names
of the persons who questioned him.

    g.    The sum and substance of any questions posed to Salah Talachmeh by the
Palestinian Authority and of Salah Talachmeh's answers to those
questions.

    h.    the dates on which Salah Talachmeh left and entered any internment or
detention facility or barracks operated by the Palestinian Authority.

    i.    The names of all persons who visited and/or met with Salah Talachmeh in
any internment or detention facility or barracks operated by the Palestinian
Authority, and the dates of those visits.

    j.    The names of all persons who were interned and/or quartered and/or
detained and/or in custody concurrently with Salah Talachmeh in any
internment or detention facility or barracks operated by the Palestinian
Authority.

    k.    The names of all personnel who operated and were employed at any
facility or barracks operated by the Palestinian Authority in which Salah
Talachmeh was interned, quartered or detained.

    l.    Dates of all conversations between Salah Talachmeh and any other person
monitored and/or recorded by the Palestinian Authority, and the sum and
substance of those conversations.

    m.    Dates of all conversations between Salah Talachmeh and any other
HAMAS operative, including but not limited to Abdel Rahman Ghanimat,
monitored and/or recorded by the Palestinian Authority, and the sum and
substance of those conversations.

38.    For the requests made by the U.S. and Israeli governments to the Palestinian
Authority to arrest and imprison HAMAS operative Ibrahim Ghanimat please state:

    a.    dates of American requests;

    b.    dates of Israeli requests;

    c.    the allegations and/or charges against Ibrahim Ghanimat cited in the
American and Israeli requests;

d.    action taken by the Palestinian Authority against Ibrahim Ghanimat;

e.    current whereabouts of Ibrahim Ghanimat.

f.    the dates on, and locations at which, Ibrahim Ghanimat was questioned, detained, interned or quartered by the Palestinian Authority, and the names of the persons who questioned him.

g.    The sum and substance of any questions posed to Ibrahim Ghanimat by the Palestinian Authority and of Ibrahim Ghanimat's answers to those questions.

h.    the dates on which Ibrahim Ghanimat left and entered any internment or detention facility or barracks operated by the Palestinian Authority.

i.    The names of all persons who visited and/or met with Ibrahim Ghanimat in any internment or detention facility or barracks operated by the Palestinian Authority, and the dates of those visits.

j.    The names of all persons who were interned and/or quartered and/or detained and/or in custody concurrently with Ibrahim Ghanimat in any internment or detention facility or barracks operated by the Palestinian Authority.

k.    The names of all personnel who operated and were employed at any facility or barracks operated by the Palestinian Authority in which Ibrahim Ghanimat was interned, quartered or detained.

39.    Please list the name of all Palestinian Authority police and/or security officers who are members of HAMAS and/or Islamic Jihad, stating for each:

a.    name;

b.    agency of employee;

c.    rank/position;

d.    date of employment;

e.    salary;

f.    the type, make and number of firearms or other weapons issued to each such person by the Palestinian Authority;

g.    the nature and type of training provided by the Palestinian Authority to each such person.

40.    Please state whether Hamed Bitawa was appointed to an official position in the Palestinian Authority, if so, please state:

a.    who recommended the appointment;

b.    who approved the appointment;

c.    whether it was known by the appointing authority or individual that he was a leader of HAMAS;

d.    the title and nature of the position, and the period of time in which he served in that capacity;

e.    the salary and benefits provided to him.

41.    Please state whether Talal Sidr was appointed to an official position in the Palestinian Authority and, if so, please state:

     a.    who in the Palestinian Authority was responsible for the appointment;
     b.    who approved the appointment;
     c.    whether it was known by the appointing authority or individual that he was a leader of HAMAS;
     d.    the title and nature of the position, and the period of time in which he served in that capacity;
     e.    the salary and benefits provided to him.

42.    Please state whether Imad Falooji was appointed to an official position in the Palestinian Authority and, if so, please state:

     a.    who in the Palestinian Authority was responsible for the appointment;
     b.    who approved the appointment;
     c.    whether it was known by the appointing authority or individual that he was a member of HAMAS;
     d.    the title and nature of the position, and the period of time in which he served in that capacity;
     e.    the salary and benefits provided to him.

43.    Please state the name of all HAMAS members who have served in Palestinian Authority governing bodies, indicating:

     a.    the individual's position/title/rank within HAMAS;
     b.    length of service in HAMAS;
     c.    the individual's position/title/rank in the Palestinian Authority;
     d.    length of service in the Palestinian Authority.

44.    Please state the name of all HAMAS members employed since 1993 in any Palestinian security, police, intelligence or paramilitary force, stating for each:

     a.    name and address;
     b.    the position, rank and length of service of each such person;
     c.    compensation (salary, benefits, etc.);
     d.    the type, make and number of firearms or other weapons issued to each such person by the Palestinian Authority;
     e.    the nature and type of training provided by the Palestinian Authority to each such person.

45.    Since, 1993, please state whether any Palestinian Authority official and/or employee urged and/or requested HAMAS operatives and/or members to leave the West Bank or Gaza Strip in order to avoid arrest, stating:

        a.     when each request was made;

        b.     name of the requesting individual;

        c.     individual to whom the request was made.

