UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE ESTATE OF YARON UNGAR, et al | ) ) ) |
| v. | ) C.A. No. 00-105L |
| THE PALESTINIAN AUTHORITY, et al | ) ) ) ) ) ) |

**PALESTINIAN DEFENDANTS' RULE 12(b)(1)**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendants the Palestinian Authority (PA) and the Palestine Liberation Organization (PLO), constituting the government of Palestine, respectfully move this Court pursuant to Fed.R.Civ.P. 12(b)(1) and the Judgment of the United States Court of Appeals for the First Circuit dated May 27, 2003, rendered on defendants' interlocutory appeal, Docket No. 03-1544, and the affidavit of Ambassador Nasser Al-Kidwa, for an order dismissing the Amended Complaint for lack of subject matter jurisdiction on grounds of sovereign and governmental immunity, nonjusticiability and the jurisdictional bar imposed by 18 U.S.C. § 2337 and for such other and further relief as this Court may deem just and proper.

A supporting Memorandum is submitted with this motion.

Dated: June 13, 2003

_____
Deming E. Sherman (#1138)
Annemarie M. Carney (#6380)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, Rhode Island 02903
401-274-9200
401-276-6611 (FAX)

- 2 -

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003
212-475-3232
212-979-1583 (FAX)

Attorneys for Defendants
The Palestinian Authority and
The PLO

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June, 2003, I mailed a copy of the within Palestinian Defendants' Rule 12(b)(1) Motion to Dismiss the Amended Complaint to David J. Strachman, Esq., McIntyre, Tate, Lynch and Holt, Suite 400, 321 South Main Street, Providence, RI 02903.

_____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE ESTATE OF YARON UNGAR, et al | ) ) ) |
| v. | ) C.A. No. 00-105L ) |
| THE PALESTINIAN AUTHORITY, et al | ) ) ) ) |

## MEMORANDUM IN SUPPORT OF
## PALESTINIAN DEFENDANTS' RULE 12(b)(1)
## MOTION TO DISMISS THE AMENDED COMPLAINT

### Introduction

This memorandum is submitted by defendants the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO"), constituting the government of Palestine, in support of their supplemental motion pursuant to Fed.R.Civ.P 12(b)(1) and the May 27, 2003 Judgment of the United States Court of Appeals for the First Circuit on the interlocutory appeal taken in this case by defendants PA and PLO. The judgment states in part:

> . . . Of course, [the PA and PLO] have not yet answered the complaint, and we do not discount the fact that they may still be able to file a properly supported Rule 12(b)(1) motion below. This seems especially likely given the jurisdictional implications of the issue and the appellees' characterization of the court's immunity ruling as "interlocutory." But the appellants must adhere to the rules that govern all litigants.
> . . . This order is without prejudice to the appellants raising their sovereign immunity defense in a proper and timely manner. We take no view as to the merits of that defense.

This Rule 12(b)(1) motion, supported by the extensive documentary material and affidavit attached, accordingly seeks dismissal of this action before an answer is filed for lack of subject matter jurisdiction on grounds of sovereign and governmental immunity, nonjusticiability

and as jurisdictionally barred by 18 U.S.C. § 2337. The issue of Palestinian statehood for purposes of determining jurisdiction of U.S. courts over the PA and PLO, the effective government of Palestine, is one of urgent and vital public importance. It is equally of fundamental public importance that there be a final determination in this case of issues of immunity and jurisdiction before the burdens of litigation and then consequences are imposed upon defendants.

This Rule 12(b)(1) motion supplements defendants' earlier motion for dismissal of the original complaint, filed on June 15, 2000, the motion for dismissal of the amended complaint, filed on November 29, 2001 and the motion for leave to file defenses in support of defendants' motion to dismiss the amended complaint filed on January 30, 2002. It further supplements defendants' motion for reconsideration filed on November 20, 2002 of this Court's Decision and Order entered on November 5, 2002, which denied defendants' motion to dismiss the amended complaint, holding that the PA and PLO were not entitled to immunity and that the PA was not a foreign state within the meaning of 18 U.S.C. § 2337.

