UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.

vs.                                              C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANTS' APPEAL FROM THE ORDER OF MAY 14, 2003 CONTINUING HEARING ON MOTIONS FOR DEFAULT JUDGMENT**

Defendants have filed an objection pursuant to Fed.R.Civ.P. 72(a) (styled as an "appeal" in accordance with Local Rule 32(b)(2)) to the "Order Continuing Hearing on Motions for Default Judgment" given on May 14, 2003, by Magistrate Judge David L. Martin. Plaintiffs oppose, and request that the Court deny, defendants' objection and appeal.

**I.   BACKGROUND TO THE ORDER OF MAY 14, 2003**

In January 2002, plaintiffs served the PA with interrogatories, a request for production of documents and a request for admissions, and served the PA and PLO with deposition notices for several of their officials. On June 20, 2002, the Court granted a motion by defendants to stay discovery, pending a decision on defendants' motion to dismiss plaintiffs' amended complaint.

On November 4, 2002, the Court denied defendants' motion to dismiss plaintiffs' amended complaint, thereby terminating the stay entered on June 20, 2002. Defendants failed to respond to the pending discovery requests despite the termination of the stay.

On December 12, 2002, Magistrate Judge Martin conducted a hearing on plaintiffs' Motion to Compel Discovery and defendants' Motion to Stay Discovery. At the hearing,

Magistrate Judge Martin issued a ruling granting the motion to compel discovery and denying defendants' motion for a further stay of discovery.

On January 14, 2003, an order entered, reflecting Magistrate Judge Martin's decisions at the December 12, 2002 hearing. The order <u>expressly required</u> the PA to "*respond to the interrogatories, request for production of documents, and request for admissions filed on January 24, 2002 (and stayed by this Court's order of June 20, 2002) within 45 days of December 12, 2002.*" However, the order also stated that the PA's responses to the discovery requests "*may include appropriate objections.*" <u>Id</u>.

The information, documents and admissions sought by plaintiffs through discovery relate to the PA's operational and financial relations with Hamas, including, for example and *inter alia*, the PA's publicly-admitted provision of financial support to Hamas terrorists.

The time allotted to the PA to respond to plaintiffs' interrogatories, requests for production of documents and requests for admissions, i.e. 45 days from December 12, 2002, expired on January 26, 2003. Defendant PA did not respond to the discovery requests within 45 days as ordered, and has not responded since. <u>To date, the PA has not replied to a single interrogatory question or admission, and has not provided a single document</u>.

Moreover, despite the fact that Magistrate Judge Martin's order explicitly stated that the PA's responses to the discovery requests "*may include appropriate objections*," the PA has not tendered any objections whatsoever to the discovery requested. Rather, <u>the PA has elected to ignore the order completely and to stonewall the Court and the plaintiffs</u>.

In the face of defendants' <u>absolute refusal</u>, despite an explicit court order, to respond or reply in any fashion to the interrogatories and requests for admissions and documents, plaintiffs moved for default judgment and other sanctions under Fed.R.Civ.P. 37.

The January 14, 2003 order also addressed the matter of depositions, and expressly provided that:

> *Plaintiffs may issue deposition notices to The Palestinian Authority officers and employees upon 60 days notice. The deposition notices may issue for depositions to occur in the District of Rhode Island. The Palestinian Authority may file objections to the depositions indicating with specificity their objection, such as location, etc.*

Accordingly, pursuant to the order, plaintiffs' counsel noticed eight depositions for March 31–April 8, 2003 in Providence, Rhode Island, and sent defendants' counsel a letter requesting that defendants confirm the appearance of their employees at the scheduled depositions. Plaintiffs requested to depose defendants' officials because information and evidence gathered to date by the plaintiffs indicates that these officials were personally and directly involved in approving, coordinating and carrying out various aspects of the defendants' provision of material support and resources to Hamas for the purpose of executing terrorist attacks such as the attack in which decedents were murdered.

<u>Defendants simply ignored the deposition notices, just as they had the discovery requests</u>. Defendants did not produce the deponents, nor did they file any objections to the notices of deposition, as expressly required by Magistrate Judge Martin's order, nor did they attempt to confer with plaintiffs' counsel in effort to resolve any disagreements regarding the depositions, as required by Fed.R.Civ.P. 26(c). Instead, defendants filed a "Motion For Protective Order," requesting a blanket order prohibiting depositions of their officials.

