UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.

vs.                                                           C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.

**PLAINTIFFS' MEMORANDUM IN RESPONSE
TO DEFENDANTS' APPEAL FROM THE ORDER OF MAY 27, 2003
DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Defendants PA and PLO have filed an objection pursuant to Fed.R.Civ.P. 72(a) (styled as an "appeal" in accordance with Local Rule 32(b)(2)) to the Order entered on May 27, 2003 by Magistrate Judge David L. Martin, denying defendants' Motion for Protective Order. Plaintiffs oppose, and request that the Court deny, defendants' objection and appeal.

**I.       INCORPORATION BY REFERENCE OF ARGUMENTS AND RESPONSE**

In support of the instant appeal, defendants have incorporated by reference the arguments contained in the memorandum submitted by defendants in support of their appeal of the Order Continuing Hearing On Motions For Default Judgment given by Magistrate Judge Martin on May 14, 2003. Def. Appeal Memo at §5. In addition to the arguments incorporated by reference, defendants' instant appeal raises one additional argument, which is developed in §§1-4 of defendants' memorandum.

Plaintiffs' Memorandum in Response to Defendants' Appeal From the Order of May 14, 2003 Continuing Hearing On Motions For Default Judgment contains both the full factual and procedural background to defendants' Motion for Protective Order, as well as plaintiffs' detailed

response to the arguments adduced in the appeal of the order of May 14, 2003 that have been incorporated into the instant appeal by reference. Therefore, plaintiffs respectfully request to incorporate by reference their Memorandum in Response to Defendants' Appeal From the Order of May 14, 2003 Continuing Hearing On Motions For Default Judgment, as well as their Memorandum in Opposition to Defendants' Motion For a Protective Order, in support of their request to deny the instant appeal.

Plaintiffs therefore address herein only the additional argument presented in §§1-4 of defendants' instant appeal memorandum.

## II. DEFENDANTS MISLEADINGLY OMIT ALL REFERENCE TO ORDERS PERMITTING CHANGE IN VENUE OF DEPOSITIONS; THERE ARE NO GROUNDS FOR A PROTECTIVE ORDER REGARDING ANY DEPONENT

Defendants argue that the protective order sought by them should have been granted because the depositions noticed by plaintiffs are *"unreasonable and impossible of performace on their face, in that, among other things, the notices provided for the depositions to take place before a notary public in the United States."* Def. Appeal Memo at §1. According to defendants, it is not reasonable, feasible and/or possible for any of the deponents to travel to the United States for depositions. Id. §§2-4.

This argument utterly fails, in the first place, because it completely ignores the fact that Magistrate Judge Martin has to date issued <u>two</u> orders containing express provisions permitting defendants to object to the venue of the depositions and to request that the depositions be taken without the United States:

i) The discovery order entered on January 14, 2003, expressly provided that:

*Plaintiffs may issue deposition notices to The Palestinian Authority officers and employees upon 60 days notice. The deposition notices may issue for depositions*

2

*to occur in the District of Rhode Island. The Palestinian Authority <u>may file objections to the depositions indicating with specificity their objection, such as location, etc</u>.* (Emphasis added)

ii) Likewise, the order of continuance given on May 14, 2003, which enlarged the time for defendants to complete previously noticed depositions until July 14, 2003, explicitly provided that:

*If Defendants seek to have the depositions conducted somewhere other than in the District of Rhode Island, Defendants shall file a motion seeking such relief not later than Monday, June 16, 2003.*

Id. p. 2.

Thus, the premise that is the basis of defendants' entire argument – i.e. the claim that defendants' officials are being compelled to appear for depositions in the United States – is completely false. On the contrary, defendants were granted full and repeated opportunities to request that the depositions be conducted at the venue of their choosing. Defendants have elected, of their own volition, not to utilize these opportunities.[1] It is both disingenuous and galling for defendants to now claim that the Magistrate Judge erred in denying their motion for a protective order, on the "grounds" that the depositions cannot or should not be conducted in the United States, while completely ignoring their own failure to exercise the generous mechanism provided by the Magistrate Judge to conduct the depositions elsewhere.

---

[1] In their Memorandum in Opposition to Defendants' Motion for a Protective Order, plaintiffs stated clearly that, "*Had defendants raised specific objections to the timing or location of the depositions, plaintiffs would have considered alternative dates and venues.*" p. 4  Despite plaintiffs' readiness to consider other venues, defendants have neither raised specific objections to venue (pursuant to the order of January 14, 2003) nor requested an alternative venue (pursuant to the order of May 14, 2003). It is apparent that defendants will not agree to submit to any depositions, anywhere.

In any case, defendants have provided no convincing explanation or reason why a protective order is necessary, and why depositions should not be conducted in the District of Rhode Island or elsewhere.

