UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.

vs.                                         C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO PLAINTIFFS' MOTION FOR JUDGMENT BY DEFAULT PURSUANT TO FED.R.CIV.P. 55(b)(2)**

Defendants PA and PLO have filed a "Motion For Enlargement Of Time To Respond To Plaintiffs' Motion For Judgment By Default Pursuant To Fed.R.Civ.P. 55(B)(2)."

Though misleadingly styled as a motion for "Enlargement of Time," defendants' motion is in fact a motion for a <u>stay</u> <u>of</u> <u>all</u> <u>pending</u> <u>proceedings</u> in this action, until after the disposition of defendants' claims to sovereign immunity.

The Court has already denied prior motions by these defendants seeking the identical relief on identical grounds. Defendants' motion is yet another in a long series of bad-faith attempts to stall this litigation. Therefore, and for the further reasons stated below, plaintiffs oppose and request that the Court deny defendants' motion.

**I.    DEFENDANTS' MOTION HAS BEEN PREVIOUSLY MADE AND REPEATEDLY DENIED**

Defendants are seeking to stay all further proceedings in this action[1] until after the Court

---

[1] In the wake of the entry of defendants' default on April 18, 2003, and defendants' absolute refusal to conduct any discovery or depositions in this case, plaintiffs' three pending parallel motions for judgment by default (one pursuant to Rule 55(b)(2) for failure to answer, a second pursuant to Rule 37 for failure to conduct discovery and a third, also pursuant to Rule 37, for failure to conduct depositions) are the only proceedings remaining in this action. The latter two motions were referred to Magistrate Judge Martin who heard the argument on May 14 and July 14 and indicated that a decision will be rendered shortly.



enters a decision disposing of defendants' latest attempt (in the form of a Rule 12(b)(1) motion) to raise a claim to sovereign immunity. Def. Memo p. 3. As grounds for this request, defendants argue that they should not be *"forced to bear the burdens of litigation"* until their latest sovereignty arguments are determined. Id.

**This <u>identical argument</u> has been previously raised by defendants and rejected by the Court:**

In a decision given on November 4, 2002, this Court found that neither the PA nor the PLO is a foreign state. In a "Motion for Reconsideration" filed by defendants on November 20, 2002, defendants requested, *"that a stay of further proceedings other than those bearing on immunity be issued"* pending the reconsideration of their claims to sovereign immunity by this Court and pending an interlocutory appeal of the immunity claims to the Court of Appeals. Id. p. 1.

On April 11, 2003, the Court held a hearing on the November 20, 2002 motion, and denied the motion for reconsideration of the immunity claims. At the hearing, defendants <u>twice</u> reasserted their request for a stay, complaining (exactly as they do now) that they should not be made to bear the *"infliction of [the] burdens of litigation,"* until a final disposition of their sovereign immunity claims in the Court of Appeals. Tr. 4/11/03, pp. 8-9. The Court categorically denied defendants' motion for a stay pending disposition of their sovereign immunity claims, stating that, *"This case is going forward whether or not there is an interlocutory appeal"*. Id. p. 9.

---

Along with the instant motion requesting to stay the Rule 55(b)(2) motion, defendants have filed a separate motion to Magistrate Judge Martin seeking to stay all proceedings on the two Rule 37 motions until defendants' immunity claims are determined.

After defendants persisted in raising their demand for a stay a second time in the same hearing, the Court rejected it a second time, no less categorically,

> [MR. CLARK:] I would ask this, may it please the Court, for you to consider a stay pending our ability to obtain a stay if they are willing to grant it in the First Circuit.
>
> THE COURT: I have already decided that. I said there will be no stay of this proceeding - -
>
> MR. CLARK: This is a different - -
>
> THE COURT: - - pending appeal.
>
> MR. CLARK: If you denied it that's all we need.
>
> THE COURT: This case is going forward.

Id. p. 12.

Yet, brazenly ignoring the Court's unequivocal April 11, 2003 ruling that defendants are not entitled to a stay pending "final determination" of their immunity claims, and that this case will proceed, defendants now – for the third time – seek to stay all proceedings until this Court issues a new decision on their immunity claims.

