```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF RHODE ISLAND

 3

 4
        * * * * * * * * * * * * * * *        C.A. NO. 00-105L
 5                                    *
       ESTATE OF YARON UNGAR, et al   *
 6                                    *
            VS.                       *        JULY 30, 2003
 7                                    *        11:00 A.M.
       THE PALESTINIAN LIBERATION     *
 8     ORGANIZATION, et al            *
                                      *
 9      * * * * * * * * * * * * * * *        PROVIDENCE, RI

10

11          BEFORE THE HONORABLE RONALD R. LAGUEUX,

12                 SENIOR DISTRICT JUDGE

13          (Objections to Magistrate's Orders)

14

15     APPEARANCES:

16     FOR THE PLAINTIFFS:     DAVID J. STRACHMAN, ESQ.
                               McIntyre, Tate, Lynch & Holt
17                             321 South Main Street, Suite 400
                               Providence, RI   02903

18     FOR THE DEFENDANTS:     DEMING E. SHERMAN, ESQ.
                               Edwards & Angell
19                             2800 Financial Plaza
                               Providence, RI   02903

20                             LAWRENCE W. SCHILLING, ESQ.
21                             Ramsey Clark & Lawrence W.
                               Schilling Law Offices
22                             36 East 12th Street
                               New York, NY   10003

23
       Court Reporter:         Karen M. Zinni, RPR-RMR-CRR
24                             One Exchange Terrace
                               Providence, RI   02903
25
```

FILED

AUG 12 2003

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

ORIGINAL

```
 1    30 JULY 2003 -- 11:00 A.M.
 2         THE COURT:  Good morning, everyone.  The matter
 3    before the Court is Civil Action 2000-105L, the Estate
 4    of Yaron Ungar and others versus The Palestinian
 5    Authority and others.  The matter is here on four
 6    appeals or objections to orders entered by the
 7    magistrate judge.
 8         The first one is an objection to an order
 9    granting Plaintiffs' motion to strike all of these
10    objections and appeals by the PA Defendants.  The
11    second one is the PA Defendants' objection to a
12    memorandum and order granting Plaintiffs' motion to
13    enter default.  The third one is the PA Defendants'
14    notice of appeal from an order continuing hearing on
15    motions for default judgment.  And finally, the PA
16    Defendants have filed a notice of appeal of a denial of
17    Defendants' motion for a protective order against
18    depositions.
19         I will hear those four matters.  And rather than
20    take them separately, I'll hear arguments on them as a
21    whole.  Will the attorneys identify themselves for the
22    record, please.
23         MR. STRACHMAN:  David Strachman for the
24    Plaintiffs.
25         MR. SCHILLING:  Lawrence Schilling for the
```

1    Defendants, your Honor.

2         MR. SHERMAN:  Deming Sherman for the Defendants.

3         THE COURT:  All right.  I'll hear from the PA

4    Defendants on each one of these appeals or objections.

5         MR. SCHILLING:  Thank you, your Honor.  If it

6    please the Court, we think it makes sense to consider

7    all of these objections as a whole because they have

8    common issues.

9         THE COURT:  That's right.  I want to save time.

10   I want to save time instead of rehashing on each one.

11   So you can make your full arguments on each one of

12   these orders.

13        MR. SCHILLING:  The essential source of problem

14   is the --

15        THE COURT:  Please speak into the microphone.

16        MR. SCHILLING:  -- is the importance to the

17   Defendants of their claim of sovereignty and the

18   doctrine that they should not be required to bear the

19   burdens of litigation, specifically in this case

20   required to answer or required to make discovery, until

21   there's a final determination of their right to

22   immunity and related issues.  This is not new.

23        And the second factor, and it's a matter of

24   great concern, is the disruption, the possible

25   disruption of the peace process and the roadmap

1    negotiations that are ongoing that might occur if there

2    was -- if the action moved forward.

3         And the third factor is the difficulty that the

4    Defendants face in making discovery and appearing for

5    depositions.  It's difficult, if not impossible.  The

6    Plaintiffs go on and on about the urging litigation

7    over the difficulty of the conditions.  We think that

8    this is perhaps a -- it's important, but it's a

9    secondary issue because the basic concern here that the

10   Palestinian government has is in protecting itself and

11   preserving the rights of its people, millions of

12   people, and in moving forward in a constructive way

13   with the peace process.

