1              UNITED STATES DISTRICT COURT

2

3          FOR THE DISTRICT OF RHODE ISLAND

4

5     ++++++++++++++++++++++++++++

6     YARON UNGAR, et al          CA No. 00-105 L

7

8        v                       PROVIDENCE, RI
                                  22 AUGUST 2003
9

10    PALESTINIAN AUTHORITY, et al

11    ++++++++++++++++++++++++++++++

12

13         BEFORE MAGISTRATE JUDGE DAVID L. MARTIN

14

      APPEARANCES:

15

      FOR THE PLAINTIFF:         DAVID J. STRACHMAN, ESQ.
16                               321 S. Main St.
                                 Suite 400
17                               Providence, RI 02903
                                 351-7700
18

19

      FOR THE DEFENDANT:         RAMSEY CLARK, ESQ.
20                               LAWRENCE SCHILLING, ESQ.
                                 Ramsey Clark & Lawrence
21                               Schilling Law Offices
                                 36 East 12th Street
22                               New York, NY 10003
                                 1-212-475-3232
23

                                 DEMING SHERMAN, ESQ.
24                               Edwards & Angell
                                 2800 Financial Plaza
25                               Providence, RI 02903
                                 274-9200

1    22 AUGUST 2003

2            THE COURT:  This is the matter of the Estate

3    of Ungar, et al vs. The Palestinian Authority, et al,

4    Civil Action 00-105 L.

5            Before the Court this morning are

6    plaintiffs' motion for judgment by default pursuant to

7    Federal Rules of Civil Procedure 55(b)(2) against The

8    Palestinian Authority and the Palestine Liberation

9    Organization.  Also consideration of plaintiffs'

10   attorney's fees in regard to defendants' failure to

11   respond to discovery requests.

12           The attorneys will identify themselves.

13           MR. STRACHMAN:  David Strachman for the

14   plaintiffs.

15           MR. CLARK:  Ramsey Clark with Deming Sherman

16   and Larry Schilling for the defendant.

17           THE COURT:  Before we begin the hearing, the

18   Court wishes to place on the record some information as

19   to how we come to this point.

20           On July 14, 2003, the Court conducted a

21   hearing which considered plaintiffs' motion pursuant to

22   Federal Rules of Civil Procedure 37(b)(2) for a

23   judgment by default against defendant PA, and for other

24   relief, which was filed on February 12, 2003.  I refer

25   to this motion as being plaintiffs' first motion for

1   default judgment.

2            Also considered was plaintiffs' motion for

3   judgment by default against PA and PLO, and for other

4   relief for refusal to submit to depositions which was

5   filed on April 9, 2003.  I refer to this motion as

6   plaintiffs' second motion for default judgment.

7            Prior to taking up those motions on July

8   14th, the Court asked counsel for plaintiffs if the

9   filing of the third motion for default judgment, which

10  is the motion that I have announced for hearing this

11  morning, a motion which at the time of the July 14th

12  hearing had not yet been referred to this Magistrate

13  Judge.  I asked Mr. Strachman if the filing of that

14  motion made it unnecessary for the Court to rule upon

15  the first two motions for default judgment.  My

16  recollection is that Mr. Strachman responded no, that

17  the matter could move on parallel tracks, and the

18  Court, upon reflection, agreed with that assessment and

19  denied the defendants' motion for a continuance of the

20  hearing, and heard argument on plaintiffs' first and

21  second motions for default judgment.

22           At the conclusion of the hearing, the Court

23  stated that it would take the matters under advisement

24  and issue a Report & Recommendation.

25           On July 22, 2003, the Court received a

1    letter from plaintiffs' counsel, Mr. Strachman.  In the

2    letter, plaintiffs request that to the extent the

3    Report & Recommendation on the first and second motions

4    for default judgment addresses the matter of personal

5    jurisdiction, the plaintiffs requested that the Court

6    consider documentation which plaintiffs had submitted

7    as part of plaintiffs' third motion for default

8    judgment.

9              The very next day, July 23, 2003, Judge

10   Lagueux referred plaintiffs' third motion for default

11   judgment to this Magistrate Judge for a Report &

12   Recommendation.

13             In light of the request contained in

14   Mr. Strachman's letter of July 23rd -- I may have the

15   date wrong because I received the letter on July 22nd.

16   I'm referring to the letter I received from

17   Mr. Strachman on July 22, 2003.  In light of that

18   letter, and the referral of plaintiffs' third motion

19   for default judgment, the Court wrote to counsel on

20   July 25, 2003, stating that in light of these

21   developments, the Court would conduct a hearing on

22   plaintiffs' third motion for default judgment on August

23   15th, and then write a single Report & Recommendation

24   which addressed all three motions for default judgment.

