UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, )
et al )
)
v. ) C.A. No. 00-105L
)
THE PALESTINIAN AUTHORITY, )
et al )
)

PALESTINIAN DEFENDANTS MEMORANDUM IN
FURTHER OPPOSITION TO PLAINTIFFS MOTIONS FOR
DEFAULT JUDGMENT AND IN OPPOSITION TO AN
AWARD OF ATTORNEYS FEES

This memorandum is submitted by the PA and PLO in further opposition to plaintiffs' motions for the entry of default judgment against the PA and PLO and in opposition to an award of attorneys fees.

ARGUMENT

I.  This Court Lacks General Personal Jurisdiction Over Defendants

   A.  The Required Minimum Contacts Are Lacking

This action arises entirely outside the United States and if the Court has personal jurisdiction it must be general, not specific. This requires that the defendants' contacts with the United States be systematic and continuous. In measuring the contacts, activities of the U.N. Permanent Observer (as representative of the Palestinian people and their government) must be excluded as must activities in Washington, D.C. and elsewhere that are within the government

1



contacts exception, noted in Klinghoffer v. Achille Lauro, 937 F.2d 44, 51 (2d Cir. 1991).

With these activities excluded, defendants' remaining contacts are insufficient to support general personal jurisdiction.

The media appearances, speeches, lectures and other informational activities which constitute the bulk of the contacts claimed by plaintiffs are activities that all UN members and representatives engage in as part of their basic and essential function. This function of defendants is much more clearly established today and in recent years as a necessary and important role of every UN mission than it was during the Klinghoffer litigation. If the UN was located outside the United States these activities would not take place here. The line drawn by the District Court on remand in Klinghoffer, 795 F.Supp. 112, 114-115 (S.D.N.Y. 1992) between UN and non UN activities of the Mission, which was never tested on appeal because the case was settled, was without precedent and based on a misunderstanding of the recognized role of UN Missions. But even it was sound then, the line today must be drawn differently to reflect changes in the defendants function as a government and status at the United Nations and role in the peace process to include in the UN ambit the activities of Ambassador Al-Kidwa and his deputy Marwan Julani.

The activities of Hasan Abdel Rahman and the PLO Mission in Washington, D.C., which are of great importance to the Palestinian people and government and the peace process are within the ambit of the well-recognized government contacts exception, as are any lobbying or other government related activities of the Bannerman firm and of the one law firm reporting essentially unspecified activities on defendants behalf as indicated in plaintiffs documents. Plaintiffs have not established what either of these two firms have done, if anything.

The alleged bank and brokerage deposits to which plaintiffs point are mentioned in plaintiffs exhibits in ways that do not prove their existence. The one commercial contract with a Virginia corporation containing an agreement to arbitrate in Washington, D.C. with the laws of Virginia governing, but with the work under the contract to be performed outside the U.S., is just one contract. And the claim that a web site on which the Palestine Monetary Authority appears constitutes a significant contact with the United States because it is "hosted" on a computer located in Houston, Texas, is far fetched and tellingly reveals a desperation and an awareness on plaintiffs' part that they have too few valid contacts to satisfy the general jurisdiction test.

B. **The Assertion Of Personal Jurisdiction Over Defendants Is Unfair And Unreasonable**

In addition to systematic and continuous contacts, general personal jurisdiction must comport with traditional notions of fair play and substantial justice. International Shoe Co. v. State of Washington, 326 U.S. 310, 320 (1945O; Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 714 (1st Cir. 1996). The considerations to be weighed have been referred to as "gestalt factors," which as generally stated are as follows:

(1) the defendant's burden of appearing,

(2) the forum state's interest in obtaining convenient and effective relief,

(3) the plaintiff's interest in obtaining convenient and effective relief,

(4) the judicial system's interest in obtaining the most effective resolution of the controversy, and

(5) the common interests of all sovereigns in promoting substantive social policies.

See Foster Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 150 (1st Cir. 1995); and

Nowak, supra, 94 F.3d at 717.

The gestalt factors compel the conclusion that general personal jurisdiction over defendants is lacking, even if the requirement of systematic and continuous contacts has been met.

The Senate hearings cited by plaintiffs include testimony that personal jurisdiction might well pose difficulties in providing a U.S. forum for U.S. victims of international terrorism. See, A New Civil Cause of Action In Federal Law for International Terrorism, 1990; Hearings on S. 2465 before the Subcomm. on Courts and Administrative Practice of the Senate Comm. on the Judiciary, 101th Cong., (1990). The statute itself contains no special provision purporting to ease the requirement of personal jurisdiction similar, for example, to 28 U.S.C. §1330(b) enacted as part of the FSIA in 1976. Of course, the fairness and reasonableness of personal jurisdiction required by the Due Process Clause is fully applicable to actions under the Act, as the District Court held in dismissing the action against individual defendants.

