IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
* * * * * * * * * * *  CIVIL ACTION
YARON UNGER              *  NO. 2000-105L
                         *
VS.                      *  October 16, 2003
                         *  2:00 p.m.
PALESTINE AUTHORITY,     *
ET AL                    *  PROVIDENCE, RI
* * * * * * * * * * *
```

HEARD BEFORE THE HONORABLE RONALD R. LAGUEUX
DISTRICT JUDGE
(DEFENDANTS MOTION TO DISMISS)


APPEARANCES:

FOR THE PLAINTIFF:      DAVID J. STRACHMAN, ESQ.
                        McIntyre, Tate, Lynch & Holt
                        321 South Main Street
                        Providence, RI  02903
                        (401) 351-6095

FOR THE DEFENDANT:      RAMSEY CLARK, ESQ. and
                        LAWRENCE W. SCHILLING, ESQ.
                        Ramsey Clark and Lawrence
                        W. Schilling Law Offices
                        36 East 12th Street
                        New York, NY  10003
                        (212) 475-3232

                        ANNEMARIE CARNEY, ATTY.
                        Edwards & Angell
                        2800 Financial Plaza
                        Providence, RI  02903
                        (401) 274-9200

Court Reporter:         Anne M. Clayton, RPR
                        One Exchange Terrace
                        Providence, RI  02903

1  THE COURT: The matter before the Court is Civil
2  Action 2000-105L, the Estate of Yaron Ungar and
3  others versus the Palestine Authority and others.
4       The matter is here on the motion of the
5  Defendants, the Palestine Authority and the PLO to
6  dismiss this case under Federal Rule 12(b)1.
7       Will the attorneys identify themselves for
8  the record.
9       MR. STRACHMAN: David Strachman for the
10 Plaintiffs.
11      MR. CLARK: Ramsey Clark for the
12 Defendants.
13      MR. SCHILLING: Lawrence Schilling, your
14 Honor.
15      MS. CARNEY: Annemarie Carney for the
16 Defendants.
17      THE COURT: It's the motion of the
18 Defendants, PA and PLO. So I'll hear from that
19 side first. Mr. Clark, are you arguing?
20      MR. CLARK: Yes, your Honor.
21      THE COURT: All right.
22      MR. CLARK: Good afternoon. There are a
23 lot of papers before your Honor on this issue.
24 And I'll just make a brief summary of the main
25 points as I see them focusing primarily on the

```
1    issue of immunity or sovereign immunity among the
2    several issues in the Motion to Dismiss.  And you
3    would observe at the threshold that the tragedy of
4    that area over the past at least 55 years, the
5    absence of peace may flow overwhelmingly from the
6    disparity between the parties that was contrary to
7    the intention of the United Nations in 1947.
8              The UN was young.  We were all young in
9    1947, and it undertook what could be called an
10   important adventure and hope to divide the
11   Palestine mandate between Palestinian Arabs and
12   the Jewish population.
13             The Encyclopedia Britannica would tell us
14   that there were about 650,000 Jews in the area at
15   the time.  They owned about seven percent of the
16   land.  There were a million two Arab Palestinians.
17   They owned the rest.  And the proposal of the UN
18   was to divide the land into two states, Israel and
19   Palestine.  And for whatever reason, they felt
20   that 55 percent of the land should go to Israel
21   and 45 percent to Palestine.
22             Unfortunately, the parties didn't agree.
23   There was violence, war including neighboring
24   countries and Israel prevailed.  In 1948, it took
25   possession of 77 percent of the land.
```

1    The concept, and nothing really has ever
2    challenged the concept, which has been a reality
3    in its essential elements was two states. That's
4    what the United Nations was talking about, and
5    that's been the struggle all along except the
6    disadvantage that the Palestinians have been held
7    to because of their weakness, because of
8    European/North American support for Israel and
9    because of their impoverishment. They were
10   confronted with 750,000 refugees in 1948. Many
11   have been refugees and refugee status since that
12   time. Many died in that status.
13           And over the years, the struggle has been
14   for the full acceptance of what on the ground has
15   been a fact for the state of Palestine. And
16   everyone's intention spoken from the beginning has
17   been the two-state solution.
18           There have been more wars, and the peace
19   in between was not just a time in between wars.
20   It was a time of violence as well. Almost
21   consistent violence.
22           After '67, the six-day war, this expended
23   it's territory and claimed new acquisitions. In
24   spite of the UN resolution at that time 181,
25   Resolution 1947, UN resolution called for the

```
 1    two-state solution, 55/45.
