UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE ESTATE OF YARON UNGAR, et al | ) ) ) |
| v. | ) C.A. No. 00-105L |
| THE PALESTINIAN AUTHORITY, et al | ) ) ) ) |

**PALESTINIAN DEFENDANTS RESPONSE TO PLAINTIFFS' SURREPLY
IN FURTHER SUPPORT OF DEFENDANTS' RULE 12(b)(1)
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

The surreply filed by plaintiffs on or about October 14, 2003, includes a supplemental affidavit of Professor Ed Morgan of the University of Toronto Law School ("Morgan supp."), which mistakenly attributes to Prof. John Quigley of the Ohio State University Law School, a position Prof. Quigley does not assert -- that the PLO as distinguished from Palestine, has a "plausible claim" to be a state, Morgan supp. at para. 6.

Prof. Quigley makes no such assertion. His article, included in defendants' reply, clearly expresses the view that Palestine is a state. See, for example, Section II of the article, beginning at p. 722: "II. The Claim of Palestine to Statehood."

Prof. Quigley does refer to a "plausible claim" of statehood on the page cited by Prof. Morgan, but it is to the claim of Palestine, not the PLO, as follows, at 726:

> Whether or not Palestine is a state is not a question for Israel to decide. That determination turns on objective criteria,.... Applying these criteria, Palestine has a plausible claim to statehood...

Prof. Quigley's article repeatedly makes clear that it is the statehood of Palestine he is considering, not the PLO.

Prof. Morgan further argues that Prof. Quigley's analysis is fundamentally flawed because it fails to make necessary distinctions between the PLO and the PA, see Section III of

Morgan supp. beginning at p. 2. This argument, to which Prof. Morgan gives pivotal importance, rests on a misconception and has little force once it is realized that Prof. Quigley is analyzing the statehood of Palestine, not the PLO.

Palestinian statehood has long been recognized. The History and Elements of Palestine Statehood are presented in Amb. Al-Kidwa's affidavit filed on June 13, 2003 in support of defendants' Rule 12(b)(1) motion, beginning at p. 2. GA Res. 181 (II) in 1947 divided Mandated Palestine into the two states of Israel and Palestine. (Tab 1) (Tab references herein are to the documents attached to Amb. Al-Kidwa's affidavit.) GA Res. 181(II) and many other documents relevant to Palestinian statehood and the peace process, susceptible of judicial notice, appear on several internet websites, including the website of the Permanent Observer Mission of Palestine to the United Nations, www.palestine-un.org. The Question of Palestine has been a significant, continuing concern of the United Nations at all times from the UN's inception to date.

On November 15, 1988 the Palestine National Council declared the independence of the State of Palestine, Tab 5. A month later the declaration of independence was acknowledged by the General Assembly in Resolution 43/177, 15 Dec 1988. Tab 6. This Resolution, among other things, affirmed the need to enable the Palestinian people to exercise their sovereignty over the territories occupied by Israel, as have many other U.N. resolutions both before and since, and decided that the designation "Palestine" should be used in place of the "PLO" as of December 15, 1988 throughout the UN system for all UN purposes including the observer status that had been conferred upon the PLO in November 1974. (Tab 4). Palestine has at all times since December 15, 1988 been the accepted referent for all U.N. purposes.

The status of Palestine as U.N. Observer and its right to participate in UN matters first granted to the PLO in November 1974 (Tab 4) has been much expanded over the years. In November 1998 the status of its Mission at the United Nations was upgraded by the Secretariat

in various ways and use of the title "Ambassador" was authorized. Palestine's right to participate in UN activities became tantamount to that of full members except for the right to vote and eligibility to fill one of the rotating seats on the Security Council. The diplomatic recognition which more than a majority of states worldwide extend, is overwhelming accorded to "Palestine." The General Assembly has time and again recognized the sovereignty of Palestine. See as one recent example GA Res. 57/269, March 5, 2003 recognizing the permanent sovereignty of the Palestinian people over their water and other natural resources notwithstanding the Israeli occupation of Palestinian territory (Tab 19).

The surreply's attack on the claim that the PLO is a state -- a claim it should be reiterated was not made by Prof. Quigley -- is thus a meaningless attack on a strawman of Prof. Morgan's own creation.

