UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.

vs.                                                        C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.

### PLAINTIFFS' REPLY TO DEFENDANTS' NEW ARGUMENTS IN SUPPORT OF THEIR RULE 12(b)(1) MOTION TO DISMISS THE AMENDED COMPLAINT

A.  **Defendants' Claim Regarding Foreign Courts Is False**

Defendants' Response to Plaintiffs' Surreply in Further Support of Defendants' Rule 12(b)(1) Motion to Dismiss asserts that "no nation has claimed its courts have jurisdiction" over defendants in civil actions "for death or personal injury based on acts occurring within the Palestinian territories," and that in the face of defendants' claims to sovereign immunity Israeli courts have declined to exercise jurisdiction over such cases. Def. Resp. at 5.

This assertion is completely false. See attached Letter of Dr. Leonard M. Hammer, November 11, 2003.[1] Dr. Hammer, who teaches international law in Israel,[2] confirms that both the Israeli courts and the Israeli executive branch have determined that the PA does not have sovereign immunity. The PLO has not raised a claim of immunity in the Israeli courts. Id.

---

[1] Dr. Hammer's Letter was made under oath pursuant to 28 U.S.C. §1746.

[2] Dr. Hammer holds a PhD in international law from the University of London and is a lecturer in international law at the Academic Law Institute and the Hebrew University in Israel. See attached Curriculum Vitae of Leonard M. Hammer.

B.  **Defendants' Claim to be Agencies or Instrumentalities of an Extant "State of Palestine" Is Entirely Frivolous**

Apparently despairing of their doomed attempts to demonstrate that they themselves meet the accepted criteria of statehood, the PA and PLO now claim to be agencies or instrumentalities of a "State of Palestine" -- an entity alleged by defendants to be a long-extant foreign state. Under this new theory, as agencies or instrumentalities of an established "State of Palestine" the PA and PLO are *"entitled to the same immunity as the State of Palestine itself."* Def. Resp. 3-5. In support of this claim, defendants cite sections of the Foreign Sovereign Immunities Act ("FSIA"), and case law thereon, which provide that agencies and instrumentalities of a foreign state, as defined in the FSIA, generally enjoy the sovereign immunity of the foreign state itself.

According to defendants, this "State of Palestine" (of which the PA and PLO claim to be agencies or instrumentalities) has existed since 1947 when the U.N. *"divided Mandated Palestine into the two states of Israel and Palestine,"* Id. at 2, and/or since 1988, when the PLO *"declared the independence of the State of Palestine,"* Id., and has *"long been recognized"* by a number of countries. Id.[3]

The trouble with this entire theory is, of course, that the "State of Palestine," of which the PA and PLO claim to be agencies or instrumentalities, simply does not exist: the State of Palestine anticipated by the U.N. in 1947 never came into being, and the Court of Appeals for the

---

[3] Accordingly, defendants now also insist that *"Prof. Quigley is analyzing the statehood of Palestine, not the PLO."* Def. Resp. at 2. While Quigley's use of the term "Palestine" is, unfortunately, wildly inconsistent (sometimes as a synonym for the PLO, and elsewhere as a geographic term) it is nonetheless perfectly evident that Quigley's statehood argument is based on the purported powers and status of the PLO. For example, Quigley claims that *"under the 1995 Interim Agreement with Israel, the PLO came to administer both the Gaza Strip and the major towns of the West Bank. As a result, it appeared to satisfy the criterion of control of a population in a territory."* Quigley at 724. Thus, according to Quigley, the PLO – not a "State of Palestine" – administers and controls these areas and fulfills this criterion of statehood. (Of course, this claim itself is false: the powers of local government under the Interim Agreement were granted to the PA, not to the PLO, and in any case fall far short of the sovereign control required for statehood, as Prof. Morgan discusses at length).

Second Circuit explicitly ruled – <u>subsequent</u> to and <u>despite</u> the events cited by defendants (i.e. the 1988 declaration of the "State of Palestine" and the "recognition" thereof by a number of states) -- that a "State of Palestine" does not exist. <u>Klinghoffer v. PLO</u>, 937 F.2d 44, 47 (2nd Cir. 1991).

Thus, defendants' claim to be agencies or instrumentalities of a non-existent "State of Palestine," is utterly frivolous.

Plaintiffs, by their Attorneys,

_____
David J. Strachman #4404
McIntyre, Tate, Lynch & Holt
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)

## CERTIFICATION

I hereby certify that on the ____14th____ day of November, 2003 I mailed a true copy of the within to:

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003

Deming E. Sherman
EDWARDS & ANGELL, LLP
2800 Bank Boston Plaza
Providence, RI 02903

T:\MISCELLANEOUS\Ungar\motions\Reply to New Arguments 11-14-03.rtf

Leonard M. Hammer, Ph.D
Academic Law Institute
Ramat Gan, Israel
Telephone/Facsimile: 972-8-9762150

David J. Strachman                                November 11, 2003
McIntyre, Tate, Lynch & Holt
321 South Main Street, Ste. 400
Providence, RI 02903

re: Ungar v. Palestinian Authority C.A. No. 00- 105L

Dear Mr. Strachman,

    At your request I have reviewed the statements made regarding the exercise of jurisdiction by Israeli courts *"over cases against Palestine for death or personal injury"* contained in the penultimate paragraph of "Palestinian Defendants Response to Plaintiffs' Surreply", dated October 28, 2003, in the above-referenced case.

