UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.

v.                                                                          No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.

**PLAINTIFFS' RESPONSE TO OBJECTIONS OF THE PALESTINIAN AUTHORITY
AND PALESTINE LIBERATION ORGANIZATION TO
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

Defendants PA and PLO have filed Objections pursuant to Fed.R.Civ.P. 72(b) to the Report and Recommendation issued on March 31, 2004, by Magistrate Judge David L. Martin, recommending that judgment by default enter against defendants PA and PLO.

Defendants' Objections present no new arguments, nor any new support for the shop-worn arguments raised by them to date. Most of defendants "objections" are hopelessly vague, frivolous or irrelevant.

The facts, findings and grounds cited by Magistrate Martin in the Report and Recommendation, the arguments advanced by plaintiffs in their pleadings on the motions that were the subject of the Report and Recommendation, and the previous pleadings and judicial decisions that are part of the record in this action, all incorporated herein by reference, resoundingly refute the arguments made in defendants' Objections.



Plaintiffs will therefore restrict their response to the very brief comments presented below.

Plaintiffs request that the Court make a "de novo determination" rejecting each of defendants' objections to the Report and Recommendation, Fed.R.Civ.P. 72(b), and adopt the recommendation to enter final judgment against defendants forthwith.

## II. ARGUMENT

### A. Factual Issues

Defendants argue that "no conduct by defendants constituted 'international terrorism,'" or proximately caused the murder of Yaron Ungar. §2. Defendants also claim that they lacked the intent required for liability under 18 U.S.C. §2333. §3

These are, obviously, factual issues which defendants could have attempted to prove at trial had they not willfully defaulted this action:

> The defendants . . . assert that "actions by Palestinians in the occupied territories are not intended to intimidate or coerce Israeli civilians or their government . . . [but instead] to resist and overcome the oppression and end the occupation." Whether the bus bombing "appeared to be intended - (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping" <u>is a disputed question of material fact</u>. 18 U.S.C. §2331(1) (part of the definition of the term "international terrorism").

<u>Biton v. Palestine Interim Self. Gov't. Auth.</u>, 2004 WL 540504, at *33-34 (D.D.C. Mar. 18, 2004)(citation omitted, emphasis added). By defaulting, defendants have conceded these factual issues.

### B. Personal Jurisdiction

Defendants also dispute Magistrate Judge Martin's conclusion that their contacts with the United States are sufficient to exercise personal jurisdiction, and claim that both their public

relations activities in the U.S., and their putative contacts with the federal government, should be excluded from minimum contacts analysis. §5

Defendants cite no authority whatsoever in support of their demand to exclude their public relations and propaganda activities in the United States from minimum contacts analysis, because none exists. Indeed, it was precisely these types of activities which were, unremarkably, held to be cognizable and utilized for such analysis by the Second Circuit Court of Appeals in Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44 (2nd Cir. 1991).

Defendants' argument that any contacts on their behalf with the federal government should also be disregarded fails miserably, in the first place, because Magistrate Judge Martin explicitly excluded such contacts from his minimum contacts calculus, and still found that defendants have more than sufficient contacts in the United States. R & R at 48.

Moreover, as discussed at length in plaintiffs' pleadings 1) as a threshold matter of law, the "government contacts" rule does not apply to the instant defendants, and; 2) none of the contacts with the federal government claimed by defendants (i.e. defendants' direct contacts and any contacts of defendants' U.S.-based consultants and counsel) are of a nature or type recognized by controlling case law as "government contacts" excluded from due process analysis. Plaintiffs' Revised Notice of Evidence Concealed by Defendants.[1]

---

[1] Plaintiffs would add that defendants' previous attempts to draw an analogy to the instant case from Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44 (2nd Cir. 1991), is unfounded.

In Klinghoffer the court stated (without citing precedent) that the government contacts exception may also be based on judicial concerns about interfering with the interaction between the public and the Executive Branch and Congress: "'government contacts' rule . . . also *appears* to be based on non-constitutional policy considerations, such as the Judiciary's reluctance to interfere with the smooth functioning of other governmental entities." Id. at 51 (emphasis added).

