IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

```
* * * * * * * * * * * * * * *      C.A. NO. 00-105L
                              *
EFRAT UNGAR, by and through   *
the Administrator of his      *
Estate, David Strachman,      *
et al                         *
                              *
    VS.                       *    SEPTEMBER 23, 2004
                              *    10:00 A.M.
THE PALESTINIAN LIBERATION    *
ORGANIZATION, et al           *
                              *
* * * * * * * * * * * * * * *      PROVIDENCE, RI
```

BEFORE THE HONORABLE RONALD R. LAGUEUX,

SENIOR DISTRICT JUDGE

(Motion for Stay Pending Appeal)

APPEARANCES:

FOR THE PLAINTIFFS:   DAVID J. STRACHMAN, ESQ.
                      McIntyre, Tate, Lynch & Holt
                      321 South Main Street
                      Providence, RI   02903

FOR THE DEFENDANTS:   DEMING E. SHERMAN, ESQ.
                      Edwards & Angell
                      2800 Financial Plaza
                      Providence, RI   02903

Court Reporter:       Karen M. Zinni, RPR-RMR-CRR
                      One Exchange Terrace
                      Providence, RI   02903

Proceeding reported and produced by computer-aided stenography

```
 1      23 SEPTEMBER 2004 -- 10:00 A.M.
 2              THE COURT:  Good morning, everyone.  The matter
 3      before the Court is Estate of Yaron Ungar and others
 4      versus The Palestinian Authority and others, and this
 5      is Civil Action 2000-105L.  This is a motion by the
 6      Defendants for a stay pending appeal.
 7              Will the attorneys identify themselves for the
 8      record, please.
 9              MR. STRACHMAN:  David Strachman for the
10      Plaintiffs.
11              MR. SHERMAN:  Deming Sherman for the Palestinian
12      Defendants.
13              THE COURT:  All right.  It's Defendants' motion.
14      I'll hear from Defendants first.
15              MR. SHERMAN:  Good morning, your Honor.  I do
16      not intend to be lengthy.  The Palestinian Defendants
17      have taken an appeal to the First Circuit from the
18      judgment of this Court entered on July 16, 2004.  By
19      this motion, the Palestinian Defendants seek a stay
20      pending appeal or at least a stay to allow them to
21      apply to the First Circuit for a stay.
22              I recognize that in light of the Court's
23      rulings, this may be an uphill battle.  I would simply
24      say that, as the Court knows, this is an unusual case
25      that involves an important legal question concerning
```

1   the sovereign immunity of the Palestinian Defendants.
2         These Defendants have consistently taken a
3   position under *Papandreou* and other cases that they're
4   entitled to a full determination, including an appeal
5   of the issue of sovereign and governmental immunity,
6   prior to being forced to bear the burdens of
7   litigation.  This issue was properly raised and
8   supported in this court and is the issue that is raised
9   in the First Circuit.
10        The failure to issue a stay will effectively
11  negate the Defendants' immunity before it is argued on
12  appeal.  There is a $160 million judgment that is
13  pending.  Obviously, it will have a significant impact
14  on the Palestinian Defendants in the absence of a stay.
15        I do not intend to repeat what is in the
16  memorandum in support of our position.  I believe it
17  speaks for itself.  I'd simply ask that the Court
18  exercise its discretion, which we believe it has the
19  power to do, to issue a stay, either an absolute stay
20  or a temporary stay, until the matter is considered by
21  the Court of Appeals.  Thank you.
22        THE COURT:  All right.  Mr. Strachman.
23        MR. STRACHMAN:  Thank you, your Honor.  Your
24  Honor, I, too, will be brief as we filed an extensive
25  memorandum.  I think I'd just reference a few points.

1   First of all, as my brother indicated, he indicated
2   this is an unusual case; and as this Court has
3   repeatedly said, it's not an unusual case.  It's a
4   regular, garden variety tort case that just happens to
5   be against a somewhat unique defendant or defendants.
6        Nothing in the memorandum that was filed by the
7   Palestinian Defendants shows that they have met the
8   burdens of the rules and the burdens of the decisional
9   law concerning a stay, concerning a bond, exemption
10  from that bond.  They've brought no facts to bear to
11  indicate that it would create a hardship or meet any of
12  the other requirements, such as provided in *Acevedo*,
13  et cetera.
14       And I think one of the most salient issues with
15  respect to whether there's a likelihood of success and
16  whether there's a chance of success on appeal is
17  despite -- well, consistent with the numerous rulings
18  of this Court on basically similar kinds of issues with
19  respect to the status of the PA, in the Southern
20  District of New York in the case of *Knox*, Judge Marrero
21  issued an extensive decision this spring paralleling
22  what your Honor has ruled, what Judge Martin has ruled
23  on these very same fundamental issues.
24       They follow the decision in the *Klinghoffer*
25  case; and what's most troublesome, I believe, in

determining the salience of these issues at this level is in the four exhibits that we filed to our memo, we show that even the PA leaders themselves, Mr. Arafat himself does not believe what his own attorneys are arguing in this court.

