1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * *     C.A. NO. 00-105L
                                *
YARON UNGAR, by and through     *
the Administrator of his        *
Estate, David Strachman,        *
et al                           *
                                *
    VS.                         *     MAY 5, 2005
                                *     11:00 A.M.
THE PALESTINIAN LIBERATION      *
ORGANIZATION, et al             *
                                *
* * * * * * * * * * * * * * *     PROVIDENCE, RI


BEFORE THE HONORABLE RONALD R. LAGUEUX,

SENIOR DISTRICT JUDGE

(Motion for Preliminary Injunction)


APPEARANCES:

FOR THE PLAINTIFFS:     DAVID J. STRACHMAN, ESQ.
                        McIntyre, Tate, Lynch & Holt
                        321 South Main Street, Suite 400
                        Providence, RI  02903


FOR THE DEFENDANTS:     DEMING E. SHERMAN, ESQ.
                        Edwards & Angell
                        2800 Financial Plaza
                        Providence, RI  02903

                        RAMSEY CLARK, ESQ.
                        Ramsey Clark & Lawrence W.
                        Schilling Law Offices
                        36 East 12th Street
                        New York, NY  10003

Court Reporter:         Karen M. Zinni, RPR-RMR-CRR
                        One Exchange Terrace
                        Providence, RI  02903

1    5 MAY 2005 -- 11:00 A.M.

2         THE COURT:  Good morning, everyone.  The matter

3    before the Court is Civil Action 2000-105L, Estate of

4    Yaron Ungar, et al, versus the Palestinian Authority,

5    et al.

6         The matter is here on a motion by Plaintiffs for

7    a preliminary injunction, the Court having previously

8    issued a Temporary Restraining Order.

9         Will anyone interested in this matter please

10   identify him or herself for the record.

11        MR. STRACHMAN:  David Strachman for the

12   Plaintiffs.

13        MR. CLARK:  Ramsey Clark for Palestinian

14   Authority, et al.

15        MR. SHERMAN:  Deming Sherman for the same

16   parties.

17        THE COURT:  Anybody else?

18        MR. MARCACCIO:  Yes, your Honor.  Raymond

19   Marcaccio for Brandywine Asset Management, which had

20   been served with a subpoena and also notice of the

21   restraining order.

22        MS. PELCZARSKI:  Karen Pelczarski, your Honor,

23   same reasons why I'm here on behalf of Wachovia

24   Corporation.

25        THE COURT:  All right.  Anybody else?  All

1    right.   Well, as I've indicated, the matter is here on

2    preliminary injunction.   Other papers have been filed

3    and various subpoenas, but I don't know the relevance

4    to this matter.   Do you want to explain what you want

5    to accomplish, Mr. Strachman?

6        MR. STRACHMAN:  Yes, your Honor.   Thank you.   On

7    the 19th we filed a request for an ex-parte Temporary

8    Restraining Order, which was granted, and

9    simultaneously request for preliminary injunction,

10   which was set down for hearing today.

11       The Defendants have not objected to the

12   preliminary injunction.   They were served on the 19th

13   with all of our pleadings and have not filed an

14   objection.

15       So I think in light of that, we're sort of

16   cleared a way for the entry of the preliminary

17   injunction based on the information that we provided to

18   the Court along with our motion.

19       We also filed a motion, Judge, I believe the

20   next day, to register the judgment in other federal

21   courts pursuant to 28 U.S.C. 1963; and because the case

22   is still at the First Circuit, a mandate having not yet

23   been sent down because the Defendants have asked for a

24   rehearing, we're in an awkward position whereby we

25   can't register and domesticate the judgment in other

1    federal jurisdictions.

2         And, therefore, we need an order from the Court

3    permitting us to do so so that we may begin collection

4    proceedings in other jurisdictions.

5         THE COURT:  Well, the problem is that the

6    judgment is not final at this moment in time, and I

7    question whether I have jurisdiction to hear this

8    matter at all because it's still in the Court of

9    Appeals and I haven't received a mandate from the Court

10   of Appeals.  I don't even have the papers.  They

11   haven't been sent back.

