```
                UNITED STATES DISTRICT COURT

                 FOR THE DISTRICT OF RHODE ISLAND

     * * * * * * * * * * * * * *

     THE ESTATE OF           C.A. No. 00-105 L
     YARON UNGAR, ET AL
          Plaintiff

     VS.                     PROVIDENCE, RI
                             3 AUGUST 2005

     THE PALESTINIAN
     AUTHORITY, et al
          Defendant

     *  *  *  *  *  *  *  *  *  *
```

BEFORE SENIOR DISTRICT JUDGE RONALD R. LAGUEUX

APPEARANCES:

| | |
|---|---|
| FOR THE PLAINTIFFS: | DAVID J. STRACHMAN, ESQ.<br>321 South Main St.<br>Suite 400<br>Providence, RI 02903<br>351-7700 |
| FOR THE DEFENDANT: | DEMING E. SHERMAN, ESQ.<br>Edwards & Angell<br>2800 Financial Plaza<br>Providence, RI 02903<br>274-9200 |
| | JAMES R. OSWALD, ESQ.<br>Adler Pollock & Sheehan PC<br>8th Floor<br>Providence, RI 02903<br>274-7200 |
| Court Reporter: | JOSEPH A. FONTES<br>One Exchange Terrace<br>Providence, RI 02903<br>561-452-7507 |

Proceeding reported and produced by computer-aided stenography



```
 1  AUGUST 3, 2005 - AFTERNOON SESSION
 2          THE COURT:  Good afternoon, everyone.  The
 3  matter before the Court is Civil Action 2000-105 L, The
 4  Estate of Yaron Unger and others versus the Palestinian
 5  Authority and others.
 6      The matter is here on two motions.  There is a
 7  motion filed by the plaintiffs to add clarificatory
 8  language to the injunction that the Court issued, and
 9  there was a motion for clarification that was filed by
10  nonparties, the Canaan Group.  Is anyone here from
11  that?
12          MR. OSWALD:  I am, your Honor.  James Oswald
13  on behalf of the Canaan Funds.
14          THE COURT:  All right.  Will the lawyers who
15  are interested in these two matters please identify
16  themselves for the record, please.
17          MR. STRACHMAN:  David Strachman for
18  plaintiffs.
19          MR. SHERMAN:  Deming Sherman for the
20  Palestinian defendants.
21          MR. OSWALD:  James Oswald on behalf of the
22  nonparties Canaan Equity Offshore CV, Canaan Equity II
23  Offshore CV, Canaan Equity III Offshore CV.
24          THE COURT:  Let me deal with the Canaan
25  matters first.  I've had a spate of letters that have
```

```
 1   caught up with me today, because I haven't been here,
 2   requesting that the Court deal with this matter on the
 3   papers, and then requesting the Court put the matter
 4   over until September when pro hac vice counsel can be
 5   present, and so forth. So let me deal with that matter
 6   first. Do you want to make a presentation on that?
 7         MR. OSWALD: Certainly, your Honor. You
 8   summed it up pretty succinctly. I had put in pro hac
 9   vice motion papers for Canaan's principal counsel which
10   is counsel out of New York City.
11         THE COURT: I granted that.
12         MR. OSWALD: Thank you. And, as it turned
13   out, when the Court scheduled this for August 3rd, we
14   found out that he was not going to be available to come
15   up, which is when I wrote my first letter to your Honor
16   requesting either that it be taken on the papers or
17   that it be put over until September to a date when
18   principal counsel would be available. I believe that
19   there's no objections on anyone's part here to that
20   being put over to September. Again, the Canaan Funds
21   would also be willing to have the Court hear it on the
22   papers, if that is what the Court prefers.
23         THE COURT: Mr. Strachman.
24         MR. STRACHMAN: We'd be happy to continue the
25   case to September. I think it makes sense.
```

1  THE COURT: All right. I'll have it
2  rescheduled then for September. I'd like to hear oral
3  arguments on these things because sometimes I may have
4  some questions. I suppose the situation in Connecticut
5  will be --
6  MR. OSWALD: Perfectly fine. Thank you.
7  THE COURT: -- solidified by that time.
8  MR. STRACHMAN: It may well be, your Honor.
9  THE COURT: You've registered your judgment in
10 Connecticut?
11 MR. STRACHMAN: Yes, your Honor.
12 THE COURT: And what else has happened in
13 Connecticut at this point?
14 MR. STRACHMAN: We've requested an execution,
15 your Honor. It may have issued by now. I don't know.
16 THE COURT: As to these funds?
17 MR. STRACHMAN: As to the judgment that was,
18 you know, the judgment that was --
19 THE COURT: You want to execute on these
20 funds?
21 MR. STRACHMAN: Absolutely. Absolutely.
22 Correct.
23 THE COURT: So that issue may be resolved by
24 the Connecticut Judge who's assigned to the case.
25 MR. STRACHMAN: Right.

