UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.

Plaintiffs – Judgment Creditors

v.                                                    C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.

Defendants – Judgment Debtors

## PLAINTIFFS' CREDITOR'S BILL PURSUANT TO R.I.G.L. §9-28-1

### Introduction

1.      This is a creditor's bill brought by the plaintiffs/judgment creditors, pursuant to §9-28-1 of the Rhode Island General Laws and Rule 69 of the Federal Rules of Civil Procedure, seeking a judgment against defendant/judgment debtor Palestinian Authority ("PA") assigning to the plaintiffs/judgment creditors certain legal and equitable rights and interests of the PA.

## I.      RELEVANT BACKGROUND

2.      Plaintiffs are the children, parents, siblings and estate of Yaron Ungar, an American schoolteacher murdered along with his pregnant wife in a terrorist attack carried out in June 1996, by members of the Hamas terrorist group acting in concert with and under the command of the PA and the Palestine Liberation Organization ("PLO").

3.      Plaintiffs brought this action in March 2000 under the civil provisions of the Antiterrorism Act ("ATA") 18 U.S.C. §2331 *et seq.* The PA and PLO refused to answer the complaint or conduct discovery and, as this Court expressly found, made every effort to delay

1

and hinder the progress of the case for over four years. On July 13, 2004, this Court entered final

judgment for plaintiffs against the PA and the PLO, jointly and severally, in the amount of

$116,409,123 plus attorney fees.  Ungar v. Palestinian Authority, 325 F.Supp.2d 15 (D.R.I.

2004).  The judgment was affirmed on appeal, and the Supreme Court denied a petition for a writ

of certiorari.  Ungar v. Palestinian Authority, 402 F.3d 274 (1st Cir. 2005) cert. denied 126 S.Ct.

715 (2005).

4.    In its decision ordering entry of final judgment, this Court emphasized the

importance it attached to the judgment being honored and enforced:

> The PA and PLO . . . are responsible for and must
> bear   the   ultimate   burden   of   providing
> compensation, which this Court fully acknowledges
> will never return to Plaintiffs the relationships and
> lives that existed prior to June 9, 1996. This Court
> hopes that in keeping with the ATA's purpose to
> deter acts of international terrorism, its judgment
> will "interrupt or at least imperil the flow of
> terrorism's lifeblood, money," and thus, prevent the
> PA and PLO from funding future terrorist acts such
> as the one that resulted in the Ungars' horrific
> deaths.

Ungar, 325 F. Supp. 2d at 25.

## II.    THE PA AND PLO HAVE REFUSED TO HONOR THE JUDGMENT

5.    In fact, however, the PA and PLO have refused to satisfy the Ungars' judgment,

and have informed the Ungars' counsel that they "will never pay" the judgment.    This

contumacious refusal is merely the encore to years of intentional delay created by the PA and

PLO during the underlying suit. Ungar, 325 F. Supp.2d at 26, 62 (finding that the PA and PLO

2

took "deliberate actions to delay the completion of this litigation" and "sought to delay these proceedings as long as possible" and imposing sanctions).[1]

6.     The PA and PLO are refusing to pay the Ungars' judgment because they do not recognize the authority of the courts of the United States, as they themselves have openly explained. In July 2005, the U.S. District Court for the Southern District of New York ordered the PA and PLO to pay discovery sanctions in the amount of some $19,000 previously imposed in Knox v. Palestine Liberation Organization, Civ. No. 4466(VM), and to answer the complaint in that action, by no later than August 15, 2005. Exhibit A. In response to that order, the PA and PLO informed the S.D.N.Y. that:

> [T]he defendants have instructed counsel to present only their position that U.S. courts have no jurisdiction over them and not to answer on the merits . . .
>
> This same position, that the Court has no jurisdiction over them, applies to the order for defendants to pay sanctions.

Exhibit B.

