1                UNITED STATES DISTRICT COURT

2

3            FOR THE DISTRICT OF RHODE ISLAND

4  THE ESTATE OF YARON UNGAR, ET AL
                                  CA No. 00-105 L
5      plaintiff

6

7    v                              PROVIDENCE, RI
                                    DECEMBER 12, 2002

8  THE PALESTINIAN AUTHORITY, ET AL

9      defendant

10

11       BEFORE MAGISTRATE JUDGE DAVID L. MARTIN

12

13  APPEARANCES:

14  FOR THE PLAINTIFF:        DAVID J. STRACHMAN, ESQ.
                              McIntyre, Tate, Lynch & Holt
15                            321 South Main St. Suite 400
                              Providence, RI  02903
16                            351-7700

17

18  FOR THE DEFENDANT:        DEMING E. SHERMAN, ESQ.
                              EDWARDS ANGELL PALMER & DODGE
                              2800 Financial Plaza
19                            Providence, RI 02903
                              274-9200
20

21  FOR THE DEFENDANT:        LAWRENCE W. SCHILLING, ESQ.
    (Attendance by Telephone) Ramsey Clark & Lawrence W.
22                            Schilling Law Offices
                              36 East 12th St.
23                            New York, NY 10003
                              212-475-3232
24

25

1  DECEMBER 12, 2002  -  MORNING SESSION

2           THE COURT:  Good morning.  This is the matter of

3  The Estate of Yaron Ungar, et al versus the Palestinian

4  Authority, et al, Civil Action 00-105 L.  This matter is

5  scheduled for a hearing this morning on motions filed by the

6  plaintiffs.  The motions are, the plaintiffs' motion to

7  compel discovery, the plaintiffs' motion to strike, the

8  plaintiffs' motion to strike, the plaintiffs' motion for

9  sanctions, the plaintiffs' petition for issuance of letter of

10  request for judicial assistance.  The Court intends to

11  address these motions in the following order.  I'm first

12  going to be addressing the motions to strike, the motion for

13  sanction, the motion to sever, and then we'll proceed to the

14  motion to compel discovery.  And then, lastly, the motion for

15  plaintiffs' petition for issuance of letter of request for

16  judicial assistance.

17           I'm going to ask the attorneys present in the

18  courtroom to identify themselves, and then I'll ask counsel

19  on the telephone to identify himself.  Counsel in the

20  courtroom, please.

21           MR. STRACHMAN:  David Strachman for the plaintiffs.

22           MR. SHERMAN:  Deming Sherman for the Palestinian

23  defendants.

24           MR. SCHILLING:  Lawrence Schilling on the

25  telephone, your Honor.  I'm on a speakerphone, and I can -- I

1    hope you can hear me.

2              THE COURT:  Yes, I can hear you.  Can you hear me,

3    Mr. Schilling?

4              MR. SCHILLING:  I can hear you very clearly.  The

5    counsels' part are sort of faint but I think I can make it

6    out.

7              THE COURT:  I think I will direct counsel when they

8    speak to go to the podium and speak directly into the

9    microphone, and I will check again with you, Mr. Schilling,

10   to make sure you can hear counsel clearly.

11             MR. SCHILLING:  Your Honor, we had a motion for a

12   protective order.  Your Honor granted the motion to the

13   extent of granting a stay of discovery, but our motion has

14   also sought leave to assert objections or whatever other

15   responses we had to the discovery requests.  Is that motion

16   before you, as well?

17             THE COURT:  It's not scheduled for hearing,

18   Mr. Schilling.  I will, when we reach the motion -- what

19   you're referring to would go to the motion to compel

20   discovery, is that correct?

21             MR. SCHILLING:  It would certainly tuck, you know,

22   tie into it, yes, your Honor.

23             THE COURT:  I will, when we get to that motion, the

24   motion to compel discovery, I'll address with you your motion

25   for a protective order and the status of that.  I recall from

1    our recent telephone conversation where Mr. Clark referred to

2    my granting of the protective order.  My recollection was

3    that I indicated that now that Judge Lagueux has made a

4    ruling, I did not think that my protective order continued

5    indefinitely.  But, we'll get to that at the appropriate

6    time.  I appreciate your calling to my attention.

7            The Court first wants to address with plaintiffs'

8    counsel the three motions, plaintiffs' motion to strike,

9    plaintiffs' motion for sanctions, plaintiffs' motion to

10   sever.  In reviewing those motions, I see that the motion to

11   sever was cast as an alternative request if the motion to

12   strike and the motion for sanctions were not granted.  In

13   light of the fact that on July 12, 2002 the Court overruled

14   the objection filed by the Palestinian Authority and the PLO

15   to the hearing on plaintiffs' motion to enter default

16   judgment against Hamas and the Hamas Operatives, is there

17   still a need to rule upon these motions, Mr. Strachman?

18           MR. STRACHMAN:  The motions, specifically, Judge,

19   the motion to strike and the motion --

20           THE COURT: I'm going to stop you.  Mr. Schilling,

21   can you hear Mr. Strachman clearly?

22           MR. SCHILLING:  Yes, very very clearly, your Honor.

23           THE COURT:  He's now at the podium and I think

24   you'll be able to hear everyone who speaks from the podium

25   clearly.  Please resume, Mr. Strachman.

1          MR. STRACHMAN:  Thank you, your Honor.  As I
2     indicated during our brief conversation, conference, rather,
3     on December 2, I believe that the motions to strike and the
4     motion for sanctions are really, in a sense, academic at this
5     point as the Court clearly issued an order emanating from a
6     brief hearing that we had on July 12th, I believe, just prior
7     to the evidentiary hearing at which point your Honor issued
8     an order disallowing the request of the defendants to stop
9     the proceedings.  And the thrust of my motions to strike and
10    for sanctions went particularly to that, to that issue.  But
11    the issue in terms of the motion to sever, we believe is
12    necessary and would ask that the Court rule on it.  We filed
13    a supplemental memo in August addressing some of the concerns
14    that were raised by the PLO and the PA specifically to the
15    issue of severance, and we believe that that's something we
16    would request your Honor to rule on.

17         THE COURT:  The supplemental memorandum you're
18    referring to, is that plaintiffs' reply to memorandum of the
19    Palestinian Authority and the Palestine Liberation
20    Organization objecting to plaintiffs' motion to sever?

21         MR. STRACHMAN:  Correct.

22         THE COURT:  So, you're still pressing the motion to
23    sever?

24         MR. STRACHMAN:  Yes.  I think, I think it's still
25    necessary.

1      THE COURT:  I'll hear you briefly on the motion to

2   sever, particularly in terms of why you feel it's still

3   necessary.  I mean, as a practical matter, severance has

4   almost taken place as a result of the fact that the Court

5   conducted the hearing on the motion to enter default

6   judgment.  The Court has that under advisement.  The Court

7   will be issuing a decision in that matter.  Why does the

8   motion to sever -- is that necessary at this point?  Let me

9   assist you as to where the Court's coming from.  As I

10  reviewed the motion to sever, it appeared that the motion,

11  the stimulus for the motion to sever was the objection filed

12  by the PA and the PLO to the hearing on the motion to enter

13  default judgment, that plaintiffs were clearly upset by what

14  they viewed as a last minute objection filed by the

15  Palestinian Authority and the PLO to the hearing that was

16  going to be taking place on July 12th.  Plaintiffs had

17  brought witnesses from Israel to testify, and plaintiffs

18  were, as I've indicated, upset by this last minute objection.

19  And as I read the motion, it was cast as an alternative

20  motion, that if the Court did not strike the objection, did

21  not overrule the motion for sanctions, then as an alternative

22  the Court were entertaining an objection from the Palestinian

23  Authority and the PLO and were inclined to delay the hearing

24  based on that objection, then the fall back position of the

25  plaintiffs was, "Sever the cases.  Let's have -- let the

1  hearing go forward." Since the Court overruled the objection

2  by the Palestinian Authority and the PLO, that's why I'm not

3  clear as to why you are pressing the motion to sever.

4       MR. STRACHMAN: The issue, Judge, is that I believe

5  it was in November, or September, of 2000 when we first filed

6  a motion for default judgment against the Hamas defendants

7  having been defaulted in, I believe, September of that year.

8  We had asked the Court to go forward to final judgment and to

9  obtain a judgment against the Hamas defendants. The Court

10  ultimately granted our request, I believe in early June,

11  setting the matter down for an evidentiary hearing. If the

12  matter is not severed, if we are not  -- if there's any

13  mechanism or any obstacle to us obtaining a judgment against

14  the Hamas defendants, then a ruling on the motion might be

15  moot. I don't understand what the impact of that would be.

