# ARTICLES OF ASSOCIATION

## OF

## PALESTINE INVESTMENT FUND



**CONFIDENTIAL PURSUANT TO AGREEMENT**
**C 00428**

# TABLE OF CONTENTS

<u>Page</u>

ARTICLE 1 DEFINITIONS ................................................................................................ 1

ARTICLE 2 FORMATION OF THE COMPANY ............................................................ 13

    2.1  Name of the Company ...................................................................................... 13

    2.2  Office................................................................................................................. 13

    2.3  Commencement; Existence; Immunities .......................................................... 13

    2.4  Initial Capital Contribution .............................................................................. 14

    2.5  Term of Company................................................................................................ 14

ARTICLE 3 PURPOSES AND POWERS......................................................................... 15

    3.1  Purposes ........................................................................................................... 15

    3.2  Powers .............................................................................................................. 15

    3.3  Investment Limitations ..................................................................................... 18

ARTICLE 4 SHAREHOLDER........................................................................................... 19

    4.1  Shareholder ...................................................................................................... 19

    4.2  No Additional Shareholder .............................................................................. 19

    4.3  Action by Shareholder ..................................................................................... 19

    4.4  Third Party Beneficiary.................................................................................... 19

ARTICLE 5 MANAGEMENT, EXPENSES AND COMPENSATION, EXCULPATION AND INDEMNIFICATION ................................................................. 20

    5.1  Management of Company.................................................................................. 20

    5.2  Officers.............................................................................................................. 20

    5.3  Transactions with Affiliated Persons; Conflicts of Interest............................. 22

    5.4  Expenses ........................................................................................................... 25

    5.5  Exculpation....................................................................................................... 25

    5.6  Indemnification.................................................................................................. 26

ARTICLE 6 BOARD OF DIRECTORS; COMMITTEES ............................................... 29

    6.1  Appointment and Qualification of Directors ................................................... 29

    6.2  Authority and Obligations of Board of Directors............................................. 30

    6.3  Action by Board of Directors; Bylaws ............................................................ 32

    6.4  Resignation and Removal of Directors ............................................................ 33

i



**CONFIDENTIAL PURSUANT TO AGREEMENT**
**C 00429**

6.5    Board of Directors Compensation ..................................................................... 34

6.6    Committees ........................................................................................................ 34

6.7    Audit Committee ............................................................................................... 35

6.8    Conflicts Committee .......................................................................................... 36

6.9    Investment Committee ....................................................................................... 36

6.10  Nominating Committee ...................................................................................... 37

6.11  Actions by Committees ...................................................................................... 37

ARTICLE 7 CAPITALIZATION AND CAPITAL ACCOUNTS ........................................ 38

7.1    Issuance of Shares ............................................................................................. 38

7.2    Share Certificates .............................................................................................. 38

7.3    Share Register .................................................................................................... 38

ARTICLE 8 VALUATION OF COMPANY ASSETS .......................................................... 39

8.1    Marketable Securities ........................................................................................ 39

8.2    Securities Other Than Marketable Securities; Other Assets ............................ 39

8.3    Liabilities .......................................................................................................... 39

ARTICLE 9 DISTRIBUTIONS; NO CAPITAL WITHDRAWAL ..................................... 40

9.1    Discretionary Distributions .............................................................................. 40

9.2    Restrictions on Distributions. ........................................................................... 40

9.3    No Withdrawal of Capital ................................................................................. 41

9.4    Certain Provisions Relating To Distributions ................................................... 41

ARTICLE 10 DURATION AND TERMINATION OF THE COMPANY ........................... 43

10.1  Liquidation of Company Shares upon Dissolution. .......................................... 43

ARTICLE 11 RECORDS AND REPORTS .......................................................................... 45

11.1  Books and Records ............................................................................................ 45

11.2  Financial Reports .............................................................................................. 45

11.3  Accountants ....................................................................................................... 45

ARTICLE 12 SHAREHOLDER ACTION ........................................................................... 45

12.1  Meetings ............................................................................................................ 45

12.2  Place of Meetings .............................................................................................. 46

12.3  Notice of Meetings ............................................................................................ 46

12.4  Action by Shareholder without a Meeting ........................................................ 46

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00430

ARTICLE 13 SEAL ........................................................................................... 48

    13.1 Seal ...................................................................................................... 48

ARTICLE 14 AMENDMENTS ....................................................................... 49

    14.1 Amendments ........................................................................................ 49



iii

CONFIDENTIAL PURSUANT TO AGREEMENT

C 00431

# ARTICLES OF ASSOCIATION

## OF

## PALESTINE INVESTMENT FUND

By Decrees of the President of the Palestinian National Authority on 1-10-2000, a Palestine Investment Fund was established and charged with promoting investment in Palestine and ensuring good revenue performance and sound revenue administration and a fund for investment in Palestine was directed to be established.

These Articles of Association, which have been approved by the President of the Palestinian National Authority, provide for the organization and establishment of the Palestine Investment Fund was such fund as so decreed.

By the 1-10-2000 Decree of the President of the Palestinian National Authority (attached as Exhibit A), the Palestine Investment Fund is established for all purposes under the laws of the Palestine National Authority and as a separate legal entity, to begin operations as provided in these Articles of Association and to have such authority, powers, terms and conditions as is set forth in these Articles of Association.





ARTICLE 1

4

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00432

## DEFINITIONS

The defined terms used in these Articles shall have the meanings specified below:

1.1     "Accountants" *has the meaning ascribed thereto in Section 11.3.*

1.2     "Act" *means the 1 - 10 -2000 Decree of the Chairman of the Executive Committee of the Palestine Liberation Organization and President of the Palestinian National Authority and adoption of these Articles establishing the Company pursuant to the approval of these Articles by the President.*

1.3     "Affiliate" *of a specified Person, means a Person that, directly or indirectly, controls, is controlled by, or is under common control with, the specified Person. For this purpose, "control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting Securities, by contract or otherwise, and "controlled" and "common control" shall have meanings correlative thereto. Without limitation of the generality of the foregoing, an Affiliate of a Portfolio Company shall include any principal, partner, officer, director, shareholder or other holder of an equity or similar interest of the Portfolio Company; provided, however, that no Person shall be an Affiliate of a Portfolio Company solely because such Person is a Director or an officer or employee of the Company; and provided, further that the PNA shall not be an Affiliate of any Portfolio Company.*

1.4     "Articles" *means these Articles of Association, as amended from time to time.*

1.5     "Audit Committee" *means the Audit Committee as described in Section 6.7.*

1.6     "Available Assets" *means as of any date, the excess of the cash, cash equivalent items and Temporary Investments held by the Company over the aggregate fair market value of the amount of such items determined by the Directors to be reasonably necessary for the payment of the Company's expenses. liabilities and other obligations. and for the establishment of*

**CONFIDENTIAL PURSUANT TO AGREEMENT**
**C 00433**

*appropriate reserves for such expenses, liabilities and obligations as may arise, including the maintenance of adequate working capital for the continued conduct of the Company's business.*

1.7  "Basis" *means, with respect to any right or asset (including any Securities) held by the Company, the basis thereof as determined in accordance with GAAP.*

1.8  "Board of Directors" *has the meaning ascribed thereto in Section 6.1.*

1.9  "Business Day" *means any day on which banking institutions in Palestine are not authorized or required by law to close.*

1.10  "Capital" *means the sum of the aggregate par value of all outstanding Shares of the Company.*

1.11  "Capital Contribution" *means the total amount of any cash and the fair market value of any Portfolio Investments contributed to the Company by the Shareholder.*

1.12  "Commencement" *has the meaning ascribed thereto in Section 2.3.*

1.13  "Company" *means Palestine Investment Fund organized pursuant to the Act and existing subject to the terms of these Articles.*

1.14  "Conflicts Committee" *means the Conflicts Committee as described in Section 6.8.*

1.15  "Damages" *means the fines and penalties, and fees and expenses of counsel, experts and investment bankers, and other fees and expenses reasonably incurred in connection with the investigation, defense or disposition of any action, suit or other proceeding, whether civil or criminal, before any court or administrative body.*

1.16  "Designated Official" *of the Shareholder means the President or his successor or such other designee who is designated in a written notice by the Shareholder to the Company as authorized to act on behalf of the Shareholder as provided in these Articles.*

