UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

    Plaintiffs – Judgment Creditors,

v.                                                          C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.,

    Defendants – Judgment Debtors.

**PLAINTIFFS – JUDGMENT CREDITORS'
MOTION FOR DECLARATORY JUDGMENT**

Now come the Plaintiffs-Judgment Creditors and hereby move for a judgment declaring that the defendants are not entitled to relief pursuant to Fed.R.Civ.P. 60(b) from the judgment entered in this mater on July 12, 2004.

Plaintiffs-Judgment Creditors' motion is supported by the attached memorandum and exhibits thereto.

                                            Plaintiffs-Judgment Creditors
                                            by their Attorneys,

                                            /s/David J. Strachman
                                            David J. Strachman  #4404
                                            McIntyre, Tate & Lynch LLP
                                            321 South Main Street, Suite 400
                                            Providence, RI 02903
                                            (401) 351-7700
                                            (401) 331-6095 (fax)
                                            djs@mtlhlaw.com

## CERTIFICATION

I hereby certify that on August 10, 2007, I served a true copy of the within via ECF to counsel of record:

Lawrence W. Schilling
Ramsey Clark
37 West 12th Street, 2B
New York, NY 10011

Deming E. Sherman
Annemarie M. Carney
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

James R. Oswald
Adler Pollock & Sheehan P.C.
One Citizens Plaza
8th Floor
Providence, RI 02903

Robert A. Alessi
Tamara L. Schlinger
Cahill Gordon & Reindel LLP
Eighty Pine Street
New York, NY 10005-1702

/s/David J. Strachman

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

    Plaintiffs – Judgment Creditors,

        v.                                              C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.,

    Defendants – Judgment Debtors.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS – JUDGMENT CREDITORS' MOTION FOR DECLARATORY JUDGMENT

### Introduction

This action was filed in March 2000. Judgment entered in favor of plaintiffs and against defendants Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") on July 12, 2004. That judgment was affirmed by the First Circuit, Ungar v. Palestine Liberation Organization, 402 F.3d 274 (1st Cir. 2005), and defendants' petition for a writ of certiorari to the Supreme Court was denied. Palestine Liberation Organization v. Ungar, 546 U.S. 1034 (2005).

This Court found that defendants had intentionally delayed the progress of this action. See Ungar v. Palestinian Authority, 325 F.Supp.2d 15, 26 (D.R.I. 2004) (affirming imposition of sanctions against the PA "for its deliberate actions to delay the completion of this litigation").

The U.S. Secretary of State has advised the defendants that the judgment of this Court "is final and enforceable in United States courts against property or interests owned by the PA, PLO,

or Hamas" and cautioned the defendants "to respond to U.S. legal proceedings in good faith and a timely manner." See Exhibit A.

Secretary Rice also informed the defendants that if they wish to avoid enforcement actions they should come to terms with the plaintiffs, and generously offered the assistance of her legal advisors to facilitate such an effort. Id.

Defendants have disregarded Secretary Rice's sound advice, and instead have continued post-judgment the same contumacious pattern of conduct which marred the underlying proceedings before this Court: they have refused to honor the judgment, refused to comply with post-judgment discovery requests served by the Ungars, and attempted to thwart, frustrate and delay the numerous enforcement proceedings that the plaintiffs have been compelled (at huge expense and effort) to bring.

Defendants have now launched a frivolous new ploy designed to frustrate enforcement of this Court's judgment, which has compelled the Ungars to seek the relief requested in this motion, as explained below:

In June 2005 the Ungars commenced proceedings to domesticate the judgment of this Court in Israel, where defendants have certain assets. True to form, defendants did all in their power to stall and complicate the Israeli domestication proceeding, repeatedly moving for stays (which were denied after lengthy motion practice) and systematically missing deadlines.

The Israeli court eventually held a trial in the domestication proceeding in January-February 2007, and post-trial briefing was completed in June 2007.

