UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| THE ESTATE OF YARON UNGAR, et al., | ) |
| Plaintiffs -- Judgment Creditors, | ) |
| v. | ) C.A. No. 00-105L |
| THE PALESTINIAN AUTHORITY, et al., | ) |
| Defendants -- Judgment Debtors. | ) |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT**

**INTRODUCTION**

Plaintiffs seek a declaratory judgment that defendants the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") are not entitled to relief under Federal Rule of Civil Procedure 60(b) from the $116 million default judgment entered against them in 2004. Rather than initiating a declaratory judgment action, as required by the Federal Rules of Civil Procedure, plaintiffs impermissibly attempt to evade the requirement of filing a complaint and issuing a summons -- and the associated pleading requirements -- by seeking this relief through a "Motion for Declaratory Judgment." As set forth in the Argument section, declaratory judgment actions may not be initiated by motion.

Even if plaintiffs' request for relief were not procedurally infirm, it nonetheless must be denied because the relief plaintiffs seek is not ripe for judicial review. Defendants have not sought relief from the default judgment, and plaintiffs can only speculate about the timing and,

more importantly, the basis on which defendants would seek relief. Plaintiffs, for example, devote much of their motion to setting up and then knocking down a straw man argument. Specifically, plaintiffs assume that defendants plan to seek relief under Rule 60(b)(2) and then argue at length why defendants are not entitled to such relief.

Defendants have no intention of seeking relief under Rule 60(b)(2). Defendants do not view the *Ungar v. Iran* issue as "newly discovered evidence," as that term is generally defined. Nor do defendants intend to ignore Rule 60(b)'s requirement that Rule 60(b)(2) motions be brought within one year of the entry of judgment. The plaintiffs' evidence, presented in the litigation in the United States District Court for the District of Columbia in *Ungar v. Iran*, that the Hamas perpetrators of the Ungar shooting turned to Iran for support precisely because they disagreed with the PLO's decision to recognize Israel as a state and wished to disrupt the Israeli-PLO peace process, *see Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 94 (D.D.C. 2002), is relevant to the merit of the PA/PLO defense on the issue of liability in the Rhode Island litigation, not to a Rule 60(b)(2) argument. *See United States v. Kasyer-Roth Corp.*, 272 F. 3d 89, 95 (1st Cir. 2001) (Although a Rule 60(b) movant "need not show an ironclad claim or defense which will guarantee success at trial, it must at least demonstrate that it possesses a potentially meritorious claim or defense which, if proven, will bring success in its wake") (internal quotation and citation omitted); *Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir. 1992) ( "a litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise").

We raise these issues not to engage in premature briefing of the merits of a Rule 60(b) motion but rather to highlight the pitfalls of advisory opinions.[1] The court cannot finally adjudicate defendants' right to Rule 60(b) relief without knowing the particular grounds and factual basis on which defendants will in fact seek such relief. The Declaratory Judgment Act does not authorize courts to issue judgments denying defendants relief they have not yet sought, particularly where that denial is based on hypothetical grounds posed by plaintiffs rather than the actual basis for relief.

The court can rule on defendants' request for Rule 60(b) relief only when the motion is before it and the basis for the motion is no longer the subject of pure speculation. Otherwise the court is placed in the untenable position of ruling on a hypothetical motion, only to have to rule again when the actual motion, relying on different facts and bases, is filed. Defendants also cannot identity any examples in which declaratory relief has been granted to anticipatorily deny another party Rule 60(b) relief. In that regard, we note that plaintiffs' motion, though long on hyperbole and accusation, is short on legal support for their unusual request for relief.

## FACTUAL AND PROCEDURAL BACKGROUND

This declaratory judgment "motion" apparently was prompted by the PA/PLO's August 6, 2007, filing of a Motion to Postpone Entry of Judgment in the Jerusalem District Court. In that motion, Israeli counsel for the PA/PLO asked the court to postpone ruling on the domestication of this Court's $116 million default judgment against the PA/PLO. As support for

---

[1] Consistent with our view that the PA/PLO's entitlement to Rule 60(b) relief is not ripe for judicial review, defendants intentionally decline to respond to plaintiffs' arguments on the merits of the not-as-yet filed Rule 60(b) motion. The PA/PLO will not be drawn into addressing plaintiffs' arguments on the merits of the Rule 60(b) motion -- arguments that are based on the imagined rather than actual grounds for seeking relief -- lest the Court be left with the impression that the Rule 60(b) issues have been fully briefed.

their motion, the PA/PLO submitted the affidavit of the PA/PLO's new U.S. litigation counsel, Miller & Chevalier, which stated the PA/PLO's present intent to challenge this Court's default judgment. *See* Exh. B to Plaintiffs' Motion [Doc. No. 391-3]. The affidavit was prepared just a few days after the PA/PLO filed its July 31, 2007, Motion for Relief from Judgment in *Knox v. Palestine Liberation Organization*, No. 03 CV 4466 (VM), in the U.S. District Court for the Southern District of New York. In *Knox*, the PA/PLO seek relief from a nearly $193 million default judgment.

