1          UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF RHODE ISLAND

3

4

5    +++++++++++++++++++++++++++

6    EFRAT UNGAR              CA No. 00-105 L

7

8      v              PROVIDENCE, RI
                       1 APRIL 2003
9

10   THE PALESTINIAN LIBERATION
     ORGANIZATION
11
     +++++++++++++++++++++++++++++
12

13
           BEFORE MAGISTRATE JUDGE DAVID L. MARTIN
14

15
     APPEARANCES:
16

17   FOR THE PLAINTIFF:        DAVID J. STRACHMAN, ESQ.
                       321 S. Main St
18                      Providence, RI 02903
                       351-7700
19

20   FOR THE DEFENDANT:        RAMSEY CLARK, ESQ.
                       LARRY W. SCHILLING, ESQ.
21                     36 East 12th St.
                       New York, NY 10003
22                      1-212-475-3232

23

24
25

2

1  1 APRIL 2003

2       THE COURT:  This is the matter of the estate

3  of Yaron Ungar, et al vs the Palestinian Authority, et

4  al, Civil Action 00-105 L.  Before the Court is the

5  plaintiff's motion to enter default against defendants

6  Palestinian Authority and PLO.  The attorneys will

7  identify themselves.

8       MR. STRACHMAN:  David Strachman for the

9  plaintiffs.

10       MR. CLARK:  Ramsey Clark for the defendants.

11  With me is Larry Schilling.

12       THE COURT:  I have also had referred to me

13  the Palestinian defendant's motion for a protective

14  order, and I have received the plaintiff's objection to

15  Palestinian defendant's motion for a protective order.

16  I'll first hear argument on the motion then for default

17  against the defendants Palestinian Authority and PLO,

18  and at that point I will assess what we need to do

19  about the other motion.

20       Mr. Strachman, I'll hear you on the motion

21  for entry of default.

22      MR. STRACHMAN:  Thank you.  Your Honor, just

23  as a preliminary matter, I wasn't aware that the second

24  motion was referred to your Honor for hearing today.

25      THE COURT:  Well, it's not scheduled for

3

1  hearing.

2      MR. STRACHMAN:  Okay.

3      THE COURT:  And it was referred to me on

4  March 27th and notice has not been sent to counsel of

5  the pendency of that motion, and if counsel are not

6  prepared -- it's not before me.  I just note -- I've

7  had it referred to me, and when I saw it and I looked

8  at the present motion that was scheduled for today's

9  hearing, I thought there may be an interrelationship

10  between the two that one may have an affect on the

11  other, at least this motion may affect the motion for

12  protective order.  I'll hear you on what's scheduled

13  for today, which is the motion to enter default.

14      MR. STRACHMAN:  Thank you, your Honor.  If

15  your Honor please, this matter has a long history.  It

16  is now past the 3 year anniversary of this case.

17      On November 4, this past year, Judge Lagueux

18  rendered a very lengthy and detailed decision on the

19  defendant's motion to amend -- excuse me, motion to

20  dismiss the amended complaint.  Very simply, pursuant

21  to Rule 12(a)(4)(A), the defendants have 10 days to

22  file an answer, l0 days from November 4, 2002.  And

23  just some sort of very simple side history, the Court

24  had a conference with counsel telephonically on 12/2.

25  We had a hearing on 12/12 before your Honor concerning

4

1  discovery issues.  At the 12/2 -- excuse me, the 12/12

2  hearing, your Honor made it very clear that a stay that

3  had entered previously was not applicable now that

4  Judge Lagueux had rendered his decision on November

5  4th.  Your Honor followed that up with a letter to

6  counsel, and this case has proceeded in the sense that

7  a series of motions have been filed concerning

8  discovery, and defendant's counsel and I worked out

9  over the course of a month the exact language of a

10  discovery order following your Honor's ruling.  We find

11  ourselves now 145 days after the answer was due, and we

12  still have no answer, and it's -- there's just no

13  excuse for not filing an answer.  We're entitled to it

14  under the rules.  The defendants have had the amended

15  complaint for 20 months.  So for 20 months, because it

16  was filed August of 2001, they had 20 months to prepare

17  an answer.  Defendants indicate, I believe somewhat

18  brazenly to this Court, on Page 2 of their objection in

19  the memorandum in support of their objection, they

20  indicate that they "had the abil -- that drafting and

21  filing an answer is within defendant's limited

22  capabilities although inadvisable."  So they've

23  admitted to the Court they have the capacity, which I

24  don't think anyone could really plausibly question, to

25  begin with, and we have no answer.  We have no answer.

