FAX NO.   P. 05

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

THE ESTATE OF YARON UNGAR, et al     )
                                     )
        Plaintiffs-Appellees         )
                                     )
    v.                               )
                                     )
THE PALESTINIAN AUTHORITY and        )
THE PALESTINE LIBERATION ORGANIZATION,)
                                     )
        Defendants-Appellants        )
_____)

DEFENDANTS' MOTION UNDER RULE 8(A)(2)
FOR A STAY PENDING APPEAL

Defendants the PALESTINIAN NATIONAL AUTHORITY ("PNA") named and referred to in the Court below as "The Palestinian Authority," and the PALESTINE LIBERATION ORGANIZATION ("PLO") respectfully move pursuant to FRAP Rule 8(a)(2) for a stay of further proceedings in the District Court pending the disposition of this appeal, and in support of this motion state as follows:

1. This is an interlocutory appeal by defendants who constitute the government of Palestine from the denial of their request for the dismissal of this action on grounds of sovereign and governmental immunity, non justiciability and as barred by 18 U.S.C. sec. 2337. This motion is properly made in this Court under Rule 8(a)(2) because the District Court has denied a stay pending appeal, stating from the bench at a hearing on Friday, April 11, 2003 "...I will deny the...stay pending appeal. This case is going forward whether or not there is an interlocutory

1

appeal." Transcript of April 11, 2003 hearing, attached hereto as Ex.1, TR9, L.1 reiterated at TR12, L.15.[1]

2. Defendants request that this motion be expedited because in the absence of a stay defendants are threatened with irreparable harm by continued demands for discovery and motions by plaintiffs for entry of default and default judgment and other relief. Indeed within a week after the April 11, 2003 hearing defendants were ready to file their appeal and motion for a stay and repeatedly requested in vain entry of an order in accordance with the District Court's denial of their motion for reconsideration at the April 11, 2003 hearing, TR8-9, L.25 from which they could take this appeal. Despite their efforts, no such appealable order was forthcoming. In the absence of a stay the Magistrate Judge, on Friday, April 18, 2003 granted two of plaintiffs' several pending motions. One motion was for the entry of default against defendants under Rule 55(a) for failure to file an answer to the complaint. The other was a motion to strike portions of defendants' papers on their motion for a protective order against the taking the noticed depositions of President Arafat and other leading Palestinian officials. These rulings and orders of the Magistrate Judge inflicted precisely the kind of irreparable harm that should be stayed pending appeal. As is developed below, they are "burdens of litigation" that should not be imposed before issues of immunity are finally

---

[1] References beginning "TR" are to pages of the transcript of the hearing before the District Court on April 11, 2003.

2

resolved.

3. On April 22, 2003 the District Court signed the order from which this appeal is being taken. The order was entered on April 22, 2003 and is attached hereto as Ex.2. The order denies defendants' timely motion filed on November 20, 2002, for reconsideration of the District Court's decision and order entered on November 5, 2002, which denied defendants' motion to dismiss the amended complaint. Defendants' papers on the motion for reconsideration are attached as Ex.3. The District Court's decision and order entered on November 5, 2002 is attached as Ex.4. The decision is reported, 228 F.Supp. 2d 40 (D.R.I. 2002), and is hereinafter referred to as "the Opinion."

4. Defendants' notice of appeal was filed on April 22, 2003 following entry of the order denying defendants' November 20, 2002 motion for reconsideration. A copy of the notice of appeal is attached as Ex.5. The appeal is timely. Defendants' motion for reconsideration tolled the time for appeal from the order and decision entered on November 5, 2002. The time for filing a notice of appeal from the November 5, 2002 order and the order denying the November 20, 2002 motion for reconsideration began to run when the latter order was entered on April 22, 2003. Fed.R.App.P. 4(a)(4); Acevedo-Villalobos v. Hernandez, 22 F.3d 384, 387, 390 (1st Cir. 1994); see also Marrical v. The Detroit News, Inc., 805 F.2d 169, 171 (6th Cir. 1986); Cf. Blair v. Equifax Check Services, Inc., 181 F.3d 832, 837 (7th Cir. 1999).

