# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

**THE ESTATE OF YARON UNGAR, et al.,**

    **Plaintiffs – Judgment Creditors**

    v.                                                     C.A. No. 00 - 105L-DLM

**THE PALESTINIAN AUTHORITY, et al.,**

    **Defendants – Judgment Debtors**

### PLAINTIFFS – JUDGMENT CREDITORS' NOTICE OF NEW DEVELOPMENTS RELEVANT TO DEFENDANTS' RULE 60(b) MOTION

The Ungars respectfully submit this Notice to inform the Court of two developments which occurred subsequent to the filing of their opposition to defendants' Rule 60(b) motion, which directly support the grounds asserted by the Ungars to deny defendants' motion.

### a. Defendants Have Now Admitted That They Cannot Produce Any Relevant Documents Located in the Gaza Strip

The Ungars asserted in their opposition that they would be severely prejudiced and unable to fairly litigate the case if defendants' Rule 60(b) motion were granted, because the defendants were expelled from the Gaza Strip in June 2007 and are therefore unable to produce any documents located in the Gaza Strip relevant to their provision of material support and resources to Hamas. *See* Plaintiffs' Memo in Opp. (dkt. # 415) at 34-36.

The PA and PLO are currently defendants in *Parsons v. Palestinian Authority et al.*, No. 07-1847 (JR) (D.D.C.). On February 15, 2008, the PA and PLO filed a motion to dismiss

*Parsons* on grounds, *inter alia*, of laches. *See* Exhibit A, at 42-44. In support of their laches argument the defendants argued as follows:

> Plaintiffs waited nearly four years after the death of Mr. Parsons to file the instant action . . .
>
> There . . . can be no dispute that Defendants are severely prejudiced by the delay. As widely publicized, in June 2007, a Hamas uprising in the Gaza Strip expelled the PA from the territory, and effectively isolated Gaza from the rest of the world. The PA currently has no authority in Gaza, and Israel and Egypt have almost completely sealed all borders with Gaza. Currently, Gaza is a Hamas controlled "no-mans' land" with PA authorities unable to venture into the area due to border controls and grave threats to their individual security. Moreover, <u>Gaza is now inaccessible for the purpose of conducting discovery</u> or otherwise gathering facts and information that may be relevant to defending against Plaintiffs' claims in this case.
>
> The dramatically changed circumstances in Gaza in 2007 will result in immense prejudice to Defendants if this litigation is permitted to proceed. Absent a dramatic change in circumstances in Gaza . . . Defendants will remain <u>unable to conduct any meaningful discovery or investigation within Gaza</u>.

Exhibit A at 43-44 (emphasis added).

Thus, exactly as argued by the Ungars in their opposition papers, defendants have admitted that "Gaza is now inaccessible for the purpose of conducting discovery" – which means that even if the defendants wanted to produce relevant documents located in Gaza (and their Rule 60(b) motion gives no indication whatsoever of such willingness), they are unable to do so.

Defendants will likely argue that this admission is of no moment in this case, because the Ungars were murdered in Israel, and the actual gunmen lived in the West Bank. The Court should reject any such argument because the *situs* of the defendants' provision of material support and resources to Hamas is completely irrelevant. If defendants provided funds, weapons,

2

training or safe haven to Hamas in the Gaza Strip as plaintiffs alleged[1] – or for that matter in Timbuktu – and that support in some way facilitated Hamas terrorists living in the West Bank to murder the Ungars in Israel, the defendants are liable under 18 U.S.C. §2333(a). *See generally Boim v. Holy Land Foundation*, 511 F.3d 707 (7th Cir. 2007) (analyzing elements of civil liability under §2333(a) in respect to provision of support to Hamas).

Indeed, *Boim* provides a useful analogy in this respect. The *Boim* defendants are "an array of individuals and organizations in the United States" (*id*. at 709) alleged to have transferred funds from the United States to Hamas thereby facilitating the murder of an American teenager. *Id*. Obviously, the evidence of those funds transfers would be located in the United States. So too, here, evidence of the instant defendants' provision of material support to Hamas in Gaza, is located in Gaza.

