# EXHIBIT A
## (Part 2)

merely to vacate a default, rather than a final judgment, on Count I of the SAC, Rule 55(c) governs and they have met the Rule's standard of "good cause." Plaintiff, however, argues that Rule 60(b) controls because Defendants' previous motion to set aside the default was denied, and therefore, their motion is one that seeks a reconsideration of an order.

Rule 55(c) states that a court "may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

The applicable provision for this case would be subsection (6) of Rule 60(b).

The relevant procedural time line is as follows. Between April 19 and 21, 2005, Plaintiffs moved for a default [DE 37], which was entered [DE 38], and moved for default judgment [DE 39]. Three days later, Defendants' first counsel moved for *pro hac* admission and within 10 days of the granting of that motion, moved to set aside the Clerk's default [DE 47]. On January 17, 2006, the Court denied Defendants' motion to set aside the Clerk's default holding that Defendants' conduct "evince[d] an intentional disregard for these proceedings," but the Court also denied, without prejudice, Plaintiffs' motion for default judgment. (*See* DE 51.) In February, 2006, Defendants' moved to abate the proceedings pending receipt of instructions due to new political leadership. The

next month, Plaintiffs renewed their motion for default judgment [DE 57] to which the Defendants did not respond. In July, 2006, the Court granted Plaintiffs' motion for default judgment on liability on Count I of the SAC [DE 61] and, following the December 2006 pretrial conference, referred Moshe Sapterstein's claim to the Magistrate Judge who conducted the jury trial on damages and entered a final judgment in March, 2007. The Defendants appealed the Magistrate Judge's judgment, and in July, 2007, the appellate court remanded because without the Defendants' consent the Magistrate Judge lacked jurisdiction to enter an appealable final judgment.

Although no final judgment has been entered in this case, which would mean that Rule 55(c) would guide the Court's discretion in deciding the motion rather than the more stringent provisions of Rule 60(b), the Court cannot overlook the fact that Defendants' motion, while focused on setting aside the order granting default on liability [DE 61], also essentially seeks a reconsideration of the Order denying their motion to set aside the entry of Clerk's default [DE 51], which arguably requires a Rule 60(b)(6) review. *See Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir. 1988) (the Rule 60(b) standard is more rigorous than that of Rule 55(c)); *see also EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990)(excusable neglect standard under Rule 60(b) is more rigorous than the "good cause" standard of Rule 55(c)); 47 Am. Jur.2d *Judgments* § 685. Deciding which rule controls is not essential because as a general rule, the factors a court considers in deciding a motion to vacate a default under Rule 55(c) are the same as those for vacating a default judgment, the difference is the latter generates a heightened level of scrutiny. Because of the previous finding of Defendants' intentional disregard for the judicial proceedings, the history and present posture of the case, the Court weighed the Rule 55(c) factors in a heightened fashion.

2. Applying the Factors of Rules 55(c) and 60(b)(6)

Under Rule 55(c), a court uses a "good cause" standard to determine whether to set aside a default. *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). The good cause standard is a liberal one that varies from situation to situation. *Id.* In *Compania*, the Eleventh Circuit described the standard as follows:

> We recognize that "good cause" is not susceptible to a precise formula, but some general guidelines are commonly applied. [*Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989)]. Courts have considered whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense. *Rafidain Bank*, 15 F.3d at 243; *see also Robinson v. United States*, 734 F.2d 735, 739 (11th Cir. 1984). We note, however, that these factors are not "talismanic," and that courts have examined other factors including whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default. *E.g., Dierschke v. O'Cheskey*, 975 F.2d 181, 184 (5th Cir. 1992). "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." Id. However, if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief.

*Compania*, 88 F.3d at 951-52.

