# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

        Plaintiffs – Judgment Creditors,

      v.                               C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.,

        Defendants – Judgment Debtors.

## DECLARATION OF ROBERT J. TOLCHIN

I, Robert J. Tolchin of New York, declare pursuant to 28 U.S.C. § 1746, as follows:

1.      I am an attorney licensed to practice in New York and represent the Plaintiffs – Judgment Creditors herein ("Ungars") in various proceedings brought to enforce the judgment entered in this action in July 2004, both in the United States and abroad, and I have first-hand knowledge of those proceedings.

2.      On February 17, 2009, the Appellate Division of the New York Supreme Court issued a decision finding that the PA committed a fraudulent conveyance to the Palestine Monetary Authority ("PMA"), by waiving its right to receive the PMA's annual profits during the pendency of enforcement proceedings brought by the Ungars against the PMA. *See Palestine Monetary Authority v. Strachman*, 873 N.Y.S.2d 281, 289-90 (1st Dep't 2009).

3.      In the course of the proceedings before the New York trial court, the PMA submitted a copy of the waiver of profits executed by the PA (with the sum of the profits redacted by the PMA). A true copy of the original Arabic-language waiver executed by the PA, along with an English-language translation thereof and a declaration from the head of the PMA

confirming that that the waiver was signed personally by PA President Mahmoud Abbas, all of which were submitted by the PMA to the New York trial court, are attached hereto as Exhibit 1.

4.      In June 2005, the Ungars brought proceedings in the Jerusalem District Court to domesticate their judgment in Israel. The PA and PLO appeared in those proceedings and have contested them vigorously ever since. On August 31, 2008, after more than three years of intensive litigation, the Jerusalem District Court issued a 53-page judgment finding that the judgment entered by this Court in the instant action in July 2004 is enforceable in Israel.

5.      Following entry of the August 31 judgment, the Ungars moved the Jerusalem court for a post-judgment attachment on tax payments transferred each month by the Israeli government to the PA.[1] The Ungars requested a post-judgment attachment in the full amount of the judgment entered in this action, to accumulate in monthly installments in the amount of 18 million NIS (about $4.5 million) per month.[2]

6.      The Jerusalem District Court granted the Ungars' post-judgment attachment motion *ex parte* on September 7, 2008.

7.      The PA and PLO then moved for a stay of execution pending appeal of the August 31 judgment of the Jerusalem District Court to the Israeli Supreme Court.

---

[1]      These transfers consist of income tax withheld at the source by Israeli employers on the salaries of PA residents working in Israel, import duties collected at Israeli ports on merchandise destined for the PA, and value-added-tax payments on transactions involving residents of the PA.

[2]      The Ungars made clear in their motion to the Jerusalem court that they were seeking installment payments, rather than an immediate attachment in the full amount of the judgment, purely *ex gratia*, in order to neutralize in advance any (false) claim by the PA that an immediate attachment in the full amount would cause the PA a financial crisis.

8.    On October 29, 2008, the Jerusalem District Court issued a decision on the motion for a stay. An accurate English-language translation of that October 29, 2008 decision, along with a true copy of the original Hebrew-language decision, is attached hereto as Exhibit 2.[3]

9.    In the October 29 decision, the Jerusalem court granted defendants' motion for a stay pending appeal, on the condition that the post-judgment attachment on the tax transfers in the amount of 18 million NIS per month remain in force, such that the funds accumulated during the pendency of the appeal (i.e. 18 million NIS per month, up to the full amount of the judgment) would be held by the Israeli Treasury until the conclusion of the defendants' appeal, and thereby be available to satisfy the Ungars' judgment if the appeal is denied. *See id.* at ¶¶ 8-10.[4]

10.    Thus, pursuant to the Israeli attachment, between September 7, 2008 and today, attached PA funds amounting to about 126 million NIS (18 million NIS x 7 months) have accumulated at the Israeli Treasury.

11.    Separately, earlier in the proceeding, the Jerusalem court had ordered an attachment on tax transfers to the PA in the amount of 100 million NIS. *See* Exhibit 2 at ¶ 9. Thus, as of today, the total amount of PA funds attached and held by the Israeli Treasury, pending the defendants' appeal to the Israeli Supreme Court of the August 31 2008 judgment of the Jerusalem District Court, is about 226 million NIS (approximately $56.5 million).

12.    Defendants' appeal to the Israeli Supreme Court, C.A. 8751/08 *Palestinian Authority et al. v. Ungar*, is scheduled for oral argument on January 14, 2010.

---

[3]    I am fluent in English and Hebrew and capable of translating accurately between those languages, and I confirm the accuracy of the translation.

[4]    However, the Jerusalem court denied the motion for a stay in respect to the sum of 1 million NIS (about $250,000) which it had awarded the Ungars in its August 31 judgment for costs and attorney's fees. *See* Exhibit 2 at ¶ 11. Despite the absence of any stay in respect to this sum, the defendants have refused to pay it.

