# United States Court of Appeals
## For the First Circuit

---

No. 09-1778

EFRAT UNGAR ET AL.,

Plaintiffs, Appellees,

v.

THE PALESTINE LIBERATION ORGANIZATION ET AL.,

Defendants, Appellants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

---

Before

Lipez, Circuit Judge,
Souter,[*] Associate Justice,
and Selya, Circuit Judge.

---

Laura G. Ferguson, with whom Mark J. Rochon, Miller & Chevalier Chartered, Deming E. Sherman, and Edwards Angell Palmer & Dodge LLP were on brief, for appellants.
David J. Strachman, with whom McIntyre, Tate & Lynch was on brief, for appellees.

---

March 25, 2010

---

[*]Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation

**SELYA**, <u>Circuit Judge</u>. This appeal turns on the question of whether there is a categorical rule that a party whose strategic choices lead to the entry of a default judgment is precluded as a matter of law from later obtaining relief from that judgment under Federal Rule of Civil Procedure 60(b)(6). The district court thought that precedent required it to apply such a categorical bar and, on that basis, it denied relief. <u>Estates of Ungar</u> v. <u>Palestinian Auth.</u> (<u>Ungar III</u>), 613 F. Supp. 2d 219, 229, 231 (D.R.I. 2009). We conclude that no categorical bar applies. Accordingly, we vacate the order appealed from and remand for reconsideration.

For present purposes, a brief synopsis of the factual and procedural background will suffice. The reader who hungers for greater detail may consult our previous opinion in this case. <u>See</u> <u>Ungar</u> v. <u>Palestine Liberation Org.</u> (<u>Ungar II</u>), 402 F.3d 274 (1st Cir. 2005).

This case began with a senseless double murder. Yaron Ungar and his wife Efrat were gunned down by Hamas militants in Israel during the year 1996. An Israeli criminal court convicted the killers. On March 13, 2000, the Ungars' estates and heirs brought suit against the Palestine Liberation Organization (PLO) and the Palestinian Authority (PA) for damages under the Anti-Terrorism Act (ATA), 18 U.S.C. §§ 2331-2338, which provides a cause of action in favor of American nationals harmed by acts of international terrorism. <u>Id.</u> § 2333. The plaintiffs alleged in substance that

-2-

the defendants gave aid and support to Hamas, including aid and support to the terrorist attack in which the Ungars were killed.[1]

The defendants neither answered the complaint nor participated in discovery. Instead, at various times from 2000 to 2005 they interposed motions asserting non-merits-based defenses of sovereign immunity, lack of jurisdiction, nonjusticiability, and the like. As the defendants now concede, the decision to stonewall in this fashion was a deliberate stratagem driven by the advice of their then-counsel and their unwillingness to recognize the authority of the federal courts.

The defendants' stratagem did not work. After considerable skirmishing, the district court, adopting a magistrate judge's report and recommendation, entered a default judgment against them on July 12, 2004. See Estates of Ungar v. Palestinian Auth. (Ungar I), 325 F. Supp. 2d 15, 69 (D.R.I. 2004). The amount of the judgment exceeded $116,000,000.[2] Id.

---

[1] We refer generically to the plaintiffs without identifying each of them. We note, however, that because Efrat Ungar was not a citizen of the United States, her estate and heirs are no longer parties. We use the term "defendants" to designate the PLO and the PA, jointly and severally. Even though others were sued, these two are the only defendants that matter now.

[2] The PA and PLO are jointly and severally liable for the damage award. However, each is liable to the plaintiffs for a different amount of attorneys' fees. The court thus entered a judgment of $116,421,048 against the PA and of $116,415,468 against the PLO.

-3-

The defendants appealed but still did not deign to address the merits; rather, they argued that they were entitled to a final resolution of their sovereign immunity defense before a default judgment could be entered. Ungar II, 402 F.3d at 292. We rejected that argument. Id. at 294.

By 2007, however, times had changed. The PLO and the PA had come under new leadership, and the new leaders desired to take a different approach to litigation pending in the federal courts. This decision affected a number of pending cases, including this one (in which the judgment remains unsatisfied).

On December 28, 2007, the defendants, represented by new lead counsel, moved in the district court under Rule 60(b)(6) to vacate the default judgment. They posited that exceptional circumstances justified this relief, mentioning among other things their own political transformation; the large size of the judgment (on which interest was accruing); the potential impact of further collection efforts on the Israeli-Palestinian peace process; and the delicate nature of this nation's foreign relations in the Middle East. The defendants pledged that, if the judgment were set aside, they would "litigate this matter fully and responsibly."

The district court denied the motion. Ungar III, 613 F. Supp. 2d at 231. The court focused the lens of its inquiry on the defendants' original decision to eschew participation in the defense of the case on the merits, notwithstanding the magistrate judge's

explicit warnings about the risks inherent in that course of action. Id. at 230-31. This timely appeal ensued.

