UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____

THE ESTATE OF YARON UNGAR, et al.,

    Plaintiffs,

         v.

THE PALESTINIAN AUTHORITY, et al.,

    Defendants.
_____

C.A. No. 00-105L (RRL)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OBJECTIONS TO THE RECOMMENDATIONS OF
MAGISTRATE JUDGE MARTIN AND MOTION FOR APPROPRIATE RELIEF
CONSISTENT WITH THE MANDATE OF THE FIRST CIRCUIT**

**Factual Background**

Three years ago, Palestinian Authority President Mahmoud Abbas directed then-Finance Minister and now also Prime Minister Salam Fayyad to assume oversight of the Palestinian Authority's and Palestine Liberation Organization's defenses of lawsuits brought in the United States under the Anti-Terrorism Act ("ATA"). Upon retention of new counsel, the Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") (collectively, "Defendants") repudiated their past history of willful disengagement and have actively defended such cases across the country. This case arises out of a shooting by Hamas operatives at a time when Hamas was actively trying to disrupt the Israeli-Palestinian peace process, particularly the Oslo Accords between the PLO and Israel – accords which created the PA. The PA/PLO's December 2007 motion to vacate the default judgment in this case included a detailed discussion of the PA/ PLO's meritorious defenses to the Plaintiffs' allegations and detailed the exceptional

circumstances warranting relief from the default judgment, including the "special nature of the cause of action, the uniqueness of the case, its political ramifications, and its potential effect on international relations." *Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 86 (1st Cir. 2010). This Court denied the motion, finding that the Defendants' willful default precluded relief as a matter of law. *See id.* at 84. In so doing, the Court set aside virtually all of the factors raised in the Defendants' motion, labeling them as "not determinative." *Id.*

On December 9, 2009, while the Court's denial of the motion to vacate default judgment was on appeal to the United States Court of Appeals for the First Circuit, Plaintiffs filed a Motion for a Payment Decree (Dkt. No. 467) purportedly pursuant to Fed. R. Civ. P. 69 ("Execution") and Rhode Island General Laws § 9-28-3 ("Proceedings in Aid of Execution – Citation to show cause why installment payments should not be decreed") seeking an order compelling transfer of the full amount of the judgment. The Motion was referred to Magistrate Judge Martin via a December 29, 2009, docket entry that did not specify the statutory grounds for the referral. Magistrate Judge Martin convened a hearing on the Motion on January 13, 2010. At no time prior to, during, or following the hearing did the Magistrate Judge inquire whether the parties would consent to his issuance of a final order on the motion.

On March 25, 2010, the First Circuit vacated this Court's order denying the motion to vacate default judgment and remanded the case for proper consideration of the Defendants' arguments, which it characterized as "substantial" and "deserv[ing] [of] full-throated consideration." *Id.* at 86-87. It noted that, on remand, the district court had a "range of options," all of which contemplated the Court's resolution of the Rule 60(b)(6) motion. *Id.* at 87 n.6. Not among the options listed by the First Circuit was an Order requiring the PA/PLO to commence immediate payment of the judgment directly to the Plaintiffs with assets located outside of the

1063523.1

country prior to the District Court's commencement of its review.  Yet, on May 12, 2010, Magistrate Judge Martin issued a document titled "Memorandum and Order" ostensibly compelling the PA/PLO to do just that.

Magistrate Judge Martin ordered the PA/PLO to make an initial payment of $15 million by June 1, 2010, with additional installment payments of $15 million triggered by the Plaintiffs' release of funds attached in Israel until the full amount of the judgment against the PA was paid to the Plaintiffs.  Dkt. No. 484 at 32.  In so doing, Magistrate Judge Martin exceeded his statutory authority and made novel use of a state citation proceeding in aid of satisfaction of a judgment that the First Circuit had remanded to the District Court for careful review only six weeks before.

Defendants move this Court to issue an Order deeming the Magistrate Judge's "Memorandum and Order" a "Report and Recommendation" pursuant to 28 U.S.C. § 636(b)(3) and summarily rejecting the Magistrate Judge's report and recommendations because Magistrate Judge Martin erred when he concluded that Federal Rule of Civil Procedure 69(a) and Rhode Island General Law § 9-28-3 authorized the issuance of the payment decree.

The Defendants' objections to the Magistrate Judge's report and recommendation, made pursuant to Local Rule of Civil Procedure 72(d), are set forth in section II of this memorandum. In the event this Court construes the Magistrate Judge's May 12, 2010 document as an order rather than a report and recommendation, Defendants submit those same arguments in support of an appeal to this Court pursuant to Local Rule of Civil Procedure 72(c).

If this Court does not summarily deny the Magistrate Judge's report and recommendation, it should stay its de novo review and consideration until it resolves

1063523.1

Defendants' pending Motion to Vacate Default Judgment (Dkt. No. 408) consistent with the order of the First Circuit.

<u>**Argument**</u>

I.    **Magistrate Judge Martin's May 12, 2010 "Memorandum and Order" Is a Report and Recommendation That Does Not Have Immediate Effect and Is Subject to De Novo Review by This Court.**

Plaintiffs' Motion was referred to Magistrate Judge Martin without reference to a statutory provision supporting the referral or defining the Magistrate Judge's role. Because the Motion did not involve a non-dispositive pre-trial matter and the parties did not consent to the Magistrate's final disposition of the Motion, Magistrate Judge Martin was not authorized to issue a final order, but was limited to issuing recommendations subject to de novo review by this Court. *See* 28 U.S.C. § 636, discussed below. Nevertheless, on May 12, 2010, Magistrate Judge Martin issued a document titled "Memorandum and Order." As a threshold matter, this Court must determine the proper construction and legal effect of Magistrate Judge Martin's "Order."

