# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

       Plaintiffs – Judgment Creditors,

    v.                                 C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.,

       Defendants – Judgment Debtors.

## PLAINTIFFS – JUDGMENT CREDITORS' MEMORANDUM IN RESPONSE TO DEFENDANTS – JUDGMENT DEBTORS' OBJECTIONS TO THE RECOMMENDATIONS [SIC] OF MAGISTRATE JUDGE MARTIN AND IN OPPOSITION TO THEIR MOTION FOR APPROPRIATE RELIEF CONSISTENT WITH THE MANDATE OF THE FIRST CIRCUIT

### Introduction

Plaintiffs–Judgment Creditors ("Ungars") respectfully submit this memorandum in response to Defendants–Judgment Debtors' objections to Magistrate Judge Martin's Memorandum and Order of May 12, 2010 (the "Order"), and in opposition to their "motion for appropriate relief consistent with the mandate of the First Circuit." Dkt. # 485-486, 488.

### ARGUMENT

**I.**    **The True Purpose of the Objections and Motion Is to Enable Defendants to Continue to Avoid Paying the Judgment If Their Rule 60(b)(6) Motion Is Denied**

Magistrate Martin's Order requires the PA and PLO to satisfy the judgment entered by this Court in July 2004 by installment payments made out of PA funds equal to the full amount of the judgment that have accumulated in Israel since September 2008 pursuant to an attachment obtained by the Ungars in the context of their Israeli enforcement proceedings.

Thus, the Order does not require the PA or PLO to "dig into their pockets," since the funds to be used for the installment payments are already set aside under the Israeli attachment.

Moreover, during briefing on their motion for the payment order the Ungars noted – both in response to a claim by defendants that it would be difficult to recoup the funds from the Ungars if the Rule 60(b) motion were granted and to dispel any possible impression that the Ungars were making a presumption about the ultimate disposition of the Rule 60(b) motion or were seeking to "take the money and run" prior to the resolution of that motion – that under Fed.R.Civ.P. 62(b)(4) the defendants are entitled to a stay of enforcement pending resolution of their Rule 60(b) motion if they provide "appropriate terms for the [Ungars'] security," and that defendants could provide such security by depositing the installment payments into the registry of the Court rather than paying them to the Ungars. *See* Exhibit A at 1-2, and n. 1; Exhibit B at 2.[1]

Therefore, the net effect of the Order read in conjunction with the stay provisions of Rule 62(b)(4) – i.e. the "worst case scenario" from defendants' perspective – is that the funds currently attached in Israel would simply be moved to the registry of this Court.

If defendants intended to pay the judgment if their Rule 60(b) motion is denied, they would have no objection whatsoever to moving these funds from Israel to the Court' registry. Defendants cannot currently make any use of these funds because they are attached, and so they derive no benefit from having the funds held in Israel rather than in the registry of this Court.

---

[1] Notably, defendants have not made such a motion, likely because they seek to portray the impact of Magistrate Martin's Order as draconian and because by seeking a stay they would have to agree to provide adequate security – i.e. to pay the funds into the registry – which they are not willing to do.

Furthermore, placing the funds in the Court's registry would allow the Ungars to immediately discontinue their enforcement proceedings in Israel and across the United States, and thereby <u>save</u> the PA and PLO the costs of those proceedings.[2]

Yet, defendants have objected to the Order, and asked that it either be summarily vacated or that any ruling on their objections be <u>deferred</u> until after resolution of the Rule 60(b) motion.

In the meanwhile, defendants have decided to flout the Order, after they (and/or their counsel) unilaterally decided that Magistrate Judge Martin was empowered to issue only a report and recommendation, and not a self-operating order.

Needless to say, under both federal and Rhode Island law, a party is not entitled to disobey an order merely because he has made a "private determination of law" that it is wrong or invalid. *See e.g. Maness v. Meyers*, 419 U.S. 449, 459 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect."); *Menard v. Woonsocket Teachers' Guild-AFT 951*, 117 R.I. 121, 129-130, 363 A.2d 1349 (1976) ("[O]nce it has been issued, an order of the court binds those individuals to whom it was directed and who are charged with knowledge of it. Needless to say, dissatisfied litigants are not left without recourse … A recourse which is not available, however, is to disobey a court's order; conduct of this nature cannot be condoned under any guise.").

---

[2] Defendants will likely argue that the enforcement proceedings cost them nothing because the proceedings in Israel are currently stayed and they themselves are not defending the U.S. proceedings. This claim should be rejected because the U.S. proceedings are being contested by PA governmental bodies found to be presumptively identical with the PA. *See e.g. Palestine Monetary Authority v. Strachman*, 62 A.D.3d 213, 223, 873 N.Y.S.2d 281 (1st Dept. 2009). ("The burden ... lies with the PMA to show that it is a separate entity and not the alter ego of the PA. The PMA has not satisfied that burden.").

Of course this very same conduct – unilaterally deciding which orders of the Court they should obey and which they are entitled to ignore – is exactly what led to defendants' willful default in this case. Clearly, defendants' claim of having turned over a new leaf is false.

It is therefore patently obvious that the defendants are objecting to the Order and seeking to stay consideration of their objections thereto until after resolution of the Rule 60(b) motion – and refusing to honor the Order in the meantime – for one reason only: defendants have no intention of honoring this Court's judgment if their Rule 60(b) motion is denied and will continue to fight the Ungars' enforcement efforts in the U.S. and Israel just as they have for the past six years – presuming, correctly, that the Ungars' chances of prevailing in any of their enforcement proceedings are questionable and in any case would take many more years.

By contrast, Magistrate Martin's Order ensures that if the Rule 60(b) motion is denied, the Ungars will receive the compensation awarded them by this Court six years ago, forthwith.

In sum, defendants' objections and motion are made in bad faith since they aim to prevent the Ungars from satisfying their judgment if the Rule 60(b) motion is denied. Defendants' unilateral refusal to honor the Order only further highlights their gross bad faith.

