McINTYRE, TATE, & LYNCH LLP

COUNSELLORS AT LAW

JERRY L. McINTYRE †
DEBORAH MILLER TATE *Δ
WILLIAM J. LYNCH
DAVID J. STRACHMAN *
ROBERT S. PARKER *
ROBERT J. SGROI †

Also member
† New York Bar
* Massachusetts Bar
Δ Florida Bar

BY HAND DELIVERY

Hon. David L. Martin
United States Magistrate Judge
United States District Court
District of Rhode Island
John O. Pastore Federal Building
Two Exchange Terrance
Providence, Rhode Island 02903-1779

April 2, 2010

Re: *Ungar v. Palestinian Authority et al.*, Civ. No. 00-105L

Dear Magistrate Judge Martin,

Currently pending before Your Honor is the Ungars' motion for a payment decree pursuant to R.I.G.L. § 9-28-3. Dkt. # 467.

At the January 13, 2010 hearing on the Ungars' motion, defendants' counsel argued that the motion should not be granted in light of defendants' appeal to the First Circuit of Judge Lagueux's denial of their Rule 60(b)(6) motion.

Several days ago the First Circuit vacated Judge Lagueux's decision denying the Rule 60(b)(6) motion on the ground that Judge Lagueux had considered only the willfulness of defendants' default (which he found to be dispositive) and remanded the matter to Judge Lagueux to consider other relevant factors. Dkt. ## 480-481. The First Circuit remained entirely and carefully agnostic as to the proper ultimate outcome. *Id.*

We write in order to point out that, as a matter of law, the First Circuit's decision provides no grounds to stay or deny the Ungars' pending motion, and to alert the Your Honor to circumstances that render that motion more timely and necessary than ever.

As a result of the First Circuit's decision, defendants' Rule 60(b)(6) motion is once again "live" in this district court. But Rule 60(c)(2) provides that the pendency of a Rule 60(b) motion "does not affect the judgment's finality or suspend its operation."

Thus, the Ungars remain fully entitled to enforce their judgment.

Though defendants are entitled under Rule 62(b)(4) to seek a stay of enforcement pending the resolution of their Rule 60(b) motion, and may receive such a stay if they

provide "appropriate terms for the [Ungars'] security," the defendants have not moved for such a stay, much less provided the necessary security.[1]

Thus, because the defendants have not moved for a stay (much less provided the requisite security) there are no <u>legal</u> grounds to stay or deny the Ungars' pending motion.

Moreover, current circumstances strongly favor granting the Ungars' motion, as explained below:

Because the defendants have refused (both before and after the filing of their Rule 60(b) motion) to honor the judgment entered by this Court in 2004, the Ungars have been forced to initiate multiple enforcement proceedings in which they have invested many hundreds of thousands of dollars and literally thousands of hours of labor.

In the coming months, the Ungars will be forced to expend <u>further</u> very extensive resources in several of these enforcement proceedings. Three examples will suffice:

In *Palestine Monetary Authority v. Strachman et al.*, (Sup. Ct. N.Y. County 107777/05), a plenary suit to enforce the Ungars' judgment, paper discovery is nearing completion and the Ungars will need to conduct a number of depositions in the Middle East in the coming months, which will cost tens of thousands of dollars, make extensive Arabic to English translations at a cost of many tens of thousands of dollars more and prepare for trial – an additional investment of many hundreds of hours of attorney time.[2]

In *Ungar v. Palestinian Authority et al.*, (Sup. Ct. N.Y. County 102101/06), another plenary suit to enforce the Ungars' judgment,[3] the Ungars will need to conduct depositions in the Middle East in the near future and prepare for a complex trial at a further cost of tens of thousands of dollars and hundreds of hours of time.

On or about February 16, 2010, the Ungars caused an execution issued by the Supreme Court, New York County, to be levied by the New York sheriff on Orascom Telecom Holding, an Egyptian corporation heavily indebted to the "Palestine Investment Fund" a self-settled trust established by judgment debtor PA (the beneficiary of which is the PA itself). Pursuant to § 5232 of the New York Civil Practice Law and Rules, in order to maintain their lien and restraint on

---

[1] Notably, the defendants could provide such security by the simple expedient of paying the installment payments sought in the Ungars' pending motion into the registry of the Court, rather than to the Ungars.

[2] The background to this proceeding is set forth in *Palestinian Monetary Auth. v. Strachman*, 62 A.D.3d 213, 873 N.Y.S.2d 281 (N.Y.A.D. 1 Dept. 2009).

[3] The details of this enforcement suit are described in *Strachman v. Palestinian Authority*, --- N.Y.S.2d ----, 2010 WL 1203662 (N.Y.A.D. 1 Dept. March 30, 2010).

this debt, the Ungars must file a plenary action against Orascom for turnover of the debt within 90 days of February 16, 2010. Thus, by mid-May 2010, the Ungars will be constrained to file yet another plenary suit to enforce their judgment. Previous attempts by the Ungars to execute against this debt (brought in federal court and dismissed for lack of subject-matter jurisdiction[4]) were vigorously resisted by Orascom, and the state court proceeding against Orascom which the Ungars must file by mid-May (unless this Court grants their pending motion) will certainly be met with the same resistance from Orascom, with all the extraordinary costs and expenses this will entail for the Ungars.

Having based their Rule 60(b) motion in great part on the claim that they have turned over a new leaf and will now obey the orders of this Court, defendants cannot conceivably refuse to comply with an installment payment order. Likewise, because (as discussed in the Ungars' motion papers) the installment payments will be made from the funds that have _already_ accumulated in Israel in the full amount of the judgment, defendants cannot with a straight face claim inability to comply with the payment order.

Therefore, granting the Ungars' motion will indisputably result in the full amount of the judgment being paid to the Ungars (or, if the defendants seek a stay pending resolution of their Rule 60(b) motion, into the registry of the Court), which in turn will enable the Ungars to immediately discontinue their numerous pending enforcing proceedings, and thereby save the enormous resources – both in money and in time – that they will otherwise be forced to expend therein in the near future.

In sum, the decision of the First Circuit changes nothing and the Ungars should be spared the need to waste additional resources in their multiple outstanding enforcement proceedings by granting their pending motion for a payment order.

We are grateful for your consideration.

Sincerely,

David L. Strachman

DJS/do

cc:   Richard Hibey (via fax 202-628-0850)
      Mark Rochon (via fax 202-628-0850)
      Brian A. Hill (via fax 202-626-5801)
      Deming E. Sherman (via fax 401-276-6611)

---

[4] See *Ungar v. Orascom Telecom Holding*, 578 F.Supp.2d 536 (S.D.N.Y. 2008).