# McIntyre, Tate, & Lynch LLP

Counsellors at Law

JERRY L. McINTYRE †
DEBORAH MILLER TATE *Δ
WILLIAM J. LYNCH
DAVID J. STRACHMAN *
ROBERT S. PARKER *
ROBERT J. SGROI †

Also member
† New York Bar
* Massachusetts Bar
Δ Florida Bar

VIA HAND DELIVERY

January 22, 2010

Hon. David L. Martin
United States Magistrate Judge
United States District Court
District of Rhode Island
John O. Pastore Federal Building
Two Exchange Terrance
Providence, Rhode Island 02903-1779

Re: *Ungar v. Palestinian Authority et al.*, Civ. No. 00-105L

Dear Magistrate Judge Martin,

    We write to respond to the January 14 letter to Your Honor from defendants' counsel Mr. Hibey and, having now received the transcript of the January 13 hearing on the Ungars' motion for a payment decree, to address briefly several issues that were raised for the first time at that hearing.

    **First**, Mr. Hibey's letter attempts to excuse defendants' prior refusal to pay the attorney's fees awarded by this Court nearly six years ago on the grounds that defendants "mistakenly understood that the fees were part of the default judgment." *Id.* at 1.

    Implicit in this dubious claim of "misunderstanding" is the premise that defendants' refusal to honor the judgment is somehow excusable because defendants have filed a Rule 60(b)(6) motion to vacate. This position was also reflected in Mr. Hibey's repeated efforts to persuade the Court during the January 13 hearing that the payment order sought by the Ungars should not be granted in light of defendants' appeal to the First Circuit of Judge Lagueux's denial of their Rule 60(b)(6) motion.

    Defendants' position both fails to explain their refusal to honor the judgment between its entry in July 2004 and the filing of their Rule 60(b)(6) motion in December 2007 and flies in the face of Fed.R.Civ.P. 60(c)(2), which provides that the filing of a Rule 60(b) motion "does not affect the judgment's finality or suspend its operation."

    While a judgment debtor may seek a stay of enforcement pending the resolution of a Rule 60(b) motion pursuant to Fed.R.Civ.P. 62(b)(4), no such stay is available where, as here, the Rule 60(b) motion has already been denied. *See In re Zapata Gulf Marine Corp.*, 941 F.2d 293, 295 (5th Cir. 1991) (Rule 62(b) gives courts "no authority" to stay execution of judgment once the motion for relief has been ruled upon even if judgment debtor deposits supersedeas bond).

Even assuming *arguendo* that *Zapata* is not good law in this Circuit (which there is no reason to assume) in order to obtain a stay defendants would be required to provide "appropriate terms for the [Ungars'] security." Fed.R.Civ.P. 62(b).

When defendants sought a stay of enforcement pending appeal of the original judgment in 2004, Judge Lagueux conditioned a stay on deposit of security in the amount of $50 million. *See* docket entry of 09/23/04. Since that time the judgment was affirmed by the First Circuit, the Supreme Court denied a petition for certiorari, defendants' Rule 60(b)(6) motion was denied and a federal court found just recently that "[t]here is no evidence indicating that [the PA and PLO] would willingly pay any judgment entered against them." *Knox v. PLO*, 2009 WL 1591404 at *10 (S.D.N.Y. 2009) *aff'd* 628 F.Supp.2d 507 (S.D.N.Y. 2009).

Accordingly, there is every reason to believe that even if defendants were entitled to move for a stay now notwithstanding *Zapata* – and, notably, they have never made such a motion – they would be required to post security in the full amount required by Local Civil Rule 62, i.e. "the amount of the judgment, plus an additional ten percent (10%) of that amount to cover interest and any award for delay."

Therefore, the Court should disregard defendants' attempts to circumvent the Federal and Local Rules and obtain an unsecured and entirely unjustified stay.

**Second**, Mr. Hibey asserted for the first time at the January 13 hearing that R.I.G.L. § 9-28-3 is inapplicable to organizational judgment debtors (as opposed to natural persons). Tr. 1/13/10 at 31:11 – 32:6.

The Court should treat this argument as waived since defendants failed to raise it in their opposition papers. *See* dkt. # 469, *passim*. This failure is particularly egregious and inexcusable in light of the fact that defendants did argue that the PA is immune from execution because it is a municipal government (*id.* at 17) – yet, despite raising the issue of the PA's organizational status, defendants did not even hint at a claim that § 9-28-3 applies only to natural persons. On the contrary, by asserting the governmental immunity argument in respect to the PA only, defendants implicitly conceded that the PLO – which of course is no more a natural person than the PA – is subject to § 9-28-3.

