IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  CIVIL ACTION
THE ESTATE OF YARON UNGAR,    \* 00-105L
et al                          \*
                               \*
VS.                            \* JUNE 15, 2010
                               \*
THE PALESTINIAN AUTHORITY,     \*
et al                          \* PROVIDENCE, RI
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*



HEARD BEFORE THE HONORABLE RONALD R. LAGUEUX
SENIOR DISTRICT JUDGE
(DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S MEMO AND
ORDER)


**APPEARANCES**:

FOR THE PLAINTIFFS:        DAVID J. STRACHMAN, ESQ.
                           McIntyre, Tate & Lynch LLP
                           321 South Main Street
                           Providence, RI  02903

FOR THE DEFENDANTS:        RICHARD A. HIBEY, ESQ.
                           Miller & Chevalier
                           655 Fifteenth Street, N.W.
                           Suite 900
                           Washington, D.C.  20005

                           DEMING SHERMAN, ESQ.
                           Edwards Angell Palmer &
                           Dodge LLP
                           2800 Financial Plaza
                           Providence, RI  02903

Court Reporter:            Anne M. Clayton, RPR
                           One Exchange Terrace
                           Providence, RI  02903



Proceeding reported and produced by computer-aided
stenography

1          THE COURT:  Good afternoon, everyone.

2          The matter is here on the objections or appeal

3     of the Defendants to a memorandum and order granting

4     Plaintiffs' motion for a payment decree.  It was issued

5     May 12, 2010.

6          I'll hear from Defendants first.  Will the

7     attorneys identify themselves, first of all.

8          MR. STRACHMAN:  David Strachman for the Ungar

9     family, the judgment creditors.

10          MR. HIBEY:  Good afternoon, your Honor.  Richard

11     Hibey for the Palestinian Authority and the PLO.

12          MR. SHERMAN:  Deming Sherman also for the

13     Palestinian Authority and the PLO.

14          THE COURT:  All right.  I'll hear you first,

15     Mr. Hibey.

16          MR. HIBEY:  Hibey.  Yes.  Thank you.

17          THE COURT:  Pronounced Hibey?

18          MR. HIBEY:  Hibey, yes, your Honor.  Thank you

19     very much.

20          THE COURT:  All right.  I'll get it right after

21     this.  Go ahead.

22          MR. HIBEY:  Your Honor, I'd like to begin by

23     making certain prefatory remarks that I think set the

24     context for what will follow.  I'll then make

25     essentially three points and close by, of course,

1   answering any questions that the Court might have.

2       We are in a state of changed circumstances.  At

3   the time of the hearing before Magistrate Judge Martin,

4   the judgment was not in question.  Now it is.

5       The First Circuit changed the landscape.

6   Magistrate Martin, in our view, did not take that into

7   consideration, did not appreciate what the mandate

8   articulated, which was for a full-throated

9   consideration of a myriad of factors including, among

10  others, the amount of the judgment, which factors have

11  been described by the Court of Appeals as substantial

12  for consideration.

13      We -- I use the word "we" to embrace both the PA

14  and the PLO, but I might say the PA and PLO together

15   -- are a foreign judgment debtor with no assets or

16  income in Rhode Island.

17      In this context, we come before the Court

18  because of an unprecedented use of the Rhode Island

19  Creditors Rights statute that was invoked and is the

20  subject of the Report and Recommendation of the

21  magistrate judge.

22      THE COURT:  In the state courts, I heard many of

23  these.  And in the state courts, they're called

24  supplementary proceedings in aid of a judgment where

25  the writ of execution has been returned unsatisfied.

1   So the reference is to supplementary proceedings.  This

2   is statute 9-28-3 --

3        MR. HIBEY:  Yes.

4        THE COURT:  -- that we're referring to.  I had

5   never heard it referred to as a request for a payment

6   decree.  That's new language to me.  I know what

7   Plaintiffs are seeking.  They're seeking supplementary

8   proceedings.  They're seeking an order of the Court for

9   partial payment to be made.

10       MR. HIBEY:  Yes, your Honor.  That is correct.

11  The language I have used is perhaps not as artful by

12  virtue of the fact that my appearances in Rhode Island

13  can be described as rare, indeed.  But if you'll

14  indulge me, I think I will join the issue very quickly

15  to the points that I'd like to bring to your attention

16  in this argument.

17       We were notified yesterday afternoon that this

18  proceeding would take place, not on the order to show

19  cause, which was a procedure that was invoked earlier

20  in the month, but on an as yet not fully briefed, if

21  you will, Rule 72 objection.  And we anticipated filing

22  our reply on June 22nd, and we ask that we be allowed

23  to do so even though you're taking the argument today.

