UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____
                                                         )
**THE ESTATE OF YARON UNGAR, et al.,**   )
                                                         )
    **Plaintiffs,**                          )
                                                         )
    v.                                           )    **C.A. No. 00-105L (RRL)**
                                                         )
**THE PALESTINIAN AUTHORITY, et al.,**   )
                                                         )
    **Defendants.**                         )
                                                         )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR LEAVE TO TAKE DISCOVERY ON WHETHER THE
<u>DAMAGE AWARD WOULD WITHSTAND ADVERSARIAL TESTING</u>**

      Defendants, the Palestinian Authority and Palestine Liberation Organization respectfully move this Court for leave to take discovery on the issue of whether the $116 million damage award entered against them would withstand adversarial testing. In remanding the case to this Court, the First Circuit included this very issue as one "deserv[ing of] full-throated consideration." *Ungar v. PLO*, 599 F.3d 79, 87 (1st Cir. 2010). In order for the Defendants to meaningfully present on this issue to the Court at the January 18, 2011, hearing, discovery is essential.

      The Court has indicated, however, both during a June 1, 2010, in-chambers conference and then again at the recent June 15, 2010, hearing on Plaintiffs' motion for a payment decree, its belief that the amount of the damage award is not a proper subject of dispute at the upcoming hearing on Defendants' Motion to Vacate the Default Judgment because of its recollection that the First Circuit "upheld the size of this judgment" in its 2005 opinion in *Ungar v. PLO*, 402 F.3d 274. *See* 6/15/10 Tr. at 29:15-17. At the June 15 hearing, the Court indicated it would

1072969.1

"find that case." *Id.* at 29:17-18. For the Court's convenience, Defendants attach the portion of the 2005 First Circuit decision discussing the size of the judgment as Exhibit 1.

Contrary to the Court's recollection, the First Circuit did not uphold the size of the judgment but rather held only that the size of the judgment did not create a non-justiciable political question. In 2005, Defendants' predecessor counsel, Ramsey Clark, argued that this Court "made a political statement in calibrating the size of the award" which implicated the propriety of federal subject matter decision -- an argument the First Circuit rejected as "wholly unsupported." *Ungar v. PLO*, 402 F.3d 274, 282 (1st Cir. 2005). Mr. Clark did not challenge "either the measure of damages utilized by the lower court or the integrity of its mathematical computations." *Id.* And because "a mere error in the calculation of a damages award" would not implicate the propriety of federal subject matter jurisdiction, the First Circuit "t[ook] no view" on whether "the court erred on the side of generosity." *Id.* (emphasis added).

Now, the question of whether the large damage amount would withstand adversarial testing is squarely before this Court. At the January 2010 oral argument[1] on Defendants' appeal of this Court's denial of their Motion to Vacate the Default Judgment, there was extensive discussion about whether the $116 million award would survive adversarial testing and whether the propriety of the award was a proper consideration in the Rule 60(b)(6) context.

> Justice Souter: How could we do that [*i.e.*, affirm the denial of the vacatur motion,] for example, given the -- I'll just take one factor -- given the amount of the judgment? You are engaging, for example, at the beginning of your argument in an explanation of why the judgment is as high as it is and you may well be right but we're also dealing with a wrongful death case -- two deaths and a recovery

---

[1] The following account of the argument before the First Circuit is counsel's transcription of the audio, a copy of which has been sent on CD to the Court and Plaintiffs' counsel simultaneous to the filing of this document. The portion transcribed above begins at 35:48 of the file and ends at 40:33.

1072969.1

well in excess of $100 million.[2] That's not a kind of slam dunk, the basis for a slam dunk argument that that factor could only be weighed or is so obviously discounted by others that it doesn't give them a reasonable argument to make -- isn't that so?

Mr. Strachman: The issue with respect to the amount of the judgment -- when the defendants notified the court that they did not want to cross-examine witnesses -- did not want to participate in any proving up, if you will, of any damages.

Justice Souter: But that's derivative of the willfulness argument.

Mr. Strachman: That was already litigated. They had an opportunity to address those issues when they took their second appeal after the judgment entered and they addressed the impact, alleged impact, on the Palestinian government at the time. So we believe that issue has already been litigated. They should not have an opportunity to re-litigate that again in this forum . . . and the cases are replete with --

Justice Souter: So, you're saying basically "law of the case."

Mr. Strachman: It's the law of the case many times, repeatedly, not just once. There were four motions to dismiss in the case. There were 279 pleadings before the default judgment (default judgment in the most technical sense) entered. Here, we are now literally five years later - five and a half years later - after the judgment entered.

Judge Lipez: Counsel, I thought that, you're referring to the prior appeal. The issues there were justiciability, immunity, and whether the district court made a mistake in the language it sequenced its immunity ruling and discovery. I don't -- even on a law of the case principle -- I don't see anything in that decision which would preclude the kind of analysis of all the factors that go into whether this judgment should be vacated.

