UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
--------------------------------------------------------x
                                          :
THE ESTATE OF YARON UNGAR, et al.,        :    CA 00-105L (RRL)
                                          :
                      Plaintiffs,         :
            v.                            :
                                          :
THE PALESTINIAN AUTHORITY, et al.,        :
                                          :
                      Defendants.         :
                                          :
--------------------------------------------------------x
```

**MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY INTERVENOR THE
PALESTINIAN PENSION FUND FOR THE STATE ADMINISTRATIVE EMPLOYEES
IN THE GAZA STRIP'S MOTION TO INTERVENE, AND TO VACATE OR MODIFY
THE PRELIMINARY INJUNCTION**

Joseph V. Cavanagh, Jr.
Joseph V. Cavanagh, III
BLISH & CAVANAGH LLP
Commerce Center
30 Exchange Terrace
Providence, Rhode Island 02903
Telephone: (401) 751-7542

Charles L. Kerr (*Pro Hac App'l Pending*)
Mark David McPherson (*Pro Hac App'l
    Pending*)
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0050
Telephone: (212) 468-8000

Harold J. McElhinny (*Pro Hac App'l
    Pending*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000

*Attorneys for Third-Party Intervenor The
Palestinian Pension Fund for the State
Administrative Employees in the Gaza Strip*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL AND FACTUAL BACKGROUND ............................................... 3

    A.    The Pension Fund, an Entity Independent from the PA, Owns Assets Held in New York ................................................................................... 3

        1.    The Pension Fund is an Entity Independent from the PA ......................... 3

        2.    The Pension Fund's Assets Held in New York Can Be Traced to Funds Israel Transferred Directly to the Fund Pursuant to the Oslo Agreements ............................................................................... 5

    B.    Plaintiffs Unilaterally Expanded the Scope of this Court's Injunction ................. 6

    C.    Plaintiffs Have Failed to Restrain the Pension Fund's Assets Using New York Post-Judgment Procedures ................................................... 8

    D.    Plaintiffs' Recent Positions in the Declaratory Judgment Action Threaten to Undermine the Efficacy of that Action ............................... 10

    E.    Because of the Shift in the Declaratory Judgment Action, This Court's Direction to the Palestine Monetary Authority No Longer Precludes the Pension Fund From Seeking Relief in this Court ............................ 13

ARGUMENT ....................................................................................................... 15

I.    THE PENSION FUND SHOULD BE PERMITTED TO INTERVENE IN THIS ACTION, FOR THE LIMITED PURPOSE OF CHALLENGING THE INJUNCTION .............................................................................................. 15

    A.    The Pension Fund's Interest in the Frozen Assets Warrants Intervention ........... 15

    B.    The Pension Fund's Motion to Intervene is Timely ............................................. 16

II.    THE COURT SHOULD VACATE OR MODIFY THE INJUNCTION ....................... 18

    A.    The Preliminary Injunction is Invalid as a Matter of Law .................................. 19

    B.    In the Alternative, the Injunction Should be Modified ....................................... 22

        1.    The Injunction Should be Limited to Sixty Days ................................... 22

        2.    Plaintiffs Should be Forced to Post a Bond for the Duration of the Injunction ........................................................................... 23

CONCLUSION .................................................................................................... 27

-i-

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Al-Abood v. El-Shamari*,
    71 F. Supp. 2d 511 (E.D. Va. 1999) ......................................................................19

*Connecticut v. Doehr*,
    501 U.S. 1 (1991)...................................................................................................21

*Cook v. Bates*,
    92 F.R.D. 119 (S.D.N.Y. 1981) ...........................................................................18

*Corning Inc. v. PicVue Elecs., Ltd.*,
    365 F.3d 156 (2d Cir. 2004)..................................................................................24

*Dexia Credit Local v. Rogan*,
    No. 02 CV 8288, 2008 U.S. Dist. LEXIS 80547 (N.D. Ill. Oct. 9, 2008) .............20

*Francisco Sanchez v. Esso Standard Oil Co.*,
    572 F.3d 1 (1st Cir. 2009).....................................................................................23

*Fundicao Tupy S.A. v. United States*,
    841 F.2d 1101 (Fed. Cir. 1988).............................................................................19

*Garcia-Rubiera v. Calderon*,
    570 F.3d 443 (1st Cir. 2009)..................................................................................21

*Global NAPs, Inc. v. Verizon New Eng., Inc.*,
    489 F.3d 13 (1st Cir. 2007)....................................................................................26

*Hamilton Watch Co. v. Benrus Watch Co.*,
    206 F.2d 738 (2d Cir. 1953)..................................................................................23

*Hodgson v. United Mine Workers*,
    473 F.2d 118 (D.C. Cir. 1972)..............................................................................18

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174
    F.3d 411 (4th Cir. 1999) .......................................................................................26

*Mead Johnson & Co. v. Abbott Labs.*,
    201 F.3d 883 (7th Cir. 2000) ................................................................................27

*Medical World Publishing Co. v. Kaufman*,
    29 A.D.2d 859 (N.Y. App. Div. 1st Dep't 1968)..................................................11

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995)....................................................................................16

*Negron-Almeda v. Santiago*,
    528 F.3d 15 (1st Cir. 2008)..................................................................................18

*Odnil Music Ltd. v. Katharsis LLC*,
    No. 05-545, 2007 U.S. Dist. LEXIS 46161 (E.D. Cal. June 26, 2007) ...................20

*R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*,
    584 F.3d 1 (1st Cir. 2009)....................................................................................16

*Ramos v. Town of Vernon*,
    208 F.3d 203 (2d Cir. 2000)..................................................................................23

*SMA Life Assurance Co. v. Sanchez-Pica*,
    960 F.2d 274 (1st Cir. 1992)..................................................................................20

*Smith v. Mallick*,
    No 96 CV 2211, 2007 U.S. Dist. LEXIS 53716 (D.D.C. July 26, 2007) ................19

*Strachman v. The Palestinian Authority, et al.*,
    Index No. 102101/06, 2010 N.Y. App. Div. LEXIS 2601 (N.Y. App. Div. 1st Dep't
    Mar. 30, 2010)......................................................................................................12

*The Estate of Yaron Unger, et al. v. The Palestinian Authority, et al.*,
    Index No. 102101/06 (N.Y. Sup. Ct.) .....................................................................2

*Younger v. Harris*,
    401 U.S. 37 (1971)................................................................................................20

*Zambelli Fireworks Mfg. Co. v. Wood*,
    592 F.3d 412, 426 (3d Cir. 2010)..........................................................................24

*Zurich Capital Markets Inc. v. Coglianese*,
    236 F.R.D. 379 (N.D. Ill. 2006).............................................................................16

## STATUTES

Fed. R. Civ. P. 24(a)(2)..........................................................................................15

Fed. R. Civ. P. 65(c) ..........................................................................................23-24

N.Y.C.P.L.R. §6210...............................................................................................21

N.Y.C.P.L.R. § 6211..............................................................................................21

N.Y.C.P.L.R. § 6212..............................................................................................21

N.Y.C.P.L.R. § 6312(b)..........................................................................................21

**OTHER AUTHORITIES**

Corpus Juris Secundum, A C.J.S. Injunctions § 7 .......................................................22

13 Moore's Federal Practice, Civil § 65.20 .............................................................19

13 Moore's Federal Practice, Civil § 65.52 .............................................................24

1-10A Moore's Manual, Federal Practice and Procedures § 10A.20 ...........................24

Siegel, *New York Practice* § 440 (4th ed. 2005) .........................................................11

1Weinstein, Korn & Miller CPLR Manual § 28.03 .....................................................21

11A Wright, Miller & Kane, *Federal Practice & Procedure*, Civil 2d. § 2954...........................24

Third-Party The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip (the "Pension Fund" or "Fund") submits this brief in support of its motion: (1) to intervene in this action for a limited purpose; (2) to dissolve this Court's preliminary injunction, entered on May 5, 2005 ("Injunction"); or, in the alternative, (3) to limit the duration of the Injunction and to require Plaintiffs to post a bond to protect the Pension Fund against damages resulting from the pre-judgment restraint of the Fund's assets.

