# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------- x
                         :

THE ESTATE OF YARON UNGAR by and through   :    Index No. 102101/06
its Administrator, DAVID STRACHMAN, et al.,     :
                         :
                  Plaintiffs,   :
        -against-                :
                         :
THE PALESTINIAN AUTHORITY, et al.,       :
                         :
                 Defendants.   :

---------------------------------------------------------- x
                         :

THE ESTATE OF YARON UNGAR by and through   :    Index No. 105521/05
its Administrator, DAVID STRACHMAN, et al.,     :
                         :
         Plaintiffs-Judgment Creditors,   :
                         :
        -against-                :
                         :
THE PALESTINIAN AUTHORITY, et al.        :
                         :
         Defendants-Judgment Debtors.   :
                         :
---------------------------------------------------------- x

## <u>AFFIDAVIT OF FAROUK M. A-FRANJI</u>

STATE OF PALESTINE )
                    ) ss.
CITY OF GAZA      )

       FAROUK M. A-FRANJI, being duly sworn, deposes and says:

       1.      I am the General Director of The Palestinian Pension Fund for the State

Administrative Employees in the Gaza Strip (the "Pension Fund" or "Fund"). I have held that

position since 1998. In that role, I am responsible for overseeing and managing the Pension

Fund's operations and staff on a day-to-day basis. In my position as General Director, I also

serve as a member of the Board of Directors of the Pension Fund.

2.     I am submitting this Affidavit in support of the Pension Fund's motion for summary judgment. I make the statements in this Affidavit based on my own personal knowledge, including my knowledge about the Fund's practices and procedures concerning its books and records, and based on my review of those books and records.

Introduction

3.     This litigation involves over $100 million of the Pension Fund's securities and debt instruments that, for the last two years, have been frozen in a custody account in New York at Swiss American Securities, Inc. ("SASI"), an affiliate of Credit Suisse. Under the guidance of the Pension Fund's Board of Directors and Investment Managers, these assets were purchased using funds the State of Israel transferred to the Pension Fund under the 1994 Oslo Agreements — funds that were originally collected from participants in the pension system in the Gaza Strip. These Pension Fund assets — which for over a decade have been held in the Pension Fund's name, managed by independent professionals hired by the Pension Fund and recorded in the Pension Fund's budgets, audited financial statements, actuarial valuation reports, and internal books and records — are part of the Pension Fund's overall assets used to pay ongoing obligations to pensioners under applicable Palestinian law.

4.     Plaintiffs assert, however, that the Pension Fund is nothing but a fictitious entity without any legal existence. They contend that the assets frozen at SASI do not belong to the Pension Fund and, instead, are secretly "the sole and exclusive property" of the Palestinian Authority (the "PNA") as the result of some elaborate fraud. *See* Complaint, dated February 14, 2006, ¶¶ 39-60 (the "Complaint"), a copy of which is attached to the Appendix of Exhibits in Support of Defendant The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip's Motion for Summary Judgment ("the Appendix of Exhibits") as Exhibit 1. Therefore, Plaintiffs seek a declaratory judgment that "the securities and debt instruments held

2

by SASI . . . are the sole property of Defendant [PNA]" and that Pension Fund has no rights to those assets. *Id.* ¶ 70.

5.      As I describe below, Plaintiffs' contentions, all of which are based on nothing but their counsel's "information and belief," have no basis in fact. The Pension Fund is a separate, legal entity created by statute over forty years ago. It is currently responsible for managing a pension system in the Gaza Strip with over 50,000 participants and between 5,000 and 6,000 current beneficiaries. Managed by its Board of Directors and a professional, administrative staff, the Pension Fund has its own independent budget and manages its own funds and assets. The assets held in the Pension Fund's accounts at Credit Suisse (and now frozen at SASI) are owned by the Pension Fund and, as shown by the documents described below, can be traced back directly to the funds Israel transferred to the Pension Fund as part of the Oslo Peace Process.

6.      Plaintiffs' actions of freezing the Pension Fund's assets for the past two years and seeking to recover against those assets based on judgments they obtained in a completely separate litigation against the PNA and the Palestine Liberation Organization (the "PLO") are improper and have resulted in substantial damage and injury to the Pension Fund. On behalf of the Pension Fund and its participants and beneficiaries, I respectfully request that the Court grant this motion in its entirety.

The Pension Fund Was Created<br>
As An Independent Legal Entity

7.      The Pension Fund is an independent legal entity that, for more than forty years, has been entrusted with collecting and investing contributions from, and paying insurance and pension benefits to, designated employees, workers and laborers. By law, these employees, workers and laborers contribute 10% of their salaries to the Pension Fund, which then holds and invests their contributions along with contributions from their employers. Those employees,

workers and laborers are, in turn, entitled to receive insurance and pension benefits based on entitlement criteria detailed in the applicable Insurance and Pension Law. There currently are more than 50,000 active participants in the Pension Fund and approximately 5,000 to 6,000 current beneficiaries receiving pension payments.

8.      The Pension Fund was originally established when the Gaza Strip was under Egyptian control. Based on my work and my review of the original law, which under the Oslo Agreements and by decree of the Chairman of the PNA continues to be the operative law within the Palestinian territories, I understand that the Pension Fund was established in 1964.

9.      In May 1999 and on behalf of the Pension Fund, I oversaw an official republication of (i) the original Decision of Law Number (8) for 1964 (the "Decision of Law No. (8) (1964)") implementing the Insurance and Pension Law and (ii) the Governor General Decree Number (22) for 1964 approving the Executive Charter of the Insurance and Pension Law (the "Executive Charter") under which the procedures for implementing the new Law were established. A true and accurate copy of this official republication (and an English translation of the Decision, the Law, the Governor General's Decree and the Executive Charter) is attached to the Appendix of Exhibits as Exhibit 2; *see also* Ex. 3 Item 10 (11/28/1998 Board minutes (Pension Fund Board of Directors approve reprinting the Insurance and Pension Law)). This booklet contains the text of the Insurance and Pension Law (as amended through May 1999) that created and currently governs the Pension Fund and that is the official law of the Palestinian territories.[1] The Insurance and Pension Law included within this booklet is a copy of the original text of the Law and the related Executive Charter, as amended.

---

[1] Decision of Law No. (8) (1964) appears at pages 3-8 of Exhibit 2; the Insurance and Pension Law (as amended) appears at pages 8-50 of Exhibit 2; General Decree Number 22 for (1964) appears at page 50 of Exhibit 2; the Executive Charter appears at pages 51-89 of Exhibit 2; and amendments to the Insurance and Pension Law made
(Footnote continues on next page.)

4

10.    The Insurance and Pension Law created the Pension Fund for the purpose of benefiting the civil employees, workers and laborers working for the civil administration in the Gaza Strip:

> Article 1.  The following sects will benefit from this Law:
>
> (a)  The civil Employees, Workers and Laborers of the administration, officers, soldiers, and police officers whose salaries are linked within part one to the budget of the administration, in addition to the Employees, Workers and Laborers of the Insurance and Pension Fund.
>
> (b)  The Employees, Workers and Laborers of the administrations whose salaries are paid from any part of the budget of from assistance.
>
> (c)  The Employees, Workers and Laborers of the city and village councils.
>
> (d)  The Employees, Workers and Laborers of the Department of Islamic Waqf.  Casual Workers shall not benefit from provisions of this law.  The executive council may, after seeking the opinion of the Insurance and Pension Fund Board of Directors, decide to include other categories to those benefiting form the provisions of this Law.

(Ex. 2, IPL Art. 1, at 9.)  The Insurance and Pension Law continues to cover these groups of beneficiaries, who therefore remain eligible to participate in the Pension Fund.  Since 1995, certain additional groups of employees have become eligible for pension benefits under the Insurance and Pension Law, such as employees of the Gaza Electricity Distribution Company (a private company owned by several municipalities in Gaza).

11.    The Insurance and Pension Law established an "Insurance and Pension Fund" for the benefit of these employees, workers and laborers:

---

(Footnote continued from previous page.)

by the Executive Council (while the Gaza Strip was under Egyptian control) and the Palestinian National Authority through the date of publication appear at pages 90-100 of Exhibit 2.

5

> Article 2. There will be established at the Governor General's Administration an Insurance and Pension Fund for the categories benefiting from the provisions of this Law, the Insurance and Pension Administration will be in charge of managing it and [it] will be known as the Insurance and Pension Fund. It will have a legal entity and a special budget attached to the general state budget, and will be represented, with regard to its relations with other entities, by the Fund's Chairman of the Board.

(Ex. 2, IPL Art. 2, at 9.)

12.     The Pension Fund was originally capitalized with contributions from the active members participating in the Fund and the agencies and municipalities for which they worked, as well as any return on the investment of these monies. Specifically, the Pension Fund's original sources of funds were: (a) membership fees deducted monthly from the salaries of beneficiaries (10%); (b) sums paid by the agencies committed to paying the salaries of beneficiaries (12.5%); (c) income from the investments of the Pension Fund; and (d) revenues from other activities. (Ex. 2, IPL Art. 8, at 12.)

13.     Following the 1967 War, the State of Israel occupied the Sinai and took over control of the civil administration in the Gaza Strip. During the period of Israeli occupation, the pension system established under the Insurance and Pension Law continued to operate, collecting contributions from civil administrative employees and their employers. For example, my predecessor at the Pension Fund, Mohamed Hussain Al A'araj, was the Fund's General Director before the 1967 War and continued on as General Director of the Pension Fund throughout the period of Israeli occupation. During this time period, I worked as the General Manager of the Audit Department under the Israeli Civil Administration in the Gaza Strip and, in that capacity, was familiar with the operation and staff of the Pension Fund.

6

Following the Oslo Agreements, the<br>
Pension Fund Continued To Operate<br>
<u>As An Independent Legal Entity From the PNA</u>

14.    As part of the Middle East peace process in the 1990s, the State of Israel and the PLO entered into a series of agreements that are often referred to as the Oslo Agreements. Under one of those agreements, the Agreement on the Gaza Strip and the Jericho Area, dated May 4, 1994 (the "Gaza-Jericho Agreement"), Israel agreed to transfer authority over the civil administration of the Gaza Strip, including authority over the existing pension system. (*See* Ex. 4, Annex II at PPF 0025992-93.) A number of the employees who worked for the Pension Fund's Administration before 1994 remained on the staff of the Pension Fund after this transfer of civil authority and continue to be employed by the Pension Fund today.

15.    Following the Gaza-Jericho Agreement, the State of Israel, the PNA and the Pension Fund entered into "Implementation Agreements" that provided for the transfer to the Pension Fund of the monies that had been collected under the pension system during the Israeli occupation of the Gaza Strip. On November 9, 1994, the State of Israel and the PNA executed an "Implementation Agreement Concerning the Pension Fund of the Civil Administration Employees in the Gaza Strip" (the "November 9 Implementation Agreement"). A true and accurate copy of the November 9 Implementation Agreement is attached as Exhibit 5 to the Appendix of Exhibits. On December 30, 1994, the State of Israel, the PNA and the Pension Fund executed a new "Implementation Agreement Concerning the Pension Fund of the Civil Administration Employees in the Gaza Strip" (the "December 30 Implementation Agreement"). A true and accurate copy of the December 30 Implementation Agreement is attached as Exhibit 6 to the Appendix of Exhibits. The December 30 Implementation Agreement is very similar to the November 9 Implementation Agreement, but adds the Pension Fund as a signing party to the Agreement and provides that Israel would transfer the "net income of the Pension Fund" into a

7

bank account at Euro-Trade Bank Ltd. in Tel Aviv that had been opened in the Pension Fund's name. (*See* Ex. 6.) The December 30 Implementation Agreement is signed on behalf of the Pension Fund by Mohamed Hussain Al A'araj, the Pension Fund's General Director.

16. Consistent with the Decision of Law No. (8) (1964) and the Insurance and Pension Law, the December 30 Implementation Agreement expressly required that the transferred funds, and any return on the investment of those funds, were to be used solely for paying pensions and severance to beneficiaries:

> 4. The Palestinian Authority and the Pension Fund undertake to invest the monies of the Fund in a manner that will retain their real value and produce a yield for the benefit of the Pension Fund and the employees and pension receivers.

> 5. The Palestinian Authority and the Pension Fund undertake to use the sum so transferred and the monies accruing from their investment only for the purpose of the payments of pensions and severance compensations, as due, to those Palestinians who were employed by the Civil Administration and from whose wages pension insurance deductions were made and accumulated in the Pension Fund.

(Ex. 6 at PPF 0028110.)

17. The December 30 Implementation Agreement also provided that, after the transfer of funds to the Pension Fund's account at Euro-Trade Bank, the funds would be further transferred to an account maintained by the Pension Fund's Investment Manager, Morgan Stanley. (*Id.* at PPF 0028109) As described below, however, only a portion of the funds held by Israel were transferred under the December 30 Implementation Agreement. Therefore, on March 31, 1997, the State of Israel, the Palestinian Council and the Pension Fund entered into an "Amendment to the Agreement Concerning the Pension Fund of the Civil Administration Employees in the Gaza Strip" (the "March 31 Implementation Agreement"), under which the remaining funds held by Israel would be transferred to the Pension Fund's account at Credit

8

Suisse, in Zurich, Switzerland. A true and accurate copy of the March 31 Implementation

Agreement is attached as Exhibit 7 to the Appendix of Exhibits. Like the prior Implementation

Agreements, the March 31 Implementation Agreement expressly required that the transferred

funds, and any return on the investment of those funds, were to be used solely for paying

pensions and severance to beneficiaries. (*Id.*)

The Pension Fund's Board of Directors and
Its Administrative Staff Continue to
Operate The Fund As An Independent Legal Entity

18.     The Insurance and Pension Law established (1) a Board of Directors for the

Pension Fund; and (2) an Insurance and Pension department or administration (the

"Administration") that was to be responsible for the day-to-day management of the Pension

Fund. (Ex. 2, IPL Art. 2, 3, 4, at 9-11.)

