# Exhibit I

1

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK:  TRIAL TERM PART 54

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

IN RE:  THE ESTATE OF YARON UNGAR BY AND THROUGH ITS
ADMINISTRATOR, DAVID S. TRACHMAN, DVIR UNGAR, MINOR, BY HIS
GUARDIANS AND NEXT FRIENDS, YISHAI UNGAR, MINOR, BY HIS
GUARDIANS AND NEXT FRIENDS, PROFESSOR MEIR UNGAR, JUDITH
UNGAR, INDIVIDUALLY AND IN THEIR CAPACITY AS LEGAL GUARDIANS
OF PETITIONERS DVIR UNGAR AND YISHA I. UNGAR, RABBI URI
DASBERG, et al...,

                        Plaintiffs

                      - against -

SWISS AMERICAN SECURITIES, INC. et al...,

                        Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. 102106 - 2006

                        May 18, 2006
                        111 Centre Street
                        New York, New York 10007


B E F O R E:   HON. SHIRLEY WERNER KORNREICH, Justice.


A P P E A R A N C E S:

JAROSLAWICS & JAROS
Attorneys for Plaintiffs
150 William Street
New York, New York
(212) 227-2780

BY:  ROBERT J. TOLCHIN, ESQ., of Counsel.

2

2    A P P E A R A N C E S:

3

      DUVAL & STACHENFELD, LLP
4     Attorneys for Defendant
      Swiss American Securities
5     300 East 42nd Street
      New York, New York 10017
6     (212) 692-5523

7    BY:   ALLAN N. TAFFET, ESQ., of Counsel.

8

      MORRISON & FOERSTER, LLP
9     Attorneys for The Palestinian Pension Fund
      for the State Administrative Employees,
10    In The Gaza Strip
      1290 Avenue of the Americas
11    New York, New York 10104
      (212) 468-8043
12    BY:   CHARLES L. KERR, ESQ., of Counsel.
      BY:   MARK D. MCPHERSON, ESQ., of Counsel.
13

14

15

16
                              Lester D. Isaacs,
17                            Official Court Reporter.

18

19

20

21

22

23

24

25

26

2

3                    THE COURT:    I have four motions in front of

4          me on this case and apparently there is a fifth, that

5          is across the street; am I correct?

6                    MR. KERR:    Your Honor, Charles L. Kerr.

7                    If I can lay it out for your Honor.    The

8          original return date of the notice of petition on the

9          turnover petition was returnable today.

10                    Our motion to dismiss or summarily dismiss

11          the petition is on today.    Plaintiffs motion under CPLR

12          408 for discovery in the turnover proceeding is on

13          today.

14                    Plaintiffs filed an Order to Show Cause to

15          strike two reply affidavits that we submitted in

16          support of our motion to dismiss.

17                    THE COURT:    Right.

18                    MR. KERR:    The other two motions that are

19          swirling around here, but are not here before you

20          today.

21                    THE COURT:    Right.

22                    MR. KERR:    We separately made a motion to

23          vacate the Sheriffs levy under CPLR 5240, and we did

24          that, your Honor, just to cover our bases as we will

25          explain today.

26                    If the Court dismisses the turnover petition,

1                              Proceedings

2    as we think they should, the Sheriff's levy will expire

3    and, therefore, that motion will become moot.

4              In addition, your Honor, we separately, we

5    appeared in the declaratory judgment action and again

6    made a motion to dismiss that action but a protective

7    motion.  Our motion was if the turnover proceeding is

8    to go forward, there is no need for the declaratory

9    judgment action.

10             However, if the court dismisses the turnover

11   petition, as we are asking for today, then that motion

12   also becomes moot, we will withdraw it.  And we will

13   answer and we will proceed in a declaratory judgment

14   action.  So that is where things are as of today.

15             THE COURT:   And those last two are across

16   the street and not in front of me?

17             MR. KERR:   Yes, we made those two motion on

18   notice of motion in April, on Mr. Tolchin's request.

19   They were put over, they are now returnable June 9.

20             THE COURT:   Across the street?

21             MR. KERR:   Across the street, but again they

22   may booth become moot depending on what the results of

23   all of this is today.

24             THE COURT:   All right.  So reading through

25   all of this, what strikes me is, several things in

26   reading the papers.

5

|      |                                                          |
|------|----------------------------------------------------------|
| 1    | Proceedings                                              |
| 2    | First of all, the issue of five year audits            |
| 3    | in regard to whether there is any surplus or not, and  |
| 4    | if there is a surplus, then that would go to pay off    |
| 5    | any debt.                                               |
| 6    | I'm trying to remember now.  Yes, I know what           |
| 7    | it is.  First of all, have there been any loans from    |
| 8    | the PA to the Pension Fund?                             |
| 9    | MR. KERR:   I don't believe there has.  I               |
| 10   | think what your Honor is referring to is under the      |
| 11   | operative statute.                                      |
| 12   | THE COURT:   Right.                                     |
| 13   | MR. KERR:   If the Pension Fund, in the                 |
| 14   | course of it, does an audit and there is a short fall   |
| 15   | it can go to the Palestinian Authority and request      |
| 16   | funds from the Palestinian Authority to cover that      |
| 17   | short fall.  The Pension Fund out of its investment and |
| 18   | the money it collects is obligated to pay that.         |
| 19   | THE COURT:   Yes.                                       |
| 20   | MR. KERR:   I don't believe there is any                |
| 21   | loans from the PA to the Pension Fund.  I must say I    |
| 22   | have not looked expressly at that.  But I'm not aware    |
| 23   | of any.  I know of none.  And the money, to be very     |
| 24   | clear, the money that's at issue here in this turnover  |
| 25   | proceeding, however, is one piece of the assets there   |
| 26   | is secrete assets, so the turnover petition only deals  |

1                           Proceedings

2      with the assets located here in New York, which are the

3      securities at SASI.  Those securities are the Pension

4      Funds.  Mr. Tolchin disagrees, but those are the

5      Pension Fund assets.  I think even if there were loans

6      made by the PA to the Pension Fund and the Gaza, that's

7      not at issue here today, but I just don't know.

8              THE COURT:    The only reason I asked, I felt

9      it might be an issue because in fact the Pension Fund

10     owes money to the PA and the PA is the judgment debtor,

11     then and if there is a surplus, which would be the fee

12     that would cause them to pay off these loans, then that

13     money maybe attachable.

14              MR. KERR:    Let me say this.  I don't think

15     there are any such loans.  In fact what has happened in

16     the last five years under the statute the both

17     municipalities and the civil administration are

18     obligated, the both, to withhold funds from salaries

19     paid to workers and transfer that money to the Pension

20     Fund.  And they are required to then pay another

21     portion of it as well into the Pension Fund.

22              What has happened in fact is the PA has

23     failed to do that.  I understand that they have

24     withheld the money from the workers, but it has not

25     paid it into the Pension Fund.

26              THE COURT:    Let me ask you something.  Are

1                              Proceedings

2       you saying from what I call it 10 percent of the

3       workers salary or something like that, goes into the

4       Pension Fund then 12 and a half percent is supposed to

5       come from the government?  I'm not sure, I think.

6                   MR. KERR:   I believe the way it works, I

7       believe the way it works, there is a portion that's

8       withheld from the salary.

