# Exhibit N

*To Be Argued By:*
Robert J. Tolchin

*New York County Clerk's Index No. 102101/06*

# New York Supreme Court

## APPELLATE DIVISION — FIRST DEPARTMENT

━━━━━━ ▶▶◀◀ ━━━━━━

THE ESTATE OF YARON UNGAR by and through its Administrator,
DAVID STRACHMAN, *et al.*,

*Plaintiffs-Appellants,*

*against*

THE PALESTINIAN AUTHORITY, *et al.*,

*Defendants.*

## BRIEF FOR PLAINTIFFS-APPELLANTS

JAROSLAWICZ & JAROS
225 Broadway, 24th Floor
New York, New York 10007
212-227-2780

*Attorneys for Plaintiffs-Appellants*

*Of Counsel:*

Robert J. Tolchin

*Printed on Recycled Paper*

# Table of Contents

TABLE OF AUTHORITIES .................................................................................... *ii*

PRELIMINARY STATEMENT .................................................................................. 1

QUESTIONS PRESENTED ...................................................................................... 3

STATEMENT OF RELEVANT FACTS ...................................................................... 3

POINT I

DEFENDANT INSURANCE AND PENSION FUND HAS THE BURDEN TO PROVE THAT IT OWNS THE SECURITIES AT SASI ................... 11

POINT II

DEFENDANT INSURANCE AND PENSION FUND SHOULD BE REQUIRED TO PRESENT ITS CASE FIRST ........................................................... 20

CONCLUSION ........................................................................................................ 20

# Table of Authorities

## Cases

*Baez v. City of New York*, 278 A.D.2d 83, 717 N.Y.S.2d 584 (1st Dep't 2000) ........................................................................................ 17

*Benjamin v. Benjamin,* 106 A.D.2d 599, 483 N.Y.S.2d 418, aff'd. 65 N.Y.2d 756, 492 N.Y.S.2d 31 (1985) .................................................. 12

*EM Ltd. v. Republic of Argentina,* 473 F.3d 463 (2d Cir. 2007) ................................. 11

*Estate of Crockett,* 247 A.D.2d 286, 668 N.Y.S.2d 620 (1st Dep't 1998) ................... 11

*Estate of Ungar ex rel. Strachman v. PA,* 44 A.D.3d 176, 841 N.Y.S.2d 61 (1st Dep't 2007) ................................................................ 6

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 313 F.3d 70 (2d Cir. 2002) ................................................ 11

*PLO v. Estate of Ungar* 402 F.3d 274 (1st Cir. 2005) *cert. denied* 126 S.Ct. 715 (2005) .................................................................... 4

*Ungar et al. v. PA, et al.,* C.A. 00-105 (D.R.I.) ................................................ 3

*Ungar v. PA,* 153 F. Supp. 2d 76 (D.R.I. 2001) ............................................... 4

*Ungar v. PA,* 2003 WL 21254790 (1st Cir. 2003) ...........................................

*Ungar v. PA,* 215 F.R.D. 36 (D.R.I. 2003) .................................................... 4

*Ungar v. PA,* 228 F. Supp. 2d 40 (D.R.I. 2002) ............................................... 4

*Ungar v. PA,* 315 F. Supp. 2d 164 (D.R.I. April 23, 2004) ................................... 4

*Ungar v. PA,* 325 F. Supp. 2d 15 (D.R.I. 2004) ........................................... 4, 5

*Ungar v. PA,* 412 F. Supp. 2d 328, 334 (S.D.N.Y. 2006) ................................... 6, 7

*Weiss v. Nat'l Westminster Bank, PLC,* 242 F.R.D. 33 (E.D.N.Y. 2007) ...................... 6

## Statutes and Regulations

*Prince, Richardson on Evidence* § 3-104, at 55 [Farrell 11th ed.] .............................. 17

CPLR § 306-b ................................................................................................................. 18

CPLR § 5225 ............................................................................................................... 8, 19

18 U.S.C. § 2331 ............................................................................................................... 3

## BRIEF FOR APPELLANTS

## PRELIMINARY STATEMENT

Plaintiffs-Appellants ("Plaintiffs" or "Ungars") hold an unsatisfied final judgment against the Palestinian Authority (also known as the "Palestinian National Authority") ("PA").

