# Exhibit P

061605PMA.txt

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
* * * * * * * * * * * * CIVIL ACTION
PALESTINE MONETARY     * NO. 05-261L
AUTHORITY              *
                       *
VS.                    * JUNE 16, 2005
                       *
DAVID STRACHMAN, et    *
al                     * PROVIDENCE, RI
* * * * * * * * * * * *
```

HEARD BEFORE THE HONORABLE RONALD R. LAGUEUX

SENIOR DISTRICT JUDGE

(PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION)

APPEARANCES:

FOR THE PLAINTFFS:     HAIG V. KALBIAN, ESQ.
                       Kalbian Hagerty, LLP
                       888 17th Street
                       Suite 1000
                       Washington, DC   20006
                       (202) 223-5600

FOR THE DEFENDANTS:    DAVID J. STRACHMAN, ESQ.
                       McIntyre, Tate, Lynch &
Holt
                       321 South Main Street
                       Providence, RI   02903

Page 1

061605PMA.txt

                                    (401) 351-6095

Court Reporter:         Anne M. Clayton, RPR
                        One Exchange Terrace
                        Providence, RI   02903

☐

2


       1            THE COURT:  Good afternoon, everyone.  The

       2        matter before the Court is Civil Action 05-261L,

       3        the Palestine Monetary Authority versus David

       4        Strachman as Administrator of the Estates of
Yaron

       5        Ungar and Erfat Ungar, et al.

       6            The matter is here on plaintiff's motion

       7        for a preliminary injunction.

       8            Will the attorneys identify themselves
for

       9        the record, please.

      10            MR. SARLI:  Good afternoon, your Honor.

      11        Mike Sarli for the Palestinian Monetary
Authority.

      12        And I'd like to introduce your Honor to Haig

      13        Kalbian, who is counsel also for the Palestinian

      14        Monetary Authority.

      15            With your permission, your Honor, he will

      16        be presenting the argument today.

      17            THE COURT:  All right.  I've just granted

      18        his application to appear pro hac vice.

                              Page 2

061605PMA.txt

| | |
|---|---|
| 19 | MR. KALBIAN:  Thank you, your Honor. |
| 20 | MR. STRACHMAN:  Good morning, your Honor. |
| 21 | David Strachman for the defendant.  With me is |
| 22 | Robert Tolchin who represents the defendant in |

the

| | |
|---|---|
| 23 | same parallel action that was filed last Monday |

in

| | |
|---|---|
| 24 | New York.  We also filed a motion for admission |
| 25 | pro hac vice. |

□

3


| | |
|---|---|
| 1 | THE COURT:  I've granted that. |
| 2 | MR. STRACHMAN:  Thank you. |
| 3 | THE COURT:  Well, I'll hear from the |
| 4 | plaintiff's side first.  Is the plaintiff |
| 5 | presenting any evidence? |
| 6 | MR. KALBIAN:  No, your Honor. |
| 7 | THE COURT:  All right.  You may proceed. |
| 8 | MR. KALBIAN:  Thank you, your Honor. |
| 9 | Again, my name is Haig Kalbian.  I'm with the law |
| 10 | firm of Kalbian Hagerty, LLP, Washington, D.C., |
| 11 | and I represent the plaintiff, Palestine Monetary |
| 12 | Authority, in this matter. |
| 13 | Your Honor, just by way of background, |
| 14 | initially, this matter is obviously related to an |

Page 3

061605PMA.txt

15    underlying case that's been before your Honor for

16    a number of years.  And from the caption of the

17    case it appears to be a case that was filed back

18    in 2000, the Estate of Ungar against the various

19    parties including the Palestine Authority and the

20    PLO.

21        The reason we are here, however, your

22    Honor, is as a result of an injunction that this

23    court issued on May 5th of this year.  And this

is

24    an injunction that was issued in the underlying

25    case, I'll call it for ease of reference the

Ungar

4

1    litigation.  It was an injunction that was sought

2    or obtained by the plaintiffs in the Ungar

3    litigation.

4        Now, it's critical to note at the outset

5    that the Palestine Monetary Authority was not a

6    defendant in the Ungar litigation.  Your

7    injunction, your Honor, appears to be clear on

its

8    face.  However, four days later on May 9th,

9    counsel for the Ungar plaintiffs proceeded to

Page 4

061605PMA.txt

10      prepare a document that's attached as Exhibit 2,

11      your Honor, to the Complaint that we filed.

12          And it's important to look closely at this

13      document.  It was prepared by, as I said, by the

14      attorney for the judgment creditors, the

15      plaintiffs in the Ungar litigation.  And it

16      purports to be a notice of injunction issued

17      pursuant to Federal Rule Civil Procedure 65(d).

18          And we would respectfully submit that this

19      notice of injunction prepared by counsel four days

20      after this Court issued an injunction

21      impermissibly expanded the scope of your Honor's

22      injunction.

23          The document purports to be issued

24      pursuant to Federal Rule Civil Procedure 65(d).

25      We've checked 65(d), actually checked the entire

□

5

1      Rule 65.  I have not seen anything in the rules

2      that permits counsel to piggyback, if you will, on

3      an injunction and then sui sponte prepare a notice

4      of injunction that alters, expands and radically

Page 5

061605PMA.txt

 5          changes, we believe, the intent of the injunction

 6          that your Honor issued on May 5th.

 7              The important language in this notice of

 8          injunction, again, this is Exhibit 2 to the

 9          Complaint, appears in the middle of the page, your

10          Honor.  It says, "Take further notice that the

11          injunction applies to all assets of the PA and the

12          PLO how ever titled, and that assets of the PA and

13          PLO are held and/or titled under the names" and

14          then there's a string of entities.  I don't

15          believe any of those entities were defendants in

16          the Ungar litigation.  And the last entity

17          mentioned is the Palestine Monetary Authority as

18          your Honor can see.

19              Now, this statement, your Honor, is not

20          true.  As we've demonstrated in the affidavit that

21          we've submitted by the governor of the Palestine

22          Monetary Authority, the PMA for short, does not

23          hold any assets of the PA or the PLO nor are the

24          assets of the PA and PLO held or titled under the

25          names of the PMA.

Page 6

061605PMA.txt

6

                1         Now, equipped with this notice of

                2    injunction, counsel for the judgment creditors

                3    proceeded to serve the Bank of New York.  We

                4    believe he may have served other banks as well,

                5    but for our purposes he served the Bank of New

                6    York in New York.  And upon receipt of this
notice

                7    of injunction along with the injunction, to be

                8    fair, the Bank of New York proceeded to freeze

                9    approximately $30,000,000 essentially of the
PMA's

                10   money.  That was done on or about the 18th of May

                11   or about nine days after this notice of
injunction

