# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE ESTATE OF YARON UNGAR, ET AL.,     Case No:

    Plaintiffs                                 00-105L

vs.

THE PALESTINIAN AUTHORITY;
ET AL.,

    Defendants

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

---

VIDEOTAPED RULE 30 DEPOSITION OF:
SALAM FAYYAD
EAST JERUSALEM
JULY 28, 2010

---

Videotaped Rule 30 deposition of SALAM FAYYAD, taken in the above-entitled cause pending in the United States District Court, District of Rhode Island, pursuant to notice, before ISABELLE KLEBANOW, RPR, CT No. 311, Stenographer, at the Ambassador Hotel, East Jerusalem, on Wednesday, the 28th day of July, 2010, at 4:15 p.m. Jerusalem time.

REPORTED BY:  ISABELLE KLEBANOW, RPR, CT NO. 311

Page 2

1  APPEARANCE OF COUNSEL:
2  FOR PLAINTIFFS:
3    WISTOW & BARYLICK
      By: MAX WISTOW, ESQ.
4     61 Weybosset Street
      Providence, Rhode Island 02903
5     (401) 831-2700
      mw@wistbar.com
6
7    McINTYRE, TATE & LYNCH
      By: DAVID J. STRACHMAN, ESQ.
8     321 South Main Street
      Providence, Rhode Island 02903
9     (401) 351-7700
10 FOR DEFENDANTS:
11   MILLER & CHEVALIER CHARTERED
      By: MARK J. ROCHON, ESQ.
12    By: LAURA G. FERGUSON, ESQ.
      By: ANDREW WISE, ESQ.
13    655 Fifteenth Street, N.W., Suite 900
      Washington, D.C. 20005-5701
14    (202) 626-5800 / Fax (202) 626-5801
      Mrochon@milchev.com
15    Lferguson@milchev.com
      Awise@milchev.com
16
17
   ALSO PRESENT:
18
      Mark Coopersmith, Videographer
19    Mordechai Haller
      Nitsana Darshan-Leitner
20    Osama Saadi
      George Salem
21
22
23
24
25

Page 3

1            INDEX
2
3
4  DEPONENT      DIRECT  CROSS  REDIRECT  RECROSS
5  SALAM FAYYAD
6  BY ATTORNEY WISTOW   8        369, 399
7  BY ATTORNEY ROCHON           357        397
8
9
10
11         EXHIBITS
12 NO.  DESCRIPTION              PAGE
13  1   Judge Marrero's Order, Knox Case   34
14  2   Letter, 2-29-08           43
15  3   Letter, 8-15-05           66
16  4   Letter, 4-27-06           101
17  5   Fayyad Declaration        114
18  6   Letter, June 18, 2005     124
19  7   Letter, 1-12-07           266
20  8   Power of Attorney         301
21  9   New York Times Article, 12-18-07   305
22 10   Order by Judge Lagueux    331
23 11   Download from UK Foreign Office  338
24 12   Israel Ministry of Foreign Affairs
25      Document

Page 4

1                PROCEEDINGS
2          THE COURT REPORTER: This is the videotape
3  deposition of Salam Fayyad taken by the Plaintiffs in
4  the matter of Ungar, et al. versus the Palestinian
5  Authority, et al., US District Court, District of Rhode
6  Island, Case No. 00-1056, held at the Ambassador Hotel
7  in East Jerusalem on July 27, 2010, at 4:00 p.m.
8          The court reporter is Isabelle Klebanow,
9  Post Office box 29077, East Talpiot, Jerusalem 91290.
10 The videotape specialist is Mark Coopersmith.
11         And counsel will now state their appearance.
12         MR. ROCHON: Thank you. On behalf of the
13 Palestinian Authority and the PLO, you have Mark Rochon,
14 Laura Ferguson, Andrew Wise. Also here are George Salem
15 and Osama Saadi, who are counsel for the Prime Minister.
16         MR. WISTOW: Max Wistow for the Plaintiffs.
17         MR. STRACHMAN: David Strachman for the
18 Plaintiffs.
19         MS. LASHNER-LEITNER: Nitsana Lashner-
20 Leitner.
21         THE COURT REPORTER: Okay. I need to --
22         MR. WISTOW: -- swear the witness.
23         THE COURT REPORTER: Do you swear to tell
24 the truth, the whole truth, and nothing but the truth,
25 so help you God?

