# EXHIBIT F

Page 114

1  this in private.
2      THE WITNESS: Yes, because I just need to
3  take this phone.
4      THE VIDEOGRAPHER: Going off the record at
5  6:37.
6      (Exhibit No. 5 marked for identification.)
7      (Short recess taken.)
8      THE VIDEOGRAPHER: Going on the record at
9  6:38.
10     MR. ROCHON: Just for the record, so it was
11 about a one-minute break.
12     MR. WISTOW: Okay.
13     MR. ROCHON: Thank you.
14  Q. I take it you're familiar with the document that
15 I just handed you, Exhibit 5?
16  A. Yes.
17  Q. And do you know what that is?
18     (Witness peruses document.)
19  A. Yes. It's a declaration that I made.
20  Q. Right. Do you remember signing it?
21  A. Just give me a second while I just --
22     (Witness peruses document.)
23  A. Yes. That's my signature on it.
24  Q. No, no. I'm not asking if it's your signature.
25 I hope it is. I'm asking if you remember signing it.

Page 115

1  A. Yes. I remember the document. Yes.
2  Q. Okay. I take it you didn't prepare the document?
3  A. Pardon?
4  Q. Did you prepare the document?
5     MR. ROCHON: Objection. We're going to get
6  into privileged areas.
7     MR. WISTOW: How can it be privileged. All
8  I'm asking him is -- I'm looking at all the information.
9  I'm just asking who prepared it.
10 Q. I assume your lawyer prepared it?
11    MR. ROCHON: Objection. Don't answer the
12 question.
13    MR. WISTOW: Okay.
14 Q. Did you prepare this declaration?
15 A. Isn't that the same question you asked before?
16 Q. I don't think so.
17    MR. ROCHON: Counsel, the declaration speaks
18 for itself. The preparation of it --
19    MR. WISTOW: Whatever you say. Just
20 instruct him not to answer. I don't care.
21    MR. ROCHON: Because it intrudes on matters
22 of privilege, and only for that reason, I'm instructing
23 the witness not to answer.
24    MR. WISTOW: Okay. So I just want to be
25 clear. The question is did you prepare the declaration,

Page 116

1  and he's being told not to answer, correct?
2     MR. ROCHON: But only because, counsel, I
3  know the answer, and it would implicate privilege
4  because it could not be yes or no. And you don't --
5     MR. WISTOW: Sure, it could be. It could be
6  an assistant prepared it. It doesn't --
7     First of all, there's no privilege even if
8  it was you. And second of all, saying he didn't prepare
9  it doesn't mean necessarily a lawyer did.
10    But I don't want to fight. I don't want to
11 waste time. I'll live with the instruction at this
12 point.
13 Q. All right. Did you understand the declaration
14 when you signed it?
15 A. Yes.
16 Q. Okay. I'm going to ask you some questions about
17 it. I'm going to go to page 2.
18    And you'll see, on the second line, it begins, On
19 June 18, 2005, I accordingly sent a letter to Secretary
20 of State Rice requesting her assistance in these cases
21 "consistent with the Constitution and laws of the United
22 States."
23    I emphasized in my letter that the attempt by
24 Plaintiffs' counsel to interfere with the actions of the
25 Palestinian government around the world was "not

Page 117

1  supported by United States law and also ran counter to
2  international law and the laws of several foreign states
3  in which the PNA operates."
4     Have I read that correctly?
5  A. Yes, you have.
6  Q. Okay. Now, what laws were you referring -- what
7  was the basis for your statement that the attempts by
8  Plaintiffs' counsel to interfere with the actions of the
9  Palestinian government was not supported by United
10 States law?
11    What knowledge did you have at the time?
12    MR. ROCHON: Mr. Prime Minister -- I didn't
13 want to interrupt your question -- I would object and
14 tell you that it's the same privilege, attorney-client
15 privilege -- not with my law firm, but with counsel to
16 the Pension Fund -- upon whose behalf the letter was
17 being written.
18    MR. WISTOW: I just want it to be clear on
19 the record what we're talking about.
20    There's a letter, June 18, 2005, where he
21 says that the Plaintiffs' efforts to interfere was "not
22 supported by United States law."
23    MR. ROCHON: Yes.
24    MR. WISTOW: I'm just asking what knowledge
25 he had with regard to that statement.

