# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al., :
        Plaintiffs – Judgment Creditors,        :
                                                                        :
                        v.                                      :        C.A. No. 00 - 105L
                                                                        :
THE PALESTINIAN AUTHORITY, et al.,   :
        Defendants – Judgment Debtors.     :

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY DENIAL OF THE MOTION TO INTERVENE FILED BY "THE PALESTINIAN PENSION FUND FOR THE STATE ADMINISTRATIVE EMPLOYEES IN THE GAZA STRIP" AND FOR ALTERNATE RELIEF**

Plaintiffs submit this memorandum in support of their Motion for Summary Denial of the Motion to Intervene filed by "The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip."

## I.  SUMMARY OF THE ARGUMENT

The motion to intervene should be summarily denied for the following grounds:

A.        The "The Pension Fund for the State Administrative Employees in the Gaza Strip"[1] is a fictitious name or pseudonym with no legal existence and cannot bring suit.

B.        The Insurance and Pension Fund has ignored the mandatory requirements of Fed.R.Civ.P. 24(c) that a motion to intervene "shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought."  The Insurance and Pension Fund has <u>not</u> filed a complaint in intervention or any other proposed pleading.

---

[1] To avoid prolixity, "The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip" is referred to as the "Insurance and Pension Fund."

C.    In 2007, the Insurance and Pension Fund stipulated to continuation of the injunction and cannot now argue that the injunction to which it agreed was improper from the outset in 2005 as a matter of law.

D.    The Insurance and Pension Fund is not entitled to intervention as of right under Rule 24(a) because the injunction of which the Insurance and Pension Fund complains is expressly and unambiguously limited to the assets of the PLO and PA.  The Insurance and Pension Fund insists it is completely separate from and has no interest in assets of the PLO and PA.  Moreover, the specific property in which the Insurance and Pension Fund does claim an interest is an investment account in New York that is <u>not</u> the subject of this action.  Therefore, the Insurance and Pension Fund does not "claim an interest relating to the property or transaction which is the subject of the action" to meet even the threshold requirements for intervention of right under Rule 24(a).

E.    The Insurance and Pension Fund is not entitled to intervention as of right under Rule 24(a) because the case *sub judice* will not "as a practical matter impede the movant's ability to protect its interest" since this Court has already ruled that it will not adjudicate rights in assets outside of Rhode Island, such as the New York investment account.

F.    The Insurance and Pension Fund is not entitled to intervention as of right under Rule 24(a) because the Insurance and Pension Fund's interests are adequately represented by existing parties, Defendants PLO and PA.  As noted above, the only "property or transaction that is the subject of" the injunction is the assets of the PLO and PA.  Defendants PLO and PA obviously have greater interest in protecting their assets than the Insurance and Pension Fund has in protecting the assets of the PLO and PA.  Moreover, as noted above, there are disputed issues of fact concerning whether the Insurance and Pension Fund is a separate entity from the PA.  If

they are one and the same entity, then, by definition, the PA adequately represents the Insurance and Pension Fund's interests in this case.

      G.     The Insurance and Pension Fund is not entitled to intervention because the Insurance and Pension Fund had been inexcusably dilatory in seeking to intervene in this proceeding, five years after the injunction was issued and the Insurance and Pension Fund was notified of it and three years after the Insurance and Pension Fund stipulated to its continuation.

      H.     The Motion to Intervene should be denied because the Insurance and Pension Fund's right to intervene in this action is dependent upon factual issues that are the subject of a prior pending action between the Insurance and Pension Fund and Plaintiffs in the declaratory judgment proceeding in New York state court ("DJ action"), which was ready for immediate trial in that Court in 2008 when the Insurance and Pension Fund successfully sought a stay of that proceeding pending this Court's decision on the Motion to Vacate the default judgments against the PLO and the PA, which stay is still in effect.  The Insurance and Pension Fund can and should apply to lift the stay in the DJ action if it has changed its strategy and now seeks a prompt release of the funds in the investment account.

      I.     The Motion to Intervene should be denied because determination of the Insurance and Pension Fund's right to the relief requested will complicate this action and will unduly delay and prejudice the adjudication of the rights of Plaintiffs, since it will necessitate discovery by Plaintiffs into the facts upon which the Motion is based, including the Insurance and Pension Fund's existence as a juridical entity separate from the PA, and the ownership rights of the PA and PLO to the funds frozen in the name of the Insurance and Pension Fund.

      J.     Movant's purported reservation of its objection to the personal jurisdiction of this Court is improper and calls for denial of the motion.

K.    The merits of the claims that the Insurance and Pension Fund seeks to assert in intervention are not to be determined on the motion to intervene.

## II.  FACTUAL ISSUES RELEVANT TO THE FUND'S MOTION TO INTERVENE

### A.  The funds at issue

In May 2005, immediately after the First Circuit affirmed the July 2004 judgment entered by this Court, the Ungars restrained a securities portfolio held by Swiss American Securities, Inc. ("SASI"), a New York-based securities custodian, that are titled in the name "Palestinian Pension Fund of the State Administrative Employees Represented by the Palestinian National Authority." *See* Exhibit A.  Very briefly, the origin of these securities is as follows:

After Israel captured the Gaza Strip in June 1967, it established a civil administration for Gaza residents composed almost entirely of local Palestinians. These Gazan civil servants were effectively employees of the Israeli government (i.e. of the Israeli Ministry of Defense) and their pension contributions were deducted from their salaries at the source by Israel and listed on the books of the Israeli Treasury as a future debt to the employees. After the signing of the Oslo Accords, which provided for the dismantling of the Israeli civil administration in Gaza, the PA agreed to assume Israel's total *in personam* pension debt to these Gazan civil servants. In order to compensate the PA for its assumption of this debt, in the mid-1990's Israel transferred to the PA a cash sum equal to the amount of the debt. Thus, the cash funds that were transferred to the PA are the property of the PA. The employees have no *in rem* rights to these funds; rather, they have an *in personam* right to payment of their pensions from the PA, just as they previously had such an *in personam* right to such payment from Israel. *See* Exhibits B and C.

The PA used these funds to purchase a portfolio of securities, which it holds under the d/b/a name "Palestinian Pension Fund of the State Administrative Employees."

