SCANNED ON 6/10/2008

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESE: Index Number : 102101/2006                                    PART 54
YARON UNGAR
vs
PALESTINIAN AUTHORITY
Sequence Number : 008                                   DATE _____
SUMMARY JUDGMENT
                                                        SEQ. NO. _____
                                                        CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...   1-7

Answering Affidavits — Exhibits _____                              8-12

Replying Affidavits _____                                          13-15

Cross-Motion:  ☒ Yes   ☐ No

Upon the foregoing papers, it is ordered that this motion

**MOTION IS DECIDED IN ACCORDANCE WITH ACCOMPANYING MEMORANDUM DECISION AND ORDER.**

FILED

JUN 10 2008

COUNTY CLERKS OFFICE
NEW YORK

Dated: 6/5/08

HON. SHIRLEY WERNER KORNREICH
                                                                J.S.C.

*MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):*

Check one:   ☐ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION

Check if appropriate:   ☐ DO NOT POST

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
----------------------------------------------------------------X

DAVID STRACHMAN, as administrator of the Estate
of YARON UNGAR, PROFESSOR MEYER UNGAR,
JUDITH UNGAR, RABBI URI DASBERG, JUDITH
DASBERG, individually and in their capacity as legal
guardians of YISHAI UNGAR & DVIR UNGAR,
AMICHAI UNGAR, DAFNA UNGAR & MICHAEL
COHEN, & THE BANK OF NEW YORK,

         Plaintiffs,

- against -

THE PALESTINIAN AUTHORITY, d/b/a, THE
PALESTINIAN AUTHORITY, d/b/a, PALESTINIAN
PENSION FUND OF THE STATE ADMINISTRATIVE
EMPLOYEES and/or PALESTINIAN PENSION
FUND FOR THE STATE ADMINISTRATIVE
EMPLOYEES OF THE GAZA STRIP, & THE
INSURANCE AND PENSION FUND,

         Defendants.

----------------------------------------------------------------X

Index No. 102101/2006

DECISION AND ORDER


FILED
JUN 10 2008
COUNTY CLERK'S OFFICE
NEW YORK

KORNREICH, SHIRLEY WERNER, J.:

   This is one of many cases instituted by plaintiffs in an attempt to collect on a judgment

for $116,000,000 (the "Judgment") rendered by the United States District Court, District of

Rhode Island, in the matter of *Estates of Yaron Ungar et al. v. The Palestinian Authority et al.*,

C.A. NO. 00105L (Hon. Ronald R. Lagueux). The Palestinian Authority (PA) and the Palestinian

Liberation Organization (PLO), among others, were named as defendants in the Rhode Island

action. Plaintiffs allege, *inter alia,* that defendants the Palestinian Pension Fund of the State

Administrative Employees, the Palestinian Pension Fund for the State Administrative Employees

of the Gaza Strip (the "Gaza Fund"), and the Insurance and Pension Fund, are each an alter ego of the PA. Plaintiffs now are seeking to execute against assets held in the name of the Gaza Fund in New York. The Gaza Fund has filed a motion for summary judgment asking for a declaration that, *inter alia*, the assets held in its name are not owned by the PA or the PLO, that the Gaza Fund is a separate entity from the PA and that the assets can not be used to satisfy the Judgment and should instead be released. Plaintiffs have filed a cross-motion for summary judgment seeking a declaration that the assets are owned by and are the sole property of the PA. As discussed in greater detail below, both motions are denied and the case will now proceed to trial.

*I. Background*

Plaintiffs seek to enforce a multi-million dollar judgment entered, on default, by the United States District Court for the District of Rhode Island against defendants-judgment debtors the PA and the PLO. Plaintiffs are the legal representatives and heirs of an American citizen who was murdered in Israel by the terrorist group, Hamas-Islamic Resistance Movement (Hamas). Plaintiffs commenced the underlying lawsuit pursuant to the Antiterrorism Act of 1990 (18 USC § 2331, *et seq.*), alleging that the PA and the PLO provided Hamas with a base of operations and support to conduct terrorist activities, including the murder of plaintiffs' decedent.

