UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE ESTATE OF YARON UNGAR, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 00-105L |
| | ) | |
| THE PALESTINIAN AUTHORITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR ENTRY OF A PROTECTIVE ORDER REGARDING PLAINTIFFS' REQUESTS FOR DISCOVERY OF CERTAIN THIRD-PARTY COMMUNICATIONS**

Defendants, the Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO"), by and through counsel and pursuant to Federal Rule of Civil Procedure 26(c), respectfully submit the following in support of their Motion for Entry of a Protective Order Regarding Plaintiffs' Requests for Discovery of Certain Third-Party Communications.

<u>Background Regarding Motion to Vacate Discovery</u>

Earlier this year, the U.S. Court of Appeals for the First Circuit reversed the Court's denial of the Defendants' Motion for Relief from Default Judgment (the "Motion," or "Rule 60(b)(6) motion") and remanded the matter to the Court for reconsideration of the Motion. *See Ungar v. PLO*, 599 F.3d 79 (1st Cir. 2010). In its Order of April 1, the Court announced its intent to hold an evidentiary hearing on the remanded Rule 60(b)(6) motion. Dkt. No. 482. That order was followed by a June 1 Pre-Hearing Order setting January 18, 2011 as the hearing date and directing the parties to complete pre-hearing discovery by November 19, 2010. Dkt. No. 489.

Although discovery in the context of a Rule 60(b)(6) motion to vacate is highly unusual, if not unprecedented, the Court has provided no guidance on the permissible scope of discovery, with the exception of granting Defendants' unopposed *Motion for Leave to Take Discovery on Whether the Damage Award Would Withstand Adversarial Testing*. Dkt. No. 506 (Magistrate Judge Martin Order of August 18, 2010). The net result is that the parties are operating with a highly compressed discovery schedule involving documents and witnesses located overseas and an unagreed and wide-ranging set of issues on which discovery arguably can be conducted. The discovery is quickly becoming unreasonably burdensome and unmanageable and threatens to derail the schedule set by the Court in its June 1 scheduling order.

This is the first in a series of motions for protective orders Defendants will file. Before turning to the particulars of the discovery requests at issue in this motion for protective order, Defendants will provide an overview of the current status of the pre-hearing discovery so that the Court can address this motion in the context of the broader discovery dispute and so that the Court is not surprised as additional discovery disputes surface in the coming weeks.

Plaintiffs initiated vacatur discovery by conducting a nearly seven-hour deposition of Palestinian Authority Prime Minister Salam Fayyad in Jerusalem on July 28. In addition to that deposition, Plaintiffs have served Defendants with three requests for production of documents, a set of interrogatories, two lengthy 30(b)(6) deposition notices, and a notice of deposition for former PA Prime Minister Ahmed Qurei. Plaintiffs served the bulk of the discovery requests at the end of August, approximately 12 weeks before the close of discovery. The third request for production of documents, served August 26, contains 205 document requests. *See* Exh. A (as to PA). The 30(b)(6) deposition notices served on the PA and PLO on August 31 each identify *over 100* topics as to which the PA and PLO are directed to designate officers, directors, or

managing agents, or other persons who consent to testify on their behalf.  *See* Exh. B (Rule 30(b)(6) notice to the PA); Exh. C (Rule 30(b)(6) notice to the PLO).  The voluminous, burdensome nature of this overseas discovery would be problematic even in a multi-year, complex civil litigation dispute.  It is wildly out of bounds as part of the abbreviated discovery related to a Rule 60(b)(6) motion in preparation for the Court's January 2011 evidentiary hearing.

Three months into vacatur discovery, the following is apparent.  First, the parties have widely divergent views on the proper scope of pre-hearing discovery.  As an example, much of the discovery Plaintiffs seek relates to the willfulness of the default and whether the motion meets the timeliness requirement of Rule 60(c)(1).  In addition to the numerous written discovery requests devoted to these issues (*see, e.g.*, Exh. A at pp. 3-9, 14-19, 21-28) and the identification of these subjects as areas to be covered in Rule 30(b)(6) deposition notices (*see, e.g.,* Exh. B at pp. 3-6, 10-12, 15-16), Plaintiffs seek to convene a deposition of former Prime Minister Ahmed Qurei in Rhode Island on those topics.  *See* Exh. D (Sept. 2, 2010 Letter from M. Wistow to M. Rochon).[1]  Defendants, however, have conceded that the default was willful and thus willfulness is not a contested issue and not the proper subject of pre-hearing discovery.  With respect to the timing of the Rule 60(b)(6) motion, Plaintiffs previously argued this threshold question to both this Court and the First Circuit.  Yet, both courts addressed the merits of Defendants' motion, thereby rejecting Plaintiffs' claim that the alleged untimeliness of the motion barred the Court's consideration of Defendants' request for Rule 60(b)(6) relief.  *See generally* DE 442; *Ungar*, 599 F.3d 79.  That issue thus also is not properly the subject of pre-hearing discovery.

