UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____

| | |
|---|---|
| THE ESTATE OF YARON UNGAR, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    C.A. No. 00-105L |
| | ) |
| THE PALESTINIAN AUTHORITY, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

_____)

## MEMORANDUM IN SUPPORT OF DEFENDANT THE PALESTINE LIBERATION ORGANIZATION'S MOTION FOR ENTRY OF A PROTECTIVE ORDER REGARDING PLAINTIFFS' NOTICE OF TAKING THE DEPOSITION OF AHMED QUREI

Defendant The Palestine Liberation Organization ("PLO"), by and through counsel and pursuant to Federal Rule of Civil Procedure ("Rule") 26(c), respectfully submits the following in support of its Motion for Entry of a Protective Order Regarding Plaintiffs' Notice of Taking the Deposition of Ahmed Qurei.

## BACKGROUND REGARDING MOTION TO VACATE DISCOVERY[1]

Earlier this year, the U.S. Court of Appeals for the First Circuit reversed the Court's denial of the Defendants' Motion for Relief from Default Judgment (the "Motion, or "Rule 60(b)(6) motion") and remanded the matter to the Court for reconsideration of the Motion. *See Ungar v. PLO*, 599 F.3d 79 (1st Cir. 2010).   In its Order of April 1, the Court announced its

_____

[1] Counsel notes that the background described herein closely matches that in the contemporaneously filed Memorandum in Support of Defendants' Motion for Protective Order Regarding Plaintiffs' Requests for Discovery of Certain Third-Party Communications.  Counsel includes the statement here not to be repetitious, but to ensure that this discussion is readily available to the Court in the event it takes this motion up first.

intent to hold an evidentiary hearing on the remanded Rule 60(b)(6) motion.  Dkt. No. 482.  That order was followed by a June 1 Pre-Hearing Order setting January 18, 2011 as the hearing date and directing the parties to complete pre-hearing discovery by November 19, 2010.  Dkt. No. 489.

Although discovery in the context of a Rule 60(b)(6) motion to vacate is highly unusual, if not unprecedented, the Court has provided no guidance on the permissible scope of discovery, with the exception of granting Defendants' unopposed *Motion for Leave to Take Discovery on Whether the Damage Award Would Withstand Adversarial Testing*.  Dkt. No. 506 (Magistrate Judge Martin Order of August 18, 2010).  The net result is that the parties are operating with a highly compressed discovery schedule involving documents and witnesses located overseas and an unagreed and wide-ranging set of issues on which discovery arguably can be conducted.  The discovery is quickly becoming unreasonably burdensome and unmanageable and threatens to derail the schedule set by the Court in its June 1 scheduling order.

This is one in a series of motions for protective orders Defendants will file.  Before turning to the particulars of the matters at issue in this motion for protective order, Defendants will provide an overview of the current status of the pre-hearing discovery so that the Court can address this motion in the context of the broader discovery dispute and so that the Court is not surprised as additional discovery disputes surface in the coming weeks.

Plaintiffs initiated vacatur discovery by conducting a nearly seven-hour deposition of Palestinian Authority Prime Minister Salam Fayyad in Jerusalem on July 28.  In addition to that deposition, Plaintiffs have served Defendants with three requests for production of documents, a set of interrogatories, two lengthy 30(b)(6) deposition notices, and a notice of deposition for former PA Prime Minister Ahmed Qurei.  Plaintiffs served the bulk of the discovery requests at

the end of August, approximately 12 weeks before the close of discovery. The third request for production of documents, served August 26, contains 205 document requests. The Rule 30(b)(6) deposition notices served on the PA and PLO on August 31 each identify **_over 100_** topics as to which the PA and PLO are directed to designate officers, directors, or managing agents, or other persons who consent to testify on their behalf. The voluminous, burdensome nature of this overseas discovery would be problematic even in a multi-year, complex civil litigation dispute. It is wildly out of bounds as discovery related to a Rule 60(b)(6) motion in preparation for the Court's January 2011 evidentiary hearing.

Three months into vacatur discovery, the following is apparent. First, the parties have widely divergent views on the proper scope of pre-hearing discovery. As an example, much of the discovery Plaintiffs seek relates to the willfulness of the default and whether the motion meets the timeliness requirement of Rule 60(c)(1). In addition to the numerous written discovery requests devoted to these issues and the identification of these subjects as areas to be covered in Rule 30(b)(6) deposition notices, Plaintiffs seek to convene a deposition of former Prime Minister Ahmed Qurei in Rhode Island on those topics. Defendants, however, have conceded that the default was willful and thus willfulness is not a contested issue and not the proper subject of pre-hearing discovery. With respect to the timing of the Rule 60(b)(6) motion, Plaintiffs previously argued this threshold question to both this Court and the First Circuit. Yet, both courts addressed the merits of Defendants' motion, thereby rejecting Plaintiffs' claim that the alleged untimeliness of the motion barred the Court's consideration of Defendants' request for Rule 60(b)(6) relief. *See generally* Dkt. No. 442; *Ungar*, 599 F.3d 79. That issue thus also is not properly the subject of pre-hearing discovery.

