# EXHIBIT 5

798192.1

**WISTOW & BARYLICK**
INCORPORATED
ATTORNEYS AT LAW
61 WEYBOSSET STREET
PROVIDENCE, RHODE ISLAND 02903

MAX WISTOW
JOHN P. BARYLICK
STEPHEN P. SHEEHAN
A. PETER LOVELEY
MICHAEL J. STEVENSON
MICHAEL R. BOTTARO
BENJAMIN G. LEDSHAM

TELEPHONE
AREA CODE 401
831-2700

FAX
272-9752

E-MAIL
mail@wistbar.com

September 2, 2010

VIA ELECTRONIC MAIL

Mark J. Rochon, Esq.
Miller & Chevalier Chartered
655 Fifteenth Street, NW
Suite 900
Washington, DC 20005-5701

Deming E. Sherman, Esq.
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Re: *Ungar v. Palestinian Authority*, 00-105L (D.R.I.)

Counsel,

    I write in response to your letter of August 30, 2010, regarding the deposition of Ahmed Qurei.

    Mr. Qurei's importance as a witness is obvious: he was the Prime Minister of the Palestinian Authority (i.e. second-in-command after Arafat and Abbas) between October 2003 and January 2006, which encompasses both the period of the defendants' intentional default and the first 18 months after the default. He is therefore a key witness (if not *the* key witness) regarding defendants' decision to default and their subsequent failure to move to vacate timely, among other relevant topics. The PA/PLO's own joint claims in this case make clear that the decisions to default were based on identical reasoning as to the PA/PLO and were joint decisions. Just one, out of many examples:

> The Defendants' mindset throughout the course of this litigation will be another important factor for this Court to consider in determining whether extraordinary circumstances exist sufficient to warrant vacatur. At the time of the default in this case, Defendants were understandably perplexed about the ability of the United

**WISTOW & BARYLICK**
INCORPORATED

PAGE NO. 2

Mark J. Rochon, Esq.
Deming E. Sherman, Esq.
September 2, 2010

> States courts to hale them into Court .... From
> Defendants' view, it seemed illogical that American courts
> could properly adjudicate claims arising from a long-
> standing and on-going foreign conflict. ...

Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 31-32. *See also* Defendants' Reply brief at 5 (referring to "the procedural missteps committed by the PA/PLO in this litigation.")

You and your clients have put into issue such subjective matters as "mindset" and "perplexity" and have urged the court to take such matters into consideration.

Judge Lagueux, on April 1, 2010, indicated that he would hold an evidentiary hearing to result in a determination which would include "what the facts are concerning the deliberate decision to default and the factual circumstances surrounding that matter."

The three most important PA/PLO leaders in the relevant period were Arafat, Abbas, and Qurei.

Thus, your letter of August 30th seems very much at odds with your earlier claims to the court regarding the willingness of the PA/PLO to fully participate in the Rhode Island proceedings: "Defendants will participate fully in this and other litigation, in a cooperative manner, including complete participation in the discovery process." Fayyad Declaration at ¶ 13. We suspect that you may be seeking to relitigate the issues already decided in the *Saperstein* matter in an attempt to slow down these proceedings and delay the January, 2011 hearing.

In *Saperstein* the defendants: (a) submitted a sworn declaration asserting that Qurei would not attend a deposition and on that ground sought to excuse them from producing him, when in fact he did agree to be and was deposed; (b) asserted in that same declaration that Qurei is not an officer of the PLO and holds no special position in the PLO Executive Committee when in fact, as the *Saperstein* court found, he heads the Jerusalem Affairs Department of the PLO and is an officer of the PLO; (c) asserted, contradictorily, that Qurei is so senior an officer of the PLO that he should not be required to sit for a deposition; and (d) when given the opportunity by the *Saperstein* court to produce a <u>less</u> senior officer, produced Prime Minister Fayyad (who is far senior) in Qurei's stead, a maneuver which the *Saperstein* court found "specious." The *Saperstein* court also found that Fayyad was not an adequate, knowledgeable substitute for Qurei, and compelled defendants to produce Qurei for deposition.

**WISTOW & BARYLICK**
INCORPORATED

PAGE NO. 3

Mark J. Rochon, Esq.
Deming E. Sherman, Esq.
September 2, 2010

As a result of all the artificial impediments created by defendants, plaintiffs were forced to seek court intervention on multiple occasions. The result was Qurei's deposition in *Saperstein*, which was noticed in September 2009, took place only in June 2010. In the *Ungar* case, as you well know, discovery closes in November, and we are scheduled for evidentiary hearing in January, 2011. Consequently, we will vigorously oppose any attempt on your part to reprise any of this dilatory conduct in this case.

Your observation that Mr. Qurei was not mentioned in plaintiffs' answers to defendants' interrogatories or in plaintiffs' opposition to defendants' motion to vacate makes no sense to us, since the interrogatories did not request plaintiffs to identify "person[s] with discoverable knowledge" and since plaintiffs had no reason or cause to identify such persons in their opposition, and indeed did not identify any such persons.

Your accusation that the plaintiffs have in the past failed "to engage in a meaningful meet and confer teleconference" is simply not correct. In fact, we spent an inordinate amount of time, during two extended phone conferences, trying to reach accommodations only to be told, at the end of the day, - as to issues on which we could not agree - that your positions were correct and ours wrong.

Indeed, we stand ready, as we consistently have in the past, to meet and confer about the Qurei deposition at your first convenience.

Please provide a date and time for such a teleconference.

Very truly yours,

Max Wistow

cc:   All counsel of record