# EXHIBIT 7

798192.1



MILLER
CHEVALIER

Mark J. Rochon
Member
(202) 626-5819
mrochon@milchev.com

September 3, 2010

**Via E-Mail**

David J. Strachman, Esq.
McIntyre, Tate & Lynch
321 South Main Street
Suite 400
Providence, RI 02903

Max Wistow, Esq.
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903

Re:   *Estate of Yaron Ungar v. the Palestinian Authority*, 00cv150-L (D.R.I.)

Counsel:

I am responding to your letter dated September 2, 2010, which was in response to my letter dated August 30, 2010 regarding the notice of deposition that Plaintiffs issued on August 27, 2010 for the deposition of Ahmed Qurei. I will address several of your contentions, as follows:

1. In your letter, you make the following baseless assertion:

Thus, your letter of August 30th seems very much at odds with your earlier claims to the court regarding the willingness of the PA/PLO to fully participate in the Rhode Island proceedings: "Defendants will participate fully in this and other litigation, in a cooperative manner, including complete participation in the discovery process." Fayyad Declaration at ¶ 13. We suspect that you may be seeking to relitigate the issues already decided in the *Saperstein* matter in an attempt to slow down these proceedings and delay the January, 2011 hearing.

Defendants have consistently stated our position that we seek the earliest opportunity possible to present whatever evidence relates to the issues properly before the Court that will enable the Court to make a new determination on Defendants' Motion to Vacate Default Judgment consistent with the First Circuit's recent opinion. We believe that Plaintiffs' attempt to expand the discovery process for that hearing well beyond the parameters set by the First

Miller & Chevalier Chartered

655 Fifteenth Street, N.W., Suite 900 · Washington, D.C. 20005-5701 · 202-626-5800 · 202-626-5801 FAX · millerchevalier.com



## MILLER
## CHEVALIER

David J. Strachman, Esq.
Max Wistow, Esq.
September 3, 2010
Page 2

Circuit and the applicable caselaw is absolutely inappropriate and intended simply to manufacture potential instances of discovery disagreements and to frustrate the Court's responsibilities at the January 18, 2011 hearing.

The Plaintiffs' recent issuance of 207 document requests, abusive Rule 30(b)(6) notices to the Palestinian Authority and the Palestine Liberation Organization, and a notice of deposition for Ahmed Qurei make clear that the Plaintiffs are not interested in seeking legitimate discovery in aid of the January 18, 2011 hearing, but instead seek to make it impossible for the parties to complete discovery in the 11 weeks remaining before the Court's November 19 discovery cut-off. Defendants are preparing to present their evidence in support of their Motion to Vacate Default Judgment, and the Plaintiffs should likewise be preparing to support the contentions they have made in opposing vacatur. However, the "discovery" Plaintiffs purportedly seek now is clearly a distraction from the issues properly before the Court.

The Court authorized pre-hearing discovery in its Pre-Hearing Order of June 1. Having waited approximately three months to issue the bulk of their discovery requests in this matter, Plaintiffs have little standing to accuse Defendants of trying to delay the January 18, 2011 hearing. By delaying their issuance of discovery requests, and then propounding unreasonably broad and inappropriate discovery requests, it is clear that Plaintiffs, rather than Defendants, are trying to frustrate the true and proper purposes of the January 18, 2011 hearing.

2.    With respect to your August 27, 2010 notice for the deposition of Ahmed Qurei, you make the following assertions:

Mr. Qurei's importance as a witness is obvious: he was the Prime Minister of the Palestinian Authority (i.e. second-in-command after Arafat and Abbas) between October 2003 and January 2006, which encompasses both the period of the defendants' intentional default and the first 18 months after the default. He is therefore a key witness (if not the key witness) regarding defendants' decision to default and their subsequent failure to move to vacate timely, among other relevant topics. The PA/PLO's own joint
\*        \*        \*        \*        \*
The three most important PA/PLO leaders in the relevant period were Arafat, Abbas, and Qurei.

