c. All documents relating to, referring to and/or evidencing the "considerable obstacles" that the PA faced in responding to U.S. litigation from the time of Arafat's death until December 2007.[57]

d. All documents relating to, referring to and/or evidencing the "considerable obstacles" that the PLO faced in responding to U.S. litigation from the time of Arafat's death until December 2007.[58]

e. All documents relating to, referring to and/or evidencing the specific organizational and institutional structures and lines of authority the PA has developed to adequately respond to this litigation, as well as how such institutional structures and lines of authority differ from earlier institutional structures and lines of authority.[59]

f. All documents relating to, referring to and/or evidencing the specific organizational and institutional structures and lines of authority the PLO has developed to adequately respond to this litigation, as well as how such institutional structures and lines of authority differ from earlier institutional structures and lines of authority.[60]

g. All documents relating to, referring to and/or evidencing the PA's "misguided" reaction to this litigation stemming from its lack of institutional mechanisms and lack of sophistication.[61]

---

[57] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 16 ("The attached declaration of Mr. Abdel-Rahman, former Secretary-General of the Palestinian Authority Cabinet of Ministers and political advisor to President Abbas, describes the considerable obstacles that the Post-Arafat government faced in responding to the United States litigation during that time period.").

[58] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 16 ("The attached declaration of Mr. Abdel-Rahman, former Secretary-General of the Palestinian Authority Cabinet of Ministers and political advisor to President Abbas, describes the considerable obstacles that the Post-Arafat government faced in responding to the United States litigation during that time period.").

[59] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 16 ("It was only after high-level communications between President Abbas and the State Department, and President Abbas' delegation of authority for the litigation to Prime Minister Fayyad, that the PA developed the institutional structure and lines of authority necessary to adequately respond to the litigation.").

[60] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 16 ("It was only after high-level communications between President Abbas and the State Department, and President Abbas' delegation of authority for the litigation to Prime Minister Fayyad, that the PA developed the institutional structure and lines of authority necessary to adequately respond to the litigation.").

[61] See 9/14/2009 Brief for Appellants at 14 ("The PA/PLO's lack of an institutional mechanism for responding to overseas litigation and discovery as well as their lack of sophistication about the extraterritorial scope of U.S. jurisdiction contributed to the misguided reaction.").

h. All documents relating to, referring to and/or evidencing the PLO's "misguided" reaction to this litigation stemming from its lack of institutional mechanisms and lack of sophistication.[62]

i. All documents relating to, referring to and/or evidencing the involvement, duties, responsibilities and efforts of Mahmoud Abbas to gain information about and supervise U.S. litigation against the PA and/or PLO, from March 2000 until December 2007.

j. All documents relating to, referring to and/or evidencing the involvement, duties, responsibilities and efforts of Ahmed Qurei to gain information about and supervise U.S. litigation against the PA and/or PLO, from March 2000 until December 2007.

k. All documents relating to, referring to and/or evidencing the involvement, duties, responsibilities and efforts of Salam Fayyad to gain information about and supervise U.S. litigation against the PA and/or PLO, from March 2000 until December 2007.

l. All documents relating to, referring to and/or evidencing the involvement, duties, responsibilities and efforts of the persons who served as the PA's Minister of Justice from 2000 - present to gain information about and supervise U.S. litigation against the PA and/or PLO, from March 2000 until December 2007.

m. All documents relating to, referring to and/or evidencing the involvement, duties, responsibilities and efforts of the persons who served as the PA's Prosecutor General from 2000 - present to gain information about and supervise U.S. litigation against the PA and/or PLO, from March 2000 until December 2007.

n. All documents relating to, referring to and/or evidencing the involvement, duties, responsibilities and efforts of the persons who served as the PA's Attorney General from 2000 - present to gain information about and supervise U.S. litigation against the PA and/or PLO, from March 2000 until December 2007.

o. All documents relating to, referring to and/or evidencing the "Other pressing problems" facing the PA that complicated the creation of an organizational entity for defending foreign lawsuits brought against the PA.[63]

---

[62] See 9/14/2009 Brief for Appellants at 14 ("The PA/PLO's lack of an institutional mechanism for responding to overseas litigation and discovery as well as their lack of sophistication about the extraterritorial scope of U.S. jurisdiction contributed to the misguided reaction.").

