UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE ESTATE OF YARON UNGAR, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 00-105L |
| | ) | |
| THE PALESTINIAN AUTHORITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT THE PALESTINIAN AUTHORITY'S MOTION
TO COMPEL ANSWERS TO DEFENDANT'S INTERROGATORY
NOS. 12-18 AND RESPONSES TO DEFENDANT'S REQUEST FOR PRODUCTION
NOS. 8-15, 17-19 AND MEMORANDUM IN SUPPORT THEREOF**

Defendant The Palestinian Authority ("PA"), through counsel, respectfully moves this

Court pursuant to Federal Rule of Civil Procedure 37(a)(3)(B) to compel Plaintiffs to provide

fully responsive answers to Interrogatory Nos. 12-18 of the PA's First Set of Interrogatories (1-

18) to Plaintiffs and produce all documents and things responsive to Request Nos. 8-15, 17-19 of

the PA's First Request for Production of Documents and Things (1-22) to Plaintiffs.  For the

reasons set forth below, Plaintiffs' refusal to answer the specified interrogatories or respond to

the specified requests for production cannot be justified in light of their relevance to factors

pertinent to the PA's and Palestine Liberation Organization's pending Motion for Relief From

Default Judgment (Dkt. No. 408).  Moreover, Plaintiffs' refusal to answer and provide

documents to this initial round of discovery jeopardizes the November 19, 2010 discovery

deadline imposed by the Court in its June 1 Pre-Hearing Order.  *See* Dkt. No. 489.

## FEDERAL RULE OF CIVIL PROCEDURE 26(c)(1) CERTIFICATION

Counsel for Defendant hereby certify that, as required by Fed. R. Civ. P. 26(c)(1), they have conferred with all parties or non-parties who may be affected by the relief sought in the Motion in a good faith effort to resolve the issues raised in the Motion and have been unable to do so.

## LOCAL RULE Cv 7(e) REQUEST FOR ORAL ARGUMENT

Pursuant to LR Cv 7(e), Defendant PA respectfully requests oral argument on the issues raised in this Motion. Defendant estimates that an oral argument on this Motion will last approximately 30 minutes.

## RELEVANT BACKGROUND

In March 2010, the U.S. Court of Appeals for the First Circuit reversed the Court's denial of Defendants' Motion for Relief from Default Judgment (the "Motion, or "Rule 60(b)(6) motion") and remanded the matter to the Court for reconsideration of the Motion. *See Ungar v. PLO*, 599 F.3d 79 (1st Cir. 2010). In its Order of April 1, the Court announced its intent to hold an evidentiary hearing on the remanded Rule 60(b)(6) motion. Dkt. No. 482. On June 1, the Court set a pre-hearing discovery schedule, ordering that the parties complete discovery on or before November 19, 2010, in preparation for an evidentiary hearing to be held on January 18, 2011. Dkt. No. 489.

The PA served its First Set of Interrogatories (1-18) to Plaintiffs and its First Request for Production of Documents and Things (1-22) to Plaintiffs on July 6, 2010. Plaintiffs served their Objections and Answers to the First Set of Interrogatories and their Objections and Responses to the First Request for Production on August 10, 2010. In these responses, Plaintiffs provided only objections and failed to respond to Interrogatory Nos. 12-18, and Request Nos. 8-14.

Counsel for the parties held a telephonic meet and confer relating to these written discovery requests and other issues on August 17, 2010. During this conference, Plaintiffs' counsel indicated that Plaintiffs would not be withdrawing their relevance objections to discovery requests related to their allegations of PA and PLO liability for Mr. Ungar's killing by a Hamas cell (or, the meritorious defense issue). Plaintiffs' counsel, however, indicated a willingness to withdraw Plaintiffs' other objections to the PA's discovery requests.

On August 26, 2010, Plaintiffs served their Amended and Supplemental Objections and Responses to the PA's First Request for Production and their Amended and Supplemental Objections and Answer to the PA's First Set of Interrogatories. Despite Plaintiffs' counsel's statement that Plaintiffs would be withdrawing Plaintiffs' objections unrelated to the meritorious defense issue, Plaintiffs' amended and supplemental objections include numerous objections on other bases. Additionally, Plaintiffs' changed their position with respect to four of Defendants' requests for production -- Request Nos. 15, 17, 18 and 19. In their original responses to these requests, Plaintiffs stated that "if plaintiffs locate any responsive documents they will produce them." In their amended and supplement responses, however, Plaintiffs do an about-face and now state that they "decline to produce documents in response" to these requests.

In a September 8 telephonic meet and confer regarding Plaintiffs' amended and supplemental objections, Plaintiffs' counsel informed PA's counsel that Plaintiffs would not be providing further responses to the interrogatories and requests at issue in this motion and that he would not engage in further discussions regarding Plaintiffs' responses.

## DISCOVERY ANSWERS AND RESPONSES AT ISSUE

Pursuant to LR Cv 37, Defendant reproduces below the interrogatories and requests for production at issue in this motion, along with Plaintiffs' amended and supplemental objections

and responses thereto (full copies of Plaintiffs' operative objections and responses are also

attached hereto as Exhibits 1 and 2):

## INTERROGATORY NO. 12:

State the factual basis for any contention by you that the PA and/or the PLO knew or should have know that "Hamas and its operatives and agents maintained and operated a leadership command, organizational hierarchy and operational infrastructure including, *inter alia*, training facilities and depots for storage of weapons and explosives in territories controlled by defendants PA and PLO" [*See* Amended Complaint ¶ 14 (Dkt. # 41); *see also* Complaint ¶ 18 (Dkt. # 1)], and that "[a]t all times relevant hereto defendants PA and PLO and their officials, employees and agents knew that defendant Hamas had committed hundreds of serious offenses against the United States, including the murder of [several] U.S. citizens. .., and that defendant Hamas planned to continue committing such offenses, yet defendants PA and PLO openly and consistently sheltered and received, relieved, comforted and assisted defendant Hamas and its operatives and agents, within the meaning of 18 U.S.C. § 3, in order to hinder and prevent their apprehension, trial, and punishment" and "provided defendant Hamas and its members with safe haven, a base of operations, shelter, financial support, and other material support and resources." Dkt. # 41, ¶ 34, 35, 41, see also Dkt. # 1, ¶ 40, 41.

