# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

        Plaintiffs – Judgment Creditors,

v.                                    C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.,

        Defendants – Judgment Debtors.

## (CORRECTED[*]) MEMORANDUM IN SUPPORT OF PLAINTIFFS-JUDGMENT CREDITORS' MOTION FOR SUMMARY DENIAL OF THE MOTION TO INTERVENE FILED BY "THE PALESTINIAN PENSION FUND FOR THE STATE ADMINISTRATIVE EMPLOYEES IN THE GAZA STRIP" AND FOR ALTERNATE RELIEF

### Introduction

The Rule 60(b)(6) motion to vacate filed by Defendants-Judgment Debtors Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") (collectively: "Defendants") is now pending before this Court and, pursuant to the Court's order of June 1, 2010, the Plaintiffs-Judgment Creditors ("Ungars") are currently attempting[1] to conduct discovery regarding the

---

[*] The Ungars' original memorandum in support of their motion (dkt. # 521) combined two earlier and quite different drafts. For reasons that are unclear the process of combining the drafts did not succeed and the memorandum wound up containing numerous errors – ranging from the substance and structure of the memorandum to even its nomenclature and formatting. This corrected memorandum supersedes the original memorandum entirely. Out of fairness, the Ungars agree that the Insurance and Pension Fund's time to oppose the instant motion should run from the date of the filing of this memorandum.

[1] Defendants are refusing to respond to many of the Ungars' discovery requests and the Ungars have been constrained to seek judicial intervention to compel discovery (*see* dkt. # 519). Unfortunately, it appears that, due to Defendants' discovery conduct, additional such motion practice will be necessary.

factual questions relevant to Defendants' motion to vacate in advance of the evidentiary hearing on that motion scheduled for January 18, 2011.

On August 18, 2010, the Insurance and Pension Fund, which serves as the civil-service pension agency of the PA, filed a Motion to Intervene in this action for the purpose of seeking to vacate or modify the injunction entered by this Court in May 2005 prohibiting the Defendants from removing their assets from the United States. Dkt. # 511.

The Motion to Intervene is nothing less than an attempt by the PA, made via an affiliate and agency of the PA, to remove assets subject to execution by the Ungars from the U.S. prior to the conclusion of execution proceedings pending in New York regarding those assets.

The Motion to Intervene – which would first require litigation of whether intervention is proper and then, if intervention is granted, of whether the relief sought should be granted – also appears intended to divert the attention and the resources of the Court and the Ungars from both the upcoming hearing on the Rule 60(b)(6) motion and Defendants' refusal to provide discovery on that motion and the motion practice engendered thereby.

Fortunately, however, there is no reason for the Court or the Ungars to waste their limited resources on the Motion to Intervene. As shown below, the Motion to Intervene can and should be *summarily denied* because it was filed under a fictitious name (the *claimed* pseudonym of the Insurance and Pension Fund), because it does not comply with the requirements of Fed.R.Civ.P. 24(c) and because it improperly seeks a conditional/partial intervention not recognized by the law – i.e. intervention without subjecting the intervenor to the personal jurisdiction of this Court.

Furthermore, additionally and/or alternatively, briefing on the Motion to Intervene can and should be *stayed* pending four events which will moot and/or significantly impact the Motion to Intervene: (i) the resolution by the New York state court of a motion filed by the

Ungars to appoint a receiver to retain a securities custodian for the assets in New York that are the subject of in the Motion to Intervene (ii) the resolution by the U.S. District Court for the Eastern District of New York of the Ungars' pending requests to obtain discovery highly relevant to the Motion to Intervene (iii) this Court's disposition of Defendants' objections to Magistrate Judge Martin's May 12, 2010 decision recommending entry of an installment payment order against Defendants and (iv) this Court's disposition of the Rule 60(b)(6) motion.

## RELEVANT BACKGROUND

The factual background relevant to this motion is succinctly set forth below.

