# EXHIBIT H

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------x

ESTATE OF YARON UNGAR,                                    :
DVIR UNGAR,                                               :
YISHAI UNGAR,                                             :
JUDITH UNGAR,                                             :
MEIR UNGAR,                                               :
MICHAL COHEN,                                             :
AMICHAI UNGAR and                                        :        Index No.: 105521/05
DAFNA UNGAR                                               :

        Plaintiffs - Judgment Creditors,                  :

                                                         :

THE PALESTINIAN AUTHORITY and                            :
THE PALESTINE LIBERATION ORGANIZATION                    :

        Defendants – Judgment Debtors.                   :

---------------------------------------------------------------x

## SWISS AMERICAN SECURITIES INC.'S AMENDED VERIFIED ANSWERS IN CONNECTION WITH INFORMATION SUBPOENA

      Swiss American Securities Inc. ("SASI"), by and through its undersigned attorneys, hereby submits the following amended Verified Answers in connection with the Information Subpoena served upon SASI in the above-captioned matter pursuant to New York Civil Practice Law and Rules § 5222 (b):

      1.    Do you and/or any of your branches or subsidiaries have an account or accounts and/or deposit(s) and/or portfolio(s) under any of the following names or permutations thereof:  **Palestinian Authority, Palestine Liberation Organization, Palestine Investment Fund (PIF), Palestinian National Authority (PNA), Palestine Commercial Services Corporation (PCSC), Palestinian National Fund, Palestine Monetary Fund (PMF), SAMED, PECDAR or Palestine Monetary Authority (PMA)?**

1

**ANSWER:**

SASI's records do not directly indicate any "account or accounts and/or deposit(s) and/or portfolio(s)" under any of the entities identified above.

However, SASI recently has been informed that it maintains publicly traded securities and debt instruments, as set forth in detail in Response No. 2 below, belonging to an entity called the Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip.

1.1.    If the answer to the previous question is yes, please state: (a) the number(s) of the account(s) deposit(s) or portfolio(s); (b) the identity of the assets in such account(s), deposit(s) or portfolio(s); (c) the market value of the assets in such account(s), deposit(s) or portfolio(s); (d) the dollar amount of cash in such account(s), deposit(s) or portfolio(s); (e) the exact name(s) and/or title(s) of such account(s), deposit(s) or portfolio(s).

**ANSWER:**

Account No. 95577031.  Account No. 95509891.  See also Response to No. 2 below.

2.    Do you and/or any of your branches or subsidiaries have in your possession, custody, or charge, any funds, investments, deposits, goods, chattels, monies, credits or effects belonging or owing or titled to **Palestinian Authority, Palestine Liberation Organization, Palestine Investment Fund (PIF), Palestinian National Authority (PNA), Palestine Commercial Services Corporation (PCSC), Palestinian National Fund, Palestine Monetary Fund (PMF), SAMED, PECDAR or Palestine Monetary Authority (PMA)?**

2

## ANSWER:

SASI's records do not directly indicate any "funds, investments, deposits, goods, chattels, monies, credits or effects belonging or owing or titled to" the entities identified above.

1.      However, following its review of information provided in May 2005 by representatives of Broadcort, a Division of Merrill Lynch Pierce Fenner and Smith, to SASI representatives in connection with subpoenas issued by the Plaintiffs-Judgment Creditors, SASI has identified the following securities in its possession, concerning which, according to Broadcort, Broadcort, acting as executing broker on behalf of the Palestinian Pension Fund, purchased:

> 2,400 shares of Anglo American PLC ADR;
>
> 7,200 shares of Deutsche Telekom AG SPON ADR; and
>
> 3,100 shares of Konink Philips Elect.

2.      SASI recently has been informed that the following publicly traded securities and debt instruments in its possession belong to an entity called the Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip:

> 7,900 shares of ACE Ltd.
>
> 11,100 shares of AMDOCS Ltd.
>
> 60,800 shares of Quanta Capital Holdings Ltd.
>
> 21,400 shares of Scottish Annuity & Life Holding Old/
>
> 35,500 shares of Willis Group Holdings Ltd.
>
> 2,800 shares of Flextronics International Ltd.

$270,000 bond – AOL Time Warner 6.875% due 05/01/2012

16,445 shares of AT&T Inc.

56,200 shares of Aames Investment Corp/Reit

20,475 shares of Adesa Inc.

5,100 shares of Electrolux AB- Spons ADR-B

3,000 shares of Akzo Nobel N.V. ADR

$260,000 bond – Albertson's Inc. 7.500% due 02/15/2011

15,500 shares of Albertsons Inc.

$395,000 bond – Alcoa Inc. 6.500% due 06/01/2011

17,700 shares of Aloca Inc.

1,836 shares of Alleghany Corp./New/

3,735 shares of Allied Irish Bks P L C  Sponsored ADR

1,900 shares of Atlanta AG (ADR)

52,700 shares of Altera Corp.

6,700 shares of Anadarko Pete Corp.

10,800 Anglo American PLC ADR

5,700 AXA Spons ADR

23,625 shares of Axcelis Tech Inc.

6,325 shares of BP PLC – ADR

47,00 shares of BNP Paribas ADR

16,600 shares of Baker Hughes Inc.

$300,000 bond – Bank of America Corp 3.375% due 02/17/2009

4

11,064 shares of Bank of America Corp./New/

7,200 shares of Bayer AG Sponsored ADR

14,500 shares of Bayerische Hypo – Und Ver – AR

$275,000 bond – Bear Stearns Co. Inc. 6.500% due 05/01/2006

$245,000 bond – Bellsouth Corp. 6.000% due 10/15/2011

7,000 shares of Benchmark Electrs Inc.

$300,000 bond – Boeing Co. 5.125% due 02/15/2013

$300,000 bond – Bottling Group LLC 4.625% due 11/15/2012

2,300 shares of Brasil Telecom Parts.A ADR

16,950 shares of Brinker International Inc.

6,000 shares of CBRL Group Inc.

$290,000 bond – CIT Group Inc. 4.000% due 05/08/2008

3,000,000 shares of Canaan Equity III Offshore

3,400 shares of Canon Inc. ADR New

1,200 Cardinal Health Inc.

31,200 shares of Cendant Corp.

13,500 shares of Champion Enterprises Inc.

6,600 shares of Charles River Labs International Inc.

15,000 shares of Chevron Corp.

8,700 shares of Chubb Corp.

16,100 shares of Circuit City Stores Inc.

$580,000 bond – Citigroup Inc. 3.500% due 02/01/2008

34,566 shares of Citigroup Inc. /New/

$275,000 bond – Comcast Cable Communication N 6.200% due 11/15/2008

1,800 shares of Comcast Corp. CL A

63,600 shares of Comcast Corp. Special CL A

7,000 shares of Comerica Inc.

6,500 shares of Commercial Capital Bancorp

3,1800 shares of Commscope Inc.

6,100 shares of Computer Sciences Corp.

6,300 shares of Comstock Res Inc./New/

16,200 shares of Conocophillips

$240,000 bond – Conoco Funding Co. 6.350% due 10/15/2011

16,150 shares of Constellation Brands Inc. – CL

48,800 shares of Converium Holdings AG ADR

$430,000 bond – Countrywide Home Loan 4.250% due 12/19/2007

$500,000 bond – CS First Boston Mtg Secs 6.520% due 07/17/2007

9,560 shares of Credit Suisse Group ADR

9,000 shares of Crescent Real Estate Equities Inc.

20,800 shares of DSM N.V. Sponsored ADR

3,755 shares of Dai Nippon Print Unspon ADR

$300,000 bond – Daimlerchrysler NA HLDG 4.050% due 06/04/2008

$290,000 bond – John Deer Capital Corp 5.100% due 01/15/2013

31,600 shares of Dell Inc.

58,850 shares of Delphi Corp.

12,800 shares of Dendrite International Inc.

7,500 shares of Diageo PLC Spons ADR

$275,000 bond – Disney (Walt) Co 6.375% due 03/01/2012

14,280 shares of Discovery Holding Co. CL-A

$280,000 bond – Dominion Resources Inc. 6.250% due 06/30/2012

1,400 shares of ENI SPA ADR

$270,000 Bond – EOP Operating LP 7.000% due 07/15/2011

4,980 shares of E ON AG SPON ADR

19,000 shares of Eastman Kodak Co.

$240,000 bond – Ecolab Inc. CB 6.875% due 02/01/2011

6,175 shares of Eisai Co. Ltd. SPON ADR

30,000 shares of Electronic Data SYS Corp.

9,500 shares of Energy Partners Ltd.

25,200 shares of Equity Residential PPTYS TR SI

9,000 shares of Exelon Corporation

$86,261 bond – Federal Home LN MTG Corp 5.500% due 06/01/2013

$33,980 bond – Federal Home Loan Bank 5.500% due 05/01/2011

$101,821 bond – Federal Home Loan MTG Corp 5.500% due 03/01/2013

$57,968 bond – FGLMC (PL# C69600) 6.500% due 08/01/2032

$33,021 bond – FHLMC (PL# C00921) 7.500% due 02/01/2030

$61,518 bond – FGLMC (PL# C55867) 7.500% due 02/01/2030

8,200 shares of Freddie Mac

$1,200,000 bond – Federal National MTG ASSN 5.250% due 06/15/2006

$275,000 bond – Federal National MTG ASSN 5.000% due 01/15/2007

$1,000,000 bond – Federal National MTG ASSN 4.125% due 04/15/2014

$43,245 bond – FNMA (PL #252717) 7.500% due 09/01/2029

$14,514 bond – FNMS (PL# 527423) 7.000% due 01/01/2030

$6,736 bond – FNMA (PL #542557) 7.000% due 08/01/2030

13,800 shares of Federal Signal Corporation

$14,573 bond – FNMA PL # 576328 7.000% due 04/01/2031

$56,836 bond – FNMA (PL# 625183) 5.500% due 01/01/2032

$58,970 bond – FNCL (PL# 631606) 5.500% due 03/01/2017

$240,000 bond – Ford Motor Credit Co. 7.375% due 10/28/2009

5,700 shares of Fortis (NL) ADR

1,400 shares of Fresenius Medical Care ADR

3,300 shares of Fuji Photo Film Ltd. ADR 1 ORD NEW)

$350,000 bond – GE Capital Commercial MTGE CP 5.033% due 12/10/2035

$61,482 bond – GNMA (PL# X577929SF) 6.000% due 08/15/2032

$229,941 bond – GNMA (Pool #473931) 6.000% due 05/15/2013

$75,383 bond – GNMA (Pool #474780) 6.000% due 05/15/2013

5,400 shares of General Electric Co.

$555,000 bond – General Electric CAP Corp. 5.000% due 06/15/2007

$168,000 bond – General Mills Inc. 6.000% due 02/15/2012

8

$290,000 bond -- General Motors ACC 6.875% due 09/15/2011

6,200 shares of Georgia Pac Corp.

9,700 shares of Glaxo Smithkline PLC-ADS

$295,000 bond -- Goldman Sachs Group, Inc. 4.125% due 01/15/2008

13,500 shares of Harmony Gold MNG SPON ADR

10,600 shares of Hartford Financial Svcs Group

12,000 shares of Health Net Inc.

3,375 shares of Heinken NV ADR

18,100 shares of Hewlett Packard Co.

25,500 shares of Highland Hospitality Corp.

$290,000 bond -- Household Finance Corp 4.125% due 12/15/2008

22,200 shares of Infousa Inc.

11,425 shares of ING Groep N.V. SPON ADR

29,525 shares of Interactive Data Corp.

5,800 shares of International Power PLC – ADR

15,825 shares of Ivax Corp./Contra

24,200 shares of JP Morgan Chase & Co.

37,000 shares of Jacuzzi Brands Inc.

12,700 shares of KV Pharmaceutical Co. CL A

8,450 shares of Kaydon Corp.

17,800 shares of Keycorp /New/

26,575 shares of Kingfisher PLC SPONS (ADR)

29,500 shares of Koninklijke Ahold N.V. ADR/NE

6,500 shares of Konink Philips Elect

5,500 shares of Kookmin Bank SPON ADR

9,200 shares of L-3 Communications HLGGS Inc.

$575,000 bond – Lehman Brothers Holdings 4.000% due 01/22/2008

17,500 shares of Lennox International Inc.

34,620 shares of Liberty Global Inc-A

34,620 shares of Liberty Global Inc. Class C

142,800 shares of Liberty Media Corp. Ser A

12,900 shares of Lloyds TSB Group PLC-SP ADR

22,300 shares of Mc Donalds Corp.

19,550 shares of MCG Capital Corp.

20,950 shares of Meadwestvaco Corp.

11,950 Medco Health Solutions, Inc.

$290,000 bond – Merrill Lynch & Co. 4.125% due 01/15/2009

6,900 shares of Merrill Lynch & Co. Inc.

5,700 shares of Metso Corp. SPON ADR

66,900 shares of Microsoft Corp.

7,600 shares of Millea Holdings Inc./ADR

9,100 shares of Millipore Corp.

44,870 shares of Mitsubishi UFI Financial-AD

21,800 shares of Moneygram International

$500,000 bond – Morgan JP Commercial MTG 6.507% due 10/15/2035

$540,000 bond – Morgan Stanley Dean Witter 5.800% due 04/01/2007

6,700 shares of Morgan Stanley

22,150 shares of Motorola Inc.

12,000 shares of NBTY Inc.

7,425 shares of NCO Group Inc.

2,100 shares of NTL Incorp

24,300 shares of National Instruments Corp.

6,530 shares of Nestle ADR (Backed by Registered SHS)

15,000 shares of Netgear Inc.

$300,000 bond – Newell Rubbermaid Inc. 4.625% due 12/15/2009

21,500 shares of Newell Rubbermaid Inc.

27,400 shares of Newfield Exploration Company

1,595 shares of Nidec Corp/ADR

30,000 shares of Noble Energy Inc.

86,400 shares of Nortel Networks HLDG Co.

12,300 shares of Northrop Grumman Corp.

5,070 shares of Novartis AG ADR

14,600 shares of Office Depot Inc.

5,300 shares of Omron Corp./ADR

27,000 shares of 1-800 Flowers.Com Inc.

15,100 shares of PMI Group Inc.

11

17,000 shares of PPL Corp.

20,250 shares of Pactiv Corp.

12,200 shares of Pearson PLC SPONS ADR

2,450 shares of Pernod Richard S A SPONSORED DR

2,100 shares of Petrochina ADR

2,200 shares of Petroleo Brasileiros.A ADR

11,200 shares of Pfizer Inc.

16,600 shares of Praxair Inc.

8,500 shares of Progressive Corp. Ohio

6,855 shares of Reed Elsevier PLC (ADR)

$270,000 Bond – Republic Service Inc. 6.750% due 08/15/2011

1,900 shares of Rexam PLC-Sponsored ADR

2,355 shares of RIO Tinto PLC SPON ADR

2,540 shares of Roche Holding Ltd ADR

3,400 shares of Rolls-Royce Group PLC/ADR

2,700 shares of Royal Dutch Shell PLC ADR CL

3,000 shares of Ryanair Holdings PLC SPONS ADR

5,800 shares of SK Telecom Co Ltd. ADR

$290,000 bond – SLM Corp 4.000% due 01/15/2009

6,900 shares of Safeway Inc.

