# EXHIBIT V

1

1

2    SUPREME COURT OF THE STATE OF NEW YORK

3    COUNTY OF NEW YORK :  IAS PART 54

4    - - - - - - - - - - - - - - - - - - x
      THE ESTATE OF YARON UNGAR, et al,

5              Plaintiff,

                               Index No.

6                               102101/06

7          -against-

8    THE PALESTINIAN AUTHORITY, et al,
              Defendant.

9    - - - - - - - - - - - - - - - - - - x

                      November 5, 2009

10                    60 Centre Street
                    New York, New York

11

12   B E F O R E :

13       HON. SHIRLEY KORNREICH,

14                   Justice

15

16   A P P E A R A N C E S :

17   JAROSLAWICZ & JAROS, LLC
      Attorneys for Plaintiff

18   225 Broadway
      New York, New York  10007

19   BY:  ROBERT TOLCHIN, ESQ., of counsel
         BRADLEY A. SACKS, ESQ., of counsel

20

21   MORRISON & FOERSTER LLP
      Attorneys for Palestinian Pension Fund for State

22   Administrative Employees in the Gaza Strip
      1290 Avenue of the Americas

23   New York, New York  10104
      BY:  CHARLES L. KERR, ESQ., of counsel

24        HAROLD J. McELHINNY, ESQ., of counsel
        MARK DAVID McPHERSON, ESQ., of counsel

25

26                  LEE RUTHEN
                  Official Court Reporter

2

Proceedings

1

2          THE COURT:  This is a motion in which

3     the plaintiffs are arguing that at trial the

4     burden of proof should be upon the defendants as

5     to who owns the property, and therefore the

6     defendants should go first and have to prove that

7     in fact they are the owners of the property, and

8     the plaintiffs then would go after.

9          The whole -- frankly, the whole burden

10    of proof and order of proof would be turned on

11    its head, according to plaintiffs.

12         Do you want to put your argument on the

13    record?

14         MR. TOLCHIN:  Judge, for the declaratory

15    judgement action, as such out of the gate, the

16    usual concepts of who has the claim and who

17    has -- really who is the functional plaintiff and

18    who is the functional defendant is backwards, is

19    reversed.

20         In a declaratory judgement action, it is

21    really the party who might have been the

22    plaintiff who is the defendant.

23         THE COURT:  Are you telling me that in a

24    declaratory judgement action, the order of proof

25    should be reversed in every case?

26         MR. TOLCHIN:  I'm not talking about

LEE RUTHEN - OFFICIAL COURT REPORTER

| | Proceedings |
|---|---|
| 1 | |
| 2 | every case, I'm talking about this case. |
| 3 | THE COURT:  Have you found any |
| 4 | declaratory judgement in which the order of proof |
| 5 | was reversed? |
| 6 | MR. TOLCHIN:  Judge, when you have a |
| 7 | legal presumption, that's what we're starting |
| 8 | with here, the assets at issue in this case are |
| 9 | held in an account at Credit Suisse's subsidiary, |
| 10 | and the title of that account is called |
| 11 | Palestinian Pension Fund for State Administrative |
| 12 | Employees of the Gaza Strip. |
| 13 | And out of mercy on the court reporter, |
| 14 | I'm going to call that the PPF.  That's the title |
| 15 | of the account. |
| 16 | There is a presumption, a legal |
| 17 | presumption which has been ruled on by many |
| 18 | courts, and we cite in our papers, and I'll give |
| 19 | a citation for one of them for the record. |
| 20 | We have a case called Karaha Bodas |
| 21 | Company, a Second Circuit decision, 313 F3rd 70, |
| 22 | which lays it out with a whole series of |
| 23 | citations to New York State appellate decisions, |
| 24 | that the funds in a bank account are presumed to |
| 25 | belong to the person or entity whose name is on |
| 26 | that account. |

4

Proceedings

1

2          THE COURT:  Let me ask you something.

3          Is the declaration you are seeking that

4     these funds belong to the PPA?

5          MR. TOLCHIN:  No.  The declaration that

6     we're -- when this case began it had two

7     defendants, one was the PPF and the other was the

8     IPF.

9          THE COURT:  The what?

10         MR. TOLCHIN:  The Insurance and Pension

11    Fund, which is something different.  The

12    gentlemen sitting at the table on the other side

13    represent the Insurance and Pension Fund, which

14    we acknowledge is a separate juridical entity.

15    We don't dispute that it exists, it is a separate

16    being.

17         Their overriding contention is that the

18    money that is at Credit Suisse in an account

19    titled PPF actually belongs to them, because they

20    claim that they are sometimes known as the PPF.

21         It is like --

22         THE COURT:  But your position is that

23    the money at Credit Suisse belongs to Palestinian

24    Authority, neither.

25         MR. TOLCHIN:  At this case at the time

26    the Palestinian Authority was named as a

5

| | |
|---|---|
| 1 | Proceedings |
| 2 | defendant, but they defaulted, they are not here. |
| 3 | THE COURT:  But what is your position? |
| 4 | Do you want me to declare that the money belongs |
| 5 | to the PPF? |
| 6 | MR. TOLCHIN:  I want you to declare in |
| 7 | this case that we're going to try now that the |
| 8 | money does not belong to the IPF. |
| 9 | Once we remove the IPF from the picture, |
| 10 | the issue of whether the money belongs to the |
| 11 | Palestinian Authority and is reachable by the |
| 12 | Ungars is a separate issue the Court will have to |
| 13 | deal with, but not in this case because they are |
| 14 | not here in this case. |
| 15 | THE COURT:  But the case won't be over. |
| 16 | You want the money to be declared belonging to |
| 17 | the Palestinian Authority. |
| 18 | MR. TOLCHIN:  This case, after your |
| 19 | Honor will declare that the IPF does not have an |
| 20 | interest in these assets, this case, this index |
| 21 | number will be over. |
| 22 | We would have to at that point start a |
| 23 | turnover proceeding against the entity holding |
| 24 | the money. |
| 25 | THE COURT:  Which is Credit Suisse, |
| 26 | which is what you've done, in a sense. |

LEE RUTHEN - OFFICIAL COURT REPORTER

6

1        Proceedings

2            MR. TOLCHIN:  No, Credit Suisse is not

3    part of this case.  It is not part of this case.

4    They are not in the caption, they are not here.

5            THE COURT:  The caption only has the

6    Palestinian Authority in it.  The caption has the

7    Estate of Yaron Ungar versus the Palestinian

8    Authority.

9            MR. TOLCHIN:  The Palestinian Authority

10   never answered the complaint, they are in default

11   and they are not here.

12           THE COURT:  That's right.

13           MR. TOLCHIN:  More than a year has

14   passed, we can't force them to do anything in

15   this case.  We can't make -- they are not before

16   the Court, they are not participating in this

17   trial, they are not putting on evidence, and the

18   relief that we requested as against the

19   Palestinian Authority necessarily can't be heard

20   or can't be granted here because they are not

21   here.

22           The only party that did answer the

23   complaint that is before the Court is the

24   Insurance & Pension Fund, and the issue that --

25   the reason they were named as a defendant is

26   because prior to the commencement of this

LEE RUTHEN - OFFICIAL COURT REPORTER

7

1                          Proceedings

2    declaratory judgement, they had taken the

3    position that the money being held at Credit

4    Suisse, in the name of the PPF, actually belongs

5    to them, because they say they are also known as

6    the PPF, which is akin to me saying that money in

7    your Honor's bank account is actually mine

8    because I'm sometimes known as Shirley Kornreich.

