UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE ESTATE OF YARON UNGAR, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 00-105L |
| | ) | |
| THE PALESTINIAN AUTHORITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR ENTRY OF A PROTECTIVE ORDER REGARDING PLAINTIFFS' NOTICES OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)**

<u>**The Instant Discovery Dispute and the Need for Protective Order Relief**</u>

In its June 1 Pre-Hearing Order, the Court scheduled an evidentiary hearing on Defendants' Motion for Relief from the Default Judgment and directed the parties to complete pre-hearing discovery by November 19, 2010. Dkt. No. 489. The hearing is scheduled to begin on January 18, 2011. *Id.* On August 31, 2010, less than 12 weeks before the close of pre-hearing discovery, Plaintiffs served Notices of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) on the Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO"). The 30(b)(6) notices each identify more than 100 "Deposition Topics" (including discrete sub-parts) on which the PA and PLO are each to produce witnesses to testify. *See* Exh. 1 (Notice to the PA, identifying 132 deposition topics); Exh. 2 (Notice to the PLO, identifying 114 deposition topics).

To give the Court a flavor of Plaintiffs' Rule 30(b)(6) notices, the following are a few of the topics on which Plaintiffs seek testimony: (i) the "circumstances and impact on Yasser Arafat and the PA of any 'besiegement' of Yasser Arafat, during the period 2002-2004;" (ii) the

"relationship between the Palestinian Investment Fund and the PA;" (iii) the "organizational and institutional structures and individuals within the PA responsible for monitoring and making decisions regarding the Bucheit Proceedings and the Danish Road Contractors Proceedings;" (iv) the "PA's removal of Ramsey Clark as counsel and the reasons therefore;" and (v) the "PA's 'perplexity' about the ability of the U.S. courts to hale it into court and why the PA believes such perplexity is understandable." Exh. 1 at 6, 10, 12, 15, 16.

The notices direct the PA and PLO to produce witnesses on September 28 in Providence, Rhode Island, with the examinations to continue "from day to day until completed." Exh. 1 (PA Notice) at 1; Exh. 2 (PLO Notice) at 1. The 30(b)(6) notices also direct the PA and PLO to provide to Plaintiffs, prior to the depositions, "a written designation which identifies the officers, directors, or managing agents, or other persons who consent to testify on its behalf regarding the Deposition Topics . . . , setting forth, for each person so designated (i) the Topics on which the witness will testify (ii) how each witness was selected to testify (iii) the efforts made to inform and/or educate each witness about the subject matter of his or her testimony and (iv) whether any other witness was asked to testify but refused to consent to testify." *See* Exh. 1 at 2; Exh. 2 at 2.

The parties held a meet-and-confer teleconference on September 8, 2010, during which defense counsel sought to discuss Defendants' objections to the scope of Plaintiffs' deposition notices. Plaintiffs' counsel, however, refused to consider narrowing the deposition topics or withdrawing any of the topics until Defendants put their objections in writing. On September 13, Defendants sent a letter to Plaintiffs detailing Defendants' objections to the deposition notices and proposing the withdrawal of numerous topics. Exh. 3 (September 13, 2010, letter from M. Rochon to D. Strachman, *et al.*). In their initial response, Plaintiffs declined to modify or withdraw *any* of the deposition topics. Exh. 4 (September 17, 2010, letter from D. Strachman to

M. Rochon, *et al.*).  Plaintiffs asserted that the timing and location of the noticed depositions are reasonable and that "arranging for witnesses to testify about these matters should be a quick and easy task."  *Id.* at 3.  In a subsequent letter dated September 26, 2010, Plaintiffs withdrew six deposition topics (topics 2(c) and 2(e)-(i)) from the notice served on the PA, and also withdrew the same deposition topics as to the notice served on the PLO.  Exh. 5 (September 26, 2010, letter from D. Strachman to M. Rochon, *et al.*).  The topics related to a November 28, 2006, letter from President Abbas to then Secretary of State Rice, which Defendants recently produced to Plaintiffs.  With this recent withdrawal of the six deposition topics, the Plaintiffs are seeking to depose the PA on 126 deposition topics and the PLO on 108 deposition topics.

Unable to informally resolve the discovery dispute with Plaintiffs, Defendants hereby seek a protective order relieving them of any obligation to produce PA and PLO witnesses in Rhode Island on September 28 pursuant to Plaintiffs' Rule 30(b)(6) notices.

This is not the first discovery dispute the parties have brought to the Court.  Also pending before the Court are two other motions for protective order filed by Defendants, one regarding Plaintiffs' effort to obtain written discovery regarding the PA's communications with third-party targets of Plaintiffs' enforcement actions (Dkt. No. 526) and the other regarding Plaintiffs' effort to depose Ahmed Qurei (Dkt. No. 528).  Defendants also have filed a motion to compel Plaintiffs' responses to Defendants' written discovery regarding the factual support for allegations Plaintiffs have made regarding PA/PLO responsibility for Mr. Ungar's killing.  Dkt. No. 530.  Also pending is Plaintiffs' motion to preclude, to compel, and for related relief as to their deposition of PA Prime Minister Salam Fayyad (Dkt. No. 518).  Defendants' motions for protective order and Plaintiffs' motion to preclude are to be addressed at a hearing scheduled before Magistrate Judge Martin on October 8.

As the mounting discovery motions attest, the parties are unable to agree on the scope of discovery appropriate to Defendants' Rule 60(b)(6) motion. The disconnect between the parties is acutely evident in Plaintiffs' Rule 30(b)(6) notices. Given the unprecedented nature of discovery in connection with a Rule 60(b)(6) motion and the limited time available for conducting such discovery, Defendants maintain that discovery should be narrowly targeted to the relevant Rule 60(b)(6) factors as to which there remains a *factual* dispute. Plaintiffs' Rule 30(b)(6) deposition notices bespeak a litigation strategy designed to make discovery impracticable, to distract Defendants from preparing for the January 2011 hearing, and to foment discovery disputes. They do not reflect a strategy to engage in discovery that feasibly can be accomplished by November 19 and that enables the parties to create an appropriate evidentiary record at the January 18 hearing.

<u>**Argument**</u>

Federal Rule 26 limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Even where discovery would be otherwise permissible under Rule 26(b)(1), courts may enter a protective order precluding or limiting discovery "for good cause" shown to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Moreover, Rule 26(b)(2)(C) requires a court to limit the extent of propounded discovery based on a determination that the discovery, among other things, is unreasonably cumulative or duplicative, can be obtained through less burdensome means or causes such burden or expense that the discovery outweighs its likely benefit to the case. Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii).

The Court may enter such an order "forbidding the disclosure or discovery," "prescribing a discovery method other than the one selected by the party seeking discovery," "forbidding

inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (C) and (D).

As demonstrated below, the Court should issue a protective order, consistent with Rule 26(c)(1)(D), "forbidding" Plaintiffs' from proceeding on their improper Rule 30(b)(6) notices. Specifically, Defendants' motion should be granted because Plaintiffs' notices (1) are grossly overbroad and impose an undue burden on Defendants; (2) include numerous topics wholly irrelevant to the matters at issue for the January 18, 2011 hearing; (3) seek testimony concerning information that is protected by the attorney/client privilege and/or work product doctrine; (4) seek testimony that is cumulative or duplicative of information sought by Plaintiffs through other discovery requests or that more properly are sought through written discovery; and (5) are unreasonable in their proposed time and location.

