# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

      Plaintiffs – Judgment Creditors,

v.                                                                                                          C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.,

      Defendants – Judgment Debtors.

### PLAINTIFFS-JUDGMENT CREDITORS' MEMORANDUM IN OPPOSITION TO DEFENDANT PALESTINIAN AUTHORITY'S MOTION TO COMPEL ANSWERS TO DEFENDANT'S INTERROGATORY NOS. 12-18 AND RESPONSES TO DEFENDANT'S REQUEST FOR PRODUCTION NOS. 8-15, 17-19

### Introduction

Plaintiffs-Judgment Creditors ("Ungars") respectfully submit this memorandum in opposition to the Motion to Compel filed by the Palestinian Authority ("PA"). Dkt. # 530.

For the reasons set forth below, the PA's motion should be denied in its entirety.

### ARGUMENT

The Ungars will address the PA's arguments seriatim.

**I.      Defendants Are Not Entitled to Merits Discovery**

During the pre-default proceedings in this case the Defendants failed to provide any of the merits discovery sought by the Ungars. Though the Defendants claimed that they were *unable* to produce any of the discovery requested this Court rejected this claim as incredible, found that Defendants' failure to produce discovery was in fact a *refusal*, and entered default judgment against the PA as a sanction for its refusal to provide discovery. *See Ungar v. PA*, 325 F.Supp.2d 15, 24, 60-64 (D.R.I., 2004).

In a June 2005 letter to Secretary of State Rice, the Defendants admitted that their claims of inability to conduct merits discovery were false – i.e. that they had lied to this Court – and had intentionally refused to provide the discovery sought. Exhibit A at 2 (acknowledging Defendants' "*refusal* to subject themselves to open-ended civil discovery") (emphasis added).

Now, in what can only be termed an act of unmitigated gall – considering Defendants' own refusal to provide merits discovery and their attempt to deceive the Court into believing that that refusal was an inability – Defendants are seeking merits discovery *from the Ungars*.

The PA's motion to compel presents three grounds for seeking merits discovery, all of which, as shown below, are entirely meritless.

### A. Whether a Meritorious Defense Exists Is Determined by Comparing the Complaint's Allegations to the Rule 60(b) Movant's Averments

The existence of a meritorious defense is factor to be considered in granting Rule 60(b) relief. *See e.g. Ungar v. PLO*, 599 F.3d 79, 83 (1st Cir. 2010); *Indigo America, Inc. v. Big Impressions, LLC*, 597 F.3d 1, 4 (1st Cir. 2010).

The PA admits that the main purpose of the discovery at issue is to fish for documents and information which – the Defendants hope – will enable them to establish a "meritorious defense." *See* dkt. # 530 at 16 ("The discovery requests at issue are most obviously relevant to the meritorious defense factor because they seek documents and information underlying the allegations Plaintiffs made regarding PA or PLO liability for Mr. Ungar's murder.").

But the PA neither needs nor is entitled to discovery from the Ungars in order to establish a "meritorious defense" for the purpose of Rule 60(b) (if it has such a defense) because showing the existence of a meritorious defense "is not a particularly arduous task. A party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." *Indigo America*, 597 F.3d at 4 (internal quotations and brackets omitted).

2

Obviously, the Defendants have ***perfect knowledge*** of their own conduct, whereas the Ungars do not and cannot have such knowledge.

Accordingly, there is absolutely nothing preventing the Defendants – except for the strictures of Rule 11 – from making "averments [that] plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense" to the conduct attributed to the Defendants' in the Ungars' Amended Complaint.

Indeed, the prospect that the Defendants, with their perfect knowledge of their own conduct, need discovery from the Ungars regarding that conduct, is plainly absurd.

Moreover, precisely because the existence of a "meritorious defense" is determined simply by comparing the movant's averments to the allegations of the complaint – i.e., using a *pleading* standard, not a *proof* standard – the plaintiff's evidence is simply irrelevant. *See Burrell v. Henderson*, 434 F.3d 826, 832 (6th Cir. 2006) ("When reviewing a motion for relief under Rule 60(b), the court is not permitted to consider the underlying strength of a plaintiff's claim.").

