# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

      Plaintiffs – Judgment Creditors,

    v.                                      C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.,

      Defendants – Judgment Debtors.

## PLAINTIFFS-JUDGMENT CREDITORS' AMENDED AND SUPPLEMENTAL OBJECTIONS AND ANSWERS TO THE PALESTINIAN AUTHORITY'S FIRST SET OF INTERROGATORIES (1-18)

Plaintiffs, by and through their counsel, and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, hereby submit their Amended and Supplemental Objections and Answers to "Defendant the Palestinian Authority's First Set of Interrogatories (1-18) to Plaintiffs" dated July 6, 2010 ("Interrogatories"), and state as follows:

### PRELIMINARY STATEMENT

1.    The exact wording of any objections made or answers produced by the plaintiffs may be that of plaintiffs' counsel and do not necessarily purport to be that of the plaintiffs.

2.    Any answer by plaintiffs to the Interrogatories shall not be deemed a waiver of any objection plaintiffs may wish to interpose at any proceeding, hearing, or trial with respect to the matters disclosed thereby or with respect to the relevancy, materiality, competency, or admissibility of the information referenced or contained in the document(s) produced. Each answer is without prejudice to, or waiver of, any objection plaintiffs may make to any future use of such information. Further, plaintiffs makes the objections and give the answers herein without

in any way implying that they considers the requests and answers to the requests to be relevant or material to defendants' Rule 60(b)(6) motion.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Plaintiffs object to the Instructions and Definitions included in the Interrogatories to the extent that they purport to impose obligations beyond those of the Federal Rules of Civil Procedure. Accordingly, plaintiffs' response to the Interrogatories will be provided as required, and only as required, by the Federal Rules of Civil Procedure.

## INTERROGATORIES

## INTERROGATORY NO. 1:

1.    State the factual basis for your contention that "vacating the judgment in this action would cause the Ungars extreme prejudice – indeed, would leave them with no effective means of litigating this case – because since entry of judgment in this case, in July 2004, crucial witnesses have died or left the employ of the defendants, and an entire universe of relevant documents has been lost,", including without limitation, your allegation that "an entire universe of responsive documents" was located in Gaza prior to Hamas' 2007 takeover of that area." *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion for Relief from Default Judgment at 28, 35 (Dkt. # 415) (hereinafter, "Dkt. # 415).

[A fully responsive answer to this Interrogatory should include, without limitation, the following information:  (a) identification of the allegedly "crucial witnesses [who] have died or left the employ of the defendants," (b) a description of the knowledge or information that you content or believe the allegedly "crucial witnesses" had or have, and (c) identification of the allegedly "relevant documents" that have been lost.]

## ANSWER TO INTERROGATORY NO. 1:

The crucial witnesses who have died or left the employ of the defendants since July 2004 are Yasser Arafat, Razi Jabali, Muhammed Dahlan, Amin al-Hindi and Tawfik Tirawi. Jibril Rajoub, another crucial witness, may also have left the employ of the defendants since July 2004.

Policy and decision-making in the PA and PLO, including the making of policies and decisions regarding the substance of the relationship between the PA/PLO and other Palestinian organizations such as Hamas, was centralized in the person of Yasser Arafat during his lifetime. In this context, Arafat communicated personally and directly with the top leaders of Hamas. Accordingly, Arafat had unique personal knowledge of the policy of the PA and PLO vis-à-vis Hamas and the relations between the PA/PLO leadership and the Hamas leadership during the relevant period – indeed, he personally formulated that policy and conducted those relations.

The Ungars' inability to compel Arafat's testimony today therefore leaves them with no effective means of litigating this case. *See also Ungar*, 325 F.Supp.2d at 62.

