# Exhibit 8

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ESTATE OF YARON UNGAR, et al.

           Plaintiffs – Judgment Creditors

      v.                              3:05mc208 (PCD)

THE PALESTINIAN AUTHORITY, et al.

           Defendants – Judgment Debtors

## MEMORANDUM IN SUPPORT OF PLAINTIFFS-JUDGMENT CREDITORS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING SUBJECT-MATTER JURISDICTION AND FOR RELATED RELIEF

### Introduction

Following a hearing in this matter on July 30, 2010, this Court entered an order (dkt. # 201) lifting its prior stay on the motions to dismiss for lack of subject-matter jurisdiction filed by Becont Ltd. (dkt. # 87) and the firm of Dewey & LeBoeuf LLP ("Dewey") (which purports[1] to represent the Palestine Investment Fund) (dkt. # 97).

During that July 30 hearing, the Court repeatedly made clear that it intends to resolve the issue of its subject-matter jurisdiction as a threshold matter, before addressing any other issues. *See* Tr. 7/30/10 at 9:6-9; 11:17-12:1; 19:6-10; 23:4-14; 26:8-27:10; 27:15-17; 35-6-8; 40:7-8.

As explained below, the Plaintiffs-Judgment Creditors ("Ungars") are seeking to enforce their judgment against assets titled to the Palestine Investment Fund ("PIF") and Becont Ltd. ("Becont") on the grounds that the PIF and Becont are trusts established by Defendant-Judgment

---

[1] The question of who represents the PIF is disputed. *See* dkt. # 171 at 10-21. However, resolution of this question is irrelevant to the Court's subject-matter jurisdiction because if even, as the Ungars have shown, ownership, management and representation of the PIF has be transferred to the Ungars and their counsel (*id.*) the Court's subject-matter jurisdiction cannot be created by consent.

Debtor Palestinian Authority ("PA") to hold and invest assets of the PA, and that because the PA is both the settlor and the beneficiary of the PIF and Becont trusts, the assets held by PIF and Becont are subject to execution by judgment debtors of the PA.

Determining whether the PIF and Becont are, as the Ungars maintain, trusts capitalized by the PA of which the PA is both the settlor and the beneficiary will require the Court to make numerous factual determinations and, at least in respect to Becont, necessitate discovery.

The Ungars believe that as a matter of law, pursuant to the principles established in *Peacock v. Thomas*, 516 U.S. 349 (1996) and *Epperson v. Entertainment Express*, 242 F.3d 100 (2nd Cir. 2001) (the main precedents governing the ancillary subject-matter jurisdiction of federal courts to enforce judgments) federal courts have subject-matter jurisdiction to enforce judgments against assets titled to a trust of which the judgment debtor is both the settlor and beneficiary.

To date, however, no court has ruled on this threshold legal question.

If, contrary to the Ungars' position, as a matter of law federal courts lack subject-matter jurisdiction to enforce judgment against assets of a trust of which the judgment debtor is both the settlor and beneficiary, it would be extremely wasteful and inefficient for this Court to expend its resources determining whether – as a matter of fact – the PIF and Becont constitute such trusts.

Therefore, the Ungars bring this motion for partial summary judgment[2] establishing as a matter of law that this Court has subject-matter jurisdiction to enforce a judgment against assets of a trust of which the judgment debtor is both the settlor and beneficiary.

If this narrow legal issue is determined in the Ungars' favor, then the Court and the parties can and should proceed to litigate and determine the broader factual issues in dispute, i.e., whether the PIF and Becont are trusts of which the PA is both the settlor and beneficiary.

---

[2] As discussed below, a motion for partial summary judgment is the proper vehicle for resolving threshold legal issues.

However, if the Court finds as a matter of law that *Peacock* and *Epperson* do not permit a federal court to enforce a judgment against assets of a trust of which the judgment debtor is both the settlor and beneficiary, then the Ungars' enforcement proceedings before this Court should be dismissed for lack of subject-matter jurisdiction and the stay of enforcement entered on July 30, 2010 (dkt. # 202) should be lifted in order to permit the Ungars to initiate state court enforcement proceedings against the assets at issue.

