UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

|   |   |
|---|---|
| THE ESTATE OF YARON UNGAR, et al., | ) |
| Plaintiffs, | ) |
| v. | ) C.A. No. 00-105L |
| THE PALESTINIAN AUTHORITY, et al., | ) |
| Defendants. | ) |

### DEFENDANT THE PALESTINE LIBERATION ORGANIZATION'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR ENTRY OF A PROTECTIVE ORDER REGARDING PLAINTIFFS' NOTICE OF TAKING THE DEPOSITION OF AHMED QUREI

Defendant The Palestine Liberation Organization's ("PLO's") Motion for Entry of a Protective Order Regarding Plaintiffs' Notice of Taking the Deposition of Ahmed Qurei ("Motion") demonstrated that Mr. Qurei does not possess any knowledge relevant to the matters at issue, that the purported subjects of the deposition are not properly the subject of pre-hearing discovery, and that Mr. Qurei is not subject to deposition by notice pursuant to Rule 30(b)(1). The Motion also explained why the Plaintiffs' noticed location and proposed deposition procedure are unreasonable under the circumstances.

Plaintiffs recognize, and do not challenge, defense counsel's understanding about Mr. Qurei's lack of knowledge about the issues of relevance to this case. Nonetheless, they argue that they should depose Mr. Qurei -- a 73-year-old man who has no involvement in decision-making as to this case -- so that they can confirm this. They offer nothing to suggest he has any such knowledge or information, not one document, statement, or scrap of information. Instead, because a prime minister who served subsequently to Mr. Qurei was tasked with managing the

1107750.6

litigation, Plaintiffs suppose that so too Mr. Qurei must have been tasked with this duty. But, in this superficially reasonable supposition, Plaintiffs are wrong. The fact is, and the record in this case reflects, that the Office of the Prime Minister for The Palestinian Authority ("PA") was not assigned responsibility for managing U.S. litigation until well after Mr. Qurei left office. In a declaration filed nearly three years ago, long before any issue of Mr. Qurei's knowledge arose, Defendants demonstrated that the Prime Minister's Office was not tasked with authority for this litigation until early 2007.

After failing to show any reason to believe that this deposition would serve any legitimate purpose, Plaintiffs then posit that the PLO is "collaterally estopped" from arguing that Mr. Qurei is not subject to deposition by notice because of a Magistrate Judge's decision in another case that was neither affirmed nor overruled by the district court. In so arguing, Plaintiffs do not address the distinguishing facts and circumstances that the PLO explained are present here that were not present in the *Saperstein* matter. Finally, Plaintiffs re-state their argument made in a prior brief that, for the purposes of deposition location, the PLO should be treated as a counterclaim plaintiff and forced to produce Mr. Qurei for deposition in Rhode Island, thousands of miles from his residence in the West Bank.

Plaintiffs' assertions that Mr. Qurei must know something relevant to this case are based entirely on the fact he was formerly Prime Minister. At no point in their brief do Plaintiffs present other information suggesting he possesses any knowledge concerning Defendants' default in this case or the timing of their vacatur motion.

In sum, Plaintiffs' Opposition[1] fails to provide this Court with a sound basis for compelling the PLO to produce Mr. Qurei, an individual lacking any relevant knowledge, for deposition in Rhode Island.

## ARGUMENT

### I. AHMED QUREI DOES NOT POSSESS ANY INFORMATION RELEVANT TO ANY ISSUE BEFORE THIS COURT FOR DETERMINATION AT THE JANUARY 18, 2011 HEARING

Plaintiffs claim that, even if Mr. Qurei "had no authority over litigation and has no knowledge of Defendants' litigation policies" as Prime Minister of the PA, *see* Dkt. No. 554 at 4, the PLO should nevertheless be required to produce him for deposition so that Plaintiffs can examine him about "the policies underlying Defendants' failure to move for vacatur and/or the identities of those persons who had such authority and/or made the decisions" and why, as Prime Minister, Mr. Qurei did not know about this case and Defendants' litigation policies. *Id.* Plaintiffs thus contend that they are entitled to compel the PLO to produce Mr. Qurei for a deposition about what he did not know and why he did not know it. Just as they have no reason to believe Mr. Qurei managed the litigation, Plaintiffs also have no reason to believe he would know why he was not so tasked. This is a waste of time, especially when the record is clear that management of the litigation was not a responsibility ever granted to Mr. Qurei.[2]

---

[1] Plaintiffs have a disappointing habit of reacting to Defendants' discovery motions with an opposition also captioned as a motion of their own. This approach lets them seek to have the last word on every issue, but it also leads to duplicative filings, unnecessary delay, and needless procedural complexity. Defendants would move to strike the unnecessary motions, but that would only exacerbate the problem. Instead, Defendants separately will file a one-page opposition to Plaintiffs' superfluous filings.

