1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF RHODE ISLAND

3

4

5    * * * * * * * * * * * *    C.A. NO. 00-105L
     EFRAT UNGAR, et al       *
6                             *
     VS.                      *    SEPTEMBER 21, 2010
7                             *    2:03 P.M.
     THE PALESTINIAN          *
8    LIBERATION ORGANIZATION,*
     et al                    *    PROVIDENCE, RI
9                             *
     * * * * * * * * * * * *

10

11

12          BEFORE THE HONORABLE RONALD R. LAGUEUX

13                      SENIOR JUDGE

                    (Motion to Intervene)

14

15

16

17

     **APPEARANCES**:

18

19   FOR THE PLAINTIFFS:    DAVID J. STRACHMAN, ESQ.
                            McIntyre Tate & Lynch LLP
20                          321 South Main Street
                            Suite 400
21                          Providence, RI 02903

22                          MAX WISTOW, ESQ.
                            Wistow & Barylick Incorporated
23                          61 Weybosset Street
                            Providence, RI  02903

24

25

```
 1    FOR THE DEFENDANTS,
      PA and PLO:              DEMING E. SHERMAN, ESQ.
 2                             Edwards Angell Palmer & Dodge LLP
                               2800 Financial Plaza
 3                             Providence, RI 02903

 4    FOR THE INTERVENOR:      CHARLES L. KERR, ESQ.
                               Morrison & Foerster LLP
 5                             1290 Avenue of the Americas
                               New York, NY  10104-0050
 6
                               JOSEPH V. CAVANAGH, JR., ESQ.
 7                             Blish & Cavanagh LLP
                               30 Exchange Terrace
 8                             Providence, RI  02903

 9
      Court Reporter:          Debra D. Lajoie, RPR-FCRR-CRI-RMR
10                             One Exchange Terrace
                               Providence, RI 02903
11
                       Proceeding reported and produced by
12                         computer-aided stenography

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          21 SEPTEMBER 2010 -- 2:03 P.M.

2          THE COURT:  Good afternoon, everyone.

3          The matter before the Court is the Estate of

4     Unger v. The Palestinian Authority and others.  It's

5     Civil Action 00-105L.  The specific matter before the

6     Court is a motion to intervene filed by the Palestinian

7     Pension Fund for the State Administrative Employees in

8     the Gaza Strip.

9          Will the attorneys interested in this matter

10    please identify themselves for the record.

11         MR. STRACHMAN:  David Strachman for the Unger

12    Plaintiffs, Your Honor.

13         MR. WISTOW:  Max Wistow for the Plaintiffs.

14         MR. CAVANAGH:  Joseph Cavanagh for the moving

15    party.

16         MR. KERR:  Charles Kerr for the moving party.

17         MR. SHERMAN:  Deming Sherman for the PA and PLO.

18         THE COURT:  All right.  I'll hear first from the

19    moving party.  Who will argue?

20         MR. CAVANAGH:  Good afternoon, Your Honor.  Nice

21    to see you.

22         Mr. Kerr, who has much more familiarity than I

23    do with this, may also add some argument, but I will

24    try to handle your questions and present this in a

25    fashion that is clear.

1          First of all, Your Honor, this motion is not one
2     where we seek in any way to get involved with the
3     merits or these parties.  We have no relationship to
4     the Defendants, we have obviously no relationship to
5     the Plaintiffs, and our motion is simply a motion to
6     intervene for the limited purpose of bringing to your
7     attention the problem with the injunction and what it
8     has done to our interests and ask you to either vacate
9     or modify that injunction or to ask that the other --
10    we would ask that the other side have a bond with
11    respect to the injunction, and I'll explain the reasons
12    why.
13          I wasn't present, obviously, at the hearing
14    where you granted the injunction in May of '05, but it
15    seems apparent that what was needed at that time, the
16    Plaintiffs represented to you, that they needed an
17    opportunity to maintain the status quo so that they
18    could go to the jurisdictions where they believed
19    assets existed where they could enforce their judgment.
20    And so they asked you for an injunction for that
21    purpose, and you granted that.
22          THE COURT:  I granted it against the PA and the
23    PLO over whom I had personal jurisdiction.  That's why
