# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

        Plaintiffs – Judgment Creditors,

    v.                                   C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.,

        Defendants – Judgment Debtors.

## MEMORANDUM IN OPPOSITION TO DEFENDANTS-JUDGMENT DEBTORS' MOTION FOR ENTRY OF A PROTECTIVE ORDER REGARDING PLAINTIFFS' NOTICES OF DEPOSITION PURSUANT TO RULE 30(b)(6)

### Introduction

The Plaintiffs-Judgment Creditors respectfully file this memorandum in opposition to the

Defendants-Judgment Debtors' (the "PA/PLO") motion for a protective order (Dkt. # 548).

**I.**     **The Noticed 30(b)(6) Deposition Topics Are Not Overbroad, Unduly Burdensome, or Vague**

        **A.**     **The Noticed Deposition Topics Are Neither Overbroad nor Unduly Burdensome**

Although the PA/PLO describe the Deposition Notices as identifying "over 100 topics,"

the number of areas of inquiry is actually much smaller. Thematically, these deposition topics

comprise only seven subjects:

      (1) Prejudice to the Plaintiffs-Judgment Creditors;

      (2) Merits of The PA/PLO's defenses;

      (3) The PA/PLO's reasons for default;

      (4) The PA/PLO's present ability to participate in discovery, as compared to previous ability, including under the circumstances described in Al-Kidwa's 1/27/2003 letter to Judge Martin;

(5) Threats to world peace and U.S. foreign policy caused by this litigation and judgment, including whether any of the PA/PLO's dire predictions have come to pass;

(6) The roles of certain leadership individuals no longer available to testify; and

(7) The PA/PLO's conduct in the enforcement actions and other related litigation.

Because of this, the Plaintiffs-Judgment Creditors anticipate that only a small number of witnesses will need to testify for the PA/PLO on these subjects. In any event, Rule 60(b)(6) relief requires a holistic inquiry into all the applicable factors, so it will be necessary to explore all these issues even if they are numerous. The Plaintiffs-Judgment Creditors also note that the PA/PLO believed most of these matters were sufficiently relevant to include them in their own motion papers on their motion to vacate and cannot now complain that the Plaintiffs-Judgment Creditors seek to explore these issues and whatever basis they may or may not provide for the affirmatively sought relief by the PA/PLO.

**B.    These Deposition Topics Are Not Vague**

The PA/PLO also speciously complain that these deposition topics are too vague. For example, although the PA/PLO discussed their "mindset" during the period of their intentional default in their moving papers, they now say they are at a loss to know what their mindset was or whether they were even capable of having one. Perhaps most incongruously of all, the PA/PLO complain that a deposition topic specifying "Regarding the [PA/PLO]'s strategic litigation choices leading to and subsequent to its default: a. The [PA/PLO]'s 'mindset' during the period when it decided to default" fails to ask "the PA/PLO's mindset as to what?" The Plaintiffs-Judgment Creditors respectfully submit that this topic plainly seeks the PA/PLO's mindset as to their "strategic litigation choices leading to and subsequent to its default."

Prior to noticing these depositions, the Plaintiffs-Judgment Creditors anticipated these sorts of objections and annotated the vast majority of these deposition topics with footnotes

citing direct quotes from the PA/PLO's papers, decisions of the Court, and decisions of the First Circuit, so all parties would be clear as to precisely what is being asked and the basis for the designation. Hence, with these detailed annotations and because the topics come largely form the PA/PLO's own assertions, the vagueness objection is groundless.

## II.      All 60(b)(6) Factors Remain Relevant

The PA/PLO are not entitled to object to any of the deposition topics on relevance grounds because all of the designated topics concern issues that remain vitally relevant to the January 2011 evidentiary hearing and the PA/PLO's motion to vacate.

### A.      Willful Default Is Relevant

The circumstances of the PA/PLO's willful default will be a primary focus of the January hearing, and the PA/PLO cannot pretend willfulness is simply conceded and no longer relevant. Indeed, the Court's April 1, 2010 order is dispositive of this point. See Dkt #482 ("the Court will hold an evidentiary hearing to determine precisely what the facts are concerning the deliberate decision to default and the factual circumstances surrounding that matter.").

