```
                                                                    1
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
 3            Case No. 04-Civ-20225-SEITZ/O'SULLIVAN
 4
       MOSHE SAPERSTEIN, et al,
 5
 6
                     Plaintiffs,
 7
       vs.                                        MIAMI, FLORIDA
 8                                                APRIL 29, 2010
 9     THE PALESTINIAN AUTHORITY;
       THE PALESTINE LIBERATION
10     ORGANIZATION,
11
                     Defendants.
12
13             TRANSCRIPT OF INFORMAL DISCOVERY HEARING
                BEFORE THE HONORABLE JOHN J. O'SULLIVAN,
14                 UNITED STATES MAGISTRATE JUDGE
15     APPEARANCES:
16
       FOR THE PLAINTIFFS:
17
18                              BERKMAN LAW OFFICE, LLC
                                111 Livingston Street
19                              Suite 1928
                                Brooklyn, NY 11201
20                              BY: ROBERT J. TOLCHIN, ESQ.
21
                                BY: ISAAC M. JAROSLAWICZ, ESQ.
22                              1177 Kane Concourse
                                Suite 222
23                              Bay Harbor Islands, FL  33154
24
       REPORTED BY:             JERALD M. MEYERS
25                              TELEPHONE: 954-431-4757
```

```
  1
  2
     FOR THE DEFENDANTS:
  3
  4
  5                              EDWARDS ANGELL PALMER & DODGE
                                 1 North Clematis Street
  6                              Suite 400
                                 West Palm Beach, Florida 33401-4309
  7                              BY: GARY A. WOODFIELD, ESQ.
  8
  9
 10
 11
 12
                                 MILLER & CHEVALIER CHARTERED
 13                              655 15th Street, N.W.
                                 Suite 900
 14                              Washington, D.C. 20005-6701.
                                 BY: CHARLES F.B. McALEER, JR, ESQ.
 15                              BY: RICHARD A. HIBEY, ESQ.
                                 BY: JOHN EUSTICE, ESQ.
 16
 17
 18
 19
 20
 21  REPORTED BY:                JERALD M. MEYERS, RPR.
                                 J.M. COURT REPORTING, INC.
 22                              1601 N.W. 109TH TERRACE
                                 Pembroke Pines, FL 33026-2717
 23                              Telephone: 954-431-4757
                                 E-Mail Address: CRJM@AOL.COM
 24
 25
```

57

1      THE COURT:  I thought he was on the executive or some
2 kind of executive committee.
3      MR. TOLCHIN:  Yes, an Executive Committee.
4      THE COURT:  Of the PLO?
5      MR. TOLCHIN:  Strictly for Jerusalem.
6      THE COURT:  Okay.  All right.  I am going to require
7 that Mr. Qurei be provided for deposition.
8      I find that, first of all, his whole argument was, was
9 it an Apex deposition is what they call it?
10     MR. TOLCHIN:  Correct.
11     THE COURT:  That is where you are not going to bar the
12 high level officials.  You are going require lower level
13 officials to testify.
14     Instead, it seems like you provided a higher level
15 official who had less knowledge about the facts than what
16 Mr. Qurei had.  And so, you know, this guy was the past Prime
17 Minister is now a member of an executive board, and you decide
18 to present, I mean that's like saying, you know, you want to
19 depose the local, the manager of the local Ford plant, and I
20 say, "No.  You have first got to depose the workers there, so
21 substitute someone else who has knowledge," and you would say,
22 "Give him the CEO of Ford."
23     I mean, your whole argument seems to be specious when
24 you say, "I can't produce this person because he is too high
25 level.  I shouldn't be required to because he is too high

58

1  level" and then produce someone who is at a present day higher
2  level.
3           MR. McAleer:  Your Honor, can I remind the court that
4  the PLO, and Mr. Yasser Abbot Rabo say had requested that
5  Mr. Qurei appear for his deposition.  Mr. Qurei refused to
6  appear for a deposition.
7           THE COURT:  Right.
8           MR. McALEER:  The court would have it as if we somehow
9  we did some bait and switch on this, which is not the case at
10 all.
11          We were here before the court filing the motion for
12 protective order within a factual context where Mr. Qurei had
13 declined to appear for deposition, notwithstanding the request
14 made to him by the PLO Chairman.
15          THE COURT:  Right.  Right.  Well, I mean now he is
16 being ordered to appear.  If he doesn't appear then --
17          MR. McALEER:  Let me correct that.  The secretary of
18 the PLO.
19          THE COURT:  He is going to be ordered to appear by
20 this court.  If he does not appear, then, you know, I remember
21 you made the argument back then that, you know, someone who
22 cannot appear shouldn't be required to appear.
23          Well, I am ordering that he appear.  The PLO can tell
24 him, "You know, some judge over in the United States says you
25 have to appear for this deposition and be prepared to testify

