UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE ESTATE OF YARON UNGAR, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE PALESTINIAN AUTHORITY, et al., )<br>)<br>Defendants. )<br>) | C.A. No. 00-105L |

**DEFENDANT THE PALESTINIAN AUTHORITY'S
REPLY IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ANSWERS TO
DEFENDANT'S INTERROGATORY NOS. 12-18 AND RESPONSES TO
DEFENDANT'S REQUEST FOR PRODUCTION NOS. 8-15, 17-19**

Defendant The Palestinian Authority's ("PA's") Motion to Compel Answers to the PA's Interrogatory Nos. 12, 13, 14, 15, 16, 17 and 18 and Request for Production Nos. 8, 9, 10, 11, 12, 13, 14, 15, 17, 18 and 19 ("Motion") demonstrated that Defendant is entitled to receive discovery from Plaintiffs concerning Defendants' meritorious defenses, Plaintiffs' alleged prejudice, and the extraordinary circumstances present in this matter, all of which are relevant to Defendants' entitlement to Rule 60(b)(6) relief and therefore properly the subject of the pre-hearing discovery authorized by the Court.

Plaintiffs' Opposition to Defendant's Motion fails to provide this Court with a sound reason to preclude the discovery sought and reveals Plaintiffs' unsupportable view that the Federal Rules of Civil Procedure governing discovery should be applied in a one-sided manner in this matter. Defendant is entitled to seek the disputed discovery in order to (1) establish Defendants' meritorious defenses, (2) demonstrate the strength of those defenses in comparison to the weakness of Plaintiffs' allegations, (3) argue that Plaintiffs would not be unduly

1112229.3

prejudiced by the granting of Defendants' vacatur motion, and (4) prove that extraordinary circumstances justifying vacatur are present here. Accordingly, Defendant PA's Motion should be granted.

## ARGUMENT

### I. THE PA IS ENTITLED TO SEEK DISCOVERY FROM PLAINTIFFS REGARDING ITS MERITORIOUS DEFENSES

Plaintiffs claim that Defendant is not entitled to discovery relevant to its meritorious defense because, to establish a meritorious defense for the purpose of a Rule 60(b) motion, a party "need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." Dkt. No. 558 at 2 (quoting *Indigo America, Inc. v. Big Impressions, LLC*, 597 F.3d 1, 4 (1st Cir. 2010)). Yet Plaintiffs maintain that Defendants have failed to accomplish even this "not [] particularly arduous task." *Id.* Indeed, Plaintiffs claim that Defendants have not even attempted to meet the simple pleading standard applying to the presentation of meritorious defenses.

Plaintiffs are mistaken. Defendants have made specific, supported averments disputing Plaintiffs' allegations concerning the PA's and The Palestine Liberation Organization's ("PLO's") relevant conduct. The record in this matter includes more than 25 pages of briefing setting forth Defendants' strong meritorious defenses. *See* Dkt. No. 408 at 17-31; Dkt. No. 423 at 12-24. Moreover, Defendants filed an Answer to Plaintiffs' Amended Complaint denying the salient factual allegations contained therein. *See* Dkt. No. 408-24. Defendants' assertions of meritorious defenses include, *inter alia*:

- Specifically denying that the PA and PLO "refused and/or ignored American and Israeli demands to take effective measures to prevent further terrorist attacks by defendant HAMAS." Dkt. No. 408-24 at ¶ 28.
- Specifically denying that the PA and PLO acted as accessories after the fact to HAMAS or provided material support to HAMAS. Dkt. No. 408-24 at ¶ 41.

- Asserting, with factual support, that the PA and PLO were actively seeking to quash HAMAS' influence in West Bank and Gaza and to cut off funding to HAMAS from international sources. Dkt. No. 408 at 18, 21-22 (citing Exh. G (Patterns of Global Terrorism, 1995, Middle East Overview) at 19-20).

- Asserting, with factual support, that the PA and PLO would be able to show that HAMAS' shooting of the Ungars on June 9, 1996 was most likely an attempt to derail the peace process that the PA and PLO was championing at the time, and was designed to inflame public opinion, both in Israel and in Palestine, against the goals the PA and PLO were pursuing. Dkt. No. 408 at 18, 21-23 (citing Exh. H (Patterns of Global Terrorism, 1996) at 4), Exh. I (New York Times, Steven Erlanger, *Summit in Egypt: The Symbolism; The Meeting's Message: Put Terrorists on Notice*, March 14, 1996), Exh. J (Remarks at Signing Ceremony of U.S.-Israel Counterterrorism Accord, May 1, 1996) at 5, and Exh. K (Remarks at Signing Ceremony, April 30, 1996) at 6).

