# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

      Plaintiffs – Judgment Creditors,

v.                                                              C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.,

      Defendants – Judgment Debtors.

### PLAINTIFFS-JUDGMENT CREDITORS' MEMORANDUM IN OPPOSITION TO DEFENDANTS-JUDGMENT DEBTORS' RULE 35(a) MOTION TO COMPEL MENTAL EXAMINATIONS

#### Introduction

Plaintiffs-Judgment Creditors ("Ungars") respectfully submit this memorandum in opposition to the Rule 35(a) Motion to Compel Mental Examinations filed by the Defendants-Judgment Debtors' ("Defendants"). Dkt. # 559.

For the reasons set forth below, Defendants' motion should be denied.[1]

#### ARGUMENT

**I.    Rule 35(a) Exams Are Purely Discretionary**

Before presenting their substantive arguments below the Ungars would respectfully point out and emphasize as a threshold matter that the disposition of Defendants' motion rests entirely

---

[1] The Ungars are opposing Defendants' motion solely because of the emotional trauma and invasion of privacy Rule 35(a) examinations would entail and because, as shown below, Defendants are precluded entirely from challenging the amount of the judgment. The fact is that such examinations would not only support the original damages findings but demonstrate that the long-term harm caused the Ungars is worse than predicted in 2002. Indeed, *subsequent* to the damages hearing in this matter at least one of the Ungars required psychological treatment for the first time as a result of the murder.

within the sound discretion of this Court. *See e.g. Real v. Hogan*, 828 F.2d 58, 63 (1st Cir. 1987) (Noting that Rule 35 uses the term "may" and that therefore "the grant or denial of a Rule 35 motion clearly rests in the sound discretion of the trial court.") (quotation marks and ellipsis omitted); *Curtis v. Express, Inc.*, 868 F.Supp. 467, 468 (N.D.N.Y. 1994) ("Even if good cause is shown, it is still within the court's discretion to determine whether to order an examination."); *Hardy v. Riser,* 309 F.Supp. 1234, 1241 (N.D.Miss. 1970) ("Even when the 'good cause' and 'in controversy' requirements are met, it is still in the sound discretion of the trial court whether to order the examination.").

Thus, Defendants would have no "right" whatsoever to compel the examinations they are seeking even if they could meet the formal requirements of Rule 35(a) (which, as shown below, they cannot), and this Court may deny their motion simply as an exercise of its sound discretion.

## II.     Defendants Are Precluded From Challenging the Amount of the Judgment

Defendants seek to compel Rule 35(a) examinations of the Ungars for the purpose of challenging the amount of the judgment entered in this action.

However, it is well established that Rule 60(b) may not be used to relitigate issues already decided in the underlying case or on appeal. *See e.g. Dasey v. Massachusetts Dept. of State Police*, 111 Fed.Appx. 620 (1st Cir. 2004) (holding that a party "may not use a Rule 60(b) motion to relitigate issues already decided by [the court of appeals], or to raise issues that might have been, but were not, asserted in prior court proceedings.") *George P. Reintjes Co., Inc. v. Riley Stoker Corp.*, 71 F.3d 44, 49 (1st Cir. 1995) ("Rule 60(b) does not license a party to relitigate, whether via motion or independent action, any 'issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense.'") (quoting Moore, 7 Federal Practice, ¶ 60.37); *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 60

