UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____
                                            )
THE ESTATE OF YARON UNGAR, et al.,          )
                                            )
       Plaintiffs,                          )
                                            )
       v.                                   )   C.A. No. 00-105L
                                            )
THE PALESTINIAN AUTHORITY, et al.,          )
                                            )
       Defendants.                          )
                                            )
_____)

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION
FOR ENTRY OF A PROTECTIVE ORDER REGARDING PLAINTIFFS'
NOTICES OF DEPOSITION PURSUANT TO RULE 30(b)(6)**

Defendants The Palestinian Authority's ("PA's") and The Palestine Liberation Organization's ("PLO's") Motion for Entry of a Protective Order Regarding Plaintiffs' Notices of Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6) demonstrated that Plaintiffs' notices, each of which identified over 100 deposition topics (1) are grossly overbroad and impose an undue burden on Defendants, (2) include irrelevant deposition topics, (3) seek testimony from the PA and PLO concerning information protected by the attorney/client privilege and/or work product doctrine, (4) seek testimony that is cumulative or duplicative, and (5) are unreasonable in their proposed time and location.

Plaintiffs' opposition fails to distinguish a single legal authority cited by Defendants in support of the motion or address a single deposition topic sub-part within Plaintiffs' voluminous Rule 30(b)(6) notices. Instead, Plaintiffs claim that their notices are "thematically" smaller than they appear and Defendants should therefore fully comply with them. Plaintiffs also fail to acknowledge Defendants' proposed alternative procedure for Rule 30(b)(6) depositions. In sum,

1113946.1

Plaintiffs' opposition dodges Defendants' objections, arguments, and efforts to find a middle ground, leaving the Court with ample basis to grant Defendants' motion.

## ARGUMENT

### I. PLAINTIFFS' RULE 30(b)(6) DEPOSITION NOTICES ARE OVERBROAD AND UNREASONABLE AS SERVED

Defendants devoted nearly five pages of their Memorandum to explaining the overbroad and unreasonable nature of Plaintiffs' Rule 30(b)(6) notices, supported by specific examples and case law.  *See* Dkt. No. 549 at 6-10.  Plaintiffs make no effort in their opposition to address Defendants' case authority or Defendants' objections to specific deposition topics.  Instead, Plaintiffs claim that their two Rule 30(b)(6) notices, each of which identify more than 100 "Deposition Topics" (including discrete sub-parts) on which the PA and PLO are each to produce witnesses to testify, really "comprise only seven subjects." Dkt. No. 565 at 1.

Plaintiffs, however, did not serve Rule 30(b)(6) notices listing only seven thematic subjects and cannot now rehabilitate their notices by attempting to "thematically" group their deposition topics in an effort to make them appear less burdensome than they actually are.  Nor can Plaintiffs' dispel the burdensome nature of notices that seek depositions on over 100 topics, by engaging in the self-serving speculation that "only a small number of witnesses will need to testify for the PA/PLO on these subjects." *Id.* at 2.  Even assuming the Court were to credit Plaintiffs' unsubstantiated views regarding how many Rule 30(b)(6) designees would be needed, Plaintiffs ignore the considerable burden associated with preparing these "small number of witnesses" to prepare for depositions on their portion of the 100-plus topics.

Plaintiffs then devote a section of their opposition to arguing that the deposition topics are not "vague." *Id.* at 2-3.  However, the term "vague" does not even appear in Defendants' Memorandum, which instead argues that the deposition topics are overbroad and unreasonable,

2

especially in the context of the brief Rule 60(b)(6) discovery prescribed by this Court. Having no good answer as to the objections Defendants actually made, Plaintiffs instead choose to challenge arguments Defendants did not make.

Significantly, Plaintiffs ignore Defendants' proposal regarding appropriately scoped Rule 30(b)(6) depositions of the PA and PLO, which would allow Defendants to identify and produce a relatively small number of designees. *See* Dkt. No. 549 at 29-30. If Plaintiffs truly believe they can distill their Rule 30(b)(6) notices into thematic categories, then they should have no objection to Defendants' proposal to provide designees to testify to non-privileged information responsive to four topic areas relevant to the issues before the Court. *Id.* Yet Plaintiffs fail to acknowledge Defendants' proposal at all and instead, without referencing the full breadth of their deposition notices, insist that they are entitled to examine the PA and PLO on each and every deposition topic. However, neither the scope of Plaintiffs' notices nor the case law concerning such notices supports Plaintiffs' supposed entitlement.