46.    For the following individuals, Imad Abbas, Abd al-Khader Amar, Raid Bashiti, Adnan al-Gol (a.k.a. Adnan al-Rol), Atef Hamadan, Bassam Issa, Sufian Abu Jadian, Kamal Khalifa, Yasser Yusef Khasin, Salaam Abu Maarouf, Yusuf Malhi, Mahmad A. Sanwar, Abd al-Fatah Sitri, Osama Abu Taha, Imad Falooji, and Sheikh Talal Sidr, please state:

        a.     whether he was ever a member of HAMAS;

        b.     whether he was ever an employee of the Palestinian Authority and, if so,

            1.     in what capacity (i.e. job position and title);

            2.     dates of employment;

            3.     salary and benefits;

            4.     whether he is currently employed with the Palestinian Authority;

            5.     the name of the agency, division, office or department in which he is employed;

            6.     the type, make and number of firearms or other weapons issued to said individual by the Palestinian Authority;

            7.     the nature and type of training provided by the Palestinian Authority to each such person.

47.    Describe in detail all assistance provided by the Palestinian Authority to Nasser Salah Talachmeh (a.k.a. Salah Talachmeh), Abdel Rahman Ismail Abdel Rahman Ghanimat, Jamal Abdel Fatah Tzabich Al Hor, Raed Fakhri Abu Hamdiya, Ibrahim Ghanimat and Iman Mahmud Hassan Fuad Kafishe, including but not limited to means of transportation, false identity documents, shelter, and safe haven and refuge.

48.    For each HAMAS operative and/or member interned and/or imprisoned by the Palestinian Authority from 1993 to the present, please state:

        a.     name;

        b.     nature of offense/charge;

        c.     disposition and prison sentence;

        d.     date of internment/imprisonment;

        e.     date of release;

        f.     reason for release;

        g.     whether the prisoner was released prior to the completion of the sentence imposed.

49.    Concerning Adnan Jaber Ghul and Muhammed Deif, please state:

        a.     whether they are members of HAMAS;

        b.     the date(s) the Palestinian Authority incarcerated them;

        c.     the reason for each incarceration;

d.      the date(s) each was released from incarceration;

e.      the reason for each release;

f.      whether the release was prior to the expiration of a prison sentence.

50.      Please state whether on or about March 10, 1997 Ibrahim Maqadmah was released from a Palestinian Authority prison and, if so, please state:

a.      whether he is a member of HAMAS;

b.      the date(s) the Palestinian Authority incarcerated him;

c.      the reason for his incarceration;

d.      the date(s) he was released from incarceration;

e.      the reason for his release;

f.      whether his release was prior to the expiration of a prison sentence.

51.      For each of the following individuals, Nabil Sharihi, Nafez Sabih, Abdel Magid Dudin, please state:

a.      whether they are members of HAMAS;

b.      the date(s) the Palestinian Authority incarcerated them;

c.      the reason for each incarceration;

d.      the date(s) each was released from incarceration;

e.      the reason for each release;

f.      whether the release was prior to the expiration of a prison sentence.

52.      For each of the following entities: Palestine National Authority, Palestinian Interim Self-Government Authority, Palestinian Legislative Counsel, General Intelligence Services, Preventative Security Services, Palestinian Police, Palestinian National Fund, Department of Finance, Palestine Monetary Fund, Joint Investment Fund, Palestinian National Authority Pension Fund, P.E.C.D.A.R., P.C.S.C., P.A., SAMED, Palestine Monetary Authority, P.M.A., Investment Department, please state:

a.      legal relationship to the Palestinian Authority;

b.      legal relationship to Palestinian Liberation Organization;

c.      method and level of control exercised by the Palestinian Authority over each organization;

d.      method and level of control exercised by the Palestinian Liberation Organization over each organization.

53.      Please state the names, dates, and circumstances of any indictment and prosecution of any individual by the Palestinian Authority for carrying out terrorist attacks.

54.      Please state the names of all courts, tribunals, assizes, councils, forums or administrative bodies that have conducted trials, prosecutions, hearings or disciplinary

proceedings on behalf of the Palestinian Authority, its law enforcement branches or its agencies, of any individuals for carrying out terror attacks against the State of Israel or Israeli citizens.

55.     Please describe fully the disposition, sentence, verdict, resolution, plea agreement or judicial outcome of any trial, prosecution, hearing or disciplinary proceedings conducted by the Palestinian Authority, its law enforcement branches or its agencies of any individual for carrying out terrorist activities against the State of Israel or Israeli citizens.

56.     Please describe the process that imprisoned, detained or sentenced individuals in the Palestinian Authority's penal facilities undertake in order to gain parole, clemency, pardons, sentence reduction or early release from incarceration.

57.     Please describe the body, agency, bureau or individuals that review, determine, recommend, grant or deny such requests for non-judicial release from incarceration.

58.     Please state the criteria employed by any body, agency, bureau or individual referred to in the previous answer, in analyzing and deciding upon such requests for non-judicial release from incarceration.

59.     Please state the names of and dates that all individuals sentenced and imprisoned by the Palestinian Authority for terrorist attacks against Israel or Israeli citizens who have been granted parole, clemency, pardons, sentence reduction or early release.