The present motion is supported by the affidavit of Ambassador Nasser Al-Kidwa, including the documents submitted with the affidavit and cited therein, which include the presentation of matters defendants sought leave to present by their motion of January 30, 2002. Evidence to be considered on this motion should be limited to the issues of jurisdiction and immunity raised by this motion, and should address the issue of Palestine statehood being asserted for the sole purpose of demonstrating immunity of these defendants in this private civil action.

Defendants request the Court to take judicial notice of the evidence provided by all relevant United Nations documents and proceedings on the Question of Palestine and related

matters demonstrating Palestinian statehood, many of which are submitted with the supporting affidavit or are cited therein, and to take judicial notice of the roadmap publicly announced by the U.S. State Department on April 30, 2003, which is the latest international effort in the peace process and other relevant public pronouncements of the United States and other participants in the new and ongoing peace process, all of which demonstrate and confirm Palestine's longstanding satisfaction of the elements of statehood. Defendants are prepared to offer further evidence and address evidence offered by plaintiffs, if necessary.

## ARGUMENT

I.     **This Motion Is Being Properly Asserted At this Time.**

This motion is the "properly supported Rule 12(b)(1) motion" the Court of Appeals indicated defendants may be able to file with the comment that this "seems especially likely given the jurisdictional implications of the issue and the appellees' characterization of the court's immunity ruling as 'interlocutory.'" The Court of Appeals expressly took "no view as to the merits" of the defense of sovereign immunity.

Whether sovereign or governmental immunity and/or 18 U.S.C. § 2337 bars this private civil action against the PA, are issues of subject matter jurisdiction. See Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993). Nonjusticiability is also a matter of subject matter jurisdiction. Lack of subject matter jurisdiction may be raised at any time at any stage, even for the first time on appeal. Pathak v. Dept. of Veterans Affairs, 274 F.3d 28, n.5 at 31 (1st Cir. 2001), citing Halleran v. Hoffman, 966 F.2d 45, 47 (1st Cir. 1992).

This Court has discretion to reexamine any aspect of this case at this interlocutory stage. "The law of the case is simply not implicated." Tang v. Rhode Island Department of Elderly Affairs, 163 F.3d 7, 11 (1st Cir. 1998).

It is important to efficient judicial administration and is usually required for issues of subject matter jurisdiction to be decided first, as defendants are seeking on this motion. See In re Papandreou, 139 F.3d 247, 254 (D.C. Cir. 1998); Dynamic Image Technologies Inc. v. U.S., 221 F.3d 34, 37 (1st Cir. 2000), citing Northeast Erectors Ass'n of the BTEA v. Secretary of Labor, 62 F.3d 37, 39 (1st. Cir. 1995); but see Rhurgas Ag v. Marathon Oil Co., 526 U.S. 574 (1999), upholding a dismissal for personal jurisdiction even though subject matter jurisdiction had not been determined.

It is of great importance in this case that subject matter jurisdiction be decided first because of the present inability of defendants to participate in discovery and to prepare and present their defense. Further proceedings before subject matter jurisdiction is decided will be costly, time consuming, inflammatory in the peace process and wasted if subject matter jurisdiction is later found not to exist.

The use by the Court of Appeals of the phrase "properly supported" to describe the PA's Rule 12(b)(1) motion implies that the motion cannot be decided on the face of the amended complaint, but needs to be supported and decided on the basis of evidence outside the amended complaint. Such evidence can include facts that can be assumed or are undisputed or can be judicially noticed or that are disputed and require the finding of facts -- all such evidence may be appropriately considered on a Rule 12(b)(1) motion. See Valentin v. Hospital Bella Vista, 254 F.3d 358, 363- 65 (1st Cir. 2001).

The PA's assertion that it meets each of the four elements of the controlling definition of a state in § 201 of the Restatement (Third), Foreign Relations Law of the United States (AL1 1987) is supported by evidence that can be judicially noticed and the most important of which is provided herewith.