In light of defendants' refusal to comply with the explicit provisions of the discovery order (by either producing the deponents or tendering specific objections), and because defendants' Motion for Protective Order indicated that defendants will not produce the deponents, anywhere or at any time, plaintiffs filed a second motion for default judgment and other sanctions under Fed.R.Civ.P. 37.

Both of plaintiffs' Rule 37 motions, as well as defendants' motion for a protective order, were referred to Magistrate Judge Martin, and on May 14, 2003, a hearing was conducted on all three motions. That day, Magistrate Judge Martin gave an "Order Continuing Hearing on Motions for Default Judgment."

## II.     THE ORDER OF MAY 14, 2003

Despite defendants' absolute refusal to comply in any way with the discovery order of January 14, 2003, Magistrate Judge Martin denied plaintiffs' request to enter judgment by default against defendants immediately, on the grounds that "*Defendants have not previously been explicitly warned by the court that a failure to comply with their discovery obligations could result in the entry of default judgment against them . . .*" Order of May 14, 2003, at 1. Instead, Magistrate Judge Martin continued the hearing on plaintiffs' motions until July 14, 2003, and ordered defendants to comply with all outstanding discovery requests, including previously noticed depositions, by that date. Id.

The Order also expressly provided that "*[i]f Defendants seek to have the depositions conducted somewhere other than in the District of Rhode Island, Defendants shall file a motion seeking such relief not later than Monday, June 16, 2003.*" Id. p. 2. Finally, the Order stated

4

that: *"Defendants are warned that failure to comply fully with this order may result in the entry of default judgment against them."* Id.

### III. DEFENDANTS' ARGUMENTS ARE FRIVOLOUS AND DEMONSTRATE NO ERROR WHATSOEVER

Instead of availing themselves of the generous further opportunity to comply with discovery that was provided by Magistrate Judge Martin, defendants have chosen to appeal the order. In order to prevail in their appeal, defendants must demonstrate that Magistrate Judge Martin's order was *"clearly erroneous or contrary to law,"* Fed.R.Civ.P. 72(a), 28 U.S.C. §636, Local Rule 32(b)(2). In applying this standard of review, the Court *"must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [the Court] form[s] a strong, unyielding belief that a mistake has been made."* Phinney v. Wentworth Douglas Hospital, 199 F.3d 1, 4 (1st Cir. 1999) (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990) (internal quotations marks omitted)).

Yet, defendants do not even attempt to demonstrate that the order is erroneous or contrary to law. Instead, defendants base their entire appeal on three false and/or completely meritless arguments as to why they should be exempt from any and all discovery:

### A. Defendants' Claim That Discovery Is "Impossible" Is Absurd, Unsupported and Empirically False

Defendants' appeal is founded, in the first place, on the hopelessly vague, facially absurd and wholly unsubstantiated claim that *"existing conditions"* in the Middle East prevent defendants from responding to any discovery requests whatsoever. Def. Appeal Memo §4.

Defendants have not bothered to explain this claim or support it with admissible evidence or affidavits; rather, this claim is incorporated by reference to the unsworn letter dated January

27, 2003 (written by one of defendants' officials) that was previously submitted to Magistrate Judge Martin.

Defendants' unsupported claim that the conflict in the Middle East foils their ability to respond to <u>any</u> discovery is <u>virtually identical</u> to representations made by the PA and PLO to the U.S. District Court for the District of Columbia, in an attempt to excuse their failure to respond to another action recently brought under 18 U.S.C. §2333

> Defendants . . . say that the escalating Palestinian-Israeli conflict hampered communications necessary to prepare a response . . . Defendants have supplied no specifics -- by proffer, affidavit, or otherwise -- to support these claims. They have failed to identify who sought to communicate with whom and how, when it was, what specific events prevented the contacts . . . Most tellingly, defendants never sought from the Court or the plaintiffs an extension on their deadline, and wholly fail to explain why they did not or could not. <u>Defendants' explanations for their delay sound more like hollow excuses.</u>

<u>Biton v. The Palestinian Authority</u>, 233 F.Supp.2d 31, 33 (D.D.C. 2002) (emphasis added). Likewise, the court in <u>Biton</u> noted that, " . . . *defendants' vague and unsupported explanations for their failure to respond to the complaint timely seem meritless . . .* " <u>Id</u>. at 32.[1]

Here, too, defendants offer not a whit of evidence in support of their claims. The unsworn letter submitted to the Court does not even purport to be evidentiary or to be styled as an affidavit, and is in essence <u>merely a pleading</u>.