In respect to five of the seven deponents, defendants can muster only the lame and factually unsupported assertion that *"[a]s a practical matter, it is neither reasonable nor feasible for any of the other deponents to leave their responsibilities and duties and travel to be deposed in the United States."* Def. Appeal Memo at §4.  This unsupported excuse is too poor to merit a serious response -- much less a protective order.  Particularly so, when defendants chose not to request to have these officials deposed in a venue closer to the locale in which they perform their *"responsibilities and duties."*

Regarding Yasser Arafat, defendants argue that if he were to travel to the United States to attend a deposition, he would not be allowed to return to the West Bank.  Id. at §3 This claim, even if true (and defendants have offered no evidence that it is) would not constitute grounds for a protective order.  Under the terms of Magistrate Judge Martin's discovery orders, defendants could have requested to conduct Mr. Arafat's deposition in Ramallah, in person or by video conference.² Defendants failed to do so.³ There are therefore no grounds for a protective order.

---

² Defendants' counsel has informed the Court that he was recently able to visit Mr. Arafat in his headquarters. See Memorandum and Order Granting Motion to Enter Default, Estate of Ungar v. Palestinian Authority, 215 F.R.D. 36 (D.R.I. April 18, 2003). Indeed, the PA's own website indicates that Mr. Arafat chairs large-scale meetings in his headquarters. As recently as July 9, 2003, for example, Mr. Arafat chaired a meeting of "the Revolutionary Council of the Palestine Liberation Movement 'Fatah.'" See article *"Palestinian Ruling Party 'Fatah' Reorganizes, Reactivates Institutions,"* dated and viewed on July 10, 2003 at <www.palestine-pmc.com>, attached. This website is operated by the PA. See "*About Us*" at <www.palestine-pmc.com/about.asp>, attached.

Thus, unless and until defendants prove otherwise, there is no reason to assume that there are any logistical impediments to deposing Mr. Arafat, whether in person or by video conference.

³ Moreover, it is well established that the possibility that a deponent will face criminal arrest as a result of attending a deposition should not be considered by a court weighing the proper venue for a deposition. See e.g. Mill-Run Tours,

Finally, defendants point out that Marwan Barghouti cannot travel to the United States to be deposed, because he is currently being held without bail while on trial in the Tel Aviv District Court. Plaintiffs originally requested Mr. Barghouti's deposition in January 2002, prior to his arrest. Following the entry of the January 14, 2003 discovery order, plaintiffs' again noticed Mr. Barghouti's deposition in light of the possibility that he would be released from custody in the near future (since his arrest there have been persistent reports that Israel was considering releasing Mr. Barghouti as part of a prisoner exchange, and there is of course a chance that Mr. Barghouti will be acquitted and freed).

Plaintiffs also believe that it is possible to depose Mr. Barghouti while he is in custody, either by telephone or in person. Mr. Barghouti is a senior official of both the PA and PLO, and the fact that he is in custody does not relieve defendants of their duty and responsiblity to take all reasonable measures to ensure his cooperation with and participation in the requested deposition. Fed.R.Civ.P. 37(d). Yet, defendants have not even attempted to bring a whit of evidence showing that Mr. Barghouti is incommunicado or denied visitors, or that they have made any effort at all to comply with the deposition notice.

The orders of January 14, 2003 and May 14, 2003 required defendants to at least make a good faith effort to arrange Mr. Barghouti's deposition (e.g. by telephone) and to file an objection and/or a motion for change of venue. Defendants elected to ignore these orders, and they have made no such efforts. Defendants are therefore not entitled to a protective order in respect to the deposition of Mr. Barghouti.

---

Inc. v. Khashoggi, 124 F.R.D. 547, 550, 551-52 (S.D.N.Y. 1989), Degen v. United States, 116 S. Ct. 1777, 1782 (1996). This rule should apply afortiori where, as here, the deponent allegedly faces a consequence far less severe than criminal charges.

### III. CONCLUSION

For the reasons cited above, and in plaintiffs' Memorandum in Response to Defendants' Appeal From the Order of May 14, 2003 Continuing Hearing On Motions For Default Judgment and their Memorandum in Opposition to Defendants' Motion For a Protective Order, incorporated herein by reference, the May 27, 2003 order given by Magistrate Judge Martin was correct, proper and necessary, and was certainly not "clearly erroneous or contrary to law," Fed.R.Civ.P. 72(a); 28 U.S.C. §636; Local Rule 32(b)(2).

Therefore, the plaintiffs request that the court deny defendants' appeal and objection to the order of May 27, 2003.