Thus, the "*burdens of litigation*" argument raised in the instant motion has been previously, and repeatedly, rejected by the Court. That alone is sufficient grounds to deny the instant motion.

## II. THE DISPOSITION OF DEFENDANTS' LATEST IMMUNITY CLAIM SHOULD BE INCLUDED IN THE COURT'S JUDGMENT IN THIS ACTION

The sole purpose of the instant motion is to have this Court issue a separate decision on defendants' latest immunity claims prior to the entry of final judgment in this action, rather than have the disposition of those claims included in the Court's final judgment.

3

Defendants' plan here is transparently obvious: if the court issues a separate decision denying defendants' immunity claims, defendants will immediately file a notice of appeal and a motion for a stay with the Court of Appeals (exactly as they did previously). Defendants presume (probably correctly) that briefing, arguing and determining defendants' claim to a right of interlocutory appeal under the "collateral order" doctrine (a claim strongly disputed by plaintiffs) would be a lengthy process, and might well delay proceedings in this Court – i.e. entry of final judgment -- for a extensive period.

Defendants should not be allowed to set this scheme in motion. This case has been pending for nearly three and one-half years. Defendants have intentionally defaulted this action, and stonewalled and openly disobeyed this Court in an outrageous and unprecedented fashion. Entry of judgment by default is now inevitable, as defendants are well aware. The instant motion is simply a dilatory, bad-faith, last-ditch attempt to freeze this action one inch from the finish line.

While the entry of judgment in this suit will necessarily require the Court to address the arguments raised in defendants' Rule 12(b)(1) motion, there is no reason whatsoever for the Court to issue a <u>separate decision</u> on defendants' motion <u>prior</u> to the final judgment.

**On the contrary, judicial efficiency and economy dictate that the disposition of defendants' claim be included in the Court's final judgment in this action.** By contrast, artificially delaying the final disposition of this action in order to grant defendants the piecemeal decision and farfetched attempt at appellate review they seek would be a colossal waste of judicial resources and severely prejudice the plaintiffs.

Defendants have had three and one-half years to raise a properly supported claim of sovereign immunity. Since the outset of this action they have filed a brief specifically on the

4

matter of personal jurisdiction,[2] as well as two previous motions to dismiss, none of which raised this claim at all. Defendants then filed a "motion for leave" to raise claims of sovereign immunity as well as a "motion for reconsideration" asserting this claim. When this Court rejected these claims, defendants attempted to appeal to the Court of Appeals. Thus, defendants have had repeated opportunities before this Court, and before the Court of Appeals, to have their claims determined, reconsidered and reviewed on appeal. There is no reason to further indulge the defendants by allowing them to artificially carve-out a further significant delay in the normal course of these proceedings, at the expense of the Court and the plaintiffs.

Defendants are certainly entitled to full appellate review of this Court's disposition of their latest attempt to claim sovereign immunity. Defendants will have a full opportunity to receive this appellate review: when they appeal the final judgment in this action. Defendants will therefore suffer no prejudice whatsoever, if the Court's disposition of their sovereign immunity claims is included in a final judgment.

By contrast, plaintiffs will suffer severe prejudice, in the form of further, unjustified, lengthy delay, if defendants' motion is granted.

### III. DEFENDANTS PRESENT NO GROUNDS TO JUSTIFY A FURTHER DELAY

Finally, defendants' motion presents no grounds whatsoever in support of their attempt to *"reorder the matters that are pending,"* Def. Memo pp. 1-2 (as they euphemistically term this gambit to manipulate this Court's calendar and manufacture further wasteful delay) and to halt the denouement of this action.