14        The orders come up in the context, I think your

15   Honor's familiar with them, but I'll just mention them

16   briefly.  There was a hearing before your Honor on

17   April 11th, and at that hearing your Honor indicated

18   that the Defendants' motion for reconsideration of the

19   order to -- the denial of the motion to dismiss would

20   be forth -- would be denied.

21        An order issued on April 22nd, and we appealed

22   on that day, took an interlocutory appeal to the First

23   Circuit.  So that the first of the orders that's at

24   issue here was issued prior to the appeal, and the --

25   the first two were on April 18th.  The appeal was on

1    April 22nd.

2    The May 14th order was issued while the appeal

3    was pending, and indeed we applied to the magistrate at

4    a hearing on May 14th that the hearing be continued

5    until after the appeal.  The magistrate denied that

6    motion, and he issued one order, the May 14th order, on

7    the same day; and he issued the May 27th order which

8    was discussed at the May 14th hearing on the 27th.

9    And also on May 27th the Court of Appeals

10    rendered its judgment.  It's a short judgment.  The

11    Court of Appeals was aware that the May 14th order had

12    been entered.  We filed a designation, the rules of

13    appellate procedure when a motion for a stay is

14    pending, and we moved for a stay on the same day that

15    we filed an appeal, parties can designate for filing in

16    the Court of Appeals the -- any documents in the

17    District Court.

18    So we had the May 14th order called to the

19    attention of the Court of Appeals, and the Court of

20    Appeals rendered a decision that's susceptible of

21    several interpretations; but pursuant to the Court of

22    Appeal's judgment, we read it to suggest that a

23    properly supported Rule 12(b)(1) motion could be filed.

24    The judgment says, "They have not yet answered the

25    Complaint, and we do not discount the fact that they

1    may still be able to file a properly supported

2    Rule 12(b)(1) motion below.  This seems especially

3    likely given the jurisdictional implications of the

4    issue and the Appellee's characterization of the

5    Court's immunity ruling as interlocutory."

6         And they also went on to say, "This order is

7    without prejudice to the Appellants raising their

8    sovereign immunity defense in a proper and timely

9    manner.  We take no view as to the merits of that

10   defense."

11        At the time they wrote this, the Court of

12   Appeals was aware, or at least had before it, the fact

13   that the magistrate had entered a default with respect

14   to the lack of an answer.

15        I mention these things, your Honor, because

16   they -- we filed a properly supported motion on

17   June 13th.  I think Mr. Strachman's objection, I'm

18   assuming he will object, is due tomorrow; and we

19   consider the motion to be extremely important, and it

20   provides a further basis for our urging, as we have

21   been urging all along, that the grounds with which I

22   began and the importance to the Palestinian government

23   and people of their immunity defenses and the -- and

24   their right to be free of the burdens of litigation

25   until there's a final determination of the issue.

1    I think that's pretty much what I have to say,

2    your Honor.  The arguments that the Plaintiffs go on

3    about are, I think, not central to this basic ground of

4    our concern.  With respect to the May 14th order, I

5    think that the Plaintiffs make a number of

6    misstatements or exaggerations about the -- what the

7    papers have to say about the relationship between the

8    Palestinian government and Hamas.

9    At the time that the papers were being written,

10    there was a front page discussion of the negotiations

11    that were going on between the Palestinian government,

12    and that would be Prime Minister Abbas, and Hamas about

13    the cease-fire.  And it was crucial to the roadmap

14    going forward that there be some progress made in this

15    area, and that's what we referred to specifically in

16    our papers.

17    And we said that the -- this case and the

18    discovery being sought has at its heart a subject that

19    is crucial to the acceptance and initial implementation

20    of the roadmap, the relationship between the

21    Palestinian Authority and Hamas.  And we were referring

22    here to these ongoing negotiations, which were front

23    page news and which are extremely important.

24    The Plaintiffs, I think, have mistakenly

25    characterized this as what they say is the relations

1    between the Palestinian government and Hamas are at the

2    heart of this case, as the Defendants themselves

3    candidly admit.  I think that's -- that overstates the

4    matter and that we were simply referring to the

5    cease-fire negotiations that were going on.