25             Mr. Schilling wrote to the Court on July 28,

1    2003 stating that Mr. Clark was unavailable on August

2    15, 2003, and requested that the hearing be scheduled

3    for a date after August 20th.  Mr. Strachman objected

4    to a delay and suggested an earlier date of July 30th.

5    The Court subsequently responded to counsel that the

6    hearing would be held today, indicating that the date

7    suggested by Mr. Strachman of July 30th was not

8    available for the Court.

9          I simply wanted to place that on the record,

10   gentlemen, to explain how we are convening again for

11   another hearing after I had announced at the last

12   hearing that I would be writing a Report &

13   Recommendation which would address the first two

14   motions for default judgment.

15         Having placed that on the record, I'll now

16   take up -- we'll proceed this morning first with the

17   hearing on the motion which I have identified as being

18   plaintiffs' third motion for default judgment.  We'll

19   hear argument on that, then we'll take up the matter of

20   the attorneys' fees that are also scheduled for

21   consideration this morning.

22         Before I do that, the defendants,

23   Palestinian defendants, have filed a motion to exceed

24   page limits for exhibits.  The defendants filed an

25   opposition to this motion which we are hearing this

1  morning, in their memorandum referenced some exhibits

2  which were not attached, and the Court was subsequently

3  informed that the reason they were not attached is they

4  exceeded the page limits, which the Court had

5  established, but which can be waived upon motion when

6  granted by the Court.

7        Mr. Strachman, did you want to be heard on

8  their request to exceed the page limit?

9        MR. STRACHMAN:  No, your Honor.

10        THE COURT:  All right.  The Court will grant

11  the Palestinian defendants' motion to exceed page limit

12  for exhibits and will consider the exhibits which they

13  have submitted in connection with their memorandum in

14  opposition to the plaintiffs' third motion for default

15  judgment.

16        All right, with that, I'll hear from

17  Mr. Strachman on the plaintiffs' third motion for

18  default judgment.

19        MR. STRACHMAN:  Your Honor, in light of the

20  totality of the proceedings in this matter, and

21  especially Judge Lagueux's directives on July 30th

22  where he indicated very clearly that the only thing

23  left in this case is really the assessment of damages

24  against the Palestinian defendants.  Plaintiffs wrote

25  to the defendants.  A copy of a letter to them was

1    attached to documents which we delivered to the Court

2    yesterday.  That letter of mine was July 28, 2003,

3    suggesting that in order to relieve the Court of having

4    to determine whether the defendants have the right to

5    cross-examine, or examine the witnesses that were

6    presented last June, that we would extend the

7    opportunity even without suggesting that they have the

8    right to, we gave them the opportunity to depose,

9    cross-examine in Israel, in America, via telephone, any

10   method of their choosing, during the month of August.

11   We received a letter the very next day from

12   Mr. Schilling indicating that he would bring the matter

13   up immediately with Mr. Clark, and we have not heard

14   since whether they choose to do so.  So, therefore, we

15   would like to very simply suggest to the Court that the

16   present motion which was filed prior to your Honor's

17   July 3 Report & Recommendation concerning damages on

18   Hamas, be simply applied here.  I think, so it goes

19   without saying, but just to be clear, I'll say it, the

20   motion that we filed that's before the Court today, we

21   referenced all the documents, the damage memo, the

22   post-trial briefs, et cetera.  A month later your Honor

23   rendered a decision, so we would ask that we simply

24   apply that damage calculation to the present case.

25            We have not received a substantive response

1    from the defendants.  It's almost 30 days since I wrote

2    the letter to them making my clients and the witnesses

3    available to them.  So, therefore, I respectfully

4    request that the Court pose to them the question today,

5    do they want to present evidence in the form of

6    cross-examination or in the form of, you know,

7    recalling, if you will, our witnesses.  And, if not, I

8    think that should end the matter.  And, therefore,

9    bsaed on what we've written in our briefs, very clearly

10    the Court has personal jurisdiction.

11            I think it's very clear who Mr. Rockman is.

12    He held himself out very clearly in his own biography

13    as the PA representative, as well as the PLO

14    representative.  The Court clearly has subject matter

15    jurisdiction over this case, and I think it's sort of a

16    fairly simple exercise at this point, having been

17    defaulted on three different grounds, having Judge

18    Lagueux last month -- the hearing was on July 30, I

19    believe, approving your Report & Recommendation

20    concerning the default on each of those grounds.  So I

21    think the matter now is simply to, you know, enter

22    final judgment and use the damage calculation

23    previously utilized.

24            We stress that the virtual identical

25    documents that were submitted to the Court previously

1    concerning the second, I believe, motion to dismiss,

2    should be utilized in this case to establish the

3    preponderance of the evidence concerning personal

4    jurisdiction.  There is no contradiction at all

5    provided to any document that we provided with the

6    exception of Mr. Rahman's own declaration which we

7    provided to the Court in support of our motion.