The current peace process between Israel and Palestine that began with the Oslo Accords in 1993 is an extremely important development that is part of the context for applying the gestalt factors. In addition to its vital importance to Palestine as a means of ending Israeli occupation, violence which has taken thousands of lives and the pervasive daily oppression of the Palestinian people and achieving peace, the peace process is a high priority for the United States. Israel which has had hundreds of its citizens killed in recent violence, has no greater concern than peace. The interests of the United States and Israel are part of the context to be considered in applying the gestalt factors as is the adverse effect and threat this case and others like it in U.S. courts pose to the peace process.

The gestalt factors require the Court to weigh the near impossibility defending this case

presents for the Palestinian government. Whether or not Palestine is to be treated as a foreign state and/or is entitled to immunity from suits of this kind, this case is impossible to defend under existing circumstances that have long prevailed -- the inability to respond to discovery, to gather evidence, present witnesses, when under attack, to take time from the urgent crises with daily assaults and frequent assassinations. In <u>Nowak</u> v. <u>Tak How Investments, Ltd</u>, <u>supra</u>, 94 F.3d at 718, the Court in applying two of the gestalt factors took into account uncertainty in the future of Hong Kong's political system and possible political instability in Hong Kong as the British Colony prepared to revert to Chinese sovereignty.

The Anti-Terrorism Act of 1990 was clearly not designed and is ill-suited to cope with deaths and injuries occurring in ongoing hostilities such as the Israeli-Palestinian conflict. As one indication of this, the Act excludes from its coverage death or injuries arising from acts of war which are broadly defined in §2331(4)(c) to include "armed conflict between military forces of any origin." In §2337 the Act also bars civil actions against governments and their officials for official acts or acts under color of law.

The Act is intended to deter attacks on U.S. nationals, but this intent has little or no force here because there is no indication the Ungars were, or could have been, targeted because of American citizenship. The Ungars were settlers, living permanently in the occupied Palestinian territories. Only Mr. Ungar was a U.S. citizen.

Application of the gestalt factors compels the conclusion personal jurisdiction over the PA and PLO is lacking in this case.

II     **An Award Of Attorneys Fees To Plaintiffs Is Premature And Unwarranted**

Plaintiffs are proceeding under 18 U.S.C. §2333(a) which authorizes the recovery of

5

attorney's fees. The Court sua sponte is now considering an award of attorneys fees to plaintiffs with respect to proceedings allegedly necessitated by defendants' unwillingness to submit to discovery and to file an answer before a final decision on their immunity. Such an award would be unwarranted and premature.

Defendants have consistently and openly and in good faith stated throughout this case, including their interlocutory appeal, that until their claims of sovereign and governmental immunity are finally decided, they should not be forced to bear the burdens of litigation. This position is not taken as a formality. As defendants have repeatedly asserted, this litigation impacts on vital Palestinian concerns. Defendants would have been derelict in their responsibility to the Palestinian people and in their duties as a national government, sovereign or not, to have done otherwise.

If defendants' position is ultimately upheld, attorneys fees will be unwarranted. Any award of attorneys fees should therefore await the final determination of these issues. Cf. Shelton v. American Motors Corp., 805 F.2d 1323, 1330 (8th Cir. 1986) (2-1) upholding the defendant's refusal to obey discovery orders:

> AMC's repeated refusal to obey discovery orders was undoubtedly willful, and we do not condone such conduct. Parties proceed at great risk when they fail to comply with discovery orders. Nevertheless, we disagree with the district court that AMC's refusals were in bad faith. AMC was given no alternative but to refuse; if Burns responded, she would have exposed her work product. [fn7]
>
> \*   \*   \*

---

[fn7] We cannot agree with the dissent that AMC should be punished merely because it took a position opposite the district court and adamantly stood by that position. AMC risked the possibility of sanctions and took a chance that its position was correct. We do not condone a party's repeated refusals to obey discovery orders, and when that party is wrong sanctions should be imposed. But

6

AMC is right in this case. If we were to impose sanctions in these circumstances, as the dissent suggests, we would hold that a party should be sanctioned for disagreeing with the district court. This we cannot agree to...

There was no question of the Court's jurisdiction over AMC. The defendants here have asserted the absence of jurisdiction on which the power to compel discovery depends.

## Conclusion

Plaintiffs motion for default judgment should be denied as should an award of attorneys fees.

Respectfully submitted,

12 Sept 2003   /s/ Ramsey Clark

| | |
|---|---|
| Deming E. Sherman (#1138) | Ramsey Clark |
| EDWARDS & ANGELL, LLP | Lawrence W. Schilling |
| 2800 Financial Plaza | 36 East 12th Street |
| Providence, Rhode Island 02903 | New York, NY 10003 |
| 401-274-9200 | 212-475-3232 |
| 401-276-6611 (FAX) | 212-979-1582 (FAX) |

Attorneys for Defendants PA and PLO

### CERTIFICATION OF SERVICE

I hereby certify that on the 12th day of September, 2003, a copy of the within Palestinian Defendants' Memorandum in further opposition to the entry of default judgment against the PA and PLO and in opposition to an award of attorneys fees was faxed and mailed to David Strachman, Esq. McIntyre, Tate, Lynch and Holt, Suite 400, 321 South Main Street, Providence, RI 02903.

/s/ Lawrence W. Schilling