 2              1967 in 242, UN Resolution 242, the
 3    prevailing principle was that you cannot acquire
 4    sovereignty over a land by military force.
 5              And in fact, I think the only fair
 6    reading, and it's rarely disputed, of Israel's
 7    attitude towards the Palestinian lands that they
 8    had not occupied was that it claimed no
 9    sovereignty over them.  Jordan had denied the
10    sovereignty they once held after the breakup of
11    the Ottoman Empire.  And nature affords a vacuum.
12              And Palestinian peoples in all those years
13    had the four basic attributes of statehood.  They
14    had a land that was sufficiently definite by any
15    measure to meet the requirements of U.S. law on
16    the subject, the Israeli restatement.  They had a
17    population that was undisputed.  It was
18    Palestinian peoples, including the Palestinian
19    peoples that lived within the territories of the
20    former Palestine mandate that had been divided
21    between the two countries.
22              You had a government that was functioning,
23    if governments ever function.  It didn't have all
24    the facilities that any government would like to
25    have, and it varied from time to time.  But it
```

1   always had people who were recognized within
2   Palestine and internationally as the leadership of
3   those people and that government, and it had
4   diplomatic relations, the fourth requirement in
5   the restatement. Not only diplomatic relations,
6   it had clear ability to conduct diplomatic
7   relations.
8          Even before 1989 in November when they
9   affirmed their statehood, the Palestinian National
10  Council, had more than 70, I think it may have
11  been 77 nations that recognized them, diplomatic
12  bilateral relations.
13         After that declaration, which enhanced
14  their posture as they struggled for the presence
15  to assert their rights of their people, the
16  numbers have increased greatly.
17         They have embassies. They're called
18  embassies. In the last two weeks, I've seen
19  Ambassador Al-Kidwa who gave the basic affidavit
20  that includes the documents, considered to be the
21  basic documents establishing the claim here. I
22  watch BBC at 11 o'clock at night in New York, and
23  I would say that Ambassador Al-Kidwa has been on
24  there one night out of three at least in the
25  Security Council debating on several issues of

```
 1     great urgency, not only for Palestine but some
 2     other issues.  Iraq as well.  Or speaking outside
 3     after the meetings.  He appears and speaks in the
 4     General Assembly.  He's recognized by everyone
 5     there that I'm aware of as Ambassador Al-Kidwa.
 6             The United Nations in 1987 changed the
 7     name of the party that it recognized as the
 8     representative of the Palestinian people from the
 9     PLO to Palestine, and they have endeavored and
10     through the Oslo agreements, and the Y agreements,
11     and even the road map some little change.  We'd
12     like to call it progress, but with every change
13     there seems to be death and violence.
14             They have secured greater recognition and
15     greater rights, if less land.  I agree most of
16     this period, particularly all the time almost
17     since 1967 there have been intrusions if you want
18     to call them settlements.  Like going out in
19     Oklahoma territory and settling when there's no
20     Homestead Act out there.  There are no Federal
21     Land Claims Act out there and staking out some
22     land and run the Indians off.  And they've
23     consistently developed greater strength, if
24     greater poverty as well.
25             Today the two peoples who were essentially
```

1  on a par in 1947, Israeli per capita income is,
2  according to the Encyclopedia Britannica again, it
3  varies because sometimes there'll be unemployment
4  or something, but it's over 15,000 per capita.
5  Palestinian income is under a thousand, perhaps
6  way under a thousand now.  It may be very much
7  like Iraq where 70 percent are unemployed, not
8  doing much.  You can't.  Like to, but you're just
9  not able to under the circumstances.
10           Now, the question then is under the
11 Foreign Sovereign Immunities Act, under the
12 Federal Anti-terrorism Act 2367 whether Palestine
13 is a state.
14           THE COURT:  It's not Palestine.  It's the
15 Palestinian Authority.
16           MR. CLARK:  It's the Palestinian National
17 Authority.  The Palestinian National Authority and
18 the Palestine Liberation Organization itself --
19           THE COURT:  Those are the Defendants in
20 this case.  And you claim that they are foreign
21 states.  And that's the issue that I will decide.