The sovereign immunity of the PA and the PLO follows from the statehood of Palestine.

The Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. sec. 1330 and sec. 1602 et seq., does not define the term "foreign state." It provides only that the term "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b) [of 28 U.S.C. sec. 1603]." See Garb v. Republic of Poland, 207 F.Supp.2d 16, 25 (E.D.N.Y. 2002), vacated and remanded on other grounds, 2003 U.S. App. LEXIS 16112 (2d Cir. 2002).

Prof. Quigley recognizes the soundness and authority of the definition of a foreign state in sec. 201 of the Restatement (Third) of the Foreign Relations Law of the United States (ALI 1987). He also recognizes, as does the Restatement, that statehood may exist and survive despite a state's inability to meet one or more of the four elements of the definition in sec. 201, pertaining to its defined territory, permanent population, government and capacity to conduct international relations, as a result of circumstances such as Israel's belligerent occupation of the

Palestinian territories and the coercion and excessive military force and other oppressive measures to which Israel has subjected Palestine, which severely compromise and handicap, among other things, the functioning of its government, control over its territories and its ability to promote and safeguard the welfare of its people.

Prof. Quigley's article was not directed to and did not address immunity from litigation as a consequence of statehood and particularly the question the present case presents of the immunity from suit to which the PA and PLO are entitled as a result of the statehood of Palestine.

Both the PA and PLO are entitled to the same immunity as Palestine. They constitute core elements and/or perform core functions of the government of Palestine as it now operates, crippled and compromised as it is by the Israeli occupation. Accordingly the PA and PLO must be considered part of the state of Palestine itself. Cf. Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148 (D.C. Cir. 1994), cert. denied, 513 U.S. 1150 (1995) (the armed forces of a state must in all cases be considered as part of the foreign state itself); see Roeder v. Islamic Republic of Iran, 333 F.3d 228 (D.C. Cir. 2003) (same with respect to the Iranian Ministry of Intelligence and Security (MOIS); see also Regier v. Islamic Republic of Iran, 2003 U.S.Dist LEXIS 15523 (D.C.D. September 8, 2003) following Roeder, holding MOIS must be considered part of Iran, against which punitive damages cannot be awarded under the FSIA, noting and declining to follow several District Courts in awarding punitive damages against MOIS, notwithstanding Roeder.

The statute under which plaintiffs are proceeding in the present case purports to authorize a civil action under 18 U.S.C. sec. 2333 "against any person," see 18 U.S.C. sec. 2334, and very broadly defines "person" in sec. 2331(3) to mean "any individual or entity capable of holding a legal or beneficial interest in property." While technically the PA and PLO may meet this

extremely broad definition of "person," they are not proper defendants and the action against them must be dismissed because they are entitled to the same immunity as the State of Palestine itself. This includes the bar sec. 2337(2) of Title 18 imposes against maintenance of this action as well as entitlement to sovereign immunity under sec. 1604 of the FSIA.

It should be pointed out that as far as defendants have been able to determine, no nation has claimed its courts have jurisdiction over cases against Palestine for death or personal injury based on acts occurring within the Palestinian territories, including Israel, which as of this time has many such suits pending in which its courts have declined to exercise jurisdiction over Palestine and Palestine is claiming immunity, and have ruled instead that the Justice Ministry should be asked to answer the questions of jurisdiction and immunity, which to date neither the Ministry nor the Israeli government appears to have done.

## Conclusion

The motion of defendants PA and PLO for an order pursuant to Rule 12(b)(1) dismissing the Amended Complaint should be granted.

October 28, 2003

Respectfully submitted,

*/s/ Deming E. Sherman*

Deming E. Sherman (#1138)
Annemarie M. Carney (#3980)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, Rhode Island 02903
401-274-9200
401-276-6611 (FAX)

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003
212-475-3232
212-979-1583 (FAX)

Attorneys for Defendants
The Palestinian Authority and The PLO

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of October, 2003, I mailed a copy of the within Defendants' Response to Plaintiffs' Surreply to David J. Strachman, Esq., McIntyre, Tate, Lynch and Holt, Suite 400, 321 South Main Street, Providence, RI 02903.

*[signature]*