    These statements contain manifold errors, as described below:

    Firstly, while numerous civil actions have been brought in Israeli courts against the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") for death and personal injury arising from acts of violence in Israel and the PA, to the best of my knowledge no action naming "Palestine" as a defendant has been brought.

    Secondly, the claim that Israeli courts have "declined to exercise jurisdiction" over these cases is simply false:

    a) In 2002, the chief justice of the Jerusalem District Court consolidated all pending cases against the PA and appointed a special 3-judge panel to determine all threshold claims raised by the PA, including its claim to sovereign immunity. (To the best of my knowledge, the PLO has not raised a claim of immunity in the Israeli courts).

    b) On March 30, 2003, the special panel issued its ruling. C.A. 2538 Noritz et al. v. the Palestinian Authority et al.

    c) Two of the Noritz judges (Gal, J. and Mizrahi, J.) ruled that under Israeli law, the authority to determine whether or not a given defendant should be recognized as a "state" is a foreign policy decision entrusted to the executive branch, and that the judiciary is bound by the decision of the executive. Therefore, the Noritz majority declined to rule on the status of the PA, and instead held that the court would treat as dispositive a certificate issued by the Foreign Ministry (akin to the "Tate Letter" used in the United States prior to the passage of the Foreign Sovereign Immunity Act) attesting to the status of the PA.

Leonard M. Hammer, Ph.D
November 11, 2003

    d) However, the <u>Noritz</u> majority also ruled that: i) even if the Israeli Foreign Ministry decided to recognize the PA as a "state", the court would be required to examine whether the PA was entitled to sovereign immunity under the principles of customary international law in light of the circumstances of each case; ii) the PA would <u>not</u> be entitled to sovereign immunity in the tort actions for death and personal injury pending against it, even if the Israeli Foreign Ministry decided to recognize the PA as a "state".

    e) The minority judge in <u>Noritz</u> (Drori, J.) held that a claim to statehood raised by a defendant is a legal question entrusted to the judiciary, and should be determined by the court on the basis of the four commonly accepted criteria of statehood in customary international law (which criteria are reflected in §201 of the Restatement of Foreign Relations Law).

    f) After a lengthy analysis of the status and powers of the PA, Judge Drori concluded that the PA meets none of the four accepted criteria of statehood.

    <u>Thirdly</u>, the statement that the Israeli government has not taken a position on the PA's claim to immunity in these suits is also false. On the contrary, the Israeli Foreign Ministry has submitted a certificate to the District Court affirming that the PA does not enjoy sovereign immunity.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Sincerely,

*[signature]*

Leonard M. Hammer, Ph.D

**Leonard M. Hammer, Ph.D**
Academic Law Institute
Ramat Gan, Israel
Telephone/Facsimile: 972-8-9762150

**CURRICULUM VITAE**

**LEGAL EDUCATION**

**University of London - SOAS, Ph.D, 1997**
University of London Edmund Davis Postgraduate Fellowship Trust

**New York University, LL.M., Public International Law, 1993**

**Georgetown University Law Center, J.D., 1988**
Dean's List, 1985-1987

**PROFESSIONAL ACADEMIC EXPERIENCE**

**Lecturer**, Academic Law Institute, Ramat Gan, 1998-present

Courses: International Human Rights, Public International Law, Private International Law, International Arbitration, Minority and Aboriginal Peoples' Human Rights in Canada and International Law
Seminars: Human Right to Freedom of Religion and Conscience, International Rights of Minorities, The New Media and International Human Rights, International Judicial Mechanisms

**Lecturer**, Bar-Ilan University, Department of Political Studies, 1998-2002

Courses: International Human Rights, Public International Law, Private International Law, International Arbitration, Minority and Aboriginal Peoples' Human Rights in Canada and International Law
Seminars: Human Right to Freedom of Religion and Conscience, International Rights of Minorities, The New Media and International Human Rights, International Judicial Mechanisms

**Lecturer**, Rothberg International School, Hebrew University, 1999-present
Courses: International Human Rights, Public International Law

**Lecturer**, University of East London (Israel Branch), 2001-2002
Course: International Human Rights

Leonard M. Hammer, Ph.D
November 11, 2003

## PUBLICATIONS

### Books

Foucault and International Law: Descriptive thoughts for normative issues Ashgate/Dartmouth Press, forthcoming, 2004

The International Human Right to Freedom of Conscience: Suggestions for its development and application Ashgate/Dartmouth Press, 2001

### Chapters in Books

Discerning Israel's Interpretation of the 1993 Holy See-Israel Fundamental Agreement Chapter in *The Vatican-Israel Accords: Political, Legal, and Theological Contexts* Notre Dame University Press, 2003

The Holy See-PLO Agreement and its Significance for Israel Chapter in *The Vatican-Israel Accords: Political, Legal, and Theological Contexts* Notre Dame University Press, 2003

### Articles

The Human Right to Culture and Migrant Workers in Israel forthcoming article, MSU-Detroit College of Law Journal of International Law (2003)

Abortion Objection in the UK and the European Convention on Human Rights and Fundamental Freedoms 6 European Human Rights Law Review 564-575 (2000)

Migrant Worker Rights in Israel and Customary International Law 17 Netherlands Quarterly of Human Rights 5-30 (1999)

Reconsidering the Israeli Courts' application of customary international law in the human rights context 5 ILSA Journal of International and Comparative Law 23-41 (1998)

Conscientious Objection in Israel - Does the individual stand a chance? 14 New York Law School Journal of International and Comparative Law 293-316 (1993)

Legal Advertising in Israel - An Overview 5 National Jewish Law Review 37-51 (1990-91)