The Klinghoffer plaintiffs agreed, and the court thus held, that basing personal jurisdiction on the PLO's activities within the U.N. would create analogous concerns to those informing the "government contacts" doctrine, because it might impact upon the necessary and essential interaction between the U.N. and one of its constituent delegations.

3

### C. Damages

Defendants argue that the amount awarded is extravagant "for the death of one person" when many other innocents have been killed "without any hope of compensation." §6.

Reduced to plain English, defendants are asserting that one more death does not really matter, and that life - Yaron Ungar's life - is cheap. Plaintiffs are loathe to dignify this repugnant argument with any response.

Congress enacted §2333 <u>precisely because</u> human life is <u>not</u> cheap, and because each individual death, and particularly an intentional terrorist murder, means an entire world of pain and tragedy for the victims' loved ones, every day for the rest of their lives.

Indeed, Congress enacted this provision <u>precisely in order</u> to give families shattered by brutal terrorist violence, such as the orphans, parents and siblings of Yaron Ungar, such "hope of

---

<u>Id</u>. at 52.

The special case of the U.N. is completely inapposite here because the defendants are, obviously, neither constituents nor constituent elements of the U.S. government.

Significantly, the Second Circuit itself has expressly refused to expand its holding in <u>Klinghoffer</u>. <u>Kadic v. Karadzic</u>, 70 F.3d 232, 247 (2nd Cir. 1995)("*Karadzic...invites us to fashion a federal common law immunity for those within a judicial district as a United Nations invitee. He ... analogizes his proposed rule to the 'government contacts exception' to the District of Columbia's long-arm statute ... [and] also endeavors to find support for a common law immunity in our decision in Klinghoffer ... <u>we decline the invitation</u> ....*") (emphasis added).

Plaintiffs also note that the Report and Recommendation assumes, without explicitly holding, that defendants PA and PLO are entitled to 5th Amendment due process protections. Because defendants' contacts within the United States are so extensive, plaintiffs have neither challenged nor conceded this assumption to date. However, in the alternative and out of an abundance of caution, in the extremely unlikely event that the Court rejects Magistrate Judge Martin's detailed finding that the PLO and PA have more than adequate "minimum contacts" with the United States, plaintiffs assert that as foreign political organizations the PLO and PA are not entitled to the protections of the 5th Amendment. See <u>Palestine Information Office v. Shultz</u>, 674 F. Supp. 910, 916-919 (D.D.C. 1987) *affd*. 853 F.2d 932 (D.C. Cir. 1988) ("*It has been admitted in plaintiffs' FARA statement that the P[alestine I[nformation] O[ffice] acts as an agent in the United States for the PLO ... Having found that the PIO is a foreign political entity, this Court finds that the PIO has no due process right under our Constitution or Laws.*"). This holding remains valid. <u>See</u> e.g. <u>Flatow v. Iran</u>, 999 F. Supp. 1, 20-21 (D.D.C. 1998) (citing <u>Palestine Information Office</u> in support of finding that foreign entities do not enjoy constitutional rights).

compensation," and to deter defendants and others like them from committing or facilitating further terrorist murders and violence.

The damage award to plaintiffs, which closely follows similar awards given by the federal courts in many other cases of terrorist murders, is therefore wholly appropriate.

## III. CONCLUSION

Therefore, for the reasons stated above and upon the entire record in this action, plaintiffs request that the Court make a "de novo determination" rejecting each of defendants' objections to the Report and Recommendation and adopt the recommendation to enter final judgment against defendants forthwith.

Plaintiffs, by their Attorney,

David J. Strachman #4404
McIntyre, Tate, Lynch & Holt
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)

CERTIFICATION

I hereby certify that on the 28 day of April, 2004 I mailed a true copy of the within to:

Ramsey Clark
Lawrence W. Schilling
36 East 12th Street
New York, NY 10003
(v/fax 212-979-1583)

Deming E. Sherman
Annemarie M. Carney
EDWARDS & ANGELL, LLP
2800 Bank Boston Plaza
Providence, RI 02903
(v/fax 401-276-6611)

*[signature]*