They said in Exhibit D that the Palestinian state will be created in the year 2005. Mr. Al-Kidwa, who filed an affidavit in this court saying they do not have a state, filed and argued in front of the tribunal at the Hague, and we provided a copy of the transcript of his verbatim statements indicating that there was no Palestinian state.

And that's the sort of fundamental, underlying issue here, and I think that the First Circuit will rule that they were stopped from taking these alternate positions in different kinds of cases. And more than just sort of the estoppel and legal issue, it goes to the fundamental justice of coming in and saying alternate things in alternate places whenever it happens to serve their interest at the moment.

They haven't offered to provide a bond, a partial bond. They haven't offered real estate, extensive holdings. They haven't come to this Court with anything that would indicate that they are willing to comply, and I think we can read in from that that

they're just not willing to at all; that Rule 62 talking about the bond and the local Rule 37 talking about the bond requirements are very clear that a heavy burden has to be met by the Defendants and has not been met here. Thank you.

THE COURT: All right. The Defendants argue essentially that the Court has discretion in granting a stay in these circumstances and rely on cases, however, that do not have a monetary judgment and rely on the four-part test that's used for preliminary injunctions.

The Plaintiffs counter by saying that the First Circuit law is clear on the subject, and it is, that in a case involving a monetary judgment, the only way that a defendant can get a stay is to file a supersedeas bond; and the Court can reduce the bond below the judgment amount in exceptional circumstances.

In this case, starting with the reverse, assuming the four-part tests apply, there is absolutely no reasonable possibility that the Defendants will get a reversal on appeal. This Court has ruled, I think at least three times, that the Defendants do not have sovereign immunity, that they are not a foreign sovereign state under the applicable statutes; and that's been confirmed by the conduct of officials of the Defendants, not only in this case but in other

1  cases where they admit that they are not a sovereign
2  state.
3    So that issue is clear, and the Court of Appeals
4  indicated as much but sent the case back after an
5  interlocutory appeal so that the Court could consider a
6  12(b)(1) motion by the Defendant; and the Court did
7  consider that 12(b)(1) motion and ruled extensively
8  that there is no sovereign immunity in this case. So I
9  feel confident in saying that the chances of reversal
10 on appeal are between slim and none.
11    In any event, it seems to me that the Defendants
12 kept changing their position on this matter, and there
13 is some disingenuous conduct here and some attempts to
14 delay the ultimate resolution of this case. This has
15 been true throughout.
16    I advised these Defendants a long time ago that
17 the proper way to raise the defense of sovereign
18 immunity was to file an Answer and to raise the
19 affirmative defense of sovereign immunity and then I
20 would have a hearing on that matter. I would stay
21 discovery until that matter was resolved.
22    Mr. Clark came into Court and said unequivocally
23 that Yasser Arafat did not want to file an Answer in
24 this case and did not want to defend this case on the
25 merits. Then it is disingenuous to hear from that side

of the case that somehow they shouldn't be liable for the actions of the Hamas in this dreadful killing. If that's the position they take, they should have defended this case on the merits. They are defending other cases of a similar nature on the merits.

So the Defendants have only themselves to blame for the position they're now in, and I can't imagine that the First Circuit Court of Appeals would say at this point even though you don't have sovereign immunity, you should have an opportunity to defend this case on the merits. That's been waived a long time ago, and that's really the only argument that the Defendants have at the appellate level. A number of Courts have ruled the same way.

However, I do have some discretion in the matter; and because of the size of this judgment and the international implications of this judgment, I'm going to require a supersedeas bond in the amount of $50 million. That's less than half the judgment.

So my order specifically is that there will be a stay for one week until September 30th, 2004, at 12 noon. If the Defendants file a supersedeas bond of $50 million approved by the Court, the stay will continue in effect. If the Defendants do not, the stay ends at 12 noon September 30, 2004.

1  Are there any questions?

2  MR. SHERMAN: No, your Honor.

3  THE COURT: That's the order of the Court.

4  Prepare an order, Mr. Strachman.

5  MR. STRACHMAN: Thank you.

6  (Adjourned)

* * * * * * *

C E R T I F I C A T I O N

I, Karen M. Zinni, RPR-RMR-CRR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

_____
Karen M. Zinni, RPR-RMR-CRR

_____9-23-04_____
Date

KAREN M. ZINNI, RPR-RMR-CRR