12        MR. STRACHMAN:  The Court has jurisdiction over

13   the judgment even though the case is on appeal.

14        THE COURT:  Well, I issued a judgment, but it's

15   not final, that's for sure.  The Court of Appeals

16   affirmed me, but there is pending a possibility of a

17   rehearing, an in banc hearing and the possibility of a

18   writ of certiorari in the United States Supreme Court.

19   So the judgment is far from being final at this moment.

20        MR. STRACHMAN:  The statute permits the entry of

21   a final judgment -- strike that.  The statute permits

22   the registration of a judgment even when there has not

23   been a determination on appeal, and the cases that I've

24   cited in our memo so indicate.

25        In other words, even before this stage, this

1    Court had authority to enter an order allowing the

2    Plaintiffs to register the final judgment so as to

3    protect the judgment.

4          THE COURT:  Well, it isn't final.

5          MR. STRACHMAN:  The judgment to protect their

6    interest, and that occurred in numerous cases that

7    we've cited in our memo, in other words, prior to this

8    stage, and all the more so now where we have a very

9    clear determination from the First Circuit upholding

10   the judgment, upholding all of the prior decisions with

11   respect to all of the claims, et cetera, that were made

12   by the Defendants repeatedly.

13         And I think it would work a tremendous injustice

14   to allow this sort of continued pattern of rehearings,

15   requests for rehearings and new motions on the same

16   issues to delay the Plaintiffs from perfecting their

17   collection activities, especially when, as we've shown

18   in the motion for preliminary injunction, these assets

19   are depleting; that approximately a third of the

20   Palestinian Authority's dedicated investment assets

21   have been depleted in the last several months, that

22   there are plans for it to do more, as we

23   understand.

24         Virtually on a weekly basis there are articles

25   in the paper about transfer of different assets; and I

1    think if we don't take these actions, if we don't have

2    the preliminary injunction and we don't have the

3    ability to then move into the other jurisdictions, I

4    think it calls into question very significantly the

5    ability of the Plaintiffs to collect in the United

6    States.

7         We have no doubt that once the First Circuit

8    files -- makes a ruling on this motion for rehearing,

9    we know there will be another motion for rehearing, and

10   that's been a pattern here.  We've been waiting five

11   years to get to this point and after repeated steps,

12   repeated delays to put up roadblocks.

13        So I would urge the Court to enter the

14   preliminary injunction.  There's no objection that has

15   been filed; and I spoke to counsel yesterday, was

16   informed that they were not filing -- making any filing

17   today, an objection to either of the two motions, and I

18   think that justice cries out for these steps now.

19        THE COURT:  What's the purpose of these

20   subpoenas that you served?

21        MR. STRACHMAN:  The subpoenas are to uncover

22   assets, and we have a series of subpoenas that were

23   served that we have various sort of responses from.

24        One was to Ernst & Young.  Ernst & Young

25   performed a diagnosis or an analysis, if you will, of

1    the PA assets.  That was accompanied with the

2    materials -- they were mentioned in the documents that

3    we filed from the World Bank and from the Democracy

4    Foundation and from Standard & Poor's where they did an

5    analysis of the PA assets for the purpose of

6    standardizing and creating transparency in their

7    assets.

8         They have indicated in a fax I received this

9    morning that they can't find any assets; and what I'd

10   like to do is communicate back to them and point them

11   even further to where they need to look and have that

12   returnable, if possible, have that returnable to my

13   office maybe next Wednesday so that we don't have to

14   take up the Court's time.

15        Similarly, we sent a subpoena to Raymond James,

16   and we've had no response from them, although we had

17   communications with Raymond James when we sent a copy

18   of the previous restraining order.

19        Standard & Poor's, your Honor, who did the

20   diagnosis of the PA assets, and we provided that

21   diagnosis or analysis for the -- in our motion, they

22   have indicated that they have documents, they know

23   where they are, we spoke to their counsel, and they

24   simply need a little more time.  And we've been

25   speaking with them for the last couple of days.  So I

1        would ask that that subpoena also be returnable next

2        week.