1       THE COURT: So it may become moot here.
2       MR. OSWALD: We understand that, your Honor.
3       THE COURT: All right. You'll get a notice of
4  the hearing sometime in September.
5       MR. OSWALD: Thank you.
6       THE COURT: So I'll take up plaintiff's motion
7  for clarification at this time. I'll hear from you,
8  Mr. Strachman.
9       MR. STRACHMAN: Thank you, your Honor. The
10 Court issued an injunction several months ago with
11 respect to all of the PA and the PLO's assets. What
12 the PA and PLO has chosen to do is to manipulate the
13 terms of that injunction when we sought collection
14 against approximately $200,000 in funds that are held
15 in a Wachovia bank in an account in Washington, D.C.
16 When we moved for attachment against those funds, the
17 PA's local counsel in D.C., Mr. Maher Hanania, filed a
18 motion in court saying that this Court, in granting the
19 injunction, had the "clear intention" "to protect the
20 operation of the PLO mission." And as you may recall,
21 in the injunction, in order to avoid conflict, in order
22 to reduce the issues that are before the Court, we
23 carved out a provision in the injunction. The
24 injunction, as the Court made very clear in subsequent
25 proceedings with respect to our request for the

```
 1   appointment of a receiver, the Court had authority over
 2   the parties, the PA and the PLO.  The injunction, if
 3   you will, is a, as a result of exercising authority i
 4   inpersonam over the PA and PLO.  There are no assets in
 5   Rhode Island to act upon.  The Court could not have,
 6   and clearly did not intend, when signing the order that
 7   we prepared without any changes, make a determination
 8   that the $200,000, which we subsequently learned the
 9   $200,000, that allegedly is the operational budget, or
10   operational fund of the PLO office in Washington, is
11   exempt from attachment, and I think what's happened is
12   the PLO has yet again manipulated, you know, the
13   proceedings to create a false impression.
14        Judge Kessler, to whom this matter is now before in
15   Washington, I think is rightfully confused about the
16   nature of the representations by the PLO's counsel in
17   Washington.  And, therefore, we filed this motion to
18   clarify the order and to add some very specific
19   language in a proposed order that we filed with the
20   Court, to make very clear that this Court was not
21   addressing whether we can attach funds of the PA and
22   PLO anywhere else in the United States.  Their reading
23   of this, and we attached, as the Court knows, we
24   attached Mr. Hanania's brief so the Court could see it
25   in its full glory.  Their position is, to having won a
```

1  $116 million judgment after 5 years of litigation and
2  after two appeals, we now are the only judgment
3  creditors of the PLO and PA who can't reach their only
4  bank account in the United States.  And that's clearly
5  not what this Court intended.  We all know what was
6  intended.  Mr. Schilling and Mr. Clark filed in their
7  memo, with respect to our motion, a brief which
8  clearly, if the Court reads between the lines, can see
9  that everybody knew what was happening here.  We
10  removed and we said very frankly to the Court, we asked
11  for an injunction over 99 percent of the PA's assets,
12  if you will, not the entire pie.  We said carve this
13  out.  We did not say issue a mandatory injunction
14  preventing us from reaching those funds.  The PLO's
15  manipulated that injunction and has mischaracterized
16  it, and has mischaracterized the Court's intention in
17  the language that I just used.  To say that we are now
18  the only second-class citizens, if you will, with
19  respect to the PLO assets, this is vitally important
20  because after 13 months not a single dime has been paid
21  toward this judgment.  It's also vitally important
22  because we think the only clear asset held by the PLO,
23  as opposed to the PA, in the United States, is this
24  $200,000 that we found in Wachovia.  Initially we
25  thought that account had a couple thousand dollars in

1  it, now we find that one portion of it is basically
2  funds that they set aside on their own to invest, or to
3  hold onto, and the other portion of one of the other
4  accounts -- actually two accounts, is used to pay some
5  of their expenses here.  So we would ask that the Court
6  grant our motion, allow us then to litigate, as the
7  Court said.  We have to go down now to Connecticut, to
8  Washington, to New York, anywhere else that we can find
9  these assets, but we don't believe that we should be
10 hamstrung by a manipulation of the Court's order here
11 in all those other jurisdictions, and we vitally need
12 this clarification so that the order is clear, the
13 intent of the Court is clear, and that we can then go
14 duke it out in Washington, D.C. with respect to whether
15 we can -- whether there are exemptions to attachment,
16 et cetera, or any other basis for objecting to the
17 attachment of those funds.  Thank you.
18           THE COURT:  Mr. Sherman, do you want to be
19 heard?
20           MR. SHERMAN:  Briefly, your Honor.  On May 5,
21 2005, the Court issued an injunction, and in
22 paragraph 2, essentially the injunction froze all the
23 assets of the Palestinian defendants, and then in
24 paragraph 2 of the injunction the order provides that
25 notwithstanding the provisions of the first paragraph,