7.     Thus, the PA and PLO are brazen scofflaws who now refuse to honor the judgment of this Court because they do not recognize the authority of the United States courts – despite the fact that they spent nearly six years aggressively invoking the authority of this Court,

---

[1] This conduct is part of a deliberate policy of intransigence employed by the PA and PLO in all civil actions pending against them under the Antiterrorism Act, for which they have been repeatedly sanctioned and castigated by the federal courts. See e.g. Knox v. Palestine Liberation Organization et al., 229 F.R.D. 65, 70 (S.D.N.Y. 2005) (Finding that the PA and PLO had intentionally "generat[ed] more than a year's delay and thousands of dollars in legal expenses," imposing monetary and estoppel sanctions and warning the PA and PLO that "The Court will not tolerate such practices in the future, and will consider any unexplained repetition of them sufficient grounds for imposition of sanctions on Defendants' counsel personally as well as on Defendants . . ."). Id.

the Court of Appeals and the Supreme Court, in order to delay and attempt to dismiss the Ungars' suit.

## III.    PLAINTIFFS ARE ENTITLED TO RELIEF UNDER R.I.G.L. §9-28-1

8.    Rule 69 of the Federal Rules of Civil Procedure provides in relevant part that "The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held . . . " Fed.R.Civ.P. 69(a).

9.    The practice and procedure in proceedings in aid of execution in Rhode Island are governed by Chapter 9-28 of the Rhode Island General Laws.  Section 1 of Chapter 9-28 provides in relevant part that:

> Any judgment creditor, after his or her execution has been returned wholly or in part unsatisfied, may, by a civil action in the nature of a creditor's bill, reach and apply and subject to the payment and satisfaction of his or her judgment any equitable estate, any equitable assets, or any choses in action of the judgment debtor . . .

R.I.G.L. §9-28-1.

10.    Defendants PA and PLO have no assets in this jurisdiction and any execution issued on plaintiffs' judgment would be returned wholly unsatisfied.[2]  The plaintiffs are therefore entitled, pursuant to Fed.R.Civ.P. 69 and R.I.G.L. §9-28-1, to "reach and apply and subject to the payment and satisfaction of [their] judgment any equitable estate, any equitable assets, or any choses in action of the" PA and PLO.

---

[2] Indeed, delivering an execution to the United States Marshals Service would be a frivolous waste of resources, since there are no assets whatsoever against which plaintiffs could ask the Marshal to act. While the remedy provided by R.I.G.L. §9-28-1 is available whenever a judgment-debtor has no (or insufficient) assets reachable by execution process in Rhode Island, to the best of plaintiffs' knowledge these defendants have no assets reachable by execution process anywhere in the United States.

## IV.    THE PA HAS ASSETS SUBJECT TO R.I.G.L. § 9-28-1

11.    The information currently[3] available to the plaintiffs demonstrates that the PA has assets and choses in action subject to R.I.G.L. §9-28-1, as described below.

### The Palestinian Commercial Services Company

12.    The Palestinian Commercial Services Company (a/k/a "Palestine Commercial Services Company") ("PCSC") was established by the PA in 1994, and is wholly owned by the PA. Exhibits C, D.

13.    The PA established and uses the PCSC to conceal, hold and invest various assets of the PA. See World Bank Report No. 28990-GZ, "West Bank and Gaza Country Financial Accountability Assessment" (Exhibit E) at p. 11 (§ 21, fn. 5), pp. 33-35.

### The Palestine Investment Fund Company

14.    In recent years the PA established the Palestine Investment Fund Company (a/k/a "Palestinian Investment Fund" or "Sharekat Sundouk al-Istithmar al-Filistinee") ("PIF") which it uses to hold, manage and invest the PA's assets. Some (but not all) of the PA assets held by the PCSC have been transferred to the PIF. See Exhibit E at pp. 3-4 (§§ 10, 12), p. 8 (§ 6), pp. 33-35; Exhibit F.