16  We're trying to obtain judgment. We said that right from

17  when we first filed the motion in the Fall of 2000, and the

18  defendants, the PA and the PLO defendants', attempts to

19  interfere with those proceedings, despite your Honor's

20  request, raised certain issues as to whether we can obtain a

21  judgment against the Hamas defendants. And, therefore, I

22  believe we re-styled the motion after I think I incorrectly

23  filed it initially as three motions together. We filed a

24  separate motion requesting severance in a supplemental memo

25  in which we indicated why we feel both the -- we have a need

1  for the judgment against Hamas following the hearing, and

2  also how the issues raised by the PA and the PLO can be

3  addressed.

4        For instance, this case is now almost on the verge

5  of its three year anniversary.  The Hamas defendants, the

6  actual gunmen, and the organization of the gunmen were

7  defaulted two-and-a-half years ago.  This case, we fully

8  expect, based on the types of re-filings and re-pleadings,

9  and second motions and request for new motions and

10  reconsiderations, et cetera, we fully expect that this will

11  take years and years to resolve.  It would be entirely

12  prejudicial to the Ungars to allow the PA and the PLO to

13  stymie their efforts to obtain judgment against not only the

14  actual triggermen, but the triggermen who were defaulted

15  two-and-a-half years ago, and those same triggermen who the

16  Court heard evidence against in the form of damages evidence.

17  If we don't obtain judgment, then it's unclear to me what the

18  status of that hearing is.  It was clear to me that when

19  Judge Lagueux scheduled the hearing for July, or at least

20  granted our request to schedule the hearing with your Honor

21  for July, that we would be able to go forward and obtain a

22  final judgment against the Hamas defendants.  To allow, or to

23  force them to wait simply because their threats of

24  interlocutory appeals and the natural process of filing, you

25  know, filing briefs, and response briefs, and the time it

1    takes to write decisions on these cases, which is -- and now

2    we've had two full length decisions on this motion to

3    dismiss, and to reallege these same kinds of issues, would be

4    tremendously prejudicial to my clients.  It's clearly not

5    intended, or what was not intended by the Anti-terrorism Act

6    of 1992, and the full legislative history has been briefed by

7    the plaintiffs on several occasions in our responses to the

8    motions to dismiss.  The whole point was to allow victims of

9    terrorism to obtain some type of judgment.  If everytime you

10   sue the gunmen and the supporting organizations to the

11   gunmen, and the gunmen are clearly held to be liable both

12   because of their convictions and their defaults, and then you

13   have a situation where parallel defendants have an

14   opportunity to thwart the litigation because of their style

15   of pleading, it would run completely counter to what was

16   intended.  The Klinghoffer case took 12 years, and we fully

17   expect this case is going to take 12 years with the PA and

18   the PLO.  There's no reason why the Hamas defendants, and

19   particularly the Hamas organization, should not be held

20   responsible, and we should not be able to obtain judgment

21   against them.  It's already been almost three years since

22   they were first filed -- excuse me, since they were first

23   served.  So to that extent, I think severance is necessary.

24   And I think all of the policy reasons for severance enure to

25   the plaintiffs' favor.  All of the considerations that the

1   defendants, the PA and the PLO have raised, can be addressed

2   by severance.  They would never be prejudiced.  We've

3   indicated on several occasions, both in a conference with the

4   Court on July 11th, a memorandum of July 11th, in court on

5   July 12th, and the reply brief that I filed in August of this

6   year, and now that this is the way to ensure that their

7   rights are protected.  There would be no adverse implications

8   to them in us obtaining judgment against Hamas.  In fact,

9   quite honestly, it's just the opposite.  What they've been

10  able to do, and if they obtain the transcripts, they'd be

11  able to hear the testimony of all our clients that know what

12  they're committed to saying in terms of, you know,

13  depositions or using them at a trial down the road.  They

14  know who our experts, some of our experts are.  They know

15  what some of the documentary evidence is.  The only prejudice

16  would come to the, you know, the Ungar children, the Ungar

17  families.  So to me, as I reiterated during our conferences,

18  or whenever this issue was raised, it's the, you know,

19  harmonizing verse that rectifies each of the positions.

20          And if I could just conclude by saying the

21  objections raised by the PA defendants in their

22  one-and-a-half page memorandum are, as I said, I think

23  they're anemic.  I mean there's nothing there.  There's

24  nothing that they have raised in their pleading of August 2,

25  for instance, that would indicate that we should not sever

1  the case.  And, in fact, I think because of their own

2  ambivalence, they expressed that ambivalence when we spoke

3  with your Honor, I believe it was either the day, or --

4  either July, I think it was July 11th when we had a telephone

5  conference, and the procedure by which they actually even

6  appeared in this matter on July 12th.  You may recall that

7  Mr. Sherman came, read a statement prepared by Mr. Schilling,

8  that they had agreed, or they had -- that they had on their

9  own indicated that they were not going to participate in the

10 proceedings.  Mr. Schilling said -- excuse me, Mr. Sherman

11 said very clearly, "It is the option of the Palestinian

12 defendants not to participate in the hearing.  Accordingly,

13 we intend not to participate."  They chose not to

14 participate.  Now how then can they thwart us?  How can that

15 be used as a, as a sword against the plaintiffs for obtaining

16 a judgment against parties that this Court defaulted over two

17 years ago?

18         THE COURT:  Mr. Strachman, did I hear you say that

19 you re-filed the motion to sever?

20         MR. STRACHMAN:  I think what happened, Judge, is --

21 I know what happened is, when we received the motion to stop

22 the proceeding on the 10th, I improperly filed a motion on

23 three, requesting three or four types of relief on the 11th,

24 shortly before our conference of that day, and then I

25 separated those motions into, you know, into separate

1    motions, and then the defendants responded, and then we

2    supplemented our motion in a sense by our reply memorandum in

3    which we addressed their objections.

4              THE COURT:  The motion that I have before me this

5    morning is entitled plaintiffs' motion to Sever.  It bears a

6    file stamp of July 11, 2002.  And the motion to sever, as I

7    look at it, seeks only severance.  And the certification date

8    is that on July 11th it was faxed and mailed to Ramsey Clark

9    and Deming E. Sherman, also to Mr. Schilling.  That's the

10   motion we have this morning, correct, Mr. Strachman?

11             MR. STRACHMAN:  I believe so, your Honor.

12             THE COURT:  All right.  Mr. Sherman, is

13   Mr. Schilling speaking for the defendants?

14             MR. SHERMAN:  Yes.

15             THE COURT:  All right.  Mr. Schilling, it's your

16   opportunity now to respond.  I'd like to hear you on the

17   motion to sever, please.

18             MR. SCHILLING:  Yes, your Honor.  I think the

19   severance is not what Mr. Strachman is really talking about.

20   I think what he wants is perhaps an entry -- separate entry

21   of judgment under Rule 54(b), I think it is.  Severance is

22   not appropriate here.  They chose to sue the PA and PLO.

23   They are asserting that the PA and the PLO are jointly and

24   severally liable on every cause of action.  The action

25   presents some common issues.  I think his proper avenue,

1  procedural avenue, is to move under Rule 54(b), and then the

2  advisability of the entry of the separate judgment can be

3  briefed.

4          As I recall it, your Honor, you instructed us not

5  to participate in the default judgment hearings against

6  Hamas.  We also made a statement that we would not

7  participate, but I think that even if we had wanted to

8  participate, your Honor had made a ruling against our

9  participation.  But I think it's a fairly simple thing that

10  the severance is not what Mr. Strachman wants, and he's sort

11  of procedurally in the wrong avenue.

12          We're also concerned, your Honor, with the posture

13  of the case on appeal.  We've indicated that we intend to

14  take an interlocutory appeal.  We think that the denial of

15  immunity is something that is immediately appealable.  And

16  we've asked at a number of stages for a stay pending the

17  taking of that appeal.  I think that we will need to pursue

18  this as a matter of fairness to the Court as well as in the

19  interests of our clients.  The case is in a peculiar posture,

20  I think, because until the District Court rules on our motion

21  for reconsideration, we can't -- I don't think we can take an

22  appeal under Rule 4 of the Federal Rules of Appellate

23  Procedure.  So, if -- I think that presents a very tricky

24  problem.  But, we will, we will be seeking a stay in

25  connection with our interlocutory appeal.  If your Honor --

1  the orderly procedure would be to ask your Honor for the

2  stay, to ask the District Court for the stay, and finally to

3  ask the Court of Appeals for the stay.  And that's all

4  complicated by the fact that the motion for reconsideration,

5  in our view, precludes the filing of an effective notice of

6  appeal.

7       THE COURT:  Mr. Schilling, I don't have before me a

8  motion for a stay.  I understand your argument, but it seems

9  to me that you have pending before Senior Judge Lagueux a

10  motion for reconsideration which you say he has not yet acted

11  upon, and I think if you -- if I should rule adversely on any

12  of the motions before me this morning, your avenue is to

13  appeal my ruling to Judge Lagueux.  And if at that time he

14  has still not acted on the motion for reconsideration, you'll

15  be in a position to raise that fact with him.  I'm going to

16  ask Mr. Strachman in a moment to respond to your Rule 54(b),

17  or your suggestion that Rule 54(b) is the more proper avenue

18  that the plaintiff should be pursuing here as opposed to

19  severance.