1.17  "Directors" *means the members of the Board of Directors.*

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00434

6

1.18    "Entity" *means any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative, association or other juridical entity.*

*1.19*    "Exculpated Person" *has the meaning ascribed thereto in Section 5.5.*

1.20    "Extraordinary General Meeting" *means  any meeting other than the annual general meeting.*

1.21    "Fair Market Value" *of a Company asset means the value of such asset as determined pursuant to Article 8 hereof.*

1.22    "Fiscal Year" *means the fiscal year of the Company, which shall end on the 31st day of December in each year.*

1.23    "GAAP" *means generally accepted accounting principles as from time to time set forth in the opinions of the Accounting Principles Board of the American Institute of Certified Public Accountants and in statements by the Financial Accounting Standards Board or in such opinions and statements of such other entities as shall be approved by a significant segment of the accounting profession , applied on a consistent basis.*

1.24    "General Manager" *means the Person appointed by the President, pursuant to the 1-10-2000 Decree of the Chairman of the Executive Committee of the Palestine Liberation Organization and President of the Palestinian National Authority, as the General Manager to manage the affairs of the Company under the oversight of the Board of Directors and any other Person hereafter appointed as the General Manager of the Company as herein provided.  The initial General Manager of the Company shall be the Person designated in Exhibit B hereto.*

1.25    "General Meeting" *means either an Ordinary General Meeting or an Extraordinary General Meeting, as the context may require.*

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00435

1.26   "Palestine Investment Fund" *means the Palestine Investment Fund established pursuant to the 1-10-2000 Decree of the Chairman of the Executive Committee of the Palestine Liberation Organization and President of the Palestinian National Authority, or its successors having comparable authority and responsibilities as established by Presidential Decree or legislation.*

1.27   "Immediate Family" *means, with respect to any individual, his spouse, parents, brothers, sisters, children (natural or adopted), grandchildren and grandparents.*

1.28   "Indemnified Person" *has the meaning ascribed thereto in Section 5.6(a).*

1.29   *"Independent Director" means an individual (a) who is not an Affiliate of any Portfolio Company or a member of the Immediate Family of any natural person who is an Affiliate of any Portfolio Company, (b) who is not an official of the Shareholder or any of its agencies, instrumentalities or Parastatal Organizations (other than the Company), (c) who is not, and has not been at any time since the beginning of the Company's last two completed Fiscal Years, an officer, employee, agent or representative of the Company or any Portfolio Company and (d) who is not a Person, and is not a partner or employee of a Person, who has in either of the Company's last two completed Fiscal Years received compensation or other payments from the Company (other than compensation received by such Person solely in his capacity as a Director) exceeding an aggregate of $1,000. As to any particular Entity proposed for investment by the Fund, a Director will be an Independent Director only if such Director is an Independent Director as provided above in this definition and also has no direct or indirect beneficial interest in such Entity (other than an interest that, in the aggregate, has a fair market value of less than $5,000).*

1.30   "Investment Committee" *means the Investment Committee as described in Section 6.9.*

8

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00436



1.31    "Investment Guidelines" *means the Investment Objectives, Policies, Procedures and Restrictions set forth in Exhibit C to these Articles, which are hereby incorporated into, and form a part of, these Articles.*

1.32    "Marketable Securities" *means Securities that are (x) traded on a recognized securities exchange (whether in Palestine or elsewhere) or (y) traded over-the-counter (whether in Palestine or elsewhere) and, in each case, are determined by the Directors to be marketable at a price approximating their fair market value within a reasonable period of time and are not subject to restrictions on transfer as a result of applicable contract provisions or the provisions of any applicable law or regulation.*

1.33    "Operating Procedures" *means the manual of operating procedures, guidelines and administrative requirements for the operation and administration of the day-to-day affairs of the Company that is adopted by the Board of Directors as the "Operating Procedures" of the Company.*

1.34    "Ordinary General Meeting" *means the annual general meeting of the Board of Directors.*

1.35    "Palestine" *means the West Bank and Gaza Strip and its successors.*

1.36    "Palestinian National Authority" *or* "PNA" *means the Palestinian National Authority and any successor thereto that serves as the executive governing body of Palestine.*

1.37    "Parastatal Organization" *means any nation or government, any state or other political subdivision thereof, any administrative, arbitral, regulatory, fiscal, judicial or government-owned body, department, commission, authority, tribunal, agency or other entity, including any national, regional, state, provincial, municipal or local entity of any such kind exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.*

9

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00437

1.38   "Person" *means any individual or Entity, and the heirs, executors, administrators, legal representatives, successors and assigns of such Person where the context so permits.*

1.39   "Portfolio Company" *means an Entity, whether in corporate, partnership or other juridical form, in which a Portfolio Investment is made by the Company directly or through one or more intermediate entities of the Company.*

1.40   "Portfolio Investment" *means any debt or equity (or debt with equity) investment (other than Liquid Investments and Temporary Investments) made by the Company, including, without limitation, debt or equity (or debt with equity) investment in infrastructure projects in Palestine and investment in real estate located within the geographical boundaries of Palestine.*

1.41   "President" *means the Chairman of the Executive Committee of the Palestine Liberation Organization and President of the Palestinian National Authority.*

1.42   "Related Person" *has the meaning ascribed thereto in Section 5.3.*

1.43   "Resolution of Directors" *means a resolution approved at a meeting of the Board of Directors or of a duly constituted committee of the Board of Directors by the affirmative vote of a majority of the Directors present at the time of the vote, if a quorum is present at such time, where the meeting was called on proper notice or, if on short notice, if those Directors not present waived notice; or a resolution consented to in writing by all Directors or by all members of such committee, as the case may be.*

1.44   "Resolution of the Shareholder" *means a resolution approved by the affirmative vote of the Shareholder.*

1.45   "Seal" *means the common Seal of the Company.*

1.46   "Securities" *means capital stock, including common and preferred stock, securities convertible into capital stock, subscriptions, depository receipts representing the right to receive any such securities, non-convertible debt instruments and evidences of indebtedness (including*

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00438

loans and participations in loans), bonds, notes, debentures, partnership interests, trust receipts, claims and choses in action, and futures and options contracts, forward contracts and similar instruments, and other securities and obligations of any kind or type of any corporation or other Entity, including, without limitation, securities issued or guaranteed by governmental Entities and other non-profit Entities, as well as any certificates of participation or beneficial interest in, or rights, options or warrants to purchase, any of the foregoing or any stock market indices.

1.47   "Shareholder" *means the Palestinian National Authority, acting through its successor, as the holder of the outstanding Shares.*

1.48   "Shares" *means the Common Shares, par value $1.00 per share, of the Company.*

1.49   "Subsidiary" *means an Entity over 50% of whose capital is owned, directly or indirectly by the Person in question or to which the Person in question may nominate or appoint more than 50% of the members of the board of directors or Persons performing similar functions, or which is otherwise effectively controlled by the Person in question.*

1.50   "Surplus" *means the excess, if any, at the time of the determination of the total assets of the Company over the aggregate of its total liabilities as shown in its books of account, plus the Company's Capital.*

1.51   "Temporary Investment" *has the meaning ascribed thereto in the Investment Guidelines.*

1.52   "U.S. Dollars" *or* "$" *means the lawful currency of the United States of America.*

1.53   "Valuation Guidelines" *means the guidelines for the valuation of the assets of the Company that is adopted by the Board of Directors as the "Valuation Guidelines" for the Company.*

All references herein to Articles and Sections shall be deemed references to Articles and Sections of these Articles unless the context shall otherwise require. All accounting terms used herein and

11



CONFIDENTIAL PURSUANT TO AGREEMENT
C 00439

not otherwise defined herein shall have the respective meanings ascribed to them in accordance with GAAP and, except as expressly provided herein, all accounting determinations shall be made in accordance with GAAP, as in effect from time to time, consistently applied.

All references herein to the masculine gender shall be deemed to include the feminine or neuter genders, the singular to include the plural, and the plural to include the singular, where the context so requires.