The Israeli court is expected to issue a final ruling at any time. If the court rules in favor of the Ungars, they will be entitled to enforce the judgment of this Court immediately against any assets of the defendants in Israel.

Now, in a last-ditch bad-faith maneuver to delay the ruling in the Israeli domestication proceeding, defendants have submitted to the Israeli court an affidavit from an attorney at the firm of Miller & Chevalier in Washington, D.C., claiming that the judgment of this Court is defective, and that the Miller firm intends (at some unidentified time in the future) to appear in Rhode Island to file a motion to vacate the judgment. See Exhibit B.[1]  The Miller affidavit claims that the judgment is subject to vacatur, because this Court purportedly was unaware that the plaintiffs had filed a separate suit against Iran. Id.

On the basis of the Miller affidavit, on August 6, 2007 defendants moved to stay the Israeli domestication proceeding, until this Court rules on the motion to vacate that Miller claims it intends to file at some time in the future. See Exhibit C.

Miller's claims to the Israeli court are blatantly false as a matter of fact. Not only was the Court well aware of the suit against Iran, but defendants repeatedly and expressly argued before this Court – exactly as Miller does now – that if Iran was liable for the murder of the Ungars, then the PA and PLO could not also be liable. See Letter from Nasser Al-Kidwa, January 27, 2003, (Exhibit D) at 2; Letter from Deming E. Sherman, Esq., March 27, 2003 (Exhibit E) at 1; Hearing Transcript, April 1, 2003 (Exhibit F) at 9.

Defendants also raised the identical argument in two (unsuccessful) motions for a stay to the First Circuit, in April 2003 and again in September 2004. See Defendants' Motion Under Rule 8(A)(2) [sic] for a Stay Pending Appeal, April 23, 2003, in Ungar v. Palestinian Authority, #03-1544 (1st Circuit) (Exhibit G) at 11-12; Defendants-Appellants' Motion Under Rule 8(a)(2)

---

[1] Exhibit B is a motion filed by defendants in Israel, to which the English-language Miller affidavit was attached as an exhibit. See Exhibit B at pp. 5-6. Exhibit B consists of the entire motion exactly as filed by defendants, in the following order: (i) Hebrew-language motion itself (ii) Hebrew-language coversheet on the Miller affidavit from the Israeli Embassy where it was sworn (iii) and the English-language Miller affidavit. An English translation of the motion is included in Exhibit C.

for a Stay Pending Appeal, September 30, 2004, in <u>Ungar v. Palestinian Authority</u>, #04-2079 (1st Circuit) (Exhibit H) at 12-13.

Defendants then completely abandoned this argument on appeal, probably in light of the fact that the federal court hearing the suit against Iran had determined that Iran was <u>not</u> liable for the murder of the Ungars since: "The men who killed Yaron and Efrat Ungar received funding and weapons *from other sources* as well as HAMAS . . ." <u>Ungar v. Islamic Republic of Iran</u>, 211 F.Supp.2d 91, 99 (D.D.C. 2002) (emphasis added). This finding by the D.C. federal court directly <u>supports</u> the allegation in the instant action (which the defendants know to be true and were therefore unable and unwilling to defend) that the PA and PLO provided material support and assistance to the Hamas gunmen who murdered the Ungars.

Notably, Miller and the defendants have concealed from the Israeli court both the fact, and the reason, that the Iran case was dismissed. <u>See</u> Exhibits B, C.

Miller's alleged plan to file a motion to vacate is also <u>facially</u> frivolous as a matter of law because an argument raised and abandoned can never serve as the basis for a Rule 60(b) motion. Furthermore, a Rule 60(b)(2) motion (which is the only subsection under which Miller's claim could conceivably be brought) must be made within one year of judgment, and it is well established that a Rule 60(b)(6) motion may not utilized to escape the time restrictions on motions under Rule 60(b)(1)-(3).