According to plaintiffs, "defendants (assisted by Miller) have now stalled the Ungars' enforcement proceedings in Israel . . . by falsely representing to the Israeli court that they have valid grounds to vacate the judgment of this Court." Memorandum in Support of Plaintiffs-Judgment Creditors' Motion for Declaratory Judgment at 7. In fact, the affidavit candidly states: "It is difficult to assess the likelihood of success on the motion as we cannot assess what position, if any, the United States Department of State will take on the Motion, though we are undertaking efforts to gain Department of State support." Exh. B to Plaintiffs' Motion [Doc. No. 391-3] at 5. The affidavit also acknowledges that it could take "several months" for the Court to rule on defendants' motion to vacate after it is filed. *Id.* at 6. Moreover, because the Jerusalem District Court has not ruled on the PA/PLO's Motion to Postpone Entry of Judgment, the enforcement proceedings there are not "stalled." The court in Israel may or may not be considering the PA/PLO's motion to postpone. Thus, the injury for which plaintiffs seek redress -- an Israeli court's grant of an indefinite stay of the enforcement proceeding -- has not occurred.

Plaintiffs' primary point of contention with the court filing in Israel likely is that the English translation of the Hebrew motion filed by Israeli counsel (not the Miller & Chevalier

4

affidavit) states: "the main ground for vacating the judgment is the fact that the plaintiffs in the United States concealed from the court that entered the judgment (in Rhode Island) that in parallel they conducted a suit (in a court in Washington) regarding the same incident against Iran . . . ." Exh. C to Plaintiff's Motion [Doc. No. 391-4] at 3. Defendants agree that this statement is inaccurate. Whether the product of a translation problem, misunderstanding, or miscommunication, the undersigned believes the statement was unintentionally made in error. The Miller & Chevalier affidavit, which the motion attempts to summarize, does not describe the *Ungar v. Iran* issues as a "main ground" for seeking relief from the default judgment and it does not allege that plaintiffs concealed the *Ungar v. Iran* case from the Court or even that the Court was unaware of the existence of the case. Because the PA/PLO has no wish to misinform the Israeli court, on August 26, 2007, Israeli counsel filed a Supplementary Notice with the Jerusalem District Court. A certified English language version of the filing is attached as Exhibit A.

In addition to providing the court a copy of the Plaintiffs' Motion for Declaratory Judgment, the Notice states:

> The undersigned would like to take this opportunity to clarify that, in the motion to postpone the issue of the judgment, it was argued, *inter alia*, that the plaintiffs in the United States have concealed from the Court in Rhode Island the fact that there is a parallel action against Iran taking place in the Court in Washington in respect of the same event (in section 3 of the motion). However, in the affidavit that was attached to the motion, <u>no such argument was set forth</u>, and it appears that an error was made when translating the affidavit. At this point in time, the undersigned does not know if, when and how the plaintiffs in the United States will inform the Court in Rhode Island about their parallel claim.

Exh. A at ¶ 8 (emphasis in original). In addition, the Supplementary Notice clarifies that the *Ungar v. Iran* issue is not the "main ground" for relief from the judgment. *See id.* at ¶ 7 ("as

5

stated in the motion and the deposition [*i.e.*, affidavit]**,** there are additional causes on which the motion is expected to be based, in addition to said claim against Iran").

If plaintiffs continue to believe that defendants are attempting to secure a stay of the Israeli enforcement proceeding through "bad faith" or "false[] representations," they should take the issue up with the Jerusalem District Court.  The merits of the PA/PLO's motion to postpone entry of judgment should be litigated before the Israeli court, not here.  *See* 28 U.S.C. § 2201(a) (empowering courts to provide declaratory relief only "[i]n a case of actual controversy within its jurisdiction").