5

1  We have no way of knowing what their defenses are,

2  factual, legal or otherwise, other than the defenses

3  that were rejected now twice in a motion to dismiss the

4  complaint and in a motion to dismiss the amended

5  complaint.  We have an order of discovery which has not

6  been complied with and is the subject of other motions

7  but clearly contemplates that the case is finally going

8  to get moving and move along a specific track already

9  ordered by your Honor in terms of discovery,

10  interrogatories and depositions, and we find ourselves

11  without an answer even as yesterday's first deposition

12  was suppose to go forward, after 4 and a half months

13  since the rules require an answer to be filed.

14  Thank you.

15      THE COURT:  Thank you, Mr. Strachman.

16  Mr. Clark.

17      MR. CLARK:  Thank you, sir.  Good afternoon,

18  Judge.

19      THE COURT:  Good afternoon.

20      MR. CLARK:  This is, as our presence

21  attests, in both the matter to the defendants and the

22  Palestinian people (inaudible).

23      The defendants have been anxious, and I

24  think it's been apparent in getting to have a full and

25  final determination and review of their motion to

6

1  dismiss, which they think is meritorious.  They have a

2  motion for reconsideration pending to Judge Lagueux's

3  order of November 5, all the time that we've been

4  talking about, without knowing that we'll be held to

5  answer in this court.  My instructions have been do not

6   answer, do not take any steps that would replace us

7   here, and we have anxiously awaited the decision on

8   motion for reconsideration.  I think in this connection

9   the Papandreo case which we cited to you from the

10  District of Columbia, Court of Appeals -- United States

11  Court of Appeals for the District of Columbia, they

12  have two other courts there, which observed that the

13  importance of determining immunity applies not only to

14  what you're held in court but to all of the burdens of

15  litigation, and it observes that proposed burdens of

16  litigation before that issue is determined can

17  compromise the rights and well-being of the defendant,

18  and that's why the Court of Appeals granted a Writ of

19  Mandamus in that case, prevent the case from going

20  forward.

21          We've now, of course, had a, I guess it's an

22  order, from Judge Lagueux, on the 27th of, which is now

23  last month, March, setting the hearing not only on the

24  motion for reconsideration but on the other motion

25  we're talking about, the motion for default and the

7

1   motion for protective order on discovery.  So it would

2  seriously prejudice the rights of the accused here -- I

3  practice too much criminal law -- to be forced to

4  answer and proceed until their status is clear.  I

5  don't want to argue the merits of the jurisdiction, but

6  I will observe that there has been steady development

7  in the legal status of Palestine.

8       You'll note that (inaudible) doesn't refer

9  anymore to the permanent representative of the PLO, now

10  refers to, this is by vote of the United Nations, the

11  Permanent Representative from Palestine.  President

12  Bush has just recently as two weeks ago described his

13  intense interest in a statement in the Rose Garden, in

14  proceeding as quickly as possible, not only with the

15  peace process but with the full recognition of the

16  government of Palestine.  You know, (inaudible) because

17  a great majority of the members of the United Nations

18  have recognized Palestine, their Embassies.  So the

19  point is that since the Achille Laura and other cases,

20  you have entirely different legal factual status, and

21  we're anxious for Judge Lagueux to reconsider and

22  review his decision on that basis, and we're anxious

23  that the prejudice, irrevocable injury that can flow

24  from trying to get into depositions, that it not occur

25  prematurely.

8

1       THE COURT:  Mr. Clark, let me interrupt you

2  with a question.  If Judge Lagueux denies your motion

3  for reconsideration, would your client then file an

4  answer at that point, or would your client continue

5  with the position, that I gather from your filings your

6  client takes, which is they are immune from suit, and

7  that they ought to have, if Judge Lagueux won't

8  reconsider his ruling, then they will continue with

9  their present course of action and seek review

10  ultimately by the First Circuit?

11       MR. CLARK:  I hope the answer is clear, but

12  I will make it as clear as I can.  The desire to

13  (inaudible) is set forth in Papandreo to have those

14  issues determined before proceeding to answer and all

15  of the discovery and other matters that follow, and

16  burdens of litigation, as they call it, is ripe, and we

17  will seek, we don't know what Judge Lagueux's

18  disposition will be now, but we would seek an opinion

19  from that ruling and process it as quickly as we could.