5. At the end of its Opinion the District Court denied a stay "pending disposition of the application for certification and/or appeal." 228 F.Supp. 2d at 51. An earlier stay issued by the Magistrate Judge ended when the Opinion was issued. The Opinion asserted that the stay was being denied "in accordance with the broad discretion granted to United States district courts under 28 U.S.C. sec. 1292(b)," which overlooked the limiting effect of the law applicable to appeals, or mandamus proceedings involving issues of sovereign immunity, governmental immunity, non justiciability and applicability of 18 U.S.C. sec. 2337, upon the Court's discretion to deny a stay pending appeal.

6. It is well established that issues of immunity are to be finally resolved before a defendant claiming immunity is subjected to further burdens of litigation. See e.g. In re Papandreou 139 F.3d 247, 251 (D.C. Cir. 1998),

> "Sovereign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." The infliction of those burdens may compromise it just as clearly as would an ultimate determination of liability. For that reason a trial court's denial of an immunity defense entitles the defendant to an immediate appeal under Cohen. ("Deprivation of the right not to be tried satisfies the...requirement of being 'effectively unreviewable on appeal from a final judgment'"). The scope of jurisdictional discovery under FSIA poses the same issue, writ slightly smaller. Here too, we think, immediate review is appropriate. (Citations omitted).

Defendants cited three cases to the same effect in their memorandum in support of their motion for reconsideration, at p.5, Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 91 (D.C. Cir. 2002); Foremost-McKesson, Inc., v. The Islamic

4

Republic of Iran, 905 F.2d 438, 443 (D.C. Cir. 1990); and Jungquist v. Sheikh Sultan Binkhalifa Al Nahyan, 115 F.3d 1020, 1025-27 (D.C. Cir. 1997).

7. The November 20 motion, Ex.3 hereto, in addition to requesting reconsideration of the grounds for dismissal, also:

(a) argued that the grounds on which the Opinion ruled as a matter of law that defendants were not a foreign state, were erroneous as a matter of law, i.e. reliance on Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44 (2d Cir. 1991) was misplaced, because it was based on conditions existing in 1985 at a time when the PLO was headquartered in Tunis and not present in occupied Palestine. The PNA did not exist. The opinion also gave undue weight to defendants' lack of full U.N. membership. Universally recognized states, including Switzerland, have never been Members of the U.N. The grounds relied on by the District Court failed to take into account decisively important changes bearing on the status of Palestine that had occurred since 1985 which required recognition of defendants as a foreign state. The changes included matters defendants requested leave to brief by motion filed on January 30, 2002 which it was necessary for the District Court to consider in order to benefit from submissions of the parties on the subject, but which the Court failed to do.

(b) requested that the motion the defendants filed on January 30, 2002, that was not acted upon, be granted. The motion for reconsideration pointed out that the Opinion did not dispose of or mention this pending motion. The overlooked motion

requested leave to assert defenses and to fully brief the issues of sovereign immunity and the application of 18 U.S.C. sec. 2337 as a bar to maintenance of the action, identifying these as issues of subject matter jurisdiction to be decided before answer. A copy of the January 30, 2002 motion is attached as Ex.6. Despite not having decided this motion, the Judge rejected the statement of defendants' counsel in the April 11 hearing that there were materials bearing on sovereign immunity and statehood that the Court had not considered, asserting: "I beg to differ. The whole issue of sovereign immunity was thoroughly briefed and thoroughly argued on the motion to dismiss and I made a thorough and complete ruling on that subject... I considered every facet of it." TR4, L.8, TR6, L.19.

(c) stated that some discovery bearing on immunity might be necessary. See, In re Papandreou, supra, 139 F.3d at 253 (discovery to determine whether immunity bars jurisdiction must proceed with circumspection). It asked that a stay of further proceedings other than those bearing on immunity, if any, be issued pending the determination of the motion for reconsideration and if the dismissal of the action is denied, that a further stay be issued pending determination of defendants' appeal to the Court of Appeals.

8. The November 20, 2002 motion for reconsideration was pending for a period of almost 5 months before it was decided. During this period defendants were unable to file an effective notice of appeal. Fed.R.Civ.P. 4(a)(4). Defendants wrote to the

Court on March 27, 2003 when they faced an April 1 hearing before the Magistrate Judge on one of plaintiffs' motions for default, asking that the November 20, 2002, motion be decided before other proceedings occurred, so that if it was denied defendants could appeal. The letter is attached as Ex.7. The Court immediately scheduled the motion and others for a hearing on April 11, 2003. At the hearing the Court explained the motion for reconsideration had been "lost in the cracks," and the Court was unaware it was pending. TR3, L.5.