Significantly, *Boim* held that under §2333(a) the plaintiff is ***not*** required to establish a direct link between the defendant's provision of funds or other material support and the particular terrorist attack in which the decedent was murdered: "[I]n view of the fact that money is fungible and the victims of terrorism are often killed or injured at random . . . no line [need] be drawn linking a particular dollar raised to a particular terrorist act." *Boim*, 511 F.3d at 741. Therefore, a plaintiff can establish liability under §2333 by merely showing that defendant's provision of funds "frees up . . . resources for, or otherwise makes possible . . . terrorist activities." *Id*. at 742.

Notably, even "relatively modest financial contributions to terrorists or other minor acts of support" can suffice "to render the donor liable for the injuries subsequently inflicted by terrorists." *Id*. Moreover, §2333 "does not demand a showing that the defendant's conduct was

---

[1] Plaintiffs' Amended Complaint repeatedly alleges provision of material support to Hamas in both the West Bank and Gaza Strip without distinction.

3

the sole cause of the plaintiff's injury; the conduct need only be one of the causes. Nor must the plaintiff show that the defendant's conduct was the predominant or primary cause of the injury." *Id*. at 742-743 (citations omitted).

Clearly, then, documents located in the Gaza Strip evidencing defendants' relationship with Hamas in the Gaza Strip would be absolutely vital to the question of defendants' liability in this case. But as defendants now admit, those documents became unavailable in June 2007. Accordingly, defendants' Rule 60(b) motion must be denied.

### b. Defendants Are Actively Fighting Efforts to Enforce the *Bucheit* Judgment

The Ungars argued in their opposition that defendants' Rule 60(b) motion was made in bad faith and so should be denied, because even if the motion was granted and a new judgment entered against defendants after a trial on liability, the defendants would not honor it. Opp. Memo at 59-60. As evidence for this assertion plaintiffs cited the fact that defendants still have not paid the judgment entered against them in 2003 in the matter of *Bucheit v. Palestinian Authority*, No. 00-1455(GK) (D.D.C.). *Id.* at 60.

On February 27, 2008, counsel for the *Bucheit* plaintiff notified U.S. District Judge Victor Marrero that the PA and PLO have not merely <u>failed</u> to pay the *Bucheit* judgment, but are <u>actively opposing</u> the enforcement of that judgment. *See* Exhibit B. Thus, notwithstanding their claims to be "repentant," these defendants remain scofflaws.

Since these defendants are fighting the enforcement of even a relatively small judgment entered by a U.S. federal court after trial in a garden-variety commercial matter, it is obvious that they have no intention whatsoever of paying any new judgment that would be entered against them by this Court if their Rule 60(b) motion was granted and they were found liable at trial.

Thus, defendants are invoking this Court's authority under Rule 60(b)(6), but have no intention of obeying the Court's authority when it comes to decisions and orders – such as an order to compensate the Ungars – which are not to their liking. For this reason, too, their Rule 60(b)(6) motion should be denied.[2]

>Plaintiffs, by their Attorney,
>
>/S/ David J. Strachman
>David J. Strachman  #4404
>McIntyre, Tate & Lynch LLP
>321 South Main Street, Suite 400
>Providence, RI 02903
>(401) 351-7700
>(401) 331-6095 (fax)

---

[2] It is quite possible that defendants will now race to pay the *Bucheit* judgment in a putative attempt to convince this Court that they have turned over a new leaf. The Court should not credit any such self-serving *post hoc* maneuver: the irreducible fact is that judgment entered in *Bucheit* some five years ago and defendants are "vigorously" fighting Mr. Bucheit's efforts to enforce it even today – i.e. even **after** they purportedly "repented." *See* Exhibit B.

## CERTIFICATION

  I hereby certify that on March 5, 2008 I served this pleading along, with the attached exhibits, via ECF to the following counsel of record:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701

     /S/ David J. Strachman