Under Rule 60(b)(6), when considering whether to set aside a judgment, a court should keep in mind that the law strongly disfavors default judgments, preferring the resolution of genuine disputes on the merits, and thus, should consider whether the defendant has a meritorious defense and whether extraordinary circumstances exist. *Jackson v. People's Republic of China*, 794 F.2d 1490, 1496 (11th Cir. 1986). In *Griffin v. Swim Tech Corp.*, the Eleventh Circuit described the application of the Rule 60(b)(6) standard saying:

> ...This clause is a broadly drafted umbrella provision which has been described as "a grand reservoir of equitable power to do justice in a particular case when relief is not

-20-

warranted by the preceding clauses." 7 J. Lucas & J. Moore, Moore's Federal Practice ¶ 60.27[2] at 375 (2d ed. 1982). It is well established, however, that relief under this clause is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances. *Ackermann v. United States*, 340 U.S. 193, 202, 71 S.Ct. 209, 213, 95 L.Ed. 207 (1950). The party seeking relief has the burden of showing that absent such relief, an "extreme" and "unexpected" hardship will result. *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932).

*Griffin*, 722 F.2d 677, 680 (11th Cir. 1984).

Similarly, the Third Circuit emphasizes four factors for consideration: (1) whether lifting the default would prejudice the Plaintiff; (2) whether the defendant has a *prima facie* meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions. *Emcasco Ins. Co. V. Sambrick*, 834 F.2d 71, 73 (3rd Cir.1987). Other courts have considered the public interest involved, the significant financial loss to the defaulting party, and the promptness of the defaulting party to correct the default. *Lexington Lasercomb I.P.A.G. v. Unger*, 234 F.R.D. 701, 702 (S.D. Fla. 2006). Regardless of the factors used in the analysis, they are "simply means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." *Id.* As discussed below, the Court considered all of these general factors in exercising its discretion to set aside the default conditioned upon the Defendants paying Plaintiff's reasonable attorneys fees and costs incurred in responding to the default related motions and preparing for and trying the two day damage trial.

(i)    *Defendants' Willfulness or Culpability*

Defendants argue their failure to respond to the SAC was excusable because they experienced difficulties obtaining local counsel. While the record does reflect this difficulty, the Court previously rejected this argument in its Order denying motion to set aside default. (*See* DE 51.) In fact, the Court

refused to set aside the default because "Defendants' conduct evince[d] an intentional disregard for these proceedings" even after the Court permitted counsel to proceed without local counsel. (*See id.*) While Defendants argue that the Court should afford some leniency on the "willfulness" question because of the important issues at stake, such arguments do not negate the Court's prior "willfulness" determination.

However, the Court's finding that the Defendants' failure to participate in these proceedings was willful, does not by itself render Defendants' motion to set aside without merit. *Knox*, 248 F.R.D. at 425-26. It is true that the "willfulness" conduct in this case was not of the duration or magnitude as that in *Biton v. Palestine Interim Self-Government Authority*, __ F.R.D. __, No. 01-0382, 2008 WL 2796469 (D.D.C. July 21, 2008). The Defendants are not a recognized, much less typical, foreign state plus the changing political dynamics and volatility in the area create realities that have non-standard effects in this litigation. Moreover, since the remand of this case and new defense counsel's appearance, Defendants have stated a desire to proceed with merits litigation in good faith. While the Court can not ignore Defendants' past conduct as it has had a financial impact on the Plaintiff, given the strong preference for deciding cases on their merits, and because the Court can require payment of reasonable attorneys fees and costs to restore the Plaintiff to the *status quo ante* the default related conduct, this factor does not dispose of the Defendants' request for relief.

(ii)   *Prejudice to Plaintiff*

In deciding whether to set aside a default, delay alone is an insufficient basis for establishing prejudice. *Knox*, 248 F.R.D. at 429 (citing *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). Rather, there must be a showing that the delay will result in the loss of evidence, create increased

discovery difficulties, or provide greater opportunities for fraud and collusion. *Id.* The burden is on the movant to show a lack of prejudice to the non-moving party, and to present evidence showing that the non-moving party would not suffer significant prejudice. (*Id.*)

Saperstein argues that a vacatur would prejudice him in several ways. He states that because Hamas has taken control of Gaza, the situs of his injury, Defendants cannot produce evidence even if it still exists. Thus, Plaintiff implies that a liability trial will not produce a different outcome than the default. Moreover, retrying the damages aspects of the case will cause him further emotional trauma reliving the events, will delay his emotional healing and increase his costs and fees which he may never recover. Finally, Saperstein contends that Defendants continually drag matters out pointing to the fact that they waited four months to originally move to set aside the default and nearly two years to seek reconsideration of that motion.