13.    On November 11, 2008, the defendants filed a "Reply to Motion to Postpone Time to File a Motion to Confirm the Attachment" in the Jerusalem District Court, in which they expressly waived any appeal of that court's October 29 decision conditioning a stay of enforcement on the monthly attachment in the amount of 18 million NIS. An accurate English-language translation of defendants' November 11 filing, along with a true copy of the original Hebrew-language filing, is attached hereto as Exhibit 3.[5]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

April 7, 2009

Robert J. Tolchin

---

[5]    I confirm the accuracy of the translation.

# EXHIBIT 1

Palestine Monetary Authority  سلطة النقد الفلسطينية

الرقم: م.م/2/4H /2006
التاريخ: 8 /2/2006

الأخ الرئيس محمود عباس " أبو مازن"        حفظه الله
رئيس اللجنة التنفيذية لمنظمة التحرير الفلسطينية.
رئيس السلطة الفلسطينية.

تحية طيبة وبعد،

استنادا للمواد رقم (10، 11، 13) من قانون سلطة النقد رقم 2 لعام 1997 المتعلقة بتوزيع
الأرباح، واستنادا لقرار مجلس الإدارة رقم (59/3) نرجو موافقتكم على ذلك القرار بتحويل
صافي الأرباح المتحققة في سلطة النقد لعام 2005 وفقاً للحسابات الختامية المدققة والمقدرة
حالياً ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓ إلى حساب الاحتياطي العام، وذلك لتعزيز المركز المالي لسلطة النقد
وتفضلوا بقبول فائق الاحترام

د. جورج العبد
المحافظ

Palestine Monetary Authority                                                        سلطة النقد الفلسطينية

No. 44 b. m.m./2/2006
Date: 8/2/2006

**President Mahmoud Abbas "Abu Mazen"   God Bless him**
**President of the Executive Committee of the Palestinian Liberation Organization**
**President of the Palestinian Authority**

**Greetings,**

Based on article (10,11,13) of the Monetary Authority law number 2 for the year 1997 and that is related to the distribution of the Monetary Authority's profit, and based on the decision of the Administrative Board number (3/59) we request your approval of the decision to transfer net profits that have been achieved by the Monetary Authority for the year 2005 in accordance to the audited final and estimated calculations currently in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to the general reserve account in order to enhance the Banking situation of the Monetary Authority.

**Please accept our great respect.**

**Dr. George al Abed**
**The Governor**

Approved
Signed on 9/2/2006

Ramallah Al-Bireh P.O. Box 452, Tel 02 240 9920, Fax 02 240 9922        رام الله - البيرة ص.ب. 452، هاتف 9922 240 02، فاكس 9920 240 02
Gaza P.O. Box 4026 Tel. 08 282 5713, Fax 08-284 4487                      غزة ص.ب. 4026، هاتف 5713 282 08، فاكس 4487-284 08
E-mail: info@pma.gov.ps                                                    www.pma.palestine.org

CERTIFICATE OF TRANSLATION

I, Ghada Attieh, thereby certify that the attached translation of the following document is complete and correct. I also certify that I am competent to translate from Arabic into English.

_Ghada Attieh_
Signature

_GHADA ATTIEH_
Print Name

_April 17, 2006_
Date

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------X

PALESTINE MONETARY AUTHORITY,

        Plaintiff,

        v.

DAVID STRACHMAN, as administrator of the
ESTATE OF YARON UNGAR, et al.,

        Defendants.

--------------------------------------------------------X

Index No. 107777/05

**DECLARATION OF
GEORGE T. ABED**

        GEORGE T. ABED, pursuant to 28 U.S.C. § 1746, being duly sworn, deposes and says:

        1.     My name is George T. Abed. My business address is P.O. Box 452, Nablus Road, Ramallah, Palestine. I am over the age of twenty-one years, have personal knowledge as to the matters contained herein and am otherwise competent to testify as to those matters.

        2.     I am the Governor of the Palestine Monetary Authority (the "PMA"). I am familiar with the signature of President Mahmoud Abbas in my role as Governor of the PMA. The document attached as Exhibit C to my Declaration dated April 14, 2006, bears the signature of President Abbas, which was affixed to the document on February 9, 2006.

        FURTHER DECLARANT SAYETH NOT.

                                     GEORGE T. ABED

                                       Ramallah, Palestine
                                     April 15, 2006

EXHIBIT 2



## THE COURTS

**In the Jerusalem District Court**

**Before: Hon. Judge Aharon Farkash**

Misc. Civ. Mot. 3955/08
In main case: H.P. 4318/05
10/29/2008

In the matter of:

1. **The Palestinian Authority**
2. **The Palestine Liberation Organization**
   **By their counsel attorneys Yosef Arnon et al.**

<u>Movants</u>
Respondents in the main case

versus

Yishai Ungar (minor) et al.
By their counsel attorneys Mordechai Haller and Co.

<u>Respondents</u>
Movants in the main case

# <u>Decision</u>

<u>The Motion</u>

1. Before me is a motion to stay enforcement of a judgment which was given on 8.31.08 in H.P. 4318/05. In that judgment, a foreign judgment given by the United States federal court in the District of Rhode Island was declared enforceable, and the movants were ordered to pay costs and attorney's fees in the total amount of 1,000,000 NIS. In the foreign judgment the movants (the respondents in the main case), along with others, were ordered to compensate some of the respondents (the movants in the main case) in the amount of 116,409,123 U.S. dollars, plus attorney's fees.