The assignment of error is two-tiered. First, the defendants argue that the district court's deployment of a categorical rule to deny their Rule 60(b)(6) motion was incorrect as a matter of law. Second, they argue that refusing to grant Rule 60(b)(6) relief in these circumstances was an abuse of discretion.

The denial of a Rule 60(b)(6) motion is typically reviewed for abuse of discretion. Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co., 953 F.2d 17, 19 (1st Cir. 1992). This standard is not monolithic: within it, embedded findings of fact are reviewed for clear error, questions of law are reviewed de novo, and judgment calls are subjected to classic abuse-of-discretion review. R&G Mortg. Corp. v. FHLMC, 584 F.3d 1, 7-8 (1st Cir. 2009). To the extent that this appeal turns on the existence vel non of a categorical rule, it poses a pure question of law and, thus, engenders de novo review.

Rule 60(b) provides that, on motion and on such terms as are just, a district court may relieve a party from a final judgment. Fed. R. Civ. P. 60(b). The grounds for relief specified in the rule are grouped into six subsections. Each of the first five subsections describes a particular basis for relief from judgment. Rule 60(b)(6), however, is a catch-all provision. In terms, it authorizes the district court to grant relief from

-5-

judgment for "any other reason that justifies relief." The decision to grant or deny such relief is inherently equitable in nature. See United States v. One Star Class Sloop Sailboat, 458 F.3d 16, 25-26 & n.10 (1st Cir. 2006); Teamsters, 953 F.2d at 19-20.

Although Rule 60(b)(6) applies to motions that seek to relieve parties from judgments taken by default, a decision about whether to vacate a default judgment involves a unique "blend of centrifugal and centripetal forces." Teamsters, 953 F.2d at 19. This is so because, in addition to the usual medley of factors that influence the resolution of Rule 60(b) motions, granting or withholding relief from a default judgment entails balancing the importance of finality in litigation against the desirability of deciding cases on the merits. See id. Such decisions tend to rest on fact-specific considerations informed by the nature and circumstances of the particular case. See Paul Revere Variable Annuity Ins. Co. v. Zang, 248 F.3d 1, 5-6 (1st Cir. 2001).

A variety of factors can help an inquiring court to strike the requisite balance. Such factors include the timing of the request for relief, the extent of any prejudice to the opposing party, the existence or non-existence of meritorious claims of defense, and the presence or absence of exceptional circumstances.[3]

---

[3] This list parallels the list of factors employed in evaluating claims of good cause to vacate entries of default under Rule 55(c). See, e.g., Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989). The primary difference is the greater ease with which motions under Rule 55(c) are granted. See id.

Teamsters, 953 F.2d at 20. This compendium is neither exclusive nor rigidly applied. Id. Rather, the listed factors are incorporated into a holistic appraisal of the circumstances. In a particular case, that appraisal may — or may not — justify the extraordinary remedy of vacatur. Paul Revere, 248 F.3d at 5.

Against this backdrop, we turn to the case at hand. In denying relief to the defendants, the district court stated flatly that "a litigant's strategic choice to default precludes a finding of exceptional circumstances under Rule 60(b)(6)" and, thus, precludes relief. Ungar III, 613 F. Supp. 2d at 229. Although the court made a passing mention of potential prejudice, it did not assess the mix of relevant factors but, rather, set aside factors other than the defendants' strategic choice, labelling such other factors "not determinative." Id. The decision, read as a whole, leaves no doubt but that the court denied the Rule 60(b)(6) motion on the basis that the defendants' willful default precluded relief as a matter of law. See id. at 231.

Our law in this area has not been clear, and the ruling of the able district judge misconceives it. We explain briefly.

Because Rule 60(b)(6) is a catch-all provision, its contours are peculiarly malleable. See Paul Revere, 248 F.3d at 5. Thus, hard-and-fast rules generally are not compatible with Rule 60(b)(6) determinations. Not surprisingly, then, a canvass of our decided cases reveals that we have never laid down an explicit,

-7-

broad-scale categorical rule concerning willful defaults in the Rule 60(b)(6) milieu.

To this point, our cases have been somewhat equivocal about the existence of a categorical bar to vacatur under Rule 60(b)(6) when a party has willfully defaulted. A few cases suggest that when a party makes such a free, calculated, and deliberate choice, he must live with its consequences. See, e.g., Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 651-52 (1st Cir. 1972). But in those situations, the reason for requesting vacatur boils down to a realization that, in hindsight, the movant's initial strategic choice had proven improvident. Consequently, principles of finality and repose carried the day. See, e.g., id. at 651; see also Ackermann v. United States, 340 U.S. 193, 198 (1950).