A.    **Magistrate Judge Martin's "Memorandum and Order" is a Report and Recommendation and Not a Final Order.**

"The jurisdiction of magistrate judges is limited by statute [the Federal Magistrates Act, 28 U.S.C. § 636,] and may not be augmented by the federal courts." *Beazer East, Inc. v. Mead Corp.*, 412 F.3d 429, 437 (3d Cir. 2005). Section 636(b)(1) allows magistrate judges to resolve non-dispositive pretrial matters pending before the court and to submit proposed findings of fact and disposition recommendations following a hearing in connection with a defined group of dispositive matters. *See* 28 U.S.C. §§ 636(b)(1)(A), (B). Plaintiffs' Motion is neither a pre-trial matter nor one that falls within that defined group, and thus (b)(1) is inapplicable. *Columbia Record Prod. v. Hot Wax Records, Inc.*, 966 F.2d 515, 516 (9th Cir. 1992) ("[S]ection 636(b)(1) provides no basis for [post judgment assignment] order. That provision only concerns pre-trial

matters and some criminal proceedings, and therefore is inapplicable…"); *King v. Ionization Int'l, Inc.*, 825 F.2d 1180, 1185 (7th Cir. 1987) ("The judge had ordered the magistrate 'to conduct hearings, supervise and enter all orders on post judgment proceedings' in this case, pursuant to 28 U.S.C. § 636(b)(1)(A).  But that section merely authorizes the judge to 'designate a magistrate to hear and determine any pretrial matter pending before the court.'").

Section § 636(c) authorizes a magistrate judge to conduct any proceeding in a civil matter and issue a final decision when specially designated to exercise such jurisdiction by the district court and upon specific consent of the parties.  *See* 28 U.S.C. 636 §§ (c)(1), (3).  The magistrate's jurisdiction under § 636(c) is premised on the parties' consent because litigants have a constitutional right to have their claims resolved by an Article III judge.  Because § 636(c) requires the parties to waive that constitutional right, a case does not "fall within the jurisdictional ambit of § 636(c) unless the parties' consent to proceed before a magistrate judge is 'clear and unambiguous.'" *Donaldson v. Ducote*, 373 F.3d 622, 624 (5th Cir. 2004).

The parties' consent must also be voluntary, which is why the district court making the referral is required to advise the parties that they are free to withhold consent without adverse substantive consequences and obtain each party's consent to the referral.  *See* 28 U.S.C. § 636(c)(2); *see also* LR Cv 73 ("[T]he Clerk . . . shall give written notice to the parties of the option to consent to a trial before, or other disposition of the case by, a magistrate judge and shall provide the parties with a consent form.  The notice shall inform the parties that they are free to withhold consent without adverse consequences.").

Here, because the record is devoid of any evidence of a special designation by the court pursuant to section (c)(1) and there were no discussions regarding the voluntary consent of the parties to Magistrate Judge Martin's final resolution of the Motion, subsection (c) is inapplicable.

*See, Colorado Bldg. & Constr. Trades Council v. B.B. Andersen Constr. Co.*, 879 F.2d 809, 809-11 (10th Cir. 1989).[1]

## B. Magistrate Judge Martin's Report and Recommendation is Subject to De Novo Review by This Court.

Nowhere in 28 U.S.C. § 636 is a magistrate judge expressly authorized to handle post-judgment proceedings. However, § 636(b)(3) authorizes assignment to a magistrate judge of "such additional duties as are not inconsistent with the Constitution and laws of the United States." *See* 28 U.S.C. § 636(b)(3). When a magistrate exercises so-called "additional duties" jurisdiction, he does so under the supervision of the district court judge, who retains authority and ultimate responsibility for decision-making. *See Horton v. State Street Bank & Trust Co.*, 590 F.2d 403, 404 (1st Cir. 1979) ("[A]lthough the law provides that 'additional duties' may be assigned to [magistrate judges], the discretionary authority to enter a final judgment is so fundamentally an exclusive power of an Article III court that we are unwilling to find it within the contemplation of this catch-all, 'additional duties' provision.") (citing *Mathews v. Weber*, 423 U.S. 261, 270 (1976)); *see also Colorado Bldg. & Constr. Trades Council*, 879 F.2d at 811 (*citing Harding v. Kurco, Inc.*, 603 F.2d 813, 814 (10th Cir. 1979)).

---

[1] While the Supreme Court has recognized that voluntary consent can be inferred in certain limited circumstances, "implied consent [is] the exception, not the rule." *Roell v. Withrow*, 538 U.S. 580, 591 n.7 (2003). In *Roell*, the parties received written notification of the district judge's referral of a case to a magistrate for final disposition and advised of their right to withhold consent for such a referral. *Id.* at 583. Two parties provided written consent and two others participated without objection in a magistrate-conducted jury trial during which the magistrate at several points "made it clear that she believed they had consented." *Id* at 584. The parties that had not executed a pre-trial written consent filed formal letters of consent after the magistrate rendered final judgment. *Id.* On those facts, the Court held: "the better rule is to accept implied consent where, as here, the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge." *Id.* at 590. In a similar case, the Supreme Court held an attorney's consent to a Magistrate's supervision of jury voir dire was sufficient to bind the attorney's client. *Gonzalez v. United States*, 553 U.S. 242 (2008). This matter, which involves a magistrate issuing a final order binding the parties without seeking or receiving the party's consent, is well outside the scope of those cases.

1063523.1

Because the district judge retains that authority and ultimate responsibility, he or she must review challenges to the magistrate judge's factual determinations and legal conclusions de novo. *Rajaratnham v. Moyer*, 47 F.3d 922, 924 n.8 (7th Cir. 1995); *see Conetta v. Nat'l Hair Care Ctrs., Inc.*, 236 F.3d 67, 74 (1st Cir. 2001) (finding the district court was "clearly entitled" to review a matter that could be assigned to a magistrate pursuant to 636(b)(3) using a de novo standard of review) (citing *LeGear v. Thalacker*, 46 F.3d 36, 37 (8th Cir. 1995); *McLeod, Alexander, Powel & Apfel, P.C. v. Quarles*,, 925 F.2d 853, 856 (5th Cir. 1991); *United States v. Azure*, 539 F.3d 904, 909 (8th Cir. 2008) ("Matters referred to a magistrate judge under … 636(b)(3) must be reviewed de novo by the district court when a party objects to a magistrate judge's findings."); *Griego v. Padilla*, 64 F.3d 580, 584 n.4 (10th Cir. 1995) ("de novo review is required in . . . 636(b)(3) referrals").   In conducting such a review, the district court must give "fresh consideration to those issues to which specific objections have been made," *Rajaratnam*, 47 F.3d at 925 n.8, and, after so doing, may "accept, reject, or modify the recommended decision." *Continental Bank, N.A. v. Everett*, 861 F. Supp. 642, 643 (N.D. Ill. 1994).