## II.    Standard of Review

The PA and PLO note in their memorandum that the referral of the Ungars' motion for an installment payment order to Magistrate Judge Martin was made without reference to a specific statutory provision but concede, correctly, that the referral was proper under 28 U.S.C. § 636(b)(3). *See e.g. Michelson v. Schor*, 1996 WL 667803 at *2 (N.D.Ill. 1996) (Post-judgment collection proceedings were referred to magistrate judge "pursuant to the catch-all provision of the Federal Magistrate Act, 28 U.S.C. § 636(b)(3)"); *Chicago Pneumatic Tool v. Stonestreet*, 107 F.R.D. 674, 676 (S.D.W.Va. 1985) (proceedings to enforce judgment may be referred to

magistrate under § 636(b)(3)) *Bache Halsey Stuart Shields v. Killop*, 589 F.Supp. 390, 391 (E.D.Mich. 1984) (same).

Defendants then proceed to argue, incorrectly, that all matters referred under § 636(b)(3), including any post-judgment enforcement proceedings, are necessarily dispositive and therefore subject to de novo review by the district court. In purported support of this argument defendants cite a number of cases, none of which are apposite. The majority of the cases cited by defendants deal with the completely unrelated question of whether a magistrate can enter a judgment directly appealable to the court of appeals under § 636(b)(3). Others discuss whether a magistrate is empowered to consider specific matters, such as a Rule 60(b) motion, pursuant to § 636(b)(3), and if so what standard of review should be employed by the district judgment.

The <u>sole</u> case cited by defendants that addresses the question at issue here (i.e. whether a magistrate's decision in a post-judgment collection proceeding should be considered non-dispositive or dispositive) is *Michelson*. But *Michelson* is no authority at all, since it treated the magistrate's decision as "dispositive" with no explanation. *Michelson*, 1996 WL 667803 at *3 (Referring to magistrate's decision as "dispositive" without any rationale).

Infinitely more persuasive is the decision in *Chicago Pneumatic*, which held that a magistrate judge is empowered to issue an <u>order</u> – not a mere report and recommendation – directing a judgment creditor to surrender his property:

> The Plaintiff has requested that in the reference to the magistrate, <u>the magistrate be given the power to order the execution debtor to assign personal property to the United States Marshal</u>. Such an order would not run afoul of any constitutional limitations associated with the use of a magistrate. First, a "case" or "controversy" will not be before the magistrate. <u>The case here has already been tried to judgment by this Court</u>. The entry of judgment was made by this Court. The trial stage having already passed, <u>the magistrate will be merely serving to assist in the execution of a valid judgment</u>. Second, by <u>any order requiring the</u>

> execution debtor to transfer property to the Plaintiff, the magistrate will only be facilitating what the judgment entered by this Court otherwise would do.

*Chicago Pneumatic*, 107 F.R.D. at 677 (emphasis added).

Likewise, in *Bache Halsey*, the judgment creditor moved for appointment of a receiver "imbued with power to assume control over all of defendant's assets, and manage those assets so that the judgment is satisfied" and the district court referred the motion to "to the Magistrate as a 'non-dispositive' matter. The Magistrate was directed to dispose of the motion by order, and was not to submit a report and recommendation." The defendant challenged the magistrate's authority to issue such an order. The district court rejected the challenge, and found that the magistrate was empowered to issue such an order under the "additional duties" clause of § 636. *Bache Halsey*, 589 F.Supp. at 393-394.

Other federal courts have reached the same conclusion. *See e.g. Fuddruckers, Inc. v. KCOB I, L.L.C.*, 31 F.Supp.2d 1274, 1276 n.1 (D.Kan. 1998) ("[T]he court finds that orders relating to postjudgment execution and discovery matters are more analogous to non-dispositive pretrial discovery dispositions, and therefore applies the 'clearly erroneous' standard of review."); *Byron Originals, Inc. v. Iron Bay Model Co.*, 2006 WL 1004827 at *1 (N.D.W.Va. 2006) ("28 U.S.C. § 636 provides, in pertinent part, that "[a] magistrate may be assigned such additional duties as are not inconsistent with the constitution and laws of the United States." 28 U.S.C. § 636(b)(3); ... Accordingly, the magistrate judge may … order the execution debtor to assign personal property to the United States Marshal for the purpose of satisfying a judgment.").

In sum, of the five cases located by the parties that address the question at issue, only one (*Michelson*) supports defendants' position and four (*Chicago Pneumatic*, *Bache Halsey*, *Fuddruckers* and *Byron Originals*) support the Ungars' position.

Accordingly, Magistrate Judge Martin's decision to issue a self-operative order rather than a report and recommendation finds rock-solid support in the case law.

The problem is, however, that none of the cases cited above are binding on this court, much less on the First Circuit. It is clear that defendants will leave no straw ungrasped, and will appeal any decision by this Court affirming Magistrate Judge Martin's Order to the First Circuit. In the absence of any binding precedent, it is impossible to know how the First Circuit will rule.

Accordingly, solely <u>out of an abundance of caution</u> and in order to prevent the delay and waste of judicial and party resources that would ensue if this Court were to review the Order under a "clearly erroneous or contrary to law" standard only to have the First Circuit ultimately rule that de novo review was required, <u>the Ungars respectfully request that this Court review Magistrate Judge Martin's Order de novo</u>.

This was exactly the prudent approach taken in *Bache Halsey*, which found that post-judgment enforcement relief is non-dispositive and may be granted by an order of a magistrate (i.e. without a report and recommendation), but out of caution also ruled that: "In the event that this court's reading of the statute is not correct, the court rules in the alternative that the Magistrate's Memorandum Opinion and Order will be treated as a report and recommendation, and that the findings therein are adopted." *Bache Halsey*, 589 F.Supp. at 394. [3]

As shown below, defendants' objections to the Order are all meritless and the Order should be affirmed by this Court after de novo review.