Even if this argument is not deemed waived it should be rejected on the merits. Rhode Island courts have applied §§ 9-28-3 *et seq.* to organizational judgment debtors for decades. For example, in *Murphy v. Charlie's Home Imp. Co., Inc.*, 117 R.I. 324, 366 A.2d 809 (R.I. 1976), the Rhode Island Supreme Court heard a petition for certiorari filed by a corporation – Gal's Construction Company – against which the District Court had entered an order under § 9-28-5 directing it to make periodic payments on a judgment. *See id.* at 325-326, 328.

Though the authority of the court to issue a citation to a corporation was not at issue in *Murphy*, neither was it questioned. Moreover, *Murphy* demonstrates that the Rhode Island courts have been doing exactly that for at least 40 years.

This practice continues until the present day. *See e.g.*, citation issued against Starship Enterprises Medical Ltd. on February 2, 2009, appended hereto.

**Third**, at the hearing the Court asked whether (a) it could infer defendants' current income from the 2009 findings made in *Knox* and (b) whether funds previously available to pay security in *Knox* might not have been utilized for the *Knox* settlement. Tr. 1/13/10 at 20:8-15.

Regarding question (a) the Ungars would respectfully refer the Court to footnote 3 of their Reply (dkt. # 472) which points out that according to the PA's most recent published financial statements this income stream continues undiminished until today.

Regarding question (b) the Ungars attach hereto the Stipulation and Final Order of Dismissal entered in *Knox* on January 21, 2010, which provides that the "parties have fully complied with the terms of the Settlement Agreement." *Id* at ¶ 2.

Thus, the *Knox* settlement is a thing of the past and so cannot possibly constitute a drain on the PA's on-going stream of income from Israel.

The Ungars also respectfully note that the defendants themselves have not claimed any change in revenue since the findings in *Knox* or that because of the *Knox* settlement they are unable to advance the first $20 million as sought by the Ungars.

**Fourth**, the Court questioned whether the Ungars' prior agreement that the defendants need not produce a witness for examination at the hearing shifted the burden of proof. Tr. 1/13/10 at 15:12-16:10.

In addition to the response to this question provided at the hearing (*id.*), the Ungars would respectfully refer the Court to pp. 14-15 of their Reply (dkt. # 472) which shows that defendants' income stream and ability to pay (certainly the initial $20 million) is proven by the materials submitted with the Ungars' opening motion papers, and that this income stream continues until the present day. *Id.* at n. 3.

Since defendants have not even <u>disputed</u> that they can put up the initial $20 million (because they cannot[1]) there are no questions here of proof or burden of proof.

**Fifth**, at the hearing the Court twice asked whether plaintiffs considered the funds attached and held at the Israeli Treasury to be "income" for purposes of the instant motion. Tr. 1/13/10 at 4:25-5:4 and at 8:22-24.

---

[1] As noted at the hearing, defendants themselves offered to post security of $15 million in *Knox*. *See Knox v. PLO*, 2009 WL 1591404 at *1 (S.D.N.Y. 2009).

3

In response to the Court's first query, we replied that "[t]he totality of the monthly payments is considered their income" (*id.* at 5:5-6) (emphasis added) but in response to the second query the undersigned replied only "Correct." *Id.* at 8:25.

The undersigned's first answer – i.e. that the totality of the monthly revenue received by the PA from Israel is the PA's income – was the full and accurate response to the Court's question. That is because in this motion, the Ungars are seeking to have the PA make an initial payment of $20 million from its stream of unattached income, and to make subsequent payments from the currently-attached income, as the Ungars release those funds in tranches of $20 million after receiving each new payment of $20 million, until the judgment is satisfied.

We are grateful for your consideration.