24       THE COURT:  Well, the order to show cause may

25  well be moot depending on what I rule today.

1          MR. HIBEY:  Yes, your Honor.

2          It's the briefing of the 72, this motion before

3     you, that we'd like to complete that I'm asking for

4     that indulgence on your part.

5          The errors that I will argue here, your Honor,

6     are these:  That under Federal Rule, Civil Rule of

7     Procedure 69, it provides for the enforcement of a

8     judgment of money through proceedings in aid of a

9     judgment or writ of execution as provided for by state

10    law.  That state law necessarily, in this case, is the

11    law of Rhode Island.  And the law that was invoked by

12    the Plaintiffs to bring us before the Court in the

13    initial instance is, as you had said earlier, 9-28-3.

14         We submit that the magistrate erred in applying

15    9-28-3 to the PA and the PLO.  They are not individuals

16    and our contention is, based upon a reading of the

17    statute and of the case law, that only individuals may

18    be subject to a citation proceeding.  We have found no

19    Rhode Island decision holding to the contrary.  A case

20    entitled Murphy decided in the mid-'70's is relied upon

21    heavily by the Plaintiffs in their brief in opposition

22    to this objection.  But we don't believe, your Honor,

23    that the Murphy case stands for the proposition that

24    this would be an example of 9-28-3 being applied to a

25    situation in which the judgment debtor is a non-human

1    party.

2         There's no basis, therefore, for ordering under

3    Section 3 a non-person party to be subjected to the

4    order in a citation proceeding.  The situation is

5    compounded here, in our view, by the fact that the PA

6    and the PLO in addition not to be -- in addition to

7    being non-person parties, have no assets in Rhode

8    Island; no income in Rhode Island; no activity in Rhode

9    Island; and, therefore, should not be required under

10   Section 3 to be the recipient of a citation order.

11        Now, I want to make it clear that this is not an

12   argument for the proposition that this Court has no

13   jurisdiction over the PA and the PLO.  That is history.

14   That has been established.  We are not plowing over old

15   ground in that respect.  However, it is, we think, the

16   law that the nature and extent of the Court's

17   authority, if you want to call it jurisdiction,

18   jurisdiction to initiate a citation order, it must

19   follow the dictates of the law of the State of Rhode

20   Island.  And we think that, in that instance, the

21   magistrate went well beyond what the law in Rhode

22   Island provides.

23        So that what we're trying to say is that

24   jurisdiction over the Defendants does not mean that the

25   Rhode Island courts have the power to order

1  out-of-country defendants to bring into the country

2  money to pay a judgment.

3      Now, that is the fundamental proposition of

4  misapplication, as far as we're concerned, of 9-28-3 to

5  this particular case.

6      9-28-3 as a citation provides in pertinent part,

7  through that section and the sections that follow, 3,

8  4, 5, 6, 7, for the examination of human beings as to

9  the question of whether they have the ability out of

10  their income to pay on a judgment resulting, perhaps,

11  in a citation ordering them to do so.

12      We don't have that situation with these

13  Defendant debtors, judgment debtors in this instance.

14      Now, we don't see where Section 3 is in any

15  circumstance, therefore, and with no cases to support

16  the opposite conclusion, where Section 3, therefore,

17  applies to these non-person parties.

18      The third proposition is this:  If the statute

19  applies, if Section 3 is determined to be applicable

20  here, then the financial ability of the PA and PLO to

21  pay on the judgment must be explored.  The statutory

22  scheme says, basically, under Section 1 of 9-28, that

23  is a reach and apply statute.  I think that's what it's

24  called around here.  It is a -- to reach and apply

25  assets and there's no question but that that is what

1   occurs under Section 1.  There's no inquiry.  It's a

2   question of identifying an asset and taking it.

3   Whereas, as we have said, under Section 3, that is not

4   the case.  Under Section 3, you have to look to what

5   that party's income is and to inquire under examination

6   what that party's financial circumstances are, that

7   party being, in the language of the statute, his or her

8   financial circumstances, and his or her ability to pay.

9   And consideration is taken as to what your assets are

10  and what your debts are and what your income is and

11  netting it out and trying to come up with an equitable

12  determination as to whether a person has the ability to

13  pay on that judgment or not.  And if so, in what

14  amounts.