Mr. Strachman: If they didn't like the damage calculation which was extensively documented first by Judge Martin, then by Judge Lagueux, and by the way the damage calculation though large is entirely consistent with foreign sovereign immunities terrorism cases, ATA terrorism cases and the only reason they are large is because the statute allows for so many defendants, excuse me, so many plaintiffs, and also because the damages are trebled, and if you reduce it back, it's not large at all, it's trebled because the statute allows trebling and there are so

---

[2] In fact, the damage award is for one, not two, deaths. Although Efrat Ungar also died in the Hamas attack on Yaron Ungar, she was not a U.S. national, so her heirs and survivors were not entitled to compensation under the Anti-Terrorism Act. *See Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 153 F. Supp. 2d 76, 97 (D.R.I. 2001).

many plaintiffs that are allowed -- not only the estate, the orphans, the family members, the parents, and the siblings. They had an opportunity to litigate --

Judge Selya: Isn't that the most rank kind of bootstrapping. Here they are -- they are coming in and saying this was a mistaken strategy by a regime that went out of control and this case -- this case wasn't defended and we now have a sensible regime in place -- that's what they say -- that's trying to affect relations with the United States. We want to remove the default and litigate this matter. And you're taking all the collateral consequences of the default and saying those should all be deemed as law of the case for purposes of this motion. That defeats without letting it get out of the starting gate, the argument that they are trying to make that they deserve another chance because they have got a new regime that has seen the light and which has confessed error and that these are exceptional circumstances given the national interest and all the other things.

Mr. Strachman: First of all there is no national interest. Condoleezza Rice --

Judge Selya: No, no, but that's what they're arguing, alright -- and you're trying to cut off their argument by saying "well everything has already been decided because they could have contested everything all along the line, everything is law of the case" and that just bothers me.

In remanding the case, the First Circuit wrote:

> [The Defendants] blame political extremism within the PLO and the PA for their earlier decision to default. They insist that they have had a good-faith change of heart and that they have legitimate, merit-based defenses to the action. **They also see the amount of the judgment as unlikely to withstand adversarial testing.** They vigorously dispute the plaintiffs' claim that evidence and witnesses have been irreparably compromised. They emphasize the special nature of the cause of action, the uniqueness of the case, its political ramifications, and its potential effect on international relations. **Taken in the ensemble, these justifications, in the defendants' view, add up to exceptional circumstances.**
>
> **Whether or not the defendants' arguments ultimately carry the day, they are substantial**. Indeed, several district courts, presented with similar circumstances and similar arguments in other ATA cases against these same defendants, have engaged in holistic analyses and granted relief from de-faults or default judgments. *See, e.g., Gilmore v. Palestinian Interim Self-Gov't Auth.*, No. 01-853, 675 F. Supp. 2d 104, 2009 U.S. Dist. LEXIS 120461, 2009 WL 5083402 (D.D.C. Dec. 28, 2009); *Saperstein v. Palestinian Auth.*, No. 04-20225, 2008 U.S. Dist. LEXIS 110375, 2008 WL 4467535 (S.D. Fla. Sept. 29, 2008); *Knox v. Palestine Liberation Org.*, 248 F.R.D. 420 (S.D.N.Y. 2008). *But see Biton v. Palestinian Interim Self-Gov't Auth.*, 252 F.R.D. 1 (D.D.C. 2008). **While we caution against reading too much into these decisions -- after all, every case is apt to be sui generis -- they indicate that the defendants' asseverational array deserves full-throated consideration.**

1072969.1

*Ungar v. PLO*, 599 F.3d at 86-87 (emphasis added).

  For the reasons set forth, it is clear that the First Circuit has not reviewed and certainly has not endorsed the method or measure of the $116 million judgment at issue in this case. Instead, the First Circuit has recognized that whether the $116 million amount would withstand adversarial testing is a factor this Court should consider in its holistic vacatur analysis. Accordingly, Defendants seek leave of this Court to proceed with damages discovery in preparation for the January 2011 hearing on their Motion to Vacate Default Judgment.

Dated:  July 7, 2010

                   Respectfully submitted,

                    /s/  Richard A. Hibey
                   Richard A. Hibey (D.C. Bar #74823)
                   Admitted *pro hac vice*
                   Mark J. Rochon (D.C. Bar #376042)
                   Admitted *pro hac vice*
                   MILLER & CHEVALIER CHARTERED
                   655 Fifteenth Street, N.W., Suite 900
                   Washington, DC  20005-5701
                   Tel. (202) 626-5800
                   Fax. (202) 628-0858
                   rhibey@milchev.com

                    /s/ Deming E. Sherman
                   Deming E. Sherman (#1138)
                   EDWARDS ANGELL PALMER
                   & DODGE LLP
                   2800 Financial Plaza
                   Providence, Rhode Island 02903
                   Tel. (401) 274-9200
                   Fax. (401) 276-6611
                   dsherman@eapdlaw.com
                   *Attorneys for the Palestinian Authority and*
                   *the Palestine Liberation Organization*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that, on this 7th day of July 2010, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to:

> David J. Strachman
> McIntyre, Tate & Lynch, LLP
> 321 South Main Street, Suite 400
> Providence, RI  02903
> Djs@mtlhlaw.com
> *Attorneys for Plaintiffs*

                                                               /s/    Richard A. Hibey

1072969.1