## PRELIMINARY STATEMENT

The Court is well familiar with this action. On July 14, 2004, the Court entered a final default judgment against the Palestinian Authority (PA) and the Palestine Liberation Organization (PLO); the judgment was affirmed on appeal on March 31, 2005. The PA and the PLO's motion to vacate that default judgment is currently pending before the Court. On May 5, 2005, the Court entered a preliminary injunction prohibiting the PA and the PLO, or those acting in concert with them, from transferring any assets of the PA and the PLO "located within the jurisdiction of the United States." The Injunction remains in effect indefinitely, until further order of the Court.

The Pension Fund has never before been a part of these proceedings, although the Fund has been greatly affected by the Injunction. The Fund is a legal entity separate from the PA. It was created by statute over forty years ago. It is currently responsible for managing a pension system for the benefit of certain categories of municipal employees who work in the Palestinian Territories. It has over 50,000 participants and between 5,000 and 6,000 current beneficiaries. Managed by its Board of Directors and a professional, administrative staff, the Pension Fund has its own independent budget and manages its own funds and assets.

The Pension Fund continues to be severely prejudiced by the Injunction. In 2005, Plaintiffs served a "Notice of Injunction" upon Swiss American Securities, Inc. ("SASI"), a New

York affiliate of the Pension Fund's Global Custodial bank, Credit Suisse. The Notice alleged that the Pension Fund's assets held in a SASI custodial account in New York actually belong to the PA. Neither the PA nor the PLO has ever laid claim to the Pension Fund's frozen assets, which rightfully belong to the Pension Fund alone, for the benefit of its thousands of plan participants and beneficiaries. The assets can be traced back to funds Israel transferred directly to the Pension Fund — and not the PA — as part of the Oslo Peace Process. Nevertheless, and despite the fact that no court has ever sanctioned Plaintiffs' baseless allegations, the Fund's assets held at SASI have been frozen ever since Plaintiffs served the Notice of Injunction on SASI in 2005.

Because this Court previously directed that factual questions about the ownership of assets should be decided in jurisdictions where the assets are held, the Pension Fund has been vigorously litigating Plaintiffs' unilateral restraint of its assets in various proceedings in New York State Court. Most prominent among the New York proceedings is a Declaratory Judgment Action that Plaintiffs filed in 2006. *See The Estate of Yaron Unger, et al. v. The Palestinian Authority, et al.*, Index No. 102101/06 (N.Y. Sup. Ct.). In that action, Plaintiffs' Complaint originally sought a declaration that the assets held by Credit Suisse belong not to the Pension Fund, but to the PA.

Recently, however, Plaintiffs have taken positions that put in question whether the Declaratory Judgment Action will actually address, much less resolve, the ownership dispute central to determining whether this Court's Injunction reaches the Fund's assets. They have represented to both the trial court and the intermediate appellate court in New York that they no longer seek a declaration that the assets at issue belong to the PA. They have also recently argued that the Declaratory Judgment Action is not an action to resolve the ownership and/or

title to the assets, but is akin to a tort action against the Pension Fund for improper interference with the enforcement of a judgment. As a result, it is by no means clear that the Declaratory Judgment Action — which has been pending for more than four years — will resolve the key question at issue: whether the PA owns the assets that have been restrained pursuant to the Injunction.

The Pension Fund is, therefore, now forced to seek relief from this Court, which issued the Injunction that Plaintiffs have been misusing to restrain the Pension Fund's assets. Specifically, the Pension Fund seeks an order: (1) permitting it to intervene in this action for the limited purpose of challenging the Injunction; (2) vacating the Injunction in its entirety, since a preliminary injunction should not have been issued after final judgment was entered; or, in the alternative, (3) limiting the duration of the Injunction to a short time period within which Plaintiffs can initiate a proper enforcement action, and forcing Plaintiffs to post a bond to protect the Pension Fund while the Injunction remains in effect. As detailed below, only by vacating or modifying the Injunction in this manner can the Court redress the manifest injustice to which its Injunction, and Plaintiffs' abuse of that Injunction, have subjected the Pension Fund.

## PROCEDURAL AND FACTUAL BACKGROUND

### A. The Pension Fund, an Entity Independent from the PA, Owns Assets Held in New York.

#### 1. The Pension Fund is an Entity Independent from the PA.

The Pension Fund is an independent legal entity that, for more than forty years, has been entrusted with collecting and investing contributions from, and paying insurance and pension benefits to, designated employees, workers and laborers. (A-Franji Aff.,[1] ¶ 7.) By law, these

---

[1] The Affidavit of Farouk M. A-Franji, sworn to April 4, 2007 (cited as "A-Franji Aff. ¶ __"), was submitted to the New York State Court in support of the Pension Fund's motion for summary judgment in the Declaratory Judgment Action. It is attached as Exhibit A to the accompanying

employees, workers and laborers contribute 10% of their salaries to the Pension Fund, which then holds and invests their contributions along with contributions from their employers.  (*Id.*) Those employees, workers and laborers are, in turn, entitled to receive insurance and pension benefits based on entitlement criteria detailed in the applicable Insurance and Pension Law. There currently are more than 50,000 active participants in the Pension Fund and approximately 5,000 to 6,000 current beneficiaries receiving pension payments.  (*Id.*)

The Pension Fund was originally established when the Gaza Strip was under Egyptian control.  (A-Franji Aff., ¶ 8.)  In 1964, Egypt enacted Decision of Law Number (8) for 1964 (the "Decision of Law No. (8) (1964)") implementing the Insurance and Pension Law.  Under the terms of the statute, the Pension Fund was created as a separate juridical entity.  (A-Franji Aff., Ex. 2, Insurance and Pension Law, Art. 2, at 9.)  The Pension Fund was originally capitalized with contributions from the active members participating in the Fund and the agencies and municipalities for which they worked, as well as any return on the investment of these monies. (A-Franji Aff., ¶ 12.)