**A.     The Board of Directors.**

19.     Article 3 of the original Insurance and Pension Law established a four-member

Board of Directors for the Pension Fund. In 1995, the Board of Directors was increased to six

members. Law Number (7) for 1995 repealed Article 3 of the original Insurance and Pension

Law and replaced it with the following provision:

> The Insurance and Pension Fund, which has been stated in the
> Decision of Law (8) for of the year 1964, shall have a Board of
> Directors that will include:
>
> 1 – Minister of Justice
>
> 2 – Minister of Finance
>
> 3 – Minister of Local Government
>
> 4 – Director General of the Insurance and Pension Affairs
>
> 5 – Director General of the Employees Department
>
> 6 – Representative for the Retired Employees Association

9

(Ex. 8; *see* Ex. 2, IPL Art. 3, at 10.)  In addition, Resolution Number (21), dated June 25, 2002

(the "6/25/02 Resolution"), further amended Article 3 to make clear that the Minister of Finance

would be the first listed Board Member and, therefore, would serve as Chairman of the Board of

Directors.  (Ex. 9.)  On June 26, 2006, President Mahmoud Abbas issued a Directive providing

that the Board of Directors would continue to comprise the following members:  (1) Dr. Salam

Fayyad; (2) Mr. Farouk M. A-Franji; (3) Mr. Fareed Al-Jallad; (4) Mr. Khaled Al-Qawasmi;

(5) Mr. Jihad Hamdan; and (6) a Representative of the Retired Employees Society.  A true and

accurate copy of that June 26, 2006 Directive is attached as Exhibit 10 to the Appendix of

Exhibits.

20.    The Board of Directors acts independently of the PNA and exercises its authority

consistent with the terms of the Insurance and Pension Law and in the best interests of the

Pension Fund and its beneficiaries.  (*See* Ex. 2, IPL Art. 4, at 10-11.)  Pursuant to a 1996

amendment to Article 2 of the Insurance and Pension law, the Board of Directors' decisions are

final and effective as of the date of the Board's decision.  (Ex. 75; *see* Ex. 2, IPL Art. 2, at 9.)

The Board of Directors is responsible for, among other things, overseeing the investment of

Pension Fund's funds and assets; issuing internal regulations to be followed by the

Administration and its employees; reviewing and approving an annual budget for the Fund; and

retaining experts and overall management of the Fund and its assets.  (Ex. 2, IPL Art. 4, at 10-

11.)

21.    Consistent with its responsibilities under the Insurance and Pension Law, the

Pension Fund's Board of Directors would meet regularly, either in person or by conference call,

to oversee the operations of the Pension Fund and the Pension Fund's staff.  For example,

included in the Pension Fund's books and records are minutes of Board meetings held before I

ny-744952

became the General Director of the Pension Fund. Once I became General Director, I

participated in Board meetings and was responsible for preparing the minutes of those meetings.

For the Court's reference, true and accurate copies of minutes of various meetings of the Pension

Fund's Board of Directors are included in the Appendix of Exhibits: June 3, 1995 (Ex. 11); July

1, 1995 (Ex. 12); June 11, 1996 (Ex. 13); March 4, 1998 (Ex. 14); November 28, 1998 (Ex. 3);

December 5, 1998 (Ex. 15); February 27, 1999 (Ex. 16); March 13, 1999 (Ex. 17); June 5, 1999

(Ex. 18); July 12, 1999 (Ex. 19); August 9, 1999 (Ex. 20); September 20, 1999 (Ex. 21);

November 16, 1999 (Ex. 22); February 16, 2000 (Ex. 23); April 11, 2000 (Ex. 24); May 21, 2000

(Ex. 25); December 20, 2000 (Ex. 26); June 9, 2001 (Ex. 27); September 4, 2001 (Ex. 28); and

February 2, 2002 (Ex. 29).[2] These minutes were both created and maintained in the regular

course of the Pension Fund's business.

    22.    Although these minutes are but a portion of the Board minutes, resolutions and

records made and maintained by the Pension Fund as part of its regular operations, they

demonstrate the wide range of issues the Board regularly discusses in supervising the Fund's

operation: the acknowledgement that the Pension Fund is an entity "independent from the legal

point of view" (see, e.g., Ex. 11 Item 6 (6/3/1995 Board minutes)); the distribution of pension

benefits under the Insurance and Pension Law (id.; see, e.g., Ex. 23 Item 6 (2/16/2000 Board

minutes); Ex. 26 Item 4 (12/20/2000 Board minutes)); the Fund's ownership of land (see, e.g.,

Ex. 14 Item 9 (3/04/1998 Board minutes); Ex. 3 Item 5 (11/28/1998 Board minutes); Ex. 19 Item

1 (7/12/1999 Board minutes)); litigation pending against the Pension Fund (see, e.g., Ex. 16 Item

---

[2] Due to the recent political violence and travel restrictions in the Gaza and the West Bank, the Board of
Directors have not been able to meet face-to-face on a regular basis since 2002. The Board continues to function,
however, by conducting meetings via teleconference to the extent possible. The Board has also delegated to
Chairman of the Board Dr. Salem Fayyad and me the authority to take certain actions and make certain decisions on
the Board's behalf. A true and correct copy of the minutes of the January 8, 2004 meeting at which the Board
delegated such authority is attached as Exhibit 30 to the Appendix of Exhibits.

8 (2/27/1999 Board minutes); Ex. 18 Item 1 (6/05/1999 Board minutes)); re-publication of the

Insurance and Pension Law (*see* Ex. 3 Item 10 (11/28/1998 minutes)); the Pension Fund's

budgets (*see, e.g.*, Ex. 14 Item 15 (3/04/1998 Board minutes); Ex. 17 Item 4 (3/13/1999 Board

minutes)); and actuarial and audit reports concerning the Pension Fund (*see, e.g.*, Ex. 24 Item 3

(4/11/2000 Board minutes); Ex. 29 Item 4 (2/02/2002 Board minutes)).

      23.     The minutes also reflect the Board's ongoing oversight of the funds transferred to

the Pension Fund by Israel under the Oslo Agreements and held and invested through the

Pension Fund's account at Credit Suisse. The Board first discussed these funds in a July 1, 1995

Board meeting (*see* Ex. 12 Item 3), when Freih Abu Meddain (the Chairman of the Board at the

time) described how the funds would be invested by Morgan Stanley on behalf of the Pension

Fund. The Board also discussed how to record the funds and assets held at Credit Suisse in its

budgets (*see* Ex. 14 Item 15 (3/4/1998 Board minutes); Ex. 15 Item 9 (12/05/1998 Board

minutes); Ex. 17 Item 4 (3/13/1999 Board minutes)). The minutes also reflect my own personal

efforts to report to the Board concerning the sources and management of the Pension Fund's

assets held at Credit Suisse. For example, in 1999 I met with Mohammed Rachid — to whom

the Board had previously delegated authority to oversee the management of the Fund's assets in

Switzerland — and subsequently reported to the Board what I had learned concerning the

balance of those funds and assets and how they were being invested. (*See* Ex. 20 Item 2

(8/09/1999 Board minutes); *see* Ex. 51.) I also traveled to the United States and to London

several times to visit with the Pension Fund's counsel and to meet with the Pension Fund's

investment managers who were responsible for managing the assets. Again, I reported my

findings to the Board of Directors on a regular basis. (*See* Ex. 21 Item 1 (9/20/1999 Board

minutes); Ex. 22 Item 2 (11/16/1999 Board minutes); Ex. 24 Item 4 (4/11/2000 Board minutes);

ny-744952

Ex. 25 Item 4 (5/21/2000 Board minutes); Ex. 26 Item 1 (12/20/2000 minutes).)  I have
continued to report to the Board information concerning the management of the Pension Fund's
assets held at Credit Suisse, and the Board has continued to discuss those issues when necessary
and appropriate. (*See* Ex. 27 Item 2 (6/09/2001 Board minutes); Ex. 28 Item 1 (9/04/2001 Board
minutes).)

### B.    The Administration of the Pension Fund.

24.    In addition to the Board of Directors, the Insurance and Pension Law created "the
Insurance and Pension Administration" (the "Administration") as an administrative structure to
manage the Pension Fund on a day-to-day basis. (Ex. 2, IPL Art. 2, at 9..)  The Administration's
responsibilities are set forth in the Insurance and Pension Law and in the accompanying
Executive Charter. (*Id.* & Executive Charter Art. 2, at 51-53.)

25.    As I noted above, I am the General Director of the Pension Fund and have held
that position since early 1998.  In that capacity, I am responsible for the Pension Fund's overall
administration, including its professional and administrative staff.  The Pension Fund currently
has approximately 65 employees and maintains offices in Gaza City and in Ramallah, Palestine.

26.    The administrative staff of the Pension Fund is responsible for implementing the
decisions of the Board of Directors.  Among their various duties, my administrative staff
oversees the collection of contributions from active participants of the Pension Fund and from
their employers, calculates amounts of insurance and/or pension benefits allowed under the
Insurance and Pension Law, pays out benefits and manages the day-to-day operations of the
Pension Fund.  The administrative staff also monitors the financial situation of the Pension Fund,
assists me in preparing annual budgets for the Fund and prepares and maintains the Pension
Fund's financial statements that are then reviewed and approved by the Fund's independent
auditors. (Ex. 2, IPL Arts. 2, 6, 59, at 9, 11, 34, and Executive Charter Arts 2, 3, 4, at 51-53.)

13

27.    The Pension Fund and its staff have collected contributions into the Fund and
have paid insurance proceeds and pension proceeds to beneficiaries of the Fund from 1964
through the present.  As an example of payments to beneficiaries, attached as Exhibit 31 to the
Appendix of Exhibits are true and accurate excerpts of data from the Pension Fund's database
listing, by beneficiary, the pension and insurance benefit payments the Pension Fund made in
June 2006 through September 2006.  The Pension Fund prepares and maintains the compilation
of data such as the excerpts attached as Exhibit 31 as part of its regular course of business.  The
attached excerpts of this data were both created and maintained in the regular course of the
Pension Fund's business.

28.    The Pension Fund pays benefits on a monthly basis to Fund beneficiaries
according to the provisions of the Insurance and Pension Law.  Since 1994, the Pension Fund has
been able to make those payments from its local accounts and certain reserve accounts holding
funds derived from contributions by current Pension Fund participants and their employers,
rather than using the funds that were originally transferred by Israel under the Implementation
Agreements and that are now held by the Pension Fund in Switzerland.  Due to the recent
financial crisis in the Gaza, however, the Pension Fund recently withdrew $5,000,000 from its
custodial account at HSBC to pay current beneficiaries.  (In early 2005, HSBC succeeded Credit
Suisse as the Pension Fund's custodian of some of the funds transferred from Israel under the
Implementation Agreements.)  Attached as Exhibit 32 to the Appendix of Exhibits is a true and
accurate copy of a letter I wrote directing that $5,000,000 from the Fund's custodial account at
HSBC be transferred to the Pension Fund's account in Gaza to pay current beneficiaries.

14

### C.    Other Indicia of the Pension Fund's Operation as a Separate Legal Entity.

29.     As part of the ongoing efforts to ensure and strengthen the long-term financial viability of the Pension Fund, in 1998 William M. Mercer Inc. ("Mercer") was retained to provide actuarial services and to prepare an actuarial analysis for the Pension Fund. (*See* Ex. 33.)  On several occasions, I personally met, or participated in conference calls, with representatives of Mercer in connection with their work for the Fund.  For example, in February of 1999, I met with Bruce Cadenhead of Mercer at the Pension Fund's offices in Gaza to discuss the Pension Fund's finances and source of funds and its obligations under the Insurance and Pension Law to Plan participants and beneficiaries.  In April 2000, Mercer completed its Actuarial Valuation Report of the Pension Fund.  A true and accurate copy of that Actuarial Valuation Report is attached as Exhibit 34 to the Appendix of Exhibits.  The Board discussed a draft of Mercer's actuarial report at a Board meeting held on April 11, 2000.  (*See* Ex. 24 Item 3 (4/11/2000 Board minutes).)  The Mercer Actuarial Valuation Report specifically describes and takes into account the Pension Fund's assets held at Credit Suisse.  (Ex. 34 at SSL 005201.)

30.     The Pension Fund has the authority under Palestinian Law to buy and sell real property, and it has owned property in Gaza City since 1966.  The Pension Fund currently maintains its corporate headquarters on its property located in Gaza City, Gaza.  (*See* Ex. 35; Ex. 36; Ex. 37; Ex. 14 Item 9 (3/04/1998 Board minutes); Ex. 3 Item 5 (11/28/1998 Board minutes); Ex. 19 Item 1 (7/12/1999 Board minutes).)

31.     The Pension Fund operates as a separate financial enterprise from the PNA and is responsible for its own finances.  The Pension Fund prepares an annual budget that is separate from any budget for the PNA or any governmental entity.  The Pension Fund's staff prepares an annual budget, which the Board of Directors then reviews and approves.  As an example,

attached as Exhibit 38 to the Appendix of Exhibits is a true and accurate copy of the Pension

Fund's budget for the year ending December 31, 2003. As indicated in the attached budget, the

salaries and expenses of the staff are paid by the Pension Fund, not by the PNA or any

governmental agency or authority. (Ex. 38 at PPF 0048246.) This budget also refers to the

Pension Fund's assets that were later frozen at SASI. (*Id.* at PPF 0048255.)

32.    The Pension Fund has also undertaken to prepare financial statements on a regular

basis. As an example, attached as Exhibit 39 to the Appendix of Exhibits is a true and accurate

copy of Financial Statements and Independent Auditors' Reports for the Year Ended December

31, 2002, prepared by Talal Abu-Ghazaleh,[3] the outside Certified Public Accountants for the

Pension Fund. Those Financial Statements describe the legal status and activities of the Fund

(*see id.* at PPF 0022024-25), and specifically refer to the Fund's assets held at Credit Suisse that

were being managed as an investment portfolio in New York (*id.* at PPF 0022028-29).

33.    The financial obligations of the Pension Fund vis-à-vis the beneficiaries of the

Fund are also separate from the obligations, if any, of the PNA and the general treasury. For

example, Article 39 of the Insurance and Pension Law states:

> Pensions and bonuses that are entitled according to the provisions
> of this Law are alone binding to the Insurance and Pension Fund.
> What is given in addition to it by laws or special decisions is the
> responsibility of the general treasury.

(Ex. 2, IPL Art. 39, at 26.)

34.    The Pension Fund can also sue and be sued in Palestinian Courts. Specifically,

beneficiaries that dispute the pensions they receive may settle their claims in a court of law under

Articles 41 and 42 of the Insurance and Pension Law. (*See* Ex. 2, IPL Arts. 41, 42, at 26.) As an

---

[3] Talal Abu-Ghazaleh & Co. International is one of the largest public auditing firms in the Middle East. *See* <http://www.tagi.com/default.aspx?&lang=en>.

ny-744952

example, attached as Exhibit 40 to the Appendix of Exhibits is a true and accurate copy of a ruling from the High Court of Gaza in litigation in which the Pension Fund was a party. The Board of Directors of the Pension Fund also routinely discussed and reviewed litigation involving the Pension Fund. (*See, e.g.*, Ex. 16 Item 8 (2/27/1999 Board minutes); Ex. 18 Item 1 (6/05/1999 Board minutes).)