9                   THE COURT:   Right.

10                  MR. KERR:   Of the employers.

11                  THE COURT:   Of the employees.

12                  MR. KERR:   Of the employees, excuse me.

13                  And, in addition, the employer whether it's

14      the civil administration, the Moloch municipalities,

15      also have a contribution that they may make.

16                  THE COURT:   When you say the money has been

17      taken out from the employees, what has not been put

18      into the Pension Fund, the money taken from the

19      employees or the government's interest.

20                  MR. KERR:   It is my understanding both, with

21      the municipalities they have been doing this.  I

22      understand have been transferring money to the Pension

23      Fund on a regular basis.

24                  THE COURT:   From both their contribution and

25      the employees?

26                  MR. KERR:   That's correct.  My understanding

1          Proceedings

2     with respect to the PA, this has been a tremendous

3     issue of dispute between the Pension Fund and the PA,

4     is whether the PA has withheld that from the salary of

5     the employees.  I'm not 100 percent sure, but I know

6     that the PA has not been transferring those monies to

7     the Pension Fund the way they are supposed to do.  In

8     fact the Pension Fund --

9          THE COURT:   When you say "those monies"

10    you're talking about the employees, what was withheld

11    are the employees salary or the contributions?

12          MR. KERR:   I believe both, your Honor.

13          Therefore, the Pension Fund is one of the

14    biggest creditors of the PA.  The PA owes us a

15    tremendous amount of money, that remains outstanding

16    which is a tremendous bone of contention between the

17    Pension Fund and the PA.  So again, I don't have all

18    the facts and figures, but I believe it's approximately

19    since approximately 2000, the PA has failed to transfer

20    all of the money.  I think they transferred some, but

21    not all the money.  Therefore, we in fact stand in line

22    as to claims against the PA.

23          THE COURT:   Okay.  Before we get any

24    further.

25          In terms of Mr. Tolchin's request that the

26    reply or part of the reply be stricken and not

Lester Isaacs, Official Court Reporter

1        Proceedings

2        considered by the court, I'm denying that.  So that

3        motion is gone.

4                So we still have the rest of the motion.

5                Now, the reason I raise the issue of the

6        audits and now you have raised something else, so I'm

7        not so certain this is a case for discovery, for a lot

8        of discovery.  However, there are certain questions

9        about whether or not the Pension Fund even if, and if I

10       believe all of your documentation it's a separate

11       entity from the Palestinian Authority and from the PLO.

12       Even if I believe all of that, there are questions of

13       whether or not the Pension Fund has any money that it

14       owes to the PA or holds any money of the PA, which

15       might be an issue here, in which I think is an issue

16       here and which might require some stuff.  That's the

17       only reason I raise the whole issue of the auditing and

18       the surplus.  But let me hear argument on these

19       questions.

20               MR. KERR:  If I may, your Honor, because I

21       think and I want to kind of posit two things.  Let me

22       frame them.  I think I will frame the issues and

23       respond directly.

24               THE COURT:  I should say one more thing

25       before you begin your argument.  I must tell you that I

26       am disturbed by the request to appoint a receiver and

1              Proceedings

2      even by the Sheriff's levy, that's something we do if

3      you really have a judgment against the entity.  But

4      there are really a lot of questions.  Which entity is a

5      judgment debtor at all?

6              It seems to me that you put the cart before

7      the horse here and it may open questions of in fact due

8      process.

9              MR. TOLCHIN:   Can I answer that?

10             THE COURT:   I just threw that out.  I will

11     give you a chance to argue.

12             I am just telling you what are the concerns,

13     I have, right now.

14             MR. KERR:   Your Honor.

15             THE COURT:   You argue first, since you have

16     a motion to dismiss.

17             MR. KERR:   That's correct, Your Honor.

18             I want to frame two issues.  I think they go

19     directly to what your Honor pointed out.

20             First, the basis of our motion to dismiss.

21     We are moving to dismiss the turnover petition, which

22     is a special proceeding, because of the lack of factual

23     support that is in the petition or in the papers in

24     response to it.  And that is very crucial here, your

25     Honor.  Because the whole reason why that turnover

26     petition is, we believe is here, is because it

11

1
2      perpetuates what we believe to be the prejudgement
3      attacking of our assets.
4              And, if the petition -- and I think the cases
5      we cite are clear, your Honor -- if the petition fails
6      to be supported by the petitioner with facts and in
7      evidentiary form, and we believe it is, the petition
8      needs to be dismissed under Article Four.  And if it is
9      dismissed, the separate Sheriff's levy will expire of
10     its own course.
11             THE COURT:   I know it expires in 90 days,
12     but that isn't my question.
13             My question is this:  Isn't there a
14     distinction between the Sheriff's levy and a turnover
15     proceeding such as this?  Where you have information?
16     A subpoena, an attaching of an information subpoena.
17     There maybe some kind of basis for a restraining order.
18             MR. KERR:   I think that's right, your Honor,
19     I think that theoretically it is true.  That you bring
20     a turnover petition based on facts.  Those facts may or
21     may not support a levy, but the petition they brought
22     is not supported by the facts.  As we told you, we have
23     separately moved to vacate the Sheriff's levy in part,
24     because it is also not supported by any facts.
25             The tie here, your Honor, is that at earlier
26     argument on March 7th, Mr. Tolchin took the position

Lester Isaacs, Official Court Reporter

1            Proceedings

2      that -- if you recall, that's when they had withdrawn

3      the restraining notice that we had moved to vacate.

4            THE COURT:   I remember.

5            MR. KERR:   His position was that now the

6      Sheriff's levy will continue as long as the turnover

7      petition is outstanding, I believe, under CPLR 5232 --

8      yes, that's correct.

9            And, therefore, as long as by perpetuating

10     this turnover petition it allows the Sheriff's levy to

11     be perpetuated.  Again, we have separately moved to

12     vacate that.  But, if the petition itself is not

13     supported by facts and in evidentiary form, then the

14     petition must fall.  The levy will expire.

15           Mr. Tolchin has filed a declaratory judgment

16     action which we now appeared in.  If he wants to pursue

17     the declaratory judgment action, take discovery as a

18     plenary action, he can do so.

19           But, again, what comes back, your Honor?  We

20     have been trying for the last six months trying very

21     hard to get someone to focus on the fact that our money

22     has been restrained.

23           THE COURT:   Can I just say something else.

24           MR. KERR:   Yes.

25           THE COURT:   It's another question.  Because

26     frankly, after I read through these papers -- I read

| | |
|---|---|
| 1 | Proceedings |
| 2 | through all the papers, it took me quiet sometime |
| 3 | yesterday.  I read through my motions before argument |
| 4 | anyway, but I will read them again.  But, I kind of |
| 5 | agree with you. |
| 6 | What comes to mind is even if I dispose of |
| 7 | all this basically on the papers, you still have the |
| 8 | Federal Injunction.  The Federal Injunction, the |
| 9 | wording of the Federal Injunction is really a little |
| 10 | odd to me, because it talks about related parties.  I |
| 11 | think that might have been the word, I'm not sure. |
| 12 | So let's say I dismiss all of this, shouldn't |
| 13 | there still be an issue with regard to the Federal |
| 14 | Injunction and perhaps using the Federal Injunction to |
| 15 | restrain some of these funds? |
| 16 | MR. KERR:    I think that's true, your Honor. |
| 17 | When we were here on March 7th, moving to |
| 18 | restrain the restraining notion, Mr. Taffet, SASI's |
| 19 | counsel, told the Court, because of the uncertainty of |
| 20 | the Federal Injunction, even if New York restraints are |
| 21 | not decided, the money is not going to move until we go |
| 22 | back to Rhode Island and get Judge LaGuez to say we can |
| 23 | move those monies. |
| 24 | My point, your Honor, is that I read the |
| 25 | PNA's transcript when they went to Judge LaGuez.  I |
| 26 | know how they had responded to that.  I don't want to |

1          Proceedings

2    waste his time.  However, I need to be able to go to

3    him and say that the New York restraints in fact have

4    been knocked out.  And, therefore, I will go to him and

5    say, Judge, the injunction shouldn't reach our assets.