In this declaratory judgment action, the Ungars seek to determine the ownership of securities held by Swiss American Securities, Inc. ("SASI"), a New York-based subsidiary of Credit Suisse, in an account titled "Palestinian Pension Fund of the State Administrative Employees Represented by the Palestinian National Authority."

The named defendants in this action are judgment debtor Palestinian Authority[1] and The Insurance and Pension Fund.

Defendant Insurance and Pension Fund claims to own the securities held by SASI, despite the fact that the securities are neither titled to nor controlled by defendant Insurance and Pension Fund.

---

[1] As discussed *infra*, the Ungars attempted service on the PA but apparently service was not perfected. Even assuming service had been perfected the PA would have been in default years ago but no default judgment against it was timely sought. Thus, this matter is proceeding against the Insurance and Pension Fund only.

The Ungars maintain that the fact that the SASI securities are neither titled to nor controlled by defendant Insurance and Pension Fund gives rise to a rebuttable presumption that the Insurance and Pension Fund does not own the securities, and that the Insurance and Pension Fund therefore bears the burden to prove at trial that it owns the securities.

The Ungars further maintain that because defendant Insurance and Pension Fund bears the burden of proof, the Insurance and Pension Fund should be required to present its case at trial first.

Defendant Insurance and Pension Fund disagrees with the Ungars' position, and maintains that it is their burden to prove that the Insurance and Pension Fund does not own the securities at issue.

In order to settle this issue, the Ungars moved by order to show cause for a ruling that (a) defendant Insurance and Pension Fund bears the burden to prove at trial that it owns the SASI securities, and (b) defendant Insurance and Pension Fund shall present its case first at trial.

The court below denied the Ungars' motion in an order from the bench on November 25, 2009.

The Ungars now appeal from that order.

## QUESTIONS PRESENTED

1)      Does defendant Insurance and Pension Fund bear the burden of proof at trial that it owns the securities at SASI?

2)      Should defendant Insurance and Pension Fund be required to present its case first at trial?

## STATEMENT OF RELEVANT FACTS

### A.     The Underlying Judgment

The Ungars are the orphaned children, parents, siblings and administrator of the estate of United States citizen Yaron Ungar, who was murdered, along with his pregnant wife Efrat Ungar, in a terrorist machine-gun attack on June 9, 1996, in Israel.

In March 2000, the Ungars filed suit against the PA, the Palestine Liberation Organization ("PLO") and other defendants in the United States District Court for the District of Rhode Island under the Antiterrorism Act ("ATA") 18 U.S.C. § 2331, *et seq. Ungar et al. v. PA, et al.,* C.A. 00-105 (D.R.I.).

The PA and PLO retained former U.S. Attorney General Ramsey Clark to defend the suit and filed repeated motions to dismiss on multiple grounds and an interlocutory appeal, all of which were rejected.[2]

Though PA and PLO repeatedly invoked the authority of the Rhode Island federal court and the First Circuit in order to dismiss the suit, when their arguments were rejected they refused to answer the complaint or conduct any discovery.

Accordingly, on July 12, 2004, the Rhode Island federal court ordered entry of final judgment for the Ungars and against the PA and PLO, jointly and severally, in the amount of $116,409,123.00 in damages. *Ungar v. PA*, 325 F. Supp. 2d 15 (D.R.I. 2004).

The PA and PLO appealed to the First Circuit, which affirmed the judgment, and the Supreme Court denied a petition for certiorari. *PLO v. Estate of Ungar* 402 F.3d 274 (1st Cir. 2005) *cert. denied* 126 S.Ct. 715 (2005).