                12   is dated.

                13        The PMA through its governor found out

                14   about this at or about the same time, May 18th.

                15   Obviously, it raised a lot of concern.  The PMA

                16   tried to contact the Bank of New York to try to

                17   find out what exactly was happening.  The PMA
then

                18   moved as expeditiously as possible, given that
the

                19   PMA is located on the other side of the globe, to

                20   get as much documentation together including this

                               Page 7

061605PMA.txt

21    report prepared by its auditors, which is

22    instructive, we believe.  This is Exhibit 4 to
the

23    Complaint, issued by the international accounting

24    firm of Saba and Company, which states -- and
this

25    is dated May 25th, which states that, in fact,
the
□

7

1    PMA is a legal person independent of the PA and

2    proceeds to lay out on the balance sheet of the

3    PMA the fact that we believe is crystal clear
that

4    the PMA or that the PA and PLO assets are not
held

5    or titled in the name of the PMA, notwithstanding

6    the notice of injunction that was issued by

7    counsel for the judgment of creditors.

8         Events began to move rather fast.  The

9    governor of the PMA, Mr. Abed, arrived in the
U.S.

10    the weekend of Memorial Day equipped with much of

11    this documentation, including but not limited to

12    Exhibit number 6 -- I'm sorry, Exhibit 4 to the

13    Complaint.  And we retained counsel, myself, and

14    my firm in Washington over the Memorial Day

Page 8

061605PMA.txt

15    weekend.

16         And Tuesday after Memorial Day, we moved

17    expeditiously to file papers in New York.  We

18    tried to file papers on Tuesday.  We were

19    unsuccessful.  We tried to file some papers,

20    actually, in the case that was open by

21    Mr. Strachman, whereby he domesticated the Rhode

22    Island judgment, this Court's judgment.  And we

23    were told by the clerk, well, you're not a party

24    to that case; you need to open a new case.

25         We did that on Friday, June 3rd.  On

□

8

1    Friday, June 6th, we appeared before a Supreme

2    Court judge in New York, who basically referred

3    us, if you will, back to Rhode Island.

4         THE COURT:  But he has the matter.  He's

5    hearing the matter.

6         MR. KALBIAN:  I'm sorry?

7         THE COURT:  He's hearing the matter.

8         MR. KALBIAN:  He's hearing the matter.

9    Actually, he's passed the case on to a different

10    judge in New York.  I don't know if your Honor's

11    had a chance to look at the transcript.

Page 9

061605PMA.txt

12          THE COURT:  I did.  I read the whole

13      transcript.  I've read all the material, every

14      word, every bit of material that you've submitted

15      to me.  And it's clear that the case is pending

in

16      the Supreme Court of New York.

17          MR. KALBIAN:  Yes, your Honor.  And we

18      filed it in New York for a reason.

19          THE COURT:  It was only a suggestion on

20      his part that you come and visit with me.

Whether

21      that visit is going to be fruitful is something

22      else again.

23          MR. KALBIAN:  I understand.  We took it

as

24      a strong suggestion, your Honor, and I think

since

25      the injunction and the notice of injunction

□

9

1      emanated from Rhode Island and as a result of the

2      Ungar litigation, we felt that it would be best

to

3      come back before your Honor to seek --

4          THE COURT:  One of the problems you have

5      is that it seems to me an indispensable party is

6      the Bank of New York, and it is not a party to

Page 10

061605PMA.txt

7        this litigation that you have filed.

8            So I, frankly, don't know what you're

9        asking me to do.  You're asking me to issue some

10       sort of a preliminary injunction, but I don't
know

11       what that means.  Do you want me to enjoin the

12       Bank of New York from doing something?

13           MR. KALBIAN:  No.  What we'd like your

14       Honor to do is look at the injunction and then

15       look at the notice of injunction that has been

16       prepared.

17           THE COURT:  I have.

18           MR. KALBIAN:  And to basically deem the

19       notice of injunction void because it

20       impermissibly, we would respectfully submit,

21       expands the scope of the injunction and it

22       contains a statement that the Bank of New York

23       relied on, that is that the assets of the PA and

24       PLO are titled in the name of PMA.  That simply,

25       your Honor, is not true.

☐

10

1            THE COURT:  I don't know what the Bank of

2        New York relied on.  What's clear from my

Page 11

061605PMA.txt

3          injunction is that the PA and the PLO and any

4          agents who are enjoined from sending any funds or

5          properties outside this country.  Now, the Bank
of

6          New York must have made a decision that they

7          thought that the PMA was an agency of the PA or

8          the PLO and had funds of the PA and PLO.  And

9          therefore, they froze because otherwise they
could

10         be held in contempt for not observing the

11         injunction.  But the injunction runs against the

12         PA and the PLO and any agents.

13              And that's the question I'd have to
decide

14         here.  You show me that the Monetary Authority is

15         not an agency of the PA, and you show me that the

16         Authority has no funds belonging to the PLO or
the

17         PA.

18              MR. KALBIAN:  Well, I think to address

19         your latter part --

20              THE COURT:  That's what you have to do in

21         order to get any kind of relief from me, but

22         still, it seems to me that any relief that I
might

23         grant you is of no consequence, because it's

24         really the Bank of New York that has frozen these

Page 12

061605PMA.txt

25          funds.   And I don't know why the Bank of New York
□

11


1           froze these funds.

2                   MR. KALBIAN:   Well, we believe the Bank
of

3           New York froze the funds because of the notice of

4           injunction.

5                   THE COURT:   We don't know that.   And we

6           don't have anybody here from the Bank of New York

7           who will tell us why they acted that way and why

8           they're concerned about this matter.

9                   MR. KALBIAN:   As I read the injunction,

10          your Honor, and obviously I have not been
involved

11          in the Ungar litigation at all nor has my client,

12          but as I read your Honor's injunction, it says,

13          "It is hereby ordered and decreed that the PA and

14          the Palestinian Liberation Organization and their

15          officers, agents, servants, et cetera are hereby

16          prohibited, restrained and enjoined from

17          withdrawing, transferring, assigning, et cetera,

18          or in any way removing or affecting a disposition

19          directly or indirectly any and all assets of the

20          PA and/or the PLO how ever titled."
                        Page 13

061605PMA.txt