Page 5

1          MR. FAYYAD: I do.
2          THE COURT REPORTER: Thank you very much.
3  DIRECT EXAMINATION BY MR. WISTOW:
4    Q. Firstly, I wanted to ask you, how should I
5  address you? Is it all right if I call you Mr. Fayyad?
6    A. That's fine. Yes.
7    Q. I understand that, at the present time, you are
8  overseeing the American cases involving victims under
9  the American Anti-Terrorism Act on behalf of the PLO and
10 the PA, is that true?
11   A. As part of my over-all responsibility as Prime
12 Minister and Minister of Finance.
13   Q. I'm not suggesting that's your sole duty. But
14 that is part of your duties, is it not?
15   A. Part of what I do, yes.
16   Q. And you've tried to familiarize yourself with the
17 Ungar case, have you not?
18   A. Yes.
19   Q. And do you understand where the Ungar case sits
20 at the present time in the Federal Court? What its
21 status is?
22   A. Yes, I do.
23   Q. Would you tell me what your understanding is.
24   A. My understanding is that I am being deposed here
25 in connection with our attempt to have the case

Fayyad

## Page 42

1  that fair?
2      MR. ROCHON: Objection. Asked and answered.
3      MR. WISTOW: That's one of the things you're
4  not supposed to do under our local rules. You just
5  object, okay? Or instruct him not to answer, if you
6  wish.
7      MR. ROCHON: Thank you for the suggestions.
8  Q. Is it fair to say that, as you sit here now,
9  under oath, you have no present recollection of learning
10 of this order?
11     It may be you've forgotten it -- you knew it and
12 forgot it -- but you have no recollection? Is that
13 fair?
14 A. That's exactly what I meant when I said I don't
15 remember really.
16 Q. Okay. So, as we sit here today, you have no
17 recollection of ever learning of the order?
18     MR. ROCHON: Objection.
19 Q. Is that fair?
20     MR. ROCHON: Objection.
21     MR. WISTOW: I'm entitled to get a straight
22 answer.
23     MR. ROCHON: Objection.
24 A. I just gave you one.
25 Q. Is it fair --

## Page 43

1  A. If what you said means I don't remember, then
2  that's what I really mean to say.
3  Q. Okay. Now, did you ever learn whether or not the
4  United States complied with Judge Marrero's order?
5  A. I don't remember either.
6  Q. Maybe I can refresh your recollection.
7  A. Okay.
8      MR. ROCHON: If we show the witness the one
9  that gets marked, we'll have two on our side --
10     MR. WISTOW: Okay. Sure.
11     MR. ROCHON: -- if that's agreeable.
12     MR. WISTOW: That's fine.
13     MR. ROCHON: If that's okay with the court
14 reporter.
15     (Off-the-record discussion while exhibit is
16 marked).
17     (Exhibit No. 2 marked for identification.)
18 Q. Now, do you know --
19     MR. ROCHON: That's how this -- by doing it
20 that way, then we do get the two copies, so he's got
21 one. We've got two.
22     The court reporter doesn't read them. She
23 marks them.
24     MR. WISTOW: That's fine.
25 Q. Have you ever, to your recollection, seen this

## Page 44

1  document before?
2      (Witness peruses document.)
3  A. I don't know if I remember seeing this document
4  specifically. I mean this very document.
5  Q. Okay. I would like to direct your attention --
6  A. Yes.
7  Q. -- to eight lines from the bottom of the first
8  page where it starts to read, The United States
9  respectfully informs the Court that it declines to file
10 a Statement of Interest concerning the Rule 60 issues
11 presented by this case, but will continue to monitor
12 this and other cases like it.
13     MR. ROCHON: (Indicating).
14     MR. WISTOW: Did you just point something to
15 him?
16     MR. ROCHON: Yes. The sentence we're
17 reading so he could find it on the page. He was asking
18 for help.
19     MR. WISTOW: Okay.
20 Q. If you need assistance in finding something, I'd
21 ask you to tell me that you can't find it.
22 A. Fine.
23 Q. Is that fair?
24 A. Fair.
25 Q. Okay. Have you located it?