Page 118

1   MR. ROCHON: Okay.
2   MR. WISTOW: If you want -- I just want to
3   make that clear.
4   MR. ROCHON: I understand.
5   MR. WISTOW: If he's got any basis to
6   support the statement whatever.
7   MR. ROCHON: Because the answer would be
8   premised on advice of counsel, I'm going to instruct the
9   witness not to answer.
10  MR. WISTOW: He could say I don't know.
11  MR. ROCHON: He could say many things.
12  Because the answer is based --
13  MR. WISTOW: Okay. I accept the
14  instruction.
15  When I say I accept the instruction, I don't
16  mean that I agree with it. I mean I don't want to fight
17  about it.
18  MR. ROCHON: I understand.
19  MR. WISTOW: Okay.
20  Q. It goes on to say that it ran counter to
21  international law.
22  Did you have any knowledge at the time of what
23  international law was being referred to?
24  MR. ROCHON: Same objection. Any knowledge
25  would have been based on advice of counsel.

Page 119

1   Q. Then it says, And the laws of several foreign
2   states in which the PNA operates.
3   Did you have any knowledge which foreign states
4   were being referred to?
5   MR. ROCHON: Same objection, and the answer
6   would be based on the advice of counsel.
7   MR. WISTOW: Okay.
8   Q. Now, you go on to say in your affidavit, I
9   further explained to Secretary Rice my understanding at
10  the time that the PNA's failure to "file an unqualified
11  appearance in answer to Plaintiffs' complaint" had
12  occurred in order to preserve our legal position both in
13  the United States and overseas with respect to potential
14  efforts by Plaintiffs to seek enforcement of the default
15  judgment in other countries.
16  Have I read that correctly?
17  A. Yes, you have.
18  Q. Okay. Now, do you know if anybody told you of
19  any risks associated with taking that legal position?
20  And I -- well, okay.
21  (Witness peruses document.)
22  MR. ROCHON: Counsel, could you show the
23  witness the full letter that you're asking him about
24  parts of it.
25  MR. WISTOW: Sure.

Page 120

1   MR. ROCHON: Thank you.
2   MR. WISTOW: (Indicating).
3   MR. ROCHON: We should probably have it
4   marked.
5   MR. WISTOW: Well, all right.
6   MR. ROCHON: I'm not insisting.
7   MR. WISTOW: Let's not mark it now. I
8   promise you we're going to get into it and we'll mark
9   it.
10  MR. ROCHON: Thank you.
11  MR. WISTOW: Okay.
12  (Witness peruses document.)
13  MR. ROCHON: And the section that's quoted
14  there, do you mind if I note where it is, counsel, in
15  the letter?
16  MR. WISTOW: No. I don't mind.
17  MR. ROCHON: It's at the top of page 2 of
18  the letter, Mr. Prime Minister.
19  THE WITNESS: Top of page 2?
20  MR. ROCHON: Yes. That paragraph
21  (indicating).
22  (Witness peruses document.)
23  A. Okay.
24  Q. Okay. Do you have my question in mind, or would
25  you like me to repeat it?

Page 121

1   A. You asked me if I recall if somebody told me what
2   this is about in terms of implications.
3   Q. If anybody ever told you there was any risk
4   associated with the position set forth in the letter.
5   That's what I'm asking you.
6   A. All I can tell you is I must have had good reason
7   to really include this. This is a June 18, 2005 letter,
8   so I must have been aware of that risk at the time I
9   sent that letter.
10  Q. What risk?
11  A. That you're referring to.
12  Q. What am I referring to?
13  A. In terms of why it is we acted the way we did,
14  not filing an unqualified appearance before the Court.
15  That's what I thought you asked.
16  Q. Okay. Well, I'm glad you said that because you
17  misunderstood me. It's my fault probably. I didn't ask
18  the question very well.
19  What I'm trying to find out is whether you
20  understood that any risk was associated with taking that
21  position with the Court.
22  A. Any risk?
23  Q. If anything bad could happen by taking that
24  position. That's what I'm asking.
25  A. But that's how I understood the question.