The fact that the "Palestinian Pension Fund of the State Administrative Employees" is not the name of any legal entity was confirmed by no less than James R. Tanenbaum, Esq., who has managed these securities for over a decade, first as an attorney at Stroock, Stroock & Lavan and currently at Morrison & Foerster – the same law firm that filed the Motion to Intervene. On April 19, 2005 (just *before* the Ungars initiated their enforcement proceedings against these assets) attorney Mr. Tanenbaum certified before a witness that the "Palestinian Pension Fund of the State Administrative Employees" has "**no legal personality**." Exhibit D.[2]

### B. New York proceedings

The Ungars' restrained the securities at SASI by means of both the injunction issued by this Court on May 5, 2005, and a New York State restraining notice and execution.

On December 7, 2005, the Insurance and Pension Fund, represented by Morrison & Foerster, filed a motion to vacate the New York State Restraining Notice served upon SASI, claiming that it owns the securities at SASI titled to the "Palestinian Pension Fund of the State Administrative Employees."

The sole basis for the Insurance and Pension Fund's claim to own these securities is that the Insurance and Pension Fund is sometimes also known by the name Palestinian Pension Fund of the State Administrative Employees."  I.e., the Insurance and Pension Fund *admits* that the name "Palestinian Pension Fund of the State Administrative Employees" is merely a d/b/a/, but

---

[2] Notably, while he was managing these securities at Stroock, Mr. Tanenbaum registered with the Department of Justice as an official foreign agent of the PA. Exhibit E, pp 5-6. Mr. Tanenbaum did not renew his registration with the Justice Department after moving to Morrison & Foerster, despite the fact that he continues to manage these assets as before.

claims that this name is a d/b/a for the Insurance and Pension Fund and not, as the Ungars assert, for the PA.

On February 14, 2006, the Ungars filed two new actions: a turnover proceeding against SASI and a declaratory judgment action seeking a judgment finding that the assets at issue are owned by the PA and are not owned by the Insurance and Pension Fund.

At a hearing on May 18, 2006, Justice Shirley W. Kornreich dismissed the turnover proceeding without prejudice to renewal after the conclusion of the declaratory judgment action. Significantly, Justice Kornreich emphasized that she was dismissing the state court turnover proceeding – and thereby lifting the state court restraint on the securities – first and foremost because the assets would remain restrained by the injunction issued by this Court, "there is a Federal Injunction, which is still outstanding holding these funds." Tr. May 18, 2006 at p. 46.

The declaratory judgment proceeded to discovery at the close of which the Insurance and Pension Fund moved for summary judgment. Justice Kornreich denied the Insurance and Pension Fund's motion for summary judgment, after finding, *inter alia*, that:

-     it had "not presented evidence that adequately explains the use of different names for what they now say is the same Pension Fund,"

-     its "evidence does not clarify to what extent the PA or the Insurance and Pension Fund control the [portfolio at issue], whether the latter is even being used as a *pension* fund, and the sources of the funds," and

-     it  "provide[d] conflicting explanations of how the funds have been and will be used and for whose benefit."

Exhibit F.  at  pp. 8-10.

Justice Kornreich also denied the Insurance and Pension Fund's motion to strike the Ungars' jury demand.

In the meanwhile, on August 19, 2008, the Insurance and Pension Fund moved to stay the trial pending the ruling of the Appellate Division of the Supreme Court on whether the Ungars have a right to trial by jury and pending the outcome of the Motion to Vacate filed in this case. Exhibit G.  In support of its Motion to Stay the Trial, the Insurance and Pension Fund took the position that there was "substantial identity between [the] state and federal actions," that "here there is such substantial identity between the parties in the two actions." *Id.*, p. 9.  The trial court granted the motion solely on the second ground, ruling "that this motion is granted to the extent of staying the trial pending decision by Judge Lagueux of Federal Court in Rhode Island." Exhibit H.

Subsequently, on March 30, 2010, the Appellate Division affirmed the lower court's decision on the jury, and held that the declaratory judgment action should be tried to a jury. *See Strachman v. PA*, 73 A.D.3d 124, 901 N.Y.S.2d 582 (1st Dept. 2010).

Thus, the determination of parties' rights to the securities has been stayed for the last two years, at the request of the Insurance and Pension Fund. The Insurance and Pension Fund elicited the New York court's deference to this Court for purposes of determining the Motion to Vacate. Yet, the Insurance and Pension Fund now has the temerity to complain of the delay resulting from this deference and asks that this Court circumvent the New York action in its entirety.

### C.    The identity of the Insurance and Pension Fund

The threshold factual issue relevant to the Insurance and Pension Fund's motion to intervene is whether the Insurance and Pension Fund is 1) a juridical entity capable of bringing suit, including the Motion to Intervene, 2) merely a pseudonym  for another entity or 3) a department of the PA.  This issue is relevant to the question of whether the PA adequately

represents the Insurance and Pension Fund's interests in this case, and is also relevant to the Insurance and Pension Fund's standing to participate in this action.

Plaintiffs and the Insurance and Pension Fund dispute who is the legal entity that owns or is otherwise entitled to sue on behalf of the Insurance and Pension Fund. The question for whom the Insurance and Pension Fund is a fictitious name is irrelevant, however, to the Insurance and Pension Fund's motion to intervene. It is undisputed that the Insurance and Pension Fund "has no legal personality." Exhibit D. Therefore, it cannot be a party in this action.

In any event, the issue for whom the Insurance and Pension Fund is a fictitious name is extremely confused even by movant's own account. In the DJ action commenced by Plaintiff in New York in 2006, Plaintiff sued two entities: 1) the PA, "d/b/a 'Palestinian Fund of the State Administrative Employees' and/or "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip," and 2) the Insurance and Pension Fund ("IPF"). Exhibit F, (Strachman v, The Palestine Authority, N.Y. Slip Op. dated June 5, 2008 (S.Ct. Trial Part)), p. 1. The Insurance and Pension Fund's response was to assert that "it is the pension fund for civil administration employees in the Gaza Strip and that it is an entity separate from the PA that goes by number of similar, but different names." *Id.*, p. 7. The "General Director" of the Insurance and Pension Fund submitted an affidavit in the DJ action that "this 'Fund' has been referred to over the years by a number of names, including the Insurance and Pension Fund, the Pension Fund of the Civil Administration Employees in the Gaza Strip, The Pension Fund of the State Administrative Employees, and the Insurance and Pension General Corporation, and 'similar variations.'" *Id.*, p. 8 (quoting from the Affidavit of Farouk M. A-Franzi ¶¶1-2)(also attached to the Insurance and Pension Fund's motion to intervene as Exhibit A).