The Federal Judgment was domesticated in New York County under Index Number 105521/05. The Federal Court issued a restraining order and an injunction providing:

> The Palestinian Authority and The Palestine Liberation Organization and their
> officers, agents, servants, employees, attorneys, partners, fiduciaries, and
> any natural or legal person in privity with them and/or acting in active
> concert and participation with them, are hereby prohibited, restrained and
> enjoined from withdrawing, selling, transferring, alienating, pledging,
> impairing, hypothecating, encumbering, concealing, secreting, trading,
> removing or in any way disposing of or effecting a disposition in, directly or

> indirectly, any and all assets of The Palestinian Authority and/or The
> Palestine Liberation Organization however titled (including without limitation
> all accounts, deposits, cash, shares, stock, credits, partnership rights or
> interests, equitable rights or interests, contractual rights, holdings,
> financial interests or real estate) located within the jurisdiction of the
> United States or of any State therein.

Exh. 88, Motion. Plaintiffs annexed a Notice of Injunction to the Federal restraining order and sent it to a number of entities, including Swiss American Securities, Inc. ("SASI").[1] Exh. 89, Motion. It stated that the injunction applied to "all assets of the PA and the PLO *however titled,*" (emphasis added), and specified that such assets,

> ...are held and/or titled under the names Palestinian Authority, Palestine
> Liberation Organization, Palestinian National Authority (PNA), Palestine
> Investment Fund (PIF), Palestinian Pension Fund, Palestine Commercial Services
> Company (PCSC), Palestine Pension Fund, Insurance and Pension General
> Corporation, Palestinian national Fund, Palestine Monetary Fund (PMF),
> SAMED, PECDAR and Palestine Monetary Authority (PMA)... [and] officers,
> agents, servants, employees, attorneys, partners and fiduciaries of the PA and PLO
> and any natural or legal persons in privity with them and/or acting on their behalf
> and/or in active concert and participation with them.

After receiving notice, SASI froze more than $100 million in securities and debt instruments in its possession belonging to the Gaza Fund. Exh. 90, Motion.

On February 14, 2006, plaintiffs filed two actions in this court, a turnover proceeding against SASI pursuant to CPLR 5225 and this action pursuant to CPLR 3001, seeking a declaratory judgment that the stocks and bonds held by SASI belong to the PA. The Gaza Fund moved to dismiss the turnover proceeding. In its decision granting that motion, read from the bench on May 18, 2006, the court found, in pertinent part, that,

> ...there was absolutely nothing at all to support their [petitioners'] allegations
> that the Pension Fund is something other than a Pension Fund for the employees

---

[1] SASI is an affiliate of Credit Suisse.

3

> ... [and] there is credible ... evidence indicating that this in fact is money that belonged to the employees of, and now of the different municipalities and governments of the Palestinian Authority.

Exh. 95 (transcript of 5/18/06 hearing) at pp. 44-46, Motion. In making its decision, the court relied on the lack of harm to plaintiffs because the assets would remain frozen under the Federal injunction. Ibid. at p. 45.[2]

*II. Undisputed Material Facts*

Although the court finds that the disputed material facts preclude granting summary judgment to either party, there are some undisputed facts to be found in the parties' evidence that illustrate the historical context for the underlying events that precipitated this dispute. The court will address disputed material facts in the course of its discussion and ruling below.

Prior to 1967 and Israel's annexation of the Gaza Strip and the West Bank after the Six-Day War, the Gaza Strip was administered by Egypt. Pension arrangements for public sector workers in the Gaza Strip were governed by Egyptian Law No. 8 of 1964 (Exh. 2, Motion). Under that Law, Egypt set up an Insurance and Pension Fund. As an occupying force, the Israeli military government hired Gazans previously employed by Egypt.[3] On January 12, 1969, the Israeli Defense Forces Commander issued the "Order Regarding Pensions Law" (Order No. 255),

---

[2] Other, related proceedings have taken place or remain pending before the court, but they will not be summarized here as they have no direct material relevance to the motions before the court. These include: *H. Hoffman & Sonner v. Bank of New York*, Index No. 111761/2007; and *Palestine Monetary Authority v. Strachman*, Docket Nos. M-3233, M-3451 (1st Dept.) (pending on appeal).