---

[1] Defendants' motion for protective order as to Ahmed Qurei is being filed contemporaneously herewith.

Plaintiffs, for their part, have objected to discovery Defendants have propounded related to their allegations that the PA or PLO are liable for Mr. Ungar's killing by Hamas militants. The Plaintiffs assert that "[s]uch information is irrelevant to defendants' Rule 60(b)(6) motion and unduly burdensome to produce because in this Circuit the existence *vel non* of a meritorious defense is determined solely on the basis of defendant's averments and not on the basis of evidence." *See, e.g.,* Exh. E at 13-14 (Pls.' Amended & Supp. Objs. and Answers to Defs.' First Set of Interrogatories) (citing *Indigo America, Inc. v. Big Impressions, LLC*, 597 F.3d 1, 4 (1st Cir. 2010)). But while Plaintiffs are seeking to cut off Defendants' discovery on Plaintiffs' factual allegations regarding PA/PLO liability on the basis that meritorious defense is a pleading standard, Plaintiffs refuse to concede the existence of a meritorious defense. *See* Dkt. No. 415 (Plaintiffs' Opposition to Defendants' Rule 60(b)(6) motion) at 49-59. Moreover, while arguing that information relevant to Defendants' meritorious defenses is "irrelevant" for purposes of the Rule 60(b)(6) motion, *see* Exh. E at 13, Plaintiffs simultaneously have sought discovery from Defendants on meritorious defenses. *See, e.g.,* Exh. A at 9-12 (seeking discovery as to the PA's relationship with Hamas and efforts to thwart Hamas militant operations); Exh. B at 7-8 (same). In short, the Plaintiffs believe that they may conduct discovery as to meritorious defenses, but that Defendants may not.

Second, Plaintiffs appear to view the opportunity to conduct vacatur discovery as a license to roam through defense counsel's files and to conduct discovery related to other lawsuits. *See, e.g.,* Exh. A at 22-23 (a series of document requests "[r]egarding Defendants' relationship, interactions, and discussions with their counsel"); Exh. A at 23-28 (numerous document requests "[r]egarding related or other cases"). In addition, as discussed below, the discovery requests at issue here, seek, *inter alia*, defense counsel's communications regarding

the *Ungar* litigation with counsel for non-adverse parties the Ungars are suing in an effort to enforce their judgment.   Not only is such discovery irrelevant to the Court's resolution of the Rule 60(b)(6) motion, but also it targets non-discoverable attorney work product.

Third, Plaintiffs' voluminous third request for production of documents (with over 200 document requests) and Rule 30(b)(6) deposition notices served at the end of August (identifying over 100 deposition topics) are not consistent with an effort to engage in discovery that reasonably could be accomplished by the November 19 deadline, nor are they consistent with the limited scope of discovery dictated by the procedural posture of this case.   Rather, Plaintiffs appear to have combed through the Rule 60(b)(6) briefing and turned every statement or argument made by Defendants into a discovery request.   *See* Exhs. A, B *passim*.[2]   The discovery is not directed at aiding the Court's resolution of the Rule 60(b)(6) motion but rather appears designed to create discovery obligations that require Defendants to seek relief from the Court and to provide Plaintiffs an opportunity unfairly to claim Defendants are even now recalcitrant litigants.

Fourth, and finally, it also is evident the parties are unable to resolve these fundamental discovery disputes in a timely matter without Court intervention.   In addition to the parties' fundamental disagreement as to the Rule 60(b)(6) factors that are the proper subject of pre-

---

[2] For instance, Document Request 4(k) asks for:  "All documents relating to, referring to and/or evidencing the PA's 'regrets' concerning its 'procedural missteps' in this litigation," and links this request to a single sentence in Defendants' Rule 60(b)(6) motion stating:  "Defendants do not take these concerns lightly and will not attempt to condone or justify many of the earlier actions in this litigation.  We regret these procedural missteps . . . ."  Exh. A. at 5 (underline added by Plaintiffs).  Similarly, Request 5(e) asks for:  "All documents relating to, referring to and/or evidencing the PA's 'perplexity' about the ability of the U.S. courts to hale it into court and why the PA believes such perplexity is understandable," and links this Request to the following sentence in Defendants' Motion:  "At the time of the default in this case, Defendants were understandably perplexed about the ability of the United States courts to hale them into Court to answer for the actions of HAMAS . . . ."  *Id.* at 7.