Plaintiffs, for their part, have objected to discovery Defendants have propounded related to their allegations that the PA or PLO are liable for Mr. Ungar's killing by Hamas militants. The Plaintiffs assert that "[s]uch information is irrelevant to defendants' Rule 60(b)(6) motion and unduly burdensome to produce because in this Circuit the existence *vel non* of a meritorious defense is determined solely on the basis of defendant's averments and not on the basis of evidence." *See, e.g.,* Exh. 1 at 13-14 (Pls.' Amended & Supp. Answers to Defs.' First Set of Interrogatories) (citing *Indigo America, Inc. v. Big Impressions, LLC*, 597 F.3d 1, 4 (1st Cir. 2010)). But while Plaintiffs are seeking to cut off Defendants' discovery on Plaintiffs' factual allegations regarding PA/PLO liability on the basis that meritorious defense is a pleading standard, Plaintiffs refuse to concede the existence of a meritorious defense. *See* Dkt. No. 415 (Pls.' Opp. to Defs.' Rule 60(b)(6) Motion) at 49-59. Moreover, while arguing that information relevant to Defendants' meritorious defenses is "irrelevant" for purposes of the Rule 60(b)(6) motion, Plaintiffs simultaneously have sought discovery from Defendants on meritorious defenses.

Second, Plaintiffs appear to view the opportunity to conduct vacatur discovery as a license to roam through defense counsel's files and to conduct discovery related to other lawsuits. In addition, Plaintiffs have served discovery requests seeking defense counsel's communications regarding the *Ungar* litigation with counsel for non-adverse parties the Ungars are suing in an effort to enforce their judgment. Not only is such discovery irrelevant to the Court's resolution of the Rule 60(b)(6) motion, but also it targets non-discoverable attorney work product.[2]

---

[2] As noted above, Defendants' motion for protective order as to this third-party discovery is being filed contemporaneously with this motion.

Third, Plaintiffs' voluminous third request for production of documents (with over 200 document requests) and Rule 30(b)(6) deposition notices served at the end of August (identifying over 100 deposition topics) are not consistent with an effort to engage in discovery that reasonably could be accomplished by the November 19 deadline, nor are they consistent with the limited scope of discovery dictated by the procedural posture of this case. Rather, Plaintiffs appear to have combed through the Rule 60(b)(6) briefing and turned every statement or argument made by Defendants into a discovery request. The discovery is not directed at aiding the Court's resolution of the Rule 60(b)(6) motion but rather appears designed to create discovery obligations that require Defendants to seek relief from the Court and to provide Plaintiffs an opportunity to unfairly claim Defendants are even now recalcitrant litigants.

Fourth, and finally, it also is evident the parties are unable to resolve these fundamental discovery disputes in a timely matter without Court intervention. In addition to the parties' fundamental disagreement as to the Rule 60(b)(6) factors that are the proper subject of pre-hearing vacatur discovery, the Ungars' discovery requests reflect a litigant that is looking to create discovery disputes by, among other things, (1) targeting attorney-client communications and litigation counsel's work product; (2) seeking to depose Ahmed Qurei, who previously testified as a PLO witness in a related Anti-Terrorism Act case only under court compulsion, without any showing that he has knowledge relevant to the Rule 60(b)(6) motion; and (3) serving over 200 document requests and seeking Rule 30(b)(6) depositions on over 100 topics just 12 weeks before the close of discovery. A recent meet-and-confer telephone conference deteriorated into Plaintiffs' counsel referring to defense counsel as "f -- ing liar[s]" shortly before abruptly hanging up on defense counsel. Exchanges of correspondence have been similarly unproductive, including one letter in which Plaintiffs' counsel accused defense counsel of

believing Plaintiffs' counsel to be "slack-jawed country bumpkins" and dealing with them deceptively.  *See* Exh. 2 (Sept. 7, 2010 Letter from M. Wistow to M. Rochon).  The parties are in the process of meet-and-confers on the Plaintiffs' Third Request for Production of Documents and Rule 30(b)(6) notices, but Defendants expect that they also will have to file a motion for protective order as to that discovery as well.  Once the motions for protective orders are briefed (including, at least, the instant motion, the third-party communications motion, and the likely motion as to the most recent round of discovery), Defendants respectfully request a discovery conference with the Court to reach a comprehensive resolution regarding the permissible scope of Rule 60(b)(6) discovery.

With that background, Defendant PLO now turns to the instant discovery dispute.

## THE INSTANT DISCOVERY DISPUTE INVOLVING AHMED QUREI

On August 27, 2010, Plaintiffs served a Notice seeking the deposition of Ahmed Qurei in his capacity as a purported "officer" of the PLO.  *See* Exh. 3.  Plaintiffs noticed the deposition to take place on September 13, 2010, in Plaintiffs' counsel's law offices in Providence, Rhode Island.  *Id.*  On August 30, 2010, Defendants sent a letter to Plaintiffs' counsel noting that this Notice "does not contain any information regarding why Plaintiffs believe Mr. Qurei's testimony would be relevant to the issues to be heard by the Court in January 2011 or would lead to the discovery of evidence that would be admissible at the January 2011 hearing."  *See* Exh. 4 at 1. In this communication, Defendants requested that Plaintiffs provide their basis for seeking the deposition of Mr. Qurei, including "(a) the identification of the specific issues properly before the Court for the January 2011 hearing as to which the Plaintiffs know or believe Mr. Qurei has discoverable information or knowledge, and (b) the specific discoverable information or knowledge that the Plaintiffs know or believe Mr. Qurei has."  *Id.* at 2.

On September 2, 2010, Plaintiffs responded to Defendants' August 30 letter and alleged that Mr. Qurei is a relevant witness because "he was the Prime Minister of the Palestinian Authority (i.e. second-in-command after Arafat and Abbas) between October 2003 and January 2006 . . . ." Exh. 5 at 1.  In a further effort to obtain the deposition of Mr. Qurei, Plaintiffs claimed that he is a "key witness (if not the key witness) regarding defendants' decision to default and their subsequent failure to move to vacate timely, among other relevant topics." *Id.* (emphasis in original).  Previously, in an effort to take the Prime Minister's deposition, Plaintiffs' counsel claimed the Prime Minister was the key witness, stating "Defendants made [Salam] Fayyad into the star witness and central player in their Rule 60 motion . . ." as a rationale for taking that deposition.  *See* Exh. 6 (July 7-9, 2010 Email Exchange between D. Strachman and A. Wise) at 2.  It appears that Plaintiffs turn anyone they wish to depose into the "key" witness in this matter.