Apparently, the sole basis on which Plaintiffs seek to depose Mr. Qurei relates to "defendants' decision to default" and defendants' alleged "failure to move to vacate timely." The facts clearly indicate that any deposition of Mr. Qurei is not reasonably calculated to lead to



MILLER
CHEVALIER

David J. Strachman, Esq.
Max Wistow, Esq.
September 3, 2010
Page 3

the discovery of any evidence that would properly be admissible at the January 18, 2011 hearing. As you know, the Defendants readily concede that the PA/PLO's decision to default was intentional and willful and that, if the only factor relevant to the PA/PLO's entitlement to Rule 60(b)(6) relief was the willfulness of the default, Defendants would not be entitled to such relief. The First Circuit, however, held that even though the default was willful, other factors may weigh in favor of vacatur and must be considered by the district court. Conducting discovery on a factor the Defendants have conceded is a waste of the parties' and the Court's time and resources, and Defendants will oppose such discovery. As to timeliness, the Plaintiffs previously argued that the PA/PLO's motion to vacate was not timely, and that argument was not accepted by either the district court or the First Circuit. Thus, the issues as to which you claim Mr. Qurei is a "key witness" are not properly before the Court at the January 2011 hearing, and therefore are not the proper subject of pre-hearing discovery.

In any event, Mr. Qurei became prime minister of the Palestinian Authority six months after Magistrate Judge Martin granted Plaintiffs' Motion to Enter Default and directed the clerk to enter default against the Defendants on April 18, 2003. Moreover, it is our understanding that, between October 2003 and January 2006 (when Mr. Qurei ceased being Prime Minister of the Palestinian Authority), Mr. Qurei had no responsibility or authority regarding the conduct of the *Ungar* litigation. For example, he did not have any responsibility for determining or deciding whether the Palestinian Authority or the Palestine Liberation Organization would seek to vacate any default or default judgment entered by the Court. For these additional reasons, the purported basis for Plaintiffs' notice of deposition for Mr. Qurei is invalid.

3.      Regarding the attempts by your colleagues, including Mordechai Haller and Nitsana Darshan Leitner, to obtain the deposition testimony of Mr. Qurei in the case of *Moshe Saperstein v. The Palestinian Authority, et al.* (S.D. Fla.), you mischaracterize or partially recount the record, as follows:

Miller & Chevalier Chartered



MILLER
CHEVALIER

David J. Strachman, Esq.
Max Wistow, Esq.
September 3, 2010
Page 4

In *Saperstein* the defendants: (a) submitted a sworn declaration asserting that Qurei would not attend a deposition and on that ground sought to excuse them from producing him, when in fact he did agree to be and was deposed; (b) asserted in that same declaration that Qurei is not an officer of the PLO and holds no special position in the PLO Executive Committee when in fact, as the *Saperstein* court found, he heads the Jerusalem Affairs Department of the PLO and is an officer of the PLO; (c) asserted, contradictorily, that Qurei is so senior an officer of the PLO that he should not be required to sit for a deposition; and (d) when given the opportunity by the *Saperstein* court to produce a less senior officer, produced Prime Minister Fayyad (who is far senior) in Qurei's stead, a maneuver which the *Saperstein* court found "specious." The *Saperstein* court also found that Fayyad was not an adequate, knowledgeable substitute for Qurei, and compelled defendants to produce Qurei for deposition.

Leaving aside your mischaracterizations of the *Saperstein* record, please note that Defendants repeatedly argued that, as here, the Plaintiff in *Saperstein* was improperly seeking the deposition of Mr. Qurei in the hope that Mr. Qurei would not agree to sit for deposition and, alternatively, if he sat, to subject him to such improper questioning that he would refuse to testify. In fact, when Mr. Qurei ultimately sat for his deposition on June 17, 2010, Defendants' worst fears materialized when, as expected, plaintiff's counsel in *Saperstein* proceeded to pose every potential inflammatory question possible to Mr. Qurei in an attempt to induce his refusal to testify and failed to ask him any questions intended to elicit admissible testimony. It is abundantly clear to Defendants in this case that the concerns Defendants first expressed over a year ago to the *Saperstein* court regarding the notice of deposition of Ahmed Qurei apply with equal or greater force here.

In light of the foregoing, we ask you again to reconsider the issuance of your notice of deposition of Ahmed Qurei. Leaving aside whether the Defendants' decision-making regarding their prior default in this case is relevant for the January 18, 2011 hearing, if you know of any facts indicating that Mr. Qurei did, in fact, have a role in formulating any such decisions, please let us know, because your briefing on Defendants' Motion to Vacate and your initial and supplemental discovery responses provide no such information. We remain willing to engage in meet and confer discussions with Plaintiffs if there is such information to address and consider.