[63] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 34 ("With the support of President Abbas, Dr. Husseini began the process of creating an organizational entity within the President's Office responsible for defending domestic and foreign lawsuits brought against the Palestinian government, but it was a complicated task compounded by both a lack of familiarity in the Palestinian legal

17

p. All documents relating to, referring to and/or evidencing the "Other pressing problems" facing the PLO that complicated the creation of an organizational entity within responsible for defending foreign lawsuits brought against the PLO.[64]

q. All documents relating to, referring to and/or evidencing the difficulty of PA decision-makers in understanding the complete picture of the litigation and the importance of full and complete participation in the process; all documents relating to, referring to and/or evidencing the any efforts made to understand the importance of full and complete participation in the process; and all documents relating to, referring to and/or evidencing the any discussions or communications with counsel concerning the importance of full and complete participation in the process.[65]

r. All documents relating to, referring to and/or evidencing the difficulty of PLO decision-makers in understanding the complete picture of the litigation and the importance of full and complete participation in the process; all documents relating to, referring to and/or evidencing the any efforts made to understand the importance of full and complete participation in the process; and all documents relating to, referring to and/or evidencing the any discussions or communications with counsel concerning the importance of full and complete participation in the process.[66]

---

community with the American legal system, and by the fact that the Palestinian government had many other pressing problems to address.").

[64] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 34 ("With the support of President Abbas, Dr. Husseini began the process of creating an organizational entity within the President's Office responsible for defending domestic and foreign lawsuits brought against the Palestinian government, but it was a complicated task compounded by both a lack of familiarity in the Palestinian legal community with the American legal system, and by the fact that the Palestinian government had many other pressing problems to address.").

[65] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 34 ("These isolated decision-makers had difficulty understanding the complete picture of the litigation, the importance of full and complete participation in the process, and the basis for being haled into U.S. courts to litigate claims involving attacks in the Middle East that the PA and PLO did not commit.").

[66] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 34 ("These isolated decision-makers had difficulty understanding the complete picture of the litigation, the importance of full and complete participation in the process, and the basis for being haled into U.S. courts to litigate claims involving attacks in the Middle East that the PA and PLO did not commit.").

    s. All documents relating to, referring to and/or evidencing the conflicting instructions and confusion caused by the PA's failure to establish lines of authority for handling foreign litigation.[67]

    t. All documents relating to, referring to and/or evidencing the conflicting instructions and confusion caused by the PLO's failure to establish lines of authority for handling foreign litigation.[68]

    u. All documents, from any time prior to December 2007, relating to, referring to, evidencing, containing and/or constituting policies, procedures and/or guidelines for the handling of lawsuits brought against the PA.

    v. All documents, from any time prior to December 2007, relating to, referring to, evidencing, containing and/or constituting policies, procedures and/or guidelines for the handling of lawsuits brought against the PLO.

10. **Regarding the Palestine Investment Fund:**

    a. All documents relating to, referring to and/or evidencing the relationship between the Palestinian Investment Fund and the PA.[69]

    b. All documents relating to, referring to and/or evidencing the PA's knowledge of, and when the PA first became aware of, the 2006 Judgment.

    c. All documents relating to, referring to and/or evidencing the transfer and/or payment of any funds, monies or assets from the Palestine Investment Fund to the PA from the date the 2006 Judgment was entered until the present day, including all documents relating to, referring to and/or evidencing the amounts of such transfers and/or payments.

    d. All documents relating to, referring to and/or evidencing all decisions to carry out the transfers and/or payments referred to in the previous subsection (c), including all documents relating to, referring to and/or evidencing the name, title, and present whereabouts of any person involved in making, participating in and/or authorizing such transfers and/or payments.

    e. All documents constituting the Palestine Investment Fund's articles of association and/or by-laws at any time.

---

[67] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 35 ("As Mr. Abdel-Rahman notes, '[t]he failure to establish such lines of authority had created conflicting instructions and confusion in the litigation, to the Defendants' detriment.'").

[68] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 35 ("As Mr. Abdel-Rahman notes, '[t]he failure to establish such lines of authority had created conflicting instructions and confusion in the litigation, to the Defendants' detriment.'").

[69] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 44.

    f. All documents relating to, referring to and/or evidencing the Palestine Investment Fund's governing structure and decision-making procedures.

    g. All documents relating to, referring to and/or evidencing any efforts to change the articles of association of the Palestine Investment Fund at any time subsequent to the date that the 2006 Judgment was entered, including all documents relating to, referring to and/or evidencing the name, title, and present whereabouts of any person involved in making, participating in and/or authorizing such changes. [70]

    h. All documents relating to, referring to and/or evidencing the impairment of the PA's ability to carry on its governmental function caused by the freezing of assets of the PA and of various "independent entities", including but not limited to the Palestine Investment Fund. [71]

    i. All documents relating to, referring to and/or evidencing erosion of support for the PA's leadership and compromise of the efforts of the PA to achieve economic stability caused by the turning over of ownership of the Palestine Investment Fund. [72]

    j. All documents relating to, referring to and/or evidencing all actions carried by Mohammed Mustafa on behalf of the PA and all services rendered by Mohammed Mustafa to or on behalf of the PA between July 2004 and the present day.

    k. Authentic copies of all papers, pleadings, affidavits and declarations submitted by the PA and/or PLO in the Israeli Proceedings, at any time, that reference the Palestine Investment Fund.