[A fully responsive answer to this Interrogatory should include, without limitation, (a) a detailed description of each circumstance in which defendants PA and PLO allegedly "sheltered, received, relieved, comforted and assisted defendant Hamas and its operatives and agents," (b) a detailed description of each circumstance in which defendants PA and PLO allegedly "provided defendant Hamas and its members with safe haven, a base of operations, shelter, financial support, and other material support and resources," and (c) the identify of all documents relating to your contentions and allegations.]

## OBJECTIONS TO INTERROGATORY NO. 12:

1.     Plaintiffs object to this Interrogatory as unduly burdensome and as seeking information that is irrelevant to defendants' Rule 60(b)(6) motion because it seeks information relating to the facts underlying the allegations of the Amended Complaint that defendants intend to use in an attempt to develop a meritorious defense. Such information is irrelevant to defendants' Rule 60(b)(6) motion and unduly burdensome to produce because in this Circuit the existence *vel non* of a meritorious defense is determined solely on the basis of defendant's averments and not on the basis of evidence. *See Indigo America, Inc. v. Big Impressions, LLC,* 597 F.3d 1, 4 (1st Cir. 2010) ("Establishing the existence of a meritorious defense is not a particularly arduous task. A party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense.") (internal brackets and quotation marks omitted). The information sought is also irrelevant and unduly burdensome to produce because a meritorious defense cannot be established by challenging the evidentiary strength of the plaintiff's case. *See Burrell v. Henderson,* 434 F.3d 826, 832 (6th Cir. 2006) ("When reviewing a motion for relief under Rule 60(b), the court is not permitted to consider the underlying strength of a plaintiff's claim."). Therefore, a defendant seeking to vacate a default is

not permitted discovery from the plaintiff regarding the factual basis of the complaint. *See Sierra Foods, Inc. v. Haddon House Food Products, Inc.*, 1991 WL 95287 at *10 (E.D.Pa. 1991) (rejecting such a request on the grounds that both defendant's meritorious defense and plaintiff's complaint are assessed using a pleading standard, not a proof standard).

     2.    Plaintiffs object to this Interrogatory because it seeks information within the exclusive knowledge and/or possession of the defendants that the plaintiffs sought to discover but defendants refused to provide prior to entry of judgment in this action.

     3.    Plaintiffs object to this Interrogatory because it asks for an opinion or contention that relates to fact or the application of law to fact in respect to the underlying allegations of the action, despite the fact that defendants refused to provide any discovery regarding the underlying allegations of the action. Plaintiffs reserve the right, pursuant to Fed.R.Civ.P. 26 and 33(a)(2), to answer this Interrogatory at a later time, if their objections to this Interrogatory are overruled.

## ANSWER TO INTERROGATORY NO. 12:

     On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

## INTERROGATORY NO. 13:

     State the factual basis for your contention that defendants PA and PLO failed to comply with alleged demands and requests from Israel or the United States to take certain actions relating to Hamas, including, without limitation, your allegations that "[d]efendants PA and PLO refused and/or ignored American and Israeli demands to take effective measures to prevent further terrorist attacks by defendant Hamas" (Dkt. # 41, ¶ 28, see also Dkt. #1, ¶ 34) and that "that "[o]n September 17, 1997, the Israeli Justice Ministry submitted to defendant PA a request for [Ibrahim Ghanimat's] arrest and extradition to Israel [but] [d]efendant PA has refused to honor this request, and continues to shelter Ibrahim Ghanimat," Dkt. # 41, ¶ 22, see also Dkt. # 1, ¶ 26.

     [A fully responsive answer to this Interrogatory should include, without limitation, (a) the identity of all communications and documents relating to the alleged requests and demands, (b) the identity of the persons or persons at the Israeli Justice Ministry who allegedly submitted the request to the PA, and (c) the identify of the persons or persons at the PA who allegedly "refused to honor this request."]

## OBJECTIONS TO INTERROGATORY NO. 13:

     Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Interrogatory No. 12 above.

## ANSWER TO INTERROGATORY NO. 13:

     On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

**INTERROGATORY NO. 14:**

State the factual basis for your contention that "during the period relevant hereto, several members of defendant Hamas and other terrorist groups suspected of or charged with terrorist murders, including murders of U.S. citizens, whose surrender was requested by Israel, were provided salaries and employment by defendant PA as policemen and/or security officials in the various police, security and intelligence forces under the control of defendant PA," Dkt. # 41, ¶ 32, see also Dkt. #1, ¶ 38.

[A fully responsive answer to this Interrogatory should include, without limitation, the following information: (a) the identity of all such "members of defendant Hamas and other terrorist groups," (b) the identity of documents relating to the alleged employment of such persons by defendant PA and (c) the identify of all documents relating to the alleged payment of salaries to such persons.]

**OBJECTIONS TO INTERROGATORY NO. 14:**

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Interrogatory No. 12 above.

**ANSWER TO INTERROGATORY NO. 14:**

On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

**INTERROGATORY NO. 15:**

State the factual basis for your contention that "[D]efendants PA and PLO, at all times relevant hereto, by and through their officials, employees and agents acting within the scope and course of their employment and agency, pursuant to the prior authorization and instructions of defendants PA and PLO and in furtherance of the goals and purposes of defendants PA and PLO, granted material and financial support to the families of members of defendant Hamas who had been captured or killed while carrying out acts of terrorist violence against Jewish civilians in Israel, Gaza, and the West Bank, thereby providing defendant Hamas and its members with strong financial incentive to continue to carry out violence and terrorism against such victims," Dkt. # 41, ¶ 33, see also Dkt. # 1, ¶ 39.

[A fully responsive answer to this Interrogatory should include, without limitation, (a) the identity and description of all communications and documents relating to the alleged "prior authorization and instructions of defendants PA and PLO" and (b) the identity of all documents relating to your contention.]

**OBJECTIONS TO INTERROGATORY NO. 15:**

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Interrogatory No. 12 above.