## I.    The Funds at Issue

In May 2005, immediately after the First Circuit affirmed the July 2004 judgment entered by this Court, the Ungars restrained a securities portfolio held by Swiss American Securities, Inc. ("SASI"), a New York-based securities custodian, that are titled in the name "Palestinian Pension Fund of the State Administrative Employees Represented by the P[alestinian] N[ational] A[uthority]." *See* Exhibit A.[2]

Very briefly, the origin of these securities is as follows:

After Israel captured the Gaza Strip in June 1967, it established a civil administration for Gaza residents composed almost entirely of local Palestinians. These Gazan civil servants were effectively employees of the Israeli government (i.e. of the Israeli Ministry of Defense) and their pension contributions were deducted from their salaries at the source by Israel and listed on the books of the Israeli Treasury as a future debt to the employees. After the signing of the Oslo

---

[2] Exhibits A-N referenced in the instant corrected memorandum are those filed with the Ungars' original (superseded) memorandum at dkt. # 521-222. Exhibits O-R were omitted from the original memorandum and are being filed herewith.

Accords, which provided for the dismantling of the Israeli civil administration in Gaza, the PA agreed to assume Israel's total *in personam* pension debt to these Gazan civil servants. In order to compensate the PA for its assumption of this debt, in the mid-1990's Israel transferred to the PA a cash sum equal to the amount of the debt. Thus, the cash funds that were transferred to the PA are the property of the PA. The employees have no *in rem* rights to these funds; rather, they have an *in personam* right to payment of their pensions from the PA, just as they previously had such an *in personam* right to such payment from Israel. *See* Exhibits B and C.

The PA used these funds to purchase a portfolio of securities, which it holds under the d/b/a name "Palestinian Pension Fund of the State Administrative Employees."

The fact that the "Palestinian Pension Fund of the State Administrative Employees" is not the name of any legal entity was confirmed by no less than James R. Tanenbaum, Esq., who has managed these securities for over a decade, first as an attorney at Stroock, Stroock & Lavan and currently at Morrison & Foerster – the same law firm that filed the Motion to Intervene. On April 19, 2005 (just *before* the Ungars initiated their enforcement proceedings against these assets) attorney Mr. Tanenbaum certified before a witness that the "Palestinian Pension Fund of the State Administrative Employees" has "**no legal personality**." *See* Exhibit D.[3]

## II.    The New York Proceedings

The Ungars' restrained the securities at SASI by means of both the injunction issued by this Court on May 5, 2005, and a New York State restraining notice and execution.

_____

[3] Notably, while he was managing these securities at Stroock, Mr. Tanenbaum registered with the Department of Justice **as an official foreign agent of the PA**. *See* Exhibit E, pp. 5-6. Mr. Tanenbaum did not renew his registration with the Justice Department after moving to Morrison & Foerster, despite the fact that he continues to manage these assets as before.

On December 7, 2005, the Insurance and Pension Fund, represented by Morrison & Foerster, filed a motion to vacate the New York State Restraining Notice served upon SASI, claiming that it owns the securities at SASI titled to the "Palestinian Pension Fund of the State Administrative Employees."

The sole basis for the Insurance and Pension Fund's assertion that it owns these securities is the claim that the Insurance and Pension Fund is purportedly sometimes also known by the alias "Palestinian Pension Fund of the State Administrative Employees."

I.e., the Insurance and Pension Fund admits that the name "Palestinian Pension Fund of the State Administrative Employees" is merely an alias or d/b/a/, but claims that this name is a d/b/a for the Insurance and Pension Fund and not, as the Ungars assert, for the PA.

On February 14, 2006, the Ungars filed two new actions in New York: a turnover proceeding against SASI and a declaratory judgment action seeking a judgment finding that the assets at issue are owned by the PA and are not owned by the Insurance and Pension Fund.

At a hearing on May 18, 2006, New York State Supreme Court Justice Shirley W. Kornreich dismissed the turnover proceeding without prejudice to renewal after the conclusion of the declaratory judgment action. Significantly, Justice Kornreich emphasized that she was dismissing the state court turnover proceeding – and thereby lifting the state court restraint on the securities – first and foremost "because there is still the Federal Injunction. The[] funds are going nowhere. These funds are being held here by the Federal Injunction. We don't need multiple proceeding holding these funds." Tr. May 18, 2006 at p. 45:6-14.[4]

---

[4] This transcript is attached as Exhibit I to the Declaration of Mark David McPherson, dkt. # 511.