29,500 shares of St Paul Travelers Cos Inc.

3,100 shares of San Paolo IMI SPA SPON ADR

34,523 shares of Sanofi-Aventis SA-ADR

12,500 shares of Sara Lee Corp.

2,486 shares of Sears Holdings Corp.

900 shares of Secom Ltd. ADR

2,850 shares of Siemens AG-ADR

15,600 shares of Societe Generale SPONS ADR

8,130 shares of Sony Corp ADR /NEW/

20,775 shares of Stage Stories Inc.

7,950 shares of Startek Inc.

1,700 shares of Stora Enso OYJ ADR

11,000 shares of Swift Energy Co.

20,000 shares of TTM Technologies

40,611 shares of Taiwan Semiconductor SP ADR

6,250 shares of Tech Data Corp

3,800 shares of Technip – Coflexip – ADR

6,279 shares of Telefonica SA SPON ADR

4,300 shares of Telewest Global Inc.

26,800 shares of Teradyne Inc.

1,740 shares of Total S.A (ADR)

3,830 shares of Toyota Motor Corp. SPON ADR

21,100 shares of TYCO International Ltd.

9,500 shares of URS Corp /NEW/

8,400 shares of Union Pacific Corp.

6,800 shares of United Auto Group Inc.

3,000 shares of United Overseas Bank Ltd. SPON ADR

$300,000 bond – US Bancorp 3.125% due 03/15/2008

$1,500,000 bond – United States Treasury Notes 6.250% due 02/15/2007

$955,000 bond – United States Treasury Notes 4.750% due 11/15/2008

$1,750,000 bond – United States Treasury Notes 4.625% due 05/15/2006

$130,000 bond – United States Treasury Notes 5.000% due 08/15/2011

$165,000 bond – United States Treasury Notes 3.875% due 02/15/2013

$1,135,000 bond – United States Treasury Notes 4.750% due 05/15/2014

16,200 shares of United Technologies Corp.

34,400 shares of Unitedhealth Group Inc.

27,200 shares of Unova Inc.

23,850 shares of Unumprovident Corp.

3,800 shares of UPM-Kymmene Corp. – SPONS ADR

19,700 shares of Verizon Communications

$510,000 bond – Verizon Global Funding Corp. 7.375% due 09/01/2012

2,100 shares of WPP Group PLC SPONS ORED ADR

$310,000 Bond – Wachovia Corp. 3.625% due 02/17/2009

45,650 shares of Wachovia Corp.

$280,000 bond – Washington Mutual, Inc. 4.000% due 01/15/2009

16,400 shares of Washington Mutual Inc.

14

43,100 shares of Waste Management Inc. (NEW)

9,400 shares Watson Pharmaceuticals Inc.

$300,000 bond -- Wells Fargo Co. 3.500% due 04/04/2008

20,075 shares of Wiley John & Sons Inc. CL A

37,600 shares of Williams Companies, Inc. (Delaware)

12,200 shares of Wyeth

SASI has restrained these publicly traded securities and debt instruments identified above.

2.1.     If the answer to the previous question is yes, please describe in full the funds, investments, deposits, goods, chattels, monies, credits or effects, including their value, nature title and designation.

### ANSWER:

See Response to No. 2 above.

3.     Are you and/or any of your branches or subsidiaries in any way indebted to **Palestinian Authority, Palestine Liberation Organization, Palestine Investment Fund (PIF), Palestinian National Authority (PNA), Palestine Commercial Services Corporation (PCSC), Palestinian National Fund, Palestine Monetary Fund (PMF), SAMED, PECDAR or Palestine Monetary Authority (PMA)?**

### ANSWER:

No.

3.1.    If the answer to the previous question is yes, state to what extent and in what manner the debt accrued, and if evidenced by an instrument in writing, describe the same and state what has become of the same and under whose custody it is held.

**ANSWER:**

N/A

4.    Are you and/or any of your branches or subsidiaries now bound under any contract(s) to pay either of the judgment debtors, directly or to any other party on account of either judgment debtor, any monies, funds or credits of any type?

**ANSWER:**

No.

4.1.    If the answer to the previous question is yes, state the nature of said contract, the names of the contracting parties, the nature and amount of the monies, funds or credits to be paid, and when and exactly to whom the same was or is due and payable.

**ANSWER:**

N/A

Do or did you and/or any of your branches or subsidiaries have transactions with either judgment debtor, as of the date of this subpoena or one year prior thereto, directly or indirectly, as a result of which either judgment debtor is/are now, or may in the future, become entitled to money or anything of value?

**ANSWER:**

No.

16

5.1.    As to each such transaction, what is the nature of the transaction, the date of the transaction, and the amount the judgment debtor(s) is/are, or may be, entitled to?

**ANSWER:**

N/A

6.    What is the description and value of each item of collateral you hold concerning either judgment-debtor?

**ANSWER:**

N/A

6.1.    What interest does either judgment debtor appear to have in each such item of collateral?

**ANSWER:**

N/A

7.    Is any of the property in your possession or care, in which either judgment debtor has an interest, subject to liens, attachments or other encumbrances?

**ANSWER:**

See Response to No. 2 above.

7.1.    What arc the full details of the same in regard to each asset?

**ANSWER:**

<u>See</u> Response to No. 2 above.

The foregoing answers are true and complete.

Dated:  New York, New York
        December 6, 2005

                        Respectfully submitted,

                        Duval & Stachenfeld LLP
                        Attorneys for Swiss American Securities Inc.

        By:     _____
                        Allan N. Taffet, Esq.
                        300 East 42nd Street
                        New York, New York 10017
                        Tel. No.:  (212) 883-1700

## VERIFICATION

STATE OF NEW YORK    )
                    *Kings*    ) ss.:
COUNTY OF ~~NEW YORK~~    )


ADAM REZAK, being duly sworn, deposes and says:

I am a Vice President for Swiss American Securities Inc. ("SASI") and have read the above amended answers of SASI to the Information Subpoena issued pursuant to CPLR § 5222(b) above.  The Answers have been compiled based upon SASI's records and prepared by counsel and are true to the best of my knowledge.

SWISS AMERICAN SECURITIES INC.

By:    _____
       Adam Rezak, Esq.
       Vice President


Sworn to before me this 6th day of
December, 2005

Notary Public

MARY ELLEN INTERNICOLA
Notary Public, State of New York
No. 01IN5014061
Qualified in Kings County
Commission Expires July 15, 2007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------x

ESTATE OF YARON UNGAR, DVIR UNGAR, :
YISHAI UNGAR, JUDITH UNGAR, MEIR UNGAR, :
MICHAEL COHEN, AMICHAI UNGAR and :
DAFNA UNGAR :
          Plaintiffs -- Judgment Creditors, :
         :
         :    **AFFIDAVIT OF SERVICE**
    -against- :
         :
         :
THE PALESTINIAN AUTHORITY and :  Index No.: 105521/05
THE PALESTINIAN LIBERATION ORGANIZATION, :
         :
        Defendants – Judgment Debtors. :

---------------------------------------------------------------x

STATE OF NEW YORK      )
                   )  ss.:
COUNTY OF NEW YORK  )

       The undersigned being duly sworn, deposes and says:

       Deponent is not a party to the within action, or an employee of any party, and is over 18 years of age.

       That deponent served a true copy of Swiss American Securities Inc.'s Amended Verified Answers In Connection With Information Subpoena, dated December 6, 2005, in the above action on the attorneys for plaintiffs-judgment creditors, Estate of Yaron Ungar, Dvir Ungar, Yishai Ungar, Judith Ungar, Meir Ungar, Michael Cohen, Amichai Ungar and Dafna Ungar, (i) via overnight delivery to David J. Strachman, Esq., McIntyre, Tate, Lynch & Holt, 321 South Main Street, Suite 400, Providence, RI, 02903; and (ii) via first class mail to Lee Squitieri, Esq., Squitieri & Fearon, 32 East 57th Street, 12th Floor, New York, NY 10022.

                                   _____
                                   Timothy C. Dawe

Sworn to before me this
6th day of December, 2005

_____
Notary Public

VALERIE PEREZ
Notary Public, State of New York
No. 01PE6135446
Qualified In Bronx County
Commission Expires October 17, 2009

# EXHIBIT I

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------- X

In the matter of the Application of:

THE ESTATE OF YARON UNGAR by and through its
Administrator, DAVID STRACHMAN; DVIR UNGAR,
minor, by his guardians and next friends, YISHAI
UNGAR, minor, by his guardians and next friends,
PROFESSOR MEIR UNGAR, JUDITH UNGAR,
individually and in their capacity as legal guardians of
Petitioners DVIR UNGAR and YISHAI UNGAR; RABBI
URI DASBERG, JUDITH DASBERG, in their capacity as
legal guardians of Petitioners DVIR UNGAR and YISHAI
UNGAR; AMICHAI UNGAR, DAFNA UNGAR
and MICHAL COHEN,

Index No: 102106 / 06

**NOTICE OF PETITION**

                       Petitioners,

For an order and judgment pursuant to CPLR §§ 5225
and 5228

               -against-

SWISS AMERICAN SECURITIES, INC.,

               Respondent.

------------------------------------------------------------------------- X

R E S P O N D E N T :

         PLEASE TAKE NOTICE that upon the annexed Verified Petition of Robert J.

Tolchin, Esq., dated February 14, 2006; the exhibits annexed thereto; and upon the pleadings

and proceedings heretofore had herein; and upon such record as may be developed in this

special proceeding, the petitioner will move this Court, at the Courthouse located at 60 Centre

Street, New York, New York, a the Motion Submission Part thereof, Room 130, on the 16th day

of March, 2006, at 9:30 o'clock in the forenoon of that day, or as soon thereafter as counsel can
be heard, for an order:

a)    Pursuant to CPLR § 5228, appointing and authorizing a Receiver to
receive and take possession of all property in which judgment-debtor Palestinian Authority has
an interest, including without limitation the securities and debt instruments listed in
Respondent SASI's Amended Verified Answers, and to take all steps necessary to sell and
assign such property, securities and debt instruments to the highest bidder and to remit the
proceeds of such sale to the Petitioners subject to further order of this Court;

b)    Pursuant to CPLR § 5225, ordering Respondent SASI to transfer to the
Receiver appointed by this Court actual and/or legal custody of all property of judgment-
debtor Palestinian Authority, or in which the Palestinian Authority has an interest, however
titled, in the control or possession of SASI, including without limitation the securities and debt
instruments listed in Respondent SASI's Amended Verified Answers;

c)    Awarding Petitioners their costs, expenses, disbursements and attorney's
fees in connection with this proceeding; and

d)    Granting such other and further relief as is just, proper and equitable
under the circumstances.

Dated: New York, New York
       February 14, 2006

                            Respectfully submitted,

                            JAROSLAWICZ & JAROS, ESQS.
                            *Attorneys for the plaintiff*


                            by: _____
                                Robert J. Tolchin,
                                Counsel

                            150 William Street, 19th Floor
                            New York, New York 10038
                            (212) 227-2780

David J. Strachman, Esq.
McIntyre, Tate, Lynch & Holt, LLP
*Attorneys for the petitioners*
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------ X
In the matter of the Application of:

THE ESTATE OF YARON UNGAR by and through its
Administrator, DAVID STRACHMAN; DVIR UNGAR,
minor, by his guardians and next friends, YISHAI
UNGAR, minor, by his guardians and next friends,
PROFESSOR MEIR UNGAR, JUDITH UNGAR,
individually and in their capacity as legal guardians of
Petitioners DVIR UNGAR and YISHAI UNGAR; RABBI
URI DASBERG, JUDITH DASBERG, in their capacity as
legal guardians of Petitioners DVIR UNGAR and YISHAI
UNGAR; AMICHAI UNGAR, DAFNA UNGAR
and MICHAL COHEN,

Index No: 102106/ 06

**VERIFIED PETITION**

                    Petitioners,

For an order and judgment pursuant to CPLR §§ 5225
and 5228

            -against-

SWISS AMERICAN SECURITIES, INC.,

                Respondent.

------------------------------------------------------------------------ X

         PETITIONERS, complaining of the Respondent, by their attorneys,
JAROSLAWICZ & JAROS, allege for their petition as follows:

### NATURE OF PETITION AND RELIEF REQUESTED

        1.    Petitioners hold a final judgment in excess of $116,000,000 against the
Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") that was

4

entered by the United States District Court for the District of Rhode Island on July 13, 2004, and thereafter filed pursuant to CPLR § 5402 in the office of the Clerk of the County of New York and entered in this Court as Index Number 105521/05.

2.       Upon information and belief, Respondent SWISS AMERICAN SECURITIES, INC. ("SASI") of New York holds securities and debt instruments that are owned by judgment debtor PA and held under the fictitious names "Palestinian Pension Fund of the State Administrative Employees" and/or "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip," or a similar permutation thereof.

3.       Petitioners therefore bring this proceeding seeking (a) an order and judgment pursuant to CPLR § 5225 directing SASI to turn over to a Receiver appointed by this Court the aforementioned PA-owned securities and debt instruments and (b) an order appointing such Receiver pursuant to CPLR § 5228 and authorizing him or her to sell and assign to the highest bidder the PA's rights and interests in the aforementioned PA-owned securities and debt instruments.

## THE PARTIES

4.       Petitioner THE ESTATE OF YARON UNGAR, which is represented in this matter by a court-appointed administrator, attorney David Strachman, holds a judgment against the PA and the PLO, jointly and severally, in the amount of $2,932,158.00.

5.       Petitioners DVIR UNGAR and YISHAI UNGAR, minors who are represented in this matter through their grandparents and legal guardians petitioners Meir Ungar, Judith Ungar, Uri Dasberg and Judith Dasberg, each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $30,488,482.50.

6.       Petitioners PROFESSOR MEIR UNGAR and JUDITH UNGAR each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $15,000,000.00.

7.       Petitioners RABBI URI DASBERG and JUDITH DASBERG appear in this matter in their capacity as legal guardians of petitioners Dvir and Yishai Ungar.

8.       Petitioners AMICHAI UNGAR, DAFNA UNGAR and MICHAL COHEN each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $7,500,000.00.

9.       Upon information and belief, Respondent SWISS AMERICAN SECURITIES, INC. ("SASI") is a securities custodian and brokerage firm with headquarters at 12 East 49th Street New York, New York.

10.      Upon information and belief, Respondent SASI specializes in providing cross-border securities services, including custody, clearance and brokerage of securities for foreign clients.

11.      Upon information and belief, SASI conducts business in the State of New York.

12.      Upon information and belief, SASI maintains assets within the State of New York.

## THE UNDERLYING FACTS

### A.       Background

13.      Petitioners are the orphaned children, parents, siblings and administrator of the estate of U.S. citizen Yaron Ungar, who was murdered along with his pregnant wife Efrat Ungar in a terrorist machine-gun attack on June 9, 1996 in Israel.