9          THE COURT:  Number one, first of all

10   they did not bring this action -- they didn't

11   bring themselves to court, they didn't bring you

12   to court, you brought them to court.

13         MR. TOLCHIN:  Not exactly so.  There was

14   a previous litigation, there was a previous

15   proceeding that was discontinued without

16   prejudice in favor of allowing this case to

17   proceed.  And in the previous case they were

18   intervenors, they did come into that case.

19         THE COURT:  And they were intervenors in

20   regard to the money you were trying to get out of

21   Credit Suisse.

22         MR. TOLCHIN:  We had started a turnover

23   case against Credit Suisse and the Insurance &

24   Pension Fund intervened, saying we are also known

25   as the PPF, the money is really ours.

26         THE COURT:  So to say that Credit Suisse

8

Proceedings

1
2    was never part of this case is an overstatement
3    to some degree.
4         MR. TOLCHIN:  But your Honor is not in a
5    position right now --
6         THE COURT:  I understand.
7         MR. TOLCHIN:  You can't enter a
8    judgement finding Credit Suisse --
9         THE COURT:  I understand all of this.
10   But it was the plaintiffs here who started all of
11   these actions, who want the declaratory
12   judgement.
13        I have done many cases where there are
14   presumptions in favor of one party or another,
15   and when there is a jury trial I tell the jury
16   about the presumption, whether it is a defendant
17   or a plaintiff, and the jury is told that it is a
18   rebuttable presumption and is given instructions.
19        But never in any of those cases where
20   presumption exists does the order of proof
21   change, do burdens shift in the way that you are
22   asking that burdens shift.  I've never seen that
23   happen.
24        MR. TOLCHIN:  Consider this case as a
25   practical matter.  If there is a presumption,
26   besides showing some proof that the money is --

1          Proceedings

2   or the assets are at Credit Suisse and titled to

3   the PPF, once I show that, can't I rest and then

4   the whole case becomes the defense case and the

5   rebuttal case?

6          THE COURT:  Maybe it does.  I'm not

7   giving you advice here, but I'm telling you, what

8   you are asking is that they have to go first,

9   they have to fulfill some burden.

10          I've never seen anything like this.  You

11   brought the case.  It is your case to make out a

12   prima facie case on.

13          MR. TOLCHIN:  But the case law says, as

14   cited in our papers, that the party that wants to

15   challenge the presumption has the burden of

16   proof.

17          It could be in previous cases with

18   presumptions no one made this argument --

19          THE COURT:  No one has ever made this

20   argument.

21          MR. TOLCHIN:  Or perhaps there are other

22   issues, perhaps a whole case isn't decided by the

23   presumption.

24          But they -- if I have the burden of

25   proof of proving that they are not known as the

26   PPF, that's a pretty difficult burden to meet.

Proceedings

It's logical to prove a negative, to prove
something is not true.

Go prove -- if your Honor were called on
to prove that I have never been called Bradley
Sacks --

THE COURT:  What are you asking?  From
what I understand -- what exactly are you asking?

It was my understanding that you are
asking that they go first, that they have the
burden of proof, that you need not do anything.

MR. TOLCHIN:  They claim that they
are -- that this money, which is not titled to
them --

THE COURT:  What are you asking for in
this order to show cause?

MR. TOLCHIN:  That they should go first.
They have the burden of proof.

THE COURT:  That's what I thought.

MR. TOLCHIN:  That when we come here to
open, they go first.

THE COURT:  Let me hear from the other
side.

MR. KERR:  Your Honor, Charles Kerr,
Morrison & Foerster on behalf of the Pension
Fund.

11

1                          Proceedings

2              Mr. Tolchin is just wrong on many

3      fronts.

4              Clearly the plaintiff, who brought the

5      action, who brought the declaratory relief, has

6      the burden of proof, has to go first.  That's

7      clear law in New York.  We've cited that in our

8      papers.

9              In their complaint, your Honor, and I

10     quote from paragraph 6 of their complaint,

11     "Plaintiffs therefore bring this action for

12     declaratory judgement establishing, adjudging and

13     decreeing that the PA's New York stocks and bonds

14     are the sole property of defendant PA, and that

15     defendant, the Insurance & Pension Fund, has no

16     rights to the PA's New York stocks and bonds."

17             They repeat that again, your Honor, in

18     paragraph 76 through 79 --

19             MR. TOLCHIN:  That's the relief we were

20     seeking --

21             MR. KERR:  Mr. Tolchin, please.

22             That's what they are seeking, that's

23     what they are trying to do here.

24             We come in as a defendant.  We denied

25     that.

26             Mr. Tolchin keeps saying that we are

12

Proceedings

1
2  somehow not the same as the pension fund that
3  operates and has operated for years, that's
4  controlled this money, controlled this account.
5        We deny that.  That's wrong.  That's
6  being made up.  He has to prove that to be able
7  to get the relief he wants in this case, your
8  Honor.
9        He refers to a rebuttable presumption.
10  What he is doing is mixing and matching the
11  burden of proof, the burden of producing evidence
12  to make a prima facie case to make out the
13  elements of his complaint, and his obligation to
14  meet the ultimate burden of persuasion with a
15  burden of going forward on a specific issue.
16        If he comes in and makes his burden --
17  meets his burden of producing evidence to justify
18  the rebuttable presumption that he is referring
19  to, your Honor, he loses his case.
20        The account and what the title is is not
21  to the Palestinian National Authority at all.
22        Mr. Tolchin says he can't come in here
23  and make a claim against the Palestinian National
24  Authority.  He has to or he has no standing in
25  this case.  His only standing here is as a
26  judgement creditor of the Palestinian National

13

| | |
|---|---|
| 1 | Proceedings |
| 2 | Authority. |
| 3 | Your Honor, for 15 years we operated and |
| 4 | controlled this account.  The account is in our |
| 5 | name, the sole signatories on the account are the |
| 6 | Director General of the pension fund that I |
| 7 | represent, the Chairman of the Board of the |
| 8 | pension fund that I represent. |
| 9 | If he wants to come in and prove |
| 10 | something different, it is his burden of proof, |
| 11 | it is his order of proof. |
| 12 | Your Honor, he has made -- in reply |
| 13 | papers I got last night -- one final thing, your |
| 14 | Honor. |
| 15 | He said that the PA has not appeared, |
| 16 | therefore they admitted what's in the complaint, |
| 17 | and therefore the burden should shift to me. |
| 18 | That's wrong on many accounts. |
| 19 | There has been no default judgement |
| 20 | entered against the PA.  In a declaratory |
| 21 | judgement such as this, you can't enter a default |
| 22 | judgement against a party that has not appeared |
| 23 | just on the pleadings.  You have to come in -- |
| 24 | plaintiff has to come in and actually prove their |
| 25 | case. |
| 26 | Moreover, the case law is clear, you |