Defendants emphasize, however, that while they ask this Court to issue a protective order precluding the noticed depositions, Defendants do not oppose properly noticed and conducted Rule 30(b)(6) depositions. In an effort to avoid the dispute over the current Rule 30(b)(6) notices from derailing the November 19 discovery deadline and January 18 hearing date, Defendants alternatively seek a protective order, pursuant to Fed. R. Civ. P. 26(c)(1)(D), "limiting" the scope of Plaintiffs' Rule 30(b)(6) notices to discovery that would be beneficial to the Court's resolution of the issues properly before it at the January 18, 2011. Specifically -- and as discussed in greater detail at the conclusion of the Memorandum -- the PA and PLO would be willing to produce Rule 30(b)(6) designees to testify concerning the four broad areas that are relevant to the issues before the Court, including: (1) Plaintiffs' allegation that they would be prejudiced by the granting of vacatur through the loss of evidence (whether documentary, physical, or testimonial) that would be relevant and probative as to Plaintiffs' allegations; (2)

Defendants' presentation of meritorious defenses as to their absence of liability in this case, including evidence of Hamas' operatives involvement in the underlying incident, and also including evidence as to the PA/PLO not being liable for Hamas' actions; (3) the consequences of the default judgment on international relations and the peace process; and (4) the Defendants' ability, willingness, and commitment to participate in discovery and to litigate the merits of this case.

I.    **Defendants Are Entitled to a Protective Order Substantially Narrowing the Rule 30(b)(6) Topics Because Plaintiffs' Rule 30(b)(6) Notices Are Overbroad and Unreasonably Burdensome.**

    A.    **Deposition Notices Identifying Over 100 Topics Are Facially Overbroad and Unreasonable, Especially in the Context of Rule 60(b)(6) Discovery.**

Defendants respectfully suggest that the Court scan Plaintiffs' Rule 30(b)(6) notices (Exhs. 1, 2) before reviewing Defendants' arguments as to the notices. Because Plaintiffs' notices identify over 100 topics, it is not possible for Defendants to fully capture in the Memorandum their unreasonably burdensome and overbroad nature. Highlighting particular topics for the Court -- though useful -- does not provide the full picture. In Defendants' view, these notices, with their 100+ sub-parts, speak for themselves, in their extraordinary breadth, in their unreasonableness, and in their apparently conscious design to provoke discovery litigation.

One cannot review the Plaintiffs' Rule 30(b)(6) deposition notices without concluding that Plaintiffs have made no effort to formulate a reasonable discovery plan that is achievable during the brief discovery period allocated by the Court. Plaintiffs' transparent effort to demonstrate to the Court that Defendants are unable to comply with the burdens of discovery by attempting to impose unreasonable burdensome discovery obligations should not be countenanced by the Court. Rule 30(b)(6) is not intended to force an organizational party to produce witnesses in response to a notice that is so overbroad as to render compliance

impossible. *See Lipari v. U.S. Bancorp, N.A.,* 2008 U.S. Dist. LEXIS 82594, at *16 (D. Kan. Oct. 15, 2008) ("When [a Rule 30(b)(6)] notice is overbroad, the responding party is unable to identify the outer limits of the areas of inquiry noticed, and designating a representative in compliance with the deposition notice becomes impossible.").

In *Lipari*, the court found that the plaintiff's Rule 30(b)(6) notice was unduly burdensome because it asked the defendant to "produce a representative to testify about every single allegation of conduct by [defendant] in the entire Petition and all documents relating to the conduct of its agents." *Id.* at *18. The court therefore granted the defendant's motion for protective order and held that the plaintiff may "re-notice the deposition" and, in doing so, should limit the deposition topics relating to the relevant claim in the matter. *Id.* at *21. Plaintiffs' Rule 30(b)(6) notices suffer from the same deficiency as the notice at issue in *Lipari*.

Among the many extraordinary aspects of the notices at issue here is that Plaintiffs have treated Rule 30(b)(6) depositions as an occasion to conduct a line-by-line review of Defendants' vacatur motion, filed nearly three years ago, insisting that discovery be provided as to the wording of numerous statements made in the original motion. This approach leads to such bizarre deposition topics as the "PLO's 'mindset' during the period when it decided to default," (Exh. 2 at 3, Topic 4(a)), the "PA's 'regrets' concerning its 'procedural missteps' in this litigation" (Exh. 1 at 4, Topic 4(f)), and "[a]ny and all efforts of the PLO's counsel to educate the PLO about or disabuse the PLO of the 'illogicality' it perceived in being haled into U.S. court" (Exh. 2 at 6, Topic 5(e)). Plaintiffs cannot seriously expect the PLO to produce a witness to testify to the PLO's "mindset" during the 2000-2004 period or scores of other similar topics Plaintiffs have listed in their Rule 30(b)(6) notices. The goal of the pre-hearing discovery should not be to waste the Court's and Defendants' time with a "gotcha" game with defense counsel

regarding particular language used in the 2007 motion.  The goal should instead be to develop factual support for the parties' positions on the contested Rule 60(b)(6) factors -- such as the existence of prejudice to Plaintiffs and whether there is any factual basis for Plaintiffs' allegations that the PA or PLO provided material support to the Hamas cell that killed Mr. Ungar.

That Plaintiffs do not share this goal is further demonstrated by their continued focus on no longer contested factors (such as the willfulness of the default), on factors relevant to their collection actions but entirely irrelevant to the Rule 60(b)(6) motion, or on material plainly protected by the attorney-client privilege or work product doctrine.  PA/PLO Topic 4, for example, is titled "[r]egarding the PA's [or PLO's] strategic litigation choices leading to and subsequent to its default" and includes 11 sub-topics.  *See* Exh. 1 at 3-5; Exh. 2 at 3-5.  PA Topic 10 is entitled "[r]egarding the Palestine Investment Fund" and includes 13 sub-topics.  Exh. 1 at 12-14.  PA/PLO Topic 12 seeks testimony "[r]egarding the PA's [or PLO's] relationship, interactions, and discussions with their counsel" and includes 8 sub-topics.  *See* Exh. 1 at 15; Exh. 2 at 13-14.

Because Plaintiffs have made no effort to propound reasonable discovery that is rationally related to the pending Rule 60(b)(6) hearing and that could be accomplished during the discovery period set by the Court, Defendants are entitled to a Protective Order quashing the Rule 30(b)(6) notices.

**B.    Numerous Individual Topics Are Overbroad and Unduly Burdensome.**

The sheer volume of the deposition topics entitles the PA and PLO to a protective order. But, even as to *individual* topics, the Plaintiffs' Rule 30(b)(6) notices are overbroad and burdensome.   Solely by way of example, PA/PLO Topics 8(b) and (d) seek the "[details,]

circumstances and impact on Yasser Arafat and the PA [and PLO] of any 'besiegement' of Yasser Arafat, during the period 2002-2004" and the "details and circumstances of Yasser Arafat's extended and ultimately fatal illness and its impact on the Defendants and their participation in this litigation." Exh. 1 at 10; Exh. 2 at 10. In addition to being irrelevant to any Rule 60(b)(6) factor as to which there is a factual dispute, these deposition topics seek testimony about the broad impact of two political occurrences -- President Yasser Arafat's besiegement by Israeli forces and his subsequent illness -- on the Palestinian government. It is not the Defendants' obligation to produce a witness to discuss how Mr. Arafat felt about the Israeli siege of the Palestinian government or how his illness or death affected the PLO and PA. The requests for this overly broad testimony -- which Plaintiffs refused to curtail or limit -- show that Plaintiffs are more interested in playing clever games than in actually conducting discovery.