Therefore, a party seeking to vacate a default is not permitted discovery from the plaintiff regarding the factual basis of the complaint. *See Sierra Foods, Inc. v. Haddon House Food Products, Inc.*, 1991 WL 95287 at *10 (ED.Pa. 1991) (rejecting such a request on the grounds that both defendant's meritorious defense and plaintiff's complaint are properly assessed using a pleading standard, not a proof standard).

In support of its demand for merits discovery from the Ungars the PA makes the following argument:

> [A]lthough Plaintiffs are objecting to discovery related to the merits of their allegations against the PA/PLO on the basis that the Rule 60(b)(6) meritorious defense requirement **is a pleading standard and need not be supported with evidence, Plaintiffs have refused to concede that Defendants have satisfied the meritorious defense standard**. In their opposition to the

3

> PA/PLO's Rule 60(b)(6) motion and in their brief filed for the First Circuit appeal, Plaintiffs vigorously maintained that the PA/PLO failed to assert a meritorious defense. **So long as the Plaintiffs are unwilling to concede that Defendants have sufficiently pled a meritorious defense, the PA is entitled to conduct discovery to establish the existence of a meritorious defense**.

Dkt. # 530 at 16-17 (emphasis added, citations omitted).

With all due respect, this argument is just completely specious as a matter of basic logic. The fact that the existence of a "meritorious defense" is examined using a *pleading* standard and not a *proof* standard does not mean that "anything goes" – i.e. that *any* averment is sufficient to meet the test. Rather, while "an inquiring court should assume the truth of fact-specific statements contained in a Rule 60(b)(6) motion … A court need not … give credence to the movant's bald assertions, unsubstantiated conclusions, periphrastic circumlocutions, or hyperbolic rodomontade." *Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transportation Co.*, 953 F.2d 17, 18 (1st Cir. 1992).

To date, the Defendants have not even attempted to establish a meritorious defense in the most simple and obvious fashion: by making specific factual averments disputing the specific factual allegations of the Amended Complaint. (The Ungars believe that the Defendants have not done so because they *cannot* do so without running afoul of Rule 11).

Instead, the Defendants purport to found their "meritorious defense" on statements made by the Ungars and/or their witnesses in their civil action against Iran. Specifically, Defendants argue that the Ungars' position in the Iran case – that Iran and Hamas were carrying out terrorist attacks in order to undermine the political negotiations between Israel and the PA/PLO – renders the Ungars' claims against the PA and PLO in this action "nonsensical" because the PA and PLO would not have helped Hamas to carry out terrorist attacks harmful to their own negotiations with Israel. Dkt. ## 408 at 23-28 and 423 at 12-15.

4

The Ungars assert that Defendants' reliance on the position taken by the Ungars in the Iran suit fails to establish a "meritorious defense" because this argument (i) assumes without basis that Hamas and the PA/PLO have the identical perspective as to whether terrorism is harmful or helpful to political negotiations, (ii) focuses exclusively on whether *Hamas* believes terrorism is harmful to political negotiations, and (iii) ignores *Defendants'* own perspective as to whether terrorism harms or helps political negotiations. *See* dkt. ## 415 at 49-58 and 431 at 1-7.

In sum, the Ungars' position is that a "meritorious defense" is indeed established by mere averments (as the First Circuit reiterated earlier this year in *Indigo America*) but that the Defendants have failed to meet even this low pleading standard because their reliance on the Iran suit is unavailing and they have refused to make (because they are unable to truthfully make) specific statements of fact denying the specific allegations of the Amended Complaint.