The PA's and PLO's policies vis-à-vis Hamas were carried out in practice and "in the field" by the heads of the PA's security services – i.e. by Jabali, Dahlan, al-Hindi, Tirawi and Rajoub. As commanders of the PA's security services, Jabali, Dahlan, al-Hindi, Tirawi and Rajoub had control and authority over certain territories in the West Bank and Gaza Strip, over most of the Palestinian population of the West Bank and Gaza Strip, over weapons and materiel belonging to the PA and PLO and over PA funds and budgets, and they used that control and authority to provide Hamas and its operatives with material support and resources during the relevant period. Indeed, the PA and PLO could not have provided certain types of material support and resources to Hamas (including without limitation safe houses and weapons) without the participation and approval of Jabali, Dahlan, al-Hindi, Tirawi and Rajoub. Accordingly

3

Jabali, Dahlan, al-Hindi, Tirawi and Rajoub have unique personal knowledge of the provision of material support and resources to Hamas by the PA and PLO during the relevant period.

The Ungars' inability to compel the testimony of Jabali, Dahlan, al-Hindi, Tirawi and Rajoub[1] today therefore leaves them with no effective means of litigating this case. *See also Ungar*, 325 F.Supp.2d at 62.

The relevant and responsive documents and things that have been lost are all documents and things that were located in the Gaza Strip as of July 2004 that evidenced the relationship between the PA/PLO and Hamas, that evidenced the policies of the PA and PLO vis-à-vis Hamas, that evidenced the provision of material support and resources to Hamas and its operatives by the PA and/or PLO and/or that were otherwise relevant to the allegations of the Amended Complaint in this action – including without limitation all documents and things requested in Plaintiffs' First Request for Production of Documents to Defendant the Palestinian Authority that were located in the Gaza Strip as of July 2004.

Since the PA and PLO operated parallel governmental and organizational structures in both the West Bank and the Gaza Strip during the relevant period – meaning that presumptively half of all relevant and/or responsive documents have been lost – an d since Hamas' main organizational and operational base was in the Gaza Strip during the relevant period – meaning that *the majority* of the relevant and/or responsive documents were almost certainly in Gaza – the Ungars' inability to compel defendants to produce these documents today therefore leaves them with no effective means of litigating this case.

---

[1] Assuming that Rajoub is no longer an officer, director or managing agent of the defendants.

In further answer to this Interrogatory, plaintiffs hereby incorporate by reference their assertions regarding prejudice appearing at pages 28-36 of their Memorandum in Opposition to Defendants' Motion for Relief from Default Judgment (Dkt. # 415).

## INTERROGATORY NO. 2:

If Plaintiffs contend that they would suffer any prejudice from vacatur of the default judgment against the PA and PLO other than the prejudice alleged at pages 27-43 of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Relief from Default Judgment (Dkt. # 415), state the factual basis for the contention, including, without limitation, a detailed description of the form, extent and amount of such prejudice.

### ANSWER TO INTERROGATORY NO. 2:

The plaintiffs noticed the deposition of Tawfik Tirawi. *See* dkt. # 103. Tawfik Tirawi was the commander of the "Palestinian General Intelligence Services" and was alleged by plaintiffs to have been personally involved with the provision of material support to Hamas by the PA and PLO. *See* Complaint, dkt. # 1, at ¶¶ 13, 17, 18, 20, 30, 35, 38, 40, 41, 44 and 46.

The need for Tirawi's testimony is also discussed in the Answer to Interrogatory No. 1, *supra*, which is incorporated herein by reference.

The Court ordered the defendants to produce Tirawi for deposition, but they refused. *Ungar*, 325 F.Supp.2d at 40-43, 60-64.

Plaintiffs' Memorandum in Opposition to Defendants' Motion for Relief from Default Judgment did not assert that Tawfik Tirawi was no longer available to be deposed because plaintiffs and their counsel believed, at the time that Memorandum was filed, that Tirawi was still an officer, director and/or managing agent of the PA.

Whatever Tirawi's status at the time of the filing of plaintiffs' Memorandum, plaintiffs have since learned that "Tirawi retired from his last official position in the Palestinian Authority and no longer holds any official position in the government so as to render him within the control of the Palestinian Authority pursuant to Rule 30(b)(1)." *See* email communication from Charles F.B. McAleer, Jr., Esq., to Robert J. Tolchin, Esq., January 19, 2010, 5:43 PM.

Indeed, defendants represent that they "do not believe that the Palestinian Authority has any ability, or is under any obligation, to compel the deposition of Mr. Tirawi." *Id.* To the best of plaintiffs' knowledge, Tirawi is not an officer, director and/or managing agent of the PA.