## RELEVANT BACKGROUND

The Ungars are the orphaned children, parents, siblings and administrator of the estate of United States citizen Yaron Ungar, who was murdered along with his pregnant wife Efrat Ungar in a terrorist machine-gun attack on June 9, 1996, in Israel.

In March 2000, the Ungars filed suit against the PA, the PLO, Hamas and other defendants, in the United States District Court for the District of Rhode Island under the Antiterrorism Act ("ATA") 18 U.S.C. § 2331 *et seq.. Ungar et al. v. Palestinian Authority et al.,* Civil Action 00-105L (D.R.I.).

The PA and PLO retained former United States Attorney General Ramsey Clark and the firm of Edwards Angell to defend the suit, and filed repeated motions to dismiss on multiple grounds, as well as an interlocutory appeal, all of which were rejected. *See Ungar v. Palestinian Authority,* 153 F.Supp.2d 76 (D.R.I. 2001); *Ungar v. Palestinian Authority,* 228 F.Supp.2d 40 (D.R.I. 2002); *Ungar v. Palestinian Authority,* 215 F.R.D. 36 (D.R.I. 2003); *Ungar v. Palestinian Authority,* 2003 WL 21254790 (1st Cir. 2003); *Ungar v. Palestinian Authority,* 315 F.Supp.2d 164 (D.R.I. April 23, 2004).

Though the PA and PLO repeatedly invoked the authority of the Rhode Island federal court and the First Circuit in order to dismiss the suit, when their arguments were rejected they refused to answer the complaint or conduct any discovery.

Accordingly, on July 12, 2004, the Rhode Island federal court ordered entry of final judgment for the Ungars and against the PA and PLO, jointly and severally, in the amount of $116,409,123.00 in damages. *Ungar v. Palestinian Authority*, 325 F. Supp. 2d 15 (D.R.I. 2004).[3]

The PA and PLO appealed to the First Circuit, which affirmed the judgment, and a petition for certiorari was denied by the Supreme Court. *Palestine Liberation Organization v. Estate of Ungar* 402 F.3d 274 (1st Cir. 2005) *cert. denied* 126 S.Ct. 715 (2005).[4]

Upon entering final judgment, the Rhode Island federal court emphasized the importance that it attached to the judgment being honored and enforced:

> The PA and PLO … are responsible for and must bear the ultimate burden of providing compensation, which this Court fully acknowledges will never return to Plaintiffs the relationships and lives that existed prior to June 9, 1996. This Court hopes that in keeping with the ATA's purpose to deter acts of international terrorism, its judgment will "interrupt or at least imperil the flow of terrorism's lifeblood, money," and thus, prevent the PA and PLO from funding future terrorist acts such as the one that resulted in the Ungars' horrific deaths.

*Ungar*, 325 F. Supp. 2d at 25.

---

[3]  The Rhode Island court received testimony and evidence regarding plaintiffs' damages in the context of entering judgment against Hamas. At plaintiffs' request – to which the PA and PLO did not object – the court applied those same damages findings in entering judgment against the PA and PLO. See *Ungar*, 325 F. Supp. 2d at 24-25, 66-67.

[4]  The judgment has been registered in this Court pursuant to 28 U.S.C. § 1963.

Well over *six years* have passed since the federal court penned this powerful statement, but the PA and PLO have refused to satisfy the Ungars' judgment, and have informed the Ungars' counsel that they "will never pay" the judgment. This contumacious refusal is merely the encore to years of intentional delay created by the PA and PLO during the underlying suit. *Ungar*, 325 F. Supp. 2d at 26, 62 (finding that the PA and PLO took "deliberate actions to delay the completion of this litigation" and "sought to delay these proceedings as long as possible"). Likewise, courts in this Circuit have noted that the Ungars are faced with "an elusive… judgment debtor." *Ungar v. Palestinian Authority*, 412 F. Supp. 2d 328 (S.D.N.Y. 2006). *See also Estate of Ungar ex rel. Strachman v. Palestinian Authority*, 841 N.Y.S.2d 61, 65 (1st Dept. August 16, 2007) (Noting the Palestinian "Authority's documented history of engaging in dilatory tactics to plaintiffs' detriment in the underlying and other litigation").

Indeed, in light of the refusal of the PA and PLO to pay the judgment, the Rhode Island issued an injunction on May 5, 2005, prohibiting the PA and PLO from withdrawing or transferring any assets they may have in the United States. Exhibit A.