[2] As explained in its original Motion, the PLO does not concede that the willfulness of their default or the timing of their motion to vacate constitute issues properly the subject of pre-hearing discovery. Dkt. No. 529 at 10-12.

Plaintiffs' only support for their view that Mr. Qurei must possess some relevant information concerns the simple fact of his position as Prime Minister, which Plaintiffs describe as "second in command" of the PA government. Dkt. No. 554 at 4. Because current Prime Minister Salam Fayyad received authority to oversee litigation in the United States against the PA and PLO, Plaintiffs surmise that it is "reasonable to assume" that Mr. Qurei had similar authority "or could have obtained it" during his tenure in the position. *Id.* at 10. However, Plaintiffs fail to recognize that U.S. litigation against Defendants was always an issue within the purview of the PA President's Office and not overseen by the Prime Minister's Office. Indeed, Prime Minister Fayyad's authority to deal with pending U.S. litigation originated with President Mahmoud Abbas, who delegated that duty to him in early 2007. *See* Exh. 1 (Dec. 18, 2007 Letter from President Abbas to U.S. Courts).

Ahmad Abdel-Rahman, the political advisor to President Abbas, explained this tasking in a declaration filed nearly three years ago, well before Plaintiffs raised the idea of Mr. Qurei's deposition. Mr. Abdel-Rahman stated that it was only at the end of 2006 and early 2007 (after Prime Minister Qurei had left his position) that the Office of the President undertook steps to create an institutional framework for responding comprehensively to the cases pending in the United States. *See* Exh. 2 (Dec. 20, 2007 Declaration of Ahmad Abdel-Rahman) at ¶ 12. This effort culminated with President Abbas deciding to place authority for the cases in the hands of Prime Minister Fayyad. *Id.* at ¶ 13. Prior to that, responsibility, to the degree it was held, resided in the Office of the President. *Id.* at ¶¶ 3, 5. Mr. Abdel-Rahman's declaration, submitted years before Plaintiffs' issued their deposition notice of Mr. Qurei to the PLO, demonstrates conclusively that Mr. Qurei had no authority for this case or any other litigation against the Palestinian government during his time as Prime Minister.

Plaintiffs therefore seek to compel the PLO to produce Mr. Qurei to sit for deposition based on a false supposition. The Office of the President did not delegate U.S. litigation duties to the Prime Minister until 2007, well after Mr. Qurei had left the Palestinian government. Neither the PLO nor Mr. Qurei should be forced to participate in a burdensome, costly deposition when the endeavor cannot yield information relevant to issues before this Court at the January 18, 2011 hearing.

Plaintiffs do not argue that Mr. Qurei possesses any relevant information by virtue of his current position as a member of the PLO Executive Committee. Rather, Plaintiffs attempt to secure Mr. Qurei's deposition through his current position with the PLO in order to depose him concerning issues they believe he should be knowledgeable about through his former position with the PA. The PLO has already explained, however, that "only a party may be compelled to give testimony pursuant to a simple notice of deposition." 7 Moore's Federal Practice and Procedure § 30.03[2] (2010). Accordingly, for the PLO to be deposed via Rule 30(b)(1) through Mr. Qurei, he must be considered an "alter ego" of the party PLO. Yet Mr. Qurei's knowledge *qua* the PLO since his August 2009 appointment is concededly irrelevant to the issues in this litigation. Courts have repeatedly limited the scope of depositions of corporate officials to their unique and relevant "corporate" knowledge in similar circumstances. See Dkt. No. 529 at 19-21.

## II. EVEN IF PLAINTIFFS WERE ENTITLED TO RECEIVE DISCOVERY ON WILLFULNESS AND TIMING ISSUES, THEY SHOULD SEEK THE INFORMATION THROUGH OTHER DISCOVERY METHODS PURSUANT TO RULE 26(c)(1)(C)

Defendants have demonstrated that a deposition of Mr. Qurei would not be a productive or useful endeavor both because the sought-after deposition concerns irrelevant issues and because Mr. Qurei possesses no relevant information about those issues in any event. However, even if this Court were to find that the willfulness of Defendants' default or the Defendants'

5

alleged failure to move to vacate timely are relevant, Mr. Qurei's deposition would still be wasteful and unnecessary in light of Plaintiffs' additional attempts to obtain discovery on these same issues.