24    I issued the injunction.
25          MR. CAVANAGH:  Right.

1        THE COURT:  And it had to be enforced somewhere

2    else because there were no funds here in Rhode Island

3    or other assets.

4        MR. CAVANAGH:  Right.  And what they represented

5    to you was that they didn't -- the Plaintiffs said that

6    there were no assets in Rhode Island but they believed

7    that there were assets in other jurisdictions, and they

8    wanted to go to those states and use the process of

9    those states to restrain assets in those states, and

10   they needed an injunction to give them the chance to do

11   that.

12        THE COURT:  I was enjoining those two entities

13   from alienating their funds.

14        MR. CAVANAGH:  Right.  And the basis for their

15   argument was to allow us to -- if you recall, there was

16   a mandate issue at that time as well.  The mandate

17   hadn't issued from the First Circuit.

18        And they brought two matters to your attention,

19   that what do we do about the mandate because we want to

20   move on this as a judgment.  And, secondly, we think

21   that the Defendants are moving assets right now, and

22   we'd like an injunction so that we can go to those

23   states and try to have that advocated.

24        Now, that was five years ago.  And as a result

25   of the injunction and what they did in New York, our

1    funds, which are completely separate from the PA, have

2    been frozen for five years.

3        And the collection proceedings that the

4    Plaintiffs said they wanted to go about in New York

5    they haven't pursued, to the point where they brought

6    three separate actions in New York.

7        The first was they attempted to get a

8    restraining order under New York process.  We entered

9    into that case and took the position that the assets

10   they were seeking to restrain were owned by us and not

11   by the Defendants.

12       THE COURT:  And that's a matter that's still

13   pending before the New York Court.

14       MR. CAVANAGH:  That particular matter, the

15   Court -- before the hearing took place, the Plaintiffs

16   withdrew their claim under that particular procedure.

17       And the issue that was teed up at that time was,

18   Who owned the assets, and were they entitled to get a

19   restraining order under these circumstances?

20       When that issue was ready to be heard, when we

21   raised that issue in 2006, they withdrew and instead

22   filed a second proceeding called a turnover proceeding

23   and at the same time filed motions for declaratory

24   judgment.

25       And the relief they asked for in the declaratory

1    judgment was a declaration by the New York Court that

2    these assets were owned or controlled by the PA.  The

3    second declaration was that they were not owned or

4    controlled by my client.  That was the declaration.

5         The turnover action was dismissed without

6    prejudice by the New York Court, the New York Judge

7    making the comment that there was no evidence before

8    her that would indicate that the PA owned these assets,

9    but the declaratory -- because no discovery had been

10   done in the turnover proceeding, she denied it without

11   prejudice, and then the declaratory judgment action

12   proceeded.

13        In the declaratory judgment action, which is

14   still pending, the Plaintiffs have taken the position

15   recently that, that declaration that the PA did not own

16   or control is not an issue that needs to be decided by

17   the Court, that the only issue that they need decided

18   is that my client doesn't own the assets, which really

19   doesn't go to the issue of -- the key issue in the

20   case, do these Defendants control or own the assets?

21        So, after five years, when they were before you

22   five years ago, you gave them an opportunity to go to

23   the various jurisdictions and try to collect those

24   judgments.  They haven't done that yet, but for five

25   years, my client's assets have been held up because

1     that issue hasn't been addressed.

2            THE COURT:  Well, that's up to the New York

3     Court to deal with that matter, not this Court.

4            MR. CAVANAGH:  Well, here's what I'm suggesting,

5     Your Honor, that we have an interest in this matter,

6     and it's your -- this injunction that's holding it up

7     in New York because there's no restraint in place in

8     New York.

9            They have not been able to get one in New York.