As discussed in the Plaintiffs-Judgment Creditors' memorandum of law in support of their motion to compel the deposition of Ahmed Qurei, Dkt #556 Ex. 1 at 4-6, the PA/PLO have variously alleged three different reasons for intentionally defaulting: (1) strategically attempting to shield themselves from foreign collection proceedings; (2) seeking to preserve what they believed was a sovereign immunity defense; and (3) expressing disdain for the U.S. courts and proceedings. These varying and sometimes conflicting reasons must be explored prior to the January hearing. Moreover, even if the mere fact of the PA/PLO's willfulness has been admitted, its extent must be fully explored, in order to weigh it properly together with the other factors

### B.      The PA/PLO's Bad Faith and Unclean Hands Are Relevant

The PA/PLO complain that the Plaintiffs-Judgment Creditors are using discovery in this case to seek information related *only* to the various collection cases. Even if this were true, it would be entirely consistent with Rule 69(a)(2) (providing for discovery in aid of a judgment or execution). *See United States v. Earl Phillips Coal Co.*, 66 F.R.D. 101, 102 (E.D. Tenn. 1975) ("Rule 69(a), F.R.C.P., makes it clear that the [plaintiff-judgment creditor] is entitled to obtain discovery from the judgment debtor under the applicable rules set out in the Federal Rules of Civil Procedure.").

More critically, however, the PA/PLO's bad faith and unclean hands in the collection cases are absolutely and directly relevant to whether the Court should exercise its equitable powers and grant the PA/PLO's motion to vacate the judgment. The simple matter is that the PA/PLO have repeatedly treated the Court's actions and orders with contempt. As demonstrated in Dkt #553 (Plaintiffs' Opposition to Defendants' Motion for a Protective Order Regarding Plaintiffs' Requests for Discovery of Certain Third-Party Communications), the PA/PLO have repeatedly and contemptuously violated the Court's September 2006 entry of judgment on the creditor's bill by absconding with the very assets of the Palestine Investment Fund that the Court had transferred to the Plaintiffs-Judgment Creditors. Incredibly, in their Reply in further support of that motion, the PA/PLO brazenly assert the right to ignore orders of this Court whenever the PA/PLO decide they are invalid. *See* Dkt #561 at pp. 13-14.

The Plaintiffs-Judgment Creditors are not seeking to have the merits *vel non* of these collection matters adjudicated in Rhode Island. Indeed, it is axiomatic that even a court's incorrect or wrongly decided decisions are entitled to respect until later reversed by the court or overturned on appeal. Rather, the Plaintiffs-Judgment Creditors respectfully submit that the PA/PLO's contemptuous behavior be taken into account as relevant to their motion to vacate.

### C.    Timeliness Is Relevant

The timeliness of the PA/PLO's motion to vacate remains absolutely relevant and has not yet been decided, contrary to the PA/PLO's bizarre protestations to the contrary. Indeed, the First Circuit expressly listed it among the factors to be considered on remand. *See Ungar v. Palestine Liberation Organization*, 599 F.3d 79, 83 (1st Cir. 2010) ("A variety of factors can help an inquiring court to strike the requisite balance. Such factors include the timing of the request for relief. . . . .").

### III.    Attorney-Client and Work-Product Privileges Have Been Waived, and So the PA/PLO's Claims of Privilege Should Be Stricken

The PA/PLO have waived any attorney-client privilege as to these deposition topics by putting their attorney-client communications into issue in their motion to vacate. A paradigmatic example of implied waiver is an advice of counsel defense. *See In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003). When such a defense is raised, the pleader puts the nature of its lawyer's advice squarely in issue, and, thus, communications embodying the subject matter of the advice typically lose protection. *See id.* (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991)). Implying a subject matter waiver in such a case ensures fairness because it disables litigants from using the attorney-client privilege as both a sword and a shield. *In re Keeper of Records*, 348 F.3d at 24. Were the law otherwise, the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process. *Id.*

Here, the PA/PLO have repeatedly and voluntarily put their attorney-client communications into issue in their motion to vacate. They have affirmatively averred that their intentional decision to default was driven by advice of prior counsel and was intertwined with

their misunderstanding of the U.S. legal system.[1] Their motion to vacate therefore necessarily calls into question not only when and why strategic legal decisions were made in this case and what their attorneys were telling them, but also the PA/PLO's experience litigating other terrorist-tort litigation in U.S. courts. Without discovery into these matters, the upcoming hearing will be unlikely to fulfill the Court's mandate of determining "precisely what the facts are concerning the deliberate decision to default and the factual circumstances surrounding that matter." Dkt #482.