59

1  in regards to this stuff."
2         If he doesn't want to show up, that's fine.  You know,
3  the PLO, you know, they can do things to make him appear if
4  they want to.
5         They can tell him, "You are not going to be on the
6  Executive Committee anymore, I suppose, if you don't follow our
7  directions," or they can, you know, tell him, "Go hide
8  somewhere."  They can do whatever they want to do, but they are
9  going to suffer the consequences if he doesn't appear.
10        MR. McAleer:  Your Honor, Mr. Qurei, and to the extent
11 Mr. Tolchin has blurred this, I just want to be really clear.
12        THE COURT:  Yes.
13        MR. McALEER:  Mr. Qurei did not have a position with
14 the PA or the PLO during the relevant period.
15        THE COURT:  Right.  I understand.  He made admissions
16 subsequent to that when he was the Prime Minister.  I have
17 already addressed that.
18        MR. McALEER:  And what Mr. Tolchin has told this court
19 is that he made a deliberate decision not to question the Prime
20 Minister regarding the underlying facts or the truth of the
21 information that he said he was seeking, and that this court
22 provided for in its December 30th order.
23        THE COURT:  Well, I think it would have made sense for
24 this gentleman to have reviewed Mr. Qurei's statements so that
25 he could then have familiarized himself with the subject in

1    regard to that; with the subject matter in regard to that.

2         So it would have been helpful to him to know, well,
3    let's see, these folks the plaintiffs they want to depose
4    Mr. Qurei to find out whether or not he is familiar with money
5    that is going to or that Qurei holds in and manages Fatah
6    funds."

7         Then he could have looked into that and said, "Hey,
8    did we ever hold any funds for Qurei?" I mean, did Qurei ever
9    hold any funds for Fatah? Yes or no, but he apparently didn't
10   even bother going through that or whether or not Qurei ever
11   said that Al-Qusar was part of the Fatah.

12        MR. TOLCHIN: Al-Aksa.

13        THE COURT: I am sorry. Al-Aksa was part of the
14   Fatah.

15        MR. McALEER: The account that --

16        THE COURT: I am not hearing any more argument. We
17   are going to the next subject. You have two weeks to produce
18   him. What is the next one?

19        MR. TOLCHIN: The next one, Your Honor, was we served
20   a notice of a 30(b)(6) witness, that is exhibit 10 to my
21   binders.

22        The topic for the 30(B)(6) witness was the origin and
23   amounts of the funds received by and the recipients and amounts
24   of the funds paid out by the Palestine National Fund, PNF
25   between October 1, 2000 and February 18, 2002 and, 2, the

1      Therefore, the defendant has waived it.  I find that
2  the person who they produced for a 30(b)(6) witness is not
3  familiar at all about the origin and the amount of funds that
4  went to the PNF during October 1, 2000 to February 18, 2002.
5      In fact, he said, "I don't know.  I can make some
6  assumptions based on what is going on today, but I don't know
7  really what their funding was," and he also had little
8  knowledge, other than what had been provided previously through
9  the statements regarding the previously produced documents, did
10 he have any knowledge of outgoing funds.
11     And, so, therefore, I am going to require that the
12 defendants produce another 30(b)(6) witness who is familiar
13 with the origin and amount of funds and the recipients and the
14 amount of the funds paid out by the Palestinian National Fund
15 between October 1, 2000 and February 18, 2002.
16     Now, that's a rather broad category, and I don't know
17 how a person would know every, you know, payment that was made.
18     I mean, it seems like they should know more than this
19 fellow who was basically saying, "Hey, I wasn't there.  I don't
20 really know."
21     I assume it is the same way it is now, but it will be
22 difficult to educate a person to know every person or every
23 entity that funds are paid out of as big as the Palestinian
24 National Fund.
25     MR. TOLCHIN:  That is the funny thing, Judge, because