- Asserting, with factual support, that the PA's and PLO's actions after the shootings show that the PA and PLO were acting in contravention of, and not in concert with, HAMAS. Dkt. No. 408 at 29-31 (citing Exh. O (Arieh O'Sullivan, *Sharon Edri's Murderers Caught: Kafr Tzurif HAMAS Cell Behind 11 Killings*, Jerusalem Post (April 11, 1997)), Exh. P (Israeli Ministry of Foreign Affairs (IMFA) Press Release, *Suicide Bombings in Tel-Aviv*, March 21, 1997), Exh. Q (IMFA Press Release, *Israel Submits Formal Requests to the Palestinians to Hand Over PA Police Commander Ghazi Jabali and 4 Other Terror Suspects*, Sept. 22, 1997), Exh. R (Jonah Baker, *Who is Responsible?*, Palestine Report, Nov. 21, 1997) at 8-9, Exh. S (Certified Translation of What Purports To Be Letter From Abdel Rahman Ghneimat and Jamal Al Hor re capture), Exh. T (IMRA Interviews with HAMAS leader Rantisi, March 23, 2004), Exh. U (HAMAS communication dated Nov. 16, 1997) at 1.

- Asserting, with factual and record support, that the Ungars have alleged in another federal court that Iran, as opposed to the PA or PLO, facilitated, directed, and enabled HAMAS' execution of the Ungar shooting to disrupt the peace process the PA and PLO were pursuing with Israel. Dkt. No. 408 at 23-28; Dkt. No. 423 at 12-15.[1]

So, to the degree it is relevant to this discovery issue, the record conclusively

demonstrates that Defendants have put forth substantial, factually supported assertions of

---

[1] Defendant notes that only this last item in the non-exclusive list of meritorious defense assertions involves the Ungars' claims in federal court in the District of Columbia in *Ungar v. Islamic Republic of Iran*, Civ. No. 00-2606 (filed Oct. 27, 2000). Plaintiffs respond only to this issue in their Opposition with the same unfounded claims that they made in their briefing opposing Defendants' Rule 60(b)(6) Motion. However, as Defendants explained in their reply in support of their vacatur motion, Plaintiffs cannot now walk away from claims in their case against Iran that Hamas committed the shooting to disrupt the PA and PLO's efforts to complete the peace process and reach a final status agreement with Israel. Dkt. No. 423 at 12-15.

meritorious defenses. However, while the PA makes this point to rebut Plaintiffs' claims to the contrary, the real issue here is whether the record permits Plaintiffs to escape providing discovery on their claims, or whether discovery in this case should be, as they believe, a one-way street.

There are multiple reasons why the discovery sought by Defendant is appropriate and relevant to this Court's determination of Defendants' vacatur motion. First and most simply, the PA must seek discovery from Plaintiffs on the meritorious defense factor, in part because Plaintiffs refuse to acknowledge that Defendants' numerous averments establish a cognizable defense. This is especially true given the procedural posture of the pending Rule 60(b)(6) motion, where the Court has scheduled an *evidentiary* hearing.

Plaintiffs advance two additional arguments, neither of which provides reason for this Court not to grant Defendant's motion. First, Plaintiffs argue that the PA should not be permitted to seek discovery concerning the meritorious defense factor because Defendants "have **perfect knowledge** of their own conduct, whereas the Ungars do not and cannot have such knowledge." Dkt. No. 558 at 3 (emphasis in original). Plaintiffs do not cite any authority for this proposition, which stands civil discovery jurisprudence on its head. According to Plaintiffs' view of discovery, in any lawsuit regarding a defendant's conduct (which covers nearly all civil lawsuits), a defendant may never seek discovery concerning a plaintiff's allegations of the defendant's conduct because the defendant has "perfect knowledge" of that conduct. Relatedly, Plaintiffs claim that, because it is "Defendants' burden to assert a meritorious defense," Defendants cannot seek discovery from Plaintiffs on this factor while Plaintiffs may do so at will. Plaintiffs thus believe that the party bearing the burden of proof may not seek discovery

from the opposing party, while the opposing party may seek as much discovery as it wishes. There is no support for Plaintiffs' one-sided view of discovery, and the Court should disregard it.