(2nd Cir. 1984) (a party "may not use proceedings seeking relief from or modification of a judgment under F.R.Civ.P. 60 simply to relitigate matters settled by the original judgment."); *In re Wylie*, 349 B.R. 204, 209 (9th Cir.BAP 2006) ("when reconsideration is sought under FRCP 60(b) after the appeal period has expired, the party seeking reconsideration is not permitted to revisit the merits of the underlying judgment or argue that the trial court committed some legal error in arriving at that judgment."); *Standard Quimica De Venezuela v. Central Hispano Intern., Inc.*, 189 F.R.D. 202, 205 n. 4 (D.Puerto Rico 1999) ("a motion under Rule 60(b) cannot be used as a vehicle to relitigate matters already litigated and decided by the court."); *Gibson v. Commissioner of Mental Health*, 2006 WL 2192865 at *2 (S.D.N.Y. 2006) ("Rule 60(b) motions that simply attempt to relitigate issues and thereby circumvent the appellate process are routinely dismissed."); *Batac Dev. Corp. v. B & R Consultants, Inc.*, 2000 WL 307400, at *3 (S.D.N.Y. 2000) (holding that a party "may not ... use Rule 60(b) as a substitute for appeal or to relitigate matters already resolved by the court adversely to that party."); *Nutter v. Wefald*, 885 F.Supp. 1445, 1450 (D.Kan. 1995) ("Not a substitute for a direct appeal, a rule 60(b) motion addresses matters outside the issues on which the judgment was entered. It is not the opportunity for the court to revisit the issues already addressed in the underlying order …") (citation omitted).

There is no question that the propriety of the amount of the judgment was actively litigated in the underlying proceedings. Defendants filed objections to Magistrate Judge Martin's recommendation of March 31, 2004 regarding damages, claiming that the amount of damages recommended was too large. *See Ungar v. Palestinian Authority*, 325 F.Supp.2d 15, 24 (D.R.I. 2004). This objection was overruled (*id*. at 24-25).

On appeal, Defendants abandoned their earlier claim in this Court that the amount of the damages was overlarge, thereby forever waiving this claim. *See Ungar v. PLO*, 402 F.3d 274,

282 (1st Cir. 2005) ("The defendants have not challenged either the measure of damages utilized by the lower court or the integrity of its mathematical computations.");

Defendants argued on appeal only that "the district court made a political statement in calibrating the size of the award." *Id*. This argument was rejected.

Thus, as the extensive case law cited above clearly shows, Defendants are now precluded from challenging the amount of the judgment in the context of their Rule 60(b)(6) motion.

Defendants may seek to argue in reply that their current challenge to the amount of the judgment differs somehow from that made in their objections to Magistrate Judge Martin's March 31, 2004 damages recommendation. The Court should reject any such argument because by operation of 28 U.S.C. § 636, Defendants forever waived any and all challenges to the assessment of damages other than the arguments included in their objections. A party cannot evade the waiver provisions of 28 U.S.C. § 636 by filing a Rule 60(b)(6) motion.

Defendants may also argue in their reply that because the judgment in this case was technically a "default judgment" nothing was actually litigated, and they are therefore not bound by prior determinations. The Court should reject any such argument. While it is true that defendants were ultimately defaulted for their refusal to answer or conduct discovery, that occurred only some four and a half years into the litigation and after numerous issues – including the propriety of the sum of the judgment – were litigated on the merits.

Thus, Defendants cannot now challenge the amount of the judgment any more than they can challenge venue, personal jurisdiction, justiciability, whether the complaint states a claim or any of the other myriad issues actively litigated and determined prior to entry of judgment.

Defendants may also argue that they are entitled to challenge the sum of the judgment in the context of their motion to vacate because the decision of the First Circuit remanding this case

4

specifically mentions the question of whether the judgment can withstand adversarial testing. *Ungar*, 599 F.3d at 86 ("[D]efendants tell a different tale ... They ... see the amount of the judgment as unlikely to withstand adversarial testing.").

Any such argument should be rejected because the question of whether the judgment can withstand adversarial testing was never raised by Defendants in their motion papers in this Court (*see* dkt. # 408, *passim*) or in Defendants' appellate briefs (*see* Exhibit A and B, *passim*), and was raised for the first time only during oral argument before the Court of Appeals.

Thus, the Ungars had no reason or occasion to argue that Defendants are precluded from challenging the amount of the judgment and neither this Court nor the Court of Appeals ever had any reason or occasion to consider – much less decide – the Ungars' preclusion argument.

Accordingly, and as is clear from the text of its decision, the Court of Appeal's reference to the question of whether the judgment can withstand adversarial testing is not a ***holding*** that the Defendants are entitled to assert such a claim, but merely an ***iteration*** of Defendants' claim.