## II. DEFENDANTS ARE ENTITLED TO A PROTECTIVE ORDER NARROWING PLAINTIFFS' PROPOSED DEPOSITION TOPICS SEEKING TESTIMONY CONCERNING IRRELEVANT MATTERS SUCH AS THE WILLFULNESS OF DEFENDANTS' DEFAULT, PLAINTIFFS' COLLECTION ACTIONS, AND THE TIMELINESS OF DEFENDANTS' MOTION TO VACATE

Plaintiffs argue that the deposition topics relating to the willfulness of Defendants' default, Plaintiffs' actions to collect the default judgment and the timeliness of Defendants' filing of their Motion to Vacate are relevant areas of discovery during the pre-hearing period. Dkt. No. 565 at 3-5. Once again, however, Plaintiffs fail to address the case law supporting Defendants' position or the objections lodged by Defendants as to specific deposition topics that are not relevant to any Rule 60(b)(6) factor as to which there is a continuing factual dispute. Simply put, Plaintiffs' bald assertions of relevance do not meet their burden of showing relevance. *See TG*

3

*Plastics Trading, Co. v. Toray Plastics*, 2010 U.S. Dist. LEXIS 23498, at *5-6 (D.R.I. Mar. 11, 2010).

<u>*Willfulness*</u>

As Defendants' explained in their motion (Dkt. No. 549 at 11), a substantial number of the deposition topics are directed at re-establishing the willfulness of the default. This Court and the First Circuit have concluded that the default was willful and Defendants repeatedly have conceded that the default was willful. In their motion, Defendants argued that Plaintiffs are not entitled to Rule 60(b)(6) discovery as to a factor as to which there is no continuing factual dispute. *Id.* In their opposition brief, Plaintiffs assert that the "circumstances of the PA/PLO's willful default will be a primary focus of the January hearing." Dkt. No. 565 at 3.

In an effort to manufacture a factual issue as to which discovery is relevant, Plaintiffs argue that Defendants have offered "three different reasons" for defaulting and assert they are entitled to discovery to explore the "varying and sometimes conflicting reasons for intentionally defaulting." *Id.* Two of the three "varying and sometimes conflicting reasons," however, are entirely of Plaintiffs' own making and have never been argued by Defendants. The PA/PLO have never argued that reasons for defaulting included "strategically attempting to shield themselves from foreign collection proceedings" or "expressing disdain for U.S. courts and proceedings." *See id.* at 3. In fact, the first purported reason is nonsensical -- Plaintiffs are suggesting that the PA/PLO argued that they did not litigate *Ungar* on the merits and defaulted so they could shield themselves from foreign collection proceedings spawned by the *Ungar* judgment. Leaving aside Plaintiffs' gross mischaracterizations of Defendants' descriptions of the factors contributing to the default, Plaintiffs do not explain how any of the factors the PA/PLO actually identified are "conflicting," why one would expect there to be a "single" reason

4

why the PA and PLO initially did not defend the case on the merits, or why -- with willfulness having been conceded -- the reasons for the willful default are relevant to the Rule 60(b)(6) analysis.