60.     For each account in the United States under the control and/or direction of the Palestinian Authority, one of its instrumentalities, agencies, and/or subdivisions, please state:

    a.     the exact name and address of each bank, depository and/or investment firm;
    b.     The balance in those accounts as of the date of the service of the summons in this action;
    c.     the current balance;
    d.     if there is any difference between your answers to (b) and (c) above, specify when the withdrawals were made, who received the benefit of the withdrawal, and where the proceeds of the withdrawals went;
    e.     the exact name and address in which each account is registered, account numbers, and the present location and custodian of the deposit books, check registers, statements and/or certificates;
    f.     if the account is registered in an entity other than the Palestinian Authority, state the exact relationship between the Palestinian Authority and the entity.

61.     Regarding any other asset (real estate, security, stock, bond, commodity, business enterprise, etc.) in which the Palestinian Authority, one of its instrumentalities, agencies, and/or subdivisions has an interest in the United States not disclosed in the previous interrogatory, please describe in detail:

    a.     exact nature and description of the asset;

13

      b.     location;

      c.     current value;

      d.     exact title holder.

62.    Please state each and every legal action and/or lawsuit in which the Palestinian Authority has been a party (either plaintiff or defendant) including:

      a.     name and address of plaintiff;

      b.     name and address of defendant;

      c.     name of court in which the action was filed;

      d.     file number;

      e.     nature of litigation;

      f.     outcome.

63.    Please state whether the Palestinian Authority granted a license to Hasan Salameh to carry, own and/or possess a weapon and, if so, please state:

      a.     date of issuance;

      b.     the individual and/or agency granting said license;

      c.     the reason for the issuance of said license.

64.    Please describe and identify all documents utilized in answering Plaintiffs' First Set of Interrogatories.

65.    For each witness you intend to present at trial, please state:

      a.     Their name;

      b.     Their address;

      c.     The sum and substance of their anticipated testimony,

66.    Please provide a list of all documents you intend to introduce at trial.

Plaintiffs,
By their Attorneys,

David J. Strachman #4404
McIntyre, Tate, Lynch & Holt.
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700

<u>CERTIFICATION</u>

I hereby certify that on the _24_ day of January, 2002, I mailed a true copy of the within

to:

Ramsey Clark, Esquire
Lawrence W. Schilling, Esquire
36 East 12th Street
New York, NY 10003

Deming E. Sherman
Edwards & Angell, LLP
2800 Bank Boston Plaza
Providence, RI 02903

15

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.

vs.                                                    C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.


PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
TO DEFENDANT THE PALESTINIAN AUTHORITY

Now come the plaintiffs in the above-entitled matter and pursuant to Fed. R. Civ. P. 34 hereby request defendant, the Palestinian Authority, to produce within thirty (30) days hereof the following documents to plaintiff's counsel.

The word "account" as used herein means any checking, savings, investment, deposit, brokerage account, stock, and/or bond of any nature and kind, in any bank, brokerage, or financial institution.

The word "HAMAS" refers to the Islamic Resistance Movement (a.k.a. "Harakat Al-Muqawama Al Islamiyya") including its Dawa and military wings.

The word "Palestinian Authority" means The Palestinian Authority, Palestine National Authority, Palestinian Interim Self-Government Authority, Palestinian Legislative Council, General Intelligence Services, Preventative Security Services, Palestinian Police, Palestinian National Fund, Department of Finance, Palestine Monetary Fund, Joint Investment Fund, Palestinian National Authority Pension Fund, P.E.C.D.A.R., P.C.S.C., P.A., SAMED, Palestine Monetary Authority, P.M.A., Investment Department, and any agency, instrumentality, and/or subdivision of same.

1.    All correspondence, memoranda, notes, letters, communiques, and other written exchanges between Palestinian Authority officials and HAMAS officials and members for the period 1993 to 1997.

2.    All written agreements between the Palestinian Authority and/or Palestinian Authority officials, and HAMAS and/or HAMAS officials, including but not limited to those of October 12, 1995, December 22, 1995 and subsequent agreements, modifications, amendments, and joint communiques relating thereto.

3.    All records evidencing the registration and licensing of HAMAS by the Palestinian Authority, including but not limited to all files of the Palestinian Authority voluntary organization registry, permits, licenses, and correspondence.

4.      Any and all decrees or orders issued by the Palestinian Authority outlawing, banning, or curtailing HAMAS activity.

5.      All records and documents pertaining to the provision of financial or other material assistance to persons, or to the families of persons, who were captured or killed while carrying out, or while attempting to carry out, activities on behalf of HAMAS or any other Palestinian organization.

6.      Any and all decrees, orders, directives and other documents made, issued or published by the Palestinian Authority which regulate the provision of financial or other material assistance to persons, or to the families of persons, who were captured or killed while carrying out, or while attempting to carry out, activities on behalf of HAMAS or any other Palestinian organization.

7.      Any and all records, documents, decrees, orders, directives and other documents pertaining to the operating guidelines, purposes and functions of the "Ministry of Prisoner Affairs" headed by Hisham Abdel Razeq or other persons.