The PA therefore submits on this motion the affidavit of Ambassador Al-Kidwa with attached documents to make this showing of historical and other facts that can be judicially noticed, such as the facts shown by United Nations documents, see e.g. U.S. v. Piedrahita-Santiago, 931 F.2d 127, n.1 at 129 (1st. Cir. 1991) taking judicial notice of a United Nations Convention; see also Quinn v. Robinson, 783 F.2d 776, 813 (9th Cir. 1986) (the constitutional, legal and military relationship between England and Northern Ireland is appropriate for judicial notice).

## II. Palestine Has Long Satisfied The Definition Of Statehood.

Ambassador Al-Kidwa's affidavit presents salient portions of Palestine's public history, relevant documentation and judicially noticeable facts which establish that Palestine satisfies each of the four elements of the controlling definition of a state set forth in § 201 of the Restatement (Third), Foreign Relations Law of the United States (AL1 1987). The affidavit is supported by documents which verify its text, attached as exhibits.

### The Four Elements Of Statehood Have Long Been Satisfied By Palestine.

The four elements of Palestinian statehood are:

1. That Palestine has a defined territory;
2. That Palestine has a permanent population;
3. That the PA and PLO function effectively as the a Government of Palestine;
4. That Palestine conducts formal relations with other states.

Statehood is not dependent on recognition. Restatement, sec. 202, comment b.

1. **Defined Territory**

Beginning at least with the Palestinian state described at length in U.N. General Assembly (GA) Resolution 181 adopted on November 29, 1947, partitioning mandated Palestine, Palestine has always had defined borders and territory, though they have been disputed and changed from time to time. At present the territory consists of the West Bank and Gaza and East Jerusalem. There may be disagreement about the exact boundaries and territory of Palestine, and Israel too, but there can be no doubt there is a Palestinian state with defined borders and territory though border disputes may exist. As the United States representative maintained at the United Nations on December 2, 1948 in speaking in favor of the admission of Israel to UN membership:

> Israel was clearly an independent state having a people and a territory. Both reason and history demonstrated that the concept of territory did not necessarily include precise delimitations of the boundaries of that territory.

See 1948-49 Yearbook of the United Nations.

The Palestinian defined territory today, as commonly recognized, consists of the West Bank, the Gaza Strip and East Jerusalem. The West Bank, including lands Israeli settlers are illegally occupying, has an area of approximately 5,860 sq. km, consisting of land of 5,640 and water 220 sq. km, an area slightly smaller than the State of Delaware. The Gaza Strip is approximately 360 sq. km, which is all land with no water, slightly more than twice the size of Washington, D.C. Source, CIA World Book. East Jerusalem is approximately 7 sq. km.

2. **Permanent Population**

The second element of permanent population is satisfied by the millions of Palestinians living in Palestine, even though there may be questions about whether specific individuals are part of the permanent population.

PRV_581392_1/DSHERMAN

More than two millenniums before Palestine became the British mandate that existed when the United Nations was created, there was and has always been a permanent Palestinian population living in Palestine as it now exists and the much broader adjacent lands. The United Nations has always acknowledged the permanence of the Palestinian people since its establishment in San Francisco in 1945. The Question of Palestine became a continuing concern of the United Nations at the time of its creation before Resolution 181 was adopted in the fall of 1947, and has remained so continuously thereafter. Estimated as of July 2002, the population of the West Bank was 2,163,667 and the Gaza Strip 1,225,911. Source: CIA World Book. It is generally considered that over 200,000 Palestinian live in East Jerusalem, an area of approximately 7 sq. km.

3. **The Functioning Government**

The functions of the Palestine government are set forth in Ambassador Al-Kidwa's affidavit and accompanying exhibits which describe the founding in 1964 of the PLO as the representative of the Palestinian people, the establishment of the PA under the Oslo peace accords in 1993 and the governmental activities and responsibilities they have exercised and are exercising. The PA and PLO are the functioning government today of Palestine albeit under extremely difficult circumstances of occupation. The government services are complete, limited only by intervention and compulsion by the occupying power. Plaintiffs' amended complaint recognizes the police and law enforcement functions of the PA. See ¶¶ 23 and 24.