Even if it purported to be evidentiary, the letter is unsworn and therefore inadmissible and should be stricken. <u>Smith v. Danzig</u>, 2001 WL 823642 at 3 (D. Me 2001), <u>Sellers v. Henman</u>, 41 F.3d 1100, 1101 (7th Cir. 1994) (unsworn "affidavit" should be stricken), <u>Demoulas v. Demoulas</u>, 732 N.E. 2d 875, 883 (Mass. 2000) (unsworn statements stricken), <u>Commonwealth v. Roberts</u>,

---

[1] The District Court's characterization was proven correct. Once default appeared imminent in <u>Biton</u>, the PA and PLO were suddenly able to overcome their alleged logistical difficulties and filed a lengthy motion to dismiss.

6

433 Mass. 45, 740 N.E.2d 176, 185 (2000) (unsworn letter constitutes "no evidence whatsoever before the motion judge").

Moreover, even if defendants' hopelessly vague and unsupported factual claims of logistical difficulties were true, they would be insufficient to justify or excuse defendants' blanket refusal to comply with <u>any</u> discovery. Defendants are bodies comprised of hundreds of officials and thousands of employees with budgets and assets in the hundreds of millions of dollars.[2] The claim that they cannot respond to <u>any</u> discovery of <u>any</u> type strains credibility far past the breaking point.

Indeed, plaintiffs have obtained <u>clear empirical evidence</u> that defendants' claim – i.e. that circumstances make it impossible for their personnel to comply with any discovery requests or deposition notices – is a <u>knowing fraud on the Court</u>.

During the last few months, defendants' senior officials and personnel have actively participated in discovery and other fact-finding proceedings in the following legal actions:

1.  In <u>Bucheit v. Palestine Liberation Organization and Palestinian Authority</u> 00 CV 1455 (D.D.C.), the PA and PLO were able to produce in Washington, D.C. Mr. Ghassan Ramadan (a PA official and manager of its Office of Environment and Information) to testify on their behalf on March 31, 2003, the very day the depositions were to begin in Rhode Island in <u>Ungar!</u> See attached Exhibit A, deposition transcript, page 8 lines 18-20, page 11, lines 1-15.

2.  In <u>Bucheit</u> Mr. Ramadan similarly testified on behalf of the PA and PLO two days later at trial in the district court on April 2. See attached Exhibit B, page 8.

---

[2] <u>See</u> e.g. Standard & Poors valuation reports on the PA's assets and a list of PA assets, available at www.pa-inv-fund.com/lasse.asp

3.  Mr. Muhanad Aljouni, a senior PA financial official is playing an active role in the PA's defense of a civil action pending against it in the Jerusalem District Court, <u>Haksharat Hayishuv Insurance Company Ltd. v. The Palestinian Authority</u>. Mr. Aljouni provided an affidavit in the case, and on March 12, 2003, appeared in the Jerusalem District Court where he testified and was cross-examined at length on his affidavit. See attached Exhibit C, a true copy of a notarized and appostilled translation of Mr. Aljouni's testimony.

Thus, during the same period in which defendants filed pleadings and a letter with this Court proclaiming the "impossibility" of discovery, and solemnly declaring the inability of their personnel and officials to conduct <u>any</u> discovery or attend <u>any</u> depositions, defendants' senior officials and personnel were in fact actively participating in depositions, submitting sworn affidavits and appearing in hearings and trials, both in the District of Columbia and in Israel.[3] The fact that these officials were able to testify in these proceedings and to travel outside the West Bank to do so – even across the Atlantic or into the heart of the Israeli capital – clearly proves that the statements made by defendants in their letter to Magistrate Judge Martin of January 27, 2003, which were repeated and incorporated by the instant appeal, are simply a brazen and cynical attempt to deceive this Court.