>
> Plaintiffs
> By their attorneys,
> McIntyre, Tate, Lynch & Holt
>
> _____
> David J. Strachman  #4404
> 321 South Main Street, Ste. 400
> Providence, RI 02903
> (401) 351-7700
> (401) 331-6095 (fax)

### CERTIFICATION

I hereby certify that on the 10th day of July, 2003, I mailed a true copy of the within to:

Ramsey Clark, Esquire
Lawrence W. Schilling, Esquire
36 East 12th Street
New York, NY 10003

Deming E. Sherman, Esquire
Annemarie M. Carney, Esquire
EDWARDS & ANGELL, LLP
2800 Bank Boston Plaza
Providence, RI 02903

_____

News

About Us   Contact Us   Who's Who   FeedBack   Director



PALESTINE MEDIA CENTER

Time in Palestine 07:41:40 ã, 10/07/2003

Featured News

News
Statements
Press Conferences
Op-Ed / Articles
Letters
Reports
Documents
Polls

# Palestinian Ruling Party 'Fatah' Reorganizes, Reactivates Institutions

**10/07/2003**                                                                                                    Em

Palestine Media Center- (PMC)

Following a meeting chaired by President Yasser Arafat in Ramallah Wednesday, the Revolutionary Council of the Palestine Liberation Movement "Fatah," decided to reactivate the Palestinian ruling party's institutions and to institutionalize the Palestinian leadership's various missions, with effective follow-up mechanisms.

The Revolutionary Council (RC) "stresses the necessity to work towards the institutionalization of the frames mandated with negotiations, security, organization and reforms," the RC's Secretariat said in a statement reported by the official Palestinian news agency WAFA on Wednesday.

The RC stressed also "the commitment to clear and effective follow-up mechanisms by the Palestine Liberation Organization (PLO) and the Palestine National Authority (PNA)," the statement added.

Confirming further the future leading role of Fatah, the RC stressed the "urgency to put into effect the decisions of the Revolutionary Council and the Central Committee (of Fatah) with respect to reorganizing the movement, and to reactivate the Mobilization and Organization Office to secure the participation of all its members, in order to reach out to all the organizational ranks of the movement inside and outside" the homeland, the statement said.

The statement stressed the necessity "to hold the meetings of the Revolutionary Council on a regular basis, to be attended by all its members, (and to respect) the legal quorum, in order to enable the RC assume its leading role in drawing up the movement's policies and follow up the implementation of its decisions."

Politically, the RC insistently rejected the resignation of the PNA Prime Minister Mahmud Abbas (Abu Mazen) from Fatah's Central Committee.

The Central Committee late Tuesday unanimously rejected PM Abbas's resignation, in an effort "to contain a burgeoning unprecedented and acute crisis," which threatened his government, Palestinian daily Al-Ayyam reported Wednesday.

Palestinian legislator Saeb Erekat on Wednesday told CNN: "President (Yasser) Arafat said he and the Central Committee rejected (Abbas's) resignation and will do everything in their power to support (him) and to convince him to retract his resignation."

Abbas submitted his resignation on Tuesday in a letter to President Arafat, who heads the PLO's mainstream Fatah movement.

In a separate letter to Fatah's central committee, the prime minister challenged the organization to outline a different policy toward the Israeli government and said he was ready to step down if his own line was at fault.

Israeli government's selective and fragmental policy to implement Israel's obligations stipulated by the "roadmap" to Palestinian – Israeli peace has led to a crisis, which threatened Tuesday the survival of the Palestinian government of Prime Minister Abbas as well as the Palestinian – Israeli talks on the US-sponsored "roadmap" peace plan.

The RC confirmed Fatah's commitment to the implementation of US-sponsored and internationally - adopted and drafted "roadmap" plan for Palestinian-Israeli peace-making and called for an "international mechanism to follow up" the implementation of the Israeli obligations as stipulated thereby.

The Council also urged "all Palestinian political and popular groups to act to stop violations" of the Huda (truce) and hailed the adherence by "Palestinian factions to the Palestinian ceasefire initiative."

PMC © All Rights Reserved

| | News |
|---|---|

About Us   Contact Us   Who's Who   FeedBack   Director



**PALESTINE MEDIA CENTER**

Time in Palestine 07:40:46 ã10/07/2003

**About Us**

News
Statements
Press Conferences
Op-Ed / Articles
Letters
Reports
Documents
Polls

**Mission Statement:**

1. The Palestine Media Center henceforth the (PMC) is an independent official institution established in November 2001. The PMC is under the direct supervision of Mr. Yasser Abed Rabbo, Minister of Culture and Information of the Palestinian National Authority.

2. The decision to establish the PMC stemmed from the urgent need to provide a reliable and professional media source that will cater the media with accurate, timely and informative news relevant to the Palestinian reality.

3. The PMC will formulate a media strategy to present and transmit the official position on various issues of concern to the Palestinian cause, and reality in terms of politics, economics and culture.

4. The PMC serves as;

- a networking agency that will be at the disposal of International and local journalists. Networking will include a dynamic coordination mechanism with **officials in the Palestinian National Authority**
- a podium for official speech directed to the international public opinion.