---

[2] At a hearing on September 20, 2000, the Court instructed parties to brief the issue of personal jurisdiction in this action. Since the exercise of personal jurisdiction over foreign states is controlled exclusively by the Foreign Sovereign Immunities Act, see 28 U.S.C. §1330(b); Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 485 n.5 (1983) (a claim to sovereign immunity necessarily implicates the issue of personal jurisdiction). Yet, plaintiffs'

The gravamen of the instant motion is defendants' shopworn *"burdens of litigation"* argument made in purported reliance on <u>In re Papandreou</u>, 139 F.3d 247 (D.C. Cir. 1998). This argument fails totally, for several reasons:

i) No further "burdens of litigation" remain. Mr. Clark candidly admitted to Magistrate Judge Martin on April 1, 2003 that after receiving the Court's November 4, 2002 decision, he traveled to Ramallah to meet with the defendants[3] and "My instructions have been do not answer, do not take any steps that would replace (sic) us here . . . " (Tr. 4/1/03 p.6) Similarly, he informed Magistrate Judge Martin on July 14, 2003 that he was instructed not to respond to discovery despite orders of January 14, 2003 and May 14, 2003. Hence, defendants have clearly informed the Court repeatedly that the litigation process has effectively ended. This case is then ripe for final disposition;

ii) After the Court rejected this very argument in its decision of April 11, 2003, defendants filed a notice of appeal with the Court of Appeals for the First Circuit, along with an expedited motion for a stay of proceedings in this court, pending their appeal. The Court of Appeals did not grant defendants' expedited motion for a stay. Instead, on May 27, 2003, the Court of Appeals summarily affirmed this Court's decisions of November 4, 2002 and April 22, 2003, denying defendants' sovereign immunity claims stating that the appeal was "devoid of merit" and admonished defendants for their failure to comply with "the rules which govern all litigants." <u>Ungar v. The Palestinian Liberation Organization</u>, No. 03-1544 (1st Cir. May 27, 2003).

---

memorandum on personal jurisdiction made no mention at all of this claim.

[3]"I went to Rhamalla (sic) in mid December, the 15th and 16th, maybe the 16th and 17th of December, and met with the leadership, including President Arafat. This was the only business that I had, this case, and several cases, but this

Since this Court determined - even <u>before</u> the appeal of defendants' immunity claims - that defendants were not entitled to a stay, that determination applies <u>a</u> <u>fortiori</u> now that defendants have lost their appeal and this Court's immunity decisions have been affirmed;

iii) Most importantly, the principle enunciated in <u>Papandreou</u> does not even apply to the instant defendants. <u>Papandreou</u> stands for the proposition that an <u>acknowledged foreign state</u> generally immune from suit should not be faced with the burdens of litigation until there has been a final determination that an exception to immunity exists under the FSIA. Thus, this rule applies only to defendants which are <u>acknowledged foreign states</u>, in actions brought by plaintiffs alleging an <u>exception to immunity</u> under the FSIA.

Neither <u>Papandreou</u> nor any other case supports defendants' implied theory that <u>any</u> defendant <u>claiming to be</u> a foreign state is entitled to a final determination of that claim before any further proceedings.[4] Thus, defendants' attempt to rely on <u>Papandreou</u> contains an inherent logical fallacy, because it assumes as a given the very issue which is in dispute: defendants' claim to statehood. Since defendants have failed to show that they are foreign states to begin with, <u>Papandreou</u> is completely inapposite.

Indeed, not only have defendants failed to demonstrate statehood, but in its November 4, 2002 decision this Court made an <u>affirmative finding</u> that neither plaintiff enjoys sovereign status

---

is the one we call the lead case." (Tr. 4/1/03, pp.8-9)

[4] Indeed, if defendants' theory were adopted, any dilatory, bad-faith defendant could delay litigation for years simply by raising a specious claim to be a "foreign state" within the definition in the FSIA. This definition includes agencies and instrumentalities of foreign states, corporations a majority of whose shares are held by a foreign state, as well as officials and employees of a foreign state (including officials and employees of agencies and instrumentalities of a foreign state). 28 U.S.C. §1603. See e.g. <u>El-Fadl v Central Bank of Jordan</u> 75 F3d 668 (D.C. Cir. 1996) ("An individual can qualify as an "agency or instrumentality" of a foreign state.").

Thus, if defendants' attempt to rely on <u>Papandreou</u> were accepted, any bad-faith defendant (especially a foreign defendant) desirous of delaying litigation and increasing costs to the plaintiff could simply raise a claim to be an agent or official of a foreign state, or to be majority-owned by a foreign state.

or immunity. While the Court of Appeals' May 27, 2003 decision indicates that it is "likely" that defendants may still be able to challenge this finding, this finding necessarily remains in force unless and until defendants succeed in reversing it.