6         The Plaintiffs also make an argument that

7    because there was a lack of objection to the

8    magistrate's earlier order on discovery, I think it was

9    in January, that there's some sort of a waiver of the

10   points that are being raised.  I think there's nothing

11   to that.

12        They cite a case which, in fact, points out that

13   the preclusion of the argument occurred in a

14   situation -- this is the *Sunview* case, your Honor,

15   which Plaintiffs cite in their response to our

16   May 14th submission.  And the Court said that *Sunview*

17   never sought to have the District Court review the

18   magistrate's ruling, and so it couldn't be reviewed on

19   appeal.

20        I think the matter of discovery, which is the

21   subject of these orders, is fully before the Court and

22   has been raised and that there's no merit at all to the

23   Plaintiffs' argument that there's been a waiver which

24   is irreversible.  That's it, your Honor.

25        THE COURT:  All right.  Mr. Strachman?

1    MR. STRACHMAN:  Thank you, your Honor.  The

2    Plaintiffs -- excuse me, the Defendants would have us

3    now stop this litigation 40 months after it began,

4    after two motions to dismiss were denied, after the

5    First Circuit said this case was going forward, after

6    your Honor has repeatedly said it's going forward,

7    after discovery orders that said it granted them time

8    after time to comply, and all because now, last month,

9    they filed a new third motion to dismiss the case on

10    issues that Mr. Clark himself identified as being

11    crucial issues but he never fully briefed in his four

12    previous attempts to dismiss the case.

13        And I say four because there was the initial

14    motion to dismiss.  When we argued before your Honor in

15    September of 2000, your Honor suggested that the

16    Defendants submit an additional brief on the issue of

17    jurisdiction.  They did so, and we filed an Amended

18    Complaint.  They moved to dismiss that.  That was their

19    third attempt.  And then they filed a motion for

20    reconsideration.

21        In each of those four motions, they had an

22    opportunity to raise issues which they now say are

23    crucial and which should bring this 40 months of

24    litigation to a crucial halt.  The problem is, when

25    Mr. Clark himself filed the motion for pro hac vice for

1  admission into this Court, he identified these very

2  issues.  He said this was a crucial issue, whether the

3  PA -- whether the PLO is a state.  They chose not to

4  raise these issues four previous times.  Now they have

5  litigation stopped because of their own methods and

6  strategies of litigation.

7       The First Circuit said that was improper.  The

8  First Circuit said they have to comply with the rules

9  like all other litigants.  In the meantime, there are

10  several things that have happened.  First, Judge, in

11  terms of the motion to strike, your Honor granted a

12  similar motion to strike admonishing the Defendants not

13  to provide scurrilous materials in the pleadings and

14  personal attacks on people who aren't even attorneys in

15  this case.  In fact, in one instance the attack was on

16  the husband of a woman who was a lawyer who's not

17  involved in this case.

18       The Court admonished the Defendants not to

19  continue that conduct.  Judge Martin admonished them

20  similarly in his order, and that type of attack has no

21  place in this litigation.  It's entirely inappropriate,

22  and I would ask your Honor to adopt the same type of

23  ruling that you did when you heard this matter, I

24  believe it was, on April 11.

25       In terms of the motion to enter default, as the

1    Defendants were aware, and it was explicitly pointed

2    out to them, when this Court rendered a decision on the

3    motion to dismiss the Amended Complaint on November 4,

4    the rules say they have 10 days to file an answer.  We

5    waited, I believe, 150 days to file a motion to

6    default.

7         After now six months, they still have not filed

8    an answer.  They refuse to file an answer.  And the

9    kicker, Judge, is that when we were before Judge

10   Martin, Mr. Clark said very honestly and I think very

11   frankly, he informed the Court on page 6 of the

12   transcript of April 1, he said very clearly, I met with

13   Mr. Arafat.  I traveled to Ramallah in December after

14   your Honor's ruling.  I went primarily for the purpose

15   of discussing this case and some parallel cases, but

16   primarily this case.  And he says, quote, "My

17   instructions have been, 'Do not answer.'"  That's what

18   he heard on December 15 or December 16 in his meetings

19   with Mr. Arafat and the senior leadership of the PLO.

20        He also said in his response to our motion to

21   default, quote, "Drafting and filing an answer is

22   within Defendants' limited capabilities, though

23   inadvisable."  So basically they're saying this

24   litigation is going to come to a halt because people

25   who live in another country, who are not here before

1   the Court, his own clients, don't want to comply with

2   the rules and don't want to comply with the Court

3   orders and the requirements of litigation in this case.