8    Mr. Rahman's declaration indicates that he is not a

9    representative to the PA, and he does that even though

10   his own biography indicates otherwise.  If the Court

11   would note at the very top of the document, the

12   biography, it is very clear that the fax number that it

13   came from, although it's cut off somewhat, the fax

14   number came from the PLO and PA office in Washington.

15          THE COURT:  Mr. Strachman, which exhibit are

16   you referring to, please?

17          MR. STRACHMAN:  I'm referring to Exhibit B.

18          THE COURT:  You're saying there's a fax

19   number on this document somewhere?

20          MR. STRACHMAN:  At the very top, your Honor,

21   there is an indication of the date and the time -- it

22   is cut off, but the fax number can clearly be made out,

23   at least in part.  And if the Court turns to

24   Mr. Rahman's very own declaration to the Court, which

25   we presented as Exhibit M, the Court will note on the

1   very first page, at the very top, that the numbers are
2   identical, indicating --
3             THE COURT:  Mr. Strachman, I'm going to have
4   my clerk show you my copy of the biography, Exhibit B,
5   and you tell me, or point out on that page where is the
6   fax number you are referring to.
7             MR. STRACHMAN:  I'm sort of confused, Judge.
8   The words that we have are a little different so, if I
9   could, present to the Court --
10            THE COURT:  Would you show that document,
11  however, to opposing counsel first?
12            MR. STRACHMAN:  I believe they have the
13  exact (coughing) your Honor, because it was attached to
14  all the other documents.  And it always has, Judge.
15  And it's cut off, (inaudible).  And there's a little
16  telephone symbol next to the fax number.  And if your
17  Honor turns to Exhibit M, toward the very top, and
18  that's Mr. Rahman's declaration that was provided by
19  the defendants in their motion, the numbers are
20  identical.  Even if we didn't have that, Judge, what we
21  have is in the documents that we provided to the Court
22  yesterday, for instance, which are eight documents, six
23  of which indicate very clearly that Mr. Rahman holds
24  himself out as working for the PA and, in fact,
25  testified in Congress before the Senate that his role

1    was a dual role, both the Chief of the PLO in the

2    United States and the PA.

3            And lastly, in regard to that issue, Judge,

4    because -- and I raise this because these are the

5    objections.  There are basically two objections

6    provided to us Wednesday evening in the defendants'

7    response to our motion.  And they raise issues about

8    his own biography and his own -- and his

9    representations about who he is and who he works for,

10   but what's interesting is they don't come out and say

11   "this is not his biography.  We have no where from

12   Mr. Rahman indicating that this is a fabrication, or

13   was made up, or he never used this."

14           And, in fact, what's interesting, and one of

15   the reasons we provided to the Court all of the other

16   interviews with ABC, NBC, CNN, et cetera, is because

17   all of these representations about Mr. Rahman in many

18   cases quote directly from his own biography.  And there

19   are dozens more.  And it's very clear who he works for,

20   what he does.  And with that, your Honor, I think I

21   will rest.

22           THE COURT:  Mr. Strachman, do you want to

23   say anything in response to the argument made by the

24   defendants in their memorandum, at the bottom of page 5

25   and the top of page 6 of their memorandum, referring to

1   the Klinghoffer decision in where the Court in

2   Klinghoffer said that -- let me read from defendants'

3   memorandum.  "In Klinghoffer, in actions against the

4   PLO commenced after its effective date.  The statute

5   was found to deprive plaintiffs of the 'benefit of a

6   presumption of continuity' of PLO activities bearing on

7   personal jurisdiction.  See Klinghoffer, 795 F.Supp.

8   115, warranting dismissal of the actions for lack of

9   personal jurisdiction."

10          I gather from the memorandum, the argument

11   the defendants are making is that the plaintiffs in

12   this case are asking the Court to find, or infer, that

13   there's been a continuity that, in fact, the Court in

14   the Klinghoffer case in the opinion just quoted from,

15   rejected.  Do you want to respond to that?

16          MR. STRACHMAN:  Part of the continuity, and

17   part of the difference, your Honor, is that in 1994,

18   the President allowed the PLO to operate freely in the

19   United States, and they lifted any restrictions

20   concerning the PLO.  And I have a copy of the

21   Presidential determination, if I could submit to the

22   Court and to the defendants, and this declaration, your

23   Honor, (not at the microphone) indicates clearly that

24   the PLO has the right to operate without any of the

25   restrictions that were -- that they were bound by prior

1    to that.  And that is, to the best of my knowledge,

2    that has been continued every 6 month period since

3    1994.  I'm sort of surprised to see that representation

4    in the defendants' brief because this statute obviates

5    any issue there.  We know they have tremendous

6    systematic activities in the United States.  It's been

7    proven in all the other documents that we have in this

8    court -- that we've shown in this court previously.