22           MR. CLARK:  They have government immunity
23 as an agency of the Palestine people and the
24 Palestine government.  That's our argument.  The
25 PNA was not a name they chose.  It was a name that

Case 1:00-cv-00105-L-DLM  Document 245  Filed 10/23/03  Page 9 of 18 PageID #: 10820

9

came out of Oslo. But while it had some restrictions on it engaging in diplomatic relations, the PLO has continued and expanded it's engagement in international relations and the PNA, of course, is recognized at the United Nations.

So the bilateral relations and all, the growth of government, the sanitation, the lease, water, in major areas of the West Bank and of Gaza, they've been an occupied territory without question. BBC reported last night 40 Israeli tanks in Rafah, a very small town on the west end of Gaza Strip on the Egyptian border.

But they still have their sovereignty, and there's no question that an occupied nation retained their sovereign.

The nations occupied by Germany in World War II retained their sovereignty. When Germany was defeated, their nation was there. And they had their state during this period. The state has been recognized in every way. They're condemned constantly for not being effective by controlling by police action, by government police action terrorism within their own territory.

Instead of helping reinforcing their capacity, they're literally criticized to enforce

1  their laws.  They're told in some places like in
2  this court that they're not a state and they have
3  no government function, they have no territory,
4  they have no people, they have no diplomatic
5  relations when the opposite has been the truth.
6  And when all the laws that I know of on the
7  subject of United States cases including
8  Klinghoffer and the other cases recognize the
9  restatement as a standard for determining whether
10 people are a state.
11       And it's our submission that under that
12 standard Palestine is a state.  And until it is a
13 state and recognized as a state, there'll be
14 violence.  And if they can come to places like the
15 United States, be sued and recover for one death
16 hundreds of millions of dollars that's beyond
17 their imagination, beyond anything their culture
18 or economy or society or experience can dream,
19 when they have far more casualties than Israel
20 has.  No one denies that.  Regularly in any given
21 period of time more Palestinians are dying from
22 Israeli violence towards them whether it's
23 reactive or active.  It doesn't matter.  They're
24 dying, the Israelis.
25       And then, you know, the idea of the United

| | |
|---|---|
| 1 | States with an imperial judicial power can come in |
| 2 | and impose for a single death hundreds of millions |
| 3 | of dollars that somehow those poor people who are |
| 4 | barely surviving are supposed to pay off is the |
| 5 | reason that they're not happy.  It's symbolic of |
| 6 | the reason because it's the nature of the law as |
| 7 | we said to respect the rights of others is peace. |
| 8 | It's hard to get very angry if people are |
| 9 | respecting your rights. |
| 10 | That's exactly what hasn't happened with |
| 11 | the Palestinian people, and it's our prayer that |
| 12 | it will happen now. |
| 13 | Are there any questions? |
| 14 | THE COURT:  I have no questions. |
| 15 | MR. CLARK:  Thank you, sir. |
| 16 | THE COURT:  Mr. Strachman. |
| 17 | MR. STRACHMAN:  Good afternoon, your |
| 18 | Honor.  I don't know exactly how to respond, |
| 19 | because I think Mr. Clark did not raise much in |
| 20 | the way of legal arguments.  His speech or his |
| 21 | presentation was really political.  And he did |
| 22 | raise some legal issues in his briefs, and I'd |
| 23 | certainly be interested in touching on the |
| 24 | highlights of our response to that, but his |
| 25 | presentation today is a political speech and has |

nothing to do with whether under the restatement the Palestinian Liberation Organization, which our government and every other rational entity in the world including the Second Circuit has determined to be a terrorist organization, whether the PA, this entity created by the Palestinian Liberation Organization and the government of Israel is a state.

But none of what he said today has to do with proving that they are a state under the laws that courts deal with. And in fact, this position that was taken just recently, 39 months after this case was filed we have this third Motion to Dismiss raising for the first time this statehood issue, pleading number 177. In other words, after 177 pleadings, we get in June a Motion to Dismiss suggesting that this terrorist organization and the sponsor of terrorism is now a state and therefore they're immune. But all during this litigation the very same Defendants said the following to this Court: "The PA today and at all times relevant has had an undefined juristic nature. The PA has a 'peculiar status.' The status of the PA and the PLO today is different but even more unusual than the unusual status

1  which the PLO had in the 1980's."
2      And those are quotes from a November 27,
3  2001 brief that the Defendants filed in this case.
4  They point to nothing that indicates between
5  November 27, 2001 and June when they filed this
6  motion that somehow the PLO became a state
7  fructified into a state or that the PA similarly
8  had that trans -- had that metamorphous.