3              Blackwatch Brokerage, your Honor, we did receive

4        communication with and received some documents from,

5        and they are searching to determine whether that

6        response is exhaustive.

7              And Wachovia, I believe, is represented here by

8        my sister.  I received basically a generic type of

9        objection from them I believe yesterday, and

10       Ms. Pelczarski has indicated that -- I think she

11       indicated that perhaps we could, you know, communicate

12       further as to how to get the information and arrange

13       for the transfer of that information.

14             These subpoenas are vital because we have

15       literally searched hundreds of banks all over the

16       country.  We've sent the restraining order to several

17       hundred institutions.  Many of the institutions are

18       pointing us in different directions, and they're all

19       sort of passing the ball.

20             We also need the subpoenas, Judge, because

21       earlier in April we sent a deposition notice to both

22       the main Defendants asking them to provide an

23       individual either in New York, Rhode Island,

24       Washington, somewhere on the East Coast, who would be

25       able to describe the PA assets for us.

1        In response, on April 18th, April 19th, excuse

2   me, I received a letter from Mr. Clark indicating to me

3   that he communicated with Mr. Al-Kidwa and there's no

4   one here who can give us information, et cetera,

5   et cetera.  We may have to go to Ramallah to get some

6   of the information about the tens of millions of

7   dollars in assets that they have in the United States.

8        So being stymied by the Plaintiffs (sic), the

9   direct route to the individual brokerage houses and

10   financial institutions is all the more important.

11        THE COURT:  All right.

12        MR. STRACHMAN:  Thank you.

13        THE COURT:  I'll hear first from the Defendants,

14   and then I'll hear from anyone here on behalf of

15   companies that were subpoenaed.

16        MR. CLARK:  Thank you, your Honor.  The

17   Defendants have made no formal objection, made no

18   formal entry into the substantive parts of the case;

19   but I'd like to make a few observations.

20        The claims that there's some risk of the

21   property being taken out of the country seem

22   unreasonable when you think of the circumstances.  The

23   judgment was entered by this Court 10 months ago.  The

24   judgment had been entered by the magistrate judge much

25   earlier than that, his recommendation, so you could

1    foresee the problem.

2          The newspaper article they rely on that claims

3    that assets are being liquidated is from January 2004,

4    I think.  The only current one that they've cited in

5    their materials that involves liquidation of assets is

6    in Tunisia and Algeria.

7          So the idea that the Palestinian interest would

8    remove their assets at this time, if there are any

9    here, which I don't know, seems unlikely; and at this

10   late date, the urgency of it seems -- the claims of

11   urgency seem fictitious.

12         There is one problem that has arisen for the

13   operation of the offices Palestine has here.  It has an

14   office in New York that is a permanent mission,

15   observer mission of Palestine to the United Nations,

16   and it's protected under the Headquarters Agreement,

17   which is a treaty between the United States and the

18   United Nations and its operations and functions.

19         As far as I know, they've had no problem with

20   paying their ordinary expenses, which were excepted

21   from the restraining order by your Honor.  I rather

22   think that's probably because the bank there is the

23   bank for the UN members, and it deals with these

24   problems and understands them and knows how to do it.

25         However, the Palestine office in Washington,

1    which we had hoped the lawyer from -- that represents

2    that office would be here, but he was unable to come,

3    he thought yesterday he could, and I'm not really

4    familiar with it, but I'm quite confident that it is a

5    foreign mission under the Foreign Missions Act and is

6    protected to that extent.  And your Honor exempted, as

7    it did in the case of the UN mission, ordinary expenses

8    of the office.

9         But the bank -- and I haven't had any

10   negotiations with the bank, but according to the lawyer

11   there and according to personnel in the office there,

12   it has not yet approved checks for salaries and checks

13   for rent and checks for health insurance and checks for

14   transportation, which are major items of expense there.

15   We need to try to protect the functioning of that

16   office from impairment by the bank not honoring that.

17        I think Wachovia is represented here.  I hope

18   they'll be able to address the issue of payment of the

19   ordinary expenses of these two missions.