1  the defendants are permitted to withdraw normal
2  expenses necessary for the daily operations of their
3  offices in Washington, D.C. and at the United Nations
4  from existing bank accounts. And the order provides
5  further that the injunction remains in full force until
6  further order of the Court.
7      So following this, entry of this order, there were
8  discussions between the plaintiffs and the defendants
9  concerning this Wachovia account, and the normal
10 operating expenses that would have otherwise been paid
11 from that account. Then there was objection by the
12 plaintiffs to many of the operating expenses. They
13 wanted more documentation, that sort of thing. So
14 there was no agreement reached as to whether those
15 normal expenses could be paid. As a result, none of
16 the monies have been paid for the operations of the
17 offices in Washington. And as a further result,
18 Wachovia has placed the funds in the court in the
19 nature of an interpleader proceeding.
20     It is our position that the injunction that was
21 issued by this Court remains in full force and effect,
22 and that what the plaintiffs seek to do here is not
23 clarify the order but change it. If they wish to
24 change it or move to dissolve it, that would be one
25 thing. But to clarify it in the fashion that they're

1  seeking, effectively eviscerates the second paragraph
2  of the order that's in current force and effect.  So,
3  as a result, we've objected to this motion, and as long
4  as this injunction is in full force and effect, it
5  seems to me that these accounts are not subject to
6  attachment or subject to other process issued by the
7  plaintiffs.  Thank you.
8            THE COURT:  It was not the Court's intention
9  to limit the rights of the plaintiffs in seeking
10 attachments and execution on any funds of the defendant
11 by the issuance of the injunction.  The purpose of the
12 injunction was to freeze the assets and funds of the
13 defendants pending registration of the judgments in the
14 various jurisdictions where there were funds and assets
15 to be found.
16       As I stated previously, this Court performed its
17 function.  It entered a judgment against the
18 defendants, which judgment is now final, having been
19 affirmed by the First Circuit Court of Appeals.
20       Since there are no assets or funds in this
21 jurisdiction, the plaintiffs will have to enforce that
22 judgment by registering the judgment wherever it can
23 find assets and funds of the defendants.  One of those
24 places, of course, is the District Court for the
25 District of Columbia because there is this fund being

1   held by Wachovia.  I just have been notified the funds
2   have been paid into the Registry of the Court, so it
3   will be up to the District Judge in the District of
4   Columbia to make a determination of whether those funds
5   can be fully attached, or partially attached, or
6   executed upon, and in what amount.  The Court intended
7   to make no decision that those funds were exempt from
8   attachment or execution.  The reason they were exempted
9   from the injunction was because the plaintiffs did not
10  choose to litigate at that time, and this Court did not
11  choose to decide whether those funds were exempt from
12  attachment or execution.
13       So that is my full explanation of the preliminary
14  injunction that was issued.  If it needs to be
15  clarified any further, I can simply vacate that part of
16  the injunction that exempts those funds.  I can't make
17  it any clearer than that.  It will be up to the Judge
18  in the District of Columbia to make a determination of
19  whether there's some reason why those funds are not
20  attachable, or subject to execution.
21       So I give you your choice, Mr. Strachman, as to
22  what you want me to do.  Do you want me to vacate that
23  part of the injunction?  Then it will be absolutely
24  clear then.
25            MR. STRACHMAN:  Respectfully, Judge, I think

1  the proposed language that we provided to clarify the
2  order, to clarify the injunction, would be the way to
3  resolve it.  By clarifying it in that fashion, it does
4  not give any wiggle room for anybody to misinterpret or
5  misconstrue what was done, and I think the language in
6  the proposed order precisely remedies the problem that
7  we're encountering.
8          THE COURT:  All right.  I think you achieved
9  that purpose by this amendatory language, so I will
10 adopt that amendatory language.
11         MR. STRACHMAN:  Thank you.  I have an extra
12 copy of the order.
13         THE COURT:  All right.  Give me a copy of that
14 order, and I'll execute it right now.
15         MR. STRACHMAN:  Thank you.
16         THE COURT:  You can have the transcript of
17 these proceedings transcribed and made available to
18 Judge Kessler in the District Court in the District of
19 Columbia.
20         MR. STRACHMAN:  I will.  Thank you, your
21 Honor.
22         THE COURT:  All right.  The order's been
23 executed.  Here are the files.  All right, is there
24 anything else we should discuss?
25         MR. STRACHMAN:  No, your Honor.

```
 1              MR. SHERMAN:  No, your Honor.
 2              THE COURT:  All right, we'll take a recess.
 3              THE CLERK:  All rise
 4         (R E C E S S)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

# C E R T I F I C A T I O N

I hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Joseph A. Fontes*
_____
JOSEPH A. FONTES

*August 3, 2005*
_____
Date

FILED 2005 AUG -4 A 9:12 U.S. DISTRICT COURT DISTRICT OF RHODE ISLAND