15.    In sworn affidavits submitted by the PA in civil proceedings pending in the Israeli courts, the PA has explicitly identified the PA investments held in the name of the PIF as

---

[3] The plaintiffs' knowledge of the defendants' assets is extremely limited, because the defendants have flatly refused to comply with plaintiffs' requests for post-judgment discovery regarding their assets, and plaintiffs' therefore reserve the right to bring future proceedings in respect to any other assets of the defendants which are found to be subject to R.I.G.L. §9-28-1.

available for the satisfaction of judgments against the PA. See Declaration of Avraham Colthof, Exhibit G.[4]

16.     The PIF itself, like the PCSC, is wholly owned by the PA. See Exhibit E at p. 33 (§ 100); Exhibit F.

17.     At one time, the value of the PA assets held by the PIF and the PCSC exceeded the amount of the PA's judgment debt to the Ungars; however, the PA has recently encumbered over $500 million of these assets as collateral for loans, and upon information and belief the net unencumbered value of the remaining assets is now less than the amount of the Ungars' judgment. See Exhibit H.

18.     Thus, the PA's rights and interests in the PCSC and the PIF include and consist of three distinct categories:

        a.      The PA's ownership rights in the PCSC and the PIF (as evidenced by the certificates attached as Exhibits C, D and F);

        b.      The bundle of rights, benefits and interests accruing to and/or enjoyed by the PA as a result of those ownership rights;

        c.      The PA's rights and interests in the assets held by the PCSC and the PIF.

19.     In sum, the PA has a broad array of legal and equitable rights and interests both (a) in the PCSC and the PIF themselves and (b) in the assets held by the PCSC and the PIF.

20.     Under §9-28-1, a judgment creditor is entitled to reach and apply to his judgment all legal and equitable rights and interests of the judgment debtor. See e.g. Howe v. Richardson, 232 Bankr. 534 (Bankr. 1st Cir. 1999), aff'd, 193 F.3d 60 (1st Cir. 1999) (Expansive language of

_____

[4] The PA submitted these affidavits in support of successful motions by the PA in the Israeli courts to vacate or reduce the amount of prejudgment attachments that had been imposed on the PA by the Israeli courts in those proceedings. The PA is therefore judicially estopped from contesting or opposing the instant action.

§9-28-1 and statute's inclusion of "chose in action" permits judgment creditors to "tak[e] over debtors' legal claims against third parties" even when not subject to attachment under common law).

21.    Among the rights and interests subject to §9-28-1 are a judgment debtor's interests in a corporation. See Rhode Island Hospital v. Collins, 117 R.I. 535, 537, 368 A.2d 1225, 1227, R.I. (1977) (Pursuant to §9-28-1 a judgment creditor may "bring an independent civil action to reach and apply [judgment debtor's] interest in [a] corporation" owned by judgment debtor.).

22.    The Ungars are therefore entitled pursuant to §9-28-1 to reach, apply and subject to payment of their judgment all legal and equitable rights and interests of the PA (a) in the PCSC and the PIF and (b) in the assets held by the PCSC and the PIF.

WHEREFORE, plaintiffs request a judgment against the Palestinian Authority:

(1) Assigning to the plaintiffs herein

i.    All of the PA's ownership rights in the PCSC and the PIF that are evidenced by the certificates attached hereto to as Exhibits C, D and F;
    or, alternatively,

ii.    All rights, benefits and interests of the PA derived, accruing, flowing and/or resulting from the ownership rights described in (i) supra;
    and,

(2) Assigning to the plaintiffs herein all rights, benefits and interests of the PA in all property, assets and credits, of any type, that are titled and/or owed to the PCSC and the PIF; and

(3) Granting any other relief that the Court finds, just, necessary or appropriate.

7

Plaintiffs, by their Attorneys,


David J. Strachman  #4404
McIntyre, Tate & Lynch
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)


## CERTIFICATION

I hereby certify that on the _____ day of July 2006, I faxed and mailed a true copy of the within to:

Lawrence W. Schilling
Ramsey Clark
37 West 12th Street, 2B
New York, NY 10011
(fax 212-979-1583)

Deming E. Sherman
Edwards & Angell, LLP
2800 Bank Boston Plaza
Providence, RI 02903
(fax 401-276-6611)