20       But I wanted to ask you, that when you made

21  reference to that there are common issues that may be

22  considered on appeal, If there's no one who's going to be, to

23  my knowledge at this point, appealing the entry of the

24  default judgment against Hamas and the Hamas defendants,

25  they're in default, they haven't answered, so it seems to me

1  that there may be an argument in favor of severance here.

2  Why not just at this point, to simplify matters, sever out

3  Hamas, the Hamas defendants, if only to make the case

4  somewhat more manageable?  Why isn't that a good avenue?  Why

5  do we need to keep the Hamas and Hamas defendants in the case

6  at this point since they're in default?  There's certainly no

7  indication they're going to be appealing the entry of default

8  judgment since they've never appeared here.  Could you

9  respond to that question, please?

10           MR. SCHILLING:  Your Honor, I think that the, that

11  the Court has a proper concern over the entry of judgments

12  that may be a nullity.  If the Court of Appeals sees -- you

13  know, you're quite correct, the Hamas people will not be

14  appealing the judgments if they continue to stay away from

15  the case, and we probably don't have standing to do so.  The

16  Court may feel on its own motion that the issuance of

17  judgments, where personal jurisdiction is lacking, and

18  judgments that would be a nullity, is a particularly

19  unattractive thing for U.S. Courts to do and sort of foist

20  off on the world, judgments that people can try to enforce, I

21  suppose, anywhere in the world, and I think, therefore, that

22  the Court of Appeals may well, you know, may well want to

23  make some statement if they come to the conclusion that the

24  judgments are, or some of them are a nullity.  And then

25  there's also, your Honor, the fact that they're seeking to

1    impose joint and several liability which we don't think we're

2    going to be held liable here gives us some interest in

3    recoveries that the plaintiffs seek, or that they flub.  And

4    then of course it was plaintiffs' choice originally to put

5    everybody all in this suit.  We think their theory is

6    farfetched as far as the Palestinian Authority and the PLO

7    are concerned, but it was their choice.  And for all of those

8    reasons, we think severance is uncalled for and unwise.

9            THE COURT:  Thank you, Mr. Schilling.

10   Mr. Strachman, would you go back to the podium?  Would you

11   respond to Mr. Schilling's suggestion that the more proper

12   avenue here is Rule 54(b), entry -- a separate entry of

13   judgment?

14           MR. STRACHMAN:  Well, it's the first time the issue

15   is raised, Judge, in their pleadings.  It has never been

16   raised in terms of this issue of severance either in their

17   argument of July 12th, or their arguments in their motions.

18   I don't believe so at all.  I think severance is designed for

19   exactly this type of situation where for -- and we've cited

20   several cases that talk about very similar kinds of issues,

21   and that is when, for housekeeping, to avoid prejudice, to

22   have clarity, severance is exactly necessary.  When this case

23   was filed, we had no idea who would respond, what would

24   respond, what the issues raised by any of the defendants

25   would be.  Now, it makes sense after their default.  And

1    certainly even more so after we've had a default judgment
2    hearing and presented evidence that severance is appropriate.
3         If I could just address one other issue that was
4    raised by my brother. This Court did not tell anybody they
5    could not participate in the hearing. Everybody was noticed
6    of the hearing of July 12. Everybody had access to all of
7    the documents, all of the evidence, a list of the witnesses
8    who were testifying. They chose not to appear. And, in
9    fact, at the end of the hearing, after Mr. Sherman had read a
10   statement prepared by Mr. Schilling in which he said we
11   choose not to participate in this proceeding, your Honor said
12   at the end of the hearing, now that we are done with the
13   preliminary issues you are excused, you are able to go, you
14   don't have to sit through the rest of the hearing for the
15   whole day. In fact, the other day that we went back, I think
16   I believe the following Monday, nobody was told not to
17   proceed. Nobody's rights were cut off. And, in fact, we
18   fully expected that maybe they would appear. The PLO would
19   appear. But, even to address that issue as we've represented
20   in our brief, and as we represented during our conversation
21   on July 11th concerning stopping the proceeding of the 12th,
22   we've indicated very clearly that we -- and counsel discussed
23   this, as well. The suggestion I think by your Honor was that
24   counsel suggest some sort of stipulation or some sort of way
25   around this. And Mr. Schilling and I had several

1    conversations about it.  And that would be that the

2    proceeding against Hamas would have no res judicata affect at

3    all, no collateral estoppel affect.  And that, in fact, there

4    would be no binding -- that a judgment would not be binding

5    in any way against the PA or the PLO if the case were

6    severed.  So I think those issues are significant.  And it's

7    --

8         THE COURT:  Mr. Strachman, you're alluding that you

9    had these discussions.  Is there an agreement to that effect

10   that if the Court grants the motion to sever that it would

11   not be res judicata or binding in terms of the Palestinian

12   Authority and the PLO?

13        MR. STRACHMAN:  I believe I suggested that, and I

14   believe I'm the one who suggested that on July 11th and

15   that's during our telephone conference.  That's what prodded

16   your Honor to, I think, suggest that the parties speak

17   afterwards and see if we could work out a stipulation.

18   No such stipulation was entered or drafted, but we've said

19   that.  We said that months ago in our brief, that we would

20   stipulate to that.  If the cases were severed there would be

21   no prejudicial affect against the PA.  And, in fact, 12 years

22   from now, if they -- and I've said this repeatedly, if they

23   need to re-litigate it, they have all of our clients, they

24   have their depositions taken, they know what they're going to

25   say, and that's why I believe severance is vital because it

1    preserves their interests and it preserves my client's

2    interests.  And it's that third harmonizing verse that does

3    what both parties want. Thank you.

4            THE COURT:  So plaintiffs are willing to stipulate,

5    agree, that if the Court grants severance, grants the motion

6    to sever, that it will not have any prejudicial affect

7    against the Palestinian Authority and the PLO?

8            MR. STRACHMAN:  We would hope that we could do

9    that.  That we could obtain a ruling from your Honor in terms

10   of the evidence that we presented, obtain a final judgment.

11   We've said that on our briefs, two separate judgments, two

12   separate case numbers, different parties.

13           THE COURT:  All right.  Thank you, Mr. Strachman.

14           MR. STRACHMAN:  Thank you.

15           MR. SCHILLING:  Your Honor, may I address one

16   point?

17           THE COURT:  Yes, Mr. Schilling.  Briefly, please.

18           MR. SCHILLING:  Yes.  In the transcript of the July

19   12th proceeding, your Honor states, "I've made my ruling that

20   I am not going to allow the PA and PLO to participate in this

21   hearing nor to voice objections to the proceeding going

22   further."  And I think your Honor had earlier said pretty

23   much the same thing.  That's my recollection.  I think it's

24   probably Mr. Sherman's recollection, recollection as well.

25   We certainly would carefully study if Mr. Strachman is

1  willing to make that stipulation about no prejudice.  We

2  would carefully study it to see whether it protects us

3  adequately.  But there's still the problem of their seeking a

4  joint and several liability.  And the other problem I

5  mentioned about the possibility that judgments that are a

6  nullity will be issued that the Court has in the interest of

7  the administration of justice, and as matter of the

8  reputation of the U.S. Courts that may be a concern.

9         THE COURT:  All right.  Thank you, Mr. Schilling.

10  Before the Court is plaintiffs' motion to sever.  The Court

11  wants to look at Rule 54(b) before it makes the ruling on

12  this motion.  I will do so immediately after the hearing

13  concludes this morning.  I'll issue a ruling within 24 hours

14  on this motion.  And the Court will issue an Order setting

15  forth its ruling.

16         Now, Mr. Strachman, referring to the motion to

17  strike and the motion for sanctions, you indicated -- are you

18  withdrawing those?  Are they moot?  I need -- the Court needs

19  to do something with the motions.  Do you agree they're moot?

20         MR. STRACHMAN:  I think they are, Judge.  I think

21  they're all but --.  Yeah, I think they are, Judge.

22         THE COURT:  All right.  The Court's going to rule

23  the motion to strike and the motion for sanctions as being

24  moot.

25         We'll now proceed to plaintiffs' motion to compel

1    discovery.  Mr. Strachman, I'll hear from you briefly on

2    that, please.  I've read the memorandum.

3            MR. STRACHMAN:  Thank you, your Honor.  We filed

4    discovery, your Honor, in the form of interrogatories,

5    request for production of documents, and request for

6    admissions on January 24.  Sometime later the PA and PLO

7    moved for a protective order.  That matter was heard, I

8    believe, in a conference on the telephone, I believe,

9    following which an Order entered on June 20, and on June 20

10   --

11           THE COURT:  Of 2002?

12           MR. STRACHMAN:  Of 2002.  All of our discovery was

13   filed on January 24 of 2002.  Sometime later a motion for

14   protective order was filed, a renewed motion, and a motion

15   for leave to seek a protective order.  And in June of this

16   year your Honor ruled that discovery is stayed until Judge

17   Lagueux had issued -- has issued a ruling on the Palestinian

18   defendants' motion to dismiss.  That ruling came on November

19   4th.  There have been no specific objections raised to any of

20   the specific requests in the discovery.