صورة طبق الأصل
مراقب الشركات

12

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00440

## ARTICLE 2

## FORMATION OF THE COMPANY

2.1     Name of the Company.  The Company shall be known as "PALESTINE INVESTMENT FUND".

2.2     Office.  The principal office of the Company shall be located at such location within Palestine as may hereafter be determined by the Board of Directors.

2.3     Commencement; Existence; Immunities.  As soon as these Articles have been approved by the President  the Board of Directors shall convene an Extraordinary General Meeting.  The Company shall begin operations on the date when such meeting is held, which date shall be referred to as the "Commencement."  The Company shall be a separate legal entity, the existence of which shall continue indefinitely, shall be a governmental sub-division of Palestine and shall be accorded all immunities of a political sub-division of Palestine; all of the Company's revenues, assets and properties are entitled to all of the same immunities, protections and privileges as are any other revenues, assets or properties of Palestine.  More particularly, but without limitation of the generality of the foregoing, the revenues, assets and properties of the Company in any and all jurisdictions, including, without limitation, Palestine, are immune from suit, from the jurisdiction of any court, from attachment prior to judgment, from attachment in aid of execution of judgment, from execution of a judgment or from any other legal, judicial, executive or legislative process or remedy of any kind whatsoever.  Likewise, such revenues, assets and properties shall be immune from set-off, banker's lien or other similar remedies.

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00441

2.4    *Initial Capital Contribution.*  The initial capital contribution of the Company shall consist of all assets of the Palestinian National Authority as set forth in Exhibit D. The Shareholder shall cause such assets to be contributed to the Company upon its formation.

2.5    Term of Company.  The Company shall commence upon the Commencement and shall continue until the last Business Day of the Fiscal Year in which all assets of the Company have been sold or otherwise disposed of.





14

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00442

ARTICLE 3

PURPOSES AND POWERS

3.1     Purposes.  The purposes of the Company are to acquire or otherwise invest in and to sell or otherwise dispose of Portfolio Investments that promote economic growth and infrastructure development in Palestine and stimulate private sector investment, both domestic and foreign, to achieve sustainable long-term economic prosperity for Palestine, and any other type or kind of Security that the Investment Committee determines is consistent with the Company's investment objective, policies and limitations, as set forth in these Articles and in the Investment Guidelines.

3.2     Powers.  In furtherance of its purposes, but otherwise subject to the other provisions of these Articles, the Company shall have the power and is authorized to:

(a)     sue or be sued, or institute, participate in or defend any action or proceeding, whether judicial, arbitrative, administrative or otherwise, in its name, including, without limitation, actions or proceedings in respect of the compliance or observance by the Company's Directors, officers, employees and agents with their duties, obligations and responsibilities to the Company and the Shareholder as set forth in these Articles;

(b)     purchase, take, receive, lease or otherwise acquire, own, hold, improve, use or otherwise deal in or with real or personal property or an interest in real or personal property, wherever situated;

(c)     sell, convey, assign, encumber, mortgage, pledge, lease, exchange, transfer, create a security interest in or otherwise dispose of all or part of its property or assets, or any interest therein, wherever situated;

15

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00443

(d)    purchase, take, receive, subscribe for or otherwise acquire, own, hold, vote, employ, sell, mortgage, lend, lease, exchange, transfer, pledge or otherwise dispose of and otherwise use and deal in and with shares or other interests in, Securities issued by and direct or indirect obligations of (i) other Persons; or (ii) any government, state, territory, governmental district or municipality or of any instrumentality or subdivision of any of them, and, in furtherance but without limitation of the foregoing, (A) invest in Securities and such other assets as the Investment Committee shall determine are appropriate for investment by the Company and within its purposes; (B) hold such other investment assets (or interests in investment assets) of any kind or nature, real or personal, tangible or intangible, as may be received by the Company as distributions on, or with respect to, Securities held by the Company; and (C) purchase, hold, sell, transfer, lease and otherwise acquire, dispose of and exercise all rights, powers, privileges and other incidents of ownership or possession with respect to the Securities and other assets of the Company, including, without limitation, the rights to receive and exchange the Securities and any other assets of the Company, and, if the Board of Directors deems it necessary or appropriate to preserve the value of Company property, to participate in the management, control and operation of the business and affairs of Entities that have issued Securities held by the Company;

(e)    make and perform contracts, including, but not limited to, contracts of guaranty and suretyship, incur liabilities, borrow money at such rates of interest as the Company may determine, issue its notes, bonds or other obligations, secure any of its obligations by mortgage, pledge or other encumbrance of all or any part of its property, franchises and income, make contracts of guaranty and suretyship that are necessary or convenient to the conduct, promotion or attainment of the business of the Company;

16

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00444

(f)      lend money for any lawful purpose, invest or reinvest its funds, or take and hold real or personal property as security for the payment of funds so loaned or invested;

(g)      conduct its business, carry on its operations, maintain offices and exercise the powers granted by this chapter in any state, foreign country or other jurisdiction, and, in furtherance but without limitation of the foregoing, (i) maintain one or more offices within Palestine and, in connection therewith, rent or acquire office space, engage personnel and do such other acts as may be advisable or necessary in connection with such offices and personnel; (ii) acquire by purchase, exchange, lease or otherwise any personal property that may be necessary, convenient or incidental to the accomplishment of the purposes of the Company; (iii) open, maintain and close accounts with brokers and pay the customary fees and charges applicable to transactions in all such accounts; (iv) open, maintain and close bank accounts and draw checks and other orders for the payment of money; and (v) engage attorneys, accountants, consultants or such other Persons as may be necessary or advisable to counsel and advise as to the conduct of the business and affairs of the Company and pay reasonable compensation for such services;

(h)      elect or appoint managers, officers, employees and other agents of the Company, define their duties, fix their compensation and fix the compensation of Directors;

(i)      assist, lend money to and transact other business with a shareholder, manager, agent or employee of the Company;

17

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00445

(j)    indemnify the Shareholder, any Director, any officer or other Company personnel or agents or any other Person;

(k)    Section 3.2(k) Pay pensions and establish pension plans, pension trusts and other incentive plans for any of the Shareholder or its employees, agents or consultants or any of the Directors, officers, managers, employees, agents or consultants of its Affiliates;

(l)    make donations for the public welfare or for charitable, scientific, religious, civic, educational or similar purposes and, in time of national emergency, in aid thereof;

(m)    transact any lawful business in aid of governmental policy;

(n)    be a promoter, shareholder, general partner, limited partner, member, associate or manager of any association, corporation, partnership, limited partnership, limited liability company, joint venture, trust or other entity or enterprise;

(o)    purchase, receive, take or otherwise acquire, own, hold, sell, lend, exchange, transfer or otherwise dispose of, pledge, use and otherwise deal in and with its Shares;

(p)    only if the Act is amended so to provide, cease its activities, distribute all or substantially all of the assets of the Company, cancel these Articles, dissolve or liquidate; and

(q)    have and exercise all powers, in addition to those set forth in subdivisions (a) through (p) of this Section and elsewhere in these Articles, not inconsistent with law or these Articles, necessary or convenient to effect any or all of the purposes for which the Company is formed.

3.3    Investment Limitations.  The Company's investments will be subject in all respects to the guidelines, limitations and restrictions set forth in the Investment Guidelines.



CONFIDENTIAL PURSUANT TO AGREEMENT
C 00446



## ARTICLE 4

### SHAREHOLDER

4.1    Shareholder.  The sole Shareholder is, and shall be, the Palestinian National Authority.

4.2    No Additional Shareholder.  After Commencement, the Company shall not admit any additional Shareholder and the Shares held by the Palestinian National Authority may not be sold, assigned, transferred or pledged.

4.3    Action by Shareholder.  Whenever action is required or permitted to be taken hereunder by the Shareholder, such action may be taken by the Designated Official of the Shareholder, and any action taken by such Designated Official shall be conclusive evidence the action has been duly authorized by the Shareholder, and the Designated Official shall be entitled to exercise the same powers on behalf of the Shareholder as the Shareholder could exercise.  The Shareholder may from time to time change the Designated Official by a subsequent written notice sent to the Company.

4.4    Third Party Beneficiary.  The Shareholder, in its capacity as the holder of the outstanding Shares, shall be a beneficiary of the duties, obligations and responsibilities of the Company's Directors, officers, employees and agents to the Company as set forth in these Articles and shall have the legal right and authority to bring an action in the right of the Company to procure a judgment in the Company's favor [in respect of such duties, obligations and responsibilities].