Thus, to anyone familiar with the application of Rule 60(b), defendants' planned Rule 60(b) motion is factually and legally meritless on its face.

The problem – and the reason why the relief sought in this motion is urgently required – is that the Israeli judge hearing the domestication proceeding naturally knows nothing about Rule 60(b), and has no independent means of knowing that defendants' planned motion is meritless.

Indeed, the Israeli attorney representing the Ungars in the domestication proceeding, attorney Mordechai Haller, has advised the Ungars that the Israeli court will almost certainly refrain from issuing its final judgment in the domestication proceeding, until defendants' Rule 60(b) arguments are disposed of.

Simply put, the defendants (assisted by Miller) have now stalled the Ungars' enforcement proceedings in Israel – which were brought at great financial expense, have been pending for over two years and are on the verge of final judgment – by falsely representing to the Israeli court that they have valid grounds to vacate the judgment of this Court.

Defendants may be switching counsel, but they clearly have *not* abandoned the bad-faith, dilatory litigation tactics employed by them in this case for the past seven and a half years.

The Ungars should not be forced to wait for months until the defendants (whose new counsel has not even appeared in this case or sought admission in this Court) finally get around to preparing their planned Rule 60(b) motion. Every day that passes without the Ungar children receiving the compensation awarded them by this Court for the murder of their parents is another day of injustice and financial harm.

Unless the Ungars *proactively* seek and obtain a ruling establishing that the defendants are not entitled to Rule 60(b) relief, the long-pending Israeli domestication proceeding will almost certainly remain frozen one yard from the end zone, for many months or longer, which is precisely the defendants' goal.

Accordingly, the Ungars seek a judgment declaring that the defendants are not entitled to relief from this Court's judgment of July 12, 2004.

## **RELEVANT BACKGROUND**

After the instant action was filed, and in the course of further researching the activities of Hamas, plaintiffs obtained information regarding the provision by Iran of various forms of material support to Hamas.[2]

Accordingly, in November 2000 (some six months after the instant action was filed), the Ungars filed suit against Iran in the U.S. District Court for the District of Columbia. Ungar v. Islamic Republic of Iran, No. Civ. 00-2606 (JR) (D.D.C.).[3]

In June 2002, the D.C. federal court denied plaintiffs' motion for default judgment against Iran, holding that the Ungars had failed to prove Iran's liability for the murders, since the terrorist gunmen "received funding and weapons from other sources as well as HAMAS" and it had not been shown that the murderers were acting to further Iran's purposes. Ungar, 211 F.Supp.2d at 99-100.

On January 27, 2003, PA and PLO official, Nasser Al-Kidwa, sent a letter to Magistrate Judge David L. Martin, stating that defendants cannot "understand how plaintiffs can sue the PNA and PLO for this death and at the same time sue the government of Iran in a separate case

---

[2] Iran supports Hamas for its own ideological and political reasons, which are not necessarily identical with the instant defendants' reasons for supporting and cooperating with Hamas. Likewise Syria, which in contrast to Iran is governed by a staunchly secular regime, also supports Hamas for its own purposes. Whatever their respective reasons for supporting and cooperating with Hamas, it is an empirical fact that is a matter of public record (reflected *inter alia* in official publications of the Executive Branch and numerous Congressional resolutions and findings) that Iran, Syria, the PA and the PLO all do so. Indeed, the same cooperation between the instant defendants and Hamas (which resulted in the murder of the Ungars) continued through the first half of 2007, when the PLO and Hamas joined forces in a PA unity government.

[3] The suit against Iran was filed in the District of Columbia federal court because under 28 U.S.C. §1391(f)(4) the District of Columbia is the mandatory venue for such actions. See e.g. Flatow v. Islamic Republic of Iran, 999 F.Supp. 1, 15 n. 6 (D.D.C. 1998) (The District of Columbia is "the dedicated venue for actions against foreign states.").

in Washington, D.C. for the same death claiming Iran is responsible for what HAMAS does." Exhibit D at 2.