In fact, plaintiffs have requested from the Jerusalem District Court an extension of time to file their opposition to the PA/PLO's Motion to Postpone Entry of Judgment so that they may have time to provide an expert opinion from an expert on American law.  *See* Exhibit B (plaintiffs' Motion for Extension).  The Jerusalem District Court thus has before it plaintiffs' Motion for Declaratory Judgment filed in this Court and soon will have before it additional briefing from the plaintiffs on the merits of the PA/PLO's Rule 60(b) motion.  There is no risk, therefore, that the court in Israel will stay the enforcement proceedings without hearing the plaintiffs' arguments on the likelihood that this Court would grant such a motion.  The Jerusalem District Court can then decide for itself whether a stay of the enforcement proceeding is appropriate.

## ARGUMENT

I. **PLAINTIFFS' MOTION MUST BE DENIED BECAUSE IT VIOLATES THE RULES OF CIVIL PROCEDURE GOVERNING DECLARATORY JUDGMENTS.**

Plaintiffs may not seek declaratory relief by motion.  Declaratory relief is a remedy created by the Declaratory Judgment Act, which provides in pertinent part:

6

> In a case of actual controversy within its jurisdiction, any court of the United States, *upon the filing of an appropriate pleading*, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis added).  Under Federal Rule of Civil Procedure 57, "[t]he procedure for obtaining a declaratory judgment pursuant to Title 28, U.S.C. § 2201, shall be *in accordance with these rules*," *i.e.*, the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 57 (emphasis added).  Federal Rule of Civil Procedure 7(a) defines a "pleading" as a complaint, an answer, a reply, a third-party complaint, and a third-party answer.  *See* Fed. R. Civ. P. 7(a).  A motion is not a pleading under the Federal Rules of Civil Procedure. *See id.*  A request for declaratory relief may not, therefore, be made by motion.

According to the leading treatises on civil procedure, Section 2201's requirement that a declaratory judgment be sought through an "appropriate pleading," read together with Rule 57's "in accordance with these rules" language, requires plaintiffs to commence a declaratory judgment action as they would any other civil action, namely "by filing a complaint with the clerk and the issuance of a summons by the clerk, as provided in Rules 3 and 4."  10B Charles A. Wright *et al.*, FEDERAL PRACTICE AND PROCEDURE § 2768 (1998).  *Accord* 12 MOORE'S FEDERAL PRACTICE 3d § 57.60 (2007) ("[t]herefore, like other civil actions, a declaratory judgment is ordinarily sought by filing a complaint or petition rather than by motion . . . ." 12 MOORE'S FEDERAL PRACTICE 3d § 57.60 (2007).

In *Fusco v. Rome Cable Corp.*, 859 F. Supp. 624, 628 (N.D.N.Y. 1994), the court explained, "[o]n its face, . . . Rule 57 does not provide a basis for making a motion; it just acknowledges the availability of declaratory judgment as a remedy.  Nor does section 2201 provide an independent basis for making a motion; it simply creates the remedy of declaratory relief."  Thus, plaintiffs seeking a declaratory judgment cannot do so by motion but must instead

initiate a declaratory judgment action by filing a complaint (or by asserting it as claim for relief in an amended complaint).

Addressing the impropriety of a motion for declaratory judgment, one district court observed, "where the Federal Rules of Civil Procedure specifically address a subject, a litigant is not free to disregard the requirements that the Rules impose." *International Brotherhood of Teamsters v. Eastern Conference of Teamsters*, 160 F.R.D. 452, 455 (S.D.N.Y. 1995). Here, "the Federal Rules have established a procedure for a litigant who seeks such a declaration: an action for a declaratory judgment pursuant to Rule 57." *Id.* The court's admonition to the *International Brotherhood* plaintiffs applies with equal force here: "Because plaintiffs seek a declaratory judgment, and because Rule 57 governs an action for a declaratory judgment, plaintiffs must comply with Rule 57's requirements." *Id.* As the court further observed, "[b]ecause an action for a declaratory judgment is an ordinary civil action, a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment." *Id.* at 456.