20       THE COURT:  Thank you for answering.

21       MR. CLARK:  Now the other consideration is

22  existing conditions which make proceeding essentially

23  impossible.  I went to Rhamalla in mid December, the

24  15th and 16th, maybe the 16th and 17th of December, and

25  met with the leadership, including President Arafat.

9

1  This was the only business that I had, this case, and

2  several cases, but this is the what we call the lead

3  case.  I say that even though there's, as you know,

4  there's a similar case -- I say similar, there's a

5  virtually identical case pending in the District of

6  Columbia (inaudible).  In that case claiming that Hamas

7  was controlled by Iran for the Ungars, the same

8  plaintiffs, the same factual claims, only there

9  claiming it's Iran and Hamas while here the claim is

10  Palestine and Hamas, and it's not likely that both can

11  be true, but can observe that there Judge Robertson has

12  refused.  There's no appearance there.  Iran has

13  failed, if not refused, to appear in a number of cases

14  like that.  There have been default judgments up in the

15  billions of dollars entered against it.  So, but the

16  conditions, to get in to see the leadership of the PLO,

17  knowing the government's situation there for some time,

18  of all the government buildings that I've ever been in,

19  in Gaza are destroyed, and and quite often there are

20  tanks out there.  Records destroyed.  And in many

21  cases, the headquarters to the Palestinian National

22  Guard image, or even in existence during the

23  (inaudible), is rubble.  I've (inaudible) break my neck

24  climbing over literally rubble of (inaudible) to get in

25  there.  The president has been essentially a prisoner

10

1  there, Mr. Arafat, since sometime last March, a year

2  ago, March of 2002.  He has not been out.  (Inaudible).

3  But that's been his way to try to keep his people

4  alive.

5          So the ability -- we were generous when we

6  said that with the resources and the opportunities

7  available, we can probably file an answer, but the fact

8  is that to file an answer would cross the line, it

9  would be (inaudible) unnecessary, creates an appearance

10  that we hope will prove to be fallacious.  We have a

11  duty under the U.S. law to respond, and then the next

12  day we'd file such an answer.  We'd be immediately

13  confronted with an impossibility.  Observed it

14  yesterday, President Araft, (inaudible) testify here in

15  Rhode Island, before a notary public yesterday.

16  (Inaudible).  He didn't come here.  A default would be

17  based on that theory.  So when you're starting down a

18  road, you can only create political usage in the media,

19  appearances that may prove to be misleading, if not

20  will be harmful under any circumstances, and then

21  (inaudible) very tough over there.  Six people killed

22  in Bethlehem a couple of days ago, 3 in one little

23  family.  American killed by a bulldozer in Gaza last

24  week.  So we really -- I (inaudible) when it's

25  impossible to defend because of circumstances beyond

11

1  our control.  So going forward at this time, I think,

2  would be -- may be terribly unfair.  I think it would

3  be contrary at least to the decision in Papandreo where

4  a district judge decided to go ahead and was

5  (inaudible) that it would deny due process.  It would

6  make absolutely no progress.  We'd be confronted with

7  the same problems the next day.  So all of (inaudible),

8  which can't go forward.  Can't give discovery.  That's

9  why I was pressing to suggest this other motion, as you

10  mentioned, might be discussed today, could be relevant

11  on this issue.  It certainly is.

12          There's also a question, we don't know,

13  (inaudible) it would seem that it would be improvident,

14  improvident in Providence, to proceed when Judge

15  Lagueux has just announced an intention to consider all

16  these motions.  So I would urge, as strong as I can,

17  that the Court defer.  If the Judge says go ahead,

18  there would be no need for another argument, as far as

19  I can tell on this motion.  (Inaudible)

20          THE COURT:  I'm sorry, if the Judge says go

21  ahead and what, Mr. Clark?

22          MR. CLARK:  If he said after the hearing on

23  the 11th, did he decide, could he say he's going to

24  consider all of these motions, four or five, we assume

25  that you have seen his or her motion, his record

                          12

1  (inaudible).

2          THE COURT:  I'm aware that he has scheduled

3  a hearing on several motions for, I believe, April 13th

4  or thereabouts.  Is it the 11th?