9. During this period of almost 5 months, in the absence of the stay defendants had requested, plaintiffs pressed for discovery and moved first for the entry of default under Fed.R.Civ.P. 55(a) on the grounds that the complaint had not been answered and thereafter made two motions for default judgment, one on February 12, 2003, for not providing discovery and another on April 9, 2003, for not submitting to depositions. Defendants made applications for stays as to each such motion by plaintiffs filed before April 1, 2003, all of which were denied.

10. Plaintiffs proceeded with discovery by demand and motion, pressing for answers to interrogatories, production of documents and admissions. They noticed depositions in Providence, Rhode Island before a notary public of President Arafat and six other prominent Palestinian leaders. Defendants resisted such demands and motions. After plaintiffs obtained an order for discovery, defendants filed a motion before the Magistrate Judge on January 27, 2003 asking that the order be

reconsidered, setting forth grounds and supported by a letter from Palestine Ambassador to the U.N., Nasser Al-Kidwa. The letter is attached as Ex.8. As were others, the motion was denied. Thereafter, plaintiffs moved for the entry of default judgment under Fed.R.Civ.P. 37(b)(2). Plaintiffs' motion for the entry of default under Rule 55(a) had earlier been assigned to Magistrate Judge Martin. The Magistrate Judge held a hearing on the motion on April 1, 2003 after receiving notice of the District Court's Order scheduling a hearing for April 11 on all the motions. The Magistrate Judge reserved decision on the motion for default for failure to file an answer at the April 1, 2003 hearing, stating "that a decision would be made promptly after Judge Lagueux's hearing [on April 11, 2003] at the latest." P.18, L.21. This is the motion for entry of default referred to in para. 2, supra which the Magistrate Judge granted on Friday, April 18, 2003 while defendants were requesting in vain entry of an order which they submitted that would enable them to take this appeal. The Clerk entered the default on Monday, April 21, 2003, again before this appeal could be taken by defendants. The transcript of the April 1, 2003 hearing is attached as Ex.9.

11. The discovery sought by plaintiffs was not limited to issues of immunity or subject matter jurisdiction. Plaintiffs' discovery demands, for answers to interrogatories, production of documents and admissions, are attached hereto as Ex.10. It was directed to the merits of the case and ranged far beyond the issues presented in the complaint. It was intrusive and sought

information on privileged and confidential matters, and was improper in many other ways. Defendants continue to oppose as a matter of right all further proceedings in the case including filing of an answer until the issues of sovereign immunity, subject matter jurisdiction and justiciability, including political questions, and the applicability of 18 U.S.C. sec. 2337 are determined by the Court of Appeals.

12. Defendants' incapacity to defend this case under present conditions which have prevailed for many months is the result of violent conduct in violation of international law and domestic law of Israel and PNA. The violence by Israeli forces targets PNA and PLO officials and offices, as well as other Palestinian organizations in occupied Palestine and includes indiscriminate violence against the Palestinian people. The occupation of Palestine and the Israeli settlements which have illegally seized Palestinian territory, are universally recognized as illegal under the Fourth Geneva Convention and international law generally.

13. The violent conditions and Israeli assaults directed at the PNA and PLO and other circumstances and events that have contributed to the incapacity are a matter of public knowledge susceptible of judicial notice. They are described in part in the letter from Ambassador Al-Kidwa to the District Court. Ex.8. The incapacity is the result of the widely reported chaos and violence in the Palestinian territories including attacks directed at the PNA and PLO political leadership, its police

capacity and ability to function and the destruction of PNA and PLO buildings and records by the Israeli military -- all ongoing for many months and increasing to this date. See among nearly daily newspaper reports, The N.Y. Times article, In Leaderless Gaza, Israeli Forces And Hamas Fight It Out, appearing on March 10, 2003, which was attached as an exhibit to the PNA's motion for a protective order filed on March 12, 2003 against the depositions of President Arafat and other Palestinian leaders, and which is attached hereto as part of Ex.11.

14. Proceedings in this case in which the District Court assumes a stateless condition for the Palestinian people will have important political and governmental ramifications affecting the peace process in the Middle East, the Palestinian-Israeli conflict and violence, the security of the people of Israel, the welfare and plight of the Palestinian people under Israel's illegal occupation of their territories and the ability of defendants to function effectively as a government. The "infliction of those burdens" of litigation will severely compromise defendants' rights and well being even if they are ultimately found to be immune from suit, or the Court to be otherwise without jurisdiction. See Papandreou, supra, p.3. This is the reason an appeal is authorized at this stage and a stay of proceedings is essential to protect important rights and public interests.