Defendants contend that because Saperstein amended the complaint as recently as August 2006, Plaintiff's prejudice is minimal. They also claim that a substantial portion of the delay was due to the jurisdictionally impaired damages trial and resulting appeal. Moreover, to minimize any prejudice, Defendants agree to stipulate that Saperstein and his wife would not have to return to the United States again to testify on damages because the testimony from the previous trial could be admitted as evidence in a subsequent trial. Finally, Defendants contend that Saperstein has already investigated the incident in which he was injured, including obtaining police and court records and a videotape of the incident, and therefore, no further investigation is needed.

It is undisputable that most discovery difficulties that might arise in this case will be attributable not to the delay caused by the default, but to the difficulties that inevitably arise in cases

involving incidents occurring, and involving parties residing, in foreign lands. Exacerbating these difficulties in this case, is not the fact of default, but the on-going political instability and strife in the area. Moreover, Saperstein's own actions contributed to some of the procedural delay and present posture of the case; those actions include his pleading practice, the unauthorized filing of the TAC Count I, his failure to think through the most effective procedures for obtaining a default, and his election to try the case before the magistrate judge. Because the Court will condition the vacatur on the Defendants' payment of reasonable costs and attorneys fees incurred in the two day damage trial and in responding to the motions to set aside the Clerk's default and default judgment, the motions that are the subject of this order, the Court finds that Saperstein can be restored to his position prior to the Defendants' defaulting conduct and thus will not be significantly prejudiced by vacating the default. Therefore, the prejudice factor weighs in favor of vacating the default.

(iii)   *Meritorious Defenses*

As mentioned above, a significant factor in this analysis is whether the Defendants have demonstrated they have a meritorious defense. *See Solaroll Shade and Shutter Corp., Inc. v. Bio-Energy Systems, Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986) (applying Rule 60(b)); *see also Fidelity and Deposit Co. of Maryland v. Jernagan*, No. 87-30080, 1987 WL 49657, *3 (N.D. Fla. 1987) (stating that to set aside a default under Rule 60(b) as opposed to rule 55(c), there must be some "clear and specific statement of a meritorious defense that is supported by a recitation of facts"). In evaluating the merits of the proffered defenses, it is helpful to consider the Seventh Circuit's analysis in a similar case, *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1010-11 (7th Cir. 2002) ("*Boim I*").

The Seventh Circuit determined in *Boim I,* that under the FTA, a United States national, injured

-24-

by reason of international terrorism, "can recover from anyone along the causal chain of terrorism." *Id.* at 1010-11. David Boim had both American and Israeli citizenship. After his murder in Israel by members of Hamas, a foreign terrorist group, his parents sued two organizational defendants based in the United States, who allegedly supported Hamas financially. The district court denied the defendants' motion to dismiss. *Boim v. Quranic Literacy Inst.*, 127 F. Supp. 2d 1002, 1021 (N.D. Ill. 2001). The Seventh Circuit granted the defendants leave to file an interlocutory appeal and held that funding, without more, was an insufficient basis for liability under the FTA and that the plaintiffs must be able to show that the defendants had "knowledge of and intent to further the payee's violent criminal acts." *Boim I*, 291 F.3d at 1011-12. With regard to the aiding and abetting theory, the appellate court determined that the FTA imposes liability on those "who knowingly and intentionally supply the funds to the persons who commit the violent acts." *Id.* at 1021.[12]

Defendants' proffered meritorious defense is that they did not authorize, finance, or otherwise support the actions leading to Saperstein's injuries. (*See* DE 175 at 15.) In support of this argument, Defendants contend that none of the trial exhibits, including Israeli court and police records, establish that the individuals responsible for Saperstein's injuries (Katzir, D'hlis, Alkativ and Mutzran) were Defendants' employees, and even if he could, Saperstein still would not be able to demonstrate that