## THE COURTS

### Summary of the Parties' Arguments

2.    The movants seek to stay enforcement of the judgment until entry of judgment in the appeal which they intend to file in the Supreme Court (it should be noted that during the hearing held on 10.22.08, movants' counsel stated that the appeal was indeed filed the same day). They assert that a stay of enforcement is justified, both in light of the good chances of the appeal, and because enforcement of the judgment will cause them irreversible harm. The movants claim that the judgment is unusual and constitutes a first of its kind precedent in the case law of the courts in Israel for various reasons, and *inter alia* because at issue is a foreign judgment given in the absence of a defense which, they claim, imposes liability on a foreign political entity for acts of terror, and because of the high amount of damages awarded. The movants believe that declaring the foreign judgment enforceable has far-reaching public ramifications on the State of Israel and its citizens and that the outcome of the judgment is not correct and not proper in the circumstances of the matter. Additionally, the movants reiterate their main arguments in the main case. In light of the above, the movants believe that there is a real and strong chance that the appeal will be granted and the foreign judgment will not be declared enforceable. Regarding the possibility of restoring the status quo ante, it is argued that the temporary attachments that were placed on the movants' funds will remain in force until the judgment is enforced. It is likewise argued, that every month tax monies are transferred from the State of Israel to the Palestinian Authority (250-300 million NIS), pursuant to the political agreements between them, and the respondents can also be paid from these monies, if the appeal is denied. On the other hand, it is argued, if the funds are paid to the respondents now, and the appeal is granted, the chance that the funds will be returned to the movants is virtually zero, since at issue are private individuals and since some of the movants are American citizens and there is no way to know to where the funds will be transferred. It is also argued that payment of the massive sums that were awarded in the foreign judgment will cause the movants irreversible harm, and disrupt the conduct of the Palestinian Authority's on-going affairs.

In support of their arguments, the movants attached to their motion the affidavit of Nadim



**THE COURTS**

al-Barahama, Chairman of the Lands Authority in the Palestinian Authority since November 2007, who previously served as a legal advisor to the Finance Ministry in the Palestinian Authority.

3.   The respondents oppose the motion. In their view, the movants did not succeed in their motion in pointing to a legal or factual error in the judgment and their arguments are nothing but a summary reiteration of the arguments made by them in the main case, which were rejected in the judgment. The respondents stand behind the judgment and believe that the chances of the appeal are nearly zero.

In respect to the balance of convenience it is argued that the claim regarding disruption of the conduct of the Palestinian Authority's on-going affairs is a bald claim, and that in any event the respondents agreed, in the framework of the motion for an attachment filed by them (Misc. Civ. Mot. 3941/08), to set a monthly collection ceiling of only 18 million NIS, so that practically, the amount attached constitutes only a few percent of the total monthly amount transferred to the Palestinian Authority. It is also argued that the funds transferred to the Palestinian Authority every month cannot be "relied" upon because the Authority is a temporary entity which will be replaced by a new and independent legal entity when a Palestinian state is established, and then the transfer of funds will be halted and enforcement of the judgment will be thwarted; because of the Hamas takeover of the Palestinian Authority' centers of power in the Gaza Strip; and because the amount of the funds transferred might shrink in the future.

The respondents also reject the movants' claim regarding the weak chances of returning the status quo ante if the appeal if granted, since, in their view, "this claim is based on nothing but mere speculations," and is even galling, considering the fact that the movants have been refusing to honor the foreign judgment for four years and are evading payment of the debt.

The respondents propose in the alternative, if it is decided to stay enforcement of the judgment, that the stay of enforcement be conditioned on conditions that will ensure their rights, primarily: transfer of the sum previously attached in Misc. Civ. Mot. 496/06 and in



## THE COURTS

Misc. Civ. Mot. 497/06 (100 million NIS), along with the amount of the monthly attachment (in the sum of 18 million NIS) to an escrow account, which will be jointly held by counsel for the parties and invested in an interest-bearing plan, as well as the registration of a lien in favor of the respondents on the funds in the escrow account.

It should be noted that the respondents refrained from attaching an affidavit to their response.

### The Normative Framework

4.    The rule is that "the filing of an appeal shall not stay enforcement of decision appealed from" (Regulation 466 of the Civil Procedure Regulations, 5744 – 1984 (hereinafter: the Regulations)). This rule has exceptions (Regulations 467-470), which afford the court discretion to stay enforcement of a judgment. In the framework of this discretion, the court should examine two considerations: the movant's chances of success on appeal and the balance of convenience between the parties (Civil Appeal 7688/06 *Goldenberg v. Maccabi Geberal Health Services* (unpublished, 9.25.06)); Civil Appeal by Leave *Taholian v. G.M.C.L. Building Company 1992 Ltd.*, (unpublished, 1.21.07)). Regarding the chances of the appeal, they are examined at this stage on a prima facie basis only. The court does not conduct a detailed examination and it is sufficient that it is convinced that the appeal is not baseless (Civil Appeal 6146/00 *City of Tel Aviv Jaffa v. Betzalel* (unpublished, 11.19.00)). Regarding the balance of convenience the court examines whether, in the event that the appeal is granted, it will be impossible, or extremely difficult, to restore the status quo ante. The court also examines the harm that will be caused the movant as a result of the immediate enforcement of the judgment, versus the harm to the respondent as the result of a stay (Civil Appeal 9784/05 *City of Tel Aviv Jaffa v. Attorney Goren* (unpublished, 12.1.05)). These two considerations – the chances of the movant to prevail on appeal and the balance of convenience – are interrelated, dependant on one another and influenced by one another (Administrative Appeal 9177/01 *Sharbat Bros. Entrepreneurs and Builders 1989 Ltd. v. City of Tel Aviv Jaffa*, P.D. 56(2) 163, 167 (2001)). Thus, the greater the