Our later cases, however, have signaled a retreat from absolutist language. These cases contemplate the possibility that the "extraordinary circumstances" needed to obtain Rule 60(b)(6) relief may arise, albeit in <u>rare</u> instances, even after a willful default. Stating that this court "[o]rdinarily" will uphold a refusal to vacate a default judgment entered against a willfully defaulting party, Paul Revere, 248 F.3d at 6, clearly implies that exceptions exist. See also Davis v. Hutchins, 321 F.3d 641, 646 (7th Cir. 2003) (qualifying a similar statement with the adverb "[g]enerally").

We cannot predict the entire gamut of future factual permutations that may occur, but we feel confident in saying that, on occasion, it is possible that the equities may weigh in favor of litigating a case on the merits even after a willful default. See Wagstaff-EL v. Carlton Press Co., 913 F.2d 56, 57-58 (2d Cir. 1990) (per curiam); see also Gonzalez v. Crosby, 545 U.S. 524, 529 (2005) (acknowledging that finality "standing alone, is unpersuasive in the interpretation of a provision [Rule 60(b)(6)] whose whole purpose is to make an exception to finality"). We therefore conclude that the flexible nature of Rule 60(b)(6) does not lend itself to a categorical bar to relief in the face of a willful defaulter.

To be sure, there is an argument to be made for using a categorical rule with respect to a narrow subset of Rule 60(b)(6) motions. In Pioneer Investment Services Co. v. Brunswick Associates, 507 U.S. 380 (1993), the Supreme Court wrote that "[t]o justify relief under subsection (6) [of Rule 60(b)], a party must show extraordinary circumstances suggesting that the party is faultless in the delay." Id. at 393 (internal quotation marks omitted). Taken in a vacuum, this statement might seem to support the application of a categorical rule across the board in Rule 60(b)(6) cases.

The district court came to that conclusion. In doing so, it relied in part on a First Circuit case which, like others, reiterates the Pioneer Court's words. See Claremont Flock Corp. v.

-9-

Alm, 281 F.3d 297, 299-300 (1st Cir. 2002) (dictum); see also Blanchard v. Cortés-Molina, 453 F.3d 40, 44 (1st Cir. 2006) (dictum). But these cases are readily distinguishable. Each of them involved a situation in which a party attempted to cloak a Rule 60(b)(1) motion in the raiment of Rule 60(b)(6).[4] See Blanchard, 453 F.3d at 43, 45; Claremont Flock, 281 F.3d at 300.

   Rule 60(b)(1) contemplates the possibility of relief in cases involving "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). These cases most often recite the Pioneer language simply as a means of illustrating a structural defect in the movant's argument. See, e.g., Blanchard, 453 F.3d at 44-45; Claremont Flock, 281 F.3d at 299-300. Other times, a single factor's weight is so predominant as to be dispositive, or the reference is simply elegiac. See, e.g., Aquiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 28-29 (1st Cir. 2006); Dávila-Alvarez v. Escuela de Medicina Universidad Central del Caribe, 257 F.3d 58, 67 (1st Cir. 2001); Cotto v. United States, 993 F.2d 274, 280 (1st Cir. 1993). Such a reference would be understandable, say, in the case of a negligently defaulting party, who cannot employ Rule 60(b)(6) to obtain relief because "a motion under [Rule 60(b)(6)] is appropriate only when none of the first five sections pertain,

---

[4] The impetus for this masquerade is usually temporal. Rule 60(b)(1) is available only if a motion is made within one year after the entry of the judgment. Fed. R. Civ. P. 60(c). Rule 60(b)(6) motions are timely so long as they are brought "within a reasonable time" following entry of the judgment. Id.

-10-

and section (6) may not be used as means to circumvent those five preceding sections." Ahmed v. Rosenblatt, 118 F.3d 886, 891 n.9 (1st Cir. 1997); see, e.g., Claremont Flock, 281 F.3d at 300 (stating that a defendant cannot use Rule 60(b)(6) to obtain relief on a ground that comes within Rule 60(b)(1)). Likewise, willfulness (that is, the making of a deliberate strategic choice) is not a ground for relief under Rule 60(b)(1) and, in fact, is directly antagonistic to a claim premised on any of the grounds specified in that subsection. Thus, these cases use the Pioneer language to set up an appropriate roadblock: a categorical rule barring relief when a party attempts to drive down the wrong avenue to obtain it. See Teamsters, 953 F.2d at 20 n.3 (stating that the first five subsections of Rule 60(b) are mutually exclusive of subsection six).

This case does not involve a claim of mistake, inadvertence, surprise, or excusable neglect. It is the antithesis of such a case: the defendants freely admit that the default judgment resulted from their deliberate strategic choice. They have not attempted to disguise their request for relief under Rule 60(b)(1) but, rather, brought the motion — properly — under Rule 60(b)(6).