C.    **Magistrate Judge Martin's May 12, 2010 "Order" Has No Legal Effect Unless and Until It Is Adopted by This Court.**

Given the availability of district court de novo review, an assignment under 28 U.S.C. § 636(b)(3) does not result in a "final order" by the magistrate judge. *Columbia Record Prod.*, 966 F.2d at 517 (holding that "section 636(b)(3) did not authorize the magistrate judge to enter [a final] order" regarding a post-judgment enforcement matter brought pursuant to Fed. R. Civ. P. 69); *Colorado Bldg. & Constr. Trades Council*, 879 F.2d at 811 (10th Cir. 1989) (holding a magistrate's post-judgment enforcement order was not a final order and stating that a magistrate assigned additional duties under § 636(b)(3) "remains constantly subject to the inherent supervisory power of the district judge"); *LeGear*, 46 F.3d at 37 ("A magistrate judge's decision

7

issued pursuant to section 636(b)(3) is not a final order; initial review rests with the district court"); *Alpern v. Lieb*, 38 F.3d 933, 935 (7th Cir. 1994) (noting that a magistrate judge's determination pursuant to 28 U.S.C. § 636(b)(3) does not have "independent effect"); *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) (stating that matters assigned to a magistrate judge under § 636(b)(3) are not subject to final determination by the magistrate); *McLeod, Alexander, Powel & Apfel, P.C.*, 925 F.2d at 856 n.5 (noting the magistrate is not authorized to enter judgment for the court under § 636(b)(3) but rather makes proposed findings of fact and recommendations on the motion that are subject to de novo review by the district court).

In *Michelson v. Schor*, post-judgment collection proceedings were referred to a magistrate judge, who issued a "Turnover Order" after hearing the parties' arguments and considering testimony and reports provided during a citation examination. *Michelson v. Schor*, No. 93-c-5124, 1996 U.S. Dist. LEXIS 16928 at * 2-3 (N.D. Ill. Nov. 14, 1996). On review, the district court recognized that, in the absence of consent by the parties to the magistrate's final resolution of the issue, the "'order' was actually a 'recommendation' to the district court to which the parties may object." *Id.* at 3.

Similarly, Magistrate Judge Martin's May 12, 2010 "Order" should be construed as a recommendation that is subject to objection and which is not legally operative unless and until it is adopted by this Court following its *de novo* review. *See United States v. Ecker*, 923 F.2d 7, 8-9 (1st Cir. 1991) (holding that "non-self-operating" orders are not valid until after the district court accepts the magistrate's report and recommendation and enters an order or judgment).

**II.    Magistrate Judge Martin Erred When He Concluded that Federal Rule of Civil Procedure 69(a) and R.I. Gen. Laws § 9-28-3 Authorized the Issuance of the Payment Decree.**

1063523.1

Pursuant to LR Cv 72(d), Defendants submit the following objections to Magistrate Judge Martin's recommendations as set forth in the May 12, 2010 Memorandum and Order.[2]

## A.  Federal Rule of Civil Procedure 69(a) Does Not Authorize Use of a Payment Decree to Enforce a Federal Court Judgment.

Under Federal Rule of Civil Procedure ("Rule") 69(a), "process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise."  In the First Circuit, "the 'otherwise' clause is narrowly construed."  *Aetna Casualty & Surety Co. v. Markarian*, 114 F.3d 346, 349 (1st Cir. 1997).  *See also Cordius Trust v. Kummerfeld*, No. 99cv3200, 2009 U.S. Dist. LEXIS 98889 at *20 (S.D.N.Y. Oct. 23, 2009) ("The First Circuit, however, has ruled that the ['otherwise'] provision should be construed narrowly.").  Thus, Rule 69(a) "does not authorize enforcement of a civil money judgment by methods other than a writ of execution, except where 'well established principles [so] warrant.'"  *Aetna Casualty*, 114 F.3d at 349 (quoting 13 J. Moore, Moore's Federal Practice ¶ 69.02, at 69-5 to -7 (3d ed. 1997)).

In *Aetna*, the First Circuit identified three situations in which Rule 69(a) would authorize departure from the general rule that a district court's enforcement of a money judgment is through writ of execution:  (1) "where an action for contempt has been instituted for failure to pay an obligation imposed by statute in order to enforce the public policies embodied in the statutory scheme;"[3] (2) "where there has been a congressional determination to provide the government with the ability to seek a writ of *ne exeat* in furtherance of enforcing tax

---

[2] For the reasons set forth in section I, *supra*, it is clear that Magistrate Judge Martin's "Order" is properly construed as a "Report and Recommendation" rather than an immediately-effective Order.  Should this court disagree, the Defendants would submit the following points and authorities as an "appeal" pursuant to LR Cv 72(c).

[3] The First Circuit identified *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193-95 (1949), as the case embodying this situation.  There, the Court held that civil contempt proceedings could be used to enforce an employer's wage and overtime pay obligations under the Fair Labor Standards Act.

obligations;" and (3) "where the judgment is against a state which refuses to appropriate funds through the normal process provided by state law."  *Id.* at 349 n.4.

"In contrast" to the narrow situations in which departure from the general rule may be justified, the First Circuit emphasized that "the size of the award and the difficulties enforcing the judgment due to the location of the assets and the uncooperativeness of the judgment debtor *are not the types of extraordinary circumstances which warrant departure from the general rule* that money judgments are enforced by means of writs of execution rather than by resort to the contempt power of the courts."  *Id.* n.4 (emphasis added) (citing *Hilao v. Estate of Ferdinand Marcos*, 95 F.3d 848, 855 (9th Cir. 1996)).

As Magistrate Judge Martin acknowledges in his decision, "[t]he instant decision is not an execution proceeding but a citation proceeding."  Dkt. No. 484 at 29.  The citation proceeding at issue is Rhode Island General Law § 9-28-3.  Under that statute, when the execution is returned wholly or partly unsatisfied, the clerk of the district court

> shall issue a citation to the judgment debtor to appear at a time and place
> named therein to show cause why an examination into his or her
> circumstances should not be made and a decree be entered ordering him or
> her to pay the judgment in full or by installment . . . . .