_____

[3] The Ungars' request that the Court employ a de novo standard of review is made purely out of caution and in no way detracts from their position that the Order is non-dispositive and self-operating, and that defendants' refusal to obey the Order constitutes (yet another) egregious contempt of this Court.

### III.    Rule 69 Permits Entry of an Installment Payment Order Under R.I.G.L. § 9-28-5

Defendants' first argument is that the Order was improper because under Fed.R.Civ.P. 69(a)(1) "process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise" and in the First Circuit the "otherwise" clause applies only in limited circumstances not present here. Dkt. # 486 at 9-11.

This argument should be summarily rejected because it was not raised before Magistrate Martin and so was waived. *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-991 (1st Cir. 1988) ("We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate … Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round. In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and-having received an unfavorable recommendation-shift gears before the district judge.") (citing *Borden v. Secretary of HHS*, 836 F.2d 4, 6 (1st Cir. 1987)).

This argument should also be rejected on the "merits" because it is frivolous:

While Rule 69(a)(1) does provide that a "money judgment is enforced by a writ of execution, unless the court directs otherwise" it <u>also</u> provides in relevant part that the "procedure on execution – and in <u>proceedings supplementary to</u> and in aid of judgment or execution – must accord with the procedure of the state where the court is located." *Id*. (emphasis added).

This "supplementary proceedings" clause of Rule 69(a) empowers a federal court to enforce its judgments using <u>any procedure recognized by the law of the state in which it sits</u>. *See H.H. Robertson Co., Cupples Products Div. v. V.S. DiCarlo General Contractors, Inc.*, 994 F.2d

476, 477 (8th Cir. 1993) ("[T]he district court has the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law."); *Doe v. Manson*, 2006 WL 1892441 at *5 (D.Me. 2006) (same); *Dias v. Bank of Hawaii*, 732 F.2d 1401, 1402 (9th Cir. 1984) (same); *Rogers v. Webster*, 779 F.2d 52 (Table) (6th Cir. 1985) (same); *Nelson v. Maiden,* 402 F.Supp. 1307, 1309 (E.D.Tenn. 1975) (under Rule 69(a), a federal court "has no more <u>nor less authority</u> to aid the judgment creditor in supplementary proceedings than is provided under [state] law") (emphasis added); *Brown v. Byer*, 995 F.2d 223 (5th Cir. 1993) (unpublished) ("As available remedies under state law change, so does the scope of Rule 69(a)"); 12 Wright & Miller, *Federal Practice and Procedure* § 3012 ("The district court has at least as much authority to aid judgment creditors in supplementary proceedings as a state court.").[4]

Thus, for example, pursuant to the "supplementary proceedings" clause of Rule 69, federal courts have ordered "garnishment, mandamus, arrest, contempt of a party, and appointment of receivers, when such actions are undertaken in aid of executing on a judgment" and are authorized by state law. *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 700 (9th Cir. 2010) (internal quotation marks and brackets omitted). Wright & Miller, *id*. (same).

Likewise, federal courts have enforced their judgments utilizing state-law installment payment provisions similar to that used here (R.I.G.L. § 9-28-5).

For example, in *Aetna Cas. & Sur. Co. v. Rodco Autobody*, 965 F.Supp. 104, 109-110 (D.Mass. 1996), the court ordered the judgment debtors to satisfy the judgment by monthly installment payments pursuant to Mass.Gen.L. Ch. 224, § 16 which (like R.I.G.L. § 9-28-5)

---

[4] Indeed, the case that defendants purport to rely on, *Aetna Cas. & Sur. Co. v. Markarian*, 114 F.3d 346 (1st Cir. 1997), held that the judgment creditor could not seek a writ of *ne exeat* against the judgment debtor, because such a remedy was not permitted <u>by Massachusetts law</u>. *Id*. at 349-350.

authorizes the court to "order the debtor to pay the judgment … in full or by partial payments from time to time." M.G.L.A. 224 § 16.

Similarly, the Illinois Code of Civil Procedure empowers a court to "[c]ompel the judgment debtor to pay to the judgment creditor or apply on the judgment, in installments, a portion of his or her income." 735 ILCS 5/2-1402(c)(2). The Illinois federal courts have not hesitated to order installments payments under this provision. *See e.g. Wienco Inc. v. Scene Three Inc.*, 29 F.3d 329 (7th Cir. 1994) (affirming installment payment order issued by district court under § 1402(c)(2)); *One CW LLC v. Cartridge World North America, LLC*, 661 F.Supp.2d 931, 938-939 (N.D.Ill. 2009) (entering installment payment order under § 1402(c)(2)).[5]

Likewise, § 5226 of New York's Civil Practice Law and Rules "allows a court to order a judgment debtor to make installment payments to the judgment creditor, and the federal courts in New York have often granted relief under this provision. *See e.g. Lowy v. Bobker*, 383 F.Supp.2d 606 (S.D.N.Y. 2005) (Ordering judgment debtor to satisfy judgment by installment payments under § 5226); *In re Gaming Lottery Securities Litigation*, 2001 WL 123807 at *2-3 (S.D.N.Y. 2001) (same); *Alpha Petroleum Trading Co. v. Richards*, 1986 WL 3515 at *2 (S.D.N.Y. 1986) (Noting that judgment creditor may move for installment payments under § 5226).

Thus, defendants' claim that "Magistrate Judge Martin's 'pay the judgment' decree appears highly unusual" (dkt. # 486 at #10) is baseless. As clearly shown above, federal courts frequently issue such orders where, as here, state law authorizes such relief.

---

[5] An order under § 1402(c)(2) (like R.I.G.L. § 9-28-5) is directed at the judgment debtor personally, not at the third-party source of the income. *Wienco*, 29 F.3d at 330 ("[T]he district court's order is directed to [the judgment debtor] himself and to no one else.").