Sincerely,

David J. Strachman

Enclosures
cc via fax:
    Deming Sherman
    Richard Hibey
    Brian Hill
    Mark Rochon

8072

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT CITATION

✓ **Providence County**
Licht Judicial Complex
250 Benefit Street
Providence, Rhode Island 02903

___ **Kent County**
Kent County Judicial Complex
222 Quaker Lane
Warwick, Rhode Island 02886

___ **Newport County**
Murray Judicial Complex
45 Washington Square
Newport, Rhode Island 02840

___ **Washington County**
McGrath Judicial Complex
4800 Tower Hill Road
Wakefield, Rhode Island 02879

## CITATION IN SUPPLEMENTARY PROCEEDINGS

PROVIDENCE, SUPERIOR COURT

To the Sheriffs, their Deputies, or Constables in the County of PROVIDENCE

GREETING:

WHEREAS, MEDUINE INDUSTRIES

in the County of ............ and State of ............ SUPERIOR Court has filed an application in the ............ in the County of PROVIDENCE ............ setting forth that (s)he obtained a judgment in said Court on the 16th day of JUNE, 2005, against STARSHIP ENTERPRISES - MEDICAL LTD ............ of ............ in the County of ............ and State of ............ for ............ dollars and costs of suit; that thereafter on the 3RD day of OCTOBER, 2005, execution issued on said judgment, and said execution has been returned to said Court, unsatisfied and unpaid, and requesting an examination into the circumstances of said STARSHIP ENTERPRISES - MEDICAL LTD.

AND WHEREAS, on the 11th day of FEBRUARY, 2009, at 9:30 o'clock a.m. at the SUPERIOR Court in PROVIDENCE, in the County of PROVIDENCE and State of Rhode Island, are fixed and appointed as the time and place for hearing of said application.

NOW, THEREFORE, you are herby required to notify and also to cite said STARSHIP ENTERPRISES- MEDICAL LTD to appear in person before said Court to be holden at PROVIDENCE in said STATE, on the 11th day of FEBRUARY, 2009, at 9:30 o'clock a.m. to show cause why an examination into his/her circumstances should not be made and an order entered ordering him/her to pay said judgment in full or by installments weekly, or otherwise, and that for failure to so appear as commanded that (s)he may be proceeded against as provided by law.

At said hearing the Court shall make examination of the said STARSHIP ENTERPRISES - MEDICAL LTD, or otherwise, as to his/her circumstances, his/her income from any source, and his/her ability to pay said judgment. ALSO NOTIFY SAID

Date: 2-2-09

### Proof Of Service

I hereby certify that a copy of this Citation was served upon Starship Enterprise

By delivering in the following manner:

( ) Upon the defendant personally

( ) At his / her dwelling house or usual place of abode at the address below, with a person of suitable age and discretion residing therein

_____

_____

_____

( ✓ ) To an agent named below authorized by appointment

William A. Estrella

( ) By leaving it at the office of the corporation with a person employed therein

*[signature]*

Michael D'Ippolito, Jr.
RI Constable
Lic. # 6016

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# SUBPOENA

DISTRICT COURT

[ XX ] PROVIDENCE/BRISTOL   [ ] KENT   [ ] WASHINGTON   [ ] NEWPORT

---

**MEDLINE INDUSTRIES, INC.**
vs.

CA No.: PC 05-3066

**STARSHIP ENTERPRISES-MEDICAL, LTD.**

TO: William A. Estrella
Address: 58 Baker Street, Warren, RI.

[XX] **YOU ARE HEREBY COMMANDED** to appear in the District Court for the above county on February 11, 2009 to testify in the above-entitled action, and bring with you
__See Exhibit A__

| 250 Benefit Street, Providence, RI | |
|---|---|
| LOCATION OF COURT | COURTROOM # |
| February 11, 2009 | 9:30a.m. |
| DATE | TIME |

[ ] **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of testimony in the above-entitled action.

LOCATION OF DEPOSITION                           DATE AND TIME

[ ] **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):

DOCUMENTS/OBJECTS

LOCATION                                         ROOM #

DATE                                             TIME

[ ] **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

LOCATION                                         ROOM #

DATE                                             TIME

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf and may set forth, for each person, designated, the matters on which the person will testify. (Superior Court Rule of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE | DATE |
|---|---|

**ATTORNEY FOR:** [x] Plaintiff    [ ] Defendant    [ ] Arbitrator

| Lynda L. Laing | 3082 |
|---|---|
| ISSUING OFFICER'S NAME (Print/Typed) | Registration # |

| 222 Richmond Street, Ste. 208, Providence, RI 02903 | (401) 456-0700 |
|---|---|
| STREET    CITY/TOWN    STATE ZIP | PHONE |

## PROOF OF SERVICE

| 2-2-09 | 1 Citizens Plz Prov. RI |
|---|---|
| DATE | PLACE |

**SERVED**

| William A Estrella | In person |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | Michael D'Ippolito, Jr. |
|---|---|
| SERVED ON (PRINT NAME) | TITLE RI Constable Lic. # 6016 |

## DECLARATION OF SERVER

I declare under penalty of perjury that the foregoing information contained in the Proof of Service is true and correct.