15      We had no exploration of the financial ability

16  in this hearing.  Before Judge Martin, he took no

17  evidence on the question of the financial ability to

18  pay for good and sufficient reason.  Prior to the

19  hearing, both in pleadings and in a telephone

20  conference that the magistrate judge held with the

21  parties, it was made abundantly clear by the

22  Plaintiffs' counsel, Mr. Strachman, that there would be

23  no requirement that the parties -- that the Defendants

24  address the issue of the ability to pay, that this was,

25  I think in the language of a footnote in his original

1    pleadings, this was simply a hearing for argument.  I

2    think I've got that easily paraphrased and maybe close

3    to a quote.  And then the judge confirmed that in a

4    subsequent telephone conference with the parties.

5            When we got to hearing, Magistrate Judge Martin

6    pointedly raised the issue with Mr. Strachman, who, at

7    this point, was beginning to argue about the ability of

8    the Defendants to pay the judgment debt or evading the

9    judgment debt or refusing to pay the judgment debt.

10   Certainly that theme ran through his remarks.  And the

11   magistrate judge at around page 15 of the hearing

12   transcript said, Wait a minute, isn't that a conflict

13   between what you were telling us in your brief and what

14   you told us also in the telephone conference that I

15   alluded to.

16           The record is not exactly crystal clear as to

17   what the response is because the response was diffuse.

18   I'll leave it to the record to report with accuracy

19   exactly what was said.  But it was referenced for a

20   number of pages thereafter because, from what we could

21   tell, the magistrate judge was troubled by the fact

22   that we were not expected and he understood he was not

23   going to receive any evidence from us on the question

24   of our ability or inability to pay on this judgment.

25           When the magistrate judge issued his ruling, he

1    did not take that issue up.  He ignored it.  And I

2    think that is an appropriate word to describe what he

3    did because, quite to the contrary, he began to cite

4    from affidavits that had been filed in the <u>Knox</u> case in

5    the Southern District of New York in which the prime

6    minister of Palestinian Authority and a high official

7    of the Ministry of Finance attempted to explain to the

8    magistrate judge who was attempting himself to

9    ascertain the amount of a bond that was a condition of

10   the vacatur of the default judgment that had been

11   entered by Judge Marrero in New York.  Judge Marrero

12   had a $193,000,000 default judgment.  We sought

13   vacatur.  He granted it.  And one of the conditions of

14   vacatur was that we were to meet a bond.  That was the

15   subject of litigation which we attempted to put before

16   the Court, the fiscal situation of the PA and PLO as of

17   that time of the hearing and I would put that in the

18   year 2008.  The magistrate judge made a Report and

19   Recommendation for the payment of a bond and that was

20   then forwarded to the judge in -- the trial judge,

21   Judge Marrero.  The matter was not further litigated

22   because the case was disposed of.

23         The point I'm trying to make is this:  Number

24   one, the fiscal -- the financial condition of the

25   Palestinian Authority, the PLO in 2008 was discussed

1    against the background of a letter from the Department

2    of State which expressed not a suggestion of interest

3    but an expression of concern about this and other cases

4    as it impacted the political and financial viability of

5    the Palestinian Authority.

6         The second point to be made with respect to the

7    Knox matter, which the magistrate judge in this case

8    overly embraced, if you will, is that this was a

9    discussion about what a bond would be as a condition of

10   vacatur. What we have here is the magistrate judge

11   examining the affidavits or declarations of the prime

12   minister and a member of the Ministry of Finance and

13   deciding on the basis of that information, which was

14   easily a year-and-a-half or more old at the time he got

15   it, that the PA and the PLO could afford to pay. Not a

16   bond where you put up a bond and get a surety or a bank

17   to stand behind it, but to pay fully the amount of this

18   tremendous judgment of $116,000,000 plus interest. We

19   learned that upon the reading of the magistrate judge's

20   Report and Recommendation.

21        We believe that's error and it impacts the

22   fundamental fairness of the very proceeding over which

23   he was presiding. This rises to the level, in our

24   view, the due process violation.

25        So in the end, your Honor, what we have here is

1  a situation in which the wrong statute was invoked to

2  bring about a result that is not countenanced by that

3  statute and predicated upon an interpretation of

4  information that was skewed to say the least.

5      The magistrate judge was told repeatedly this is

6  a three-and-a-half billion dollar budget that the

7  Palestinian Authority has.  There was no refinement of

8  that statement.  Well, we wouldn't expect one from our

9  opposition, but certainly what we would have a right to

10  expect is that the judge understood the declarations

11  that were put forth by the Plaintiffs from the Knox

12  case.  And we had, I think, also a right to understand

13  that the issue of the ability to pay, if Section 3 is

14  the right section, that the issue of the ability to pay

15  would have been something that we would have an

16  opportunity to present on; and lastly, to understand

17  that the declarations that were offered said far more

18  than what was reported in the Report and

19  Recommendation.

20      These declarations stand for the proposition

21  that the PA is broke, has always been broke, is a

22  deficit operation.  The numbers may be large but when

23  you're losing $1.65 billion a year with that number

24  growing each year, that is a factor that we would

25  expect, in fairness, would be taken into account where

1    a Section 3 proceeding is initiated.  That didn't

2    happen here and we feel, therefore, that the judge,

3    magistrate judge erroneously came to a set of

4    conclusions based upon a reading of -- improper reading

5    of cases.