The Insurance and Pension Law established (1) a Board of Directors for the Pension Fund; and (2) an Insurance and Pension department or administration (the "Administration") that was to be responsible for the day-to-day management of the Pension Fund.  (A-Franji Aff., ¶¶ 18-19, 24.)  Mr. A-Franji's Affidavit details the operation of the Pension Fund's Board and its Administration, from the inception of the Fund to the present.  (*Id.* ¶¶ 18-28.)  As he explains, the legal framework governing the Pension Fund, its operation and administration all confirm that the Fund is a juridical entity separate from the PA.  (*Id.* ¶¶ 11, 18-23, 29-36.)

---

Declaration of Mark David McPherson, dated August 17, 2010 ("McPherson Decl.").  Unless otherwise noted, all references to Exhibits refer to exhibits attached to the McPherson Decl.

    2.    **The Pension Fund's Assets Held in New York Can be Traced to Funds Israel Transferred Directly to the Fund Pursuant to the Oslo Agreements.**

Following the 1967 War, the State of Israel occupied the Sinai and took over control of the civil administration in the Gaza Strip. (A-Franji Aff., ¶ 13.) During the period of Israeli occupation, the pension system established under the Insurance and Pension Law continued to operate, collecting contributions from civil administrative employees and their employers. (*Id*.)

As part of the Middle East peace process in the 1990s, the State of Israel and the PLO entered into a series of agreements that are often referred to as the Oslo Agreements. (A-Franji Aff., ¶ 14.) Under one of those agreements, the Agreement on the Gaza Strip and the Jericho Area, dated May 4, 1994 (the "Gaza-Jericho Agreement"), Israel agreed to transfer authority over the civil administration of the Gaza Strip, including authority over the existing pension system. (*Id*.)

Following the Gaza-Jericho Agreement, the State of Israel, the PNA and the Pension Fund entered into "Implementation Agreements" that provided for the transfer to the Pension Fund of the monies that had been collected under the pension system during the Israeli occupation of the Gaza Strip. (A-Franji Aff., ¶ 15.) To that end, on December 30, 1994, the State of Israel, the PNA and the Pension Fund executed an "Implementation Agreement Concerning the Pension Fund of the Civil Administration Employees in the Gaza Strip" (the "December 30 Implementation Agreement"). (*Id*., Ex. 6.) Under the Agreement, Israel was to transfer reserve pension funds into a Pension Fund account at Euro-Trade Bank. Consistent with the Decision of Law No. (8) (1964) and the Insurance and Pension Law, the December 30 Implementation Agreement expressly required that the transferred funds, and any return on the investment of those funds, were to be used solely for paying pensions and severance to beneficiaries. (A-Franji Aff., ¶ 16.)

The December 30 Implementation Agreement also provided that, after the transfer of funds to the Pension Fund's account at Euro-Trade Bank, the funds would be further transferred to an account maintained by the Pension Fund's Investment Manager, Morgan Stanley. (A-Franji Aff., ¶ 17.) Only a portion of the funds held by Israel was initially transferred under the December 30 Implementation Agreement, however. (*Id.*) On March 31, 1997, the State of Israel, the Palestinian Council and the Pension Fund entered into an "Amendment to the Agreement Concerning the Pension Fund of the Civil Administration Employees in the Gaza Strip" (the "March 31 Implementation Agreement"), under which the remaining funds held by Israel would be transferred to the Pension Fund's account at Credit Suisse, in Zurich, Switzerland. (A-Franji Aff., Ex. 7.) Like the prior Implementation Agreements, the March 31 Implementation Agreement expressly required that the transferred funds, and any return on the investment of those funds, were to be used solely for paying pensions and severance to beneficiaries. (A-Franji Aff., ¶ 17.)

As detailed in Mr. A-Franji's Affidavit, the assets that are currently restrained in New York pursuant to Plaintiffs' Notice of Injunction can be traced directly to the funds Israel transferred pursuant to the Implementation Agreements. (A-Franji Aff., ¶¶ 15-17, 37-42.)

**B.      Plaintiffs Unilaterally Expanded the Scope of this Court's Injunction.**

As noted, on July 13, 2004, this Court entered a Final Judgment solely against the PA and the PLO, and the First Circuit affirmed the judgment in March 2005. (*See* McPherson Decl., ¶ 4.) The Pension Fund was not a party to this proceeding, never appeared in any capacity, and is not mentioned in the judgment. There is, in fact, no outstanding judgment against the Pension Fund at all.

In April 2005, Plaintiffs returned to this Court to obtain a temporary restraining order on April 19, 2005, followed by a preliminary injunction on May 5, 2005. That Injunction provides:

"WHEREFORE IT IS HEREBY ORDERED AND DECREED THAT:

"1.     The Palestinian Authority and the Palestine Liberation Organization
and their officers, agents, servants, employees, attorneys, partners,
fiduciaries, and any natural agent or legal persons in privity with them, and/or
in active concert and participation with them, are hereby prohibited,
restrained and enjoined from withdrawing selling, transferring, alienating,
assigning, pledging, impairing, offsetting, hypothecating, encumbering,
concealing, secreting, trading, removing, or in any way disposing or effecting
a disposition in, directly or indirectly, any assets of The Palestinian Authority
and/or The Palestine Liberation Organization however titled (including
without limitation all accounts, deposits, cash, shares, stock, credits,
partnership rights or interests, equitable interests, contractual rights, holdings,
financial interests or real estate) located within the jurisdiction of the United
States or any State thereof."

(Ex. B.)  The Injunction "shall remain in force until further order of the Court."  (*Id.*)

On May 6, 2005, Plaintiffs served a "Notice of Injunction" upon a number of financial

institutions, including SASI in New York.  (McPherson Decl., ¶ 8.)  In that Notice, Plaintiffs'

counsel represented that the Injunction applied to assets held or titled under the names of, among

others, the "Palestinian Pension Fund," the "Palestine Pension Fund," and the "Insurance and

Pension General Corporation":

"TAKE FURTHER NOTICE that the Injunction applies to all assets of the
PA and PLO however titled, and that the assets of the PA and PLO are held
and/or titled under the names . . . *Palestinian Pension Fund*, . . . *Palestine
Pension Fund*, [and] *Insurance and Pension General Corporation*, . . ."

(Ex. D (emphasis added).)  The Notice of Injunction warned the recipient that it "will be liable"

if any assets or funds were transferred in violation of the Injunction.  (*Id.*)

No Court has ever endorsed Plaintiffs' assertion that the PA holds assets under the

Pension Fund's name.  Moreover, in the course of the legal proceedings in New York (detailed

below), SASI represented to the Court that "[w]e have no assets of the PLO and the PA."  (Ex. E

(Tr., March 7, 2006, at 5:17-24).)

Nevertheless, based on Plaintiffs' broadly worded Notice of Injunction, Credit Suisse and its affiliate SASI froze the Fund's assets held in New York. Although SASI acknowledged that the Injunction was "far more narrowly drawn" than the "broadly drafted notice of [injunction]," SASI's counsel told the New York Court that it was "honor[ing] a notice of injunction in Rhode Island" "unless and until Judge Lagueux vacated that notice of injunction as applied to the monies at SASI." (*Id.*, at 41:2-14.)