35.    The Pension Fund is not a department, division, alias, agent or bank account of either the PNA or the PLO. The assets of the Pension Fund are not the assets of, and do not belong to, the PNA or the PLO. The PNA and the PLO have no ownership interest in or legal right to the Pension Fund's assets, including the assets and investments that the Pension Fund holds at Credit Suisse and/or at SASI.

36.    Indeed, the Pension Fund itself is one of the largest creditors of the PNA. The PNA currently owes the Pension Fund more than $300 million, due to the PNA's failure to remit contributions it owes to the Fund. (*See, e.g.*, Ex. 39 at PPF 0022027-28.) The PNA also owes the Pension Fund $28 million in connection with funds that were transferred in 1996 and 1997 from the Pension Fund's investment accounts overseas to a Pension Fund account at Arab Bank in Gaza. After joining the Pension Fund in 1998, I personally investigated, with outside counsel, the transfer of those funds. While I have never been able to obtain complete records about the disposition of those funds, I was able to determine that the funds had apparently been used by Arab Bank as collateral for separate loans made to the Ministry of Finance and were later seized by Arab Bank when those loans were not repaid. The Ministry of Finance has acknowledged that this is an outstanding debt owed to the Pension Fund. A true and accurate copy of that agreement is attached as Exhibit 41 to the Appendix of Exhibits. This debt is specifically

17

referred to in the Mercer Actuarial Valuation Report (Ex. 34 at SSL 005201), and the Pension

Fund's audited financial statements (*see* Ex. 39 at PPF 0022026).

The Funds At Issue Were Transferred By<br>Israel To The Pension Fund, Not The PNA

37.     As noted above, this litigation involves $100 million of the Pension Fund's

securities and debt instruments that have been frozen in a custody account at SASI for the last

two years.  As I describe below, the Pension Fund's investment managers purchased those

securities and debt instruments, using funds Israel transferred to the Fund under the

Implementation Agreements entered into by the State of Israel, the PNA and the Pension Fund

pursuant to the Oslo Agreements.

38.     Specifically, under the December 30 Implementation Agreement, Israel agreed to

transfer the "net income of the Pension Fund of the employees of the Civil Administration in the

Gaza Strip" to "a special bank account designated by the Palestinian Authority for the Pension

Fund for this purpose." (Ex. 6 at PPF 0028109.)  The funds were to be transferred to Euro-Trade

Bank Limited Account No. 407465 in Tel Aviv, "for further transfer to" Morgan Stanley & Co.'s

account[4] at the Bank of New York.  (*Id.*)  Attached as Exhibits 42, 43, and 44, respectively, to

the Appendix of Exhibits are true and accurate copies of the following letters maintained in the

Pension Fund's books and records confirming the initial transfer of a portion of those funds:

Letter from Avraham Ben Bassat, Senior Director of the Bank of Israel, to the Palestinian

Council, dated January 31, 1996; Letter from Yaron Neudorfer, Account General, Office of the

Israeli Ministry of Finance, to Gabriel Banon, dated June 5, 1996; and Letter from Menahem

Weber, Euro-Trade Bank Limited, to Gabriel Banon, dated July 22, 1996.  As these documents

---

[4] Morgan Stanley was the Pension Fund's investment manager at the time.  (*See* Ex. 6.)

18

indicate, Israel transferred $76,082,860 through the Euro-Trade Bank account to the Pension Fund's investment account at Morgan Stanley on or about July 23, 1996.

39.    Because of currency conversion restrictions, the remaining funds in the Euro-Trade Bank account could not be transferred until 1997. (*See* Ex. 42; Ex. 43.) Accordingly, Israel, the Palestinian Council and the Pension Fund entered into the March 31 Implementation Agreement to provide for the transfer of these remaining funds. (Ex. 7.) By March of 1997, however, the Pension Fund terminated its relationship with Morgan Stanley and hired a new investor manager, Belesta Asset Management AG. Attached as Exhibit 45 to the Appendix of Exhibits is a true and accurate copy of a Letter from Joseph A. Messing, Counsel for Morgan Stanley, to Freih Abu Meddain, Chairman of the Board for the Pension Fund, dated May 22, 1997, confirming the termination of the Pension Fund's relationship with Morgan Stanley. Belesta signed the March 31 Implementation Agreement, confirming its role as the Pension Fund's investment manager at that time. (*See* Ex. 7 at PPF 0011899.)

40.    In late 1996, the Pension Fund opened a new custodial account at Credit Suisse to hold the funds received from Israel under the Implementation Agreements. A true and accurate copy of the November 22, 1996 Pension Fund Board Resolution authorizing the opening of this account is attached as Exhibit 46 to the Appendix of Exhibits. The Chairman of the Pension Fund's Board of Directors separately forwarded Credit Suisse a letter, dated November 22, 1996 (a true and accurate copy of which is attached as Exhibit 47 to the Appendix of Exhibits), informing Credit Suisse that, in accordance with the Implementation Agreements, transfers from the Credit Suisse account "may only take place in favour [of] accounts held in the name of The Palestinian Pension Fund of the State Administrative Employees with other first class banks," along with another letter, also dated November 22, 1996 (a true and accurate copy of which is

attached as Exhibit 48 to the Appendix of Exhibits) describing the composition of the Pension Fund's Board of Directors. The Chairman of the Board of Directors of the Pension Fund, Freih Abu Meddain, and Yasser Arafat, were joint signatories on the Pension Fund's custodial account at Credit Suisse. (*See* Ex. 49.) The account was opened in the name of "The Palestinian Pension Fund of the State Administrative Employees." (*See id.*)

41.     In January and February of 1997, Morgan Stanley transferred the funds it had been investing on behalf of the Pension Fund (these were the funds previously transferred by Israel to the Fund's Morgan Stanley investment account) to the Pension Fund's account at Credit Suisse in two tranches: $67,000,000 on January 29, 1997, and the balance of $2,532,781 on February 19, 1997. (*See* Ex. 45.)

42.     On March 31, 1997, the parties executed the March 31 Implementation Agreement, providing for the transfer of the remaining funds held at Euro-Trade Bank to the Pension Fund's account at Credit Suisse. (Ex. 7.) The March 31 Implementation Agreement confirmed that "[o]riginal documents relating to the opening of the aforesaid bank account [the Palestinian Pension Fund bank account held in Credit Suisse] and concerning the authorized signatories have been presented to the Government of Israel before the signing of this agreement." (*Id.* ¶ 2 at PPF 0011898.) Euro-Trade Bank subsequently transferred $50,000,000 to the Pension Fund's Credit Suisse account on April 7, 1997, and the remaining $39,026,635 the next day. (*See* Ex. 50.)

The Pension Fund Has Maintained
Ownership Of The Assets
<u>Transferred by Israel Under the Oslo Agreements</u>

43.     In the fall of 1997, the Pension Fund's Board of Directors authorized Mohamed Rachid to review the investment accounts that Belesta was managing for the Pension Fund. (A true and accurate copy of the Board's authorization is attached as Exhibit 51 to the Appendix of

20

Exhibits.) Based on that review, the Pension Fund directed Belesta to liquidate the investments it had made on the Pension Fund's behalf and terminated Belesta's Investment Management Agreement. (*See* Ex. 52; Ex. 53). The Pension Fund subsequently retained Smith Barney Inc. to act as Investment Advisor to the Pension Fund with respect to the funds and assets the Pension Fund was holding at Credit Suisse. A true and accurate copy of the Pension Fund's Investment Consulting Services Agreement with Smith Barney Inc., dated April 8, 1998, is attached as Exhibit 54 to the Appendix of Exhibits. Working with Smith Barney, in April and May of 1998, the Pension Fund interviewed and ultimately retained several professional Investment Managers to acquire and manage different portfolios of assets — assets purchased using the funds the Pension Fund originally received from Israel and held in its Credit Suisse Account.

44.    At approximately the same time, the Pension Fund transferred its Credit Suisse account from one division of Credit Suisse (Credit Suisse Private Banking) to another (Credit Suisse First Boston). In connection with that transfer, the Pension Fund again confirmed, in a letter to Credit Suisse dated April 29, 1998 (a true and accurate copy of which is attached as Exhibit 55 to the Appendix of Exhibits), that "any monies and investments from the Account (other than the customary fees, charges and commissions of Credit Suisse First Boston and the managers of the investments) shall be withdrawn and transferred only in favour of accounts of the Pension Fund with first class banks," and acknowledged that "Credit Suisse First Boston has a right and shall refuse instructions which do not correspond to this obligation." The Pension Fund also supplied Credit Suisse with a Certification of Board Resolutions, dated May 25, 1998 (a true and accurate copy of which is attached as Exhibit 56 to the Appendix of Exhibits), authorizing the opening of this custodian account. All of the funds in the Pension Fund's

21

original account at Credit Suisse were then transferred to the Pension Fund's new Credit Suisse account. (*See* Ex. 57; Ex. 58.)

45.    In late 1998 and early 1999, the Pension Fund retained Deloitte & Touche to prepare a "Funds Flow Statement" tracing the funds transferred by the State of Israel to the Pension Fund under the Implementation Agreements. (*See* Ex. 59; Ex. 60; Ex. 76.)  Deloitte & Touche completed that Report in November 1999 and traced the funds through the end of December 1998. (Ex. 61.)  Deloitte later prepared further, similar Reports tracing the funds in subsequent years. (Exs. 62, 63, 64, 65 and 87.)

46.    In 2004, the Pension Fund again renewed its Global Custody Contract with Credit Suisse. (A true and accurate copy of that April 29, 2004 Global Custody Contract is attached as Exhibit 66 to the Appendix of Exhibits).  At that time, the Board of Directors of the Pension Fund authorized the opening of the new custodial account at Credit Suisse. (*See* Ex. 30 at PPF 0000129.)  Those Board Resolutions also amended the authorized signatories to the Credit Suisse account:  the Resolutions authorize me, as the Fund's General Director, and Dr. Fayyad (who was then the Finance Minister and Chairman of the Board and who remains the Chairman to this day), to act jointly with respect to the Credit Suisse account. (*Id.*)

47.    In late 2004, Credit Suisse informed the Pension Fund that it would be resigning as Global Custodian in early 2005. (Ex. 67.)  As a result, the Pension Fund retained HSBC Private Bank (Suisse) SA ("HSBC") to act as Global Custodian and, in August of 2005, the liquid funds held at Credit Suisse in Zurich were transferred to its new custodian account at HSBC in Geneva, Switzerland. (*See* Ex. 68.)

48.    As noted above, since 1998, Smith Barney has acted as Investment Advisor for the Pension Fund with respect to the assets held at Credit Suisse and the investments made by the

22

various Investment Managers on behalf of the Pension Fund. In my capacity as General Director of the Fund and as a member of the Fund's Board of Directors, I have met in New York with representatives of Smith Barney and the Pension Fund's Investment Managers on a number of occasions to review the management and performance of the Pension Fund's investment portfolio held through the custodial account at Credit Suisse. As examples, attached as Exhibits 69, 70 and 71 to the Appendix of Exhibits are true and accurate copies of Minutes of Meetings to Review the Performance of the Investment Managers for the Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip, dated November 18, 1999, November 20, 2000, and December 1, 2000, respectively.

49.    In addition, I received from Smith Barney on a regular basis copies of reports summarizing the Pension Fund's investments and of the funds that the Fund has maintained at Credit Suisse. As an example, attached as Exhibit 72 to the Appendix of Exhibits is a true and accurate excerpt from Smith Barney's June 30, 2005 report concerning the performance of the Pension Fund's investments.

The Pension Fund Has Been
Referred to Using Various Names

50.    Over the last forty years, the Pension Fund has been referred to in various documents, correspondence and agreements using various names. The Insurance and Pension Law refers to it as the "Insurance and Pension Fund," and the Implementation Agreements entered into by the State of Israel, the PNA and the Pension Fund refer to it as the "Pension Fund of the Civil Administration Employees in the Gaza Strip" and as "The Pension Fund of the State Administrative Employees." Other documents and agreements use a variety of other names: "The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip," "The Palestinian Pension Fund of the State Administrative Employees," the "Palestinian Pension

23

Fund," the "Pension Fund," the "Gaza Insurance and Pension General Corporation," and similar variations. At times, these names are used interchangeably to refer to the Pension Fund and/or to the Administration of the Pension Fund. (*See* Ex. 13 Item 5 (06/11/1996 Board minutes).) These variations in names are, at times, the result of different translations of documents from Arabic to Hebrew and/or to English and the sometimes tumultuous political and social upheaval that the Pension Fund has had to endure in the Gaza Strip.

51.     These various names all refer to one and the same insurance and pension fund — the Pension Fund of which I am the General Director. That Pension Fund received the transfer of funds from Israel under the Oslo Agreements, and owns the assets at issue in this litigation. That Fund is governed by the legal structure originally established in the Decision of Law Number (8) for 1964 implementing the provisions of the Insurance and Pension Law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.

Executed on April ___, 2007

_____
Farouk M. A-Franji

ny-744952

24

I, the Notary Public of Gaza, hereby authenticate the truth of the signature of Mr. Farouq Momtaz Al Franji

Seal of :    The Palestinian National Authority
             Chief Justice Council
             Gaza First Instance Court
             April 4th 2007
             The amount: _____
             The receipt: 13059/4

Seal of:     The Palestinian National Authority
             Chief Justice Council
             Notary Public of Gaza

Seal of:     Notary Public of Gaza
             Kamal Issa Radi

NIS 48 Court fees.

# Exhibit 2



**TRANSPERFECT**
T R A N S L A T I O N S

City of New York, State of New York, County of New York

I, Jin Young Lee, certify that the following is, to the best of my

knowledge and belief, a true and accurate translation from Arabic into English

of the following: 'Decision of Law Number (8) for 1964; Insurance and

Pension Law; and the Executive Charter of the Insurance Pension Law (as

amended through May 1999).