6    We don't hold PA money and the notice of injunction

7    that was served by plaintiffs counsel, which I think is

8    really causing this uncertainty, should be struck.  He

9    may or may not give me that relief, your Honor, but I

10   can't go to him until I can say to him, we have come

11   here and taken the New York restraints and knocked them

12   out.

13              Now, Mr. Tolchin --

14              THE COURT:  I think you're wrong on that

15   frankly, because in the other case basically on the

16   original PMA case, that dealt with the PMA, the

17   Monetary Authority.

18              I think what I found was holding those funds

19   was a Federal Injunction.  Apparently, the reason that

20   the PMA went down to the Federal Court and the Federal

21   Court said, the property was in New York, that's where

22   all these issues should be decided.

23              MR. KERR:  I think those issues should be

24   decided in New York, your Honor.  The question is while

25   they are being decided, there should be a New York

26   restraint without the petitioner making the showing

Proceedings

1

2    required under Article 62 for a prejudgement.

3           My client was not a judgment debtor in that

4    action.  If the petitioners want to come into this

5    court and make a motion under Article 62 for a

6    prejudgment attachment and post a bond, if they make

7    that, then the New York restraint will last.

8           But, they have not done that, your Honor.

9    What they have done is they tried the sweep us into a

10   restraining notice, now a Sheriff's levy under Article

11   62, the post judgment proceeding on this theory.  That

12   despite what we have given to the court and submit the

13   fact they have no evidence, that we are one, the same

14   as the PA.

15          So, the reason why this motion is important,

16   is because the summary proceeding, the turnover

17   proceeding cannot be used to do this.

18          The cases we cite in our papers I think are

19   clear on this.  That should be vacated, the Sheriff's

20   levy should be either vacated or allowed to expire.

21   The money is not going to move because of this

22   potential application of the Federal Injunction.  And,

23   if I'm successful here, the declaratory judgment action

24   will continue and I will do it.  But, but I will take

25   that and go to Judge LaGuez and say to Judge LaGuez,

26   what happened is, your injunction reached the PA, it

1                          Proceedings

2       should not reach my assets.

3               I will make that clear.  Vacate that notice

4       of injunction.  He may or may not do that, Your Honor,

5       I recognize that.  But I can't go to him until I can

6       say to him that any of the restraints here in New York

7       are gone.

8               Let's me make one additional point, your

9       Honor.  With respect to the Sheriff's levy that was

10      served on SASI, that Sheriff's levy is actually limited

11      to just the PA and PLO's assets.

12              SASI has said they don't hold any PA or PLO

13      assets.  Therefore, under CPLR 5232, that levy was

14      ineffective as of the date it was served.

15              However, because petitioners continually make

16      these arguments that no, no, no, no, the money doesn't

17      belong to my client.  Or my client is fictitious, it

18      belongs to the PA, it creates this cloud.

19              So even though I can say, and I think SASI

20      would say, the Sheriff's levy was ineffective from the

21      beginning and there is no current New York restraint,

22      I'm still stuck in this limbo land, that's why I have

23      been trying hard to get these issues presented to your

24      Honor.

25              So I can go through the particulars of our

26      motion, if you like, as to why I believe the petition


                Lester Isaacs, Official Court Reporter

1                              Proceedings

2        does not provide an evidentiary basis.  The entire

3        petition is based on information and belief.

4               If you read the petition and I have, it is

5        here, your Honor.  You go through all of the

6        allegations relating to the Pension Fund, are

7        information and belief.  That's an inadequate basis to

8        have a turnover petition in an Article Four

9        proceedings.

10              We answered the petition.  One of our

11       affirmative defenses was, it fails to state a cause of

12       action, because of the lack of proof.

13              We submitted factual information to your

14       Honor to demonstrate who we are.

15              In response, the petitioner submits an

16       attorneys affidavit, by Mr. Tolchin.  With all due

17       respect to Mr. Tolchin, I don't believe he has any

18       personal knowledge about Palestinian law, about the

19       Pension Fund, about the funds that are being

20       transferred.

21              He raised some questions about gaps.

22       Specifically in our affidavit, our position is and you

23       don't have to look at our evidence because his factual

24       support alone justifies dismissal.  That's why we

25       responded to this in our reply papers.  And the cases

26       we cite, your Honor, the Izo case, the Trusto case, the

1                              Proceedings

2       Young case, and the 22 Park Avenue case, make very

3       clear that this proceeding, which is an Article Four

4       Proceeding, is different than a plenary proceeding and

5       a declaratory judgment action.

6              In this kind of Article Four proceeding,

7       petitioners have the burden of coming in and raising

8       and submitting evidentiary evidence.  Submitting facts

9       in evidentiary form, so that on the return date which

10      is today, the Court can determine whether there is,

11      based upon what they have presented, there is a triable

12      issue of fact.  And if there is not, and I submit to

13      you that based upon what they have submitted, they have

14      not raised a triable issue of fact.  This court is

15      required to summarily dismiss the turnover petition.

16      If they do that, as I said, they can continue on with

17      the declaratory action.  They can take discovery, we

18      will answer that.  We will oppose it vigorously, but

19      when they are in a situation where they don't have any

20      facts and frankly I think they are just kind of -- they

21      don't have any facts.  They want to try it out.  That's

22      the way they have got to do it.

23             Your Honor, I can address any other issues

24      you like.  If you have other questions or if there is a

25      separate motion for discovery in the turnover

26      proceeding.  But, as I have indicated, we indicated in

1                           Proceedings

2      our papers you can't, you can't overcome your facts,

3      your lack of evidentiary proof and support the petition

4      by saying, I need to take discovery to now try and

5      support that lack of proof.  They had the means to do

6      that in other ways.  They could have filed additional

7      information, subpoenas, under Article 422.

8                 They could have served a subpoena under 5223.

9      They have not done that for a year, your Honor.  They

10     have done none of that.

11                What they have to do is rest and stand upon

12     this turnover petition, to rest and stand upon what

13     they have submitted.

14                THE COURT:   What I also thought was

15     interesting, you handed over in the end the Deloitte

16     1999 report?

17                MR. KERR:   That's correct.

18                THE COURT:   Is there a more recent report?

19                MR. KERR:   Yes.  Two things, your Honor.

20     It's technically not an audit, it's a flow of funds

21     analyses, F L O W.  I have been admonished it's not an

22     audit, it is not done under the London auditing

23     procedures that were done.

24                The reason we gave that to your Honor was

25     because in Mr. Tolchin's reply papers.