---

[2] *See Ungar v. PA*, 153 F. Supp. 2d 76 (D.R.I. 2001); *Ungar v. PA*, 228 F. Supp. 2d 40 (D.R.I. 2002); *Ungar v. PA*, 215 F.R.D. 36 (D.R.I. 2003); *Ungar v. PA*, 2003 WL 21254790 (1st Cir. 2003); *Ungar v. PA*, 315 F. Supp. 2d 164 (D.R.I. April 23, 2004).

Upon entering final judgment, the Rhode Island federal court emphasized the importance that it attached to the judgment being honored and enforced:

> The PA and PLO ... are responsible for and must bear the ultimate burden of providing compensation, which this Court fully acknowledges will never return to Plaintiffs the relationships and lives that existed prior to June 9, 1996. This Court hopes that in keeping with the ATA's purpose to deter acts of international terrorism, its judgment will "interrupt or at least imperil the flow of terrorism's lifeblood, money," and thus, prevent the PA and PLO from funding future terrorist acts such as the one that resulted in the Ungars' horrific deaths.

*Ungar*, 325 F. Supp. 2d at 25.

Nearly <u>five and a half years</u> have passed since the federal court penned this powerful statement, but the PA and PLO have refused to satisfy the Ungars' judgment, and have informed the Ungars' counsel that they "will never pay" the judgment. This contumacious refusal is merely the encore to years of intentional delay created by PA and PLO during the underlying suit. *Ungar*, 325 F. Supp. 2d at 26, 62 (finding that PA and PLO took "deliberate actions to delay the completion of this litigation" and "sought to delay these proceedings as long as possible"). *See also, Estate of*

-5-

*Ungar ex rel. Strachman v. PA*, 44 A.D.3d 176, 841 N.Y.S.2d 61, 65 (1st Dep't 2007) (Noting the PA's "documented history of engaging in dilatory tactics to plaintiffs' detriment in the underlying and other litigation"); *Ungar v. PA*, 412 F. Supp. 2d 328, 334 (S.D.N.Y. 2006) (the Ungars are faced with "an elusive... judgment-debtor.").

The refusal of the PA and PLO to honor the judgment harms not only the Ungars, but the interests of the United States, since by enacting the Antiterrorism Act "Congress...explicitly granted private parties the right to pursue common tort claims against terrorist organizations and those that provide material support or financing to terrorist organizations" and such "private tort actions directed at compensating victims of terrorism and thwarting the financing of terrorism vindicate the national and international public interest." *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 50 (E.D.N.Y. 2007).

## B.   Relevant Aspects of the Proceedings Below

Because of the refusal of the PA and PLO to honor the judgment, the Ungars were compelled to undertake the burdensome and expensive task of seeking out assets of the PA and PLO across the county

-6-

and abroad—a task made extraordinarily difficult by the fact that the PA
and PLO hold the vast majority of their assets under various aliases. *See
Ungar,* 412 F. Supp. 2d at 334 (the PA is "an elusive… judgment-debtor.").

In 2005, the Ungars learned that Swiss American Securities, Inc.
("SASI"), a New York-based securities custodian, was holding a portfolio
of stocks and bonds in an account titled in the name "Palestinian Pension
Fund of the State Administrative Employees Represented by the
Palestinian National Authority." (R. 77-83, 115, 121, 124, 127, 132-65).

Plaintiffs' research revealed that these SASI assets had been
purchased by the PA with funds transferred by Israel in 1995, that the
assets were owned by the PA, and that the name appearing on the
account—"Palestinian Pension Fund of the State Administrative
Employees Represented by the Palestinian National Authority"—does not
denote any actual entity, but is merely a fictitious name invented and used
by the PA to conceal the true ownership and nature of these funds.[3]

---

[3] Indeed, during discovery the defendant admitted that no
pensions have ever been paid out of the SASI assets.