```
       21            So assuming arguendo without conceding

       22       that the PMA, and again we don't concede this,
is,
       23       in fact, an officer, agent, servant, the fact of

       24       the matter is the PMA does not meet the second

       25       part of this injunction.  And that is that the
PMA
□
12

        1       does not hold any assets of the PA and/or the
PLO.
        2            THE COURT:  That's a question that I'd

        3       have to decide, and it seems to me it requires a

        4       good deal of evidence.

        5            MR. KALBIAN:  I understand, your Honor.

        6       And frankly --

        7            THE COURT:  I had decided off the top of

        8       my head based on the papers that I've read, it

        9       would appear to me that the Authority does have

       10       assets of the PA and the PLO because of certain

       11       transactions that were stayed here indicate to me

       12       that funds of the PA and PLO were being

       13       transferred at least through the Bank of New York

       14       to various offices or embassies, whatever they
may
       15       be titled.
```

Page 14

061605PMA.txt

                16              MR. KALBIAN:  And you make a good point,

                17      your Honor.  And if I could kind of walk you

                18      through the schedule that's attached as Exhibit 6

                19      to our papers, which is the document generated by

                20      the Bank of New York.  And you see here from that

                21      schedule that the Bank of New York has apparently

                22      frozen assets belonging to the PA and the PLO

                23      pursuant to your Honor's injunction which they

                24      received.

                25              However, they've also lumped together

□

13


                1       other transactions involving the PMA and the
PMA's

                2       name, the Palestine Monetary Authority's name is

                3       not mentioned in your injunction.  It's only

                4       mentioned, your Honor, in the notice of

                5       injunction.

                6               So arguably, Mr. Strachman may, in fact,

                7       be entitled to some of these funds belonging to
PA

                8       and the PLO that had been ensnared or frozen by

                9       the Bank of New York.  But that's not my client.

                10      My client is the Palestine Monetary Authority.

                11      And just because they show up, I would

                                        Page 15

061605PMA.txt

12        respectfully argue, on the same schedule
generated

13        by the Bank of New York as the PA and the PLO
does

14        not make them an agent or a party that is holding

15        assets of the PA or the PLO.  And all the Court

16        has in front of it at this time is Mr. Abed's

17        affidavit.  He's the governor of the PMA, an

18        educated gentleman, degree from University of

19        California at Berkeley, formerly with the

20        International Monetary Fund where he held one of

21        the highest positions.  He's given, your Honor, a

22        sworn declaration under penalty of perjury, and
if

23        he was here, I would put him on the stand to

24        testify.  Obviously events have moved fast.  He

25        had to go back to take care of the business of
the
□

14

1         PMA.

2              But to the extent that this Court wishes

3         to schedule a full evidentiary hearing on a

4         preliminary injunction, we'd be delighted.  In

5         fact, I've got lined up people from U.S.
Treasury,

Page 16

061605PMA.txt

6          people from the Federal Reserve in New York who

7          are willing to vouch for the fact that the PMA

8          does not, does not hold assets of the PA or the

9          PLO and/or assets of those entities, judgment

10         debtors in the Ungar litigation are not titled in

11         the name of the PMA.  And that's why we're here.

12         Suddenly went from these judgment debtors, the PA

13         and the PLO, and without any due process, without

14         any hearing, a notice of injunction appears that

15         suddenly implicates my client without any hearing,

16         without any due process.  And of course, no --

17         there's been no undertaking posted by the Ungar

18         plaintiffs, the judgment creditors, which my

19         reading of Rule 65 especially when you're seizing

20         the assets of a non-party, there's irreparable

21         harm here every day that this situation continues.

22         It is creating potentially a chaotic situation in

23         the Palestinian territories.

24              THE COURT:  They can remedy the situation

25         by posting a bond of $30,000,000 in New York.

15

1          Those funds would be freed.  That's the way they

Page 17

061605PMA.txt

2          can get rid of this problem, and then let it be

3          tried on the merits at some later time.

4                But the problem, the big problem I have

is

5          that I don't know why the Bank of New York acted

6          the way they did.  And they're not a party to

this

7          litigation.  As a matter of fact, it would seem

to

8          me that the proper place for all these arguments

9          are in New York where the judgment has been

10         registered and where this action has been taken

in

11         order to collect the judgment.  And it is

pending.

12         It's pending in the Supreme Court of New York

with

13         all the parties before that court, and it's not a

14         question of the interpretation of my order.  My

15         order is clear.  What has to be determined now

are

16         facts.  And maybe you're prepared to present

those

17         facts, but it seems to me they ought to be

18         presented to the Supreme Court judge in New York.

19               MR. KALBIAN:  Well, obviously that --

20               THE COURT:  Even if you prove what you

say

21         you could prove here, that there are no funds of

Page 18

061605PMA.txt

22          the PA or PLO involved in this $30,000,000, the

23          fact of the matter is it's the Bank of New York

24          that froze, and I don't know why they froze.

25                    MR. KALBIAN:  I can represent to the

Court
□

16

1           that I've had conversations with counsel for the

2           Bank of New York, and they've told me they relied

3           on the injunction, the notice of injunction