## Page 45

1  A. I have.
2  Q. Okay. Have I read it correctly?
3  A. You have.
4  Q. Okay. Do you understand that to mean that, in
5  response to Judge Marrero's order to the United States
6  to state whether or not it would file a Statement of
7  Interest, the United States responded by saying they
8  would not file a Statement of Interest in this case --
9  the Knox case -- or any similar cases.
10     Do you understand that to mean that?
11 A. I understood that to be the case. I'd have to
12 read through the rest of the letter, or to continue that
13 sentence where it says, But will continue to monitor
14 this and other cases like it.
15 Q. Yes. Right. I'm only talking about at the time.
16 A. Yes.
17 Q. I mean anything could happen after this.
18 A. I understand.
19 Q. But at that time --
20 A. Yes.
21 Q. -- which was February 29, 2008, if this document
22 is authentic, then the United States declined to give a
23 suggestion (sic) of interest in the Knox case -- and you
24 see, third line from the top -- or in any other of the
25 cases pending in other districts.

Page 46

1  You see that?
2  A. The third line --
3     (Witness peruses document.)
4  A. I see that, yes.
5  Q. Okay. So did you ever learn from any source that
6  the United States had declined to issue a Statement of
7  Interest in the Knox case or in any of the other cases
8  pending in other districts against the PLO and the PA?
9     MR. ROCHON: Objection.
10 Q. Did you ever learn that from any source?
11    MR. ROCHON: Objection. Don't answer yet.
12 You have to exclude conversations --
13    MR. WISTOW: No. I don't exclude
14 conversations. It's not a privileged communication.
15 It's not confidential information. It's relating --
16    MR. ROCHON: Let me just -- I'm not arguing.
17    MR. WISTOW: I don't want any fighting. I
18 don't exclude anything.
19    MR. ROCHON: We're agreeing. The answer to
20 the question will not be deemed to be a waiver of
21 privilege.
22    MR. WISTOW: That's right. I believe
23 privilege has been waived for other reasons we'll get
24 into. But I stipulate that an answer to this will not
25 represent a waiver.

Page 47

1     MR. ROCHON: Mr. Prime Minister, you can
2  answer the question.
3  A. Well, I remember that there was a process.
4     And, as I told you myself, I myself communicated
5  on this with the Secretary of State at the time,
6  Condoleezza Rice, seeking help. And I understood what
7  the Statement of Interest meant -- Statement of Interest
8  -- a term mentioned on several occasions in my
9  discussions with US officials.
10    Now -- and I understood, at some point -- whether
11 in connection with this letter or some other
12 communication I can't remember right now -- that the US
13 did not submit, or did not want to submit, a Statement
14 of Interest.
15    But I also recall that it did not mean -- that
16 representation done by the United States, it does not
17 mean that the administration was --
18    (Mr. Haller enters the room.)
19 Q. I'm sorry. I didn't hear the end.
20 A. That it did not mean that the administration was
21 indifferent as to what was going on.
22    In other words, I understood that -- the way I
23 understood it was, in a formal sense of a Statement of
24 Interest, there was not acceptance of it. There was not
25 a submission of it. But, at the same time, there was a

Page 48

1  Statement of Interest in a generic sense.
2     And that actually is what's borne out if you read
3  a couple of lines down from where that reference which
4  you just cited, where the letter says, At the same time,
5  the United States remains concerned about the potential
6  significant impact of these cases -- significant impact
7  these cases may have on the financial and political
8  viability of the Defendants.
9  Q. Have you finished your answer?
10 A. Yes.
11    MR. WISTOW: I move to strike.
12    THE COURT REPORTER: Could you identify the
13 person who came in the room.
14    MR. WISTOW: Could you identify yourself for
15 the record, please.
16    MR. HALLER: Mordechai Haller.
17    THE COURT REPORTER: Spell it for me,
18 please.
19    MR. HALLER: M O R D E C H A I, H A L L E R.
20 Plaintiffs' Israeli counsel.
21 Q. Have you finished your answer, Mr. Fayyad?
22 A. Yes.
23 Q. Do you remember the question?
24 A. I remember the question.
25    The question was that -- were you aware that