D. **The Insurance and Pension Fund manufactures the delay in resolving the New York proceeding**

As stated above, Plaintiffs commenced the DJ action in 2006, and it is still pending.  In addition to copious discovery, the DJ action has involved determination of summary judgment and other extensive motions and appeals, with reversals and remands.  See, e.g., Ungar v. The Palestinian Authority, 73 A.D.3d 124, 901 N.Y.S.2d 582 (1st Dept. 2010); The Palestinian Authority v. Strachman, 72 A.D.3d 461, 897 N.Y.S.2d 627 (1st Dept. 2010); Ungar v. The Palestinian Authority, et al., 44 A.D.3d 176, 841 N.Y.S.2d 61 (1st Dept. 2007); Strachman v. The Palestinian Authority, N.Y.Slip Op. dated June 5, 2008 (S.Ct. Trial Part); Strachman v. The Palestinian Authority, 2008 WL 2090466 (S.Ct. Trial Part);.  Thus, there has been a considerable investment of time by the parties, their counsel, and the New York courts in adjudicating this action.

The decision of the court in the DJ action, denying cross-motions for summary judgment on June 5, 2008, identifies many of the pertinent issues in that proceeding.  As noted by the court, the Insurance and Pension Fund "filed a motion for summary judgment asking for a declaration that, *inter alia*, the assets held in its name are not owned by the PA or PLO, that the Insurance and Pension Fund is a separate entity from the PA and that the assets can not be used to satisfy the Judgment and should instead be released.  Plaintiffs filed a cross-motion for summary judgment seeking a declaration that the assets are owned by and are the sole property of the PA.   The court denied the motion, holding that there were disputed factual issues which precluded summary judgment on the issue of whether the Insurance and Pension Fund owns the frozen bank account to the exclusion of any interest of the PA or the PLO.  *Id.*, p. 7.

The court noted that one of the contentions upon which the Insurance and Pension Fund was required to prevail in order to obtain summary judgment was "that the PA does not have the

legal right to 'assign or transfer' the funds and securities being held in the SASI account." *Id.*, p.

7.   The trial court held that this issue could not be resolved on summary judgment because

> The evidence does not clarify to what extent the PA or The Insurance and Pension
> Fund control the Insurance and Pension Fund, whether the latter is even being
> used as a pension fund, and the sources of the funds held by SASI, all of which
> are material issues.

*Id.*, pp. 8-9.   The Court also denied Plaintiffs' cross-motion for summary judgment "based on

disputed material issues of fact, as set forth above…."   *Id.*, p. 11.   The conclusion of the Court

was that "both motions are denied and the case will now proceed to trial."   *Id.*, p. 2.

However, on August 19, 2008, the Insurance and Pension Fund moved to stay that trial.

Exhibit G.   The Insurance and Pension Fund based that motion on two grounds, asserting that 1)

"trial should be stayed pending the First Department's ruling on whether the Plaintiffs have a

right to trial by jury," and 2) "trial should be stayed pending the outcome of a Motion to Vacate

default judgment in the Rhode Island litigation."   *Id.*, p. i.   In support of its Motion to Stay the

Trial, the Insurance and Pension Fund took the position that there was "substantial identity

between [the] state and federal actions," that "here there is such substantial identity between the

parties in the two actions."   *Id.*, p. 6.   The trial court granted the motion solely on the second

ground, ruling "that this motion is granted to the extent of staying the trial pending decision by

Judge Lagueux of Federal Court in Rhode Island."  Exhibit H.  The stay is still in effect.

Thus, the DJ action and the determination of the *Insurance and Pension Fund's rights to*

*the frozen account has been stayed for the last two years, at the request of the Insurance and*

*Pension Fund*.   The Insurance and Pension Fund elicited the New York court's deference to this

Court for purposes of determining the motion to vacate the default judgment.  Now the Insurance

and Pension Fund complains of the delay resulting from this deference and asks that this Court

circumvent the DJ action in its entirety.

      **E.**      **When the Insurance and Pension Fund became aware of the alleged impact on its interests of this Court's injunction**

It is undisputed that on or about May 6, 2005, the Insurance and Pension Fund had actual notice of both the injunction and that Swiss American Securities, Inc. ("SASI") had frozen the Insurance and Pension Fund's accounts.

## III.  ARGUMENT

      **A.**      **The motion must be denied because the Insurance and Pension Fund is a fictitious name and the identity of the real party in interest is unclear**

The same law firm that is representing the Insurance and Pension Fund in this case has certified on its behalf that the Insurance and Pension Fund "has no legal personality."  Exhibit D. Accordingly, it is not entitled to seek intervention in this case.

Rule 10(a) of the Federal Rules of Civil Procedure requires that pleadings identify the parties, and failure to properly identify the plaintiff is grounds for dismissal.  <u>Dotson v. Bravo</u>, 321 F.3d 663, 668 n. 4 (7th Cir. 2003).  An entity cannot sue under a pseudonym, but must bring an action using its real name.   <u>In re South Central States Bakery Products Antitrust Litigation</u>, 86 F.R.D. 407, 411 n. 4 (M.D.Ga. 1980).  "Actions may be brought only by legal entities.  There must be some ascertainable persons natural or artificial to whom judgment may be awarded, and no suit can lawfully be prosecuted except in the name of such person."  59 Am.Jur.2d <u>Parties</u> §24 (citations omitted).

Although individuals are allowed to bring actions under fictitious names in certain cases, <u>MacInnis v. Cigna Group Ins. Co. of North America</u>, 379 F.Supp.2d 89 (D.Mass. 2005), this is only allowed when the court and the parties can identify the real party in interest who stands behind the fictitious name.  <u>Roe v. Ingraham</u>, 364 F.Supp. 536, 541 (S.D.N.Y. 1973).  Such a determination is necessary "to enable the defendant to present his defenses against the proper

persons, to avoid subsequent suits, and to proceed to finality of judgment."  Wright, Miller & Kane, <u>Federal Practice & Procedure, Civil 3d</u> §1541.

Accordingly, the Motion to Intervene must be denied without prejudice.  It can be re-filed in the true name of the legal entity d/b/a the Insurance and Pension Fund, but not by the Insurance and Pension Fund alone.