[3] The court bases its historical discussion regarding the Israeli occupation of the Gaza Strip on the Affidavit of Retired Colonel Shlomo Politis, an Israeli attorney who served with the Judge Advocate General Corps of the Israeli Defense Forces between 1977 and 2005. Politis Affid., Cross-Motion. Opinions by Col. Politis and facts that the Gaza Fund disputes are excluded from this discussion.

4

creating a new pension apparatus for Gazans now employed by the Israeli Military. Order No. 255 incorporated many of the provisions in Egyptian Law No. 8 of 1964, but also provided that,

> Every appointment, every authority and every position granted under the Pension Law [Egyptian Law No. 8] prior to the determinant date [defined later as June 6, 1967] are void, however the Administration may give them new effect.

Israel did not assume the pension obligations previously held by Egypt, nor did Egypt transfer to Israel any of its accumulated pension funds. Politis Affid., Cross-Motion. Israel used the same name as that used by Egypt for the pension fund it created. The Fund was administered by the Israeli Civil Administration under the command of the Israeli Military and it benefitted Gazans newly employed by Israel.[4] Over the years, Israel accumulated a fund of pension moneys from a number of sources, including contributions from administrative employees and their employers. A-Franji Affid., ¶7; Cadenhead Affid., ¶11, Motion.

As part of the Oslo Accords and under the Agreement on the Gaza Strip and the Jericho Area dated May 4, 1994, the PA assumed the Israeli "statutory and contractual obligations to Palestinian employees, regarding pensions and their payment." Politis Affid. At ¶54. In return for that assumption, Israel transferred to the PA "the net income of the Fund (all payments plus interest after deduction of pension payments and running expenses) as accumulated at the Israel Ministry of Finance." Exh. 4 (Gaza-Jericho Agreement), Motion. As discussed in greater detail

---

[4]The Gaza Fund relies on a decree issued by the Palestinian National Authority (a/k/a the PA) in May 1994 (Exh. 74) reinstating all laws and regulations that were in effect before the Six-Day War, including Egyptian Law No. 8, to argue that the Insurance and Pension Fund originally set up by Egypt is the same Fund that now exists in Gaza. Plaintiff argues that the original fund created by Egyptian Law No. 8 was dissolved by Israeli Defense Force Order 255 (discussed above). Resolution of this issue is not necessary at this time, although the court notes that the Gaza Fund does not dispute the existence and validity of Order 255, the terms of which appear to be clear and unambiguous. Nor does it dispute that Egypt transferred no funds to Israel.

below, exactly what happened to that money is unclear from the PA's evidence, which also raises serious issues about the sources and the beneficiaries of the funds and the securities held by SASI.

*III. Discussion and Rulings*

*A. Principles of Summary Judgment*

To obtain summary judgment, a movant must establish its cause of action or defense sufficiently to warrant the court as a matter of law in directing judgment in its favor. CPLR 3212(b). It must do so by tender of evidentiary proof in admissible form. *Zuckerman v. New York*, 49 N.Y.2d 557, 562-563 (1980). Once a movant has met the initial burden, the burden shifts to the party opposing the motion to show facts sufficient to require a trial of any issue of fact. C.P.L.R. 3212 (b); *id.* at 560. *See also GTF Marketing Inc. v. Colonial Aluminum Sales, Inc.*, 66 N.Y.2d 965 (1985) (complaint properly dismissed on summary judgment where affidavit of opposing counsel was insufficient to rebut moving papers showing case has no merit). The adequacy or sufficiency of the opposing party's proof is not an issue until the moving party sustains its burden. *Bray v. Rosas*, 29 A.D.3d 422 (1st Dept. 2006). Moreover, the parties' competing contentions must be viewed "in a light most favorable to the party opposing the motion." *Lakeside Constr. v Depew & Schetter Agency*, 154 A.D.2d 513, 515-515 (2d Dept. 1989).