hearing vacatur discovery, the Ungars' discovery requests reflect a litigant that is looking to create discovery disputes by, among other things, (1) targeting attorney-client communications and litigation counsel's work product; (2) seeking to depose Ahmed Qurei, who previously testified as a PLO witness in a related Anti-Terrorism Act case only under court compulsion (*see* Exh. D at 2), without any showing that he has knowledge relevant to the Rule 60(b)(6) motion; and (3) serving over 200 document requests and seeking Rule 30(b)(6) depositions on over 100 topics just 12 weeks before the close of discovery. A recent meet-and-confer telephone conference deteriorated into Plaintiffs' counsel referring to defense counsel as "f -- ing liar[s]" shortly before abruptly hanging up on defense counsel. Exchanges of correspondence have been similarly unproductive, including one letter in which Plaintiffs' counsel accused defense counsel of believing Plaintiffs' counsel to be "slack-jawed country bumpkins" and dealing with them deceptively. Exh. F (Sept. 7, 2010 Letter from M. Wistow to M. Rochon). The parties are in the process of meet-and-confers on the Plaintiffs' Third Request for Production of Documents and Rule 30(b)(6) notices, but Defendants expect that they also will have to file a motion for protective order as to that discovery as well. Once the motions for protective orders are briefed (including, at least, the instant motion, the Qurei motion, and the likely motion as to the most recent round of discovery), Defendants respectfully request a discovery conference with the Court to reach a comprehensive resolution regarding the permissible scope of Rule 60(b)(6) discovery.

With that background, Defendants now turn to the instant discovery dispute.

<u>The Instant Discovery Dispute Involving Third-Party Communications</u>

On June 30, 2010, Plaintiffs served on Defendants a First Set of Interrogatories Relevant to Defendants-Judgment Debtors' Rule 60(b)(6) Motion ("First Set of Interrogatories") and a

Second Request for Documents and Things Relevant to Defendants-Judgment Debtors' Rule

60(b)(6) Motion ("Second Request for Documents").

Interrogatory No. 2 of Plaintiffs' First Set of Interrogatories seeks:

In respect to all verbal communications, relating to the instant case, the
Judgment and/or the 2006 Judgment, between the PA and/or the PLO
(including any office-holder, employee, _attorney_ and/or agent of the PA
and/or PLO) and the following entities and persons: (a) Orascom Telecom
Holding S.A.E. (including any office-holder, employee, _attorney_ and/or
agent of Orascom Telecom Holding S.A.E.); (b) the Palestine Monetary
Authority (including any office-holder, employee, _attorney_ and/or agent of
the Palestine Monetary Authority); (c) the Insurance and Pension Fund
(including any office-holder, employee, _attorney_ and/or agent of the
Insurance and Pension Fund); (d) Canaan Equity Offshore C.V., Canaan
Equity II Offshore C.V. and Canaan Equity III Offshore C.V., Canaan
Offshore Management N.V. and Canaan Partners (collectively "Canaan")
(including any office-holder, employee, _attorney_ and/or agent of Canaan);
(e) Becont Limited (including any office-holder, employee, _attorney_
and/or agent of Becont Limited); (f) the Palestine Investment Fund
(including any person purporting to be an office-holder, employee,
_attorney_ and/or agent of the Palestine Investment Fund); and (g) the
Palestinian Commercial Services Company (a/k/a Palestine Commercial
Services Company) (hereinafter "PCSC") (including any office-holder,
employee, _attorney_ and/or agent of PCSC) - please identify: (a) the date of
each such communication (b) the identities of all persons and entities who
participated in each such communication (d) the purpose of each such
communication and (e) all topics relating to the instant case, the Judgment
and/or the 2006 Judgment discussed in each such communication.

_See_ Exh. G at 5 (Defendants' Objections and Responses to Plaintiffs' First Set of Interrogatories)

(underline added by Plaintiffs).

On August 2, 2010, Defendants provided the following Objections and Answer:

OBJECTIONS:

Defendants hereby incorporate by reference, as if fully set forth herein, the
foregoing General Objections.  In addition, Defendants specifically object
to Interrogatory No. 2 on the grounds:  (a) that the Interrogatory is overly
broad and unduly burdensome (_e.g.,_ "all verbal communications"; "any
office-holder, employee, _attorney_ and/or agent"); (b) that, as potentially
construed, the phrase "relating to the instant case, the Judgment and/or the
2006 Judgment" is vague and ambiguous; (c) that, as potentially
construed, the Interrogatory requires a legal conclusion (_e.g.,_ "office-

holder, employee, attorney and/or agent" of entities other than
Defendants); (d) that the Interrogatory requests information beyond that
reasonably known or reasonably knowable by Defendants; (e) that the
Interrogatory seeks disclosure of information that is irrelevant to any of
the issues presented by Defendants' motion to vacate the default
judgment, as set out by the First Circuit in its March 25, 2010 Order, and
the Interrogatory is not reasonably calculated to lead to the discovery of
admissible evidence, but is instead calculated to lead to discovery for use
in other proceedings; and (f) that, as potentially construed, the
Interrogatory seeks documents protected by the work-product doctrine, the
common-interest privilege, and other applicable privileges and
protections.