On September 3, 2010, Defendants responded to Plaintiffs' September 2 letter and explained their view that Plaintiffs have not provided any information suggesting that Mr. Qurei possesses information relevant to the January 2011 hearing.  *See* Exh. 7.  Plaintiffs responded to this letter on September 7, accusing defense counsel of deceptive practices but failing to make any further proffer concerning the allegedly relevant knowledge that they believe Mr. Qurei possesses.  *See* Exh. 2.  Counsel for the parties held a meet-and-confer teleconference on September 8, 2010.  During this teleconference, the parties could not reach an agreement concerning Plaintiffs' Notice and counsel for Defendants informed Plaintiffs of their intent to file the instant Motion.

## STANDARD OF REVIEW

This Court has discretion to enter a protective order precluding or limiting discovery under Rule 26(c) "for good cause" shown to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The Court may enter such an order "forbidding the disclosure or discovery," "prescribing a discovery method other than the one selected by the party seeking discovery," "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (C) and (D).

"A district court is not limited to the types of protective orders listed in Rule 26(c). Rather, a court is authorized to make *any* order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Thus, the courts have discretion to fashion a protective order to fit the facts and circumstances of the case." 6 James W. Moore et al., Moore's Federal Practice and Procedure § 26.105[1][b], 26-518 (Mathew Bender 3d ed. 2010) (internal citation and footnote omitted).

## ARGUMENT

Plaintiffs should be precluded from taking the deposition of Mr. Qurei and Defendant's Motion should be granted because (1) Mr. Qurei does not possess any knowledge relevant to the matters at issue; (2) the purported subjects of the deposition -- the willfulness of Defendants' default and the timeliness of their Rule 60(b)(6) motion -- are not properly the subject of discovery at all, much less with Mr. Qurei; (3) Mr. Qurei is not subject to deposition by notice, is not an "officer" of the PLO, and his current position does not relate whatsoever to this case; and (4) Plaintiffs' noticed location and proposed deposition procedure are inequitable under the circumstances.

Accordingly, there is good cause for this Court to enter a protective order prohibiting Plaintiffs from obtaining such discovery pursuant to Rule 26(c), and the Court should do so.

## I.    THERE IS GOOD CAUSE TO ENTER A PROTECTIVE ORDER BECAUSE MR. QUREI DOES NOT POSSESS ANY KNOWLEDGE RELEVANT TO THE MATTERS AT ISSUE FOR THE JANUARY 18, 2011 HEARING

There are a host of procedural reasons why Plaintiffs should be precluded from taking Ahmed Qurei's deposition, but regardless of the Court's view of the procedural arguments, the simple fact is that this deposition would be a waste of time and effort because Mr. Qurei does not possess any information relevant to the matters at issue in Defendants' Motion to Vacate. Plaintiffs merely assume, without any supporting evidence whatsoever, that Mr. Qurei must know about the circumstances relating to Defendants' default by virtue of his position as the "Prime Minister of the Palestinian Authority (i.e. second-in-command after Arafat and Abbas) between October 2003 and January 2006) . . . ."  Exh. 5 at 1.

Plaintiffs are mistaken.  The Court affirmed Magistrate Judge Martin's April 18, 2003 order granting Plaintiffs a default judgment against Defendants on August 5, 2003, prior to Mr. Qurei becoming Prime Minister in October 2003.  *See* Dkt. No. 202.  Any decisions or circumstances surrounding the willful default had therefore already been made well before Mr. Qurei assumed that position.  Moreover, between October 2003 and January 2006 (when Mr. Qurei ceased being Prime Minister of The Palestinian Authority), Mr. Qurei had no responsibility or authority regarding the conduct of the *Ungar* litigation.  He did not have any responsibility for determining or deciding whether the PA or the PLO would seek to vacate any default or default judgment entered by the Court.  Thus, the deposition would consist of a series of "I don't know" and "It was not within my responsibility" answers to any questions about the conduct of this litigation.  If the Plaintiffs wish to make something of the fact that Mr. Qurei had no involvement in the litigation during his time as PA Prime Minister, they are free to do so.

Accordingly, because the deposition of Mr. Qurei that Plaintiffs seek is incapable of yielding evidence relevant to any issue that the Court must decide at the vacatur hearing, the Court should enter a Protective Order precluding Plaintiffs from taking Mr. Qurei's deposition.

## II.    THERE IS GOOD CAUSE TO ENTER A PROTECTIVE ORDER BECAUSE PLAINTIFFS MAY NOT TAKE DISCOVERY ON THE WILLFULNESS OF THE DEFAULT OR THE TIMELINESS OF THE MOTION TO VACATE

The Plaintiffs seek to depose Mr. Qurei on only two bases:  (1) "defendants' decision to default," and (2) Defendants' alleged "failure to move to vacate timely."  *See* Exh. 5 at 1.[3]  As noted above, Mr. Qurei has no knowledge about these matters, but the fact is that neither of these issues is subject to discovery, which means that the deposition of Mr. Qurei is not reasonably calculated to lead to the discovery of any evidence that would properly be admissible at the January 18, 2011 hearing.