MILLER
CHEVALIER

David J. Strachman, Esq.
Max Wistow, Esq.
September 3, 2010
Page 5

     4.    In addressing the issue of Mr. Qurei's deposition, you make the following statement:

    Your observation that Mr. Qurei was not mentioned in plaintiffs' answers to defendants' interrogatories or in plaintiffs' opposition to defendants' motion to vacate makes no sense to us, since the interrogatories did not request plaintiffs to identify "person[s] with discoverable knowledge" and since plaintiffs had no reason or cause to identify such persons in their opposition, and indeed did not identify any such persons.

    This statement is very troubling and suggests quite clearly that Plaintiffs have deliberately failed to comply with their obligations under Fed. R. Civ. P. 33. As you know, Defendants issued interrogatories to Plaintiffs on July 6, 2010, which required Plaintiffs to "state the factual basis" for specific contentions that Plaintiff have made in Opposition to Defendants' Motion to Vacate Default or intend to make for purposes of the January 18, 2011 hearing. The phrase, "state the factual basis," was specifically defined in paragraph 12 of the General Definitions in Defendants' First Set of Interrogatories to require Plaintiffs to "identify all persons who you know or believe have knowledge or information relating to the topic, contention, allegation, subject or issue" described in the Interrogatories. While your letter regarding the two limited issues as to which you contend Mr. Qurei is "the key witness" demonstrates that Plaintiffs do not view Mr. Qurei as a knowledgeable witness regarding any of the contentions referenced in Defendants' Interrogatory Nos. 1-18, your argument that those Interrogatories did not require Plaintiffs to identify the persons who Plaintiffs know or believe have discoverable knowledge regarding those contentions is clearly wrong. Indeed, it conclusively establishes that Plaintiffs failed to comply with their obligations under Rule 33 in serving their August 10, 2010 answers to Plaintiffs' First Set of Interrogatories and August 26, 2010 supplemental answers to Plaintiffs' First Set of Interrogatories. Defendants are left to wonder what other "key witnesses" Plaintiffs have deliberately chosen to withhold from their discovery responses in order to issue surprise notices of deposition later in the proceedings or to call surprise witnesses for the January 18, 2011 hearing.

     5.    With respect to the scope of the January 18, 2011 hearing, you make the following assertion in your letter:

    Judge Lagueux, on April 1, 2010, indicated that he would hold an evidentiary hearing to result in a determination which would include "what the facts are concerning the deliberate decision to default and the factual circumstances surrounding that matter."

    It seems clear, both from your letter and from the unreasonably broad scope of Plaintiffs' discovery requests, that the parties have a very different understanding of what issues are



David J. Strachman, Esq.
Max Wistow, Esq.
September 3, 2010
Page 6

properly before the Court for the January 18, 2011 hearing, what evidence the Court will admit regarding those issues and what discovery is reasonably calculated to lead to the discovery of such admissible evidence. Accordingly, it seems advisable, and most efficient, for the parties to request a discovery conference before Judge Lagueux or Magistrate Judge Martin to decide what the proper scope of discovery should be with the limited time permitted by the Court for discovery before the January 18, 2011 hearing. Please let us know whether you will agree to such a proposal.

      6.     Finally, with respect to the meet and confer teleconferences on discovery issues that the parties have held so far in this case, you state as follows:

     Your accusation that the plaintiffs have in the past failed "to engage in a meaningful meet and confer teleconference" is simply not correct. In fact, we spent an inordinate amount of time, during two extended phone conferences, trying to reach accommodations only to be told, at the end of the day, - as to issues on which we could not agree - that your positions were correct and ours wrong.

     Your characterization of the Plaintiffs' participation in meet and confer teleconferences is quite myopic. Do you forget the meet and confer teleconference we had on August 17, 2010 (attended by attorneys Laura Ferguson, Brian Hill and Erik Nielsen on behalf of Defendants) in which you accused defense counsel of being "f___ing liars" and then proceeded to hang up on us? Albeit the most extreme example of your approach to meet and confer teleconferences, that example demonstrates that, contrary to your assertion, Plaintiffs have not undertaken reasonable efforts to "reach accommodations." Rather, you have been combative, belligerent and uncooperative at every turn. We hope and expect that your approach to discovery will change, particularly if and as the Court provides its guidance regarding the proper scope and extent of pre-hearing discovery.



MILLER
CHEVALIER

David J. Strachman, Esq.
Max Wistow, Esq.
September 3, 2010
Page 7

Please let me know if you have any questions regarding the foregoing or would like to engage in a renewed effort to address and resolve the pending discovery issues.

Sincerely,

Mark J. Rochon

cc:     All Counsel of Record