---

[70] See Declaration of Robert J. Tolchin, Ex. C to Plaintiffs-Judgment Creditors' Memorandum in Opposition to Defendants' Motion for Relief from Default Judgment, at ¶ 8 ("In the Connecticut case, attorneys purporting to act on behalf of the PIF (but in fact acting on behalf of the former CEO of the PIF, who is none other than the current Economic Advisor to the PA) appeared and advised the Court that in early 2007 the PA had purported to make self-serving changes to the PIF's bylaws in a post-hoc effort to defeat the effect of the judgment entered by this Court in September 2006 on the Ungars' creditor's bill conveying ownership of the PIF to the Ungars.").

[71] See June 18, 2005 letter from Salam Fayyad to Condoleezza Rice at 4 ("As set forth above, the enforcement actions taken by Plaintiffs and their supporters in the *Ungar* Case have already resulted in the freezing of numerous assets of both the PNA and various independent entities that are *not* subject to the District Court's Preliminary Injunction. The freezing of these assets poses an imminent threat to the continuing operation of critical institutions on which the Palestinian people depend for a functioning civil society. In addition, it also has significantly impaired the ability of the PNA to carry on its governmental function and, in fact, threatens to bankrupt the PNA.").

[72] See 3/6/08 Defendants' Reply to Plaintiffs' Objection to Motion for Relief from Default Judgment at 29 ("If the U.S. courts turn over the pension fund assets of Palestinian government workers and the ownership of the Palestine Investment Fund in satisfaction of this judgment, support for the moderate leadership of the PA will be severely eroded and its efforts to achieve economic stability compromised.").

l. All documents relating to, referring to and/or evidencing all legal actions and/or proceedings brought against Orascom Telecom Holding S.A.E. by persons purporting to represent the Palestine Investment Fund, including without limitation all such actions and/or proceeding brought in Egypt.

m. Authentic copies of all papers and pleadings submitted by any party to legal actions and/or proceedings brought against Orascom Telecom Holding S.A.E. by persons purporting to represent the Palestine Investment Fund, and authentic copies of all transcripts, orders and decisions from such proceedings.

11. **Regarding the Defendants' ability to participate in discovery**

a. All documents relating to, referring to and/or evidencing the PA's difficulties finding documents and responding to requests for discovery between 2000 and December 2007.[73]

b. All documents relating to, referring to and/or evidencing the PLO's difficulties finding documents and responding to requests for discovery between 2000 and December 2007.[74]

c. All documents relating to, referring to and/or evidencing the present ability of the PA to produce documents and respond to discovery requests, and how its current ability differs from that which obtained in 2000, 2001, 2002, 2003, and 2004.[75]

d. All documents relating to, referring to and/or evidencing the present ability of the PLO to produce documents and respond to discovery requests, and how its current ability differs from that which obtained in 2000, 2001, 2002, 2003, and 2004.[76]

---

[73] See 1/27/03 Al-Kidwa letter to Judge Martin, Ex. L to Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment, at 1 ("Government offices and officials cannot work effectively or organize even on matters of extreme urgency. It has been impossible under such circumstances to locate people who could seek and find documents, who could gather information and prepare answers to interrogatories and could respond to requests for admissions.").

[74] See 1/27/03 Al-Kidwa letter to Judge Martin, Ex. L to Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment, at 1 ("Government offices and officials cannot work effectively or organize even on matters of extreme urgency. It has been impossible under such circumstances to locate people who could seek and find documents, who could gather information and prepare answers to interrogatories and could respond to requests for admissions.").

[75] See 1/27/03 Al-Kidwa letter to Judge Martin, Ex. L to Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment, at 2 ("Only the achievement of a level of stability, free from the threat of daily attacks in our territory can make it possible to free personnel to gather the materials and information needed to proceed with a defense.").

[76] See 1/27/03 Al-Kidwa letter to Judge Martin, Ex. L to Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment, at 2 ("Only the achievement of a level of stability, free from the threat of daily attacks in our territory can make it possible to free personnel to gather the materials and information needed to proceed with a defense.").

  e. All documents relating to, referring to and/or evidencing the nature, type, contents and identity of the PA's records in Gaza that no are longer accessible.[77]

  f. All documents relating to, referring to and/or evidencing the nature, type, contents and identity of the PLO's records in Gaza that no are longer accessible.[78]

  g. All documents relating to, referring to and/or evidencing the names, titles, and present whereabouts of any individuals involved in preparing responses and answers to all discovery requests propounded by Plaintiffs in this matter subsequent to June 1, 2010.