**ANSWER TO INTERROGATORY NO. 15:**

On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

**INTERROGATORY NO. 16:**

State the factual basis for your contention that "[D]efendants PA and PLO and their officials, employees and agents solicited and advised defendants Hamas, [Abdel Rahman Ismail Abdel] Rahman Ghanimat, [Jamal Abdel Fatah Tzabich al] Hor, [Iman Mahmud Hassan Fuad] Kafishe, [Raed Fakhri Abu] Hamdiya, and Ibrahim Ghanimat to commit the acts attributed to those defendants [in the Plaintiffs Amended Complaint], and aided, abetted, authorized, ratified and participated in those acts," including, without limitation, a detailed description of each circumstance in which defendants PA and PLO allegedly "solicited and advised defendants Hamas, [Abdel Rahman Ismail Abdel] Rahman Ghanimat, [Jamal Abdel Fatah Tzabich al] Hor, [Iman Mahmud Hassan Fuad] Kafishe, [Raed Fakhri Abu] Hamdiya, and Ibrahim Ghanimat to commit the acts attributed to those defendants" and allegedly "aided, abetted, authorized, ratified and participated in those acts" Dkt. # 41, ¶ 36.

**OBJECTIONS TO INTERROGATORY NO. 16:**

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Interrogatory No. 12 above.

**ANSWER TO INTERROGATORY NO. 16:**

On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

**INTERROGATORY NO. 17:**

State the factual basis for your contention that "[t]he acts and omissions of defendants PA and PLO described herein were committed by and through their officials, employees and agents acting within the scope and course of their employment and agency, with the authorization and ratification, and pursuant to the instructions of defendants PA and PLO and in furtherance of the goals and purposes of defendants PA and PLO," including, without limitation, (a) an identification of each alleged "act and omission of defendants PA and PLO," (b) an identification of each such official, employee and agent," (c) a detailed description of each alleged act of "authorization and ratification," (d) an identification of each communication relating to or constituting such alleged "instructions of defendants PA and PLO," and (e) an identification of each document relating to or constituting such alleged goals and purposes of defendants PA and PLO" Dkt. # 41 ¶¶ 37, 80, and 83.

**OBJECTIONS TO INTERROGATORY NO. 17:**

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Interrogatory No. 12 above.

**ANSWER TO INTERROGATORY NO. 17:**

On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

**INTERROGATORY NO. 18:**

State the factual basis for your contention that "at all times relevant hereto, [the PA and PLO], themselves and through their respective representatives, spokesmen and organs: repeatedly praised and lauded defendant Hamas and Hamas operatives who had engaged in acts of terrorism and violence against Jewish civilians and Israeli targets; praised, advocated, encouraged, solicited and incited for such terrorist acts; and threatened the further occurrence of such terrorist acts;" including, without limitation, an identification and detailed description of (a) each instance of "praising and lauding," each such alleged "act of terrorism and violence against Jewish civilians and targets," and each circumstance in which defendants PA and PLO allegedly "praised, advocated, encouraged, solicited and incited such terrorist acts" Dkt. # 41, ¶ 43, see also Dkt. # 1, ¶ 43.

**OBJECTIONS TO INTERROGATORY NO. 18:**

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Interrogatory No. 12 above.

**ANSWER TO INTERROGATORY NO. 18:**

On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

**REQUEST NO. 8:**

All documents and things related to your contention that "Hamas and its operatives and agents maintained and operated a leadership command, organizational hierarchy and operational infrastructure including, inter alia, training facilities and depots for storage of weapons and explosives in territories controlled by defendants PA and PLO" [*See* Amended Complaint ¶ 14 (Dkt. #41); *see also* Complaint ¶ 18 (Dkt. # 1)], and that "[a]t all times relevant hereto defendants PA and PLO and their officials, employees and agents knew that defendant Hamas had committed hundreds of serious offenses against the United States, including the murder of [several] U.S. citizens. . ., and that defendant Hamas planned to continue committing such offenses, yet defendants PA and PLO openly and consistently sheltered and received, relieved, comforted and assisted defendant Hamas and its operatives and agents, within the meaning of 18 U.S.C. § 3, in order to hinder and prevent their apprehension, trial, and punishment" and "provided defendant Hamas and its members with safe haven, a base of operations, shelter, financial support, and other material support and resources." Dkt. # 41, ¶ 34, 35, 41, see also Dkt. # 1, ¶ 40, 41. This request includes all documents which you reviewed in answering Defendants' Interrogatory Number 12, as well as all documents relating to the location of said facilities and depots, the years of existence of said facilities and depots at said locations, and a description of whether, post-Oslo II, said facilities and depots were located in Area A, B, or C as designed in the Oslo Accords.

**OBJECTIONS TO REQUEST NO. 8:**

1.      Plaintiffs object to this Request as unduly burdensome and as seeking documents that are irrelevant to defendants' Rule 60(b)(6) motion because it seeks documents relating to the facts underlying the allegations of the Amended Complaint that defendants intend to use in an attempt to develop a meritorious defense.  Such documents are irrelevant to defendants' Rule 60(b)(6) motion and unduly burdensome to produce because in this Circuit the existence *vel non* of a meritorious defense is determined solely on the basis of defendant's averments and not on the basis of evidence.  *See Indigo America, Inc. v. Big Impressions, LLC,* 597 F.3d 1, 4 (1st Cir. 2010) ("Establishing the existence of a meritorious defense is not a particularly arduous task. A party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense.") (internal brackets and quotation marks omitted).  The documents sought are also irrelevant and unduly burdensome to produce because a meritorious defense cannot be established by challenging the evidentiary strength of the plaintiff's case.  *See Burrell v. Henderson,* 434 F.3d 826, 832 (6th Cir. 2006) ("When reviewing a motion for relief under Rule 60(b), the court is not permitted to consider the underlying strength of a plaintiff's claim.").  Therefore, a defendant seeking to vacate a default is not permitted discovery from the plaintiff regarding the factual basis of the complaint. *See Sierra Foods, Inc. v. Haddon House Food Products, Inc.,* 1991 WL 95287 at *10 (E.D.Pa. 1991) (rejecting such a request on the grounds that both defendant's meritorious defense and plaintiff's complaint are assessed using a pleading standard, not a proof standard).