Thus, Justice Kornreich only agreed to lift the state court restraint on the securities, as the Insurance and Pension Fund requested, because these assets would in any case **remain restrained by the injunction issued by this Court**.

The declaratory judgment proceeded to discovery at the close of which the Insurance and Pension Fund moved for summary judgment. Justice Kornreich denied the Insurance and Pension Fund's motion for summary judgment, after finding, *inter alia*, that

> ❖ it had "not presented evidence that adequately explains the use of different names for what they now say is the same Pension Fund,"
>
> ❖ its "evidence does not clarify to what extent the PA or the Insurance and Pension Fund control the [portfolio at issue], whether the latter is even being used as a *pension* fund, and the sources of the funds," and
>
> ❖ it "provide[d] conflicting explanations of how the funds have been and will be used and for whose benefit."

Exhibit F at pp. 8-10.

Justice Kornreich also denied the Insurance and Pension Fund's motion to strike the Ungars' jury demand.

In the meanwhile, on August 19, 2008, the Insurance and Pension Fund moved to stay the trial pending the ruling of the Appellate Division of the New York Supreme Court on whether the Ungars have a right to trial by jury and pending the outcome of the Motion to Vacate filed in this case. Exhibit G. In support of its Motion to Stay the Trial, the Insurance and Pension Fund took the position that there was "substantial identity between [the] state and federal actions," and that "there is … substantial identity between the parties in the two actions." *Id.* at p. 9. The New York court granted the motion solely on the second ground, ruling "that this motion is granted to

the extent of staying the trial pending decision by Judge Lagueux of Federal Court in Rhode Island." Exhibit H.

Subsequently, on March 30, 2010, the Appellate Division affirmed the lower court's decision on the jury, and held that the declaratory judgment action should tried to a jury. *See Strachman v. PA*, 73 A.D.3d 124, 901 N.Y.S.2d 582 (1st Dept. 2010).

Thus, the determination of the parties' rights to the securities at issue has been stayed for the last two years, at the request of the Insurance and Pension Fund. The Insurance and Pension Fund first elicited the New York court's deference to this Court for purposes of determining the Motion to Vacate (*see* Exhibit G at p. 9) yet, now has the temerity to complain of the delay resulting from this deference and asks that this Court circumvent the New York action entirely.

## ARGUMENT

### I.    The Motion to Intervene Should Be Summarily Denied Because It Was Not Filed in the Insurance and Pension Fund's Legal Name

The undisputed ***statutory legal name*** of the Insurance and Pension Fund under the Egyptian and Palestinian laws relied on by the Insurance and Pension Fund itself and which is used in the Insurance and Pension Fund's ***own*** board minutes is just that – i.e. "Insurance and Pension Fund." *See* Exhibits O, P, Q, R.

In the New York declaratory judgment action the Insurance and Pension Fund claims that it owns the securities at issue, which are titled to the "Palestinian Pension Fund of the State Administrative Employees" (*see* Exhibit A) because it purportedly "goes by number of similar, but different names" and "has been referred to over the years by a number of names, including … the Pension Fund of the State Administrative Employees." Exhibit F at p. 7-8.

The New York court rejected this alias claim as unsupported, finding that the Insurance and Pension Fund had not "presented evidence that adequately explains the use of different names for what they now say is the same Pension Fund." *Id*. at 8.

Moreover, as noted, attorney James R. Tanenbaum, who has managed these securities for over a decade and is a partner at Morrison & Foerster, which filed the Motion to Intervene and represents the Insurance and Pension Fund in the New York proceedings, formally certified (shortly *before* the Ungars initiated their enforcement proceedings) that the "Palestinian Pension Fund of the State Administrative Employees" has "**no legal personality**." Exhibit D.