14.      The machine-gun attack in which the Ungars were murdered was carried out by members of the HAMAS terrorist group acting under the command and pursuant to the instructions of The Palestinian Authority ("PA") and The Palestine Liberation Organization ("PLO").

6

15.    A 25 year-old New York native, Yaron was a schoolteacher studying for rabbinical ordination when he was murdered.

16.    The Ungars were ambushed while returning from a wedding.

17.    Efrat shielded their ten month-old son Yishai from the bullets and he survived the attack.

18.    The Ungars' other son Dvir, then two years old, was not in the vehicle.

19.    In March 2000, the Ungar family filed suit against the PA, the PLO, and other defendants, in the United States District Court for the District of Rhode Island under the Antiterrorism Act ("ATA") 18 U.S.C. § 2331 *et seq.. Ungar et al. v. The Palestinian Authority et al.,* Civil Action 00-105L (D.R.I.).

20.    Section 2333(a) of the ATA creates a cause of action for a U.S. national, or his estate, survivors and heirs, injured by reason of an act of "international terrorism" as defined in § 2331 of the ATA.

21.    On July 12, 2004, the United States District Court in Rhode Island issued a Memorandum and Order ordering entry of final judgment for the Petitioners and against the PA and PLO, jointly and severally, in the amount of $116,409,123.00 in damages, and for attorney's fees in the amount of $11,925.00 against the PA and $6,345.00 against PLO. *Ungar v. Palestinian Authority,* 325 F. Supp. 2d 15 (D.R.I. 2004). (Exhibit A).

22.    Final judgment as ordered in the Memorandum and Order of July 12, 2004, was entered by the Rhode Island District Court on July 13, 2004 (the "Judgment"). (Exhibit B).

23.    The Court of Appeals for the First Circuit has affirmed the Judgment, and the United States Supreme Court has denied a petition by the PA and PLO for a writ of certiorari. *Ungar v. Palestinian Authority,* 402 F.3d 274 (1st Cir. 2005) *cert. denied* 126 S.Ct. 715 (2005). (Exhibits C, D).

7

24.     The PA and PLO have refused to satisfy Petitioners' Judgment, and have informed the Ungars' trial counsel that they "will never pay" the Judgment.

25.     On April 21, 2005, Petitioners domesticated their Judgment pursuant to CPLR § 5402 by filing it in the office of the Clerk of the County of New York and the Judgment was then entered in this Court as Index Number 105521/05. (Exhibit E).

26.     Upon information and belief, Respondent SASI is a securities custodian and brokerage firm with headquarters at 12 East 49th Street New York, New York.

**B.     The PA and PLO Hold and Manage Their Assets Under Various
        Aliases and Pseudonyms**

27.     Upon information and belief, for at least thirty years and until the present day, significant assets of the PLO have been managed and controlled by Mohammed Rashid (a/k/a Mohammed Rachid a/k/a Khaled Salaam) (hereinafter: "Rashid").

28.     Upon information and belief, for at least thirty years and until the present day, Rashid has served as a chief financial advisor for the PLO and its leadership.

29.     Upon information and belief, since the establishment of the PA in 1994 and until the present day, significant assets of the PA have been managed and controlled by Rashid.

30.     Upon information and belief, since the establishment of the PA in 1994 and until the present day, Rashid has served as a chief financial advisor for the PA and its leadership.

31.     Upon information and belief, the PA, PLO and Rashid have systematically held and managed the PA's and PLO's assets under various fictitious names and aliases in order to hide the PA's and PLO's involvement in financial activities from parties who would not otherwise do business with them, and to shield the financial activities and assets of

the PA and PLO from law-enforcement and tax authorities and from creditors such as the instant Petitioners.

32.    Upon information and belief, in order to achieve the goals described in the preceding paragraph, the PA, PLO and Rashid hold and manage the PA's and PLO's assets under fictitious names and aliases specifically designed to create an impression of legitimacy, respectability and innocence.

33.    Upon information and belief, the fictitious names and aliases used by the PA, PLO and Rashid and referred to in the preceding paragraph include, for example, names falsely connoting charities, social service/welfare funds, or prestigious commercial enterprises.

34.    Thus, as just one of many possible examples, the Israeli Supreme Court found that assets held in the name of a putative charity called the "Palestine Martyrs Works Society" were in fact the property of the PLO. *See* H.C.J. 574/82 *Al-Nawar v. Minister of Defense*, Israel Supreme Court Decisions Vol. XXXIX(3) 449.

35.    Likewise as another example, upon information and belief, shortly after the establishment of the PA, the PA and Rashid began to divert PA assets to investments held under the name "Palestine Commercial Services Company," which contrary to its business-like, respectable-sounding name actually served as a slush-fund for PA leader Yasser Arafat and Rashid.

C.    **Respondent SASI Holds Securities and Debt Instruments Owned By Judgment Debtor PA**

36.    Upon information and belief, in late 1994, the PA and Rashid began to manage, invest and hold PA assets using the fictitious names "Palestinian Pension Fund of the State Administrative Employees" and "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip," or similar permutations of those names.

9

37.     Upon information and belief, the names "Palestinian Pension Fund of the State Administrative Employees" and "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip," or similar permutations thereof, do not denote entities with any legal, juridical or factual existence.

38.     Upon information and belief, the names "Palestinian Pension Fund of the State Administrative Employees" and "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip," or similar permutations thereof, are fictitious names invented and used by the PA and Rashid to shield the PA assets held under those names from creditors, law enforcement agencies and tax authorities, and to mislead banks, brokerages and other financial and/or investment institutions which would not otherwise hold, handle or invest those assets.

39.     Upon information and belief, all assets held under the fictitious names "Palestinian Pension Fund of the State Administrative Employees" and "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip," or similar permutations of those names, are the sole and exclusive property of the PA.

40.     Upon information and belief, at an unknown time after 1994, the PA and Rashid opened accounts at a Zurich branch of Credit Suisse Asset Management and/or Credit Suisse First Boston (respectively hereafter "Zurich Accounts" and "Credit Suisse").

41.     Upon information and belief, the Zurich Accounts are titled to the PA.

42.     Upon information and belief, the PA falsely informed Credit Suisse that the beneficiaries of the Zurich Accounts and the funds deposited and/or held therein are fictitious and non-existent "pension funds" named the "Palestinian Pension Fund of the State Administrative Employees" and/or the "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip."

43.     Upon information and belief, at an unknown date or dates after 1994, the PA deposited funds equaling many tens of millions of dollars into the Zurich Accounts.

44.     Upon information and belief, all funds deposited and/or held in the Zurich Accounts at any time are the sole and exclusive property of the PA.

45.     Upon information and belief, the Zurich Accounts are controlled by the PA.

46.     Upon information and belief, beginning at an unknown date or dates subsequent to 1994, the PA and Rashid began to use the PA funds in the Zurich Accounts to purchase investments in United States, including securities and debt instruments.

47.     Upon information and belief, the PA and Rashid used the PA funds in the Zurich Accounts to purchase a large portfolio of securities and debt instruments owned by the PA and held by Respondent SASI.

48.     In May, 2005, Petitioners served SASI with an Information Subpoena and Restraining Notice pursuant to CPLR § 5222 ("Exhibit F").

49.     In response to Petitioners' Information Subpoena and Restraining Notice of May 2005, SASI first submitted to Petitioners' counsel, in May 2005, "Verified Answers in Connection With Information Subpoena" which listed only 3 securities of *de minimis* value which SASI claimed were purchased by the "Palestinian Pension Fund." (Exhibit G).

50.     Subsequently and inexplicably, SASI sent Petitioners' counsel in December 2005 an "Amended Verified Answers in Connection With Information Subpoena" ("SASI's Amended Verified Answers") (Exhibit H).

51.     SASI's Amended Verified Answers lists over 250 additional securities and debt instruments in SASI's possession, none of which were listed in SASI's original Verified Answers.

11

52.     In its Amended Verified Answers, SASI obscurely states that it "has been informed" that the securities and debt instruments in SASI's possession and listed therein "belong to an entity called the Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip." Exhibit H, p. 3.

53.     Upon information and belief, there is no entity with legal, juridical or factual existence called the "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip."

54.     Upon information and belief, the "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip" is a fictitious name invented and used by judgment-debtor PA as an alias for itself.

55.     Upon information and belief, the securities and debt instruments detailed in SASI's Amended Verified Answers were purchased with funds from the Zurich Accounts.

56.     Upon information and belief, the securities and debt instruments detailed in SASI's Amended Verified Answers are the sole and exclusive property of judgment-debtor PA.

## AS AND FOR PETITIONERS' FIRST CLAIM FOR RELIEF
## APPOINTMENT OF A RECEIVER

57.     Petitioners repeat and re-allege each of the foregoing allegations with the same force and effect as if it were more fully set forth herein.

58.     Petitioners are judgment-creditors of the PA.

59.     Respondent SASI holds personal property belonging to judgment-debtor PA and in which the PA has an interest.

60.     CPLR § 5225(b) authorizes the Court to order a person in possession of personal property in which the judgment debtor has an interest to deliver such property to the

sheriff, who then conducts an auction to sell the property and remits the sale proceeds to the judgment-creditor.

61.    CPLR § 5228(a) authorizes the Court to appoint a Receiver to sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment.

62.    When a Receiver is so appointed under CPLR § 5228(a), the property of the judgment debtor is delivered to the Receiver, rather than to a sheriff, for sale. CPLR § 5228(a).

63.    Sale of the PA's securities and debt instruments by a Receiver, rather than sale at auction by the Sheriff or Marshal, is clearly preferable.

64.    A Receiver will be able to gather and present to potential buyers all the documents and information relevant and necessary to accurately value the securities and debt instruments in question. Absent such documents and information, potential buyers will have absolutely no means of assessing the value of the securities and debt instruments, and will not agree to pay anywhere near actual market value.

65.    Clearly, only a Receiver can adequately collect and present all this detailed financial information to potential buyers. Respectfully, the offices of the Sheriff and Marshal are not trained or equipped to perform this task.

66.    Therefore, appointment of a Receiver would maximize the sale price of the securities and debt instruments. This would benefit both the Petitioners and the Judgment Debtors since the interests of all will be served by obtaining the highest possible price for this property.

67.    Petitioners are therefore entitled to an order pursuant to CPLR §5228(a) appointing a Receiver authorized to receive the PA's securities and debt instruments held by SASI, and to sell and assign to the highest bidder the rights and interests of the PA therein.

13

## AS AND FOR PETITIONERS' SECOND CLAIM FOR RELIEF
## TURNOVER

68.    Petitioners repeat and re-allege each of the foregoing allegations with the same force and effect as if it were more fully set forth herein.

69.    Petitioners are judgment-creditors of the PA.

70.    Respondent SASI holds personal property belonging to judgment-debtor PA and in which the PA has an interest.

71.    CPLR §§ 5225(b) and 5228(a) authorize the Court to order SASI to transfer actual or legal custody of the PA's securities and debt instruments to a Receiver for sale by the latter in satisfaction of Petitioners' judgment.

72.    Petitioners are therefore entitled to an order and judgment pursuant to CPLR § 5225 ordering Respondent SASI to transfer to a Receiver appointed by this Court actual or legal custody of all property of the PA, or in which the PA has an interest, however titled, in the control or possession of SASI including without limitation the securities and debt instruments listed in SASI's Amended Verified Answers.

WHEREFORE, Petitioners respectfully demand an order and judgment

a)    Pursuant to CPLR § 5228, appointing and authorizing a Receiver to receive and take possession of all property in which judgment-debtor Palestinian Authority has an interest, including without limitation the securities and debt instruments listed in Respondent SASI's Amended Verified Answers, and to take all steps necessary to sell and assign such property, securities and debt instruments to the highest bidder and to remit the proceeds of such sale to the Petitioners subject to further order of this Court; and

b)    Pursuant to CPLR § 5225, ordering Respondent SASI to transfer to the Receiver appointed by this Court actual and/or legal custody of all property of judgment-debtor Palestinian Authority, or in which the Palestinian Authority has an interest, however

14

titled, in the control or possession of SASI, including without limitation the securities and debt instruments listed in Respondent SASI's Amended Verified Answers; and

      c)    Awarding Petitioners their costs, expenses, disbursements and attorney's fees in connection with this proceeding; and

      d)    Granting such other and further relief as is just, proper and equitable under the circumstances.

Dated: New York, New York,
      February 14, 2006

          Respectfully submitted,

          LAW OFFICE OF JAROSLAWICZ & JAROS
          *Attorneys for the petitioners*

          by:   _____
              Robert J. Tolchin
              Counsel

          150 William Street, 19th floor
          New York, New York 10038
          (212) 227-2780

          David J. Strachman, Esq.
          McIntyre, Tate, Lynch & Holt, LLP
          *Attorneys for the petitioners*
          321 South Main Street, Suite 400
          Providence, RI 02903
          (401) 351-7700

## VERIFICATION

Robert J. Tolchin, an attorney for the petitioners in the within action, duly admitted to practice in the Courts of the State of New York, affirms the following statements to be true under the penalties of perjury, pursuant to CPLR 2016:

He has read the foregoing PETITION and knows the contents thereof to be true to his own knowledge except as to those matters therein stated to be alleged on information and belief, and as to those matters he believes it to be true.

He further states that the source of this information and the grounds for his belief are derived from the file maintained in the normal course of business of the attorneys for the petitioners herein.

He further states that the reason this affirmation is not made by the petitioners is that at the time the petition was being prepared, the petitioners were not found to be within the County of New York, which is the county where the attorney for the petitioners herein maintains his office.

Dated: New York, New York
       February 14, 2006

_____
Robert J. Tolchin

# EXHIBIT J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------- X

THE ESTATE OF YARON UNGAR by and through its
Administrator, DAVID STRACHMAN; DVIR UNGAR, minor,
by his guardians and next friends, YISHAI UNGAR, minor, by
his guardians and next friends, PROFESSOR MEIR UNGAR,
JUDITH UNGAR, individually and in their capacity as legal
guardians of Petitioners DVIR UNGAR and YISHAI UNGAR;
RABBI URI DASBERG, JUDITH DASBERG, in their capacity as
legal guardians of Petitioners DVIR UNGAR and YISHAI
UNGAR; AMICHAI UNGAR, DAFNA UNGAR and MICHAL
COHEN,

Index No: 102101 / 06

Date Purchased: 2/14/ 06

Plaintiffs designate New York County as
the place of trial. The basis of venue is the
Defendant's address.