14

Proceedings

1
2     can't enter a default judgement in a declaratory
3     judgement action when that would affect another
4     party who has in fact appeared, and I can cite
5     you cases to that, your Honor, and I have them
6     here if I can pass them up to you.
7          Those cases, Merchants Insurance Company
8     versus Long Island Pet Cemetery, 616 NY2d 299
9     Third Department, Tower Insurance versus
10    Kravtchouk, 2008 New York Misc. Lexis, 6880, New
11    York Supreme Court, September 10, 2008.
12         Your Honor, the law -- we put this in
13    our brief, your Honor -- the law is clear,
14    plaintiff has their burden of proof, and that
15    includes the burden of producing evidence to meet
16    their prima facie case and the burden of ultimate
17    persuasion of the claims they have brought in
18    their complaint.
19         They are the ones that hauled us into
20    court in this action.  If there are issues in the
21    case that the burden shifts on specific issues
22    we'll deal with that, that's a different prospect
23    and that's what he is referring to.  But that's
24    not the ultimate burden of proof, nor is it the
25    order of proof, your Honor.
26         So again, I'll rest on my papers unless

```
 1                    Proceedings
 2    the Court has other questions.
 3                THE COURT:  No.
 4                Do you want to say something,
 5    Mr. Tolchin?
 6                MR. TOLCHIN:  Yes.
 7                What Mr. Kerr is referring to is quoted
 8    to the Court from our complaint, is the relief we
 9    were seeking against the PA.  That was the other
10    defendant.
11                There were two substantive branches, two
12    prongs of the wherefore clause of the complaint.
13                There are four, but the last two were
14    such other and further relief as to costs and
15    expenses.
16                The two substantive points of the
17    wherefore clause of the complaint sought a
18    finding with respect to the PA, that was branch
19    A, and branch B was a finding with respect to the
20    IPF.
21                Now, Mr. Kerr is -- he is completely
22    wrong when he says that we have to prove
23    something vis-a-vis the PA in order to have
24    standing to prove something vis-a-vis the IPF.
25    It is not so at all.
26                We need to get these assets to enforce
```

Proceedings

1
2   our judgement.  We have a problem, which is that

3   there is somebody else out there who claims it is

4   really their money.

5        So before we could be in a position to

6   get those assets turned over to us, we need to

7   deal with the other pretender to the money.

8        THE COURT:  And you intend to do that

9   piecemeal.

10       MR. TOLCHIN:  We intend to do that in

11  this declaratory judgement action, which will

12  determine whether the IPF has or has not --

13       THE COURT:  What I'm trying to say when

14  I say piecemeal is the only way you are entitled

15  to this money is if it belongs to the PA, the

16  Palestinian Authority, so don't you have to prove

17  that?

18       You can't just come in here and say,

19  well, they are going to have to prove that they

20  own it first and then I'll deal with my reason

21  for being here, that the money really belongs to

22  the PA and I deserve to get it.

23       MR. TOLCHIN:  When we brought turnover

24  proceedings against the holder of these assets

25  way back when, the only substantive opposition to

26  the turnover proceeding that was presented came

LEE RUTHEN - OFFICIAL COURT REPORTER

Proceedings

1  from the intervenor.  The PA didn't challenge it,

2  the PPF didn't challenge it.

3      THE COURT:  The PA didn't challenge it

4  because they don't believe the money belongs to

5  them.  The person who believes the money belongs

6  to them is challenging your contention that it is

7  the PA's money.

8      MR. TOLCHIN:  He think your Honor has

9  jumped -- is making some wild leaps to speculate

10  about why the PA is challenging.

11      In fact, you could just as equally

12  conclude they didn't challenge it, because they

13  saw there was no merit to challenging it because

14  it really is their money.  It really is the PA's

15  money.

16      The party that contended that the money

17  belonged to them were the intervenors, the

18  Insurance & Pension Fund, and we had at one point

19  a turnover proceeding against the bank, which

20  named the judgement debtor as a party, and had

21  the Insurance & Pension Fund as an intervenor,

22  and at the same time we had this declaratory

23  judgement motion pending, and your Honor ruled

24  that the turnover proceedings would be -- I

25  forget if it was dismissed -- I don't know if it

1          Proceedings

2    was dismissed without prejudice or allowed to be

3    discontinued without prejudice, I don't remember

4    the fine distinction --

5          THE COURT:  It went to Federal Court.

6    I'm sorry, I'm mixing the two up.

7          MR. TOLCHIN:  Your Honor, because we had

8    the DJ action pending, we didn't need the

9    turnover proceeding at that time, we would

10   proceed to do discovery under the DJ action, and

11   once we resolved the DJ action, the rest of the

12   pieces would fall into place.

13         THE COURT:  Let's use me again, just

14   like you were using me.

15         You go to my bank, you say I'm attaching

16   this money because it belongs to the Palestinian

17   Authority under this judgement.

18         I come in as an intervenor and say no,

19   the money belongs to me.

20         So if we go to trial, now I am going to

21   have to prove that the money -- I have the burden

22   to come forward and prove the money belongs to

23   me?  Is that what you are arguing?

24         MR. TOLCHIN:  I go to your bank and --

25         THE COURT:  And the money let's say --

26         MR. TOLCHIN:  Is in an account called

LEE RUTHEN - OFFICIAL COURT REPORTER

19

Proceedings

what?

THE COURT:  Let's say the account is in my maiden name, Shirley Werner, I am Shirley Werner Kornreich now.

MR. TOLCHIN:  The account is in the name of Shirley Werner, and I come in with a judgement against the Palestinian Authority and say Shirley Werner is really the Palestinian Authority.

Is there any order from a court or an injunction or anything like that telling -- just for the judgement against the PA, the bank isn't going to freeze Shirley Werner's account.

THE COURT:  That's not my question.  My question is let's say it goes to trial.  Am I the one with the burden of proof?

Am I the one who has to go forward and show that Shirley Werner Kornreich is really Shirley Werner, or that we are one and the same, and that you have no obligation to come forward first with a prima facie case?

MR. TOLCHIN:  If somebody wants the money, they have to prove that they are entitled to it.

THE COURT:  I understand.

MR. TOLCHIN:  If Shirley Werner would

Proceedings

come in and say here is my ID, I'm Shirley
Werner, presumptively it would be her money.

And somebody else who says they want it
would have to prove, no, no that's a pseudonym,
or for some reason to rebut the presumption that
the money in the account belongs to the title of
the account.

MR. KERR: Your Honor, they want the
money, they brought the action, they have the
burden of proof.

MR. TOLCHIN: What we want -- what we
need to do -- we have two different -- withdrawn.

We have money that is titled in the name
of the PPF, and we feel we can prove it.

When it comes to getting turnover of the
money, we're not worried about being able to
prove that the PPF is part and parcel of the PA.

We say that the Insurance & Pension
Fund, which is an independent entity, has no
stake in that fund. They don't care.

If they are -- if they are -- if we
resolve this proceeding with a declaratory
judgement saying that the Insurance & Pension
Fund does not have a stake in this money, that
they don't own this money, then they don't have a

1                              Proceedings

2      horse in the race.

3                    THE COURT:  But they wouldn't be here

4      were it not for you.

5                    MR. TOLCHIN:  No.  They came here --

6                    THE COURT:  Because you were trying to

7      seize this money that they claim is theirs.

8                    MR. TOLCHIN:  Right.

9                    Let's go back to that.

10                   The Palestinian Authority, and whatever

11     the PPF did, put up no resistance at all when we

12     tried to get this turnover of the money.

13                   It was on notice to them, they were well

14     served, they had counsel in the United States,

15     they didn't --

16                   THE COURT:  Wait a minute.

17                   You are saying that the PPF and the

18     Palestinian Authority -- they are saying they are

19     the PPF.  So what you are doing is putting the

20     Palestinian Authority and the PPF in the same

21     box, but they are saying no, we're the PPF.

22                   MR. TOLCHIN:  They are saying they are

23     also known as the PPF.  Over the years they were

24     known by lots of different names, and we say

25     that's not so.

26                   THE COURT:  Right.  And you are saying

Proceedings

1

2    also that you are really the -- that the money

3    really belongs to the Palestinian Authority.