As another example, PA/PLO Topic 11(c) seeks the "nature, type, contents and identity of the PA's [and PLO's] records in Gaza that [are no] longer accessible," Exh. 1 at 14; Exh. 2 at 12, without limitation as to the subject matter of such records. If Defendants must provide a designee on the current availability of Gaza records, he or she should be required to testify only concerning the accessibility or inaccessibility of any documents previously known to exist in Gaza that are relevant to any issue properly before the Court in the vacatur proceeding.

PA Topics 6(i) and 6(j) are similarly overbroad. Those topics seek testimony as to "[a]ll requests to the PA from the State of Israel for the extradition, transfer and/or rendition of any member of HAMAS" and "[a]ll members of HAMAS hired by the PA at any time prior to June 9, 1996." *See* Exh. 1 at 8. Plaintiffs made no effort to limit the discovery as to whether the PA hired the Hamas militants associated with the *Ungar* attack or whether the State of Israel requested the extradition of those same individuals. Thus, even if it were possible to obtain

testimony about "[a]ll" requests for extradition or transfer of members of HAMAS and "[a]ll" members of HAMAS hired by the PA prior to June 9, 1996, it would be unduly burdensome, while not aiding the Court in deciding whether to grant vacatur.

Finally, as noted above, PA/PLO Topic 4(a) seeks testimony regarding the "PA's [and PLO's] 'mindset' during the period when it decided to default." Exh. 1 at 3; Exh. 2 at 3. Defendants are at a loss as to how they would prepare a designee to testify regarding the "mindset" of the PA or PLO over a four year period. Even accepting for the sake of argument the premise that institutional bodies such as the PA or the PLO could be considered to have a "mindset," Plaintiffs' Rule 30(b)(6) notices do not specify as to what subject areas they seek testimony: *the PA/PLO's mindset as to what*?

In sum, the mere fact that the deposition notices seek testimony on over 100 topics is reason enough to grant Defendants protective order relief. The fact that many of the individual topics are themselves overly broad -- and impose burdens out of all proportion to their value to the Court in deciding the Rule 60(b)(6) motion -- heightens the need for relief.

## II.    Defendants Are Entitled to a Protective Order Substantially Narrowing the Rule 30(b)(6) Topics Because Numerous Deposition Topics Seek Testimony Concerning Irrelevant Matters.

The Court has good cause to issue a protective order where discovery seeks information not relevant to the specific issues the Court must decide in the particular matter before it. *See* 6 James W. Moore et al., Moore's Federal Practice § 26.105[5] (Mathew Bender 3d ed. 2010) ("[A] showing of irrelevancy of proposed discovery can satisfy the 'good cause' requirement for a protective order."); *see also, e.g., ARP v. Amezaga (In re Amezaga)*, 195 B.R. 221, 226 (Bankr. D.P.R. 1996) ("A party who raises the objection of relevancy may seek protection from the court utilizing Rule 26(c) of the Federal Rules of Civil Procedure."). Moreover, the "party seeking

information in discovery over an adversary's objection has the burden of showing its relevance." *TG Plastics Trading, Co. v. Toray Plastics*, 2010 U.S. Dist. LEXIS 23498, at *5-6 (D.R.I. Mar. 11, 2010). *Accord Daniels v. Am. Power Conversion Corp.*, 2007 U.S. Dist. LEXIS 10858, at *3-4 (D.R.I. Feb. 14, 2007).

Here, the deposition topics seek testimony on numerous areas that are not relevant to any Rule 60(b)(6) factor as to which there is a continuing factual dispute. The irrelevant topics include those related to the willfulness of the default, the enforcement of the *Ungar* judgment, the PA's and PLO's defense of other lawsuits here and in Israel prior to 2007, and the timing of the Rule 60(b)(6) motion.

## A.    Topics Relating to the Willfulness of Defendants' Default Are Irrelevant.

Numerous topics seek testimony from the PA and/or PLO on issues relating to the willfulness of Defendants' default. *See* PA/PLO Topics 3(a)-(c) ("Regarding Dr. Nasser Al-Kidwa's January 2003 letter to Magistrate Judge Martin"); PA/PLO Topics 4(a)-(f) ("Regarding the PA's [and PLO's] strategic litigation choices leading to and subsequent to its default"); PA/PLO Topics 5(a)-(f) ("Regarding the PA's [and PLO's] understanding or misunderstanding of the U.S. legal system"); PA/PLO Topics 8(a)-(e) ("Regarding Yasser Arafat"); PA Topics 9(a)-(b), (d)-(k) ("Regarding the evolution of the PA's institutional capacity for conducting foreign litigation"); PLO Topics 9(a)-(b), (d)-(h) ("Regarding the evolution of the PLO's institutional capacity for conducting foreign litigation"); PA/PLO Topic 11(a) ("The PA's [PLO's] difficulties finding documents and responding to requests for discovery between 2000 and December 2007"). *See* Exh. 1 at 3-6, 10-12, 14; Exh. 2 at 3-6, 10-12.

The willfulness of Defendants' default, however, has already been conclusively established by this Court and by the First Circuit and conceded by Defendants. Because

depositions "are inherently 'time-consuming and inefficient,' they ought to 'be productive and not simply an excuse to seek information that is already known.'" *Dongguk Univ. v. Yale Univ.*, 2010 U.S. Dist. LEXIS 83987, at *10 (D. Conn. Aug. 17, 2010) (quoting *Tri-State Hosp. Supply Corp. v. U.S.*, 226 F.R.D. 118, 126 (D.D.C. 2005)). Given that discovery closes in mid-November, it is inefficient -- bordering on the nonsensical -- to spend the time conducting discovery on a factor as to which there is no factual dispute.

**B.     Topics Relating to Plaintiffs' Enforcement Actions and Other Cases Are Irrelevant.**

In addition to burdening Defendants with discovery on a Rule 60(b)(6) factor Defendants already have conceded, Plaintiffs seek to use the Rule 30(b)(6) depositions to engage in a fishing expedition related to their enforcement actions. Thus, a number of the topics relate to the enforcement of the judgment.

For example, Plaintiffs are seeking to enforce their judgment against the PA by seeking the turnover of assets of the Palestine Investment Fund. PA Topics 10(a)-(m) -- 13 separate topics -- seek information "Regarding the Palestine Investment Fund." Exh. 1 at 12-14. *See also* Exh. 2 at 12 (PLO Topic 10(a) seeking "[a]ny and all papers, pleadings, affidavits and declarations submitted by the PO in the Israeli Proceedings, at any time, that reference the Palestine Investment Fund").

In addition, PA/PLO Topics 4(h)-(k) seek the following:

- Any and all PA Cabinet [or PLO Executive Committee] meetings from any time at which the Judgment, any proceedings brought to enforce the Judgment, the 2006 Judgment and/or the instant action were discussed and the substance of such discussions.

- Any and all PA Cabinet [or PLO Executive Committee] decisions, orders and/or directives from any time referencing and/or relating to the Judgment, any proceedings brought to enforce the Judgment, the 2006 Judgment and/or the instant action.