Thus, there is no basis for the PA's claim that "[s]o long as the Plaintiffs are unwilling to concede that Defendants have sufficiently pled a meritorious defense, the PA is entitled to conduct discovery to establish the existence of a meritorious defense." Dkt. # 530 at 16-17. That the Ungars have pointed out Defendants' failure to make the mere averments of facts disputing the specific allegations of the Amended Complaint required to establish a "meritorious defense" does not entitle Defendants to burden the Ungars with discovery demands about Defendants' own conduct, of which Defendants already have full knowledge!

The PA next raises a tit-for-tat argument, asserting that they should be permitted merits discovery from the Ungars in order to establish a meritorious defense because the Ungars have sought discovery from Defendants regarding their relationship with Hamas. *Id*. at 17-18.

This argument should be rejected for two reasons:

*First*, it is based on a false symmetry. It is Defendants' burden to assert a meritorious defense and Defendants have all the information necessary to do so (if they had such a defense) since Defendants have perfect knowledge of their own conduct, and the Ungars have nothing to add to Defendants' knowledge in this regard. By contrast, the Ungars are entitled to discover from Defendants information and documents that will allow the Ungars to respond to and refute any meritorious defense that Defendants may raise. While it is true that a meritorious defense is tested using a pleading standard and not a proof standard, that does not mean that a Court can or should treat as true an averment by a Rule 60(b) movant that is clearly and demonstrably false.

*Second*, this argument is made in bad faith because it ignores the fact that Defendants have raised multiple objections to the discovery sought by the Ungars' regarding Defendants' relationship with Hamas and have provided no documents responsive thereto. *See* Exhibit B.

The PA next asserts that the "sole case on which Plaintiffs rely" in support of their position is *Sierra Foods, Inc. v. Haddon House Food Products, Inc.*, 1991 WL 95287 at *10 (ED.Pa. 1991). Dkt. # 530 at 18. In fact, of course, the Ungars' objections also cited *Burrell v. Henderson*, 434 F.3d 826 (6th Cir. 2006), which expressly held that: "When reviewing a motion for relief under Rule 60(b), the court is not permitted to consider the underlying strength of a plaintiff's claim." *Id*. at 832. The PA's only response to *Burrell* is to pretend it does not exist.

The PA seeks to distinguish *Sierra Foods*, claiming that it involved an "attempt 'to avoid and evade the normal litigation process by insisting upon extensive – and one-sided – pretrial discovery before responding to the complaint in order to secure a quick end to the litigation' [while the PA] seeks pre-hearing discovery in a period designated by the Court for such discovery on the very issues the Court will address in an evidentiary hearing." Dkt. # 530 at 18.

6

The PA's argument fails because quotation cited by it is not from *Sierra Foods*, 1991 WL 95287 at all, but from a later decision, *Sierra Foods, Inc. v. Haddon House Food Products, Inc.*, 1992 WL 245847 (E.D.Pa. Sept. 22, 1992). That quotation does not describe the defendant's request for discovery regarding its *motion to vacate*, but rather its request for discovery before being required to respond to the complaint *at all*. *See Sierra Foods*, 1991 WL 95287 at *4 ("[D]efendants here assert that Rule 12 should be set aside in order for them to pursue a different course for the early stages of litigation, i.e., to delay a response to the Complaint until they can obtain sufficient information through discovery to determine whether a motion for summary judgment might be appropriate.").

Thus, the PA has blatantly mischaracterized *Sierra Foods*, 1991 WL 95287.

More importantly, the PA has overlooked (or is purposely ignoring) two substantive holdings in *Sierra Foods*, 1991 WL 95287 that are directly relevant to the instant motion:

*First*, that a defendant has full knowledge of – and so does not require discovery of – its own conduct, in order to present a "meritorious defense." *Sierra Foods*, 1991 WL 95287 at *10 (Denying the defendant's request for discovery from plaintiff regarding its meritorious defense since, "Facts contrary to those alleged by the plaintiff were and are within the knowledge of the defendants, since they were the only other parties to the transactions upon which plaintiff's claims are based. Thus, defendants had no need for discovery to uncover such facts.").