Accordingly, for the reasons stated above and in their Answer to Interrogatory No. 1 plaintiffs would be severely prejudiced by vacatur because they can no longer compel Tirawi's testimony. *See also Ungar*, 325 F.Supp.2d at 62.

The plaintiff also noticed the deposition of Amin al-Hindi. *See* dkt. # 103. Al-Hindi was the commander of the "Palestinian General Intelligence Services," and was alleged by plaintiffs to have been personally involved with the provision of material support to Hamas by the PA and PLO. *See* Complaint, dkt. # 1, at ¶¶ 13, 17, 18, 20, 30, 35, 38, 40, 41, 44 and 46.

The need for al-Hindi's testimony is also discussed in the Answer to Interrogatory No. 1, *supra*, which is incorporated herein by reference.

The Court ordered the defendants to produce al-Hindi for his deposition, but they refused. *Ungar*, 325 F.Supp.2d at 40-43, 60-64.

Al-Hindi died on or about August 17, 2010.

Accordingly, for the reasons stated above and in their Answer to Interrogatory No. 1 plaintiffs would be severely prejudiced by vacatur because they can no longer compel al-Hindi's testimony. *See also Ungar*, 325 F.Supp.2d at 62.

Additionally, plaintiffs would be further prejudiced by vacatur today (more so than in December 2007) due to the further passage of time since the murder and the accompanying natural fading of memories and loss of evidence that occurs with time.

## INTERROGATORY NO. 3:

State the factual basis for your contentions that "[Yasser] Arafat was personally and directly involved in the PA's and PLO's provision of material support to Hamas" and "personally led and orchestrated defendants' provision of material support and resources for Hamas (see Complaint at ¶¶ 29-41) (Dkt. #1), including specifically the provision of financial support for Hamas' terrorism (see *Ungar*, 325 F. Supp. 2d at 64)." Dkt. # 415 at 29-30.

### ANSWER TO INTERROGATORY NO. 3:

Policy and decision-making in the PA and PLO, including the making of policies and decisions regarding the support of the PA and PLO for terrorism and for terrorist organizations such as Hamas, was centralized in the person of Yasser Arafat during his lifetime.

Accordingly, defendants' provision of material support to Hamas required the personal involvement, approval and direction of Arafat. Indeed, in respect to defendants' terrorist activities, Arafat maintained a highly personal, hands-on approach throughout his career. For example, Arafat personally gave the order to murder U.S. Ambassador to Sudan Cleo A. Noel Jr. and Deputy Chief of Mission George Curtis Moore, who were taken captive by a PLO terrorist squad. Similarly, on numerous occasions Arafat personally directed and ordered the distribution of funds to individual Palestinian terrorists in the West Bank and Gaza Strip.

**INTERROGATORY NO. 4:**

State the factual basis for your contention that "the plaintiffs' allegations that Arafat personally directed and supervised defendants' terrorism ... have subsequently been resoundingly confirmed by the United States government." Dkt. #415 at 31.

**ANSWER TO INTERROGATORY NO. 4:**

Plaintiffs refer defendants to dkt. # 415, Exhibits L, M and N.

**INTERROGATORY NO. 5:**

If you contend that you would have elicited deposition testimony from Yasser Arafat for presentation as evidence at a trial of this case, state the factual basis for your contention, including, without limitation, a detailed description of the testimony that you would have elicited from Yasser Arafat.

**ANSWER TO INTERROGATORY NO. 5:**

Plaintiffs contend that the PA was obligated to produce Yasser Arafat to testify at a deposition (which testimony plaintiffs would have been entitled to present as evidence at a trial of this case) prior to the entry of judgment in this action. The basis for this contention is the fact that the Court ordered the PA to produce Arafat for such a deposition.

If the PA had produced Arafat to be deposed plaintiffs would have questioned him regarding all topics relevant to the allegations in the Amended Complaint in this matter.

**INTERROGATORY NO. 6:**

State the factual basis for your contention that Razi Jabali "was personally involved with the provision of material support to Hamas by the PA and PLO." Dkt. # 415 at 32.