The refusal of the PA and PLO to honor the judgment harms not only the Ungars, but the interests of the United States:

> The legislative history of the ATA … reveal[s] this country's profound and compelling interest in combating terrorism at every level, including disrupting the financial underpinnings of terrorist networks. …
>
> Therefore, Congress has explicitly granted private parties the right to pursue common tort claims against terrorist organizations and those that provide material support or financing to terrorist organizations. Certainly, private tort actions directed at compensating victims of terrorism and thwarting the financing of terrorism vindicate the national and international public interest.

*Weiss v. National Westminster Bank, PLC*, 242 F.R.D. 33 (E.D.N.Y. 2007) (citation omitted).

5

On August 25, 2005, the Ungars caused a writ of execution issued by this Court to be served on Canaan Equity Offshore C.V., Canaan Equity II Offshore C.V., Canaan Equity III Offshore C.V., Canaan Offshore Management N.V. and Canaan Partners (collectively hereinafter: "Canaan") at their Rowayton offices.

The writ of execution levied on partnership interests in Canaan held under the names of the Palestine Investment Fund ("PIF") and "Becont Ltd. ("Becont").

The PIF is an incorporated trust established and capitalized by the PA, for the purpose of holding and managing the PA's assets and investments. The PIF is empowered to distribute funds back to the PA. *See* dkt. # 47 at 6-7; dkt. # 171 at 4-9; Exhibit A at § 9.

Thus, the PIF is a trust self-settled by the PA of which the PA is beneficiary, and the PIF is empowered to distribute trust assets to the PA.

Accordingly, the Ungars have initiated various enforcement proceedings against assets titled to the PIF, under the established rule (*see e.g. Restatement (Second) of Trusts* § 156(2); *Greenwich Trust Co. v. Tyson*, 129 Conn. 211, 219-220, 27 A.2d 166 (1942)) that the assets of a self-settled trust of which the settlor is also the beneficiary are subject to execution by judgment creditors of the settlor-beneficiary. Exhibit B at ¶¶ 14-22, 35-41; Exhibit C at ¶¶ 4, 40-47.

There is also abundant evidence that the investments in Canaan titled to Becont are subject to execution by the Ungars for the same reason.

It is indisputable that Becont and the PIF have co-mingled their funds. Thus, for example, in 2004, the PIF transferred over $1 million into Becont's account at Canaan. *See* Exhibit D.

Likewise, according to a wire instructions list prepared by Canaan, the dividends paid by Caanan to PIF were paid into a Becont account at Interaudi Bank in New York. *See* Exhibit E.

6

Furthermore, records produced by Canaan indicate that the investments now held under the names of the PIF and Becont were originally held by other holding companies known as Darnel, Dauphin, Crouper and Whitecap. *See* Exhibits F and G.

The investments held by Darnel, Dauphin, Crouper and Whitecap were then divided up and registered under the names of the PIF and Becont. *See id.*

Thus, the investments at Canaan currently listed in the name of Becont and the PIF all originated from the same group of mysterious holding companies.

Clearly, then, since all the assets originated from the same sources, there is a strong basis to presume that the assets held by Becont, like those held by PIF, are part of the investment portfolio of the Palestinian Authority.

Additionally, the PIF and Becont assets are being managed by the same person – Walid Najjab, who served for a period as CEO of the PIF. *See* Exhibit G and Exhibit H at ¶ 9.

Indeed, Becont has admitted that it is merely an investment vehicle (i.e. a holding company) for other persons, but baldly claims that Becont's funds are not owned by judgment debtors PA or PLO – and refuses to identify who *does* own the assets. *See* dkt. # 90.

In light of the above, in order to establish the ownership and status of the assets titled to Becont, the Ungars served Becont with a notice of deposition for Mr. Najjab and interrogatories. *See* Exhibits I and J.

Becont responded by seeking a protective order. Dkt. # 209.