Pursuant to Federal Rule of Civil Procedure 26(c)(1)(C), courts may "prescribe[e] a discovery method other than the one selected by the party seeking discovery." Here, Plaintiffs have propounded written discovery requests seeking documents and Rule 30(b)(6) notices seeking testimony concerning both the willfulness of Defendants' default and the timing of Defendants' motion to vacate.[3] In light of this additional discovery, there is no reason for the Court to compel a septuagenarian residing in the West Bank who possesses no relevant knowledge to travel to Rhode Island for deposition. The burden and huge inconvenience this would place on both Mr. Qurei and the PLO far outweighs any potential benefit of such a deposition.

Defendants have filed a motion for protective order with respect to Plaintiffs' Rule 30(b)(6) Notices arguing that deposition topics seeking testimony from the PA and PLO concerning the willfulness of Defendants' default and timeliness of Defendants' vacatur motion are irrelevant and should not be allowed. *See* Dkt. No. 549 at 11-12, 15-18. However, if this Court finds that Plaintiffs may take discovery on these issues, efficiency and common sense suggest that the PA and PLO should produce documents and/or provide Rule 30(b)(6) designees

---

[3] For example, Request Nos. 3, 4, 5, 8, 9, 12, and 13 -- comprising 120 of the 205 requests in Plaintiffs' Third Requests -- predominantly seek material that could only be relevant to the willfulness of the default and/or the timing of the vacatur motion. Dkt. No. 549, Exh. 6 (Plaintiffs' Third Request for Production of Documents) at 3-28. Moreover, Plaintiffs' Rule 30(b)(6) Notices to the PA and PLO include numerous deposition topics that appear to relate exclusively to the willfulness of Defendants' default and/or the timeliness of Defendants' Rule 60(b)(6) Motion to Vacate. *See* Dkt. No. 549, Exhs. 1 and 2 (Plaintiffs' Rule 30(b)(6) Notices of Deposition to the PA and PLO, respectively) at PA Topic Numbers 2(a-j), 3(a-c), 4(a-k), 5(a-f), 7(i), 8(a-e), 9(a-k), 10(a-m), 12(a-h) and 13(a-h), PLO Topic Numbers 2(a-k), 3(a-c), 4(a-k), 5(a-f), 7(i), 8(a-e), 9(a-h), 10(a), 12(a-h) and 13(a-f).

to testify about these matters rather than transporting Mr. Qurei to Rhode Island so that he can illuminate nothing regarding them.

### III. PLAINTIFFS FAIL TO ADDRESS THE SUBSTANCE OF DEFENDANT'S RULE 30(b)(1) ARGUMENTS AND OVERLY RELY ON AN UNAFFIRMED MAGISTRATE JUDGE'S DECISION

The PLO also explained in its Motion why the Court should preclude Plaintiffs from taking the deposition of Ahmed Qurei based on the text of Rule 30(b)(1) and the fact that Mr. Qurei is not an "officer" of the PLO under the legal analysis properly applied to unincorporated associations such as the PLO. *See* Dkt. No. 529 at 12-21. In response, Plaintiffs fail to substantively address the PLO's arguments and instead rely upon a Magistrate Judge's decision in another court and claim that the PLO is "collaterally estopped" from making this argument.

As a matter of law, "[c]ollateral estoppel may be applied where (1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment." *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 770 (1st Cir. 2010) (internal quotation and citation omitted). The PLO is not collaterally estopped from presenting any arguments to this Court with respect to Mr. Qurei based on Magistrate Judge O'Sullivan's decision in the *Saperstein* matter for two fundamental reasons. First, the PLO filed Rule 72 objections to the Magistrate Judge's order concerning Mr. Qurei that were never ruled upon by the district court. These objections were mooted by Mr. Qurei's reluctant agreement to sit for deposition, but the PLO preserved its arguments for appeal. Therefore, contrary to Plaintiffs' assertions, the Magistrate Judge's decision is not a necessary intermediate finding of the U.S. District Court for the Southern District of Florida, which did not reach a final determination on the Rule 30(b)(1) matters or issue a valid and binding overall judgment in the case. Indeed, even if the decision could be considered a final determination of

the issue, collateral estoppel still could not apply because the discovery decision was not "essential to the judgment" for the simple reason that there has been no final judgment.