10    They've withdrawn once, dismissed without prejudice,

11    and now, when it appears as though that issue might be

12    decided in the declaratory judgment action, they are

13    moving away from that issue.

14           And so our position is this:  With no due --

15    with no lack of respect for the Court, your injunction,

16    which is open-ended --

17           THE COURT:  It's a permanent injunction.  It was

18    made permanent.

19           MR. CAVANAGH:  Right, until further order of the

20    Court.

21           THE COURT:  That's right.

22           MR. CAVANAGH:  Right.  And in the transcript, if

23    you remember, you had said that you could not -- you

24    were not clairvoyant, you couldn't see what was going

25    to happen down the line and the parties and people

1    could come back and bring appropriate motions or

2    petitions with respect to that matter, if appropriate

3    under the circumstances.

4         And that was because actually at that hearing, a

5    couple of the banks and in fact one of the investment

6    managers for this very Fund, represented by counsel and

7    had already been notified by the Plaintiffs and had

8    been subpoenaed for records, they appeared and said

9    they were unclear on what was happening.  And you had

10   made the observation that, if these things don't work

11   out, then someone could come back.

12        So what we're doing with the intervention is,

13   number one, we think we have a right to intervene and

14   to bring this to your attention because I think what's

15   important is, you say it's up to the New York Court,

16   but your injunction was to give them the chance to get

17   relief from the New York Courts, not to give them an

18   opportunity not to do that and to just hold the

19   injunction over our heads and freeze our assets, and

20   that's what's happened in this circumstance.

21        So what we were asking is --

22        THE COURT:  You have your remedies in the

23   New York Court.

24        MR. CAVANAGH:  What I'm suggesting, Your Honor,

25   is that an appropriate remedy would be to limit the

1    amount of time that they have to get that relief or to

2    put a bond in place in the event that we're harmed by

3    the result of an injunction that should not have been

4    granted under the circumstances.

5         And let's just assume that I'm right that we

6    have the rights to these, the Defendants don't have the

7    rights to these.  For five years, our assets have been

8    prevented from being managed and handled and reinvested

9    in a way that would be deemed appropriate by experts

10   because they've been frozen.

11        And what we're saying is, when you -- for

12   example, if -- you entered an order that originally

13   they asked for 60 days, and that made a lot of sense

14   because that would give them two months to go to

15   New York or some place else and invoke the process of

16   the New York Court to try to restrain the assets

17   because that's where the assets are and let them seek

18   relief there.

19        What they're doing is they're getting relief

20   from a Federal injunction here that's preventing us

21   from -- it's not because of New York Courts; it's

22   because of the Federal injunction in Rhode Island

23   that's preventing us.  And what we --

24        THE COURT:  Not at all because it only runs

25   against the PA and the PLO, and you can bring the issue

1    before the New York Court that you are not under the

2    aegis of the PA and you're a separate entity, and that

3    issue should be decided in New York, not here.

4         MR. CAVANAGH:  We've tried to bring it before

5    them, and the --

6         THE COURT:  Well, I can't speak for the New York

7    Court, but I'm not going to take an end around here.

8         MR. CAVANAGH:  Well, I --

9         THE COURT:  And you asked to stay those

10   proceedings in New York pending the outcome of what the

11   only issue is that remains is whether or not I should

12   grant a new trial.

13        MR. CAVANAGH:  Right, and that --

14        THE COURT:  That's the only issue that remains

15   in this case, and you're not involved in that issue.

16        MR. CAVANAGH:  Right, but we are being harmed by

17   the injunction every day, as we have been for five

18   years.  And what we're saying is, we think we could --

19   we would like to intervene and at least make the

20   argument to you that your injunction should be at least

21   modified, at least modified so that we get protection

22   because, at the end of the day, if the injunction, with