To the extent the work-product privilege applies to these matters, they have been similarly waived. *See, e.g.*, *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.R.D. 506, 511 (S.D.N.Y. 2002) ("[I]t is important to note that the 'at issue' waiver doctrine applies to information protected by the work product privilege as well."). Furthermore the PA/PLO's instant motion does not begin to explain how that privilege applies to any of these subjects and therefore cannot begin to carry their burden of proving the requisite "good cause" for a protective order as required by Rule 26(c). *See Multi-Core, Inc. v. Southern Water Treatment*

---

[1] See *Ungar v. Palestine Liberation Organization*, 599 F.3d 79, 82 (1st Cir. 2010) ("The defendants neither answered the complaint nor participated in discovery. Instead, at various times from 2000 to 2005 they interposed motions asserting non-merits-based defenses of sovereign immunity, lack of jurisdiction, nonjusticiability, and the like. As the defendants now concede, the decision to stonewall in this fashion was a deliberate stratagem driven by the advice of their then-counsel and their unwillingness to recognize the authority of the federal courts.") (emphasis added); Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 16 ("[T]he default here arose as a result of a foreign government's basic misunderstanding of the United States legal system."); Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 31 ("C. The Default Judgment in This Case Arose from the PA's and PLO's Basic Misunderstanding of the United States Legal System, but Their Efforts to Remedy That Misunderstanding Have Now Come to Full Fruition Despite Significant Political Turmoil and Institutional Obstacles."); 3/6/08 Defendants' Reply to Plaintiffs' Objection to Motion for Relief from Default Judgment at 5 ("First, Defendants contended that their conduct at the time of the default was not willful as that term is defined in the law because it was mitigated by the PA's and PLO's reasonable failure to understand how the United States courts could hale them into Court to answer for actions of Hamas taken specifically to undermine the peace process."); Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 31 ("From Defendants' view, it seemed illogical that American courts could properly adjudicate claims arising from a long-standing and on-going foreign conflict, particularly where the witnesses and evidence were located thousands of miles away, where the victims were not targeted because of their American citizenship, and where the act itself had been committed by a rival group that was actively trying to undermine the PA and PLO.");

*Co.*, 139 F.R.D. 262, 263 (D. Mass. 1991) ("As the party seeking a protective order, defendant bears the burden of proving 'good cause'").

## IV.    These 30(b)(6) Depositions Are an Appropriate Vehicle for This Discovery

### A.    These Topics Are Not Duplicative of Other Requests

Requests for production of documents and interrogatories are no adequate substitutes for live deposition testimony. *See Kaplan v. City of Chicago*, No. 05 C 2001., 2009 WL 1940789 *4 (N.D. Ill. July 6, 2009) ("Obviously, the production of documents is no substitute for the live deposition"); *Moskowitz v. Lopp*, 128 F.R.D. 624, 636 (E.D. Pa. 1989) ("The court is also aware that interrogatory responses can be a poor substitute for the give-and-take of a live deposition."). In any event, the Plaintiffs-Judgment Creditors are also entitled to depose the PA/PLO about issues arising from their document production or answers to interrogatories.

### B.    Contention Interrogatories Are Unnecessary and Inadequate Alternatives

Not all assertions are "contentions" requiring contention interrogatories. Whether a Rule 30(b)(6) deposition or a Rule 33(c) contention interrogatory is more appropriate is a case by case factual determination. *United States v. Taylor*, 166 F.R.D. 356, 363 n.7 (M.D.N.C. 1996). Contention interrogatories are appropriate for examining a party's "pure legal conclusions." *See Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 282 (D.Neb. 1989). In contrast, the discovery the Plaintiffs-Judgment Creditors are seeking here relates not to pure legal conclusions but to the PA/PLO's plainly factual assertions.

The Plaintiffs-Judgment Creditors want to explore the facts underlying the PA/PLO's assertions, not simply the assertions. These are fact-intensive inquiries, not complicated legal ones: issues requiring evidence, not memoranda of law; witnesses, not lawyers arguing. It is

7

precisely these factual issues that the January hearing will explore, and to that end the Plaintiffs-Judgment Creditors must be permitted to depose the PA/PLO.