Second, Plaintiffs claim that the case law cited in their objections and argued in their Opposition supports their refusal to provide discovery on the meritorious defense issue. Plaintiffs' authority, however, does no such thing. As an initial mater, Defendant did not, as Plaintiffs claim, "mischaracterize" the *Sierra Foods* decision, on which Plaintiffs rely, simply by citing to a later decision in that same matter. Indeed, the subsequent decision cited by Defendant not only discussed and referenced the prior opinion, but also vacated the default and default judgment entered against defendants. *Sierra Foods, Inc. v. Haddon House Food Prods., Inc.*, No. 90-6841, 1992 U.S. Dist. LEXIS 16667, at *63-66 (E.D. Pa. Sept. 22, 1992). In addition, Defendant pointed out, correctly, the very different context facing the court in *Sierra Foods*, which involved defendants' attempts to seek discovery before responding to plaintiff's complaint and then moving to set aside a default pursuant to Rule 55(c). *See Sierra Foods, Inc. v. Haddon House Food Products, Inc.*, Civil Action No. 90-6841, 1991 U.S. Dist. LEXIS 7417, at *1-7 (E.D. Pa. May 29, 1991). Moreover, the court in *Sierra Foods* explained that because all of the issues before it "involve, at least to some extent, the defendants' insistence that they need, and are entitled, to take discovery prior to serving a response to the Complaint, the discussion of this issue will apply, generally, to all of the pending motions." *Id.* at *8. *Sierra Foods* -- no matter which of its decisions -- is unavailing to Plaintiffs here, as this Court has already mandated that the parties engage in discovery and the only question now is whether it shall be one-sided and unfair, not whether it shall proceed at all.

Plaintiffs nonetheless rely upon two alleged "substantive holdings" in *Sierra Foods*, neither of which bear any relation to the situation facing this Court. Plaintiffs first state that

5

*Sierra Foods* held that "a defendant has full knowledge of -- and so does not require discovery of -- its own conduct, in order to present a 'meritorious defense.'" Dkt. No. 558 at 7 (citing *Sierra Foods*, 1991 WL 95287, at *10). Plaintiffs then state that *Sierra Foods* held that "a defendant does not require discovery in order to present a 'meritorious defense' because: 'Just as the plaintiff is not required to prove its case in the Complaint by detailing all of the evidence necessary to support each element of each theory of liability, defendants need not prove in their answer that plaintiff cannot prevail.'" *Id.* (citing same). However, these holdings did not relate to any discovery sought by defendants in relation to a Rule 60(b) motion, but rather concerned defendants' contention "that without pre-response discovery they were unable to assert meritorious defenses." *Sierra Foods*, 1991 U.S. Dist. LEXIS 7417, at *32. Here, Defendants are not saying that they need discovery for filing an Answer. They have already submitted a proposed Answer. Instead, Defendants seek discovery as to one of the contested factors in their Motion to Vacate, in a posture where this Court has already ordered discovery and scheduled an evidentiary hearing. *Sierra Foods* could not be less relevant to this issue. In any event, Defendants have already made sufficient averments of meritorious defenses in their vacatur motion and Answer to more than meet the pleading standard, but Plaintiffs refuse to recognize this fact *and* still resist discovery as to this issue. Therefore, one -- but not the only -- reason the PA seeks this discovery is to demonstrate that Defendants have indeed pled cognizable meritorious defenses.[2]

---

[2] Plaintiffs also claim that the PA ignored *Burrell v. Henderson*, 434 F.3d 826 (6th Cir. 2006). The PA did ignore *Burrell*, and for good reason. It is inapposite. The statement of law in *Burrell* upon which Plaintiffs rely -- that a court is not permitted to consider the underlying strength of plaintiff's claim when reviewing a motion for relief under Rule 60(b) -- has nothing to do with a party seeking discovery to support its assertions of meritorious defenses. *Id.* at 831. Indeed, there was no dispute about discovery into the meritorious defense factor at all in *Burrell*, as the Sixth Circuit found that the defendant had
(footnote continued on next page)

The PA also seeks the disputed discovery from Plaintiffs in order to gather relevant information and documents that will inform the Court of the relative strength of Defendants' meritorious defenses and weakness of Plaintiffs' allegations. The First Circuit held that Defendants' "meritorious claims of defense" constitute one factor to be "incorporated into a holistic appraisal of the circumstances" when this Court renders its decision on Defendants' vacatur motion. *See Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 83-84 (1st Cir. 2010). It is obvious, but obscure to the Plaintiffs, that the complete lack of support for their allegations and the strength of Defendants' defenses are relevant to the Motion to Vacate. Accordingly, Plaintiffs should be ordered to provide responsive materials.