In other words, the Court of Appeals' reference is purely descriptive, not prescriptive.

In sum: Defendants are precluded from challenging the amount of the judgment, and their motion should be summarily denied on this basis.

### III. The Ungars' Post-Judgment Mental State Is Irrelevant As a Matter of Law

The Defendants explain that they seek mental examinations of the Ungars because:

> More than fourteen years have passed since Yaron Ungar's death. More than ten years have passed since Plaintiffs filed their Amended Complaint alleging "severe" emotional distress. And more than eight years have passed since Plaintiffs testified about their emotional injuries at the hearing on their motion for default judgment. Given this passage of time, ***Defendants should be given the opportunity to assess any changes over the intervening years in the existence or extent of Plaintiffs' asserted mental injuries***.

Dkt. # 560 at 12-13 (emphasis added).

5

Defendants have got it completely wrong. The Ungars' post-judgment mental and emotional state is wholly irrelevant to Defendants' Rule 60(b)(6) motion as a matter of law. Just as a plaintiff is not entitled to subsequently re-open his judgment to obtain an increased damages award because his post-judgment circumstances turn out to worse than anticipated at the time of trial, so too a defendant cannot obtain Rule 60(b)(6) relief on the grounds that the harm to the plaintiff ultimately turns out to be less than predicted at trial. *See e.g. Davis by Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 136 (6th Cir. 1990) ("Death of a judgment plaintiff following so shortly after a jury award of damages based on an expected life span not realized is rare, but it is not the sort of 'extraordinary circumstance' contemplated by Rule 60(b)(6)"); *Campbell v. American Foreign S.S. Corp.*, 116 F.2d 926, 928 (2nd Cir. 1941) (If "facts occurring subsequent to the trial" were "ground for a new trial," the "litigation would never come to an end."); *Multimatic, Inc. v. Faurecia Interior Systems USA, Inc.*, 542 F.Supp.2d 677, 682-683 (E.D.Mich. 2008) (Change in circumstances subsequent to the judgment that indicated the original damages award was excessive do not constitute grounds for relief under Rule 60(b)(6) since a change in projected damages is "not the type of 'extraordinary circumstances' contemplated by Rule 60(b)(6).")

Thus, even assuming *arguendo* that Defendants were not precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, Defendants could not base such a challenge on changes in the Ungars' condition subsequent to the damages hearing. Therefore, the Ungars' current mental state is simply irrelevant here as a matter of law.

Indeed, if Defendants' absurd approach were adopted, every personal injury judgment debtor could file a Rule 60(b) motion from time to time attacking the damages award, and force the judgment creditor to undergo a Rule 35(a) examination to see if his condition has changed.

Defendants cite to *Shepherd v. American Broadcasting Companies* in purported support of their motion (dkt. # 560 at 5) but the actual facts of *Shepherd*, which Defendants mischaracterize, are wholly inapposite here and provide no support whatsoever for Defendants.

In *Shepherd*, the court decided to impose a default judgment as a sanction for misconduct. *See Shepherd v. American Broadcasting Companies*, 151 F.R.D. 179 (D.D.C. 1992). However, while the court stated that "Judgment by default is hereby entered in favor of plaintiffs, against defendants" (*id*. at 193) it did not then enter an actual judgment – i.e. a judgment awarding damages. Rather, it directed the plaintiffs to "file a proposed relief order and supporting memorandum (with appropriate documents) setting forth their damage claims." *Id*.

The defendants then moved for Rule 35(a) examinations of the plaintiffs, which the district court granted in a subsequent decision. *Shepherd v. American Broadcasting Companies,* 151 F.R.D. 194, 214 (D.D.C. 1993).

*Shepherd* thus stands for nothing but the rule, codified in Fed.R.Civ.P. 55(b), that a Court cannot enter a final judgment for unliquidated damages against even a defaulted defendant without first determining the amount the plaintiff's damages. *Id*.