Plaintiffs appear to have been emboldened in making willfulness the focus of their discovery efforts and the upcoming hearing by a statement made in the Court's April 1, 2010 order immediately following the remand from the First Circuit. *See* Dkt. No. 565 at 3 (quoting Dkt. No. 482) (the "Court will hold an evidentiary hearing to determine precisely what the facts are concerning the deliberate decision to default and the factual circumstances surrounding the matter."). The First Circuit held that this Court erred in treating willfulness as the sole, dispositive factor and directed the Court, on remand, to consider the other factors relevant to vacatur. When deciding whether to grant Rule 60(b)(6) relief, the Court can of course weigh into that consideration the fact that Defendants intentionally defaulted and have conceded the willful nature of their default. But, with willfulness having been conceded, making willfulness the subject of discovery and the January 2011 evidentiary hearing improperly diverts attention from the factors on which the First Circuit directed the Court to focus. Moreover, given the limited time available for Rule 60(b)(6) discovery and the number of contested Rule 60(b)(6) factors on which to conduct discovery, there is no defensible rationale for pursuing discovery on the willfulness factor. With the PA and PLO already having apologized to the Court and offered a sincere *mea culpa* on the intentional default, Plaintiffs' continued focus on willfulness appears punitive and designed solely harass and embarrass Defendants.

### *Enforcement-Related Discovery*

As to Plaintiffs' attempt to conduct discovery concerning their various collection cases, Plaintiffs argue they are entitled to seek discovery even if it is "related *only* to the various

5

collection cases" because such discovery is "consistent with" Federal Rule of Civil Procedure 69(a)(2), which authorizes discovery in aid of an enforcement action. Dkt. 565 at 4 (emphasis in original). But the discovery period prescribed by this Court does not concern an enforcement action, but rather a Rule 60(b)(6) motion to vacate. Moreover, during the June 15, 2010, hearing on Plaintiffs' motion for a payment decree, the Court stated it would defer ruling on Plaintiffs' enforcement-related motion because "[n]ow we're dealing with a motion to vacate," and the focus should be on discovery related to the January 2011 evidentiary hearing. Tr. at 28:13-15, 29:4-8. In light of the Court's position, even assuming *arguendo* that Rule 69(a)(2) authorized the Rule 30(b)(6) depositions Plaintiffs seek to take, Plaintiffs may not use the Rule 60(b)(6) discovery period to conduct enforcement-related discovery.

Plaintiffs then argue that discovery relating to the PA/PLO's alleged "bad faith and unclean hands in the collection cases" is "absolutely and directly relevant to whether the court should exercise its equitable powers and grant the PA/PLO's motion to vacate the judgment." Dkt. No. 565 at 4. With respect to the 20 deposition topics that relate to Plaintiffs' enforcement of the judgment, *see* discussion at Dkt. No. 549 at 12-13, Plaintiffs make no effort to articulate how any specific topic is relevant to establishing that the PA/PLO's actions make them ineligible for Rule 60(b)(6) relief. *See* Dkt. No. 565 at 4. Further, vague and unsubstantiated allegations of "bad faith and unclean hands," *id.* at 4, do not grant Plaintiffs a license to conduct a fishing expedition through depositions of foreign officials regarding topics that are far afield from the factors identified by the First Circuit.

Plaintiffs argue they are entitled to otherwise non-relevant discovery as a result of the PA/PLO's allegedly "contemptuous behavior." *Id.* Other than alluding to the undisputed fact that the PA/PLO have not paid the judgment, the Plaintiffs identify no so-called "contemptuous

6

behavior" other than their allegations related to the Palestine Investment Fund's actions after the Court's 2006 judgment on Plaintiffs' creditor's bill.

Plaintiffs cite no case law treating the non-satisfaction of the judgment as relevant to a defendant's Rule 60(b)(6) motion. Defendants previously have argued, in the context of briefing on their motion for a protective order regarding certain third-party communications, why -- as a legal matter -- Defendants' non-satisfaction of the judgment does not provide a basis for obtaining discovery of post-judgment communications in connection with the Rule 60(b)(6) vacatur motion. *See* Dkt. 561 at 8-11. And, as explained at length in the same brief, *id.* at 12-17, Plaintiffs' allegations regarding the Palestine Investment Fund are irrelevant to the PA/PLO's entitlement to relief unless the Court concludes that the Palestine Investment Fund is an alter ego of the PA and/or PLO and that its actions may be imputed to them. This Court, however, has consistently maintained that such alter ego issues are to be resolved by the courts adjudicating the ongoing enforcement actions. *See id.* at 3-4, 14-15. Plaintiffs accordingly acknowledge that they "are not seeking to have the merits *vel non* of these collection matters adjudicated in Rhode Island." Dkt. No. 565 at 4. Therefore, as the Palestine Investment Fund's actions are presumptively those of the Palestine Investment Fund and cannot be attributed to the PA or PLO, Plaintiffs offer no evidence of any actions by the PA or PLO that constitute "bad faith" or "unclean hands." With respect to any transfer of funds from the Palestine Investment Fund to the PA after the entry of the 2006 creditor's bill judgment, PA Deposition Topic 10(c) (Dkt. No. 549, Exh. 1 at 13), Plaintiffs already have identified that such fund transfers occurred based on information made public by the Palestinian Authority Ministry of Finance. *See* Dkt. No. 553 at 9 and nn. 12, 13. Defendants have previously argued why the 2006 creditor's bill judgment does