8.      Any and all records and documents pertaining to budget and expenditures of the "Ministry of Prisoner Affairs" headed by Hisham Abdel Razeq or other persons, including but not limited to the criteria for the distribution of financial support, the types and amounts of support provided, and the names and addresses of individual recipients of said support.

9.      All press statements, press releases, official statements in Arabic, English, Hebrew, and French issued by Palestinian Authority Chairman Yasser Arafat from 1993 to 2000 mentioning HAMAS and/or attacks carried out by HAMAS and or operatives of HAMAS.

10.      All advertisements sponsored by the Palestinian Authority soliciting, recruiting, and/or offering financial support or payment to "martyrs."

11.      All documents utilized and/or reviewed in answering Plaintiffs' First Set of Interrogatories and First Set of Request for Admissions propounded to the Palestinian Authority.

12.      All documents the Palestinian Authority, intends to introduce at trial.

13.      The personnel files of Imad Abbas, Abd al-Khader Amar, Raid Bashiti, Adnan al-Gol [aka Adnan al-Rol], Atef Hamadan, Bassam Issa, Sufian Abu Jadian, Kamal Khalifa, Yasser Yusef Khasin, Salaam Abu Maarouf, Yusuf Malhi, Mahmad A. Sanwar, Abd al-Fatah Sitri, and Osama Abu Taha.

14.      All agreements executed between Salim Al-Za'nun and Khalid Mash'al.

15.      All records indicating the Palestinian Authority's payment of employees and/or staff of Al-Hayat Al-Jadida from 1993 to the present.

16.     All written requests made by the governments of the United States and Israel to the Palestinian Authority to act against HAMAS and/or to arrest and/or detain and/or surrender HAMAS members.

17.     All records and statements with respect to any and all accounts in the United States standing in the name of the Palestinian Authority or any agency, subdivision and instrumentality under its control in which there were any sums on deposit at any time or from time to time in the past five (5) year period.

18.     Regarding Hasan Salameh, all documents pertaining to the Palestinian Authority's grant and/or denial of a license to carry, own, and/or possess a firearm or weapon including but not limited to the application, license, and entire file.

19.     All investigative reports, witness statements, and the like pertaining to the murder of Yaron and Efrat Ungar.

20.     All documents listing HAMAS members whom the Palestinian Authority has arrested, detained, imprisoned or placed in protective custody.

21.     All documents listing all HAMAS members who have been quartered by the Palestinian Authority in barracks or facilities or any type.

22.     All documents listing the names and locations of the facilities at which HAMAS members were quartered or detained by the Palestinian Authority.

23.     Any and all documents and correspondance relating to requests made by representatives of the United States and Israeli governments to the Palestinian Authority to arrest and imprison HAMAS commander Salah Talachmeh (a.k.a. Nasser Salah Talachmeh).

24.     All records and documents relating to the custody and/or detention and/or quartering of Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) in any facility or barracks operated by the Palestinian Authority in Jericho and in any other place.

25.     All records and documents relating to the custody and/or detention and/or quartering of Ibrahim Ghanimat in any facility or barracks operated by the Palestinian Authority in Hebron and in any other place.

26.     All records and documents relating to the investigation or questioning of Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) by the Palestinian Authority.

27.     All records and documents relating to the investigation or questioning of Ibrahim Ghanimat by the Palestinian Authority.

28.     All records indicating the dates on which Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) left and entered any facility or barracks operated by the Palestinian Authority.

29.    All records indicating the persons who visited and/or met with Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) in any facility or barracks operated by the Palestinian Authority.

30.    All records indicating the persons who were quartered and/or detained and/or in custody concurrently with Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) in any facility or barracks operated by the Palestinian Authority.

31.    All records indicating the personnel who operated and were employed at any facility or barracks operated by the Palestinian Authority in which Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) was quartered or was detained.

32.    All records of conversations between Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) and Abdel Rahman Ghanimat in any facility or barracks operated by the Palestinian Authority in Jericho or elsewhere which were monitored and/or recorded by the Palestinian Authority, including but not limited to audio copies and transcripts of all recordings.

33.    All audio copies and transcripts of any recording made by the Palestinian Authority of the conversation between Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) and Abdel Rahman Ghanimat in which they planned the terrorist attack in which Yaron and Efrat Ungar were killed.

Plaintiffs,
By their Attorneys,


David J. Strachman #4404
McIntyre, Tate, Lynch & Holt
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700

4

## CERTIFICATION

I hereby certify that on the _24_ day of January, 2002, I mailed a true copy of the within

to:

Ramsey Clark, Esquire
Lawrence W. Schilling, Esquire
36 East 12th Street
New York, NY 10003

Deming E. Sherman
Edwards & Angell, LLP
2800 Bank Boston Plaza
Providence, RI 02903

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.

vs.                                                      C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.

PLAINTIFFS' FIRST SET OF REQUEST FOR ADMISSIONS
PROPOUNDED TO THE PALESTINIAN AUTHORITY

        Now come the plaintiffs and request that the defendant, the Palestinian Authority, admit to the truth of the matters set forth herein.  Each of the matters of which an admission is requested shall be deemed admitted unless within thirty (30) days after service hereof the defendant, the Palestinian Authority, shall serve upon the plaintiff a denial or objection in accordance with Fed. R. Civ. P. 36.  Where requests have subparts, please respond to each individually.