4. **Palestine Engages In Foreign Relations**

The fourth element, engaging in foreign relations and possessing the capacity to do so, is shown, among many other things, by the many nations that have established full formal foreign relations with Palestine, particularly after it declared independence in November 1988. See e.g.

para. 13 and 14 of Ambassador's affidavit. Palestine's substantial and increasing participation in the work of the United Nations itself shows capacity and engagement in foreign relations, both with the U.N. and member nations. <u>See</u>, <u>e.g.</u> para. 15.

The tragic failure of the Oslo Accords to achieve their announced objectives within the initially prescribed 5-year period was a failure of the peace process. But the PA and PLO, during and after the period in which the Oslo Accords faltered and failed, continued to constitute and function as the government of Palestine and did so with increasing effectiveness in the provision of all the services of government under the extremely difficult conditions of occupation.

### III. Israel's Illegal Occupation Of The Palestinian Territories And Oppressive Measures Under The Occupation Have No Legal Effect On Palestinian Statehood.

The statehood of Palestine is established under the Restatement's definition, notwithstanding Israeli occupation of Palestinian territories since 1967 and Israel's oppressive measures against the Palestinian people and government. The occupation has not and cannot extinguish the State of Palestine under international law. Israel's oppressive policies and measures under the occupation are universally deemed illegal under the Fourth Geneva Convention and other relevant instruments of international humanitarian law. See Ardi Imseis, <u>On the Fourth Geneva Convention and the Occupied Palestinian Territory</u>, 44 Harv. Int'l Law J. 65 (2003). The nature of the occupation has changed frequently and the physical intrusion and oppression varies constantly, but statehood survives.

The harmful effects of some oppressive measures such as widespread use of excessive military force are obvious, resulting in death and injury and destruction of property. The harmful effects of other measures, many unknown outside Palestine, are often not self-evident or obvious

- 8 -

and can be underestimated, as for example, the harmful effects of measures such as impediments to work and travel, and imposition of checkpoints and curfews. The occupation and oppression cause constant suffering by the Palestinian people which has produced a continuing humanitarian crisis and anger and violence and support for violence that would not otherwise exist.

It is these conditions and violence committed by Israel against Palestinians, and Palestinian violence against Israel, that the peace process addresses.

The Palestinian government is not able to end the occupation by force, or, so far, by negotiation. It cannot prevent many oppressive Israeli measures, even the forced confinement of its President to the rubble of the PA offices in Ramallah for a year and a half. It is often coerced into acceptance of conditions it opposes or would reject, many exacted by Israel in violation of international law controlling Israel as an occupying power. These conditions no doubt affected the language of agreements reached, including the Oslo Accords. To the extent that the Oslo Accords conflict with the requirements of the Fourth Geneva Convention, the Convention prevails as a matter of international law. See, Imseis, supra, 44 Harv. Int'l. Law J. at 127.

Any limitations and restrictions on the functioning of the Palestinian government to which plaintiffs might point to argue that Palestine fails to meet the governance element or other aspects of the Restatement's definition of a state are attributable solely to the occupation and the oppressive conduct of Israel under the occupation and do not alter the statehood of Palestine.

Statehood cannot be defeated on the basis of limitations and restrictions upon the Palestinian government and the Palestinian people caused by occupation and repression as a matter of international law and fundamental fairness.

PRV_581392_1/DSHERMAN

## Conclusion

For the reasons stated, the motion to dismiss the amended complaint should be granted.

Respectfully submitted,

Dated: June 13, 2003

*/s/ Deming E. Sherman*

Deming E. Sherman (#1138)
Annemarie M. Carney (#6380)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, Rhode Island 02903
401-274-9200
401-276-6611 (FAX)

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003
212-475-3232
212-979-1583 (FAX)

Attorneys for Defendants
The Palestinian Authority and
The PLO

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June, 2003, I mailed a copy of the within Memorandum to David J. Strachman, Esq., McIntyre, Tate, Lynch and Holt, Suite 400, 321 South Main Street, Providence, RI 02903.

*/s/ Deming E. Sherman*

PRV_581392_1/DSHERMAN