**B.    Defendants' Refusal to Reveal Their Admitted Ties With HAMAS Constitutes Grounds To Deny This Appeal and Further Grounds in Support of the Discovery Sanctions Sought by Plaintiffs**

Defendants' own memorandum makes perfectly clear that the true reason for defendants' failure to comply with any aspect of this Court's discovery order is not the preposterous claim of

---

[3] There is no reason to assume that this is an exhaustive list of the legal proceedings in which defendants' officials are testifying and otherwise actively participating in fact-finding.

"impossibility," but rather defendants' own <u>deliberate decision not to reveal any aspect of their relationship and ties with HAMAS</u>.

As noted, plaintiffs' discovery requests concern information, documents and admissions relating to the PA's operational and financial relations with HAMAS. Likewise, plaintiffs have requested to depose officials of defendants who, according to information and evidence gathered to date by the plaintiffs, were personally and directly involved in approving, coordinating and carrying out various aspects of the defendants' provision of material support and resources to Hamas for the execution of terrorist attacks. As defendants themselves accurately state, the "*[o]utstanding discovery requests go into minute detail concerning Hamas and its members, the make-up of the Palestinian Authority's security forces and interaction between the PA and its security forces and Hamas and its members . . .*" Def. Appeal Memo §13.

Likewise, defendants admit that, "*This case and the discovery being sought has at its heart . . . the relationship between the Palestinian Authority and Hamas.*" <u>Id</u>. at §6.

Defendants dispute neither the existence of their "*interaction*" and "*relationship*" with HAMAS, nor the existence of information, documentation and testimony that would prove and demonstrate the nature and scope of this relationship. On the contrary, defendants concede that this information and documentation is in their possession and/or available to them, but argue that "*the disclosure of documents and testimony concerning relationships between the PA and Hamas,*" as well as the "*process of attempting to compile this information,*" along with requiring the PA "*to answer questions and provide documents and other information about Hamas and its members, and its interactions with them,*" would have a deleterious impact on current political developments in the Middle East. <u>Id</u>. Specifically, defendants feel that the disclosure of

9

information and documents relating to their relationship with HAMAS will reduce "the receptivity" of HAMAS to the latest peace overtures in the century-old Middle East conflict. Id. §12.

In other words, defendants are making the outrageous argument that they should be exempted from revealing documents and information regarding their relations with HAMAS – which relations are at the "heart" of this case as defendants themselves candidly admit – because such revelations might anger HAMAS. This frivolous and grossly political argument – which defendants seek to support, as has been their custom in this litigation, with a smattering of news clippings about current events -- has no place in a court of law, and constitutes yet another in a long series of heavy-handed attempts to subject this Court's docket and the course of this tort action to late-breaking events in the Middle East.

Needless to say, this utterly meritless argument does not even begin to hint that Magistrate Judge Martin committed any error whatsoever, much less a clear error.

On the contrary, defendants' outright refusal to provide information, documents and deposition testimony about their relations with HAMAS constitutes <u>further support</u> for both the necessity of the discovery requested, and for plaintiffs' request to enter judgment by default as sanction for non-compliance with that discovery. Notwithstanding defendants' hollow professions of concern for HAMAS' "receptivity" to current political events, defendants are unwilling to expose their operational alliance with and material support for HAMAS to the bright light of the discovery process for the simple reason that these revelations would conclusively establish defendants' own liability for the murder of Yaron and Efrat Ungar.

### C. Defendants' Request for a Stay Has Already Been Raised and Denied; Defendants' Appeal Is Precluded By Fed.R.Civ.P. 72(a)

Defendants also argue that they should not have to face the "burdens of litigation," including discovery, until their claims of sovereign immunity are "finally resolved." Id. §14 *et seq*.

A request for a stay on <u>identical</u> grounds was already made by defendants in their motion of November 20, 2002 and twice reasserted orally at the hearing on April 11, 2003. At that hearing, the Court both denied defendants' motion to reconsider the decision of November 4, 2002 finding that neither defendant is a sovereign state, and denied defendants' motion (founded on the same "burdens of litigation" argument) for a stay pending interlocutory appeal of their sovereign immunity claim. Tr. pp. 8-9, 12.