Defendants have no chance of reversing this finding, because their claim to statehood is frivolous. Indeed, this Court's finding that neither defendant is a foreign state accords fully with the conclusions reached in a recent book-length treatise authored by Professor Geoffrey R. Watson, a scholar of international law. After conducting a lengthy legal and factual analysis of the current status of the PA and the PLO, Professor Watson concludes that the *"PLO is no more a state now than it was"* in the past, and that *"neither the PLO nor the PA has yet acquired statehood."* Geoffrey R. Watson, <u>The Oslo Accords: International Law and the Israeli-Palestinian Peace Agreement</u>, Oxford University Press (2000) pp. 73-4, 68.

Therefore, defendants' attempt to arrogate to themselves the litigation privileges afforded actual foreign states, in putative reliance on <u>Papandreou</u>, should be rejected out of hand.

The remaining "grounds" for defendants' motion is the claim that plaintiffs' Motion for Entry of Judgment by Default Pursuant to Rule 55(b)(2) raises significant new issues for the Court to consider. This claim is utterly false:

i) It is not true that, *"One important issue that requires development is that the PA lacks minimum contacts with the United States . . . "* Def. Memo at 4, or that the exhibits attached to plaintiffs' motion raise *"for the first time substantial new factual and legal issues,"* <u>Id</u>. at 2, relating to personal jurisdiction.

On the contrary, this Court has already determined (in its decision of July 24, 2001) that the prima facie jurisdictional facts demonstrated by plaintiffs constitute "minimum contacts" with the United States sufficient to establish personal jurisdiction. Plaintiffs' motion requests

only that the Court determine, for the purpose of entering default judgment, that these jurisdictional facts (which were not disputed by defendants and are based on documents originating from the U.S. government or defendants themselves) have been proven by the "preponderance of the evidence." To that end, plaintiffs resubmitted the supporting documents with an affidavit attesting to their origin and authenticity.

Thus, plaintiffs' motion merely requests that the Court deem the factual documentation previously submitted and not contested, to be proven by the preponderance of the evidence. This is a simple, purely legal determination based on the existing record.

ii) Likewise, it is not true, as defendants claim, that *"several allegations of the amended complaint are not well-pleaded. These need to be identified and rejected if and when default judgment is entered."* Def. Memo at 5.

In fact, in its decisions of July 24, 2001 and November 4, 2002, this Court denied defendants' motion to dismiss for failure to state a claim, and expressly found that the amended complaint states a claim under both 18 U.S.C. 2333 and the supplemental cause of action. This issue is therefore long settled.

In sum therefore, nothing in defendants' motion justifies the artificial and dilatory relief sought by defendants, which is intended to, and would in fact, severely prejudice plaintiffs.

As Magistrate Judge Martin previously emphasized in response to defendants' contumacious behavior, *"Plaintiffs have a right to have this action proceed."* <u>Ungar v. The Palestinian Authority</u>, 215 F.R.D. 36, 40 (D.R.I. 2003).

## IV. CONCLUSION

Plaintiffs request that the court deny defendants' motion, and grant the relief requested in plaintiffs' Motion For Relief Pursuant to Local Rule 12(a)(2), submitted simultaneously with this memorandum.

Plaintiffs<br>
By their attorneys,<br>
McIntyre, Tate, Lynch & Holt<br>
<br>
_____<br>
David J. Strachman   #4404<br>
321 South Main Street, Ste. 400<br>
Providence, RI 02903<br>
(401) 351-7700<br>
(401) 331-6095 (fax)

### CERTIFICATION

I hereby certify that on the 16th day of July, 2003, I faxed and mailed a true copy of the within to:

Ramsey Clark, Esquire
Lawrence W. Schilling, Esquire
36 East 12th Street
New York, NY 10003

Deming E. Sherman, Esquire
EDWARDS & ANGELL, LLP
2800 Bank Boston Plaza
Providence, RI 02903

_____

\\Server\common\MISCELLANEOUS\Ungar\motions\Response to D's Motion for Enlargement 7-16-03.doc