4        They cite a letter from a Mr. al-Kidra, who

5   apparently is some sort of employee of the PLO or PA in

6   New York.  It's unsigned.  It's unsworn.  Judge Martin

7   said it's inadmissible; and even though he reviewed it,

8   he said it provides no basis for not filing an answer.

9        By the way, your Honor, now several months later

10  we still don't have an answer.  So 40 months into this

11  case, seven or eight months after you ruled on

12  November 4, they still refused to file an answer.

13       In terms of the May 14, '03, order which they

14  have appealed, Judge, it's somewhat shocking that they

15  would appeal such an order because in that order we

16  asked Judge Martin to enter default that day.  And

17  Judge Martin, as a matter of providing every possible

18  courtesy to the Defendants, gave them an additional two

19  months to comply with discovery obligations.  And he

20  said you can have until July 14, and I believe it was

21  July 12 or July 13 we received a letter from opposing

22  counsel saying they're not going to comply.

23       So I don't know how you can file -- how you can

24  appeal an order giving even more time to do what you

25  were supposed to do back in December.

1    And in terms of the May 27 motion for protective
2  order, in December we argued a motion to compel.   On
3  January 14, an order entered.   That order, by the way,
4  your Honor, took a month to enter because Mr. Schilling
5  and I had several drafts back and forth to make sure it
6  complied exactly with what Judge Martin wanted.   And
7  except for one tiny difference, we submitted virtually
8  identical orders.
9    That order told them they have to comply with
10 discovery.   They have to present witnesses on 30 days'
11 notice.   It also, most importantly, said if they can't
12 present the witnesses, if they can't comply with the
13 discovery, the interrogatories, the Request for
14 Production of Documents and the Request for Admissions,
15 they could object and they could file proper objections
16 item by item and say why they wanted to object.
17    Instead of doing that, several months later they
18 file a request for protective order effectively trying
19 to undermine what Judge Martin already did.   They can't
20 do that, and the law of the case is that they must
21 comply.   Under Rule 72, they've got to take an appeal
22 within 10 days of the entry of the January 14 order.
23 They never did that.   They never appealed.
24    So they attempt to make a back-door attempt to
25 undo that order.   And what's most egregious is, instead

1    of coming to us and saying to us, Look, we can't bring

2    this person but we could bring somebody else, I can't

3    give you these documents but here are the documents we

4    can bring, I can't answer these admissions but I can

5    answer these, they make absolutely no attempt to

6    respond in any way, and they're very frank about that.

7        In repeated hearings before this Court and

8    before Judge Martin, Mr. Clark has said he's been

9    instructed not to respond to discovery, and he told

10   Judge Martin that again two weeks ago at the hearing

11   that we had.

12       Under Rule 26, they have a duty to confer with

13   us, to ask us to engage in a discussion as to how

14   they're going to comply, whether they can comply,

15   whether there can be alternatives to the location or

16   method of depositions, et cetera.  Absolutely refused.

17   I went out of my way three weeks in advance of the

18   March 31 commencement date of the depositions to write

19   a letter to my brothers and say, Are they coming?  You

20   know, can we discuss this?  Is there a way to handle

21   this?  Because the pleadings that were being filed

22   repeatedly said, We're not complying.

23       So I wrote again saying, What can we do to

24   facilitate that?  Absolutely no response, and then the

25   absolute kicker.  On the very first day that the

KAREN M. ZINNI, RPR-RMR-CRR

1    depositions were supposed to begin in this court

2    pursuant to -- in this jurisdiction pursuant to Judge

3    Martin's order, the PA refused to produce anybody; but

4    what they did do is in a case in Washington called

5    the Bucheit case, they brought a senior official to

6    Washington.  He took depositions that very same day,

7    and two days later he appeared at a trial in Washington

8    as well, a case that the PA and the PLO are defending

9    actively, have answered and provided discovery,

10    complied with Court orders for discovery and

11    participated.

12         So what we have is very selective participation

13    in litigation, and we have a blatant disregard for the

14    repeated orders of this Court and repeated suggestions

15    by your Honor and by Judge Martin that this case is not

16    a political case.  It's not run by political parties on

17    behalf of the Plaintiff.  It's run by human beings who

18    were killed and whose families were killed and simply

19    want to move forward after 40 months.