9    Funds, the fund raising, the hiring of law firms for

10   pension benefits, the hiring of press people, and

11   representative such as Mr. Abbington, et cetera, the

12   propaganda or informational activities of Mr. Rahman,

13   Mr. Jilani, and others, indicating that they are very

14   present in the United States, the renting of offices,

15   the deposits, in at least, I believe, four banks, of at

16   least $18 million, the lawsuits that they participate

17   in, in this country.

18              I would also ask, Judge, respectfully, and I

19   know there was an issue, you know, in New York the

20   prior week, but we received their brief Wednesday

21   evening.  I'd like to have a short opportunity until

22   next Friday to file a reply and maybe address in more

23   particular some of these issues.

24              THE COURT:  It is true that the defendants'

25   objection was received a date later than what the Court

```
1    specified, although I find there was a valid
2    explanation because of the electrical failure that
3    affected the northeastern part of much of this country.
4    I'll grant your request.  You may file a brief reply
5    not later than next Friday, Mr. Strachman.  Thank you.
6    Have you completed your remarks?
7              MR. STRACHMAN:  Yes, your Honor.  If I could
8    just ask, in terms of that brief to not delay if we
9    were to exceed 10 pages, could we include in the order
10   that we would have a right to exceed that?  We'd like
11   to provide some exhibits, as well, and I don't want to
12   file it and then make a request.  That might take a
13   couple of days to grant.
14             THE COURT:  If you contact my clerk
15   Miss Saucier that you are filing the response and it
16   exceeds the page limit, you prepare a motion so
17   requesting and I'll grant it.
18             MR. STRACHMAN:  Thank you.
19             THE COURT:  It doesn't have to be elaborate.
20   It can be a one-page motion.  You request permission,
21   and just get it to my clerk and I'll grant it.
22             MR. STRACHMAN:  Thank you.
23             THE COURT:  Mr. Clark, are you going to
24   argue for the defendants this morning?
25             MR. CLARK:  Yes, your Honor.  Thank you.
```

1   I'll address this last issue first while I have it in

2   mind, since it just came up.

3         My understanding is that the PLO has

4   authorized only one office in the United States, and

5   that under the Foreign Missions Act, and it is called a

6   Mission.  It's PLO and it's not PNA.  And it's severely

7   circumscribed.  It does require 6 month renewals.

8         We would ask leave to respond to any

9   additional materials or argument on that subject that

10  were submitted by the plaintiffs, and ask for the same

11  amount of time to respond to what they present, that

12  they have been given to make their presentation.

13         THE COURT:  I have to say, Mr. Clark, I'm a

14  little reluctant to grant that request simply because

15  there has to be an end to this at some point.  We have

16  plaintiffs' third motion for default judgment.  The

17  defendants have filed an objection.  It was filed a few

18  days beyond the date that I specified.  And

19  Mr. Strachman's request for some additional time to

20  respond, struck me as not unreasonable under the

21  circumstances.  Had the memorandum been filed on the

22  date I specified, I would not be inclined to allow him

23  to file another response believing that he had enough

24  time to prepare and make his response this morning.

25  I'm allowing him to do so because I think his time was

1    constricted.  Your request that you now be allowed to

2    file a response to his further response raises the

3    prospect that Mr. Strachman will then say that he wants

4    to file another response.  So I'm a little reluctant to

5    start down this path.

6              MR. CLARK:  Well, this came up when the

7    Court asked a good question, and he presented a

8    document that he had in his hand, or at least on the

9    desk.  We had no prior notice of it, and we don't know

10   what he's going to present now.  To have no opportunity

11   to respond to it would seem not only highly prejudicial

12   but ultimately error.  But that's --

13             THE COURT:  Well, let me make a ruling on

14   this.  You're requesting that you be allowed to file a

15   response to Mr. Strachman's further response that is

16   due -- his is due next Friday.  All right, Mr. Clark,

17   I'm going to grant that request but here's the limits

18   on it.  It's not to exceed 5 pages, and I'm really not

19   looking for any exhibits.  If it's absolutely

20   necessary, 5 pages of exhibits.  And it will be due one

21   week from after Mr. Strachman's response.

22   Miss Saucier, what's the date next Friday?  Is that the

23   29th?

24             THE CLERK:  Yes, it is, your Honor.

25             THE COURT:  All right, so Mr. Strachman's

1    response is due on August 29th, and the defendants'

2    response, if they wish to file one, to Mr. Strachman's,

3    will be due one week later.   What date is that, please?

4              THE CLERK:   September 5th.

5              THE COURT:   September 5th.

6              MR. CLARK:   We appreciate that, your Honor.

7    There is one other matter that's related to that.   He

8    may proffer documents to which we may need to proffer

9    other documents, so we'd like also leave to proffer

10   those documents over and above our 5 page limitation.