9      And in fact, just the opposite has
10 happened. What we do know is that as we quoted in
11 our briefs and we quoted in our reply brief or
12 sur-reply brief the PA's own legal advisors we
13 quoted in length said the PA and the PLO they're
14 not states. And that was said very clearly by the
15 three legal advisors, Mr. Dajani and the two other
16 ones that we quoted, where they said very clearly
17 that the accords, for instance, the 1994 Oslo
18 Accords, none of the constituent documents create
19 a state. They don't have the attributes of
20 statehood.
21     And further we find, Judge, that over this
22 entire period of time there has been no showing to
23 this Court of any evidence, not political speeches
24 and rhetoric and dreams and goals, but evidence
25 before this Court indicating that there is a state

here. And in fact, just the opposite. What we have in the most recent filing of the PLO and the PA is a 15,000 word article written by a professor who now backs away from criteria of statehood that the Second Circuit said was the appropriate standard, the restatement, Section 201, and that the PA and the PLO have said in their previous briefs is the appropriate standard.

Now, they file a new brief which attaches to it a law review article by Professor Quigley who said we don't need to go by that anymore. The Supreme Court who said the standard for statehood is the restatement and all the federal courts who said the way to determine what a state is is to look at the restatement and the four attributes of statehood as defined therein are all by the waysides.

Now, what we need to do is we need to look at yet another standard which this professor uniquely on his own came up with as a series of standards to look at.

So even the PA and the PLO are backing away from what they initially told this Court. They first told the Court the PA and the PLO was not a state. They second in June said it was a

1   state because it fits the criteria.  Now, in
2   September, they tell the Court that there's a
3   whole nother basis for them becoming a state.  We
4   don't have to rely on the restatement.  This is an
5   entity, the PLO is a political organization
6   similar to al-Qaida.  It's a terrorist
7   organization.  It does not control land.  It
8   doesn't control air space, maritime space.  It
9   entered an agreement that said very specifically,
10  the Oslo Accords, the PA and the entity created by
11  the PA and the PLO and the Israeli government
12  cannot, absolutely cannot, and is forbidden to
13  conduct foreign relations.  And that's the key
14  attribute of statehood under the restatement.
15           It said very clearly it cannot have
16  absolute control over any of the areas that are
17  delegated to the PA to exert some level of
18  control.
19           In fact, even in the 17 percent of the
20  area called the Palestine Authority that the PA
21  has the highest level of control, they don't have
22  absolute level of control.
23           And as we make clear in our briefs, even
24  that area, area A where they control, have some
25  modicum of control, over 17 percent of the area,

1  still they're only given the authority that the
2  Oslo Accords give them.  They are not allowed
3  absolute authority, and that's what their own
4  legal advisors have indicated, and that's why
5  their own legal advisors have written law review
6  articles which we've cited saying the PA is not a
7  state and the PLO is not a state and we understand
8  what the obligations of Oslo are, but those
9  obligations do not create a state.
10         So I find this methodology extremely
11 disingenuous intellectually as well as
12 structurally within this litigation.  And we'd
13 urge the Court as we did in our memo when the
14 Court is ready to rule on this matter that the
15 Court rule on this in conjunction with our motion
16 to enter final judgment.
17         The PA and the PLO have been held in
18 default by Judge Martin.  He's currently
19 considering a motion to enter judgment which your
20 Honor referred to him.  He's had it now for a
21 month after we wrote a reply and a sur-reply
22 brief.  We expect a decision any day.
23         And in order to preserve the appropriate
24 logistics of this case, in other words, to avoid
25 yet another piecemeal appeal to the First Circuit

```
 1    and finally after three and a half years bring
 2    some finality to this, we would ask that your
 3    Honor rule on this motion when your Honor rules on
 4    the motion for entry of judgment so that we don't
 5    have sort of a situation as we had before where
 6    the Defendants tried to take an interlocutory
 7    appeal and where we have this piecemeal situation
 8    where we're proceeding on two levels.  And with
 9    that, I'll rest, your Honor, and thank you.
10            THE COURT:  Well, I'll take this matter
11    under advisement and write yet another opinion on
12    this subject.  Take a recess.
13            MR. STRACHMAN:  Thank you.
14            (Court adjourned at 3:00 p.m.)
15
16
17
18
19
20
21
22
23
24
25
```

# CERTIFICATION

I, Anne M. Clayton, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

*Anne M. Clayton*
_____
Anne M. Clayton, RPR

*October 23, 2003*
_____
Date