20        Unless there's some questions -- and I should

21   say that the person who served as ambassador or

22   representative for Palestine at the United Nations for

23   many years has been essentially out of the country

24   since December; and within the last month or so, he's

25   been appointed Foreign Secretary for the Palestine

1    Authority.

2         The office in New York has no authority and

3    no -- they transmit things.  We sent, for instance,

4    your restraining order and all of the related documents

5    to them immediately and asked them to transmit them

6    immediately to Palestine, but we've been extremely

7    handicapped in functioning because there's just no one

8    here to deal with and there's no one there that we know

9    of that we can deal with except former Ambassador

10   Al-Kidwa, who is now bearing the burden of Foreign

11   Secretary.

12        Unless your Honor has some questions, I thank

13   you.

14        THE COURT:  Do you take a position on the motion

15   to register this judgment in other federal courts?

16        MR. CLARK:  Well, my observation would be it's,

17   first, premature and unnecessary; but second, they

18   filed a -- the mandate hasn't returned, and there is a

19   question of jurisdiction in my mind; but I will leave

20   that to your decision.  We don't participate.

21        We don't know why there's this sudden rush when

22   if there were -- I mean, we all know what people who

23   try to hide money do, they hide money; and if they had

24   any intention of taking assets out of the United

25   States, I think they would have done it long before

1   now.

2           THE COURT:  All right.

3           MR. CLARK:  Thank you, sir.

4           MR. STRACHMAN:  Your Honor, can I address one

5   point?

6           THE COURT:  Yes.

7           MR. STRACHMAN:  28 U.S.C. 1963 says that the

8   judgment can be domesticated in other jurisdictions

9   when the issuing Court finds that there's just cause,

10  and that just cause has been determined to mean when

11  there are -- there's a substantial risk of the property

12  being moved such that the judgment won't be satisfied.

13          And we have cited in our brief several cases

14  that speak directly to this point, and I'd also remind

15  the Court that it was approximately six months ago this

16  Court ordered the Defendants to submit a $50 million

17  bond staying our collection activities.

18          So having failed to do so, we were cleared a way

19  procedurally while the case was on appeal upon their

20  failure to submit that bond, and I believe that was in

21  September.  So for the last six months, we've held off

22  for a variety of reasons; and when the Court issued

23  that ruling, it was very clear that absent them posting

24  that bond, I think the Court gave them a few extra days

25  to do so, that we would be cleared a way at that time

1        to begin the collection proceedings.

2            There has been no representation throughout this

3        litigation that there are any assets in Rhode Island.

4        So the only way we'd move to collect is outside of this

5        jurisdiction, and that's why we need to domesticate the

6        judgment in the other federal courts.  Thank you.

7            THE COURT:  All right.  Does anybody else wish

8        to be heard?

9            MS. PELCZARSKI:  Yes, your Honor.  Your Honor,

10       Karen Pelczarski for Wachovia.  We have no objection to

11       anything here, obviously, but a very important

12       interest.

13           There's some confusion.  Wachovia has an account

14       that, as I understand it right now, has only about

15       $200,000 of money from one of the Defendant entities.

16       Two issues of confusion that if any orders enter today

17       we would hope to be clarified.

18           Number one, there's a -- it all revolves around

19       a provision in the Temporary Restraining Order that was

20       entered by this Court that permits the PLO to have

21       expenses paid.  And two days ago, Wachovia received a

22       bill for about $60,000 for expenses.

23           Wachovia -- I should mention, too, there's a

24       New York State Temporary Restraining Order that also

25       entered, and that order does not provide for the

1    payment of expenses.  So that's number one confusion

2    that's putting Wachovia in a difficult position.

3            The second one is, it seems to me that either

4    Wachovia should be restrained entirely or given more

5    guidance on what those expenses should be because

6    they're being put in a very difficult position of

7    looking at a simple bill and making a decision as to

8    whether they should pay it or not.

9            So I would ask that this Court give Wachovia

10   some more guidance if another order is going to be

11   entered or if the TRO is going to be confirmed in any

12   way.

13           THE COURT:  Well, I can't speak for the state

14   courts in New York.  I don't know anything about that

15   proceeding.  So there's nothing I can do to help that

16   situation.