21           We also noticed, I believe, eight depositions for

22   the end of March, and those were also the subject to the PA

23   and PLO's motions for protective order.  It is now over a

24   month since Judge Lagueux issued his ruling.  We would ask

25   this Court to issue an order allowing discovery.  If the

1   defendants need a couple of weeks -- we're not here to argue

2   about a day or two here or there, but we would like an Order

3   saying that they've got to comply by a certain date, and then

4   after which we would like an Order allowing us to go forward

5   with the depositions, which we had initially scheduled beyond

6   the period for response to the interrogatories, request for

7   the production of documents, and would also ask for a ruling

8   on the request for admissions because it is my understanding

9   that now having, I believe it's 38 days past without a

10  specific response to request for admissions, that each of the

11  items should be deemed admitted.

12          THE COURT:  38 days from what day are you counting?

13          MR. STRACHMAN:  11/4, which was the day that Judge

14  Lagueux issued his ruling.

15          THE COURT:  Thank you.

16          MR. STRACHMAN:  Thank you.

17          THE COURT:  Mr. Schilling, I'll hear you now on

18  plaintiffs' motion to compel discovery.

19          MR. SCHILLING:  Yes.  Your Honor, we attempted to

20  reserve our ability to move for a protective order that took

21  specific issue with the defect and excesses of the requests

22  that the plaintiffs were making.  In the argument before

23  Judge Lagueux, I think it was in June, I made the statement

24  to him, I got the transcript in front of me, their discovery

25  requests plaintiff has made, they cover the waterfront.  And

1    the Judge said, well, these will be dealt with later by the

2    Magistrate Judge.  I take that to mean the first order of

3    business, if discovery proceeds, is for us to file a motion

4    for a protective order that points out why it's uncalled for,

5    for seven officials of the Palestinian Authority and the PLO

6    to come to Rhode Island for their deposition, and why very

7    broad interrogatories and production requests should not be

8    cut down.

9            In a sense there are two aspects to the case.  One

10   is what happened to the Ungars, and the second is the attempt

11   that the plaintiffs seem to want to make in this and other

12   cases to show that the PA and the PLO are engaged in a wide

13   range of terrorist activities.  Of course we disagree with

14   that, but we think therefore the scope of their requests are

15   way out of line, and we've consistently said that we should

16   be able to point that out.  There may be privileges as well

17   that can be invoked, even if the PA and PLO held not to be a

18   foreign state.  We think, as you know, we think that they

19   should be so held.  There may be governmental privileges.

20   This is a functioning government and there may be

21   governmental privileges that affect some of the requests.

22   There's also the problem of the destruction that's taking

23   place of offices and courts and facilities in the occupied

24   territories, and that creates a further, very likely a

25   further basis for the protective order.

1    So, again, subject to our overall position, there
2  should be a stay because immunity is a -- to protect against
3  litigation as well as jurisdiction, and having to make the
4  motion for a protective order that deals with all the details
5  of the extensive discovery that they've, in our view,
6  improperly sought, that having to make such a motion before
7  the immunity defenses are definitively disposed of.  We think
8  it's contrary to the weight of authority.  But passing that
9  for the moment, we think that we should have full opportunity
10  to take issue with the appropriateness of their discovery
11  requests.
12              THE COURT:  Why haven't you done that up to
13  this point, Mr. Schilling?
14              MR. SCHILLING:  Well, when we raised it before
15  the Judge he said that these will be dealt with later by the
16  Magistrate Judge, and that's been our sense all along, and
17  we're still hoping when we make our motions for a stay we
18  will still try to convince the Court that considering those
19  motions that it's the essence of immunity for a litigant not
20  to have to get into these details of discovery until immunity
21  is finally determined.  It comes up all the time in these
22  qualified immunity cases against government officials, and
23  there's quite a bit of authority on it.  We've cited one
24  First Circuit case.  It may not be the best one but we've
25  cited it for the view that immunity comes first.  And that's

1  why the interlocutory appeal is available.

2          THE COURT:  Mr. Schilling, Judge Lagueux's

3  statement that discovery matters would be addressed by the

4  Magistrate Judge later would still not prevent the defendants

5  from filing the objection to the discovery which was sought

6  by the plaintiffs raising these particular objections that

7  you've alluded to this morning, that the information or

8  discovery sought is overbroad, it hinges on privileges, there

9  are problems because of physical destruction to the

10  defendants' offices.  You certainly could have raised these

11  objections.  In fact, the normal course of things is to file

12  the objection setting forth the grounds for the objections

13  and not to wait for a scheduled hearing on a motion to

14  compel.  Indeed, under the rules, if you don't object, then

15  the objections can be deemed waived.

16          MR. SCHILLING:  Well, your Honor, again I would say

17  that we made clear on our motion for leave -- we made a

18  motion for leave to file a protective order and we made the

19  point that we thought it would not be orderly for us to have

20  to object to the specifics of their discovery, and that we

21  also have sought a stay at every point because I think the --

22  I may be repeating myself, the immunity defenses are intended

23  as defenses against the need for a party to respond to

24  specific discovery requests.  But if we go back to the

25  language of our -- we also, I think, made an earlier motion

1  for a stay and leave to seek a protective order.  That is

2  docket number 60.  We made a defendants' renewed motion for a

3  stay and motion for leave to seek a  protective order, and I

4  don't know that that one's ever been actually ruled upon, but

5  it's been our position all along that, you know, that it

6  would be appropriate and necessary once the immunity defense

7  was disposed of for us to take issue with many many very

8  doubtful discovery requests either by way of depositions or

9  interrogatories or requests to produce or admissions.  We

10  certainly think that we've overall preserved, or sought to

11  preserve, our ability to do so, and it's still our position

12  that at this point having to make such a motion which

13  addresses the specifics and defects in the production and

14  discovery that they seek is something that should await the

15  disposition of the immunity defenses.

16         THE COURT:  Disposition of the immunity defenses by

17  whom?  I mean, Judge Lagueux has ruled, has he not?

18         MR. SCHILLING:  Well, we got the motion for

19  reconsideration pending with a request for a stay, and the

20  stay we request is a stay pending the determination of the

21  motion for reconsideration and the appeal that was taken

22  thereafter.  I think we've got other -- our motion number 60

23  for a stay and leave to seek a protective order may still be

24  operative.

25         We filed a later motion for a protective order

1  because we weren't completely sure that the renewed motion

2  for a stay and for leave to seek a protective order covered

3  it completely.  So we had those two motions which I think

4  made clear that we certainly intended to, you know, preserve

5  our ability to raise specific objections to the discovery

6  sought by the plaintiff.

7         THE COURT:  Mr. Schilling, Mr. Sherman wants to say

8  something.

9         MR. SHERMAN:  Your Honor, just to bring your

10  attention that the motion for protective order that he just

11  referred to is dated February 26, 2002, and was filed with

12  the Court on that date.  There were two motions.  There was a

13  motion, defendants' renewed motion for a stay and motion for

14  leave to seek a protective order.  Mr. Schilling referred to

15  that.  That's dated February 5, 2002.

16         MR. SCHILLING:  Right.  That's number 60.

17         MR. SHERMAN:  That's correct.  And then after that,

18  on February 26th, for the reasons that Mr. Schilling

19  indicated, we filed the Palestinian defendants' motion for a

20  protective order.  It's dated February 26, 2002, filed on

21  that day with a supporting memorandum.  And those were filed

22  to assure protection of waiver of objections.

23         THE COURT:  Were those motions granted?

24         MR. SHERMAN:  No.  In fact, we thought -- I thought

25  at least this one that's before you this morning.

 1          THE COURT:  Thank you, Mr. Sherman.  Mr. Schilling,
 2   have you completed your argument?
 3          MR. SCHILLING:  I think so, your Honor.  Yes.  Can
 4   you hear me?
 5          THE COURT:  Yes, I can.  I'm sorry, Mr. Schilling,
 6   I should have acknowledged your statement.
 7          MR. SCHILLING:  My phone seemed to have gone dead.
 8   I was just worried.
 9          THE COURT:  There was silence in the courtroom,
10   Mr. Schilling, while I reflected on the situation.
11          Mr. Strachman, I'll give you a chance, if you'd
12   like to be heard, briefly.  Before I hear from you,
13   Mr. Strachman, Mr. Schilling, how much time would you need to
14   file your specific objection to the motion to compel
15   discovery that you've alluded to?  There being overbroad,
16   matters of privilege, et cetera, how much time would you need
17   to file your memorandum setting forth your specific
18   objections?
19          MR. SCHILLING:  It's hard to say, your Honor.  I
20   think at least 30 days.  That might not be enough if we had
21   any factual inquiries to pursue overseas.  But I think I
22   should say, your Honor, we would seek a stay if you issued
23   such an order.  I mean no disrespect but I began at the
24   beginning by saying that I wanted to advise the Court that we
25   think we're entitled to a stay and we're entitled to an

1    appeal, and that would be our first reaction to seek a stay,

2    but getting back to -- I'm not sure we can do it in 30 days

3    but we can certainly respond to a great deal of it, and if we

4    need more time, we would advise the Court and show why we

5    needed more time.  So I would say subject to the fact that we

6    will try to get a stay, I would say 30 days would give us a

7    very good start.  Did I express myself clearly, Judge?