19

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00447

## ARTICLE 5

### MANAGEMENT, EXPENSES AND COMPENSATION,

### EXCULPATION AND INDEMNIFICATION

5.1     Management of Company.  The day-to-day management of the activities, affairs and operations of the Company shall, to the extent provided in these Articles, be conducted by the officers of the Company, subject to the oversight of the Board of Directors.  The officers of the Company shall have such powers, rights, authority and responsibilities with respect to the Company as are delegated to such officers under these Articles or otherwise by the Board of Directors.

5.2     Officers.  The officers of the Company shall consist of a General Manager, a Secretary and a Treasurer and may include one or more Assistant General Managers, Assistant Secretaries and Assistant Treasurers and such other officers as the Board of Directors may from time to time deem desirable.  The General Manager shall be appointed by the President and his appointment shall be ratified by a two-thirds majority Resolution of Directors. All other officers shall be appointed by Resolution of Directors.  Any number of offices may be held by the same Person. The initial officers of the Company shall be as set forth on Exhibit C hereto.

(a)     The officers shall perform such duties as shall be prescribed at the time of their appointment subject to any modification in such duties as may be prescribed thereafter by Resolution of Directors or Resolution of the Shareholder, but in the absence of any specific allocation of duties, it shall be the responsibility of the General Manager to manage the day-to-day affairs of the Company, the Assistant General Managers to act in order of seniority in the absence of the General Manager but otherwise to perform such duties as may be delegated to them by the General Manager, the Secretary to maintain the Share register, minute books and

20

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00448

records (other than financial records) of the Company and to ensure compliance with all procedural requirements imposed on the Company by applicable law, and the Treasurer to be responsible for the financial affairs of the Company.

(b)    The emoluments of all officers shall be fixed by Resolution of Directors; *provided* that such emoluments shall have been determined to be generally consistent with the emoluments of comparable officers in other investment funds of the size and nature of the Company. No officer of the Company shall be entitled to or shall receive any emoluments or other payments or distributions from the Company other than such as are so approved.

(c)    The officers of the Company shall hold office until their successors are duly elected or appointed and qualified, but any officer elected or appointed by the Board of Directors may be removed at any time, with or without cause, by Resolution of Directors. Any vacancy occurring in any office of the Company may be filled by Resolution of Directors except that of the General Manager, which shall be filled only by the President.

(d)    The General Manager shall be appointed by the President and shall be a national of Palestine. The initial term of the General Manager shall be three years and thereafter shall be as determined by the Board of Directors and may be renewable. The General Manager may be removed from office at any time, with cause, by the President or by the vote of at least two-thirds of the whole Board of Directors. The General Manager shall be the chief executive of the Company and shall, under the general supervision of the Board of Directors, conduct the day-to-day management of the activities, affairs and operations of the Company. The General Manager shall be responsible for the organization, appointment and dismissal of the staff of the Company (exclusive of the officers of the Company) in accordance with the Operating Procedures. The General Manager shall be a member of the Board of Directors.

21

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00449

(e)     Whenever activities must be carried out that require specialized knowledge or cannot be handled by the regular staff of the Company, the services of experts and consultants may be engaged on a temporary basis.

(f)     The officers and staff of the Company owe their duty entirely to the Company in the discharge of their offices.  An officer of the Company shall perform his duties as an officer in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.  In performing his duties, an officer shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by:

(i)  one or more other officers or employees of the Company whom the officer believes to be reliable and competent as to the matters presented; or

(ii)  counsel, public accountants or other persons as to matters that the Director believes to be within such Person's professional or expert competence, so long as in so relying he shall be acting in good faith and with such degree of care, but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted.  An individual who so performs his duties shall have no liability by reason of being or having been an officer of the Company.

(g)     The Company and the Board of Directors shall have due regard for the need to assure the highest standards of efficiency, competence and professional and ethical integrity as the paramount consideration in appointing the officers and other staff of the Company and in establishing their conditions of service.

5.3     Transactions with Affiliated Persons; Conflicts of Interest. Other than the transactions expressly provided for herein, the Company may enter into transactions with (i) any Director, (ii) any Person in which any Director has a financial interest or that is an Affiliate of any Director or



22

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00450

to whom any Director is related, including as a director of that other Person (a "Related Person"), or (iii) the General Manager or any Affiliate of the General Manager, only on terms at least as favorable to the Company as may reasonably be expected to be obtained in an arm's length transaction from unrelated third parties.

(a)    No agreement or transaction between the Company and one or more of its Directors or any Related Person or the General Manager or any Affiliate of the General Manager is void or voidable for this reason only or by reason only that the Director is present at a meeting of the Board of Directors or at a meeting of the Conflicts Committee that approves the agreement or transaction or that the vote or consent of the Director is counted for that purpose:

(i)    if the material facts of the interest of such Director or the General Manager in the agreement or transaction and his interest in or relationship to the other party to the agreement or transaction are disclosed in good faith or are known by the other Directors, and the Board of Directors or the Conflicts Committee, as the case may be, approves such agreement or transaction by a vote sufficient for such purpose without counting the vote of such interested Director or, if the votes of the disinterested Directors are insufficient to constitute an act of the Board of Directors as set forth in Section 6.3, by unanimous vote of the disinterested Directors; or

(ii)    if the material facts of the interest of such Director or the General Manager in the agreement or transaction and his interest in or relationship to the other party to the agreement or transaction are disclosed in good faith or are known by the Shareholder, and such agreement or transaction is approved by Resolution of the Shareholder.



CONFIDENTIAL PURSUANT TO AGREEMENT
C 00451

(b)      A Director who has an interest in any particular business to be considered at a General Meeting of Directors or the Shareholder may be counted for the purposes of determining whether such meeting is duly constituted.

(c)      If an agreement or transaction between the Company and one or more of its Directors or any Related Person or the General Manager or any Affiliate of the General Manager is not approved in accordance with clause (a) of this Section 5.3, the Company may avoid the agreement or transaction unless the party or parties thereto shall establish affirmatively that the agreement or transaction was fair and reasonable as to the Company at the time it was approved by the Board of Directors or a committee thereof.

(d)      On any issue involving a conflict of interest or potential conflict of interest arising from an action or proposed action by or on behalf of the Company, the Company will take such actions as shall be approved by the Conflicts Committee, as may be necessary or appropriate to ameliorate the conflict of interest or potential conflict of interest.  These actions may include one or more of the following:

(i)      appointing an independent Person (which may be, without limitation, an accounting firm, investment bank or legal counsel) to make a determination with respect to any matter as to which a conflict of interest exists or may exist;

(ii)      appointing an independent Person selected by the Board of Directors to manage the assets in question;

(iii)      appointing an independent Person to manage the assets in question of the General Manager, the officer or the Directors or their respective Affiliates, or other Entity with which the conflict of interest arises;

(iv)      disposing of the Portfolio Investment in question by the Company on terms that are determined by the Board of Directors (in the good faith exercise of their

24                    CONFIDENTIAL PURSUANT TO AGREEMENT
C 00452

judgment) and approved by the Conflicts Committee to be commercially reasonable under the circumstances, or providing for the disposition by the General Manager, such officer or Director or the other Person with which the conflict of interest has arisen of the property giving rise to such conflict of interest; or

(v)    taking any other action as to such conflict of interest that is approved by the Conflicts Committee.

If the Company takes one or more of the actions specified in the foregoing in respect of a matter giving rise to a conflict of interest, none of the General Manager, any other officer of the Company, any Director, or any of their respective Affiliates will have any liability to the Company or the Shareholder in respect of actions taken in good faith by it in the pursuit of its own interest, provided that it has received the prior approval of the Conflicts Committee.  Any proposed investment by the Company in any entity in which the General Manager, any other officer of the Company, any Director or their respective Affiliates have previously invested shall be deemed to constitute a conflict of interest or potential conflict of interest.

5.4    Expenses.  The Company shall be responsible for, and shall pay for, all costs and expenses related to the Company's operations and the purchase, sale and retention of the Company's Portfolio Investments and any other Company assets, including, without limitation, the costs and expenses of brokerage, quotation services, any borrowings, interest payments, auditing, accounting (including expenses associated with the preparation of the Company's financial statements) and legal services, Securities lending, clearing and settlement.