On March 27, 2003, defendants' counsel, Deming E. Sherman, Esq., sent a letter to Senior Judge Ronald R. Lagueux discussing the suit against Iran. Exhibit E at 1.

At a hearing on April 1, 2003, defendants' counsel, former United States Attorney General Ramsey Clark, raised the very argument that the defendants have now falsely informed the Israeli court that they will raise for the first time in their planned Rule 60(b) motion:

> [A]s you know, there's a similar case – I say similar, there's a virtually identical case pending in the District of Columbia (inaudible). In that case claiming that Hamas was controlled by Iran for the Ungars, the same plaintiffs, the same factual claims, only there claiming it's Iran and Hamas while here the claim is Palestine and Hamas, and it's not likely that both can be true …

Exhibit E at 9.

Defendants then repeated this argument in an April 23, 2003 motion to the First Circuit. See Exhibit G at 11-12.

In September 2004, after entry of final judgment, defendants raised this same argument once again, in another failed motion to the First Circuit for a stay pending appeal. See Exhibit H at 12-13.

Despite raising this argument in their September 2004 motion to the First Circuit, defendants did not assert it in their appellate papers filed soon thereafter.

Presumably, defendants abandoned this argument on appeal because they realized it was utterly meritless to begin with.[4]

## ARGUMENT

As demonstrated below, the defendants are not entitled to Rule 60(b) relief, for numerous reasons.

### a. A Rule 60(b) Motion Cannot Be Based on an Abandoned Argument

As shown *supra*, defendants explicitly raised before this Court and the Court of Appeals their current argument that the allegations in plaintiffs' suit against Iran necessarily negate defendants' liability for the Ungars' murder. That argument did not persuade this Court. If the defendants felt that the Court erred in respect to this argument, they should have raised it in their appeal to the First Circuit. Since they did not do so, this argument cannot serve as the basis for a Rule 60(b) motion. "It is settled that a 60(b) motion 'cannot be used to avoid the consequences of a party's decision . . . to forego an appeal from an adverse ruling.'" Pierce v. United Mine Workers of America Welfare and Retirement Fund, 770 F.2d 449, 451-452 (6th Cir. 1985) (quoting Steinhoff v. Harris, 698 F.2d 270, 275 (6th Cir. 1983)). See also e.g. Martinez-McBean v. Government of Virgin Islands, 562 F.2d 908 911 (3rd Cir. 1977) ("it is improper to grant relief under Rule 60(b)(6) if the aggrieved party could have reasonably sought the same relief by means of appeal."); Pagan v. American Airlines, Inc., 534 F.2d 990, 992 (1st Cir. 1976) ("Rule 60(b) cannot be used as a substitute for an appeal.").

Thus, as a matter of law, defendants are not entitled to Rule 60(b) relief.

---

[4] Defendants cited the decision of the D.C. court in passing in their petition for a writ of certiorari. See Palestine Liberation Organization v. Ungar, 2005 WL 2708405 (U.S. Oct 17, 2005).

### b.     Defendants Are Time-Barred

Of the six grounds for relief set forth in Rule 60(b), defendants' (fictitious) claim that plaintiffs' action against Iran was concealed from this Court could only be asserted under Rule 60(b)(2).

However, a motion under Rule 60(b)(2) must be made within one year. Fed.R.Civ.P 60(b). Judgment entered in this action over three years ago. Therefore, defendants' argument is obviously time-barred.

Nor can defendants seek relief under Rule 60(b)(6). It is well established that Rule 60(b)(6) and clauses 60(b)(1) through (5) are "mutually exclusive." Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 393 (1993). See also e.g. Blanchard v. Cortes-Molina, 453 F.3d 40 (1st Cir. 2006) (same).

Since defendants' argument in theory could have been brought under Rule 60(b)(2) (assuming it was not otherwise defective, which it is), defendants cannot assert that argument under Rule 60(b)(6).