Similarly, in *Barmat, Inc. v. United States*, 159 F.R.D. 578, 582 (N.D. Ga. 1994), the district court denied plaintiff's motion for declaratory judgment, after noting that the "procedural posture of this case does not clearly lend itself to declaratory relief" and reciting the black-letter law proposition that "declaratory judgments are sought by petition or complaint, rather than by motion." *See also OAIC Commercial Assets, LLC v. Stonegate Village, L.P.*, 2006 U.S. Dist. LEXIS 70734, *9 (D. Ariz. Sept. 20, 2006) (denying motion for declaratory judgment because "a request for declaratory relief may not be made by 'motion'"); *United States v. Outboard Marine Corp.*, 1998 Ct. Int'l. Trade LEXIS 115, *7-8 (Ct. Int'l Trade Aug. 14, 1998) (because defendants had not filed a counterclaim seeking declaratory relief, "this remedy is unavailable

and a motion seeking such relief is not appropriate"). In those rare few instances in which the U.S. District Court for the District of Rhode Island has adjudicated motions for declaratory judgment, the motion was filed only after the plaintiff properly had initiated a declaratory judgment action. *See State of Rhode Island v. Narragansett Tribe of Indians*, 816 F. Supp. 796 (D.R.I. 1993), aff'd by, modified by, 19 F.3d 685 (1st Cir. 1994); *Women's Medical Center of Providence, Inc. v. Cannon*, 463 F. Supp. 531 (D.R.I. 1978).

In sum, plaintiffs are attempting to obtain relief that is not available by motion but must instead be sought by initiating a declaratory judgment action. Plaintiffs' motion must be denied as procedurally defective. But, even setting aside the procedural infirmities and assuming for the sake of argument that plaintiffs had properly initiated a declaratory judgment action, such action would have to be dismissed for lack of ripeness.

## II. PLAINTIFFS' REQUEST FOR DECLARATORY RELIEF MUST BE DENIED UNDER THE RIPENESS DOCTRINE.

### A. The Ripeness Doctrine Applies to Declaratory Judgment Actions.

Declaratory relief is available "[i]n a case of actual controversy within [the court's] jurisdiction." 28 U.S.C. 2201(a). The meaning of "actual controversy" for the purposes of the Declaratory Judgment Act is identical to the meaning of "case or controversy" for purposes of Article III. *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997); *see also MedImmune, Inc. v Genentech, Inc.*, 127 S. Ct. 764, 771 (2007) ("the phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III"). Because Article III's "case or controversy" requirement applies with as much force to declaratory judgment actions as it does to suits seeking money damages or injunctive relief, the Declaratory Judgment Act does not provide an exception to the general prohibition against federal courts issuing advisory opinions. As the First Circuit observed in *Ernst & Young v. Depositors*

9

*Economic Protection Corp.*, 45 F.3d 530, 538 (1st Cir. 1995), the courts' hesitancy to answer hypothetical questions "does not evaporate merely because a suit is couched as a plea for declaratory relief." By asking the court to reject arguments posed in a hypothetical motion, the plaintiffs run afoul of the prohibition against federal courts providing advisory opinions.

In evaluating whether declaratory relief is appropriate in a given action, "one critical consideration is whether the cause of action is ripe for judicial review." *Operation Clean Government v. Rhode Island Ethics Commission*, 315 F. Supp. 2d 187, 194 (D.R.I. 2004) (Lagueux, J.). If the declaratory judgment action is unripe for judicial review, "there is no alternative but to dismiss the case." *Id.* As this Court has noted, the Declaratory Judgment Act is not "intended to alleviate the requirement that there exist an *actual* case or controversy as prescribed by the ripeness doctrine." *Pardee v. Consumer Portfolio Services, Inc.*, 344 F. Supp. 2d 823, 835 (D.R.I. 2004) (Lagueux, J.) (emphasis in original). *See also* 12 MOORE'S FEDERAL PRACTICE 3d § 57.60 (a complaint for declaratory relief must allege "[f]acts demonstrating the existence of an actual controversy, including facts showing standing and ripeness") (internal cross-references omitted).

In determining whether a particular declaratory judgment claim is ripe for judicial review, courts examine (1) the fitness of the issues for judicial determination, and (2) the hardship to the parties of withholding court consideration. *Pardee*, 344 F. Supp. 2d at 835. The party seeking declaratory relief bears the burden of adducing facts sufficient to show that both prongs of the ripeness test are met. *Rhode Island Ass'n of Realtors, Inc v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999); *Ernst & Young*, 45 F.3d at 535. Though they must meet *both* prongs of the ripeness test to proceed with their supposed declaratory judgment action, plaintiffs have not met either prong.