5          MR. CLARK:  The 11th.

6          THE COURT:  And among the motions that he's

7  scheduled a hearing on is your motion for

8  reconsideration.  I'm aware of that, Mr. Clark.

9       MR. CLARK:  Yes.  Also two motions to

10  dismiss, which would therefore (inaudible).

11      THE COURT:  All right.  You're suggesting to

12  me that if he rules favorably on the motion for

13  reconsideration, then that would have an impact on the

14  motion for entry of default here.

15      MR. CLARK:  Well, what I'm concerned is,

16  he's considering all of them.  That's what I'm saying,

17  he's considering all of them.  He would -- I would

18  (inaudible) naturally, whatever he decides on

19  reconsideration.  If he decides no reconsideration, he

20  decides whether -- the last time, you know, he refused

21  a stay pending appeal, and discussed the problem of

22  certification, the issue of certification.  It was not

23  clear exactly to me what was intended here, but

24  presumably he would say what he thinks should be done

25  with all of these matters.  He already referred this

13

1  issue to you, your Honor, but that was before the

2  letter of March 27th, which notified all of us that he

3  was going to hear all of these matters on the 11th.  So

4    if he wants to hear all these matters on the 11th, you

5    could take this under advisement, or however you want

6    to do, see what he says on the 11th and then proceed if

7    that's what's indicated.  To proceed before that I

8    think might be improvident.

9        THE COURT:  All right, Mr. Clark.  Thank

10   you.

11       MR. STRACHMAN:  May I briefly respond?

12       THE COURT:  Yes, Mr. Strachman.

13       MR. STRACHMAN:  Thank you.  First in terms

14   of the scheduling, your Honor, as I indicated in the

15   letter Friday, this motion was scheduled and referred

16   to your Honor by Judge Lagueux while all of the other

17   motions were pending before the Court.  So he referred

18   this matter, with the docket entry, for all of the

19   other motions having already been made, (inaudible)

20   until the motions were pending.

21       Second, your Honor, it's even respectfully

22   more brazen now to say that the defendants cannot file

23   an answer after having met with counsel in December,

24   and I'm sort of shocked to hear that counsel would meet

25   with the clients, and as Mr. Clark said, primarily on

14

1    this case.  That's what primarily (inaudible) to meet

2    with his clients, and then wait 4 and a half months,

3    not file an answer, not ask this Court for additional

4    time, not send a letter or request or stipulation

5    amongst the parties, never having discussion with the

6    Court or counsel about extending the time.

7            And in response to your Honor's, I think,

8    questions, really gets to the exact nub of the issue,

9    and that is, if the motion for reconsideration is

10   denied, are you going to file an answer?  Mr. Clark

11   essentially says no.  That means this case is even more

12   so than when we wrote our initial memo within the

13   Conetta case, and that involves a wilful determination

14   of not filing an answer, and now we see it even more so

15   flushed out before the Court.

16           Also as has been made clear in many cases,

17   as been made clear by your Honor in the discovery

18   matter, the mere filing of a motion to reconsider a,

19   for reconsideration, does not stay the whole case.  You

20   can't file a motion for reconsideration and then get

21   out of, sort of get out of jail free pass, from all the

22   rules of civil procedure, and frankly because each and

23   every motion has an order of this case, there's been a

24  motion to reconsider, we're litigating the litigation

25  in this case, I would fully expect that we would have

15

1  many more such motions down the road.  That doesn't

2  stop the rules of procedure from operating.  That

3  doesn't excuse this defendant, these defendants from

4  their obligations.

5       Also, your Honor, the discussion concerning

6  alleged (inaudible) and all these kinds of things have

7  all been dealt with by Judge Lagueux, and even if they

8  -- at some point there was some different status that

9  happened to the PA, we have two defendants here, the

10  PLO, which is a political organization, and the PA,

11  which is a entity that is clearly not a state, has

12  never been found a state, by any judge, by any court,

13  by any legal treatise.

14       Lastly, your Honor, the arguments concerning

15  what goes on in Rhamalla, I'm concerned because the

16  Court is inundated with articles from newspapers and

17  testimony from lawyers, and letters from alleged

18  Ambassadors about facts.  If those individuals want to

19  submit facts to this Court, there's a proper way to do

20  that and we should have an opportunity to cross-examine

21  them, and if counsel wants to testify, then we should

22  have a right to cross-examine him, as well.  Letters by

23  Mr. Al-Kibla (phonetic spelling) and other newspaper

24  articles from the New York Times are of no concern to

25  this Court, should be of no concern to this Court.  The

16

1  rule states l0 days.  We waited 4 and a half months.