15. In assessing these ramifications this case ought to be considered together with other similar civil actions brought

against the PNA and PLO defendants in the District of Columbia, see e.g. Biton v. PA, 01 CV 0382 and Gilmore v. PA, 01 CV 0853, and elsewhere, including Israel, by the same plaintiffs' attorneys. The ramifications of the litigation and its cumulative effect as a whole and the full extent of the harm being threatened are relevant. Much harm will result from requiring defendants to file an answer which implies the absence of immunity and other jurisdictional defenses that will receive widespread media coverage, from the conduct of discovery and judgments of default and other potential proceedings in these cases. Forcing defendants to take positions and assert defenses in an answer needlessly compromises relationships and feeds hostile news coverage. The injuries threatened by subjecting President Arafat and other Palestinian leaders to depositions at such a difficult time in the peace process and in Rhode Island, when the Prime Minister of Israel has threatened to bar their return to Palestine, as proposed by plaintiffs' attorneys in this case, or by any failure, or refusal to depose are severe.

16. The proceedings in the U.S. District Court for the District of Columbia in the case filed there by Ungar counsel herein for the Ungar family against HAMAS and the government of Iran for the same deaths alleged herein without informing either court of the other proceeding, or explaining their action to either court, threatens defendants with political injury, hostility and potential violence by creating material for propaganda associating defendants with Iran in efforts to injure

Israel. See, Ungar v. Iran, 211 F.Supp. 2d 91 (D.D.C. 2002). The threatened irreparable harm to defendants and to the public interests at stake from premature burdens of litigation establish the need for and the appropriateness of the stay pending appeal that defendants are here requesting.

17. These actions individually and in the aggregate constitute a political attack on defendants and Palestinian leadership, charging them in broad terms with terrorism over decades, in allegations going far beyond the bounds of the issues arising from the events that are the subject of these actions, seeking to use the Courts of the U.S. and Israel to place all blame for violence over decades on Palestinian and to bankrupt and destroy the PNA and PLO and its leadership.

18. The allegations of the complaint in Gilmore pending in Washington, D.C., are typical and could not be broader or more extreme:

> 17. ...Under the leadership of defendant ARAFAT, defendant PLO and its Fatah faction have planned and carried out thousands of terrorist hijackings, bombings and shootings, resulting in the deaths of hundreds of civilians and the wounding of thousands more. Dozens of United States citizens have been murdered, and scores more wounded, by terrorist attacks carried out by defendants PLO and its Fatah faction.
>
> \*   \*   \*
>
> [Paragaraphs 18-24 charge the PLO and President ARAFAT beginning in the 1970's and later the PNA as well, with establishing terrorist and guerilla units and funding and directing their terrorist activities directly and through others.]
>
> 25. On an unknown date in September 2000 or prior thereto, defendants PA, PLO and ARAFAT authorized, ordered, instructed and directed the terrorist factions

12

and guerrilla leaders under their control and employ, including Force 17, Fatah and Tanzim, and defendants ABU SHARAH, DAMARA and BARGHOUTI, to organize, plan and execute widespread acts of terrorism against civilians in Israel, Gaza and the West Bank. In accordance with this authorization and these directives and instructions, members of Force 17, Fatah and Tanzim have planned and executed, since September 2000 until the present time, numerous shootings, bombings and other acts of terrorist violence against civilians in Israel, Gaza and the West Bank, in which dozens of civilians were murdered and scores injured.

19. The District Court has rejected the suggestion that politically motivated allegations, discovery requests and trial tactics against defendants can harm the peace process, and other public interests, place impediments in the road map to peace, or that there is a judicial interest in addressing repeated assertions by counsel in the media that their motive is to use the courts of the United States and Israel in a political attack against defendants to destroy them. The District Court has threatened counsel with sanctions for raising these issues in the case. It has also rejected the precedents requiring a stay of proceedings pending appeal of issues of immunity.