---

[12] On remand, the district court found the organizational individuals liable under the FTA on summary judgment. *Boim v. Quranic Literacy Inst.*, 340 F. Supp. 2d 885 (N.D. Ill. 2004). The Seventh Circuit reversed and remanded, however, holding that the district court had not made any findings of a "causal link" between the assistance to Hamas and the violent act. *Boim v. Quranic Literacy Inst.*, 511 F.3d 707, 736 (7th Cir. 2007) ("*Boim II*"). Specifically, the appellate court held that the district court erred by not requiring the plaintiffs to show "causation in fact" or "a direct causal link between the defendants' acts and the murder of [the plaintiff]." *Id.* at 736-41. The Seventh Circuit, however, vacated *Boim II* when it decided to hear the appeal *en banc* on June 16, 2008.

the individuals acted at Defendants' direction or with their support.[13] Defendants assert that while there is evidence that the individuals who directly caused the injuries to Saperstein are affiliated with certain violent organizations (the Democratic Front, Hamas, and the Al Aksa Martyrs), there is no evidence indicating that the individuals or groups acted under the direction of or in concert with the Defendants. Defendants also contend that there is no evidence suggesting that the actions of the Al Aksa Brigades should be imputed to Defendants. Additionally, Defendants state that there was conflicting evidence at the damages trial about whether the shooter was wearing a Palestinian police uniform and that the evidence is conflicting as to the Defendants' link to individual Defendants Alkativ, D'hlis, or Mutzran. (*See* DE 175 at 16.) Moreover, Defendants state that the evidence shows that the PA and these individuals who committed the terrorist acts took adverse actions towards one another, i.e., that the PA killed an individual aiding the Al Aksa Brigades and that the individual Defendants stole weapons from the PA. (*See* DE 175 at 17.) Based on these assertions, Defendants argue that Plaintiffs could not have established that Defendants "knowingly and intentionally" contributed to the violent act toward Saperstein.

In response, Saperstein argues that Defendants' assertions are insufficient to support a meritorious defense argument under Rule 60(b). Specifically, Saperstein contends that Defendants have only offered denials without any supporting evidence. Saperstein's point is well-taken. However, Defendants' assertion that they are not associated with the individual Defendants who are directly linked to the violence against Saperstein is a "clear and specific statement of a meritorious defense." While Defendants' proffer of tangible evidence is certainly lacking, the Court recognizes

---

[13] The Court is well aware that the trial was for the purposes of damages and not to establish liability. Thus, the Court does not limit its analysis to the trial exhibits.

the difficulty of submitting evidence to prove the non-existence of a relationship. The merits of this case involve agency and proximate cause elements that are the Plaintiff's responsibility to prove. The *Boim I* decision underscores these principles in FTA cases -- there must be evidence that a defendant had the "knowledge of and intent to further the payee's violent criminal acts." *Boim I*, 291 F.3d at 1011-12. The difficulties inherent in these issues in FTA cases will hopefully be clarified in the Seventh Circuit's *en banc* decision in *Boim II*, currently pending. Meanwhile, the Court concludes that Defendants have sufficiently demonstrated the existence of a defense, which if proved at trial, would constitute a complete defense to liability. This determination, however, does not draw any conclusion as to Saperstein's ability to link Defendants to the individual Defendants, but rather acknowledges that Defendants have come forward with a meritorious defense.[14]

    (iv)    *Substantial Loss to Defendant*

Courts have also considered the size of a default judgment when determining whether to vacate under Rule 60(b), particularly where the cause of action includes an award of attorneys' fees and treble damages. *Knox*, 248 F.R.D. at 430 (citing *Bieganek v. Taylor*, 801 F.2d 879, 881 (7th Cir.1986) (finding the treble damages, award of attorneys fees, and the default judgment in excess of $250,000 weighed in favor of vacating pursuant to Rule 60(b)); *see also C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202 (7th Cir.1984) (recognizing that under some circumstances the size of the default judgment might be a legitimate factor because Rule 60(b) is essentially equitable in nature, but that the $600,000 judgment in that case was not significant enough to warrant vacatur). Here, pursuant to the FTA, 18 U.S.C. § 2333(a), any Saperstein damage award would be trebled and he would be