**THE COURTS**

chances of the appeal appear, the lower the burden on the movant regarding the balance of convenience (Civil Appeal 6146/00, *id.*, at ¶ 10 of the decision). In any case, the central consideration is the balance of convenience (Civil Appeal 8380/06 *Custodian General v. Doe* (unpublished, 12.10.06), ¶ 9 of the decision and the authorities cited there).

5.   On the basis of these principles, the case law has established that a judgment imposing a financial obligation will be stayed only rarely, considering that such a judgment is inherently reversible, and that what is paid can be recouped (e.g., Misc. Civ. Mot. 216/89 *Avrahami and Sons Building Co. Ltd. v. United Mizrahi Bank Ltd.*, P.D. 43(2) 172 (1989); Civil Appeal 9296/03 *Aharoni v. Menashe*, P.D. 58(2), 301 (2003) and the authorities there). Nonetheless, in appropriate cases in which a solid evidentiary foundation has been laid that if the appeal is granted it will be difficult for the movant-appellant to be repaid by his adversary, enforcement of even a judgment imposing a financial obligation will be stayed (Misc. Mot. 978/84 *Shikun Ovdim Ltd. v. Melovenchik*, P.D. 38(4) 572 (1984).

**<u>From the General to the Specific</u>**

6.   The judgment details and disposes of numerous disputes between the parties. Many of the disputes are legal in nature and to the best of my understanding some of them have not yet been discussed or disposed of in the case law. Therefore, it is difficult to assess at this stage the chances of the appeal, though it is not possible to negate such chances entirely.

7.   Regarding the balance of convenience. As stated, a central consideration examined in respect to the balance of convenience is whether in the event that the movants prevail on their appeal, it will be impossible or very difficult to recoup their funds from the respondents. In our case, it is not possible to make such a finding unequivocally. The movants did not lay any factual foundation whatsoever that the respondents are in difficult financial circumstances, or any other detail which could show a future difficulty to collect the debt from them. The respondents also chose to remain silent on this issue and argued



## THE COURTS

only that the claim regarding the difficulty of restoring the status quo ante was asserted baldly.

In my opinion, consideration should be given to the fact that an extremely large sum is at issue. It is true that the substance of the judgment is the declaration that the foreign judgment is enforceable, but the legal implication of that declaration is that the status of the foreign judgment for purposes of enforcement is the same as that of a judgment given in Israel (article 10(a) of the Foreign Judgment Enforcement Law, 5718 – 1958). Thus, practically, the operational meaning of the judgment is to obligate the movants for a sum of over 116,000,000 dollars. The amount of this sum is a consideration in assessing the difficulty of recoupment in the event that the judgment is overturned on appeal (Civil Appeal 1578/05 *Maoz Insurance Co. Ltd. v. Estate of Elbaz, Deceased* (unpublished, given on 5.8.05), since the movants are liable to encounter difficulty in recouping this large amount (compare also: Civil Appeal 2841/07 *Israel Lands Authority v. Local Planning and Building Committee Tel Aviv – Jaffa* (not yet published, 8.25.08)). In their response, the respondents did not discuss this argument, which is not without logic. In my view, this ground constitutes a central ground in the instant case to grant the movants' motion, subject to the condition detailed below.

8.    Under Regulation 469 of the Regulations, the court is permitted to condition a stay of enforcement of the judgment "on such conditions as it deems." In the framework of the grouping of considerations and balances in this case – on the one hand, the interest of the respondents in receiving the financial compensation awarded in the foreign judgment after many years, and alternatively, relieving their concern that if the movants' appeal is denied there will be no one to pay them, as they detailed in their grounds to the movants' reply, and on the other hand, the movants' concern that if the amount awarded is paid to the respondents they will not be able to recoup it – it appears that the motion to stay enforcement of the judgment should be granted, but that the stay should be subject to a condition as detailed below.



**THE COURTS**

9.    As noted, pursuant to the motion and suggestion of the respondents in the framework of Misc. Civ. Mot. 3941/08, the sum of 18 million NIS is being attached each and every month, since 9.7.08, out of the funds that are supposed to be transferred to the movants by the garnishee – the State of Israel. This sum is in addition to the sum of 100 million NIS which was already attached and is being held by the State of Israel for the benefit of the respondents. It appears that a condition regarding the continuation of the attachments pursuant to the order of attachment constitutes a reasonable and balanced solution in this case. On the one hand, the attached funds, the amount of which was requested by the respondents themselves, are in the possession of the garnishee and there is no real concern that they will not be paid if the movants' appeal is denied, and on the other hand, the movants will receive the attached funds if their appeal is granted.