The defendants say, however, that they have come to regard their deliberate choice as misguided and that exceptional circumstances warrant relieving them from the judgment upon such terms as the court may deem just. They then recount, in

-11-

considerable detail, why they say the circumstances are exceptional. Given the nature of this motion, the district court's application of a categorical rule was a per se abuse of discretion. See R&G Mortg., 584 F.3d at 7-8 (stating that a material legal error is a per se abuse of discretion).

Let us be perfectly clear. We do not mean to minimize the gravity of a willful default in calibrating the Rule 60(b)(6) balance. That factor weighs heavily. See, e.g., Paul Revere, 248 F.3d at 6 ("Ordinarily, the discretionary power granted by Rule 60(b)(6) is not for the purpose of relieving a party from [a] free, calculated, and deliberate choice[] . . . ." (internal quotation marks omitted)). But even for a willful defaulter, relief is not categorically barred.[5]

In an effort to salvage the judgment, the plaintiffs argue that a court need not do a mechanical, multi-factor analysis every time a party seeks relief under Rule 60(b)(6). That is true: there is no ironclad rule requiring an in-depth, multi-factored analysis in every case. Sometimes one factor predominates to such an extent that it inexorably dictates the result. See, e.g., Aguiar-

---

[5] We do not in any way suggest that the flexibility of Rule 60(b)(6) somehow transmutes it into an easier road to relief for willful defaulters than for those whose requests rest on different circumstances. The opposite is true: a willful defaulter faces an uphill climb in making the requisite showing of exceptional circumstances. See Ahmed, 118 F.3d at 891. That climb is likely to be steeper for the willful defaulter than, say, for a movant alleging inadvertence or mistake.

-12-

Carrasquillo, 445 F.3d at 28-29; Paul Revere, 248 F.3d at 6. Here, however, there is a substantial dispute between the parties about the incidence and weight of other, potentially relevant factors.

For their part, the plaintiffs insist that granting Rule 60(b)(6) relief at this late date would work undue prejudice; in their view, the passage of time and the shifting political winds have caused a loss of material evidence and witnesses. Moreover, they maintain that the defendants have no viable defenses.

But the defendants tell a different tale. They blame political extremism within the PLO and the PA for their earlier decision to default. They insist that they have had a good-faith change of heart and that they have legitimate, merit-based defenses to the action. They also see the amount of the judgment as unlikely to withstand adversarial testing. They vigorously dispute the plaintiffs' claim that evidence and witnesses have been irreparably compromised. They emphasize the special nature of the cause of action, the uniqueness of the case, its political ramifications, and its potential effect on international relations. Taken in the ensemble, these justifications, in the defendants' view, add up to exceptional circumstances.

Whether or not the defendants' arguments ultimately carry the day, they are substantial. Indeed, several district courts, presented with similar circumstances and similar arguments in other ATA cases against these same defendants, have engaged in holistic

-13-

analyses and granted relief from defaults or default judgments. See, e.g., Gilmore v. Palestinian Interim Self-Gov't Auth., No. 01-853, 2009 WL 5083402 (D.D.C. Dec. 28, 2009); Saperstein v. Palestinian Auth., No. 04-20225, 2008 WL 4467535 (S.D. Fla. Sept. 29, 2008); Knox v. Palestine Liberation Org., 248 F.R.D. 420 (S.D.N.Y. 2008). But see Biton v. Palestinian Interim Self-Gov't Auth., 252 F.R.D. 1 (D.D.C. 2008). While we caution against reading too much into these decisions — after all, every case is apt to be sui generis — they indicate that the defendants' asseverational array deserves full-throated consideration.

As a fallback, the plaintiffs invite us to review the record de novo and affirm the district court's order on the alternative ground that the equities weigh in their favor. We decline this invitation. Appellate and trial courts have different institutional competencies. Here, the parties' competing proffers must be sorted and weighed. The district court enjoys a long familiarity with the case, and that court's factfinding capabilities put it in a better position to construct the fact-specific balance that Rule 60(b)(6) demands.

We need go no further. The district court did not analyze the totality of the circumstances but, rather, focused on what it improvidently believed to be a categorical bar to relief. Concluding, as we do, that this categorical rule does not apply in the circumstances of this case, we vacate the order appealed from

and remand for further proceedings consistent with this opinion. We take no view of the appropriate outcome.[6]

**Vacated and remanded**.   **All parties shall bear their own costs**.

---

[6] We do think it prudent to point out that, on remand, the district court has a range of options.  It may, for example, deny the Rule 60(b)(6) motion, grant the motion outright, or grant it upon conditions, which may include requiring a bond to ensure payment of a future judgment, see, e.g., Knox, 248 F.R.D. at 433, or requiring the payment of costs and expenses incurred by the plaintiffs due to the defendants' original obstinacy, see, e.g., Coon v. Grenier, 867 F.2d 73, 79 (1st Cir. 1989).