R.I. Gen. Laws § 9-28-3.  Defendants cannot locate any decisions authorizing the use of the Rhode Island payment decree mechanism for the enforcement of a federal court money judgment.  In fact, Defendants have not been able to locate any cases -- from any state -- where a court has concluded that Rule 69(a)'s "otherwise" clause authorizes the use of a state law payment decree mechanism to satisfy a federal court money judgment.

Indeed, Magistrate Judge Martin's "pay the judgment" decree appears highly unusual. Enforcement mechanisms generally are directed at particular property or assets of the judgment debtor but not at the judgment debtor personally.  *See* C.A. Wright et al., 12 *Federal Practice &*

10

*Procedure* § 3011 (2d ed. 1997) ("As a general matter, debtors' prison has been abolished in this country, and *a money judgment is not a personal order to the defenda*nt that normally is enforceable by contempt") (emphasis added).  Here, the Rhode Island payment decree statute appears to be a throw-back to the days of debtors' prisons because it expressly contemplates that failure to comply is punishable by imprisonment of the debtor.  *See* R.I. Gen. Laws § 9-28-6 ("And if a defendant is in the custody of or committed to jail by the sheriff, or imprisoned, either upon execution or by order of the court in contempt proceedings, it shall not operate in any degree as a payment or satisfaction of the judgment upon which the execution is issued . . . .").

### B.    In Any Event, Rhode Island General Law § 9-28-3 Does Not Apply Here.

But even if *Aetna Casualty & Surety Co. v. Markarian*, 114 F.3d 346, 349 (1st Cir. 1997), did not preclude Magistrate Judge Martin's use of the Rhode Island payment decree statute, the statute nonetheless has no application to the enforcement of the Ungars' $116 million federal court money judgment against the Palestinian Authority and PLO.  Judging from the number of cases discussing R.I. Gen. Laws § 9-28-3, the payment decree statute appears to be a rarely-used enforcement mechanism and one limited to individuals over whom the court has jurisdiction based on the judgment debtor's Rhode Island contacts.

Defendants have identified only five decisions addressing the use of R.I. Gen. Laws § 9-28-3.  All but one of the decisions are decades old.  Each of the five cases involves a state court judgment against a natural person.  None of the cases appears to involve judgment debtors who are not Rhode Island residents.  Moreover, the payment decrees at issue involve very modest amounts.  *See Ciccone v. Ciccone*, 98 R.I. 480, 204 A.2d 819 (1964) (overruling the judgment creditor's exceptions to a decree ordering the judgment debtor to pay $15 weekly to satisfy a $750 judgment rendered by the superior court for non-payment of a promissory note); *Barber v.*

*Jemery*, 109 R.I. 556, 288 A.2d 497 (1972) (holding that the trial court exceeded its authority when it ordered the judgment debtor to get another job to obtain the funds to make an $8 weekly payment to satisfy a $10,000 judgment arising out of an car accident); *Trainor v. Grieder*, 925 A.2d 243 (R.I. 2007) (reinstating an earlier order requiring the judgment debtor to pay $400 per month; trial court's decision increasing the monthly payment to $800 per month was governed by R.I. Gen. Laws § 9-28-7, which required that the creditor show cause for revisiting the issue of the debtor's ability to pay); *Rhode Island Hospital v. Collins*, 117 R.I. 535; 368 A.2d 1225 (1977) (holding that section 9-28-3 did not authorize the trial court to direct the judgment debtor to endorse a stock certificate over to the judgment creditor); *Plantations Indus. Supply of Rhode Island v. O'Brien*, 119 R.I. 426, 379 A.2d 365 (1977) (holding that mandamus may not be used to compel the Clerk to issue a citation under section 9-28-3 because the issuance of the citation is a discretionary act).

Given the modest uses to which R.I. Gen. Laws § 9-28-3 has been put and that its application is confined to individual judgment debtors over whom the court had personal jurisdiction based on their Rhode Island contacts, Magistrate Judge Martin's conclusion that the statute authorized him to direct the Palestinian Authority and PLO to satisfy the $116 million federal court default judgment by paying the Ungars in $15 million installments from an overseas revenue stream is clearly erroneous and contrary to law.

### 1.    *Section 9-28-3 Applies to Only to Natural Persons.*

It is evident from the face of the statute that its application is limited to natural persons. The statute refers to the judgment debtor showing cause "why an examination into *his* or *her* circumstances should not be made and a decree be entered ordering *him* or *her* to pay the judgment . . . ." R.I. Gen. Laws § 9-28-3 (emphasis added). The statute further requires that the

1063523.1

citation be served "by delivering a copy to the debtor or by leaving a copy at the last and usual *place of abode* of the debtor with some person living there . . . ." *Id.* (emphasis added).   Note that the statute does not refer to "place of business."   Moreover Rhode Island General Laws § 9-28-5, which governs the decree for installment payments issued pursuant to a section 9-28-3 citation proceeding, provides:

> If the court finds that the debtor is able to pay the judgment in full or by partial payments, from time to time, it shall, after first allowing the debtor out of his or her income a reasonable sum *for the support of himself or herself or the support of himself or herself and family*, if he or she has a family, enter a decree fixing the time, place, and amount of payments to be made by the debtor on the judgment out of his or her income in excess of the allowance.

R.I. Gen. Laws § 9-28-5 (emphasis added).

The limited case law on R.I. Gen. Laws § 9-28-3 also makes abundantly clear that the statute applies only to natural persons.  For example, in *Rhode Island Hospital*, 117 R.I. 535, the Rhode Island Supreme Court held:  "When a creditor chooses the 'citation' path, the sole source to which a trial justice can look in seeking to satisfy the outstanding judgment is the debtor's income.  Before a court can fix the amount a debtor is able to pay from his income to the creditor, the *court must first deduct from the income a reasonable amount for the support of the debtor and his or her family*."  *Id.* at 537 (emphasis added).  Moreover, as noted, all the cases citing the Rhode Island payment decree statute involve judgment debtors who are natural persons.  *Cf. Patel v. Garmo*, No. 1:06-CV-469, 2009 U.S. Dist. LEXIS 8481 (W.D. Mich. Feb. 5, 2009) (holding that a Michigan statute allowing judgments to be paid in installments applied to natural persons and not organizational defendants).