In sum, defendants' untimely argument that the Order was improper under the "otherwise" clause of Rule 69(a)(1) is a whopping red herring: the Order was issued under the "supplementary proceedings" clause of Rule 69(a)(1) and thus is entirely proper.

## IV.    Defendants' Claim That R.I.G.L. §§ 9-28-3 and 9-28-3 Do Not Apply to Organizational Judgment Debtors Was Waived and Is Meritless

Defendants next argue that the Order was improper because § 9-28-3 requires the judgment debtor to show cause "why an examination into <u>his or her</u> circumstances should not be made and a decree be entered ordering <u>him or her</u> to pay the judgment" and § 9-28-5 requires the court to allow "the debtor out of his or her income a reasonable sum <u>for the support of himself or herself or the support of himself or herself and family</u>," which language shows, according to defendants, that these provisions apply to natural persons only. Dkt. # 486 at 11-14.

The Court should summarily reject this argument because it was not raised in defendants' opposition papers (*see* dkt. # 469) and was asserted by defendants for the first time at the January 13, 2010 hearing before Magistrate Judge. Martin. *See* Tr. 1/13/10 (Exhibit C) at 31:11 – 32:6.[6]

It is basic that arguments raised for the first time in a motion hearing are waived. *See e.g. U.S. v. Pulido*, 566 F.3d 52, 60 n. 4 (1st Cir. 2009) ("Except in extraordinary circumstances, arguments not raised in a party's initial brief [on a motion] and instead raised for the first time at oral argument are considered waived.") (citations and internal quotation marks and brackets omitted); *Bluetarp Financial. v. Eastern Materials*, 2009 WL 2242617 at *5 n. 18 (D.Me. 2009) (same); *Halpert Enterprises, Inc. v. Harrison*, 2008 WL 4585466 at *3 n. 1 (2nd Cir. 2008)

---

[6] Defendants admit that they raised this argument for the first time at oral argument. *See* dkt # 486 at 14 ("Defendants argued the non-applicability of the Rhode Island payment decree statute to organizational defendants, *see* Tr. at 31:11-32:6 (Jan. 13, 2010) [but] Magistrate Judge Martin's decision fails to address the PA/PLO's argument …").

(unpublished) (Party's failure to assert argument in memorandum filed in opposition to motion precluded it from raising the argument at oral argument on the motion); *In re Monster Worldwide, Inc. Sec. Litig.,* 251 F.R.D. 132, 137 (S.D.N.Y. 2008) ( "[T]his argument was raised for the first time at oral argument and so was waived in terms of this motion."); *Monroe v. Xerox Corp.*, 664 F.Supp.2d 235, 243 (W.D.N.Y. 2009) (same); *Faber v. Metropolitan Life Ins. Co.*, 2009 WL 3415369 at *7 n. 6 (S.D.N.Y. 2009) (A "new argument, having been raised for the first time at oral argument [on a motion], need not and will not be considered.").

Defendants' failure to raise this argument timely is particularly egregious and inexcusable in light of the fact that defendants <u>did</u> argue in their opposition memorandum that the PA is immune from execution because it is a municipal government (dkt. # 469 at 17) – yet, despite raising the issue of the PA's organizational status for the purpose of <u>that</u> argument, defendants did not even hint in their opposition papers at a claim that § 9-28-3 applies only to natural persons. On the contrary, by asserting the governmental immunity argument in respect to the <u>PA only</u>, defendants <u>implicitly conceded</u> that the PLO is subject to § 9-28-3 despite the fact that the PLO (like the PA) is not a natural person.

Thus, this argument was not only waived, but implicitly conceded.

After defendants untimely raised this argument for the first time at the hearing, plaintiffs' counsel wrote Magistrate Judge Martin on January 22, 2010, asking that this argument be considered waived or, alternatively, rejected on the merits. Exhibit D.

In the event, Magistrate Judge Martin quite properly treated this argument as waived, and did not address it in the Order.

This Court, too, should deem this argument waived and decline to consider it.

Alternatively, if this argument is not deemed waived it should be rejected on the merits. Rhode Island courts have always construed §§ 9-28-3 *et seq*. as applicable to organizational judgment debtors. For example, in *Murphy v. Charlie's Home Imp. Co.*, 117 R.I. 324, 366 A.2d 809 (1976), the Rhode Island Supreme Court heard a certiorari petition filed by a corporation – Gal's Construction Company – against which the District Court had entered an order under § 9-28-5 directing it to make installment payments on a judgment. *Id*. at 325-326, 328 ("[P]etitioners in this case [Frank Gallo and Gal's Construction Company] appealed to Superior Court from a District Court order in supplementary proceedings directing petitioners, judgment debtors [Frank Gallo and Gal's Construction Company], to make periodic payments on a judgment.").

Though the authority of the court to issue a citation to a corporation was not at issue in *Murphy*, neither was it questioned. Thus, *Murphy* demonstrates that for some 40 years the Rhode Island courts have construed §§ 9-28-3 *et seq*. as granting them such authority.

Defendants intentionally ignore *Murphy*. They claim falsely that there are "only five decisions addressing the use of R.I. Gen. Laws § 9-28-3" and then proceed to list five decisions – but exclude *Murphy*. Dkt. # 486 at 11-12. Defendants' attempt to wish *Murphy* away is unsurprising, since *Murphy* proves that defendants' claim that all published cases involving § 9-28-5 "involve[] a state court judgment against a natural person" (dkt. # 486 at 11) is totally false.

Moreover, the courts of Rhode Island <u>continue</u> to construe §§ 9-28-3 and 9-28-5 as applicable to organizational judgment debtors <u>until today</u>. *See* Citation issued against Starship Enterprises Medical Ltd. on February 2, 2009, appended to plaintiffs' January 22 letter to Magistrate Judge Martin (Exhibit D).

Effectively, then, defendants are inviting the Court to sweep away four decades of Rhode Island jurisprudence and practice, purely in order to enable them to (once again) wriggle out of paying the now-hoary judgment in this case. The Court should decline this invitation.