Executed on  2-2-09
           DATE                           SIGNATURE OF SERVER

                                          Johnston, RI
                                          ADDRESS OF SERVER

Michael D'Ippolito, Jr.
RI Constable
Lic. # 6016

Male - white
50's
Wearing sunglasses
Sitting in his pick-up
Big man - seems / looks like he's over 6 feet tall
Salt + pepper hair

EXHIBIT A

1. All federal and state income tax returns, gift and estate tax returns, including schedules of each filed on behalf of Defendant for the years 2002 through and including 2004. In the event that tax returns as referenced in the preceding sentence have not yet been filed, copies of all extensions filed on behalf of each.

2. All pro forma statements, financial reports, personal financial statements, income statements, balance sheets and loan and/or credit applications relating to or prepared on behalf of Defendant for the years 2002 through and including the present.

3. All financial statements, financial reports, cash flow reports, pro forma statements, compilation reports, federal tax returns and loan and/or credit applications relating to or prepared by or on behalf of any corporation, trust, partnership, limited partnership, joint venture, limited liability company, or any other entity in which Defendant has or had any interest, including a participation in or other financial interest from January 1, 2002 through and including the present.

4. All passbooks, statements of account, account numbers, check registers, ledgers, cancelled checks and any other Documents which evidence or relate to any account held in the name or otherwise for the benefit of Defendant together with the name and address of the commercial bank, savings bank, credit union, money market fund or other financial institution or fund where each account is located.

5. All Documents which evidence, constitute, record, reflect or regard any asset, promissory note, contract, account receivable, security agreement, will, trust, trust indenture, asset, mortgage, lease, option, pledged instrument, or property or any other Document or thing which represents, evidence, refers to, pertains to, or relates to any account, debt or liability,

whether fixed or contingent, which is held by, owed to, belonging to, accruing to or otherwise inures to or will inure to the benefit of Defendant.

6. All deeds, mortgages, contacts for sale, options, contracts, agreement, trustee indentures, trust agreements, leases, assignments and all other Documents which evidence, record, refer to or relate to any real property owned by or on behalf of Defendant for the period January 1, 2002 through and including the present.

7. All documents which record, evidence, or reflect any life insurance contracts in which Defendant is or has been listed as either the owner or the beneficiary.

8. All stock certificates, stock warrants, debentures, account statements, bonds, options, dividend payments, correspondence, agreements and all other Documents which evidence, record, reflect constitute or concern any past, present or future interest in any governmental bonds, municipal bonds, corporate bonds, municipal bonds, corporate bonds or stocks, shares, options futures, margin accounts, house accounts, broker's accounts, or any other securities or interest in any trust, unincorporated association or partnership held by or on behalf of Defendant.

9. All employment contracts, consulting contracts, fee arrangements, payroll records, which evidence, records, refers to, or relates to any compensation or benefits, monetary or non-monetary in nature for the period January 1, 2002 through and including the present.

10. All Documents which in any respect record, evidence, or reflects any compensation, monetary or non-monetary in nature, income, interest, bonus, profit sharing or other similar plans pursuant to which Defendant will or may be entitled to receive for the period January 1, 2002, through the present.

11. All stock certificates, stock warrants, option contracts, communications memoranda, other writings, and any other Documents which evidence, record, indicate, constitute or concern

any past, present, or future right, title, claim, or interest of Defendant in any other person's present or potential profits, income, shares of stock, other assets or real or personal property, tangible or intangible.

12. All Documents evidencing, indicating or otherwise recording the ownership, possession, dominion or control of any safe deposit boxes either owned, leased or rented of Defendant, including all Documents which indicate, describe, record or evidence the contents thereof of Defendant.

13. All Documents which evidence, record, indicate, identify, relate or refer to any trust fund, pension fund, annuity fund, retirement fund, SEP, Keough or IRA fund as to which each Defendant is a beneficiary in any matter for the period of January 1, 2002 through the present.

14. All Documents, including insurance policies, certificates of title, invoices, bills of sale which evidence, reflects, or records that Defendant is the owner of any personal property, including, but not limited to motor vehicles, boats, office equipment and furnishings, jewelry, household furnishing, or other tangibles, and any Documents which evidence, record, indicate reflect or identify the value of Defendant's personal property.