6         All the cases that he cited were turn-over

7    cases.  All the cases that he cited had to do with

8    conduct that originated in the jurisdiction, the

9    sequestering of assets, moving them out of the

10   jurisdiction and the like.

11        None of that happened here because at no time

12   has there been any asset, any income of the PA or the

13   PLO that has flowed through this state.  This case

14   could have been brought in North Dakota because that's

15   the breadth of the ATA's jurisdiction.  But where due

16   process kicks in, if you will, within the meaning of

17   the Rules of Procedure, Rule 69 and the proper

18   application of the state statutes, there you have a

19   more defined configuration of what the nature of the

20   authority of the court is.  And the nature of the

21   authority of this Court is to find, essentially, by the

22   statutes of Rhode Island.  When I say "this Court," I

23   mean the court that is administering a claim for a

24   creditor's rights.  And it is the statutes of the State

25   of Rhode Island which govern.

1    Now, if there are any questions, your Honor, I'd

2    be happy to answer them.

3    THE COURT:  No, I don't.

4    MR. HIBEY:  Thank you.

5    MR. STRACHMAN:  Good afternoon, your Honor.

6    THE COURT:  Mr. Strachman.

7    MR. STRACHMAN:  Your Honor, the context of this

8    case is very simple.  And that is six years after a

9    judgment that was long-fought, after hundreds of

10   pleadings, four years, multiple decisions by your

11   Honor, appeals to the Court, First Circuit, we still

12   have a defendant, two defendants who come into this

13   court and brazenly abrogate to themselves the right to

14   determine which orders they're going to comply with,

15   which ones they won't comply with.  And in fact,

16   virtually every order that's ever been issued by this

17   Court, from discovery to filing an answer to

18   post-judgment proceedings, they have thrown up

19   roadblocks, they have not complied with, and they have

20   manipulated and twisted the procedures to suggest that

21   there's something wrong with the Court, Magistrate

22   Judge Martin, the judgment of creditors.  It's

23   everyone's fault but theirs, and they have decided that

24   they can determine when they comply with an order.

25   If they have a problem with Judge Martin's order

1    to pay $15 million on June 1st, they have remedies.

2    The remedy is to take an appeal, as they've done, to

3    pay the judgment and to comply to seek a stay.  They

4    haven't done any of that.  They've decided on their own

5    what they're going to do.  And instead, defying the

6    Supreme Court and the case that we cite in our brief,

7    the Maness case, which says very clearly, if you

8    disagree with an order, you can't decide on your own

9    you're not going to comply with it.  You have to comply

10   with it.

11          They could have also sought a stay.  Your Honor

12   granted them the right to seek a stay in 2004 in the

13   summer and said that they could put up a certain amount

14   of security.  Six years have gone by.  They refused to

15   put up a stay.  They've decided on their own what

16   they're going to do by manipulating what they perceive

17   is the type of decision that Magistrate Judge Martin

18   ruled on and whether the memorandum and order that he

19   gave was really just a Report and Recommendation.  We

20   have an abundance of cases that we've shown in our

21   brief that indicate that post-judgment proceedings

22   referred to a magistrate judge are akin to pretrial

23   proceedings and should be ruled on in the same fashion

24   and the magistrate judge has authority to issue orders.

25          However, what we've indicated in our brief is

1    that out of an abundance of caution in order so that

2    that Ungar orphans and their families don't have to

3    traipse through the Court of Appeals yet again on this

4    issue, that the Court look at and review this matter

5    under the clear error standard so that the Court will

6    look at this case as if it was a Report and

7    Recommendation.  And in fact, there are courts, and

8    we've indicated that that's just what the Bache Halsey

9    case ruled on and said that even though it wasn't

10   appropriate to do so, out of an abundance of caution

11   the court would do so to avoid more procedural

12   wrangling and maneuvers.

13        And in that light, Judge, we would also ask that

14   although the Court scheduled this hearing today and we

15   are grateful for the Court scheduling this hearing,

16   especially on a fairly speedy basis, it's only helpful

17   to the Ungars, the problem that we confront ourselves

18   with is that it is our understanding of the Local

19   Rules, the Defendants do have the right to file a

20   reply.  And if they don't file a reply, they're going

21   to be allowed or they're going to try to drive a truck

22   through a procedural impropriety that they will allege.