### C. Plaintiffs Have Failed to Restrain the Pension Fund's Assets Using New York Post-Judgment Procedures.

Aside from Plaintiffs' assertion that this Court's Injunction applies to the Pension Fund's assets, there is no other injunction or legal restraint on the Pension Fund's assets. Plaintiffs repeatedly tried and failed to impose legal restraints upon the Pension Funds assets using New York State's post-judgment enforcement procedures.

**First**, on or about April 21, 2005, Plaintiffs domesticated the *Ungar* Judgments in New York pursuant to N.Y.C.P.L.R § 5402. (McPherson Decl., ¶ 10.) Thereafter, Plaintiffs proceeded to serve Information Subpoenas with Restraining Notices upon a number of entities, including SASI and other entities with which the Pension Fund does business. (*Id.*, at ¶ 11.)

SASI responded to that Information Subpoena and Restraining Notice on May 23, 2005, and served an Amended Response on December 6, 2005. (*Id.*, at ¶ 12 & Ex. G.) In its Amended Verified Answers, SASI identified more than $100 million in publicly traded securities and debt instruments in its possession belonging to "The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip." (*Id.*) According to SASI's Amended Answers, as a result of having been served with Plaintiffs' Notice of Injunction and Restraining Notice, SASI froze the more than $100 million in assets it was holding for the benefit of the Pension Fund. (*Id.*)

On December 7, 2005, the Pension Fund moved to vacate the Restraining Notice served upon SASI, explaining that the Pension Fund was separate and distinct from the Judgment Debtors and that the assets held at SASI belonged to the Pension Fund alone.  (McPherson Decl., ¶ 13.)  The Pension Fund's motion was scheduled for hearing on March 7, 2006.  (*Id*.)  The night before that hearing, by letter dated March 6, 2006, plaintiffs withdrew the Restraining Notice. (*Id*. & Ex. H.)

**<u>Second</u>**, on February 14, 2006, Plaintiffs filed two new actions:  a turnover proceeding against SASI pursuant to N.Y.C.P.L.R. § 5225 (the "Turnover Proceeding"); and a declaratory judgment action pursuant to N.Y.C.P.L.R. § 3001 (the "Declaratory Judgment Action"). (McPherson Decl., ¶ 14.)

The Pension Fund promptly moved to dismiss the Turnover Proceeding, and the New York Supreme Court granted that motion on May 18, 2006.  (Ex. I.)  The Court concluded that "there was absolutely nothing at all to support their allegations that the Pension Fund is something other than a Pension Fund for the employees."  (*Id*. at 44:13-19)  The Court also found that the affidavits and exhibits the Pension Fund submitted in support of its motion to dismiss constituted "credible, very credible affidavits and evidence indicating that this in fact is money that belonged to" the Pension Fund's beneficiaries, not the PA.  (*Id*. at 44:20-25.)  In dismissing the Turnover Proceeding, however, the New York Court noted that the Rhode Island Injunction continues to restrain the Pension Fund's assets.  (*Id*. at 45:11-13.)

In conjunction with the Turnover Proceeding, Plaintiffs also caused the Sheriff to serve a Sheriff's Levy upon SASI, dated February 21, 2006, purporting to freeze assets of the PA and the PLO.  After the Turnover Proceeding was dismissed, the Sheriff's Levy expired on May 22,

2006, by operation of N.Y.C.P.L.R. § 5232 (providing that a Sheriff's Levy expires after 90 days or the duration of a turnover proceeding).

While Plaintiffs continued to pursue their Declaratory Judgment Action, they never sought an order for any pre-judgment restraint in that Action. (McPherson Decl., ¶ 17.) Thus, there is no New York State court restraint upon the Pension Fund's assets. The only restraint upon the Fund's assets stems from Plaintiffs' unilateral — and unduly broad — characterization of this Court's Injunction, as set forth in the Notice of Injunction they served upon SASI.

**D.    Plaintiffs' Recent Positions in the Declaratory Judgment Action Threaten to Undermine the Efficacy of that Action.**

In the Declaratory Judgment Action, Plaintiffs' sole claim is for a declaratory judgment concerning the Pension Fund's ownership of the assets formerly held in the SASI custodial account. In their Complaint, Plaintiffs sought an order and judgment:

> a) Declaring, establishing and decreeing that the securities and debt instruments held by SASI and listed in its Amended Verified Answers are the sole property of Defendant [the Palestinian Authority];
>
> b) Declaring, establishing and decreeing that Defendant [the Pension Fund] has no rights to the securities and debt instruments held by SASI and listed in its Amended Verified Answers.

(Ex. J, at 14-15.)

Plaintiffs' request for this declaratory judgment has framed the litigation since 2006. The Pension Fund and Plaintiffs conducted extensive discovery for almost one year. (McPherson Decl., ¶ 19.) Discovery closed in February 2007, and the parties then submitted cross-motions for summary judgment. (*Id.*) Both motions were denied on June 5, 2008. (*Id.*) Since then, the parties have pursued interlocutory appeals on certain legal issues, and have worked on preparing for trial. (*Id.*, at ¶¶ 20-22.)

Given the relief Plaintiffs sought in their Complaint, the Pension Fund has litigated the Declaratory Judgment Action on the basis that, at the conclusion of the trial, the Court would issue a declaratory judgment resolving the factual questions at the heart of Plaintiffs' claim — that is, whether the PA owns the assets at issue, or whether the Pension Fund does. In a declaratory judgment action in New York, the Court cannot simply dismiss the case for lack of proof. Siegel, *New York Practice* § 440 (4th ed. 2005). "The court must determine the rights of the parties to the dispute involved and, if the defendant prevails, the declaration should simply go her way." *Id. See also Medical World Publishing Co. v. Kaufman*, 29 A.D.2d 859 (N.Y. App. Div. 1st Dep't 1968) ("This being an action for a declaratory judgment, the rights of the parties should have been declared. The mere dismissal of the complaint is not an affirmative declaration of the parties' rights").

Recently, however, the briefing and resolution of two interlocutory appeals in the Declaratory Judgment Action potentially undermine the entire premise of the litigation: Plaintiffs are now apparently attempting to avoid having the New York Court issue a declaration resolving whether the PA owns the assets at issue.

On October 18, 2009 — shortly before the final pretrial conference — Plaintiffs filed an order to show cause demanding that the burden of proof in the Declaratory Judgment Action be shifted from Plaintiffs to the Pension Fund and that the order of trial be reversed (with the Fund being required to put on its case first). (McPherson Decl., ¶ 20.) The trial court denied Plaintiffs' motion on November 5, 2009, and trial was stayed pending Plaintiffs' appeal of the decision. (Ex. L.) On April 15, 2010, the New York Appellate Division affirmed the trial court's order denying Plaintiffs' motion to reverse the burden of proof and order of trial. (Ex. M).