ATLANTA
BOSTON
BRUSSELS
CHICAGO
DALLAS
DENVER
FRANKFURT
GENEVA
HONG KONG
HOUSTON
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MUNICH
NEW YORK
PARIS
PHILADELPHIA
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
WASHINGTON, DC

Jin Young Lee

Sworn to before me this

30th day of August, 2005

Signature, Notary Public

HEATHER BOSLEY
Notary Public – State of New York
No. 01BO611'6856
Qualified in NEW YORK County
My Commission Expires OCT 12, 20__

Stamp, Notary Public
State of New York

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016  T 212.689.5555  F 212.689.1059  WWW.TRANSPERFECT.COM

PPF 0025646

DECISION OF LAW NUMBER (8) FOR 1964

To issue Insurance and Pension Law for the Employees, Workers and Laborers of the Public Administration, Municipal and Rural Councils, and the Department of Islamic Waqf at Gaza Strip*,

**The Executive Council:**

Having reviewed Article (28) of the Constitutional System for Gaza Strip dated 03/05/1962 and Order Number 311 of 1954 with respect to the establishment of a Insurance Fund and a Savings Fund for all employees of the General Administration and;

Having considered the laws and regulations related to affairs of the employees at this Administration;

**Has decided**

Article 1

To implement the provisions of the attached Law with respect to insurance and pensions for civil Employees, Workers and Laborers of the Public Administration, Municipal and Rural Councils, and the Department of Islamic Waqf at Gaza Strip.

Article 2

In application of the provisions of this Law and attached Law the following will mean:

    1- Public Treasury: the Treasury of the General Administration of the Strip.
    2- Board of Directors: Board of Directors of the Insurance and Pension fund.
    3- Office: Office of Insurance and Pension Fund.
    4- Beneficiaries: employees, workers and laborers mentioned in Article (1) of the attached Law.

---

\* Published in the Palestinian Gazette (extra ordinary issue) dated 18 July 1964.

3

PPF 0025647

5-  *Salary: salary or basic wage in addition to expense benefits, excluding children's benefits, and is treated as salary or deducted wage, monthly salary is calculated for daily wage workers as wages for 26 days, annual salary with respect to calculating insurance and award is the monthly salary calculated as previously mentioned multiplied by twelve.

6-  Interest: compound interest.

Article 3:

Rights and duties of the insurance and savings funds of the employees of the General Administration, established by the aforementioned Order Number 311 for 1954, will be transferred to the Insurance and Pension Fund established in accordance to the attached Law, without violation of provisions of Article (4).

Article 4:

Funds paid by the Employees, Workers and Laborers to the aforementioned savings fund and its interest till the date this Law comes into effect will be deducted from the sums due for their membership for their past period of work in accordance with the provisions of Article (5). Those who do not wish to pay membership for previous periods of work, the monies paid to the aforementioned fund and its interest will be transferred to a special account in the Insurance and Pension Fund and would be payable to him upon end of service, or to whom the insurance sum is paid in case of his death, with a compound interest of 3% annually from the date of implementing this Law till date payment is due.

---

* Based upon order 593/78, the expression salary will be explained as: ("Salary": coordinated payment, education benefit, unified occupational raise and family raise, that is paid to the employee for a full month of work, determined every now and then by the official at the government agency; "coordinated payment" salary minus academic benefit, unified occupational raise, and spouse raise as determined from time to time by the official at the government agency;

"Official at government agency" ** - as defined in the original order "academic benefit" special raise paid to the employee;

"Unified occupational raise"- the raise that is paid to some employees "spouse raise"- the raise paid for one wife;

"Total gain"- coordinated payment academic benefit and spouse raise.)

**Note: The original order is Order 515/75 and the definition of the official at the government agency is: the official at the government agency – who is appointed as responsible for all that is related to the appointment and hiring of employees at the public sector (Gaza Strip) (Number 53) for 5727-1967.

4

PPF 0025648

The balance of the aforementioned insurance fund and remaining balances of the savings fund are deducted from the sums due from the public treasury in return for calculating the previous period of work for the beneficiaries according to the provisions of Article (7).

Article 5:

Previous work periods that were calculated in the savings system as of 05/16/1948 will be added for the beneficiaries in service on the date of beginning work with this Law who were under the system of the insurance and savings funds established by aforementioned Order Number 311 for 1954, provided the beneficiary had not received the treasury portion for saved funds. If he had received it, then in order to add that period it should be repaid in addition to an interest rate of (4.5%) calculated from the date of receipt till the date of refund. Those entitled may participate for the aforementioned service period; those memberships are estimated at a quarter of the estimated funds according to attached Table 4 and based on the salary and age on June 1st, 1964.

Sums mentioned in the two previous paragraphs are paid either in one installment within six months from the date this Law is put into effect or as monthly installments till reaching the age of sixty in accordance to the provisions of the second paragraph of Article (60) of the attached Law.

Those with a minimum of ten years in his calculated pension period and who are over fifty years of age to pay the sums due in installments through the exchange Table in accordance with the provisions of the third paragraph of Article (60) of the attached Law. Installments due will be deducted as of the salary for January 1965. Service period will be calculated in pension upon the beginning of deductions.

If the service of the beneficiary ended without paying all the due installments, the remaining installments will be deducted from his pension, or if he was entitled to a bonus and had elected to pay in installments till reaching the age of sixty, the remaining installments will be deducted from his bonus. In this case he would be considered a member for his previous service period, or the sums he paid will be refunded to him with an interest of (3%) till the date of leaving service while considering him a non-member for that period.

5

PPF 0025649

Yet if had chosen to pay by installments though the exchange Table and his service ended without entitlement to a pension, the installment paid would be refunded with the aforementioned interest rate while abolishing all effects resulting from his payment of those installments*.


** Article 6:

An exception to the provisions of Articles (16, 23) of the attached Law, the calculated service period is included in the pension according to the provisions of the previous Article in settling pension or bonus by half the percentages mentioned in the aforementioned Articles if the beneficiary paid the membership fees mentioned in the second paragraph of the previous Article.

If the beneficiary did not pay the needed membership fees, that period would be included in the calculation of pension or bonus by a quarter of the percentages mentioned in the two previous Articles.


*** Article 7:

The public treasury pays to the account of every beneficiary for his previous service period calculated in the pension according to the provisions of Article (5) sum estimated at a quarter of the estimated sums according to attached Table 4 based on his age and salary on the first of June 1964. Those sums are paid to the fund either in one installment within a year from the date this Law is put into effect or by bonds to the public treasury. The executive council decides the payable date and interest at (4.5%) from the date of the end of that period till the due date.

---

* See additional provisions of Decision of Law Number 1 for 1967

** Amended by Decision of Law Number 9/65 as well as Decision of Law Number 16/66 to become:

(Article 6: as an exception to the provisions of Articles (16, 23) of the attached Law, the calculated service period is included in the pension according to the provisions of the previous Article in settling the pension or bonus by 7/8 the percentages mentioned in the aforementioned Articles if the beneficiary has paid the membership fees mentioned in the second paragraph of the previous Article. If the beneficiary did not pay the required membership fees, that period would be included in the calculation of pension or bonus by 5/8 of the percentages mentioned in the two previous Articles)

- "The latest amendment was put into effect on 06/27/1966".


*** Amended by Decision of Law Number 9/65 as well as Decision of Law Number 16/66 to become: (Article 7: The public treasury pays to the account of every beneficiary for his previous service period added in the pension according to the provisions of Article (5) sum estimated at 5/8 of the estimated sums according to attached Table 4 based on his age and salary at the beginning of the month before the date of benefiting from the provisions of this Law. Those sums are paid to the fund either in one installment within a year from the date this Law is put into effect or by bonds to the public treasury. The executive council decides the payable date and interest at 4.5% from the date of the end of that period till the due date.)

- "The latest amendment was put into effect on 06/27/1966, and for additional provisions see Article 3 of Decision of Law Number 1 for 1967."

6

PPF 0025650

\* Article 8:

The Employees, Workers and Laborers of the Public Administration, Municipal and Rural Councils, and the Department of Islamic Waqf in service since the date this Law was put into effect will fall under the provisions of the attached Law unless stating their desire otherwise in writing within three months from implementation date. They may not reverse that desire.

In that case, any fees deducted will be refunded to them; the councils or the Waqf Department will also be refunded monies they may have paid to their accounts in the fund.


Article 9:

The employee department at the authorities implementing the provisions of the attached Law should acquire the official document proving the age of the beneficiary. If such document is not presented, the beneficiary is then transferred to the medical office to determine his/her age within three months from the date of this Law coming into effect, otherwise officials at the employee departments may be referred to the penal courts in accordance with the provisions of Article (62) of the attached Law. The decision of the medical office on the matter is final, even if a birth certificate or any other official document is found at a later date. The insurance sum stated in Article (10) of the attached Law will not be payable if the official document proving the age has not been presented or if the age of the beneficiary was not determined by the medical office in accordance with the provisions of the previous paragraph.


Article 10:

As an exception to the provisions of the first paragraph of Article (12) of the attached Law, employees, workers and laborers in the service on the date this Law comes into effect will continue working for a maximum period of a year or till reaching the age of sixty, whichever is first, without violation of the provisions of the second and third paragraphs of the aforementioned Article.

---

\* Article 8 was suspended by the decision in Law Number 13 for 1964. — The suspension of the Article was cancelled by Law Number 11 for 1965.

7

PPF 0025651

Article 11:

Aforementioned Decree Number 311 for 1954, amending legislation, and all that contradicts the provisions of this Law will be abolished.

Article 12:

This Law will be published in the Official Gazette and put into effect as of the first of July 1964.

The executive charter of the attached Law is issued by a decision by the Governor General after being ratified by the executive council.

Issued in Gaza 30 July 1964

General

Youssef Abdullah Al Agroudi

Governor General of Gaza Strip and President of the Executive Council

8

PPF 0025652

### INSURANCE AND PENSION LAW

For the Employees, Workers and Laborers of the Public Administration, Municipal and Rural Councils, and Department of Islamic Waqf.

### PART ONE

Determining Beneficiaries of Provisions of the Law, Establishment and Management of the Fund

\* Article 1: The following sects will benefit from this Law:

> (a) The civil Employees, Workers and Laborers of the administration, officers, soldiers, and police officers whose salaries are linked within part one to the budget of the administration, in addition to the Employees, Workers and Laborers of the Insurance and Pension Fund.

> (b) The Employees, Workers and Laborers of the administrations whose salaries are paid from any part of the budget of from assistance.

> (c) The Employees, Workers and Laborers of the city and village councils.

> (d) The Employers, Workers and Laborers of the Department of Islamic Waqf. Casual Workers shall not benefit from provisions of this lawThe executive council may, after seeking the opinion of the Insurance and Pension Fund Board of Directors, decide to include other categories to those benefiting from the provisions of this Law.

\*\* Article 2:

There will be established at the Governor General's Administration an Insurance and Pension Fund for the categories benefiting from the provisions of this Law, the Insurance and Pension Administration will be in charge of managing it and will be known as the Insurance and Pension Fund. It will have a legal entity and a special budget attached to the general state budget, and will be represented, with regard to its relations with other entities, by the Fund's Chairman of the Board.

---

\* See the Decisions of the Executive Council Number 15 for 1964, Number 2 for 1966, and Number 1 for 1967.

\*\* Has been amended by Article 4 of Law Number 4 for 1996 to become (Article 2 - There will be established at the Governor General's Administration an Insurance and Pension Fund for the beneficiaries according to the provisions of this Law. The Insurance and Pension Administration will be in charge of managing it and will be known as the Insurance and Pension Fund. It will have a legal entity and a special budget attached to the State budget, and will be represented by the Chairman of the Board of the Fund, with regard to its relations with others. The decisions of the Board of Directors of the Fund are considered in effect and must be implemented from the dates decided by the Board of Directors.)

- "The amendment was put into effect as of 01/01/1996."

9

PPF 0025653

The decisions of the Board of Directors are not effective till ratified by the executive council.

\* Article 3:

A Board of Directors will be established for the aforementioned Insurance and Pension Fund, and will be formed as follows:

Director of Finance and Economy                    President

Director of Legal Affairs

Director of Civil Affairs                                    Members

Director of the Insurance and Pension Fund

The Board will be held by an invitation from its President, and its meeting will not be considered legal unless attended by a minimum of three members. Decisions are reached by a majority of those present and in the event of a tie in votes, then the vote cast by the President shall be the deciding vote on the decision.

Article 4:
The Board of Directors will be responsible for the following:
1- Drawing a plan to invest the monies of the fund and distribute investments on various sectors.
2- Setting the regulations necessary for the administration to perform the activities it does and achieve the purposes asked of it.
3- Preparing the annual draft budget of the administration.

---

\* Law Number 7 for 1995 stated the following (Article 1 – the Insurance and Pension Fund, which has been stated in the Decision of Law Number (8) of the year 1964, will have a Board of Directors that will includeNumber:

1- Minister of Justice

2- Minister of Finance

3- Minister of Civil Governance

4- Director General of Insurance and Pensions Affairs

5- Director General of the Employees Department

6- Representative of the Retired Employees Association

The Board of Directors will hold meetings upon the invitation of its Chairman and any meeting cannot be considered legal until at least four of its members attend it. The decisions will be issued by majority of the attendants, and when the votes are equal, the side on which the chair is shall win"

Article (2) - Article (3) of the mentioned Law (8) for 1964 shall be cancelled and any rule that contravenes this Law.

10

PPF 0025654

4– Authenticating final accounts before presenting them to the concerned agencies.
5– Issuing internal regulations of the administration.
6– Suggesting draft laws for insurance and pensions.
7– Testing experts and determining their fees without being bound by the rules set for the employees of the General Administration.
8– Setting special rules for bonuses for the employees of the administration and others in return for the work they do for the administration.
9– Reviewing the reports presented to the council about the financial situation of the fund or any thing else related to the work of the administration.

## PART TWO

### Accounts and Financial Status

Article 5:

The administration falls under the rules governing the General Administration with respect to the management and handling of fund monies and accounts.

Article 6:

The Director of the Administration will present the following to the Board of Directors within the three months following the end of the fiscal year:

(a) The final budget of the fund prepared according to the regulations followed in commercial projects, supported by detailed statements on the items of assets and deductions.
(b) A general income and expenses account.
(c) A general report on the activities of the fund, its state, and investment aspects for its reserves. The Chairman of the Board of the Administration presents to the executive council the final accounts within a month from the date of its authentication.