26                THE COURT:   You gave it to Mr. Tolchin?

Lester Isaacs, Official Court Reporter

1                              Proceedings

2                  MR. KERR:   I did.  Mr. Tolchin said he was

3      shocked.  There is no way of establishing the funds

4      that came up from Israel that in fact ended up in

5      Credit Suisse.

6                  In 1999, the Fund retained Deloitte & Touche.

7      In that analysis, that's the report that we submitted

8      that Mr. A. Franji, the Director General of the Pension

9      Fund submitted with his supplemental affidavit.  What I

10     believe has been done every year since that time, is

11     at least through, I think, 2004.

12                 Is that Deloitte & Touche has done an

13     analysis of moneys that were in Credit Suisse, what

14     they have earned.  And I don't have them in front of

15     me, your Honor.

16                 The reason we gave you the '99 report was

17     that was the first one that traced the money originally

18     that was transferred by Israel in 1994, there are

19     several investment advisers, ending up in Credit Suisse

20     asset management.

21                 THE COURT:   The question I have with the

22     Deloitte flow fund, does it show any monies you paid

23     out to these employees or any money coming in from the

24     PA or from the municipal governments?

25                 MR. KERR:   It does not.  The reason why not,

26     your Honor, is that the money that was put in Credit

1                          Proceedings

2    Suisse has remained at Credit Suisse, except for a

3    payment I believe back in in '97.

4                  THE COURT:   You're saying none of those

5    moneys have gone to Credit Suisse, these are the monies

6    from Israel?

7                  MR. KERR:   These monies from Israel, they

8    have all gone to Credit Suisse.

9                  Other than a payment in '97, this had not

10   been used to pay beneficiaries, instead of the Pension

11   Fund, because it has been discontinued.

12                 To get payments, both withdrawal from

13   employees and payments from the municipalities and the

14   like, they maybe taken as assets in the Gaza that's

15   being used to pay beneficiaries on a regular basis.

16   This money is kind of like the trust, they kept as

17   their corpus, to ultimately use to pay that off and to

18   invest.  But none of this money and I believe in the

19   affidavit we submitted, state that none of that money

20   has been used to pay out the beneficiaries to today.

21                 I believe, I believe that the Deloitte and

22   Touche analysis to the extent they were done and they

23   were relatively short, after the one we showed to you,

24   shows the case.

25                 THE COURT:   Let me hear from Mr. Taffet, you

26   want to say something.

1              Proceedings

2              MR. TAFFET:   We have not moved to dismiss,

3    and the turnover proceeding though is on information

4    and belief.

5              THE COURT:   I know that.

6              MR. TAFFET:   And he wants discovery to be

7    extensive discovery in connection with that proceeding.

8    That's what we moved, that's why we imposed the

9    declaratory judgment action.

10             Now the issue is about to be joined, service

11   had been made.  So discovery can proceed at long last,

12   I guess in that separate proceeding.

13             THE COURT:   Okay.  Mr. Tolchin.

14             MR. TOLCHIN:   Thank you, your Honor.

15             I'm going to begin with the issue your Honor

16   raised about whether serving the Sheriff's levy or

17   asking for a receiver to be appointed would be a due

18   process violation.  One may bring a turnover proceeding

19   against someone claimed to be an alter ego of the

20   judgment debtor.  I didn't cite those cases in my brief

21   here.  Those cases were cited in the Palestinian

22   Monetary Authority papers.

23             THE COURT:   What proof is there of that,

24   other than the name?

25             MR. TOLCHIN:   That's the function of the

26   proceeding.  I will come to that, but this is

1                              Proceedings

2       procedurally, just procedurally, one need not as Mr.

3       Kerr has been arguing strenuously, one need not sue the

4       alleged alter ego go through the whole discovery

5       process, watch as the assets are transferred off shore

6       to Gaza and dissipated an disappeared and then get a

7       judgment before one can pursue the assets.

8                    THE COURT:    I have two questions for you.

9                    Number one, even if the turnover was

10      dismissed, you still have a Federal Injunction,

11      wouldn't that be holding the funds?

12                   MR. TOLCHIN:    It would be, obviously.   The

13      important thing is that SASI regards it as holding the

14      funds they did.

15                   THE COURT:    In a sense the turnover is

16      putting a third or fourth lock on the funds.

17                   MR. TOLCHIN:    Not the turnover, your Honor,

18      the turnover proceeding puts no lock on the funds.

19                   THE COURT:    I'm sorry, the restraining order

20      or the Sheriff's levy.

21                   MR. TOLCHIN:    The Sheriff's levy.

22                   THE COURT:    It seems to me you're asking for

23      a turnover, when there is actually no proof at all.

24                   MR. TOLCHIN:    That's not true.

25                   THE COURT:    That shows that these funds

26      belong to the judgment creditors.

1       Proceedings

2               MR. TOLCHIN:   Judge, let me start, since you

3       want to talk from that direction.   Let's take a look at

4       Exhibit Q in my papers.   I made an extra copy, because

5       of the way it is folded.   You may not be able to see

6       the very top of the page.

7               May I hand it up?

8               THE COURT:   Yes.   Q like Queens.

9               MR. TOLCHIN:   This is a letter from Mohamed

10      Rachid to an investment manager who was managing the

11      Palestinian Pension Fund monies in 1997.

12              Mohamed Rachid is writing as the economic

13      advisor to President Yasser Arafat, who is President

14      Yasser Arafat.   If we look at the top of the paper it

15      says Palestinian Liberation Organization and Palestine

16      National Authority.   Yasser Arafat was president of the

17      National Authority an is well known to be the chairman

18      of the PLO.

19              This is a letter plainly instructing the

20      manager of these Pension Funds how to handle the money.

21      What to sell, what to buy and who to transfer it to.

22              THE COURT:   Is this Credit Suisse that we

23      are talking about?

24              MR. TOLCHIN:   This is Belesta Asset

25      Management.

26              THE COURT:   Which is not in the United

|  | Proceedings |
|---|---|

1                     Proceedings

2       States?

3               MR. TOLCHIN:    Correct.  This is in 1997,

4       this is an asset manager who was managing these Pension

5       Funds.  They have a predecessor.

6               THE COURT:    The letter goes on to say, "we

7       would like you to deposit the proceeds of the sale in

8       the PPF account with Credit Suisse."

9               MR. TOLCHIN:    Exactly.  If you look up in

10      the first paragraph, it's very interesting.  It doesn't

11      say that I'm writing to you about the funds belonging

12      to the Pension Fund.

13              THE COURT:    But it says "the handling of

14      funds in the name of the Palestinian Pension Fund of

15      State Administrative Employees", which seems to be the

16      same.

17              MR. TOLCHIN:    It's not, it's not, because

18      when somebody is engaging in a what we call a corporate

19      shell game to put assets in different names to avoid

20      judgment creditors as the Palestinians have done

21      repeatedly, especially during the days of Yasser

22      Arafat.  They opened up accounts under all sort of

23      names.  But the fact that the person controlling this

24      money doesn't even pretend he is writing on insurance

25      on a Pension Fund letterhead, or Palestinian Fund

26      letterhead, he is writing the letter as economic

1                         Proceedings

2        adviser to the chairman of our judgment debtor, saying

3        this is what you should do with the money.  He is

4        controlling this money.  And if this document was

5        obtained from Credit Suisse --

6                    THE COURT:  Is that what it shows?

7                    MR. TOLCHIN:  From Citigroup, I'm sorry.

8                    THE COURT:  It shows back in 1997 while

9        Yasser Arafat was the president of the PLO, and perhaps

10       the chair of, I'm not sure of the PA.