-7-

Several months after the Ungars restrained the SASI assets (in May 2005) defendant Insurance and Pension Fund suddenly appeared to challenge the restraint. The Insurance and Pension Fund asserted that the name on the account—"Palestinian Pension Fund of the State Administrative Employees"—is actually an alias of the Insurance and Pension Fund, not of the PA, and that the SASI assets therefore belong to the Insurance and Pension Fund and not the PA.

The Ungars then filed this action seeking a declaration that the Insurance and Pension Fund has no rights to the SASI–held securities, as well as a turnover proceeding against SASI under CPLR § 5225, which was dismissed without prejudice to renewal after conclusion of the instant action. (R. 584-97; 23:19-24:12).[4]

---

[4] The instant action also sought a declaration that the securities at SASI are owned by the PA. However, as discussed below, this action is now proceeding solely against the Insurance and Pension Fund because service on the PA was evidently never perfected and because even if service had been made default judgment against the PA was not timely sought. If the Ungars obtain the declaration they are seeking that the Insurance and Pension Fund has no rights to the SASI securities they will renew their turnover proceeding against SASI under CPLR § 5225. With the Insurance and Pension Fund, the sole claimant to the securities, then out of the picture, grant of the turnover proceeding will be effectively automatic.

This case then proceeded to discovery, following which the Insurance and Pension Fund moved for summary judgment and the Ungars cross-moved for summary judgment.

The Ungars' motion papers were supported by the affidavits testimony of Dr. Jacques Neriah, who personally managed the very assets at issue for three years; of Col. Daniel Reisner, Adv., who personally negotiated and drafted the Oslo Accords pursuant to which these assets were transferred to the PA; and of Col. Shlomo Politis, Adv., who served as the Legal Advisor in the Gaza Strip during the relevant period.

These witnesses confirmed, as the Ungars assert, that the securities are the property of the PA, that the name "Palestinian Pension Fund of the State Administrative Employees" is merely a fictitious doing-business-as name invented by the PA, and that the Insurance and Pension Fund's claim to own these assets is false.

Plaintiffs' motion papers were also accompanied by a certification issued by attorney James Tanenbaum of Morrison & Foerster, LLP (the Insurance and Pension Fund's own counsel) confirming that the "Palestinian Pension Fund of the State Administrative Employees" has "no legal personality," as well as a protocol from an Insurance and Pension

Fund board meeting stating that the Insurance and Pension Fund was merely being used as a "cover" by the PA for these assets.

In short, the evidence produced by the Ungars completely refuted the Insurance and Pension Fund's story, and proved that the assets at issue are the property of the PA, just as alleged in the complaint.

On June 5, 2008 the court below entered a decision and order denying the parties' motions for summary judgment. That decision and order was not published, but a copy is being submitted to the Court together with this brief.

During the course of pre-trial preparations a dispute developed between the parties regarding the burden and order of proof at trial. Accordingly, the Ungars moved for a ruling that (a) the Insurance and Pension Fund bears the burden to prove at trial that it owns the SASI securities, and (b) the Insurance and Pension Fund shall present its case first at trial. (R. 67-579, 625-26).

The court below denied the Ungars' motion in an order from the bench on November 25, 2009. (R. 7-30, 66).

For the reasons set forth below that decision was erroneous and should be reversed.

POINT I

DEFENDANT INSURANCE AND PENSION FUND HAS THE BURDEN TO PROVE THAT IT OWNS THE SECURITIES AT SASI

A.    Possession Gives Rise to a Presumption of Ownership

It is well established that possession of property gives rise to a rebuttable presumption of ownership:

> Under New York law, the party who possesses property is presumed to be the party who owns it. *See Pollock v. Rapid Indus. Plastics Co.,* 113 A.D.2d 520, 525, 497 N.Y.S.2d 45, 49 (2d Dep't 1985) (noting that "possession of tangible property...creates a rebuttable presumption of ownership"). When a party holds funds in a bank account, possession is established, and the presumption of ownership follows. *See Kolodziejczyk v. Wing,* 261 A.D.2d 927, 928, 689 N.Y.S.2d 825, 825 (4th Dep't 1999) (joint bank account creates rebuttable presumption of ownership in joint possessors); *Perkins v. Guaranty Trust Co. of New York,* 274 N.Y. 250, 261, 8 N.E.2d 849, 853 (1937) (possession of stock certificates creates rebuttable presumption of ownership).