4           prepared by the attorney for the judgment

5           creditors, and a restraining order issued by a

6           court in New York that mirrors, essentially, the

7           language of the notice of injunction.

8                    So if you take it back, the problem I

9           would respectfully submit is this notice of

10          injunction.  That triggered the whole sequence of

11          events.  And I believe that this court is best

12          placed respectfully to look at its injunction, to

13          look at this notice of injunction and see that

the

14          two don't add up, don't match up.

15                    THE COURT:  Well, they don't.  Of course

16          they don't.  But the question is, the question

17          is -- the two questions that I posed.  Number

                              Page 19

061605PMA.txt

one,

18          is the Palestine Monetary Authority an agency of

19          the PA or the PLO.  On the face, it looks like it

20          is.  It was created by Yassar Arafat in both

21          capacities as the head of the PA and as the head

22          of the PLO.

23              MR. KALBIAN:  It was actually created by

24          the PLO and by the Israelis as a result of the

25          Oslo Accords.

□

17

1              THE COURT:  It doesn't matter what caused

2          it to be created.  It was created by the
Palestine

3          Authority as an agency of the Palestine
Authority.

4          And then the next question is do they hold funds

5          of the PLO or the PA?  You say no.

6              MR. KALBIAN:  Absolutely.

7              THE COURT:  And I don't know that.  That

8          would have to be proven to me.  And I'm
suggesting

9          that maybe the best place to prove that is in the

10          Supreme Court of New York --

11              MR. KALBIAN:  But I would respectfully --

12              THE COURT:  -- where the Bank of New York
Page 20

061605PMA.txt

13          is a party.  It is not a party here.

14                MR. KALBIAN:  I'd respectfully submit to

15          you that the record as it stands now is such that

16          you have the George Abed affidavit, and that's

17          unrefuted, your Honor.  And if you look at the

18          Abed affidavit --

19                THE COURT:  There may be some questions
of
20          credibility there.  I've read it.  And it seems
to
21          me that, number one, it's all hearsay, because he

22          just came on board a short time ago.  So he can't

23          testify as to what happened when this was
created,
24          whether any funds of the PA were used as capital

25          to capitalize this operation.  He makes a
□
18

1          statement that somehow the funds came out of the

2          air, came out as a result of profits.

3                MR. KALBIAN:  Out of interest income,

4          exactly, generated by the PMA.

5                THE COURT:  Well, it seems to me there
has
6          to be a fund to begin with for some company to

7          start operating or some entity to start
                              Page 21

061605PMA.txt

operating.

   8   So I have some serious questions about that.  I'd

   9   like to see him cross-examined.  I'd like to ask

   10   him some questions.

   11    MR. KALBIAN:  Your Honor, I would be

   12   delighted to bring him here.  I think he makes a

   13   very credible witness, as I've said.  I've got

   14   people who are in Treasury, in the U.S. Treasury

   15   Department now and who were formerly with
Treasury

   16   who assisted and have given technical assistance

   17   to the PMA who have personal knowledge as to the

   18   declarations made in the affidavit, the
statements

   19   made in the affidavit.

   20    THE COURT:  All right.

   21    MR. KALBIAN:  This PMA, if I may
conclude,

   22   your Honor, briefly, the law that's attached to

   23   the papers, I think it's attached to Mr. Abed's

   24   affidavit.

   25    THE COURT:  I saw it.  I've read it all.
□

19

   1    MR. KALBIAN:  For example, it says that

   2   the PMA shall hold currency or gold reserves of

061605PMA.txt

    3        the Palestine Authority.

    4                Well, the fact of the matter is the

    5        Palestinians don't have their own currency.  It's

    6        not a sovereign state so these things have not

    7        happened.  This law was created back in '93.  The

    8        events on the ground have been such since '93
that
    9        most of the elements or articles in this law that

    10       created the PMA created by the Israelis and by
the
    11       PLO have not happened.

    12               For example, the PMA is not the fiscal

    13       agent for the PA.

    14               THE COURT:  I understand those things.  I

    15       understand.  I just spent the last five years

    16       making a determination that the PA and the PLO
did
    17       not have sovereign immunity.  And now I hear

    18       arguments that are exactly that.  They are not

    19       sovereign.  And it's taken all those years to

    20       determine that.  What we've had is a great

    21       run-around in this case from the people

    22       representing the Palestinian Authority and the

    23       PLO.

    24               MR. KALBIAN:  Those are not my clients,

                              Page 23

061605PMA.txt
25     your Honor.
☐

20

1              THE COURT:  I understand that.  And I

2       understand that there is a judgment here against

3       the PA and the PLO for $116,000,000, also against

4       the Hamas for that amount.  And the plaintiffs in

5       the Ungar case are trying to collect.  They're

6       going around trying to find out where these
assets

7       are held.

8              MR. KALBIAN:  And apparently, they've
been

9       able to snare from the schedule of the Bank of
New

10      York some funds of those judgment debtors at the

11      Bank of New York.  We're not --

12             THE COURT:  And that's where this case

13      belongs, because I've done my job.  I've entered

14      the judgment.  There are no funds in Rhode
Island.

15      I just refused yesterday to appoint a receiver.

16      And Mr. Strachman will have to go to New York,

17      Washington and other places and institute

18      proceedings there to collect on the judgment.
And

19      that's where this litigation belongs at this

Page 24

061605PMA.txt

20          point.

21                MR. KALBIAN:  But, I think, your Honor,

22          respectfully, if your Honor would give some

23          clarity to this injunction, if your Honor would