Page 49

1  there was -- or does this not say that the United States
2  did not want to submit a Statement of Interest.
3  Q. No. I'm not asking you about what the letter
4  says.
5  A. Oh, okay.
6  Q. I'm not. I'm asking you if you ever became aware
7  of whether or not the United States responded to Judge
8  Marrero by saying -- let me finish, please --
9  A. Yes.
10 Q. -- by saying they declined to state -- to file a
11 Statement of Interest at that time.
12    Did you ever become aware of that?
13 A. As I indicated, I'm aware that there were
14 discussions, communications, on this matter. I was
15 aware that there was not a straightforward Statement of
16 Interest submitted by the US government to the Court.
17    But I also remember being told that that
18 statement or that communication or those communications
19 where Statement of Interest was not filed did not mean
20 that the administration was indifferent as to the
21 proceedings.
22    That's my answer.
23 Q. Okay. I'm going to press it a little bit.
24 A. Okay.
25 Q. I'm really not asking you to interpret what the

Fayyad

| Page 50 | Page 52 |
|---|---|
| 1  intent of the government was, the American government.<br>2  I'm asking you only if you were aware that, on<br>3  February 29, 2008, the United States said to Judge<br>4  Marrero, and I quote, "The United States respectfully<br>5  informs the Court that it declines to file a Statement<br>6  of Interest concerning the Rule 60 issues presented by<br>7  this case, but will continue to monitor this and other<br>8  cases like it.<br>9  Did you ever become aware of that declination?<br>10  A. What I'm really trying to communicate to you, and<br>11  through you to the Court, is my understanding of the<br>12  nature of that communication; and, specifically, that<br>13  the administration did not file a Statement of Interest<br>14  in the way a Statement of Interest is technically<br>15  defined.<br>16  But I remember, in the context of communications,<br>17  suggesting that it was not not interested in what was<br>18  going on. That's basically my recollection of the<br>19  exercise.<br>20  Q. Mr. Fayyad, I'm going to ask you to try not to<br>21  communicate with the Court, as you just suggested you're<br>22  doing.<br>23  Try to just answer my questions. The Court will<br>24  hear my questions, will hear your answers. Under our<br>25  system, I get to ask questions and, hopefully, you | 1  A. I learned that. But, at the same time, I learned<br>2  that the United States was not disinterested, and that<br>3  that view of the United States was communicated as well.<br>4  Q. Okay. The United States also expressed sympathy<br>5  for the victims, did it not?<br>6  A. It did.<br>7  Q. And it expressed sympathy and interest in the PLO<br>8  and PA, did it not?<br>9  A. It did.<br>10  Q. So it wasn't indifferent to either side, was it?<br>11  A. No. But that's not what the letter said. It's<br>12  not indifferent to either side.<br>13  Q. That's right.<br>14  A. Yes.<br>15  Q. But the letter says they declined to file a<br>16  Statement of Interest.<br>17  A. That's what the letter said.<br>18  Q. Right. Did you ever learn of that decision?<br>19  A. Whether in this specific case or another case, I<br>20  really cannot tell you right now.<br>21  But I'm aware of the fact that the United States<br>22  did not file a Statement of Interest in the way a<br>23  Statement of Interest is construed to mean in a legal<br>24  sense.<br>25  Q. How did you learn that? |
| **Page 51** | **Page 53** |
| 1  answer them.<br>2  I'm not trying to tell half the story. You have<br>3  lawyers. They can bring out what they want.<br>4  Do you understand?<br>5  A. I respect the system, and I am doing my best to<br>6  answer your questions, sir.<br>7  Q. Okay. My question is, did you ever learn that<br>8  Judge Marrero was informed that the United States<br>9  declined to file a Statement of Interest.<br>10  MR. ROCHON: Objection.<br>11  Q. Can you answer that either yes, no, or I don't<br>12  remember?<br>13  MR. ROCHON: Objection.<br>14  Q. Can you?<br>15  MR. ROCHON: You can answer the question.<br>16  A. As I said, you know, I'm aware that there was<br>17  activity along those lines, but I do not remember each<br>18  and specific case or specific communication.<br>19  But the substance of what I recall is what I told<br>20  you.<br>21  Q. Okay. Did you learn, in substance --<br>22  A. Yes.<br>23  Q. -- that the United States declined to file a<br>24  Statement of Interest? Did you learn that?<br>25  MR. ROCHON: Objection. You may answer. | 1  MR. ROCHON: Objection.<br>2  A. I've had discussions on this with US officials<br>3  all the time.<br>4  Q. Really?<br>5  A. Yes.<br>6  Q. When was the last time you had a discussion with<br>7  a US official about this?<br>8  A. Not the recent period.<br>9  Q. Well, you said all the time. I'm just asking you<br>10  when the last time was.<br>11  A. I'm trying to remember now. All the time when<br>12  this was being activated and all.<br>13  Q. Take your time, Mr. Fayyad. There's no rush.<br>14  A. I can actually give you a precise date if I can<br>15  remember when it is that I visited the State Department<br>16  and met with lawyers at the State Department.<br>17  I'd have to go back to my itinerary, my travel<br>18  records, and I'd be able to provide you with that.<br>19  Q. Please understand --<br>20  A. In other words, it's not -- I know that I did<br>21  discuss it.<br>22  Q. Okay. Please understand. I don't expect you to<br>23  have exact dates.<br>24  A. Okay.<br>25  Q. Can you give me an approximate date? |