**B.      The Insurance and Pension Fund's Motion to Intervene should be summarily dismissed without prejudice on procedural grounds**

Rule 24(c) of the Federal Rules of Civil Procedure states as follows:

(c)  **Notice and Pleading Required.**  A Motion to Intervene must be served on the parties as provided in Rule 5.  The motion must state the grounds for intervention and be accompanied by a pleading that sets out a claim or defense for which intervention is sought.

The application of Rule 24(c) is mandatory,

> The language of the rule [requiring submission of the proposed pleading] is mandatory, not permissive, and the rule sets forth reasonable procedural requirements to ensure that claims for intervention are handled in an orderly fashion.

<u>Public Citizen v. Ligget Group, Inc.</u>, 858 F.2d 775, 783-784 (1st Cir. 1988).

The Insurance and Pension Fund failed to attach its proposed complaint in intervention or other pleading to its motion for intervention.  The Insurance and Pension Fund also did not purport to adopt any of the pleadings already filed in this case.  This is a violation of the "mandatory" requirements of Rule 24(c) that the motion attach "a pleading setting forth the claim or defense for which intervention is sought."  <u>Public Citizen v. Ligget Group</u>, 858 F.2d at 783.  "Rule 24(c) has this requirement in order 'to enable the court to properly frame the issues, and to inform the parties against whom some right is asserted or relief sought.'"  <u>Township of South Fayette v. Alleghany County Housing Authority</u>, 183 F.R.D. 451, 453 (W.D.P.A. 1998),

quoting In re: Pantopaque Products Liability Litigation, 938 F.Supp. 266, 274 (D.N.J. 1996). "The purpose of requiring an intervenor to file pleadings is to place the parties on notice of the claimant's position, the nature and basis of the claim asserted, and the relief sought by the intervenor." Dillard v. City of Foley, 166 F.R.D. 503, 506 (M.D.Ala. 1996).

Accordingly, intervention has been denied in a number of cases where the intervenor failed to append the proposed pleading in intervention to the motion to intervene. See, e.g., Surety Administrators Inc. v. Samara, 2006 WL 1737390 (E.D.Pa. 2006), p. 3; Township of South Fayette v. Alleghany Cty. Housing Authority, 183 F.R.D. 451, 453 (W.D.Pa. 1998); Dillard v. City of Foley, 160 F.R.D. 503, 506 (M.D.Ala. 1996). See, Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 784 (1st Cir. 1988) (affirming trial court's allowance of intervention without formal compliance with the Rule 24(c), but stating that "[f]uture litigants should not attempt to use this opinion to circumvent the clear requirements of the rule"), quoting The Beef Industry Anti-Trust Litigation, 589 F.2d 786, 789 (5th Cir. 1979).

In most instances, an order denying a motion to intervene is immediately appealable. R&G Mortgage Corp. v. Federal Home Mortgage Corp., 584 F.3d 1, 7 (1st Cir. 2009). However, if the denial of the motion to intervene is based upon the movant's failure to submit a proposed pleading, such a denial is not a final appealable judgment, provided that the denial is without prejudice and the court makes clear that it will consider a resubmitted motion to intervene that complies with the procedural requirements of Rule 24(c). The United States v. City of Milwaukee, 144 F.3d 524, 530 (7th Cir. 1998).

There is no reason or necessity in this case to overlook the Insurance and Pension Fund's failure to comply with the mandatory requirements of Rule 24(c). Indeed, such a pleading is essential to clarify whether the purported intervenor is the Insurance and Pension Fund, or, if not,

to identify the real name of the entity for whom the Insurance and Pension Fund is a pseudonym or fictitious name.  The Insurance and Pension Fund can and should re-file its motion to intervene with its proposed pleading attached, as required by the Rule, if it wishes to pursue intervention.  The Insurance and Pension Fund will suffer no prejudice from having to comply with the requirements of Rule 24(c) and the relief it is seeking in this litigation will be clarified, both to the benefit of Plaintiffs and to the Court.

In the event that the Court declines to deny the Insurance and Pension Fund's Motion to Intervene solely on this procedural ground, Plaintiffs will address their additional objections to the Insurance and Pension Fund's motion.

### C. The Insurance and Pension Fund stipulated to the continuation of the injunction and cannot now move to intervene to argue that the injunction was improper *ab initio* as a matter of law

Although the Insurance and Pension Fund claims in its supporting memorandum that the operative injunction is the May 5, 2005 order of this Court, in fact, on September 11, 2007, the Insurance and Pension Fund obtained relief from the Court in the form of an order modifying the injunction.  Exhibit I.  That Stipulation and Order allowed the Insurance and Pension Fund (through its investment managers) to actively manage the frozen SASI accounts.  It also prohibited release of any money to the Insurance and Pension Fund from the SASI account, stating that "this Order shall not permit the Investment Managers, SASI, or any other person or party" to pay any of these assets to the Insurance and Pension Fund, the PLO or the PA.  Exhibit I.

The Insurance and Pension Fund completely ignores this Stipulation and Order, and misleadingly states that "The Pension Fund has never been a part of these proceedings, although the Fund has been greatly affected by the Injunction."  Putative Intervenors' Memo, p. 1.  In fact,

the injunction was modified to accommodate the Insurance and Pension Fund and the Insurance and Pension Fund is a signatory to the Stipulation which was entered by the Court.  This action constitutes a waiver of the Insurance and Pension Fund's right to attempt to vacate the Injunction for <u>any</u> reasons up to and including September 11, 2007, and certainly for the reason that the injunction was improper when it was issued on May 5, 2005!  Additionally, at the very least, it evidences the lack of timeliness of the Insurance and Pension Fund's motion to intervene.

> **D.    The Insurance and Pension Fund is not entitled to intervention as of right**

The movant bears the burden of establishing its purported right to intervene.  <u>United States v. Borge</u>, 249 F.R.D. 387, 388 (S.D.Fla. 2008).  The determination of whether movant is entitled to intervention as of right is a fourfold inquiry:

> To succeed on a motion to intervene as of right, a putative intervenor must establish (i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party. *See, Negron-Almeda v. Santiago*, 528 F.3d 15, 22 (1st Cir. 2008); B. *Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544-45 (1st Cir. 2006); see also Fed.R.Civ.P. 24(a).  The movant must fulfill each of these preconditions.  "The failure to satisfy any one of them dooms intervention." *Patch*, 136 F.3d at 204.

<u>R&G Mortgage Corp. v. Federal Bank Home Loan Mortgage Corp.</u>, 584 F.3d 1,7 (1st Cir. 2009).