*B. The Gaza Fund's Motion for Summary Judgment*

The Pension Fund has failed to meet its burden to establish its entitlement to judgment as a matter of law. The issues raised by plaintiffs' action remain disputed and unresolved by the submitted evidentiary materials.

CPLR Article 52 governs the enforcement of judgments in New York. CPLR 5201(b) provides that a judgment may be enforced against "any property which could be assigned or transferred," that is, property that the judgment debtor has the right to assign or transfer. *See* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5201:9, at 61. The Gaza Fund, in order to obtain summary judgment, must establish as a matter of law that the PA does *not* have the legal right to "assign or transfer" the funds and securities being held in the SASI account. Stated otherwise, "does the defendant have an interest in the fund; or ... is the money, or any part of it within the present or future control of the defendant." *U.R.C., Inc. v. Applied Images, Inc.*, 106 Misc.2d 1034, 1039 (Sup. Ct., N.Y. County 1980). Further, the judgment debtor need not have physical possession of the assets for the creditor to reach them; it is enough if the debtor derives a benefit from the assets. *Ray v. Jama Productions, Inc.*, 74 A.D.2d 845 (2d Dept. 1980) (money properly restrained when it was to be used to pay judgment debtor's debts), *appeal denied by* 49 N.Y.2d 709 (1980).

This issue has not been resolved by the evidence submitted to support summary judgment by the Gaza Fund, regardless of whether the latter is an independent juridicial entity, a d/b/a name for the PA, or one of many names used to signify the entity responsible for administering the funds and pension obligations assumed by the PA from Israel in 1994. The Gaza Fund's motion focuses almost entirely on establishing that it is *the* pension fund for civil administration employees in the Gaza Strip and that it is an entity separate from the PA that goes by a number of similar, but different names. A-Franji Affid. ¶2, Motion. Resolution of that issue is not dispositive of the issue of control and interest under Article 52. Moreover, the evidence submitted by the Gaza Fund regarding that issue, which subsumes evidence of the identity and

7

relationship of the various defendant funds and the source of the moneys in those funds, is disputed.

At the outset, the Gaza Fund has not presented evidence that adequately explains the use of different names for what they now say is the same Pension Fund, or the origination and purpose of the "Insurance and Pension General Corporation," which name appears in a number of the PA's attached documents. Farouk M. A-Franji, referred to as the "General Director" of the Gaza Fund, attests that the entity known as the "Insurance and Pension Fund" was created by Egyptian Law No. 8 of 1964 as an entity separate from the PA, with its own Board of Directors and powers. He further asserts that this "Fund" has been referred to over the years by a number of names, including the Insurance and Pension Fund, the Pension Fund of the Civil Administration Employees in the Gaza Strip, The Pension Fund of the State Administrative Employees, and the Insurance and Pension General Corporation, and "similar variations."Affidavit of Farouk M. A-Franji. ¶¶1-2; Affidavit of Freih Abu Meddain, ¶5, Motion. Yet, in a letter dated March 31, 1998, the PA implied otherwise when it confirmed that William M. Mercer, Inc., an actuarial firm, would provide services "with respect to the Pension Fund of State Administrative Employees in the Gaza Strip (Pre-1994 Fund), the Pension Fund of the State Administrative Employees in the Gaza Strip and the West Bank (Post-1994 Fund), and any other pension funds which the PNA may establish for its employees." Exh. 33, Motion.

Even if the court were to find that the Gaza Fund is a D/B/A name for the Insurance and Pension Fund, and that the latter is an entity separate from the PA, the evidence does not clarify to what extent the PA or the Insurance and Pension Fund control the Gaza Fund, whether the latter is even being used as a *pension* fund, and the sources of the funds held by SASI, all of

8

which are material issues. *See* CPLR 5201(b); *Ray v. Jama Productions, Inc.*, 74 A.D.2d 845, *supra*. A-Franji attests that the "funds and assets belong to the Pension Fund." A-Franji Reply Affid. ¶6, Motion. Nonetheless, documents submitted by the Gaza Fund establish that the PA controlled the hiring and firing of investment managers, the opening and closing of accounts and the deposit and withdrawal of funds.[5]