ANSWER:

Defendants hereby incorporate by reference, as if fully set forth herein, the
foregoing General and Specific Objections.  On the basis of the foregoing
General and Specific Objections, and without prejudice to Defendants'
right to modify or amend their position, Defendants do not intend to
provide an answer in response to this Interrogatory.  Defendants are
available at a mutually agreeable date and time to conduct a meet and
confer concerning Defendants' Objections to Interrogatory No. 2.

*Id.* at 5-6.

Document Request No. 1 of Plaintiffs' Second Request for Documents, also served on

June 30, seeks documents related to the same subject matter as the interrogatory:

Authentic copies of all written communications, relating to the instant
case, the Judgment and/or the 2006 Judgment, between the PA and/or the
PLO (including any office-holder, employee, attorney and/or agent of the
PA and/or PLO) and the following entities: (a) Orascom Telecom Holding
S.A.E. (including any office-holder, employee, attorney and/or agent of
Orascom Telecom Holding S.A.E.); (b) the Palestine Monetary Authority
(including any office-holder, employee, attorney and/or agent of the
Palestine Monetary Authority); (c) the Insurance and Pension Fund
(including any office-holder, employee, attorney and/or agent of the
Insurance and Pension Fund); (d) Canaan Equity Offshore C.V., Canaan
Equity II Offshore C.V. and Canaan Equity III Offshore C.V., Canaan
Offshore Management N.V. and Canaan Partners (collectively "Canaan")
(including any office-holder, employee, attorney and/or agent of Canaan);
(e) Becont Limited (including any office-holder, employee, attorney
and/or agent of Becont Limited); (f) the Palestine Investment Fund
(including any person purporting to be an office-holder, employee,
attorney and/or agent of the Palestine Investment Fund); and (g) the
Palestinian Commercial Services Company (a/k/a Palestine Commercial

Services Company) (hereinafter "PCSC") (including any office-holder,
employee, <u>attorney</u> and/or agent of PCSC).

*See* Exh. H at 5 (Defendants' Objections and Responses to Plaintiffs' Second Request for

Production) (underline added by Plaintiffs).

Defendants' Objections and Responses mirrored those for the related interrogatory:

OBJECTIONS:

Defendants hereby incorporate by reference, as if fully set forth herein, the
foregoing General Objections. In addition, Defendants specifically object
to Request No. 1 on the grounds: (a) that the Request is overly broad and
unduly burdensome (*e.g.,* "all written communications"; "any office-
holder, employee, <u>attorney</u> and/or agent"); (b) that, as potentially
construed, the phrase "relating to the instant case, the Judgment and/or the
2006 Judgment" is vague and ambiguous; (c) that, as potentially
construed, the Request requires a legal conclusion (*e.g.,* "office-holder,
employee, <u>attorney</u> and/or agent" of entities other than Defendants); (d)
that the Request seeks information beyond that reasonably known or
reasonably knowable by Defendants; (e) that the Request seeks disclosure
of information that is irrelevant to any of the issues presented by
Defendants' motion to vacate the default judgment, as set out by the First
Circuit in its March 25, 2010 Order, and the Request is not reasonably
calculated to lead to the discovery of admissible evidence, but is instead
calculated to lead to discovery for use in other proceedings; (f) that, as
potentially construed, the Request imposes obligations beyond what the
Federal Rules of Civil Procedure allow, as Defendants have no obligation
under the Federal Rules to authenticate documents on Plaintiffs' behalf;
and (g) that, as potentially construed, the Request seeks documents
protected by the work-product doctrine, the common-interest privilege,
and other applicable privileges and protections.

RESPONSE:

Defendants hereby incorporate by reference, as if fully set forth herein, the
foregoing General and Specific Objections. On the basis of the foregoing
General and Specific Objections, and without prejudice to Defendants'
right to modify or amend their position, Defendants do not intend to
produce any documents in response to this Request. Defendants are
available at a mutually agreeable date and time to conduct a meet and
confer concerning Defendants' Objections to Request No. 1.

*Id.* at 5-6.