As this Court knows, the Defendants readily concede that their decision to default was intentional and willful, and that, if the only factor relevant to Defendants' entitlement to Rule 60(b)(6) relief was the willfulness of the default, Defendants would not be entitled to such relief. *See* Exh. 9 (Apr. 4, 2008 Hearing Tr.) at 5:4-10, 6:10-10:23 (conceding that it is within the Court's discretion to consider Defendants' default willful and arguing that willfulness is not dispositive).  The First Circuit's opinion makes clear that it considered Defendants' default to be willful.  *See Ungar*, 599 F.3d at 84-86 (referencing Defendants as "willful defaulter[s]").  Nonetheless, the First Circuit held that the willful nature of a default may not be the sole factor

---

[3] Plaintiffs issued a request for production to Defendants confirming that they seek Mr. Qurei's deposition on the issue of Defendants' default.  *See* Exh. 8 (Pls.' Third Req. for Prod. of Documents and Things Relevant to Defs.' Rule 60(b)(6) Motion) at 17 (Req. for Prod. No. 9.j.) (requesting "[a]ll documents relating to, referring to and/or evidencing the involvement, duties, responsibilities and efforts of Ahmed Qurei to gain information about and supervise U.S. litigation against the PA and/or PLO, from March 2000 until December 2007").  This is the sole written discovery request concerning Mr. Qurei served by Plaintiffs on Defendants.

considered by a court in denying a Rule 60(b)(6) motion, and remanded Defendants' Motion to Vacate Default Judgment.  *Id.* at 84 (concluding that "the flexible nature of Rule 60(b)(6) does not lend itself to a categorical bar to relief in the face of a willful defaulter"); *id.* at 86 (holding that "even for a willful defaulter, relief is not *categorically* barred") (emphasis in original).  The First Circuit therefore remanded the issue to seek this Court's consideration of factors *other* than the willfulness of the default, which it found the Court had already "focused on . . . improvidently [as] a categorical bar to relief."  *Id.* at 87.  Specifically, the Court of Appeals instructed that, in resolving Defendants' pending Motion to Vacate, this Court should consider "the extent of any prejudice to [Plaintiffs], the existence or non-existence of meritorious claims of defense, and the presence or absence of exceptional circumstances," which could include "the special nature of the cause of action, the uniqueness of the case, its political ramifications, and its potential effect on international relations."  *Id.* at 83, 86.

The Plaintiffs also claim that Mr. Qurei should be deposed as to Defendants' decision not to move timely to vacate.  The timeliness of a motion to vacate is a threshold question, and both this Court and the First Circuit have faced and rejected Plaintiffs' arguments about timeliness.  *See* Dkt. No. 442; *Ungar*, 599 F.3d at 81-87.  Both courts have reached the merits of Defendants' Rule 60(b)(6) motion.  In fact, the First Circuit thereby rejected the Plaintiffs' timeliness argument when it held that the motion was properly brought under Rule 60(b)(6) and vacated the district court's denial of the motion to vacate.  *Ungar*, 599 F.3d at 87.  Plaintiffs may not re-litigate the timeliness issue and, in any event, should not be permitted to conduct depositions as to this stale issue.

In short, the issues as to which Plaintiffs claim Mr. Qurei is a "key witness" are not properly the subject of pre-hearing discovery.  Accordingly, because Defendants have conceded

the willful nature of their default, and because the First Circuit agreed and remanded Defendants'

Motion to Vacate so that this Court may consider other factors, the Court should enter a

Protective Order precluding Plaintiffs from taking Mr. Qurei's deposition.

## III.    THERE IS GOOD CAUSE TO ENTER A PROTECTIVE ORDER BECAUSE FEDERAL RULE OF CIVIL PROCEDURE 30 DOES NOT REQUIRE DEFENDANT PLO TO PRODUCE MR. QUREI FOR DEPOSITION

In addition, the Court should preclude Plaintiffs from taking the deposition of Ahmed

Qurei for three independent reasons.  First, as a matter of law, the plain language of Rule 30 does

not require Defendant PLO to produce any specifically named "officer" in response to a

deposition notice served by Plaintiffs.  Second, as a matter of law and fact, Mr. Qurei is not an

"officer" of the PLO under the relevant legal analysis applied to unincorporated associations

such as the PLO.  Third, even if Rule 30 required the PLO to produce Mr. Qurei in response to a

notice because he is viewed as a current officer of the PLO, his testimony should only be

required in his current capacity as such, and his knowledge in that capacity is wholly irrelevant

to the issues before the Court.  Accordingly, Defendant's Motion for Protective Order should be

granted.

### A.    Rule 30(b)(1) Does Not Require Defendant PLO to Produce an Officer for Deposition in Response to Plaintiffs' Deposition Notice.

As an initial matter, the Court must determine whether it has sufficient jurisdiction to

order Defendant to produce Mr. Qurei for deposition simply because Plaintiffs have noticed his

deposition.  Although *GTE Products Corp. v. Gee*, 115 F.R.D. 67, 68 (D. Mass. 1987) appears to

have concluded that a party may "notice the deposition of [a] corporation by a *particular* officer,

director, or managing agent pursuant to Rule 30(b)(1)" (emphasis in original), a careful review of

Rule 30 reveals that a Defendant such as the PLO, which is an unincorporated association that

has not voluntarily sought to invoke the jurisdiction of the Court, is not required by the Federal

Rules of Civil Procedure to produce officers in response to a deposition notice.

Analysis of this issue must begin with the text of Rule 30, which initially provides that

> A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45.