12. **Regarding the Defendants' relationship, interactions, and discussions with their counsel:**

  a. All documents relating to, referring to, evidencing and/or constituting communications between the Defendants and their U.S. lawyers between Arafat's death and the filing of the Motion in December 2007.

  b. All documents relating to, referring to and/or evidencing Defendants removal of Ramsey Clark as counsel and the reasons therefor.

  c. All documents relating to, referring to and/or evidencing any actions taken by Defendants between July 2004 and April 2007 to find new counsel to represent them in the instant action and/or in any other actions brought against them in the United States.

  d. All documents relating to, referring to and/or evidencing any and all reasons for the delay in filing the Motion between July 2004 and December 2007.

  e. All documents relating to, referring to and/or evidencing the "substantial" efforts of the Defendants' counsel to vacate all defaults against the PA between May 2007 and December 2007.[79]

---

[77] See Defendants' 2/15/2008 Motion to Dismiss in Parsons v. Palestinian Authority, No 07-1847 (JR) (D.D.C.) ("Gaza is now inaccessible for the purpose of conducting discovery or otherwise gathering facts and information that may be relevant to defending against [the Parsons] Plaintiffs' claims in this case [Parsons v. PA]. The dramatically changed circumstances in Gaza in 2007 will result in immense prejudice to Defendants if this litigation is permitted to proceed.").

[78] See Defendants' 2/15/2008 Motion to Dismiss in Parsons v. Palestinian Authority, No 07-1847 (JR) (D.D.C.) ("Gaza is now inaccessible for the purpose of conducting discovery or otherwise gathering facts and information that may be relevant to defending against [the Parsons] Plaintiffs' claims in this case [Parsons v. PA]. The dramatically changed circumstances in Gaza in 2007 will result in immense prejudice to Defendants if this litigation is permitted to proceed.").

[79] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 46 ("New counsel was retained in May 2007, and immediately began the task of moving to vacate defaults and default judgments in various courts around the country. At the same time, counsel was required to defend on-going

  f. All documents relating to, referring to and/or evidencing the handling of the "proliferation of lawsuits" and enforcement actions following entry of the Judgment, including all documents relating to, referring to and/or evidencing assignment of counsel to represent the Defendants in those actions.[80]

  g. All documents relating to, referring to and/or evidencing the Defendants' understanding reached with Miller & Chevalier concerning its active defense and participation in discovery.[81]

  h. All documents relating to, referring to and/or evidencing the reason or reasons that the Defendants engaged in proceedings related to proof of damages in *Biton v. Palestinian Authority* and *Gilmore v. Palestinian Authority* before filing motions to vacate default in those actions.

13. **Regarding related or other cases:**

  a. All documents relating to, referring to and/or evidencing when the PA first became aware of the Creditor's Bill proceeding in this case and what actions the PA took as a result of that awareness.[82]

  b. All documents relating to, referring to and/or evidencing proceedings brought by the Plaintiffs to enforce the Judgment in any jurisdiction, including all documents relating to, referring to and/or evidencing the names, titles, and present whereabouts of any individuals who were responsible for or involved in retaining counsel to defend such enforcement proceedings and the details and circumstances of such efforts to retain counsel.

  c. All documents relating to, referring to and/or evidencing the "extensive" discovery the PA participated in for the *Knox* case.[83]

---

damages proceedings, respond to discovery in these cases, and to investigate the availability of meritorious defenses. This investigation was complicated by the existence of multiple parallel cases, such as the one filed in the District of Columbia by Plaintiffs here. Given the cultural, linguistic and logistical hurdles involved, it took substantial efforts to move to vacate all of the defaults and default judgments in less than eight months.").

[80] See 9/14/2009 Brief for Appellants at 7 ("The PA/PLO's non-defense of the *Ungar* suit and the resulting large damage award led to a proliferation of lawsuits against them, as well as a number of enforcement actions related to the Ungar judgment.").

[81] See 9/14/2009 Brief for Appellants at 8 ("The PA/PLO retained Washington, D.C. litigation firm Miller & Chevalier to represent them, with the understanding that the PA/PLO would actively defend the cases, including by participating in discovery.").