2.      Plaintiffs object to this Request because it seeks documents within the exclusive possession, custody and/or control of the defendants and/or that are located in the Gaza Strip that plaintiffs sought but defendants refused to provide prior to entry of judgment in this action.

3.      Plaintiffs object to this Request because it asks for documents supporting an opinion or contention that relates to fact or the application of law to fact in respect to the underlying allegations of the action, despite the fact that defendants refused to provide any discovery regarding the underlying allegations of the action.  Plaintiffs reserve the right, pursuant to the Federal Rules of Procedure, to answer this Request at a later time, if their objections to this Request are overruled.

**ANSWER TO REQUEST NO. 8:**

On the basis of the objections above, plaintiffs decline to produce documents in response to this Request.

**REQUEST NO. 9:**

All documents and things related to your contention that "[d]efendants PA and PLO refused and/or ignored American and Israeli demands to take effective measures to prevent further terrorist attacks by defendant Hamas," and that "[o]n September 17, 1997, the Israeli Justice Ministry submitted to defendant PA a request for [Ibrahim Ghanimat's] arrest and extradition to Israel [but] [d]efendant PA has refused to honor this request, and continues to

shelter Ibrahim Ghanimat," Dkt. #41, ¶¶ 22, 28.  This request includes all documents which you reviewed in answering Defendants' Interrogatory Number 13, as well as any documents relating to the communication of said refusals by the PA, PLO, and Yasser Arafat to Israel and the United States, and the nature and location of said shelter.

## OBJECTIONS TO REQUEST NO. 9:

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Request No. 8 above.

## ANSWER TO REQUEST NO. 9:

On the basis of the objections above, plaintiffs decline to produce documents in response to this Request.

## REQUEST NO. 10:

All documents and things related to your contention "during the period relevant hereto, several members of defendant Hamas and other terrorist groups suspected of or charged with terrorist murders, including murders of U.S. citizens, whose surrender was requested by Israel, were provided salaries and employment by defendant PA as policemen and/or security officials in the various police, security and intelligence forces under the control of defendant PA," Dkt. # 41, ¶ 42, see also Dkt. # 1, ¶ 38, and/or which you reviewed in answering Defendants' Interrogatory Number 14.

## OBJECTIONS TO REQUEST NO. 10:

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Request No. 8 above.

## ANSWER TO REQUEST NO. 10:

On the basis of the objections above, plaintiffs decline to produce documents in response to this Request.

## REQUEST NO. 11:

All documents and things related to your contention that that [sic] "[D]efendants PA and PLO, at all times relevant hereto, by and through their officials, employees and agents acting within the scope and course of their employment and agency, pursuant to the prior authorization and instructions of defendants PA and PLO and in furtherance of the goals and purposes of defendant Hamas who had been captured or killed while carrying out acts of terrorist violence against Jewish civilians in Israel, Gaza, and the West Bank, thereby providing defendant Hamas and its members with strong financial incentive to continue to carry out violence and terrorism

against such victims," and/or which you reviewed in answering Defendants' Interrogatory Number 15.

## OBJECTIONS TO REQUEST NO. 11:

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Request No. 8 above.

## ANSWER TO REQUEST NO. 11:

On the basis of the objections above, plaintiffs decline to produce documents in response to this Request.

## REQUEST NO. 12:

All documents and things related to your contention that "[D]efendants PA and PLO and their officials, employees and agents solicited and advised defendants Hamas, [Abdel Rahman Ismail Abdel] Rahman Ghanimat, [Jamal Abdel Fatah Tzabich al] Hor, [Iman Mahmud Hasan Fuad] Kafishe, [Raed Fakhri Abu] Hamdiya, and Ibrahim Ghanimat to commit the acts attributed to those defendants [in the Plaintiffs Amended Complaint], and aided, abetted, authorized, ratified and participated in those acts," including, without limitation, a detailed description of each circumstance in which defendants PA and PLO allegedly "solicited and advised defendants Hamas, [Abdel Rahman Ismail Abdel] Rahman Ghanimat, [Jamal Abdel Fatah Tzabich al] Hor, [Iman Mahmud Hasan Fuad] Kafishe, [Raed Fakhri Abu] Hamdiya, and Ibrahim Ghanimat to commit the acts attributed to those defendants" and allegedly "aided, abetted, authorized, ratified and participated in those acts" Dkt. # 41, ¶ 36, and/or which you reviewed in answering Defendants' Interrogatory number 16.

## OBJECTIONS TO REQUEST NO. 12:

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Request No. 8 above.

## ANSWER TO REQUEST NO. 12:

On the basis of the objections above, plaintiffs decline to produce documents in response to this Request.

## REQUEST NO. 13:

All documents and things related to your contention that "[t]he acts and omissions of defendants PA and PLO described herein were committed by and through their officials, employees and agents acting within the scope and course of their employment and agency, with the authorization and ratification, and pursuant to the instructions of defendants PA and PLO and in furtherance of the goals and purposes of defendants PA and PLO," and/or which you reviewed in answering Defendants' Interrogatory Number 17.

**OBJECTIONS TO REQUEST NO. 13:**

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Request No. 8 above.

**ANSWER TO REQUEST NO. 13:**

On the basis of the objections above, plaintiffs decline to produce documents in response to this Request.

**REQUEST NO. 14:**

All documents and things related to your contention that "at all times relevant hereto, [the PA and PLO], themselves and through their respective representatives, spokesmen and organs: repeatedly praised and lauded defendant Hamas and Hamas operatives who had engaged in acts of terrorism and violence against Jewish civilians and Israeli targets; praised, advocated, encouraged, solicited and incited for such terrorist acts; and threatened the further occurrence of such terrorist acts;" including, without limitation, an identification and detailed description of (a) each instance of "praising and lauding," each such alleged "act of terrorism and violence against Jewish civilians and targets," and each circumstance in which defendants PA and PLO allegedly "praised, advocated, encouraged, solicited and incited such terrorist acts" Dkt. # 41, ¶ 43, see also Dkt. # 1, ¶ 46, and/or which you reviewed in answering Defendants' Interrogatory Number 18.