Yet, despite the fact that the statutory *legal* name of the Insurance and Pension Fund is "Insurance and Pension Fund" (*see* Exhibits O, P, Q, R) and that the name "Palestinian Pension Fund for the State Administrative Employees" is merely an *alias* that the Insurance and Pension Fund claims to be known by – a claim that the New York court found unsupported by evidence (*see* Exhibit F at 8) – and despite the fact that a Morrison & Foerster attorney has certified that the "Palestinian Pension Fund of the State Administrative Employees" has "no legal personality" (*see* Exhibit D) the Insurance and Pension Fund has filed its Motion to Intervene in this Court using its claimed alias – "Palestinian Pension Fund for the State Administrative Employees" – rather than its proper legal name – i.e., "Insurance and Pension Fund."

The entire controversy between the Ungars and the Insurance and Pension Fund is whether the name "Palestinian Pension Fund for the State Administrative Employees" is an alias for the PA or for the Insurance and Pension Fund. Any right of the Insurance and Pension Fund to intervene would also turn on this issue. Clearly, then, the Insurance and Pension Fund has sought to **prejudge** the very question at issue by improperly filing its Motion to Intervene in this Court using its alleged alias, rather than its acknowledged legal name.

That, the Insurance and Pension Fund cannot do. Rule 10(a) of the Federal Rules of Civil Procedure requires that pleadings identify the parties. An entity cannot sue under a pseudonym, but must bring an action using its real name. *In re South Central States Bakery Products Antitrust Litigation*, 86 F.R.D. 407, 411 n. 4 (M.D.Ga. 1980). "Actions may be brought only by legal entities. There must be some ascertainable persons natural or artificial to whom judgment may be awarded, and no suit can lawfully be prosecuted except in the name of such person." 59 Am.Jur.2d Parties §24 (citations omitted).

The filing of the Motion to Intervene under the name "Palestinian Pension Fund of the State Administrative Employees" is particularly egregious, considering that an attorney in Morrison & Foerster, the firm that filed the motion, has expressly confirmed that this name does not denote an entity with "legal personality." Exhibit D.

Accordingly, the Motion to Intervene must be denied without prejudice. It can be re-filed in the name of the Insurance and Pension Fund.

## II. The Motion to Intervene Should Be Summarily Denied Because It Does Not Comply With Fed.R.Civ.P. 24(c)

Rule 24(c) of the Federal Rules of Civil Procedure provides in relevant part that a Motion to Intervene "must … be accompanied by a pleading that sets out a claim or defense for which intervention is sought." Fed.R.Civ.P. 24(c). The First Circuit has held that the "language of the rules is mandatory, not permissive, and the rule sets forth a reasonable procedural requirements to ensure that claims for intervention are handled in an orderly fashion." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783-784 (1st Cir. 1988).

In this case, the Insurance and Pension Fund has failed to attach any proposed pleading to its Motion for Intervention. Nor did the Insurance and Pension Fund adopt any of the pleadings already filed in this case. This is a violation of the mandatory requirements of Rule 24(c) that the

motion attach "a pleading setting forth the claim or defense for which intervention is sought." "Rule 24(c) requires this in order 'to enable the court to properly evaluate the issues, and to inform the parties against whom some right is asserted or relief sought.'" *Township of South Fayette v. Alleghany County Housing Authority*, 183 F.R.D. 451, 453 (W.D.P.A. 1998), quoting *In re:  Pantopaque Products Liability Litigation*, 938 F.Supp. 266, 274 (D.N.J. 1996). "The purpose of requiring an intervenor to file pleadings is to place the parties on notice of the claimant's position, the nature and basis of the claim asserted, and the relief sought by the intervenor. *Dillard v. City of Foley*, 166 F.R.D. 503, 506 (M.D.Ala. 1996).

Accordingly, intervention has often been denied where, as here, the intervenor failed to append the proposed pleading in intervention to the motion to intervene. *See, e.g., Surety Administrators Inc. v. Samara*, 2006 WL 1737390 (E.D.Pa. 2006), p. 3; *Township of South Fayette v. Alleghany Cty. Housing Authority*, 183 F.R.D. 451, 453 (W.D.Pa. 1998); *Dillard v. City of Foley*, 160 F.R.D. 503, 506 (M.D.Ala. 1996). *See also Public Citizen*, 858 F.2d at 784 (affirming allowance of intervention without formal compliance with the Rule 24(c), but stating that "[f]uture litigants should not attempt to use this opinion to circumvent the clear requirements of the rule."), quoting *Beef Industry Anti-Trust Litigation*, 589 F.2d 786, 789 (5th Cir. 1979).