Plaintiffs,

-against-

THE PALESTINIAN AUTHORITY (a/k/a "The Palestinian
National Authority") (d/b/a "Palestinian Pension Fund of the
State Administrative Employees" and/or "Palestinian Pension
Fund for the State Administrative Employees of the Gaza
Strip"); and THE INSURANCE AND PENSION FUND,

Defendants

-------------------------------------------------------------------- X

## SUMMONS

Plaintiffs reside at:
321 South Main Street, Suite 400
Providence, RI 02903

TO THE ABOVE NAMED DEFENDANTS:

      YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of
your answer, on the plaintiff's Attorneys within 20 days after the service of this summons, exclusive of the day of
service (or within 30 days after service is complete if this summons is not personally delivered to you within the State
of New York) and to file a copy of your answer with the Clerk of the above-named Court; and in case of your failure
to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:  New York, New York
       February 14, 2006

Yours,

JAROSLAWICZ & JAROS, ESQS.
*Attorneys for the plaintiffs*

by:  _____
      Robert J. Tolchin,
      Of Counsel

150 William Street, 19th Floor
New York, New York 10038
(212) 227-2780

Defendant's address:


THE PALESTINIAN AUTHORITY (a/k/a "The Palestinian National Authority") (d/b/a "Palestinian Pension Fund of the State Administrative Employees" and/or "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip"); and THE INSURANCE AND PENSION FUND
c/o James R. Tanenbaum
Morrison & Foerster
1290 Avenue of the Americas
New York, New York 10104-0050

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------- X
THE ESTATE OF YARON UNGAR by and through its
Administrator, DAVID STRACHMAN; DVIR UNGAR,
minor, by his guardians and next friends, YISHAI                      Index No: 102101 / 06
UNGAR, minor, by his guardians and next friends,
PROFESSOR MEIR UNGAR, JUDITH UNGAR,
individually and in their capacity as legal guardians of              **VERIFIED COMPLAINT**
Petitioners DVIR UNGAR and YISHAI UNGAR; RABBI
URI DASBERG, JUDITH DASBERG, in their capacity as
legal guardians of Petitioners DVIR UNGAR and YISHAI
UNGAR; AMICHAI UNGAR, DAFNA UNGAR
and MICHAL COHEN,

                                Plaintiffs,

                        -against-

THE PALESTINIAN AUTHORITY (a/k/a "The
Palestinian National Authority") (d/b/a "Palestinian
Pension Fund of the State Administrative Employees"
and/or "Palestinian Pension Fund for the State
Administrative Employees of the Gaza Strip"); and
THE INSURANCE AND PENSION FUND

                                Defendants.

------------------------------------------------------------------------- X

        PLAINTIFFS, complaining of the Defendants, by their attorneys,

JAROSLAWICZ & JAROS, allege for their Complaint as follows:

### NATURE OF COMPLAINT AND RELIEF REQUESTED

        1.      Plaintiffs hold a final judgment in excess of $116,000,000 against

Defendant PALESTINIAN AUTHORITY ("PA") and The Palestine Liberation Organization

3

("PLO") that was entered by the United States District Court for the District of Rhode Island on July 13, 2004, and thereafter filed pursuant to CPLR § 5402 in the office of the Clerk of the County of New York and entered in this Court as Index Number 105521/05.

2.     Upon information and belief, Defendant PA owns securities and debt instruments that are held in the State of New York under the fictitious names "Palestinian Pension Fund of the State Administrative Employees" and/or "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip" or similar permutations of those names (hereinafter: "the PA's New York Stocks and Bonds").

3.     Upon information and belief, the names "Palestinian Pension Fund of the State Administrative Employees" and "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip," or similar permutations thereof, do not denote entities with legal and/or juridical existence, but rather are fictitious names invented and used by Defendant PA to shield its assets from creditors, law enforcement agencies and tax authorities, and to mislead banks, brokerages and other financial and/or investment institutions which would not otherwise hold, handle or invest assets of Defendant PA.

4.     Upon information and belief, Defendant THE INSURANCE AND PENSION FUND is an insurance and pension fund that, pursuant to local law, operates in areas under the jurisdiction of Defendant PA.

5.     Defendant THE INSURANCE AND PENSION FUND has filed a motion in this Court, falsely asserting that it, and not Defendant PA, is the owner of the PA's New York Stocks and Bonds, and seeking to vacate a Restraining Notice served by Plaintiffs on the custodian of the PA's New York Stocks and Bonds.

6.     Plaintiffs therefore bring this action for a declaratory judgment establishing, adjudging and decreeing that (a) the PA's New York Stocks and Bonds are the sole

4

property of Defendant PA and (b) that Defendant THE INSURANCE AND PENSION FUND has no rights to the PA's New York Stocks and Bonds.

<u>THE PARTIES</u>

7.    Plaintiff THE ESTATE OF YARON UNGAR, which is represented in this matter by a court-appointed administrator, attorney David Strachman, holds a judgment against the PA and the PLO, jointly and severally, in the amount of $2,932,158.00.

8.    Plaintiffs DVIR UNGAR and YISHAI UNGAR, minors who are represented in this matter through their grandparents and legal guardians, Meir Ungar, Judith Ungar, Uri Dasberg and Judith Dasberg, each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $30,488,482.50.

9.    Plaintiffs PROFESSOR MEIR UNGAR and JUDITH UNGAR each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $15,000,000.00.

10.    Plaintiffs RABBI URI DASBERG and JUDITH DASBERG appear in this matter in their capacity as legal guardians of plaintiffs Dvir and Yishai Ungar.

11.    Plaintiffs AMICHAI UNGAR, DAFNA UNGAR and MICHAL COHEN each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $7,500,000.00.

12.    Upon information and belief, Defendant PALESTINIAN AUTHORITY ("PA"), itself and/or through its agents, conducts business in the State of New York.

13.    Upon information and belief, Defendant PA, itself and/or through its agents, maintains and owns assets within the State of New York.

14.    Upon information and belief, Defendant THE INSURANCE AND PENSION FUND, is an insurance and pension fund that, pursuant to local law, operates in areas under the jurisdiction of Defendant PA.

5

15.     Upon information and belief, Defendant THE INSURANCE AND PENSION FUND, itself and/or through its agents, conducts business in the State of New York.

16.     Upon information and belief, Defendant THE INSURANCE AND PENSION FUND, itself and/or through its agents, maintains and owns assets within the State of New York.

## THE UNDERLYING FACTS

### A.    Plaintiffs' Judgment Against Defendant Palestinian Authority

17.     Plaintiffs are the orphaned children, parents, siblings and administrator of the estate of U.S. citizen Yaron Ungar, who was murdered along with his pregnant wife Efrat Ungar in a terrorist machine-gun attack on June 9, 1996 in Israel.

18.     The machine-gun attack in which the Ungars were murdered was carried out by members of the HAMAS terrorist group acting under the command and pursuant to the instructions of Defendant PALESTINIAN AUTHORITY ("PA") and The Palestine Liberation Organization ("PLO").

19.     A 25 year-old New York native, Yaron was a schoolteacher studying for rabbinical ordination when he was murdered.

20.     The Ungars were ambushed while returning from a wedding.

21.     Efrat shielded their ten month-old son Yishai from the bullets and he survived the attack.

22.     The Ungars' other son Dvir, then two years old, was not in the vehicle.

23.     In March 2000, the Ungar family filed suit against the PA and PLO, and other defendants, in the United States District Court for the District of Rhode Island under the Antiterrorism Act ("ATA") 18 U.S.C. § 2331 *et seq.. Ungar et al. v. The Palestinian Authority et al.,* Civil Action 00-105L (D.R.I.).

6

24.    Section 2333(a) of the ATA creates a cause of action for a U.S. national, or his estate, survivors and heirs, injured by reason of an act of "international terrorism" as defined in § 2331 of the ATA.

25.    On July 12, 2004, the United States District Court in Rhode Island issued a Memorandum and Order ordering entry of final judgment for the Plaintiffs and against the PA and PLO, jointly and severally, in the amount of $116,409,123.00 in damages, and for attorney's fees in the amount of $11,925.00 against the PA and $6,345.00 against PLO. *Ungar v. Palestinian Authority*, 325 F.Supp.2d 15 (D.R.I. 2004). (Exhibit A)

26.    Final judgment as ordered in the Memorandum and Order of July 12, 2004, was entered by the Rhode Island District Court on July 13, 2004 (the "Judgment"). (Exhibit B).

27.    The Court of Appeals for the First Circuit has affirmed the Judgment, and the United States Supreme Court has denied a petition by the PA and PLO for a writ of certiorari. *Ungar v. Palestinian Authority*, 402 F.3d 274 (1st Cir. 2005) *cert. denied* 126 S.Ct. 715 (2005). (Exhibits C, D).

28.    The PA and PLO have refused to satisfy Plaintiffs' Judgment, and have informed the Ungars' trial counsel that they "will never pay" the Judgment.

29.    On April 21, 2005, Plaintiffs domesticated their Judgment pursuant to CPLR § 5402 by filing it in the office of the Clerk of the County of New York and the Judgment was then entered in this Court as Index Number 105521/05. (Exhibit E).

**B.    The PA and PLO Hold and Manage Their Assets Under Various Aliases and Pseudonyms**

30.    Upon information and belief, for at least thirty years and until the present day, significant assets of the PLO have been managed and controlled by Mohammed Rashid (a/k/a Mohammed Rachid a/k/a Khaled Salaam) (hereinafter: "Rashid").

7

31.     Upon information and belief, for at least thirty years and until the present day, Rashid has served as a chief financial advisor for the PLO and its leadership.

32.     Upon information and belief, since the establishment of Defendant PA in 1994 and until the present day, significant assets of the PA have been managed and controlled by Rashid.

33.     Upon information and belief, since the establishment of Defendant PA in 1994 and until the present day, Rashid has served as a chief financial advisor for the PA and its leadership.

34.     Upon information and belief, the PA, PLO and Rashid have systematically held and managed the PA's and PLO's assets under various fictitious names and aliases in order to hide the PA's and PLO's involvement in financial activities from parties who would not otherwise do business with them, and to shield the financial activities and assets of the PA and PLO from law-enforcement and tax authorities and from creditors such as the instant Plaintiffs.

35.     Upon information and belief, in order to achieve the goals described in the preceding paragraph, the PA, PLO and Rashid hold and manage the PA and PLO's assets under fictitious names and aliases specifically designed to create an impression of legitimacy, respectability and innocence.

36.     Upon information and belief, the fictitious names and aliases used by the PA, PLO and Rashid and referred to in the preceding paragraph include, for example, names falsely connoting charities, social service/welfare funds, or prestigious commercial enterprises.

37.     Thus, as just one of many possible examples, the Israeli Supreme Court found that assets held in the name of a putative charity called the "Palestine Martyrs Works Society" were in fact the property of the PLO. *See* H.C.J. 574/82 *Al-Nawar v. Minister of Defense*, Israel Supreme Court Decisions Vol. XXXIX(3) 449.

8

38.     Likewise as another example, upon information and belief, shortly after the establishment of the PA, the PA and Rashid began to divert PA assets to investments held under the name "Palestine Commercial Services Company," which contrary to its business-like, respectable-sounding name, actually served as a slush-fund for PA leader Yasser Arafat and Rashid.

**C.     Defendant PALESTINIAN AUTHORITY Owns Securities and Debt Instruments Held in New York**

39.     Upon information and belief, in late 1994, Defendant PA and Rashid began to manage, invest and hold PA assets using the fictitious names "Palestinian Pension Fund of the State Administrative Employees" and "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip," or similar permutations of those names.

40.     Upon information and belief, the names "Palestinian Pension Fund of the State Administrative Employees" and "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip," or similar permutations thereof, do not denote entities with any legal, juridical or factual existence.

41.     Upon information and belief, the names "Palestinian Pension Fund of the State Administrative Employees" and "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip," or similar permutations thereof, are fictitious names invented and used by Defendant PA and Rashid to shield the PA assets held under those names from creditors, law enforcement agencies and tax authorities, and to mislead banks, brokerages and other financial and/or investment institutions which would not otherwise hold, handle or invest those assets.

42.     Upon information and belief, all assets held under the fictitious names "Palestinian Pension Fund of the State Administrative Employees" and "Palestinian Pension

Fund for the State Administrative Employees of the Gaza Strip," or similar permutations of those names, are the sole and exclusive property of Defendant PA.

43.     Upon information and belief, at an unknown time after 1994, Defendant PA and Rashid opened accounts at a Zurich branch of Credit Suisse Asset Management and/or Credit Suisse First Boston (respectively hereafter "Zurich Accounts" and "Credit Suisse").

44.     Upon information and belief, the Zurich Accounts are titled to Defendant PA.

45.     Upon information and belief, Defendant PA falsely informed Credit Suisse that the beneficiaries of the Zurich Accounts and the funds deposited and/or held therein are fictitious and non-existent "pension funds" named the "Palestinian Pension Fund of the State Administrative Employees" and/or the "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip."

46.     Upon information and belief, at an unknown date or dates after 1994, Defendant PA deposited funds equaling many tens of millions of dollars into the Zurich Accounts.

47.     Upon information and belief, all funds deposited and/or held in the Zurich Accounts at any time are the sole and exclusive property of Defendant PA.

48.     Upon information and belief, the Zurich Accounts are controlled by Defendant PA.

49.     Upon information and belief, beginning at an unknown date or dates subsequent to 1994, Defendant PA and Rashid began to use the PA funds in the Zurich Accounts to purchase investments in United States, including securities and debt instruments.

50.     Upon information and belief, Swiss American Securities, Inc. ("SASI") is a securities custodian and brokerage firm with headquarters at 12 East 49th Street New York, New York.

51.    Upon information and belief, the PA and Rashid used the PA funds in the Zurich Accounts to purchase a large portfolio of securities and debt instruments owned by the PA and held by SASI.

52.    In May, 2005, Plaintiffs served SASI with an Information Subpoena and Restraining Notice pursuant to CPLR § 5222 ("Exhibit F").

53.    In response to Plaintiffs' Information Subpoena and Restraining Notice of May 2005, SASI first submitted to Plaintiffs' counsel, in May 2005, "Verified Answers in Connection With Information Subpoena" which listed only 3 securities of *de minimis* value which SASI claimed were purchased by the "Palestinian Pension Fund." (Exhibit G).

54.    Subsequently, and inexplicably, SASI sent Plaintiffs' counsel in December 2005 an "Amended Verified Answers in Connection With Information Subpoena" ("SASI's Amended Verified Answers") (Exhibit H).

55.    SASI's Amended Verified Answers lists over 250 additional securities and debt instruments in SASI's possession, none of which were listed in SASI's original Verified Answers.

56.    In its Amended Verified Answers, SASI obscurely states that it "has been informed" that the securities and debt instruments in SASI's possession and listed therein "belong to an entity called the Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip." Exhibit H, p. 3.

57.    Upon information and belief, there is no entity with legal, juridical or factual existence called the "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip."

58.    Upon information and belief, the "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip" is a fictitious name invented and used by Defendant PA as an alias for itself.

59.    Upon information and belief, the securities and debt instruments detailed in SASI's Amended Verified Answers were purchased with funds from the Zurich Accounts.