4    MR. TOLCHIN:  Your Honor, if they are

5    adjudged -- if the IPF is adjudged not to be --

6    not to have any interest in these assets, then

7    they leave, they go back to Gaza.

8    THE COURT:  And you then -- you then

9    bifurcate this whole proceeding and say the money

10   really belongs to the PA, they've defaulted, it

11   is out.

12   But it seems to me -- it seems to me

13   that the only standing you have here is if the

14   money belongs to the PA.

15   MR. TOLCHIN:  It is not a question of

16   standing.

17   THE COURT:  Why else do you have a right

18   to be --

19   MR. TOLCHIN:  I have a judgement against

20   the PA.  I'm entitled to enforce it against any

21   assets that belong to the PA.

22   We have an issue here where there is

23   assets that we believe belong to the PA and

24   somebody else says no, no, they belong to us.  So

25   we have to deal with this claim about whether the

26   assets belong to the PA or not.

23

Proceedings

1

2          THE COURT:  Mr. Tolchin, I think at this

3  point I've read your papers and I've allowed both

4  sides to argue.

5          I am denying your request.  I believe

6  that this is a case in which the plaintiffs are

7  claiming that the money belongs to the judgement

8  debtor, the Palestinian Authority or the PLO, but

9  I think in this case you are claiming the PA,

10  maybe it is the PLO who you are claiming, and

11  there is an intervenor who says no, the money is

12  ours.

13          I believe it is up to you to prove that

14  the money belongs to the PA and then they can

15  come in.  You have the initial burden in this

16  case.  I see no reason to reverse the normal

17  course.

18          If there is a presumption that's to be

19  charged to the jury, if there is a jury, because

20  then again it is a declaratory judgement action,

21  and I believe that is at the Appellate Division

22  now, if there is a presumption to be charged I'll

23  charge it, and if it's going to be a court trial

24  the Court will take -- will heed that presumption

25  and require some kind of rebuttal or there will

26  -- the burden will be there.

LEE RUTHEN - OFFICIAL COURT REPORTER

24

Proceedings

But it is not going to be a reversal of the order of proof and taking the prima facie case away from the plaintiff. I just don't believe that's the way it should work.

So I'm denying that, and this is my order on the record.

MR. TOLCHIN: Is there going to be a written order?

THE COURT: This is my order. I'm just going to write a gray sheet that the motion is denied in accordance with my decision on the record, argument of counsel, and the papers submitted by the defense -- by the defendants. I think they are right.

There apparently is also a pretrial hearing today. We're trying to work out the in limine motions and certain thorny issues with regard to -- apparently there are witnesses who are in Gaza and are having difficulty getting visas, there is supposed to be some depositions, last minute depositions that you're having difficulty with.

Is that still the case?

MR. KERR: It is, your Honor.

Again just so I'm clear, your Honor, we

1                     Proceedings

2       had submitted a preconference statement --

3               THE COURT:  I have it.

4               MR. KERR:  Your Honor, we're prepared to

5       proceed, but if you are not today --

6               THE COURT:  I've seen your preconference

7       statements and there are a lot of issues.

8               MR. KERR:  There are a lot of issues,

9       your Honor.  Actually, I have an agenda and I've

10      highlighted those issues if you'd like me to pass

11      it up.

12              THE COURT:  Has opposing counsel gotten

13      that?

14              MR. TOLCHIN:  Judge, I find the agendas

15      and preconference statements on the one hand to

16      be helpful, but on the other hand it bothers me

17      when they are submitted to the Court the night

18      before without input.

19              I think it would be much more helpful if

20      the week before the conference I got it and then

21      I could put in my two cents.

22              That preconference submission, frankly,

23      we were joking about it because it reads more

24      like a motion.

25              THE COURT:  There are parts of it that

26      don't read like a motion, the parts dealing with

Proceedings

1
2  the depositions that are difficult to take

3  because --

4  MR. TOLCHIN:  Which were never really

5  discussed between the parties before that was

6  admitted.

7  THE COURT:  I'd like it hear if that's

8  the truth.  That doesn't seem like something we

9  need legal input about, it is rather a trial

10 issue in terms of trying to help both of you, or

11 there are issues --

12 MR. TOLCHIN:  I think going forward when

13 we have these conferences, if one party or the

14 other wants to submit an agenda to the Court, I

15 think it should be on some kind of meaningful

16 notice to the other side.

17 THE COURT:  Absolutely.  I think there

18 absolutely should be, but just going forward now,

19 and from now on that should happen.

20 But in terms of the fact that there are

21 witnesses, according to this, who are in the Gaza

22 Strip and can't obtain visas to come here --

23 MR. TOLCHIN:  I have no way to verify

24 that.  On the one hand I could say I don't know

25 why these witnesses were not deposed during

26 discovery.  It is fairly shocking that the

Proceedings

defendant's expert, who has put in affidavits in
the past in this case, he is one of the witnesses
that they want to have appear by remote control.

MR. KERR:  Your Honor, if I may layout
what's going on here, because Mr. Tolchin frankly
is incorrect.  Let me tell what you we've done.

When we were here before you on June 25
you asked us to exchange a witness list for
trial.  We did that.  Plaintiff listed four
witnesses, we listed more than that, we listed a
number of them, we listed fact witnesses, both
here in the United States, fact witnesses in the
Middle East, we identified our expert witnesses
that we've previously disclosed to plaintiff.

Some of those witnesses -- I think there
are four -- live and reside in the Gaza Strip.
When we were here in June we told your Honor we
are working to try to make sure they will be able
to come to trial.

It is a difficult process.  One, we have
to get permission to have them come out of the
Gaza, go to the consulates and they apply for
visas, and they have to get the visas.  That
process is going on, but we are still not there
yet.

28

Proceedings

1

2          THE COURT:  The one aspect that just

3    jumped off the page is Farouk A-Franji.  The

4    reason -- because I had read the previous motion

5    papers, and he seems to have been in 1998 and

6    1999 the past president of whatever pension fund

7    was going on, according to all these minutes.  So

8    it would -- perhaps he would be a very important

9    witness.

10         MR. KERR:  Your Honor, Mr. A-Franji is

11   the current Director General of the pension fund,

12   which is the head administrator, he runs the

13   entire pension fund.  He has run the pension fund

14   since 1998.  He is one of our principal client

15   contacts.

16         He was actually deposed by the plaintiff

17   in this case.  We were able several years ago,

18   before some of the current restrictions, had him

19   come to the United States, at their request, come

20   to New York.  He was deposed for two hours.

21         THE COURT:  So there is a deposition.

22         MR. TOLCHIN:  And at the end of the

23   deposition, when I was done, as I always do, I

24   said, "Mr. Kerr, any questions?"  And he said,

25   "No."

26         MR. KERR:  Your Honor, it is our

```
1                        Proceedings
2     witness.  If we're going to bring forward a
3     witness to trial, we had no reason to think we
4     couldn't do it.
5              We do want to do that, we want to bring
6     him here for trial.
7              THE COURT:  This has nothing at all to
8     do specifically with this.
9              It was curious to me when I read -- as I
10    said, there are a lot of addenda to the
11    plaintiff's motions, and it was interesting when
12    I was reading this, it seems that in '96, '97,
13    '98, there were minutes, and there should have
14    been financial statements and audits.
15             MR. KERR:  There are, your Honor.
16             THE COURT:  And turned over?
17             MR. KERR:  All turned over, your Honor.
18             Those financial records and audits all
19    refer to this fund belonging to the pension fund.
20             MR. TOLCHIN:  Not true.  That starts
21    curiously in 2004 --
22             THE COURT:  I was just curious if all of
23    this was turned over.  That's all I wanted to
24    know.
25             MR. KERR:  We have financial records.
26    If you look --
```

30

Proceedings

MR. TOLCHIN:  They object to the authenticity of those documents, by the way.