- [Any] and all meetings of [any] PA [or PLO] ministry, agency, department, division, bureau and/or other [subordinate body] government body from any time at which the Judgment, any proceedings brought to enforce the Judgment, the 2006 Judgment and/or the instant action were discussed and the substance of such discussions.

- Any and all decisions, orders and/or directives made or issued at any time by any PA [or PLO] ministry, agency, department, division, bureau and/or other government body, which reference and/or relate to the Judgment, any proceedings brought to enforce the Judgment, the 2006 Judgment and/or the instant action.

Exh. 1 at 5; Exh. 2 at 5.

PA Topic 13(a) seeks testimony on "[w]hen the PA first became aware of the Creditor's Bill proceeding in this case and what actions the PA took as a result of that awareness." Exh. 1 at 15. PA Topic 13(b) and PLO Topic 13(a) seek testimony on the "names, titles, and present whereabouts of any individuals who were responsible for or involved in retaining counsel to defend proceedings brought by the Plaintiffs to enforce the Judgment in any jurisdiction and the details and circumstances of such efforts to retain counsel." Exh. 1 at 16; Exh. 2 at 14. PA Topic 13(e) seeks testimony on "[a]ll attachments on funds owed to the PA obtained by the Plaintiffs in Israel." Exh. 1 at 16.

None of these topics relates to any "potentially relevant factor" described by the First Circuit Court of Appeals in remanding this case. The Court should not allow Plaintiffs to use the current limited discovery period to seek information unrelated to Defendants' Motion to Vacate that concerns other actions. As a leading treatise on civil procedure explains:

> The courts are empowered to issue protective orders on a good cause showing that a party intends to use the discovery for a purpose unrelated to settlement or trial preparation of the case in which the discovery is taken or requested. One common "unrelated" purpose is to gain information for use in a different action against the same party or in a similar type lawsuit.

6 James W. Moore et al., Moore's Federal Practice § 26.101[1][6] (Mathew Bender 3d ed. 2010).

Some of this discovery appears designed to establish that the PA/PLO has not yet paid the judgment -- a fact that is not in dispute and also is not relevant to Defendants' entitlement to Rule 60(b)(6) relief. Every single motion under Rule 60(b)(6) involves an unpaid judgment. Under Rule 60(b)(6), a party may only move to vacate a judgment that has not been paid. Fed. R. Civ. P. 60(b)(6). Otherwise, relief would be available under Rule 60(b)(5) (providing relief from a judgment where "the judgment has been satisfied"), and the motion would be "premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)," thus making relief under 60(b)(6) unavailable pursuant to the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 (1988). *See also* Wright & Miller, *Federal Practice and Procedure* Civil 2d § 2864 ("if the circumstances justif[y] reopening the judgment, defendant should have been allowed a trial before paying . . . damages").

Other topics related to the PA/PLO's conduct of litigation are even farther afield because they seek testimony on pre-2007 legal proceedings involving the PA and PLO, which have no bearing on the *Ungar* litigation or the PA/PLO's ability to participate in and defend this litigation. These including PA Topic 13(g), which seeks testimony on the "organizational and institutional structures and individuals within the PA responsible for monitoring and making decisions regarding the Bucheit Proceedings and regarding the Danish Road Contractors Proceedings." Exh. 1 at 16. Similarly, PLO Topic 13(e) seeks testimony on

> [t]he organizational and institutional structures and individuals within the
> PLO responsible for monitoring and making decisions regarding the
> Achille Lauro Proceedings, regarding the Bucheit Proceedings, regarding
> the matter of *U.S. v. PLO*, No. 88 Civ. 1962 (ELP) (S.D.N.Y.), regarding
> the matter of *Mendelsohn v. Meese*, No. 88 Civ. 2005 (ELP) (S.D.N.Y.)
> and regarding the matter of *Palestine Information Office v. Shultz*, Civ. A.
> No. 87-3085 (D.D.C.) (both in the federal district court and the federal
> court of appeals).

Exh. 2 at 14. *See also* Exh. 1 at 16 (PA Topic 13(h)); Exh. 2 at 14 (PLO Topic 13(f)) (both

seeking deposition testimony regarding "[a]ny legal and/or arbitration proceedings . . . brought

against the PA [or PLO] in any place outside the West Bank and Gaza Strip at any time prior to

December 2007").

    Plaintiffs have an obligation to explain how such topics are relevant to the issues that are

the subject to the January 2011 vacatur hearing.

### C. Topics Relating to the Timeliness of Defendants' Motion to Vacate Are Irrelevant.

    Additional topics seek testimony from the PA and/or PLO concerning the threshold issue

of the timeliness of Defendants Rule 60(b)(6) Motion to Vacate. *See, e.g.*, PA/PLO Topic 4(d)

("How, why, and when the PA [and PLO] came to realize its 'deliberate choice' was

'misguided', and the name, title, and present whereabouts of any person participating in that

realization"); PA/PLO Topic 4(f) ("The PA's [and PLO's] 'regrets' concerning its 'procedural

missteps' in this litigation"); PA/PLO Topic 9(b) ("The 'considerable obstacles' that the PA [and

PLO] faced in responding to U.S. litigation from the time of Arafat's death until December

2007"); PA/PLO Topic 12(c) ("Any and all actions taken by the PA [or PLO] between July 2004

and April 2007 to find new counsel to represent it in the instant action and/or in any other actions

brought against it in the United States"); PA/PLO Topic 12(d) ("Any and all reasons for the

delay in filing the [Rule 60(b)(6)] Motion between July 2004 and December 2007"). *See* Exh. 1

at 4, 11, 15; Exh. 2 at 4, 11, 13. *See also* PA/PLO Topic 7(i); PA Topics 9(a), (e)-(k); PLO

Topic 9(a), (e)-(h); PA/PLO Topic 11(a); PA/PLO Topic 12(a)-(b); PA Topic 13(f)-(h); PLO

Topic 13(d)-(f). Exh. 1 at 9, 11-12, 14-16; Exh. 2 at 9, 11-14.

    This Court's initial vacatur ruling and the First Circuit's March 25th opinion, however,

have taken the timing of Defendants' motion to vacate off the table as a topic of discovery.

Plaintiffs argued extensively to this Court and to the Court of Appeals that Defendants' motion

to vacate was not filed within a "reasonable time," as required by Rule 60(c)(1), and that

Defendants' motion should be rejected on that basis alone.  The fact that neither this Court nor

the Court of Appeals accepted this argument is significant for purposes of the discovery at issue

here because the timing of a motion filed under Rule 60(b) is a threshold issue that should be

addressed *before* any extraordinary circumstances warranting relief are examined.  The fact that

neither court did this shows that both courts rejected the notion that Defendants' request for

relief was untimely under Rule 60(c)(1), and that that factor is no longer relevant to the issues to

be determined at the January 18, 2011 hearing in this matter.

     For example, in *Nucor Corporation v. Nebraska Public Power District*, 999 F.2d 372

(8th Cir. 1993) the Eighth Circuit reversed a district court's decision to grant relief under Rule

60(b)(5) and (6).  The court found that the judgment debtor's "Rule 60(b) motion was untimely,

and the district court abused its discretion in entertaining the motion." *Id.* at 375.  Indeed, the

court found that, because the judgment debtor had not brought its Rule 60(b) motion within a

"reasonable time," as required by Rule 60(c)(1), "the district court had no jurisdiction to consider

the motion." *Id.* at 376.  Other courts have treated the "reasonable time" limitation of Rule

60(c)(1) in a similar fashion, and have held that it is improper to consider the merits of a Rule

60(b) motion without first determining whether the motion was filed timely.  *E.g., Lightfoot v.