*Second*, that a defendant does not require discovery in order to present a "meritorious defense" because: "Just as the plaintiff is not required to prove its case in the Complaint by detailing all of the evidence necessary to support each element of each theory of liability, defendants need not prove in their answer that plaintiff cannot prevail." *Id*.

In other words, the standard is one of pleading, not of proof.

B.  **The Discovery Sought Is Irrelevant to the Issue of Prejudice**

In a post hoc effort to salvage its discovery requests the PA also asserts, for the first time, that the discovery sought is relevant to the Ungars' claim that they would be prejudiced by vacating the judgment, because "[f]or example, if Plaintiffs have documentation or information regarding a particular PA official's knowledge or involvement in the Ungar incident, or lack thereof, such documents or information would be relevant to whether Plaintiffs are prejudiced by the individual's unavailability to testify." Dkt. # 530 at 18.

This argument should be rejected for two reasons:

*First*, the discovery sought by the PA does *not* relate to "documentation or information regarding a particular PA official's knowledge or involvement in the *Ungar* incident,[1] or lack thereof" but to numerous allegations of the Amended Complaint that are completely unrelated to the narrow question of the involvement or knowledge of any particular PA official.

If the PA seeks information or documents in respect to this narrow question, it must propound new requests or drastically narrow its existing requests.

*Second*, the PA neglects to mention that it has *already* propounded interrogatories to the Ungars requiring them to identify the prejudice that would be caused to them if the judgment was vacated and they were required to litigate the case today and, specifically, requiring them to described the prejudice caused to them by the death/unavailability of the specific PA officials whom the PA was originally ordered to produce in this action. Exhibit C at 1-12. The Ungars have answered these interrogatories. *Id*. Thus, the Ungars have *already* provided the discovery that Defendants claim that they need in respect to prejudice.

---

[1] The Court should note the Defendants' insistence on referring to the cold-blooded terrorist machine-gun murder of a young couple as an "incident" – a choice of words that evidences, subtly but surely, Defendants' true attitude toward terrorism in general and the murder of the Ungars specifically.

8

### C.    The Discovery Sought Cannot Prove Any "Extraordinary Circumstance"

In a particularly cynical and contrived attempt to invent a reason – again, for the first time – why it is entitled to the discovery sought, the PA argues that "if Plaintiffs have no evidentiary support for the allegations made in their complaint, Plaintiffs' attempt to enforce a $116 million default judgment against the Palestinian Authority in the absence of any evidence that the PA is responsible for Mr. Ungar's death is an extraordinary circumstance that weighs into the PA's entitlement to Rule 60(b)(6) relief." Dkt, # 520 at 19.

This "argument" can and should be rejected out of hand because the materials *already* of record clearly support the allegations of the Amended Complaint. *See e.g.* dkt. # 415 at 53 ("Arafat … has failed to prevent the uses of territory under his administration from being used as a staging area for" Hamas terrorism) (quoting Congressional Record, H1719, March 6, 1996); *id*. at 53-54 (noting that the "terrorist infrastructure of Hamas" is in territory under Defendants' control); (quoting Congressional Record, H2072, March 12, 1996); *id*. at 53 ("Hamas … are given sanctuary … operate out of the territories under the direct control of Yasser Arafat … he gives them sanctuary") (quoting Congressional Record, S8782, September 4, 1997); *id*. at 54, Exhibit CC (published list of wanted Hamas terrorists being sheltered by the PA); *id*., Exhibit J, at ¶ 7, Appendix 5 ("We have never had a dispute with Hamas or anyone else regarding the principle of resistance"); dkt. # 431 at Exhibit A ("the terrorist organizations have been allowed by Arafat to take root and grow in the soil of the Palestinian Authority"); *id*. at Exhibit E ("while PLO and Hamas were competitors for influence among the Palestinians, their evolving relations appeared to be characterized by increasing *collusion* rather than *confrontation*); *id*., Exhibit J at ¶ 6, Appendix 4 ("When [chief Hamas terrorist] the martyr Yahya Ayyash was killed . . . I

9

personally had told our brothers in Hamas that they must hide him, because Israel wanted to assassinate him."