### ANSWER TO INTERROGATORY NO. 6:

The PA's and PLO's policies vis-à-vis Hamas were carried out in practice and "in the field" by the heads of the PA's security services – including Razi Jabali. As a commander of a PA security service, Jabali had control and authority over certain territories in the West Bank and/or the Gaza Strip, over some of the Palestinian population of the West Bank and/or Gaza Strip, over weapons and materiel belonging to the PA and PLO and over PA funds and budgets, and he used that control and authority to provide Hamas and its operatives with material support and resources during the relevant period. Indeed, the PA and PLO could not have provided certain types of material support and resources to Hamas (including without limitation safe houses and weapons) without the participation and approval of Jabali.

Additionally, on information and belief, Razi Jabali has admitted recruiting Hamas operatives into his security service.

### INTERROGATORY NO. 7:

If you contend that you would have elicited deposition testimony from Razi Jabali for presentation as evidence at a trial of this case, state the factual basis for your contention, including, without limitation, a detailed description of the testimony that you would have elicited from Razi Jabali.

### ANSWER TO INTERROGATORY NO. 7:

Plaintiffs contend that the PA was obligated to produce Razi Jabali to testify at a deposition (which testimony plaintiffs would have been entitled to present as evidence at a trial of this case) prior to the entry of judgment in this action. The basis for this contention is the fact that the Court ordered the PA to produce Jabali for such a deposition.

If the PA had produced Jabali to be deposed plaintiffs would have questioned him regarding all topics relevant to the allegations in the Amended Complaint in this matter.

**INTERROGATORY NO. 8:**

State the factual basis for your contention that Muhammed Dahlan had an affiliation or relationship with Hamas, including, without limitation, your allegations that Muhammed Dahlan was "personally involved with the provision of material support to Hamas by the PA and PLO" (Dkt. #415 at 33), that Dahlan "had been operating in close association with Hamas terrorist leader Muhammed Dief [*Ungar*, 325 F. Supp. 2d at 64] and that "Muhammed Deif is the leader of the Hamas' terrorist wing." Dkt. # 415 at 33.

**ANSWER TO INTERROGATORY NO. 8:**

The PA's and PLO's policies vis-à-vis Hamas were carried out in practice and "in the field" by the heads of the PA's security services – including Muhammed Dahlan. As a commander of a PA security service, Dahlan had control and authority over certain territories in the West Bank and/or the Gaza Strip, over some of the Palestinian population of the West Bank and/or Gaza Strip, over weapons and materiel belonging to the PA and PLO and over PA funds and budgets, and he used that control and authority to provide Hamas and its operatives with material support and resources during the relevant period. Indeed, the PA and PLO could not have provided certain types of material support and resources to Hamas (including without limitation safe houses and weapons) without the participation and approval of Dahlan.

Plaintiffs' contention that Dahlan was operating in close association with Hamas terrorist leader Muhammed Dief is based contemporaneous news reports, as well as on Dahlan's own admission that he was sheltering Dief. *See* dkt. # 415, Exhibit J, ¶ 6, Appendix 4.

Plaintiffs' contention that Muhammed Deif was the leader of the Hamas' terrorist wing is based on numerous news reports and on dkt. # 415, Exhibit R.

**INTERROGATORY NO. 9:**

If you contend that you would have elicited deposition testimony from Muhammed Dahlan for presentation as evidence at a trial of this case, state the factual basis for your contention, including, without limitation, a detailed description of the testimony that you would have elicited from Muhammed Dahlan.

**ANSWER TO INTERROGATORY NO. 9:**

Plaintiffs contend that the PA was obligated to produce Muhammed Dahlan to testify at a deposition (which testimony plaintiffs would have been entitled to present as evidence at a trial of this case) prior to the entry of judgment in this action. The basis for this contention is the fact that the Court ordered the PA to produce Dahlan for such a deposition.

If the PA had produced Dahlan to be deposed plaintiffs would have questioned him regarding all topics relevant to the allegations in the Amended Complaint in this matter.

**INTERROGATORY NO. 10:**

State the factual basis for your contention that Amin al-Hindi was "personally involved with the provision of material support to Hamas by the PA and PLO." Dkt. # 415 at 34.