## ARGUMENT

I.   **Assets of a Trust of Which the Judgment Debtor Is Both Settlor and Beneficiary Are Subject to Execution by Judgment Creditors of the Settlor-Beneficiary**

It is well established in Connecticut[5] and in all or virtually all other jurisdictions, that trusts of which the settlor is also the beneficiary – i.e. self-settled spendthrift trusts – are invalid as violative of public policy, and that the assets titled to such trusts are therefore subject to execution by judgment creditors of the settlor-beneficiary:

> A trust which names the settlor as a beneficiary is invalid to the extent of the settlor's beneficial interest. 1 *Restatement (Second) of Trusts* § 156(2) at 326 (1959) ("Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit"); 2 A. Scott & W. Fratcher, *Law of Trusts* § 156, at 168 (4th ed. 1989) ("It is against public policy to permit the owner of property to create for his own benefit an interest in that property that cannot be reached by his creditors"). See also, 4 G. Bogert, *Law of Trusts and Trustees*, Rev.2d ed. § 233 (2d ed. 1966) ("If a settlor creates a trust for his own benefit and inserts a spendthrift clause, it is void as far as then existing or future creditors are concerned, and they can reach his interest under the trust"); E. Griswold, *Spendthrift Trusts*, § 345 at 405-406 (1936) ("A person cannot create a spendthrift trust for himself which shall be effective against the rights of ... creditors") (footnote omitted). Those principles have been adopted in nearly every jurisdiction. Anne S. Emanuel, *Spendthrift Trusts: It's Time to Codify the Compromise*, 72 Neb.L.Rev. 179, 190 (1993); Erwin N. Griswold, *Spendthrift Trusts, Created in Whole or in Part for the Benefit of the Settlor*, 44 Harv.L.Rev. 203, 206 n. 15 (1930). The question is whether Connecticut courts are in accord.

> The Connecticut Supreme Court, citing Scott on Trusts and the *Restatement of Trusts*, and noting that virtually all other jurisdictions follow the same rule, has held

---

[5] Connecticut law governs this proceeding by operation of Fed.R.Civ.P. 69, which provides in relevant part that the "procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located."

> The attempt of a man to place his property in trust for his own benefit under limitations similar to those which characterize a spendthrift trust is a departure from the underlying basis for the creation of such trusts. That aside, the public policy which sustains such trusts when created for the benefit of another is, where the settlor is himself the beneficiary, overborne by other considerations ... To admit the validity of such trusts would open too wide an opportunity for a man to evade his just debts to be permissible unless sanctioned by statutory enactment. This is the reason why the overwhelming weight of authority holds ineffective attempts to establish them....

*Greenwich Trust Co. v. Tyson*, [129 Conn. 211, 219-220, 27 A.2d 166 (1942)] (citations omitted). *Cantor v. Department of Income Maintenance*, 40 Conn.Supp. 554, 557, 531 A.2d 608 (1985), *aff'd*, 12 Conn.App. 435, 531 A.2d 606 (1987) noted:

> Comment (e) to ... section [156(2)] of the *Restatement* provides: 'Discretionary trust for the settlor. Where by the terms of the trust a trustee is to pay the settlor or apply for his benefit as much of the income or principal as the trustee may in his discretion determine, his transferee or creditors can reach the maximum amount which the trustee could pay to him or apply for his benefit.'... The Restatement principle is adopted in *Greenwich Trust Co. v. Tyson*....

(emphasis added). The *Cantor* court essentially described the trust provisions here, i.e., the trustees are to pay to the debtor-settlor all of the income and as much of the principal as is deemed advisable in their discretion. Accordingly, the spendthrift provisions of these trusts are not enforceable under applicable Connecticut law.

*In re Brooks*, 217 B.R. 98, 103-104 (Bkrtcy.D.Conn. 1998). *See* also e.g. In re Robbins, 211 B.R. 2, 4 (Bkrtcy.D.Conn. 1997) ("Connecticut public policy denies the validity of self-settled trusts where a person places his property in trust for his own benefit under limitations similar to those which characterize a spendthrift trust.") (internal quotation marks omitted); *Waters v. Roach*, 2006 WL 2808382 at *3 (Conn.Super. 2006) ("The Connecticut Supreme Court in *Greenwich*

*Trust Company v. Tyson*, 129 Conn. 211, 27 A.2d 166 (1942) first stated Connecticut's strong public policy prohibiting self-settled spendthrift trusts."); *Neurological Associates v. Scagliotti Family Trust*, 1999 WL 1244236 (Conn.Super. 1999) (same); *Yale University School of Medicine v. Scagliotti Family Trust*, 1999 WL 1244233 (Conn.Super. 1999) (same).