Second, as the PLO explained in its opening brief, Magistrate Judge O'Sullivan's decision is distinguishable from the situation facing this Court. Dkt. No. 529 at 16 n.4. Indeed, in finding that Mr. Qurei was subject to deposition by Rule 30(b)(1) notice to the PLO, Magistrate Judge O'Sullivan made two distinctions between the circumstances in *Saperstein* and those in *Stone v. Morton Int'l, Inc.*, 170 F.R.D. 498 (D. Utah 1997), with one of those distinctions particularly relevant here. First, Magistrate Judge O'Sullivan found that the cost and convenience issue discussed in *Stone* was not present in *Saperstein* because "the plaintiff has agreed to take Mr. Qurei's deposition at a mutually agreeable location in East Jerusalem." *See* Dkt. No. 529, Exh. 10 at 7. Here, however, Plaintiffs have insisted upon taking Mr. Qurei's deposition thousands of miles from his residence, which would greatly inconvenience both Mr. Qurei and the PLO. Second and more importantly, Magistrate Judge O'Sullivan found that Mr. Qurei was, for the purposes of the *Saperstein* case, "a particularly knowledgeable person about matters at issue in the litigation." *Id.* (quoting *Stone*, 170 F.R.D. at 501). The Magistrate Judge made this finding in the context of Mr. Qurei's purported knowledge about Defendants' finances, which contributed to his decision that Mr. Qurei should be produced for deposition. In contrast, Mr. Qurei lacks knowledge about any matters at issue before this Court relating to the January 18 evidentiary hearing. Accordingly, Defendant's motion for a protective order should be granted.

## IV. PLAINTIFFS FAIL TO JUSTIFY THEIR UNREASONABLE PROPOSED LOCATION AND DEPOSITION PROCEDURE

Despite its belief that any deposition of Ahmed Qurei would be both wasteful and contrary to properly applied discovery rules, out of an abundance of caution the PLO in its opening brief provided the Court with ample reason to provide protection concerning the

8

location and procedure for any deposition of Mr. Qurei that may occur. *See* Dkt. No. 529 at 21-24. The PLO explained that Mr. Qurei should not be forced to travel from his residence in the West Bank to Rhode Island to testify about matters concerning which he does not possess any meaningful information, and, in light of the parties' disputes about the appropriateness of the deposition and Mr. Qurei's prior experience in the *Saperstein* case, the Court should appoint a United States judge or special master to travel to East Jerusalem and preside over the proceedings if any take place.

Plaintiffs again claim that Defendants should be treated as plaintiffs for the purposes of deposition location, but simply cite the same case that the PLO distinguished in its first brief. *See* Dkt. No. 554 at 12 (citing *Continental Federal Sav. & Loan Ass'n v. Delta Corp. of America*, 71 F.R.D. 697, 700 (W.D. Okl. 1976) (involving a defendant bringing a permissive counterclaim)). Here, Mr. Qurei resides in the West Bank and neither Defendant has filed a permissive counterclaim of any kind. The PLO and the PA seek to simply litigate their defenses in good faith and do not affirmatively wish to avail themselves of this forum in any way. Thus, Plaintiffs' analogy fails. Accordingly, should this Court decide that the PLO must produce Mr. Qurei for deposition, the Court should order that the deposition occur in East Jerusalem and be presided over by a judge or special master.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Entry of a Protective Order Regarding Plaintiffs' Notice of Taking the Deposition of Ahmed Qurei should be granted.

Respectfully submitted,

Dated: October 8, 2010

/s/ Mark J. Rochon
Mark J. Rochon (D.C. Bar #376042)
Admitted *pro hac vice*
Richard A. Hibey (D.C. Bar #74823)
Admitted *pro hac vice*
Brian A. Hill (D.C. Bar #456086)
Admitted *pro hac vice*
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
mrochon@milchev.com
rhibey@milchev.com
bhill@milchev.com

Deming E. Sherman (#1138)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, Rhode Island 02903
Tel. (401) 274-9200
Fax. (401) 276-6611
dsherman@eapdlaw.com

*Attorneys for the Palestinian Authority and the Palestine Liberation Organization*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 8th day of October, 2010, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to:

>David J. Strachman
>McIntyre, Tate & Lynch, LLP
>321 South Main Street, Suite 400
>Providence, RI 02903
>Djs@mtlhlaw.com
>
>Max Wistow
>Wistow and Barylick Incorporated
>61 Weybosset Street
>Providence, RI 02903
>mwistow@wistbar.com
>
>*Attorneys for Plaintiffs*

/s/ Mark J. Rochon