23   no one there to protest or bring it up five years ago,

24   the injunction, if someone's going to be under the

25   restrictions of an injunction, then someone who obtains

1   that injunction under the rules, under 65, should put

2   up a bond, no question about it.

3       And if we're right, just hypothetically, if I'm

4   right, my client owns the assets and the PA doesn't and

5   this injunction has kept us, not the New York

6   injunction because they've never obtained relief in

7   New York, as they told you -- that's why they told you

8   they needed the injunction, so they could go to

9   New York and do that five years ago.

10      And we've been harmed for five years.  And what

11  we're saying is, we're coming back and saying, well,

12  let's put a bond in place to protect us going forward

13  if this is going to persist, and that we think is a

14  right under the rights of intervention we have a right

15  to bring to your attention under these circumstances.

16      So that, in essence, is what we're arguing.

17  They've raised some procedural issues that we didn't

18  plead this correctly.  It's clear as a bell what we're

19  trying to do in our papers.

20      And as far as timeliness goes, we know what you

21  did with the Monetary Authority when they brought a

22  separate action up here against these Plaintiffs.  You

23  said, That should be decided in New York.

24      You essentially said that with your injunction

25  five years ago, but you didn't ever expect and neither

1    should we be burdened by the fact that it's to their

2    advantage to not have that issue decided in New York,

3    and the latest statement of their claims in New York is

4    they are making movements away from that declaration

5    that you said is the essence of the issue.

6         So what -- all we're asking for is relief from

7    the harshness of that injunction so that it puts some

8    duration on it and gives us a bond.  That's what

9    we're -- we're not asking that it be completely

10   vacated.  We would want some harshness and a bond under

11   the circumstances because, otherwise, it's an

12   injunction.  It really is a hardship on a third party

13   that has nothing to do with this, and it's five years

14   they have not clarified that issue in New York, and

15   it --

16        THE COURT:  Well, why haven't you clarified it?

17   Why haven't you taken some action to make --

18        MR. CAVANAGH:  We have.

19        THE COURT:  -- make a claim that you're not --

20   you're a separate entity and you're not under the aegis

21   of the PA?

22        MR. CAVANAGH:  We took that position in --

23        THE COURT:  Well, then that's up to the Supreme

24   Court in New York to decide that issue.

25        MR. CAVANAGH:  But what we're saying is that's

1    true, let the New York case -- Court decide it, but

2    your injunction shouldn't stay in place during all --

3    it's up to New York.  They got the benefit of your

4    injunction.  They can go to New York and get the

5    benefit of New York law with respect to collection of

6    judgments, and that's what they --

7            THE COURT:  My injunction is very, very clear.

8    It only applies to the PA and the PLO.  I've already

9    ruled that.

10           MR. CAVANAGH:  Right, I understand that you

11   have.

12           THE COURT:  So what am I to do, take on another

13   action here?  I'd have to have another trial of some

14   sort.

15           MR. CAVANAGH:  No, I don't think so.  I think --

16           THE COURT:  Won't I have to decide whether or

17   not you're a separate entity?

18           MR. CAVANAGH:  No.  All you'd have to decide is

19   whether your injunction is appropriate under these

20   circumstances.

21           THE COURT:  It is appropriate against the PA and

22   the PLO.

23           MR. CAVANAGH:  But not against us, and that's --

24   and we would say, therefore, you put a time limit on

25   that so that they can get that clarified and put a bond

1    requirement.  That's not a trial.  There's no

2    discovery.

3         THE COURT:  You want me to decide, first of all,

4    that you are a separate entity and not under the aegis

5    of the PA.  I'd have to decide that first.

6         MR. CAVANAGH:  I don't think so.  I think --

7         THE COURT:  I'd have to.

8         MR. CAVANAGH:  -- we'd make -- all we do is we

9    make a claim to the Fund, and what you'd say is a bond

10   in place, in the event that we're right, in the event

11   that we're right and it's decided in New York that