### C.    The Plaintiffs-Judgment Creditors Need Not Have Sought Any of This Discovery from Mr. Fayyad

By its express terms, Rule 30(b)(6) "does not preclude a deposition by any other procedure allowed by these rules." This is because a deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual. *See Sabre v. First Dominion Capital, LLC*, No. 01CIV2145BSJHBP., 2001 WL 1590544 *1 (S.D.N.Y. Dec. 12, 2001). A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity. *Id.* Thus a 30(b)(6) deposition is a separate deposition that probes the knowledge of the entity and not the personal knowledge of the individual testifying and is subject to its own independent seven-hour limit. *See id. See also Provide Commerce, Inc. v. Preferred Commerce, Inc.*, No. 07-80185 CIV., 2008 WL 360588 *3 (S.D. Fla. Feb. 8, 2008) ("Although the limitations on multiple depositions of the same person apply to Rule 30(b)(6) motions, this Court did not find any case law that barred a second deposition of an individual who was first deposed in his individual capacity and then called to testify a second time on behalf of the corporation."); *AG-Innovations, Inc. v. United States*, 82 Fed.Cl. 69, 81 (2008) ("prior deposition testimony by a witness in his or her individual capacity does not preclude an RCFC 30(b)(6) deposition of the same witness, or vice versa.") (applying corresponding United States Court of Federal Claims rule).

The Plaintiffs-Judgment Creditors were under no obligation to seek this deposition testimony from Mr. Fayyad in his individual capacity, not least because any such testimony would not have bound the PA or PLO. Furthermore, subject to their obligation under Rule

8

30(b)(6) to produce one or more knowledgeable witnesses, the PA/PLO are free to designate witnesses other than Mr. Fayyad to testify on their behalf. Thus the prior Rule 30(b)(1) deposition of Mr. Fayyad poses no obstacle to seeking the instant Rule 30(b)(6) deposition.

## V.    The Proposed Deposition Venue in Rhode Island, the Timing of These Deposition Notices, and the Request for a Written Designation Are All Appropriate

### A.    Rhode Island Is an Appropriate Deposition Venue

Rhode Island is the appropriate deposition venue for reasons discussed in the Plaintiffs-Judgment Creditors' motion concerning Mr. Fayyad's deposition, Dkt #519, and the Plaintiffs-Judgment Creditors' motion to compel the deposition of Ahmed Qurei, Dkt #556 Exh. 1: the PA/PLO's motion to vacate is in the nature of a new action to collaterally attack the judgment, and with their burden on their motion, the PA/PLO are more properly considered plaintiffs for purposes of determining where they should be deposed about the allegations they raised in their motion. *See, e.g.*, *Continental Federal Sav. and Loan Ass'n v. Delta Corp. of America*, 71 F.R.D. 697, 700 (W.D. Okl. 1976). Moreover, a Rhode Island venue is especially appropriate if the Court grants the PA/PLO's request to have a U.S. judge preside over these depositions.[2]

The PA/PLO complaints about witnesses' travel costs do not redound to choosing another venue. Because the PA/PLO's preferred alternative venue entails paying for their American counsel to travel to Jerusalem, the PA/PLO's travel expenses do not favor of a Middle East deposition venue, especially when considered together with the Plaintiffs-Judgment Creditors' expenses.

### B.    Timing of the Noticed Depositions Is Appropriate

Four weeks' written notice of these depositions was reasonable and sufficient, given the short discovery schedule and the subject matter of these depositions. Courts have deemed as little

---

[2] Plaintiffs do not believe it is necessary to have a judge or commissioner oversee the depositions, but Plaintiffs do not wish to discommode the Court with objections if the Court is inclined to require it.

as five days' notice reasonable for scheduling a 30(b)(6) deposition. *See P.S. v. Farm, Inc.*, No. 2009 WL 483236 (D. Kan. 2009). Although the PA/PLO state in bald and conclusory language that "many of Defendants' designee candidates would require visas to travel to the United States, and that process itself ordinarily takes several weeks," the PA/PLO do not specify whether they have exerted any efforts to obtain such visas or which particular witness designees they have in mind.

Many if not most of the deposition topics relate to matters about which the PA/PLO made affirmative representations to the Court nearly three years ago in their motion to vacate. The PA/PLO have known since the Court's order of April 1, 2010 that there would be factual discovery into precisely these sorts of issues. It is wholly reasonable to expect the PA/PLO to be able to testify about the evidentiary support for their own statements on four weeks' notice.

<u>**Conclusion**</u>

For the foregoing reasons, the Plaintiffs-Judgment Creditors respectfully submit that the PA/PLO's motion for a protective order should be denied and the deposition be allow to proceed.

Dated: October 15, 2010                                   Plaintiffs-Judgment Creditors,
                                                          by their Attorneys,


                                                          /s/ David J. Strachman
                                                          David J. Strachman #4404
                                                          McIntyre, Tate & Lynch LLP
                                                          321 South Main Street, Suite 400
                                                          Providence, RI 02903
                                                          (401) 351-7700
                                                          (401) 331-6095 (fax)
                                                          djs@mtlesq.com

Max Wistow #0330
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on October 15, 2010, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701

/s/ David J. Strachman