## II. THE DISCOVERY SOUGHT BY THE PA IS RELEVANT TO WHETHER PLAINTIFFS WOULD BE PREJUDICED BY VACATUR AND WHETHER EXTRAORDINARY CIRCUMSTANCES ARE PRESENT

Plaintiffs claim that the discovery sought by the PA is irrelevant to the issues of prejudice and extraordinary circumstances. In so doing, Plaintiffs first ignore the relation of the written discovery to the prejudice factor and then advance contradictory positions on the issue of extraordinary circumstances.

With respect to prejudice, the written discovery propounded by Defendant seeks to have Plaintiffs provide information and documents supporting their allegations. The extent to which Plaintiffs currently possesses information and documents supporting their claims is something for this Court to consider when determining whether Plaintiffs would be prejudiced by the granting of Defendants' Motion to Vacate. Rather than recognize this overarching point, Plaintiffs instead focus on a single example offered by the PA of materials that would be relevant

---

(footnote continued from previous page)
asserted meritorious defenses that were "good at law" and, partially on that basis, reversed the default judgment and remanded the case. *Id.* at 835.

to this factor and responsive to the disputed written discovery -- "documentation or information regarding a particular PA official's knowledge or involvement in the *Ungar* incident." Dkt. No. 558 at 8 (quoting Dkt. No. 530 at 18). Plaintiffs argue that any such materials would not be responsive to the written discovery requests, which relate largely to allegations in the Amended Complaint. In so arguing, Plaintiffs ignore the fact that their own allegations state that the PA and PLO, and their "officials," aided Hamas and the individuals in the Hamas cell claiming responsibility for the murder of the Ungars. *See* Dkt. No. 530 at 4-14. Plaintiffs also argue that because the PA has propounded interrogatories specifically concerning prejudice claims, *see* Dkt. No. 558 (Exh. C at 1-12), they are somehow excused from answering any other interrogatories or requests for production of documents relating to the prejudice issue. This would be a convenient position for a litigant: they choose to answer some discovery requests on a relevant issue, but not others, at their own discretion. It does not work that way, and the Ungars need to also answer the written discovery requests they do not like, not just the ones they do.

  With respect to extraordinary circumstances, Plaintiffs' argument contradicts itself. Plaintiffs initially claim that the discovery sought by the PA cannot relate to any extraordinary circumstances because "the materials *already* of record clearly support the allegations of the Amended Complaint." Dkt. No. 558 at 9 (emphasis in original). Plaintiffs then state that they nonetheless "no longer have any means of proving their case today." *Id.* at 10. Plaintiffs need to make a decision. They either have no means to make their case or they have sufficient evidence for their allegations. Regardless, the discovery sought by the PA could support Defendants' argument that extraordinary circumstances are present here. As noted by the PA in its original Motion, if Plaintiffs have no evidentiary support for the allegations made in their complaint,

Plaintiffs' attempt to enforce a $116 million default judgment against the Palestinian Authority in the absence of any evidence that the PA is responsible for Mr. Ungar's death is an extraordinary circumstance that weighs into the PA's entitlement to Rule 60(b)(6) relief.

### III. PLAINTIFFS' REMAINING ARGUMENTS DO NOT JUSTIFY THEIR NON-RESPONSIVENESS TO DEFENDANT'S INTERROGATORIES AND REQUESTS FOR PRODUCTION

Plaintiffs end their Opposition with a hodgepodge of arguments that amount to nothing more than semantic complaints about Defendant's Motion or unsupported legal positions.

First, Plaintiffs claim that they need not provide documents that are, or once were, in the Defendants' exclusive possession. Dkt. No. 558 at 10. Once the Court cuts through all of Plaintiffs' word play, it is clear that Plaintiffs must either state that they do not possess any responsive information or documents or, alternatively, produce what they do possess. The Federal Rules of Civil Procedure do not permit Plaintiffs to guess or speculate about what is or was in Defendant's possession as a basis to avoid their discovery obligations. And, if Plaintiffs want to admit that the only way they would have had to prove their case was the hoped-for answers from PA officials with whom they have never spoken, that's fine. But, Plaintiffs need to admit this in response to the interrogatories and request for production propounded to them so this Court can see their allegations for what they are.