Therefore *Shepherd* – in which the mental examinations were conducted **before** entry of final judgment – is totally inapposite to Defendants' motion to conduct such examinations eight years after the Ungars testified about their damages and six years after entry of final judgment.

**IV.     The Defendants Waived Examination of the Ungars in Their Rule 60(b)(6) Motion**

In their motion to vacate Defendants expressly waived any rights they may have had to require the Ungars to testify again or be examined. *See* dkt. # 408 at 49 ("Plaintiffs may suggest that the family should not be required to testify again about the incident. Defendants agree.").

Defendants should not be allowed to now renege on this waiver. Indeed, since Defendants waived any right to subject the Ungars to examination even if they *prevail* on their motion to vacate, that waiver is all the more binding today, when the Ungars hold a valid judgment and Defendants' entitlement to Rule 60(b)(6) relief has yet to be demonstrated.

Nor can Defendants argue seriously that their waiver refers only to testimony and not a Rule 35(a) examination. Indeed, "a mental or physical examination is often likely to be more grueling than a deposition." Wright & Miller, *Federal Practice and Procedure: Civil* § 2234.

## V. The Ungars Should Not Be Compelled to Undergo the Trauma of Examinations

Even assuming *arguendo* that the Defendants are not barred from seeking the examinations for all the reasons set forth above, their motion should be denied because it would be cruel and unjust to force the Ungars to – once again – undergo the excruciating emotional trauma of discussing their feelings regarding the death of their father/son/brother, which naturally will require them to focus on, relive and re-experience their grief and anguish.

Indeed, in *Gilmore v. PA*, Civ. No. 01-00853 (D.D.C.), Defendants implicitly acknowledged that requiring the family members of a man murdered in a terrorist attack to testify regarding their loss a second time would be unjust, by agreeing to waive further testimony within the context of their motion to vacate default in that case. *See* Exhibit C at 33.

The *Gilmore* court found that the Defendants had greatly understated the emotional trauma involved in forcing the plaintiffs to testify again, noting the "the enormous emotional cost to Plaintiffs should they be forced to undergo the excruciating process of testifying about their loss all over again" and the "serious prejudice to Plaintiffs that would result from their ... undergoing the wrenching process of testifying again." *Gilmore v. PA*, 675 F.Supp.2d 104, 111 (D.D.C. 2009) (quotation marks omitted).

The Ungars have already gone through the agonizing process of testifying about their loss, during the damages hearings held by this Court in 2002, at which time Defendants had a full opportunity to participate and to examine the Ungars – but failed to do so.

While Defendants have a right to file a motion under Rule 60(b)(6), they have no right to inflict further pain on the Ungars by compelling them "to undergo the excruciating process of testifying about their loss all over again." *Gilmore*, *id.*.

For this reason too, Defendants' motion should be denied.

## VI. Any Examinations Should Be Conducted in Israel

For all the reasons above Defendants' motion should be denied in its entirety.

However, in the event (which the Ungars respectfully hope to be unlikely) that the Court decides to grant the motion, it should direct that the examinations take place in Israel and reject Defendants' demand that the Ungars travel to Rhode Island for the examinations.

Defendants' demand that the examinations be conducted in Rhode Island because that is "the district where Plaintiffs chose to file suit" (dkt. # 560 at 14) reeks of cynicism and bad-faith. The Ungars of course understand and agree that, having filed suit in Rhode Island, they were obligated to travel to Rhode Island as necessary for the proceedings in this case. But the Ungars fulfilled that obligation eight years ago, when they appeared at the damages hearing in this matter. Defendants are entitled to attempt to extricate themselves from their own intentional default but in doing so they are not entitled and should not be permitted to impose unnecessary costs or inconvenience on the Ungars. Accordingly, if Defendants' motion is granted (which it should not be) the examinations should take place in Israel.

**WHEREFORE**, Defendants' motion should be denied.

Dated: October 21, 2010

Plaintiffs-Judgment Creditors,
by their Attorneys,

/s/ David J. Strachman
David J. Strachman #4404
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com

Max Wistow #0330
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on October 21, 2010, a true copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701

/s/ David J. Strachman