7

not prohibit such transfers. Dkt. No. 561 at 12-17. Plaintiffs are free to argue otherwise, but they offer no basis for conducting a deposition on the topic.

### *Timeliness*

As discussed in Defendants' motion, numerous deposition topics relate to whether the PA/PLO satisfied Rule 60(c)(1)'s requirement that the Rule 60(b) motion to be filed within a reasonable time. *See* Dkt. No. 549 at 15. In their motion, Defendants cited several cases treating the Rule 60(c)(1) inquiry as a threshold issue that must be addressed before turning to the merits of the Rule 60(b) motion. *See id.* at 16-17. Here, Plaintiffs argued to both this Court and the First Circuit that the PA/PLO's vacatur motion was untimely under Rule 60(c)(1), yet neither court viewed the nearly 3-1/2 year delay as precluding consideration of the PA/PLO's Rule 60(b)(6) motion.

Plaintiffs do not engage with Defendants' arguments or the case authorities cited by Defendants but instead provide a two-sentence conclusory response that characterizes the Defendants' position as "bizarre." Dkt. No. 565 at 5. Plaintiffs' rest their entitlement to discovery on the timing of the default on the First Circuit's statement in *Ungar* that, in general, "the timing of the request for relief" is a factor relevant to consideration of Rule 60(b) motions. *Id.* (quoting *Ungar*, 500 F.3d at 83). Plaintiffs' fail to explain how, in the context of the procedural history of *this* vacatur motion, Rule 60(c)(1) remains relevant. The First Circuit did not remand the PA/PLO's motion to the Court for its "full-throated consideration" of the extraordinary circumstances Defendants argue warrant vacatur relief, *see Ungar v. PLO*, 599 F.3d 79, 86-87 (1st Cir. 2010), only to have the Court reject the motion on the threshold timing issue it previously had not treated as disqualifying. In any event, the timing "is what it is." The

8

First Circuit's reference to timing being a relevant factor under Rule 60 was not an invitation for Plaintiffs to conduct extensive discovery regarding the *reasons* for the timing.

### III. DEFENDANTS ARE ENTITLED TO A PROTECTIVE ORDER NARROWING PLAINTIFFS' PROPOSED DEPOSITION TOPICS SEEKING TESTIMONY CONCERNING PRIVILEGED AND/OR PROTECTED MATTERS

In response to Defendants' request for entry of a protective order limiting deposition topics that seek testimony concerning privileged and/or protected matters, Plaintiffs' inaccurately claim that Defendants have "waived" these privileges by asserting an "advice of counsel defense." Dkt. No. 565 at 5. Plaintiffs, however, cannot identify a single instance in which Defendants relied on advice of counsel as a defense. Indeed, the sole mention of counsel's advice cited by Plaintiffs was made by the First Circuit and not Defendants. Dkt. No. 565 at 6 n.1. Generic references in Defendants' briefs to the PA/PLO's misunderstanding of the U.S. legal system, *see id.*, do not give rise to a waiver of the attorney-client privilege.

Even assuming *arguendo* that references to the PA/PLO's misunderstanding of the U.S. legal system could be construed as revealing attorney-client communications, these statements were made in the context of discussing the willfulness factor, a factor Defendants have conceded. As Plaintiffs' acknowledge, courts treat reliance on advice of counsel defenses as creating a waiver where litigants are using the "attorney-client privilege as both a sword and a shield." Dkt. No. 565 at 5. There can be no use of a "sword" as to a conceded issue.