        The word "HAMAS" refers to Islamic Resistance Movement (a.k.a. "Harakat Al-Muqawama Al Islamiyya") including its Dawa and military wing.

        The word "Palestinian Authority" means The Palestinian Authority, Palestine National Authority, Palestinian Interim Self-Government Authority, Palestinian Legislative Counsel, General Intelligence Services, Preventative Security Services, Palestinian Police, Palestinian National Fund, Department of Finance, Palestine Monetary Fund, Joint Investment Fund, Palestinian National Authority Pension Fund, P.E.C.D.A.R., P.C.S.C., P.A., SAMED, Palestine Monetary Authority, P.M.A., Investment Department, and any agency, instrumentality, and/or subdivision of same.

        1.      Imad Abbas has been employed by the Palestinian Authority.

        2.      Imad Abbas was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

        3.      Abd al-Khader Amar has been employed by the Palestinian Authority.

        4.      Abd al-Khader Amar was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

        5.      Raid Bashiti has been employed by the Palestinian Authority.

        6.      Raid Bashiti was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

7.   Adnan al-Gol has been employed by the Palestinian Authority.

8.   Adnan al-Gol was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

9.   Atef Hamadan has been employed by the Palestinian Authority.

10.   Atef Hamadan was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

11.   Bassam Issa has been employed by the Palestinian Authority.

12.   Bassam Issa was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

13.   Sufian Abu Jadian has been employed by the Palestinian Authority.

14.   Sufian Abu Jadian was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

15.   Kamal Khalifa has been employed by the Palestinian Authority.

16.   Kamal Khalifa was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

17.   Yasser Yusef Khasin has been employed by the Palestinian Authority.

18.   Yasser Yusef Khasin was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

19.   Salaam Abu Maarouf has been employed by the Palestinian Authority.

20.   Salaam Abu Maarouf was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

21.   Yusuf Malhi has been employed by the Palestinian Authority.

22.   Yusuf Malhi was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

23.   Mahmad A. Sanwar has been employed by the Palestinian Authority.

24.   Mahmad A. Sanwar was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

25.    Abd al-Fatah Sitri has been employed by the Palestinian Authority.

26.    Abd al-Fatah Sitri was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

27.    Osama Abu Taha has been employed by the Palestinian Authority.

28.    Osama Abu Taha was a member of HAMAS and simultaneously an employee of the Palestinian Authority.

29.    The Palestinian Authority and HAMAS reached a series of mutual cooperation agreements and/or joint communications, on:

a.    October 12, 1995;
b.    December 22, 1995.

30.    The Palestinian Authority and HAMAS entered an agreement in October 1995 to, inter alia, "fortify the positive relationship between all political forces."

31.    The Palestinian Authority entered an agreement with HAMAS in October 1995 which, inter alia, affirmed their "mutual respect in avoiding all forms of accusation."

32.    The Palestinian Authority entered an agreement with HAMAS in October 1995 in which the Palestinian Authority "recognizes that HAMAS is a valiant national movement which has participated in the national Palestinian struggle and has the right to legitimately exist and operate without any hindrances or harassments."

33.    The Palestinian Authority entered an agreement with HAMAS in October 1995 in which the Palestinian Authority undertook to "begin forming a national committee, which will include HAMAS and all the political factions, in order to draft the charter and draft laws which will ensure democracy (shura)."

34.    The Palestinian Authority entered an agreement with HAMAS in October 1995 stating "Security is a joint national responsibility. Security is meant to protect the entire nation unless all citizens regardless of their political affiliations, must be a part of the security apparatus. The security apparatus is the property of all, and thus it must be unified under one leadership, and its duties of protecting citizens and ensuring that they are properly treated must be determined."

35.    The Palestinian Authority entered an agreement with HAMAS in October 1995 stating, "a joint committee, comprised of members of the two leaderships, for continued coordination in emergency situations, the committee will evaluate and discuss the circumstances, keeping in mind the good of our people, and striving to provide it with an honorable and free life. This committee will be formed with the publicizing of this agreement."

36.    The Palestinian Authority entered an agreement with HAMAS in October 1995 stating "HAMAS has the right to participate in nation building through civil and security bodies, according to a system agreed upon by both sides."

37.    In Cairo between December 18 through 21, 1995, the Palestinian Authority representative, Salim Al-Za'nun, and HAMAS representative, Khalid Mash'al, met and reached an agreement concerning numerous issues, including operational cooperation between HAMAS and the Palestinian Authority.

38.    The attached Exhibit A is an accurate copy of the December 22, 1995 agreement between HAMAS and the Palestinian Authority.

39.    The Palestinian Authority invited HAMAS to an August 1997 National United Conference to Confront the Challenge in Gaza.

40.    Palestinian Authority Chairman Yasser Arafat invited HAMAS to join his cabinet in the Palestinian Authority.

41.    The Palestinian Authority has never outlawed HAMAS.

42.    The Palestinian Authority has never prohibited HAMAS from maintaining headquarters, offices or training facilities in the territory under its control.

43.    The Palestinian Authority authorizes HAMAS to operate as a legal entity.

44.    The Palestinian Authority does not distinguish between HAMAS' political or military factions in its relations with HAMAS.