Subsequently, on May 27, 2003, the Court of Appeals for the First Circuit summarily affirmed this Court's Orders of November 4, 2002 and April 22, 2003, denying defendants' sovereign immunity claims. <u>Ungar v. The Palestinian Liberation Organization</u>, No. 03-1544 (1st Cir. May 27, 2003). Therefore, the rationale and reasoning behind the April 11, 2003 decision denying defendants' request for a stay pending interlocutory appeal of their immunity claim, applies <u>a fortiori</u> now that this Court's immunity decisions have been affirmed.[4]

Finally, defendants are estopped from appealing the instant order for an additional reason: the order of continuance given on May 14, 2003 <u>merely implements and applies</u> (and in fact

---

[4] This Court's finding that neither defendant is a foreign state also accords fully with the conclusions reached in a recent book-length treatise authored by Professor Geoffrey R. Watson, a scholar of international law. After conducting a lengthy legal and factual analysis of the current status of the PA and the PLO, Professor Watson concludes that the "*PLO is no more a state now than it was*" in the past, and that "*neither the PLO nor the PA has yet acquired statehood.*" Geoffrey R. Watson, <u>The Oslo Accords: International Law and the Israeli-Palestinian Peace Agreement</u>, Oxford University Press (2000) pp. 73-4; 68.

enlarges defendants' time to comply with) the discovery order <u>previously issued</u> by Magistrate Judge Martin on January 14, 2003. Yet, defendants refrained from appealing the January 14, 2003 order to the judge of the district court pursuant to Fed.R.Civ.P. 72(a). By refraining from filing a Rule 72(a) objection to the January 14, 2003 order, defendants rendered that order unreviewable and unappealable, and thereby <u>knowingly subjected themselves</u> to its terms and provisions. Those terms are therefore the binding framework for discovery in this action,

> Since the motion to compel discovery involved a nondispositive matter, the magistrate's order was effective when made, and it was therefore immediately appealable to the district court. See 28 U.S.C. §636(b)(1)(A). To receive such review, a party must file objections within ten days from service of a copy of the order. See Fed. R. Civ. P. 72(a). Unless an objection is filed within this window of opportunity, a magistrate's order on a nondispositive matter, such as a self-operating order granting, denying, or limiting pretrial discovery, is not thereafter reviewable on appeal.

<u>Sunview Condominium v. Flexel Intern.</u>, 116 F.3d 962, 964 (1st Cir. 1997).

The substance and terms of the order of May 14, 2003 simply echo those of the order of January 14, 2003 (except for the enlargement of time which is to defendants' <u>benefit</u>). Since defendants failed to appeal timely the terms of the original discovery order those terms are unreviewable and defendants *"may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made."* Fed.R.Civ.P. 72(a).

## IV.   CONCLUSION

For the reasons cited above and in plaintiffs' memoranda in support of their two motions for default judgment pursuant to Fed.R.Civ.P. 37, incorporated herein by reference, the May 14, 2003 order given by Magistrate Judge Martin was correct, proper and necessary, and was certainly not "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a), 28 U.S.C. §636, Local Rule 32(b)(2).

Therefore, the plaintiffs request that the Court deny defendants' appeal and objection to the order of May 14, 2003.

Plaintiffs<br>
By their attorneys,<br>
McIntyre, Tate, Lynch & Holt<br>
<br>
_____<br>
David J. Strachman   #4404<br>
321 South Main Street, Ste. 400<br>
Providence, RI 02903<br>
(401) 351-7700<br>
(401) 331-6095 (fax)

## CERTIFICATION

I hereby certify that on the 10th day of July, 2003, I mailed a true copy of the within to:

Ramsey Clark, Esquire
Lawrence W. Schilling, Esquire
36 East 12th Street
New York, NY 10003

Deming E. Sherman, Esquire
Annemarie M. Carney
EDWARDS & ANGELL, LLP
2800 Bank Boston Plaza
Providence, RI 02903

_____