20         I have provided to the Court, I think several

21    times, in the Bucheit case a deposition of Mr. Ghassan

22    Ramadan who testified.  I also provided to the Court

23    another deposition transcript or a transcript of a

24    hearing that occurred in Jerusalem at the very same

25    time, March of 2000, when the PA is producing all kinds

1    of witnesses to court in Jerusalem.

2         So to say they can't do this is very selective.

3    They refused to comply with this Court's orders.   In

4    other countries, in other jurisdictions, they're

5    perfectly willing to comply.  And I think finally after

6    40 months this -- these pleas have to fall on deaf ears

7    because they're basically saying we're coming to the

8    end of the litigation, we're not going to participate.

9         So in light of that, Judge, last week we made

10   two requests of the Court.  We asked the Court to

11   consider their motion, their third -- the motion for

12   entry of default judgment, which they have not

13   responded to.  We've asked the Court to rule on that

14   and determine that pursuant to Rule 12(a)(2) of the

15   local rules that it's deemed granted because they

16   failed to respond.

17        Your Honor gave them two additional periods of

18   time to file answers.  Then they file a motion saying

19   we don't want to respond, we want to wait indefinitely

20   to respond.  And in that time your Honor referred that

21   matter to Judge Martin, who scheduled a hearing on

22   August 15th.  They still haven't responded, even though

23   it's on the calendar for August 15.

24        Additionally, your Honor, in terms of the Report

25   and Recommendation that Judge Martin gave on July 3

1    concerning the entry of default judgment against Hamas,

2    the 10-day appeal period or objection period ended last

3    Monday.  And on Tuesday we filed with the Court a

4    request for entry of final judgment as well as proposed

5    final judgment, and the Court's --

6         THE COURT:  I'm going to deal with that at the

7    end.  That requires a motion on your part, and I'll

8    deal with that.

9         MR. STRACHMAN:  Thank you, your Honor.

10        THE COURT:  Let me deal with these matters

11   seriatim.  The first objection was to an order granting

12   Plaintiffs' motion to strike certain material contained

13   in memoranda.  This order was entered by Judge Martin

14   on April 18th, 2003.  Prior to that, I had granted the

15   same motion to strike the material in a memorandum that

16   was filed before me.  This is a personal attack on

17   counsel in Israel which I pointed out has no relevance

18   to this case.

19        Judge Martin granted the motion to strike in the

20   memorandum filed before him.  It is entirely

21   appropriate to strike that scurrilous and scandalous

22   material.  That is totally irrelevant to this case.

23   Therefore, I affirm Judge Martin's granting of the

24   motion to strike on April 18, 2003.

25        The key motion here is a motion or really an

1   appeal from an order by Magistrate Judge Martin

2   granting Plaintiffs' motion to enter default against

3   the PA Defendants.   The PA Defendants are in serious

4   default in responding to this case.

5        After motions to dismiss were denied, the

6   Defendants had an obligation to answer this case.   It

7   is an absolute requirement of the Rules of Civil

8   Procedure that they answer this case.   They have

9   refused to do it.   In fact, by admission of Mr. Clark,

10  they have been ordered by the Defendants not to answer

11  this case.

12       I pointed out some months ago that in order for

13  the Defendants to raise the defense of sovereign

14  immunity, they had to file an answer setting out the

15  affirmative defense of sovereign immunity and then move

16  to have an early hearing on that matter.   They failed

17  to file the answer.   Therefore, they are in default.

18  They've default in this case.

19       The only issue that now remains for the Court to

20  decide in this case is the amount of damages that

21  should be assessed against these Defendants.   Pure and

22  simple, that's where this case is, right here and now.

23  Therefore, the magistrate judge's order for the clerk

24  to enter default against these Defendants is affirmed.

25       The next matter is a notice of appeal of Judge

1    Martin's order continuing hearing on motions for

2    default judgment.  Judge Martin gave these Defendants

3    additional time to comply with discovery, but that is

4    academic at this point.  All discovery is academic in

5    this case because the Defendants are defaulted.  And

6    the only thing that remains to be done, to reiterate,

7    is the entry of judgment against these Defendants after

8    a determination of the amount of damages sustained by

9    these Plaintiffs.