11             THE COURT:   Mr. Clark, you can make that

12   request. I can tell you it will be very difficult to

13   persuade me to grant that request, but I won't prohibit

14   you from making it.   I've set the limits, and if you

15   want to, at the time, file a request to exceed those

16   limits, you may do so.   But I'm telling you now, I'm

17   strongly inclined to adhere to the limits that I've set

18   for the reasons I've stated.   We need to have this

19   matter come to a conclusion, and if each side keeps

20   filing further responses, it won't come to a

21   conclusion.   So, I won't prohibit you from making a

22   request to exceed the limits I just set, but I'm giving

23   you fair warning you face an extremely difficult

24   prospect of persuading me that I should exceed those.

25   So, let's get on with the argument.

1    MR. CLARK:  I'm just going to make a couple

2    of observations about the situation in which the

3    defendants find themselves.

4    They have urged heretofore on the Court the

5    impossibility of defending under present circumstances.

6    Reading the New York tabloid headlines at Penn Station

7    this morning, and not believing that there are degrees

8    of impossibility, I say, if anything, the papers today

9    suggest that it's tragically been nothing that the PLO

10   or the PNA ever wanted more impossible than ever to

11   comply.

12   While we're technically on the third motion

13   for default, which is something of a mystery in itself

14   as to why there should be and why we should be forced

15   to answer three separate motions for default, on the

16   issue of failure to answer, our presentation before

17   suggested that answering would serve no purpose even if

18   it could readily be done because we could not then

19   defend the case.  We could not then go forward with

20   discovery because of the chaos and violence in which

21   the defendants live in their own land.

22   We also regret not having had the

23   opportunity to exhaust the issue of immunity before

24   going forward.

25   Now, on where we are today, let me say that

1    there are two affidavits, not one, before the Court,

2    that under penalty of perjury state that there is no

3    PNA office in the United States, that there are many

4    reasons, in law and otherwise, that there are not,

5    going back as far as 1993, in the Oslo Accords which

6    were signed in Washington.  The PNA has been

7    prohibited, as it is under the roadmap, the current, if

8    it's still going on, effort to resolve this

9    generation's-long conflict.  The PNA is not authorized

10    to have an office in the United States, and does not

11    have one.  And both Mr. Jilani, who is the deputy

12    permanent observer of Palestine at the United Nations,

13    since 1988, as I recall, the original observer office

14    was PLO, but as progress toward peace was made in those

15    years, the United Nations changed the nature of the

16    office.  It is no longer PLO.  PLO has not only been

17    removed from the title, it's been removed from the

18    office.  It's an office that represents the Palestinian

19    people, and Palestine, in the expectation that the next

20    step will be membership in the United Nations for

21    Palestine.

22           Mr. Abbda Rahman, Rahman means power, or the

23    most merciful in Arabic, and for Muslims it's been bad

24    taste to say someone's name is Rahman.  Abbda means

25    servant of.  So the two always go together as a name

1    that means servant of God, not God.  But he has given

2    an affidavit.  It's before this Court.  It's the only

3    conscious formal statement under penalties of perjury

4    that is made before this Court in which he says that he

5    does not represent the PNA, and could not represent the

6    PNA.  That doesn't mean he can't state the position of

7    the PNA or the Russian federation, or Cambodia.  It

8    just means that he's not the PNA or a representative of

9    the PNA, and wouldn't be a part of the mission that's

10   authorized under the Foreign Missions Act of the United

11   States of the PLO in Washington, if he were a member, a

12   representative of the PNA.  So all the statements with

13   Geraldo Rivera and the New York Times and his purported

14   biography, this one page statement, is to Abbda

15   Rahman's background, that don't make him a

16   representative of the PNA, and do not overcome, or

17   begin to overcome the weight of a sworn statement under

18   penalties of perjury, that he is not such a member,

19   that he's not such a representative.

20           THE COURT:  Mr. Clark, I've read your

21   memoranda, and I thought about that fact that this is

22   an affidavit, or declaration, which is executed by

23   Mr. Abbdal Rahman, and he says it's under penalty of

24   perjury, and that I have that on the defendants' side.

25   And on the plaintiffs' side there are news media

1   documents where I believe he is identified as being a

2   representative of the PNA, and the defendants argue

3   that he is not responsible for this, in essence.  It's

4   not out of his mouth, these are what other people are

5   saying.  That's the argument you're making, or one of

6   the arguments you make, am I correct?