17           I've exempted in the Temporary Restraining

18   Order, and I intend to exempt in the preliminary

19   injunction, that issue, the payment of ordinary

20   expenses for those two offices.  How that affects

21   Wachovia, I don't know.

22           MS. PELCZARSKI:  Is there a place where Wachovia

23   can go to get more information as to what expenses are

24   valid or not?  That's our problem.

25           THE COURT:  Well, you'd better go to the state

1    court that issued that restraining order in New York,

2    it would seem to me.  All I can do is deal with what I

3    have before me.

4         As I've indicated, I exempted the ordinary

5    expenses from those two offices, the one in New York

6    and the one in Washington; but that's as far as I can

7    deal with it.

8         MS. PELCZARSKI:  All right.  I would think that

9    Wachovia might be interested in filing some sort of

10   petition for instructions under that scenario, your

11   Honor, because, again, when we get a bill that's --

12        THE COURT:  Well, if you want to do that, go

13   ahead.  I'm not going to prevent you from doing that.

14   Maybe Mr. Strachman can agree with you on something.

15        MS. PELCZARSKI:  Thank you, your Honor.  That's

16   all I have.

17        MR. STRACHMAN:  I would just add, Judge, if we

18   could find out what these accounts are, this one

19   account and how it's registered, et cetera, find out

20   some more information, perhaps we could work that out;

21   and we would certainly be willing to attempt to do that

22   because we obviously drafted the order attempting to

23   carve out a niche.  We need to make sure that that

24   niche is clear and we understand what it is, but we've

25   received no information from anybody about any of these

1  accounts that would help us at least discuss this

2  issue.

3         THE COURT:  Well, you'll have to work that out.

4  I can't deal with it at this point.  Mr. Marcaccio?

5         MR. MARCACCIO:  Thank you, your Honor.  Good

6  morning, your Honor.  I'm here on behalf of Brandywine

7  Asset Management, Inc.

8         Brandywine was served with a copy of the TRO,

9  the Temporary Restraining Order, on or about April 20th

10 or 21st; and Brandywine is the -- it serves in the

11 capacity as the investment manager for a fund that is

12 titled Palestinian Pension Fund for the State

13 Administrative Employees in the Gaza Strip.

14        I have no knowledge as to whether or not this

15 would even be connected to this cause of action; but

16 out of an abundance of caution, Brandywine has ceased

17 doing any transactions on behalf of that fund as of the

18 date that it received notice.

19        So we're here today not to object to the

20 existence of the restraining order but just to

21 determine whether or not it would continue to apply to

22 us.

23        MR. STRACHMAN:  If I could, Judge, Mr. Marcaccio

24 and I spoke a couple of days ago, and we had suggested

25 that if the -- if Brandywine would similarly provide us

1  some information about the account, that maybe we could

2  figure out whether it's subject to the order from at

3  least our perspective or not.

4      They have indicated that they haven't provided

5  any documents; and I'm wondering, if my brother has any

6  information about that, if the Court would order or

7  suggest that he give us some of that information, we

8  could, you know, start that discussion because we're --

9  you know, we're concerned, and we're concerned about

10  what we believe is $10 million in this account.  It

11  could be up to $14 million.

12      But we have no confirmation, no bank statements.

13  We have nothing; and if the Court could provide some

14  relief and order Brandywine to give us some of this

15  basic information, I think that would help us to go a

16  long way to working this issue out.

17      MR. MARCACCIO:  And just briefly on that, your

18  Honor, I have spoken to Mr. Strachman.  I first learned

19  of this on May 3rd when I entered my appearance.  I

20  have spoken to counsel for Brandywine in D.C.  I

21  understand that as of yesterday they were served with a

22  subpoena seeking certain documents, and the

23  representation I received was that they would compile

24  relevant documents so that Mr. Strachman could learn of

25  this information directly through that process.  I

1    think the return date for that subpoena's

2    May 11th or May 13th, one of those two days.

3         Now, I don't know if they'll provide everything

4    that was requested, but they certainly are compiling

5    documents that would be responsive.