8         THE COURT:  I believe so, Mr. Schilling.  What I

9    hear you saying is that your first and foremost position,

10   there should be a stay, that you should not have to respond

11   to discovery at all.

12        MR. SCHILLING:  Until the immunity issues are

13   determined, yes.

14        THE COURT:  And that --

15        MR. SCHILLING:  And that's one of the reasons why

16   the interrogatory appeal is available in immunity cases,

17   including qualified immunity cases involving U.S. government

18   officials.

19        THE COURT:  And so that even if I were to make a

20   ruling directing that you file your specific objection to the

21   motion that compels discovery to the, I gather

22   interrogatories and request for deposition -- first, let me

23   deal with that in part.  I gather there are outstanding

24   interrogatories.

25        MR. SCHILLING:  Yes, your Honor.

1      THE COURT:  If I ordered that you file a response

2  to those interrogatories within 30 days and to raise all the

3  objections that you've alluded to this morning, your response

4  to that order would be to appeal it to Judge Lagueux and

5  argue that you should not even have to, at this point, raise

6  specific objections to the interrogatories, that the

7  proceedings should be stayed.  Basically the discovery

8  proceedings should be stayed in their entirety.  Is that your

9  position?

10      MR. SCHILLING:  Yes.  That is -- that is our

11  position, Judge, and that's why I stated it at the very

12  beginning.

13      THE COURT:  All right.  Thank you, Mr. Schilling.

14  Mr. Strachman, what I'd like to hear from you on is this,

15  normally a failure to raise specific objection to

16  interrogatory, interrogatories, of the objection to the type

17  that Mr. Schilling has stated orally in his remarks this

18  morning that the requests for interrogatories are overbroad,

19  they infringe on privileged material, normally a failure to

20  have made these objections earlier might well be deemed to be

21  a waiver, at the same time I'm thinking about the travel of

22  this case, numerous requests for stays, a good deal of time

23  has gone by, and the Court has some concern that even though

24  the defendants probably should have filed a written

25  objection, specific written objections to the interrogatories

1    prior to this time, I'm considering ordering that they file

2    such specific objections within 30 days.  Having told you

3    that's what I'm thinking about doing, please tell me what

4    your position is regarding that.  If you oppose it, I think

5    you probably do, tell me why.

6         MR. STRACHMAN:  Well, there are a few reasons,

7    Judge.  First, your Honor, the length of time that has

8    occurred between January 24 and today inures to my clients'

9    favor.  They've had ten months to figure out specific

10   objections.  They should have had objections ready to go if

11   they had specific objections to interrogatories, to request

12   for documents, to admissions, to certain depositions.  They

13   should have had them ready to go because they knew that your

14   Honor stayed discovery five months after we requested it, and

15   six months later there is a decision by Judge Lagueux, and at

16   a minimum they should have been ready to go with them.

17   They've now had 38 days and they come to the court

18   empty-handed.  Your Honor scheduled five specific motions.

19   We discussed those five specific motions ten days ago on a

20   telephone call.  Now they're raising issues for motions that

21   are not scheduled for today that were filed in large measure

22   addressed by your Honor's stay of June of this year.  So

23   they've had a tremendous amount of time to deal with all

24   these issues.

25         Second of all, they're making very specific factual

1   recommendations.  In each of those -- excuse me, factual

2   allegations about their inability to comply and privilege, et

3   cetera.  None of those issues are proven in any of the

4   motions that they have filed.  And if they were, if they had

5   that information, they should have brought it to the Court.

6   You can't just make bald allegations to the Court and expect

7   that everyone is going to accept them just because there is

8   some distance between here and where Mr. Arafat operates.  He

9   is responsible to the Court here.  Judge Lagueux has said

10  that now twice, and almost three years we've waited to

11  proceed with this.  So their style of litigation is simply to

12  put things off, to pass it on, to ask for another time.  They

13  have no intent, and Mr. Schilling was very honest in saying

14  he has no intent with complying with even a 30 day order, so

15  let's make it 5 days, let's make it 2 days, because they

16  intend to seek an appeal.  Their interlocutory appeal was

17  just denied by Judge Lagueux.  He said they have not met the

18  criteria for an interlocutory appeal.  They've added nothing

19  in their motion for reconsideration that would suggest

20  they're entitled to that.  They don't come to court with

21  clean hands saying Strachman was overbroad in numbers 1

22  through 5 but here's what we can exchange.  We can't give you

23  these 8 people for depositions but we can give you these two

24  people.  We can't do the depositions in Providence but we

25  could do them in Italy, we could do them in Ramallah, we

1  could do them in Jerusalem.  I mean, they come with nothing.

2  And to sanction this type of behavior when they polite but

3  effectively brazenly suggest that the rules don't mean

4  anything, the Court orders don't mean anything, your order

5  was very specific in June.  It said until Judge Lagueux gave

6  a ruling.  He gave a ruling.  And I'm not here to quibble

7  about a day or two.  That's not our issue, whether it's 38

8  days or 30 days.  But the point is just to continue this to

9  go on and file these straw man motions to, you know, requests

10  for allowance to file a motion for a stay so it makes it look

11  like there are all these procedural impediments until we can

12  actually get to the rules and get to the meat of this case,

13  is a style that I would urge the Court not to sanction any

14  further in this case.  All of the fundamental issues, and

15  there were considerable issues, and they were legitimate

16  issues, but those issues have now been decided and ruled on

17  in two very lengthy decisions by Judge Lagueux, obviously

18  well thought out, obviously very detailed.  We've briefed

19  them extensively.  The parties have.  Judge Lagueux thought

20  them out in a very detailed fashion.  At some point the ax

21  has got to drop and the rules and the Court orders and the

22  normal procedures have to mean something to these plaintiffs

23  otherwise we're all just wasting our time and the rules don't

24  mean anything.  Thank you.

25          THE COURT:  Thank you, Mr. Strachman.

1        MR. SCHILLING:  Your Honor?

2        THE COURT:  Yes, Mr. Schilling.

3        MR. SCHILLING:  I'm at a disadvantage here on the

4    telephone, I can't see whether Mr. Strachman is making these

5    arguments with a straight face, but I'll assume he is.

6        Judge Lagueux passed on certification of an

7    interlocutory appeal.  He did not address an interlocutory

8    appeal as a right, which we think is available to us, and has

9    been mentioned in our prior pleadings.  We think the motions,

10   Number 60 and Number 63, for leave to have a protective order

11   that would give us leave to raise objections, that both of

12   those motions made perfectly clear that we wished to preserve

13   our right to make objections.  We don't think it is at all

14   disrespectful to say that we will seek a stay.  We believe

15   we're entitled to a stay as a matter of immunity law, and

16   that's why I began at the beginning by saying that.  And we

17   also think Judge Lagueux's comment, when I say that their

18   request covered the waterfront, and he said, "Well, that's

19   for the Magistrate."  That implicit in that was -- although

20   it's certainly not a ruling, it was a offhand remark, an

21   acknowledgment that the objections to discovery have yet to

22   be addressed.

23       THE COURT:  Thank you, Mr. Schilling.  The Court is

24   ready to rule on the plaintiffs' motion to compel discovery.

25       The defendants argue that the Court should defer

1   action on the motion to compel discovery because there's

2   presently pending a motion for reconsideration before Judge

3   Lagueux of his November 4, 2002 ruling.  The Court had

4   previously indicated at the telephone conference with

5   counsel, I believe on or about December 2nd the date was,

6   that it would not delay this hearing.

7        I have listened to the arguments made by defense

8   counsel.  I appreciate defense counsel's candor that any

9   ruling this Court makes which is favorable to the plaintiffs

10  will result in an appeal.

11       The Court expressed some concern.  It certainly

12  does not want to unfairly prejudice the defendants.  The

13  defendants claim they have specific objections to the

14  interrogatories that have been propounded, that they're

15  overbroad, that they impinge on privilege areas, and that the

16  defendants should have the right to file specific objections

17  to those interrogatories, and suggest either that they have

18  not had the opportunity to do so or did not understand that

19  they were obligated to do so, that they were under the

20  impression that a stay was in effect, or that because a stay

21  had been requested there was no obligation on their part to

22  file specific objections to the interrogatories that had been

23  propounded.  The Court is not persuaded by that argument.