5.5    Exculpation.

(a)    Except as otherwise required by applicable law, neither any Director nor the General Manager nor any direct or indirect agent, officer, employee or Affiliate of the Company (severally, an "Exculpated Person") shall be liable, responsible or accountable in damages or

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00453

otherwise to the Company or to the Shareholder for any breach of duty to the Company or the Shareholder or for any mistake, action, inaction, negligence, dishonesty, fraud or bad faith of any broker or other agent or for any act or failure to act pursuant to these Articles or otherwise, except that (a) such persons will be liable for their gross negligence, willful misconduct, fraud or self-dealing, and (b) this Section 5.5 shall not eliminate or limit the liability of the General Manager, any other officer of the Company or any Director if a judgment or other final adjudication adverse to him establishes that his acts or omissions were in bad faith or involved intentional misconduct or a knowing violation of law or that he personally gained in fact a financial profit or advantage to which he was not legally entitled.

(b)    In performing its duties, each Exculpated Person shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by: (i) one or more agents or employees of the Company, or (ii) counsel, accountants or other Persons as to matters that such Exculpated Person believes to be within such other Person's professional or expert competence, *provided,* that such Exculpated Person has no knowledge concerning the matter in question that would cause such reliance to be unwarranted and is otherwise acting in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.

5.6    Indemnification.

(a)    The Company shall indemnify, defend and hold harmless each Director and each officer of the Company (severally, an "Indemnified Person"), to the fullest extent permitted by law, from and against any Damages arising out of or in connection with (i) any act or failure to act or alleged act or failure to act by an Indemnified Person arising out of, in connection with or in any way related to the Company, except for any Damages resulting from such Indemnified Person's gross negligence or willful misconduct or (ii) the affairs of the Company; *provided,* that

CONFIDENTIAL PURSUANT TO AGREEMENT

C 00454

26

the Company shall not indemnify any Indemnified Person for any Damages as to which indemnification is barred under applicable laws; and *provided, further,* that any Indemnified Person shall first seek recovery under any other indemnity or any insurance policies by which such Indemnified Person is indemnified or covered, as the case may be, but only to the extent that the indemnitor with respect to such indemnity or the insurer with respect to such insurance policy provides (or acknowledges its obligation to provide) such indemnity or coverage on a timely basis and such Indemnified Person shall obtain the written consent of the Board of Directors prior to entering into any compromise or settlement which could result in any obligation of the Company to indemnify such Indemnified Person; and *provided, further,* that if liabilities arise out of the conduct of the business and affairs of the Company and any other Person for which the Indemnified Person would be entitled to indemnification hereunder, the amount of indemnification provided by the Company shall be limited to the Company's proportionate share thereof determined in good faith by the Board of Directors in light of its fiduciary duties to the Company and the Shareholder. Attorneys' fees and expenses payable pursuant to this Section 5.6(a) shall be paid by the Company as they are incurred upon receipt, in each case, of an undertaking by or on behalf of the Indemnified Person to repay such amounts if it is ultimately determined that such Indemnified Person is not entitled to indemnification with respect thereto.

(b)    The rights of indemnification herein provided may be insured against by policies maintained by the Company, shall be severable, shall not be exclusive of or affect any other rights to which any Indemnified Person may now or hereafter be entitled, shall remain in full force and effect following any termination of these Articles, shall continue as to a Person who has ceased to be a Person defined as an "Indemnified Person" and shall inure to the benefit of the heirs, executors, administrators and successors of such a Person. Nothing contained herein shall

27

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00455

affect any rights to indemnification to which Company personnel, other than Indemnified Persons, and other Persons may be entitled by contract or otherwise under law.



28

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00456

## ARTICLE 6

## BOARD OF DIRECTORS; COMMITTEES

6.1     Appointment and Qualification of Directors.  The Company shall have a board of directors (the "Board of Directors") consisting of not less than seven nor more than nine Directors as shall be set from time to time by Resolution of the Shareholder. A diminution or expansion of the number of Directors shall be ratified by two-thirds majority Resolution of Directors. Directors shall be natural persons who may, but need not, be representatives of the Shareholder, but may not be officers, directors, employees, partners or Affiliates of any Portfolio Company, and no fewer than 50% of the Directors (other than the Chairman of the Board) shall be Independent Directors.  The initial Directors for the Company shall be as set forth on Exhibit B hereto. Thereafter, the Directors shall be elected or appointed by Resolution of the Shareholder, except that the Chairman of the Board of Directors, who shall be a Director, shall be appointed by the President.  Each of the initial Directors (including the Chairman of the Board of Directors) shall serve for a term of three (3) years from the date of his appointment or election to the Board of Directors and until his successor has been elected or appointed and qualified, or until his earlier death, resignation, retirement or removal from the Board of Directors pursuant to Section 6.4.  Thereafter, each Director shall serve for a term of one year or such other term, not less than one year, fixed by Resolution of the Shareholder and until his successor has been elected or appointed and qualified, or until his earlier death, resignation, retirement or removal from the Board of Directors pursuant to Section 6.4.  Vacancies on the Board of Directors resulting from death, resignation, retirement or removal of a Director pursuant to Section 6.4 shall be filled by Resolution of the Shareholder, subject to the above requirements as to the composition of the Board of Directors and provided that any vacancy in the position of Chairman of the Board of Directors shall be filled by the President; any Person elected or appointed to fill a

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00457

vacancy so created will serve for the balance of the term of the Director whose vacancy is being filled.

6.2    Authority and Obligations of Board of Directors.  The Board of Directors shall have such powers, rights, authority and responsibilities with respect to the Company as are delegated to the Board of Directors under these Articles, which, without limitation of the foregoing, shall include the following, inter alia:

(a)    The business and affairs of the Company shall be managed by the Board of Directors who may exercise all such powers of the Company as are not, by the Act or by these Articles, required to be exercised by the Shareholder, subject to any delegation of such powers as may be authorized by these Articles and to such requirements as may be prescribed by a Resolution of the Shareholder; but no requirement made by a Resolution of the Shareholder shall prevail if it be inconsistent with these Articles nor shall such requirement invalidate any prior act of the Board of Directors that would have been valid if such requirement had not been made.

(b)    The Board of Directors may, by a Resolution of Directors, appoint any Person, including a person who is a Director, to be an officer or agent of the Company.

(c)    All checks, promissory notes, drafts, bills of exchange and other negotiable instruments, and all receipts for monies paid to the Company shall be signed, drawn, accepted, endorsed or otherwise executed, as the case may be, in such manner as shall from time to time be determined by Resolution of Directors.

(d)    The Investment Guidelines may not be modified, amended or rescinded by Resolution of Directors; *provided* that, by Resolution of Directors, the Board of Directors may recommend to the Shareholder that it modify, amend or rescind the Investment Guidelines at a General Meeting.



30

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00458

(e)    Subject to Section 6.3, the Board of Directors or any committee thereof may meet at such times and in such manner and places within Palestine as the Board of Directors may determine to be necessary or desirable.

(f)    The Board of Directors shall meet at least quarterly.

(g)    The Board of Directors, with the advice of the Audit Committee, shall be responsible for annually approving (except in the case of the Company's first Fiscal Year) the Accountants, overseeing the preparation of annual and interim financial statements and, to the extent deemed appropriate by the Board of Directors, conferring with the Accountants in connection therewith, reviewing reports from the General Manager, approving certain amendments to these Articles proposed by the General Manager that are not subject to the vote of the Shareholder, as specified elsewhere in these Articles, and meeting semiannually to review the performance of the Company and the General Manager.

(h)    The Board of Directors (or a duly appointed committee thereof) shall review periodically the overall environmental performance of the Portfolio Companies and, if necessary, make recommendations to improve and strengthen such performance.  The Board of Directors (or a duly appointed committee thereof) shall also review prospective investments by the Company for their compliance with applicable environmental requirements and shall consult with the Investment Committee in respect thereof.