Furthermore, a Rule 60(b)(6) motion must be made "within a reasonable time." Fed.R.Civ.P 60(b). Since defendants knew all about the suit against Iran even *before* judgment was entered, it is pellucid that the "reasonable time" permitted under Rule 60(b)(6) expired years ago.

Therefore, defendants are time-barred from seeking Rule 60(b) relief.

### c.     As a Matter of Law and Fact, Nothing About the Suit Against Iran Could Possibly Constitute Newly-Discovered Evidence

As shown above, defendants have known all about the Iran suit since at least as early as January 2003 – a year and a half before judgment was entered in this case. The defendants' claim

that they were unaware of the Iran suit, or the arguments and evidence presented therein, is utterly ludicrous.

Not only were the defendants free to examine the pleadings and evidence contained in the publicly available court file in the District of Columbia, or on PACER, but the decision of the D.C. federal court recounts plaintiffs' allegations and evidence in great detail. See Ungar v. Islamic Republic of Iran, 211 F.Supp.2d 91 (D.D.C. 2002), passim.

It is elementary that a Rule 60(b)(2) motion "does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment." Emmanuel v. International Broth. of Teamsters, Local Union No. 25, 426 F.3d 416, 422 (1st Cir. 2005) (emphasis added, quotations omitted).

Defendants were fully aware of the Iran case and decision, and had every opportunity to obtain copies of court file (indeed – they may well have). They are therefore not entitled to relief under Rule 60(b).

Indeed, as a matter of law, information contained in court records can never constitute "newly-discovered evidence" under Rule 60(b)(2). See e.g. Colonial Book Co. v. Amsco School Publications, 48 F.Supp. 794 (S.D.N.Y 1942) (defendant was not entitled to new trial on ground of "newly discovered evidence" disclosing that plaintiff lost a similar case where defendant had knowledge of pending of the other case for some seven months prior to trial of defendant's case.); Chlipala v. A.A. Morrison & Co., 44 F.Supp. 894 (M.D.PA. 1942) aff'd 132 F.2d 320 (3rd Cir. 1942) (defendant was not entitled to a new trial of an action by a husband and wife on the ground of "newly discovered evidence" consisting of a record of a state court in the county where plaintiffs resided showing that plaintiffs had been divorced prior to the date of the

accident resulting in the action, since being a matter of record in the county the evidence could have been discovered prior to trial in the exercise of due diligence.).

### d. Nothing in the Allegations or Evidence in the Iran Suit Derogates from Defendants' Liability

A party is entitled to relief under Rule 60(b)(2) only when the newly discovered evidence "is of such a nature that it would probably change the result were a new trial to be granted." U.S. Steel v. M. DeMatteo Const. Co., 315 F.3d 43, 52 (1st Cir. 2002).

There is no chance that the pleadings or evidence submitted in the Iran suit could change the result of this case, because nothing therein contradicts or detracts one iota from the allegations of the amended complaint in the instant action or from the instant defendants' liability for the murder of the Ungars.

Indeed, defendants' entire argument ignores bedrock principles of joint and several tort liability: the fact that Iran, the PA and PLO all provide material support and resources to Hamas (each for its own reason) does not excuse any of them from liability – as defendants seem to imagine – but rather renders them all liable for terrorist attacks carried out by Hamas, including the murder of the Ungars.

Defendants also ignore the fact that they admitted the allegations of the complaint by their intentional default. To allow a defendant who has admitted its liability to later seek to raise a factual challenge to that liability would be absurd.

Last but not least, defendants ignore the fact that the allegations against Iran were rejected by the D.C., specifically because it found that the terrorist gunmen received weapons and funds from "other sources." Ungar, 211 F.Supp.2d at 99. Those "other sources" included the instant defendants.