B.  Plaintiffs Have Not Met the Fitness Prong.

In the First Circuit, the "critical consideration" in determining whether a claim meets the "fitness" prong is the extent to which "'the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all.'" *Operation Clean Government*, 315 F. Supp. 2d at 195; *Ernst & Young*, 45 F.3d at 536 (quoting *Massachusetts Ass'n of Afro-American Police, Inc. v. Boston Police Dep't*, 973 F.2d 18, 20 (1st Cir. 1992)).  The fitness prong serves to prevent courts from "spend[ing] their scarce resources in what amounts to shadow boxing." *Ernst & Young*, 45 F.3d at 537.  Thus, if a plaintiff's claim, even though predominantly legal in character, "depends upon future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe." *Id.*

Here, the court is being asked to rule on a motion that has not been filed, reject arguments that have not been made, all to avoid a supposed injury (a *possible* stay of the Israeli court enforcement proceedings) that has not yet occurred and indeed may never occur.  Clearly, there are far too many "uncertain and contingent events that may not occur as anticipated or may not occur at all" to deem the matter ripe for adjudication. *See Operation Clean Government*, 315 F. Supp. 2d at 195.  To the extent plaintiffs are relying on anticipated injury flowing from the Jerusalem District Court's stay of the enforcement proceedings to establish the existence of an actual controversy, they should take those issues up with the court in Israel.  There is no actual controversy before this Court that is ripe for judicial review.

C.  Plaintiffs Have Not Met the Hardship Prong.

The hardship prong of the ripeness inquiry is concerned with the hardship to the parties that would result from a refusal to consider granting relief. *State of Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 693 (1st Cir. 1994).  The hardship inquiry asks

"whether granting relief would serve a useful purpose, or, put another way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest." *Id.* See also *MedImmune*, 127 S. Ct. at 771 (summarizing the Supreme Court's ripeness jurisprudence as requiring that a declaratory judgment action "admit of specific relief through a decree of a conclusive character"). The hardship inquiry also "'encompasses the question of whether plaintiff is suffering any *present injury* from a future contemplated event.'" *Operation Clean Government*, 315 F. Supp. 2d at 196 (quoting *McInnis-Misenor v. Maine Medical Center*, 319 F.3d 63, 70 (1st Cir. 2003)) (emphasis added).

Here, a ruling on the plaintiffs' Motion for Declaratory Judgment will not "set the underlying controversy to rest" nor will it provide "specific relief through a decree of conclusive character" because the court only can respond to arguments plaintiffs assume defendants will make rather than to the actual grounds on which the defendants will move. If the court forbids defendants from filing any Rule 60(b) motion based on plaintiffs' speculation about what defendants will argue and without benefit of defendants' actual arguments, then the ruling will be, at best, entirely advisory and will not even be capable of having the preclusive effect plaintiffs apparently seek.

With regard to whether plaintiffs are suffering any "present injury from a future contemplated event," they have not alleged such an injury. Plaintiffs are not at present injured by the *possibility* of the Israeli court staying the enforcement proceedings. Indeed, even if the Jerusalem District Court, after reviewing the briefing of both parties on the Rule 60(b) issue, nonetheless decides to issue a stay of the enforcement proceeding, plaintiffs still will not have suffered any legally cognizable injury.

\* \* \*

Defendants intend to file a motion for relief from the default judgment, and they intend to do so in the near future. The merits of that motion should be addressed after, not before, the motion is pending before the court. However, in light of the plaintiffs' instant motion seeking a declaratory judgment to preclude the filing of such a motion, the defendants will await a ruling on plaintiffs' motion before filing.

## CONCLUSION

Plaintiffs' motion for declaratory judgment must be denied because it is procedurally defective and raises issues not ripe for judicial review.

Respectfully submitted,

　　/s/ Deming E. Sherman_____
Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903
Phone:  (401) 276-6443
Fax:  (401) 276-6611
DSherman@eapdlaw.com

Richard A. Hibey (pro hac vice pending)
Mark J. Rochon (pro hac vice pending)
Miller & Chevalier Chartered
655 15th Street, N.W., Suite 900
Washington, D.C. 20005
Phone:  (202) 626-5800
Fax:  (202) 626-5801

*Counsel for Defendants the
Palestinian Authority and
Palestine Liberation Organization*

CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2007, I served a true copy of the foregoing via ECF to the following counsel of record:

David J. Strachman
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903

James R. Oswald
Adler Pollock & Sheehan P.C.
One Citizens Plaza
8th Floor
Providence, RI 02903

Robert A. Alessi
Tamara L. Schlinger
Cahill Gordon & Reindel LLP
Eighty Pine Street
New York, NY 10005-1702

Lawrence W. Schilling
Ramsey Clark
37 West 12th Street, 2B
New York, NY 10011

　　　　　　　　　　　　　　　　　　　　  /s/ Deming E. Sherman