2  We weren't quick with the trigger, and we have the

3  right to proceed with this case.  And if we don't nip

4  this type of matter in the bud now, the issue of

5  default, we'll be here forever, because we just passed

6  the 3 year anniversary.  I presume there is no case in

7  this district that an answer has not been filed 3 years

8  after litigation.  And I would urge your Honor to look

9  at this matter in a very simplistic way, actually,

10  because it's really just a simple application of Rule

11  12, and the representations by Mr. Clark that he met

12  with his counsel, he's been instructed not to file an

13  answer, and he was instructed in December, even after

14  talking about this specific case, and his response to

15  your Honor's question, that even if the motion to

16  reconsider would be denied, there would be no answer

17  forthcoming because there's some appeal that they may

18  decide to file.

19      Just so we're clear, your Honor, there is no

20  motion for an interlocutory decision.  No appeal has

21  been taken.  No further action has been taken.  So the

22  threats about taking appeals, et cetera, cannot give a

23  -- cannot be a carte blanche for just stopping this

24  litigation.  Thank you, your Honor.

25      Oh, I'd just like to add one other thing,

17

1  which has been neglected to be mentioned.  Tomorrow, in

2  Washington, the PLO is going on trial.  The PLO and the

3  PA are going on trial in the case of Burkheit v

4  Palestine Liberation Organization, 00-CV-1455.  I have

5  the docket sheet which I'd like to provide to the Court

6  and also to counsel.  They're going to trial tomorrow

7  in a case that was scheduled several months ago.  They

8  have counsel defending the case, and presumably the PLO

9  is giving instructions in one case how to answer, and

10  the PA, as well, and how to respond to a case and how

11  to litigate a case, and how to show up for trial, and

12  yet we have instructions from allegedly Mr. Arafat

13  suggesting in December he's not going to file an answer

14  in this case, and that type of conduct can't be

15  sanctioned.  And if I could, your Honor, I'd like to

16  provide just the docket sheet that I received  --

17      THE COURT:  Have opposing counsel -- do you

18  have a copy for them, please?

19      MR. STRACHMAN:  I presume they have it, but

20  I do have a copy for them.

21      MR. CLARK:  We don't have it.

22      THE COURT:  Mr. Clark, would you like to

23  briefly respond?

24      MR. CLARK:  Very briefly, your Honor.

25      THE COURT:  All right.

                          18

1      MR. CLARK:  I will say first I've never --

2  I'm unaware of this case (inaudible), but what it is,

3  if it's commercial payments, something like that,

4  whatever it is, this case is this case.  And April 11th

5  is hardly forever.  And the point I said about our

6  instruction was that we were told not to file an answer

7  until the issue of jurisdiction had been finally

8  resolved by "appeals", and that's our right under

9  (inaudible) and it's our right under simple justice.

10  Thank you.

11          THE COURT:  All right.  Thank you,

12  Mr. Clark.

13          The Court is conscious of how long this case

14  has been pending, and of the history that was recited

15  by Mr. Strachman, and of the need for a prompt decision

16  on the pending motion.  I am, however, not going to

17  rule from the bench today.  I do want to look at the

18  Papandreo case again that Mr. Clark has cited both in

19  the memo and in his oral argument today.  I do not know

20  whether I will accede to the request, Mr. Clark, of not

21  ruling prior to the hearing before Judge Lagueux, but I

22  can assure all parties that a decision would be made

23  promptly after Judge Lagueux's hearing at the latest on

24  the present motion before me.

25          Regarding the motion for a protective order,

19

1  since that was not scheduled for hearing, I will not

2  take that up.  It seems to the Court that, as I

3  indicated in my remarks at the beginning of the

4  hearing, that the present motion could impact the need

5  to have a hearing on the motion for protective order.

6  That's the reason why I should proceed promptly to

7   decide this pending motion.  I will include a footnote

8   in my decision, or some -- perhaps not a footnote in

9   the decision, but some notice to the parties regarding

10  the status of the motion for a protective order at the

11  time I impact upon the motion for entry of default

12  judgment, which as I say will be done promptly.  I

13  thank the attorneys for their arguments.  The Court

14  will stand in recess.

15  (RECESS)