20. The District Court sees this case as an ordinary tort action, see e.g. its statement at the April 11, 2003 hearing: "This case is a tort case. Pure and simply. It is not a political case." TR13 L.11. This same reasoning has led the District Court to reject defense claims that the case is not justiciable because it involves issues delegated to the political branches of government without briefing as to what those political issues are. These many issues at the heart of the political attack in this case, include whether Palestinians are

13

responsible for all the decades of violence and the extent to which, if at all, defendants have had the ability and a duty or obligation to prevent violence by HAMAS and other militant and disaffected Palestinian groups and individuals both in Palestine and in Israel and whether Israel had some such duties in Palestinian territories which it unlawfully occupied. That same occupation confronted defendants with a near impossible challenge to maintain political stability and order and necessary popular support for the Palestinian government in the face of the dire impoverishment, discouragement, and anger of the Palestinian people as a result of continuing excessive military force by the IDF, oppressive economic, social and political measures by Israel and aggressive maintenance and expansion of settlements in the occupied Palestinian territories, among many other things.

21. The irreparable injury inflicted by forcing defendants to bear the burdens of litigation which may compromise it at this critical time in the peace process is more that the use of litigation as war by other means. Large default judgments which in similar cases involving Iran, Rwanda, Bosnia and other governments and political movements and leaders have resulted in damages ranging from over one billion dollars to hundreds of millions of dollars. Such judgments can complicate a final settlement between Israel and Palestine which Israel may insist determine the liability of Palestine for them.

22. Palestine is totally impoverished, its economic viability will depend on the terms of the peace agreement, it has

suffered many thousands of deaths and injuries in the last two years alone, its per capital income is less than 10% of the per capital of Israel and the political resolution of this conflict should not be burdened by extra territorial private tort litigation in U.S. courts.

23.   At the hearing held on Friday, April 11, 2003, the District Court granted plaintiffs' motion to strike a paragraph and sentence -- all of section 2(c) and the second sentence of 2(d) -- from defendant's memorandum in support of their November 20, 2002, motion for reconsideration on the theory urged by plaintiffs that the attorneys' motives and objectives are irrelevant to the merits, that they constitute a "personal attack on counsel", albeit in the publicly spoken and reported words of those counsel themselves, and warned that further conduct of this kind could result in revocation of the pro hac vice status of two of defendants' attorneys and imposition of monetary sanctions. TR14, L.2.  Defendants believe the District Court's concern is clearly erroneous and an abuse of discretion.

24.   Selected pleadings filed by defendants that set forth the political agenda of plaintiffs' attorneys potentially in conflict with the interests of their clients, but improper in any case are attached as Ex.11.  The same counsel have made the same assertions repeatedly for the media in Israel and the U.S. claiming to have filed as many as 25 cases.

25.   In contrast to defendants' citations of counsel for plaintiffs own words to show an improper and harmful political

15

agenda, plaintiffs' counsel have filed motions and objections in the District Court, which are presently pending and will be decided soon in the absence of a stay, which include allegations that defendants have submitted "false data", "lied," committed "intentional fraud on the Court", and characterized defendants' pleadings as "out right falsehood", "blatantly and facially false", "bizarre", and "rank and grotesque fantasy," and that defendants' and their counsel have committed other improper, if not criminal acts. Selected pleadings of plaintiffs' counsel in which this language and invective appears are attached hereto as Ex.12. More such allegations must be expected if the case goes forward before a final determination of immunity is made by this Court. The District Court has not noted these and other similar charges by plaintiffs' counsel, nor compared them with defendants' submissions on the political motives of plaintiffs' counsel that have been included in the papers defendants have filed. Such language and invective by plaintiffs' attorneys are part of their purpose to use this litigation as they say to destroy defendants and to seek to place the imprimatur of the judiciary on their allegations through further statements to the media. Such actions are hardly intended to enhance the peace process or reconciliation between the peoples of Israel and Palestine.

26. The elements to be considered in assessing a stay pending appeal are (1) the likelihood of success on the merits, (2) irreparable harm to the party seeking a stay if it is denied,

(3) irreparable harm to those opposing the stay and (4) the public interest. See <u>Weaver</u> v. <u>Henderson</u>, 984 F.2d 11, 12 (1st Cir. 1993) citing <u>Hilton</u> v. <u>Braunskill</u>, 481 U.S. 770, 776-77 (1987). Success on the merits is a flexible concept, variously stated. See <u>Weaver</u>, <u>supra</u> ("likely to succeed on the merits) and <u>Hilton</u>, <u>supra</u> ("A strong showing of success on the merits"); see also <u>Mohammed</u> v. <u>Reno</u>, 309 F.3d 95, 100-02 (2d Cir. 2002) (collecting cases). The flexibility of the "success" standard depends on the other three of the four factors. See <u>Weaver</u>, <u>supra</u>, citing <u>United Steelworkers of American</u> v. <u>Textron, Inc.</u>, 836 F.2d 6, 7 (1st Cir. 1987); See also "the approach expressed by the District of Columbia Circuit: 'The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors." <u>Washington Metropolitan Area Transit Commission</u> v. <u>Holiday Tours, Inc.</u>, 182 U.S. App.D.C. 220, 559 F.2d 841 843 (D.C. Cir. 1977), as quoted with approval in <u>Mohammed</u> v. <u>Reno</u>, <u>supra</u>.