---

[14] Defendants also claim that they have a meritorious defense under the Act of War Exception. However, the Court has previously addressed this argument and found that it was without merit. (*See* DE 61.)

entitled to attorneys' fees. Given that a previous jury awarded him $16,000,000, the Court concludes that the size of a potential default judgment weighs in favor of granting Defendants equitable relief.[15]

   (v)   *Other Factors Warranting Vacatur*

There are two additional factors unique to this FTA case which the Court has considered. First, as Judge Marrero eloquently wrote, resolution of some of the issues in this case have broad and significant ramifications from a historical and public interest standpoint that a default judgment cannot address. *Knox*, 248 F.R.D. at 431-32. There is a strong public interest in learning the truth of the Plaintiff's allegations: whether the Defendants contributed to terrorist activities and whether they have masked criminal acts with official duties and thus abused their authority. The truth of these allegations impact on both the interests of the people that Defendants serve and the interests of the members of the international community who recognize the Defendants as legitimate leaders of a governing entity. These important issues warrant a decision on the merit rather than a resolution by default.

Second, Congress created the FTA cause of action to provide a means to obtain compensation for American victims of foreign terrorist acts by holding those responsible for such attacks accountable financially. It is essential that in our zeal to thwart terrorism and compensate its victims, we do not trample on the fundamental principles of our judicial system. Our system is respected because all litigants, even unpopular ones, have the right to their day in court and all litigants are entitled to equal justice under our laws without sympathy or prejudice for either side. If we fail to be true to these principles in every case then we corrode the judice system on which our democracy rests and which is

---

[15] At the hearing on these motions, the Court advised the Plaintiff that even factoring for the lack of a true adversarial process in a trial involving the emotions that terrorism evokes, the jury's award for an injury to Plaintiff's hand was excessive when compared to awards for similar non-fatal, injuries in the area's state trial courts.

its strongest defense. By granting the vacatur conditioned on the payment of attorneys fees and costs, the Court affirms our legal principles, ensures respect for the judicial process, and restores Plaintiff to the *status quo ante* Defendants' defaulting conduct.

(vi)   *Effective Alternative Sanctions*

In determining whether to exercise its discretion to set aside a default, a district court has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party. *Powerserve Intern., Inc. v. Lavi*, 239 F.3d 508, 515 (2d Cir. 2001); *see also Knox*, 248 F.R.D. at 432-33 (citing *First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission*, 877 F.2d 189, 196 (2d Cir.1989) (conditioning vacatur on the defendant's posting of a bond covering the amount claimed, including interest)). Justification for such a condition depends on the circumstances of the case, and a court must make findings sufficient to permit appellate review of the condition's reasonableness. *Powerserve*, 239 F.3d at 515-16.

Here, the Court previously found the Defendants exhibited an "intentional disregard" for the proceedings in this case. While the Defendants assert they have had a change of heart and desire to proceed on the merits in good faith, justice dictates that there be a concrete showing that they will follow through on those promises so that the Plaintiff is not harmed by their actions. Defendants are foreign entities, whose assets presumably are beyond the jurisdiction of United States courts. Thus, the Plaintiff's ability to satisfy a judgment for attorneys fees and costs that he has already incurred may be very difficult. Moreover, Plaintiff represents that in a contract case, involving a smaller judgment than is potentially possible here, the Defendants ignored the judgment and have not satisfied it. Thus, there is a legitimate concern that if the Plaintiff is ultimately successful, he will have incurred double fees

and costs which he will not be able to recover. Thus, to demonstrate their good faith concretely, the Defendants must pay for the reasonable costs and attorneys fees incurred in the two days of trial, the preparation for same, and the briefing and hearings related to the motions to vacate the Clerk's default, the default judgment and the motions that are the subject of this order, to return the Plaintiff to his position prior to the Defendants' defaulting actions.