10.   The result is that I order a stay of enforcement of the judgment in H.P. 4318/05 until entry of judgment in the movants' appeal in the Supreme Court, on condition that and so long as the monthly attachment in the amount of 18 million NIS on the monies which are transferred by the garnishee to the movants remains in force.

11.   Enforcement of the judgment, in respect to the sum of one million NIS awarded as costs and attorney's fees, is not stayed.

12.   **The secretariat** shall send a copy of the decision to counsel for the parties.

**Given this day, 30 Tishrei 5769 (29 October 2008), in the absence of the parties.**


_____

Aharon Farkash, Judge



**בתי המשפט**

ا

<table>
<tr><td align="right">בש"א 3955/08<br>תיק עיקרי: ה"פ 4318/05<br>29/10/2008</td><td align="right">בבית המשפט המחוזי בירושלים</td></tr>
</table>

לפני :    כבוד השופט אהרן פרקש

בעניין:    1. הרשות הפלסטינית
2. הארגון לשחרור פלסטין
ע"י ב"כ עו"ד    יוסף ארנון ואח'      **המבקשים**
המשיבים בתיק העיקרי

נ ג ד

ישי אונגר (קטין) ואח'
ע"י ב"כ עו"ד    מרדכי הלר ושות'      **המשיבים**
המבקשים בתיק העיקרי

## החלטה

<u>הבקשה</u>

1. לפניי בקשה לעיכוב ביצוע פסק דין, אשר ניתן ביום 31.8.08 בה"פ 4318/05. בפסק הדין הוכרז פסק חוץ שניתן על ידי בית המשפט הפדרלי של ארצות-הברית במחוז רוד איילנד – אכיף והמבקשים חוייבו בתשלום הוצאות ושכר-טרחת עורך-דין בסך כולל של 1,000,000 ₪. בפסק החוץ חוייבו המבקשים (המשיבים בתיק העיקרי), יחד עם אחרים, בפיצוי חלק מהמשיבים (המבקשים בתיק העיקרי) סך של 116,409,123 דולר ארה"ב, בצירוף שכר-טרחת עורך-דין.

<u>תמצית טענות הצדדים</u>

2. המבקשים עתרו לעיכוב ביצועו של פסק הדין עד למתן פסק דין בערעור שבדעתם להגיש לבית המשפט העליון (יצוין, כי בדיון שנערך ביום 22.10.08 הודיע ב"כ המבקשים כי הערעור אכן הוגש באותו יום). לטענתם, קיימת הצדקה לעיכוב הביצוע, הן לאור סיכוייו הטובים של הערעור, והן משום שביצועו של פסק הדין יסב להם נזק בלתי הפיך. המבקשים טוענים, כי פסק הדין הינו יוצא דופן ומהווה תקדים ראשון מסוגו בפסיקת בתי המשפט בארץ מסיבות שונות, ובין היתר, משום שמדובר בפסק חוץ שניתן בהעדר הגנה, המטיל, לשיטתם, אחריות על ישות מדינית זרה בגין מעשי טרור, וכן בשל סכום הפיצוי הגבוה שנפסק. המבקשים



# בתי המשפט

2

בבית המשפט המחוזי בירושלים                    בש"א 3955/08
                                              בתיק עיקרי : ה"פ 4318/05
                                              29/10/2008

לפני :   כבוד השופט אהרן פרקש

סבורים, כי להכרזת פסק החוץ אכיף השלכות ציבוריות מרחיקות לכת על מדינת
ישראל ועל אזרחיה וכי תוצאת פסק הדין אינה נכונה ואינה ראויה בנסיבות
העניין. כמו כן חוזרים המבקשים על עיקר טענותיהם בתיק העיקרי. לאור האמור
סבורים המבקשים, כי קיים סיכוי ממשי ואיתן כי הערעור יתקבל ופסק החוץ לא
יוכרז אכיף. אשר ליכולת השבת המצב לקדמותו נטען, כי העיקולים הזמניים
שהוטלו על כספי המבקשים יעמדו בתוקפם עד לביצועו של פסק הדין. כמו כן
נטען, כי מדי חודש מוזרמים כספי מיסים ממדינת ישראל לרשות הפלשתינאית
(250 – 300 מיליון ₪), בהתאם להסכמים המדיניים ביניהן, והמשיבים יוכלו
להיפרע גם מכספים אלו, במידה שהערעור יידחה. לעומת זאת, נטען, אם ישולמו
הכספים למשיבים כבר עתה, והערעור יתקבל, הסיכוי כי הכספים יושבו לידי
המבקשים הינו אפסי, משום שמדובר באנשים פרטיים ומשום שחלק מהמבקשים
הינם אזרחים אמריקאיים ואין לדעת להיכן יועברו הכספים. כמו כן נטען, כי
תשלום סכומי העתק שנפסקו בפסק החוץ יגרום למבקשים נזק בלתי הפיך, וישבש
את ניהול ענייניה השוטפים של הרשות הפלשתינאית.