Because the plain language of both section 9-28-3 and section 9-28-5 limit the payment decree mechanism to natural persons and given the absence of any case law interpreting those

1063523.1

statutes to apply to corporate or other organizational defendants, Magistrate Judge Martin erred when he concluded that the Rhode Island payment decree statute authorized the relief sought by the Ungars. Although Defendants argued the non-applicability of the Rhode Island payment decree statute to organizational defendants, *see* Tr. at 31:11-32:6 (Jan. 13, 2010), Magistrate Judge Martin's decision fails to address the PA/PLO's argument and also fails to articulate how application of the statute to non-natural persons can be reconciled with the plain meaning of the statute. A court's inquiry regarding the intended scope of a statute "begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (explaining that the "preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there'"). Here, the Court must presume that the Rhode Island legislature intended what it said in the statute, and that the statute's application is therefore limited to natural persons. Any other reading would, at the very least, warrant certification of the issue to the Supreme Court of Rhode Island. *See* Dkt. No. 469 at 10-11 (discussing grounds for certifying issues regarding state collection laws).

2.    *Section 9-28-3 Does Not Authorize a Payment Decree as to a Judgment Debtor with No Jurisdictional Contacts with Rhode Island.*

Under Federal Rule of Civil Procedure 69(a) the "procedure on execution -- and in proceedings supplementary to and in aid of judgment or execution -- must accord with the procedure of the state where the court is located . . . ." Fed. R. Civ. P. 69(a). Thus, Magistrate Judge Martin was not authorized to issue a payment decree that exceeded the intended scope of the state law enforcement mechanism. Yet that is what happened here, when he gave the Rhode Island payment decree statute an extraterritorial application it does not authorize and was never intended to have.

It is a cardinal rule of statutory construction that statutes are not construed to have extraterritorial scope unless they unambiguously so provide. *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164-65 (2004). It is not evident that § 9-28-3 was intended to have any application outside Rhode Island. The notion that the Rhode Island legislature intended it to reach outside the *United States* is entirely unfounded. In concluding that section 9-28-3 authorized the payment decree at issue here, Magistrate Judge Martin relied on decisions from Rhode Island and elsewhere holding that, where a court has personal jurisdiction over a judgment debtor, turnover orders can be directed at the judgment debtor's out-of-state assets. *See* Dkt. No. 484 at 14-21. Few of these cases involved non-U.S. based assets. *None* of the cases involved (1) a citation proceeding / payment decree mechanism; (2) a foreign judgment debtor; or (3) a judgment debtor over whom the court's exercise of jurisdiction was based on out-of-state contacts. Here, all three factors are present, making the cases on which Magistrate Judge Martin relied readily distinguishable.

The Palestinian Authority and PLO have no presence in Rhode Island and have no assets in Rhode Island or income derived from Rhode Island investment or activity. Magistrate Judge Martin nonetheless concluded: "In sum, because Defendants are subject to the jurisdiction of this Court, it has the authority to enter the order requested by Plaintiffs." Dkt. No. 484 at 20 (internal citation omitted). This Court's exercise of personal jurisdiction over the PA/PLO is based on the Anti-Terrorism Act, 18 U.S.C. § 2333(a), which expressly extends the U.S. court's jurisdiction abroad and allows for the exercise of personal jurisdiction based on United States contacts, even in the absence of forum state contacts. *See Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 87-88 (D.R.I. 2001) (discussing the Anti-Terrorism Act's nationwide service of process provision, 18 U.S.C. § 2334(a)). The broad extraterritorial reach which gave rise to

this Court's exercise of jurisdiction over the PA/PLO, however, cannot be engrafted on the Rhode Island payment decree statute, which assumes the Rhode Island residence of the judgment debtor or at least sufficient personal contacts with the state to justify Rhode Island's exercise of personal jurisdiction.  Indeed, giving extraterritorial reach to a state court enforcement mechanism over a judgment debtor with no contacts with that state creates substantial due process concerns.

In their opposition to the motion for payment decree, Defendants noted that the payment decree statute contemplated the judgment debtor would have an "abode" in Rhode Island. Reasoning that the statute's reference to serving the judgment debtor at his or her "abode" does not preclude other options for serving the debtor "irrespective of his abode," Magistrate Judge Martin then concluded:  "Under Defendants' reading of the statute, a judgment debtor who works in Rhode Island but lives in Massachusetts or Connecticut would be immune to the supplementary proceedings authorized by § 9-28-3."  Dkt. No. 484 at 12.  But Magistrate Judge Martin failed to appreciate that, even under his scenario, the judgment debtor works and earns income in Rhode Island, even if he does not live there.  Here, the Palestinian Authority and PLO have no presence in Rhode Island whatsoever.

The Palestinian Authority and PLO had requested that Magistrate Judge Martin certify the question of whether this Court has authority to enter a payment decree against them.  Though acknowledging that the "Rhode Island Supreme Court has not addressed the precise legal issue presented by the instant Motion," the Magistrate Judge concluded that section 9-28-3's application to the Defendants was "sufficiently clear" that he need not burden the state court by certifying the question to the Rhode Island Supreme Court.  Dkt. No. 484 at 22-23; *see also id.* ("this Court is satisfied that it is able to predict with reasonable confidence the resolution of that

issue").   Given the disfavored use of citation proceedings for the enforcement of federal court money judgments, the Rhode Island's statute's intended use for natural persons only, and the lack of Rhode Island presence of the judgment debtors, Magistrate Judge Martin's confidence was unwarranted and provides a separate grounds for not endorsing his payment decree decision.

> **C.**    **Even If § 9-28-3 Could Be Used In Aid of Enforcement of a Federal Judgment and Even If It Could Be Applied to Foreign, Organizational Judgment Debtors with No Presence in Rhode Island, Magistrate Judge Martin Failed to Adequately Assess the Palestinian Authority's and PLO's Ability to Pay.**
>
> > 1.    *The Payment Decree Was Issued in Violation of the Procedural Due Process Protections Provided by the State Statute.*

Even if the Rhode Island payment decree statute could be construed to apply here, the statute dictates a particular process that must be undertaken before a payment decree is issued. That process did not happen here.