Notably, like the courts of Rhode Island, courts in other states have construed installment payment provisions containing language very similar to §§ 9-28-3 and 9-28-5 as applicable to organizational judgment debtors.

For example, § 5226 of New York's Civil Practice Law and Rules provides that: "In fixing the amount of the [installment] payments, the court shall take into consideration the reasonable requirements of the judgment debtor <u>and his dependents</u>." *Id*. (emphasis added). Under defendants' theory, the reference to "his dependants" proves that § 5226 applies only to judgment debtors who are natural persons. In fact, however, New York courts construe § 5226 as applying to corporate judgment debtors. *See e.g. In re Gaming Lottery Securities Litigation*, 2001 WL 123807 (issuing installment payment order against corporation pursuant to § 5226).

By contrast, where state legislatures seek to exempt organizational judgment debtors from installment payment provisions they do so explicitly. For example, § 52-356d(a) of the Connecticut General Statutes expressly provides that: "When a judgment is rendered <u>against a natural person</u>, the judgment creditor or judgment debtor may move the court for an order for installment payments in accordance with a money judgment." (emphasis added).

Thus, if the Rhode Island legislature had sought to restrict §§ 9-28-3 and 9-28-5 to natural persons, it could and would have said so.

Defendants also argue in passing that because § 9-28-3 "requires that the citation be served "by delivering a copy to the debtor <u>or by leaving a copy at the last and usual place of abode of the debtor</u> with some person living there" (emphasis added) it can only apply to a

natural person. Dkt. # 486 at 12-13. This argument is frivolous, since § 9-28-3 plainly permits service "by delivering a copy to the debtor" and allows service at the debtor's abode merely as an alternative option, as Magistrate Judge Martin found. *Ungar v. Palestinian Authority*, ---F.Supp.2d ----, 2010 WL 2040255 at *5 (D.R.I. 2010) ("While the statute permits service of the citation by leaving a copy at a debtor's abode, *see* R.I. Gen. Laws § 9-28-3, such service is merely an option in addition to allowing service on the debtor ...").

Finally, defendants point to the decision in *Patel v. Garmo*, 2009 WL 279034 (W.D.Mich. 2009), which found that Michigan's installment payment provisions apply only to natural persons. But *Patel* is completely inapposite because, as that court found, the Michigan provisions at issue were enacted solely <u>to protect judgment debtors</u> by allowing <u>judgment debtors</u> (not judgment creditors) to move for an installment payment order and thereby shield themselves from the garnishment of their wages. *Id. passim*.

By contrast, the purpose of the provisions of §§ 9-28-3 and 9-28-5 – indeed, of Title 9 Chapter 28 as a whole – is to <u>protect judgment creditors</u> by allowing them to locate and reach the assets of judgment debtors.

In sum, defendants' claim that §§ 9-28-3 and 9-28-5 apply only to natural persons should be rejected both as waived and on the merits.

## V.    The Order Was Jurisdictionally Sound

Defendants next argue that the Order was improper because §§ 9-28-3 and 9-28-5 do not apply to judgment debtors with no presence or assets in Rhode Island, even where, as here, the judgment debtors are subject to the personal jurisdiction of the Court. Dkt. # 486 at 14-17.

But defendants mainly rehash here the arguments made in their opposition to the Ungars' motion for an installment payment order. Those arguments were thoroughly analyzed and rejected by Magistrate Judge Martin (*see Ungar*, --- F.Supp.2d ----, 2010 WL 2040255 at *5-7).

The Ungars will rely on and incorporate by reference Magistrate Judge Martin's holdings on this issue, and add the following two points in further support thereof:

*First*, the holdings in the Order are supported by the fact that Rhode Island courts may exercise personal jurisdiction to the full reach permitted by the Constitution. *See* R.I.G.L § 9-5-33; *KVH Industries, Inc. v. Moore*, 789 F.Supp. 69, 70 (D.R.I. 1992) (Rhode Island long-arm statute permits jurisdiction to the fullest extent permitted by the Constitution.).

Accordingly, out-of-state residents are haled into Rhode Island courts every day – yet, under defendants' theory, all such defendants would be immune from citation proceedings because they lack a Rhode Island presence. Such a conclusion would be absurd.

Second, the holdings in the Order are also supported by *Desper v. Talbot*, 727 A.2d 1233 (R.I. 1999), in which the Rhode Island Supreme Court construed R.I.G.L. § 9-28-1 – which is a sister provision of § 9-28-3 – as empowering Rhode Island courts to assign and order the transfer of the judgment debtor's rights in out-of-state assets to the judgment creditor. Under the *in pari materia* rule of statutory construction, *Desper* constitutes direct support for the Order:

> It is [a] well-settled principle that statutes relating to the same subject matter should be considered together so that they will harmonize with each other and be consistent with their general objective scope. Such statutes are considered to be *in pari materia*, which stands for the simple proposition that statutes on the same subject are, when enacted by the same jurisdiction, to be read in relation to each other.

*Such v. State*, 950 A.2d 1150, 1156 (R.I. 2008) (internal citations, quotes and ellipsis omitted).

Since § 9-28-3 and § 9-28-1 "relate to the same subject matter" and are part of the same Chapter and Title, § 9-28-3 should be construed, as was § 9-28-1 in *Desper*, as permitting a judgment creditor to reach out-of-state assets.

Indeed, § 9-28-3 and § 9-28-1 both require that an execution be returned unsatisfied as a condition of utilizing those statutes. Thus, by definition, §§ 9-28-3 and 9-28-1 were intended by the Rhode Island legislature to enable enforcement of judgments against judgment debtors without property, or without sufficient property, in Rhode Island. *Cf. In re Gaming Lottery Securities Litigation*, at *2 ("GalaxiWorld also argues that this Court does not have jurisdiction to enter a turnover order or an installment order pursuant to CPLR § 5225(a) or 5226 because the assets of GalaxiWorld are located outside of New York. This argument is also unavailing. The very purpose of CPLR § 5225 is to reach funds that are beyond the reach of a sheriff's levy.").