15. All Documents which evidence, record, indicate, identify, reflect or concern any rental income received from due to Defendant with respect to any real or personal property owned by Defendant or in which Defendant has had an interest covering the period January 1, 2002 through the present.

16. All Documents which evidence or reflect that Defendant is, now, may be, or will be the beneficiary of or will inherit any assts, including, but not limited to money, from any party.

17. All dockets, pleadings, papers, communications, and all other Documents which evidence, identify, record or reflect any lawsuit (excluding the instant action but including

bankruptcy proceedings) in which Defendant has, or intends to file a proof of claim, or threatened law suit to which Defendant is or may be a party.

18. All statements, correspondence, bills, notes, guarantees, and all other Documents which identify any creditor of Defendant, including, but not limited to monthly bills and expenses paid by Defendant.

19. All Documents which in any respect evidence, record, reflect, identify, or concern any and all distributions, transfers, assignments, bonuses, gifts, or payments made by Defendant or any of their beneficiaries, heirs or assigns or any other parties for the period January 1, 2002 through the present.

20. All charge account statements, airline tickets, cancelled checks, statements of account, travel reservations, bills statements, invoices, and all other Documents which evidence, record, identify, constitute or reflect any expenses, disbursements or expenditures (including, but not limited to personal or business travel, vacation, meals, clothing, automobile or office expenses) by Defendant on behalf of himself for the period covering January 1, 2002 through the present.

21. All Documents which evidence, identify, record, or reflect any liabilities of Defendant, including, but not limited to all Documents which relate to any debt due and owing of Defendant, direct, indirect, or contingent to anyone.

22. All Documents which in any respect evidence, record, reflect or concern any and all other past or present assets or liabilities of Defendant which Documents were not included in requests 1 through 21 above.

23. All trademarks, copyrights, patents, or intangibles in which Defendant possess an interest.

24. All Documents which relate, refer or memorialize any policies of insurance providing hazard, all risk or liability coverage to Defendant for the period January 1, 2002 through the present.

25. All Documents which evidence, record, identify, reflect, concern or relate to the past or present financial condition of Defendant, which Documents were not including in requests 1 through 24 above.

26. All Documents reflecting any payments made by Defendant to any payee for the period January 1, 2002 through the present.

27. All documents that show any transfer of assets of defendant.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

LESLYE KNOX, et al.,

                Plaintiffs,

v.                           Civil Action No. 03 CV 4466 (VM)

THE PALESTINE LIBERATION
ORGANIZATION, THE PALESTINIAN
AUTHORITY, et al.,

                Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-21-10

## STIPULATION AND FINAL ORDER OF DISMISSAL WITH PREJUDICE

IT IS HEREBY STIPULATED AND AGREED, by and between the Plaintiffs and defendants The Palestine Liberation Organization and The Palestinian Authority (collectively, "Defendants"), as follows:

1. The parties entered into a Settlement Agreement dated October 20, 2009 ("Settlement Agreement").

2. The parties have fully complied with the terms of the Settlement Agreement.

3. Pursuant to the terms of the Settlement Agreement, the judgment which the Court entered against the Defendants on August 1, 2006 (Dkt. #87) and which the Court conditionally vacated on March 27, 2009 (Dkt. #122) (hereinafter, the "Judgment") shall be, and hereby is, unconditionally and fully vacated.

4. Pursuant to the terms of the Settlement Agreement, this action shall be, and hereby is, dismissed with prejudice, as settled.

5. This Court retains jurisdiction to hear any dispute between the parties arising from the Settlement Agreement.

| STIPULATED AND AGREED FOR PLAINTIFFS: *[signature]* | STIPULATED AND AGREED FOR JUDGMENT-DEFENDANTS: *[signature]* |
|---|---|
| David J. Strachman, Esq.<br>McIntyre, Tate, Lynch & Holt<br>321 South Main Street, Suite 400<br>Providence, Rhode Island 02903<br>(401) 351-7700 (telephone)<br>(401) 331-6095<br>Counsel for Plaintiffs | Richard A. Hibey, Esq.<br>Mark J. Rochon, Esq.<br>Miller & Chevalier Chartered<br>655 15th Street, N.W., Suite 900<br>Washington, D.C. 20005<br>(202) 626-5800 (telephone)<br>(202) 626-5801 (facsimile)<br>Counsel for Defendants The Palestine Liberation Organization and The Palestinian Authority |
| Robert J. Tolchin, Esq.<br>The Berkman Law Office, LLC<br>111 Livingston Street, Suite 1928<br>Brooklyn, NY 11201<br>Counsel for Plaintiffs | |

SO ORDERED this 20th day of January, 2010.