23        So we have suggested that if the Court were

24   inclined to not make a decision today and to accept

25   their reply brief, which is due on the 22nd as we've

1  indicated in our correspondence to the Court about the

2  scheduling of this hearing, so that we remove every

3  issue that could possibly be before the Court of

4  Appeals or any other court with respect to this issue,

5  to this proceeding.

6        I also request that the Court take notice that

7  this Court several years ago granted a creditors bill

8  with the participation of the Defendants under the very

9  same Rhode Island collection proceedings.

10  Unfortunately, the Defendants have refused to honor

11  that creditors bill and you may recall that the Court

12  ordered the Defendants' Investment Fund that Yasar

13  Arafat himself runs -- ran, rather, called the

14  Palestine Investment Fund, the Court ordered the

15  Defendants' interest in that fund be transferred to the

16  judgment creditors.  They failed to comply.  They

17  refuse to comply.  Their surrogates have fought us in

18  the Second Circuit in Connecticut and New York and

19  other locations.

20        So the Court has already addressed in large

21  measure whether the Court can take post-judgment

22  collection action against an out-of-state judgment

23  debtor.

24        With respect to their argument, Judge,

25  concerning evidence, it's striking and, frankly, only

1    these Defendants could raise an argument in a Federal

2    Court and say that the magistrate judge did not have

3    sufficient evidence in front of it when it made a

4    decision when the evidence that we provided in the very

5    first pleading requesting a citation order is the very

6    affidavit of Hatam Yousef, who is the Director General

7    of their Customs, Excise and VAT department for the

8    Ministry of Finance.  He's the gentleman who previously

9    provided an affidavit indicating what their income was.

10   He's the guy who collects their income.  We offered

11   that to the Court.  We provided it to the Court.

12        And Magistrate Judge Martin, despite our

13   suggestion that we did not have the burden of proof to

14   prove that they had the ability to pay but the burden

15   is on the judgment debtors to explain why they are not

16   paying this six-year-old judgement, the magistrate

17   judge said very clearly on page nine of his decision

18   that it's unnecessary to really resolve this issue.

19   The Court is satisfied that we met the burden of proof.

20   And the Court went through very carefully Mr. Yousef's

21   affidavit, the PLO or PA's own employee, and also

22   looked at the very decision which gave rise to this

23   corpus of funds.  And that is from the Israeli District

24   Court.

25        What's also anomalous here is that we have not

1    asked them to reach into their pocket and to pay us.

2    For several years beginning in September 2008, the

3    Israeli District Court has segregated their funds and

4    have put funds away to satisfy down the road this

5    judgment.  They've lived without these payments for two

6    years.  They've now collected and pooled together over

7    a hundred million dollars, precisely the amount of

8    money to satisfy this judgment.

9        Judge Martin's order is, frankly, income past,

10   present and future neutral to them unlike a judgment

11   debtor on the formal special cause calendar or in

12   district court who literally has to reach into his

13   pocket to produce funds to pay an order to satisfy a

14   judgment.  These Defendants don't have to do that at

15   all.  All they have to do is front the first $15

16   million to us, and immediately thereafter, within days,

17   we have to arrange to stipulate the release of funds in

18   Israel.  So when they pay us $15 million, within days

19   we'll get $15 million back and that procedure would

20   follow until the entire judgment is paid.

21       So this idea that there wasn't an evidentiary

22   hearing is wrong.  Mr. Hibey, I believe, was at the

23   telephone conference that we had on December 31 with

24   Magistrate Judge Martin in which we discussed what that

25   hearing would look like.  I believe the hearing was on

1     January 13th.  We previously informed the Court and we

2     informed the Court again, we provided all the evidence

3     that we felt we needed.  Nothing prevented the

4     Defendants from bringing in witnesses, from attempting

5     to disprove statements that were made in their own

6     affiant's affidavit, or the fact that the funds had

7     been segregated already from their income to pay this

8     judgment.  They refused to do so.  They took a gamble.

9     They felt that the Court would be wowed be their

10    procedural and legal arguments and that they could from

11    the outside try to attack any ruling, anticipated

12    ruling from Judge Martin.  They're stuck with that

13    record.

14          They have and they purposely refused to bring

15    witnesses to Rhode Island.  They could have attached

16    affidavits.  They could have attached items and, in

17    fact, they did provide a significant amount of

18    information to the Court in their proceedings -- excuse

19    me, in their filings.  So I find that argument somewhat

20    specious.