In their appeal on that burden of proof issue, Plaintiffs argued that they no longer have any claim against the PA pending in the Declaratory Judgment Action.  (Ex. N, at 8 n. 4 ("this action is now proceeding solely against the [Pension Fund] because service on the PA was evidently never perfected and because even if service had been made default judgment against the PA was not timely sought.").)  Plaintiffs argue, therefore, that they have abandoned their claim that the PA owns the assets at issue, though they still apparently intend to seek a declaration that the Pension Fund does not own the assets.  (*Id.*, at 19 ("the trial in this action will therefore decide *one and one question only*:  the claim of the [Pension Fund] to own the assets at issue . . .") (emphasis in original).)

In a previous appeal, as well, Plaintiffs attempted to re-frame the nature of the dispute in the Declaratory Judgment Action.  On May 30, 2007, the Fund moved to strike Plaintiffs' jury demand, arguing that their claim was an equitable cause of action to which no jury right attached. (McPherson Decl. ¶ 22).  The trial court denied that motion.  (*Id.*)  The Pension Fund appealed, and the New York Appellate Division affirmed the trial court's decision.  (*Id.*)  In that decision, the Appellate Division accepted Plaintiffs' analogy of their claim not to a claim to settle ownership of the securities at issue, but to a claim for tortious interference with the enforcement of a judgment, against the Pension Fund only.  *Strachman v. The Palestinian Authority, et al.*, Index No. 102101/06, 2010 N.Y. App. Div. LEXIS 2601, at *11 (N.Y. App. Div. 1st Dep't Mar. 30, 2010).

Again, Plaintiffs' re-characterization of their Declaratory Judgment Action threatens to de-rail the current posture of that long-pending litigation.  While the Complaint itself sought a declaration establishing that the PA owns the assets at issue, Plaintiffs' new tort theory seeks solely to hold the Pension Fund responsible for allegedly interfering with Plaintiffs' efforts to

enforce their default judgment.  Under Plaintiffs' new theory, it is far from certain that the New York court will resolve the ownership of the assets at issue.

Based on these twin developments, the Declaratory Judgment Action — which has already dragged on for more than four years — may not resolve the factual issue of whether the PA or the Pension Fund owns the assets at issue and the application of this Court's Injunction to those assets.  Even if plaintiffs try the case consistent with their sole claim for a declaratory judgment, moreover, the New York State Supreme Court may resolve only the issue of whether the Pension Fund owns the assets, not the more important question of whether the PA owns the assets.  It is that question — whether the PA owns the assets — that must be resolved, to determine whether the Injunction reaches the assets:  only if the assets are owned by the PA does the Injunction apply to them.

### E.   Because of the Shift in the Declaratory Judgment Action, This Court's Direction to the Palestine Monetary Authority No Longer Precludes the Pension Fund From Seeking Relief in this Court.

In view of the Plaintiffs' shifting theories in the Declaratory Judgment Action, the Pension Fund is now forced to approach this Court for relief from the Injunction notwithstanding the Court's prior ruling in a related proceeding brought by the Palestine Monetary Authority.

In 2005, the PMA filed a complaint in this Court against the Ungar Plaintiffs.  The Complaint sought declaratory and injunctive relief, seeking an "order declaring the rights of the parties in this matter and to further declare that Strachman has improperly expanded the scope of the Injunction Order in this case without proper basis, and for such further relief as the Court deems just and proper."  (Ex. O.)

At a hearing on June 16, 2005, this Court denied the PMA relief, citing the fact that the Bank of New York ("BONY") froze the assets, and BONY was not a party to the proceeding the PMA initiated.  (Ex. P.)  The Court also noted that the scope of its Injunction was clear.  (*Id.*)

Although the Court acknowledged that there may be factual questions about whether a party is acting as an agent for the PA, is holding funds for the PA, or is the same entity as the PA, it made clear that it need not resolve any such factual questions.  (*Id.*)

> For all of these reasons, this Court rejected the PMA's request:

> > [T]he proper place for all these arguments are in New York where the judgment has been registered and where this action has been taken in order to collect the judgment.  And it is pending.  It's pending in the Supreme Court of New York with all the parties before the court, and it's not a question of the interpretation of my order.  My order is clear.  What has to be determined now are the facts. . . . [T]hose facts . . . ought to be presented to the Supreme Court judge in New York.

(Ex. P (Tr., June 16, 2005), at 15:8-18.)  The PMA later voluntarily dismissed its action without prejudice.  (Ex. Q.)

> The Pension Fund has properly guided its actions based on this Court's order.  The Pension Fund has — in three separate proceedings — sought to have the New York state court resolve factual questions about the ownership of assets, just as this Court told the PMA that it should do.  As detailed above, however, Plaintiffs' recent positions in the Declaratory Judgment Action threaten to undermine the efficacy of that Action, and distinguish the current procedural status of proceedings against the Pension Fund from those involving the PMA.  *See supra*, at 11-12.

**ARGUMENT**

I.    **THE PENSION FUND SHOULD BE PERMITTED TO INTERVENE IN THIS ACTION, FOR THE LIMITED PURPOSE OF CHALLENGING THE INJUNCTION.**

   A.    **The Pension Fund's Interest in the Frozen Assets Warrants Intervention.**

"On timely motion, the court **must** permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2) (emphasis added).

The Pension Fund claims just such an interest.[2]  Plaintiffs have used this Court's Injunction to restrain more than $100 million of the Pension Fund's assets held in New York.  As detailed in Mr. A-Franji's Affidavit, these assets belong to the Pension Fund alone.  (A-Franji Aff., ¶¶ 37-49.)  Israel transferred the assets directly to the Fund, pursuant to the Implementation Agreements executed as part of the Oslo Agreements.  (*Id.*)

No party presently in this action can adequately represent the Fund's interests in its assets.  Plaintiffs, of course, are the Fund's adversaries with respect to the frozen assets; they seek to execute upon the assets by claiming that the Pension Fund does not actually own the assets, but the PA does.  The PA and PLO have made no claim to the Pension Fund's assets.  Absent intervention, therefore, the Pension Fund's assets will remain at risk in this litigation.

On these facts, the Pension Fund satisfies Rule 24(a)(2)'s requirements for mandatory intervention.  "While a mere economic interest may be insufficient to support the right to

---

[2] Although the Pension Fund seeks to intervene to test the propriety of this Court's Injunction, it reserves its objection to personal jurisdiction in this proceeding.  The Pension Fund has turned to the source of an improper restraint on its assets, but this motion should in no way be seen as consent to personal jurisdiction for any other aspect of this proceeding, or a waiver of any objections related to this issue.

intervene, an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting the fund." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995).

The Court need not resolve the merits of the Pension Fund's claim to these assets to decide the motion to intervene. For present purposes, the Pension Fund's claim to the assets — standing alone — is sufficient to give it standing to intervene. *See Zurich Capital Markets Inc. v. Coglianese*, 236 F.R.D. 379, 385 (N.D. Ill. 2006) (intervenor's "allegation that he has an interest in the same funds that [plaintiff] seeks to recover through its default judgment" was sufficient to give intervenor right to mandatory intervention under Rule 24(a)(2)).