Article 7:

The financial situation of the fund is checked at least once every five years beginning on the date this Law is put into effect, and is done by a technical expert chosen by the Board of Directors. This check should include the estimation of the value of the existing commitments, if it became clear that there is a deficit in the monies of the fund and various reserves were not sufficient to settle it, the public treasury is committed to settle it. Yet if it became clear from the estimation that there is excess money, it is transferred to a special account, and should only be used, with the approval of the Board of Directors, for the following purposes:

11

PPF 0025655

 (a) Forming a general reserve and special reserves for various purposes.
 (b) Settling or reducing any debt payable to the fund by the general treasury within the limits of the previous paid deficit according to the previous paragraph.

In case of a deficit, the expert should explain its reasons and suggested mean to avoid it.

### PART THREE

#### Fund Resources

* Article 8: the monies of the fund are comprised of the following resources:

First: the membership fees deducted monthly at (10%) from the salaries of those benefiting from the provisions of this Law.

Second: the sums paid by agencies committed to paying the salaries of the beneficiaries at (12.5%).

Third: the revenue from the investment of the fund monies.

Fourth: other revenues resulting from the activity of the administration.

Article 9:

If the salary was reduced for any reason, the deduction would be based on the reduced salary and no membership fees are paid on the periods for which no salary was payable.

---

* Was amended by Decree Number 593/78 to become (Article 8- the monies of the fund are comprised of the following resources:

1- the membership fees deducted monthly at (10%) from the total income of those benefiting from the provisions of this Law;

2- the sums paid by agencies committed to paying the total income of the beneficiaries at (12.5%).

Third: the revenue from the investment of the fund monies.

Fourth: other revenues resulting from the activity of the administration.)

- "The amendment was put into effect as of 10/31/1978."

12

PPF 0025656

PART FOUR

Insurance and Pensions System

**Chapter One**

Entitlement to Insurance Funds

\* Article 10:

Insurance sums paid by the fund to the beneficiaries or those entitled on their behalf are payable in accordance to the provisions of this Law in the following two cases:

First: The death of the beneficiary while in service before reaching the age of sixty, and in this case, the insurance sum is paid to legal heirs, unless the beneficiary had appointed other beneficiaries prior to his death, then the insurance sum is paid to them.

Second: The dismissal of the beneficiary from service before reaching the age of sixty for being unfit, health wise, for the service in case of a full disability to perform work. It is conditional to deserve the insurance sum in this case that dismissal be based on a decision made by the general medical office prior to the dismissal decision.

The insurance sum will not be payable unless the official document proving the age of the beneficiary is presented or the age of the beneficiary has been determined by the general medical office.

---

\* Was amended by Decree Number 596/79 to become (Article 10 - Insurance sums paid by the fund to the beneficiaries or those entitled on their behalf are payable in accordance to the provisions of this Law in the following two cases:

First: The death of the beneficiary while in service before reaching the age of sixty, and in this case, the insurance sum is paid to legal heirs, unless the beneficiary had appointed other beneficiaries prior to his death, then the insurance sum is paid to such beneficiaries.

Second: (a) The dismissal of the beneficiary from service before reaching the age of sixty for being unfit, health wise, for the service in case of a full disability to perform work. It is conditional to deserve the insurance sum in this case that dismissal be based on a decision made by the general medical office prior to the dismissal decision.

(b) For purposes of paragraph (a), it is also considered a full disability to perform work, the inability to work during an accumulated period within a specific duration in accordance to what is mentioned in the instructions issued by the official according to his guide on the matter regarding the appointment and hiring of employees in the governmental sector (Gaza Strip and Northern Sinai) (Number 53) for 5727-1967, provided a decision to that effect is issued by the general medical office as was mentioned in this Article. The insurance sum will not be payable unless the official document proving the age of the beneficiary is presented or the age of the beneficiary has been determined by the general medical office.)

– "The amendment was put into effect as of 01/23/1978."

13

Article 11:

The insurance sum payable by the fund in the previous Article will be equal to a percentage of the annual income depending on age, according to attached Table Number (1). In determining age, parts of a year will be considered as a full year.

## CHAPTER TWO

### Entitlement to Pension and Bonuses and Means of Settlement

Article 12:

The service of the beneficiaries ends in accordance to the provisions of this Law at the age of sixty.

It is possible to keep the beneficiary in service or re-appoint him/her after reaching retirement age by a decision from the governor, provided that the period of the beneficiary remaining in service is determined in that decision.

The Governor General may delegate a person to extend the service of employees and workers or to re-appoint them after reaching retirement age.

Article 13:

The period of service that may be calculated in the pension is the period that was spent in serving the sector, and during which the beneficiary of this Law was working, as employee, worker, or laborer, at places implementing its provisions after dismissing the periods of suspension without pay as well as the periods of imprisonment for policemen.

In calculating service periods when settling pension or bonus, parts of months are considered full months.

\* Article 14:

The beneficiary deserves a pension upon the end of his service once his service period calculated in the pension reaches a minimum of twenty years.

---

\* Was amended by Decree Number 796/83 to become: (Article 14: - (a) The beneficiary deserves a pension upon the end of his service once his service period calculated in the pension reaches a minimum of twenty years.

(b) Despite what was mentioned in paragraph (a) the beneficiary deserves a pension after a minimum of fifteen years if the end of service was due to one of the following reasons:

1- Reaching retirement age        2- dismissal by an official's decision

3- Cancelling the post or savings.

14

PPF 0025658

(c) Paragraph (b) does not apply to the beneficiary if an official dismissed him from service as a result of absence from work for more than fifteen days.

(d) The beneficiary mentioned in paragraph (c) would be considered, in rights, as one resigning from his position.

(e) In this Article: "Official" -- according to his reference in the matter regarding the appointment and hiring of employees in government offices (Gaza Strip and Northern Sinai) (Number 53) for 5727-1967.)

- "The amendment is put into effect as of 02/15/1983."

PPF 0025659

The beneficiary shall deserve a pension after a minimum of fifteen years if the end of service was due to one of the following reasons:

1- Reaching retirement age

2- Dismissal by an official's decision

3- Cancelling the post or savings

\* Article 15:

The pension is settled on the basis of the monthly mean of salaries payable to the beneficiary in the last two years of his service that is calculated in the pension according to the provisions of this Law. In calculating those two years, the month in which the service ends is considered a full month.

If the period of two years included periods during which the beneficiary did not receive his/her salary in full or in part, the mean will be calculated according to the full salary or wage.

The salary mean for daily wage workers is worked out on the basis of the sum of wages payable to the worker during the two years according to the salary category and 26 days to be considered a full month, the total is then divided by twenty four months.

---

\* It was substituted by Decree Number 515/75 to become (Article 15 – (a) Pension is settled on the basis of the salary of the last month paid to the beneficiary during his service period calculated in the pension according to the provisions of this Law, taking into consideration the changes that may take place every now and then to the salaries of the employees in the same level and seniority in the government offices in the area.

(b) If the salary ladder of government employees in the area differed at one time or another from the salary ladder that was present at the time the beneficiary retired from service, the last salary will be settled according to the salary ladder applied at the beginning of the month at the time, with the coordination decided by the fund administration upon the recommendation of the government official.

(c) If an incident took place during a certain month that would lead to the increase or decrease of the pension of the beneficiary or to temporary stop paying it or to cancel the suspension of payment, this incident would not be taken into consideration for purposes of paying pension for that month)

Note: (It is possible to object to the Decree issued by Article 15 "b" of the law before the Objections Committee. See Article 8 of Decree Number 515/75.)

- "The amendment was put into effect as of 02/01/1974."

16

PPF 0025660

\* Article 16:

> Pensions are settled as part of fifty parts of salary mean calculated according to the provisions of the previous Article, for every year of service calculated in the pension\*\*.

\*\*\* Article 17:

Periods of transfer, academic leaves without pay, army drafting, assignments, ordinary and emergency leaves without pay that fall after the appointment date are included in the periods calculated in the pension. Fees listed in Article (8) are later paid for those periods with the exception of army drafting period.

---

\* Was amended by Decree Number 515/75 then amended by Article "5"of Law Number 4 for 1996 to become:

(Article 16: Pensions are settled as part of forty parts of salary mean calculated according to the provisions of Article "15," for every year of service calculated in the pension.

- "That amendment applies to all entitled to pensions."

\*\*By Decree Number 515/75 a new Article carrying the number 16A was added – it states the following:

(16A – the following types of installments are paid in addition to the pension:

1) Family bonus paid to the beneficiary or his relatives as long as they deserve the pension.

2) Personal bonus of 125 Lira monthly[x] or of another value determined by the head of the area from time to time through a published announcement, it is paid to the beneficiary for the duration of his life and as long as he is entitled to a pension.)

[x] Note: personal bonus was increased several times and has reached 300 Shekel according to the latest amendment by a Presidential Decree, as of 11/01/1995.

\*\*\* Amended by Decree Number 840/84 to become (Article 17 - Periods of transfer and leave are included in the periods calculated in the pension, taking into consideration the text of Article 54 and 54A, provided that the fees listed in Article (8) are later paid for those periods)

- "The amendment was put into effect as of 01/10/1984."

17

PPF 0025661

\* Article 18:

Without violation of the provisions of Article (20), pension is payable in case of dismissal as a result of being unfit, health wise, or death regardless of the service period – the pension is tied at a minimum of (40%) of the salary mean mentioned in Article (15) or on the bases of the service period of the beneficiary that is calculated in the pension in addition to three years, whichever is bigger, provided that the added period does not exceed the remaining period for the beneficiary to reach retirement age.

\*\* Article 19:

Pension is settled in case of dismissal, death, or being physically unfit as a result of, or due to an accident during work, on the base of three quarters of the last salary regardless of the period of service. Any accident that may occur to the beneficiary on his way to and from work is considered an accident during or as a result of work.

Beneficiaries dismissed as a result of the aforementioned conditions or those benefiting on their behalf are given an additional compensation of (50%) of the value of the accrued insurance according to Article (10).

The executive charter sets the procedures to be followed to prove that the accident happened during or as a result of work.

---

\* Was amended by Decree Number 515/75 to become (Article 18 - Without violation of the provisions of Article "20", pension is payable in case of dismissal as a result of being unfit, health wise, or death regardless of the service period – the pension is tied at a minimum of 40% of the last salary mentioned in Article "15" or on the bases of the service period of the beneficiary that is calculated in the pension in addition to three years, whichever is bigger, provided that the added period does not exceed the remaining period for the beneficiary to reach retirement age.)

- "The amendment was put into effect as of 02/01/1974.

\*\* Was amended by Decree Number 515/75 to become (Article 19 - Pension is settled in case of dismissal, death, or being physically unfit as a result of, or due to an accident during work, on the base of 70% of the last salary according to its guide in Article 15 regardless of the period of service. Any accident that may occur to the beneficiary on his way to and from work is considered an accident during or as a result of work. Beneficiaries dismissed as a result of the aforementioned conditions or those benefiting on their behalf are given an additional compensation of 50% of the value of the accrued insurance according to Article 10.The executive charter sets the procedures to be followed to prove that the accident happened during or as a result of work.)

- "The amendment was put into effect as of 02/01/1974".

18

PPF 0025662

Article 20:

Taking into consideration the provisions of Article (18), the minimum for pension for the beneficiary in case of resignation according to the following:

(a) 50% of monthly salary or two pounds, whichever is less for those whose monthly salaries are less than 5 pounds.
(b) 40% of monthly salary or five pounds, whichever is less, for those whose monthly salaries are ten pounds or more.
(c) If the value of the pension for those entitled to a pension or the pensioners became less that fifty piaster monthly per beneficiary, its total would be raised to that value provided that the total awarded to the beneficiaries does not exceed the pension of the person they inherit.

Article 21:

Pension is reduced in case of resignation by a percentage that differs according to age, in accordance with attached Table Number 2, while preserving the provisions of Article (24).

* Article 22:

The maximum pension per month should not exceed three quarters of the salary mean mentioned in Article (15) or ninety pounds whichever is less.

** Article 23:

If the service of the beneficiary ended and his service period had not reached the level that gives him a right to a pension in accordance with the provisions of this Law, he/she would deserve a bonus calculated on the base of 15% of the annual salary for every year of service mentioned.

In any case other than reaching retirement age, no bonus is payable if the service period is less than three years.

---

* Was amended by Decree Number 515/75 to become (Article 22 – Despite what was mentioned in Article 16, the maximum pension per month should not exceed 70% of the sum mentioned in Article 15(A)).

- "The amendment was put into effect as of 02/01/1974"

** Was amended by Decree Number 2/66 and Decree Number 636/80 to become (Article 23 - If the service of the beneficiary ended and his service period had not reached the level that gives him a right to a pension in accordance with the provisions of this Law, he/she would deserve a bonus calculated on the base of 15% of the annual salary for every year of service mentioned. In any case other than reaching retirement age, no bonus is payable if the service period is less than three years. Yet if the employee ended his service before three years for any reason other that resignation or penal dismissal without receiving any other money by this Law, he/she will be paid a sum equal to the multiplication of the number of the months he worked and 10% of his gross salary for the last month of work).

- "The latest amendment was put into effect as of 03/05/1980."

19

PPF 0025663

**Article 24:**

The provisions stated in Article (21) regarding reducing pension in case of resignation do not apply to beneficiaries whose benefit of the provisions of this Law was suspended as a result of working, whether by appointment or election, in the legislative council, local councils, popular organizations, or companies in which the administration participates.

**Article 25:**

In calculating pension or bonus and insurance sum, the estimation of last salary includes the salary raise the beneficiary may have deserved even if the time of its payment had not begun.

### CHAPTER THREE

Eligible and not eligible to Pension

**Article 26:**

If the beneficiary or pensioner passed away, those entitled on his behalf have the right to pensions according to the rates and provisions set in attached Table Number 3.

Pensions in this case are paid as of the beginning of the month in which death occurred, unless the pensioner had received his pension in advance before the beginning of the month and passed away before that date, in this case, pension is paid to those entitled to it as of the beginning of the month following the death.

The following are meant by those entitled to a pension:

1- The widow of the beneficiary or pensioner.
2- His/her children or those supporting them from his/her brothers who have not reached the age of twenty-one at the time of death.
3- His/her children or those supporting them from his/her brothers who have reached the age of twenty one at the time of death and were in one of the academic stages that does not exceed university or higher education, in this case they would be considered entitled to a pension temporarily – till they reach the age of twenty or finish their studies, whichever date is closer in the latter case, payment continues till the end of the month of October of the year in which education ends.

PPF 0025664

Pension continues to be paid to students who have not reached the age of twenty-six during the academic year till the end of the month of June of that year.

When pension is cut for student in case (3) the pension is resettled and distributed on the remaining entitled people present at the time of death.