11                   MR. TOLCHIN:  He was the president of the PA

12       and the chair of the PLO.

13                   THE COURT:  I inverted it.

14                   He had some control over the Palestinian

15       Pension Fund, which may or may not.

16                   MR. TOLCHIN:  Assets titled to in an account

17       under the name of the Palestinian.

18                   THE COURT:  The Palestinian Pension Fund and

19       that the money go into another Palestinian Pension

20       Fund.  He may have had some control in 1997.

21                   MR. TOLCHIN:  Because the Funds are alleged

22       to have originated in the same period.

23                   THE COURT:  No.

24                   MR. TOLCHIN:  They presented an audit from

25       '99.  Mr. Kerr just told your Honor, these funds were

26       transferred from Israel.

                    Lester Isaacs, Official Court Reporter

1              Proceedings

2              THE COURT:   '99, before.

3              MR. KERR:   It was transferred in two parts.

4       One, the end of '94, Israel put it in an account, in an

5       east west town of Tel Aviv.  A portion was transferred

6       to Morgan Stanley to be managed in, I believe, in late

7       '96 or early '97.  The remaining money was in an East

8       West Bank, were transferred from there to Credit Suisse

9       Private Banking in Switzerland.

10             MR. TOLCHIN:   What we have pieced together.

11             First of all, judge, there is no wear to be

12      found in any of these papers, not the papers produced

13      by Mr. Kerr, not the papers produced by Citigroup,

14      nowhere.  There is nothing along the lines of a

15      certificate of incorporation or any other such document

16      for the Palestinian Pension Fund for the State

17      Administrative Employees of the Gaza Strip.  Nobody has

18      produced anything like that.

19             Now, who would have that if it exists, judge?

20      Not me.  SASI would have it, why?  Because the law

21      requires them to maintain it.  They have to obtain and

22      obtain and maintain documents, showing who has

23      signature authority on the account.  Who pays taxes on

24      the accounts, the entity.  That the documents showing

25      the formation of the entity that creates the account.

26             If I wanted to open up a bank account in the

1                              Proceedings

2       name of the law office of Robert Tolchin, I have to

3       come to the bank with a business certificate.  SASI has

4       to have this documentation.  That's what we are

5       proposing to get during discovery.

6                   Mr. Kerr has provided to your Honor and I see

7       from your Honor's questions that you have read it

8       carefully.  The statute that creates the insurance and

9       Pension Fund, issued in 1964 under Egyptian law, with

10      all these provisions and rules and all these

11      regulations clearly, judge, where is the document that

12      shows that the insurance and Pension Fund is the

13      Palestinian Pension Fund for State Administrative

14      Employees in the Gaza Strip?

15                  I didn't see any such document.  I see an

16      affidavit.  The reply affidavit that I wanted to strike

17      where the affiant, we don't know who he is.

18                  THE COURT:   There are two affiants.

19                  MR. TOLCHIN:   A-Franji.

20                  THE COURT:   There are two different

21      affiants.

22                  MR. TOLCHIN:   I'm talking about Mr.

23      A-Franji.  He says he is in charge of the pension fund

24      and he says that all these different Pension Funds

25      under different names are actually the same thing.

26                  He has not produced one document showing that

| | |
|---|---|
| 1 | Proceedings |
| 2 | there is a bank account or an account that SASI has, |
| 3 | saying Insurance and Pension Fund, also known as or |
| 4 | doing business as. |
| 5 | THE COURT:    I have a question for you. |
| 6 | MR. TOLCHIN:    Yes. |
| 7 | THE COURT:    What about the Deloitte, what is |
| 8 | it called? |
| 9 | MR. KERR:    The Flow of Funds. |
| 10 | THE COURT:    The Flow of Funds, which shows |
| 11 | that the money that Israel collected, I think it was a |
| 12 | pension fund and for employees, went to Credit Suisse |
| 13 | and eventually is what we are talking about here. |
| 14 | I guess they were under a mis-impression too. |
| 15 | MR. TOLCHIN:    Let's talk about that too. |
| 16 | The documents as it stands is completely inadmissible. |
| 17 | What is it, it is somebody who signed here |
| 18 | unsworn, saying that he reviewed some documents, which |
| 19 | aren't here and he made some conclusions.  And among |
| 20 | his conclusions is that $28 million dollars is missing. |
| 21 | It was transferred from the Palestinian |
| 22 | Pension Fund account that he audited to three banks |
| 23 | located in the Palestinian territories.  We know them |
| 24 | well from the other case, judge.  The Arab Bank, the |
| 25 | Gaza Bank, Monod, in Paris. |
| 26 | THE COURT:    That's a new one. |

1          Proceedings

2              MR. TOLCHIN:  Yes, that is a new one.

3              There is a third one.  There were three

4      transfers totaling $28 million to these banks, which

5      they say we don't even know -- I'm sorry, Your honor, I

6      stand corrected.  It was two banks, Arab Bank and Bank

7      Monod, totalling $28 million dollars.  Where they say

8      they have not been able to locate any documents showing

9      where that money went.

10             THE COURT:  This was when?  During the time

11     of Yasser Arafat?

12             MR. TOLCHIN:  As of their audit.

13             THE COURT:  Yes.

14             MR. TOLCHIN:  As of their audit.  So what we

15     see is the PA's president is controlling the money.  In

16     1997 according to that letter, we see an audit showing

17     a very substantial amount of money was just transferred

18     out.  We don't know where that was transferred.  If

19     that was transferred into a Palestinian Authority

20     account --

21             THE COURT:  Or in Mr. Arafat's pocket.

22             MR. TOLCHIN:   -- for Mr. Arafat's pocket,

23     that would be a significant thing to do.

24             THE COURT:  It just may mean there was a

25     larceny here of some sort.

26             MR. TOLCHIN:  Or, it may to be the notion,

Lester Isaacs, Official Court Reporter

1        Proceedings

2    never mind what they called the account.

3            You have to admit if you were running a

4    municipal government, which Yasser Arafat was, you

5    wanted to hide some money, don't put it in your own

6    name, create a benign thing called a Pension Fund.

7            Where is the pension plan documents for the

8    Palestinian Pension Fund, for the State Administrative

9    Employees?

10           THE COURT:   Is there evidence that connects

11   the moving parties.

12           MR. TOLCHIN:   Not one page, not one of piece

13   of evidence.  I challenge you to show it to me.  There

14   is nothing hear that says that the insurance and

15   pension fund created in 1964 is the Palestinian, for

16   State Administrative Employees of the Gaza Strip.  The

17   only thing that comes close to saying it, beside Mr.

18   Kerr's statement, without citation is the reply

19   affidavit of Mr. A-Franji.  Who says that only because

20   we pointed out that it was absent and he doesn't annex

21   one document, there are what is the most formal place

22   where somebody would be really careful to make sure to

23   get all their documents correct.