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 313 F.3d 70, 86 (2d Cir. 2002). *See also, e.g.. EM Ltd. v. Republic of Argentina,* 473 F.3d 463, 473-74 (2d Cir. 2007) (same); *Estate of Crockett,* 247

-11-

A.D.2d 286, 668 N.Y.S.2d 620 (1st Dep't 1998); *Benjamin v. Benjamin*, 106 A.D.2d 599, 600, 483 N.Y.S.2d 418, aff'd. 65 N.Y.2d 756, 492 N.Y.S.2d 31 (1985).

The assets at issue in the instant case are stocks and bonds held on the books of a third-party securities custodian who is not, and does not claim to be, the owner. Therefore, the "possessor"—and so presumptive owner—of the SASI assets is the entity to which the securities are titled and which has signatory power over the account holding the securities.

**B.    The Assets at Issue Here Are Neither Titled to Nor Controlled by the Insurance and Pension Fund**

It is undisputed that the securities at issue in this case are held in an account titled to the "Palestinian Pension Fund of the State Administrative Employees Represented by the Palestinian National Authority." (R. 77-83, 115, 121, 124, 127, 132-65).

Likewise, the account-opening documents and the documents identifying the signatories over the securities account at issue all clearly show that the exclusive signatory power over the account is held by the so-called "Palestinian Pension Fund of the State Administrative Employees"—

and <u>not</u> by defendant Insurance and Pension Fund. (R. 77, 83, 115, 121, 124, 127, 132-36).

Thus, the presumptive owner of the assets at issue is the so-called "Palestinian Pension Fund of the State Administrative Employees Represented by the Palestinian National Authority" (whatever that may be[5]), and <u>not</u> the defendant Insurance and Pension Fund.

## C.   The Legal Name of Defendant Insurance and Pension Fund Is "Insurance and Pension Fund" or "Insurance and Pension General Corporation"

Defendant Insurance and Pension Fund claims that it is the owner of the assets at issue because it is also sometimes known as the "Palestinian Pension Fund of the State Administrative Employees":

> [Defendant Insurance and Pension Fund] asserts that this "Fund" has been referred to over the years by a number of names, including the Insurance and Pension Fund, the Pension Fund of the Civil Administration Employees in the Gaza Strip, The Pension Fund of the State Administrative Employees,

---

[5] The Ungars assert that the name "Palestinian Pension Fund of the State Administrative Employees" does not denote a separate legal entity but is only a D/B/A name used by the PA for these assets, which are owned by the PA itself. (R. 590-95).

and the Insurance and Pension General Corporation, and "similar variations."

(Summary Judgment Decision and Order, 6/5/08, p. 8.)

However, it is undisputed that the statutory legal name of defendant Insurance and Pension Fund under the Egyptian and Palestinian laws cited by the Insurance and Pension Fund itself is the "Insurance and Pension Fund." (R. 173-381). That is also the name used in the Insurance and Pension Fund's own board minutes. (R. 382-569).[6]

Thus, the legal name of defendant Insurance and Pension Fund is "Insurance and Pension Fund."

Obviously, defendant Insurance and Pension Fund bears the burden to prove that it is also known by a name other than its legal name, *i.e.*, that it is also known as the "Palestinian Pension Fund of the State Administrative Employees."

----

[6] According to the minutes of the Insurance and Pension Fund's board, it used to be called the "Insurance and Pension Fund Department" (R. 166-72, 570-74), and on June 11, 1996 board changed its name to the "Insurance and Pension General Corporation" ("IPGC," or in some of the documents "GIPC"). (R. 575-79).