24          look at the notice of injunction that

25          Mr. Strachman is using to piggy-back on and go to

□

21

1          all these jurisdictions, what could potentially

2          happen is you'd have 50 different lawsuits in 50

3          different states.

4                However, if your Honor would hold an

5          evidentiary hearing, where I believe, and I would

6          respectfully submit we can make it crystal clear

7          to this Court that this notice of injunction is

8          void, it is an impermissible expansion of your

9          Honor's injunction.

10                THE COURT:  If I rule that, that's not

the

11          end of the matter.  Even if I make that ruling

12          right now today, it's not the end of the matter.

13          It's just the beginning of the matter.

14                MR. KALBIAN:  If I read what the New York

15          judge said on June 3rd, his first reaction was

why

                        Page 25

061605PMA.txt

16      are you here.  Go get clarification from the

17      judge, the federal judge in Rhode Island who

18      issued this.  So --

19              THE COURT:  My injunction is absolutely

20      clear.

21              MR. KALBIAN:  No doubt about it.

22              THE COURT:  And this procedure is now in

23      New York.  It's in New York because the judgment

24      was registered there, and there are proceedings
to

25      collect on that judgment.  There are proceedings
□

22


1       to reach funds and assets of the PLO and the PA.

2       And that's where this case belongs.  And whatever

3       I say about this at the moment is really

4       superfluous, because the Bank of New York can do

5       whatever it wants about freezing funds.  If it is

6       frightened about being held in contempt or

7       whatever reason, they can freeze those funds.
And

8       that's obviously what they did.

9               But wholly apart from the notice, my

10      injunction is clear.  If the Palestine Monetary

11      Authority is an agency of the PA or PLO and it
Page 26

061605PMA.txt

    12        holds funds of the PA or PLO, it is subject to

    13        that injunction.

    14               MR. KALBIAN:  But it doesn't hold funds
of

    15        the PA and PLO.

    16               THE COURT:  That's a question of fact
that

    17        has to be determined, and I am not in a position

    18        to determine that.  And what I'm suggesting is

    19        those facts should be determined in the Supreme

    20        Court of New York where this proceeding is

    21        pending.  I read the judge's comments.  He wants

    22        to throw it back to me.  Well, it's not the first

    23        time that a judge is sort of passing the buck.

    24        And this is where this proceeding is.  It's in
the

    25        Supreme Court of New York at the moment.
□

23


    1               Frankly, I think that's a mistake on

    2        plaintiff's part.  It should be in the Southern

    3        District of New York, the judgment should have

    4        been registered there.  This should be a federal

    5        case where it belongs.  But the fact of the
matter

    6        is if you want to spend time here in this court
                            Page 27

061605PMA.txt

7          bringing witnesses from all over the world, I
will

8          accommodate you.

9               MR. KALBIAN:  We're ready to do that,
your

10         Honor.

11              THE COURT:  The point is that I'm going

12         away tomorrow morning, and I won't be back until

13         July 6th, and I'll only be in for one day at that

14         time.  And then I have one week, the week of July

15         11th that I will be here.  And I have several

16         matters down for that week, which require

17         evidentiary hearings and other matters.  But I

18         will schedule it that week, and you can bring all

19         the witnesses.  You see most of the time when I

20         hear a motion for preliminary injunction, I

21         require testimony.  I'm not going to decide
things

22         off the top of my head.

23              MR. KALBIAN:  I understand.  If your
Honor

24         recalls, I think it was yesterday when this

25         particular hearing was set.  Obviously, had we
had
□

24

                         Page 28

061605PMA.txt
      1      the luxury of time -- and that's what we're
hoping

      2      to do.   However, in the meantime, your Honor, I

      3      would respectfully request that the Court order

      4      these judgment creditors to post a surety,
because

      5      if they're wrong, and we believe that they're

      6      wrong, damages are being incurred.   Damage is

      7      being incurred by the PMA.

      8              If you look at the Rule 65, your Honor,
it

      9      makes it very clear, I would submit, that an

     10      injunction to be issued there needs to be a bond

     11      or some sort of an undertaking.   And --

     12              THE COURT:   I don't think it's
appropriate

     13      in this case.   It's your client that has to put
up

     14      a bond to free those funds right now.   That's the

     15      way out for your client.

     16              MR. KALBIAN:   We're ready to do that,
your

     17      Honor.   If your Honor orders that, we're ready to

     18      post and --

     19              THE COURT:   That belongs in New York.

     20      It's not before me.   Now, if you want to have a

     21      full-blown hearing on a preliminary injunction in

Page 29

061605PMA.txt

22      this case, I'll give it to you.

23              MR. KALBIAN:  Thank you, Judge.

24              THE COURT:  I don't guarantee there's

25      going to be any favorable result to you as a

☐

25


1       result of that.

2               MR. KALBIAN:  I understand.

3               THE COURT:  But I'll give you the
hearing,

4       and then we'll see where we go from there.  And I

5       suggest to you that there's an indispensable
party

6       that is not a party in this case, and that's the

7       Bank of New York.  Bank of New York is a party to

8       the Supreme Court action in New York.  And so I'm

9       suggesting that's the most appropriate place to

10      get these matters resolved.  I have a very full

11      schedule.

12              I haven't heard from Mr. Strachman yet,
so

13      let me hear from him what his positions are on

14      these matters, and then I'll make a final

15      determination of when I set this down for hearing

16      on preliminary injunction.

17              MR. KALBIAN:  Thank you, Judge.

Page 30

061605PMA.txt