Page 54

1    A. Yes. That I can.
2    Q. What is that?
3    A. Let me -- not necessarily in connection with this
4    case, but generally, you know, cases filed against us in
5    the United States.
6        So I believe it must have been a year ago.
7    That's when I believe I officially visited the United
8    States. A year ago.
9        Again, I can look it up and provide with you the
10   records.
11   Q. I'm only asking you for your best recollection.
12   A. Yes.
13   Q. And I understand all you can give me, without
14   checking your records, is your best recollection.
15   A. My best recollection is that the last time I had
16   a discussion on cases -- on litigation against us in the
17   United States in connection with these matters --
18   general matters. Not necessarily this case -- was a
19   year ago --
20   Q. Okay.
21   A. -- or thereabouts.
22   Q. Okay. When we say litigation generally and not
23   necessarily these cases --
24   A. Yes.
25   Q. -- we're talking about the so-called terrorist

Page 55

1    claims, correct?
2    A. Yes.
3    Q. Claims against the PLO and PA that they were
4    involved somehow in terrorist activities?
5    A. Yes.
6    Q. So you spoke to somebody at the State Department
7    about a year ago?
8    A. Yes.
9    Q. Who was that?
10   A. I don't -- lawyers.
11   Q. Can you help me out a little bit?
12   A. I can't remember the names right now.
13   Q. Okay. Do you remember their titles?
14   A. I can't.
15   Q. Do you remember how many there were?
16   A. Maybe three, four. I really don't remember.
17   Q. So did you make -- were you accompanied by
18   anybody on your side?
19   A. I really was there by myself.
20   Q. Okay. And so these three or four lawyers, you
21   don't remember anybody's name?
22   A. No. Not right now.
23   Q. And do you remember if you were -- you had
24   written to set up an appointment, or how it came to be?
25   Do you remember?

Page 56

1    A. Precisely, I do not remember. In connection with
2    this particular trip, I don't really remember now.
3    Q. Okay. Would it be fair to say you were asking
4    them to see if a Statement of Interest could be filed?
5        MR. ROCHON: Objection. Form and content.
6    In have a substantive objection on this.
7        You may want to take it outside the presence
8    of the witness so you don't think I'm engaging in
9    speaking objections. But I need to discuss it with you
10   first before I take it to the judge.
11       MR. WISTOW: Some kind of diplomatic
12   privilege?
13       MR. ROCHON: Yes.
14       MR. WISTOW: I have a -- it says, This
15   judgment has already been the subject of diplomatic
16   communications at the highest levels between our
17   country's representatives and the State Department.
18       You've told the Court about this, both the
19   Circuit Court and the Federal Court. And, you know,
20   you're flaunting this issue. Now you tell me that I
21   can't ask him about it? Okay. Just tell him not to
22   answer. It's okay with me.
23       MR. ROCHON: Well, we can take it to the
24   Magistrate Judge. That's why we have him available, so
25   you can get a ruling on it.

Page 57

1        THE VIDEOGRAPHER: Excuse me. I have to
2    change the tape.
3        MR. WISTOW: Well, you know what?
4        MR. ROCHON: We're going to go off the
5    record.
6        MR. WISTOW: You know what? I'm perfectly
7    happy with an instruction not to answer. I don't want
8    to wait -- I have limited time today. I want to get
9    this thing moving.
10       MR. ROCHON: We have to go off the tape.
11   You can finish, but your tape's running out and you
12   won't be on the record.
13       THE VIDEOGRAPHER: Going off the record at
14   5:18.
15       (Short recess taken.)
16       THE VIDEOGRAPHER: Going on record at 5:20.
17       MR. WISTOW: I'd ask you to reconsider.
18       You have affirmatively told the Court in
19   your pleadings that one of the reasons to vacate the
20   motion -- 60(b)6 motion -- is that -- and I quote from
21   your pleadings -- "This judgment has already been the
22   subject of diplomatic communications at the highest
23   levels between our country's representatives and the
24   State Department and the governing officials in the
25   Occupied Territories.