None of these four requirements are satisfied here.

> **1.    The Insurance and Pension Fund cannot "claim an interest relating to the property or transaction which is the subject of the action"**

The Insurance and Pension Fund alleges that it is entitled to intervention as a right, pursuant to Rule 24(a)(2).  Such intervention is limited to a movant who "claims an interest relating to the property or transaction that is the subject of <u>the</u> <u>action</u>…."  Fed.R.Civ.P. 24(a)(2) (emphasis added).  The phrase "the action" clearly refers to the lawsuit in which the movant

seeks to intervene.  The "transaction" in which the Insurance and Pension Fund claims an interest is the injunction.  However, the subject of that injunction is the "assets of the Palestinian Authority and/or the Palestinian Liberation Organization…."  The Insurance and Pension Fund has adamantly asserted that it is <u>not</u> interested in the assets of the Palestinian Authority and/or the Palestinian Liberation Organization.  Even now, in connection with the Insurance and Pension Fund's Motion to Intervene, the Insurance and Pension Fund fails to assert any interest in the assets of the PLO or the PA.

The Insurance and Pension Fund cannot have it both ways: The Insurance and Pension Fund cannot assert its complete independence from the PLO and PA and at the same time claim that it is interested in the assets of the PLO and PA.  In any event, the Insurance and Pension Fund does not claim that it is interested in the assets of the PLO and PA.  Accordingly, by definition, it is not an intervenor as of right under Rule 24(a)(2) to seek to vacate the injunction.

The Insurance and Pension Fund claims that the property involved in this litigation includes the approximately $120 million dollars held in the SASI investment account in New York under the name of the Insurance and Pension Fund.  This Court has already held that it is has no jurisdiction over, and will not adjudicate ownership questions concerning, assets located outside of Rhode Island.  McPherson Affidavit Ex. P (Tr., June 16, 2005), at 15:8-18.  Thus, the funds in the SASI account are clearly not the subject of this action.  Instead, The Insurance and Pension Fund is attempting to use intervention to <u>expand</u> the property that is the subject of this action, beyond the limits already set by the Court.  However, "one of the most usual procedural rules is that an intervenor is admitted to the proceedings as it stands, and in respect of the pending issues, and is not permitted to enlarge those issues or compel an alteration of the nature

16

of the proceeding." <u>Vincent v. Washington Gas Light Co.</u>, 321 U.S. 489, 498, 64 S.Ct. 731 (1944).

The Insurance and Pension Fund also has not cited a single case in which intervention was allowed in order to protect the intervenor's interest in property that is beyond the custody or control of the court. To the contrary, intervention has been denied when "at the time when appellant filed its intervention the trial court had no custody or control of any property, either actually or constructively, that distribution or other disposition of which would have adversely affected intervenor." <u>Hunt Tool Co. v. Moore, Inc.</u>, 212 F.2d 685, 688 (5th Cir. 1954)(denying intervention to adjudicate the right to property which was under the control of the Texas state court).

In short, the Insurance and Pension Fund improperly seeks to use intervention as a sword to expand the scope of this proceeding, rather than as a shield to protect it from adverse rulings concerning property that is the subject of this action and the court's custody or control.

> **2.    Intervention should be denied because no action by this Court threatens to impair or impede The Insurance and Pension Fund's ability to protect its interest**

If an interest sufficient to satisfy Rule 24(a) is found, it is necessary to decide whether the Insurance and Pension Fund "is so situated that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect its interests." Fed.R.Civ.P. 24(a)(2). Here, the Court has expressly ruled that it will not adjudicate the rights to assets located outside of Rhode Island. McPherson Aff. Ex. P (Tr., June 16, 2005), at 15:8-18. By definition, that includes the frozen account held by SASI. Thus, nothing this Court has done or proposes to do will impair or impede the Insurance and Pension Fund's ability to protect its interest in that account. The Insurance and Pension Fund can protect its interests by proceeding in the New York action.

Accordingly, intervention is denied "when the court finds that the would-be intervenor could protect its interests in a separate action: the practical disadvantage of filing a separate suit and perhaps duplicating some of the efforts in the on-going action are not sufficient to meet the criteria of the Rule." Wright, Miller & Kane, <u>Federal Practice & Procedure: Civil 3d</u> §1908.2. Summary denial of this motion to intervene is *a fortiori* required here, where the separate suit already has been filed and prosecuted for over five years.

### 3.     The Insurance and Pension Fund's interests are adequately represented by the Defendants PLO and PA

Rule 24(a)(2) sets forth an additional requirement for a party to intervene as a right, which is that intervention will not be allowed "if existing parties adequately represent that interest." The Insurance and Pension Fund seeks to meet this burden by asserting that

> [N]o party presently in this action can adequately represent the Insurance and Pension Fund's interests in its assets. Plaintiffs, of course, are the Fund's adversaries with respect to the frozen assets: they seek to execute upon the assets by claiming that the pension fund does not actually own the assets, but the PA does. The PA and the PLO have made no claim to the Pension Fund's assets.

Putative Intervenor's Memo, p. 15. However, the assertion that "[t]he PA and PLO have made no claim to the Pension Fund's assets" is irrelevant, since the Insurance and Pension Fund's assets are not subject to the Court's injunction unless and to the extent that the PA or PLO also has a claim to those assets. The injunction is limited to the assets of the PA or PLO. The property that is the subject of this action is the assets of the PLO and PA, and the PLO and PA by definition more than adequately represent any interest that the Insurance and Pension Fund may have in these assets, because the PLO and the PA are the owners of these assets and are fully capable of protecting their interests.

### 4.     The motion to intervene should be summarily denied because the

**Insurance and Pension Fund has been inexcusably dilatory in seeking to Intervene in this proceeding**

The issue of timeliness is also a fourfold inquiry:

As a general matter, the case law reflects four factors that inform the timeliness inquiry:  (i) the length of time that the putative intervenor know or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention.  *Id.*  Each of these factors must be appraised in light of the posture of the case at the time the motion is made.  *Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 65 (1st Cir. 2008).

R&G Mortgage Corp. v. Federal Home Loan Corp., 584 F.3d 1, 7 (1st Cir. 2009).