The PA's evidence also provides conflicting explanations of how the funds have been and will be used and for whose benefit. The Amendment to the Gaza-Jericho Agreement contains a proviso that the funds would be used only for the benefit of Gazans employed by Israel prior to the Oslo Accords and the transfer of power to the PA. However, Farouk Al Feranji of the Insurance and Pension General Corporation stated in response to questions about the Gaza Fund posed by the actuarial firm Mercer that the "Pension Fund covers all employees," including those "hired after 1994." Exh. 123, Motion. There also are audit reports showing that the PA has caused money from the Gaza Fund to be transferred to at least one of its own accounts and to other accounts held in the name of the Gaza Fund. Exh. 35, Motion. In a letter dated 12/19/02, Efranji informed the PA Minister of Finance that $28,000,000 Dollars had been transferred to that Ministry's account at the Arab Bank, Gaza Branch between 8/8/1996 and 08/19/1997. Exh..115, Motion. At the same time, on wire instruction from Arafat, Morgan Stanley sent out of its Gaza Fund account two wire transfers--$8,000,000 to the Fund's account in the Arab Bank in

---

[5]For example, Yasser Arafat was a joint signatory with Freih Abu Meddain to the Credit Suisse account opened in the name of the Gaza Fund (Exhs.46, 82, Motion). A 3/31/97 Amendment to the Implementation Agreement between Israel, the Palestinian Council and the Gaza Fund, provides that Israel would transfer the pension funds remaining in Israel's possession to the Credit Suisse account to "the responsibility of the Palestinian Council." Exh. 34, Motion. The Credit Suisse account was opened by the PA to receive for deposit the funds the PA had directed Morgan Stanley to transfer.

Gaza and $250,000 to the Fund's account with Banque Monod in Paris. Exh. 45, Motion.

This seems like a great deal of activity for a "fund" that the PA has represented is a "reserve"only to be used in the event "The Fund is unable to meet its obligations through current contributions," a scenario suggesting that no pensions have been paid from the Gaza Fund. Indeed, Bruce A. Cadenhead, as Principal of an actuarial firm hired by the "Pension Fund," attests that benefits paid to current beneficiaries are being funded out of current contributions from employees and their employers, further evidence that the transfers of funds to other accounts were not pension-related. Cadenhead Affid. at ¶ 11, Motion.

There is additionally the material issue of the funds' sources and the potential claimants to the funds. If the funds can be traced to contributions made by Gazans during their employment by Israel then they might have a claim to the funds, or a portion of the funds. Of course, the rights of beneficiaries to pension benefits are, at least under New York law, based on the contractual language defining their interests, as well as facts establishing that their interests have vested, and even then the beneficiary might have a claim against the employer (or the assignee of the pension obligation which is the PA here), but not to receive back the money he or she originally contributed. Neither party has addressed this important issue or the overriding issue of what law would apply to resolve it.

The evidence discussed here is only a small portion of that produced in support of the Gaza Fund's Motion, but it is sufficient to show disputed issues of fact material to the decision whether Plaintiff may execute judgement against the Gaza Fund's SASI account under CPLR Article 52.

    *B. Plaintiffs' Cross-Motion*

Plaintiffs rely primarily on the same evidence as the Gaza Fund, except they have submitted a number of affidavits setting forth the history of the territories' civil administration, and the accumulation and flow of pension obligations and funds after the Six-Day War. Reisner Affid., Politis Affid., Neriah Affid., Cross-Motion. The court denies summary judgment on the cross-motion based on disputed material issues of fact, as set forth above, and will not refer to exhibit numbers used by plaintiffs to identify documents submitted by the Gaza Fund under different numbers. It is sufficient to cite plaintiffs' Exh. 134, which plaintiffs' counsel represents as showing the correlation between the parties' sets of exhibits. Accordingly,

IT IS HEREBY ORDERED that the motion for summary judgment by defendant the Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip is denied; and it is further

ORDERED that the cross-motion for summary judgment filed by plaintiffs is denied.

ENTER:

Date: June 5, 2008
New York, N. Y.

_____
J.S.C.

FILED
JUN 10 2008
COUNTY CLERK'S OFFICE
NEW YORK

11