The parties held three separate meet-and-confer calls in an effort to resolve their dispute regarding these two discovery requests. The parties were unable to reach an agreement, and Defendants informed Plaintiffs of their intent to file a motion for protective order.

As discussed below, Defendants are entitled to a protective order because these discovery requests are (1) not relevant to the narrow issues presently before the Court on the pending motion to vacate, (2) impose an unreasonable burden upon Defendants, and (3) seek documents and information protected from disclosure by the work product doctrine.

### Argument

Federal Rule 26 limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(3) allows a party to "discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" only upon a showing that the party "has substantial need for the materials to prepare its case, and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3).

Even where discovery would be otherwise permissible under Rule 26(b)(1) and 26(b)(3), courts may enter a protective order precluding or limiting discovery "for good cause" shown to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The Court may enter such an order "forbidding the disclosure or discovery," "prescribing a discovery method other than the one selected by the party seeking discovery," "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (C) and (D).

I.    **Plaintiffs Are Improperly Using the Limited Pre-Hearing Vacatur Discovery as an Opportunity to Conduct Discovery Related to Other Lawsuits.**

As the Court is aware, the Court's entry of a $116 million default judgment against the PA and PLO resulted in a number of collection actions against Palestinian entities who had assets in the United States. The Ungars tried to reach these assets to satisfy their judgment against the Defendants by arguing that these Palestinian entities are alter egos of the PA or are holding assets of the PA. In order to understand the relationship between these enforcement actions and the discovery requests at issue here, some background is necessary.

Following the Court's entry of the judgment in July 2004 against the PA and PLO, the Ungars returned to the Court in April 2005 to obtain a temporary restraining order, followed by a preliminary injunction on May 5, 2005. That injunction provides:

> WHEREFORE IT IS HEREBY ORDERED AND DECREED THAT: 1. The Palestinian Authority and the Palestine Liberation Organization and their officers, agents, servants, employees, attorneys, partners, fiduciaries, and any natural or legal persons in privity with them, and/or acting on their behalf and/or in active concert and participation with them, are hereby prohibited, restrained and enjoined from withdrawing selling, transferring, alienating, assigning, pledging, impairing, offsetting, hypothecating, encumbering, concealing, secreting, trading, removing, or in any way disposing or effecting a disposition in, directly or indirectly, any and all assets of The Palestinian Authority and/or The Palestine Liberation Organization however titled (including without limitation all accounts, deposits, cash, shares, stock, credits, partnership rights or interests, equitable rights or interests, contractual rights, holdings, financial interests or real estate) located within the jurisdiction of the United States or any State thereof.

Dkt. No. 322. Notably, the Court's injunction did not identify any particular asset of the PA or PLO.

On May 6, 2005, Plaintiffs served a "Notice of Injunction" upon a number of financial institutions. *See, e.g.*, Exh. I. Plaintiffs' Notice of Injunction unilaterally expanded the scope of the Court's May 5, 2005 injunction by asserting that various Palestinian entities were holding

assets of the PA and PLO.  Plaintiffs' Notice represented that the Injunction "applies to all assets of the PA and PLO however titled, *and that assets of the PA and PLO are held or titled under the names* . . . Palestine Investment Fund (PIF), Palestinian Pension Fund, Palestine Commercial Services Company (PCSC), Palestine Pension Fund, Insurance and Pension General Corporation, Palestinian National Fund, Palestine Monetary Fund (PMF), SAMED, PECDAR, and Palestine Monetary Authority (PMA)."  *Id.* at 1 (emphasis added).  On its face, therefore, the Notice stated that the injunction applied to these various entities, though this Court had not been asked to make any such determination.

The Notice of Injunction led to the attachment of assets of these entities, including assets of PIF, PMA, and the Palestinian Pension Fund for State Administrative Employees in the Gaza Strip ("Palestinian Pension Fund"), and related federal and state court enforcement litigation. The most active enforcement actions are:

- *The Estate of Unger, et al. v. Palestinian Authority, et al.*, Index No. 102101/06 (N.Y. Sup. Ct.), in which the Ungars seek a declaration that funds held by the New York affiliate of the Palestinian Pension Fund's custodial bank (Credit Suisse) belong not to the Palestinian Pension Fund but to the PA.

- *Strachman, et al. v. Palestinian Authority, et al.*, No. 3:05-mc-00208-PCD (D. Conn.), in which the Ungars are seeking turnover of PIF's interest in a Connecticut-based equity fund ("Canaan").  The Ungars' Notice of Injunction also resulted in the seizure of Becont, Ltd.'s limited partnership interest in the Canaan funds.  Becont is a private Palestinian investment company, whose unopposed motion to dismiss for lack of subject matter jurisdiction currently is pending in the federal court in Connecticut.  *See id.*, Dkt. No. 87.