Fed. R. Civ. P. 30(a)(1). Here, Plaintiffs have not attempted to compel Mr. Qurei's attendance

"by subpoena under Rule 45" or through any international discovery process. Rather, Plaintiffs

have simply served a Notice on Defendant PLO commanding that it "shall cause Ahmed Qurei to

appear to be deposed." Exh. 3 at 1. The initial issue is thus whether that Notice alone compels

Defendant to produce Mr. Qurei.

The procedure for noticing a deposition is contained in Rule 30(b)(1) which states:

> *Notice in General.* A party who wants to depose a person by oral questions must give reasonable written notice to every other party. The notice must state the time and place of the deposition and, if known, the deponent's name and address. If the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs.

Fed. R. Civ. P. 30(b)(1). Nothing in Rule 30(b)(1) obligates an organization to produce an

officer who is not a party to the ligation for deposition. Indeed, although Rule 30(b)(1) allows a

party to notice for deposition on oral examination "any person," nothing in the rule refers to an

organization or an officer. Thus, Rule 30(b)(1) does not expressly obligate an organizational

party such as the PLO to produce an officer in the litigation forum for deposition.

The portion of Rule 30 that does actually reference "officers" confirms that the PLO is

not required to produce Mr. Qurei simply because the Plaintiffs have noticed his deposition.

Rule 30(b)(6) allows a party in a "notice or subpoena" to "name as the deponent a public or

13

private corporation, a partnership, an association, a governmental agency, or other entity" and "describe with reasonable particularity the matters for examination."  Fed. R. Civ. P. 30(b)(6). Following receipt of such a notice "[t]he named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify."  *Id.*  The Notice at issue clearly does not trigger any obligation Defendant might have under Rule 30(b)(6) because it neither "name[s] as the deponent" any "organization" nor "describe[s] with reasonable particularity the matters for examination."  *Id.*  Moreover, even if the Plaintiffs were to serve a proper Rule 30(b)(6) Notice naming one or the other of the Defendants "as the deponent," it would be the "named organization," not the Plaintiffs, who would be entitled to designate the person or persons who would testify on its behalf.  *Id.*  Thus, nothing in the text of either Rule 30(b)(1) or Rule 30(b)(6) requires Defendant to produce Mr. Qurei in response to Plaintiffs' pending Deposition Notice.

This issue of whether Rule 30 "allows plaintiff to notice for deposition any director, officer, or managing agent of defendant and to compel defendant to produce the person . . . for deposition" was thoroughly analyzed in *Stone v. Morton Int'l, Inc.*, 170 F.R.D. 498, 500 (D. Utah 1997).  After an exhaustive analysis of the text of Rule 30 and relevant judicial decisions, the court concluded that the "Rules of Civil Procedure do not provide direct and concrete support for the obligation of a corporation to produce a director, officer or managing agent pursuant to notice under Rule 30(b)(1)," and, accordingly, denied a motion to compel the production of a corporate officer for deposition who was located overseas as demanded in a deposition notice.  *Id.* at 503-04.  A similar result should obtain here.

The *Stone* court concluded that judicially imposing an obligation that every organization automatically produce any of its officers pursuant to a deposition notice would be problematic for at least three reasons. 170 F.R.D. at 501. First, "the forum may be remote to the residence and place of business of the corporate official, as in this case." *Id.* Second, "the corporate official may not be a particularly knowledgeable person about matters at issue in the litigation." *Id.* Third, "[a]n automatic obligation to produce a corporate officer for deposition pursuant to notice under Rule 30(b)(1) F.R.C.P. is susceptible to abuse." *Id.*

All of these concerns are present here and support the entry of a Protective Order precluding Mr. Qurei's deposition. Mr. Qurei's "residence and place of business" is the Occupied Palestinian Territory which is certainly "remote" to this forum. As such, he should not be compelled to sit for deposition thousands of miles away in Rhode Island. He is also not a "particularly knowledgeable person about matters at issue in the litigation." *See supra* Part I and *infra* Part III.C. Likewise, the obligation advocated by Plaintiffs is clearly "susceptible to abuse" in this case. *See infra* Part IV.

Defendant acknowledges that the *GTE Products Corp.* decision stated that "[a] party seeking to take the deposition of a corporation has two choices. The first choice is to notice the deposition of the corporation by a *particular* officer, director, or managing agent pursuant to Rule 30(b)(1)." 115 F.R.D. at 68 (emphasis in original). However, as the *Stone* court pointed out, these statements from *GTE* are not persuasive authority for the proposition that an entity party must produce any "officer" in response to a deposition notice. First, in *GTE*, the "plaintiff served notice on a corporation to take the deposition of corporate employees who were *not* officers, directors, or managing agents," and the *GTE* "court held the notice method could not be used to compel the corporation to produce such persons." *Stone*, 170 F.R.D. at 501 (analyzing

15

*GTE*, 115 F.R.D. at 69) (emphasis in original).  Thus, the language from *GTE* is merely "a dicta statement."  *Id.*  Second, and more importantly, a close reading of *GTE* reveals that the "court does not say that the deposition of a corporate director, officer or managing agent may be compelled by the notice method" and "[n]o citation in support of that assertion of plaintiff is made in the *GTE* case."  *Id.* at 502.  Therefore, *GTE* "does not directly support the plaintiff's assertion that a corporate director, officer, or managing agent must appear on mere notice given to the corporate party that a nonparty corporate officer is to be deposed."  *Id.*[4]

Accordingly, because, as a matter of law, Rule 30 does not require Defendants to produce Mr. Qurei for deposition, the Court should enter Defendant's requested Protective Order.