[82] See 9/14/2009 Brief for Appellants at 17 ("In an effort to reach the assets of the Palestine Investment Fund ('PIF'), the Ungars initiated a 'Creditor's Bill' proceeding in the underlying Estate of *Ungar v. Palestinian Auth.*, No. 1:00-cv-105-L-DLM (D.R.I.) matter. See Dkt. No. 370. In September 2006, Judge Lagueux entered a final judgment on the Creditor's Bill.").

    d.    All documents relating to, referring to and/or evidencing the "extensive" discovery the PLO participated in for the *Knox* case.[84]

    e.    All documents relating to, referring to and/or evidencing the PA's "actual conduct" in the "related cases."[85]

    f.    All documents relating to, referring to and/or evidencing the PLO's "actual conduct" in the "related cases."[86]

    g.    All documents relating to, referring to and/or evidencing all attachments on funds owed to the PA obtained by the Plaintiffs in Israel, including all documents relating to, referring to and/or evidencing the current amount of such attachments.

    h.    Authentic copies of all discovery requests of any kind served and/or propounded by the PA in the Israeli Proceedings at any time prior to December 2007.

    i.    Authentic copies of all discovery requests of any kind served and/or propounded by the PLO in the Israeli Proceedings at any time prior to December 2007.

    j.    Authentic copies of all responses, answers and/or objections served or made by the PA to any discovery requests of any kind served on and/or propounded to the PA in the Israeli Proceedings at any time prior to December 2007.

---

[83] See 9/14/2009 Brief for Appellants at 23 ("The remaining two cases are the instant case and the *Knox* case, in which the PA/PLO participated in extensive discovery over their assets in connection with litigation over the amount of the vacatur bond.").

[84] See 9/14/2009 Brief for Appellants at 23 ("The remaining two cases are the instant case and the *Knox* case, in which the PA/PLO participated in extensive discovery over their assets in connection with litigation over the amount of the vacatur bond.").

[85] See 9/14/2009 Brief for Appellants at 48-49 ("Here, the PA/PLO's motion to vacated the default judgment was supported by a sworn declaration from Prime Minister Fayyad in which he expressed the PA/PLO's commitment to 'participate fully in this and other litigation in a cooperative manner, including complete participation in the discovery process.' Prime Minister Fayyad's declaration deserves the Court's serious consideration, particularly in light of his representations concerning the manner in which the litigation will be conducted going forward, representations that have been borne out by the actual conduct of litigation in the related cases.").

[86] See 9/14/2009 Brief for Appellants at 48-49 ("Here, the PA/PLO's motion to vacated the default judgment was supported by a sworn declaration from Prime Minister Fayyad in which he expressed the PA/PLO's commitment to 'participate fully in this and other litigation in a cooperative manner, including complete participation in the discovery process.' Prime Minister Fayyad's declaration deserves the Court's serious consideration, particularly in light of his representations concerning the manner in which the litigation will be conducted going forward, representations that have been borne out by the actual conduct of litigation in the related cases.").

k. Authentic copies of all responses, answers and/or objections served or made by the PLO to any discovery requests of any kind served on and/or propounded to the PLO in the Israeli Proceedings at any time prior to December 2007.

l. Authentic copies of all pleadings and/or papers filed in an Israeli court by the PA in the Israeli Proceedings at any time prior to December 2007 relating to discovery requests of any kind served on and/or propounded to the PA and/or to discovery requests of any kind served and/or propounded by the PA.

m. Authentic copies of all pleadings and/or papers filed in an Israeli court by the PLO in the Israeli Proceedings at any time prior to December 2007 relating to discovery requests of any kind served on and/or propounded to the PLO and/or to discovery requests of any kind served and/or propounded by the PLO.

n. Authentic copies of the transcripts from all court hearings at any time prior to December 2007 in the Israeli Proceedings in which discovery requests of any kind served on and/or propounded to the PA and/or to discovery requests of any kind served and/or propounded by the PA were referred to or discussed.

o. Authentic copies of the transcripts from all court hearings at any time prior to December 2007 in the Israeli Proceedings in which discovery requests of any kind served on and/or propounded to the PLO and/or to discovery requests of any kind served and/or propounded by the PLO were referred to or discussed.

p. Authentic copies of all court orders and decisions issued in the Israeli Proceedings at any time prior to December 2007 in which discovery requests of any kind served on and/or propounded to the PA and/or to discovery requests of any kind served and/or propounded by the PA were referred to or discussed.

q. Authentic copies of all court orders and decisions issued in the Israeli Proceedings at any time prior to December 2007 in which discovery requests of any kind served on and/or propounded to the PLO and/or to discovery requests of any kind served and/or propounded by the PLO were referred to or discussed.