**OBJECTIONS TO REQUEST NO. 14:**

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Request No. 8 above.

**ANSWER TO REQUEST NO. 14:**

On the basis of the objections above, plaintiffs decline to produce documents in response to this Request.

**REQUEST NO. 15:**

All documents received by the Plaintiffs pursuant to a Letter of Request for Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or commercial Matters sought and issued October 24, 2001 in the civil action captioned Ungar, et al v. Islamic Republic of Iran, et al, No. 00-CV0260 (D.D.C., filed Oct., 27, 2000) (hereinafter "*Ungar v. Iran*"). The Request appears on the *Ungar v. Iran* docket as entry # 17.

12

**OBJECTIONS TO REQUEST NO. 15:**

1.     Plaintiffs incorporate and re-allege objection 1 as asserted in response to Request No. 8 above.

2.     Plaintiffs object to this Request to the extent it seeks the production of documents already in defendants' possession and/or available to the public in the *Ungar v. Iran* case file, since the production and/or redundant production of such documents by plaintiffs would entail unreasonable burden and expense to plaintiffs.

**ANSWER TO REQUEST NO. 15:**

On the basis of the objections above, plaintiffs decline to produce documents in response to this Request.

**REQUEST NO. 17:**

All documents provided by Plaintiffs to, or relied upon in connection with, the testimony of Roni Shaked, Dr. Reuven Paz, and Dr. Patrick Clawson relating to their expert testimony in *Ungar v. Iran.*

**OBJECTIONS TO REQUEST NO. 17:**

1.     Plaintiffs incorporate and re-allege objection 1 as asserted in response to Request No. 8 above.

2.     Plaintiffs object to this Request to the extent it seeks the production of documents already in defendants' possession and/or available to the public in the *Ungar v. Iran* case file, since the production and/or redundant production of such documents by plaintiffs would entail unreasonable burden and expense to plaintiffs.

**ANSWER TO REQUEST NO. 17:**

On the basis of the objections above, plaintiffs decline to produce documents in response to this Request.

**REQUEST NO. 18:**

Any and all curriculum vitae and published writings or speeches of Roni Shaked, Dr. Reuven Paz, Dr. Patrick Clawson, and Yehudit Barsky.

**OBJECTIONS TO REQUEST NO. 18:**

Plaintiffs incorporate and re-allege objections 1 and 2 as asserted in response to Request No. 17 above.

**ANSWER TO REQUEST NO. 18:**

On the basis of the objections above, plaintiffs decline to produce documents in response to this Request.

**REQUEST NO. 19:**

All documents, including but not limited to affidavits, diagrams, illustrations, transcripts, translations, records, and photographs, submitted to the Court during the January 2001 evidentiary hearing in *Ungar v. Iran*.

**OBJECTIONS TO REQUEST NO. 19:**

Plaintiffs incorporate and re-allege objections 1 and 2 as asserted in response to Request No. 17 above.

**ANSWER TO REQUEST NO. 19:**

On the basis of the objections above, plaintiffs decline to produce documents in response to this Request.

## REASON PLAINTIFFS' RESPONSES ARE INADEQUATE

Local Rule Cv 37 requires the party moving to compel to identify as to each disputed discovery request the reason the response is inadequate. Plaintiffs provided only objections as to the discovery requests at issue. Because the same objections apply to multiple discovery requests, to avoid repetition, Defendants address the inadequacy of Plaintiffs' responses on an objection-by-objection basis rather than as to each discovery request. There are four different objections at issue, each of which is addressed in turn immediately below.

1.    Objection 1 to Interrogatory No. 12, Incorporated and Re-Alleged as to Interrogatory Nos. 13-18, and Objection 1 to Request No. 8, Incorporated and Re-Alleged as to Request Nos. 9-15, 17-19

Plaintiffs take the position they are not required to provide any discovery to support their allegation that the PA and PLO should be held liable for Mr. Ungar's shooting by Hamas militants.  Plaintiffs' principal objection is that "[s]uch information is irrelevant to defendants' Rule 60(b)(6) motion and unduly burdensome to produce because in this Circuit the existence *vel non* of a meritorious defense is determined solely on the basis of defendant's averments and not on the basis of evidence." *See, e.g.*, Exh. 1 at 13-14 (Objection 1 to Interrogatory No. 12).

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Plaintiffs have not claimed that any of the discovery sought relates to a privileged matter.  Plaintiffs' claim of irrelevancy cannot be squared with the First Circuit's remand or with the Court's directive that the parties engage in discovery as a prelude to an evidentiary hearing on Defendants' Rule 60(b)(6) motion.

The First Circuit repeatedly has identified the existence of meritorious defenses and the absence of unfair prejudice to the opposing party as two factors that must be considered when deciding whether Rule 60(b)(6) or Rule 55(c) relief should be granted. *See Indigo Am., Inc. v. Big Impressions, LLC*, 597 F.3d 1, 3 (1st Cir. 2010) ("three [factors] typically considered are (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented"); *Ungar v. PLO*, 599 F.3d 79, 83 (1st Cir. 2010) (identifying "the extent of any prejudice to the opposing party" and "the existence or non-existence of meritorious claims of defense" as factors relevant to the Rule 60(b)(6) analysis); *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir. 1992) (same); *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989) ("In

determining whether to set aside a default decree, the district court should consider whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.") (internal citation and quotation omitted).  Moreover, Rule 60(b)(6) relief may be granted only if "extraordinary circumstances" are present.  *Ackermann v. United States*, 340 U.S. 193, 199 (1950); *Ungar*, 599 F.3d at 84 ("the 'extraordinary circumstances' needed to obtain Rule 60(b)(6) relief may arise, albeit in *rare* instances, even after a willful default").

Because the meritorious defense, prejudice, and extraordinary circumstances factors -- among other factors -- all are relevant to Defendants' entitlement to Rule 60(b)(6) relief, these factors are the legitimate subject of the pre-hearing discovery authorized by the Court.  The discovery requests at issue are most obviously relevant to the meritorious defense factor because they seek documents and information underlying the allegations Plaintiffs made regarding PA or PLO liability for Mr. Ungar's murder.  The Plaintiffs' objections regarding the irrelevance of discovery as to meritorious defenses are inconsistent both with First Circuit authority cited above and with other positions Plaintiffs have taken.