In most instances, an order denying a motion to intervene is immediately appealable. However, if the denial of the motion to intervene is based upon the movant's failure to submit a proposed pleading, such a denial is <u>not</u> a final appealable judgment, provided that the denial is without prejudice and the court makes clear that it will consider a resubmitted motion to intervene that complies with the procedural requirements of Rule 24(c). *U.S. v. City of Milwaukee*, 144 F.3d 524, 530 (7th Cir. 1998).

There is no reason or necessity in this case to overlook the Insurance and Pension Fund's failure to comply with the mandatory requirements of Rule 24(c).

Therefore, the Motion to Intervene can and should be denied without prejudice to renewal, provided that any renewed motion filed by the Insurance and Pension Fund be accompanied by a proposed pleading, as required by Rule 24(c).

### III. The Motion to Intervene Should Be Summarily Denied Because the Insurance and Pension Fund Improperly Seeks to Intervene Without Subjecting Itself to the Court's Personal Jurisdiction

The Insurance and Pension Fund seeks to intervene in this action and vacate the injunction, without acceding to this Court's jurisdiction over it:

> Although the Pension Fund seeks to intervene to test the propriety of this Court's Injunction, it reserves its objection to personal jurisdiction in this proceeding … [T]his motion should in no way be seen as consent to personal jurisdiction for any other aspect of this proceeding, or a waiver of any objections related to this issue.

Dkt. # 511-1 at p. 15, n. 2.

Beyond the simple illogic of a movant seeking relief from a court while denying that court's jurisdiction over it, the Insurance and Pension Fund's request is improper and contrary to governing law, "[T]he intervenor has submitted to the personal jurisdiction of the court by seeking to intervene in the action." Wright, Miller & Kane, *Federal Practice & Procedure Civil 3d* §1920. *Accord*, *Gradel v. Piranha Capital L.P.*, 495 F.3d 729, 731 (7th Cir. 2007); *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1248 (11th Cir. 2006); *County Security Agency v. Ohio Department of Commerce*, 290 F.3d 477, 483 (6th Cir. 2002); *U.S. v. State of Oregon*, 657 F.2d 1009, 1014 (9th Cir. 1982).

To the contrary, if the Insurance and Pension Fund is ultimately permitted to intervene, it will thereby subject itself to the complete adjudication by the Court of all matters at issue between it and the Ungars. *U.S. v. State of Oregon*, 657 F.2d at 1014.

The Insurance and Pension Fund's attempt to preserve its objection to this Court's personal jurisdiction while seeking to intervene is not only prohibited by the Federal Rules, but evinces an intent to benefit from the favorable rulings of the Court while avoiding the Court's jurisdiction with respect to unfavorable rulings.

Accordingly, the Motion to Intervene should be denied without prejudice, on the grounds that the Insurance and Pension Fund is improperly seeking "partial" intervention that would not subject it to the personal jurisdiction of this Court.

## IV.    Additionally and/or Alternatively, Briefing on the Motion to Intervene Should Be Stayed Pending the Disposition of Other Relevant Proceedings

Additionally and/or alternatively – i.e., even if the Court denies the Ungars' motion to summarily deny the Motion to Intervene for the reasons set forth in Parts I-III above, or if it grants summary denial and the Insurance and Pension Fund then re-files its motion under its legal name accompanied by a Rule 24(c) pleading and without seeking to condition intervention on a limitation of the Court's personal jurisdiction – the Court should stay briefing on the Motion to Intervene pending the outcome of the following matters:

### i.    The New York State Court Motion for a Receiver

As discussed above, the New York state court has denied the Insurance and Pension Fund's motion for summary judgment, and the Ungars' declaratory judgment action is headed for a jury trial. The Ungars hope to prevail at trial and to satisfy their judgment from the securities portfolio at issue.