60.    Upon information and belief, the securities and debt instruments detailed in SASI's Amended Verified Answers are the sole and exclusive property of Defendant PA.

61.    Accordingly, Plaintiffs have filed a petition for turnover of the securities and debt instruments held by SASI.

## D.    Defendant THE INSURANCE AND PENSION FUND Has Asserted a Claim to the Securities and Debt Instruments Owned by the PA and Held by SASI

62.    Upon information and belief, in December 2005, Defendant THE INSURANCE AND PENSION FUND ("IPF") filed a motion in this Court seeking to vacate the Restraining Notice served by Plaintiffs on SASI ("Motion to Vacate").

63.    Upon information and belief, in its Motion to Vacate, the IPF asserts that it is a pension and insurance fund established by and operating pursuant to an Egyptian statute (as subsequently modified by Israeli military orders and enactments of the PA) in areas under the jurisdiction of Defendant PA.

64.    Upon information and belief, in its Motion to Vacate, the IPF asserts that it owns the securities and debt instruments which SASI holds and which SASI "has been informed" belong to the "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip."

65.    Upon information and belief, in its Motion to Vacate, the IPF asserts that, in addition to the name "The Insurance and Pension Fund" it is also known by the name "Palestinian Pension Fund for the State Administrative Employees of the Gaza Strip."

66.    Upon information and belief, in its Motion to Vacate, the IPF asserts that, in addition to the names "The Insurance and Pension Fund" and "Palestinian Pension Fund for

12.

the State Administrative Employees of the Gaza Strip," the IPF is also known by the name
"Palestinian Pension Fund of the State Administrative Employees."

67.    Thus, upon information and belief, in its Motion to Vacate, the IPF asserts
that the name "The Insurance and Pension Fund," the name "Palestinian Pension Fund for the
State Administrative Employees of the Gaza Strip," and the name "Palestinian Pension Fund of
the State Administrative Employees" are fully interchangeable synonyms, all of which refer to
Defendant IPF.

68.    Upon information and belief, the claim by the IPF in its Motion to Vacate,
that the names "The Insurance and Pension Fund," "Palestinian Pension Fund for the State
Administrative Employees of the Gaza Strip" and "Palestinian Pension Fund of the State
Administrative Employees" are all synonyms for Defendant IPF, is absolutely false.

69.    Upon information and belief, Defendant IPF is not and never has been
known by the names "Palestinian Pension Fund for the State Administrative Employees of the
Gaza Strip" or "Palestinian Pension Fund for the State Administrative Employees of the Gaza
Strip," and those names do not and never have referred to Defendant IPF.

70.    Upon information and belief, Defendant IPF has no rights to the securities
and debt instruments held by SASI.

71.    Upon information and belief, the legal name of Defendant IPF as
provided in local law is "The Insurance and Pension Fund" so that the manner in which the
Defendant IPF identified itself in its motion, "Palestinian Pension Fund for the State
Administrative Employees of the Gaza Strip" was inaccurate and misleading; the Defendant
should have identified itself as "The Insurance and Pension Fund."

72.    Upon information and belief, Defendant IPF identified itself in the
caption of its Motion to Strike as "Palestinian Pension Fund for the State Administrative
Employees of the Gaza Strip" in order to mislead the Court.

73.     Upon information and belief, the Motion to Vacate filed by Defendant IPF and the assertions made therein constitute an attempt to mislead the Court and to unlawfully prevent the Plaintiffs from enforcing their Judgment against assets of Defendant PA.

## AS AND FOR PLAINTIFFS' CLAIM FOR RELIEF
## DECLARATORY JUDGMENT

74.     Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if it were more fully set forth herein.

75.     Plaintiffs are judgment-creditors of Defendant PA.

76.     SASI holds securities and debt instruments that are the property of Defendant PA.

77.     Plaintiffs have served a Restraining Notice preventing SASI from releasing the securities and debt instruments it holds, and have filed a petition for turnover of those securities and debt instruments.

78.     Defendant IPF has filed a motion falsely asserting that the securities and debt instruments held by SASI are the property of the IPF, and seeking to vacate Plaintiffs' Restraining Notice.

79.     By reason of the foregoing, Plaintiffs are entitled to a declaratory judgment pursuant to CPLR § 3001establishing that the securities and debt instruments held by SASI and listed in its Amended Verified Answers are the sole property of Defendant PA, and that Defendant IPF has no rights to those securities and debt instruments.

WHEREFORE, Plaintiffs respectfully demand an order and judgment pursuant to CPLR § 3001:

a)     Declaring, establishing and decreeing that the securities and debt instruments held by SASI and listed in its Amended Verified Answers are the sole property of Defendant PA;

14

b)      Declaring, establishing and decreeing that Defendant IPF has no rights to the securities and debt instruments held by SASI and listed in its Amended Verified Answers;

c)      Awarding Plaintiffs their costs, expenses, disbursements and attorney's fees in connection with this proceeding; and

d)      Granting such other and further relief as is just, proper and equitable under the circumstances.

Dated: New York, New York,
        February 14, 2005

Respectfully submitted,

LAW OFFICE OF JAROSLAWICZ & JAROS
*Attorneys for the plaintiffs*

by:     _____
        Robert J. Tolchin
        Of counsel

150 William Street, 19th floor
New York, New York 10038
(212) 227-2780

and

David J. Strachman, Esq.
McIntyre, Tate, Lynch & Holt, LLP
*Attorneys for the plaintiffs*
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700

## VERIFICATION

Robert J. Tolchin, an attorney for the plaintiffs in the within action, duly admitted to practice in the Courts of the State of New York, affirms the following statements to be true under the penalties of perjury, pursuant to CPLR 2016:

He has read the foregoing COMPLAINT and knows the contents thereof to be true to his own knowledge except as to those matters therein stated to be alleged on information and belief, and as to those matters he believes it to be true.

He further states that the source of this information and the grounds for his belief are derived from the file maintained in the normal course of business of the attorneys for the plaintiffs herein.

He further states that the reason this affirmation is not made by the plaintiff is that at the time the complaint was being prepared, the plaintiff was not found to be within the County of New York, which is the county where the attorney for the plaintiff herein maintains his office.

Dated: New York, New York
February 14, 2006

_____
Robert J. Tolchin

EXHIBIT K

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------ x

ESTATE OF YARON UNGAR, DVIR UNGAR,  :
YISHAI UNGAR, JUDITH UNGAR, MEIR UNGAR,  :
MICHAEL COHEN, AMICHAI UNGAR and  :
DAFNA UNGAR,  :

        Plaintiffs-Judgment Creditors,  :

     -against-  :

THE PALESTINIAN AUTHORITY and THE  :
PALESTINE LIBERATION ORGANIZATION,  :

       Defendants-Judgment Debtors.  :

------------------------------------------------------------ x

Index No. 105521/05

Hon. Shirley Kornreich

## NON-PARTY THE PALESTINIAN PENSION FUND FOR THE STATE ADMINISTRATIVE EMPLOYEES OF THE GAZA STRIP'S NOTICE OF MOTION TO VACATE RESTRAINING NOTICE AND FOR COSTS AND ATTORNEYS' FEES

PLEASE TAKE NOTICE that, upon the Affidavit of Charles L. Kerr in Support of Non-Party The Palestinian Pension Fund For The State Administrative Employees Of The Gaza Strip's Motion To Vacate Restraining Notice And For Costs And Attorneys' Fees, sworn to December 7, 2005; the Affidavit of Sharhabeel Al-Zaeem, sworn to November 21, 2005; the Affidavit of Farouk M. A-Franji, sworn to November 21, 2005; the Appendix Of Exhibits In Support Of Non-Party The Palestinian Pension Fund For The State Administrative Employees Of The Gaza Strip's Motion To Vacate Restraining Notice And For Costs And Attorneys' Fees; the Memorandum Of Law In Support Of Non-Party The Palestinian Pension Fund For The State Administrative Employees Of The Gaza Strip's Motion To Vacate Restraining Notice And For Costs And Attorneys' Fees, dated December 7, 2005; and upon all the pleadings and proceedings heretofore had herein, non-party The Palestinian Pension Fund For The State Administrative

ny-669068

Employees Of The Gaza Strip (the "Insurance and Pension Fund" or "Fund") will move this Court, at Motion Support Courtroom, Room 130, 60 Centre Street, New York, New York, on December 20, 2005, at 9:30 a.m., or as soon thereafter as counsel may be heard, for an order (1) pursuant to C.P.L.R. § 5240, vacating the Restraining Notice served upon non-party Swiss American Securities Inc. ("SASI") on or about April 21, 2005 by David Strachman, *et al.* (the "Plaintiffs") in connection with judgments (the "Judgments") entered by the United States District Court for the District of Rhode Island in *Estate of Ungar v. The Palestinian National Authority*, 00-cv-105 (D.R.I.) (the "*Ungar* Action"), on the grounds that, *inter alia*, (a) the Insurance and Pension Fund's assets in the SASI account are not assets of the PNA or PLO; (b) the Insurance and Pension Fund is an independent juridical entity separate and distinct from the Judgment Debtors in the *Ungar* Action; (c) the Insurance and Pension Fund is not subject to the *Ungar* Injunction; and (d) SASI properly may release the assets at issue; (2) pursuant to C.P.L.R. § 5222(b) and 22 N.Y.C.R.R. § 130-1.1(a), directing Plaintiffs and their counsel to pay the costs and expenses, including attorneys' fees, incurred by the Fund in connection with this proceeding, and (3) granting such other and further relief that this Court deems just and proper.

PLEASE TAKE FURTHER NOTICE that, pursuant to C.P.L.R. § 2214(b), any responding papers shall be served upon non-party the Insurance and Pension Fund on or before December 13, 2005.

ny-669068

Dated: New York, New York
      December 7, 2005

MORRISON & FOERSTER LLP

By: _____

      Charles L. Kerr
      Mark David McPherson
      Kyle W.K. Mooney

1290 Avenue of the Americas
New York, New York 10104-0050
Telephone: (212) 468-8000
ckerr@mofo.com
mmcpherson@mofo.com
kmooney@mofo.com

*Attorneys for Non-Party The Palestinian
Pension Fund for the State Administrative
Employees of the Gaza Strip*

TO:    JAROSLAWICZ & JAROS, Esqs.
       Robert J. Tolchin, Esq.
       150 William Street, 19th Floor
       New York, New York 10038

       - and -

       David J. Strachman, Esq.
       321 South Main Street, Suite 400
       Providence, RI 02903

       *Attorneys for Plaintiffs Estate of Yaron Ungar,* et al.

       SWISS AMERICAN SECURITIES, INC.
       12 East 49th Street
       New York, New York 10017

       BUSHELL & VALLIERE LLP
       Victor C. Bushell, Esq.
       Cem Ozer, Esq.
       60 East 42nd Street, Suite 2925
       New York, New York 10165

       - and -

ny-669068

KALBIAN HAGERTY LLP
Haig V. Kalbian, Esq.
Mary M. Baker, Esq.
Claire A. DeLelle, Esq.
The Brawner Building
888 17th Street, N.W., Suite 1000
Washington, D.C.  20006

*Attorneys for Palestine Monetary Authority,*
*Plaintiff in Index No. 107777/05*

WHITE & CASE LLP
Christopher M. Curran
Nicole Erb
701 Thirteenth Street, N.W.
Washington, D.C.  20005

*Attorneys for Nonparty Orascom Telecom Holding S.A.E.*

4

EXHIBIT L

From:

01/04/2006 17:18 #463 P.001/003

# MCINTYRE, TATE,
## LYNCH & HOLT LLP
COUNSELLORS AT LAW

JERRY L. MCINTYRE †
DEBORAH MILLER TATE *Δ
WILLIAM J. LYNCH
WILLIAM F. HOLT
DAVID J. STRACHMAN *
ROBERT S. PARKER*

Also member
† New York Bar
* Massachusetts Bar
Δ Florida Bar

VIA FAX (212) 468-7900

January 4, 2006

Mark David McPherson
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050

Re:    Ungar v. The Palestinian Authority/Palestine Liberation Organization,
Index No.: 105521/05

Dear Mr. McPherson:

Regarding your email of last evening, we faxed the attached letter on December 22, 2005 to Mr. Taffet, SASI's counsel, in response to Mr. Kerr's letter which indicated that SASI refused to effectuate the IVEX conversion. Receipt of the fax to Mr. Taffett was confirmed at the time. Having heard nothing further, we assumed the conversion was accomplished.

Sincerely,

David J. Strachman

DJS/dc

cc:    Robert Tolchin (v/fax 212-227-5090)
Allan N. Taffet (v/fax 212-883-8883)
Charles Kerr (v/fax 212-468-7900)

Enclosure

SUITE 400    321 SOUTH MAIN STREET    PROVIDENCE, RI    02903
401-351-7700    FAX 401-331-6095

From:                                          01/04/2006 17:18 #463 P.002/003

# MCINTYRE, TATE,
# LYNCH & HOLT LLP
### COUNSELLORS AT LAW

JERRY L. MCINTYRE †
DEBORAH MILLER TATE *Δ
WILLIAM J. LYNCH
WILLIAM F. HOLT
DAVID J. STRACHMAN *
ROBERT S. PARKER*

Also member
† New York Bar
* Massachusetts Bar
Δ Florida Bar

VIA FAX (212) 883-8883 and
Email ataffet@dsllp.com

December 22, 2005

Allan N. Taffet, Esquire
Duval & Stachenfeld LLP
300 East 42nd Street
New York, NY 10017

Re:    Ungar v. The Palestinian Authority/Palestine Liberation Organization,
       Index No.: 105521/05

Dear Mr. Taffet:

In April 2005, in response to an information subpoena with restraining notice served on Swiss American Securities Inc., Adam Rezak, Vice President of SASI, informed us that SASI had no assets or funds subject to restraint. He later called to say that he found shares in three issues, valued at approximately $50,000, titled to the Palestinian Authority's "pension" fund. Subsequently, in May 2005, you personally provided a verified answer in connection with the information subpoena issued in this matter confirming Mr. Rezak's updated information.

Thus, we were surprised to receive two weeks ago your amended verified answer, dated December 6, 2005, contradicting the previous answer sworn to by you, and indicating that, in fact, SASI holds a massive portfolio titled to the PA "pension" fund. Suspiciously, your amended answer arrived virtually simultaneously with a pleading prepared by Mr. Kerr challenging the restraining notice.

A few days ago we received a letter from Mr. Kerr alleging that SASI, as a result of the restraining notice and a parallel injunction, refuses to effectuate a conversion of IVAX Corp. shares. As we indicated to Mr. Kerr yesterday, we have no idea why this is so and have no reason to believe it is true. Plaintiffs have never taken the position that the injunction or the restraining notice prohibit customary management of any portfolio. Indeed, it is our understanding that the other brokers managing the Palestinian Authority's "pension" funds

Allan N. Taffet, Esquire
Page Two
December 22, 2005

(Raymond James/Awad Asset Management) have continued to do so after having been served with the restraining notice and injunction.