THE COURT:  Believe me, I don't want to open a Pandora's box.  I was just curious reading these different minutes.

It seemed to me there should be a lot of statements, audited statements, that Mr. A-Franji was involved in a lot of this.

MR. KERR:  And there are, your Honor. If you look at the minutes, there is discussion in the minutes about these very assets that they are managing.

Mr. A-Franji, in the minutes, comes to the United States to meet with the investment managers, to meet with them, and he goes back and reports to the board.

That's all in the minutes, your Honor. We produced all of those records so I have no problem with that whatsoever.

Our issue is that we have witnesses that applied visas, visas have not come through yet, and we're working very hard.  We've been in touch with the State Department to try to accomplish that, but it is not an easy process.

We have other issues.  When we were here

31

1

2    last time, one of our other witnesses, who is the

3    Chairman of our board, is Dr. Salam Fayyad.

4    Dr. Fayyad has been Chairman of our board since

5    2002.  He is also currently the Prime Minister of

6    the Palestine.

7           MR. TOLCHIN:  Of the Palestinian

8    Authority, not Palestine.  In this case it was

9    judged not to be a sovereign government.

10          MR. KERR:  The reason for that, your

11   Honor, is under the statute there is ex officio

12   members that are members of our board, as well.

13   That's been true for 40 years.

14          So one of the other issues we have

15   raised in our conference when we were here

16   before, we talked about the fact that we would

17   need to do an examination in the Middle East, and

18   that was agreed to at the time.

19          THE COURT:  That's what I was a little

20   confused about.  Has Mr. Tolchin agreed to that?

21   That's what it sounds like from this.

22          MR. KERR:  We agreed to it last time we

23   were here.

24          THE COURT:  You also say it is going to

25   take place in Ramallah and Mr. Tolchin has to

26   agree to this?

Proceedings

1

2      MR. KERR:  To be fair, Mr. Tolchin has

3  not agreed to that.

4      MR. TOLCHIN:  I agreed to do it in

5  Jerusalem, East Jerusalem, the same hotel where

6  Mr. Kalbian produced a minister from the

7  Palestine Monetary Authority, to do it at any

8  other place in East Jerusalem but -- I can get

9  into it, and maybe your Honor would want to see

10  it on papers, but Ramallah is off limits for

11  multiple reasons.

12      MR. KERR:  Your Honor, if I may,

13  Dr. Fayyad is the current head of the government,

14  a government that's governing the Palestinians

15  board that's being recognized by our board.  He

16  lives and works and operates in Ramallah.

17      THE COURT:  But we'd make concessions.

18  If Mr. Tolchin is making a concession that he

19  agrees he should not be forced to come here, he

20  is also asking that it not take place in

21  Ramallah.  I know that's been his position about

22  a lot of witnesses and a lot of depositions.

23      MR. KERR:  It may well be a lot of

24  witnesses and other matters.  We're talking about

25  the Chairman of our board and the current head of

26  the government.

LEE RUTHEN - OFFICIAL COURT REPORTER

33

```
1                     Proceedings
2          With all due respect, your Honor, I
3   think it would be inappropriate for the Court,
4   with due respect, to direct the head of another
5   government to have to not be examined where he
6   lives and works.
7          Mr. Tolchin --
8          THE COURT:  One at a time.  Nothing is
9   getting taken down.
10         MR. KERR:  Our position is, your Honor,
11  that that examination should happen in Ramallah.
12         THE COURT:  What if I ordered him to be
13  here for trial or forget it?
14         Would you then compromise and say he can
15  leave Ramallah and do it in Jerusalem?
16         MR. KERR:  I don't know that, your
17  Honor.  But I will say this.  I don't know that.
18         THE COURT:  In here you say, quote, "The
19  Court should supervise the deposition of
20  Mr. Fayyad in person."
21         In person in Ramallah?  Or by video
22  conference?  Frankly, I'm not going to Ramallah
23  and I certainly can't act as a Supreme Court
24  Justice in Ramallah.
25         MR. KERR:  Your Honor, let me tell you
26  exactly why we made that suggestion.
```

LEE RUTHEN - OFFICIAL COURT REPORTER

1                          Proceedings
2          We think that this examination should be
3    Dr. Fayyad's examination at trial.  We think from
4    our point of view it would be short and simple,
5    and any cross-examination -- it is not fact
6    deposition.  Any cross-examination should be
7    limited to the direct-examination.  And I want to
8    make sure that happens and happens correctly.
9          I think that does -- that examination
10   does need to be supervised by an appropriate
11   judicial officer.  We proposed having your Honor
12   do it, or we could have a Referee --
13         THE COURT:  Supreme Court of New York
14   can't be in Ramallah.  I don't think I have any
15   jurisdiction in Ramallah.
16         Are you suggesting I go to Ramallah?
17         MR. KERR:  Yes, your Honor, I was in
18   Ramallah three weeks ago.
19         THE COURT:  But you weren't acting as a
20   New York Supreme Court justice.
21         MR. KERR:  I was not doing that, your
22   Honor, that's for sure.  One second.
23         Your Honor, I think we cite in our
24   preconference statement other cases where similar
25   type procedure has been done, where there has
26   been a head of a government, they go to where the

1                          Proceedings

2    head of the government is to do the examination.

3           THE COURT:  When you suggest video

4    conference, perhaps, that might be another option

5    for me, but I do not see myself going to Ramallah

6    to oversee a deposition.

7           MR. KERR:  We can set it up by video

8    conference.  We feel it is important to have your

9    Honor supervise this examination for obvious

10   reasons.

11          THE COURT:  But I also don't see forcing

12   Mr. Tolchin to go to Ramallah either when I am

13   sure that Mr. -- Dr. Fayyad has been to

14   Jerusalem, East Jerusalem, in the past, and it is

15   not a burden for him to go to East Jerusalem.

16          It may well be a burden or perhaps a

17   security risk for Mr. Tolchin to go to Ramallah.

18          MR. KERR:  Your Honor, our point,

19   though, is that to require the head of another

20   government to go to someplace else other than

21   where he lives and works, again, with all due

22   respect to the Court, is not appropriate, and

23   other courts have not done that, other courts

24   have respected that.

25          The Palestinian Authority and Dr. Fayyad

26   is recognized by our State Department to be head

1                           Proceedings

2      of the government in the Palestinian territories.

3              THE COURT:  But you are the one that

4      wants him to testify.  The other side is not

5      subpoenaing him.  You are the one that wants to

6      put his testimony in.

7              And he is not testifying as the head of

8      the Palestinian Authority, rather, he is

9      testifying as -- from his position at PIF or --

10     as the Chairman of the Board.

11             MR. TOLCHIN:  Let's be fair, Judge.

12             As the head of the Palestinian

13     Authority, He is the head of the judgement

14     debtor.

15             We're talking about cutting the guy

16     slack and giving him all sorts of extra

17     privileges that other witnesses don't get.

18             He owes my client a hundred million

19     dollars, which has been adjudged by courts of the

20     United States and affirmed up to the Supreme

21     Court that didn't take cert.  We're going to give

22     him special privileges?

23             If he would authorize a check to be

24     written this case would be over.

25             THE COURT:  Mr. Tolchin, you agreed last

26     time apparently to a process where Dr. Fayyad

Proceedings

1
2     would testify in East Jerusalem, apparently, or

3     something like that.