Union Carbide Corp.*, 1997 U.S. Dist. LEXIS 19138 (S.D.N.Y. Dec. 1, 1997) ("For a Rule

60(b)(5) claim, a determination of 'reasonable time' must be made before reaching the merits of

the claim."); *R.C. by Alabama Disabilities Advocacy Program v. Nachman*, 969 F. Supp. 682,

700 (M.D. Ala. 1997) ("[B]efore reaching the merits of defendant's substantive claim, Rule

60(b)(5) requires that the Court determine whether defendant's motion was made within a

'reasonable time.'"); *Pac. Cornetta, Inc. v. Jung*, 218 F.R.D. 250, 253 (D. Or. 2003) ("A threshold issue is whether the motion to set aside the default was filed in a timely manner."); *CSU v. Xerox Corp.*, 202 F.R.D. 275, 278 (D. Kan. 2001) ("The Court need not address the merit of Xerox's arguments, however, because its motion is untimely.").

Indeed, in outlining what circumstances might inform this Court's judgment in resolving Defendants' vacatur motion, the Court of Appeals listed several "potentially relevant factors," of which the ability or inability of Defendants to file their motion earlier was not one:

> Here, however, there is a substantial dispute between the parties about the incidence and weight of other, potentially relevant factors.
>
> For their part, the plaintiffs insist that granting Rule 60(b)(6) relief at this late date would work undue prejudice; in their view, the passage of time and the shifting political winds have caused a loss of material evidence and witnesses. Moreover, they maintain that the defendants have no viable defenses.
>
> But the defendants tell a different tale. They blame political extremism within the PLO and the PA for their earlier decision to default. They insist that they have had a good-faith change of heart and that they have legitimate, merit-based defenses to the action. They also see the amount of the judgment as unlikely to withstand adversarial testing. They vigorously dispute the plaintiffs' claim that evidence and witnesses have been irreparably compromised. They emphasize the special nature of the cause of action, the uniqueness of the case, its political ramifications, and its potential effect on international relations. Taken in the ensemble, these justifications, in the defendants' view, add up to exceptional circumstances.
>
> Whether or not the defendants' arguments ultimately carry the day, they are substantial.

*Ungar v. PLO*, 599 F. 3d 79, 86 (1st Cir. 2010).

Defendants do not dispute that timing is at issue in the sense that Plaintiffs are entitled to show (if they can) that they have been prejudiced by a loss of material evidence or witnesses due to the passage of time until the filing of the vacatur motion in December 2007. As the First

Circuit stated in its opinion, the issue of prejudice to Plaintiffs must still be addressed at the January 2011 hearing, *id.* at 87, and Defendants will not oppose proper discovery directed toward that issue. But Plaintiffs do not need discovery of Defendants' ability or inability to file their vacatur motion earlier to make such a showing. In other words, proving that Defendants have prejudiced Plaintiffs' ability to obtain significant evidence due to the timing of their motion is in no way dependant upon obtaining discovery from Defendants as to whether they might have filed their motion earlier.

Further, given that the First Circuit characterized Defendants' extraordinary-circumstances arguments as "substantial" and deserving of "full-throated consideration," *id.* at 86-87, it would be a clear abuse of discretion for this Court to ignore the merits of Defendants' motion by now changing its vacatur ruling on the threshold basis that the motion was untimely. For these reasons, testimony concerning the timeliness of Defendants Motion to Vacate is not relevant, and the Court should enter a protective order excusing Defendants from producing witnesses on, and precluding examination of any witness regarding the timing of, Defendants' Rule 60(b)(6) motion.

### III. Defendants Are Entitled to a Protective Order Substantially Narrowing the Rule 30(b)(6) Topics Because Numerous Deposition Topics Seek Testimony Concerning Privileged and/or Protected Matters.

Several topics in Plaintiffs' Rule 30(b)(6) notices facially seek, in whole or part, testimony concerning information that is privileged and/or protected from discovery. For example, PA/PLO Topic 4(b) requests testimony regarding "[a]ny and all advice of the PA's [or PLO's] counsel to interpose 'non-merits based defenses' in the Ungar litigation prior to 2005." Exh. 1 at 4; Exh. 2 at 4. PA/PLO Topic 5(e) seeks testimony about "[a]ny and all efforts of the PA's [or PLO's] counsel to educate the PA [or PLO] about or disabuse the PA [or PLO] of the

'illogicality' it perceived in being haled into U.S. Court." Exh. 1 at 6; Exh. 2 at 6. PA/PLO

Topic 12(a) seeks "[a]ny and all communications between the PA [or PLO] and its U.S. lawyers

between Arafat's death and the filing of" the Motion to Vacate. Exh. 1 at 15; Exh. 2 at 13.

Other requests similarly call for testimony that necessarily includes privileged communications

or protected work product. *See* PA/PLO Topic 4(c) (Defendants' "'deliberate choice' to delay

asserting a sovereign immunity defense"); PA/PLO Topics 12(b)-(h) (Defendants' termination of

prior counsel, hiring of new counsel, and conduct in this and other U.S. litigation); PA Topics

13(a)-(f) and PA/PLO Topics 13(a)-(f) (Defendants' hiring of counsel and conduct in other US

and foreign litigation).[1] Exh. 1 at 4, 15-16; Exh. 2 at 4, 13-14.

    "[T]he attorney-client privilege protects communications made in confidence by a client

to his attorney," *In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001), and material that

"reveals the substance of a confidential fact communicated by [a] client," *State of Maine v. U.S.*

*Dept. of Interior*, 298 F.3d 60, 71 (1st Cir. 2002). As the First Circuit Court of Appeals has

explained, the privilege applies: "(1) Where legal advice of any kind is sought (2) from a

professional legal adviser in his capacity as such, (3) the communications relating to that

purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected

(7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."

*United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997); *see also State of*

*Maine*, 298 F.3d at 72 (noting the attorney-client privilege protects materials that "contain or

relate to information that the client intended to keep confidential").

---

[1] Defendants are now seeking a Protective Order only as to these particular deposition topics because they patently seek privileged and/or protected material. Defendants, of course, reserve their rights to object to, and instruct deponents not to answer, questions calling for privileged or protected information.

Similarly, Federal Rule of Civil Procedure 26 codifies the work product doctrine, which generally prohibits discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . .)." Fed. R. Civ. P. 26(b)(3)(A). Unlike the attorney-client privilege, work product protection is not absolute, but Rule 26(b)(3) allows discovery of such material only upon a showing that an opposing party "has substantial need for the materials to prepare its case, and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.*

The deposition topics listed above facially or necessarily seek testimony protected from discovery by the attorney-client privilege and/or the work-product doctrine. Aside from being irrelevant to the issues now before the Court, the testimony sought in these topics is not an appropriate target of discovery pursuant to the attorney-client privilege and the work product doctrine. Accordingly, the Court should enter a protective order excusing Defendants from producing witnesses on, and precluding examination of any witness regarding, PA/PLO Topics 4(b), 5(e) and 12(a) in their entirety, and PA/PLO Topics 2(g)-(i), 4(c), 12(b)-(h), PA Topics 13(a)-(h) and PLO Topics 13(a)-(f) to the extent they seek privileged and/or protected information.