\*\*\*

In sum, Defendants have no meritorious basis whatsoever for the merits discovery they are seeking, and evidently seek that discovery in an effort to turn the hearing on their motion to vacate into a mini-trial on the merits of the case. But Defendants' machinations are not only legally baseless, but practically pointless. The Ungars have made clear, both before this Court and the Court of Appeals, that because the key witnesses in this case – the PA/PLO officials whom Defendants were ordered but refused to produce for depositions – have all either died or left Defendants' employ, and because of the loss of Defendants' records and documents in the Gaza Strip, the Ungars no longer have any means of proving their case today.

## II.    The Ungars Are Not Required to Produce Discovery Already in the PA's Possession

On pages 19-20 of its motion, the PA challenges objections presented by the Ungars to interrogatories and document requests propounded by the PA that seek information and documents that are or were in the Defendants' exclusive possession. Bizarrely, the PA challenges these objections on the "grounds" that the Ungars must have, and should be compelled to produce, responsive information and documents that are *not* in Defendants' possession.

This argument is a perfect non sequitur. If the documents and information sought are in Defendants' possession, there is no reason for the Ungars to produce them. And if the information and documents are in the Defendants' *sole* possession, the Ungars cannot do so.

The PA's only coherent argument here could be in respect to (i) documents and information that are in the Ungars' possession but not that of the Defendants (ii) in respect to which the Court has rejected the Ungars' other objections.

To the extent, if any, that the Ungars possess such documents or information, and the Court rejects the Ungars' other objections in respect thereto, the Ungars will produce them.

### III. Given Defendants' Refusal to Conduct Discovery the Ungars Cannot and Should Not Be Required to Respond to Contention Interrogatories/Document Requests

On pages 20-23 of its motion, the PA takes issue with the Ungars' position that, if their other objections are denied, they reserve the right to argue that they should not be required to respond to contention interrogatories or document requests aimed at testing factual contentions.

While the PA is of course correct in asserting that a party is not permitted to unilaterally decline to respond to discovery requests on this basis (hardly a novel point deserving three pages of attention), the PA studiously ignores two countervailing facts:

*First*, the PA ignores the fact that the Ungars have raised other objections to the production sought, and have not declined to produce on this basis, but merely reserved the right to request to be exempted from production if their other objections are overruled.

*Second*, the PA's "learned" discussion of the normal rules governing contention interrogatories completely ignores the unique circumstances of this case – in which the PA and PLO intentionally refused to produce any discovery and lied to this Court about their refusal to do so, falsely presenting it as an "inability." Given these circumstances, if their other objections are rejected the Ungars should be excused from responding to any interrogatories or document requests relating to factual allegations.

### IV. The PA's Remaining Arguments

The PA challenges the Ungars' objections to Requests nos. 15 and 17-19 on the grounds that the documents sought are in the public record and/or in Defendants' possession. Dkt. # 530 at 24-25. If the Ungars' other objections are overruled and these documents are not already in Defendants' possession – which is doubtful – the Ungars will produce them if they have them.

11

Finally, the PA complains that in response to Request no. 16, which seeks documents received by the Ungars in response to a Hague Convention request, the Ungars have stated that if they "locate any responsive documents they will produce them." *Id*. at 25.

In fact, the Ungars' full response to this request was: "*Plaintiffs' counsel has no record or recollection of ever receiving any documents in response to this Hague Convention request and has been unable to locate any such documents*. If plaintiffs locate any responsive documents they will produce them." *See* PA's Exhibit 2 at 12 (emphasis added).

Thus, the Ungars have no documents responsive to this request.

**WHEREFORE**, the PA's motion should be denied.

Dated: October 4, 2010

Plaintiffs-Judgment Creditors,
by their Attorneys,

/s/ David J. Strachman
David J. Strachman #4404
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com

Max Wistow #0330
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on October 4, 2010, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701

/s/ David J. Strachman

13