**ANSWER TO INTERROGATORY NO. 10:**

The PA's and PLO's policies vis-à-vis Hamas were carried out in practice and "in the field" by the heads of the PA's security services – including Amin al-Hindi. As a commander of a PA security service, al-Hindi had control and authority over certain territories in the West Bank and/or the Gaza Strip, over some of the Palestinian population of the West Bank and/or Gaza Strip, over weapons and materiel belonging to the PA and PLO and over PA funds and budgets,

and he used that control and authority to provide Hamas and its operatives with material support and resources during the relevant period. Indeed, the PA and PLO could not have provided certain types of material support and resources to Hamas (including without limitation safe houses and weapons) without the participation and approval of al-Hindi.

## INTERROGATORY NO. 11:

If you contend that you would have elicited deposition testimony from Amin al-Hindi for presentation as evidence at a trial of this case, state the factual basis for your contention, including, without limitation, a detailed description of the testimony that you would have elicited from Amin al-Hindi.

### ANSWER TO INTERROGATORY NO. 11:

Plaintiffs contend that the PA was obligated to produce Amin al-Hindi to testify at a deposition (which testimony plaintiffs would have been entitled to present as evidence at a trial of this case) prior to the entry of judgment in this action. The basis for this contention is the fact that the Court ordered the PA to produce al-Hindi for such a deposition.

If the PA had produced al-Hindi to be deposed plaintiffs would have questioned him regarding all topics relevant to the allegations in the Amended Complaint in this matter.

## INTERROGATORY NO. 12:

State the factual basis for any contention by you that the PA and/or the PLO knew or should have know that "Hamas and its operatives and agents maintained and operated a leadership command, organizational hierarchy and operational infrastructure including, *inter alia*, training facilities and depots for storage of weapons and explosives in territories controlled by defendants PA and PLO" [*See* Amended Complaint ¶ 14 (Dkt. # 41); *see also* Complaint ¶ 18 (Dkt. # 1)], and that "[a]t all times relevant hereto defendants PA and PLO and their officials,

employees and agents knew that defendant Hamas had committed hundreds of serious offenses

against the United States, including the murder of [several] U.S. citizens. . ., and that defendant

Hamas planned to continue committing such offenses, yet defendants PA and PLO openly and

consistently sheltered and received, relieved, comforted and assisted defendant Hamas and its

operatives and agents, within the meaning of 18 U.S.C. § 3, in order to hinder and prevent their

apprehension, trial, and punishment" and "provided defendant Hamas and its members with safe

haven, a base of operations, shelter, financial support, and other material support and resources."

Dkt. # 41, ¶ 34, 35, 41, see also Dkt. # 1, ¶ 40, 41.

[A fully responsive answer to this Interrogatory should include, without limitation, (a) a
detailed description of each circumstance in which defendants PA and PLO allegedly "sheltered,
received, relieved, comforted and assisted defendant Hamas and its operatives and agents," (b) a
detailed description of each circumstance in which defendants PA and PLO allegedly "provided
defendant Hamas and its members with safe haven, a base of operations, shelter, financial
support, and other material support and resources," and (c) the identify of all documents relating
to your contentions and allegations.]

## OBJECTIONS TO INTERROGATORY NO. 12:

1.    Plaintiffs object to this Interrogatory as unduly burdensome and as seeking

information that is irrelevant to defendants' Rule 60(b)(6) motion because it seeks information

relating to the facts underlying the allegations of the Amended Complaint that defendants intend

to use in an attempt to develop a meritorious defense. Such information is irrelevant to

defendants' Rule 60(b)(6) motion and unduly burdensome to produce because in this Circuit the

existence *vel non* of a meritorious defense is determined solely on the basis of defendant's

averments and not on the basis of evidence. *See Indigo America, Inc. v. Big Impressions, LLC*,