As discussed, *supra*, the Ungars maintain that the PIF is a self-settled spendthrift trust established by the PA, and that Becont – which has incontrovertibly commingled funds with the PIF – holds PIF assets and/or is also a self-settled spendthrift trust established by the PA.[6]

Accordingly, if this Court has subject-matter jurisdiction, the Ungars are entitled to enforce their judgment against the investments in Canaan titled to the PIF and Becont.

## II.    Federal Courts Have Ancillary Subject-Matter Jurisdiction to Enforce Judgments Against Assets Held by Settlor-Beneficiary Trusts

The leading Supreme Court case relating to the scope of a federal court's ancillary subject-matter jurisdiction to enforce a judgment is *Peacock v. Thomas*, 516 U.S. 349, 116 S. Ct. 862 (1996) and the leading Second Circuit case interpreting and applying *Peacock* is *Epperson v. Entertainment Express.* 242 F.3d 100 (2nd Cir. 2001).

In *Epperson*, the Second Circuit explained that *Peacock* established a simple bright-line rule: As long as the judgment creditor is claiming only that the asset titled to the third party belongs to the judgment debtor and not that the third party is liable for the judgment the court has ancillary jurisdiction. *Epperson*, 242 F.3d at 103-107. *See also UFCW Local 174 Commercial Health Care Fund v. Homestead Meadows Foods Corp.*, 425 F.Supp.2d 392, 393 (S.D.N.Y.2005) ("Because the plaintiffs seek to collect a judgment issued by this Court by

---

[6] Nothing herein should be construed as derogating from the Ungars' right to assert in state court other theories not within the subject-matter jurisdiction of this Court (e.g. alter ego or veil-piercing) if this Court finds that it does not have subject-matter jurisdiction over the Ungars' enforcement proceedings.

*tracing the judgment debtor's assets into the hands of a third party*, there is subject matter jurisdiction over this action.") (emphasis added).[7]

Clearly, the rule that assets titled to self-settled spendthrift trusts are subject to execution by judgment creditors of the settlor-beneficiary does not render the *trust itself* liable for the judgment. Rather, it simply allows judgment creditors to *reach assets of the settlor-beneficiary/judgment creditor* in the hands of a third party – i.e. in the hands of the trust. *See generally Greenwich Trust Co. v. Tyson*, 129 Conn. 211, 219-220, 27 A.2d 166 (1942); *Restatement (Second) of Trusts* § 156(2).

Accordingly, this Court has subject-matter jurisdiction over the Ungars' enforcement proceedings against the PIF and Becont under the theory that the PIF and Becont constitute and/or hold assets of self-settled spendthrift trusts of judgment-debtor PA.

**III.    Entry of Partial Summary Judgment (or Summary Judgment) Is Appropriate**

Summary judgment "is especially appropriate where the issues in dispute are purely legal." *Brown v. Medtronic*, 852 F.Supp. 717, 718 (S.D.Ind. 1994). *See also e.g. Walsh v. U.S.*, 31 F.3d 696, 698 (8th Cir. 1994) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); *Tri-State Mint, Inc. v. Riedel Environmental Services*, 29 F.3d 424, 426 (8th Cir. 1994) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); *Hulmes v.*

---

[7] *See also Aaron v. Mattikow*, 225 F.R.D. 407, 415 (E.D.N.Y. 2004) (holding that ancillary action by judgment creditor to reach stock titled to judgment debtor's wife "is proper under both *Peacock* and *Epperson*, for this Court's exercise of ancillary jurisdiction" and denying motion to dismiss for lack of subject-matter jurisdiction); *Securities & Exchange Comm'n v. Antar,* 120 F. Supp. 2d 431, 440 (D.N.J. 2000) (holding a proceeding seeking "to reach assets belonging to the judgment debtor but found in the hands of" third parties is "is exactly the sort of claim approved in *Peacock*"); *Merrell v. Miller*, 1998 WL 329264, at * 2 (E.D. Va. 1998) (permitting claim to proceed on basis of *Peacock* since "plaintiff does not allege that he should be able to satisfy his judgments by reaching Ms. Deal's assets or Ms. Locher's assets; rather, he alleges that the assets in question rightly belong to defendant Miller.").