12   ultimately the PA does not own and control it, then

13   there's a bond in place that protects us for the loss

14   and the harm that we have going forward while your

15   injunction prevents the custodians in New York from

16   doing anything because they're all afraid that they're

17   violating a Federal injunction.

18        THE COURT:  That's because they're afraid.

19   They're afraid.

20        MR. CAVANAGH:  I know.

21        THE COURT:  They're not litigating it.  They're

22   just sitting there, and they accepted a lawyer's word

23   that it covered them, and that'll be decided by a

24   New York Court, not this Court.  I'm not going to start

25   another trial in this case.

1    MR. CAVANAGH:  Look, I know when these papers

2    came in, and I know the situation, that you would say

3    I'm not going to get involved in another --

4    respectfully, what I'm asking is, do we have a right to

5    intervene?  We think we do.

6         And what issue are we going to place before you?

7    The appropriateness of that injunction staying in place

8    under the Federal law, and that would be, should a bond

9    be put in place in case we're right?  You don't have

10   have to have a hearing on that.  The bond would be --

11   it wouldn't -- it doesn't mean anything if we're wrong.

12   But if we're right, we get protected, and that should

13   have taken place five years ago, with all due respect,

14   for anybody --

15        THE COURT:  You're on the horns of a dilemma.

16   You haven't even shown me that you have standing to

17   bring this, that you're a separate entity and you have

18   standing to bring this motion.

19        MR. CAVANAGH:  I think we -- under the Rule,

20   we've shown --

21        THE COURT:  You're on the horns of a dilemma.

22        MR. CAVANAGH:  We have a claim.  We have a claim

23   that we think is an interest recognized under the

24   invention law -- rule, and our claim is that we're the

25   owner, sole owner, of the Pension Fund assets that are

1    being adversely affected by an injunction of this

2    Court, and we're asking to intervene for the limited

3    purpose of asking you for relief from that injunction

4    in an appropriate way, and that's a legal issue.

5    That's not a trial.  It's very much like if --

6            THE COURT:  It's loaded with factual issues.

7            MR. CAVANAGH:  It would be based on the

8    assumption that we're right.  And if there's a bond in

9    place to protect us, if we're wrong, it doesn't mean

10   anything.  If we're right, we're protected, that's what

11   it means, under those circumstances.

12           It doesn't mean anything else.  And it's

13   appropriate, it's required under the rule, and that's

14   our position.  As a party -- as a would-be party having

15   an interest in the injunction because of the effect

16   it's having on us, we think that gives us the right to

17   intervene.  And we're not going to get into a big

18   debate about who the owner is, et cetera.  We're

19   saying, if we're the owner, we're going to be --

20           THE COURT:  I'm not deciding hypothetical cases,

21   and I'm not going to bring this case into the major

22   case because it doesn't have anything to do with the

23   only issue that's left in this case.

24           MR. CAVANAGH:  I think the New York Court should

25   decide that.  They should decide that issue.  But your

1    injunction --

2            THE COURT:  They should.

3            MR. CAVANAGH:  -- is harming us in the meantime,

4    and we want the opportunity and we think we have the

5    right to intervene to bring to your attention the need

6    for that injunction to be modified and for a bond to be

7    put in place.

8            THE COURT:  You have your remedies in New York.

9            MR. CAVANAGH:  Okay.  Thank you, Your Honor.

10           THE COURT:  Mr. Strachman?

11           MR. STRACHMAN:  Thank you, Your Honor.

12           Your Honor, my brother indicates that there is

13   significant harm that is occurring and that the funds

14   are not being managed, and I would direct the Court's

15   attention to Exhibit I to our filing, which is Docket

16   No. 402, which is a stipulation and an order signed by

17   Mr. Kerr and myself and brought to Your Honor and

18   signed by Your Honor on September 11, 2007,

19   specifically allowing the management of these funds

20   because, when an issue was raised in New York years and

21   years ago and there was a question as to how these