Second, Plaintiffs continue to seek to delay their answers to Defendant's contention interrogatories and requests for production on the grounds that they seek information that relates to fact or the application of law to fact. However, Plaintiffs offer no argument for this proposition and instead "reserve the right to argue" it. Dkt. No. 558 at 11. This is remarkable. Plaintiffs apparently would like to keep arguing on discovery issues until after the January hearing, raising its arguments one at a time. But this Court needs to move this litigation along and tell the Plaintiffs that *now* is the time for answers and production, not serial arguments.

9

Plaintiffs also argue, also without any legal support, that their objections should be upheld by the Court because, prior to the filing of the Motion to Vacate, "the PA and PLO intentionally refused to produce any discovery." *Id.* at 11. Plaintiffs argue, in essence, that pre-hearing discovery on a vacatur motion should be a one-way street because the defendant defaulted. This is circular reasoning and no basis to excuse Plaintiffs from producing information or documents relevant to this Court's determination of the Motion to Vacate.

Third, Plaintiffs take issue with Defendant's argument that Plaintiffs may not withhold documents obtained by Plaintiffs in connection with their litigation of *Ungar v. Islamic Republic of Iran*, Civ. No. 00-2606 (D.D.C.), on the basis that such documents are in the public record or already in Defendants' possession. *See* Dkt. No. 558 at 11. However, as Plaintiffs' counsel David Strachman is fully aware, the documents Plaintiffs received from the Israeli government in connection with their case against Iran are *not* publicly available and are therefore inaccessible to Defendants. In fact, the U.S. District Court for the District of Columbia designated Mr. Strachman as the custodian of all "underlying documents that were testified to" and "delivered to the Court in the raw form by the Israeli government" with an explicit instruction that, "if they are ever needed for review, *you're on the hook to provide them.*" *See* Exh. 1 (Jan. 15, 2002 Hearing Tr. in *Ungar v. Islamic Republic of Iran*) at 128:18-129:6 (emphasis added). Thus, Defendant has no way of accessing the documents responsive to its Request No. 15 *except* by asking Plaintiffs and their counsel to produce them. The *Ungar v. Iran* documents responsive to Request Nos. 17-19 are equally inaccessible to Defendant.[3]

---

[3] Similarly, Plaintiffs' counsel's statement that he "has no record or recollection of ever receiving any documents" related to the Hague Convention request that is the subject of Request No. 16, *see* Dkt. No. 558 at 12, needs to be reexamined in light of the transcript in the *Ungar v. Islamic Republic of Iran* litigation.

Plaintiffs appear to concede that, if their other objections are overruled, they will produce documents responsive to these requests -- but only "if they have them." *See* Dkt. No. 558 at 11. Given that Plaintiffs' counsel is under a court-ordered obligation as "an officer of the court" to serve as "the file clerk for those documents," Plaintiffs undoubtedly "have them," and Plaintiffs should be compelled to produce these documents on that basis. *See* Exh. 1 at 129:7-17.

## CONCLUSION

For the foregoing reasons, Defendant PA's Motion to Compel Answers to the PA's Interrogatory Nos. 12, 13, 14, 15, 16, 17 and 18 and Request for Production Nos. 8, 9, 10, 11, 12, 13, 14, 15, 17, 18 and 19 should be granted.

Respectfully submitted,

Dated:  October 15, 2010

/s/ Mark J. Rochon
Mark J. Rochon (D.C. Bar #376042)
Admitted *pro hac vice*
Richard A. Hibey (D.C. Bar #74823)
Admitted *pro hac vice*
Brian A. Hill (D.C. Bar #456086)
Admitted *pro hac vice*
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
mrochon@milchev.com
rhibey@milchev.com
bhill@milchev.com

Deming E. Sherman (#1138)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, Rhode Island 02903
Tel. (401) 274-9200
Fax. (401) 276-6611
dsherman@eapdlaw.com

11

*Attorneys for the Palestinian Authority and
the Palestine Liberation Organization*

Case 1:00-cv-00105-L-DLM    Document 567    Filed 10/15/10    Page 12 of 13 PageID #: 6198

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 15th day of October, 2010, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to:

>David J. Strachman
>McIntyre, Tate & Lynch, LLP
>321 South Main Street, Suite 400
>Providence, RI 02903
>Djs@mtlhlaw.com
>
>Max Wistow
>Wistow and Barylick Incorporated
>61 Weybosset Street
>Providence, RI 02903
>mwistow@wistbar.com
>
>*Attorneys for Plaintiffs*

/s/ Mark J. Rochon