With their privilege waiver argument, Plaintiffs are overreaching both on the facts and the law, and the Court should reject their efforts to depose PA and PLO officials regarding such out-of-bounds topics as privileged communications and litigation strategy.

9

## IV. DEFENDANTS ARE ENTITLED TO A PROTECTIVE ORDER NARROWING PLAINTIFFS' PROPOSED DEPOSITION TOPICS SEEKING TESTIMONY CONCERNING ISSUES THAT ARE MORE APPROPRIATELY ADDRESSED THROUGH OTHER FORMS OF DISCOVERY

In their Motion, Defendants established that they are entitled to a protective order substantially narrowing the Rule 30(b)(6) topics noticed by Plaintiffs because many of those topics seek testimony about issues that are more appropriately addressed through other forms of discovery. Dkt. No. 549 at 20-26. In particular, Defendants showed that many deposition topics are duplicative of Plaintiffs' Third Request for Production of Documents, and that some of the information sought in the deposition topics should have been sought through contention interrogatories. *Id*. at 20-24. Plaintiffs disagree, arguing that the 30(b)(6) depositions are an "appropriate vehicle for this discovery." Dkt. No. 565 at 7.

Plaintiffs, however, once again fail to address the authorities cited in Defendants' Memorandum, which clearly hold that where a Rule 30(b)(6) topic "seeks information which could be more easily obtained from another source, the court may refuse to allow that topic to be the subject of a 30(b)(6) deposition." Dkt. No. 549 at 20 (quoting *Dongguk Univ. v. Yale Univ.*, No. 3:08CV441, 2010 U.S. Dist. LEXIS 83987, at *10 (D. Conn. Aug. 17, 2010). Despite a heading in their brief indicating a discussion of the subject, nowhere do Plaintiffs address head-on the fact that their deposition topics are duplicative of their Third Request for Production of Documents. Instead, they cite two distinguishable cases for the proposition that "[r]equests for production of documents and interrogatories are no (sic) adequate substitutes for live deposition testimony." Dkt. No. 565 at 7.

In neither *Kaplan v. Chicago*, No. 05-C-2001, 2009 U.S. Dist. LEXIS 57834 (N.D. Ill. July 6, 2009), nor *Moskowitz v. Lopp*, 128 F.R.D. 624 (E.D. Pa. 1989), did the court decide whether the scope of a Rule 30(b)(6) deposition notice should be narrowed because of

10

duplicative discovery requests.  In *Kaplan*, the court had entered summary judgment against plaintiff, and held that plaintiff, as part of the bill of costs, was required to pay the costs associated with her deposition.  2009 U.S. Dist. LEXIS, at *10-11.  While Plaintiffs here focus entirely on the court's comment that "the production of documents is no substitute for the live deposition," *id.* at *11, they fail to acknowledge the court's holding that actually *does* apply here: "Deposition and transcript costs are recoverable where the deposition *was reasonably necessary at the time the deposition was taken in light of the facts known at the time*."  *Id.* at *10-11 (citing *Majeske v. City of Chicago*, 218 F.3d 816, 825 (7th Cir. 2000)) (emphasis added).

Plaintiffs fare no better with *Moskowitz*, a case in which the court merely decided to certify the plaintiff as class representative, in part because he submitted responses to a defendant's interrogatories.  *Moskowitz*, 128 F.R.D. at 636.

As to the deposition topics that seek testimony from the PA and PLO concerning the "full basis" for contentions made by Defendants in the Motion to Vacate or in other filings or discovery responses, Plaintiffs again ignore Defendants' authority.  Defendants' original Memorandum made clear that although a plaintiff "has a right to discover the facts upon which [the defendant] will rely for its defense and counterclaims, [plaintiff's] attempt to discover those facts through a Rule 30(b)(6) deposition is overbroad, inefficient, and unreasonable."  *In re Independent Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996).  Thus, "[e]ven under the present-day liberal discovery rules, [a defendant] is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim."  *Id.*  Therefore, Plaintiffs' argument that they may properly seek Rule 30(b)(6) testimony from the PA and PLO concerning their "factual assertions" cannot escape Defendants'

cited authority, which stresses that parties should find more efficient ways to conduct this discovery.