45.    In 2000, prior to the conclusion of their prison sentences, and in some instances prior to their trials, the Palestinian Authority released all HAMAS prisoners and pre-trial detainees from Palestinian Authority jails.

46.    On or about March 10, 1997, Palestinian Authority officials released Ibrahim Maqadmah from a Palestinian Authority prison.

47.    In 2000, the Palestinian Authority released Adnan Jaber Ghul from its prison.

48.    In 2000, the Palestinian Authority released Muhammed Deif from prison.

49.    HAMAS leader Imad Falooji was appointed a Palestinian Authority cabinet member.

50.    HAMAS leader Talal Sidr was appointed a Palestinian Authority cabinet member.

51.     Staff members of the newspaper Al-Hayat and Al-Jadida are employees and/or agents of the Palestinian Authority.

52.     The Palestinian Authority provided one or more of the HAMAS defendants convicted of murdering decedents Yaron and Efrat Ungar with false Palestinian Authority police identification cards.

53.     Palestinian Authority officials instructed one or more of the HAMAS defendants convicted of murdering decedents Yaron and Efrat Ungar to pose as Palestinian policemen if stopped by Israeli authorities.

54.     The Palestinian Authority provided refuge, safe haven and shelter to Ibrahim Ghanimat, who is wanted by Israeli authorities for the murder of decedents Yaron and Efrat Ungar.

55.     Ibrahim Ghanimat currently

   a.     freely resides and is employed in areas controlled by the Palestinian Authority;
   b.     is not sought by any Palestinian security service for his role in the Ungars' murder.

56.     Palestinian Authority Chairman Yasser Arafat appointed HAMAS leader Hamed Bitawa as "Chairman of the Palestine Council of Sages."

57.     Muhammad Dahlan, chief of Palestinian Authority security in Gaza stated on June 15, 1997 on Palestinian television, "there are many HAMAS and Jihad members in the Preventative Intelligence."

58.     Ghazi Jabali stated on Palestinian television on June 24, 1997 "there are more than 150 HAMAS and PFLP members in key positions in the Palestinian police."

59.     Jibril Rajoub, the Palestinian Chief of Preventative Security in the West Bank, stated on December 31, 1997 to the newspaper Abu Dhabi Al Ittihad "HAMAS are our comrades in arms. I am one of those people who see HAMAS and the Palestinian Islamic Movement as part of the National Liberation Movement within Islamic dimension. It is my duty and my task to maintain such relations."

60.     Palestinian Authority Chairman Yasser Arafat has referred to "HAMAS activists" as "sons of the PLO."

61.     Palestinian Authority Chairman Yasser Arafat has stated that the sum of $1,000 is paid by the Palestinian Authority to each member of HAMAS imprisoned by the Israeli Government.

62.    Palestinian Authority Chairman Yasser Arafat referred to Yiyhe Ayyash in public pronouncements as "holy."

63.    Palestinian Authority Chairman Yasser Arafat in a letter on or about October 5, 1994 to HAMAS leader Sheikh Yassin and HAMAS terrorist Sheikh Hunam, stated "My brother, Sheikh Yassin, my brother the holy Sheikh Abdelhadi Hunam, I recognize your participation in the struggle to free Palestine. Because of you, Palestine is free."

64.    Palestinian Authority Chairman Yasser Arafat told Reuters on August 18, 1995 "I am not going to fight HAMAS terrorists."

65.    Palestinian Authority Chairman Yasser Arafat told the New York Times on January 8, 1996 that Yiyhe Ayyash was a "struggler, the martyr."

66.    The Palestinian Authority Chairman Yasser Arafat referred to Yiyhe Ayyash in the New York Times and CBS Evening News of January 8, 1996 as "a hero of the Palestinian people" and "a martyr."

67.    Palestinian Authority Chairman Yasser Arafat stated in a speech on June 5, 1996 "If Israel rejects our demands there will be a reaction and we have a 30,000 man armed force."

68.    Palestinian Authority Chairman Yasser Arafat stated at a Gaza political rally on June 9, 1996, "We are committed to all martyrs who died for the cause of Jerusalem starting with Ahmed Musa until the last martyr Yihye Ayyash."

69.    Palestinian Authority Chairman Yasser Arafat told the Jerusalem Post on July 28, 1996 that "Yiyhe Ayyash was a martyr."

70.    Palestinian Authority Chairman Yasser Arafat told United Press International on September 12, 1996 "there is no confrontation with HAMAS and the Palestinian Authority."

71.    Palestinian Authority Chairman Yasser Arafat stated on May 25, 1997 that "the HAMAS movement is one of many patriotic movements. Even its military wing. One should not forget that the movement took an active part in the Intifadah."

72.    Palestinian Authority Chairman Yasser Arafat referred on May 25, 1997 to Yihya Ayyash as a "sacred martyr."

73.    Palestinian Authority Chairman Yasser Arafat told the newspaper Novoya Vremy on May 25, 1997 "HAMAS, even its military wing, is a patriotic movement."

74.    Palestinian Authority cabinet member Nabil Sha'ath told Reuters on August 28, 1994 that "we have a brotherly relationship with HAMAS."