10          Therefore, the order continuing the hearing on

11    the motions for default judgment is affirmed, and I

12    leave it up to Judge Martin to schedule a hearing on

13    proof of claim for the entry of judgment against these

14    Defendants and to make a determination of the amount of

15    the judgments and to make a Report and Recommendation

16    to me as to what the amount of judgment should be, as

17    he had done in the Hamas part of this case.  So to

18    reiterate, this order continuing the hearing is

19    affirmed.

20          It's for the benefit of the Defendants, but they

21    haven't complied with discovery in any event.  So now

22    there are really two grounds for the entry of default,

23    not only the failure to file an answer in this case but

24    failure to provide discovery.

25          The final notice of appeal relates to the order

1    of the magistrate judge denying Defendants' motion for

2    a protective order against depositions.  As I've

3    indicated, this matter is now academic.  There will be

4    no depositions because the Defendants are in default.

5    There is no need to have depositions at this point

6    unless Plaintiff makes a showing that it is necessary

7    to have depositions in order to determine damages in

8    this case.  So clearly the Defendants are not entitled

9    to a protective order against depositions at this stage

10   of the proceedings because the matter is academic.

11        To keep the record straight, I affirm the

12   magistrate judge's denial of the motion for a

13   protective order so as to advise him that I am in

14   complete agreement with the way he's been handling this

15   matter at the magistrate judge's level.  So prepare an

16   order, Mr. Strachman, on these four matters.

17        MR. STRACHMAN:  Yes, your Honor.

18        THE COURT:  Now, this only concerns Plaintiffs'

19   counsel at the moment.  The magistrate judge has issued

20   a lengthy and very thorough Report and Recommendation

21   on the liability of the Hamas.  I've read it

22   thoroughly, and I intend at some point to issue an

23   order adopting that Report and Recommendation and

24   publishing it; but before I can enter judgment, there

25   are two things that I will require.

KAREN M. ZINNI, RPR-RMR-CRR

1          First of all, it's necessary for the Plaintiffs

2     to make a motion under Rule 54(b) for the entry of

3     judgment at this stage because it does not resolve the

4     whole case.  The Court has to make a certification that

5     there is no just reason for delay in entering a

6     judgment against some of the parties and not all of the

7     parties.

8          So I advise Plaintiffs' counsel to consult with

9     the authorities on that subject and make an appropriate

10    motion for the entry of judgment.  And that motion will

11    be made to me, and I will hear it.

12         There is one small flaw in the magistrate

13    judge's Report and Recommendation.  He recommended that

14    I impose prejudgment interest, but he did not state

15    what the source of that rule of law is in this case and

16    what the amount of prejudgment interest should be.  And

17    so I want Plaintiffs' counsel to educate me on what the

18    proper rate of prejudgment interest should be in cases

19    of this kind, federal cases based on federal question

20    as opposed to diversity cases.

21         The Court usually looks to some federal statute

22    that establishes what prejudgment interest should be.

23    In the absence of a federal statute, then the question

24    arises whether the Court should look to the statute of

25    the forum state or choose a rate of interest that is

```
 1    reasonable under the circumstances.
 2          For example, in admiralty cases, there is no
 3    statute that provides for prejudgment interest; and
 4    since admiralty is a federal matter, the Court is
 5    authorized to choose a rate of interest that is fair
 6    and reasonable under the circumstances.  And that's
 7    what I have done in admiralty cases, and it may well be
 8    that that is the rule of law that applies to this case.
 9          But I want to be educated on that subject.  So
10    before I take any further action on that Report and
11    Recommendation, I will expect to receive a motion from
12    Plaintiffs' counsel.
13          MR. STRACHMAN:  Thank you, your Honor.
14    Certainly.
15          THE COURT:  All right.  Is there anything
16    further we should discuss?  All right.  Hearing none,
17    then, the Court will take a recess.
18          (Adjourned)
19
20
21
22
23
24
25
```

C E R T I F I C A T I O N

        I, Karen M. Zinni, RPR-RMR-CRR, do hereby
certify that the foregoing pages are a true and
accurate transcription of my stenographic notes in the
above-entitled case.




_____
Karen M. Zinni, RPR-RMR-CRR




_____August 5, 2003_____
Date

KAREN M. ZINNI, RPR-RMR-CRR