7        MR. CLARK:  Yes, that's correct.  I don't --

8   if I tried to list all the things I've been called, or

9   been introduced, polite and impolite, we'd be here all

10  day.  They introduce him in a way that gives their

11  program the highest level of interest, so they

12  overstate it, but he is not, and they can't make him

13  so, and his own statement that he is so can't make him

14  so --

15       THE COURT:  Has he ever corrected this

16  misidentification that apparently has happened on a

17  number of occasions that you're aware of?  Was there

18  ever a letter to the editor saying that in the

19  interview that you published of me yesterday I'm

20  described as being a representative of the PNA and want

21  to make clear I am not?  Is there any knowledge that

22  he's ever done that?

23       MR. CLARK:  I don't know of any.  I'd be

24  somewhat surprised.  But I think in the world of

25  international diplomacy, and with the great difficulty

1    that Palestine has in getting its message out, which is
2    a minor way to put it, that any accreditation anybody
3    wants to give you, whether it's true or false, that
4    makes it seem that there is a Palestine and it is
5    speaking out, is helpful to the cause. That may sound
6    lacking in candor or (inaudible) somehow or other, but
7    it doesn't make him a representative of the PNA. If
8    the United States Government thought he was a
9    representative of the PNA, he'd be out of business.
10   The same would be true at the United Nations. It's
11   very clear at the United Nations that the PNA is not
12   represented there by Al Kidwar, Ambassador Kidwar, nor
13   is the PLO, nor can you be served there.

14         So on the subject of service, there's no
15   service on the PNA. There's no valid service at the
16   United States mission office. There's a disputed fact
17   as to whether there was service on Abdal Rahman at the
18   Washington office, but there could not have been
19   service there on him or anybody else, on the PNA,
20   because there is no one there who could accept service
21   for the PNA, and there's considerable doubt under the
22   Foreign Missions Act as to whether you can serve the
23   chief official of the Mission for the purposes of
24   domestic litigation between the United States.

25         So, you know, it may be, as Judge Lagueux

1   found, if the standard, and as your Honor used in a

2   default in Hamas, and in the damages in Hamas, if prima

3   facie is the standard which all inferences go in favor

4   of (inaudible) and you may have law of the case anyway,

5   --

6            THE COURT:  I'm sorry, the last --

7            MR. CLARK:  You may have law of the case,

8   anyway, Judge Lagueux having decided way back on the

9   12(b)(1) motion that there was service and there were

10  minimum contacts.  On minimum contacts, there's really

11  no evidence before you that goes beyond, as far as I

12  can tell, the Klinghoffer case.  And not only was

13  Klinghoffer before the magic date you refer to in 1988,

14  but the restrictions on -- well, they fluctuate.  The

15  restrictions on what the Mission can do are as tight

16  now as they've ever been.  So the idea that their

17  activities, they're not part of the Mission's proper

18  conduct, which we submit includes talking to the public

19  and talking to the press about the Mission's work,

20  every other Mission does it, and I think the Mission of

21  Palestine has that equal right.  It's been minimal

22  under any circumstances.  Travel is extremely difficult

23  for them.  Just getting in and out of the country is

24  extremely difficult.  Not because of the UN, because

25  under the (inaudible) agreement they have a right to

1    come in and out, but because of the difficulties with

2    the United States which superimposes visa notification

3    and granting requirements that make it all very

4    difficult for them.

5         So that minimum contacts can't be proved by

6    an assumption of continuity.  And you'll recall that in

7    Klinghoffer, Judge Stanton ruled that if there was such

8    a presumption, it was cut off by the ATA.  So there's

9    neither service nor minimum contacts that can be

10   established against the PNA because it's not here, has

11   no agent for service.  There's been no service on any

12   agent, or against the PLO because of the questions

13   about service.  When you read Abda Rahman's affidavit

14   on that issue, you see that he's in direct conflict

15   with the process server.  But, in addition, to not

16   being a representative of the PNA, as a head of the

17   Mission under the Foreign Missions Act, there's a

18   serious question as to whether he can even be served

19   while he's acting in that capacity.  That's basically

20   our submission.

21        THE COURT:  All right.  Mr. Clark, before

22   you sit down, what is your position regarding the offer

23   by the plaintiffs that the defendants be allowed to

24   depose the persons who testified at the damages hearing

25   involving Hamas?  Mr. Strachman indicates that that

1    offer was made to the defendants in a letter some, I

2    guess, 3 weeks ago.  Is that right, Mr. Strachman,

3    about 3 weeks ago?

4                MR. STRACHMAN:  A little bit more, but I

5    think a copy of it, Judge, was July 28th.  A copy was

6    submitted to the Court yesterday in the package that we

7    delivered.

8                THE COURT:  The first question, have you

9    responded to that letter?

10                MR. CLARK:  No, your Honor.

11                THE COURT:  Do you intend to respond to the

12    letter?