6         THE COURT: All right. Well, I'm satisfied that

7    a preliminary injunction should issue in the same terms

8    as the restraining order that was issued by the Court

9    to hold the status quo in this matter until the matter

10   can be finally resolved.

11        There is a reasonable likelihood that the

12   judgment issued by this Court will become final in due

13   time in view of the decision of the First Circuit Court

14   of Appeals affirming this Court's decision and the

15   entry of that judgment.

16        And, therefore, I will issue the preliminary

17   injunction in the same terms as the restraining order

18   provides. Any disputes or any questions that arise

19   under that preliminary injunction by various parties or

20   by firms that have been subpoenaed, if not worked out

21   between counsel, an appropriate motion or petition can

22   be filed with this Court and the Court will try to

23   resolve those issues; but the Court is not clairvoyant

24   and cannot fully comprehend at this time what those

25   issues might be.

1       Also, Plaintiffs' motion for an order to

2  immediately register the judgment in other federal

3  district courts is granted.  Plaintiffs' counsel has

4  made a good point that the supersedeas bond was not

5  filed in this case and, therefore, Plaintiffs'

6  collection activities can be pursued at this time, even

7  though the judgment isn't final yet.

8       So present an order on those two matters,

9  Mr. Strachman.

10       MR. STRACHMAN:  I'd like to present them now if

11  I could, Judge.

12       THE COURT:  All right.

13       MR. STRACHMAN:  We're concerned about the

14  injunction, if I may approach, because by its terms it

15  explicitly terminated today.

16       (Pause)

17       THE COURT:  Why do you put a termination date on

18  the injunction as July 5?

19       MR. STRACHMAN:  We initially asked I think for

20  60 days, Judge, but I would be happy to have it extend

21  longer.  We initially wanted to get an order so that we

22  could domesticate, but it would be more helpful to not

23  have it terminate.

24       THE COURT:  Well, what do you want?

25       MR. STRACHMAN:  I guess until we're done, Judge.

1    I mean, I guess if we could just have it until

2    otherwise ordered or otherwise terminated.

3           THE COURT:  All right.  I will amend it.  This

4    injunction will remain in force until further order of

5    the Court.

6           MR. STRACHMAN:  Thank you.

7           THE COURT:  All right.  That's the injunction

8    order and the order granting the Plaintiffs the right

9    to register the judgment.

10          MR. STRACHMAN:  Thank you, your Honor.  May I

11   also ask for an order that the five subpoenas that I

12   mentioned be returnable, instead of burdening the

13   Court, maybe to my office next Wednesday, 2:00, so that

14   we could -- obviously, we don't need to continue this

15   hearing, per se; but we have no substantive response to

16   any of these subpoenas, and Raymond James hasn't even

17   appeared or communicated directly with us about the

18   subpoena.

19          THE COURT:  Well, I don't think I have the

20   authority to have a subpoena returned to a lawyer's

21   office.  It has to be returned to this Court.  So what

22   do you want to do?  Do you want me to set another date?

23          MR. STRACHMAN:  Yeah, we would, Judge, if we

24   could, and as early as possible so that we can --

25          THE COURT:  What date do you want?

1    MR. STRACHMAN:  Next Wednesday, Judge, is that

2   possible, say in the afternoon?

3    THE COURT:  Two o'clock next Wednesday

4   afternoon.

5    MR. STRACHMAN:  Thank you, your Honor.

6    THE COURT:  So present an order to that effect.

7    MR. STRACHMAN:  I will.  Thank you very much.

8    THE COURT:  All right.  Anything else we should

9   discuss?

10    MR. STRACHMAN:  Just that I'd like to sometime,

11   if it's possible, get the certified copies of the

12   judgment entered so we can --

13    THE COURT:  Well, that will be handled in the

14   Clerk's Office.

15    MR. STRACHMAN:  Thank you, Judge.

16    THE COURT:  All right.  Anything else from

17   anyone?  All right.  We'll take a recess.

18    (Adjourned)

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Karen M. Zinni, RPR-RMR-CRR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

_____
Karen M. Zinni, RPR-RMR-CRR

_____
Date

KAREN M. ZINNI, RPR-RMR-CRR