24  The Court agrees with the plaintiffs that the stay that this

25  Magistrate Judge granted expired with the ruling by Judge

1  Lagueux on November 4, 2002, and clearly defendants should

2  have, at least at that point, recognized that they needed to

3  file a response to the motion to compel discovery that would

4  include the specific objections.  Certainly after the Court

5  confirmed that this hearing on the motion to compel was going

6  to go forward, the defendants were on notice that if they had

7  specific objections to interrogatories, this would be the

8  time to raise it and not simply orally during the course of

9  the hearing this morning state that they have objections not

10  otherwise reduced to writing regarding the interrogatories.

11       I'm going to grant the motion to compel discovery

12  at least to the extent to require a response to the

13  interrogatories.  In recognition of the fact that there are

14  geographical distances that separate defense counsel from the

15  defendants, I will increase the period of time within which

16  the defendants have to respond to a period of 45 days from

17  today's date, that they must file a response to the

18  interrogatories.

19       MR. SCHILLING:  Your Honor, may that response

20  include objections?

21       THE COURT:  I'm thinking, Mr. Schilling.  (Pause)

22  I'm going to answer that, Mr. Schilling, by the following: It

23  may include objections but the Court may well rule that

24  you've waived those objections by the failure to file them

25  prior to today's date.  Since I don't have before me the

1  specific interrogatories that have been propounded, I have no

2  way of knowing whether among the interrogatories there's one

3  that on its face is just clearly so overbroad and so

4  burdensome that even though a specific objection was not

5  posed to it that the Court might deem that it should not be

6  complied with.  So your response may include objections but

7  defendants are on notice that the Court may well deem that

8  the objections have been waived by the failure to raise them

9  prior to today's date, and it would probably take a -- I'll

10  leave it at that.  You're on notice that the Court may rule

11  that you've waived it, but I will not prohibit you from the

12  response from including an objection.  I've already indicated

13  I felt the defendants were remiss, at a minimum, at not

14  filing the objections prior to today, at least by the time of

15  this hearing, but defendants may include objections in their

16  response, but they're on notice that the objections may be

17  deem to have been waived.

18         MR. SCHILLING:  I request perhaps also that you

19  look at the motions that are 60 and 63 and consider whether

20  those motions preserve the ability to make objections to

21  discovery.

22         THE COURT:  Well, I don't feel the need to do that

23  this morning, Mr. Schilling.  That can be -- at the point, if

24  your responses contain objections, and the Court is

25  considering the issue of whether or not you waived those

1    objections by not previously making them, you may direct the

2    Court's attention to documents 60 and 63 and urge that

3    somehow those documents preserved your ability to raise

4    objections, but I'm not going to make a ruling on that this

5    morning.

6           MR. SCHILLING:  Okay.  Your Honor, I think I know

7    the answer to this but I think I need to ask, will your Honor

8    grant a stay pending appeal of the order that you've just

9    entered so that we have time to go to the District Court that

10   doesn't run against us as far as the 45 days go?

11          THE COURT:  No, I'm not, Mr. Schilling.  I'm not

12   going to do that because you've indicated that no matter what

13   order I enter you're going to appeal it, and it is -- there

14   really is a need to get this case moving forward.

15   Plaintiffs' counsel is correct that this case has been

16   pending a long time.  There really is a need to start moving

17   forward.  You want to get this matter essentially in front of

18   Judge Lagueux, and you can get it in front of Judge Lagueux

19   simply by appealing my order.

20          Also, I don't think it's appropriate that if I stay

21   the order, in effect it negates what I'm trying to do here.

22   I'm trying to get this case to move forward.  I'm trying to

23   get the defendants to respond to the discovery.  That's what

24   the plaintiffs have asked the Courts to do.  I think the

25   plaintiffs' motion is a valid motion, it's a valid request,

1   so no, I will not stay the order pending your appeal.  You

2   may appeal the order.

3           MR. SCHILLING:  I understand that, your Honor.  I

4   needed to ask for the stay because that's, I guess, a

5   predicate for our asking the District Court for a stay if

6   that's what we decide to do.

7           THE COURT:  The Order may reflect that the

8   defendants' request that the Order be stayed was denied by

9   the Court.

10          MR. SCHILLING:  Thank you, your Honor.

11          THE COURT:  I feel the need to address the request

12  for depositions that the motion to compel also raises.  I'm

13  going to grant the motion to compel discovery as to requiring

14  the defendants to produce their employees for depositions.

15  Again, however, I will factor in the distances and the

16  arrangements that need to be traversed to accomplish this,

17  and I will direct that the depositions -- 60 day notice on

18  the depositions, Mr. Strachman.  You must give at least 60

19  days notice for any scheduled deposition.

20          MR. STRACHMAN:  Excuse me, your Honor.  And the

21  depositions will be here in Rhode Island?

22          THE COURT:  Do all the people that you want to

23  depose have the ability to -- can they enter the United

24  States, or are some of these people prohibited from entering

25  the United States?

1          MR. STRACHMAN:  Many of those people have been in

2     the United States since this case was filed.  I don't know

3     the exact situation of each and every person.  One individual

4     I believe is being incarcerated by the Israelis now,

5     Mr. Beruti.  We can take his deposition in Israel.  But

6     there's been nothing proffered to this Court, no evidence

7     that they can't leave -- can't arrange their depositions

8     here.  So I think, I respectfully request, that they be

9     ordered to appear here.  If there's some issue that arises,

10    they can -- the defendants can always move to change the

11    location, to reschedule, but there's been nothing.  In fact,

12    one of the interesting things that happened in this case was

13    that Mr. Arafat was in New York while one of our motions was

14    pending and my brother, Mr. Schilling, attached his

15    statements at the U.N. to one of his briefs.  So we know he

16    was in the United States.  We know other PA officials have

17    been in the United States in Washington and New York.

18         MR. SCHILLING:  Your Honor, we also know that

19    President Arafat has been virtually imprisoned in Ramallah by

20    Israeli military forces, you know, in a manner that's illegal

21    and outrageous.  We strenuously urge that we be allowed to

22    make objections, raise objections to these interrogatories.

23    They're the leaders of the Palestinian Authority and the PLO.

24    There's no showing that they know anything at all about this

25    case.  And we think it's abusive, and part of our papers make

1    reference to the fact that Mr. Strachman and his Israeli

2    attorney believe that they're conducting a war against the

3    Palestinian Authority and the PLO.  There are several other

4    cases that are pending down in the District of Columbia in

5    which they're attorneys for the plaintiffs, and in context

6    these depositions are, you know, unwarranted and abusive.

7              THE COURT:  Mr. Strachman, the Court's ruling is

8    that you may notice the depositions for the District of Rhode

9    Island.  The defendants may file objections to the location

10   of the depositions.  They may also file objections to the

11   purpose of the deposition.  I heard Mr. Schilling say that

12   some of these people know nothing about the alleged matters

13   and controversy.  The way for the Court to focus on these

14   issues is to know specifically which individuals we're

15   talking about, the purpose of that deposition, and then I can

16   consider the objections that the defendants have both as to

17   the location of the deposition and the nature of the

18   deposition, what's being sought.

19             So the ruling is you must give 60 days notice of

20   any deposition.  You may notice it for the District of Rhode

21   Island.  Mr. Schilling, the defendants must then respond to

22   the notice of deposition either by indicating that he

23   personally will appear or that he will not appear, that they

24   want the deposition conducted in Israel or some other

25   location, and if there are objections to the deposition

1    itself, set forth what those objections are, and then I will

2    schedule a hearing and will address the objections.  Is that

3    part of the ruling clear to you, Mr. Schilling?

4              MR. SCHILLING:  Yes, yes, sir.  I think it is.  To

5    be consistent, I would ask your Honor for a stay of that

6    Order.

7              THE COURT:  Well, this is all part of the motion to

8    compel discovery.  The motion to compel discovery seeks a

9    response to interrogatories, and I gather also seeks to

10   require the defendants to produce their employees for

11   depositions.  And so it's all part of the order granting the

12   motion to compel discovery, and I'm denying your request for

13   a stay on my order granting the motion to compel discovery.

14   So it's a single order, but I note your request again for a

15   stay, and I again deny it.

16             Lastly, we have the matter of the requests for

17   admissions.  I'm going to require that the defendants file a

18   response to the request for admissions within 45 days.  To be

19   consistent with my previous ruling, the defendants may raise

20   objections to the request for admissions, however, the Court

21   may rule that their failure to previously prior to this date

22   file objections may have constituted a waiver.  But the Court

23   again doesn't have before it a list of admissions that are

24   requested, and it's conceivable that the Court might find

25   that there's a basis as to one of them, or perhaps more, that

1  the objection might be valid.  But I am going to require that

2  the defendants file a response to the request for admissions

3  within 45 days.  And to save you the time, Mr. Schilling,

4  your request for a stay of that portion of the order is also

5  denied.