(i)    Each of the Directors shall perform his duties in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.  In performing his duties, a Director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by:

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00459

(x) one or more officers or employees of the Company whom the Director believes to be reliable and competent as to the matters presented;

(y) counsel, public accountants or other persons as to matters that the Director believes to be within such Person's professional or expert competence; or

(z) a committee of the Board of Directors upon which he does not serve, duly designated in accordance with these Articles, which committee the Director believes to merit confidence, so long as in so relying he shall be acting in good faith and with such degree of care, but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted.

An individual who so performs his duties shall have no liability by reason of being or having been a Director of the Company.

6.3    Action by Board of Directors; Bylaws

(a)    The General Manager may, in his discretion, and shall, whenever the approval of the Board of Directors is required by these Articles for any action taken by the General Manager or the Shareholder, on behalf of the Company, or at the request of any one Director, call a meeting of the Board of Directors.  Subject to subsection (b) below, not less than twenty-one (21) days' written notice of meetings of the Board of Directors shall be given to each Director. Notice of any meeting of the Board of Directors may be waived by a Director before, at or after the meeting.  A majority of the Board of Directors shall constitute a quorum, and decisions of a majority of a quorum of the Board of Directors at a meeting shall constitute decisions of the Board of Directors.  Directors may participate in a General Meeting by means of conference telephone or similar communications equipment by means of which all persons participating in the General Meeting can hear each other at the same time and participation by such means shall

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00460

constitute presence in person at a meeting. Any action required or permitted to be taken by the Board of Directors at a General Meeting may be taken without a General Meeting if all of the Directors consent thereto in writing and the writing is filed with the records of the Company.

(b)     The semi-annual General Meetings of the Board of Directors, required pursuant to Section 6.2 to review the performance of the Company and of the General Manager, shall be held at the principal office of the Company in Palestine at such times and on such dates as shall be designated by the Board of Directors, *provided* that the Board of Directors may at any meeting of the Board of Directors or in any by-law or regulation adopted by the Board of Directors pursuant to this Section 6.3 designate another location, within Palestine, at which to hold such meetings. The Board of Directors may fix by resolution the place, date and time for the holding of such regular semiannual meetings, in which case no notice of such regular semiannual meetings need be given to the Board of Directors; *provided, however,* that if the Board of Directors shall fix or change the time or place of any regular semiannual meeting, notice of such action shall be given to each Director not present at the time such action was taken by the Board of Directors.

(c)     At every meeting of the Board of Directors, the Chairman of the Board of Directors shall preside as chairman of the meeting. If there is no Chairman of the Board of Directors or if the Chairman of the Board of Directors is not present at the meeting, the Board of Directors shall choose someone of their number to be the chairman of the meeting.

(d)     The Board of Directors may adopt such bylaws, regulations and operating procedures to govern the conduct of its business as are consistent with these Articles and as the Board of Directors shall deem appropriate.

6.4     Resignation and Removal of Directors. Any Director may resign by written notice to the Company, and any Director may be removed, but only with cause, by Resolution of the



33

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00461

Shareholder. A Nominating Committee composed of all independent directors shall nominate a

Person to fill a vacancy. That nominee is elected by Resolution of the Shareholder.

6.5     Board of Directors Compensation.  Directors shall not be entitled to any compensation

for their service as Directors or as members of any Committee of the Board of Directors, except

that Directors who are not also officers or employees of the Company shall be paid such amount

as shall be approved by a Resolution of the Shareholder for their attendance at meetings of the

Board of Directors or committees of the Board of Directors other than the regularly scheduled

annual and semi-annual meetings of the Board of Directors.  Directors shall be reimbursed for all

reasonable out-of-pocket expenses incurred by them in connection with their service on the

Board of Directors.

6.6     Committees.  The Company shall have the following standing committees of the Board of

Directors, the powers and responsibilities of which shall be as set forth in this Article 6:  Audit

Committee, Conflicts Committee, Investment Committee and Nominating Committee.  The

Board of Directors may designate from among its members such other committees as it shall

deem necessary or appropriate.  Each committee of the Board of Directors, including the

foregoing standing committees, with the exception of the Nominating Committee which shall

consist of only  independent Directors, shall consist of at least three (3) Directors, at least a

majority of whom shall be Independent Directors, who shall, except as may be indicated with

respect to any particular committee, be elected or appointed annually by the vote of a majority of

the whole Board of Directors.  Each of the committees so established, including the standing

committees, shall, except as may be provided otherwise in these Articles or in the resolution of

the Board of Directors establishing such committee, have all the authority of the Board of

Directors, except that no such committee shall have authority as to (i) the establishment or

authorization of committees of the Board of Directors or the filling of vacancies in the Board of

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00462

Directors or in any committee of the Board of Directors, (ii) the amendment of these Articles; or (iii) the amendment or repeal of any resolution of the Board of Directors that by its terms shall not be so amendable or repealable. The Board of Directors may designate one or more Directors as alternate members of any committee of the Board of Directors, who may replace any absent or disqualified member or members at any meeting of such committee, provided that any alternate to an Independent Director must himself be an Independent Director.

6.7     Audit Committee. All Audit Committee members shall be financially literate and at least one member shall have accounting or related financial management expertise. In discharging its responsibilities, the Audit Committee shall have full access to all books, records, facilities and personnel of the Company, shall have the power to retain outside counsel or other experts and shall have the authority to investigate any matter. The following shall be the principal recurring processes of the Audit Committee in carrying out its responsibilities:

(a)     The Audit Committee shall have the authority and the responsibility, for and on behalf of the Company's Board of Directors, to (i) oversee and monitor all aspects of the Company's accounting and financial reporting processes and (ii) take any actions as it may deem desirable or appropriate to provide for the reliability and credibility of the Company's financial statements and the integrity of the Company's financial reporting process.

(b)     The Audit Committee shall have a clear understanding with the Company's management and the Accountants that the Accountants are ultimately accountable to the Company's Board of Directors and the Audit Committee, as representatives of the Shareholder, and that such Shareholder's representatives have the authority and responsibility to select, evaluate and replace the independent auditors.

(c)     The Audit Committee shall discuss with the Accountants the overall scope and plans for their audits including the adequacy of staffing and compensation.

35

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00463

(d)    The Audit Committee shall review with management and the Accountants the Company's annual and interim financial statements.

6.8    Conflicts Committee. The Conflicts Committee shall consult with the Board of Directors in the event of conflicts of interest, shall act thereon as contemplated under these Articles or otherwise, shall review general economic and financial trends, and shall review all Portfolio Investments. Neither the Conflicts Committee nor any member thereof shall take part in the management or control of the Company's affairs, transact any business in the Company's name or have any power to sign documents for or otherwise bind the Company. Without limiting the generality of the foregoing, the Conflicts Committee shall review and prepare a report to the Board of Directors concerning any proposed Portfolio Investment in which the General Manager, any other officer of the Company or any Director shall have an interest. Without the approval of the Conflicts Committee, the Company shall not offer any Person co-investment opportunities in the Portfolio Investment that are on better terms than the terms on which the Company will invest or that do not provide that such Person must dispose of such investment at the same time and on no better terms than those received by the Company. Without the approval of the Conflicts Committee or of the Board of Directors as provided in Section 5.3(a), the Company will not purchase any security from the General Manager, any other officer of the Company or a Director or any Affiliate thereof or from any account managed by any of them or their respective Affiliates or buy from, sell to or invest in any other entity in which any such Person or his Affiliate holds a material investment or are in a position to control.

6.9    Investment Committee. The Investment Committee shall review all Portfolio Companies proposed for investment by the Company, shall supervise, and receive and consider the reports of, the Persons conducting transparency diagnostic reviews of proposed Company investments




36

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00464

and, subject to the Investment Guidelines, shall approve the investments by the Company and the terms and conditions of any such investment.

6.10    *Nominating Committee*. The Nominating Committee shall nominate Persons to fill Board of Directors vacancies.

6.11    Actions by Committees.  Each committee may adopt its own operating rules, subject to the provisions of these Articles and such other operating guidelines as may be adopted from time to time by the Board of Directors and provided that a quorum for the proper constitution for action of any meeting of any committee on which there is required to be an Independent Director shall only be present if there is at least one Independent Director member of such committee actually present at such meeting.  Each committee shall act by simple majority vote of the members of the committee, except that the approving vote of at least one Independent Director shall be required for action or approval by any committee on which there is required to be an Independent Director.