### e. Defendants Have No Meritorious Defenses

In order to obtain Rule 60(b) relief, defendants would have to show that they have "a reasonable chance of success on the merits" on some defense. Gonzalez Rucci v. U.S. I.N.S., 405 F.3d 45, 48 (1st Cir. 2005).

Defendants cannot make this showing because they have already litigated and lost every possible defense available to a defendant.

The Miller affidavit and defendants' motion to the Israeli court assert that defendants would be able to litigate their liability if the judgment were vacated. This claim is baseless: the defendants were defaulted for the wholly independent reason that they refused to provide any discovery. Therefore, the facts which plaintiffs sought to prove by that discovery are established as a matter of law, and cannot be contested.

Thus, defendants have neither procedural nor substantive defenses to this case.

### f. Vacating the Judgment Would Cause the Ungars Extreme Harm and Prejudice

Defendants cannot obtain Rule 60(b) relief unless they demonstrate that vacating the judgment will not cause unfair prejudice to" the Ungars. Gonzalez Rucci v. U.S. I.N.S., 405 F.3d 45, 48 (1st Cir. 2005).

Defendants can make no such showing because vacating the judgment and allowing the defendants to begin this litigation over would cause the Ungars <u>extreme</u> prejudice.

*First*, it would condone the defendants' contumacious actions throughout the four and a half years of litigation prior to the entry of final judgment. The several hundred pleadings, dozens of hearings and the entire course of the pre-judgment litigation would be reduced to nothing more than a vicious waste of time which the Ungars suffered for naught.

*Second,* eleven years after the murder, memories fade and documents are lost or destroyed. Indeed, many of the witnesses and much of the evidence sought by the Ungars are now longer available. Mr. Arafat, who directly oversaw defendants' provision of material support and resources to Hamas and whom defendants refused to produce for a deposition, has died. Mr. Dahlan, another key PA/PLO official who was to be deposed, no longer works for the defendants and cannot be compelled to appear. The whereabouts of the other deponents and witnesses is unknown.

Furthermore, even if they wanted to, the PA and PLO cannot produce witnesses or documents located in the Gaza Strip, because as of June 2007 they no longer have any foothold in Gaza.

In short, in light of the amount of time that has passed and the changes in the defendants' own circumstances, it would be impossible for the Ungars to fairly litigate this case today.

*Third*, the Ungars and their counsel have expended literally thousands of hours and hundreds of thousands of dollars over the past three years, first defending the appeal to the First Circuit and later on collection efforts across the United States and overseas, necessitated solely by the defendants' scofflaw refusal to honor the judgment of this Court.

Just to illustrate: the Ungars have paid out over $300,000 in fees and expenses for their New York collections alone. They have instituted proceedings in other jurisdictions as well and have incurred considerable costs in those locales attempting to collect the judgment.

It would be extraordinarily unjust and prejudicial to now wipe away three years of post-judgment efforts and expenses (not to mention the previous 4 1/2 years of litigation).

Therefore, the defendants are not entitled to relief under Rule 60(b).

WHEREFORE the instant motion should be granted.

        Plaintiffs- Judgment Creditors
        by their Attorneys,

        /s/David J. Strachman
        David J. Strachman  #4404
        McIntyre, Tate & Lynch LLP
        321 South Main Street, Suite 400
        Providence, RI 02903
        (401) 351-7700
        (401) 331-6095 (fax)
        djs@mtlhlaw.com

## CERTIFICATION

      I hereby certify that on August 10, 2007, I served a true copy of the within via ECF to counsel of record:

Lawrence W. Schilling
Ramsey Clark
37 West 12th Street, 2B
New York, NY 10011

Deming E. Sherman
Annemarie M. Carney
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

James R. Oswald
Adler Pollock & Sheehan P.C.
One Citizens Plaza
8th Floor
Providence, RI 02903

Robert A. Alessi
Tamara L. Schlinger
Cahill Gordon & Reindel LLP
Eighty Pine Street
New York, NY 10005-1702

        /s/David J. Strachman