27. Defendants are threatened with irreparable injury and vital public interests would be seriously jeopardized by a denial of a stay pending appeal. There is no comparable threat to plaintiffs, or any public interest, if a stay is granted.

28. On the merits, the District Court erred as a matter of law in its conclusion that defendants are not a foreign state based on the <u>Klinghoffer</u> case and the absence of full UN membership of Palestine.

29. To demonstrate the likelihood that defendants will

prevail on the merits for purposes of a stay, but without presenting its full brief on the merits in its motion for such a stay, defendants state they will show that they satisfy the definitional criteria of the Restatement of the Law Third, The Foreign Relations Law of the United States (1986), for determining whether an entity is a foreign state, including the Restatement's position that statehood does not depend upon recognition. The District Court was incorrect as a matter of law in giving the decisive weight it did to Palestine's less than full U.N. membership, stating: "Close is simply not good enough." 228 F.Supp. 2d at 49, nor did the Court discuss what law should be applied in weighing statehood. Decisive weight should be given to the Restatement's definition of statehood which has repeatedly been accepted as authoritative. See e.g. Kadic v. Karadzic, 70 F.3d 232, 244-45 (2d Cir. 1995).

30. The PNA is a state under the Restatement's definitional criteria because it has a defined territory, a permanent population, the only authority exercising most governmental functions even under its existing violent conditions and is able to represent Palestine in international relations with the capacity to conduct international relations. The PNA has a domestic police force for the public safety and protection of property. Indeed plaintiffs' complaint is based in part on the alleged failure of the PNA to provide police protection for plaintiffs. See the amended complaint, para. 23 alleging defendants "are authorized and responsible, under international

instruments, customary international law and local law applying in the West Bank and Gaza, to exercise law enforcement powers and to maintain public order and security in the territories under their control." In 1985 there was no Palestinian police force. See Restatement sec. 201 State Defined and Comments a.-e. Israel's illegal occupation of the Palestinian territories, oppression of the Palestinian people through the use of excessive military force and oppressive restrictions and mistreatment and heavy military attacks on personnel and destruction of office and facilities and disruption of the PNA's and PLO's capacity to function, do not affect Palestine's entitlement to recognition of its statehood. Cf. Reporters' Notes 3. to sec. 201, Military Occupation. Nor is statehood dependent on recognition. Comments b, sec. 202.

31. The merits of this motion are supported, in addition to the PNA's entitlement to statehood under the Restatement's criteria, and by material in the record, by a large body of governmental actions, agreements and material overwhelmingly susceptible of judicial notice which would have been provided by the briefing of issues of immunity for which defendants sought leave in their motion filed on January 30, 2002. The briefing would establish the PNA's sovereign immunity as a functioning government based on the Oslo Accords from 1993 and subsequent amendments and related diplomatic measures (hereinafter "the Oslo Accords"). This Court can be provided such materials from public sources appropriate for judicial notice.

32.  This motion does not attempt to identify or address all of the issues raised by this interlocutory appeal.  It would be beyond the motion's function to do so.  The motion seeks a stay that defendants submit is necessary, will serve the interests of justice and would do little if any harm to plaintiffs' interests.  Without a stay the action would proceed in the District Court and continue to impose upon defendants burdens of litigation that they lack the capacity to bear and which by the overwhelming weight of authority they should not be called upon to bear prior to a final determination of their right to immunity, including especially review by this Court.

### Conclusion

Defendants' motion for a stay pending appeal should be granted.

April 22, 2003

Respectfully submitted,

Ramsey Clark  (by tws)

Lawrence W. Schilling
36 East 12th Street
New York, NY 10003
212-475-3232
212-979-1583 (FAX)

Deming E. Sherman (#1138) (by tws)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
401-274-9200
401-276-6611 (FAX)

Attorneys for Defendants-Appellants

20