Whereas, there is a suggestion that the Court impose a bond in the amount of a potential judgment based on the jury award before the Magistrate Judge, the Court will not do so as such may violate due process. There was no appealable final judgment entered in this case. Thus, such action would mean that, before the Plaintiff proves his allegations, the Defendants would have to post funds tied to a potential damage amount that is significantly beyond awards for similar, non-fatal injuries in this district, even accounting for the terrorism aspects of the case. Moreover, it would give the Plaintiff an advantage unavailable to other plaintiffs faced with the vagaries of litigation which include the difficulties in collecting judgments. However, because the Defendants' actions have caused the Plaintiff to incur costs and fees that he would not have incurred had he not had to oppose the Defendants' various efforts to set aside the defaults and to retry the damage potion of the case, the Court will require the Defendants to pay the reasonable costs and attorneys fees to compensate for this effort.

Additionally, given the clear inequities of requiring Saperstein to litigate the damage aspects of this case again, based on the Defendants' stipulation, if Plaintiff chooses, he may use all prior damage testimony in the trial before the Magistrate Judge in lieu of re-presenting such evidence. Finally, because Defendants have attempted on multiple occasions to make jurisdictional arguments that were ultimately rejected, the Court shall not permit summary judgment motions, will require that

the Defendants stipulate to venue in this district, and will set this matter for trial on an expedited track.[16]

## IV.   CONCLUSION

For the reasons discussed above, in balancing the various factors, the Court will exercise its discretion to set aside the default on liability with the four conditions because "good cause" and justice so require. Therefore, it is hereby

ORDERED that

(1)   The Claims of the Estate of Ahuva Amergi and Moshe Saperstein are SEVERED. The Clerk of Court is directed to assign the claims of the Estate of Ahuva Amergi a new case number and to ensure that it is assigned to the undersigned. Upon reassignment, the Court shall issue a final judgment in the Amergi case.

(2)   Count I of the Third Amended Complaint is STRICKEN.

(3)   Defendant's Motion to Clarify That They Are Not In Default [DE 172, 173] is DENIED.

(4)   Defendants' Motion to Vacate Default [DE 174, 175] is GRANTED. The vacatur has four conditions: (i) Defendants' payment of Plaintiff's cost and attorneys fees incurred in preparing for and trying the two-day damage trial and briefings to respond to Defendants' motion to set aside the Clerk's default, the default judgment on liability and the motions addressed in this order;[17] (ii) Defendants' stipulation that if Saperstein and his wife chose, they do not have to travel to the United

---

[16] Plaintiffs request that admissions to which Defendants have not responded be duly admitted into the record pursuant to Fed. R. Civ. P. 36(a). (*See* DE 116, Ex. 1, 2.) However, because these admissions were only sought in preparation for the damages trial and the goal is to litigate the merits of the case, the request is denied.

[17] Consistent with the requirements of Local Rule 7.3B. of District Court of the Southern District of Florida, Plaintiff's counsel shall submit an application for fees and costs consistent with this Order no later than **October 29, 2008.** If the parties agree to all or any part of the application, they shall advise the Court. **Within thirty (30) days** of the Court's Order setting the recoverable fees and costs, Defendants must pay the same.

-31-

States to testify and that their testimony from the damages trial before Magistrate Judge Turnoff may be read into the record; (iii) Defendants' stipulation that venue in this district is proper; and (iv) the preclusion of the Defendants' filing of any summary judgment motions.

(5)    Plaintiff Moshe Saperstein's Motion to Establish Revised Procedures for Entry of Final Judgment [DE 155] is DENIED AS MOOT.

(6)    The parties shall confer and submit, no later than **November 3, 2008**, a joint scheduling report to determine a case management plan and set an expedited trial date.

DONE and ORDERED in Miami, Florida, this 29R day of September, 2008.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT COURT

cc:
Magistrate Judge John O'Sullivan
Magistrate Judge William Turnoff
Counsel of Record

-32-