המבקשים צירפו לבקשתם לתמיכה בטענותיהם את תצהירו של נדים
אל-בראהמה, יושב ראש רשות המקרקעין ברשות הפלשתינאית מאז נובמבר 2007
ולפני כן שימש כן יועץ משפטי למשרד האוצר ברשות הפלשתינאית.

3.   המשיבים מתנגדים לבקשה. לשיטתם, המבקשים לא הצליחו להצביע בבקשתם על
     טעות משפטית או עובדתית בפסק הדין וטיעוניהם אינם אלא חזרה תמציתית על
     הטיעונים שנטענו על ידם בתיק העיקרי, ואשר נדחו בפסק הדין. המשיבים
     תומכים בפסק הדין וסבורים כי סיכויי הערעור שואפים לאפס.
     לעניין מאזן הנוחות נטען, כי הטענה בדבר שיבוש ניהול ענייניה השוטפים של
     הרשות הפלשתינאית הינה טענה סתמית, וממילא הסכימו המשיבים, במסגרת
     בקשה למתן צו עיקול שהגישו (בש"א 3941/08), לקביעת תקרת גבייה חודשית של
     18 מיליון ₪ בלבד, כך שלמעשה הסכום המעוקל מהווה אחוזים בודדים מהסכום
     החודשי הכולל המועבר לרשות הפלשתינאית. כמו כן נטען, כי לא ניתן "לסמוך"
     על כספים המועברים לרשות הפלשתינאית מדי חודש, משום שהרשות הינה ישות
     ארעית שתוחלף בישות משפטית חדשה ועצמאית לכשתוקם מדינה פלשתינית, או

**בתי המשפט**

3

<div dir="rtl">

בש"א 3955/08
בתיק עיקרי: ה"פ 4318/05
29/10/2008

בבית המשפט המחוזי בירושלים

לפני: כבוד השופט אהרן פרקש

אז ייפסק תזרים הכספים ומימוש פסק הדין יסוכל; משום השתלטות החמאס על מרכזי הכוח של הרשות הפלסתינאית ברצועת עזה; ומשום שהיקף תזרים הכספים עלול להצטמצם בעתיד.

המשיבים אף דוחים את טענת המבקשים בדבר הסיכויים הקלושים להשבת המצב לקדמותו אם יתקבל הערעור, שכן, לשיטתם, "טענה זו תלויה על בלימה ועל השערות בעלמא", והיא אף מקוממת בהתחשב בעובדה שהמבקשים מסרבים לכבד את פסק החוץ מזה כארבע שנים ומתחמקים מתשלום החוב.

המשיבים מציעים לחלופין, כי אם יוחלט לעכב את ביצוע פסק הדין, יותנה עיכוב הביצוע בתנאים שיבטיחו את זכויותיהם, שעיקרם העברת הסכום שעוקל עד כה בבש"א 496/06 ובבש"א 497/06 (100 מיליון ₪) וכן העברת סכום העיקול החודשי (בסך של 18 מיליון ₪) לחשבון נאמנות, אשר ינוהל במשותף על ידי ב"כ הצדדים ויושקע בתכנית בתכנית נושאת ריבית, ומישכון הכספים שבחשבון הנאמנות לטובת המשיבים.

יצוין, כי המשיבים נמנעו מלצרף תצהיר לתשובתם.

**המסגרת הנורמטיבית**

4. הכלל הוא כי **"הגשת ערעור לא תעכב את ביצוע ההחלטה שעליה מערערים"** (תקנה 466 לתקנות סדר הדין האזרחי, התשמ"ד-1984 (להלן: התקנות)). לכלל זה ישנם יוצאים מן הכלל (תקנות 470-467 לתקנות), המעניקים לבית המשפט שיקול דעת לעכב ביצועו של פסק דין. במסגרת שיקול הדעת, יבחן בית המשפט שני שיקולים: סיכויי המבקש לזכות בערעור ומאזן הנוחות בין הצדדים (ע"א 7688/06 **גולדנברג נ' מכבי שירותי בריאות כללית** (לא פורסם, 25.9.06)); רע"א 8317/06 **טהוליאן נ' ג.מ.ח.ל חברה לבניה 1992 בע"מ** (לא פורסם, 21.1.07)). לעניין סיכויי הערעור, אלו נבחנים בשלב זה באופן לכאורי בלבד. בית המשפט אינו נכנס לעובי הקורה ודי בכך שישתכנע כי הערעור אינו משולל יסוד (ע"א 6146/00 **עיריית תל אביב יפו נ' בצלאל** (לא פורסם, 19.11.00)). לעניין מאזן הנוחות בוחן בית המשפט האם במקרה שהערעור יתקבל, יהיה זה בלתי אפשרי, או קשה ביותר, להשיב את המצב לקדמותו. עוד בוחן בית המשפט את הנזק אשר ייגרם למבקש כתוצאה מביצוע מיידי של פסק הדין, לעומת הנזק למשיב כתוצאה מעיכובו (ע"א 9784/05