Section 9-28-4 provides as follows:  "At the hearing on the citation, the court shall make inquiry by examination of the judgment debtor, or otherwise, as to his or her circumstances, his or her income from any source, and his or her ability to pay the judgment . . . ."  Here, the judgment creditors disavowed any intention of proceeding in the fashion required by section 9-28-4.  In their motion for the payment decree, the Ungars stated that "no discovery or fact-finding is necessary in the instant case in order to show that the PA and PLO can satisfy the entire judgment."  Dkt. No. 468 at 3.  According to the Ungars, "[i]n light of the nature of the relief sought  . . . no examination of the PA and PLO regarding their assets need take place at the January 13, 2010 hearing; rather that hearing should be utilized simply for oral argument on the instant motion."  *Id.* at 6 n.3.  Moreover, in a December 31, 2009, telephone conference with Magistrate Judge Martin, the Ungars' counsel reiterated that the hearing on the motion for a payment decree would be oral argument on the motion, not a section 9-28-4 proceeding.

1063523.1

The Ungars' decision to seek a payment decree without following the procedures set forth in section 9-28-4 was raised by Magistrate Judge Martin in his comments to the Ungars' counsel at the January 13, 2010, hearing on the motion:

> Are you suggesting that at this hearing today they have the burden of demonstrating they do not have the ability to pay the judgment?  And if you are, what about the fact that in your memorandum on Page 6 you have the footnote which states, "In light of the nature of the relief sought in this motion, no examination of the PA and the PLO regarding their assets need take place at the January 13, 2010 hearing", and the telephone conference call that I conducted with counsel approximately 2 weeks ago to clarify whether or not the defendants would be required to have someone present for purposes of an examination?  **So my question to you is that if you take the position that they have the burden of showing that they can't pay the judgment and yet at the same time before the hearing you indicated they didn't need to produce anyone to testify, I see something of a conflict** there in the sense that if you're asking the Court to make a finding that they have the ability to pay, or they fail to show at this hearing this morning, that they do not have the ability to pay, **how do I reconcile that with what's transpired in terms of what's communicated to them as to what they were obligated to do for this hearing in terms of presenting evidence or testimony**?

Tr. at 15:12-16:10 (Jan. 13, 2010) (emphasis added).

Despite expressing concern at the January 13 hearing about the unfairness of making a decision about Defendants' ability to pay absent an evidentiary hearing on that issue, Magistrate Judge Martin nonetheless granted the Ungars' motion for a payment decree without hearing evidence and testimony on Defendants' ability to pay, in direct contravention of section 9-28-4. In his May 12 decision, Magistrate Judge Martin found "substantial support" for the Ungars' position that Defendants had the burden of proving their inability to pay, but found "it unnecessary to resolve this precise disagreement because, even if Defendants are correct [that the Ungars' have the burden of proof], the Court is satisfied that Plaintiffs have met their burden . . . ."  Dkt. No. 484 at 25.  Magistrate Judge Martin therefore concluded that the PA/PLO had the ability to pay a $116 million judgment without providing them any opportunity to present

1063523.1

evidence and witnesses regarding their inability to pay.  This was a clear violation of the procedures contemplated by the state statutory scheme.

In sum, Magistrate Judge Martin erred when he issued the payment decree without following the Rhode Island payment decree procedures, *see* § 9-28-4, and when he failed to provide the PA and PLO the necessary procedural due process.

2.      *The Scant Evidence Before Magistrate Judge Martin Did Not Support His Conclusion That the PA/PLO Were Able to Pay a $116 Million Default Judgment.*

In concluding that the PA and PLO have the ability to pay the $116 million default judgment, Magistrate Judge Martin relied on the March 11, 2009, declaration of Hatem Yousef, which Defendants filed in *Knox v. PLO*, No. 03-cv-4466 (S.D.N.Y.)   Mr. Yousef is the Director General of Customs, Excise and VAT for the PA Ministry of Finance.  Dkt. No. 193-6 at ¶ 4. The declaration describes the monthly tax revenues the State of Israel collects on behalf of the Palestinian Authority.  The declaration stated that in 2008, "the average monthly transfer . . . is approximately $57.75 million."  Dkt. No. 484 at 25 (quoting H. Yousef Decl.).

Concluding that this tax revenue constituted "income" for purposes of the Rhode Island payment decree statute, *id.* at 26-27, Magistrate Judge Martin then concluded that "from this income Defendants have the ability to make installment payments in the amount of $15 million." *Id.* at 27.  Magistrate Judge Martin, however, ignored that portion of Mr. Yousef's declaration that discussed the Palestinian Authority's projected 2009 budget deficit of "over $1.5 billion, or 26% of the PNA's GDP."  *See* Dkt. No. 193-6 at ¶ 15.  Magistrate Judge Martin also ignored the other statements in Mr. Yousef's declaration emphasizing the PA's dependence on "the international donor community to meet its basic budget needs."  *Id.* ¶ 15.

1063523.1

Magistrate Judge Martin also relied on a statement in an April 2009 declaration from PA Prime Minister Salam Fayyad, also filed in the *Knox* litigation, that the PA "cannot . . . post more than the $15 million bond" as a condition for the vacatur of a $193 million default judgment. Dkt. No. 484 at 27. Magistrate Judge Martin, however, ignored the remainder of Prime Minister Fayyad's declaration, which described the PA's "precarious financial condition" and the "strains on the PNA government's ability to make its payroll, provide basic services, and provide a social safety net -- all of which are critical to maintaining order and support for a more moderate Palestinian Government." *See* Dkt. No. 198-1 at ¶ 5. Magistrate Judge Martin also ignored the following statement from the Prime Minister's declaration: "Our revenue is no longer sufficient to meet even our payroll and pension obligations." *Id.* ¶ 9. He equally ignored Prime Minister Fayyad's conclusion: "Given the current level of suffering, I cannot in good conscience commit $120 million for the benefit of one family when the result will be striking workers, basic humanitarian needs unmet, and civil unrest." *Id.* ¶ 15.