Defendants' objections raise only two arguments requiring any further response, both of which are meritless:

Defendants argue that "[i]t is not evident that § 9-28-3 was intended to have any application outside Rhode Island. The notion that the Rhode Island legislature intended it to reach outside the *United States* is entirely unfounded." Dkt. # 486 at 15 (emphasis in the original). Defendants' attempt to draw a distinction between "outside Rhode Island" and "outside the United States" has no legal or logical basis whatsoever. Either § 9-28-3 allows judgment creditors to reach out-of-state assets of judgment debtors subject to the personal jurisdiction of the court or it does not. If it does – and it does indeed – there is simply no basis to distinguish assets outside Rhode Island but inside the United States from those outside the United States.

Finally, defendants assert in a single sentence in passing that "giving extraterritorial reach to a state court enforcement mechanism over a judgment debtor with no contacts with that state creates substantial due process concerns." Dkt. # 486 at 16.

This argument should be rejected for three reasons:

*First*, it was not raised before the magistrate judge. *See* dkt. # 469 at 7-11 (challenging the authority of the Court to issue the installment order on <u>statutory</u> grounds only). It is well established that constitutional challenges not timely raised are considered only in "rare cases" and the "Supreme Court has never indicated that such challenges must be heard regardless of waiver." *In re DBC*, 545 F.3d 1373, 1380 (Fed.Cir. 2008) (citing *Freytag v. Comm'r*, 501 U.S. 868, 879 (1991)). Moreover, where, as here, the failure to raise the constitutional challenge was due to the party's lack of diligence, the challenge should not be heard. *Id.* (Refusing to consider constitutional challenge in light of party's "lack of diligence to present an issue [to the tribunal below] of which it was, or should have been, aware.").

*Second*, defendants have waived this argument a <u>second</u> time, by "raising" it in an entirely bald and undeveloped fashion in a single sentence. *See e.g. In re Olympic Mills*, 477 F.3d 1, 17 (1st Cir. 2007) (holding that argument made in the district court had been waived because "as presented to the district court ... the argument was fatally undeveloped, comprising only four sentences, a citation to a district court opinion, and no analysis whatsoever"); *Lee v. U.S.*, 2008 WL 295070 at *2 (C.D.Ill. 2008) (Party's "bald, perfunctory argument is unsupported by pertinent authority and is therefore waived."); *Van Jackson v. Check"N Go of Illinois*, 193 F.R.D. 544, 545 (N.D.Ill. 2000) ("The defendants make an unexplained assertion that there is some similar problem under the Illinois Consumer Fraud Act claim … but undeveloped arguments are waived and bald assertions are worthless.").

*Third*, defendants have failed to develop their due process argument because it is utterly meritless and so cannot be "developed." There is not the least colorable basis to claim that requiring a judgment debtor subject to the personal jurisdiction of the court to satisfy a judgment from out-of-state assets raises any due process issues. The numerous cases cited in the Order holding that judgment debtors can be compelled to do exactly that are clear proof that the exercise of such authority implicates no due process concerns.

In sum, the Order was authorized under §§ 9-28-3 and 9-28-5.

## VI.    Defendants Had a Full Opportunity to Be Heard

Defendants also claim that they were denied an opportunity to present evidence regarding their ability to pay as anticipated by § 9-28-4. Dkt. # 486 at 17-19.

This argument is not only raised for the first time, but directly contradicts the position taken by defendants before Magistrate Judge Martin, as explained below:

Section 9-28-4 provides in relevant part that: "At the hearing on the citation, the court shall make inquiry by examination of the judgment debtor, or otherwise, as to his or her circumstances, his or her income from any source, and his or her ability to pay the judgment."

In their motion for an installment payment order, the Ungars explained that because the entire sum of the judgment had already accumulated in Israel "no discovery or fact-finding whatsoever is necessary in the instant case in order to show that the PA and PLO can satisfy the entire judgment" and therefore "no examination of the PA and PLO regarding their assets need

take place at the January 13, 2010 hearing; rather, that hearing should be utilized simply for oral argument on the instant motion." Dkt. 468 at 3 and at 6 n. 3.[7]

In their opposition to the Ungars' motion, the defendants noted the Ungars' position that no fact-finding was necessary because defendants' ability to satisfy the judgment was indisputable, and <u>expressly waived their right to submit testimony or evidence to the contrary</u>:

> Plaintiffs' Memorandum states that "no discovery or fact-finding is necessary in the instant case," and that "[i]n light of the nature of the relief sought in this motion no examination of the PA and PLO regarding their assets need take place at the January 13, 2010 hearing; rather, that hearing should be utilized simply for oral argument on the instant motion." Dkt. No. 468 at 3, 6 n.3. Accordingly, counsel will appear at the January 13, 2010 hearing on behalf of the PA and PLO for argument on the instant motion.

> <u>The PA and PLO also will not attempt to present here, or at the show cause hearing, the extensive and detailed evidence demonstrating their inability to pay the judgment.</u> Indeed, were they to be required to do so, a substantial amount of time would be required to compile and present current information about the PA and PLO's financial status akin to that which was presented in the *Knox* litigation, a portion of which is referenced in the Declaration of Hatem Yousef which was filed by Plaintiffs as an exhibit to their memorandum in support of the instant motion. *See* Dkt. No. 468-3. <u>Instead, Defendants will simply demonstrate how … Plaintiffs have failed to meet their initial burden of demonstrating their entitlement to such an order</u>. …

> <u>A judgment creditor has the initial burden of demonstrating to the Court that the debtor has the ability to pay the judgment</u>, which the debtor can rebut by demonstrating its inability to pay. *Ciccone v. Ciccone*, 204 A.2d 819 (R.I. 1964). <u>Because Plaintiffs have failed</u>

---

[7] Needless to say, the Ungars waived only <u>their own right</u> to examine the defendants, and did not – and quite obviously could not – deprive defendants of their statutory right to submit any evidence or testimony they desired regarding their financial situation.