The Clerk of Court is hereby directed to mark the Judgment against the Defendants dated August 1, 2006 (Dkt. #87) as vacated and to mark this action dismissed with prejudice, as settled.

THIS IS A FINAL ORDER.

*[signature]*

Victor Marrero
United States District Court Judge

Copies to All Counsel of Record

2

Broadcast Report                                                         P. 1
                                                                 01/22/2010 12:44
                                                     Serial No.   A0R5011010493
                                                               TC:        21285

| Destination  | Start Time  | Time     | Prints  | Result | Note |
|--------------|-------------|----------|---------|--------|------|
| 12026265801  | 01-22 12:29 | 00:10:09 | 015/015 | OK     |      |
| 2766611      | 01-22 12:40 | 00:03:56 | 015/015 | OK     |      |

Note   TMR: Timer TX, POL: Polling, ORG: Original Size Setting, FME: Frame Erase TX,
       MIX: Mixed Original TX, CALL: Manual TX, CSRC: CSRC, FWD: Forward, PC: PC-Fax,
       BND: Double-Sided Binding Direction, SP: Special Original, FCODE: F-Code, RTX: Re-TX,
       RLY: Relay, MBX: Confidential, BUL: Bulletin, SIP: SIP Fax, IPADR: IP Address Fax,
       I-FAX: Internet Fax

Result  OK: Communication OK, S-OK: Stop Communication, PW-OFF: Power Switch OFF,
        TEL: RX from TEL, NG: Other Error, Cont: Continue, No Ans: No Answer,
        Refuse: Receipt Refused, Busy: Busy, M-Full: Memory Full,
        LOVR: Receiving length Over, POVR: Receiving page Over, FIL: File Error,
        DC: Decode Error, MDN: MDN Response Error, DSN: DSN Response Error.

MCINTYRE, TATE, & LYNCH LLP
COUNSELLORS AT LAW

JERRY L. MCINTYRE †
DEBORAH MILLER TATE *Δ
WILLIAM J. LYNCH
DAVID J. STRACHMAN *
ROBERT S. PARKER *
ROBERT J. SGROI †

Also member
† New York Bar
* Massachusetts Bar
Δ Florida Bar

January 22, 2010

*VIA HAND DELIVERY*

Hon. David L. Martin
United States Magistrate Judge
United States District Court
District of Rhode Island
John O. Pastore Federal Building
Two Exchange Terrance
Providence, Rhode Island 02903-1779

Re: *Ungar v. Palestinian Authority et al.*, Civ. No. 00-105L

Dear Magistrate Judge Martin,

    We write to respond to the January 14 letter to Your Honor from defendants' counsel Mr. Hibey and, having now received the transcript of the January 13 hearing on the Ungars' motion for a payment decree, to address briefly several issues that were raised for the first time at that hearing.

    **First**, Mr. Hibey's letter attempts to excuse defendants' prior refusal to pay the attorney's fees awarded by this Court nearly six years ago on the grounds that defendants "mistakenly understood that the fees were part of the default judgment." *Id.* at 1.

    Implicit in this dubious claim of "misunderstanding" is the premise that defendants' refusal to honor the judgment is somehow excusable because defendants have filed a Rule 60(b)(6) motion to vacate. This position was also reflected in Mr. Hibey's repeated efforts to persuade the Court during the January 13 hearing that the payment order sought by the Ungars should not be granted in light of defendants' appeal to the First Circuit of Judge Lagueux's denial of their Rule 60(b)(6) motion.

    Defendants' position both fails to explain their refusal to honor the judgment between its entry in July 2004 and the filing of their Rule 60(b)(6) motion in December 2007 and flies in the face of Fed.R.Civ.P. 60(c)(2), which provides that the filing of a Rule 60(b) motion "does not affect the judgment's finality or suspend its operation."

    While a judgment debtor may seek a stay of enforcement pending the resolution of a Rule 60(b) motion pursuant to Fed.R.Civ.P. 62(b)(4), no such stay is available where, as here, the Rule 60(b) motion has already been denied. *See In re Zapata Gulf Marine Corp.*, 941 F.2d 293, 295 (5th Cir. 1991) (Rule 62(b) gives courts "no authority" to stay execution of judgment once the motion for relief has been ruled upon even if judgment debtor deposits supersedeas bond).