21          In conclusion, your Honor, I would simply ask

22    that the Court confirm that the judgment -- the

23    memorandum and order is appropriate and that the Court

24    use the higher standard under a Report and

25    Recommendation only for the purpose of avoiding future

1    delays and future aggravation.  The Ungars have been

2    through enough with these Defendants.  It's time that

3    they pay the piper.  It's time that they comply.

4         Judge Martin's decision, quite honestly, is I

5    think the decision now, leading decision in Rhode

6    Island on the citation statute.  And it's extremely

7    well thought-out, very detailed, and I urge the Court

8    to uphold it.

9         Lastly, the idea, Judge, that the courts of

10   Rhode Island, in Superior Court and in District Court,

11   don't issue citation proceedings against

12   non-individuals is not only contrary to the <u>Murphy</u>

13   case, in which a citation was issued 40 years ago, also

14   contrary to a citation from last year, which I just

15   happened to find very easily and I attached it to our

16   exhibits to show the Court, Judge Martin and now your

17   Honor, that, in fact, citations are issued against

18   corporations all the time.

19        Any cursory review, and certainly this Court has

20   far more experience than me on this issue, but anybody

21   appearing on the formal special cause calendar any day

22   of the week or the District Court any day of the week

23   will find that citations are issued every day against

24   corporations.  To suggest that the Defendants can

25   litigate this case and take multiple appeals but simply

1    because they may be across state lines as Judge Martin

2    found, a Defendant who might be in Attleboro can evade

3    all the rulings of this Court, all the orders to pay

4    and to comply with the judgment simply because they're

5    out of state is outrageous.  For the first time,

6    apparently, Mr. Hibey is conceding contrary to his

7    brief that jurisdiction is no longer an issue.  They're

8    not conceding that issue.  Certainly that issue was not

9    raised on appeal of the original judgment, but they

10   have sort of woven it through all of their arguments up

11   until this point and I'm happy that he now concedes

12   that.

13           Thank you, your Honor.

14           MR. HIBEY:  Your Honor, may I address the Court?

15           THE COURT:  All right.

16           MR. HIBEY:  Just a couple of points, if I may,

17   and thank you for your indulgence.

18           This is a footnote in Mr. Strachman's pleading

19   numbered 468 filed in December 2009.  This is the

20   motion for payment decree.  On page six, Footnote 3,

21   (Reading:)  In light of the nature of the relief sought

22   in this motion, no examination of the PA and PLO

23   regarding their assets need take place on January 13,

24   2010 hearing.  Rather, that hearing should be utilized

25   simply for oral argument on the instant motion.

1          That's what was said in the pleading.  That was

2     confirmed in the telephone conference that we both

3     alluded to and it troubled the magistrate judge in the

4     hearing, leaving us with the distinct impression that

5     this was an issue that needed to be addressed, only to

6     find out when we got the opinion or the report that

7     there was no reference to it whatsoever and that he had

8     marched on to embrace affidavits that said, basically,

9     what the condition of the PA was well over a year

10    before the hearing in this case.

11          Secondly, Mr. Strachman relied heavily in his

12    papers, the ones most recently filed with you, on a

13    case called Murphy against Charlie's Home Improvement

14    Company.  And what he says in there is that we

15    ignore -- when we argued that we couldn't find one case

16    in which a corporate entity, a non-human entity had

17    been subjected to a Section 3 proceeding, we had

18    carefully decided not to cite the Murphy case.

19          Well, your Honor, the Murphy case is a very

20    interesting document or opinion.  I will confess to you

21    I think it's loaded with ambiguity at best.  9-28-3 is

22    not cited anywhere in the opinion.  9-28-1 is.

23          Secondly, there were two defendant respondents

24    in this particular section of the opinion.  One was a

25    man named Frank Gallo and Gal, as if a shortening of

1    Gallo, Construction Company.  I'm advised that the fact

2    that it's called a company does not necessarily mean

3    it's incorporated.  I don't know that.  This case is

4    1976.  It's hard to find out anything, especially on

5    the short notice we were proceeding.

6         But, your Honor, the focus of this case, which

7    we think is a 9-28-1 case, it says in part, (Reading:)

8    We find respondent's arguments concerning the order for

9    the petitioners to make periodic payments unpersuasive.

10   An order in supplementary proceedings adjudicates a

11   claim by the judgment creditor.  Section 9-28-1.  Not

12   3.  One.  And we take the position, your Honor, that

13   this is not any authority upon which you or any court

14   should rely for the proposition that 9-28-3 has been

15   used in cases involving non-human parties.