### B.    The Pension Fund's Motion to Intervene is Timely.

The Pension Fund's present motion to intervene is timely, given the facts of this case.

"The timeliness inquiry is inherently fact-sensitive and depends on the totality of the circumstances," *R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009), but the First Circuit considers the following factors in evaluating the issue:

> (i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention. *Id.* Each of these factors must be appraised in light of the posture of the case at the time the motion is made.

*Id.* Where, as here, the intervenor seeks to intervene as of right, "the timeliness requirement is often applied less strictly." *Id.* at 8.

The Pension Fund did not intervene until now for several reasons. First and foremost, the Fund sought to resolve the ownership issue through the various proceedings involving the Pension Fund in New York State court. It filed a motion to vacate the Restraining Notice Plaintiffs served upon SASI. It filed a motion to dismiss the Turnover Proceeding Plaintiffs

filed, and was victorious. Since then, the Fund has litigated the Declaratory Judgment Action in good faith, seeking a resolution of the issue of the Fund's ownership of the assets at issue. (McPherson Decl., ¶ 26.) The Pension Fund limited its litigation efforts in New York due, in large measure, to this Court's instruction to the Palestine Monetary Authority that it should litigate ownership questions in the jurisdiction in which disputed assets are held, rather than in this Court. (Ex. P (Tr., June 16, 2005), at 15:8-18.)

Now, however, due to Plaintiffs' recent shifts in positions in the Declaratory Judgment Action, there is a strong possibility that the Declaratory Judgment Action may not resolve the issue of the Fund's ownership of the frozen assets, necessitating intervention here. *See supra*, at 11-12.

Permitting the Pension Fund to intervene would not prejudice Plaintiffs in any way. Although the relief the Pension Fund seeks — to vacate or modify the Injunction — is certainly at odds with Plaintiffs' interests, nothing about the Pension Fund's decision not to seek to intervene sooner has prejudiced Plaintiffs in any way.

The Pension Fund, on the other hand, continues to suffer prejudice without the ability to intervene and seek relief from the Injunction. The Injunction is the only current restraint on the Fund's assets. As detailed below, this restraint has caused the Pension Fund to incur substantial losses to its investment portfolio, as a result of the Fund's inability to manage its assets. *See infra*, at 24-25.

For these reasons, the Fund should be permitted to petition this Court for relief, even though the Fund did not immediately seek to intervene in this action once the Injunction was issued. *See, e.g.*, *Negron-Almeda v. Santiago*, 528 F.3d 15, 22 (1st Cir. 2008) (reversing finding that motion to intervene was untimely when filed two years late because intervenor relied on

district court order stating that its interests were not at stake, and intervenor moved approximately 30 days after another decision to the contrary); *Cook v. Bates*, 92 F.R.D. 119, 122 (S.D.N.Y. 1981) (finding motion to intervene timely despite being filed "several years after the underlying matter had been pending in this court . . . In the absence of prejudice to the opposing party, even significant tardiness will not foreclose intervention."); *Hodgson v. United Mine Workers*, 473 F.2d 118 (D.C. Cir. 1972) (reversing district court finding that motion to intervene was untimely despite the fact that it was made seven years after case was filed and after action was tried, where "the proposed intervenors expressly disavowed any desire to reopen any previously-litigated question, and sought only to participate in the remedial, and if necessary the appellate, phases of the case. . . . Timeliness presents no automatic barrier to intervention in post-judgment proceedings where substantial problems in formulating relief remain to be resolved.").

## II.    THE COURT SHOULD VACATE OR MODIFY THE INJUNCTION.

Although styled simply as an "Injunction," the May 5, 2005 Injunction was in fact a preliminary injunction, issued pursuant to Fed. R. Civ. P. 65. The Injunction was issued in response to Plaintiffs' motion for a preliminary injunction, and the Court referred to the Injunction as a "preliminary injunction" during the hearing on May 5, 2005 (*see* Ex. C (Tr., May 5, 2005), at 19:16-18).

As a preliminary injunction, the Injunction should be vacated for two reasons. First, because final judgment had already been entered, the Court did not have authority to enter any form of preliminary injunction, and second, legal remedies were already available (and remain available) to Plaintiffs, making the equitable Injunction unnecessary.

In the alternative, the Injunction should be modified in two respects: it should be limited to sixty days (the period of time Plaintiffs originally requested), to give Plaintiffs time to initiate

a proper judgment-enforcement proceeding, and Plaintiffs should be required to post a bond while the Injunction remains in effect.

A.     **The Preliminary Injunction is Invalid as a Matter of Law.**

While Plaintiffs and the Court characterized the Injunction as a preliminary injunction, most courts and commentators have noted that a preliminary injunction should not be issued after judgment has been entered, even to assist the enforcement of a money judgment. *See, e.g.*, *Fundicao Tupy S.A. v. United States*, 841 F.2d 1101, 1103 (Fed. Cir. 1988) (after court had reached merits of the case "[t]here is no longer any need to preserve the trial court's power to provide an effective remedy on the merits, which is the purpose of a preliminary injunction"); *Smith v. Mallick*, No 96 CV 2211, 2007 U.S. Dist. LEXIS 53716, *7-*9 (D.D.C. July 26, 2007) ("Plaintiffs' request for equitable relief in the form of a temporary restraining order or preliminary injunction must be denied because plaintiffs' original suit was one brought at law for the purpose of recovering money damages rather than one that sought equitable relief and because there is no showing that the legal remedies available to collect the judgment are inadequate" and suggesting that this is not a preliminary injunction because a preliminary injunction is "inherently a form of prejudgment relief"); *Al-Abood v. El-Shamari*, 71 F. Supp. 2d 511, 515-516 (E.D. Va. 1999) (refusing to enter preliminary injunction where "Plaintiff has not yet exhausted all efforts to enforce her judgment in this manner, the Court finds that a showing of irreparable harm fails to exist."); 13 Moore's Federal Practice, Civil § 65.20 ("The purpose of the preliminary injunction is to preserve the status quo between the parties pending a final determination of the merits of the action").

In any event, preliminary injunctions are designed to provide equitable relief, particularly where Plaintiffs cannot enforce their rights through normal legal means. *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (citing to the "the basic doctrine of equity jurisprudence that courts of

19

equity should not act . . . when the moving party has an adequate remedy at law . . . ."); *SMA Life Assurance Co. v. Sanchez-Pica*, 960 F.2d 274, 277 (1st Cir. 1992) (citing *Younger* and affirming the denial of a preliminary injunction in part based on availability of legal remedy).