4-    His/her children or those supporting them from his/her brothers who are over the age of twenty one, and where at the time of death suffering from a health disability preventing them from earning their keep. The disability at the time of entitlement is proved by a decision from the general medical office, while taking into consideration the provisions of the last paragraph of Article (28).

5-    Widows, divorcees, and unmarried daughters and sisters.

6-    Parents:

For the mother to be entitled she should not be married to other than the deceased's father, also brothers, sister, and parents may not have private income at the time of death that equals or exceeds their deserved share of pension. If it was less that their deserved share, a pension of the difference is set for them. The absence of income and its value if present is proved by a declaration by the entitled person with an administrative certificate to support his/her declaration.

Article 27:

A widow's pension is stopped upon her marriage, and her right to a pension may be restored if she was divorced or widowed for the first time within ten years of the date of her marriage.

If the pension of the widow or parents was given to the children of the pensioner, only the part of pension that was not given is restored to her.

A widow may not combine her pension from her first husband and that from her last husband; in this case she is awarded the more beneficial pension.

Article 28:

Pension accrued to male children and brothers is suspended if they reach twenty one years of age, as an exception to that, pension continues to be paid to those entitled in the following cases:

1-    If the person entitled to the pension was a student in one of the academic phases that does not exceed university or higher education, that will continue till he reaches the age of twenty-six or finishes his education, whichever date is closer.

PPF 0025665

2- If he was suffering from a medical disability that prevents him from working, till this disability no longer exists, this condition is proved at the time of entitlement to a pension by a decision from the general medical office.

Brothers are deprived of pension if it was proved that they have an income equal to or exceeding the pension accrued to them. If it were less, they would be paid the difference.

### Article 29:

The pension of daughters and sisters is suspended upon their marriage, and mothers if they marry other than the deceased's father. A daughter or sister is given her deserved pension if she was divorced or widowed within a maximum of ten years from the date of marriage, or the date of death of the beneficiary or pensioner, whichever date is later. That without the violation of the rights of the remaining people entitled to a pension. If the daughter or sister has a private income, a sum equal to that income will be deducted from her pension, alimony is not considered income.

### Article 30:

A husband deserves, in case of the death of his wife, the share set in attached Table Number 3 if he suffered a medical disability at the time of her death that prevented him from earning his keep. The disability is proved by a decision from the general medical office.

It is conditional that he should not have a personal income at the time of death that equals or exceeds his deserved share of the pension.

If income is less than the pension deserved, his pension will be set at the difference between his income and pension, and in this case the remaining pension from the wife will be distributed on the beneficiaries according to the shares listed in the mentioned Table assuming the absence of a husband.

### Article 31:

Paying pension to those entitled to it on behalf of the beneficiary or pensioner will be suspended if they were hired at any job and their income from it was equal to or exceeds the pension they deserve, if the income was less than the deserved pension they will be paid the difference. The right to full or part pension resumes if all or part of their income was stopped.

### Article 32:

As an exception to the provisions of combining pension and income or two or more pensions stated in Articles (26, 28, 29, 30, 31), it is possible to combine in the following cases:

1- If the total does not exceed ten pounds monthly.
2- If the two pensions were deserved for both parents under the provisions of this Law, and the total share in both pensions does not exceed twenty-five pounds monthly.

22

PPF 0025666

3–  If the sum of the wife's salary, or her pension, or the pension she receives from her husband does not exceed twenty-five pounds.

If the sum exceeded the rate stated in the previous items, it will be paid to them from the later pension the value that completes the mentioned sum.

## CHAPTER FOUR

### Law of Entitlement

Article 33:

As an exception to the laws and Decrees governing the rules for denying pension or bonus, a beneficiary or pensioner may not be denied a pension or bonus except with a penal verdict within a quarter*.

A ruling to deny a pension to a pensioner may not be reached in accordance with the provisions of the first paragraph except for acts he did before leaving service.

The executive charter regulates the procedures for payment of pension or bonus, and to whom they should be paid in case the beneficiary or pensioner was in prison.

Article 34:

A request for pension, bonus, insurance, or any accrued sum should be made to the fund at a maximum date of two years from the date of the decision to terminate the service of the beneficiary or the death of the pensioner or the accruing of the money according to case, or the right to request it would cease. Requesting any of the aforementioned monies is considered inclusive of demanding the remaining accrued money at the fund.

The period mentioned would end for all the entitled people if one lodged a request at the designated time.

Article 35:

The right to claim a pension shall end if the owner does not cash that pension after three years from the date of notification of setting pension or from the date of the last payment. Sums that are not cashed are returned to the fund.

---

* See Decree Number 408/71 concerning the establishment of a punitive court.

23

PPF 0025667

CHAPTER FIVE

Return to Service

Article 36:

If the pensioner is returned to service at one of the agencies stated in Article (1) after this Law was put into effect, payment of his pension would cease during his period of employment.

Article 37:

If the pensioner is returned to service at one of the positions in which the employee benefits from the provisions of this Law, his period of service would be considered connected or separate at the time of settling his pension, whichever is more appropriate.

Article 38:

If he/she was returned to service after this Law has come into effect, at a position in which the employee, worker or laborer would benefit from its provisions, and he had not accrued a pension, he may calculate his following period of service in full or in part.

   (a) A period of service spent working under the provisions of this Law mentioned in Article (13).
   (b) Period of service spent on levels of administration budget after 05/15/1948 prior to the implementation of the provisions of this Law.

It is conditional to calculate that period for the beneficiary to request that within a maximum of six months from the date of his return, and in that case, he should pay sums estimated according to the attached Table Number (4), either in one payment or on installments according to the provisions of the second and third paragraphs of Article (60). Deduction of installments begins as of the salary of the second month after the end of that period.

If the beneficiary was dealt with according to the provisions of this Law during his previous period of service and his service ended in less than three years and he had not received a bonus for it, that period would be calculated in the pension without payment of any money for it, while taking into consideration the provisions of Article (54).

If the service of the beneficiary ended without paying the stated installments in full, the remaining installments would be deducted from his/her pension.

The settlement of the beneficiary's pension will be in either of the following methods whichever is best:

24

**PPF 0025668**

1- Pension is settled for the two periods of service in accordance to the provisions of Article (15) regarding them as a single unit.
2- Pension for the previous period of service is calculated according to Table Number (5) on the base of the sum the beneficiary has to pay according to the provisions of the first paragraph, and on the base of his age at the date of his return to service. The beneficiary will receive that pension in addition to his pension for the new period of service calculated according to the provisions of Article (15) and without being bound by the periods stated in Article (14).

Yet if the service of the beneficiary ended and the sum of both service periods had not reached the limit stated in Article (14), he deserves a bonus calculated by either one of the two following ways, whichever is better for him:

1- In accordance with the provisions of Article (23) for the sum of the two periods of service and on the base of his last salary, deducting the sum of the remaining installments from his bonus.
2- In accordance with the provisions of Article (23) for his new period of service, added to it the sum of monies previously paid for his former period of service, with an interest of (3%) till the date of the end of service.

25

PPF 0025669

CHAPTER SIX

Special Provisions

Article 39:

Pensions and bonuses that are settled according to the provisions of this Law are alone binding to the Insurance and Pension Fund. What is given in addition to it by laws or special decisions is the responsibility of the general treasury.

Article 40:

Medical examination is conducted on pension deservers in cases of medical disability according to the provisions of Articles (26, 28, 30) at the times set by the general medical office, the payment of pension will continue for the month during which an appointment was set for the medical examination on the pension deserver and the following month, pension will no longer be paid after that unless the state of disability continued.

Permanent right to pension will be established once the general medical office states the inability of recovery.

Article 41:

The Insurance and Pension Administration will temporarily pay part of the pension or bonus that is not to be disputed till the final settlement is reached.

Article 42:

Neither the department nor the person concerned may dispute the value of the insurance, pension, or bonus two years after the notification date to tie the pension permanently, or from the date of paying the bonus or insurance money, with the exception of re-settlement of the sum of insurance, pension, or bonus money due to an increase as a result of a final judicial verdict. Also financial errors that occur in calculation upon settlement, also they may not dispute the value of the insurance, pension, or bonus in the case of administrative decisions or settlements following the date of leaving service that would result in decreasing salaries, and that were originally taken to estimate the value of the insurance, pension, or bonus.

Article 43:

In case of cessation or cutting pension, the payment due for the month in which the reason for the cessation or cut took place will be paid as a full month, while taking into consideration the provisions of the first paragraph of Article (26).

In case the pension of some beneficiaries was paid to other beneficiaries, pension is retied from the beginning of the month following the date of that incident.

The executive charter determines:

      (a)  The system for the time and method of payment of pension.

26

PPF 0025670

(b) The authorities from which pension is paid without any deduction of fees for payment.
(c) The authorities from which pension is paid to those entitled to it upon their request other that those set in Item (b) in exchange for expenses resulting from the payment process.

### PART FIVE

#### Substituting Pensions

Article 44:

Pensioners may at the end of service request either payment of their pension in full or substituting money for part of their right to it, provided that the substituted part does not exceed (a quarter of the pension), and provided that the remaining part is not less, after substitution, than six pounds. Taking into consideration the provisions stated in this part.

The capital of the substituted pension is determined attached according to Table Number (6) and according to the age of the pensioner and his medical condition. Parts of a pound in the substituted part is increased to the nearest of half a pound according to the situation, provided the limits mentioned in paragraph one are not violated.

Article 45:

The person requesting substitution is referred to the general medical office for examination and final determination of the state of his health. The request is not accepted unless his health was good or average, and in the latter case, the medical office will add a number of years to the age of the person submitting the request according to his medical condition.

*Article 46:

Substitution will be considered valid from the date of acceptance of capital estimation and the installment will be subtracted in advance from the pension.

Article 47:

Those entitled to the pension of a pensioner, who has substituted part of his pension, will have their accrued sum settled as if their family member had not substituted any part of his pension.

Article 48:

Those entitled to the pension of a pensioner may not substitute their pension.

---

* Was amended by Decree Number 802/83 to become (Article 46 - Substitution will be considered valid from the date the value of the substitution was agreed upon, a sum equivalent to the percentage substituted from the pension will be deducted from it).

- "The amendment will come into effect as of 03/27/1983, yet the provisions of Article 46 do not apply to those who substituted by their pension prior to 03/27/1983." (Article 3 from Decree 802/83)

PPF 0025671

PART SIX

Payment of Loans with Bonus, Insurance, or Pension as Collateral

* Article 49:

The department may lend money to those benefiting from the provisions of this Law whose period of service is not less than five years. That may take place during their service and within the limits of the allocations set by the Board of Directors for that purpose and with the interest it sets provided it is not less than (4.5%) annually.

---

* Was amended by Decision of Law Number 30/65 and by Decision of Law Number 2/67 to become (Article 49 - The department may lend money to those benefiting from the provisions of this Law whose period of service is not less than three years, during their service and within the limits of the allocations set by the Board of Directors for that purpose and with the interest it sets provided it is not less than (4.5%) annually. The payment of those loans will be within the following limits:

1- Three months salary for those whose service periods are between three to five years, to be paid over one year.

2- Five months salary for those whose service periods are more than five years to ten years, to be paid over a maximum of two years.

3- Seven months salary for those whose service periods are more than ten years to fifteen years, to be paid over a maximum of three years.

4- Nine months salary for those whose service periods are more than fifteen years, to be paid over a period of maximum three years, provided that the age of the beneficiary does not exceed 57 years. If it exceeded that the given loan and its interest should not exceed the value of the sum payable in case of death at the end of the repayment period. The period of repayment should not exceed in any way the period remaining before reaching retirement age, also another loan may not be taken before settling the previous debt.

If the service of the beneficiary ended for any reason before finishing the repayment of the loan, the remaining balance will be deducted from the bonus, pension, or insurance due in case of his death or dismissal from service as a result of inability to work. The remaining balance of the pension payable to the heirs may not be deducted from except within the limits of the quarter, if there were no accruals to deduct the balance from, the fund will deduct from the revenue of the investment of its funds. The Board of Directors may reduce the value of loans to be given as well as the repayment period.)

- "The latest amendment was put into effect as of March 1st, 1967."

The payment of those loans will be within the following limits:

1- Two months of salary for those whose service periods are between three to five years.

2- Three months of salary for those whose service periods are more than five years to ten years.

3- Six months of salary for those whose service periods are more than ten years provided that the age of the beneficiary does not exceed 57 years. If it exceeded that the given loan and its interest should not exceed the value of the sum payable in case of death at the end of the repayment period.

PPF 0025672

The loan balance is repaid over a maximum period of a year for item (1), two years for item (2), and three years for item (3) upon the wish of the beneficiary.

The period of repayment should not exceed in any way the period remaining before reaching retirement age, also another loan may not be taken before settling the previous debt. If the service of the beneficiary ended for any reason before finishing the repayment of the loan, the remaining balance will be deducted from the bonus, pension, or insurance due in case of his death or dismissal from service as a result of inability to work. The remaining balance of the pension payable to the heirs may not be deducted from except within the limits of the quarter, if there were no accruals to deduct the balance from, the fund will deduct from the revenue of the investment of its funds. The Board of Directors may reduce the value of loans to be given as well as the repayment period*.

———————————————————————————————

\* Upon Decree Number 463/73 a new Article was added bearing the number "39A" stating the following:

(Article 49A – Despite what was stated in Article 49, the department may, with the approval of the head of the area and the recommendation of the retirement and insurance fund, grant loans to the beneficiaries according to the law of bonus for purposes of living and according to the conditions set by the retirement and insurance fund management).

- "The amendment was put into effect as of 05/03/1973."

PPF 0025673

PART SEVEN

Payment of Contribution and Funeral Expenses in Case of Death

Article 50

In the event of the death of one of the beneficiaries of the provisions of this Law, the authority he belonged to will continue to pay the net salary payable to him in his life without deducting the installments that may be on him. That will be for the month during which the death occurred and the two following months, at the times designated for payment of salary, out of the salary item or from budget savings at that authority. This payment will be made to the widow, if present; if more than one were present it will be divided equally between them, and yet in the presence of under age children or unmarried daughter other than the widow, they would deserve the same as their mother did if she had not died or divorced, the deserved money would be paid to the legal guardian if present, if not, it will be paid to the person managing their affairs.

In all cases, the amount paid should not exceed three months salary. If the beneficiary had cashed the salary of the month in which the death took place in advance, the salary of the two following months only will be paid. The fund is not responsible for the donations that are paid in accordance with the provisions of paragraph one.