24           Here are some examples when Mr. Kerr's

25   partner, Mr. Tannenbaum, was given power of attorney to

26   act on behalf of the Palestinian Pension Fund.  It's

1               Proceedings

2     here in the papers, Exhibit F, power of attorney issued

3     to James Tannenbaum.

4               THE COURT:   This?  It was struck.

5               MR. TOLCHIN:   In 2002.  It's issued by the

6     Palestinian Pension Fund to the State Administrative

7     Employees of the Gaza Strip.  It doesn't say the

8     Insurance and Pension Fund also known as.  There is no

9     resolutions, Judge, authorizing Mohamed Rachid for

10    example to act.

11              This is Exhibit D to my papers.  No, it's

12    Exhibit I to my papers.  This is appointing Mohamed

13    Rachid to act on behalf of whom?  The Palestinian

14    Pension Fund of the State administrative Employees.

15              It doesn't say Insurance and Pension Fund

16    created under the 1964 law.  It doesn't say anything of

17    the sort.  In fact, if you read on it says Mohamed

18    Rachid can act how?  Together with the Yasser Arafat.

19    Mohamed Rachid and Yasser Arafat can sign away the

20    whole farm, or the other members of the board of

21    directors all together can do it.

22              But with all that, Yasser Arafat was in a

23    special controlling position with respect to this fund.

24              It doesn't say anything about the Insurance

25    and Pension Fund.  We see this over and over again.

26              Exhibit J is another certificate of board

1                              Proceedings

2        resolutions of the Palestinian Pension Fund.  This was

3        authorizing the transfer of $25 million from an account

4        maintained in the name of the Pension Fund with Credit

5        Suisse to something called the Carthage Consortium.

6        Again, no mention again to the Insurance and Pension

7        Fund.

8                   Exhibit K is the same thing.  Again another

9        certificate of the board resolution.  Also no mention

10       of the Pension Fund.

11                  You would thing, Judge, that when people are

12       sitting down with a lawyer, and by the way, if you look

13       at the format all the documents prepared by

14       Mr. Tannenbaum have a similar code in the corner.  It

15       seems to be the file name on his computer.

16                  It appears that Mr. Tannenbaum actually

17       prepared these documents.  We know, Judge, from

18       experience that when lawyers at large firms prepare

19       documents involving millions of dollars, they are

20       usually careful to make sure they get the name of the

21       corporation right, when they are issuing a board

22       resolution of that corporation.

23                  Again, this is Exhibit L when he hired Smith

24       Barney as an investment adviser.  It wasn't the

25       Insurance Pension Fund, it was something else.

26                  THE COURT:   It was who?

34

1                            Proceedings

2                    MR. TOLCHIN:    The Palestinian Pension Fund

3         for State Administrative Employees.

4                    THE COURT:    Did all these documents refer to

5         the Pension Fund for to the Palestinian Fund or

6         something?

7                    MR. TOLCHIN:    They all referred to something

8         called the Palestinian Fund for State Administrative

9         Employees of the Gaza Strip.    Not one refers to the

10        Insurance Fund created under that 1964 law, which plain

11        as day says the name of the entity is Insurance and

12        Pension Fund.

13                   THE COURT:    What did Israel refer to it as

14        when they referred it?

15                   MR. TOLCHIN:    The Oslow Accord, saying that

16        money will be transferred to the PA or to an entity to

17        be created.

18                   THE COURT:    I'm not talking about that.    I'm

19        talking about when Israel in fact collected money for

20        the Pension Fund and they transferred it, who did they

21        transfer it to, what was the name?

22                   MR. TOLCHIN:    I would love for the pension

23        fund to produce the document, because they have to have

24        it.    Israel issued a check or wire transfer, they must

25        have where it was.

26                   THE COURT:    What do the Deloitte Flow Funds

```
1                         Proceedings
2      say?
3                MR. TOLCHIN:    The Deloitte Flow Funds say --
4      let me find it here.
5                That the funds -- it doesn't start at that
6      point, judge.  It starts with December 94.  Funds
7      deposited with Yaru Trade, Tel Aviv, $430 million
8      Shekels.  It says what name was on the check, who
9      transfers them.  It doesn't say the account number at
10     the bank or whose name was on that account.
11               THE COURT:    Does that document at all refer
12     to any entity known as a "Pension Fund"?
13               MR. TOLCHIN:    It says at the top Palestinian
14     Pension Fund Investment.  There is no indication that
15     anybody prepared this document -- I withdraw that.
16               The cover letter conveying the document is
17     addressed to the Palestinian Pension Fund for State
18     Administrative Employees in Gaza, does not say
19     Insurance and Pension Fund, there is -- I have been
20     trying --
21               THE COURT:    I understand your point.
22               MR. TOLCHIN:    -- to do that.  That's why I
23     bristled, when I heard Mr. Kerr say and your Honor
24     asked questions about the notion that there is no
25     evidence that there is a connection between the
26     Palestinian Authority and these moneys.  To the
```

1            Proceedings
2    contrary, the only evidence that there is, is that
3    Israel agreed to give some money to the PA or whatever
4    account the PA would set up.  The PA thereafter
5    controlled this money, a substantial amount.
6            THE COURT:   But where did Israel get the
7    money, the Pension Fund money?
8            MR. TOLCHIN:   Israel paid the state
9    administrative employees, the West Bank and Gaza Strip,
10   Israel paid the monies out of a line of items, from its
11   budget.
12           THE COURT:   The money?
13           MR. TOLCHIN:   From Israel's pocket.
14           When Israel gave over control, of the
15   administrative control of the West Bank and Gaza.
16           THE COURT:   And the money was intended as
17   pension money?
18           MR. TOLCHIN:   There was no fund of money
19   that Israel had segregated.  Israel paid the workers a
20   salary, when they retired, Israel paid them a pension.
21           THE COURT:   That's what I'm saying, the
22   money was transferred as a pension device?
23           MR. TOLCHIN:   No, the money was transferred
24   to the PA and the PA agreed to take over the pension
25   obligation.  But that doesn't mean that it was a
26   separate -- to use the touch stone word, it doesn't

1                          Proceedings

2      mean that it was a separate entity, it not an Erisa

3      claim.  Just because something is for a pension doesn't

4      mean that it's impervious to judgment creditor.

5      Certain teachers or pension plans are, that's why O.J.

6      Simpson can still have some money.

7                  THE COURT:   Is this anything else you want

8      to add?

9                  MR. TOLCHIN:   Yes.  All of this was in the

10     way of answering your question.

11                 I have to talk about the procedure, Judge.

12     Procedurally this is -- all what's going on here is

13     topsy turby.

14                 Mr. Kerr used the word repeatedly.  He is

15     asking your Honor to summarily dismiss this case.  Now,

16     what does it mean summarily dismiss?

17                 There is such a thing as a motion to dismiss.

18                 There is such a thing as a motion for summary

19     judgment.  There is no such thing as summary dismissal.

20                 THE COURT:   I assume he meant, he said

21     summarily, as a summary proceeding.

22                 MR. KERR:   Just so we are clear, your Honor,

23     what I'm asking the court to do is what the court can

24     do under 409 B.  I'll read, at this time the court

25     shall make a summary determination upon the pleadings,

26     papers and admissions to the extent that no triable

                              Proceedings

1

2    issues of fact are raised.