By analogy, if a party whose legal name, as reflected on his birth certificate, was John Smith, came to court claiming to own funds titled to "Fred Jones" because he is allegedly also sometimes known as "Fred Jones," it would obviously be his burden to prove this claim.

Indeed, not only does the Insurance and Pension Fund bear the burden on this alias claim, but in its June 5, 2009 order denying the Insurance and Pension Fund's motion for summary judgment, the court below expressly found in the summary judgment decision and order that the Insurance and Pension Fund had failed to provide evidence for this claim. *See id.*, at 8. (Finding that the Insurance and Pension Fund "has not presented evidence that adequately explains the use different names for what they now say is the same Pension Fund.").[7]

---

[7] In order to "support" its claim that it is sometimes also known as the "Palestinian Pension Fund of the State Administrative Employees," defendant Insurance and Pension Fund has resorted to the puerile tactic of improperly captioning its filings using the name "Defendant the Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip." *See, e.g.,* R. 598, n. 1. This is an absurd ploy: the entire controversy in this case is whether or not the Insurance and Pension Fund is also known as "Palestinian Pension Fund of the State Administrative Employees." Yet, instead of filing papers under the its statutory legal name and then <u>litigating</u> the question of whether it is also known as the

*(continued next page)*

Moreover, in its opposition to the Ungars' motion to determine the burden and order of proof the Insurance and Pension Fund did not deny — <u>and so conceded</u> — that its legal name is "the Insurance and Pension Fund," that the assets at issue are neither titled to the Insurance and Pension Fund nor in its possession or control and that therefore, as a matter of law a presumption exists that the Insurance and Pension Fund <u>is not the owner of the assets.</u> (R. 580-624).

### E.    The Insurance and Pension Fund Bears the Burden of Proof

In light of the above it is absolutely clear that defendant Insurance and Pension Fund bears the burden of proof in this case. The assets at issue are concededly not in the possession or control of the Insurance and Pension Fund, and therefore are presumed not to be owned by the Insurance and Pension Fund.

---

"Palestinian Pension Fund for the State Administrative Employees" the Insurance and Pension Fund seeks to <u>prejudge</u> that very question by captioning its pleadings using its alleged <u>alias</u>, rather than its acknowledged legal name. The Court should not be taken in by this stratagem.

It is beyond cavil that "a rebuttable presumption ... shifts the burden of proof." *Baez v. City of New York*, 278 A.D.2d 83, 83-84, 717 N.Y.S.2d 584 (1st Dep't 2000). *See also Prince, Richardson on Evidence* § 3-104, at 55 [Farrell 11th ed.] (The effect of a presumption is to "place the burden upon the adversary to come forward with evidence to rebut the presumption.").

Since the Insurance and Pension Fund has failed to prove its claim that it is also known as the "Palestinian Pension Fund of the State Administrative Employees" (as the court below expressly found upon denying the Insurance and Pension Fund's motion for summary judgment) it has therefore failed to rebut the presumption that it does not own the assets at issue, and so bears the burden of proof at trial.

## F.    The Court Below Erred in Denying the Ungars' Motion

The court below denied the Ungars' motion on the ground that, because their complaint also sought a declaration that the PA owns the securities at SASI, the Ungars are required to make out a prima facie case. (R. 29-30).

This holding is erroneous for two interrelated reasons.

*First*, even if the Ungars had to make out a prima facie case against the PA, that does not mean they are required to do so in respect to the Insurance and Pension Fund.

*Second*, as a matter of fact, the instant case is proceeding against the Insurance and Pension Fund <u>only</u>. The Ungars attempted to serve process on the PA but to the best of their knowledge service was never perfected and the claims asserted in this action as against the PA therefore should be dismissed without prejudice pursuant to CPLR § 306-b.

Moreover, even assuming, purely *arguendo*, that service had been perfected on the PA (and the Ungars have no reason to believe that this is the case), that would mean that the PA defaulted years ago, and that any attempt by the Ungars to obtain a default judgment against the PA would be grossly untimely. *See* CPLR § 306-b.