```
            18        MR. STRACHMAN:  Good afternoon.  Thank

            19   you, your Honor.  There are a few points I'd like

            20   to raise.  First, there is absolutely no

            21   justification or basis for this case being here.

            22   There is no subject matter jurisdiction in this

            23   case at all.  The case is between PMA, an agency

            24   of PA and an estate, my client, and my main

            25   clients who are thankfully alive who live in
```
□

26

```
            1    Israel.  As this Court knows, over five years of

            2    litigation, Yaron Ungar is not a citizen of any

            3    state of the United States.  Neither are the
other
            4    defendants in this case, the plaintiffs in the

            5    initial case.

            6        So this is a case between two foreign

            7    entities.  There's no subject matter jurisdiction

            8    in this case.  It says very clearly in 1332, my

            9    brother cites the wrong subsection where he
refers
            10   to a domiciliary of the United States.  There is

            11   none.  The end of the statute says very clearly,

            12   it's in Section (c)(2).  It says very clearly
that
```

061605PMA.txt
```
        13      when you sue an estate or administrator, you look

        14      to the citizenship of the domiciliary of the

        15      deceased.  And as we know from five years of

        16      litigation here, that was in Israel.

        17              So there's no subject matter jurisdiction

        18      over this case.

        19              Second of all, my brother is now asking

        20      for basically a third bite at this apple.  While

        21      this case was pending, while the case was on

        22      appeal and had not yet -- mandate had not issued,

        23      under the Hustler versus Keeton rule, we could
not

        24      go to Federal Court.  So we domesticated the

        25      judgment in state court consistent with the
Second
□

27


        1       Circuit's ruling in Hustler versus Keeton.  We
did

        2       that.

        3               And on April 21, before the preliminary

        4       injunction that my brother complains of, three

        5       weeks before that, we domesticated the judgment

        6       there, and we sought a statutory restraining

        7       notice.  In New York under New York law, there's
a
```

Page 32

061605PMA.txt

8    statutory restraining notice that creditors can

9    file.  And I filed a copy of the one that we filed

10   of April 21.  And that's in document number 5.

11        What prevents this money from being

12   released is that restraining notice.  And in

13   document number 6 is, in the documents I provided

14   to the Court this afternoon, is the response of

15   the bank in the case of Estate of Yaron Ungar

16   versus Palestine Authority.  In that case, in that

17   state domestication case, these funds are being

18   held.  Not because of this restraining order, but

19   because of the restraining notice that was issued

20   in New York.

21        So the defendants had an opportunity, the

22   plaintiffs here, rather, had an opportunity to go

23   into court there and say we are an aggrieved

24   party; we want to be heard in this action, and

25   they failed to do so.

□

28

1    What they did is a week and a half ago

2    file a separate suit, a suit against -- they had

3    the audacity to sue these victims in state court

Page 33

061605PMA.txt

4          in a separate action.  They don't bring to the

5          Court's attention the fact that there was a

6          restraining notice in a parallel action.  They

7          sort of skip over it here, too, by the way.

8          That's a separate matter that's not really
brought

9          to the Court's attention.  They bring a separate

10         suit.  In that suit, as your Honor knows from

11         reading the transcript, the judge set a discovery

12         schedule and a briefing schedule.

13              By the end of June, this matter is going

14         to be briefed.  It's going to be concluded in New

15         York, and they would have us now have a second

16         bite at the apple up here in Rhode Island.  It's

17         already engaged.  Both counsel who were in New

18         York were at that hearing are here today.  So

19         there's no need for this.  This is superfluous.

20         This is a way to try to bully their way into a

21         ruling that they didn't like last Monday when the

22         judge said to them there is no irreparable harm,

23         I'll set it down for a schedule.  That's when, by

24         the way, as the Court knows Mr. Abed was present,

25         and he saw fit to show up last week in New York.

☐

29

061605PMA.txt

          1       And he showed up and he testified, and he gave
his
          2       spiel just as he did in his affidavit.   Of
course,
          3       he was unable to come to Court today, and we
can't

          4       cross-examine him.

          5            But that matter is already underway.   And

          6       to come to this Court now to file two separate

          7       actions against these victims and to cause us to

          8       litigate these issues when they're already being

          9       litigated in the very first proceeding that was

          10      filed at least I think it was April 20th but that

          11      restraining notice was April 21 is absurd.

          12           And now what you're going to have if the

          13      Court grants a hearing in this matter in July,

          14      we'll have two separate proceedings on this very

          15      same complaint, virtually identical allegations,

          16      as well as the third and original really first

          17      proceeding, which is the turn-over proceeding
that

          18      we filed in the domestication action.   It's an

          19      absurdity.   It's turning this into another
circus,

          20      and we're going to be here for another five years

          21      in three different courts with the continued sort

                              Page 35

061605PMA.txt

22      of shell game that we've seen with the Palestinian

23      Authority and the PLO the way they litigate

24      matters.

25              So I would urge the Court to take the bull

□

30

1       by the horns in this case and to dismiss this

2       action.  Your Honor said very clearly in the

3       receivership motion that we filed that collection

4       actions are not to proceed here in Rhode Island

5       but to proceed in the various jurisdictions. They

6       now are begging us to take other action in a sense

7       here.  We'll be litigating all of these claims now

8       by any claimant, by any alleged third party here

9       in Rhode Island.  Just the opposite of what you

10      said yesterday you weren't going to do and weren't

11      going to allow the plaintiffs to do.

12              I would also ask the Court to disregard

13      any of the allegations in Mr. Abed's affidavit. I

14      know that effectively you're not granting the

15      relief today, but I want it to be clear, and I

Page 36

061605PMA.txt

16          just want to mention very clearly for the Court

17          the documents that we provided, because it says

18          very clearly everything that your Honor just said

19          about the nature of the PMA and their source of

20          authority and their genesis, if you will.

21               We have letters from Mr. Abed, one to me,

22          one to someone else on effectively Palestine

23          National Authority stationery indicating clearly

24          that the PMA is an agency, subdivision, et
cetera,

25          of that agency.
□

31

1               We have in document number three, which I

2          provided and attached for the Court, the Oslo

3          Accord, which says very clearly that the PA is

4          going to act as the sole financial agent of the

5          PA.  The PMA, I think I misspoke.  The PMA is the

6          sole financial agent locally and internationally.

7          That exact same language is carried over into the

8          document attached to Mr. Abed's affidavit and
also

9          that I provided, which is effectively the charter

10          for the PMA.

11               It says in several places, and I've

Page 37

061605PMA.txt

12          highlighted all those sections, the exact same

13          type of language.  They're the guys holding the

14          money for the PA and the PLO.  And then we also

15          know from the litigation here and on previous

16          occasions in a different context we provided to

17          the Court a copy of a restraining order that was

18          entered in the International Technologies case

19          against the PLO.

20                  In that very case, similarly, these

21          a/k/a's of the PA and the PLO, a whole laundry

22          list of them, were restrained by the Court

exactly

23          for this type of reason.  And that's, in fact,

how

24          we got some of these names.  And we disclosed

this

25          to the Court years ago, where for a variety of

☐

32

1          other reasons we brought this information to the

2          Court's attention.

3                  Then on the bottom of the list it says

4          very clearly that that judge restrained the

5          Palestine Monetary Authority.  And the piece de

6          resistance, if you will, is the fact that Judge

Page 38

061605PMA.txt

|  |  |
|--|--|
| was | 7 Martin ruled very clearly in his decision that |
|  | 8 upheld by your Honor, that was not objected to, |
|  | 9 this portion of the decision was not objected to |
| not | 10 by the defendants, the PA and the PLO, and was |
|  | 11 appealed by them, and that is that the PMA is a |
|  | 12 financial arm of the PA and the PLO. |
|  | 13 So we have overwhelming evidence to |
|  | 14 suggest that there's a tremendous credibility |
| what | 15 problem with Mr. Abed's statements.  And that |
|  | 16 he's saying about the nature of their authority, |
| in | 17 even if he were allowed to testify as an expert |
|  | 18 foreign law, which he isn't; he's an economist, |
|  | 19 even if he was here and was willing to be |
|  | 20 cross-examined. |
| for | 21 But then we take a look at, if I could |
|  | 22 just a moment, your Honor, if we look at the |
|  | 23 documents that are in Item 5, Tab 5 of the |
|  | 24 materials -- excuse me, Tab 6 of the materials |
|  | 25 that we provided, if we look at the very accounts |

☐

33

1 that are in question as your Honor indicated

Page 39

061605PMA.txt