Fayyad

Page 58

    If left intact, the judgment threatens to undermine the relationship between the United States and the Palestinian government, a relationship that the executive branch of the United States government has categorized as being crucial to the Israeli-Palestinian peace process."
    I don't know how anything could become more relevant, if you're urging that as a reason. So I'm asking him to tell me about all these high-level conversations.
    MR. ROCHON: The fact of a communication being made known to the Court does not waive any privilege associated with it.
    MR. WISTOW: I'll tell you what? Why don't we do this? If you could just let him answer this question, if it involved asking for a Statement of Interest, I'll agree that, in and of itself, that answer doesn't waive any kind of privilege.
    MR. ROCHON: You know, you'll be leading me down the primrose path. I either object or I don't. You mean you'll be done in this area?
    MR. WISTOW: I don't know. If he says, no, we didn't talk about that, then I certainly --
    MR. ROCHON: The problem is this. The Prime Minister has a portfolio that includes things other than

Page 59

this case. So he doesn't communicate only about this case.
    MR. WISTOW: Oh, Please. I don't want to ask him anything that's not related to this case. That would be inappropriate, and I certainly wouldn't do it.
    MR. ROCHON: The problem is either -- see, I asked the witness to step out because I don't want you suggest I'm making speaking objections.
    MR. WISTOW: Why don't you step out.
    MR. ROCHON: Just escort the Prime Minister out.
    (The witness leaves the room.)
    MR. WISTOW: No. I don't want --
    MR. ROCHON: I'll take the time. I'll eat the time.
    MR. WISTOW: I know. But we have to keep track of the time.
    MR. ROCHON: It's all right. We can just note when we start this discussion. I'll eat the whole time.
    MR. WISTOW: Why don't you do it. Why don't we -- you're the one who's --
    MR. ROCHON: What time is it now, Mr. Coopersmith?
    THE VIDEOGRAPHER: The time is 5:22.

Page 60

    MR. ROCHON: Thank you. It's now my time. We're on the record. I'm just eating the time. It doesn't count on the seven hours. Sometimes lawyers try to use up the other guy's time.
    (The witness leaves the room.)
    MR. ROCHON: The Prime Minister is out of the room.
    So, look, when he communicates, it's not like he goes to the State Department only about these cases. He's there about a host of things. He's trying to get money. He's trying to get security. He's trying to --
    And so none of these things are seen in isolation. So you can't, you know, discuss what did you tell them about this because it's all part of a unified conversation.
    MR. WISTOW: I didn't even ask him that. All I said to him was, did you ask them if they would file a Statement of Interest in these cases.
    That's all I asked. That's pretty straightforward.
    MR. ROCHON: If your question is that, and you're not going to claim it's a waiver of diplomatic privilege --
    MR. WISTOW: I will not.

Page 61

    MR. ROCHON: As long as we're on my time, do you want to tell me -- he's out of the room. Do you want to tell me where else you're going to go, and we can hash out the diplomatic issues now on my nickel?
    MR. WISTOW: I'd rather not --
    MR. ROCHON: All right.
    MR. WISTOW: -- because I don't know where I'm going, if you haven't figured that out yet. It's a little loosey-goosey.
    MR. ROCHON: I'm offering it to you because we'll be back on your time soon.
    MR. WISTOW: I guess, in fairness to you, if he says yes, he did ask them for it, I'm going to ask him did they say yes, did they say no, did they say maybe. That's all.
    MR. ROCHON: Well, then -- well, I know that's all that you -- that's what implicates diplomatic privilege.
    MR. WISTOW: I'm just asking a narrow issue.
    MR. ROCHON: I'm going to have to take this to the Magistrate Judge.
    I'm not going to instruct him not to answer because you're trying to set me up for some kind of sanctions if I instruct him not to answer. I've got a Magistrate Judge available because we started so late.