The Insurance and Pension Fund seeks to intervene in this action, although this action has already been pending ten (10) years, and the specific injunction of which the Insurance and Pension Fund complains entered over five years ago, on May 5, 2005.  Moreover, Plaintiffs have filed numerous actions over the last five years in reliance upon the injunction, including several actions to obtain assets covered by the injunction, such as the DJ action itself.  What followed in the DJ action was five years of litigation, including extensive trial and appellate decisions.  Nevertheless, the Insurance and Pension Fund waited until August 18, 2010 to file its Motion to Intervene in this action.  Plaintiffs would therefore be prejudiced if the movant were to obtain *vacatur* of the injunction now.  Moreover, any prejudice to the Insurance and Pension Fund from denying intervention is entirely its own doing since the DJ action (and the Insurance and Pension Fund's rights to the funds in the SASI accounts) would have been resolved two years ago if the Insurance and Pension Fund had procured a stay of that proceeding.  Thus, the motion to intervene should be summarily denied because of the Insurance and Pension Fund's inexcusable delay in filing its motion.

  **E. The Motion to Intervene should be summarily denied because of the prior pending action between Plaintiffs and the Insurance and Pension Fund**

As noted above, the availability of relief by commencing a separate action necessitates denial of intervention.  This is even more compelling when there is a prior pending action between the parties that will resolve factual issues upon which the right to intervention depends.  Those factual issues center on the Insurance and Pension Fund's existence as an entity separate and independent of the PA or PLO, and whether the Insurance and Pension Fund owns the proceeds held in the SASI account independent of the PA or PLO.  Resolution of these issues in the DJ account will terminate the Insurance and Pension Fund's interest in the injunction.  In support of its successful motion to stay the DJ action pending decision on the Motion to Vacate, the Insurance and Pension Fund has already admitted that there is "substantial identity" between the DJ action and this action, and that "there is substantial identity between the parties in the two actions."  Exhibit G, p. 6.  The Insurance and Pension Fund is judicially estopped from contradicting these admissions which establish the DJ action as a prior pending action to which this Court should defer.

The Insurance and Pension Fund now disputes the adequacy of the DJ action because the PA is not a party to that proceeding.  The Insurance and Pension Fund claims that the DJ action therefore will not determine the rights of the PA.  However, the PA has <u>never</u> appeared in the DJ action.  The Insurance and Pension Fund has known from the outset that the PA is not a party to that proceeding and certainly was aware of this fact when it entered into the Stipulation modifying the injunction on September 11, 2007, and when it represented to the court in the DJ action that it and this action involve substantially the same parties and issues.

More importantly, the Insurance and Pension Fund's only legitimate "interest" in the DJ action is in the determination of <u>the Insurance and Pension Fund's</u> rights to the frozen accounts.  If the court in the DJ action concludes that the frozen accounts are under the sole control of the

Insurance and Pension Fund, and that the Insurance and Pension Fund is legally separate from the PA, then the Insurance and Pension Fund's claims to release of the funds will be vindicated, regardless of the fact that the PA is not a party.  On the other hand, if the court concludes that the Insurance and Pension Fund does <u>not</u> have control over the frozen account independent of the PA or PLO, or that the Insurance and Pension Fund is not legally separate from the PA or PLO, the Plaintiffs' efforts to bar the Insurance and Pension Fund from obtaining this account will be successful, regardless of the fact that the PA and PLO are not a party.  The possibility that Plaintiffs may have to then commence a turnover proceeding against SASI in order to actually obtain the funds is (or should be) of no consequence to the Insurance and Pension Fund.

The Insurance and Pension Fund also questions the adequacy of the DJ action because "Plaintiffs' new tort theory seeks solely to hold the Pension Fund responsible for allegedly inferring with Plaintiffs' efforts to enforce the default judgment."  Putative Intervenor's Memo., pp. 12-13.  There is no "new tort theory."  Instead, the New York Appellate Division described Plaintiffs' claims as "analogous" to a claim against a third party for tortious interference with contract.  <u>Strachman v. The Palestinian Authority</u>, 73 A.D. 3d 124, 901 N.Y.S.2d 582, 584 (1st Dept. 2010).

That analogy was significant, moreover, for solely one reason: to determine whether Plaintiffs have a right to a jury trial.  <u>Id</u>.  Even if it were a "new theory," however, it would not change the factual issues that must be decided concerning the Insurance and Pension Fund's rights to the SASI account.  If the Insurance and Pension Fund owns and has complete control over that account, to the exclusion of the PLO and PA, then the Insurance and Pension Fund's assertion of those ownership rights by definition cannot constitute interference with Plaintiffs' rights against the PLO and PA.  These same factual issues control the Insurance and Pension

Fund's right to complain about the effect of the Court's injunction on the SASI account. Accordingly, the motion to intervene should be stayed or denied without prejudice pending resolution of these issues in the DJ action.

**F.    The motion to intervene should be summarily denied    because it will necessitate extensive discovery, delay this proceeding and result in duplicative rulings**

The Insurance and Pension Fund's right and standing to appear in this action is dependent upon factual issues concerning its legal personality, and its relationship with Defendants PLO and PA. These same issues must be decided in the DJ action in connection with determining Plaintiffs' right to the funds held in the SASI account. Intervention should be denied when a federal court will have to resolve factual issues which "are identical to those asserted in the existing state court action," on the grounds that intervention "would lead to the inevitable and unnecessary duplication of effort, draining limited court resources." Guiness Mahan Caymen Trust Ltd. v. Windels, Marx, Davies & Ives, 684 F.Supp. 375, 380 (S.D.N.Y. 1988). In such circumstances, "the appropriate approach would seem to be to have the state court action tried to a conclusion." Id. Accordingly, the motion to intervene should be denied or stayed pending resolution of the DJ action. Id.

In the alternative that the Court decides to consider allowing intervention, Plaintiffs request that the Court continue the hearing on the motion to allow Plaintiffs sufficient time to conduct discovery concerning the factual issues upon which the Insurance and Pension Fund's right to intervene depends, including notably the Insurance and Pension Fund's status as a juridical entity and its relationship to the PLO and PA.

**G.    Intervention should be summarily denied because of the Insurance and Pension Fund's improper attempt to reserve its objection to the Court's personal jurisdiction**

The Insurance and Pension Fund seeks to intervene in this action and vacate the injunction, without acceding to this Court's jurisdiction over it:

> Although the Pension Fund seeks to intervene to test the propriety of this Court's Injunction, it reserves its objection to personal jurisdiction in this proceeding. The Pension Fund has turned to the source of an improper restraint on its assets, but this motion should in no way be seen as consent to personal jurisdiction for any other aspect of this proceeding, or a waiver of any objections related to this issue.