- *Palestine Monetary Authority v. Strachman*, Index No. 107777/05 (N.Y. Sup. Ct.), in which the Ungars have restrained assets of the PMA at the Bank of New York.

- *Estate of Ungar v. Orascom Telecom Holding S.A.E.*, No. 07 Civ. 2572 (CM) (S.D.N.Y.), in with the Ungars are arguing that a debt allegedly owed by Orascom to PIF is an asset of the PA. *See Estate of Ungar v. Orascom Telecom Holding S.A.E.*, 578 F. Supp. 2d 536, 552 (S.D.N.Y. 2008) (granting Orascom's motion to dismiss for lack of subject matter jurisdiction). *See also Estate of Ungar v. Orascom Telecom Holding S.A.E.*, Index No. 108090/05 (N.Y. Sup. Ct.) (related state court enforcement action); *Estate of Ungar, et. al. v. Palestinian Authority, et. al.*, No. 05-mc-180 (GK) (D.D.C.), Dkt. No. 105 (September 8, 2010 Order granting Defendant Orascom's motion to quash writ of attachment).

The discovery at issue here is related to the Ungars' efforts to show, for purposes of their enforcement actions against assets of the PMA, PIF, the Palestinian Pension Fund, and Becont, that the PA or PLO have a coordinated litigation strategy as to the Ungars. The Ungars apparently hold the mistaken belief that the existence of such a coordinated litigation strategy supports their view that those entities hold PA assets or are alter egos of the PA. But regardless of the merits of their discovery objectives as to their enforcement actions, the Ungars may not use pre-hearing vacatur discovery authorized by this Court as a vehicle for engaging in a fishing expedition related to other lawsuits. As a leading treatise on civil procedure explains:

> The courts are empowered to issue protective orders on a good cause showing that a party intends to use the discovery for a purpose unrelated to settlement or trial preparation of the case in which the discovery is taken or requested. One common "unrelated" purpose is to gain information for use in a different action against the same party or in a similar type lawsuit.

6 James W. Moore et al., Moore's Federal Practice and Procedure § 26.101[1][c] (Mathew Bender 3d ed. 2010).

Although the Ungars' interest in obtaining this discovery for purposes of their enforcement actions is transparent, the relevance of the discovery to the pending Rule 60(b)(6) motion is far from apparent. Indeed, the PA's or PLO's communications with the PIF, PMA, Palestinian Pension Fund, Becont, Canaan, and Orascom regarding the *Ungar* litigation have no relevance to the appropriate factors courts consider in determining whether a default judgment should be vacated (*i.e.*, the willfullness of the default, the prejudice to the plaintiffs, the defendants' meritorious defenses), nor does it have any bearing on whether extraordinary circumstances are present meriting relief from the final judgment pursuant to Rule 60(b)(6).

"The party seeking information in discovery over an adversary's objection has the burden of showing its relevance." *TG Plastics Trading, Co. v. Toray Plastics*, No. 09-336S, 2010 U.S. Dist. LEXIS 23498, at *5-6 (D.R.I. Mar. 11, 2010); *see also Daniels v. Am. Power Conversion Corp.*, No. 05-459ML, 2007 U.S. Dist. LEXIS 10858, at *3-4 (D.R.I. Feb. 14, 2007) (same). Here, even assuming Plaintiffs could get past the hurdle of Rule 26(b)(3) (generally protecting from disclosure material prepared in anticipation of litigation), Plaintiffs cannot establish the relevance of the discovery to the Rule 60(b)(6) motion. In the course of the meet-and-confers on this discovery, Plaintiffs' counsel suggested that the discovery was relevant to show that Defendants were colluding with PMA, PIF, the Pension Fund, etc., to secrete assets or remove them from the reach of the Ungars. According to Plaintiffs' counsel, such evidence would show that Defendants are not -- as they have claimed -- committed to participate in the U.S. litigation in good faith. Plaintiffs' counsel, however, was unwilling to so narrow the discovery requests and maintained the Ungars were entitled to all communications regarding the *Ungar* litigation.

In any event, in five years of enforcement litigation, Plaintiffs have not identified any evidence

that the PA or PLO has violated the Court's May 2005 injunction or otherwise colluded with

other Palestinian entities to circumvent the Court's injunction.[3]  Given the scope of discovery

that is inarguably relevant to the Rule 60(b)(6) motion and the limited time for conducting such

discovery, Plaintiffs should not be permitted to use the vacatur discovery as an opportunity to

conduct a fishing expedition related to their efforts to enforce the judgment.