### B.    Mr. Qurei is Not an Officer of Defendant PLO.

Alternatively, assuming *arguendo* that Defendant can be legally required to produce its "officers" for deposition on notice alone, the Court should still enter a Protective Order because Mr. Qurei is not in fact an "officer" of the PLO.  The parties appear to agree that Mr. Qurei holds no current position with the PA, and Plaintiffs did not direct the Notice to Defendant PA.  Therefore, the factual issue for determination is whether Mr. Qurei is a current "officer" of the PLO.  Plaintiffs, as the "party seeking to take the deposition bear[] the burden of establishing the

---

[4] Defendant also recognizes that in the *Saperstein v. Palestinian Auth.* matter, the Magistrate Judge did not agree with a similar argument posed by the PLO with respect to Rule 30(b)(1).  *See* Exh. 10 (*Saperstein v. Palestinian Auth.*, No. 04-20225-CIV (S.D. Fla. Dec. 31, 2009) (O'Sullivan, M.J.) (Dkt. No. 392)).  Magistrate Judge O'Sullivan, however, made two distinctions between the circumstances in *Saperstein* and those in the *Stone* case, with one of those distinctions particularly relevant here.  First, Magistrate Judge O'Sullivan found that the cost and convenience issue discussed in *Stone* was not present in *Saperstein* because "the plaintiff has agreed to take Mr. Qurei's deposition at a mutually agreeable location in East Jerusalem."  *Id.* at 7.  Plaintiffs here have insisted upon taking Mr. Qurei's deposition thousands of miles from his residence, which would greatly inconvenience both Mr. Qurei and the PLO.  Second and more importantly, he found that Mr. Qurei was, for the purposes of the *Saperstein* case, "a particularly knowledgeable person about matters at issue in the litigation."  *Id.* (quoting *Stone*, 170 F.R.D. at 501).  Here, Mr. Qurei lacks knowledge about any matters at issue before this Court relating to the January 18 evidentiary hearing.  Moreover, although the PLO and the PA filed Rule 72 objections to the Magistrate Judge's ruling with respect to Mr. Qurei, the District Court never ruled on those objections.

capacity of the person sought to be examined." *Karakis v. Foreva Jens Inc.*, No. 08-61470-CIV, 2009 U.S. Dist. LEXIS 6356, at *4 (S.D. Fla. Jan. 19, 2009).

"The identification of corporate officers and directors is a simple fact question." *Triple Crown Am., Inc. v. Biosynth AG*, Civil Action No. 96-7476, 1998 U.S. Dist. LEXIS 6117, at *6 (E.D. Pa. Apr. 30, 1998). Here, because the PLO is not a corporation but is instead an unincorporated association which has no titular officers, Mr. Qurei is simply not factually an "officer" of the PLO. The PLO does not dispute that unincorporated associations may, as a factual matter, choose to denominate certain persons within those associations as "officers." The PLO, however, has not done so, and the PLO cannot therefore be compelled to produce its "officers" when it has none. *See Karakis*, 2009 U.S. Dist. LEXIS 6356, at *11-12 (where plaintiff sought to depose "co-trustees" of an unincorporated trust without named officers or directors, court considered whether "co-trustees" were "managing agents" of trust).[5]

Plaintiffs contend that Mr. Qurei is an "officer" of the PLO based on his position on the PLO Executive Committee and activities on behalf of the Jerusalem Affairs Department. *See* Exh. 5 at 2. Thus, this Court needs to understand the composition and role of the PLO Executive Committee and whether there is any weight to be given to Mr. Qurei's role in the Jerusalem Affairs Department. The PLO Executive Committee merely serves as the administrative organization of the PLO with responsibility to conduct its business between sessions of the Palestine National Council. *See* Exh. 11 at ¶ 3 (Oct. 18, 2009 Declaration of Yasser Abed Rabbo in connection with the *Saperstein* matter). In addition, Mr. Qurei's duties on the Jerusalem Affairs committee do not grant him any "sole, executive or individual responsibilities to act on

---

[5] Plaintiffs do not allege, in their Notice or in subsequent communications with Defendants, that Mr. Qurei is a "managing agent" of the PLO.

behalf of the PLO or the PLO Executive Committee" or "the power or authority to exercise individually any judgment or discretion on behalf of the PLO." *See* Exh. 12 at ¶¶ 6-8 (Nov. 19, 2009 Supplemental Declaration of Yasser Abed Rabbo in connection with the *Saperstein* matter). Any actions of substance by the PLO regarding the Jerusalem Affairs department would have to be approved, authorized and taken by the PLO Executive Committee as a whole. *Id.* at ¶ 8.[6]

*Glasgow v. Michigan City Police Department*, No. 3:03-CV-676, 2005 U.S. Dist. LEXIS 6025 (N.D. Ind. Apr. 8, 2005), is instructive on the issue of the identification of "officers" under the Federal Rules of Civil Procedure. There, the plaintiff sought to introduce at trial portions of the depositions of six individual police officers, whose titles included "Lieutenant," "Shift Commander," "Corporal," and "Captain." *Id.* at *1-2. The plaintiff argued that such deposition testimony was admissible under former Rule 32(a)(2) (now Rule 32(a)(3)), which then read: "The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose." *Id.* at *3. The plaintiff contended that the police officers were "officers" under the rule. *Id.* at *3-4. After noting that it was unable to find any cases "squarely confronting" the definition of "officer," *id.* at *4, the court concluded: "When read alongside 'director, or managing agent,' 'officer' is best understood to mean a corporate officer such as a CEO or CFO -- a person vested with much

---

[6] Plaintiffs claim in their letter that the *Saperstein* court "found" that Mr. Qurei "heads the Jerusalem Affairs Department of the PLO . . . ." *See* Exh. 5 at 2. Plaintiffs are incorrect. The Magistrate Judge did not find that Mr. Qurei was the "head" of the department, but rather stated that he performed "activities on behalf of the Jerusalem Affairs department . . . ." Exh. 10 at 16.

authority whose deposition testimony can reasonably be treated as representing the interests of the party that employs him or her." *Id.* at *5-6.  Moreover, the court found that, even though these particular police officers "played a role" in the events central to the litigation, that fact was "insufficient to show they possessed the kind of authority required to make them 'officers' as that term is understood in Rule 32(a)(2) (now Rule 32(a)(3))."  *Id.* at *6 (emphasis added).