r. Authentic copies of all answers, counterclaims and crossclaims filed by the PA in the Israeli Proceedings at any time prior to December 2007.

s. Authentic copies of all answers, counterclaims and crossclaims filed by the PLO in the Israeli Proceedings at any time prior to December 2007.

t. Authentic copies of all pleadings and/or papers filed by the PA in the Israeli Proceedings at any time prior to December 2007 in which the PA asserted sovereign immunity from suit.

u. Authentic copies of all pleadings and/or papers filed by the PLO in the Israeli Proceedings at any time prior to December 2007 in which the PLO asserted sovereign immunity from suit.

v. All documents relating to, referring to and/or evidencing the organizational and institutional structures and individuals within the PA responsible for monitoring and making decisions regarding the Israeli Proceedings at any time prior to December 2007.

w. All documents relating to, referring to and/or evidencing the organizational and institutional structures and individuals within the PLO responsible for monitoring and making decisions regarding the Israeli Proceedings at any time prior to December 2007.

x. Authentic copies of all powers of attorney submitted by the PA to the Israeli courts and/or served by the PA on the opposing parties in the Israeli Proceedings at any time prior to December 2007.

y. Authentic copies of all powers of attorney submitted by the PLO to the Israeli courts and/or served by the PLO on the opposing parties in the Israeli Proceedings at any time prior to December 2007.

z. Authentic copies of all contracts, retainer agreements and/or other instruments executed prior to December 2007 through which the PA retained counsel to represent it in the Israeli Proceedings.

aa. Authentic copies of all contracts, retainer agreements and/or other instruments executed prior to December 2007 through which the PLO retained counsel to represent it in the Israeli Proceedings.

bb. An authentic copy of the affidavit of Mohanad Jaouni dated February 22, 2005, submitted by the PA in the Jerusalem District Court in Civil Case 3326/01 *Stella Nurzhitz v. The Palestinian Authority et al.* and Civil Case 2538/00 *Irena Litvak Nurzhitz v. The Palestinian Authority et al.*.

cc. An authentic copy of the transcript of the June 19, 2005 examination of Mohanad Jaouni in the Jerusalem District Court in Civil Case 3326/01 *Stella Nurzhitz v. The Palestinian Authority et al.* and Civil Case 2538/00 *Irena Litvak Nurzhitz v. The Palestinian Authority et al.*.

dd. Authentic copies of all discovery requests of any kind served and/or propounded by the PLO in the Achille Lauro Proceedings.

ee. Authentic copies of all responses, answers and/or objections served or made by the PLO to any discovery requests of any kind served on and/or propounded to the PLO in the Achille Lauro Proceedings, including without limitation authentic copies of the transcripts of any and all depositions of any officer, employee and/or representative of the PLO conducted in the Achille Lauro Proceedings.

ff. Authentic copies of all pleadings and/or papers filed by the PLO in the Achille Lauro Proceedings relating to discovery requests of any kind served on and/or

26

    propounded to the PLO and/or to discovery requests of any kind served and/or propounded by the PLO.

gg.    Authentic copies of the transcripts from all court hearings in the Achille Lauro Proceedings in which discovery requests of any kind served on and/or propounded to the PLO and/or to discovery requests of any kind served and/or propounded by the PLO were referred to or discussed.

hh.    Authentic copies of all court orders and decisions issued in the Achille Lauro Proceedings in which discovery requests of any kind served on and/or propounded to the PLO and/or to discovery requests of any kind served and/or propounded by the PLO were referred to or discussed.

ii.    Authentic copies of all answers, counterclaims and crossclaims filed by the PLO in the Achille Lauro Proceedings

jj.    Authentic copies of all pleadings and papers, and all exhibits thereto, filed and/or served by the PLO, by Zuhdi Labib Terzi, by Riyad H. Mansour, by Nasser Al-Kidwa and/or by Veronica Kanaan Pugh in the matter of *U.S. v. PLO*, No. 88 Civ. 1962 (ELP) (S.D.N.Y.).

kk.    Authentic copies of all pleadings and papers, and all exhibits thereto, filed and/or served by the PLO, by Riyad H. Mansour, by Ibraham Abu-Lughod, by Victor A. Ajlouny and/or by Nubar Hovsepian in the matter of *Mendelsohn v. Meese*, No. 88 Civ. 2005 (ELP) (S.D.N.Y.).

ll.    Authentic copies of all pleadings and papers, and all exhibits thereto, filed and/or served by the PLO, by the Palestine Information Office ("PIO") and by any officer, employee or representative of the PLO or PIO, in the matter of *Palestine Information Office v. Shultz*, Civ. A. No. 87-3085 (D.D.C.) (both in the federal district court and the federal court of appeals).