In their objection, Plaintiffs quote *Indigo America, Inc. v. Big Impressions, LLC*, 597 F.3d 1, 4 (1st Cir. 2010), for the proposition that "[e]stablishing the existence of a meritorious defense is not a particularly arduous task" because a "party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." Exh. 1 at 13.  But, although Plaintiffs are objecting to discovery related to the merits of their allegations against the PA/PLO on the basis that the Rule 60(b)(6) meritorious defense requirement is a pleading standard and need not be supported with evidence, Plaintiffs have refused to concede that Defendants have satisfied the meritorious defense standard.  In their

opposition to the PA/PLO's Rule 60(b)(6) motion and in their brief filed for the First Circuit appeal, Plaintiffs vigorously maintained that the PA/PLO failed to assert a meritorious defense. *See* Dkt. No. 415 ("Plaintiffs-Judgment Creditors' Memorandum in Opposition to Defendants' Motion for Relief from Default Judgment") at 49-58; Dkt. No. 431 ("Surreply in Further Opposition to Defendants' Motion for Relief from Judgment") at 1-7, 10-13, 15-17; Brief for Plaintiffs-Appellees filed Oct. 19, 2009 at 74 ("In sum, notwithstanding their 'periphrastic circumlocutions [and] hyperbolic rodomontade,' defendants have failed to assert a cognizable meritorious defense"). So long as the Plaintiffs are unwilling to concede that Defendants have sufficiently pled a meritorious defense, the PA is entitled to conduct discovery to establish the existence of a meritorious defense. This is especially the case given the procedural posture of the pending Rule 60(b)(6) motion, where the Court has told the parties that it wants an *evidentiary* hearing.

In addition to resisting the discovery on the ground that the meritorious defense standard is easily met through pleading but refusing to acknowledge that the PA/PLO have satisfied the standard here, Plaintiffs are at the same time seeking discovery of the PA/PLO related to meritorious defenses. For example, Plaintiffs have sought "[a]ll documents relating to, referring to and/or evidencing the PA's active efforts to 'quash' HAMAS's influence in the West Bank and Gaza and to cut off funding to HAMAS from international sources" and "[a]ll documents relating to, referring to and/or evidencing the Defendants' claim that . . . HAMAS 'indisputably' committed the shooting." *See* Exh. 3 (Plaintiffs-Judgment Creditors' Third Request of Defendant-Judgment Debtor the Palestinian Authority for Production of Documents and Things Relevant to Defendants-Judgment Debtors' Rule 60(b)(6) Motion) at 10 (Request Nos. 6(b), 6(d)). *See also id.* at 9-12 (Request Nos. 6(a), 6(c), 6(e)-6(l)). Plaintiffs' position that discovery

regarding the factual allegations in their complaint is irrelevant only when sought by Defendants is unsupportable.

In addition to arguing that discovery is not relevant because meritorious defense is a pleading standard, Plaintiffs also take the untenable position that the PA is "not permitted discovery from the plaintiff regarding the factual basis of the complaint." *See* Exh. 1 at 14 (Objection 1 to Interrogatory No. 12). The sole case on which Plaintiffs rely, *Sierra Foods, Inc. v. Haddon House Food Products, Inc.*, No. 90-cv-6841, 1991 WL 95287, at *10 (E.D. Pa. 1991), is readily distinguishable. *Sierra Foods* involved a party's attempt "to avoid and evade the normal litigation process by insisting upon extensive -- and one-sided -- pretrial discovery before responding to the complaint in order to secure a quick end to the litigation." *Sierra Foods, Inc. v. Haddon House Food Prods., Inc.*, No. 90-6841, 1992 U.S. Dist. LEXIS 16667, at *2 (E.D. Pa. Sept. 22, 1992).[1] In stark contrast, Defendant PA here seeks pre-hearing discovery in a period designated by the Court for such discovery on the very issues the Court will address in an evidentiary hearing.

Even if Plaintiffs concede or the Court concludes that the PA/PLO has satisfied the meritorious defense standard without need for further discovery because it is a pleading standard, the discovery the PA seeks nonetheless would be relevant to whether Plaintiffs would be prejudiced by vacatur and whether extraordinary circumstances are present. For example, if Plaintiffs have documentation or information regarding a particular PA official's knowledge or involvement in the *Ungar* incident, or lack thereof, such documents or information would be relevant to whether Plaintiffs are prejudiced by the individual's unavailability to testify. Given

---

[1] Interestingly, the District Court in this action later vacated its default judgment against the defendants and proceeded to allow litigation on the merits. *Sierra Foods*, 1992 U.S. Dist. LEXIS 16667, at *63-66.

that Plaintiffs had ample opportunity and motive to investigate Mr. Ungar's shooting through their contacts in Israel, documents and information currently in their possession regarding the incident are relevant to assessing the extent to which Plaintiffs are prejudiced by any loss of evidence resulting from the default. On the other hand, if Plaintiffs have no evidentiary support for the allegations made in their complaint, Plaintiffs' attempt to enforce a $116 million default judgment against the Palestinian Authority in the absence of any evidence that the PA is responsible for Mr. Ungar's death is an extraordinary circumstance that weighs into the PA's entitlement to Rule 60(b)(6) relief. In short, therefore, even if the sought-after discovery were blocked as to the assertion of a meritorious defense, it is relevant to the issues of prejudice and extraordinary circumstances.

    2.    <u>Objection 2 to Interrogatory No. 12, Incorporated and Re-Alleged as to Interrogatory Nos. 13-18, and Objection 2 to Request No. 8, Incorporated and Re-Alleged as to Request Nos. 9-14</u>

In addition to the relevancy objection, Plaintiffs objected as to Interrogatory Nos. 12-18 on the ground that they allegedly "seek[] information within the exclusive knowledge and/or possession of the defendants that the plaintiffs sought to discover but defendants refused to provide prior to entry of judgment in this action." *See, e.g.*, Exh. 1 at 14 (Objection 2 to Interrogatory No. 12). Similarly, Plaintiffs objected to Request Nos. 8-14 on the basis that they "seek[] documents within the exclusive possession, custody and/or control of the defendants and/or that are located in the Gaza Strip that plaintiffs sought but defendants refused to provide prior to entry of judgment in this action." *See, e.g.*, Exh. 2 at 6 (Objection 2 to Request No. 8). In their answer to the interrogatories and responses to the document requests, Plaintiffs did not, however, state that they have no responsive information or documents.