Naturally, the Ungars were therefore shocked and extremely disturbed to learn for the first time upon receiving the Motion to Intervene that the portfolio has lost **millions** in value, and may lose **millions** more because of the purported failure to find a securities custodian.[5]

Because this failure to retain a securities custodian may lead to a further loss in the value of the portfolio – which in turn threatens the Ungars' ability to enforce their judgment against these assets – the Ungars have filed a motion in the New York state court hearing the declaratory judgment action seeking the appointment of a temporary receiver empowered to retain such a custodian. Exhibit J.

The Ungars' motion for appointment of a receiver – and the disposition of that motion – are extremely relevant to the Motion to Intervene, because the gravamen of the Motion to Intervene is the alleged inability of Morrison & Foerster to find a securities custodian due to the existence of the injunction entered by this Court in May 2005.

If the New York state court appoints a temporary receiver who succeeds in retaining a securities custodian – which is extremely likely given that the size of the portfolio is $122 million, that potential custodians are certain to feel more comfortable dealing with an officer of the court such as a receiver rather than private attorneys and that the receiver can be trusted to make serious good-faith efforts – the gravamen of the Motion to Intervene will have evaporated.

Moreover, the Ungars' motion for a receiver effectively places responsibility for the preservation of the value of the portfolio solely and squarely in the hands of the New York court, which is only proper and fitting, given that (a) the securities at issue are located in New York (b)

---

[5] At this time the Ungars have no means of verifying these claims of loss and are thus accepting them as true at the moment out of caution and for the purpose of taking steps to preserve the assets. The Ungars reserve the right to examine and challenge the accuracy of these claims.

the securities have been the subject of five years of extensive litigation in that forum and (c) the New York Supreme Court is intimately familiar with the relevant issues necessary to preserve the assets, having supervised the litigation for years and having issued numerous prior rulings.

Indeed, if the Insurance and Pension Fund is sincere about wanting to find a securities custodian, it will consent to the Ungars' motion for appointment of a receiver.

Accordingly, the Insurance and Pension Fund's attempt to railroad this Court into immediate action by pointing to a "crisis" regarding these assets should be rejected.

On the contrary, the Motion to Intervene should be stayed in order to permit the New York court to resolve this issue in the context of the Ungars' motion for a receiver.

### ii.    The Discovery Sought by the Ungars Regarding the Motion to Intervene

The Motion to Intervene is founded on several bald and unsupported factual claims.

For example, the Insurance and Pension Fund claims that it needs to retain a new securities custodian because the current custodian Credit Suisse Securities LLC New York ("CSSU NY") is not adequate. The sole "support" offered by the Insurance and Pension Fund for this assertion is the following anemic statement: "CSSU NY is not able to provide the custodial services that the Pension Fund and/or its investment advisor needs to manage the assets." Declaration of Mark David McPherson ("McPherson Decl.") at ¶ 29.

Thus, the fulcrum of the Motion to Intervene – the claim that the Insurance and Pension Fund needs to retain a new securities custodian but is unable to do so due to the injunction issued by this Court – rests wholly on this unadorned claim that the current custodian "is not able" to provide the necessary services.

Likewise, the Insurance and Pension Fund admits that there are **other reasons unrelated to this Court's injunction** – reasons which the Insurance and Pension Fund intentionally

declines to reveal or identify – underlying the failure to retain a new securities custodian. *See* McPherson Decl.at ¶ 30 ("[E]ach potential custodian cited the Notice of Injunction **as one of the reasons** for their refusal to serve as custodian.") (emphasis supplied).

These carefully-crafted vague assertions clearly indicate that the Insurance and Pension Fund is hiding salient facts relevant to its motion and to the alleged loss of value of the assets.

Accordingly, in order to obtain the information necessary to respond to the Motion to Intervene and to take steps to protect the value of the assets against which they seek to enforce their judgment, the Ungars served the Insurance and Pension Fund's declarant, Mr. McPherson, with a deposition subpoena, served Morrison & Foerster with a document subpoena and served the current securities custodian, CSSU NY, with a document subpoena, all which were issued out the United States District Court for the Eastern District of New York. Exhibits K, L, M.