Moreover, if true, SASI's refusal to manage the funds and maximize returns consistent with the previously agreed-to investment criteria and procedures will harm the Ungars when the collection proceedings are complete and the funds are transferred to them. Any failure by SASI to actively manage the account consistent with its standing goals, objectives and procedures constitutes a breach of its fiduciary duty, ultimately damaging the plaintiffs, for which I assure you it will beheld liable.

Mr. Kerr claims that your refusal to manage the funds has already caused significant loss to the value of the portfolio. I truly hope that this is not the case, because SASI will bear any such loss.

In sum, there is no restraint whatsoever on the active management and maintenance of the Palestinian Authority "pension" fund, provided, of course, that no distributions are made. Consequently, there is no prohibition on the conversion of the IVAX shares.

Please contact me if you require any further assistance or clarifications.

Sincerely,

David J. Strachman

DJS/dc

EXHIBIT M

Robert Tolchin

From:    Robert Tolchin [RJT@TolchinLaw.com]
Sent:    Thursday, February 16, 2006 1:07 PM
To:      'Kerr, Charles L.'
Subject: Managing Funds in SASI Account

Chet,

I was rather surprised this morning when we met in Court to hear that you continue to assert that the Ungars' judgment enforcement process has in some way prevented your client from *managing* the funds in the SASI account.

Please note that the Ungars have *never* taken the position that your client is prevented from *managing* the funds at SASI. In other words, as far as we're concerned, your client can go ahead and buy and sell stocks and bonds, and has never been prevented from doing so. In fact, the Ungars *insist* that your client take all steps to preserve and increase the value of the portfolio. The Ungars' judgment enforcement process, as we see it, merely prevents your client from *withdrawing* those funds and transferring them overseas or into some other name.

If there ever was any doubt about the Ungars position in this regard, it should have been cleared up by the letter dated December 22, 2005 from David Strachman to SASI's counsel, Mr. Taffet. Though it wasn't addressed to you, you responded to it, so I'm sure you have a copy. In that letter, Mr. Strachman states "there is no restraint whatsoever on the active management and maintenance" of your client's funds at SASI, "provided   that no distributions are made."

2/27/2006

If you think that some other document is necessary to clear this
issue up with SASI or your client's investment advisers, the
Ungars are willing to issue whatever it is, within reason. Of
course, we won't agree to tie this finite issue to any other non-
related issues.

We've made this offer to you before. You keep ignoring it,
evidently based on some perverse notion that you can make a
claim for damages. But if for any reason the portfolio isn't
being managed right now, it's only because you keep ignoring
what we say: go ahead and trade.

--Bob

2/27/2006

# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------- x

In the matter of the Application of:                        :

THE ESTATE OF YARON UNGAR, et al.,                         :

                                   Petitioners,            :

For an order and judgment pursuant to CPLR §§ 5225          :
and 5228
                                                           :

                        -against-                          :

SWISS AMERICAN SECURITIES, INC.,                           :

                                   Respondent.            :

-------------------------------------------------------------- x

AT I.A.S. PART _____ OF THE
SUPREME COURT OF THE STATE OF NEW
YORK, HELD IN AND FOR THE COUNTY OF
NEW YORK, AT THE COUNTY COURT
HOUSE THEREOF, ON _____

Index No.  102106/06

## [PROPOSED] ORDER REGARDING THE MANAGEMENT OF ASSETS BEING HELD IN A CUSTODIAL ACCOUNT AT SWISS AMERICAN SECURITES INC.

WHEREAS, on July 13, 2004, the United States District Court for the District of Rhode Island (the "Rhode Island District Court") entered judgments in favor of the Plaintiffs-Judgment Creditors against, *inter alia*, The Palestinian Authority (the "Palestinian Authority") and the Palestine Liberation Organization (the "PLO" and, collectively with the Palestinian Authority, the "Judgment Debtors") in *Estate of Ungar v. The Palestinian Authority, et al.*, 00-CV-105 (D.R.I.) (the "Judgments"); and

WHEREAS, on May 5, 2005, the Rhode Island District Court issued an Injunction prohibiting the Palestinian Authority and the PLO, and their "officers, agents, servants, employees, attorneys, partners, fiduciaries, and any natural or legal persons in privity with them or acting on their behalf and or in active concert and participation with them" from, *inter alia*, "withdrawing, selling, transferring . . . or in any way disposing of or effecting a disposition in, directly or indirectly, any and all assets of The Palestinian Authority and The Palestine

ny-683903

Liberation Organization however titled . . . located within the jurisdiction of the United States or of any State thereof" (the "Injunction") (a copy of the Injunction is attached as Exhibit A); and

WHEREAS, copies of the Injunction and a separate Notice of Injunction Pursuant to Fed. R. Civ. P. 65(d), dated May 6, 2005 (the "Notice of Injunction") were served by Plaintiffs-Judgment Creditors on various entities (a copy of the Notice of Injunction is attached hereto as Exhibit B); and

WHEREAS, on or about April 21, 2005, Plaintiffs-Judgment Creditors domesticated the Judgments in New York pursuant to C.P.L.R. § 5402, under the Index No. 105521/05 and proceeded to serve information subpoenas and restraining notices (the "Restraining Notices") on various entities; and

WHEREAS, Non-Party The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip had retained Equinox Capital Management, LLC; Eagle Capital Management, LLC; Awad & Associates, Brandywine Asset Management, Inc. and Pacific Income Advisors pursuant to separate Discretionary Investment Advisory Agreements to act as investment managers and to actively manage some of or all of the assets of The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip by, *inter alia*, buying or selling securities and engaging in hedging strategies in the normal course of business and substantially in compliance with The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip's investment guidelines, as amended from time to time (the "Investment Managers"); and

WHEREAS, the entities that have been served with the Injunction, the Notice of Injunction and/or the Restraining Notices include, but are not limited to, the following:

ny-683903                                    2

(a)    Swiss American Securities Inc. ("SASI"), which is holding certain assets for the benefit of "The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip," as identified by SASI in its Amended Verified Answers in Connection With Information Subpoena, dated December 6, 2005 (the "Assets"); and

(b)    Smith Barney, a division of Citigroup Global Markets, Inc. ("Smith Barney"), which had been retained by The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip to act as an investment advisor with respect to, *inter alia*, the Assets; and

(c)    some or all of the Investment Managers that were managing, *inter alia*, the Assets; and

WHEREAS, following receipt of the Injunction, Notice of Injunction and Restraining Notice, SASI froze the Assets and the Investment Managers informed The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip that they were no longer able to fulfill their responsibilities under their respective Discretionary Investment Advisory Agreement with respect to the Assets; and

WHEREAS, on February 21, 2006, the Plaintiffs-Judgment Creditors caused a Sheriff's Levy and Execution to be served on SASI commanding SASI to turn over any assets belonging to the Palestinian Authority and/or the PLO to the Sheriff of the City of New York (the "Sheriff's Levy"); and

WHEREAS, on March 2, 2006, Plaintiffs-Judgment Creditors filed a motion, brought by Order to Show Cause, in a related turnover proceeding, Index No. 102106/06 (the "Turnover Proceeding"), seeking an order directing SASI, *inter alia*, "to continue managing and investing

the assets held by [SASI] which are currently the subject of a Restraining Notice, a Sheriff's Levy of Execution and the within Turnover Proceeding," (the "Asset Management OSC"); and

WHEREAS, on March 6, 2006, Plaintiffs-Judgment Creditors withdrew the Restraining Notice served upon SASI; and

WHEREAS, at the March 7, 2006 hearing regarding various motions in this proceeding, Plaintiffs-Judgment Creditors, SASI and The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip entered into a stipulated agreement on the record relating to the management of the Assets pending resolution by this Court of the enforcement proceedings before it relating to the Assets.

IT IS HEREBY ORDERED THAT:

1.     The Investment Managers (and/or any other investment manager retained by The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip in the future) are authorized and permitted to actively manage the Assets.  Actively managing these Assets means that an Investment Manager, whenever it deems appropriate and without prior consultation, may buy, sell, trade, transfer, exchange, convert, liquidate or otherwise trade in any stock and in any other securities (including money market instruments) with or to third parties consistent with that Investment Manager's Discretionary Investment Advisory Agreement with The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip.

2.     SASI is permitted to take whatever steps are commercially reasonable and necessary to perform its custodial role with respect to the Assets, including, but not limited custody, execution and clearance functions.

3.     Smith Barney (and/or any other investment advisor retained by The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip in the future) is

permitted to advise The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip in connection with the management of the Assets.

4. Notwithstanding Paragraphs 1, 2 and 3 above, this Order shall not permit the Investment Managers, SASI or any other person or party to transfer, pay out and/or release to (i) The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip (including any of its agents, representatives and/or affiliates) or (ii) The Palestinian Authority and/or The Palestine Liberation Organization (including any of their respective agents, representatives and/or affiliate) any of the Assets, including any profits, proceeds and/or returns thereon; *provided, however*, that The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip is authorized and permitted to use the Assets or portions thereof to pay the fees and expenses of the Investment Managers and/or Smith Barney in connection with their work on behalf of The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip with respect to those Assets.

5. The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip is not, and shall not be construed to be, admitting and/or conceding that the Judgment Debtors have any interest in the Assets, are entitled to possession of the Assets or that The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip is in any way answerable for the Judgments.

6. Plaintiffs-Judgment Creditors are not, and shall not be construed to be, admitting and/or conceding that the Assets belong to The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip and/or that The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip has any interest therein.

ny-683903

5

7.     Other than expressly set forth above, Plaintiff-Judgment Creditors, SASI and The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip expressly reserve all rights, claims and defenses, and shall not be deemed to have waived any rights, claims or defenses.

ENTER:

SHIRLEY WERNER KORNREICH
J.S.C.

Dated:

# Exhibit C

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

```
------------------------------------------------- x
                                                  :
ESTATE OF YARON UNGAR, DVIR UNGAR,                :    No. 00-105L
YISHAI UNGAR, JUDITH UNGAR, MEIR UNGAR,           :
MICHAEL COHEN, AMICHAI UNGAR and                  :
DAFNA UNGAR,                                       :    STIPULATION AND ORDER
                                                  :
               Plaintiffs,                         :
                                                  :
          -against-                               :
                                                  :
THE PALESTINIAN AUTHORITY and THE                 :
PALESTINE LIBERATION ORGANIZATION,                :
                                                  :
               Defendants.                         :
------------------------------------------------- x
```

WHEREAS, in connection with judgments entered by this Court in this Action, the Court issued an Injunction, dated May 5, 2005 (the "Injunction"), which prohibits, *inter alia*, defendants The Palestinian Authority (the "PA") and The Palestine Liberation Organization (the "PLO" and, collectively with the PA, the "Judgment Debtors") and their "officers, agents, servants, employees, attorneys, partners, fiduciaries, and any natural or legal persons in privity with them or acting on their behalf and or in active concert and participation with them" from, *inter alia*, "withdrawing, selling, transferring . . . or in any way disposing of or effecting a disposition in, directly or indirectly, any and all assets of The Palestinian Authority and The Palestine Liberation Organization however titled . . . located within the jurisdiction of the United States or of any State thereof" (the "Injunction," a copy of which is attached as Exhibit A); and

ny-763604

Case 1:00-cv-00105-L-DLM    Document 502-23 Filed 09/13/07   Page 32 of 67

WHEREAS, Plaintiffs-Judgment Creditors served copies of the Injunction and a separate Notice of Injunction Pursuant to Fed. R. Civ. P. 65(d), dated May 6, 2005 (the "Notice of Injunction," a copy of which is attached as Exhibit B), upon various entities; and

WHEREAS, on or about April 21, 2005, Plaintiffs-Judgment Creditors domesticated the Judgments in New York pursuant to C.P.L.R. § 5402, under the Index No. 105521/05 and proceeded to serve information subpoenas and restraining notices (the "Restraining Notices") on various entities; and

WHEREAS, Non-Party The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip[1] represents that it had retained Equinox Capital Management, LLC; Eagle Capital Management, LLC; Awad & Associates; Brandywine Asset Management, Inc. and Pacific Income Advisors pursuant to separate Discretionary Investment Advisory Agreements to act as investment managers and to actively manage some of or all of the assets of The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip by, *inter alia*, buying or selling securities and engaging in hedging strategies in the normal course of business and substantially in compliance with The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip's investment guidelines, as amended from time to time (the "Investment Managers"); and

WHEREAS, the entities that have been served with the Injunction, the Notice of Injunction and/or the Restraining Notices include, but are not limited to, the following:

---

[1] The legal existence of, and the relationship, if any, between the "The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip" and "the Insurance and Pension Fund" is disputed in this and related actions. References herein to "The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip" should not be construed as an agreement by any party as to the nature of such a relationship, if any, or to the legal existence of "The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip".

ny-763604

(a)      Swiss American Securities Inc. ("SASI"), which is holding certain assets for the benefit of "The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip," as identified by SASI in its Amended Verified Answers in Connection With Information Subpoena, dated December 6, 2005 (the "Assets"); and

(b)      Smith Barney, a division of Citigroup Global Markets, Inc. ("Smith Barney"), which had been retained by The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip to act as an investment advisor with respect to, *inter alia*, the Assets; and

(c)      some or all of the Investment Managers that were managing, *inter alia*, the Assets; and

WHEREAS, The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip represents that following receipt of the Injunction, Notice of Injunction and Restraining Notice, SASI froze the Assets and the Investment Managers informed The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip that they were no longer able to fulfill their responsibilities under their respective Discretionary Investment Advisory Agreements with respect to the Assets; and

WHEREAS, on February 21, 2006, the Plaintiffs-Judgment Creditors caused a Sheriff's Levy and Execution to be served on SASI commanding SASI to turn over any assets belonging to the Palestinian Authority and/or the PLO to the Sheriff of the City of New York (the "Sheriff's Levy"); and

WHEREAS, on March 2, 2006, Plaintiffs-Judgment Creditors filed a motion, brought by Order to Show Cause, in a turnover proceeding filed in the Supreme Court for the State of New York, New York County, Index No. 102106/06 (the "Turnover Proceeding"), seeking an order

3

directing SASI, *inter alia*, "to continue managing and investing the assets held by [SASI] which are currently the subject of a Restraining Notice, a Sheriff's Levy of Execution and the within Turnover Proceeding," (the "Asset Management OSC"); and

WHEREAS, on March 6, 2006, Plaintiffs-Judgment Creditors withdrew the Restraining Notice served upon SASI; and

WHEREAS, at the March 7, 2006 hearing regarding various motions in the proceedings pending in the Supreme Court for the State of New York, Plaintiffs-Judgment Creditors, SASI and The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip entered into a stipulated agreement on the record relating to the management of the Assets pending resolution by that court of the enforcement proceedings before it relating to the Assets; and

WHEREAS, by order dated May 18, 2006, the Supreme Court for the State of New York dismissed the Turnover Proceeding and the Sheriff's Levy thereafter expired; and

WHEREAS, in the May 18, 2006 Order of the Supreme Court for the State of New York dismissing the Turnover Proceeding, the Court noted that the Assets continue to be restrained by the Injunction; and

WHEREAS, the Supreme Court for the State of New York entered an Order, dated May 18, 2006, substantially similar to this Stipulation and Order;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned counsel for the Plaintiffs-Judgment Creditors and for The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip, that:

1.    The Investment Managers (and/or any other investment manager retained by The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip in the future)

are authorized and permitted to actively manage the Assets.  Actively managing these Assets means that an Investment Manager, whenever it deems appropriate and without prior consultation, may buy, sell, trade, transfer, exchange, convert, liquidate or otherwise trade in any stock and in any other securities (including money market instruments) with or to third parties consistent with that Investment Manager's Discretionary Investment Advisory Agreement with The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip.