4          MR. KERR:  To be fair, your Honor, what

5     the discussion was was that Dr. Fayyad will

6     testify by examination prior to trial.

7          THE COURT:  By examination --

8          MR. KERR:  By examination prior to trial

9     for use at trial.  That's what we discussed

10    before.  I will be very fair about that.

11         He is a crucial witness, he is the

12    Chairman of the Board, he is one of the two

13    signatories on this account because of his role

14    as Chairman of the Board.

15         THE COURT:  So why is it such a problem

16    for him to travel to East Jerusalem, a place he

17    travels to and has traveled to in the past?

18         MR. TOLCHIN:  His children go to school

19    in Jerusalem.

20         MR. KERR:  Because, your Honor, he is

21    the head of the government.  He is who he is.  He

22    wears both hats, I recognize that, and we feel it

23    is important and appropriate, out of due respect

24    for that, that he be examined in the location

25    where his offices are and where he lives.

26         THE COURT:  The Court is ruling right

```
 1                        Proceedings
 2    now, if this is going to take place you can
 3    either accommodate the plaintiffs or not present
 4    him.
 5              That's my ruling.  He can travel to East
 6    Jerusalem, something that does not seem at all
 7    burdensome to him, or he cannot testify.
 8              MR. KERR:  Let me move on to some other
 9    issues, your Honor.
10              We have two other witnesses we talked
11    about, Jacques Neriah and Freih Medean.  Those
12    are two fact witnesses that -- plaintiff
13    identified Mr. Neriah the day before the close of
14    discovery, we then responded with Mr. Medean.
15              Our proposal is if they are brought to
16    trial, we've identified Mr. Medean as a witness,
17    they have identified Mr. Neriah.  If they are
18    brought to trial we can depose them right prior
19    to trial.  If they want to bring Neriah here
20    beforehand we can depose him, but otherwise we do
21    it right before the trial.
22              THE COURT:  Mr. Medean, from what I
23    understand, is also having visa problems.
24              MR. KERR:  He is.  He is not in the
25    Gaza, your Honor, but he has applied for a visa.
26    He has been waiting quite a long time.
```

Proceedings

1          And, again, we've been working with the
2   State Department trying to get that resolved.
3   That has not been resolved yet and that's part of
4   the problem.
5          Going back to some evidentiary issues,
6   some document issues, your Honor.
7          Last time in June you asked us to
8   exchange besides witness lists exhibits.  We did
9   that.  We went through -- we submitted our list
10  of exhibits on October 16.  Plaintiff gave us
11  their list on October 23.
12         We've gone through their list.  We've
13  identified a number of documents that, assuming
14  they bring a witness in to lay a foundation, we
15  won't object to.
16         We've given them that list, they have
17  not done that for us.
18         MR. TOLCHIN:  Judge, could we clarify
19  that?  What we got was a list of exhibits that
20  they have not objected to.  That's what they
21  wrote me, that's what I thought I read in the
22  e-mail.
23         Now Mr. Kerr is saying that the exhibits
24  that he is stipulating to he is actually not
25  stipulating to, and he will only stipulate to

Proceedings

them if we bring in a witness to lay a
foundation.

THE COURT:  We're jumping the gun
because from what I understand, he is asking why
you have not responded to his exhibit list.

MR. TOLCHIN:  We just got it.

MR. KERR:  They got a list three weeks
ago.

Let me tell you exactly what happened,
your Honor.

We gave them a list three weeks ago, we
listed all of our exhibits, and for some of the
exhibits we had multiple copies.  We identified
multiple Bates numbers.  We told them that we're
going to go through and make sure which Bates
numbers from which documents will be used.

We sent them a revised one several days
ago, but we did not add any new exhibits, they
are the same documents that are on the list on
October 16.  We've gotten no response from them.
So that's one thing.

Your Honor also asked the parties to try
to come up with stipulated undisputed facts.

We sent them our proposed undisputed
facts.  They have not responded.

LEE RUTHEN - OFFICIAL COURT REPORTER

                        Proceedings

1          So there is a number of things, your

2   Honor, that we've been trying to do but are still

3   ahead of us that we have to accomplish.

4          Other items -- let me quickly list the

5   other items I had noted in our preconference

6   statement, your Honor.

7          As I mentioned, we have these other

8   witnesses that have visa issues, Mr. A-Franji,

9   our experts, Sharhabeel Al-Eaeen, and two other

10  witnesses in the Gaza who are pensioners, Mr. and

11  Mrs. El Khateeb.  We don't have visas for them

12  yet, we're working on this, but we're not there

13  yet.

14         In addition, in our pretrial --

15  preconference statement, your Honor, we proposed

16  a schedule for dealing with motions in limine.

17  We anticipate a number of motions in limine here.

18         What we propose, your Honor, is that

19  assuming the trial date stays where it is, and

20  we'll talk about that in a second, that whatever

21  the trial date is the motions be made eight weeks

22  in advance, responsive papers be provided three

23  weeks in advance, and then we set up a schedule

24  to address those before trial.

25         Your Honor has already indicated that

42

1           Proceedings

2    you are going to have to deal with any exhibits

3    for which there are objections, and there are

4    many.  Each side gave a list of potential trial

5    exhibits, several hundred documents, and again,

6    assuming they don't just say ours are fine, we

7    have a number of issues there.

8           THE COURT:  And you will have

9    spreadsheets in regard to each document.

10          MR. KERR:  We do, your Honor.

11          THE COURT:  So we can use the

12   spreadsheets to make any rulings.

13          MR. KERR:  We can.

14          THE COURT:  On those spreadsheets just

15   mark the ones that are disputed.

16          MR. KERR:  We can do that, your Honor.

17          THE COURT:  Both sides.  So that has to

18   be done.

19          There was a simple issue, the

20   interpreter for trial, or interpreters.

21          If the parties agree on one and are

22   willing to pay one outside of the court system,

23   that's fine.  Otherwise we would use the one from

24   the court system.

25          MR. TOLCHIN:  I believe that the

26   individuals that we actually do agree on, Mr.

LEE RUTHEN - OFFICIAL COURT REPORTER

43

1                           Proceedings

2     Marwan Abdel-Rahman.  I believe he works through

3     the court system.

4                  He was actually -- before you hired him,

5     I didn't realize this, he was actually the

6     interpreter at the original hearing on the

7     Monetary Authority case.

8                  Then he showed up -- he was their

9     interpreter at a deposition in the case, and

10    we've hired him for other things.  He is

11    qualified.

12                 THE COURT:  So we will try to arrange to

13    have him here if he works for the court system.

14                 Will we need a Hebrew interpreter, as

15    well?

16                 MR. KERR:  Not for us, your Honor.

17                 MR. TOLCHIN:  I don't think so.  I'm

18    pretty sure not, but I'm actually aware of

19    somebody of similar quality who belongs to the

20    court system who in fact comes up.

21                 MR. KERR:  I don't think that will be an

22    issue.

23                 THE COURT:  All right.

24                 MR. KERR:  We have the -- we have a

25    question of timing, and Mr. Tolchin raised with

26    me this morning the issue about the fact we don't

44

Proceedings

have a decision from the Appellate Division on

the jury issue yet.

He has indicated -- and I'll let

Mr. Tolchin speak for himself -- that if,

depending on how the burden of proof issue came

out, I think he intends to address that.

He raised with us, he proposed to us

that we agree that he is going to take that issue

up, we do it in an expedited basis, but that the

trial be put over pending the resolution of that

appeal.