**IV.    Defendants Are Entitled to a Protective Order Substantially Narrowing the Rule 30(b)(6) Topics Because Numerous Topics Seek Testimony Concerning Issues That Are More Appropriate Addressed Through Other Forms of Discovery.**

Where a Rule 30(b)(6) deposition topic "seeks information which could be more easily obtained from another source, the court may refuse to allow that topic to be the subject of a 30(b)(6) deposition." *Dongguk Univ. v. Yale Univ,* 2010 U.S. Dist. LEXIS 83987, at *10 (D. Conn. Aug. 17, 2010) (citing *Gossar v. Soo Line R.R. Co.*, 2009 U.S. Dist. LEXIS 100931, at *16-17 (S.D. Ind. Oct. 27, 2009)).

20

## A.    The Deposition Topics Are Duplicative of Plaintiffs' Third Request for Production of Documents.

The Rule 30(b)(6) deposition notices are largely duplicative of Plaintiffs' third request for production of documents. *See* Exh. 6 (Plaintiffs'-Judgment Creditors' Third Request of Defendant-Judgment Debtor the Palestinian Authority for Production of Documents and Things Relevant to Defendants-Judgment Debtors' Rule 60(b)(6) Motion). In some cases, Plaintiffs' Rule 30(b)(6) notices seek deposition testimony on matters that are more easily discovered through examination of documents rather than Rule 30(b)(6) deponents. For example, PA/PLO Topics 14(b)-(f) seek testimony about the positions, titles and responsibilities of Mohammed Dahlan, Jibril Rajoub, Razi Jabali, Tewfik Tirwawi, and Amin Al-Hindi within the PA and PLO. *See* Exh. 1 at 17-19; Exh. 2 at 15-17. These deposition topics are near-verbatim duplicates of Plaintiffs' Third Request for Production of Documents Nos. 14(b)-(f). *See* Exh. 6 at 28-31. Obviously, this type of information may be more efficiently discovered by Plaintiffs through a document production than testimony of organizational deponents. Defendants should not be required to incur the time and cost of preparing and producing such designees when Plaintiffs can read the very same documents which the deponents would have to read to prepare.

Similarly, with respect to PA Topic 13(d) ("The PA's 'actual conduct' in the 'related cases'") and PLO Topic 13(c) ("The PLO's 'actual conduct' in the 'related cases'"), Defendants will be producing voluminous court records evidencing the Defendants' actual conduct of the U.S. litigation since new counsel was retained in mid-2007. *See* Exh. 1 at 16; Exh. 2 at 14. There is no need to have a deponent testify as to what is shown by these documents; they speak for themselves, obviating the need to have a witness prepared to come to a deposition simply to describe the same filings. Obviously, any testimony on this subject other than a recitation of

filings would implicate privilege and work product, and the PA/PLO would not, in any event, be producing witnesses to talk about litigation strategy or conduct beyond the public filings.

Of course there may some currently propounded Third Requests as to which the Defendants stand on their objections, such that the Plaintiffs will be free to move to compel.  In such instances, to the extent that the Court finds that Plaintiffs may take such discovery, they should be required first to pursue such information through their document requests or interrogatories rather than through Rule 30(b)(6) depositions.

### B.    Some of the Information Sought in the Deposition Topics Should Have Been Sought Through Contention Interrogatories.

Some of the deposition topics contained in Plaintiffs' Rule 30(b)(6) notices seek testimony from the PA and PLO concerning the "full basis" for contentions made by Defendants in the Motion to Vacate or in other filings or discovery responses.  PA/PLO Topics 1(a) and 1(b) seek testimony on the "full basis for the PA's [and PLO's] claims that vacating the Judgment will not cause prejudice to the Plaintiffs" and the "basis on which the PA [and PLO] 'vigorously disput[e]' that evidence and witnesses have been irreparably compromised."  Exh. 1 at 2; Exh. 2 at 2.  PA/PLO Topic 2(j) seeks testimony regarding the "basis for the PA's [and PLO's] characterization of the Abbas Letter as a request for 'guidance.'"  Exh. 1 at 3; Exh. 2 at 3.  PA/PLO Topics 6(a) and 6(b) seek the "full basis for the PA's [and PLO's] claim that there is 'no doubt that HAMAS, not the PA and PLO, caused Plaintiffs' loss'" and the "full basis for the PA's [and PLO's] claim that HAMAS 'indisputably' committed the shooting."  Exh. 1 at 7; Exh. 2 at 7.

Plaintiffs therefore seek to have the PA and PLO identify a designee that will testify as to the full factual support for particular legal claims and arguments.  But "the recipient of a Rule 30(b)(6) request is not required to have its counsel muster all of its factual evidence to prepare a

witness to be able to testify regarding a defense or claim." *SmithKline Beecham Corp. v. Apotex Corp.*, 2000 U.S. Dist. LEXIS 667, at *26 (N.D. Ill. Jan. 21, 2000). As one district court concluded, although a plaintiffs "has a right to discover the facts upon which [the defendant] will rely for its defense and counterclaims, [plaintiff's] attempt to discover those facts through a Rule 30(b)(6) deposition is overbroad, inefficient, and unreasonable." *In re Independent Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996). Thus, "[e]ven under the present-day liberal discovery rules, [a defendant] is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim." *Id. See also United States v. District Council*, 1992 U.S. Dist. LEXIS 12307, at *48-49 (S.D.N.Y. Aug. 14, 1992) ("for [the Rule 30(b)(6) designee] to provide the information defendants seek would in effect require the [plaintiff] to marshal all of its factual proof and then provide it to [the Rule 30(b)(6) designee] so that she could respond to what are essentially a form of contention interrogatories. Aside from any issues of privilege, this would be highly inefficient and burdensome, rather than the most direct manner of securing relevant information.").

Plaintiffs' approach is an abusive technique that has been roundly criticized by both commentators and courts. As one commentator has noted, the Rule 30(b)(6) deposition

> has been increasingly misused in recent years. Aggressive litigants and a few short-sighted courts have bent this device into a form of "contention discovery" in which an entity may be required to respond in impromptu oral examination to questions that require its designated witness to "state all support and theories" for myriad contentions in a complex case. The growing misuse of this basic deposition tool creates unfair, unworkable burdens on the responding parties and risks imposition of inappropriate sanctions, including preclusion of proof.

Kent Sinclair & Roger P. Fendrich, *Discovering Corporate Knowledge and Contentions: Rethinking Rule 30(b)(6) and Alternative Mechanisms*, 50 Ala. L. Rev. 651, 651-52 (1999).

Accordingly, Defendants should not be required to prepare witnesses to describe the "full basis" for their "claims" and their counsel's "characterization[s]" of evidence, and the Court should enter a protective order excusing Defendants from producing witnesses on PA/PLO Topics 1(a), 1(b), 2(j), 6(a) and 6(b).[2]

### C. Some of the Testimony Sought in the Rule 30(b)(6) Deposition Notices Either Should Have Been Sought in the Nearly Seven Hour Deposition of PA Prime Minister Salam Fayyad, or Could Have Been Sought in That Deposition.