597 F.3d 1, 4 (1st Cir. 2010) ("Establishing the existence of a meritorious defense is not a

particularly arduous task. A party's averments need only plausibly suggest the existence of facts

which, if proven at trial, would constitute a cognizable defense.") (internal brackets and

quotation marks omitted). The information sought is also irrelevant and unduly burdensome to produce because a meritorious defense cannot be established by challenging the evidentiary strength of the plaintiff's case. *See Burrell v. Henderson*, 434 F.3d 826, 832 (6th Cir. 2006) ("When reviewing a motion for relief under Rule 60(b), the court is not permitted to consider the underlying strength of a plaintiff's claim."). Therefore, a defendant seeking to vacate a default is not permitted discovery from the plaintiff regarding the factual basis of the complaint. *See Sierra Foods, Inc. v. Haddon House Food Products, Inc.*, 1991 WL 95287 at *10 (E.D.Pa. 1991) (rejecting such a request on the grounds that both defendant's meritorious defense and plaintiff's complaint are assessed using a pleading standard, not a proof standard).

2.    Plaintiffs object to this Interrogatory because it seeks information within the exclusive knowledge and/or possession of the defendants that the plaintiffs sought to discover but defendants refused to provide prior to entry of judgment in this action.

3.    Plaintiffs object to this Interrogatory because it asks for an opinion or contention that relates to fact or the application of law to fact in respect to the underlying allegations of the action, despite the fact that defendants refused to provide any discovery regarding the underlying allegations of the action. Plaintiffs reserve the right, pursuant to Fed.R.Civ.P. 26 and 33(a)(2), to answer this Interrogatory at a later time, if their objections to this Interrogatory are overruled.

## ANSWER TO INTERROGATORY NO. 12:

On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

## INTERROGATORY NO. 13:

State the factual basis for your contention that defendants PA and PLO failed to comply with alleged demands and requests from Israel or the United States to take certain actions relating to Hamas, including, without limitation, your allegations that "[d]efendants PA and PLO

refused and/or ignored American and Israeli demands to take effective measures to prevent further terrorist attacks by defendant Hamas" (Dkt. # 41, ¶ 28, see also Dkt. #1, ¶ 34) and that "that "[o]n September 17, 1997, the Israeli Justice Ministry submitted to defendant PA a request for [Ibrahim Ghanimat's] arrest and extradition to Israel [but] [d]efendant PA has refused to honor this request, and continues to shelter Ibrahim Ghanimat," Dkt. # 41, ¶ 22, see also Dkt. # 1, ¶ 26.

[A fully responsive answer to this Interrogatory should include, without limitation, (a) the identity of all communications and documents relating to the alleged requests and demands, (b) the identity of the persons or persons at the Israeli Justice Ministry who allegedly submitted the request to the PA, and (c) the identify of the persons or persons at the PA who allegedly "refused to honor this request."]

## OBJECTIONS TO INTERROGATORY NO. 13:

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Interrogatory No. 12 above.

## ANSWER TO INTERROGATORY NO. 13:

On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

## INTERROGATORY NO. 14:

State the factual basis for your contention that "during the period relevant hereto, several members of defendant Hamas and other terrorist groups suspected of or charged with terrorist murders, including murders of U.S. citizens, whose surrender was requested by Israel, were provided salaries and employment by defendant PA as policemen and/or security officials in the various police, security and intelligence forces under the control of defendant PA," Dkt. # 41, ¶ 32, see also Dkt. #1, ¶ 38.

[A fully responsive answer to this Interrogatory should include, without limitation, the following information:  (a) the identity of all such "members of defendant Hamas and other terrorist groups," (b) the identity of documents relating to the alleged employment of such

persons by defendant PA and (c) the identify of all documents relating to the alleged payment of salaries to such persons.]

## OBJECTIONS TO INTERROGATORY NO. 14:

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Interrogatory No. 12 above.

## ANSWER TO INTERROGATORY NO. 14:

On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

## INTERROGATORY NO. 15:

State the factual basis for your contention that "[D]efendants PA and PLO, at all times relevant hereto, by and through their officials, employees and agents acting within the scope and course of their employment and agency, pursuant to the prior authorization and instructions of defendants PA and PLO and in furtherance of the goals and purposes of defendants PA and PLO, granted material and financial support to the families of members of defendant Hamas who had been captured or killed while carrying out acts of terrorist violence against Jewish civilians in Israel, Gaza, and the West Bank, thereby providing defendant Hamas and its members with strong financial incentive to continue to carry out violence and terrorism against such victims," Dkt. # 41, ¶ 33, see also Dkt. # 1, ¶ 39.