*Honda Motor*, 924 F.Supp. 673 (D.N.J. 1996) (motion presenting only questions of law is ripe for summary adjudication).

The question of whether federal courts have subject-matter jurisdiction to enforce judgments against assets titled to a trust of which the judgment debtor is both the settlor and beneficiary is obviously a purely legal question.

If the Ungars' position is correct, then partial summary judgment establishing that the Court has subject-matter jurisdiction should enter. If the Court finds the Ungars' position incorrect, then it can and should enter summary judgment dismissing the Ungars' enforcement proceedings for lack of subject-matter jurisdiction.

This, the Ungars' motion for partial summary judgment is well-founded and appropriate.

## IV.    The Motions to Dismiss and for a Protective Order Should Be Stayed Pending Resolution of This Motion

During the July 30, 2010, hearing in this matter, the Court made crystal clear that it would determine its own subject-matter jurisdiction before considering any other issue. *See* Tr. 7/30/10 at 9:6-9; 11:17-12:1; 19:6-10; 23:4-14; 26:8-27:10; 27:15-17; 35-6-8; 40:7-8.

Indeed, it is basic that unless and until it determines that it has subject-matter jurisdiction, the Court lacks authority to consider any other issue in dispute.

Dewey (which purports to represent the PIF) and Becont will no doubt dispute that, as a factual matter, the PIF and Becont constitute self-settled trusts of the PA. It would be wasteful in the extreme for this Court to delve into this factual thicket before determining whether, as a matter of law, it has subject-matter jurisdiction over enforcement of judgments against the self-settled trust of a judgment debtor, particularly since in respect to Becont discovery is needed in order to determine its precise status.

Therefore, the Court should stay the motions to dismiss filed by Dewey and Becont, as well as Becont's motion for a protective order, pending the disposition of the instant motion.

**V.      If the Court Denies the Instant Motion It Should Dismiss the Ungars' Enforcement Proceedings for Lack of Subject-Matter Jurisdiction and Lift Its Stay Order**

If the Court finds that it lacks subject-matter jurisdiction over enforcement of judgments against the self-settled trust of a judgment debtor it should dismiss the Ungars' enforcement proceedings for lack of subject-matter jurisdiction.

In that case, the Court should also vacate its July 30 2010 order barring the Ungars from pursuing state court enforcement proceedings pending further order of the Court. Dkt. # 202.

Indeed, during the July 30 hearing the Court expressly stated that "if there is no jurisdiction here ... that would, in effect, eliminate the stay, and you could proceed to your heart's content in whatever Court you wished." Tr. 7/30/10 at 9:9-12. *See also id.* at 27:7-9 ("if there was no subject matter jurisdiction, then retroactively, that would vitiate the stay.") and 40:5-8 "for the purpose of perpetuating the effectiveness of the stay, the jurisdictional question that's been raised should be resolved."

In other words, a finding that this Court has no subject-matter matter jurisdiction would automatically "eliminate the stay" and "vitiate the stay."

Moreover, counsel for Canaan, which sought and obtained the stay in the first place, has explicitly conceded that "if the Court ultimately concludes that it has no subject matter jurisdiction, then certainly, the Plaintiffs ... can, if they wish, proceed with their State Court proceeding at that point." *Id.* at 6:1-5.

Thus, if this Court issues a decision finding that it has no subject-matter jurisdiction, it should include in that decision an order vacating the stay.

**WHEREFORE**, the instant motion should be granted.

Plaintiffs- Judgment Creditors,
by their Attorneys,

/s/ David J. Strachman
David J. Strachman
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com

Stephen P. Wright
Harlow, Adams & Friedman, P.C.
300 Bic Drive
Milford, CT 06460
(203) 878-0661
(203) 878-9568 (fax)
spw@quidproquo.com

Robert J. Tolchin
JAROSLAWICZ & JAROS, LLC
225 Broadway, 24th floor
New York, New York 10007
(212) 227-2780
rjt@tolchinlaw.com

## CERTIFICATION OF SERVICE

I hereby certify that on September 13, 2010 a true copy of the within memorandum was filed electronically via the ECF system which served all counsel of record.

/s/ David J. Strachman

14