22   funds should be managed while the litigation was

23   pending, we cooperatively said effectively, do whatever

24   you want with the money, invest it any way you want,

25   just keep investing it, keep managing it, it has

1   nothing to do with us.

2        So for my brother to come into Court today and

3   say that nothing's happened in the last five years and

4   that this restraining order from May of 2005 is the

5   cause of any of these problems is just inaccurate, and

6   I think it's respectfully just ill-informed.

7        We brought this stipulation and order to the

8   Court's attention, and I direct Your Honor to the

9   very --

10        THE COURT:  I remember it.

11        MR. STRACHMAN:  Okay.  There are -- the issue

12   with respect to proving the ownership of these funds

13   has been litigated on numerous occasions by the

14   New York Courts, and in fact, there's a District Court

15   ruling by Judge Konreich, which we attached to our

16   brief, which said very clearly, if I could just read a

17   sentence or two, Your Honor, it's Exhibit A to our

18   brief, Page 8, which is her ruling denying them summary

19   judgment because they could not prove the ownership of

20   these funds.

21        And she said, The Insurance and Pension Fund,

22   quote -- excuse me.  Insurance and Pension Fund

23   couldn't explain, quote, The use of different names for

24   what they now say is the same pension fund, close

25   quote.

1        Further down the page, she said, Even if the

2   Court were to find that the Gaza Fund is a d/b/a name

3   for the Insurance and Pension Fund and that the latter

4   is an entity separate from the PA, the evidence does

5   not clarify to what extent the PA or the Insurance and

6   Pension Fund control the Gaza Fund, the sources of

7   funds, all of which are material issues, close quote.

8        She denied summary judgment because they

9   can't --

10       THE COURT:  Issues of fact.

11       MR. STRACHMAN:  That's right.  And she scheduled

12   a trial.  The trial and the proceedings were stayed in

13   2008 at their request.  There were subsequent appeals.

14   The case has been back and forth to the Appellate Court

15   I think three or four times.  They have now asked the

16   highest Court of New York to revisit the jury issue

17   decision.

18       It's my understanding that virtually nothing has

19   happened in the case over the course of the better part

20   of 2010 because, when the First Circuit ruled, it's my

21   understanding that the restraining -- excuse me -- the

22   stay remained in full force and effect.

23       And the Court of Appeals ruled in March of this

24   year very clearly that the same -- they have the exact

25   same kinds of problems, and if I could quote, The

1    Plaintiffs are right, we are right, that the

2    Defendants' attempts to prejudge the very issue at the

3    heart of this issue -- excuse me -- at the heart of

4    this action; that is, whether the IPF and the Gaza

5    Funds are legitimately interchangeable names.

6         That's all teed up, that's locked and loaded,

7    years of discovery, years of pretrial supervision by

8    one Judge, Judge Konreich, appellate decisions, and now

9    what they're attempting to do, impermissibly and in

10   violation of the scope of intervention, is exactly what

11   Your Honor suggested, which is have another trial over

12   here and have another parallel proceeding multiplying

13   the litigation.

14        It would be offensive in the first instance.

15   It's doubly offensive to ask this Court to rewrite or

16   redo five years of litigation.  It's already before the

17   New York Court, and several -- and ready for

18   determination according to its rules and regulations.

19        The determination of the Court in New York will

20   determine very clearly in a declaratory judgment action

21   whether the Insurance and Pension Fund actually owns

22   these funds, despite the fact of course, Judge, that in

23   Exhibit A to our brief, it says very clearly, The

24   account that this -- this account as titled says, The

25   Pension -- the Palestinian Pension Fund for the State

1    Administrative Employees of Gaza, represented by P for

2    Palestinian and National and A, Authority.

3         So they can't prove they own this money.  It is

4    ready to be determined there, and to come to Court

5    without a separate pleading when the -- there have been

6    numerous rulings of the First Circuit indicating that,

7    as an Intervenor, you must comply with the rules, you