Finally, concerning Plaintiffs' attempt to seek Rule 30(b)(6) testimony about numerous issues that were or could have been raised during Plaintiffs' July 28, 2010 deposition of Prime Minister Salam Fayyad, *see* Dkt. No. 549 at 24-26, Plaintiffs argue "they were under no obligation to seek this testimony from Mr. Fayyad in his individual capacity, not least because any such testimony would not have bound the PA or PLO."  Dkt. No. 565 at 8.  The notion that Plaintiffs were deposing Prime Minister Fayyad in his "individual capacity" finds no support in fact or case law and certainly does not provide a basis for Plaintiffs to get a "do-over" with respect to depositions on topics that were or should have been raised with the Prime Minister.

## V.     PLAINTIFFS FAIL TO JUSTIFY THEIR UNREASONABLE PROPOSED LOCATION AND DEPOSITION PROCEDURE

Despite their belief that Plaintiffs' Rule 30(b)(6) notices are wholly inappropriate as served, Defendants provided the Court with an alternative procedure according to which they would produce designees at a reasonable time, in reasonable places, to testify on relevant, non-privileged matters of reasonable scope.  Dkt. No. 549 at 26-30.

Plaintiffs again claim that Defendants should be treated as plaintiffs for the purposes of deposition location, but simply cite the same case that Defendants distinguished in their first brief.  *See* Dkt. No. 565 at 9 (citing *Continental Federal Sav. & Loan Ass'n v. Delta Corp. of America*, 71 F.R.D. 697, 700 (W.D. Okl. 1976) (involving a defendant bringing a permissive counterclaim)).  Here, Defendants' agents and employees largely reside in Occupied Palestinian Territory in the Middle East and neither Defendant has filed a permissive counterclaim of any kind.  The PLO and the PA seek to simply litigate their defenses in good faith and do not affirmatively wish to avail themselves of this forum in any way.  Thus, Plaintiffs' analogy fails.

12

Accordingly, should this Court adopt a procedure by which Defendants produce Rule 30(b)(6) designees for deposition, the Court should order that the depositions occur where the designees are located or are reasonably able to travel on relatively short notice and be presided over by a judge or special master.[1]

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Entry of a Protective Order Regarding Plaintiffs' Notices Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6) should be granted.

Respectfully submitted,

Dated:  October 22, 2010

 /s/ Mark J. Rochon___
Mark J. Rochon (D.C. Bar #376042)
Admitted *pro hac vice*
Richard A. Hibey (D.C. Bar #74823)
Admitted *pro hac vice*
Brian A. Hill (D.C. Bar #456086)
Admitted *pro hac vice*
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
mrochon@milchev.com
rhibey@milchev.com
bhill@milchev.com

---

[1] Plaintiffs fail to respond to Defendants' objection to Plaintiffs' demand for detailed written designations identifying designees and providing additional information, which has no basis in the Federal Rules of Civil Procedure.  Accordingly, the Court should not require Defendants to provide such a "written designation" for the reasons set forth in Defendants' initial brief.  Dkt. No. 549 at 28-29.

Deming E. Sherman (#1138)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, Rhode Island 02903
Tel. (401) 274-9200
Fax. (401) 276-6611
dsherman@eapdlaw.com

*Attorneys for the Palestinian Authority and
the Palestine Liberation Organization*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 22nd day of October, 2010, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to:

>David J. Strachman
>McIntyre, Tate & Lynch, LLP
>321 South Main Street, Suite 400
>Providence, RI  02903
>Djs@mtlhlaw.com
>
>Max Wistow
>Wistow and Barylick Incorporated
>61 Weybosset Street
>Providence, RI 02903
>mwistow@wistbar.com
>
>*Attorneys for Plaintiffs*

>/s/ Mark J. Rochon