75.    Palestinian Authority cabinet minister Hanan Ashrawi told the Jerusalem Post on July 25, 1995 that "HAMAS is not the enemy, it is part of the political fabric."

76.    Palestinian Authority promised Yiyhe Ayyash "to ensure his safe passage across the Gaza-Egypt border."

77.    Palestinian Authority Chairman Yasser Arafat named a public square in Jericho after Yiyhe Ayyash.

78.    Palestinian Authority Chairman Yasser Arafat attended Yihye Ayyash's funeral and publicly eulogized him.

79.    Palestinian Authority Chairman Yasser Arafat personally escorted senior HAMAS leader Jamal Mansour from a Palestinian Authority prison in Nablus.

80.    Palestinian Authority security forces employ HAMAS operatives.

81.    Palestinian Authority security forces provide training to HAMAS operatives.

82.    Palestinian Authority security forces employ and provide weapons training to Islamic Jihad operatives.

83.    Palestinian Authority security forces provide training to Islamic Jihad operatives.

84.    The Palestinian Authority took no action to investigate the murder of the Ungars.

85.    The Palestinian Authority did not investigate the murder of the Ungars.

86.    Hassan Salameh was released from detention after reaching an agreement with Palestinian Preventive Security Service chief, Mohammed Dahlan.

87.    Upon his release from detention, Hassan Salameh met with and negotiated with Mohammed Dahlan and other officials of the Palestinian Authority to receive a license to carry a firearm.

88.    Upon his release from detention, Hassan Salameh obtained a license to carry a firearm from the Palestinian Authority.

89.    Other HAMAS terrorists similarly released from detention received licensed weapons from the Preventive Security Services after reaching agreement with Mohammed Dahlan.

90.    HAMAS members whom the Palestinian Authority claims to have arrested, detained or imprisoned are quartered in non-penal protective custody in paramilitary barracks or

similar facilities operated by the Palestinian Authority, and are permitted to leave the barracks or facility at will.

91.    HAMAS members whom the Palestinian Authority claims to have arrested, detained or imprisoned are permitted to do all of the following in the barracks or facility where they are quartered:

        a.     meet freely with other members of HAMAS and other persons of their choice;

        b.     communicate with members of HAMAS and other persons of their choice;

        c.     use the barracks or facility to conduct HAMAS meetings;

        d.     use the barracks or facility to train and train others in the use of weapons and explosives;

        e.     plan terrorist attacks; and

        f.     construct bombs.

92.    The bombs used in the bombing carried out by HAMAS in Jerusalem on July 30, 1997 were built in and on the premises of the Palestinian Authority's protective custody facility in Jericho, by members of HAMAS.

93.    The bombs used in the bombing carried out by HAMAS in Jerusalem on September 4, 1997 were built in and on the premises of the Palestinian Authority's protective custody facility in Jericho, by members of HAMAS

94.    On repeated occasions during 1995 and 1996, representatives of the United States and Israeli governments demanded that the Palestinian Authority arrest and imprison HAMAS commander Salah Talachmeh (a.k.a. Nasser Salah Talachmeh).

95.    In 1996 the Palestinian Authority informed the United States and Israeli governments that Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) had been placed under arrest and was imprisoned in a jail operated by the Palestinian Authority in Jericho.

96.    The Palestinian Authority never arrested Salah Talachmeh (a.k.a. Nasser Salah Talachmeh).

97.    Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) voluntarily agreed to reside in a facility operated by paramilitary forces of the Palestinian Authority in Jericho. (Hereinafter: the Jericho facility)

98.    The Palestinian Authority permitted Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) to leave the Jericho facility at will.

99.    Between January 1996 and June 9, 1996, Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) did leave the Jericho facility frequently with the knowledge and the permission of the Palestinian Authority.

100.    The Palestinian Authority and its officials knew that between January 1996 and June 9, 1996, Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) left the Jericho facility to meet with HAMAS operatives under his command, including Abdel Rahman Ghanimat and Hassan Salameh.

101.    The Palestinian Authority knowingly permitted Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) to use the physical premises and/or telecommunication facilities of the Jericho facility to:

    a.    meet freely with HAMAS operatives;
    b.    communicate freely with HAMAS operatives;
    c.    conduct HAMAS meetings;
    d.    train and train others in the use of weapons and explosives;
    e.    plan terrorist attacks; and
    f.    construct bombs.

102.    The Palestinian Authority knowingly permitted Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) to use the physical premises of the Jericho facility to store weapons and explosives, including the rifles and bullets utilized by Abdel Rahman Ghanimat to murder the Ungars.

103.    The Palestinian Authority permitted Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) to utilize the Jericho facility to hold meetings with HAMAS operative Abdel Rahman Ghanimat for the purpose of planning HAMAS terrorist attacks.

104.    The Palestinian Authority knowingly permitted HAMAS operative Abdel Rahman Ghanimat to enter the Jericho facility for the purpose of holding meetings with Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) to plan HAMAS terrorist attacks.

105.    The Palestinian Authority knew that Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) and Abdel Rahman Ghanimat were using the Jericho facility to meet and plan terrorist attacks.

106.    The Palestinian Authority monitored and recorded conversations between Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) and Abdel Rahman Ghanimat during their meetings in the Jericho facility in which HAMAS terrorist attacks were planned.