13                MR. CLARK:  Well, we can respond right now.

14    I was in El Salvador at the time.  I came back in over

15    the weekend and left for Europe, and out of courtesy,

16    we should have responded.  But I think the response is

17    manifest.  We did not participate in the hearing on

18    default and damages for Hamas, and we do not intend to

19    participate.  Our instructions have been that we would

20    not participate. We informed this Court on April 1st

21    that those were our instructions, and it's been

22    reinformed a couple of times.  So it ought to be pretty

23    clear that as gracious as the offer seems, it was a

24    meaningless offer.  And while courtesy would indicate

25    that you respond to a meaningless offer, the

1    circumstances didn't warrant it until it was too late.

2    But we do not seek to examine any of their witnesses if

3    they appear and if they don't appear, because our

4    instructions are that we should not participate in the

5    proceedings until there's been a final decision on

6    immunity.

7              THE COURT:  All right, Mr. Clark.  Thank you

8    for that candid statement.  We'll now proceed to the

9    matter of the attorney's fees.  In compliance with the

10   Court's directives, Mr. Strachman submitted

11   documentation in support of his request for attorney's

12   fees.  Mr. Strachman, is there anything further you

13   wish to add to that list?

14             MR. STRACHMAN:  No, your Honor.

15             THE COURT:  Mr. Clark, does the defense wish

16   to offer any argument regarding the request for

17   attorney's fees?

18             MR. CLARK:  Your Honor, I'm initially

19   puzzled about the reason for addressing attorney's fees

20   piecemeal under the statute on which the action is

21   brought.

22             THE COURT:  Your perhaps suggesting that if

23   the Court goes ahead and -- you aren't suggesting this,

24   but there's an alternative thought that if the Court

25   goes ahead and enters default judgment, the plaintiffs'

1   are entitled to attorney's fees, and presumably the

2   attorney's fees would encompass these attorney's fees.

3   Is that what you have in mind?

4           MR. CLARK:  It would be subsumed in the

5   overall attorney's fees, or I assume you wouldn't grant

6   the same fees twice, for the same act.  So I was

7   puzzled.

8           THE COURT:  Well, it's a point that after

9   the fact occurred to the Court, quite frankly,

10  Mr. Clark.  The reason the Court put it down was

11  because I had stated that I would be addressing it at

12  past hearings, and on at least once, if not twice, I

13  neglected to do so, and the Court became concerned that

14  the matter was rapidly fading in the past and would not

15  be addressed.  And also, I have to say there's no

16  guarantee that the Court will actually find in favor of

17  the plaintiffs.  But apart from that, the Court made an

18  independent judgment that as to what has happened in

19  the past, defendants' conduct was sufficient to entitle

20  the plaintiffs to attorney's fees.  So even if the

21  Court were to be persuaded that the plaintiffs were not

22  entitled to the default judgment they seek, and are not

23  entitled to attorney's fees for this entire action, as

24  opposed to this part of the action, the Court's already

25  made a determination that they're entitled to

1   attorney's fees.  That was the Court's thinking, but I

2   recognize if it comes out the other way, yes, they are

3   subsumed.  But the Court felt it did not want more time

4   to pass without having these attorney's fees at least

5   considered at a hearing, and I recognize they may be

6   subsumed within the larger request for attorney's fees,

7   but that's why we're hearing it this morning.

8           MR. CLARK:  There's an application in the

9   First Circuit on the interlocutory appeal for

10  attorney's fees.  I don't remember the amount, several

11  thousand dollars, or something like that, and costs,

12  and the attorney's fees, and you recall the decision of

13  the First Circuit.  The decision on attorney's fees was

14  to deny them.  And I (inaudible) speculate about the

15  reasons, but when you just look at the amount of the

16  awards in Hamas, and consider the psychological impact

17  on the people of Palestine who don't make on the

18  average a thousand dollars a year, it's very difficult

19  to believe that anything except the United States is

20  seeking to destroy their economic survival because

21  they're at the survival level.  A thousand dollars was

22  before the last two years.  No telling what it is now.

23  Even in Israel, where it's been 16,000, it's down quite

24  a bit.  But the disparity creates part of the

25  psychological environment.  They can't understand that

1    we're used to doing this.  I say we're used to doing

2    this.  I have never asked for attorney's fees except as

3    a final award, and I've never asked for sanctions in 54

4    years, because I don't really believe that.  I think a

5    gentleman can practice law (inaudible).  I realize that

6    that's a point of view these days.

7            Another thing that's strange about it is, in

8    the real sense, the default has not added work, it's

9    reduced work.  It will end the case quicker.  It will

10   end it with a lot less expenditure.  And we've never

11   understood why, after the date in February in which

12   this motion that we have before us today on failure to

13   answer, which began back in November of last year,

14   perhaps, perhaps December, addressing our failure to

15   answer, why it hadn't been brought on.  And then the

16   triple path toward default.  Now I just saw this thing

17   yesterday, their itemization of fees, and it didn't

18   appear to me immediately that it includes basic time,

19   or substantial time on the other two motions for

20   default, but that imposed work on us, you could say, on

21   the same related issue, that it imposed travel here.