6            MR. SCHILLING:  Thank you, your Honor.

7  Mr. Strachman, I'd ask that you prepare the Order granting

8  the plaintiffs' motion to compel discovery.  The Order should

9  reflect that the motion has been granted by the Court.  The

10  defendants are ordered to respond to the interrogatories

11  previously propounded within 45 days from today's date.  They

12  are also to respond within 45 days from today's date to the

13  request for admissions.  The defendants may include in their

14  responses or answers to interrogatories and also to the

15  request for admissions objections to both the interrogatories

16  and the request for admissions, however, the Court has

17  notified the defendants that the Court may deem those

18  objections to have been waived by the failure of the

19  defendants to file objections prior to the hearing today

20  which is being conducted on December 12, 2002.

21            The Court also grants the motion to compel

22  discovery to require the defendants to produce notice to

23  employees for depositions on the following condition, that

24  the plaintiffs give at least 60 days notice of the scheduled

25  depositions.  The plaintiffs may notice the depositions for

1  the District of Rhode Island.  The defendants shall then

2  respond to the notice for the depositions by indicating

3  either that the person will be produced to the District of

4  Rhode Island or by filing objection to the notice, and the

5  objection shall set forth the grounds for the objection,

6  whether it be the location of the objection or the very fact

7  the person is being deposed and why he should not be deposed.

8  Is that clear?

9          MR. STRACHMAN:  Yes.  We also asked your Honor for

10  request for production of documents, and I believe --

11          THE COURT:  I didn't see that.

12          MR. STRACHMAN:  If you could just include that with

13  the same terms and conditions.

14          THE COURT:  Yes, the Court does.  I will require

15  the request for documents to be responded to within 45 days

16  from today's date.  Again, objections by the defendants can

17  be raised to the request for production of documents, but

18  also again the Court may deem those objections to have been

19  waived by virtue of the defendants' failure to previously

20  have filed the objections.  Does that address all the relief

21  sought in the motion to compel discovery, Mr. Strachman?

22          MR. STRACHMAN:  Yes, your Honor.

23          MR. SCHILLING:  And, your Honor, could the Order

24  also include that we requested a stay and the stay was

25  denied?

1          THE COURT:  Yes.  Mr. Strachman, please include the

2    fact that the defendants sought a stay of the Order so they

3    could appeal it, and the Court denied that.

4          All right, we'll now go to the plaintiffs' petition

5    for issuance of letter of request for judicial assistance.

6    Mr. Schilling, I'm going to change the procedure here because

7    I've read the filing by the petition.  I'd rather hear first

8    your objection to it.  Do defendants still object to that

9    petition for issuance of letter of request for judicial

10   assistance?

11         MR. SCHILLING:  I would make a couple of

12   observations, your Honor, but subject to the observations I

13   don't think we would object to it.  It's my understanding

14   that, you know, Mr. Strachman commenced an action in the

15   D.C. court on behalf of the Ungars against Iran and Iranian

16   officials and agencies on the theory that their support of

17   Hamas was a proximate cause of the deaths of the Ungars, and

18   my understanding is, although I don't know if it's a matter

19   of direct knowledge, that he has the documents that are being

20   requested in the letter of request that we're discussing in

21   this case.

22         In his request, he says that copies of all of the

23   documents will be furnished to defendants.  We did not

24   receive any documents in the Iranian case, of course, because

25   we were not parties to the Iranian case.  I would ask that we

1   also receive copies of any requests that Mr. Strachman makes

2   to Israel.  You know, in the ordinary course, a Government

3   that gets a Hague request has no direct interest in the case

4   and can, you know, there's no question that they would be

5   impartial in their response.  Israel, though, does have an

6   interest in these cases, and has time and time again

7   expressed hostility toward the Palestinian Authority and to

8   the PLO, so we can't really blindly accept the notion that

9   their selection of documents is going to be completely

10  impartial, and free of irregularities.  To guard against

11  that, I guess we would ask that your Honor direct the

12  plaintiffs to give us copies of any communications that they

13  make to Israel in connection with this request that has to do

14  with the documents to be requested, the scope of the request

15  and so forth, so we can as best we can protect ourselves

16  against a selective response that is organized unfairly to

17  our detriment.  But as I say, I think they have the

18  documents, and if we get copies, and the request is processed

19  fairly and transparently, we know exactly what communications

20  have been made.  I think subject to those points we have no

21  objection.

22          THE COURT:  Mr. Strachman, could you respond,

23  please?

24          MR. STRACHMAN:  I think -- I'm somewhat concerned.

25  I think that perhaps we should make this a joint request and

1  perhaps we should have the PA then join us in making this
2  request of the Director of Courts in Israel so they can have
3  direct access to the authorities who provide the information,
4  they could receive the information directly from the Israeli
5  authorities.  We attached to our supplemental memorandum a
6  letter from Mr. Zeitman of that office.  This was provided to
7  Mr. Schilling in December of 2000.  A copy of Mr. Zeitman's
8  fax indicating that they would accept multiple requests.
9  They seemed fairly gracious.  And I also filed my cover
10 letter, actually, responding to some of the concerns that the
11 PA raised, specifically.  And that was in my letter of
12 September 15th.  It was attached to our brief.  So what I
13 would ask is that we make this a joint request, we get
14 certified documents from the Israeli authorities, and they
15 receive a copy directly from the Israeli authorities, and
16 they have access to them, as well, just as they should.  If
17 they had any additional information that they wanted
18 requested to include in this petition, Mr. Zeitman says very
19 clearly that they would reopen the case even if it was closed
20 to process new requests.  We have no policy of one letter
21 request.  So, you know, I'm wondering if that might be a way
22 around it, Judge, so we have completely clear understanding
23 of what has transpired.
24         THE COURT:  Mr. Schilling, do you wish to make it a
25 joint request?

1    MR. SCHILLING:  I don't think so, your Honor.  I
2    can't speak for my client on this.  I think I need to find
3    out whether the client would want to be making a request of
4    the Government of Israel under the Hague Convention.  I think
5    that it would be perfectly adequate for Mr. Strachman to make
6    the request and for us to be kept fully informed of what the
7    request consisted of and how it was being processed.
8        THE COURT:  Mr. Strachman, would you go back to the
9    podium, please.  If the Court grants this petition, you'll
10   provide copies of the request that is made upon the Israeli
11   government, and the response that is received from the
12   Israeli government to the defendants?
13       MR. STRACHMAN:  Absolutely, your Honor.  A copy of
14   the proposed request was included in the package we sent to
15   the Court on July 26, so Mr. Schilling has that.  That's
16   called the letter request that we're actually asking the
17   Court to issue to the appropriate authorities in Israel, so
18   they know exactly what has been requested.  And as I also
19   mentioned in our petition accompanying that letter that I
20   represented that upon receipt of, plaintiffs will provide
21   counsel for all appearing defendants with complete copies of
22   all documents received pursuant to this letter request.  So
23   that sort of goes without saying that that information would
24   be provided to him.
25       MR. SCHILLING:  I'm aware of both of those things,

1   your Honor, and I appreciate them, but my request would also
2   include any communications, additional communications, that
3   took place, that take place, with the Israeli authorities on
4   the scope of the request and the response that's going to be
5   made to the request.  There may not be any but it's entirely
6   possible that there may be some.

7           THE COURT:  All right, Mr. Schilling, I think
8   that's a reasonable request.  I do intend to grant that
9   request.

10          Mr. Strachman, just one final point.  As I reviewed
11  the filing in this matter on this motion, which I recognize
12  was made prior to the hearing on the motion to enter default
13  judgment, a good portion of the justification that was
14  offered by the plaintiffs for the petition was the materials
15  were needed for the hearing on the motion to enter default
16  judgment which has already been conducted, and I gather the
17  plaintiffs were able to proceed at the hearing without this
18  material.  I gather the plaintiffs are representing that
19  notwithstanding that fact they still need the materials that
20  are sought, is that correct?

21          MR. STRACHMAN:  I think some of the materials we
22  had, Judge, in a separate request in a separate action.
23  What's crucial in this case is to have them certified from
24  the Government so that the issue of authentification is
25  resolved, and to my understanding that's the heart of the

1  Hague Convention process.

2          THE COURT:  I understand.  All right, the Court's

3  ready to rule.

4          Before the Court is plaintiffs' petition for

5  issuance of letter of request for judicial assistance.  The

6  Court's going to grant the motion on the following

7  conditions:  The plaintiffs shall provide to defendants a

8  copy of all communications, including the request itself

9  which is sent to the Israeli government.  Any follow-up

10  communications that are made by the plaintiffs to the Israeli

11  government concerning the request, copies of those

12  communications shall be provided to the defendants.  Copies

13  of all responses from the Israeli government in connection

14  with the request for judicial assistance shall be provided to

15  the defendants.  So the defendants will receive a copy of the

16  request.  They'll receive copies of any communications from

17  the plaintiffs to the Israeli government regarding the

18  request, and the defendants will receive copies of whatever

19  responses are made by the Israeli government to the request.