37.

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00465

## ARTICLE 7

### CAPITALIZATION AND CAPITAL ACCOUNTS

7.1     Issuance of Shares. Section 7.1  The number of Shares that the Company is authorized to

issue is one thousand (1,000) shares of common stock, all of which shall be issued solely and

exclusively to the Shareholder.  Shares in the Company shall be issued in consideration of the

contribution by the Shareholder of the initial

Portfolio Investments.  7.2     Share Certificates.  The Company shall issue to the Shareholder a

certificate or certificates signed by a Director or officer of the Company and under the Seal

specifying the Shares held by it.  If a share certificate for registered Shares is worn out or lost it

may be renewed on production of the worn out certificate or on satisfactory proof of its loss

together with such indemnity as may be required by a Resolution of Directors and on fulfillment

of the formalities prescribed by the Act.

7.3     Share Register.  The Board of Directors of the Company shall cause to be kept a Share

register containing the names and addresses of the Persons who hold registered Shares in the

Company; the number of each class and series of registered Shares held by each Person; and the

date on which the name of each Person was entered in the Share register.  The Share register may

be in any form approved by the Board of Directors, including magnetic, electronic, or other data

storage form, so long as legible evidence of its contents may be produced.  A copy of the Share

register, commencing from the date of the registration of the Company, shall be kept at the

principal office of the Company.

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00466

## ARTICLE 8

### VALUATION OF COMPANY ASSETS

8.1     Marketable Securities.  A Marketable Security held by the Company that is listed on a recognized Securities exchange shall be valued at its closing sale price on such exchange (or, lacking any sales on such exchange on such day, the mean between the closing bid and asked prices therefore), and the value of a Marketable Security quoted in an over-the-counter market shall be the most recent bid price therefore in the over-the-counter market in which it is most actively traded, as determined in good faith by the Board of Directors (or a duly appointed committee thereof).

8.2     Securities Other Than Marketable Securities; Other Assets.  Securities held by the Company that are not Marketable Securities and assets other than Securities shall be valued at their fair market value as determined in good faith by the Board of Directors (or a duly appointed committee thereof) based upon such factors as the Board of Directors (or a duly appointed committee thereof) considers relevant and appropriate and are set forth in the Valuation Guidelines, including, in the case of Securities, a comparison with market values for Securities of the same or similar issuers in terms of size and industry, the investment risk and potential, recent sales and marketability, and provided that holdings of traded physical commodities will be valued at their current market values based on closing sale prices (or the mean between the closing bid and asked prices on days when no sales occur) in the principal market on which such commodities are normally traded.

8.3     Liabilities.  Liabilities of the Company shall be taken at the amounts at which they are carried on the books of the Company, reasonable provision to be made, however, for contingent or other liabilities not reflected on such books and, in the case of the liquidation of the Company, for the expenses of the liquidation and winding up of the Company's affairs.

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00467



ARTICLE 9

DISTRIBUTIONS; NO CAPITAL WITHDRAWAL

9.1    Discretionary Distributions.  Subject to Section 9.2, but only with the express prior

approval of the Shareholder, the Board of Directors may distribute to the Shareholder cash,

Securities or other Company property at any time.

9.2    Restrictions on Distributions.

(a)    If less than all of a Portfolio Investment is disposed of, the portion disposed of

and the portion retained shall for purposes of these Articles be deemed to be separate

investments.  Any allocations or distributions made with respect to such Portfolio Investment,

and any amounts received or expenses paid by the Company which are attributable to such

Portfolio Investment, shall be allocated between the portion disposed of and the portion retained

pro rata in accordance with their respective purchase prices.

(b)    It is the intent of the Company to make distributions in cash, unless such

distributions are not in the best interests of the Company.  Except in connection with the

liquidation and dissolution of the Company, the Company shall distribute only Marketable

Securities and Temporary Investments as distributions in kind.  In the event a distribution of

Marketable Securities or Temporary Investments is made, such Marketable Securities or

Temporary Investments shall be deemed to have been sold at their fair market value as estimated

in good faith by the Board of Directors on the date of distribution and the proceeds of such sale

shall be deemed to have been distributed to the Shareholder for all purposes of these Articles.  In

the case of the dissolution of the Company, Portfolio Investments may also be distributed, at

their fair market value as estimated in good faith by the Board of Directors.  The Board of

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00468

Directors may cause certificates evidencing any Marketable Securities, Temporary Investments or Portfolio Investments to be distributed to be imprinted with legends as to such restrictions on transfer that it may deem necessary or appropriate, and may require any holder to which Marketable Securities, Temporary Investments or Portfolio Investments are to be distributed to agree in writing (i) that such Marketable Securities or Temporary Investments will not be transferred except in compliance with such restrictions, and (ii) to such other matters as the Board of Directors may deem necessary or appropriate.

(c)    Distributions (other than liquidating distributions) shall only be declared and paid out of Available Assets; *provided* that the Shareholder may not request such a distribution prior to the fifth anniversary of the Commencement of the Company.

(d)    No distribution shall be declared and paid unless the Board of Directors determines that immediately after the payment of the distribution the Company will be able to satisfy its liabilities as they become due in the ordinary course of its business and the realizable value of the assets of the Company will not be less than the sum of its total liabilities as shown in its books of account, and its Capital. In the absence of fraud, the decision of the Board of Directors as to the realizable value of the assets of the Company is conclusive, unless a question of law is involved.

(e)    No distribution shall bear interest as against the Company.

9.3    No Withdrawal of Capital. The Shareholder shall not have the right to withdraw (by borrowing, direct distribution or otherwise) Capital from the Company or to cause the Company to purchase its Shares.

9.4    Certain Provisions Relating To Distributions.

(a)    Notice of any distribution permitted hereunder that may have been declared shall be given to the Shareholder.

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00469

(b)      A Share issued as a distribution by the Company shall be treated for all purposes as having been issued for money equal to the Surplus that is transferred to Capital upon the issue of the Share.

(c)      In the case of a distribution of authorized but unissued Shares with par value, an amount equal to the aggregate par value of the Shares shall be transferred from Surplus to Capital at the time of the distribution.



CONFIDENTIAL PURSUANT TO AGREEMENT
C 00470



ARTICLE 10

DURATION AND TERMINATION OF THE COMPANY

10.1    Liquidation of Company Shares upon Dissolution.

(a)    Upon dissolution, the Company shall be liquidated in an orderly manner in accordance with the provisions of this Section 10.1. The Board of Directors shall appoint an independent liquidator or liquidators, who shall not be Affiliated with the Shareholder, the Company or any Person's company and each of which may be an accounting firm of recognized international standing or other firm of recognized international standing regularly engaged in the business of accounting as independent liquidator to corporate entities, who shall proceed, subject to the provisions herein, to liquidate the Company's assets and wind up the affairs of the Company pursuant to these Articles. The liquidator(s) are authorized to sell, exchange or otherwise dispose of the assets of the Company, or to distribute Company assets in kind, as the liquidator(s) shall determine to be in the best interests of the Shareholder. The liquidator(s) are also authorized to hold any funds required to be held in escrow pursuant to the provisions of any agreement for the sale of investments that require such an escrow. Such escrowed funds shall be deposited in an interest-bearing account. The reasonable out-of-pocket expenses incurred by the liquidator(s) in connection with liquidating and winding up the Company, all other liabilities or losses of the Company or the liquidator(s) incurred in accordance with the terms of these Articles and reasonable compensation for the services of the liquidator(s) shall be borne by the Company. Except as otherwise required by law, the liquidator(s) shall not be liable to the Shareholder or the Company for any loss attributable to any act or omission of the liquidator(s) taken in good faith in connection with the winding up of the Company and the distribution of Company assets. The liquidator(s) may consult with counsel and the accountants with respect to liquidating and winding up the Company and distributing its assets and shall be justified in acting or omitting to

43

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00471

act in accordance with the advice or opinion of such counsel or accountants, *provided* that the liquidator(s) shall have used reasonable care in selecting such counsel or accountants.