</div>



**בתי המשפט**

4

<div dir="rtl">

בש"א 3955/08
בתיק עיקרי: ה"פ 4318/05
29/10/2008

בבית המשפט המחוזי בירושלים

לפני: כבוד השופט אהרן פרקש

**עיריית תל-אביב-יפו נ' עו"ד גורן** (לא פורסם, 1.12.05). שני שיקולים אלו —
סיכויי המבקש לזכות בערעור ומאזן הנוחות — מקיימים יחסי גומלין ביניהם והם
תלויים זה בזה ומושפעים זה מזה (ע"ע 9177/01 **אחים שרבט יוזמים ובונים
1989 בע"מ נ' עיריית תל-אביב-יפו**, פ"ד נו(2) 163, 167 (2001)). כך, ככל שסיכויי
הערעור נחזים לגבוהים יותר יוקל הנטל המונח על כתפי המבקש בעניין מאזן
הנוחות (ע"א 6146/00 הנ"ל, פסקה 10 להחלטה). מכל מקום, השיקול המרכזי
הינו מאזן הנוחות (ע"א 8380/06 **האפוטרופוס הכללי נ' פלוני** (לא פורסם,
10.12.06), פסקה 9 להחלטה והאסמכתאות שם).

5. על יסוד עקרונות אלו נקבע בפסיקה, כי פסק דין המטיל חיוב כספי יעוכב לעיתים
נדירות בלבד, בהתחשב בכך שפסק הדין כזה הוא מטבעו הפיך, ואת ששולם ניתן
להשיב (למשל, בש"א 216/89 **אברהמי ובניו חברה לבנין בע"מ נ' בנק המזרחי
המאוחד בע"מ**, פ"ד מג(2) 172 (1989); ע"א 9296/03 **אהרוני נ' מנשה**, פ"ד נח(2),
301 (2003) והאסמכתאות שם). יחד עם זאת, במקרים מתאימים בהם הונחה
תשתית עובדתית מבוססת לכך שאם יתקבל הערעור יקשה על המבקש-המערער
להיפרע מבעל דינו, יעוכב אף ביצועו של פסק דין המטיל חיוב כספי (ב"ש 978/84
**שיכון עובדים בע"מ נ' מלובנציק**, פ"ד לח(4) 572 (1984)).

<u>מן הכלל אל הפרט</u>

6. בפסק הדין פורטו והוכרעו מחלוקות רבות בין הצדדים. רבות מהמחלוקות הן
משפטיות במהותן ולמיטב הבנתי חלקן טרם נדונו והוכרעו בפסיקה. לפיכך קשה
להעריך בשלב זה את סיכויי הערעור, אם כי לא ניתן לשלול לחלוטין סיכויים אלה.

7. אשר למאזן הנוחות. כאמור, שיקול מרכזי הנבחן בגדר מאזן הנוחות הוא האם
במקרה בו יזכו המבקשים בערעורם, יהא זה מן הנמנע או קשה מאוד לגבות
בחזרה את כספיהם מן המשיבים. בענייננו, לא ניתן לקבוע זאת באופן חד משמעי.
המבקשים לא הניחו תשתית עובדתית כלשהי כי המשיבים מצויים במצב כלכלי
קשה, או כל פרט אחר העשוי ללמד על קושי עתידי לגבות מהם את החוב. גם

</div>



**בתי המשפט**

5

בש"א 3955/08
בתיק עיקרי: ה"פ 4318/05
29/10/2008

בבית המשפט המחוזי בירושלים

לפני : כבוד השופט אהרן פרקש

המשיבים בחרו לשתוק בנושא זה וכל שטענו הוא כי הטענה בדבר הקושי בהשבת המצב לקדמותו נטענה בעלמא.

לדעתי, יש ליתן את הדעת לכך שמדובר בסכום גבוה ביותר. אמנם ענייננו של פסק הדין בהכרזת פסק החוץ אכיף, אך המשמעות המשפטית של הכרזה זו היא כי דינו של פסק החוץ לעניין הוצאה לפועל כדין פסק שניתן כדין בישראל (סעיף 10(א) לחוק אכיפת פסקי חוץ, התשי"ח-1958). כך שלמעשה המשמעות האופרטיבית של פסק הדין הוא חיובם של המבקשים בסכום של למעלה מ-116,000,000 דולר. שיעורו של סכום זה הינו שיקול בהערכת הקושי בהשבתו במקרה שפסק הדין ייהפך בערעור (ע"א 1578/05 **מעוז חברה לביטוח בע"מ נ' עיזבון המנוח אלבז** (לא פורסם, ניתן ביום 8.5.05), שכן המבקשים עלולים להיתקל בקושי להשיב לידיהם סכום גבוה זה (השווה גם: ע"א 2841/07 **מינהל מקרקעי ישראל נ' הוועדה המקומית לתכנון ובניה תל אביב-יפו** (טרם פורסם, 25.8.08)). המשיבים לא התייחסו בתשובתם לטענה זו, שאיני משוללת הגיון. לשיטתי, נימוח זה מהווה משום נימוק מרכזי במקרה דנן להיעתר לבקשת המבקשים, בתנאי שיפורט להלן.