No objective person reading Prime Minster Fayyad's nine-page declaration detailing the state of the Palestinian Authority's finances as of April 2009 could conclude that the PA was able to pay a $116 million judgment -- even in $15 million installments. Magistrate Judge Martin's notion that the Prime Minister's willingness to post a $15 million bond as a condition of vacatur of the $193 million Knox judgment establishes the PA's ability to pay the $116 million Ungar judgment is unfounded. Similarly unfounded is Magistrate Judge Martin's reliance on Judge Marrero's decision conditioning vacatur of the *Knox* final judgment on the PA/PLO posting a $120 million bond in installments. Judge Marrero's order was *not* a payment decree; it was imposing a condition on vacatur of the final judgment. Moreover, Judge Marrero was not applying the Rhode Island payment decree statute, which prohibits the issuance of a payment

20

decree that does not leave the judgment debtor with sufficient income to meet basic expenses.  In invoking the authority of the Rhode Island payment decree statute, Magistrate Judge Martin is bound by the limits of relief allowed by that statute.  That statute does not authorize the issuance of a payment decree as to a debtor whose basic expenses exceed his income.

Rhode Island General Laws § 9-28-5 provides:  "If the court finds that the debtor is able to pay the judgment . . . it shall, after first allowing the debtor out of his or her income a reasonable sum for the support of himself or herself or the support of himself or herself and family . . .  enter a decree fixing the time, place, and amount of payments to be made by the debtor on the *judgment out of his or her income in excess of the allowance*."  The statutory provisions underscore the statute's intended application to natural persons.  But, even if one attempts to apply the provisions to the Palestinian Authority, once one allows for the basic expenses of running the government, the PA has no excess income.  In assessing ability to pay, the court cannot look solely at the income -- in isolation from the debtor's expenses.  If the PA were a person, it would be bankrupt, and free from any payment decree.  It cannot be that the payment decree provisions, which appear to apply only to natural persons, are harsher when extended to governments.

### D.    Magistrate Judge Martin Erred by Relying on the Absence of a Stay of Enforcement Under Rule 62(b)(4).

In his decision granting the Ungars' motion for a payment decree, Magistrate Judge Martin ruled:  "[T]o the extent that Defendants seek to have the Court defer ruling upon the Motion until after Judge Lagueux decides the pending motion for vacatur, their request is denied."  Dkt. No. 484 at 9-10.  He based this ruling on two grounds.  First, "Defendants have not sought a stay of enforcement under Rule 62(b)(4), and in the absence of such a motion the Court sees no basis to defer action on the instant Motion."  *Id.* at 9.  Second, "Plaintiffs . . . will

be forced to expend resources in enforcement actions brought in other jurisdictions unless they obtain the relief sought by the instant Motion." *Id.* Neither ground provided a basis for granting the motion for a payment decree while the vacatur motion is pending.

First, Magistrate Judge Martin's reliance on the absence of a general motion by Defendants to stay proceedings to enforce the judgment erroneously ignored the context in which the Defendants' vacatur motion was filed. When Defendants moved to vacate the default judgment at the end of 2007, the final judgment had been in place for over three years. Substantial enforcement proceedings already were underway in New York (as to the Palestine Monetary Authority and Palestinian Pension Fund for State Administrative Employees in the Gaza Strip ("Palestinian Pension Fund")), in Connecticut (as to the Palestine Investment Fund), and in Israel, where the Ungars are seeking to satisfy their judgment by turnover of tax transfer revenue owed from the Government of Israel to the PA. *See* Dkt. No. 469 at 4-6 (describing various Ungar enforcement proceedings). The PA/PLO did not view it as practicable or even possible to ask this Court to stay enforcement proceedings in other courts while Defendants vacatur motion was pending. Moreover, the PA/PLO appreciated the extraordinary nature of the relief they were seeking and did not seek to ask the Court to disrupt the Ungars' ongoing enforcement action until the Court was persuaded of the merits of the vacatur motion.

In addition, the Magistrate Judge's requirement of a global stay motion ignored the fact that Defendants were not seeking to stay all enforcement proceedings but rather were seeking merely to subordinate resolution of a local payment action in favor of immediate proceedings to comply with the First Circuit's mandate. It is no answer to this argument that Defendants did not file a global motion to halt enforcement proceedings in Rhode Island, particularly given the impermissible and unforeseeable nature of this sort of proceeding, brought in a jurisdiction in

1063523.1

which neither the PA nor PLO has assets or property, and thus where they could not even anticipate the filing of Rhode Island based payment actions. Because the Rhode Island payment decree procedure does not authorize the current enforcement proceeding against the PA/PLO, Defendants continue to maintain that there was no need to preemptively seek to stay such enforcement proceedings. In any event, the request that the Court subordinate resolution of this sort of payment action, where its resolution in Plaintiffs' favor prior to resolution of the vacatur motion was inconsistent with the First Circuit's mandate, is not the same as a general stay request and Magistrate Judge Martin incorrectly equated the two.

Second, Magistrate Judge Martin's view that the payment decree was justified to avoid additional expenses of resources by the Ungars in prosecuting the enforcement actions fails to take in to account that some of these actions are stayed and all of them could be stayed pending this Court's resolution of the vacatur motion, with the Ungars' consent. As of the present, the enforcement action in Israel is indefinitely stayed with the joint consent of the Ungars and the PA. Moreover, as Magistrate Judge Martin noted, the Jerusalem District Court granted the Ungars' motion for a post-judgment attachment and "the total amount of the attached PA funds is now approximately $116,000,000." Dkt. No. 484 at 7. The non-Rhode Island U.S. enforcement actions are against other Palestinian entities, not the PA or PLO. The enforcement action in Connecticut involving the Palestine Investment Fund's interest in a Connecticut-based equity fund ("Canaan") has been stayed at the request of the Canaan entities. *See Strachman v. Palestinian Auth.*, No. 3:05-mc-00208-PCD (D. Conn.) (Dkt. No. 185); *see also Estate of Ungar v. Palestinian Auth.*, No. 08-2475, 2009 U.S. App. LEXIS 12758 (2d Cir. June 16, 2009) (dismissing appeal of stay order). In the New York state court enforcement action involving the

Palestine Monetary Authority, *PMA v. Strachman*, No. 10777/05, (N.Y. Sup. Ct.), PMA sought a stay in April 2010 of that enforcement action but there has been no ruling yet on the stay motion.