> to meet their initial burden of proof under the statute, their motion
> must be denied.

Dkt. 469 at 12-13 (emphasis added).

Thus, the defendants explicitly took the position that the burden of proof regarding defendants' ability to pay rested on the Ungars, and because the Ungars had failed to meet their burden the defendants would "not attempt to present [in their opposition to the motion] or at the show cause hearing" any evidence regarding their ability to pay the judgment.

In other words, defendants <u>admitted</u> that they could have submitted evidence or affidavits in opposition to the Ungars motion, <u>but intentionally refrained from doing so</u> in reliance on their theory that the Ungars had failed to bear their initial burden of proof.

Indeed, in their opposition to the motion and at oral argument the defendants did not dispute – because they could not – the plain fact that the sum of the judgment had already accumulated in Israel. Rather, they challenged the Ungars' motion on legal grounds.

In the event, Magistrate Judge Martin assumed without deciding that the Ungars had the burden of proof, and found that they had met that burden. *Ungar*, at *9-10.

Magistrate Judge Martin's conclusion that the Ungars had demonstrated the defendants' ability to pay the judgment is unsurprising, given that defendants could not and did not dispute that the sum of the judgment had already been set aside in Israel.

Thus, defendants' claim that they were denied an opportunity to submit evidence regarding their ability to pay is not only baseless but a red herring: defendants never disputed their ability to pay, but instead gambled that the Ungars would fail to meet their burden and/or that their legal defenses to the motion would prevail.

### VII.    The Evidence Easily Proves Defendants' Ability to Make the Installment Payments

Defendants assert that the "scant evidence" before the magistrate judge did not support his conclusion that the defendants could make the installment payments. Dkt. # 486 at 19-21.

As an initial matter, defendants' description of the evidence as "scant" is laughable. The evidence presented to Magistrate Judge Martin included defendants' own evidentiary submissions in the *Knox v. PLO* and two decisions in *Knox* detailing defendants' income.

In any event, defendants' objections are meritless.

Defendants' objections treat the Order as having directed them to pay $116 million out of their future income. In fact, of course, the Order is current-and-future-income-neutral, since it requires defendants to make the payments out of attached income in the full sum of the judgment that accumulated between fall 2008 and spring 2010 and is being held by the Israeli Treasury.

Thus, all of defendants' arguments about their ability to pay are utterly moot. The plain, empirical fact is that the full amount of the judgment has already accumulated pursuant to the Israeli attachment obtained by the Ungars, and defendants' dark jeremiads about the impact of diverting their income to pay the judgment are therefore totally irrelevant.[8]

Fact: the full amount of the judgment has accumulated, and the sky did not fall.

---

[8] Defendants also argue that the Order is improper because § 9-28-5 prohibits the court from entering an installment payment order unless the judgment debtor's income exceeds his expenses and "the PA has no excess income." Dkt. # 486 at 21. This argument should be rejected for several reasons. *First*, defendants failed to raise it before the magistrate judge. *Second*, § 9-28-5 does not require that the income of the judgment debtor exceed his actual expenses but only that the income exceed a reasonable allowance for expenses. *Third*, and most importantly, the claim that "the PA has no excess income" is false: the sum attached by the Ungars in Israel is precisely such "excess income" which, moreover, has already been set aside specifically to ensure satisfaction of their judgment (provided the Ungars would ultimately prevail, years from now, in the numerous Israeli proceedings that still lie ahead of them).

Therefore, the <u>sole</u> challenge defendants could possibly assert regarding their ability to pay is in respect to the initial payment of $15 million.

Yet, defendants <u>make no such challenge</u>: their objections do not assert that they are unable to put up the initial payment of $15 million. Defendants make no such claim because they cannot: PA leader Salam Fayyad admitted to the *Knox* court that the defendants could post $15 million, and the *Knox* court found that the defendants were capable of making an initial payment of $20 million followed by installment payments up to $100 million. *Ungar*, at *9-10.

Moreover, the defendants will recover the first $15 million from the funds attached in Israel, once the final installment payment is made and the last of the attached funds are released by the Ungars. Thus, the question is not whether the defendants have the ability <u>to part with</u> $15 million, but only whether they are able to put up an initial $15 million that they will receive back a short time later. Little wonder that the defendants do not dispute their ability to do so.

In sum, defendants' claim that the evidence does not support the Order is baseless.

## VIII.  There Are No Grounds for Certification to the Rhode Island Supreme Court

Defendants requested that Magistrate Judge Martin certify certain issues to the Rhode Island Supreme Court, but this request was rejected both on the merits and on the ground that it appeared to be another of defendants' stalling tactics. *Ungar*, at *8.

It seems quite clear that the defendants have abandoned their request for certification, since their memorandum contains only the vaguest passing reference – and certainly no articulated, developed or grounded objection whatsoever – to Magistrate Judge Martin's decision to decline certification. Dkt. # 486 at 14, 16.

But to the extent, if any, that the Court finds that defendants have properly preserved and presented an objection to the decision denying certification (and the Ungars believe that

defendants have not done so), the Ungars oppose that objection and in support thereof incorporate herein by reference the grounds cited by Magistrate Judge Martin. *Ungar*, at *8.

## IX.    There Are No Grounds for a Stay Except as Permitted by Fed.R.Civ.P. 62(b)(4).

Defendants object to Magistrate Judge Martins' decision (*Ungar*, at *3) to reject their request to stay the Ungars' motion pending resolution of defendants' Rule 60(b)(6) motion on that grounds that defendants had not sought a stay pursuant to Rule 62(b)(4) and that a stay would force the Ungars to expend resources in other enforcement actions. Dkt. # 486 at 21-24.