16        In fact, the case itself doesn't address the

17   fundamental issue before the Court and that is what is

18   appealable in circumstances where a judgment can be

19   modified, changed, revised.

20        Is it still a final judgment and should the

21   party understand it to be such and take his appeal

22   timely from that regardless of what might happen later

23   with revisions of the language of the judgment and the

24   Court of Appeals or -- excuse me, the Supreme Court of

25   Rhode Island, which I believe is the highest court here

said, Appeal.  It's a final judgment, even though it
can be modified or revised.

So, your Honor, I think that's a perfect example
of what we're talking about here.  And in terms of this
mechanism that's been suggested where we come up with
$15 million, as if we could, and then that would cause
them to release funds, we don't know -- first of all, I
can tell you that had we understood that this was going
to be a hearing on financial ability that we would have
proffered evidence current at the time regarding the
financial situation of the PA.  Most definitely it
would continue on the trend we have understood that it
would be deficit spending with huge holes in the
billions of dollars year in and year out.  Had we
known --

THE COURT:  That's because of the attachment.

MR. HIBEY:  I'm sorry?

THE COURT:  The attachment of the funds that
Israel turns over to the PA, that's been attached by
the Israeli courts.

MR. HIBEY:  Yes.  And to the detriment of the
people.

THE COURT:  Well, that's not my issue.  I don't
have that issue here.

MR. HIBEY:  I respectfully suggest it is an

1    issue if you're going to use this 9-28-3.  We have

2    never been given the opportunity to explain why we do

3    not have the ability to pay this and to explain, also,

4    how the sequestration of over a hundred million dollars

5    impacts the ability of the Palestinian Government to

6    attend to the needs of its people.  So, yes, it is very

7    much so a concern for the Court.

8         THE COURT:  I agree that you've raised

9    substantial questions about the applicability of 9-28-3

10   in these proceedings.

11        MR. HIBEY:  Thank you, your Honor.

12        THE COURT:  The magistrate judge entitled this

13   "Memorandum and Order," so he thought he was issuing a

14   binding order.  I disagree.  I have held several times

15   that the magistrate judge in these circumstances can

16   only issue a Report and Recommendation.

17        I sent this case to him.  I didn't tell him

18   under what provisions of the Magistrate Judges Act I

19   was sending him this case because I always let the

20   magistrate judge make that initial determination of

21   whether it should be a Report and Recommendation or an

22   order and then I deal with it later , whether it's

23   based on an appeal or an objection to the Report and

24   Recommendation.

25        I'm satisfied that I will treat this as a Report

1    and Recommendation, because the magistrate judge does

2    not have power to issue a payment decree, which is what

3    he did here in this case.

4         So my review of his Report and Recommendation is

5    de novo.  It's as if I'm hearing it for the first time

6    myself, and I can issue my own order in these cases.

7         I'm satisfied that the Defendants have raised

8    some substantial questions about the applicability of

9    9-28-3 to these types of proceedings or this case in

10   particular, and I'm not prepared to decide that now

11   because that may become moot later on.

12        What I'm going to do is defer deciding these

13   issues until after I have decided the Defendants'

14   motion to vacate the judgment under 60(b)(6).  And

15   actually, I'm under a mandate from the Court of Appeals

16   to do that.  They've sent it back to me for

17   reconsideration so I should not issue any kind of

18   payment order until I've made a determination that that

19   motion will be granted or denied.  And so I am

20   deferring my decision on the applicability of 9-28-3.

21        We are on our way to getting that motion to

22   vacate decided after an evidentiary hearing.  I've set

23   a schedule on it.  The thing that troubled me for a

24   moment was, I think, the Plaintiffs deserve some

25   security, and it seems to me they have it by the

1  actions of the Israeli courts in granting a writ of

2  attachment, and there is now in the registry of the

3  country of Israel over one hundred million dollars

4  that's been withheld from payment to the Palestinian

5  Authority.  So that's sufficient security.

6       If it turns out that the Israeli courts vacate

7  that attachment, then the Plaintiffs can come before me

8  and request that a bond be filed to protect the

9  Plaintiffs because they have for a long enough time

10  been stonewalled by these Defendants in attempting to

11  collect on this judgment.  And this judgment was

12  affirmed by the Court of Appeals initially after I

13  entered it.  Now we're dealing with a motion to vacate.

14  The Court of Appeals sent it back to me, and I will

15  deal with it after an evidentiary hearing.

16       So that's my ruling today.  I am deferring

17  deciding the applicability of 9-28-3.  I have a lot of

18  personal experience with that statute, and there are

19  other statutes which apply to non-individuals which may

20  shed some light on what 9-28-3 means when the words

21  "his" or "her" are used.  In every case I ever heard,

22  and it's probably close to a hundred under that

23  statute, every one of the cases involved an individual.