For these reasons, in the limited number of cases in which post-judgment preliminary injunctions have issued, such preliminary injunctions have been approved only to assist with enforcement proceedings in that same court, when plaintiffs lack an adequate remedy at law in the absence of an injunction. *See, e.g., Dexia Credit Local v. Rogan*, No. 02 CV 8288, 2008 U.S. Dist. LEXIS 80547 (N.D. Ill. Oct. 9, 2008) (granting motion for preliminary judgment to restrain assets of third parties after entry of a judgment — but in what appears to be a subsequent collection action before the same court, and relying in part on Illinois state law grant of power to courts to issue restraints to prevent judgment assets from being dissipated); *Odnil Music Ltd. v. Katharsis LLC*, No. 05-545, 2007 U.S. Dist. LEXIS 46161 (E.D. Cal. June 26, 2007). As this Court has already noted, there are no judgment enforcement proceedings in this action pending before it. (*See* Ex. P (Tr., June 16, 2005, at 20:12-20).)

Thus, even assuming that a post-judgment preliminary injunction is appropriate at all, which it is not, the facts here do not support the Preliminary Injunction that the Court entered. Plaintiffs had — and continue to have — a whole range of procedural devices at their disposal to collect their judgment, even in the absence of the Injunction.

First, as they tried and failed to do previously, Plaintiffs could serve a Restraining Notice, or cause the sheriff to serve a Sheriff's Levy upon Credit Suisse's affiliate, to restrain the Pension Fund's assets while they prosecute a turnover proceeding seeking to recover the Fund's assets. Plaintiffs' failure to employ those procedures successfully in 2005 and 2006 does not support the continuation of the Injunction; indeed, it proves why the Injunction should be

dissolved.  Plaintiffs could not sustain their burden of proof to justify their previous Restraining Notice and Turnover Proceeding.  For the same reason, they should not be permitted to misuse this Court's Injunction to restrain the Pension Fund's assets, particularly since there is no indication that this Court ever intended its Injunction to reach the Pension Fund's assets.

Second, in the context of the Declaratory Judgment Action, Plaintiffs could employ New York's procedures to obtain a pre-judgment attachment.  *See, e.g.,* N.Y.C.P.L.R. §§ 6210, 6211, 6212.  Those procedures would require Plaintiffs to post a bond during the pendency of the litigation to protect the Fund's legitimate interests in its assets.  N.Y.C.P.L.R. § 6312(b).  Plaintiffs are, in effect, using this Court's Injunction to substitute for proper pre-judgment enforcement procedures in the New York Courts and are violating the Pension Fund's rights to due process.  *See* 1 Weinstein, Korn & Miller CPLR Manual § 28.03 (among other things, "whenever a pre-judgment remedy deprives a person of a significant property interest, due process requires at a minimum . . . that the movant must be required to post a bond protecting defendant's right to damages if the provisional remedy turns out to be improperly authorized"); *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) ("even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection.  Without doubt, state procedures for creating and enforcing attachments, as with liens, 'are subject to the strictures of due process.'"); *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 457 (1st Cir. 2009) (citing *Doehr*).

The Injunction is therefore without any legal basis.  No preliminary injunction should have been issued after final judgment had been entered.  But even if such a preliminary injunction were appropriate, no such injunction should have been issued here, where Plaintiffs had adequate remedies at law — in the form of state-court post-judgment and pre-judgment

enforcement procedures — at their disposal.  Because these procedures remain available to Plaintiffs, the Injunction should be vacated in its entirety.

### B.      In the Alternative, the Injunction Should Be Modified.

In the alternative, the Court should at least modify the Injunction in two respects:  it should be limited to sixty days (the period of time Plaintiffs originally requested), to give Plaintiffs time to initiate a proper judgment-enforcement proceeding, and Plaintiffs should be required to post a bond while the Injunction remains in effect.

### 1.      The Injunction Should Be Limited to Sixty Days.

Plaintiffs initially sought an injunction that would last for sixty days.  (Ex. C (Tr., May 5, 2005, at 20:17-21:5).)  At the hearing, however, this Court *sua sponte* decided to extend the preliminary injunction indefinitely, until further order of the Court.  (*Id*.)  There was no factual or legal basis for extending the duration of the Injunction indefinitely.

Preliminary injunctions are by their very nature temporary instruments.  *See, e.g.,* Corpus Juris Secundum, A C.J.S. Injunctions § 7 ("A temporary injunction, also referred to as an interlocutory or preliminary injunction, is a provisional remedy . . .").  "A preliminary injunction — as indicated by the numerous more or less synonymous adjectives used to label it — is, by its very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness.  It serves as an equitable policing measure to prevent the parties from harming one another during the litigation; to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began."  *Hamilton Watch Co. v. Benrus Watch Co*., 206 F.2d 738, 742 (2d Cir. 1953).  *See also Francisco Sanchez v. Esso Standard Oil Co*., 572 F.3d 1, 15 (1st Cir. 2009); *Ramos v. Town of Vernon*, 208 F.3d 203 (2nd Cir. 2000) ("A preliminary injunction is a temporary measure intended to furnish provisional protection while awaiting a final ruling on the merits.").

The Court's Injunction is at odds with these basic principles governing preliminary injunctions. The Injunction is five years old, with no sign of terminating. Indeed, if Plaintiffs abandoned all of the New York proceedings against the Pension Fund tomorrow, the Injunction would remain in effect — indefinitely — on its own terms. In no sense, therefore, is the Injunction "temporary" or "provisional," as *Hamilton Watch* and *Francisco Sanchez* hold such injunctions must be.

At a minimum, this Court should modify the Injunction to conform to Plaintiff's initial demand for a sixty-day period. As Plaintiffs themselves recognized when they initially requested the Injunction, sixty days is more than adequate for Plaintiffs to file any New York State restraints they deem necessary to protect their interests.

> **2.    Plaintiffs Should be Forced to Post a Bond for the Duration of the Injunction.**

Although the Injunction was apparently issued pursuant to Rule 65, there is no record of a bond being filed, and there is no indication in the transcript from the injunction hearing that the issue of a bond was ever considered. Under the Rule governing preliminary injunctions, the Injunction should not have issued without requiring Plaintiffs to post a bond.

The language of Rule 65(c) makes a bond mandatory for any preliminary injunction: "[t]he court may issue a preliminary injunction or a temporary restraining order *only if the movant gives security* in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). Indeed, "the rule is phrased in mandatory terms and the conclusion seems inescapable that once the court decides to grant equitable relief under Rule 65 it must require security from the applicant." 11A Wright, Miller & Kane, *Federal Practice & Procedure*, Civil 2d. § 2954. Courts have therefore ruled that it was erroneous for a district court

to waive a bond requirement, even where no party requested a bond, and the court saw no need for that bond. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010).

Although there are limited circumstances in which courts may excuse the Rule 65(c) bond requirement, 13 Moore's Federal Practice, Civil § 65.52 ("A district court issuing a preliminary injunction or restraining order has the discretion to dispense with the security requirement of Rule 65(c) under limited circumstances."), the Court did not even consider whether those circumstances were present here. And Plaintiffs offered no facts to satisfy their burden of showing that the limited circumstances excusing the bond requirement applied to their request for a preliminary injunction. As such, the Court should not have issued the Injunction without even considering whether Plaintiffs should be excused from the bond requirement. *See* 1-10A Moore's Manual, Federal Practice and Procedures § 10A.20 ("It is reversible error for a court to order injunctive relief if the court has not even considered the security requirement."); *Corning Inc. v. PicVue Elecs., Ltd*., 365 F.3d 156, 158 (2d Cir. 2004) ("While it might have been within the discretion of the district court to decide that, under the circumstances, no security was required, the district court was required to make this determination before it entered the preliminary injunction") (internal citations omitted).