Article 51:

In the event of the death of the pensioner, the department continues to pay the net monthly pension that was due to him in his life in accordance with the provisions of the previous paragraph, and the fund would be responsible for it.

* Article 52:

Every department should pay the funeral expenses of every beneficiary who dies in service, these expenses are estimated at a minimum of one month salary (five pounds) and a maximum of (twenty pounds), and the fund is not responsible for those expenses. The fund is responsible to pay the funeral expenses of every pensioner. These expenses are estimated at a minimum of one month's salary (five pounds) and a maximum of (twenty pounds).

Those expenses are paid immediately to whoever is proved to have paid them, whether it was the widow of the beneficiary or the widow of the pensioner or an adult member of the family, or any person providing proof of paying those expenses.

---

* Was amended by Article 6 of Law 4 of 1996 to become (Article 52 - Every department should pay the funeral expenses of every beneficiary who dies in service, these expenses are estimated at a minimum of one month salary (250) two hundred and fifty new Shekel, and the fund is not responsible for those expenses. The fund is responsible to pay the funeral expenses of every pensioner, these expenses are estimated at a minimum of one month salary (250) two hundred and fifty new Shekel and those expenses are paid immediately to whoever is proved to have paid them, whether it was the widow of the beneficiary or the widow of the pensioner or an adult member of the family, or any person providing proof of paying those expenses.)

- "The amendment was put into effect as of 01/01/1996."

PPF 0025674

PART EIGHT

General Provisions

Article 53:

The beneficiary may postpone the payment of due installments for his previous periods of service during the period for which he does not deserve a salary on in which he receives a lesser salary, provided that those installments are paid after that from the first full salary he receives, in accordance to the provisions stated in Article (60), yet in case of deposits, the mentioned installments will continue to be deducted from the reduced salary.

\* Article 54:

Membership fees and due installments are paid to the fund in accordance with the provisions of the law by the employees on loan according to the following conditions and situations:

    (a) For those on loan to departments within the sector, the department that pays the salary is responsible for deducting the membership fees and installments and paying them on time to the authority, that department would also be responsible throughout the loan period for paying its share according the item two of Article (8), those provisions apply to those loaned to authorities outside the sector if there were being paid their full salaries from their original working places.

---

\* Was amended by Decree Number 840/84 to become (Article 54 - Membership fees and due installments are paid to the fund in accordance with the provisions of the law by the employees on loan according to the following conditions and situations:

a- For those on loan to departments within the sector, the department that pays the salary is responsible for deducting the membership fees and installments and paying them on time to the authority, that department would also be responsible throughout the loan period for paying its share according the item two of Article (8), those provisions apply to those loaned to authorities outside the sector if there were being paid their full salaries from their original working places.

b- For other than those on loan to departments outside the sector – the payment of membership fees and installments is postponed till the end of the loan period, and the original working place of the employee on loan is responsible for paying the share mentioned in Article 8 for the duration of loan in one pay at the end of that period, also the employee on loan is responsible at the end of that period to pay the sums due to the fund as follows:

1- Insurance and pension fees due for the loan period, and are made as one pay within a year from the end of the loan period with an added interest of 4.5% annually from the date of the end of that period till payment date, or the pension and bonus for that period will be calculated at half the values mentioned in Articles (16, 23).

2- The installments of the previous periods and are made either in one payment according to the provisions of the previous item or as installments in accordance to the provisions of Article (60).)

- "This amendment was put into effect as of 01/10/1984."

PPF 0025675

b- For other than those on loan to departments outside the sector – the payment of membership fees and installments is postponed till the end of the loan period, and the original working place of the employee on loan is responsible for paying the share mentioned in Article (8) for the duration of loan in one pay at the end of that period, also the employee on loan is responsible at the end of that period to pay the sums due to the fund as follows:

1- Insurance and pension fees due for the loan period, and are made as one pay within a year from the end of the loan period with an added interest of (4.5%) annually from the date of the end of that period till payment date, or the pension and bonus for that period will be calculated at half the values mentioned in Articles (16, 23).

2- The installments of the previous periods and are made either in one payment or as installments in accordance to the provisions of Article (60).

The previous provisions apply for periods of assignment and academic leaves without pay, and the official mission period, as well as ordinary and emergency leaves without pay*.

---

* By Decree Number 840/84 two new Articles were added carrying numbers 54A and 54B stating the following:

(Article 54A – (a) Taking into consideration what came in paragraph "b", the provisions of Article 54(b) with the stated changes apply to the beneficiary who is on leave, provided he serves after his leave for a period equivalent or exceeding the duration of the leave.

(b) If the beneficiary does not return to service after the end of his leave, or if he did not end the service period according to paragraph (a), the period of leave is not included in full or in part in the periods calculated in the pension.

(c) The pension of the beneficiary who did not return to service at the end of his leave is settled on the base of the last salary he would have deserved at the last month in the leave the official, as defined in Article 10 of the Law, had approved.

(d) The pension of the beneficiary who has not ended the service period according to paragraph (a) is settled on the base of the last salary mentioned in Article 15, yet the period of the mentioned leave is not included in the period calculated in the pension.

(e) If the beneficiary paid his membership fee for the leave period and has not ended the service period according to paragraph (a), he has the right to redeem the sums he paid as it will be settled on the base of the last salary mentioned in Article 15 according to the value of that rent in the salary ladder at the date of payment.

(f) If an authority was responsible for paying the salary of the beneficiary and paid the membership fees for the duration of his leave without the beneficiary ending the service period according to paragraph (a), it would have the right to a refund of the sums it paid, as they would be settled on the base of the last salary that was paid to the beneficiary in accordance with Article 15 according to the value of that salary on the salary ladder at the date of payment.

(g) In this Article: "leaves" are academic leave without payment and ordinary leaves without payment.

Article 54b – (a) Membership fees are settled for loan periods and leave period in accordance with Articles 54 and 54A on the base of the last salary mentioned in Article 15 according to the value of that salary on the salary ladder at the date of payment.

PPF 0025676

(b) The fund administration may decide to pay membership fees for the leave period by monthly installment and according to the conditions it decides.)

- "This amendment was put into effect as of 01/10/1984, yet Articles 54A and 54B do not apply on the beneficiary who was on leave or loan at the eve of the tenth of January 1984." (Article 4 of Decree 840/84)

PPF 0025677

Article 55:

The Chairman of the Board of Directors may decide to overlook the violation of the times stated in this Law if that was due to justifiable reasons.

Article 56:

If the sum of the investment of fund money at any year was less than (4.5%), the general treasury would be responsible for paying the difference in investment yield, within a month of authenticating the general budget of the administration for the fiscal year following the authentication of the final accounts of the fund.

Article 57:

Membership fees and sums stated in Article (8) are excluded from the sums on which salary tax, what serves as salary tax, bonuses, and pensions are tied, and an exception from the provisions of the laws Decreeing stamp fees, forms, documents, certificates, printed matter, and all papers and requests related to this Law will be exempted from the fees and membership fees stated in Article (8).

Article 58:

Exchange capital, bonuses, pensions, insurance sums, donations, and funeral expenses that are paid in accordance with the provisions of this Law are exempted from all types of taxes and fees.

This exemption applies to all that is paid of those sums to the heirs of beneficiary or pensioner.

Article 59:

The executive charter determines the conditions and circumstances related to paying sums of insurance, bonuses, and pensions without being bound by the provisions of the state law on monies.

Article 60:

The division has the right to determine the sums that may be payable to the fund by the beneficiaries, pensioners, or those entitled on their behalf from a pension, bonus, or insurance sum, within a quarter.

This division may accept paying the sums payable to the fund by the beneficiaries present in the service or pensioners in installments for the remaining period till the age of sixty. The installments are estimated according to attached Table Number (7), and installment deduction is stopped in case of death or dismissal from service due to medical disability.

The beneficiaries who have a minimum service period of twenty years calculated in the pension, as well as pensioners may settle the monies owed by them to the fund in monthly installments for life as in the attached exchange Table Number (6), with exemptions

34

PPF 0025678

from the medical examination and without being bound by the provisions of Article (44, 45). The Exchange installments are collected as of the salary or pension of the month following expressing the desire to have that exchange. In determining age at that date, parts of a year are considered a full year. Deductions cease upon the death of the beneficiary or pensioner.

If the beneficiary chose one of the two settlement methods mentioned in the two previous paragraphs, he is committed to select the same method when dividing other sums owed to the fund during service into installments.

This division may also settle the sums payable to the fund from the monies that may be due the beneficiary, pensioner, or those entitled to as a result of settlements presuming the payment of the due sums in advance to complete this settlement.

Article 61:

Employees delegated by the Chairman of the Board of Directors may review and examine the documents and books related to the implementation of the provisions of this Law.

Official at the mentioned authorities should put all data needed for the examination process at those employees' disposal.

Article 62:

The Chairman of the Board of Director may refer any employee assigned to implement the provisions of this Law or the Decrees implementing it to the disciplinary court if he refused to implement or was negligent in the implementation. If a questioning of the aforementioned employee took place regarding the violations attributed to him and stated in the previous paragraph, the Chairman of the Board of Directors has the right to dispute the result of the questioning and transfer the employee to the disciplinary court – provided a decision to that effect is issued within two months from the date of informing the division of the aforementioned result.

In all cases, the official is responsible to settle the funds that were not paid to the fund as a result of his refusal or negligence with an interest rate of (4.5%) annually from the due date, also is responsible for paying the mentioned interest for the sums that were overdue to the fund at the times stated in this Law or its executive charter.

The Chairman of the Board of Directors may decide to ignore the collection of the interests stated in the previous paragraph within the limits and according to the laws put by the Board of Directors.

PPF 0025679

Article 63:

Fixed and movable assets of the fund and all its investment operations, regardless of their type, are exempted from all taxes, fees, and returns imposed by the administration or any public authority in the sector.

Article 64:

Without violating any more severe punishment Decree by the penal law, all those who have provided with ill intention incorrect information or have refrained with ill intentions from providing the data stated in this Law or its executive charter are punished by imprisonment for not more than a month and a fine of not more than a hundred pounds, or either punishment, if those actions resulted in obtaining the monies of the fund without right, while taking into consideration the provisions of the third paragraph of Article (62).

36

PPF 0025680

PART NINE

The Pensions of the Members of the Executive Council

\* Article 65:

As an exception from the provisions of Article (14), a member in the executive council deserves a pension once his service period calculated in the pension reaches a minimum of ten years.

If the council member has twenty years of service calculated in the pension, including a year as a member of the executive council or ten years including two years as a member of the executive council, his pension will apply according to the provisions of the law on the base of his service period calculated in the pension in addition to twenty five pounds, he will be allocated a pension equal to the sum, taking into consideration the provisions of Article (22).

If the conditions mentioned in the two previous paragraphs were not available, he/she would deserve a pension or bonus according to the provisions of the law, and based on his actual service period calculated in the pension.

The provisions related to decreasing pension in case of resignation do not apply to the members of the executive council.

---

\* Was amended by Decree Number 20/65 to become (Article 65 - As an exception from the provisions of Article (14), a member in the executive council deserves a pension once his service period calculated in the pension reaches a minimum of ten years. If the council member has twenty years of service calculated in the pension, including a year as a member of the executive council or ten years including two years as a member of the executive council, his pension will apply according to the provisions of the law on the base of his service period calculated in the pension in addition to twenty five pounds, he will be allocated a pension equal to the sum, taking into consideration the provisions of Article (22).

If the conditions mentioned in the two previous paragraphs were not available, he/she would deserve a pension or bonus according to the provisions of the law, and based on his actual service period calculated in the pension.

The provisions related to decreasing pension in case of resignation do not apply to the members of the executive council. Provisions related to the condition on age stated in item (3) of Article (49) do not apply to the members of the executive council.)

- "The amendment is put into effect as of 07/20/1965."

37

PPF 0025681

TABLE NUMBER (1)

Statement of Insurance Sum Percentage

| Age<br>Till Age | Insurance Sum<br>Percentage  % | Age | Insurance Sum<br>Percentage  % |
|---|---|---|---|
| 25 | 267 | 44 | 140 |
| 26 | 260 | 45 | 133 |
| 27 | 253 | 46 | 127 |
| 28 | 247 | 47 | 120 |
| 29 | 240 | 48 | 113 |
| 30 | 233 | 49 | 107 |
| 31 | 227 | 50 | 100 |
| 32 | 220 | 51 | 93 |
| 33 | 213 | 52 | 87 |
| 34 | 207 | 53 | 80 |
| 35 | 200 | 54 | 73 |
| 36 | 193 | 55 | 67 |
| 37 | 187 | 56 | 60 |
| 38 | 180 | 57 | 53 |
| 39 | 173 | 58 | 47 |
| 40 | 167 | 59 | 40 |
| 41 | 160 | 60 | 33 |
| 42 | 153 | | |
| 43 | 147 | | |

Note: when calculating a year, parts of a year are considered a full year.

PPF 0025682

TABLE NUMBER (2)

The Percentage of Decreasing the Pensions of Resigning Employees before Reaching the Age of Fifty-eight

| Age at Resignation | Percentage of Decrease in Pension |
|---|---|
| 45 years or less | 20% |
| 46 years – 50 | 15% |
| 51 years – 55 | 10% |
| 56 to less than 58 years | 5% |

Note: When calculating age, parts of a year are excluded

39

PPF 0025683

TABLE NUMBER (3)

| Case No. | Entitled | Percentages Accrued in Pension | | | |
|---|---|---|---|---|---|
| | | Widows | Children | Parents | Siblings |
| 1 | One or more widows, or a entitled husband and more than one child | 0.5 half | 0.5 half | - | - |
| 2 | One or more widows, or a entitled husband and one or more children | 0.5 half | Third | Sixth for one or two | - |
| 3 | One or more widows, or a entitled husband and one child | 0.5 half | Third | - | - |
| 4 | One or more widows, or a entitled husband and more than one child and entitled parents | Third | 0.5 half | Sixth for one or two | - |
| 5 | One or more widows, or a entitled husband and parents without children | 0.5 half | - | Sixth each | - |
| 6 | More than one child and parents without widows or entitled husband | - | 0.75 three quarters | Sixth for one or two | - |
| 7 | One child and parents without widows or entitled husband | - | 0.5 half | Sixth each | - |
| 8 | Parents without widows or entitled husband | - | - | Third for one or two | - |
| 9 | A brother or sister without widow, entitled husband, children or parents | - | - | - | Sixth |
| 10 | More than one brother or sister without widow, entitled husband, children or parents | - | - | - | Third equally |

PPF 0025684

Notes:

1- In case of the marriage or death of a widow after being entitled to a pension, her share is transferred to the children of the pensioner who were receiving pension at the time of her marriage or death, and is divided among them equally. Provided that the total amount due them does not exceed the percentages stated in case number (6) or case (7) according to the situation. This provision applies to the entitled husband in case of his death.