3              Our position is, there are no triable issues

4    of fact that are raised.  The court should make a

5    summary determination and dismiss the petition.  The

6    cases that I cited to your Honor did exactly that.

7              MR. TOLCHIN:    Your Honor, this is not a

8    summary proceeding, that's something from the Real

9    Property Actions and Proceedings Law, that's for L and

10   T Court.

11             This is a special proceeding, governed by

12   Article Four of the CPLR.  Article Four of the CPLR

13   allows the main respondent to move to dismiss if the

14   pleading fail to seat forth the cases as a matter of

15   law.  It doesn't contemplate a summary judgment motion.

16             The CPLR also says that somebody else who

17   claims a right to the funds at issue, may move to

18   intervene.  They did that.

19             On intervention, according to CPLR 5225, it

20   says, the court may permit an adverse claimant to

21   intervene.  And on intervention, they have to follow

22   the procedure contained in 5239.

23             5239 says that they have to prove an

24   affirmative case that the money is there is.

25             They are not -- picture this judge.  The

26   Pension Fund is moving to dismiss a claim that I have

Proceedings

1
2    asserted against SASI.  I have not asserted a claim

3    against the Pension Fund.

4              THE COURT:    It's the Pension Funds money.

5              MR. TOLCHIN:    I have asserted against SASI,

6    the stake holder.  The CPLR is very wise here.  If

7    somebody else claims the money they have to come into

8    court and affirmatively prove that it is theirs.

9              Any interested person may commence a special

10   proceeding against the judgment creditor, other person

11   with whom the dispute exists to determine rights of the

12   property.  They have to come forward.  They can't just

13   stand there and say that the Unger case against SASI is

14   weak, that's not good enough.  That's not what the kind

15   of motion to dismiss, that they are allowed to make if

16   they wanted to come in and say our pleading doesn't set

17   forth the cause of action, because we forgot to plead

18   A, B, C, D as a matter of law.  That's a motion they

19   could make.

20             But, what they have done, Judge, they have

21   come in here with factual arguments.  There is no

22   mistaking, they put in affidavits, they submit

23   documents.  Their arguments are entirely factual.  As I

24   pointed out in my papers, their first point heading in

25   their brief says, because the evidence in the record

26   conclusively refutes the petitioners allegations, there

Proceedings

1
2       are no triable issues of fact.

3               They are arguing by their own words, a

4       summary judgment standard.  A summary judgment is not

5       something that is permitted for a turnover proceeding.

6       Even if it were summary judgment, talking about triable

7       issues of fact, is inappropriate.

8               Before we get onto the facts on the table,

9       they have all the bank statements.

10              THE COURT:  I understand what the procedural

11      argument is.  What is your next statement; is there

12      anything else?

13              MR. TOLCHIN:  I want to talk about discovery

14      issue.

15              Mr. Kerr says, that we have could pursued

16      discovery under the judgment itself.  Supplemental of

17      information subpoena, even depositions and the like

18      before commencing the turnover proceeding.

19              He says, we have tied up his money for a

20      year.  That's bogus, Judge.  We served an information

21      subpoena last April.  We got back an answer from SASI,

22      I think it was May or June of last year, they said they

23      are holding three stocks, a very minuscule position,

24      not anything worth pursuing.

25              THE COURT:  You pursued it?

26              MR. TOLCHIN:  No, we did not.  We did

Lester Isaacs, Official Court Reporter

Proceedings

nothing.  In December we suddenly, out of the blue, we never had any dialog with them.  Out of the blue we got a supplemental answer to that same original information subpoena.  All of a sudden, there is $100 million dollars worth of stocks.  That they say, we have been advised that these belongs to the Pension Fund.

Clearly, how is it possible they didn't know who a hundred million dollars worth of assets belonged to all along?

The same day as we got that supplemental answer, we got a motion to vacate the restraining notice from the Pension Fund.  Thus, it's plain that the pension fund and SASI, were coordinating.  Because it's uncanny that both things came out of the blue on the same day.

So we went from being utterly unaware that there are a hundred million dollars there, because they didn't give us a truthful or complete answer to the information subpoena in the first instance.  To all of a sudden facing a motion to vacate the restraint.  And we have no choice at that point but to file a turnover proceeding to protect ourselves procedurally.

Had they given us a full answer when we served our information subpoena a year ago, absolutely, we would have served the same documents, demands, that

1                        Proceedings

2       they are asking for now.

3                   Saying, give us the account opening

4       statements, show us who has signature authority?

5                   Show us the corporate records?

6                   Show us the monthly statements?

7                   Show us who the control persons were on this

8       account?

9                   Show us the correspondence about this

10      account, we would have served that a year ago.  But

11      they kept it hidden from us that these assets existed,

12      which is something I would love frankly to explore with

13      SASI.

14                  THE COURT:   What about your declaratory

15      judgment action?

16                  MR. TOLCHIN:   The declaratory judgment

17      action is slightly different from the turnover

18      proceeding.  In the declaratory judgment action the

19      Insurance and Pension Fund by that name is a party.

20                  THE COURT:   Can't you get discovery there?

21                  MR. TOLCHIN:   We can get discovery there,

22      yes, we are entitled to it.

23                  THE COURT:   I'm just saying, I don't

24      understand.

25                  MR. TOLCHIN:   Yes, we are entitled to

26      discovery in the declaratory judgment action and we are

1                               Proceedings

2      entitled to discovery under the judgment.  So there is

3      two places.

4                    THE COURT:  I'm just saying, you can get the

5      discovery under the declaratory judgment action, you

6      always could.

7                    MR. TOLCHIN:  Not always could.  Just now

8      you can't do discovery in an action until the issue is

9      joined.

10                   THE COURT:  But that's not what I meant, but

11     yes.

12                   MR. TOLCHIN:  That's why we have not served

13     any subpoenas or notices because we have been

14     procedurally in a holding pattern here.

15                   THE COURT:  Anything else?

16                   MR. TOLCHIN:  Is there anything else?

17                   Yes.  What we need, what we can't do and why

18     we moved for discovery is the timing of it all.  In

19     other words, we need that discovery which we are

20     entitled to, but we need it in order to fully present

21     this turnover proceeding.

22                   THE COURT:  Is there anything else?

23                   MR. TOLCHIN:  I think that's it, your Honor.

24                   THE COURT:  I'm just going to issue my

25     decision right on the record.  I think it is easier to

26     do so.

1                          Proceedings

2                  We have heard full argument and my decision

3          is based upon the arguments that were presented, as

4          well as the papers.

5                  I have three motions in front of me.

6                  One is a motion to dismiss a turnover

7          proceeding.

8                  A second is the request of the

9          plaintiffs/petitioners, Mr. Tolchin's clients, to

10         appoint a receiver so the assets could be taken by the

11         receiver and sold.

12                 The third is for discovery.

13                 Reading through all these papers, it seems to

14         me that the petitioner in the turnover proceeding had

15         commenced a turnover proceeding based purely on

16         information and belief there was absolutely nothing at

17         all to support their allegations that the Pension Fund

18         is something other than a Pension Fund for the

19         employees.

20                 In response to the motion to dismiss, there

21         is credible, very credible affidavits and evidence

22         indicating that this in fact is money that belonged to

23         the employees of, and now of the different

24         municipalities and governments of the Palestinian

25         Authority.

26                 On its face, it totally indicates, clearly

1                          Proceedings

2          indicates I must say, and I think if anything proves,

3          it clearly proves based upon these documents that in

4          fact there is no basis for the turnover proceeding.