At oral argument on their motion the Ungars made precisely this argument to the court below. (R. 12) ("More than a year has passed, we can't force [the PA] to do anything in this case. We can't make—they are not before the Court, they are not participating in this trial, they are not putting on evidence, and the relief that we requested as against the

-18-

Palestinian Authority necessarily can't be heard or can't be granted here because they are not here.").

Thus, the trial in this action will therefore decide <u>one and one question only</u>: the claim of the Insurance and Pension Fund to own the assets at issue which, as shown above, are not titled in the name of, or in the possession of, the Insurance and Pension Fund—which claim is based entirely on the assertion that the Insurance and Pension Fund is also sometimes known as the "Palestinian Pension Fund of the State Administrative Employees."[8]

Accordingly, the burden is on the Insurance and Pension Fund to prove this, the sole issue to be tried.[9]

---

[8] In an effort to sow confusion regarding the real question at issue the Insurance and Pension Fund has spilled oceans of ink in the court below arguing that it is a legal entity separate from the PA. The Ungars have never asserted otherwise. The Ungars assert only that the Insurance and Pension Fund has never been known as "Palestinian Pension Fund of the State Administrative Employees" and does not own SASI assets. The question of whether it is a separate entity is thus entirely irrelevant.

[9] If the Ungars prevail, the Insurance and Pension Fund, which is the sole claimant of these securities, will be sidelined, and the Ungars will then seek turnover against SASI under CPLR § 5225.

## POINT II

## DEFENDANT INSURANCE AND PENSION FUND SHOULD BE REQUIRED TO PRESENT ITS CASE FIRST

Since the PA is not part of this case and since the sole issue to be litigated at trial is the Insurance and Pension Fund's claim to own assets which are neither titled to it nor under its control—a claim on which it bears the burden of proof—the Insurance and Pension Fund should be required to present its case at trial first.

## CONCLUSION

For the reasons set forth above, the order of the court below should be reversed, with costs.

Dated:     New York, New York
           January 4, 2010

Respectfully submitted,

JAROSLAWICZ & JAROS, LLC
*Attorneys for the appellants*

by: *Robert J. Tolchin*
    Robert J. Tolchin

225 Broadway, 24th floor
New York, New York 10007
(212) 227-2780

-20-

## PRINTING SPECIFICATIONS STATEMENT

This brief was prepared on a computer using Microsoft Word. The font is Book Antiqua, 14 point, double spaced. The word count of the body of the brief, as calculated by Microsoft Word, is 3,883 words.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x
THE ESTATE OF YARON UNGAR by and through          Index No. 102101/06
its Administrator, DAVID STRACHMAN, et al.,

                                               **CPLR § 600.17 STATEMENT**

                     Plaintiffs,

                -against-

THE PALESTINIAN AUTHORITY, et al.,

                    Defendants.
-----------------------------------------------------------------x

C O U N S E L O R S :

        THE FOLLOWING is the plaintiffs' statement pursuant to CPLR § 600.17:

    1.    The index number of this action 102101/06.

    2.    The full names of the parties are as appear in the caption above.

    3.    This action was commenced in Supreme Court, New York County.

    4.    This action was commenced on February 14, 2006.

    5.    This is a declaratory judgment proceeding.

    6.    This is an appeal from an order.

    7.    This appeal will be perfected on a full record.

Dated: New York, New York
       November 23, 2009

                                   JAROSLAWICZ & JAROS LLC
                                   *Attorneys for the Plaintiffs*

                                   By:_____
                                     Robert J. Tolchin, of Counsel
                                225 Broadway, 24th Floor
                                New York, New York 10007
                                (212) 227-2780

TO:

Charles L. Kerr
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0050
(212) 468-8000

Harold J. McElhinny (Admitted *Pro Hac Vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
(415) 268-7000

*Attorneys for Defendant The Palestinian*
*Pension Fund for the State Administrative*
*Employees in the Gaza Strip*