```
 2        before, these are transfers virtually exclusively
 3        between and on behalf of the PA, the PLO and in
 4        large measure the Palestinian Monetary Authority.
 5             And if we look at the statement, it says
 6        very clearly from the bank, the originator,
 7        meaning the guy who wrote the check, not the guy
 8        who washed the money, but the guy who wrote the
 9        check is the Palestine Monetary Authority.  It's
10        their money.  It's the money that they got.  And
11        their charter says if they have profits, they go
12        to the PMA -- PA rather.  If they have
13        deficiencies, they have to be made up by the PA.
14             These are the very funds that they are
15        holding on behalf of the PA and the PLO.  They
16        have 57 entries.  The overwhelming majority of
17        entries here are directly described as PA or PLO
18        money.  The other amounts are very clearly, as we
19        presented here, very clearly significantly
20        evidence belong to the PA.  The PA itself is
21        nothing more than an agency.
22             So I would ask the Court to dismiss this
23        case.  There's no jurisdiction.
24             THE COURT:  There's no motion to dismiss.
25        There's no motion to dismiss at this point, and
                            Page 40
```

061605PMA.txt

☐

34

```
 1      all that's before the Court is a motion for a

 2      preliminary injunction.  And my inclination is to

 3      set that motion for preliminary injunction down

 4      for an evidentiary hearing, and then I'll make

 5      determinations.  If you want to file a motion to

 6      dismiss for lack of jurisdiction, maybe that will

 7      take precedence before I hear this matter, and

 8      maybe this matter will be gone.

 9              But as of the moment, I don't hold out

10      much hope that there will be any kind of

11      preliminary injunction issued in this case.  So

12      maybe the parties are just spinning their wheels

13      here.

14              MR. STRACHMAN:  The concern that I have,

15      Judge, the wheels have already started rolling in

16      New York.

17              THE COURT:  That's where the case
```
belongs.
```
18      I will tell you right now that's where the case

19      belongs.  It's a New York case at this point.
```
And
```
20      what funds are frozen are frozen in New York.