Putative Intervenor's Memo, p. 15, n. 2. Beyond the simple illogic of a movant seeking relief from a court while denying that that court's jurisdiction over it, the Insurance and Pension Fund's request is improper and contrary to accepted practice, "[T]he intervenor has submitted to the personal jurisdiction of the court by seeking to intervene in the action…" Wright, Miller & Kane, Federal Practice & Procedure Civil 3d §1920. Accord, Gradel v. Piranha Capital L.P., 495 F.3d 729, 731 (7th Cir. 2007); In re Bayshore Ford Truck Sales, Inc., 471 F.3d 1233, 1248 (11th Cir. 2006); County Security Agency v. Ohio Department of Commerce, 290 F.3d 477, 483 (6th Cir. 2002); United States v. State of Oregon, 657 F.2d 1009, 1014 (9th Cir. 1982). To the contrary, by successfully intervening, the Insurance and Pension Fund will make itself vulnerable to complete adjudication by the Court of all issues in litigation between it and Plaintiffs. United States v. State of Oregon, 657 F.2d 1009, 1014 (9th Cir. 1982).

The Insurance and Pension Fund's attempt to preserve its objection to this Court's personal jurisdiction evinces an intent to benefit from the favorable rulings of the Court while denying the Court's jurisdiction with respect to unfavorable rulings. Intervention on that basis will only further embroil the parties in unnecessary litigation, including further appeals, and should be denied.

    **H.**     **The merits of the claim that the Insurance and Pension Fund seeks to intervene to assert are not to be determined on the motion to intervene**

The Insurance and Pension Fund asks that the Court grant its motion to intervene and immediately vacate or modify the injunction.  Putative Intervenor's Memo., p. 27.  This improperly conflates the motion to intervene with the merits of the claim that the putative intervenor seeks to assert.  "On a motion to intervene in an action in the federal courts, the merits of the defense or claim are not to be determined."  35A C.J.S. <u>Federal Civil Procedure</u> §199, citing <u>Kozak v. Wells</u>, 278 F.2d 104, 109 (8th Cir. 1960)("Whether the allegations are eventually proved is beside the point for we are now concerned only with the question of right to intervene and not with ultimate results on the merits.").  Accordingly, Plaintiffs must and hereby do reserve their right to respond to the merits of the Insurance and Pension Fund's arguments in support of the request to vacate or modify the injunction, when and if intervention is allowed.

## IV.  RESOLUTION OF THE MOTION TO INTERVENE SHOULD BE STAYED

Additionally and/or alternatively – i.e., even if the Court denies the Ungars' motion to summarily deny the Motion to Intervene for the reasons set forth above, or if it grants summary denial and the Insurance and Pension Fund then re-files a properly-captioned motion accompanied by a Rule 24(c) pleading – the Court should also stay briefing on the Motion to Intervene pending the outcome of the following matters:

### A.        The New York State Court Motion for a Receiver

As discussed above, the New York state court has denied the Insurance and Pension Fund's motion for summary judgment, and the Ungars' declaratory judgment action is headed for a jury trial. The Ungars hope to prevail at trial and to satisfy their judgment from the securities portfolio at issue.

Naturally, the Ungars were therefore shocked and extremely disturbed to learn for the first time upon receiving the Motion to Intervene that the portfolio has lost **millions** in value, and may lose **millions** more because of the purported failure to find a securities custodian.[3]

Because this failure to retain a securities custodian may lead to a further loss in the value of the portfolio – which in turn threatens the Ungars' ability to enforce their judgment against these assets – the Ungars have filed a motion in the New York state court hearing the declaratory judgment action seeking the appointment of a temporary receiver empowered to retain such a custodian. Exhibit J.

The Ungars' motion for appointment of a receiver – and the disposition of that motion – are extremely relevant to the Motion to Intervene, because the gravamen of the Motion to Intervene is the alleged inability of Morrison & Foerster to find a securities custodian due to the existence of the injunction entered by this Court in May 2005.

If the New York state court appoints a temporary receiver who succeeds in retaining a securities custodian – which is extremely likely given that the size of the portfolio is $122 million, that potential custodians are certain to feel more comfortable dealing with an officer of the court such as a receiver rather than private attorneys and that the receiver can be trusted to make serious good-faith efforts– the gravamen of the Motion to Intervene will have evaporated.

Moreover, the Ungars' motion for a receiver effectively places responsibility for the preservation of the value of the portfolio solely and squarely in the hands of the New York court, which is only proper and fitting, given that (a) the securities at issue are located in New York, (b)

---

[3] At this time the Ungars have no means of verifying these claims of loss and are thus accepting them as true at the moment out of caution and for the purpose of taking steps to preserve the assets. The Ungars reserve the right to examine and challenge the accuracy of these claims.

the securities have been the subject of five years of extensive litigation in that forum, and (c) the New York Supreme Court is intimately familiar with the relevant issues necessary to preserve the assets, having supervised the litigation for years and having issued numerous prior rulings.

Indeed, if the Insurance and Pension Fund is sincere about wanting to find a securities custodian, it will consent to the Ungars' motion for appointment of a receiver.

Accordingly, the Insurance and Pension Fund's attempt to railroad this Court into immediate action by pointing to a "crisis" regarding these assets should be rejected.

On the contrary, the Motion to Intervene should be stayed in order to permit the New York court to resolve this issue in the context of the Ungars' motion for a receiver.

### B.    The Discovery Sought by the Ungars Regarding the Motion to Intervene

The Motion to Intervene is founded on several bald and unsupported factual claims.

For example, the Insurance and Pension Fund claims that it needs to retain a new securities custodian because the current custodian Credit Suisse Securities LLC New York ("CSSU NY") is not adequate. The sole "support" offered by the Insurance and Pension Fund for this assertion is the following anemic statement: "CSSU NY is not able to provide the custodial services that the Pension Fund and/or its investment advisor needs to manage the assets." Declaration of Mark David McPherson ("McPherson Decl.") at ¶ 29.

Thus, the fulcrum of the Motion to Intervene – the claim that the Insurance and Pension Fund needs to retain a new securities custodian but is unable to do so due to the injunction issued by this Court – rests wholly on this unadorned claim that the current custodian "is not able" to provide the necessary services.