Even if the Court were to find that the discovery Plaintiffs seek is somehow relevant to

the vacatur proceeding, "the court must limit the frequency or extent of discovery otherwise

allowed . . . if it determines that . . . the burden or expense of the proposed discovery outweighs

its likely benefit . . . ." Fed. R. Civ. P. 26(b)(2)(C)(iii).  Indeed, "[j]udges relatively frequently

limit or forbid discovery when the cost and burden seem to outweigh the likely benefit in

producing evidence . . . ." 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus,

Federal Practice and Procedure § 2008.1, at 159 (Civil 3d 2010).  Here, Plaintiffs seek "*all*"

written or verbal communications "*relating to* the instant case" between "*any* office-holder,

employee, <u>attorney</u> and/or agent" of Defendants and "*any* office-holder, employee, <u>attorney</u>

and/or agent" of the Third-Party Entities.  *See, e.g.,* Exh. G at 5 (italicized emphasis added,

underline in original); *see also* Exh. H at 5.  Plaintiffs' use of such "omnibus" wording in

connection with such a broad and open-ended subject as "the instant case" plainly make their

---

[3] Defendants recognize that Plaintiffs have alleged that PIF improperly transferred funds to the
PA after the *Ungar* judgment was entered.  However, PIF has actively contested that allegation.
And, in any event, Plaintiffs have propounded a separate document request that focuses on this
topic. *See* Exh. A at 19 (Request 10(c)) (seeking "[a]ll documents relating to, referring to and/or
evidencing the transfer and/or payment of any funds, monies or assets from the Palestine
Investment Fund to the PA from the date the 2006 Judgment was entered until the present day,
including all documents relating to, referring to and/or evidencing the amounts of such transfers
and/or payments").

discovery requests unduly burdensome.  See *Lipari v. U.S. Bancorp, N.A.*, No. 07-2146, 2008 U.S. Dist. LEXIS 82594, at *6 (D. Kan. Oct. 15, 2008) ("[A] discovery request is overly broad and unduly burdensome on its face if it uses an omnibus term such as 'relating to,' 'pertaining to,' or 'concerning' to modify a general category or broad range of documents or information."). Here, it is unreasonably burdensome to ask the PA and PLO to identify every communication any employee, attorney, or agent had with any of seven different organizations regarding the *Ungar* litigation, which has been active over a ten year-period.

## II.    Plaintiffs' Discovery Seeks Material Protected by the Work Product Doctrine.

Federal Rule of Civil Procedure 26(b)(3) generally prohibits discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . .)."  Fed. R. Civ. P. 26(b)(3)(A).  "There are two types of work-product [protected by Rule 26(b)(3)]:  (1) trial preparation material generated by or for a party or the party's representative, referred to as 'classic' work-product, and (2) documents containing the mental impressions, opinions, or litigation theory generated by or for a party or the party's representative, referred to as 'opinion' work-product."  *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, No. 00-cv-10783, 2001 U.S. Dist. LEXIS 23785, at *5 (D. Mass. July 30, 2001) (internal citation omitted).

But the work product doctrine "is only partially codified in Rule 26(b)(3)."  6 James W. Moore et al., Moore's Federal Practice and Procedure § 26.70[2][c] (Mathew Bender 3d ed. 2010) (citing *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985)).  "In *Hickman v. Taylor*, the case from which Rule 26(b)(3) is derived, the Supreme Court articulated the work product doctrine in terms that spanned the entire scope of discovery."  *Id.* (citing 329 U.S. 495, 505 (1947)).  Thus, work-product protection is not limited to "documents and tangible things," as stated in Rule 26.

16

*See id.* at n.20 (citing cases). As the First Circuit has noted, work product is protected out of recognition that "[o]ur adversarial system of justice cannot function properly unless an attorney is given a zone of privacy within which to prepare the client's case and plan strategy, without undue interference." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014 (1st Cir. 1988).

Here, the discovery requests at issue seek PA or PLO communications with entities involved in the *Ungar* enforcement litigation regarding the *Ungar* litigation and the *Ungar* judgment. Discovery regarding the adversary's documents concerning the ongoing litigation is rarely sought for the simple reason that it is understood to be protected by the work product doctrine. By seeking the PA's and PLO's communications with other entities and counsel involved in litigation against the Ungars concerning the *Ungar* litigation, Plaintiffs' request targets communications and documents squarely protected by the work product doctrine.

In the meet-and-confer conferences, Plaintiffs' counsel declined to articulate a position as to why the work product doctrine does not preclude the discovery sought in the requests at issue here. Presumably Plaintiffs' will argue that any work product protection was waived through disclosure to the third-party entities (PIF, the Palestinian Pension Fund, PMA, etc.). It is well-established, however, that "only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection." *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997) (noting that "[a]t least five circuits have adopted this rule in some form").