As noted above, the PLO does not have titled "officers."  While the PLO acknowledges that there are positions within it and the PA that may be analogous to certain corporate offices -- for example, the Chairman of Defendant PLO and the Prime Minister of Defendant PA hold positions that could be analogized to those held by corporate "officers," though they perform very different functions -- Ahmed Qurei's current position can not be analogized in any way to that of a corporate "officer."  He sits on an 18 person committee and has no administrative or day-to-day responsibility over Defendant PLO.  Exh. 11 at ¶ 6; Exh. 12 at ¶¶ 6-8.  Even the loosest of analogies cannot convey upon Mr. Qurei the kind of executive authority possessed by true Rule 30(b)(1) "officers."  Indeed, as the court in *Glasgow* held, an "officer" is best understood as an individual with responsibilities akin to a corporate "CEO or CFO," 2005 U.S. Dist. LEXIS 6025, at *5-6, and Mr. Qurei has no such responsibilities.

Accordingly, because Plaintiffs cannot meet their burden of demonstrating that Mr. Qurei is an "officer" of the PLO, the Protective Order should be entered.

### C.    If Mr. Qurei is Deemed an Officer of the PLO, His Deposition Should Still Not Be Compelled Because He Has No Relevant Knowledge in that Capacity.

Alternatively, assuming *arguendo* that Mr. Qurei's position on the PLO Executive Committee makes him an "officer" of the PLO, his deposition should not be compelled because he possesses no relevant knowledge in that capacity.  "[O]nly a party may be compelled to give testimony pursuant to a simple notice of deposition . . . ."  7 Moore's Federal Practice and

Procedure § 30.03[2] (2010).  Thus, if Mr. Qurei is subject to deposition here, it can only be because he is an "alter ego" of the party PLO, and his deposition therefore ought, in fairness, to be limited to his knowledge as such.

Here, the relevant events took place in the period prior to June 9, 1996 at a time when Mr. Qurei held no office in the PLO, and his current knowledge *qua* the PLO since his August 2009 appointment is irrelevant to the issues in this litigation.  Thus, if Mr. Qurei were to be deposed about what he knows in his capacity as a repository of PLO "knowledge," he could have nothing relevant to say, and for that reason alone his deposition should be disallowed.

Courts have repeatedly limited the scope of depositions of corporate officials to their unique and relevant "corporate" knowledge in similar circumstances.  For example, in *Howard v. States Marine Corp.*, 1 F.R.D. 499, 501 (S.D.N.Y. 1940), the court allowed a deposition of the corporate defendant's vice president, but limited the examination to a single area of inquiry where the plaintiff claimed the vice president alone had knowledge.  *See also United States v. 50.34 Acres of Land,* 12 F.R.D. 440, 442 (E.D.N.Y. 1952) (examination of Chief of the Real Estate Division of the United States Army Corps of Engineers restricted to one specific area of inquiry).  Similarly, in *Tavoulareas v. The Washington Post Co.*, 93 F.R.D. 35, 45 (D.D.C. 1981), the court limited the scope of a former newspaper ombudsman's deposition to his knowledge of the journalistic practices and standards of the newspaper during the time period six months before and after the publication at issue.

Moreover, subjecting foreign governments to U.S. discovery is highly unusual and poses significant foreign policy ramifications.  Where a foreign litigant is involved, U.S. discovery tools should be employed with some restraint and with an eye to minimizing burden and harassment on current and former government officials.  *See Societe Nationale Industrielle*

*Aerospatiale v. United States District Court for the Southern District of Iowa,* 482 U.S. 522, 546 (1987) ("American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position.  Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses.").

Accordingly, if the Court were to require Mr. Qurei to sit for deposition as a representative of the PLO, it should limit his deposition to the relevant knowledge he obtained in that capacity.  And because Mr. Qurei possesses no relevant knowledge as a result of his position on the PLO Executive Committee, the Court should enter a Protective Order precluding Plaintiffs from taking Mr. Qurei's deposition altogether.

## IV.   THERE IS GOOD CAUSE TO ENTER A PROTECTIVE ORDER BECAUSE PLAINTIFFS' PROPOSED DEPOSITION LOCATION AND PROCEDURE ARE INEQUITABLE UNDER THE CIRCUMSTANCES

The foregoing arguments make clear that this Court should not allow the deposition to proceed.  Out of a surplus of caution, Defendants further note that even if Mr. Qurei had information as to relevant, discoverable topics and was properly subject to deposition, this Court would still have to provide protection as to the place and procedure for any such deposition.

Plaintiffs' Notice directs Mr. Qurei to appear for deposition at "9:00 a.m. on September 13, 2010, at the offices of Wistow & Barylick, Inc. 61 Weybosset Street, Providence, RI . . . ." Exh. 3 at 1.  Even assuming *arguendo* that Mr. Qurei is found to be an "officer" of the PLO possessing information relevant to the matters at issue, he should not be forced to travel to Rhode Island to be deposed by Plaintiffs' counsel.  Instead, should this Court decide that Plaintiffs may proceed to take Mr. Qurei's deposition, the Court should appoint a United States judge or special

master to travel to East Jerusalem and preside over the proceedings where Mr. Qurei works and resides.