mm.    Authentic copies of all discovery requests of any kind served and/or propounded by the PA and/or PLO in the Bucheit Proceedings.

nn.    Authentic copies of all responses, answers and/or objections served or made by the PA and/or PLO to any discovery requests of any kind served on and/or propounded to the PA and/or PLO in the Bucheit Proceedings, including without limitation authentic copies of the transcripts of any and all depositions of any officer, employee and/or representative of the PA and/or PLO conducted in the Bucheit Proceedings.

oo.    Authentic copies of all pleadings and/or papers filed by the PA and/or PLO in the Bucheit Proceedings relating to discovery requests of any kind served on and/or propounded to the PA and/or PLO and/or to discovery requests of any kind served and/or propounded by the PA and/or PLO.

pp. Authentic copies of the transcripts from all court hearings in the Bucheit Proceedings in which discovery requests of any kind served on and/or propounded to the PA and/or PLO and/or to discovery requests of any kind served and/or propounded by the PA and/or PLO were referred to or discussed.

qq. Authentic copies of all court orders and decisions issued in the Bucheit Proceedings in which discovery requests of any kind served on and/or propounded to the PA and/or PLO and/or to discovery requests of any kind served and/or propounded by the PA and/or PLO were referred to or discussed.

rr. Authentic copies of all answers, counterclaims and crossclaims filed by the PA and/or PLO in the Bucheit Proceedings.

ss. All documents relating to, referring to and/or evidencing the Danish Road Contractors Proceedings, and all documents filed and/or served by any party to the Danish Road Contractors Proceedings.

tt. All documents relating to, referring to and/or evidencing the organizational and institutional structures and individuals within the PLO responsible for monitoring and making decisions regarding the Achille Lauro Proceedings, regarding the Bucheit Proceedings, regarding the matter of *U.S. v. PLO*, No. 88 Civ. 1962 (ELP) (S.D.N.Y.), regarding the matter of *Mendelsohn v. Meese*, No. 88 Civ. 2005 (ELP) (S.D.N.Y.) and regarding the matter of *Palestine Information Office v. Shultz*, Civ. A. No. 87-3085 (D.D.C.) (both in the federal district court and the federal court of appeals).

uu. All documents relating to, referring to and/or evidencing the organizational and institutional structures and individuals within the PA responsible for monitoring and making decisions regarding the Bucheit Proceedings and regarding the Danish Road Contractors Proceedings.

vv. All documents relating to, referring to and/or evidencing any legal and/or arbitration proceedings, other than those explicitly referred to in this Request for Production, brought by or against the PA and PLO in any place outside the West Bank and Gaza Strip at any time prior to December 2007.

14. **Regarding various individuals:**

a. An authentic copy of the letter of resignation referred to by Salam Fayyad on pp. 289-292 of the transcript of his July 28, 2010 deposition.

b. All documents relating to, referring to and/or evidencing:

   i. Any and all positions, titles and/or jobs held by Mohammed Dahlan in the PA and/or PLO between January 1, 1994 and June 6, 1996;

   ii. Any and all positions, titles and/or jobs held by Mohammed Dahlan in the PA and/or PLO between March 12, 2000 and July 13, 2004;

28

     iii. Any and all positions, titles and/or jobs held by Mohammed Dahlan in the PA and/or PLO on the date that you produce documents in response to this request;

     iv. The exact time periods during which Mohammed Dahlan held the positions, titles and/or jobs described in subsections (i)-(iii) above;

     v. The nature, purposes, responsibilities and duties of any and all positions, titles and/or jobs held by Mohammed Dahlan at the times and/or during the time periods described in subsections (i)-(iv) above; and

     vi. Mohammed Dahlan's home and work addresses, position(s), title(s), job(s) and employer(s) on the date that you produce documents in response to this request.

c. All documents relating to, referring to and/or evidencing:

     i. Any and all positions, titles and/or jobs held by Jibril Rajoub in the PA and/or PLO between January 1, 1994 and June 6, 1996;

     ii. Any and all positions, titles and/or jobs held by Jibril Rajoub in the PA and/or PLO between March 12, 2000 and July 13, 2004;

     iii. Any and all positions, titles and/or jobs held by Jibril Rajoub in the PA and/or PLO on the date that you produce documents in response to this request;

     iv. The exact time periods during which Jibril Rajoub held the positions, titles and/or jobs described in subsections (i)-(iii) above;

     v. The nature, purposes, responsibilities and duties of any and all positions, titles and/or jobs held by Jibril Rajoub at the times and/or during the time periods described in subsections (i)-(iv) above; and

     vi. Jibril Rajoub's home and work addresses, position(s), title(s), job(s) and employer(s) on the date that you produce documents in response to this request.