Plaintiffs' position that the PA/PLO have *exclusive* knowledge and or/or possession of documents and information related to the allegations in Plaintiffs' complaint strains credulity. Plaintiffs presumably had a Rule 11(b) basis for the factual contentions in their 2000 complaint and 2001 amended complaint, none of which was qualified with the statement that it was made "on information and belief." *See* Fed. R. Civ. P. 11(b)(3) (requiring that factual contentions in pleadings "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"). Moreover, Plaintiffs presumably conducted an investigation in the four years between the incident and the filing of the complaint and while the lawsuit was pending but before the default occurred. In addition, Plaintiffs sued Iran in the District of Columbia alleging its liability for the Ungar killing, culminating in an evidentiary hearing. *See Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 94 (D.D.C. 2002).

If Plaintiffs represent that they have no evidentiary support for the allegations in their complaint and, further, have no documents or information supporting the allegations in their complaint, Defendants will withdraw Interrogatory Nos. 12-18 and Request Nos. 8-14. If Plaintiffs are not prepared to make that representation, then Defendants are entitled to the discovery.

3.     <u>Objection 3 to Interrogatory No. 12, Incorporated and Re-Alleged as to Interrogatory Nos. 13-18, and Objection 3 to Request No. 8, Incorporated and Re-Alleged as to Request Nos. 9-14</u>

Plaintiffs objected to Interrogatory Nos. 12-18 for the additional reason that they allegedly "ask[] for an opinion or contention that relates to fact or the application of law to fact in respect to the underlying allegations of the action, despite the fact that defendants refused to provide any discovery regarding the underlying allegations of the action." *See, e.g.*, Exh. 1 at 14

(Objection 3 to the PA's Interrogatory No. 12).   Similarly, Plaintiffs objected to Request Nos. 8-14 on the ground that they seek "documents supporting an opinion or contention that relates to fact or the application of law to fact in respect to the underlying allegations of the action, despite the fact that defendants refused to provide any discovery regarding the underlying allegations of the action." *See, e.g.,* Exh. 2 at 6 (Objection 3 to Request No. 8).

Plaintiffs cannot delay their answers to Defendant PA's contention interrogatories or requests for production on the grounds that they seek information that relates to fact or the application of law to fact.   Contention interrogatories, *i.e.*, those interrogatories that inquire into an opinion or contention that relates to fact or the application of law to fact, are a permissible form of written discovery.   Indeed, Federal Rules of Civil Procedure 33(a)(2) explicitly provides: "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ." Fed. R. Civ. P. 33(a)(2).   Moreover, "a contention interrogatory should be treated in the same manner as any other interrogatory, with the burden on the party opposing discovery to show why it cannot answer." 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 33.02[2][b] (3d ed. 2010).

The Plaintiffs have not provided substantive answers to the seven interrogatories at issue or Request Nos. 8 through 12.   Despite their lack of response, Plaintiffs attempt to "reserve the right, pursuant to Fed. R. Civ. P. 26 and 33(a)(2), to answer this Interrogatory at a later time, if their objections to this Interrogatory are overruled." *See, e.g.,* Exh. 1 at 14 (Objection 3 to Defendant's Interrogatory Nos. 12).   Plaintiffs rely on a provision in Rule 33(a)(2), under which "the court may order that the interrogatory need not be answered until designated discovery is

complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2).[2]  Rule

33(a)(2), however, does not create a self-declared right to defer answers to contention

interrogatories.  Rather, it gives the district court discretion to grant a deferral when appropriate.

*See* Fed. R. Civ. P. 33 advisory committee's note to 1970 Amendment ("Since interrogatories

involving mixed questions of law and fact may create disputes between the parties which are best

resolved after much or all of the other discovery has been completed, the court is expressly

authorized to defer an answer.").  *See also Hypertherm, Inc. v. American Torch Tip Co.*, No. 05-

cv-373-JD, 2008 U.S. Dist. LEXIS 108269, at *7 (D.N.H. Dec. 29, 2008) (explaining that the

"general view is that contention interrogatories are a perfectly permissible form of discovery, to

which a response ordinarily would be required") (internal quotation and citation omitted);

*Natural Resources Defense Council v. Curtis*, 189 F.R.D. 4, 13 (D.D.C. 1999) ("[W]hile a court

has discretion to postpone respones to contention interrogatories until some other point in the

discovery process, plaintiffs provide me with no reason to exercise my discretion to do so now.

[Defendant] is therefore entitled to the discovery it seeks now rather than later.").

     If Plaintiffs wanted to defer answering these interrogatories, they should have sought

relief from the Court instead of unilaterally declaring themselves entitled to such relief.  In

*Huthnance v. District of Columbia*, 255 F.R.D. 297, 298-99 (D.D.C. 2008), the Court found that,

even assuming the defendants' interrogatories could be deemed contention interrogatories, and

that answers could appropriately be deferred until the close of discovery, "this does not absolve

plaintiff of her responsibility to reply to them in a timely fashion."  Rather, "[p]laintiff should

---

[2] Plaintiffs also attempt to "reserve" the right to defer their responses to Defendants' Request for Production Nos. 8 through 12, pursuant to unlisted "Federal Rules of Procedure." *See* Exh. 2 at 6-7. Defendant PA can locate no basis in the Federal Rules of Civil Procedure or case law for this supposed right. To the degree any such right exists, it can only be through a Rule 33(a)(2) analysis by analogy.

have responded to defendants' interrogatories to the best of her ability at the time they were propounded. Alternatively, plaintiff should have sought relief from the court in the form of a protective order, seeking to delay her responses until other events had transpired." *Id.* at 299. Therefore, in *Huthance*, the court ruled that plaintiff's options were either (1) timely answer the interrogatories to the best of her ability, or (2) file a motion for a protective order. *Id.* The approach taken by plaintiff, whereby she "*sua sponte* granted herself an extension of time within which to answer them," was not authorized by the Rule. *Id.* Granting the defendants' motion to compel, the court concluded: "[plaintiff] must answer the interrogatories." *Id.* at 300.