Mr. McPherson and Morrison & Foerster responded by filing a motion for a protective order and CSSU NY filed objections to the subpoenas. *See Ungar v. Palestinian Authority*, 10-mc-00593-SJ (E.D.N.Y.) Dkt. ## 1-3. The Ungars will oppose the motion for a protective order and move to compel production of the documents from CSSU NY.

The Insurance and Pension Fund and Morrison & Foerster, which control all the relevant documents and information, have come into this Court seeking to intervene but fail to disclose crucial factual details regarding CSSU NY's alleged inability to provide the necessary custodial services and the full reasons for the alleged inability to find an alternative custodian.

The Ungars should be permitted to discover this information before being required to respond to the Motion to Intervene.[6] Therefore, briefing on the Motion to Compel should be stayed pending the Eastern District's disposition of the Ungars' discovery requests.

### iii. The Objections to Magistrate Judge Martin's Decision on the Installment Payment Order and the Rule 60(b)(6) Motion

On May 12, 2010, Magistrate Judge Martin issued a decision recommending that the Defendants be required to pay the judgment by installments. Dkt. # 484.[7] Defendants filed objections to that decision. Dkt. # 485.

At a hearing on June 15, 2010, the Court decided to defer ruling on Defendants' objections to Magistrate Judge Martin's decision until it rules on the Rule 60(b)(6) motion. Minute entry June 15, 2010.

Briefing on the Motion to Intervene should be deferred until after the Court's ruling on Defendants' objections to Magistrate Judge Martin's decision for two reasons:

*First*, it would be unfair to allow the Ungars' proceedings against the securities portfolio at issue to be jeopardized by the Insurance and Pension Fund's motion to vacate the injunction that is keeping those securities in the United States, while Magistrate Judge Martin's decision ordering the Defendants to pay the judgment in installments (to the Ungars or into the registry)

---

[6] The Ungars respectfully believe that they are entitled to this discovery under Fed.R.Civ.P. 69, because it is necessary both to defend against the Insurance and Pension Fund's effort to release the restraint on the assets at issue and – irrespective of the Motion to Intervene – to take the steps required to preserve the value of the assets.

[7] In their response to objections to this filed by the Defendants, the Ungars agreed, *ex gratia*, that the Defendants could make the payments into the registry of the Court pending the disposition of the Rule 60(b)(6) motion. *See* Dkt. # 490 at p. 3.

remains in limbo. In other words, if the Ungars cannot now push *forward* with the enforcement ordered by Magistrate Judge Martin, they should also not be subject to being pushed *backward*.

*Second*, if Magistrate Judge Martin's decision is affirmed and the Defendants comply therewith, the Ungars will discontinue their proceedings against the securities at issue. Indeed, in their papers on the motion for an installment payment order the Ungars explicitly stated that if the installment payment order is entered, affirmed and honored, they would discontinue all their other enforcement efforts.

Therefore, the Court should defer briefing on the Motion to Intervene until after the Court's ruling on the Rule 60(b)(6) motion and on Defendants' objections to Magistrate Judge Martin's decision, which may well moot the Motion to Intervene entirely.

In the event that the Court believes that the Motion to Intervene should not await the disposition of the Rule 60(b)(6) motion, then the Ungars respectfully request that the Court rule now on Defendants' objections to Magistrate Judge Martin's decision.

## V.    A Stay of Briefing Is Particularly Appropriate Because the Motion to Intervene Is Clearly Without Merit

Staying briefing on the Motion to Intervene – and thereby preserving valuable resources – is also strongly supported by the fact that the Motion to Intervene is facially without merit, *inter alia* for the following reasons[8]:

❖    Rule 24(a)(2) provides that intervention will not be allowed "if existing parties adequately represent that interest." There is no question that the PA adequately represents any interest that the Insurance and Pension Fund might have in the assets at issue, since in June 2005,

---

[8] These few, succinct examples of the facial deficiencies of the Motion to Intervene are by no means meant to constitute an exhaustive list, much less an opposition on the merits.

the PA sent a letter to Secretary of State Rice to complain about the Ungars' enforcement proceedings *against these very assets* and to seek the intervention of the U.S. government. Exhibit N. Thus, the PA has already demonstrated that it can more than adequately represent any interest the Insurance and Pension Fund has in the assets at issue.