2.      SASI is permitted to take whatever steps are commercially reasonable and necessary to perform its custodial role with respect to the Assets, including, but not limited to custody, execution and clearance functions.

3.      Smith Barney (and/or any other investment advisor retained by The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip in the future) is permitted to advise The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip in connection with the management of the Assets.

4.      Notwithstanding Paragraphs 1, 2 and 3 above, this Order shall not permit the Investment Managers, SASI or any other person or party to transfer, pay out and/or release to (i) The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip or the Insurance and Pension Fund[2] (including any of its or their agents, representatives and/or affiliates) or (ii) The Palestinian Authority and/or The Palestine Liberation Organization (including any of their respective agents, representatives and/or affiliates) any of the Assets, including any profits, proceeds and/or returns thereon; *provided, however*, that (a) the Investment Managers and SASI may take any necessary and commercially reasonable steps to execute any transaction, including the necessary delivery of funds and assets to third parties as is required to

---

[2] *See note 1, supra.*

Case 1:00-cv-00105-L-DLM    Document 502-23 Filed 09/08/2010    Page 7 of 8

perform their custody, execution and clearance functions, if any; and (b) The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip is authorized and permitted to use the Assets or portions thereof to pay the fees and expenses of the Investment Managers (and/or any other investment manager retained by The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip in the future) and/or Smith Barney (and/or any other investment advisor retained by The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip in the future) in connection with their work on behalf of The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip with respect to those Assets.

5.      The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip is not, and shall not be construed to be, admitting and/or conceding that the Judgment Debtors have any interest in the Assets, are entitled to possession of the Assets or that The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip is in any way answerable for the Judgments.

6.      Plaintiffs-Judgment Creditors are not, and shall not be construed to be, admitting and/or conceding that the Assets belong to The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip and/or that The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip has any interest therein.

7.      Other than expressly set forth above, Plaintiff-Judgment Creditors and The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip expressly reserve all rights, claims and defenses, and shall not be deemed to have waived any rights, claims or defenses.

ny-763604

Dated: New York, NY
    August 1, 2007

MORRISON & FOERSTER LLP

By: _____
    Charles L. Kerr
    Mark David McPherson
    Kyle W.K. Mooney

1290 Avenue of the Americas
New York, NY 10104-0050
Telephone: (212) 468.8000

*Attorneys for The Palestinian Pension Fund*
*for the State Administrative Employees in*
*the Gaza Strip*

Dated: Providence, Rhode Island
    August 11, 2007

MCINTYRE TATE LYNCH & HOLT, L.L.P.

By: _____
    David J. Strachman

321 South Main Street, Suite 400
Providence, RI 02903
Telephone: (401) 351-7700

*Attorneys for Plaintiffs Estate of Yaron Ungar,*
*et al.*

SO ORDERED:

_____
Sr., United States District Judge
9/11/07

# Exhibit D

Case 1:00-cv-00105-L-DLM    Document 532-2    Filed 09/14/10    Page 84 of 98 PageID
#: 4364
Case 1:00-cv-00105-L-DLM   Document 511-2   Filed 08/18/10   Page 1 of 13

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

-----------------------------------------------------------x
                                                           :
THE ESTATE OF YARON UNGAR, *et al.*,                       :        CA 00-105L (RRL)
                                                           :
                       Plaintiffs,                         :
                                                           :
           v.                                              :
                                                           :
THE PALESTINIAN AUTHORITY, *et al.*,                       :
                                                           :
                       Defendants.                         :
                                                           :
                                                           :
-----------------------------------------------------------x

**DECLARATION OF MARK DAVID McPHERSON IN SUPPORT OF THIRD-PARTY
INTERVENOR THE PALESTINIAN PENSION FUND FOR THE STATE
ADMINISTRATIVE EMPLOYEES IN THE GAZA STRIP'S MOTION TO
INTERVENE, AND TO VACATE OR MODIFY THE PRELIMINARY INJUNCTION**

I, MARK DAVID McPHERSON, declare:

1.      I am a member of the law firm Morrison & Foerster LLP, counsel for Third-Party

Intervenor The Palestinian Pension Fund for the State Administrative Employees in the Gaza

Strip (the "Pension Fund" or "Fund").  I submit this Declaration in support of the Pension Fund's

motion to intervene in this action (the "*Ungar* proceeding") and to vacate the preliminary

injunction issued by this Court on May 5, 2005 (the "Injunction"), or, in the alternative, to

modify the Injunction and to require that the Ungar plaintiffs post a bond.  Unless otherwise

stated, the facts in this Declaration are based on my personal knowledge.

**I.      BACKGROUND OF THE PENSION FUND.**

2.      The Pension Fund is a distinct legal entity that was created by statute more than

forty years ago.  It is currently responsible for managing a pension system for the benefit of

certain categories of municipal employees who work in the Palestinian Territories.  It has over

50,000 participants and between 5,000 and 6,000 current beneficiaries.  Managed by its Board of

Directors and a professional, administrative staff, the Pension Fund has its own independent budget and manages its own funds and assets.

3.    A detailed discussion of the Pension Fund's history and operation is set forth in the attached affidavit of the Fund's Director General, Farouk M. A-Franji, sworn to on April 4, 2007. That affidavit was submitted in support of the Pension Fund's motion for summary judgment in a related proceeding pending before the New York State Supreme Court, *Ungar v. The Palestinian Authority*, Index No. 102101/06. A true and correct copy of Mr. A-Franji's affidavit, along with certain attachments to that affidavit, is attached as Exhibit A. (To avoid diluting the record with voluminous documents that are largely unnecessary for the present motion, I have attached only the Exhibits to Mr. A-Franji's Affidavit that are relevant to this motion.)

## II.    PROCEDURAL BACKGROUND.

### A.    The Rhode Island Litigation.

4.    The Pension Fund's motion and request to intervene in this action arise out of Plaintiffs' efforts to satisfy the default judgment entered in this action. On July 14, 2004, this Court entered a final default judgment against the Palestinian Authority (the "PA") and the Palestine Liberation Organization (the "PLO"); the judgment was affirmed on appeal on March 31, 2005. The PA and the PLO's motion to vacate that default judgment is currently pending before the Court.

5.    Plaintiffs have used a number of procedural mechanisms to try to enforce that judgment against a variety of entities, including the Pension Fund.

6.    First, Plaintiffs attempted to unilaterally expand a preliminary injunction issued by this Court. On May 5, 2005, the Rhode Island District Court entered a preliminary injunction (the "Injunction") prohibiting the transfer of the Judgment Debtors' assets located in the United

Case 1:00-cv-00105-L-DLM    Document 532-2    Filed 09/14/10    Page 86 of 98 PageID
Case 1:00-cv-00105-L-DLM   Document 511-2   Filed 08/18/10   Page 3 of 13
#: 4379

States.  A true and correct copy of the Injunction is attached as Exhibit B; a true and correct copy

of the transcript of the hearing during which this Court granted the Injunction is attached as

Exhibit C.

7.      By its plain terms, the Injunction is limited to the assets of Judgment Debtors:

WHEREFORE IT IS HEREBY ORDERED AND DECREED THAT:

1.      The Palestinian Authority and the Palestine Liberation
Organization and their officers, agents, servants, employees, attorneys,
partners, fiduciaries, and any natural agent or legal persons in privity with
them, and/or in active concert and participation with them, are hereby
prohibited, restrained and enjoined from withdrawing selling, transferring,
alienating, assigning, pledging, impairing, offsetting, hypothecating,
encumbering, concealing, secreting, trading, removing, or in any way
disposing or effecting a disposition in, directly or indirectly, any assets of
The Palestinian Authority and/or The Palestine Liberation Organization
however titled (including without limitation all accounts, deposits, cash,
shares, stock, credits, partnership rights or interests, equitable interests,
contractual rights, holdings, financial interests or real estate) located
within the jurisdiction of the United States or any State thereof.

(Ex. B at 1-2.)

8.      On May 6, 2005, Plaintiffs' counsel sent out by facsimile a "Notice of

Injunction/Pursuant to Fed. R. Civ. P. 65(d)" to a number of entities, including Swiss American

Securities Inc. ("SASI") and other entities with which the Pension Fund had established business

relations.  A true and correct copy of the Notice of Injunction that Plaintiffs' counsel faxed to

SASI is attached as Exhibit D.  In the Notice of Injunction, Plaintiffs' counsel represented that

the Injunction applied to assets of, among others, the Palestinian Pension Fund, the Palestine

Pension Fund and the Insurance and Pension General Corporation:

TAKE FURTHER NOTICE that the Injunction applies to all assets of the
PA and PLO however titled, and that the assets of the PA and PLO are
held and/or titled under the names . . . *Palestinian Pension Fund*, . . .
*Palestine Pension Fund*, [and] *Insurance and Pension General
Corporation*, . . .

Case 1:00-cv-00105-L-DLM   Document 532-2   Filed 09/14/10   Page 87 of 98 PageID
#: 4374
Case 1:00-cv-00105-L-DLM   Document 511-2   Filed 08/18/10   Page 4 of 13

(Ex. D at 1 (emphasis added).)  The Notice of Injunction warned the recipient that it "will be liable" if any assets or funds were transferred in violation of the Injunction.  (*Id*.)

9.      This broadly worded Notice of Injunction spurred Credit Suisse and SASI to freeze the Pension Fund's assets—even though SASI represented at a hearing in New York that "[w]e have no assets of the PLO and the PA" and despite SASI's acknowledgment that the Injunction was "far more narrowly drawn" than the "broadly drafted notice."  (*See* Ex. E, a true and correct copy of a transcript dated March 7, 2006, at 5:23-24, 41:9-10.)  SASI clarified that it would "honor a notice of injunction in Rhode Island. . . unless and until Judge Lagueux vacated that notice of injunction as applied to the monies at SASI."  (*Id*. at 41:2-14.)

**B.      The New York Proceedings.**

10.     On or about April 21, 2005, Plaintiffs domesticated the *Ungar* Judgments in New York.

11.     Thereafter, Plaintiffs proceeded to serve Information Subpoenas with Restraining Notices (under the 105521/05 index number) upon a number of entities with which the Pension Fund had established business relations, including SASI.  Similar to the Notice of Injunction, Plaintiffs represented in the Information Subpoena and Restraining Notice that the Judgment Debtors' assets were titled under various names.  A true and correct copy of the Information Subpoena and Restraining Notice that Plaintiffs' counsel faxed to SASI on April 21, 2005, is attached as Exhibit F.

12.     SASI responded to that Information Subpoena and Restraining Notice on May 23, 2005, and served an Amended Response on December 6, 2005.  A true and correct copy of SASI's Amended Verified Answers in Connection with Information Subpoena is attached as Exhibit G.  In its Amended Verified Answers, SASI stated that it did not maintain any accounts or deposits and did not have in its possession, custody or charge any funds, investments,

deposits, goods chattels, monies, credits or effects belonging or owing or titled to the PA and/or the PLO. (See Exhibit G at 1-3.)  In its Amended Verified Answers, however, SASI identified more than $100 million in publicly traded securities and debt instruments in its possession belonging to "The Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip." (*Id.* at 3-15.)  According to SASI's Amended Answers, as a result of having been served with Plaintiffs' Notice of Injunction and Restraining Notice, SASI froze the more than $100 million in assets it was holding for the benefit of the Pension Fund. (*Id.* at 15.)  Those assets remain frozen today.[1]

13.     On December 7, 2005, the Pension Fund moved to vacate the Restraining Notice served upon SASI on the grounds that, among other things, the Pension Fund was separate and distinct from the Judgment Debtors and that the assets held at SASI belonged to the Pension Fund alone.  Plaintiffs did not respond to the Pension Fund's motion to vacate the Restraining Notice by February 10, 2006, the Court-ordered date for responsive papers, and later withdrew the Restraining notice by letter dated March 6, 2006—one day before the hearing was scheduled to occur.  A true and complete copy of plaintiffs' March 6, 2006 letter is attached as Exhibit H.

14.     On February 14, 2006, Plaintiffs filed two new actions:  First, Plaintiffs filed a turnover proceeding against SASI pursuant to C.P.L.R. § 5225 (the "Turnover Proceeding").  Second, Plaintiffs filed a declaratory judgment action pursuant to C.P.L.R. § 3001 (the "Declaratory Judgment Action").

---

[1] As detailed, *infra*, at ¶ 29, SASI is no longer the sub-custodian of the Pension Fund's assets held in New York.  Because SASI was closed in late 2008, Credit Suisse, the Global Custodian of the Pension Fund's assets at issue, has moved the assets to a new sub-custodial account at Credit Suisse Securities LLC New York (Investment Banking Unit) ("CSSU NY").

15.     One week after they commenced the Turnover Proceeding and the Declaratory Judgment Action, Plaintiffs caused the Sheriff of the City of New York to serve a levy upon SASI (the "Sheriff's Levy").  On the evening before the hearing on the Pension Fund's motion to vacate the original Restraining Notice served on SASI, Plaintiffs' counsel sent to our firm and to SASI's counsel a letter claiming that the Sheriff's Levy "superseded" the Restraining Notice and, therefore, the Restraining Notice was "withdrawn." (Ex. H.)  Mr. Tolchin stated:

> By operation of CPLR 5232(a) (levy expires after 90 days 'unless a proceeding under sections 5225 or 5227 has been brought'), the Sheriff's Levy and Execution will remain in effect until the conclusion of the Ungar's turnover proceeding against SASI.
>
> Inasmuch as the Restraining Notice (which was due to expire in any case on April 20, 2006) has been superseded by the Sheriff's Levy and Execution, the Ungars' hereby withdraw the Restraining Notice.

(*Id.*)

16.     The Pension Fund promptly moved to dismiss the Turnover Proceeding, again on the grounds that, among other things, the Pension Fund was separate and distinct from the Judgment Debtors and that the assets held at SASI belonged to the Pension Fund alone.  On May 18, 2006, the New York court granted that motion and dismissed the Turnover Proceeding.  A true and complete copy of the May 18, 2006 transcript and Order dismissing the Turnover Proceeding is attached as Exhibit I.  In its Decision, read from the bench, the Court specifically found that Plaintiffs had "no basis" for commencing the Turnover Proceeding against SASI:

> Reading through all these papers, it seems to me that the petitioner in the turnover proceeding had commenced a turnover proceeding based purely on information and belief there was *absolutely nothing at all to support their allegations that the Pension Fund is something other than a Pension Fund for the employees.*
>
> In response to the motion to dismiss, there is credible, very credible affidavits and evidence indicating that this in fact is money that belonged to the employees of, and not of the different municipalities and governments of the Palestinian Authority.