We've told him that -- with all due

respect, your Honor, I recognize the jury issue

is fundamental to the trial, I think plaintiff's

burden of proof issue is, as well, so I respect

that, your Honor.

MR. TOLCHIN:  We had discussed this

morning that no matter how the burden of proof

issue turned out today, whichever of us won --

whichever of us lost the issue was planning to

appeal it.

So we had discussed amongst ourselves

whichever party lost would appeal and file -- and

would agree to file the appeal promptly, we said

to be filed within 30 days of the order, meaning

45

1                        Proceedings

2    to file the brief, not just to file an order to

3    appeal.

4              THE COURT:  It would be expedited.

5              MR. TOLCHIN:  Right.  We could

6    theoretically file a notice of appeal and then

7    wait nine months to perfect an appeal.

8              THE COURT:  But you would try to

9    expedite it.

10             MR. TOLCHIN:  We would file -- when Chet

11   and I discussed it this morning we didn't know

12   who was going to win.  Now it falls on me, so we

13   would file that appeal within 30 days of the

14   order.

15             THE COURT:  The other thing that caught

16   my eye is, do you both agree there is an issue as

17   to choice of law?

18             MR. TOLCHIN:  I don't think there is an

19   issue.

20             MR. KERR:  We do, your Honor.  Let me

21   explain what it is.  It has to do with where

22   these assets are held.

23             The assets that they are trying to

24   obtain when they brought this action were held in

25   a sub-custodial account at an entity called Swiss

26   American Securities, Inc.

LEE RUTHEN - OFFICIAL COURT REPORTER

1                              Proceedings

2          THE COURT:  In New York.

3          MR. KERR:  In New York.

4          However, that entity is a sub-custodian

5    for Credit Suisse because these assets were

6    originally in the -- these funds to purchase

7    these assets were deposited in Credit Suisse in

8    Zurich under a global custody contract.

9          The global custody contract that's in

10   place as of the date they became judgement

11   creditors and brought their action is between --

12   I have copies of it here, it is on their exhibit

13   list, it is on our exhibit list -- between the

14   Palestinian Pension Function for the State

15   Administrative Employees and Credit Suisse Asset

16   Management.

17         THE COURT:  And the original entity you

18   named is the entity you've been referring to as

19   the PIF, am I correct?

20         MR. KERR:  No, PPF.

21         THE COURT:  PPF.

22         MR. KERR:  Your Honor, that's us.

23   That's us.

24         He disagrees, that's us, but -- so in

25   their papers, your Honor, what they said was

26   this.  This is on their papers on the burden of

1                          Proceedings

2     proof.

3                They said, "In the instant case, the

4     possessor and presumptive owner of the assets is

5     the entity to which the securities are titled and

6     which has signatory power over the account

7     holding the securities."  That's what they

8     described as the basis of this presumption.

9                The account, as I said, that's who it is

10    titled to, the signatories on the account is the

11    Director General of our client, the pension fund,

12    and Chairman of the Board of our pension fund.

13                That custody agreement is subject to

14    Swiss law, and we believe there is potentially a

15    question of control over that based on Swiss law,

16    and we believe that the ultimate ownership

17    question is a question of Palestinian law,

18    because that is whether our entity actually owns

19    those assets.

20                So we are prepared, and we already told

21    plaintiff this, to put forward expert testimony

22    on Palestinian law, which we've done long before,

23    and on Swiss law on those issues.

24                Those are the issues --

25                THE COURT:  That's what's confusing in

26    terms of -- I just throw this out -- in terms of

1          Proceedings

2    ownership of the assets and the law, if you are

3    going to ask for Palestinian law.

4          It seems to me from living with this

5    case that there is a very long history to these

6    funds.  The funds originally were in Egypt and

7    then they were not turned over or were turned

8    over, I'm not sure, am I correct?

9          And they eventually went to Israel,

10   Israel was collecting all of this money, and then

11   turned over the funds to I believe the PA

12          MR. TOLCHIN:  Correct.

13          THE COURT:  And then -- or whoever was

14   going -- well, it wasn't the PA per se, it was

15   whoever was going to take care of these funds for

16   the workers.

17          These were funds that were supposed --

18   these were for workers who -- pension funds.  So

19   the Israeli authorities turned the funds over.

20          I don't know if the funds collected by

21   the Egyptians ever were turned over or

22   disappeared, but then -- so the funds were in

23   Israel, then they were apparently in Palestine,

24   or the Palestinian Authority, I should say, and

25   then transferred somewhere else, be it

26   Switzerland or the United States.

LEE RUTHEN - OFFICIAL COURT REPORTER

Proceedings

1                       Proceedings

MR. TOLCHIN:  They were never actually in the Palestinian Authority.

THE COURT:  Where were they?

MR. TOLCHIN:  They came from Israel.  I maybe skipping a step, but no step ever brought it to a bank in the Palestinian Authority.  It went from an Israeli bank to Morgan Stanley.

THE COURT:  They were wired to Morgan Stanley, I assume.

MR. TOLCHIN:  They came from Israel to Morgan Stanley.

THE COURT:  Here in New York?

MR. TOLCHIN:  Yes.

THE COURT:  And the rest is now in New York.

MR. KERR:  Your Honor, again, there is a long complicated history to the discovery.

But the issue to be tried here is actually narrowing.  The issue to be tried is who owned and controlled the assets at the point in time they became judgement creditors, because that's the only point where they have any interest or standing in this whatsoever.

THE COURT:  You mean your claim is that whoever claimed to own it at that point, no

50

Proceedings

1

2     matter if they stole it, no matter if someone

3     else owned it the day before, that's all that

4     matters?

5          MR. KERR:  Your Honor, I think we see

6     the issue is that's the ultimate question to be

7     done.

8          There are evidentiary questions, yes,

9     but the question is when they became judgement

10    creditors, and they said, okay, now we have an

11    interest in what we claim to be the PA's assets,

12    who owned it at that time?

13         Prior to that they had absolutely no

14    interest in these assets whatsoever.

15         THE COURT:  But who had control of these

16    assets previously, historically, at least the

17    very least is some evidence of who owned it on

18    the date in question.

19         MR. KERR:  There may be evidentiary

20    issues there, your Honor.  I'm not sure I agree

21    with that.

22         But I will say this.  The question here,

23    the question for the ultimate finder of fact is

24    when they became a judgement creditor, who owned

25    and controlled those assets at that point and up

26    until today.

LEE RUTHEN - OFFICIAL COURT REPORTER

Proceedings

And at that point, your Honor, what the assets were in was under a global custody contract between Credit Suisse and the Palestinian Pension Fund for the State Administrative Employees.

The only signatories on that account was our Director General and the Chairman of our board. We have in fact had control and moved those monies around for years. That's the issue to be decided.

They may want to come in and argue that the history and the past tells -- gives some idea about how to resolve that issue, but that's the issue on which they have standing, that's the issue that they have brought, that's what their complaint is.

MR. TOLCHIN:  A little bit of a problem with that.

MR. KERR:  One other thing, your Honor.

For example, who owned your house five years ago is or is not automatically relevant to who owns it today.

MR. TOLCHIN:  This is a hundred percent relevant, Judge.

MR. KERR:  Mr. Tolchin, please.

LEE RUTHEN - OFFICIAL COURT REPORTER

52

Proceedings

1

2          If they are a judgement creditor and

3     they go in and try to attach the house, the issue

4     is who owns that house today.