Plaintiffs seek Rule 30(b)(6) testimony about numerous issues that either were raised or should have been raised during Plaintiffs' July 28, 2010 deposition of Prime Minister Salam Fayyad. As the senior governmental official who oversees the U.S. litigation on behalf of both the PA and PLO, Prime Minister Fayyad is uniquely situated to address issues relating to the foreign policy impact of the U.S. litigation in general and the *Ungar* judgment in particular, as well as the PA/PLO's decision to litigate the U.S. cases on the merits and subsequent commitment to fully defend the U.S. lawsuits.

The Plaintiffs identified a number of topics as to which the Prime Minister already testified or is uniquely positioned to testify. Topics that fall into this category include.

---

2 Discovery into the "basis" for a party's "claims" may, of course, be accomplished through the discovery device intended for that precise purpose -- contention interrogatories. *See* Fed. R. Civ. P. 33(a)(2). For that reason, courts have repeatedly held that it is improper to pose questions concerning an organizational party's contentions to that party's Rule 30(b)(6) designee. *See, e.g.*, *Wilson v. Lakner*, 228 F.R.D. 524, 529 n.8 (D. Md. 2005) ("Whereas the facts of a relevant incident or incidents are proper for 30(b)(6) inquiry, the contentions, *i.e.* theories and legal positions, of an organizational party may be more suitably explored by way of interrogatories and the Court may properly order . . . that contentions only be inquired into in this fashion."); *EEOC v. American Int'l Group*, 1994 U.S. Dist. LEXIS 9815, at *6-7 (S.D.N.Y. July 18, 1994) (denying motion to compel Rule 30(b)(6) deposition of plaintiff in part because "[t]he inquiries into the Complaint, proposed by the defendants, should more appropriately be pursued through 'contention interrogatories' under Rule 33(b)") Here, Plaintiffs have not even attempted to propound proper contention interrogatories to Defendants seeking this information. Indeed, Plaintiffs have served only two interrogatories on Defendants in the prescribed discovery period.

- PA/PLO Topic 4(d): "How, why, and when the PA [and PLO] came to realize its 'deliberate choice' was 'misguided', and the name, title, and present whereabouts of any person participating in that realization." Exh. 1 at 4; Exh. 2 at 4.

- PA/PLO Topic 4(g): "The adoption by the PA [PLO] of the positions expressed by Prime Minister Fayyad in his December 24, 2007 Declaration concerning the PA's [and PLO's] commitment to future participation in this litigation, as well as the PA's [and PLO's] involvement in any efforts to transmit such commitment to United States political or governmental agencies or entities, including, without limitation, the United States courts." Exh. 1 at 4-5; Exh. 2 at 4-5.

- PA/PLO Topics 7(b)-(i): "Regarding international relations and peace process." Exh. 1 at 8-10; Exh. 2 at 8-10.

- PA/PLO Topic 9(c): "The specific organizational and institutional structures and lines of authority the PA [PLO] has developed to adequately respond to this litigation, as well as how such institutional structures and lines of authority differ from earlier institutional structures and lines of authority." Exh. 1 at 11; Exh. 2 at 11.

- PA Topic 9(k), PLO Topic 9(h): "The policies, procedures and/or guidelines for the handling of lawsuit brought against the PA [and PLO]." Exh. 1 at 12; Exh. 2 at 12.

Plaintiffs conducted the deposition of Prime Minister Fayyad on July 28, 2010, more than a month before issuing their Rule 30(b)(6) Notices. During this deposition, which Plaintiffs demanded take place at the beginning of the pre-hearing discovery period, Plaintiffs explored many of the matters concerning which they now seek testimony from the PA and PLO. Indeed, Prime Minister Fayyad testified extensively about four areas of inquiry contained in Plaintiffs' Notices: (1) the PA/PLO's decision to fully participate in the *Ungar* case and other U.S. litigation (PA/PLO Topic 4(d)) (*see, e.g.*, Exh. 7 (7/28/10 Salam Fayyad Dep. Tr.) at 66:1-78:12, 79:10-103:15, 153:13-164:18); (2) his own December 24, 2007, Declaration submitted with Defendants' Rule 60(b)(6) Motion (PA/PLO Topic 4(g)) (*see, e.g.*, Exh. 7 at 114:6-194:8); (3) the PA's change in strategy, commitment to litigate the *Ungar* case and other cases on the merits, discussions about the default judgment and the PA's capacity to participate in discovery (PA/PLO Topics 4(f), 4(h)-(k), 9(c)) (*see, e.g.*, Exh. 7 at 38:9-17, 143:11-148:19, 183:5-194:8,

205:4-25, 363:21-365:14, 367:20-368:18, 384:10-387:4); and (4) the effect that enforcement of the default judgment would have on the PA government, its international relationships and communications between the PA and foreign states (PA/PLO Topics 7(b)-(i)) (*see, e.g.*, Exh. 7 at 15:23-17:1, 22:9-23:15, 46:5-56:2, 201:24-205:2, 206:9-17, 212:18-216:1, 365:15-367:18, 369:25-372:20, 374:18-24).

Because Plaintiffs have already received testimony from the highest officer of the PA and PLO charged with managing the U.S. litigation on the above-referenced deposition topics, they should not be permitted to seek cumulative and duplicative testimony through Rule 30(b)(6) notices. Moreover, PA/PLO Topic 4(g), which requests designees from the PA and PLO to testify specifically about Prime Minister Fayyad's declaration accompanying Defendants' Motion to Vacate, appears to constitute nothing more than a strategic gambit to force Defendants to produce the Prime Minister for a second deposition

As a result of Plaintiffs' choice to depose Prime Minister Fayyad at the outset of the discovery period, Defendants should not be forced to produce designees on topics that were or should have been covered with the Prime Minister during his deposition.

## V.     Plaintiffs' Proposed Deposition Timing, Location and Procedure Are Inequitable Under the Circumstances.

Defendants further request, pursuant to Fed. R. Civ. P. 26(c)(1)(D), that the Court limit Plaintiffs unreasonable proposals regarding the timing and location of Plaintiffs' Rule 30(b)(6) Notice. Defendants are, of course, willing to produce designees at a reasonable time, in a reasonable place, to testify on relevant, non-privileged matters of reasonable scope, and suggested at the beginning of this Memorandum and repeat below what the proper scope of Rule 30(b)(6) depositions in this matter would entail.

### A.    The Timing and Location of the Noticed Depositions Are not Reasonable.

Plaintiffs' Notices direct the PA and PLO to appear for deposition at "10:00 a.m." on "September 28, 2010" at "the offices of Plaintiffs' counsel Wistow & Barylick, Inc., 61 Weybosset Street, Providence, Rhode Island." Exh. 1 at 1; Exh. 2 at 1. Defendants, whose agents and employees largely reside in Occupied Palestinian Territory in the Middle East, should not be forced to locate and prepare designees for deposition, and then arrange for and pay for them to travel to Rhode Island to be deposed by Plaintiffs' counsel on multitudinous topics on less than 30 days notice. This is especially the case here, where many of Defendants' designee candidates would require visas to travel to the United States, and that process itself ordinarily takes several weeks. Instead, should this Court decide that Plaintiffs may proceed, it should allow Defendants a reasonable time to locate and prepare knowledgeable designees, and order that the depositions take place where the designees are located or are reasonably able to travel on relatively short notice.