[A fully responsive answer to this Interrogatory should include, without limitation, (a) the identity and description of all communications and documents relating to the alleged "prior authorization and instructions of defendants PA and PLO" and (b) the identity of all documents relating to your contention.]

## OBJECTIONS TO INTERROGATORY NO. 15:

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Interrogatory No. 12 above.

## ANSWER TO INTERROGATORY NO. 15:

On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

## INTERROGATORY NO. 16:

State the factual basis for your contention that "[D]efendants PA and PLO and their officials, employees and agents solicited and advised defendants Hamas, [Abdel Rahman Ismail Abdel] Rahman Ghanimat, [Jamal Abdel Fatah Tzabich al] Hor, [Iman Mahmud Hassan Fuad] Kafishe, [Raed Fakhri Abu] Hamdiya, and Ibrahim Ghanimat to commit the acts attributed to those defendants [in the Plaintiffs Amended Complaint], and aided, abetted, authorized, ratified and participated in those acts," including, without limitation, a detailed description of each circumstance in which defendants PA and PLO allegedly "solicited and advised defendants Hamas, [Abdel Rahman Ismail Abdel] Rahman Ghanimat, [Jamal Abdel Fatah Tzabich al] Hor, [Iman Mahmud Hassan Fuad] Kafishe, [Raed Fakhri Abu] Hamdiya, and Ibrahim Ghanimat to commit the acts attributed to those defendants" and allegedly "aided, abetted, authorized, ratified and participated in those acts" Dkt. # 41, ¶ 36.

## OBJECTIONS TO INTERROGATORY NO. 16:

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Interrogatory No. 12 above.

## ANSWER TO INTERROGATORY NO. 16:

On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

## INTERROGATORY NO. 17:

State the factual basis for your contention that "[t]he acts and omissions of defendants PA and PLO described herein were committed by and through their officials, employees and agents acting within the scope and course of their employment and agency, with the authorization and ratification, and pursuant to the instructions of defendants PA and PLO and in furtherance of the

goals and purposes of defendants PA and PLO," including, without limitation, (a) an identification of each alleged "act and omission of defendants PA and PLO," (b) an identification of each such official, employee and agent," (c) a detailed description of each alleged act of "authorization and ratification," (d) an identification of each communication relating to or constituting such alleged "instructions of defendants PA and PLO," and (e) an identification of each document relating to or constituting such alleged goals and purposes of defendants PA and PLO" Dkt. # 41 ¶¶ 37, 80, and 83.

## OBJECTIONS TO INTERROGATORY NO. 17:

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Interrogatory No. 12 above.

## ANSWER TO INTERROGATORY NO. 17:

On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

## INTERROGATORY NO. 18:

State the factual basis for your contention that "at all times relevant hereto, [the PA and PLO], themselves and through their respective representatives, spokesmen and organs: repeatedly praised and lauded defendant Hamas and Hamas operatives who had engaged in acts of terrorism and violence against Jewish civilians and Israeli targets; praised, advocated, encouraged, solicited and incited for such terrorist acts; and threatened the further occurrence of such terrorist acts;" including, without limitation, an identification and detailed description of (a) each instance of "praising and lauding," each such alleged "act of terrorism and violence against Jewish civilians and targets," and each circumstance in which defendants PA and PLO allegedly "praised, advocated, encouraged, solicited and incited such terrorist acts" Dkt. # 41, ¶ 43, see also Dkt. # 1, ¶ 43.

## OBJECTIONS TO INTERROGATORY NO. 18:

Plaintiffs incorporate and re-allege objections 1, 2 and 3 as asserted in response to Interrogatory No. 12 above.

## ANSWER TO INTERROGATORY NO. 18:

On the basis of the objections above, plaintiffs decline to answer this Interrogatory.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on August 26, 2010, a true and genuine copy of the foregoing was sent by first class mail and electronic mail to Defendants' counsel of record listed below and hand delivered to Deming E. Sherman at the address below:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701

Dated: August 26, 2010

Plaintiffs-Judgment Creditors,
by their Attorney (as to objections)

David J. Strachman #4404
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com

Max Wistow (#0330)
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)