8    must file an appropriate separate pleading.  That's the

9    public citizen decision, Your Honor, that we quote on

10   our -- in our brief on Page 9.

11        The Court said the language there is mandatory,

12   it's not permissive, and warned, specifically warned

13   the parties and future litigants, at Page 784, not to

14   use this decision and the specific facts of the public

15   citizen decision to come in and to do exactly what the

16   Insurance and Pension Fund has done here.

17        They also cutely tried to suggest that they want

18   assistance from this Court, they want affirmative

19   relief against the Ungar orphans and their family, but

20   they say very clearly, both in their original pleading

21   and in the pleading number 535 that they filed

22   yesterday, on Page 6, that they are not consenting to

23   the jurisdiction of this Court.

24        They don't want this Court to have jurisdiction

25   over them, but they want to use this Court as a sword

1    against the Ungars to effectively attempt to undo and

2    to redo, rather, what they've been unable to to

3    successfully convince a series of judges and courts in

4    New York.

5         And lastly, Your Honor, if this Court were to

6    grant this motion and instead of the next four months

7    litigating and doing discovery on the motion to vacate,

8    we would be here on this parallel proceeding because

9    all of the issues that were represented to this Court

10   as facts were represented not by employees of the

11   Insurance and Pension Fund, not by an affidavit of a

12   staffer of the Insurance and Pension Fund, but, rather,

13   by counsel, and the discovery would be required here to

14   ferret out those issues.

15        We already started some of that discovery in the

16   Eastern District of New York to try to ferret out some

17   of those issues.

18        I believe that's all, Your Honor.  Thank you.

19        THE COURT:  The injunction I issued is perfectly

20   clear.  It was to prevent the PA and the PLO from

21   alienating funds.  And it only applies to the PA and

22   the PLO, despite the fact that the Movant here

23   attempting to intervene hasn't filed a complaint and is

24   setting forth the issues that they're trying to raise.

25        It's clear what the issue is.  The issue is

1    whether the Pension Fund is under the aegis of the PA

2    and subject to the injunction.  That's an issue that

3    should be decided in the Courts in New York, and

4    attempts have been made to move forward in the Courts

5    of New York.

6         If I take the case, if I allow the intervention,

7    there could be inconsistent results, and it's not my

8    place to make that determination.  And, obviously, the

9    Supreme Court Judge in New York who heard this matter

10   didn't grant summary judgment because there were

11   factual issues to decide, and that's what should happen

12   now is any discovery that's necessary be taken in

13   New York and the matter tried to make a determination

14   of this issue.

15        It's a key issue, and it's not one that I'm

16   going to interject in this case.  I have enough to

17   decide in this case right now, which is whether or not

18   the motion to vacate the previously entered judgment

19   should be granted or denied.

20        I've already denied it once, and the Court of

21   Appeals have reversed me and asked me to consider other

22   factors other than the obvious action of Arafat not to

23   recognize the jurisdiction of this Court.

24        So, if I grant the motion to intervene, I will

25   have to have a factual hearing to determine the facts,

1    which is whether or not the Pension Fund is a separate

2    entity and unconnected with the PA, and there will have

3    to be a lot of discovery.  I'll be duplicating things

4    that have already happened in New York, and that's a

5    waste of time, a waste of judicial time.  I have enough

6    to deal with in this case right now.

7           So, for all those reasons, the motion of the

8    Pension Fund to intervene in this case is denied.  I

9    will enter a written order to that effect.

10           We'll take a recess.

11           (Court was concluded at 2:36 p.m.)

12

13                    C E R T I F I C A T I O N

14

15

16           I, Debra D. Lajoie, RPR-FCRR-CRI-RMR, do

17    hereby certify that the foregoing pages are a true and

18    accurate transcription of my stenographic notes in the

19    above-entitled case.

20

21

22

23           /s/ Debra D. Lajoie

24

25           9/28/10