107.    Among the terrorist attacks planned by Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) and Abdel Rahman Ghanimat during their conversations in the Jericho facility recorded by the Palestinian Authority, was the terrorist attack in which Yaron and Efrat Ungar were killed.

108.   The Palestinian Authority possesses recordings of conversations between Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) and Abdel Rahman Ghanimat in the Jericho facility, in which terrorist attacks were planned.

109.   The Palestinian Authority possesses a recording of a conversation between Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) and Abdel Rahman Ghanimat in the Jericho facility, in which they planned the terrorist attack in which Yaron and Efrat Ungar were killed.

110.   Following the attack in which the Ungars were killed, the commander of the Jericho facility personally congratulated Salah Talachmeh (a.k.a. Nasser Salah Talachmeh).

111.   Following the attack in which the Ungars were killed, the rifles utilized by Abdel Rahman Ghanimat in the murder were returned to Salah Talachmeh (a.k.a. Nasser Salah Talachmeh) in the Jericho facility.

Plaintiffs,
By their Attorneys,

David J. Strachman #4404
McIntyre, Tate, Lynch & Holt
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700

## CERTIFICATION

I hereby certify that on the _24_ day of January, 2002, I mailed a true copy of the within to:

Ramsey Clark, Esquire
Lawrence W. Schilling, Esquire
36 East 12th Street
New York, NY 10003

Deming E. Sherman
Edwards & Angell, LLP
2800 Bank Boston Plaza
Providence, RI 02903

10



القاهرة - من طاهر شريتح، مندوب القدس الخاص: فيما يلي نص
البيان الصحفي المشترك الذي صدر في منتصف الليلة الماضية فور اختتام
المحادثات بين السلطة الوطنية وحركة المقاومة الإسلامية «حماس»:

عقد في القاهرة اجتماع بين وفد السلطة الوطنية الفلسطينية برئاسة
الأخ سليم الزعنون ووفد حركة المقاومة الإسلامية «حماس» برئاسة الأخ
خالد مشعل في الفترة ما بين ١٨ ـ ٢١ (كانون الأول) ١٩٩٥، وبحضور الجانب

المتواصل بقية الوصول الى أسس راسخة تعزز الوحدة الوطنية
الفلسطينية، وبما يخدم المصالح العليا للشعب الفلسطيني وتحقيق أهدافه
الوطنية، بما في ذلك حقه في تقرير مصيره واقامة دولته المستقلة
وعاصمتها القدس الشريف.

وقد تم بحث المواضيع التي أدرجها الطرفان على جدول الأعمال وهي:

١ ـ الوحدة الوطنية الفلسطينية وسبل تعزيزها وحمايتها.

٢ ـ انتخابات المجلس التشريعي الفلسطيني.

٣ ـ العلاقة بين السلطة الوطنية الفلسطينية وحركة حماس.

٤ ـ التزامات منظمة التحرير الفلسطينية والسلطة الوطنية.

وقد جرى الحوار في جو أخوي تسوده الصراحة والوضوح والحرص
المشترك على التفاهم والاتفاق على تكريس العلاقات الديمقراطية بين أبناء
الشعب الفلسطيني الواحد وقواه السياسية، وقد اتفق الفريقان على ما يلي:

١ ـ التأكيد على ترسيخ الوحدة الوطنية على قاعدة التعددية السياسية
وتحريم الاقتتال واعتماد مبدأ الحوار نهجا حضاريا ووحيدا في التعامل بين
مختلف الأطراف على الساحة الفلسطينية.

٢ ـ التأكيد على تهيئة الأجواء من أجل تعميق الثقة والتعاون لتعزيز
وحدة الصف الفلسطيني وصولا بتحقيق الأهداف الوطنية.

٣ ـ التأكيد على بذل الجهود كافة من أجل الإفراج عن جميع الأخوات
والأخوة الأسرى والمعتقلين في سجون الاحتلال.

٤ ـ تشكيل لجنة مشتركة لمعالجة المشكلات الطارئة.

وفي ضوء الحوارات بين الطرفين حول انتخابات المجلس التشريعي
والتزامات السلطة الوطنية الفلسطينية فقد احتفظت حركة حماس بموقفها
تجاه هاتين القضيتين مع عدم إجبار أحد على مقاطعة الانتخابات وان حركة
«حماس» لا تستهدف إحراج السلطة.

ان ما تم تحقيقه بفضل الله في هذه الجولة من الحوار يشكل خطوة ايجابية
هامة من أجل الاستمرار على نهج الحوار الديمقراطي الأخوي، وفي هذا
السياق تم الاتفاق على مواصلة اللقاءات من أجل تعميق التفاهم والأخوة
بين أبناء الشعب الواحد.

وقد وجه الوفدان الشكر لجمهورية مصر العربية ورئيسها السيد محمد
حسني مبارك وحكومة مصر وشعبها الشقيق على احتضانهم لهذا اللقاء
على أرض الكنانة.

﴿واعتصموا بحبل الله جميعا ولا تفرقوا﴾
صدق الله العظيم
القاهرة في ١٩٩٥/١٢/٢١م

| التوقيع | التوقيع |
|---|---|
| خالد مشعل | سليم الزعنون |