22   We've been up here several times because of three

23   motions, whereas if it'd just been one motion for

24   default, which is all I've ever seen in a case, that

25   could have spared us that.  But I think considering the

1  course of litigation, which has been long, but the
2  great bulk of the time was spent in reaching a decision
3  on who the plaintiffs were and who the defendants were.
4  The plaintiffs were cut in half and the defendants were
5  cut 9 to 2, discovery only began in November of last
6  year, and from a very early time, and certainly after I
7  was in Ramallah in mid-December, I was trying to make
8  it clear that the only thing we were going to be able
9  to do was seek to establish immunity because we could
10 not defend the case.   And under those circumstances, I
11 think the award of attorney's fees for what's been
12 going on would be unfair.
13          THE COURT:  Thank you, Mr. Clark.
14          MR. CLARK:  Thank you, sir.
15          MR. STRACHMAN:  May I respond?
16          THE COURT:  Briefly, Mr. Strachman, yes.
17          MR. STRACHMAN:  I'm sort of shocked, Judge,
18 to learn that the failure of the defendants to follow
19 the Court orders and to fight and to appeal every order
20 and to ask for protective orders and to seek to
21 reconsider discovery orders all following Mr. Clark's
22 communication with Mr. Araft, as he disclosed in April.
23 If he had taken a different course, if the defendants
24 had taken a different course, we might not have been
25 here.   But the numerous hours that we've spent on this

1    case for the last 9 months were all caused because of

2    one party.  We wrote the letter saying how can we

3    resolve the disputes.  We took a month to do an order

4    following the December 12th hearing so that we could

5    negotiate virtually every single word, and to hear that

6    9 months later that this is, in a sense, the

7    plaintiffs' doing, and to add insult to injury, that

8    they've actually made it easier for us by defaulting,

9    is sort of shocking.

10           I would ask your Honor to rule on this

11   request either today, or to take it under advisement,

12   but to deal with it independent of the ultimate

13   decision in terms of a default judgment.  I think it's

14   important to keep the record very clear as to the

15   occurrences in this case and to the attorney's fees as

16   a compensation or sanction for defendants' actions, and

17   to ensure that each of the issues are dealt with very

18   precisely to avoid any complications in the future.

19   Thank you.

20           THE COURT:  You're suggesting, perhaps,

21   Mr. Strachman, that, hypothetically speaking, if I were

22   to issue a Report & Recommendation recommending that

23   default judgment enter in favor of the plaintiffs, it's

24   accepted by Judge Lagueux, then on appeal to the First

25   Circuit it were reversed, and attorney's fees had been

1   awarded as part of the default judgment, that the fact

2   that even apart from the reversal of the default

3   judgment, the Court made an independent determination

4   that you were entitled to attorney's fees in connection

5   with these discovery problems the plaintiffs

6   encountered, that that should be clear, that you'd at

7   least have that.  Do you follow my analysis?

8           MR. STRACHMAN:  I think you may have thought

9   it through a little more than I have, your Honor.  But

10  what's concern to us, what's of concern to us, is that

11  the procedural morass of this case caused because of

12  all of these tactics and strategies and methodologies

13  used by the defendants have clogged this case up, and I

14  think it's just extremely important to be, for us, and

15  we've tried as much as possible, and that's why we

16  offered in terms of taking depositions or taking

17  testimony, to be very simplistic in a sense as to each

18  step along the way.  Thank you.

19          THE COURT:  All right.  Thank you,

20  Counsellor.  All right.  As I've indicated, the

21  plaintiffs, Mr. Strachman, has one week to file a

22  further response to the objection that the defendants

23  have filed to the plaintiffs' third motion for default

24  judgment.  The defendants, one week thereafter, have

25  the Court's permission to file a reply to that

1   response, not to exceed 5 pages in length, exhibits not

2   to exceed 5 pages.  Defendants are allowed to ask the

3   Court to exceed that limitation.  I've indicated it

4   would take a lot to persuade me to authorize that

5   limitation to be exceeded.  I will take these matters

6   under advisement.  I will issue a single Report &

7   Recommendation which addresses all 3 pending motions

8   for entry of default judgment against defendants.  I

9   will issue a separate opinion regarding the attorney's

10  fees.  That will conclude the hearing.  The Court will

11  stand in recess.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3               C E R T I F I C A T I O N

4    I, court approved transcriber, certify that the

5    foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings in the

7    above-entitled matter.

8

9

10   _____

11   ALFRED GALLUCCI, COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25