20          MR. STRACHMAN:  Your Honor, could I just add that

21  Mr. Schilling, the defendants, similarly inquire of

22  Mr. Zeitman's office that we receive copies of any requests

23  that he makes?

24          THE COURT:  Yes.  The Court's Order will stand,

25  apply to both the plaintiffs and the defendants.  Should the

1    defendants make any communication to the Government of Israel

2    regarding the request for judicial assistance, they shall

3    provide a copy of that communication to the plaintiffs.

4           MR. SCHILLING:  And may that include also, your

5    Honor, any oral communications, telephone, conversations and

6    so forth?

7           MR. STRACHMAN:  Your Honor, I'm sorry to interrupt.

8    It's somewhat difficult sometimes communicating, and that's

9    why we were in a hurry to sort of get this process going

10    because it takes so much time.  I don't know how we would

11    orally, you know, if we called and say, did you get my fax,

12    you know, are you open today?  Did you get that?  Did we -- I

13    don't know how we would effectuate that.  I'm not asking that

14    if he calls over to Mr. Zeitman's office that he has to

15    notify me of what was said, and we have to have a

16    stenographer for every conversation, but maybe we should have

17    free access to the same officials that any litigant would

18    have.  I don't believe we need to have that transcribed for

19    each other.

20           MR. SCHILLING:  Obviously there's a sort of rule of

21    reasonableness here, but if the Israeli authorities call

22    Mr. Strachman and say, for example, do you really want that?

23    Do you really want this?  We don't think you really want

24    this.  We should know about that.

25           MR. STRACHMAN:  A way to respond to that, Judge,

1    I'd ask them to put that in writing, and I would ask that
2    substantive conversations be put in writing, and that they be
3    shared.  The mechanics of actually getting the documents, I
4    presume picking them up and retrieving them, and where they
5    are, is somewhat difficult.  That's --
6              THE COURT:  The Court's ruling is that substantive
7    communications between the defendants and the Israeli
8    government, or the plaintiffs with the Israeli government,
9    should be in writing.  If there is an occasion where there is
10   oral communication between either the plaintiffs and the
11   Israeli government, or the defendants and the Israeli
12   government, both the plaintiffs and the defendants are
13   instructed that the conversation should be brief.  If it goes
14   into anything substantive, the parties should be advised that
15   it needs to be communicated in writing.  Alternatively, the
16   attorneys for the plaintiffs and the defendants may have a
17   joint telephone conversation with whoever it is on the other
18   end of the line that is wishing to communicate.  But counsel
19   for both the plaintiffs and the defendants are advised that
20   they should not engage in anything more than very brief oral
21   communication, not involving substantive matters with the
22   Israeli government without allowing opposing counsel to be
23   privy to the oral communication.  A brief call, did you
24   receive my fax, a copy which was sent to opposing counsel,
25   that will be permissible.  But the objection or the example

1  given by Mr. Schilling whereby an official of the Israeli

2  government calls Mr. Strachman and says, I've got your

3  request.  You have ten paragraphs here, do you really want

4  all the documents contained in Paragraph 7, particularly

5  because, you know, we've lost, because of a warehouse fire,

6  all documents prior to 1997, that's clearly substantive.  He

7  might say it in less than a minute but it's a substantive

8  communication to which opposing counsel must be made privy.

9  So as officers of the Court, counsel are instructed they must

10  comply with that limitation.  If the communication is oral

11  and it gets into anything substantive, counsel must advise

12  the speaker that they need to make arrangements to involve

13  opposing counsel in the conversation or the conversation must

14  be reduced to writing so that the other side has the ability

15  to see exactly what's taking place.

16          MR. STRACHMAN:  Thank you very much, your Honor.

17          THE COURT:  Please, that was a long explanation,

18  but do your best, Mr. Strachman, to put that in the order

19  granting the request for additional assistance.  You can do

20  it concisely, but I think you understand the Court's intent.

21          MR. STRACHMAN:  Your Honor would be then

22  executing the, at some point the letter which is in the file,

23  and that either is transferred by the Court or by counsel to

24  appropriate authorities in Israel?

25          THE COURT:  I will do that, Mr. Strachman.

1    You submit an order reflecting the Court has this morning

2    granted the motion, or the petition for request for judicial

3    assistance, and on the date that I sign that order I will

4    also then sign the document that you say is already filed in

5    the file.  It's the actual request?

6                    MR. STRACHMAN:  A letter request with the line

7    where --

8                    THE COURT:  The Judge's signature?  I'll do

9    that.

10                   MR. STRACHMAN:  Thank you, your Honor.

11                   MR. SCHILLING:  Your Honor, if we have any

12   comments or observations on these orders that

13   Mr. Strachman is to submit, how promptly do you need them?

14   How much time would we have to add our comments or

15   observations?

16                   THE COURT:  I'm going to direct

17   Mr. Strachman to send copies of the order to you, Mr.

18   Schilling, before he submits them to the Court.  I would

19   think hopefully within a maximum of five days from the time

20   you receive the draft order you could respond to Mr.

21   Strachman and hopefully resolve any differences regarding the

22   wording of the order.  If you cannot resolve the differences,

23   then Mr. -- you can prepare an alternative order and submit

24   it to the Court.  Mr. Strachman will then notify the Court

25   that he's submitting a proposed order but you have objections

1    to it and your alternative version is being submitted

2    hopefully simultaneously.  Is that clear?

3                    MR. SCHILLING:  Yes.  Your Honor, could the

4    time periods that you've indicated --

5                    THE COURT:  Be increased?

6                    MR. SCHILLING:  Can they start on the day that

7    the order is filed rather than today?

8                    THE COURT:  You're referring to the 45 and 60

9    day periods?

10                   MR. SCHILLING:  Yes, your Honor.

11                   THE COURT:  No.  I'm not going to do that.  I

12   will, however, give you, in terms of -- I'll increase to

13   seven days the period of time you have to respond to Mr.

14   Strachman's proposed order from the day you receive it.  Mr.

15   Strachman will prepare the proposed orders reflecting the

16   Court's rulings this morning.  You'll have seven days from

17   that date to submit an alternative order.

18                   But, Mr. Schilling, I strongly would suggest

19   that you work with Mr. Strachman to resolve any differences

20   in the wording of the order.  Mr. Strachman is going to

21   prepare the orders reflecting this morning's rulings.  You'll

22   have seven days from the date you receive those proposed

23   orders to file an objection to them.  But the objection, I

24   want to be clear, then the burden is yours to prepare an

25   alternative proposed order.

1         MR. SCHILLING:  Yeah.  I don't anticipate any

2    serious difficulty.

3         THE COURT:  I certainly hope not because I

4    really don't look forward to having to choose between your

5    order and Mr. Strachman.  He's going to send you proposed

6    orders.  If you have a difference as to certain wording, I

7    expect you to contact him and resolve it, and he'll make the

8    change, and then he can submit it to the Court saying that

9    Mr. Schilling has indicated that he has no objection to the

10   wording of the order as submitted, and I can sign it.  So I

11   urge you strongly to work with him.  And to speed things up,

12   Mr. Strachman, please fax the order to Mr. Schilling so that

13   -- did I say ten days or seven days?

14        MR. STRACHMAN:  Five to seven, Judge.  I'm hoping

15   to get this done in the next day or two.

16        THE COURT:  I hope so, too.

17        MR. SCHILLING:  I don't anticipate any

18   difficulty, your Honor.  I just want to be sure we have

19   enough time if we need it.

20        THE COURT:  Well, I will give you seven days,

21   if there is difficulty.  If you can't agree on the wording of

22   the order, you have seven days from the day that it's first

23   faxed to you to submit to the Court an alternative order.

24   But I really, again, strongly encourage you to work with Mr.

25   Strachman to try to resolve differences.

1          MR. SCHILLING: And, your Honor, you may have

2    ruled on this but I didn't hear it.  May the 45 days begin to

3    run on the day that the order is filed?

4          THE COURT:  No.  I had rejected that request.

5    The 45 days is to commence running today.  That's the ruling

6    I've made.

7          MR. SCHILLING:  Because we can't apply for a

8    stay in the District Court, if that's what we plan to do,

9    until the order is entered, so the time would be running

10   against us.

11         THE COURT:  Then I'm sure Mr. Strachman will

12   prepare these orders extremely promptly, Mr. Schilling.  Mr.

13   Strachman, can you get these orders prepared within 72 hours?

14         MR. STRACHMAN:  Absolutely.  I hope to have

15   them later today, your Honor.

16         THE COURT:  He hopes to have them later today.

17   Hopefully will fax them to you later today, and if you

18   resolve the wording, he'll get them to me and I'll get them

19   signed, and you'll then have an order that you can appeal.

20         All right.  This concludes the hearing.  I thank

21   the attorneys for their arguments.  The Court stands in

22   recess.

23         THE CLERK: All rise

24

25         (R E C E S S)

C E R T I F I C A T I O N

I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


_Joseph A. Fontes_

JOSEPH A. FONTES, COURT REPORTER

_June 16, 2007_

DATE