(b)    The liquidator(s) shall apply the proceeds of such liquidation, or on its sole discretion, distribute Company assets in the following order of priority:

First, to creditors in satisfaction of debts and liabilities of the Company whether by payment or the making of reasonable provision for payment and the expenses of liquidation;

Second, to the establishment of reasonable reserves (which may be funded by a liquidating trust) determined by the Board of Directors or the liquidating trustee, as the case may be, to be reasonably necessary for the payment of the Company's expenses (including expenses of the liquidator(s)), liabilities and other obligations (whether fixed or contingent); and

Third, to the Shareholder.

(c)    In establishing reserves under clause Second, the liquidator(s) shall set aside, for a period of not more than two years from the date of dissolution, such amounts (if any) as the Board of Directors determines may be reasonably required to meet the Company's potential indemnity obligations whether or not such potential obligations would constitute contingent liabilities of the Company under applicable accounting standards.

(d)    The Shareholder shall be furnished a written report accounting for the manner of all such distributions, and all such distributions in cash or in kind shall be made, to the extent possible, pro rata with each class of Securities of any issuer being considered a different asset.

**CONFIDENTIAL PURSUANT TO AGREEMENT**
**C 00472**





## ARTICLE 11

### RECORDS AND REPORTS

11.1    Books and Records.  The Company shall maintain books of account on the accrual method of accounting and in accordance with GAAP.  The Company shall also maintain the following records:  (i) lists of all proposed investments and (ii) lists of all Portfolio Investments.  The Shareholder may, upon not less than ten (10) days' notice to the Company, inspect and copy at its own expense, for any purpose reasonably related to the Shareholder's Shares, the records referred to in this Section 11.1, any financial statements maintained by the Company and other information regarding the affairs of the Company.

11.2    Financial Reports.  Quarterly unaudited financial statements reporting on the financial condition of the Company's business and the results of its operations shall be furnished to the Shareholder.  An annual audit of the Company shall be made by the Accountants and a copy of the report of such audit, consisting of a balance sheet, a statement of operations and a statement of cash flows and related notes, shall be furnished to the Shareholder within a reasonable period after the close of each Fiscal Year.  These reports shall also contain a list of the Company's Securities and any other Company assets.  All financial reports shall be prepared and presented in accordance with GAAP.

11.3    Accountants.  The initial independent certified public accountants for the Company (the "Accountants").  Shall be appointed following recommendation of the Audit Committee and thereupon ratification by vote of the Board of Directors.

### ARTICLE 12

### SHAREHOLDER ACTION

12.1    Meetings.  The Company shall not be required to hold meetings of the Shareholder annually.  Meetings of the Shareholder, for any purpose or purposes, unless otherwise prescribed

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00473

by statute, may be called by the Board of Directors at any time in its sole discretion and will be

called by the Board of Directors upon written request from any two Directors or from the

Shareholder, which request shall specify the reason for, and proposed date of, the meeting.  Upon

receipt of such request, the General Manager shall cause notice to be given to the Shareholder of

such meeting in accordance with the provisions of Section 12.3.

12.2    Place of Meetings.  The General Manager may designate any place within Palestine, as

the place for any meeting of the Shareholder.  If no designation is made, or if a special meeting is

otherwise called, the place of meeting shall be the principal office of the Company in Palestine.

12.3    Notice of Meetings.  Except as provided in Section 12.4 below, written notice stating the

place, day and hour of the meeting and the purpose or purposes for which the meeting is called

and indicating that such notice is being issued by or at the direction of the Person or Persons

calling the meeting shall be delivered no fewer than twenty-one (21) calendar days before the

date of the meeting, either personally, by facsimile or by mail, by or at the direction of the

Company, to such Persons as are entitled to receive such notices. If mailed, the notice shall be

deemed to be delivered upon receipt by an acknowledged delivery mail service, addressed to the

Shareholder at the Shareholder's address as it appears in the records of the Company with

postage thereon prepaid.

12.4    Action by Shareholder without a Meeting.  Action required or permitted to be taken at a

meeting of Shareholder may be taken without a meeting, without prior notice and without a vote

of the Shareholder if the action is evidenced by one or more written consents describing the

action taken, signed on behalf of the Shareholder by the Designated Official, and delivered to the

General Manager by hand or by certified or registered mail, return receipt requested, for filing

with the Company records.  Every written consent under this Section 12.4 shall bear the date of

signature of the Shareholder.  No written consent under this Section 12.4 shall be effective to

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00474

take the action referred to therein unless, within sixty (60) calendar days of the earliest dated

consent delivered in the manner required by this Section, written consents signed on behalf of the

Shareholder by the Designated Official. Action taken under this Section 12.4 shall be effective

ten (10) days after the consent is signed and such written consent has been received by the

Company or its designated agent, unless the consent specifies a different effective date.



47

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00475

ARTICLE 13

SEAL

13.1    Seal.  The Company shall have a Company Seal, and an imprint shall be kept at the registered office of the Company.  The Board of Directors shall provide for the safe custody of the Seal.  The Seal when affixed to any written instrument shall be witnessed by a Director or any other Person so authorized from time to time by Resolution of Directors.  The Board of Directors may provide for a facsimile of the Seal and of the signature of any Director or authorized person which may be produced by printing or other means on any instrument and it shall have the same force and validity as if the Seal had been affixed to such instrument and the same had been signed as hereinbefore described.



48

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00476

## ARTICLE 14

## AMENDMENTS

14.1    Amendments.  These Articles may be amended, in whole or in part, by Resolution of

Directors, except that no provision of these Articles with respect to (i) the size and the

composition of the Board of Directors or any of the committees of the Board of Directors,

including particularly the requirements for Independent Directors as members thereof, and any

requirement that the Board of Directors or any committee thereof act in respect of any matter,

(ii) the minimum standards for independence in the definition of Independent Director, (iii) the

Investment Guidelines or (iv) the distribution of funds or assets by the Company (including,

without limitation, by liquidation of the Company or part thereof) may be changed except by an

amendment of the Act, and except that no provision requiring the approval or consent of the

Shareholder, including this provision, may be changed except by a Resolution of the

Shareholder.



49

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00477



# **APPENDIX K**



**CONFIDENTIAL PURSUANT TO AGREEMENT**
**C 00478**

**K.    Investment Objectives, Policies, Procedures and Restrictions**

This Appendix describes the Investment Objectives, Policies, Procedures and Restrictions of Palestine Investment Fund (the "Company"). Certain capitalized terms used herein without other definition have the meanings specified in the Articles of Association of the Company.

The Company will invest in Portfolio Investments, Liquid Investments and Temporary Investments, as described herein and subject to the applicable provisions of Section III and of the Articles.

**I.    Investment Objectives and Policies.** The investment objectives of the Company are to make Portfolio Investments that promote economic growth and infrastructure development in Palestine and stimulate private sector investment, both domestic and foreign, to achieve sustainable long-term economic prosperity for Palestine.

A.    The Company anticipates that the following types of transactions, in and with enterprises and projects located in Palestine, will be primary sources of Portfolio Investments:

(i)    venture investments, including start-ups and expansion financings;

(ii)    investments in mature companies requiring capital for expansion;

(iii)    localizations of ownership (from external vendors);

(iv)    restructurings;

(v)    privatizations;

(vi)    refurbishments;

(vii)    infrastructure financings; and

(viii)    real estate investments.

B.    The investments should show the potential for generating attractive returns to the Company and for making a positive contribution to overall economic growth and development; *provided*, that the Company may invest in start-up or early-stage ventures that expect to incur losses in the short- and medium-term. A new investment or expansion plan will generally be included in projects financed by the Company, and the Company should not engage in pure assets strips.

C.    The Company is permitted to obtain control over companies in which it invests. The Company will generally aim to acquire significant stakes, and will use board representation to support management and to safeguard the interests of the Company.



**CONFIDENTIAL PURSUANT TO AGREEMENT**
**C 00479**

D.    There will be active efforts to attract appropriate co-investors with the Company's investments as a means of reducing the Portfolio Companies' future requirements from the Company and securing desirable partners for the Portfolio Companies. It is expected that the Portfolio Companies will look predominantly to additional investors as well as banks and other financial institutions for their financing requirements, including the provision of short-term working capital. The Company will give the fullest consideration to proposals involving Palestinian managers to the extent that such consideration is compatible with the objectives of the Company.

CONFIDENTIAL PURSUANT TO AGREEMENT
C 00480