8. על פי תקנה 469 לתקנות ראשי בית המשפט להתנות את עיכוב ביצוע פסק הדין "בתנאים שייראו לו". במסגרת מכלול השיקולים והאיזונים במקרה דנן - מחד, האינטרס של המשיבים לקבל את הפיצוי הכספי שנפסק בפסק החוץ לאחר שנים רבות, ולחלופין, הפגת חשש של מי שישולם להם, כפי שפירטו בנימוקיהם לתשובת המבקשים, ומאידך, חשש של המבקשים כי במידה שישולם למשיבים הסכום הפסוק לא יוכלו לגבותו חזרה - דומה, כי יש להיעתר לבקשה לעיכוב ביצוע פסק הדין ועם זאת להתנות את העיכוב בתנאי כפי שיפורט להלן.

9. כאמור, על פי בקשתם והצעתם של המשיבים במסגרת בש"א 3941/08, מעוקל מדי חודש בחודשו, למן יום 7.9.08, סך של 18 מיליון ₪ מהכספים האמורים להיות מועברים למבקשים על ידי המחזיקה - מדינת ישראל. סכום זה הינו בנוסף לסכום של 100 מיליון ₪ שכבר עוקלו ומוחזקים בידי מדינת ישראל לטובת המשיבים.



## בתי המשפט

6

בבית המשפט המחוזי בירושלים

בש"א 3955/08
בתיק עיקרי: ה"פ 4318/05
29/10/2008

לפני: כבוד השופט אהרן פרקש

דומה כי תנאי המשכת העיקולים על פי צו העיקול מהווה משום פתרון סביר ומאוזן במקרה דנן. מחד, הכספים המעוקלים שישיעורם התבקש על ידי המשיבים עצמם נמצאים בחזקת המחזיקה ואין חשש ממשי כי לא ישולמו אם ערעור המבקשים ידחה, ומאידך, יקבלו המבקשים את הכספים המעוקלים אם ערעורם ייענה.

10. התוצאה הינה כי אני מורה על עיכוב ביצוע פסק הדין בה"פ 4318/05 עד למתן פסק דין בערעור המבקשים בבית המשפט העליון, בתנאי וכל עוד העיקול החודשי בסך של 18 מיליון ₪ מתוך הכספים אשר מועברים על ידי המחזיקה למבקשים יעמוד בתוקפו.

11. ביצועו של פסק-הדין בכל הנוגע לסכום של מיליון ₪ שנפסק כהוצאות ושכר טרחת עורך דין אינו מעוכב.

12. המזכירות תשלח העתק ההחלטה לבאי כוח הצדדים.

ניתנה היום, ל' בתשרי תשס"ט (29 באוקטובר 2008), בהעדר הצדדים.

_____
אהרן פרקש, שופט

Exhibit 3

**In the Jerusalem District Court**                              <u>H.P. 4318/05</u>
                                                                  **Before Hon. A. Farkash, J.**


**Yishai Ungar et al.**
All by their counsel attorneys Mordechai Haller and Co.
10 Coresh St. Jerusalem 94144
Tel. 02-9999837 Fax 02-6667211

<div align="right"><u>**Movants**</u></div>


<div align="center">- against -</div>


1.    **The Palestinian Authority**
2.    **The Palestine Liberation Organization**
Both by their counsel attorneys Yosef Arnon et al.
Shlomtzion Hamalka St. 18, Jerusalem 94146
Tel. 02-6245245 Fax 02-6250777

<div align="right"><u>**Respondents**</u></div>


<div align="center">

**RESPONDENTS' REPLY TO MOTION
TO POSTPONE TIME TO FILE A MOTION TO CONFIRM THE ATTACHMENT**

</div>


Pursuant to the decision of the honorable court of 11.6.08, which reached the office of the undersigned on 11.8.08, the undersigned has the honor to notify the court and the movants that the respondents do not intend to file a motion for leave to appeal the decision regarding the stay of enforcement; thus there is no need for a postponement of time.


[Signature]
_____
Joseph Arnon, Adv.
Lic. No. 8005
Counsel for the Respondents

<div dir="rtl">

בבית המשפט המחוזי בירושלים

ה"פ 4318/05
קבוע בפני כב' הש' א. פרקש

ישי אונגר ואח'
כולם ע"י ב"כ עו"ד מרדכי הלר ושות'
מרח' כורש 10, ירושלים 94144
טל' 02-9999837 פקס 02-6667211

**המבקשים**

- נ ג ד -

**1. הרשות הפלסטינית**
**2. הארגון לשחרור פלסטין**
שניהם ע"י ב"כ עו"ד יוסף ארנון ואח'
מרח' שלומציון המלכה 18, ירושלים 94146
טל' 02-6245245 פקס 02-6250777

**המשיבים**

## תגובת המשיבים

## לבקשה לדחיית מועד להגשת בקשה לאישור העיקול

בהתאם להחלטת בית המשפט הנכבד מיום 6.11.08, שהגיעה למשרד החו"מ ביום 8.11.08, מתכבד החו"מ להודיע לבית המשפט ולמבקשים כי אין בכוונת המשיבים להגיש בקשת רשות לערער על ההחלטה בעניין עיכוב הביצוע, כך שאין צורך בדחיית מועד.

יוסף ארנון, עו"ד
מ.ר. 8005
ב"כ המשיבים

</div>

4250\93\10180 .יב