**III.    Consistent with the First Circuit's Mandate, This Court Should Stay Consideration of the Magistrate Judge's Report and Recommendation Pending Resolution of the Pending Motion to Vacate Default Judgment.**

For the reasons set forth above, Magistrate Judge Martin's conclusions and holdings are flawed as a matter of law. However, given the Order issued by the First Circuit on March 25, 2010, this court should defer its de novo review of the Magistrate's "Order" until it completes its consideration of the Defendants' pending motion to vacate default judgment as directed by the appellate court. A contrary course would violate the mandate rule, which requires a trial court on remand to dispose of the case in accordance with the appellate court's mandate by implementing "both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Cohen v. Brown University*, 101 F.3d 155, 168 (1st Cir. 1996) (*quoting United States v. Connell*, 6 F.3d 27, 30 (1st Cir. 1993)).

"When a case is appealed and remanded, the decision of the appellate court establishes the law of the case and it must be followed by the trial court on remand." *United States v. Rivera-Martinez*, 931 F.2d 148, 150 (1st Cir. 1991); *see also Ellis v. United States*, 313 F.3d 636, 646 (1st Cir. 2002). The mandate rule, which is part of the law of the case doctrine, looks not only to the language of the appellate court's opinion, but also to the spirit of the opinion and the "circumstances it embraces." *United States v. Connell*, 6 F.3d 27, 30 (1st Cir. 1993) (*quoting United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir. 1991)); *see also In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir. 1992) ("[t]he district court's actions on remand should not be inconsistent with either the express terms or the spirit of the mandate") (*citing Quern v. Jordan*, 440 U.S. 332, 347 (1979)).

1063523.1

The rule is designed to promote "proper working relationships between trial and appellate courts and judicial economy," *United States v. Ticchiarelli*, 171 F.3d 24, 28-29 (1st Cir. 1999), and to those ends, the appellate court retains the right to control the actions of the district court where the mandate has been misconstrued or has not been given full effect. *See In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895). Indeed, because the district court has no discretion in carrying out the mandate, the appellate court retains the authority to determine whether the terms of the mandate have been "scrupulously and fully carried out." *United States v. E.I. Du Pont De Nemours & Co.*, 366 U.S. 316, 325 (1961).

The First Circuit unambiguously held that the arguments advanced by the PA/PLO in support of vacatur of a concededly willful default were "substantial" and "deserv[ing of] full-throated consideration." *Ungar*, 599 F.3d at 86-87. Rejecting the plaintiffs' invitation to review the record de novo and affirm the district court's order in their favor, the Circuit remanded the case to the district court to "construct the fact-specific balance that Rule 60(b)(6) demands." *Id.* at 87. While the Circuit took no view on the appropriate outcome, it did specifically note that "several district courts, presented with similar circumstances and similar arguments in other ATA cases against these same defendants, have engaged in holistic analyses and granted relief from defaults or default judgments." *Id.* at 86-87 (citing cases resolved since PA/PLO engaged new counsel and began to actively litigate ATA cases). Among the arguments the Circuit specifically noted as potentially constituting "exceptional circumstances" were the PA/PLO's argument that they have legitimate, merit-based defenses to the action, that the amount of the judgment is unlikely to withstand adversarial testing, that the case has unique political ramifications, and that its resolution has a "potential effect on international relations." *Id.* at 86. Clearly, the First Circuit intended that this court would carefully and comprehensively weigh the

1063523.1

gamut of factual permutations relevant to a proper Rule 60(b)(6) analysis in exceptional circumstances juxtaposing two fundamental values: the importance of finality in litigation and the desirability of deciding cases on the merits.  *See, id*. at 83-84.  In conclusion, the Circuit specifically listed the options available to the district court upon remand:

> It may, for example, deny the Rule 60(b)(6) motion, grant the motion outright, or grant it upon conditions, which may include requiring a bond to ensure payment of a future judgment, *see, e.g., Knox*, 248 F.R.D. at 433, or requiring the payment of costs and expenses incurred by the plaintiffs due to the defendants' original obstinacy, *see, e.g., Coon v. Grenier*, 867 F.2d 73, 79 (1st Cir. 1989).

Id. at 87 n.6.

Magistrate Judge Martin's recommendation that the PA/PLO be compelled to pay the judgment directly to the Plaintiffs prior to this court's proper consideration of the remanded vacatur motion was not only *not* among the options listed by the Circuit, it cannot be squared with the spirit of the First Circuit's Order.  As a practical matter, payment of the judgment by the PA/PLO prior to resolution of the 60(b)(6) motion would render some of the Circuit's listed options – granting of the motion outright or upon payment of a bond – a practical impossibility. It is surprising that Magistrate Judge Martin would issue such an "Order" six weeks after the First Circuit's emphatic statement.  And if this Court were to adopt the Magistrate Judge's recommendation and compel payment of the judgment prior to its careful consideration of the Rule 60(b)(6) factors delineated in the Circuit's order, it would act inconsistently with the inherent assumption in the First Circuit's remand: that this court will conduct a fair-minded review without prejudice borne of its earlier experiences with the PA/PLO.

Respectfully submitted,

Dated:  May 28, 2010

/s/ Richard A. Hibey
Richard A. Hibey (D.C. Bar #74823)
Admitted *pro hac vice*
Mark J. Rochon (D.C. Bar #376042)
Admitted *pro hac vice*
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
rhibey@milchev.com

Deming E. Sherman (#1138)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, Rhode Island 02903
Tel. (401) 274-9200
Fax. (401) 276-6611
dsherman@eapdlaw.com
*Attorneys for the Palestinian Authority and*
*the Palestine Liberation Organization*

1063523.1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 28th day of May 2010, a true and genuine copy of the

foregoing was filed by ECF, which will automatically send notification and a copy of such filing

to:

> David J. Strachman
> McIntyre, Tate & Lynch, LLP
> 321 South Main Street, Suite 400
> Providence, RI  02903
> Djs@mtlhlaw.com
> *Attorneys for Plaintiffs*

/s/ Richard A. Hibey

1063523.1