In support of this objection defendants assert two meritless grounds:

*First*, defendants argue that, notwithstanding the rule that the filing of a motion for relief from judgment "does not affect the judgment's finality or suspend its operation" (Rule 60(c)(2)), they are entitled to a stay because the enforcement relief sought by the Ungars is contrary to both Rhode Island law and the mandate of the First Circuit. Dkt. # 486 at 22-23.

Since, as shown *supra* and *infra*, the Order conforms fully to both Rhode Island law and the mandate, this argument is baseless.

*Second*, defendants assert that some of Ungars' enforcement proceedings "are stayed and all of them could be stayed pending this Court's resolution of the vacatur motion, with the Ungars' consent." Dkt. # 486 at 23-24.[9]

---

[9] Defendants assert that the "enforcement action in Israel is indefinitely stayed with the joint consent of the Ungars and the PA." Dkt. # 486 at 23. This is inaccurate. The defendants moved to stay the Israeli appellate proceedings pending the resolution of the Rule 60(b) motion, and the Ungars decided <u>not to oppose</u> this motion (without affirmatively consenting thereto) only after their Israeli counsel advised them that the motion would very likely be granted in any case and (pursuant to the procedure in Israel) costs might be imposed on them if they opposed the motion and lost.

This argument is both cynical and frivolous. True, the Ungars could stay all of their enforcement proceedings. Indeed, they could also discontinue those proceedings and call it quits. But that is not the point. The point is, that the Ungars have a nearly six year-old unsatisfied judgment and unless and until that judgment is vacated or satisfied, or defendants obtain a stay pursuant to Rule 62(b)(4) by providing adequate security, the Ungars have no intention – indeed cannot afford to – slack off in their enforcement efforts.

For the defendants, who for six years have thumbed their nose at this Court and at the Ungars by refusing to pay the judgment and fighting the Ungars' enforcement proceedings at every turn, to suggest that the Ungars voluntarily stay their enforcement proceedings – i.e. that the Ungars waste even more time – is the very apogee of gall.

As discussed above, if the defendants want a stay of the Order, they can very easily obtain one under Rule 62(b)(4) by the simple expedient of depositing the installment payments into the registry of the Court rather than paying the funds to the Ungars.

But since the defendants have no intention whatsoever of honoring the judgment if their Rule 60(b)(6) motion is denied (i.e., since defendants are exploiting Rule 60(b)(6) for a "heads I win tails you lose" procedural gambit), they will not do so.

Accordingly, defendants' objection to Magistrate Judge Martin's decision to deny their request for an unsecured stay should be overruled.

**X.    Nothing in the Order Deviates From the Mandate**

Finally, defendants argue that the Order violates the mandate of the First Circuit. This argument, too, is wholly frivolous. As the First Circuit recently reiterated:

> [A]n appellate court's mandate controls all issues that were <u>actually considered</u> and decided by the appellate court, or as were <u>necessarily inferred</u> from the disposition on appeal. At the same time, <u>issues that were not decided by the appellate court are not affected by the mandate.</u>

*Kashner Davidson Securities Corp. v. Mscisz*, 601 F.3d 19, 23-24 (1st Cir. 2010) (emphasis added) (internal citations, quotation marks, ellipses and brackets omitted). *See also de Jesus-Mangual v. Rodriguez*, 383 F.3d 1, 6 (1st Cir. 2004) ("[I]ssues that were not decided by the appellate court and that are thus outside the scope of the mandate are not affected by the mandate."); *Biggins v. Hazen Paper*, 111 F.3d 205, 209 (1st Cir. 1997) ("[M]andates require respect for what the higher court decided, not for what it did not decide.").

Quite clearly, the First Circuit did not decide – neither explicitly nor by necessary inference – whether the defendants could or should be required to satisfy the judgment during the pendency of their Rule 60(b)(6) motion.

The mandate rule is therefore irrelevant to the Ungars' motion for installment payments.

Recognizing, as they must, that the First Circuit did not address this issue explicitly or implicitly, Defendants argue, nonetheless, that "[a]s a <u>practical matter</u>, payment of the judgment by the PA/PLO prior to resolution of the 60(b)(6) motion would render some of the Circuit's listed options – granting of the motion outright or upon payment of a bond – a practical impossibility." Dkt. # 486 at 26 (emphasis added).

This argument is baseless. If defendants pay the judgment and the Rule 60(b)(6) motion is granted, the Ungars will of course be required to return the funds paid.

Accordingly, payment of the judgment prior to resolution of the Rule 60(b)(6) motion will in no way, shape or form "render … granting of the motion outright or upon payment of a bond – a practical impossibility."

Effectively, defendants are arguing that relief under Rule 60(b) is unavailable once a judgment has been paid. Obviously, there is no basis whatsoever for such a proposition.

Of course, if defendants have any concerns about their ability to recoup the funds paid if their Rule 60(b)(6) motion is granted, they are free to seek and obtain a stay pending appeal by depositing the installment payments into the registry of the Court.

Alternatively, to dispel any doubt on this score, the Ungars hereby state their willingness, *ex gratia*, to have all funds paid pursuant to the Order held by their undersigned counsel in an escrow account pending the disposition of defendants' Rule 60(b)(6) motion, to be disposed of pursuant to the directives of the Court following the disposition of that motion.

If the defendants have any intention whatsoever of honoring the judgment if their Rule 60(b)(6) motion is denied, they will take the Ungars up on one of the proposals set forth in the preceding two paragraphs.

Unfortunately, since the defendants have no intention of honoring the judgment, come what may, they will not accept either of these proposals.

In any event, nothing in Order contradicts the mandate.

**WHEREFORE**, defendants' objections should be overruled and their motion denied.

Plaintiffs, by their Attorney,

/S/ David J. Strachman
David J. Strachman #4404
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com

## **CERTIFICATION**

I hereby certify that on June 8, 2010 I served this Memorandum along with the attached exhibits via ECF on the following counsel of record:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701


---- and hand delivered to:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

/S/ David J. Strachman