24  I will tell you that.  But that's just what has been

25  happening.  That doesn't mean that the Legislature

1   intended that.  They may have intended something else.

2   But that's a substantial issue that I will deal with at

3   the appropriate time.

4        What we should focus on right now is getting

5   your discovery done.  And then in January, we will have

6   an evidentiary hearing and then I will decide whether

7   or not the motion to vacate this $116,000,000 judgment

8   should be granted or not.  One hundred sixteen million

9   sounds like a lot of money, but Magistrate Judge Martin

10  made a very thorough analysis of the damages suffered

11  by the several Plaintiffs from the death of Mr. Ungar,

12  and the Anti-Terrorism Act calls for trebling the

13  damages and that's why the judgment ended up being

14  high.

15       I still believe that my recollection is correct,

16  that the Court of Appeals in an opinion written by

17  Judge Lipez upheld the size of this judgement.  I will

18  find that case.

19            MR. STRACHMAN:  Your Honor, can I be heard?

20            THE COURT:  What do you want to be heard on?

21            MR. STRACHMAN:  Your Honor, it's my

22  understanding that by not ruling on this motion you're

23  effectively giving a stay to the judgment debtors when

24  they have not asked for a stay.  They have not provided

25  the security required in Rule 60 for a stay.  The funds

1  in Israel as described in the decision that we provided

2  to the Court as well as the description of the

3  proceedings in Israel are in no way immediately

4  available to us.  In fact, just the opposite.

5          THE COURT:  They give you security.  They give

6  you security.  And if for some reason you don't have

7  that security, you can ask for a bond to be posted

8  here.

9          MR. STRACHMAN:  Defendants have contested that

10  and have appealed that and have brought that to the

11  Israeli Supreme Court where that issue is pending, and

12  then they've asked for a stay in the Israeli Supreme

13  Court pending your Honor's ruling.  As Magistrate Judge

14  Martin ruled, they have not asked for a stay here in

15  six years.  They have not provided the security.  Six

16  years ago your Honor said that if they wanted a stay

17  before they went up to the Court of Appeals, they would

18  have to put up $50 million in security.

19          Here we are six years later, we don't have that

20  50 million security.  That money is not immediately

21  available to us in Israel.  Not at all.  It's being

22  held by a third party.  They are contesting it.  So if

23  your Honor rules --

24          THE COURT:  You chose to go to Israel and get

25  the court to act there.

1          MR. STRACHMAN:  We chose to go there.

2          THE COURT:  I'm going to do what I have to do

3     and that court in Israel can do what it has to do.  And

4     I'm deferring ruling on this right now.

5          MR. STRACHMAN:  I understand.

6          THE COURT:  It's not a stay.  I'm not granting a

7     stay.  I'm deferring my ruling.  I could have taken it

8     under advisement and sat on it for a year.

9          MR. STRACHMAN:  So did I understand your Honor

10    correctly to suggest that we then can ask that they put

11    up the security because right now there's no security

12    here in the United States?  I guess we have a

13    difference of opinion as to the level of security that

14    provides in Israel.  The proceedings have been stayed

15    in Connecticut, collection proceedings, at their

16    business partner's request.  Same as is occurring in

17    New York.  And here we are now litigating an

18    evidentiary hearing in January with, from our

19    perspective, virtually no security, none whatsoever.

20         The Court ruled six years ago if they wanted to

21    go to the Court of Appeals and wanted a stay, they

22    would at that time have to put up $50 million.  They

23    refused to do so.

24         We have less security now than the Court

25    initially anticipated and the effect of this, because

1    this -- I understand your ruling and I accept your

2    ruling, but the effect of the ruling is to keep us in

3    this unsecured situation.

4         THE COURT:  I disagree that you're unsecured.

5    You're very well secured in Israel.

6         MR. STRACHMAN:  But they're contesting the

7    security.  In other words, when your Honor rules --

8         THE COURT:  Let them contest it.  That's up to

9    the Israeli courts.  I told you if the situation

10   changes you can ask that a bond be put up, make an

11   appropriate motion and I'll hear it, but I won't hear

12   it this summer, I'll tell you that.  I'm going to be

13   away all summer.

14        MR. STRACHMAN:  Thank you, your Honor.

15        THE COURT:  All right.  Take a recess.

16        (Court concluded at 3:00 p.m.)

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

        I, Anne M. Clayton, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

/s/ Anne M. Clayton

_____

Anne M. Clayton, RPR

June 17, 2010

_____

Date