This is especially true here, since the Plaintiffs have sought to use the Injunction as a restraint on the Pension Fund's assets. As noted above, the imposition of such a restraint without requiring the posting of a bond to protect the Pension Fund violates the Pension Fund's due process rights.

Thus, if the Court declines to vacate the Injunction in its entirety, the Court should force Plaintiffs to post a bond for the duration of the Injunction, to protect the Pension Fund from the continued threat to its assets as a result of the restraint.

The threat to the Pension Fund's assets is not theoretical.  Since Credit Suisse froze the Pension Fund's assets upon receipt of Plaintiffs' Notice of Injunction, the Pension Fund has been unable to manage the assets held by Credit Suisse.  (McPherson Decl., ¶ 27.)  Plaintiffs have agreed to the entry of a court order permitting the Pension Fund to manage its assets during the pendency of this litigation (Exs. R, S), but the fact that Plaintiffs have restrained the Fund's assets has itself hindered the Pension Fund's ability to find asset managers and custodians who are willing to assist the Fund in managing its assets.  Shortly after Plaintiffs served their Notice of Injunction, the Pension Fund's investment advisor, Smith Barney, resigned.  (McPherson Decl., ¶ 28.)  The Pension Fund ultimately found a firm to replace Smith Barney, WaterStreet Investment Consultants, LLC, but by that time, Credit Suisse had closed its affiliate SASI.  (*Id.*, at ¶¶ 28-29.)  Since SASI's closing, the Pension Fund has not been able to identify and retain a suitable custodian for the assets.  (*Id.*, at ¶30.)  Every potential custodian the Pension Fund interviewed cited the Notice of Injunction as a basis of their refusal to serve as a custodian.  (*Id.*) And without a custodian for the assets, WaterStreet cannot actively manage the assets for the Pension Fund.  (*Id.*)

As a result of the restraint, therefore, the Pension Fund's assets have lost substantial value.  WaterStreet has analyzed the impact of the restraint on the Pension Fund's assets.  Based on its analysis, the Pension Fund has already lost approximately $7 million in gains that it would have earned had WaterStreet's asset allocation recommendations been implemented in May 2009. (McPherson Decl., ¶¶ 31-35.)  In addition, the Fund risks losing more than $17 million over the next five years if it is unable to implement WaterStreet's asset allocation recommendations immediately.  (*Id.*)  These figures represent potential losses of between

$284,648 per 30-day period (using the projected future losses) and $477,450 per 30-day period (using the lost gains from May 2009 to the present).[3]

In light of the losses the Pension Fund has already incurred and its projected future losses, the Fund requests that the Court require Plaintiffs to post a bond in the amount of $1 million, if the Court limits the Injunction to 60 days, or in the amount of $500,000 for each 30-day period the Injunction is scheduled to last.  The purpose of the bond requirement is to ensure that the Pension Fund can obtain redress if its assets are restrained but its legal position is later vindicated, since the Fund could only recover damages resulting from an improper restraint from the amount Plaintiffs post as a bond.  *See, e.g., Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, (4th Cir. 1999) (noting that, in fixing amount of injunction bond, district court should be guided by purpose underlying FRCP 65(c), which is to provide mechanism for reimbursing enjoined party for harm it suffers as result of improvidently issued injunction or restraining order); *see also Global NAPs, Inc. v. Verizon New Eng., Inc.*, 489 F.3d 13, 21-22 (1st Cir. 2007) ("Since a preliminary injunction may be granted on a mere probability of success on the merits, generally the moving party must demonstrate confidence in his legal position by posting bond in an amount sufficient to protect his adversary from loss in the event that future proceedings prove that the injunction issued wrongfully.").  Courts are therefore instructed to err on the side of setting the bond on the high end of the scale, to ensure that the enjoined party is not left without redress.  *See, e.g.*, *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000) ("When setting the amount of security, district courts should err on the high side.  If the district judge had set the bond at $50 million, as Abbott requested, this would not have

---

[3] $17,316,144 over five years (the amount of the Pension Fund's projected losses) equals approximately $9,489 per day, or $284,648 per 30-day period.  $7,273,159 (the gains the Pension Fund lost from being unable to implement WaterStreet's asset allocation recommendations in May 2009) equals approximately $15,915 per day, or $477,450 per 30-day period.

entitled Abbott to that sum; Abbott still would have had to prove its loss, converting the 'soft' numbers to hard ones.  An error in setting the bond too high thus is not serious. . . . Unfortunately, an error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond.").

As noted, the Pension Fund and its beneficiaries have already lost approximately $500,000 every 30 days since May 2009, as a direct result of the inability to manage its assets due to the Injunction.  WaterStreet projects that the Pension Fund may well forego similar gains every 30 days in the future if it is not able to manage its assets.  Thus, to ensure that the Pension Fund could recover such losses from Plaintiffs if a court rules that the Injunction has been improperly restraining the Fund's assets, Plaintiffs should be ordered to post a bond in the amount of $1 million, if the Court limits the Injunction to 60 days as the Pension Fund requests, or in the amount of $500,000 for each 30-day period the Injunction is scheduled to last.

## CONCLUSION

For the foregoing reasons, the Court should grant the Pension Fund's motion, and enter an Order:  (1) permitting the Fund to intervene in this action for a limited purpose; (2) dissolving the preliminary injunction entered by this Court on May 5, 2005 ("Injunction"); or, in the alternative, (3) limiting the Injunction and requiring Plaintiffs to post a bond in the amount of $1 million, if the Court limits the Injunction to 60 days as the Pension Fund requests, or in the amount of $500,000 for each 30-day period the Injunction is scheduled to last, to protect the Pension Fund against damages resulting from the pre-judgment restraint of the Fund's assets.

Respectfully submitted,

/s/ Joseph V. Cavanagh, Jr.
 /s/ Joseph V. Cavanagh, III
Joseph V. Cavanagh, Jr. #1139
Joseph V. Cavanagh, III  #6907
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, Rhode Island  02903
Telephone:  (401) 831-8900
Facsimile:   (401) 751-7542
jvc@blishcavlaw.com
jvc3@blishcavlaw.com

Dated: August 18, 2010

*Attorneys for Third-Party Intervenor The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip*

*Pro Hac Vice Application Pending:*

Charles L. Kerr
Mark David McPherson
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York  10104-0050
Telephone:  (212) 468-8000
ckerr@mofo.com
mmcPherson@mofo.com

Harold J. McElhinny
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone:  (415) 268-7000
hmcelhinny@mofo.com

*Attorneys for Third-Party Intervenor The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip*

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on this 18th day of August, 2010, the within document was filed electronically and thereby made available for viewing and downloading from the Court's Electronic Case Filing System by all parties.


                            /s/ Joseph V. Cavanagh, III