2- If what is given to the parents in case number (4) is less than a sixth as a result of an income, the rest is returned to the widow.

3- In the event of the death of one of the parents in case number (4), his/her share is transferred to the widow. If she had died or married, that share would be transferred to the children, provided that their allocated shares do not exceed the percentages stated in case number (6) and case number (7) according to the case while taking into consideration the provisions of Article (27).

4- It is conditional for the brothers and sisters to deserve a pension to prove that the person they're inheriting had supported them in his life.

41

PPF 0025685

TABLE NUMBER (4)

**Determining the Sums Accrued for Previous Service Periods**

**Calculated in the Pension**

| Age | Sum equivalent to every year of service calculated in the pension and for every one pound of the monthly salary | | Age | Sum equivalent to every year of service calculated in the pension and for every one pound of the monthly salary | | Age | Sum equivalent to every year of service calculated in the pension and for every one pound of the monthly salary | |
|---|---|---|---|---|---|---|---|---|
| Till | Pound | Mil | Till | Pound | Mil | Till | Pound | Mil |
| 20 | 2 | 100 | 34 | 2 | 100 | 48 | 2 | 380 |
| 21 | 2 | 100 | 35 | 2 | 100 | 49 | 2 | 421 |
| 22 | 2 | 100 | 36 | 2 | 100 | 50 | 2 | 464 |
| 23 | 2 | 100 | 37 | 2 | 100 | 51 | 2 | 509 |
| 24 | 2 | 100 | 38 | 2 | 100 | 52 | 2 | 558 |
| 25 | 2 | 100 | 39 | 2 | 116 | 53 | 2 | 610 |
| 26 | 2 | 100 | 40 | 2 | 137 | 54 | 2 | 665 |
| 27 | 2 | 100 | 41 | 2 | 159 | 55 | 2 | 725 |
| 28 | 2 | 100 | 42 | 2 | 184 | 56 | 2 | 789 |
| 29 | 2 | 100 | 43 | 2 | 211 | 57 | 2 | 858 |
| 30 | 2 | 100 | 44 | 2 | 241 | 58 | 2 | 933 |
| 31 | 2 | 100 | 45 | 2 | 273 | 59 | 3 | 015 |
| 32 | 2 | 100 | 46 | 2 | 306 | 60+ | 3 | 106 |
| 33 | 2 | 100 | 47 | 2 | 342 | | | |

42

PPF 0025686

Notes:

1- The sum accrued on the beneficiary returning to service is calculated according to the provisions of Article (38) as follows:

(a) The sum of the capital equivalent to the service period desired to add to the pension is determined on the base of age and salary at the date of re-appointment.

(b) In calculating age, parts of a year are considered a full year.

(c) The capital calculated according to this Table is approximated to the nearest pound by increase.

43

PPF 0025687

TABLE NUMBER (5)

Determining Monthly Pension Equivalent to Every 100 Pounds of the Capital the

Beneficiary is committed to Paying in Accordance to the Provisions of Article (38)

| Age at date of return to service | Monthly pension per 100 pounds of capital | | Age at date of return to service | Monthly pension per 100 pounds of capital | |
|---|---|---|---|---|---|
| 20 | 3 | 180 | 41 | 1 | 390 |
| 21 | 3 | 60 | 42 | 1 | 340 |
| 22 | 2 | 940 | 43 | 1 | 290 |
| 23 | 2 | 830 | 44 | 1 | 860 |
| 24 | 2 | 720 | 45 | 1 | 820 |
| 25 | 2 | 620 | 46 | 1 | 790 |
| 26 | 2 | 520 | 47 | 1 | 100 |
| 27 | 2 | 420 | 48 | 1 | 060 |
| 28 | 2 | 330 | 49 | 1 | 020 |
| 29 | 2 | 240 | 50 | | 980 |
| 30 | 2 | 150 | 51 | | 940 |
| 31 | 2 | 070 | 52 | | 900 |
| 32 | 1 | 990 | 53 | | 860 |
| 33 | 1 | 910 | 54 | | 820 |
| 34 | 1 | 840 | 55 | | 790 |
| 35 | 1 | 770 | 56 | | 760 |
| 36 | 1 | 700 | 57 | | 730 |
| 37 | 1 | 630 | 58 | | 700 |
| 38 | 1 | 570 | 59 | | 670 |
| 39 | 1 | 510 | 60+ | | 640 |
| 40 | 1 | 450 | | | |

When calculating age, parts of a year are considered a full year.

44

PPF 0025688

TABLE NUMBER (6)*

Capital per Substituted Pension of One Pound

| Age | For Life | | For 10 years | | For 20 Years | |
|-----|-------|-----|-------|-----|-------|-----|
| | Pound | Mil | Pound | Mil | Pound | Mil |
| 40 | 159 | 200 | 88 | 100 | 133 | 800 |
| 41 | 156 | 800 | 87 | 900 | 133 | 000 |
| 42 | 154 | 300 | 87 | 700 | 132 | 000 |
| 43 | 151 | 600 | 87 | 400 | 131 | 000 |
| 44 | 148 | 900 | 87 | 100 | 129 | 800 |
| 45 | 146 | 200 | 86 | 700 | 128 | 500 |
| 46 | 143 | 300 | 86 | 300 | 127 | 100 |
| 47 | 141 | 200 | 85 | 900 | 125 | 600 |
| 48 | 137 | 300 | 85 | 400 | 123 | 900 |
| 49 | 134 | 200 | 84 | 900 | 122 | 200 |
| 50 | 131 | 000 | 84 | 300 | 120 | 200 |
| 51 | 127 | 700 | 83 | 600 | 118 | 200 |
| 52 | 124 | 400 | 82 | 900 | 116 | 300 |
| 53 | 121 | 000 | 82 | 200 | 113 | 700 |
| 54 | 117 | 600 | 81 | 300 | 111 | 200 |
| 55 | 114 | 200 | 80 | 400 | 108 | 700 |
| 56 | 110 | 700 | 79 | 400 | 106 | 000 |
| 57 | 107 | 200 | 78 | 400 | 103 | 300 |
| 58 | 103 | 700 | 77 | 200 | 100 | 400 |

* Amended by Decree Number 802/83

See page (45)

PPF 0025689

TABLE NUMBER (6) CONTINUED

| Age | For Life | | For 10 years | | For 20 Years | |
|---|---|---|---|---|---|---|
| | Pound | Mil | Pound | Mil | Pound | Mil |
| 59 | 100 | 200 | 75 | 900 | 97 | 400 |
| 60 | 96 | 600 | 74 | 500 | 94 | 300 |
| 61 | 93 | 000 | 73 | 100 | | |
| 62 | 89 | 500 | 71 | 500 | | |
| 63 | 85 | 900 | 69 | 900 | | |
| 64 | 82 | 500 | 68 | 100 | | |
| 65 | 79 | 100 | 66 | 400 | | |
| 66 | 75 | 700 | 64 | 600 | | |
| 67 | 72 | 500 | 62 | 700 | | |
| 68 | 69 | 300 | 60 | 800 | | |
| 69 | 58 | 200 | 58 | 900 | | |
| 70 | 56 | 200 | 56 | 900 | | |

Notes:

1- When calculating age, parts of a year are considered a full year.
2- When calculating age, it should be taken into consideration the addition decided by the general medical office according to the medical condition of the employee requesting substitution. The result of the medical examination remains valid for completion of substitution procedures for a year from the date of the mentioned medical office report.
3- Substitution is not allowed for those whose medical condition is deemed unfit by the medical office.
4- Substitution is not allowed for those whose age, with reference to item (2), has exceeded 70 years with respect to substitution for life or for ten years, and sixty years for substitution for twenty years.

PPF 0025690

\* TABLE NUMBER (6) AS AMENDED BY DECREE NUMBER 802/83

**Substitution Sum in Shekel Equivalent to a Substituted Pension of One Shekel Per Month**

| Age | For Life | | For 10 years | | For 20 Years | |
|-----|----------|---------|--------------|---------|--------------|---------|
| | Males | Females | Males | Females | Males | Females |
| 40 | 2227.75 | 238.14 | 98.83 | 100.32 | 162.788 | 168.21 |
| 41 | 219.33 | 234.69 | 98.63 | 100.20 | 162.01 | 167.69 |
| 42 | 215.84 | 231.15 | 98.40 | 100.08 | 161.18 | 167.12 |
| 43 | 212.29 | 227.52 | 98.15 | 99.94 | 160.29 | 166.48 |
| 44 | 208.68 | 223.80 | 97.88 | 99.78 | 159.33 | 165.77 |
| 45 | 205.02 | 220.01 | 97.60 | 99.61 | 158.31 | 165.00 |
| 46 | 201.32 | 216.13 | 97.31 | 99.41 | 157.22 | 164.15 |
| 47 | 197.59 | 212.16 | 97.01 | 99.20 | 156.08 | 163.21 |
| 48 | 193.82 | 208.12 | 96.71 | 98.97 | 154.88 | 162.18 |
| 49 | 190.02 | 204.01 | 96.41 | 98.72 | 153.63 | 161.06 |
| 50 | 186.21 | 199.81 | 96.09 | 98.44 | 152.32 | 159.83 |
| 51 | 182.38 | 159.54 | 95.77 | 98.13 | 150.95 | 158.49 |
| 52 | 178.45 | 191.21 | 95.39 | 97.80 | 149.45 | 157.03 |
| 53 | 174.42 | 186.80 | 94.96 | 97.43 | 147.80 | 155.45 |
| 54 | 170.32 | 182.33 | 94.46 | 97.02 | 146.02 | 153.73 |
| 55 | 166.15 | 177.79 | 93.89 | 96.56 | 144.10 | 151.87 |
| 56 | 161.93 | 173.19 | 93.27 | 96.05 | 142.05 | 149.85 |
| 57 | 157.66 | 168.53 | 92.60 | 95.49 | 139.87 | 147.66 |
| 58 | 153.37 | 163.81 | 91.88 | 94.86 | 137.56 | 145.29 |
| 59 | 149.06 | 159.05 | 91.12 | 94.17 | 135.13 | 142.75 |
| 60 | 144.75 | 154.25 | 90.33 | 93.41 | 132.59 | 140.03 |
| 61 | 140.47 | 149.43 | 89.51 | 92.58 | | |
| 62 | 136.23 | 144.59 | 88.66 | 91.69 | | |

\* The amendment was put into effect as of 03/27/1983; see transitional provisions in Article 3 of Decree Number 802/83.

PPF 0025691

AMENDED TABLE NUMBER (6) CONTINUED

| Age | For Life | | For 10 years | | For 20 Years | |
|---|---|---|---|---|---|---|
| | Males | Females | Males | Females | Males | Females |
| 63 | 132.05 | 139.74 | 87.81 | 90.73 | | |
| 64 | 127.94 | 134.92 | 86.96 | 89.69 | | |
| 65 | 123.95 | 130.10 | 86.12 | 88.85 | | |
| 66 | 119.52 | 125.32 | 84.92 | 87.39 | | |
| 67 | 115.14 | 120.55 | 83.65 | 86.10 | | |
| 68 | 110.78 | 115.79 | 82.3 | 84.69 | | |
| 69 | 106.45 | 111.06 | 80.86 | 83.16 | | |
| 70 | 102.16 | 106.34 | 79.33 | 81.48 | | |

Notes:

1- When calculating age, parts of a year are considered a full year.
2- When calculating age, it should be taken into consideration the addition decided by the general medical office according to the medical condition of the employee requesting substitution. The result of the medical examination remains valid for completion of substitution procedures for a year from the date of the mentioned medical office report.
3- Substitution is not allowed for those whose medical condition is deemed unfit by the medical office.
4- Substitution is not allowed for those whose age, with reference to item (2), has exceeded 70 years with respect to substitution for life or for ten years, and sixty years for substitution for twenty years.

PPF 0025692

TABLE NUMBER (7)

**Determining Monthly Installments Deducted from the Salary or Wage if the Beneficiary chose to pay the sums he owes in installments according to the provisions of Article (60)**

| Age on date of beginning payments | Total installments to be paid in case of payment till reaching the age of sixty compared to one Pound of the sum due | | Age on date of beginning payments | Total installments to be paid in case of payment till reaching the age of sixty compared to one Pound of the sum due | | Age on date of beginning payments | Total installments to be paid in case of payment till reaching the age of sixty compared to one Pound of the sum due | |
|---|---|---|---|---|---|---|---|---|
| Till | Pound | Mil | Till | Pound | Mil | Till | Pound | Mil |
| 20 | 2 | 194 | 34 | 1 | 754 | 48 | 1 | 357 |
| 21 | 2 | 160 | 35 | 1 | 725 | 49 | 1 | 329 |
| 22 | 2 | 128 | 36 | 1 | 696 | 50 | 1 | 301 |
| 23 | 2 | 095 | 37 | 1 | 667 | 51 | 1 | 273 |
| 24 | 2 | 062 | 38 | 1 | 638 | 52 | 1 | 245 |
| 25 | 2 | 031 | 39 | 1 | 609 | 53 | 1 | 216 |
| 26 | 1 | 999 | 40 | 1 | 581 | 54 | 1 | 187 |
| 27 | 1 | 967 | 41 | 1 | 553 | 55 | 1 | 158 |
| 28 | 1 | 936 | 42 | 1 | 525 | 56 | 1 | 128 |
| 29 | 1 | 906 | 43 | 1 | 497 | 57 | 1 | 097 |
| 30 | 1 | 875 | 44 | 1 | 469 | 58 | 1 | 066 |
| 31 | 1 | 844 | 45 | 1 | 441 | 59 | 1 | 033 |
| 32 | 1 | 814 | 46 | 1 | 413 | 60+ | 1 | 000 |
| 33 | 1 | 784 | 47 | 1 | 385 | | 1 | |

Notes:

(a) When calculating age, parts of a year are considered a full year.

(b) To calculate the monthly installment, total installments due are divided on the number of full months between the date of commencing payment and the date of reaching the age of sixty.

(c) The value of the monthly installment resulting from the application of this Table is approximated to the nearest additional piaster.

49

PPF 0025693