5                  I'm going to grant the motion to dismiss.

6                  I must say that I do not believe that there

7          is going to be any harm caused to Mr. Tolchin's clients

8          by granting the dismissal of a turnover proceeding and

9          denying the appointment of a receiver, for several

10         reasons.

11                 One, because there is still the Federal

12         Injunction.  They funds are going nowhere.  These funds

13         are being held here by the Federal Injunction.  We

14         don't need multiple proceeding holding these funds.  In

15         fact, there is also a declaratory judgment action which

16         is going to go forward and there will be discovery

17         under that, as much discovery as Mr. Tolchin and his

18         clients require.

19                 MR. TOLCHIN:  Your Honor, the Palestinian

20         Pension Fund.

21                 THE COURT:  Please, let me finish.

22                 So under the declaratory judgment action

23         there will be discovery under the injunction.  I

24         believe there should be discovery and eventually some

25         sort of hearing to determine whether or not the Pension

26         Fund is in some way is not a separate political entity

1                         Proceedings

2        and whether the Pension Fund in some way may hold any

3        funds that belong to the judgment debtors.

4                I am therefore going to deny the discovery

5        under the turnover proceeding as moot, because I'm

6        going to dismiss the turnover proceeding.

7                There are no restraining orders pursuant,

8        right now, pursuant to this turnover proceeding holding

9        these funds.  However, as I have noted earlier there is

10       still a Sheriff's levy and there certainly is a Federal

11       Injunction, which is still outstanding holding these

12       funds.

13               There is discovery which will go forward

14       pursuant to the declaratory judgment action.  And, of

15       course, Mr. Tolchin you have an exception and you have

16       a record from which to appeal.

17               MR. TOLCHIN:   May I ask that the order

18       dictated today be stayed for a period of time to allow

19       us to seek a stay in the Appellate Division?

20               THE COURT:   Counsel?

21               MR. KERR:   Your Honor, I would oppose that

22       for the very reason your Honor just said on the record.

23       I don't see any real need for having us chase up to the

24       Appellate Division.  So I think that is completely

25       unnecessary.  As your Honor indicated in light of the

26       Federal Injunction, the funds aren't going anywhere.

| | |
|---|---|
| 1 | Proceedings |
| 2 | The declaratory judgement will proceed. |
| 3 | Your Honor, if I just may make one point. |
| 4 | Your Honor dismissed the turnover petition. |
| 5 | The Sheriff's levy which was served on February 21st, |
| 6 | under 5232, will therefore expire in 90 days, which I |
| 7 | believe is the 22nd? |
| 8 | THE COURT:    Yes, I believe it does expire in |
| 9 | nintey days. |
| 10 | MR. KERR:    Yes. |
| 11 | THE COURT:    So it is still in effect, but it |
| 12 | will expire at some point. |
| 13 | MR. KERR:    That's correct. |
| 14 | THE COURT:    That's the Decision and Order of |
| 15 | the Court. |
| 16 | I will just write on the gray sheet saying |
| 17 | that my decision has been rendered and my order is on |
| 18 | the record. |
| 19 | MR. KERR:    Thank you, your Honor. |
| 20 | (Discussion off the record.) |
| 21 | (The discussion off the record |
| 22 | concluded and the following occurred in |
| 23 | open court:) |
| 24 | THE COURT:    On the record. |
| 25 | I want the discovery under the DJ action to |
| 26 | begin as quickly as possible.  I want this to go |

| | |
|---|---|
| 1 | Proceedings |
| 2 | quickly.  I would also like new discovery to be |
| 3 | obtained. |
| 4 | In terms of the DJ action, so that we can |
| 5 | hold a hearing even on the injunction.  I think it's |
| 6 | important that this be dealt with as quickly as |
| 7 | possible. |
| 8 | MR. TOLCHIN:    Your Honor, just to clarify. |
| 9 | If I understand your Honor's reasoning about |
| 10 | the turnover proceeding being dismissed, it's not with |
| 11 | prejudice, meaning the DJ action generates a whole |
| 12 | bunch of new information and discovery and new facts. |
| 13 | THE COURT:    Those facts can be used in your |
| 14 | Federal Injunction hearings.  Because you have got the |
| 15 | Federal Injunction holding these funds.  It seems to me |
| 16 | at this point there was absolutely no evidence at all, |
| 17 | nothing, which should have given rise to this turnover |
| 18 | proceeding, particularly in light of the fact that you |
| 19 | have a Federal Injunction which might, which under |
| 20 | Federal Injunction, you may have residual response. |
| 21 | MR. TOLCHIN:    But we may later need another |
| 22 | turnover proceeding to get the funds. |
| 23 | THE COURT:    That may happen once you have |
| 24 | some evidence to show it's a valid turnover proceeding. |
| 25 | MR. TOLCHIN:    So this is without prejudice |
| 26 | to us commencing a turnover proceeding later. |

49

1                      Proceedings

2            THE COURT:   If there is new evidence.

3            MR. TOLCHIN:   If it's warranted.

4            THE COURT:   If it's warranted.

5            MR. KERR:   Your Honor, with respect to the

6       declaratory judgment action, so we are clear on the

7       timing.  We will follow the judge's admonition and

8       begin discovery right away.

9                  As I indicated, we will made a protective

10      motion to dismiss the creditor judgment, which is now

11      moot.  We will withdraw that motion.

12                 We will answer the declaratory judgment

13      action.  I think we can do that in a week, if not

14      sooner and we will be off to the races.  I just want to

15      be clear on our timing.

16           THE COURT:   Yes.  There has not been a P C

17      conference, a preliminary conference on the declaratory

18      judgment action.  Once you answer, I would like someone

19      to notify my clerk so that you can come in for a P C,

20      but there is nothing to stop you from starting

21      discovery before the P C, once there is an answer.

22           MR. TOLCHIN:   I can say this.  My discovery

23      demand both to SASI and to the Pension Fund in the

24      declaratory judgment action is exactly what was

25      attached to my motion for discovery here.  So we could

26      deem it served and start or I could print it out again

              Lester Isaacs, Official Court Reporter

```
 1                        Proceedings

 2         and serve it.

 3                 THE COURT:   Just to be careful, once they

 4         answer, just print it out and serve it.

 5                 MR. TOLCHIN:   Can we set a date for the

 6         answer?

 7                 MR. KERR:   As I said, your Honor, today is

 8         the 18th, we can serve our answer by Friday the

 9         26th.

10                 THE COURT:   Fine.

11                 MR. TAFFET:   We will agree to accept

12         service.  And in the declaratory judgment action, we

13         are not a party.

14                 MR. TOLCHIN:   Understood.

15                 MR. TAFFET:   You can serve our law firm on

16         behalf of SASI.  On other discovery, we are not

17         authorized to receive.

18                 MR. KERR:   Thank you, your Honor.

19                      *      *      *

20              C E R T I F I C A T E

21             I, Lester Isaacs,   an official court reporter
   of the State of New York, do hereby certify that the
22 foregoing is a true and accurate transcript of my
   stenographic notes.
23

24                     Lester Isaacs, S.C.R.
                       Official Court Reporter.
25

26
```