21      They're frozen pursuant to New York court
```
                         Page 41

061605PMA.txt

22    authority, and it's a New York judge that will

23    have to make a determination on this matter.

24        It appears to me that any determination

25    that I make is really academic in this case, and

☐

35

1    probably this case will be dismissed.  But for
the

2    time being, I will give the plaintiff an

3    opportunity to have an evidentiary hearing.  We

4    may be wasting our time, but we'll see.  I'd like

5    to hear the evidence, to be perfectly frank, so

6    that I am certain that also factually I'm

7    satisfied what occurred here.

8        MR. STRACHMAN:  So to be clear, your
Honor

9    is not in any way issuing an order with respect
to

10    the New York proceedings.

11        THE COURT:  Absolutely not.

12        MR. STRACHMAN:  And those will continue
on

13    as already --

14        THE COURT:  Whatever New York state
courts

15    did, that's within their jurisdiction.  What I

Page 42

061605PMA.txt
16      have before me now is this case that was filed

17      requesting a temporary restraining order and

18      preliminary injunction.  I've denied the
temporary

19      restraining order.  I will hold in abeyance any

20      determination on the request for a preliminary

21      injunction and hold an evidentiary hearing.

22      That's as far as we go at this point.

23              MR. STRACHMAN:  In light of that, then,

24      Judge, we'd like to have an order with respect to

25      discovery so that we're not surprised here as to
□

36

1       who these witnesses are who are coming here.
We'd

2       like to have them disclosed to us, and we'd like

3       to have an opportunity to examine them in advance

4       as well as any other filings that they make.

5               THE COURT:  I don't think that we can do

6       that in the time allotted to us.  If at the time

7       of the evidentiary hearing after these witnesses

8       have testified, if you think you need more time,
I

9       will give you more time.  We'll take as much time

10      as we need to get to the bottom of this and get
to

Page 43

061605PMA.txt

11          the facts.  But again, my concern is that this is

12          all going to be academic.

13                  MR. STRACHMAN:  Because the concern that
I

14          have, Judge, is that we face conflicting rules

15          over these very same accounts, identical accounts

16          that as your Honor indicated are really not

17          subject to the Court.  They're really in another

18          jurisdiction.  And I'm also concerned that we'll

19          be in a situation where we have the plaintiffs

20          here, the PMA trying to effectively disrupt the

21          proceedings that were already in place in New
York

22          on basically one foot and having people come in

23          here without discovery, without advanced

24          knowledge, without information having to litigate

25          where the remaining it's about $13,000,000 that's
☐

37

1          being held in these 57 accounts, where that money

2          is and who owns it in advance of what was already

3          started in New York.

4                  So they've had -- if we go forward here,

5          they will be given the opportunity to disrupt
that

6          after the Court has already indicated we should

Page 44

061605PMA.txt

be

7        in these foreign states and without the benefit
of

8        discovery, without the benefit of all the tools
of

9        litigation that my client should be afforded.  I

10        think that's a problem with your Honor's attempt

11        to accommodate this motion with a hearing.

12             THE COURT:  Well, it may be a problem,
but

13        it's one that we'll have to work through.  Maybe

14        this whole problem will be solved if you file a

15        motion to dismiss.  I may dismiss the case before

16        I have a hearing.

17             MR. STRACHMAN:  I ask then that you enter

18        a schedule for that, Judge, so that we have some

19        sort of structure as to when the motions are
filed

20        and response and reply.

21             THE COURT:  We have our rules that apply.

22        And what I'm going to do is schedule this for an

23        evidentiary hearing on the plaintiff's motion for

24        a preliminary injunction.  And I'm going to

25        schedule it for Thursday, July 14, 2005 at 2:00
□

38

Page 45

061605PMA.txt
```
 1    p.m. for an evidentiary hearing.  And the case

 2    will take its course.  I'm not entering any other

 3    orders at this time.

 4              MR. KALBIAN:  With respect to planning,

 5    Judge, for that hearing, if we file a motion and

 6    have a motion --

 7              THE COURT:  If you file a motion to

 8    dismiss, I will hear it before the hearing.  And
```
I
```
 9    if I decide to grant it, then that will be the
```
end
```
10    of the matter.

11              MR. STRACHMAN:  So just so I understand,

12    you're saying in advance of the 14th or on the

13    14th?

14              THE COURT:  On the 14th.

15              MR. KALBIAN:  Your Honor, obviously we'd

16    want enough time to file any opposition briefs.

17              THE COURT:  Certainly.

18              MR. KALBIAN:  To the extent Mr. Strachman

19    files his papers on the 10th of July, obviously
```
we
```
20    would need time to respond.

21              THE COURT:  Do you plan to file a motion

22    to dismiss?

23              MR. STRACHMAN:  We do, Judge.
```
                         Page 46

061605PMA.txt

        24              THE COURT:  When do you want to file it?

        25              MR. STRACHMAN:  I'd like to file it I

□

39

        1       guess on Monday or Tuesday, Judge.

        2              THE COURT:  This Monday or Tuesday?

        3              MR. STRACHMAN:  Yes.

        4              THE COURT:  All right.  What have we got

        5       for a date here.  I'll give you until Tuesday,
the

        6       21st.  You'll have until June 21 to file a motion

        7       to dismiss.  How much time do you want to answer?

        8              MR. KALBIAN:  We could put our papers in

        9       on or before the 30th of June.

        10              THE COURT:  All right.  Any objection?

        11              MR. STRACHMAN:  No, Judge.

        12              THE COURT:  Memoranda will be filed by

        13       June 30.  And when I get back on July 6th, I'll

        14       look over the papers, and maybe I could set that

        15       down for hearing separately.

        16              MR. STRACHMAN:  I think that will
helpful,

        17       Judge, in terms of possibly bringing people in.

        18              THE COURT:  I just have limited time

        19       available to me right now, because I'm going to
                                Page 47

061605PMA.txt

be

          20        away for two weeks, and then I'm coming back for

          21        one day to supposedly impanel a criminal jury.

          22        And then I was planning to have that criminal
jury

          23        trial during that week of July 11th, but I'm not

          24        certain that trial will go forward at that time,

          25        and that's why other things have been scheduled.
□

40

          1         Following that week, I'm away for the
rest

          2         of the summer.  I'm not back here until after

          3         Labor Day.  I'm a senior judge now.  I can take
as

          4         much time as I want.

          5              MR. STRACHMAN:  It's deserved.  Thank
you.

          6              THE COURT:  It's one of the advantages of

          7         being a senior judge.  When you're working for

          8         nothing, you can take time off.

          9              MR. STRACHMAN:  Thank you, your Honor.

          10             THE COURT:  All right.  Are we all on the

          11        same track now?

          12             MR. KALBIAN:  Yes, your Honor.

          13             THE COURT:  Got all those dates?

                              Page 48

061605PMA.txt
14      MR. KALBIAN:  Yes.

15      MR. STRACHMAN:  Thank you.

16      MR. KALBIAN:  Thank you.

17      THE COURT:  All right.

18      (Court concluded at 3:00 p.m.)

19

20

21

22

23

24

25

C E R T I F I C A T I O N

                    I, Anne M. Clayton, RPR, do hereby

certify that the foregoing pages are a true and

accurate transcription of my stenographic notes

Page 49

061605PMA.txt

in

the above-entitled case.

Anne M. Clayton, RPR

_____
        Date