Likewise, the Insurance and Pension Fund admits that there are **other reasons unrelated to this Court's injunction** – reasons which the Insurance and Pension Fund intentionally

declines to reveal or identify – underlying the failure to retain a new securities custodian. *See* McPherson Decl.at ¶ 30 ("[E]ach potential custodian cited the Notice of Injunction **as one of the reasons** for their refusal to serve as custodian.") (emphasis supplied).

These carefully-crafted vague assertions clearly indicate that the Insurance and Pension Fund is hiding salient facts relevant to its motion and to the alleged loss of value of the assets.

Accordingly, in order to obtain the information necessary to respond to the Motion to Intervene and to take steps to protect the value of the assets against which they seek to enforce their judgment, the Ungars served the Insurance and Pension Fund's declarant, Mr. McPherson, with a deposition subpoena, served Morrison & Foerster with a document subpoena and served the current securities custodian, CSSU NY, with a documents subpoena, all which were issued out the United States District Court for the Eastern District of New York. Exhibits K, L, M.

Mr. McPherson and Morrison & Foerster responded by filing a motion for a protective order and CSSU NY filed objections to the subpoenas. See Morrison and Foerster v. Ungar, 10-mc-00593 (E.D.N.Y.) Dkt. ## 1, 2, 3. The Ungars will oppose the motion for a protective order and move to compel production of the documents from CSSU NY.

The Insurance and Pension Fund and Morrison & Foerster, which control all the relevant documents and information, have come into this Court seeking to intervene but fail to disclose factual details regarding CSSU NY's alleged inability to provide the necessary custodial services and the full reasons for the alleged inability to find an alternative custodian.

The Ungars should be permitted to discover this information before being required to respond to the Motion to Intervene.[4]  Therefore, briefing on the Motion to Intervene should be stayed pending the Eastern District's disposition of the Ungars' discovery requests.

### C.    The Objections to Magistrate Judge Martin's Decision on the Installment Payment Order and the Rule 60(b)(6) Motion

On May 12, 2010, Magistrate Judge Martin issued a decision recommending that the Defendants be required to pay the judgment by installments. Dkt. # 484.[5] Defendants filed objections to that decision. Dkt. # 485.

At a hearing on June 15, 2010, the Court decided to defer ruling on Defendants' objections to Magistrate Judge Martin's decision until it rules on the Rule 60(b)(6) motion. Minute entry June 15, 2010.

Briefing on the Motion to Intervene should be deferred until after the Court's ruling on Defendants' objections to Magistrate Judge Martin's decision for two reasons:

*First*, it would be unfair to allow the Ungars' proceedings against the securities portfolio at issue to be jeopardized by the Insurance and Pension Fund's motion to vacate the injunction that is keeping those securities in the United States, while Magistrate Judge Martin's decision ordering the Defendants to pay the judgment in installments (to the Ungars or into the registry) remains in limbo. In other words, if the Ungars cannot now push *forward* with the enforcement ordered by Magistrate Judge Martin, they should also not be subject to being pushed *backward*.

---

[4]  The Ungars respectfully believe that they are entitled to this discovery under Fed.R.Civ.P. 69, because it is necessary both to defend against the Insurance and Pension Fund's effort to release the restraint on the assets at issue and – irrespective of the Motion to Intervene – to take the steps required to preserve the value of the assets.

[5] In their response to objections to filed by the Defendants, the Ungars agreed, *ex gratia*, that the Defendants could make the payments into the registry of the Court pending the disposition of the Rule 60(b)(6) motion. *See* Dkt. #490 at p. 3.

*Second*, if Magistrate Judge Martin's decision is affirmed and the Defendants comply therewith, the Ungars will discontinue their proceedings against the securities at issue. Indeed, in their motion for an installment payment order  the Ungars explicitly stated that if the installment payment order is entered, affirmed and honored, they would discontinue all their other enforcement efforts.

Therefore, the Court should defer briefing on the Motion to Intervene until after the Court's ruling on the Rule 60(b)(6) motion and on Defendants' objections to Magistrate Judge Martin's decision, which may well moot the Motion to Intervene entirely.

In the event that the Court believes that the Motion to Intervene should not await the disposition of the Rule 60(b)(6) motion, then the Ungars respectfully request that the Court rule now on Defendants' objections to Magistrate Judge Martin's decision.

### D.    A Stay of Briefing Is Particularly Appropriate Because the Motion to Intervene Is Clearly Without Merit

Staying briefing on the Motion to Intervene – and thereby preserving valuable resources – is also strongly supported by the fact that the Motion to Intervene is facially meritless.  For example, Rule 24(a)(2) provides that intervention will not be allowed "if existing parties adequately represent that interest."

There can be no question that the PA adequately represents any interest that the Insurance and Pension Fund has in the assets at issue – in June 2005, the PA sent a letter to Secretary of State Rice to complain about the Ungars' enforcement proceedings against these assets and seeking the intervention of the United States. Exhibit N, p. 4.

Thus, the PA as already demonstrated that it can more than adequately represent any interest the Insurance and Pension Fund has in the assets at issue.

Likewise, as indicated above, the Motion to Intervene is clearly untimely. The Insurance and Pension Fund seeks to intervene in this action, despite the fact that the injunction at issue was entered over five years ago, on May 5, 2005.

There is no reason for this Court or the Ungars to expend their time and other resources resolving a motion that is so clearly flawed, especially since, as shown above, the motion is highly likely to be mooted by events in the near future.

## V.    IF ALL RELIEF IS DENIED THE UNGARS WILL OPPOSE THE MOTION ON THE MERITS

If the Court declines to summarily deny the Motion to Intervene and/or to stay briefing thereon, the Ungars can and will oppose the motion on the merits.

Therefore, if the Court denies all the relief sought above, the Ungars respectfully request 14 days to file their opposition to the motion on the merits.

**WHEREFORE** the instant motion should be granted.

Plaintiffs-Judgment Creditors,
by their Attorneys,


/s/David J. Strachman
David J. Strachman #4404
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com


Max Wistow (#0330)
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com


Dated: September 7, 2010



## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2010 the foregoing was served via email and filed using the ECF system which served the following counsel of record:


Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903


Richard A. Hibey
Mark J. Rochon

Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701

Joseph V. Cavanagh, III
Joseph V. Cavanagh, Jr
Blish & Cavanagh LLP
30 Exchange Terrace
Providence, RI 02903

Charles L. Kerr
Mark David McPherson
Harold McElhinny
Morrison and Foerster
1290 Avenue of the Americas
New York, New York  10104

/s/ David J. Strachman