Thus, disclosure of work product to non-adversaries -- where the disclosing party has a reasonable expectation that the confidentiality of the communication will be maintained -- does not constitute a waiver. *See, e.g., United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir.

2010) (although voluntary disclosure to third parties waives the attorney-client privilege, voluntary disclosure of work product results in a waiver only if the disclosure is "to an adversary or a conduit to an adversary").   A reasonable expectation of confidentiality "may derive from common litigation interests between the disclosing party and the recipient." *Id.* at 141; *see also In re Raytheon Secs. Litig.*, 218 F.R.D. 354, 360 (D. Mass. 2003) ("In determining whether a disclosure is fatally inconsistent with maintaining the privilege, the existence of 'common interests' between the transferor and transferee should be considered."). This is true because when common litigation interests are present, "the transferee is not at all likely to disclose the work product material to the adversary." *Deloitte LLP*, 610 F.3d at 141 (internal citation and quotation omitted); *see also S.N. Phelps & Co. v. Circle K Corp. (In re Circle K Corp.)*, No. 96 Civ. 5801, 1997 U.S. Dist. LEXIS 713, at *34 (S.D.N.Y. Jan. 27, 1997) ("Implicit in the rule that an attorney's disclosure of work product to a third party with a common interest is not an automatic waiver is the idea that it is unlikely that such a third party will reveal that information to an adversary.").

Here, the PA/PLO and Palestinian Pension Fund, PIF, PMA, and Becont have a common litigation interest in the PA/PLO having an opportunity to litigate the *Ungar* case on the merits and in avoiding a default judgment being enforced as to Palestinian entities who had no role in the underlying attack and whose assets should not be used to satisfy a judgment as to the PA or PLO.

The parties also have been unable to resolve whether Defendants are obligated to produce a privilege log prior to the Court's resolution of the motion for protective order.  It would be unreasonably burdensome to require Defense counsel to log their files when the documents sought by the discovery were so evidently beyond the scope of proper discovery.  Because the

material Plaintiffs seek in the discovery requests is facially protected from discovery under the work product doctrine, Defendants are not required to go to the burden and expense of preparing a privilege log. *See, e.g., ASPCA v. Ringling Bros. & Barnum & Bailey Circus,* 233 F.R.D. 209, 213 (D.D.C. 2006) (not requiring a privilege log where additional information was not necessary to allow the discovering party to evaluate the applicability of the work product doctrine); *see also, e.g., Cendant Corp. v. Shelton,* 2007 U.S. Dist. LEXIS 62491, at *3-4 (D. Conn. Aug. 24, 2007) ("Defendant Amy Shelton seeks all documents concerning any communications between Cendant and any of its agents and the United States of America or any of its agents concerning this case. . . . [R]equiring Cendant to produce a privilege log in response to such a broad request would be unduly burdensome.") (quotation marks omitted); *Christensen v. Provident Life & Accident Ins. Co.*, No. C07-04789, 2009 U.S. Dist. LEXIS 51192, at *10-11 (N.D. Cal. June 9, 2009) ("To the extent that the requests asked for records as far back as 2002, they are overbroad and unduly burdensome.  The court is also not convinced that the burden of requiring plaintiff to generate a privilege log at this time would provide any particular benefit under the circumstances.").

## Conclusion

For the foregoing reasons, Defendants' Motion for Entry of a Protective Order Regarding Plaintiffs' Requests for Discovery of Certain Third-Party Communications should be granted.  A proposed order is submitted herewith.

Respectfully submitted,

Dated:  September 9, 2010

/s/ Mark J. Rochon
Mark J. Rochon (D.C. Bar #376042)
Admitted *pro hac vice*
Richard A. Hibey (D.C. Bar #74823)
Admitted *pro hac vice*
Brian A. Hill (D.C. Bar #456086)

Admitted *pro hac vice*
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
mrochon@milchev.com
rhibey@milchev.com
bhill@milchev.com

Deming E. Sherman (#1138)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, Rhode Island 02903
Tel. (401) 274-9200
Fax. (401) 276-6611
dsherman@eapdlaw.com

*Attorneys for the Palestinian Authority and
the Palestine Liberation Organization*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 9th day of September 2010, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to:

> David J. Strachman
> McIntyre, Tate & Lynch, LLP
> 321 South Main Street, Suite 400
> Providence, RI  02903
> Djs@mtlhlaw.com
>
> Max Wistow
> Wistow and Barylick Incorporated
> 61 Weybosset Street
> Providence, RI 02903
> mwistow@wistbar.com
>
> *Attorneys for Plaintiffs*

/s/ Mark J. Rochon