Plaintiffs have acknowledged that the general rule governing the location of depositions holds that "if the deponent lives a great distance from the deposing party, then the deposition takes place near the location of the out-of-state deponent." *See* Dkt. No. 519 at 15 (citing *O'Sullivan v. Rivera*, 229 F.R.D. 187, 189 (D.N.M. 2004)). Indeed, as the court in *O'Sullivan* makes clear, an "out-of-state deponent is under no obligation to travel to the location where the case was filed for a deposition." *O'Sullivan*, 229 F.R.D. at 188. The *Stone* court believed that the decision is even more compelling with respect to overseas deponents, who should not have to incur the cost and expense to travel for a deposition where "the forum may be remote to the residence and place of business of the corporate official . . . ." *Stone*, 170 F.R.D. at 501. Despite this general rule, Plaintiffs have argued that Defendants should be considered counterclaim plaintiffs because they are seeking to vacate a default judgment. *See* Dkt. No. 519 at 15-16. However, the sole case cited by Plaintiffs for this proposition concerns a defendant bringing a permissive counterclaim. *See Continental Federal Sav. and Loan Ass'n v. Delta Corp. of America*, 71 F.R.D. 697, 700 (W.D. Okl. 1976). Here, Mr. Qurei resides in the Occupied Palestinian Territory (West Bank) and Defendants have not filed a permissive counterclaim of any kind. Defendants here seek to simply litigate their defenses and do not affirmatively wish to avail themselves of this forum in any way.

Additionally, given Mr. Qurei's actual lack of knowledge about any relevant matters, and in the absence of anything suggesting he would have knowledge, Defendants question the motivation behind the Notice of Deposition. Defendants do so in light of the conduct of Mr. Qurei's deposition in the *Saperstein* case. In that case, Mr. Qurei was subjected to multiple lines

of wasteful questions completely irrelevant to the issues in that matter.  *See* Exh. 13 (June 16, 2010 Dep. Tr. of Ahmed Qurei) at 33:4-113:19 (concerning "Samed," a Palestinian corporation that was never named in any theory of liability ever advanced by plaintiff); 195:24-199:5 (concerning the group that attacked Israeli athletes at the 1972 Olympics); 220:8-232:22 (concerning Mr. Qurei's views on Israel's policies in East Jerusalem).  Given that Mr. Qurei did not hold a position in the PLO at the time of the Ungar shootings and only became Prime Minister of the PA after the Court affirmed the order granting Plaintiffs' default judgment, there are no conceivably relevant questions that can be put to him in this case.  Therefore, it would seem the real motivation in seeking Mr. Qurei's deposition is to attempt to precipitate defaulting conduct now, the absence of relevant evidence from him notwithstanding.

Given this history and background, Defendant PLO therefore respectfully requests that, should this Court decide to allow Plaintiffs to depose Mr. Qurei, they do so in East Jerusalem with a United States judge or special master presiding over the deposition to ensure that Mr. Qurei is examined concerning only matters deemed relevant by this Court and treated with respect.  *See, e.g.*, *Nault's Auto. Sales, Inc. v. Am. Honda Motor Co.*, 148 F.R.D. 25, 40 (D.N.H. 1993) (appointing a commissioner to preside over a disputed deposition with instructions "to return to the Court if any disputes or problems arose").  The justification and rationale for this request becomes clear when the Court considers Plaintiffs' most recent filing, which seeks a second deposition of Defendant PA Prime Minister Salam Fayyad despite the fact that he was exhaustively examined, often with unnecessarily repetitive questions, for nearly seven hours.  *See* Dkt. Nos. 518-519; *see also* Exh. 14 (July 28, 2010 Dep. Tr. of Salam Fayyad) at 41:25-42:15; 135:2-13; 283:14-284:12; 350:6-351:8; 373:5-23; 387:5-8.  The appointment of a United

States judge or special master to preside over this deposition would also allow the parties to avoid potential post-deposition litigation.

Accordingly, should this Court decide that the PLO must produce Mr. Qurei for deposition, the Court should order that the deposition occur in East Jerusalem and be presided over by a judge or special master.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Entry of a Protective Order Regarding Plaintiffs' Notice of Taking the Deposition of Ahmed Qurei should be granted.

Respectfully submitted,

Dated: September 9, 2010

 /s/ Mark J. Rochon
Mark J. Rochon (D.C. Bar #376042)
Admitted *pro hac vice*
Richard A. Hibey (D.C. Bar #74823)
Admitted *pro hac vice*
Brian A. Hill (D.C. Bar #456086)
Admitted *pro hac vice*
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
mrochon@milchev.com
mailto:rhibey@milchev.com
bhill@milchev.com

Deming E. Sherman (#1138)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, Rhode Island 02903
Tel. (401) 274-9200
Fax. (401) 276-6611
dsherman@eapdlaw.com

*Attorneys for the Palestinian Authority and the Palestine Liberation Organization*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 9th day of September 2010, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to:

>David J. Strachman
>McIntyre, Tate & Lynch, LLP
>321 South Main Street, Suite 400
>Providence, RI  02903
>Djs@mtlhlaw.com
>
>Max Wistow
>Wistow and Barylick Incorporated
>61 Weybosset Street
>Providence, RI 02903
>mwistow@wistbar.com
>
>*Attorneys for Plaintiffs*

>/s/ Mark J. Rochon