d. All documents relating to, referring to and/or evidencing:

     i. Any and all positions, titles and/or jobs held by Razi Jabali in the PA and/or PLO between January 1, 1994 and June 6, 1996;

     ii. Any and all positions, titles and/or jobs held by Razi Jabali in the PA and/or PLO between March 12, 2000 and July 13, 2004;

   iii. Any and all positions, titles and/or jobs held by Razi Jabali in the PA and/or PLO on the date that you produce documents in response to this request;

   iv. The exact time periods during which Razi Jabali held the positions, titles and/or jobs described in subsections (i)-(iii) above;

   v. The nature, purposes, responsibilities and duties of any and all positions, titles and/or jobs held by Razi Jabali at the times and/or during the time periods described in subsections (i)-(iv) above; and

   vi. Razi Jabali's home and work addresses, position(s), title(s), job(s) and employer(s) on the date that you produce documents in response to this request.

 e. All documents relating to, referring to and/or evidencing:

   i. Any and all positions, titles and/or jobs held by Tewfik Tirawi in the PA and/or PLO between January 1, 1994 and June 6, 1996;

   ii. Any and all positions, titles and/or jobs held by Tewfik Tirawi in the PA and/or PLO between March 12, 2000 and July 13, 2004;

   iii. Any and all positions, titles and/or jobs held by Tewfik Tirawi in the PA and/or PLO on the date that you produce documents in response to this request;

   iv. The exact time periods during which Tewfik Tirawi held the positions, titles and/or jobs described in subsections (i)-(iii) above;

   v. The nature, purposes, responsibilities and duties of any and all positions, titles and/or jobs held by Tewfik Tirawi at the times and/or during the time periods described in subsections (i)-(iv) above; and

   vi. Tewfik Tirawi's home and work addresses, position(s), title(s), job(s) and employer(s) on the date that you produce documents in response to this request.

 f. All documents relating to, referring to and/or evidencing:

   i. Any and all positions, titles and/or jobs held by Amin Al-Hindi in the PA and/or PLO between January 1, 1994 and June 6, 1996;

   ii. Any and all positions, titles and/or jobs held by Amin Al-Hindi in the PA and/or PLO between March 12, 2000 and July 13, 2004;

   iii. The exact time periods during which Amin Al-Hindi held the positions, titles and/or jobs described in subsections (i)-(ii) above;

30

   iv. The nature, purposes, responsibilities and duties of any and all positions, titles and/or jobs held by Amin Al-Hindi at the times and/or during the time periods described in subsections (i)-(iv) above.

## GENERAL DEFINITIONS

1.  "Relate to" or "relating to" shall mean and include constituting, discussing, mentioning, containing, embodying, reflecting, identifying, incorporating, referring to, dealing with, or pertaining to in any way.

## SPECIFIC DEFINITIONS

1.  "PA" shall mean and refer to defendant The Palestinian Authority.

2.  "PLO" shall mean and refer to defendant The Palestine Liberation Organization.

3.  "Defendants" shall mean and refer to Defendants PA and PLO, both individually and collectively.

4.  "Judgment" shall mean and refer to the judgment entered in this action on July 13, 2004.

5.  "2006 Judgment" shall mean and refer to the judgment entered in this action on September 19, 2006.

6.  "The Motion" shall mean and refer to Defendants' motion to vacate the Judgment.

7.  "Israeli Proceedings" shall mean and refer to and include collectively all legal proceedings brought by, or against, the PA and/or PLO in any Israeli court at any time.

8.  "Achille Lauro Proceedings" shall mean, refer to and include collectively all legal proceedings in any court in the United States resulting and/or arising from the October 1985 seizure of the Italian passenger liner Achille Lauro to which the PLO was a party at any time.

9.  "Danish Road Contractors Proceedings" shall mean, refer to and include collectively all arbitration and legal proceedings in Europe to which the Danish Road Contractors and the PA were parties.

31

10. "Bucheit Proceedings" shall mean, refer to and include collectively all proceedings in the matter of *Bucheit v. PLO*, Civ. No. 00-1455GK (D.D.C.)

Dated: August 26, 2010

Plaintiffs-Judgment Creditors,
by their Attorney,

David J. Strachman #4404
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com


Max H. Wistow #0330
Wistow & Barylick
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com

32

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on August 26, 2010, a true and genuine copy of the foregoing was sent by first class mail and electronic mail to Defendants' counsel of record listed below and hand delivered to Deming E. Sherman at the address below:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701