Such is precisely the case here. Unwilling to timely answer the PA's interrogatories and requests for production, Plaintiffs *sua sponte* sought an extension to respond until a "later time," inappropriately shifting the burden to the Defendant to seek an order compelling answers and responses. Even were Plaintiffs otherwise entitled to an order postponing their answers, their failure to proactively seek such relief effectively waives their right to now seek the Court's intercession by opposing Defendant's Motion on this point. Thus, Plaintiffs must answer the interrogatories and provide the information they have to date, with the understanding that Rule 26(e) allows them to amend or supplement their answers as they obtain additional information. *See* 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 33.02[2][b] (3d ed. 2010) ("a party may provide answers based on information it has to date, and amend or supplement its answers at a later date pursuant to Rule 26(e)"). Finally, given that discovery closes on November 19, 2010, and that the answers and documents sought by these discovery requests likely will lead to further requests or deposition notices, it is urgent that Defendants obtain appropriate responses at this time.

4.    Objection 2 to Request Nos. 15, 17-19

Document Request Nos. 15 and 17-19 sought documents Plaintiffs obtained in

connection with their litigation of *Ungar v. Islamic Republic of Iran*, No. 00-CV0260 (D.D.C.,

filed October 27, 2000). Specifically, Defendants sought:

- All documents received by the Plaintiffs pursuant to a Letter of Request for Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or commercial Matters sought and issued October 24, 2001 in the civil action captioned *Ungar, et al v. Islamic Republic of Iran, et al*, No. 00-CV0260 (D.D.C., filed Oct., 27, 2000) (hereinafter "*Ungar v. Iran*"). (Request No. 15)

- All documents provided by the Plaintiffs to, or relied upon in connection with, the testimony of Roni Shaked, Dr. Reuven Paz, and Dr. Patrick Clawson relating to their expert testimony in *Ungar v. Iran*. (Request No. 17)

- Any and all curriculum vitae and published writings or speeches of Roni Shaked, Dr. Reuven Paz, Dr. Patrick Clawson, and Yehudit Barsky. (Request No. 18)

- All documents, including but not limited to affidavits, diagrams, illustrations, transcripts, translations, records, and photographs, submitted to the Court during the January 2001 evidentiary hearing in *Ungar v. Iran*. (Request No. 19)

Plaintiffs objected to these requests "to the extent [the discovery] seeks the production of

documents already in defendants' possession and/or available to the public in the *Ungar v. Iran*

case file, since the production and/or redundant production of such documents by plaintiffs

would entail unreasonable burden and expense to plaintiffs." *See, e.g.*, Exh. 2 at 12 (Objection 2

to Request No. 15).

This objection is inadequate for the simple reason that the requested documents are not

available to the public in the *Ungar v. Iran* case file, nor are they already in Defendants'

possession. Indeed, Defendant PA is unaware of any public case file which would contain

documents received by Plaintiffs in response to a Hague Request (sought through Request No.

15), provided by Plaintiffs to experts (sought through Request No. 17), constituting curriculum

vitae and published writings of Plaintiffs' experts in *Ungar v. Iran* (sought through Request No.

18), or submitted to the District of Columbia District Court during a January 2001 evidentiary hearing in *Ungar v. Iran* (sought through Request No. 19). Unless Plaintiffs can direct Defendant PA to the publicly available information sought in these requests, Plaintiffs must produce all responsive documents. *See, e.g., Ambat v. City & Cty. of San Francisco*, No. C 07-03622 SI, 2009 U.S. Dist. LEXIS 93505, at *2-4 (N.D. Cal. Sept. 18, 2009) (ordering responding party to produce certain documents that it alleged were publicly available when requesting party could not locate or obtain the documents).

Plaintiffs provide no basis for their assertion that the production of the discrete set of documents collected for and used as exhibits in *Ungar v. Iran* -- a lawsuit as to which they were parties and which relates to the very incident at issue in this case -- entails unreasonable burden or expense.

Finally, in response to Defendant's Request No. 16, which seeks documents received by Plaintiffs in response to a different *Ungar v. Iran* Hague Request than that specified in Request No. 15, Plaintiffs make the same objection but respond by stating if "plaintiffs locate any responsive documents they will produce them." *See* Ex. 2 at 12. Plaintiffs make no attempt to distinguish Request Nos. 15 and 16 or otherwise explain this contradictory position. Defendants have sought documents related to the Ungar shooting from the State of Israel through their own Hague Request in this case, *see* Dkt. No. 505, but have not yet received any response.

## CONCLUSION

For the foregoing reasons, Defendant PA's Motion to Compel Answers to the PA's Interrogatory Nos. 12, 13, 14, 15, 16, 17 and 18 and Request for Production Nos. 8, 9, 10, 11, 12, 13, 14, 15, 17, 18 and 19 should be granted.

Respectfully submitted,

Dated:  September 14, 2010

/s/ Mark J. Rocohon
Mark J. Rochon (D.C. Bar #376042)
Admitted *pro hac vice*
Richard A. Hibey (D.C. Bar #74823)
Admitted *pro hac vice*
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
mrochon@milchev.com

Deming E. Sherman (#1138)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, Rhode Island 02903
Tel. (401) 274-9200
Fax. (401) 276-6611
dsherman@eapdlaw.com

*Attorneys for the Palestinian Authority and
the Palestine Liberation Organization*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 14th day of September, 2010, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to:

> David J. Strachman
> McIntyre, Tate & Lynch, LLP
> 321 South Main Street, Suite 400
> Providence, RI 02903
> djs@mtlhlaw.com
>
> Max Wistow
> Wistow and Barylick Incorporated
> 61 Weybosset Street
> Providence, RI 02903
> mwistow@wistbar.com
>
> *Attorneys for Plaintiffs*

> /s/ Mark J. Rochon