❖    The Motion to Intervene is facially untimely. A federal court must examine "the length of time that the putative intervenor know or reasonably should have known that his interests were at risk before he moved to intervene." *R&G Mortgage Corp. v. Federal Home Loan Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). The injunction at issue was entered over five years ago, on May 5, 2005, and the Insurance and Pension Fund took no action to challenge it. On the contrary, the Insurance and Pension Fund succeeded in obtaining the dismissal of the Ungars' New York turnover proceeding and vacatur of their New York state restraint, **on the basis** of the existence of the injunction. Tr. May 18, 2006 at p. 45:6-14.[9] Moreover, in September 2007, the Insurance and Pension Fund stipulated to a modification of the injunction. Exhibit I. That stipulation allowed the Insurance and Pension Fund (through its investment managers) to manage the securities, and prohibited the release of any funds to the Insurance and Pension Fund, stating that "this Order shall not permit the Investment Managers, SASI, or any other person or party" to pay any of these assets to the Insurance and Pension Fund, the PLO or the PA. *Id.* Additionally, the alleged inability to invest the assets has obtained, according to the Insurance and Pension Fund, since October 2008 – i.e. for nearly 2 years (!!). *See* McPherson Decl. at ¶ 30. Even if October 2008 is deemed to be the point in time "that the putative intervenor kn[e]w … that his interests were at risk," *R&G Mortgage Corp.*, 584 F.3d at 7, the motion is clearly untimely. *See*

---

[9] This transcript is attached as Exhibit I to the Declaration of Mark David McPherson, dkt. # 511.

*e.g. Rubin v. Islamic Republic of Iran*, --- F.Supp.2d ----, 2010 WL 3501554 at * 4 (D.D.C. Sept. 8, 2010) (intervention denied where proposed intervenor "took no action for two full months."). Finally, the Motion to Intervene is untimely because on August 19, 2008, the Insurance and Pension Fund itself successfully moved to stay the trial in the Ungars' declaratory judgment action, pending the outcome of the Defendants' Rule 60(b) motion in this Court. Exhibits G, H. By staying the declaratory judgment action, the Insurance and Pension Fund has **stayed the determination of its rights to the securities at issue for the last two years**. But for the stay obtained by the Insurance and Pension Fund, the declaratory judgment action would have gone to trial long ago. For this reason, too, the motion is clearly untimely.

❖    The Motion to Intervene is also facially without merit because, as noted *supra*, the Insurance and Pension Fund stipulated to a modification of the injunction that left the injunction in force and prohibited the release of any funds to the Insurance and Pension Fund. Exhibit I. This action constitutes a waiver of any claim by the Insurance and Pension Fund that that the injunction is legally improper.

There is no reason for this Court or the Ungars to expend their time and other resources resolving a motion that is so clearly flawed, especially since, as shown above, the motion is highly likely to be mooted by events in the near future.

## VI.    If All Relief Is Denied the Ungars Will Oppose the Motion on the Merits

If the Court declines to summarily deny the Motion to Intervene and/or to stay briefing thereon, the Ungars can and will oppose the motion on the merits.

Therefore, if the Court denies all the relief sought above, the Ungars respectfully request 14 days to file their opposition to the motion on the merits.

**WHEREFORE** the instant motion should be granted.

Dated: September 14, 2010

Plaintiffs-Judgment Creditors,
by their Attorneys,

/s/ David J. Strachman
David J. Strachman (#4404)
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com

Max Wistow (#0330)
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 14th day of September, 2010, I filed this memorandum and all exhibits thereto via ECF which served the following counsel of record:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701

Joseph V. Cavanagh, III
Joseph V. Cavanagh, Jr
Blish & Cavanagh LLP
30 Exchange Terrace
Providence, RI 02903

Charles L. Kerr
Mark David McPherson
Harold McElhinny
Morrison and Foerster
1290 Avenue of the Americas
New York, New York  10104

/s/ David J. Strachman