> On its face, it totally indicates, clearly indicates I must say, and I think if anything proves, it clearly proves based upon these documents that in fact *there is no basis for the turnover proceeding.*
>
> I'm going to grant the motion to dismiss.

(*Id.* at 44-45 (emphasis added); *see also id.* at 48 ("It seems to me at this point that there was absolutely no evidence at all, nothing, which should have given rise to this turnover proceeding, . . .).)[2]

17.     In light of the Court's dismissal of the Turnover Proceeding and the Plaintiffs' withdrawal of the Restraining Notice, the only remaining action addressing the Pension Fund is Plaintiffs' Declaratory Judgment Action.  Plaintiffs have never sought an order for any pre-judgment restraint in that Action.  In their Declaratory Judgment Complaint, Plaintiffs alleged that the Pension Fund is nothing but a fictitious entity without any legal existence.  A true and correct copy of Plaintiffs' Verified Complaint in the Declaratory Judgment Action, dated February 14, 2006 (the "Declaratory Judgment Complaint"), is attached (without exhibits) as Exhibit J.  They contended that the assets frozen at SASI do not belong to the Pension Fund at all and, instead, are secretly "the sole and exclusive property" of the Palestinian Authority (the "PNA") as the result of some elaborate fraud.  (*See* Ex. J ¶¶ 39-60.)[3]  Accordingly, Plaintiffs sought a declaratory judgment that "the securities and debt instruments held by SASI . . . are the sole property of Defendant [PNA]" and that Pension Fund "has no rights to the securities and debt instruments held by SASI and listed its Amended Verified Answers; . . ." (*Id.* ¶ 79.)

---

[2] Given the dismissal of the Turnover Proceeding, the Sheriff's Levy expired by its own terms on May 22, 2006.  (*See* C.P.L.R. § 5232(a); Ex. I at 47.)  Thus, as the Declaratory Judgment Action proceeded, SASI continued to restrain the Pension Fund's assets based solely upon the Injunction issued by the Rhode Island District Court and the Notice of Injunction served by Plaintiffs' counsel claiming that that Injunction applied to Pension Fund assets.

[3] All of Plaintiffs' allegations in the Declaratory Judgment Complaint concerning the Pension Fund and the assets frozen at SASI are made solely on "information and belief." (Ex. J ¶¶ 30-73.)

Case 1:00-cv-00105-L-DLM    Document 532-2    Filed 09/14/10    Page 91 of 98 PageID
Case 1:00-cv-00105-L-DLM    Document 511-2    Filed 08/18/10    Page 8 of 13
#: 4379

18.    On May 26, 2006, the Pension Fund served its Verified Answer in the Declaratory

Judgment Action, and on August 31, 2006, the Pension Fund served its Verified Bill of

Particulars as to its Affirmative Defenses.

19.    The parties conducted extensive discovery in the Declaratory Judgment Action for

almost one year.  Discovery closed in February 2007, and the parties subsequently submitted

cross-motions for summary judgment in April and May of 2007.  Both motions for summary

judgment were denied on June 5, 2008.  A true and correct copy of the New York Supreme

Court's June 5, 2008 decision and order denying summary judgment is attached as Exhibit K.

### C.    Status of the Declaratory Judgment Action.

20.    On October 18, 2009 — shortly before the final pretrial conference — Plaintiffs

filed an order to show cause demanding that the burden of proof in the Declaratory Judgment

Action be shifted from Plaintiffs to the Pension Fund and that the order of trial be reversed (with

the Fund being required to put on its case first).  The trial court denied Plaintiffs' motion on

November 5, 2009 (Ex. L), and trial was stayed pending Plaintiffs' appeal of the decision.  On

April 15, 2010, the New York Appellate Division affirmed the trial court's order denying

Plaintiffs' motion to reverse the burden of proof and order of trial.  (Ex. M).

21.    In their appeal on that burden of proof issue, Plaintiffs argued that they no longer

have any claim against the PA pending in the Declaratory Judgment Action.  (Ex. N, at 8 n. 4

("this action is now proceeding solely against the [Pension Fund] because service on the PA was

evidently never perfected and because even if service had been made default judgment against

the PA was not timely sought.").)  Plaintiffs argue, therefore, that they have abandoned their

claim that the PA owns the assets at issue, though they still apparently intend to seek a

declaration that the Pension Fund does not own the assets.  (*Id.*, at 19 ("the trial in this action will

Case 1:00-cv-00105-L-DLM    Document 532-2    Filed 09/14/10    Page 92 of 98 PageID
#: 4379
Case 1:00-cv-00105-L-DLM   Document 591-2   Filed 08/18/10   Page 9 of 13

therefore decide *one and one question only*:  the claim of the [Pension Fund] to own the assets at

issue . . .") (emphasis in original).)

     22.     In a previous appeal, as well, Plaintiffs attempted to re-frame the nature of the

dispute in the Declaratory Judgment Action.  On May 30, 2007, the Fund moved to strike

Plaintiffs' jury demand, arguing that their claim was an equitable cause of action to which no

jury right attached.  The trial court denied that motion.  The Pension Fund appealed, and the New

York Appellate Division affirmed the trial court's decision.  In that decision, the Appellate

Division accepted Plaintiffs' analogy of their claim not to a claim to settle ownership of the

securities at issue, but to a claim for tortious interference with the enforcement of a judgment,

against the Pension Fund only.

        **D.**     **Rhode Island Complaint by the Palestine Monetary Authority.**

     23.     In 2005, the Palestine Monetary Authority ("PMA") filed a complaint in the

United States District Court for the District of Rhode Island against the Ungars.  (Ex. O).  The

Complaint sought declaratory and injunctive relief, seeking an "order declaring the rights of the

parties in this matter and to further declare that Strachman has improperly expanded the scope of

the Injunction Order in this case without proper basis, and for such further relief as the Court

deems just and proper."  (*Id.*)

     24.     At a hearing on June 16, 2005, this Court refused to grant the PMA relief, citing

the fact that the Bank of New York ("BONY") froze the assets, and BONY was not a party to the

proceeding the PMA initiated:

> [T]he proper place for all these arguments are in New York where
> the judgment has been registered and where this action has been
> taken in order to collect the judgment.  And it is pending.  It's
> pending in the Supreme Court of New York with all the parties
> before the court, and it's not a question of the interpretation of my
> order.  My order is clear.  What has to be determined now are the

> facts. . . . [T]hose facts . . . ought to be presented to the Supreme
> Court judge in New York.

(Ex. P (Tr., June 16, 2005, at 15:8-18).)

25.    The PMA later voluntarily dismissed its action without Prejudice. (Ex. Q).

26.    Guided by this Court's direction to the PMA, the Pension Fund has diligently

litigated the Declaratory Judgment Action in New York with the understanding that it would

resolve the question of ownership to the frozen assets. As detailed above, however, Plaintiffs'

recent positions in the Declaratory Judgment Action threaten to undermine the efficacy of that

Action, and distinguish the current procedural status of proceedings against the Pension Fund

from those involving the PMA. (*See supra* ¶¶ 20-22; Ex. N.)

## III.    THE RESTRAINT OF THE PENSION FUND'S ASSETS HAS SEVERELY PREJUDICED THE FUND.

27.    The Pension Fund's damages from Plaintiffs' extended — and unilateral —

restraint of the Fund's assets are significant. Since Credit Suisse received the Notice of

Injunction and froze the Fund's assets, the Pension Fund has been unable to manage the assets

held by Credit Suisse. While Plaintiffs agreed to the entry of court orders permitting the Fund to

manage its assets during the pendency of this litigation (*see* Exs. R, S), Plaintiffs' restraint of the

Fund's assets has itself hindered the Pension Fund's ability to find asset managers and custodians

willing to assist in managing the Fund.

28.    On April 13, 2006, the Pension Fund's investment advisor of eight years, Smith

Barney, resigned. On behalf of the Pension Fund, I and my colleagues met with a number of

different potential investment advisors, but each of them declined to manage the funds, citing the

Injunction and pending litigation. Ultimately, the Fund was able to secure the services of

WaterStreet Investment Consultants, LLC ("WaterStreet"), on May 1, 2009.

29.    By the time the Fund was able to secure the services of a new investment advisor,

however, Credit Suisse had closed its affiliate SASI. In January of 2008, Credit Suisse publicly

announced that SASI would cease operating as a broker-dealer. Shortly thereafter, Credit Suisse

informed the Pension Fund that SASI would no longer be able to serve as sub-custodian of the

Fund's assets. On October 23, 2008, Credit Suisse transferred the Pension Fund's assets from

SASI to another affiliate, Credit Suisse Securities LLC New York (Investment Banking Unit)

("CSSU NY"). CSSU NY is not able to provide the custodial services that the Pension Fund

and/or its investment advisor needs to manage the assets.

30.    Since October of 2008, the Pension Fund has been unable to retain a suitable

custodian for its assets. Despite interviewing a number of firms that offer custodial services,

each potential custodian cited the Notice of Injunction as one of the reasons for their refusal to

serve as custodian. Without a custodian, WaterStreet cannot actively manage the assets of the

Pension Fund.

31.    As a result of the restraint, therefore, the Pension Fund's assets have lost

substantial value. As the Pension Fund's investment consultant, WaterStreet has analyzed the

impact to the Pension Fund's assets as a result of the Fund's inability to manage the frozen assets

since WaterStreet was retained as an Investment Consultant in May 2009. WaterStreet's analysis

of the impact to the Pension Fund's assets is set out fully in Exhibit T, which is a true and correct

copy of a Report WaterStreet prepared, entitled "Investment Policy Implementation" (the

"Report"). Based on this analysis, the Fund has lost approximately $7 million in gains that it

would have earned had WaterStreet's asset allocation recommendations been implemented in

May 2009. In addition, the Fund risks losing more than $17 million over the next five years if it

is unable to implement WaterStreet's asset allocation recommendations immediately.

32.     Page Four of the Report sets out WaterStreet's 2009 target asset allocation

recommendations for the Pension Fund, based on WaterStreet's review of the Pension Fund's

investment portfolio as it existed in May 2009.  Page Seven of the Report compares the current

value of the Pension Fund's assets based on its existing mix of securities and cash equivalents

with what the Pension Fund's assets would have been worth if WaterStreet's asset allocation

recommendations had been implemented in May 2009.  As shown, the actual value of the

Pension Fund's assets frozen at Credit Suisse was $121,819,891 as of July 31, 2010, and the

expected value of the Pension Fund's assets would have been approximately $129,093,050 as of

July 31, 2010, if WaterStreet's asset allocation recommendations had been implemented in May

2009.  Thus, I understand from WaterStreet that, for the period between May 1, 2009, and July

31, 2010, the Pension Fund lost approximately $7,273,159 in gains that it would have earned had

it been able to implement WaterStreet's asset allocation recommendations.

33.     Page Eight of the Report reflects WaterStreet's new asset allocation

recommendations, if it were able to manage the Pension Fund's assets starting today.  I

understand that using an industry-recognized computer software program for modeling future

investment returns, Zephyr AllocationADVISOR, WaterStreet made projections of expected

returns from the Pension Fund's assets based on WaterStreet's asset allocation recommendations.

I understand that AllocationADVISOR is a program that WaterStreet uses for most, if not all of

its clients, as a way of gauging projected rates of return based on various asset allocation

strategies.  I understand that based on asset allocations and other data, the program simulates

thousands of scenarios to make reasonable projections of rates of return.

34.     Page Twelve of the Report shows the projected rates of return on the Pension

Fund's investment portfolio, using WaterStreet's asset allocation recommendations.  The

Case 1:00-cv-00105-L-DLM    Document 532-2    Filed 09/14/10    Page 96 of 98 PageID
Case 1:00-cv-00105-L-DLM   Document 531-2    Filed 08/18/10   Page 13 of 13
#4883

highlighted figures show the median projected portfolio values based on 5-year expected returns. As shown, the Pension Fund's portfolio, using its current asset allocations, is expected to generate only a 5.51% mean return, compared to a 7.97% mean return if WaterStreet were able to implement its asset allocation recommendations for the Pension Fund's portfolio.

35.     As with any financial modeling, I understand that the figures on page Twelve of the Report are merely projections of potential future gains, and no guarantees of future performance can be made from these projections.  Nevertheless, these projections are based on computer-modeling techniques and historical data — techniques and data that WaterStreet uses to plan and manage numerous institutional clients' investment portfolios.  Thus, if the Pension Fund's assets continue to go unmanaged and continue to be frozen with their current asset allocation, I understand that WaterStreet estimates that the Pension Fund risks losing approximately $17,000,000 in projected gains over the next five years.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed:     August 17, 2010
              New York, New York

                                        _____
                                        Mark David McPherson

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------x

THE ESTATE OF YARON UNGAR, et al.,

                                  Plaintiffs,

      -against-

THE PALESTINIAN AUTHORITY, et al.,

                                Defendants.

--------------------------------------------------------------------x

Index No. 102101/06

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK      )
                            ) ss.:
COUNTY OF NEW YORK  )

Eileen Goldsmith, being duly sworn, deposes and says:

That she is over eighteen years of age, is not a party to this action; and is employed by the attorney for the plaintiff(s) herein.  That on September 7, 2010, she served the within

### NOTICE OF MOTION AND SUPPORTING DOCUMENTS

upon the following, at the address(es) designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Post Office Department within the State of New York.

TO:

MILLER & CHEVALIER
*Attorneys for the defendant Palestinian Authority*
655 Fifteenth Street, NW Suite 900
Washington, D.C.  20005-5701

MORRISON & FOERSTER LLP
*Attorneys for the defendant
Insurance and Pension Fund*
1290 Avenue of the Americas
New York, New York 10104

                                 _____
                                   EILEEN GOLDSMITH

Sworn to before me this
September 7, 2010

_____
Notary Public

ROCHELLE MEYER
Notary Public, State of New York
No. 4805065
Qualified in Rockland County
Commission Expires October 31, 2010

*Law Offices of*
*JAROSLAWICZ & JAROS, LLC*

Index No.    102101/06

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THE ESTATE OF YARON UNGAR, et al.,

Plaintiffs,

-against-

THE PALESTINIAN AUTHORITY, et al.,

Defendants.

**NOTICE OF MOTION AND SUPPORTING DOCUMENTS**

*Law Offices of*
**JAROSLAWICZ & JAROS, LLC**
*Attorneys for Plaintiffs*
**225 Broadway - 24th Floor**
**New York, New York 10007**
**(212) 227-2780**

Robert J. Tolchin, Of Counsel