5          They will make arguments that who owned

6     it in the past is relevant, whatever, but the

7     issue in this case that has to be decided

8     ultimately is who owned it when they became

9     judgement creditors, and therefore that's the

10    first time we have any standing or right or claim

11    to those assets.

12          THE COURT:  That's why you have title

13    searches, perhaps.

14          Anyway, what did you want to say?

15          MR. TOLCHIN:  First of all, I disagree

16    with the characterization of what's the issue in

17    the case.

18          It is not -- if the IPF is an

19    independent entity that has no stake to these

20    monies, these assets, then the IPF does not care,

21    should not care who owns these assets and when.

22    Their only interest is whether they own it.  The

23    rest is none of their business, frankly.

24          The fact that Mr. Kerr keeps repeating

25    that his Chairman of the Board -- that the IPF's

26    Chairman of the Board may have been a signatory

1                              Proceedings

2     with respect to these funds, that's a bit

3     disingenuous to bring up, because we know that

4     the Chairman of the Board of the IPF is somebody

5     who is ex officio.

6           In other words, because he is the Prime

7     Minister of the Palestinian Authority he gets to

8     be the Chairman of the Board of the IPF, but also

9     of a great many other organizations also.

10          So the fact that -- the fact that he may

11    have been a signatory on the account, he wears

12    many hats, he is part of many entities beginning

13    with Palestinian this or that, it proves nothing.

14          It is a spurious thing that Mr. Kerr

15    keeps repeating as if it has significance.

16          What was fully briefed in the summary

17    judgement motion or what was demonstrated with

18    the exhibits is that there were two parallel

19    series of board meetings, there were two parallel

20    series of minutes, there were two parallel

21    boards, and what was called the PPF is something

22    separate that had a completely different life

23    from what's called the IPF.

24          And, frankly, what Mr. Kerr told you

25    about a while ago, that they came to New York to

26    see about this money, yeah, if you read their own

LEE RUTHEN - OFFICIAL COURT REPORTER

```
 1                        Proceedings
 2    minutes, a guy was dispatched to come to New York
 3    to see about trying to get that money.
 4          They didn't have it and they didn't
 5    control it, they were trying to get it, and they
 6    never actually got it.
 7          We have no qualms with the idea that the
 8    IPF believes on some moral level that these
 9    assets should go to them.  But that's like saying
10    that I believe that computer should be mine.  It
11    doesn't make it mine.  It is something I might
12    want --
13          THE COURT:  These are all trial issues,
14    not issues to be argued now.
15          MR. TOLCHIN:  Sure.  I see what's going
16    on.  Every time we talk about what seems to be a
17    scheduling matter, Mr. Kerr keeps underscoring
18    his themes because he thinks it will take hold.
19          THE COURT:  No, no, that's not the case.
20          My only question about choice of law
21    would be -- I feel if that's going to be a real
22    issue I need some briefing on it.
23          MR. KERR:  Your Honor, that's fine.  We
24    had originally suggested we could do that in
25    connection with the same time in doing the
26    motions in limine, we can do that beforehand,
```

Proceedings

1
2    your Honor.

3         THE COURT:  I would prefer it beforehand

4    because that is an issue.

5         MR. KERR:  Your Honor, going back to the

6    timing of things.

7         Mr. Tolchin has indicated this morning,

8    he suggested that in light of the burden of proof

9    issue, that we agreed to do an expedited appeal.

10   We've entered into a stipulation to do that.

11        If your Honor will so order that.

12        THE COURT:  That's fine.  I can't tell

13   the Appellate Division to expedite anything.

14        MR. KERR:  I understand that.

15        Could I bring something up, your Honor?

16        THE COURT:  Yes, you may.

17        MR. KERR:  Your Honor, just so we're

18   clear, what this stipulation would do would be

19   to -- this is Mr. Tolchin's request -- to stay

20   the trial date pending the resolution of that

21   appeal.

22        THE COURT:  Of those matters.

23        MR. TOLCHIN:  Let's be fair.  I like to

24   get along and I think we can get along.  We have

25   had a dialogue.

26        Mr. Kerr seems -- they wanted to stay

56

1                    Proceedings

2    the trial because of a jury issue, they wanted to

3    stay the trial because it is the money that's

4    accumulating in Israel.

5            I thought it would be good to make sure

6    that we had a ruling on the burden of proof

7    issue.  I'm a little taken aback by the "At

8    Mr. Tolchin's request."

9            THE COURT:  Do you want this or not?

10           MR. TOLCHIN:  I want it.

11           MR. KERR:  May I hand this up?

12           MR. TOLCHIN:  It is mutual, it is

13   neutral, and I think it is fair to both sides.

14           THE COURT:  So we don't have to discuss

15   it.

16           MR. KERR:  Can I bring it up, your

17   Honor?

18           THE COURT:  Yes.  Okay.

19           MR. KERR:  Your Honor, if I may, in

20   light of this, that we're going to do this

21   appeal, I think we're going to have to have

22   another conference when the timing gets a

23   little --

24           THE COURT:  First of all, I'd like to

25   find out when the jury issue gets determined.

26           That's been perfected and argued.

LEE RUTHEN - OFFICIAL COURT REPORTER

1          Proceedings

2          MR. KERR:  It was argued on March 3 of

3     this earlier year.

4          MR. TOLCHIN:  I think your Honor should

5     be aware that if we perfect the appeal, as we've

6     stipulated, it will be heard for -- the way the

7     timing worked out, it will be on for I'm not sure

8     which term, but one of the terms of the Appellate

9     Division --

10         THE COURT:  I would assume February,

11    March, April.

12         MR. KERR:  It may be February, your

13    Honor.

14         MR. TOLCHIN:  It is not like you perfect

15    something in June where you are not going to get

16    a decision until the fall.  We're early enough in

17    the year that it shouldn't be too long.

18         MR. KERR:  Your Honor, may I suggest

19    this?

20         We'll report to the Court as soon as we

21    hear from the Appellate Division on the jury

22    issue.  We will -- I assume Mr. Tolchin will

23    proceed with his appeal on the burden of proof

24    issue.

25         What I would suggest on the choice of

26    law issues, perhaps the parties discuss an

58

```
1                         Proceedings
2    appropriate time to brief them.
3                    Would your Honor prefer to have it in a
4    motion or --
5                    THE COURT:  I would prefer a motion.  It
6    seems to me that Mr. Tolchin does not believe
7    there is an issue as to choice of law, so I
8    believe the ball is in your court.
9                    He believes it is New York, the rest is
10   here.
11                   Am I correct?
12                   MR. TOLCHIN:  Correct.
13                   MR. KERR:  That's fine.
14                   THE COURT:  So it is your motion.
15                   MR. KERR:  That's fine, your Honor,
16   we'll make it.
17                   I just need to look at scheduling as to
18   when to do it, but we'll make it with good speed.
19                   THE COURT:  You can make it whenever you
20   make it.
21                   MR. KERR:  That's fine, your Honor.
22                   I think that's all I have, your Honor.
23                   THE COURT:  Okay.
24                   Is there anything you want to raise,
25   Mr. Tolchin, before we close?
26                   MR. TOLCHIN:  Not at this time, Judge.
```

LEE RUTHEN - OFFICIAL COURT REPORTER

59

1                         Proceedings

2          THE COURT:  Off the record.

3          (Off the record discussion).

4          (Whereupon, the case was concluded and

5  the record was closed)

6                        *   *   *

7

8                C E R T I F I C A T I O N

9

10     CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT OF THE ORIGINAL STENOGRAPHIC MINUTES TAKEN OF THIS PROCEEDING.

11

12                      LEE RUTHEN

13                      Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

26