Plaintiffs have previously acknowledged that the general rule governing the location of depositions holds that "if the deponent lives a great distance from the deposing party, then the deposition takes place near the location of the out-of-state deponent." *See* Dkt. No. 519 at 15 (citing *O'Sullivan v. Rivera*, 229 F.R.D. 187, 189 (D.N.M. 2004)). This rule applies with equal or greater force in Rule 30(b)(6) contexts, where the presumption is that depositions of organizational parties will take place at the designee's residence or the organization's principal place of business absent "unusual circumstances which justify such an inconvenience to the [organization]." *Zuckert v. Berkliff Corp.*, 96 F.R.D. 161, 162 (N.D. Ill. 1982). *See also Zane S. Blanchard & Co. v. PSPT Ltd.*, Civil No. 92-660-SD, 1995 U.S. Dist. LEXIS 7289, at *16-19

(D.N.H. May 18, 1995) (granting Israeli company's motion for protective order and holding that the Rule 30(b)(6) deposition of the company must take place in Israel).

Plaintiffs have argued that Defendants should be considered counterclaim plaintiffs because they are seeking to vacate a default judgment. *See* Dkt. No. 519 at 15-16. However, the sole case cited by Plaintiffs for this proposition concerns a defendant bringing a permissive counterclaim. *See Continental Federal Sav. & Loan Ass'n v. Delta Corp. of Am.*, 71 F.R.D. 697, 700 (W.D. Okla. 1976). Here, Defendants' agents and employees generally reside in Occupied Palestinian Territory, and Defendants have not filed a permissive counterclaim of any kind. Rather, Defendants seek to simply litigate their defense in this matter and do not affirmatively wish to avail themselves of this forum in any way. Moreover, as demonstrated above, the Rule 30(b)(6) notices identify more than 100 topics each on which the PA and PLO are directed to produce a knowledgeable witness or witnesses. Contrary to Plaintiffs' insupportable and self-interested assertion that this would "be a quick and easy task" (*see* Exh. 4 at 3), it would be practically impossible for Defendants to do so by the noticed date of the deposition, September 28, 2010. Accordingly, should this Court decide that Defendants must produce Rule 30(b)(6) designees in response to Plaintiffs' current Notices, the Court should order that the depositions occur at a later date where the particular designees are located or can reasonably travel.

**B.    Plaintiffs' Demand for Detailed Written Designations Is Unreasonable.**

Plaintiffs' Rule 30(b)(6) notices also demand that Defendants provide "a written designation which identifies the officers, directors, or managing agents, or other persons who consent to testify on its behalf regarding the Deposition Topics . . . , setting forth, for each person so designated (i) the Topics on which the witness will testify (ii) how each witness was selected to testify (iii) the efforts made to inform and/or educate each witness about the subject matter of

his or her testimony and (iv) whether any other witness was asked to testify but refused to consent to testify." *See* Exh. 1 at 2; Exh. 2 at 2.

This demand for a "written designation" is not required by Rule 30(b)(6) or any other Federal Rule of Civil Procedure, and the Court should not require Defendants to provide such a "written designation" because, to the extent these subjects are not privileged, they can be explored with the witnesses at the Rule 30(b)(6) depositions.

### Defendants' Proposal Regarding Scope of Rule 30(b)(6) Depositions

Defendants recognize that appropriately scoped Rule 30(b)(6) depositions ought to go forward. Defendants respectfully request that the Court direct Defendants designees to testify to non-privileged information responsive to the following topics, each of which is relevant to the issues before the Court and each of which reflect a more limited, proper scope of discovery, and which correspond in broad terms to certain topics set forth in Plaintiffs' Rule 30(b)(6) Notice:[3]

- A designee to testify regarding whether Plaintiffs would suffer any of the "prejudice" claimed by Plaintiffs as a result of any vacatur of the default judgment (*see generally* PA/PLO Topics 11(b)-(d)). This designee would also be prepared to address Plaintiffs' allegation that they would be prejudiced by the granting of vacatur through the loss of evidence (whether documentary, physical, or testimonial), that would be relevant and probative as to Plaintiffs' allegations, with the understanding that Defendants should only be required to produce a designee concerning the lack of missing documents relevant to this particular case.

- A designee to testify regarding Defendants' meritorious defenses, particular with regards to the responsibility of HAMAS operatives for the underlying incident (*see generally* PA Topics 6(c)-(j) and PLO Topics 6(c)-(h)), also including evidence as to the PA/PLO not being liable for Hamas' actions with the understanding that, with respect to PA Topics 6(i) and 6(j), Defendants should only be required to produce a designee to testify concerning the HAMAS suspects apprehended under the suspicion of committing the attack at issue and not all members of HAMAS.

---

[3] Because Plaintiffs' notices are largely similar, Defendants propose producing designees prepared to testify on behalf of both the PA and PLO, with the understanding that Plaintiffs would have seven hours to conduct the deposition of each such designee.

- A designee to testify regarding the general status of the peace negotiations between and among Palestine, Israel and the United States immediately prior to the attack, as well as the likely consequences of the default judgment on international relations and the peace process (*see generally* PA/PLO Topics 7(a)-(h)).

- A designee to testify regarding Defendants' ability, willingness, and commitment to participate in discovery and litigate the merits of this case, and the Defendants' commitment to defend the U.S. cases. (*see generally* PA/PLO Topics 11(b)-(d)).

The PA believes that depositions of the foregoing designees could occur in the Middle East during the months of October and November, and could be completed by the November 19, 2010 discovery cut-off date.

Defendants request that any Rule 30(b)(6) depositions the Court allows to be conducted by Plaintiffs occur with a United States judge or special master presiding over the deposition to ensure that the witnesses are examined only concerning a reasonable scope of their properly designated topics. *See, e.g.*, *Nault's Auto. Sales, Inc. v. Am. Honda Motor Co.*, 148 F.R.D. 25, 40 (D.N.H. 1993) (appointing a commissioner to preside over a disputed deposition with instructions "to return to the Court if any disputes or problems arose"). The appointment of a judge or special master to preside over this deposition would also allow the parties to avoid potential post-deposition litigation.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Entry of a Protective Order Regarding Plaintiffs' Notices of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) to Defendant The Palestinian Authority and Defendant The Palestine Liberation Organization should be granted.

Respectfully submitted,


Dated:  September 27, 2010

/s/ Mark J. Rochon
Mark J. Rochon (D.C. Bar #376042)
Admitted *pro hac vice*
Richard A. Hibey (D.C. Bar #74823)
Admitted *pro hac vice*
Brian A. Hill (D.C. Bar #456086)
Admitted *pro hac vice*
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
mrochon@milchev.com
rhibey@milchev.com
bhill@milchev.com

Deming E. Sherman (#1138)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, Rhode Island 02903
Tel. (401) 274-9200
Fax. (401) 276-6611
dsherman@eapdlaw.com

*Attorneys for the Palestinian Authority and
the Palestine Liberation Organization*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 27th day of September 2010, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to:

>David J. Strachman
>McIntyre, Tate & Lynch, LLP
>321 South Main Street, Suite 400
>Providence, RI 02903
>Djs@mtlhlaw.com
>
>Max Wistow
>Wistow and Barylick Incorporated
>61 Weybosset Street
>Providence, RI 02903
>mwistow@wistbar.com
>
>*Attorneys for Plaintiffs*

>/s/ Mark J. Rochon