UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____
                                                            )
THE ESTATE OF YARON UNGAR, et al.,       )
                                                            )
        Plaintiffs,                                      )
                                                            )
        v.                                                  )          C.A. No. 00-105L
                                                            )
THE PALESTINIAN AUTHORITY, et al.,        )
                                                            )
        Defendants.                                   )
                                                            )
_____)

**DEFENDANT THE PALESTINIAN AUTHORITY'S MOTION
TO COMPEL ANSWERS TO DEFENDANT'S INTERROGATORY
NOS. 19-21 AND RESPONSES TO DEFENDANT'S REQUEST FOR PRODUCTION
NOS. 23, 25-26 AND 29-35 AND MEMORANDUM IN SUPPORT THEREOF**

Defendant The Palestinian Authority ("PA"), through counsel, respectfully moves this

Court pursuant to Federal Rule of Civil Procedure 37(a)(3)(B) to compel Plaintiffs to provide

fully responsive answers to Interrogatory Nos. 19-21 of the PA's Second Set of Interrogatories,

and produce all documents and things responsive to Request Nos. 23, 25-26 and 29-35 of the

PA's Second and Third Requests for Production of Documents and Things.  For the reasons set

forth below, Plaintiffs' refusal to answer the specified interrogatories or produce documents or

things in response to the specified requests for production cannot be justified in light of the First

Circuit's March 25, 2010 decision, this Court's August 18, 2010 order, and each party's right to

be afforded an equitable opportunity to prepare their evidence for the January 18, 2011 hearing

on the PA's and The Palestine Liberation Organization's ("PLO's") pending Motion for Relief

From Default Judgment (Dkt. No. 408).

1114089.1

Plaintiffs propose to comply with these discovery requests only after discovery closes, or not at all.  In essence, Plaintiffs' position can have only one effect, and it appears intended:  to derail the January 18, 2011 hearing in this case.

Accordingly, the Court should order Plaintiffs to produce fully responsive and complete interrogatory answers and responsive documents on an expedited basis before the November 19, 2010 close of discovery.

## FEDERAL RULE OF CIVIL PROCEDURE 26(c)(1) CERTIFICATION

Counsel for Defendant hereby certify that, as required by Fed. R. Civ. P. 26(c)(1), they have conferred with all parties or non-parties who may be affected by the relief sought in the Motion in a good faith effort to resolve the issues raised in the Motion and have been unable to do so.

## LOCAL RULE Cv 7(e) REQUEST FOR ORAL ARGUMENT

Pursuant to LR Cv 7(e), Defendant PA respectfully requests oral argument on the issues raised in this Motion.  Defendant estimates that an oral argument on this Motion will last approximately 45 minutes.

## RELEVANT BACKGROUND

In March 2010, the U.S. Court of Appeals for the First Circuit reversed the Court's denial of Defendants' Motion for Relief from Default Judgment (the "Motion, or "Rule 60(b)(6) motion") and remanded the matter to the Court for reconsideration of the Motion.  *Ungar v. Palestine Liberation Org.*, 599 F.3d 79 (1st Cir. 2010).  In outlining what circumstances might inform this Court's judgment in resolving Defendants' vacatur motion, the Court of Appeals indicated that several "potentially relevant factors" including whether "the amount of the judgment" was "unlikely to withstand adversarial testing" were "deserv[ing of] full-throated

consideration" on remand.  *Id.* at 86, 87.  In compliance with the Court of Appeals' mandate, this

Court set a hearing date of January 18, 2011 to re-assess the merits of Defendants' Motion to

Vacate.  The Court has also permitted pre-hearing discovery, and directed that such discovery be

completed by November 19, 2010.  Dkt. No. 489.

Following remand, the Court initially intimated that the amount of the damage award

would not be a proper subject of dispute at the upcoming hearing on the Motion to Vacate

because the Court recollected that the First Circuit had "upheld the size of this judgment" in its

2005 opinion.  The Court made such statements both during an off-the-record June 1, 2010 in-

chambers conference, and at the June 15, 2010 hearing on Plaintiffs' motion for a payment

decree.  *See* June 15, 2010 Hearing Tr. at 29:15-17.  As a result, on July 7, 2010, Defendants

filed a Motion for Leave to Take Discovery on Whether the Damage Award Would Withstand

Adversarial Testing.  Dkt. No. 497.  Defendants' supporting brief demonstrated that "[c]ontrary

to the Court's recollection, the First Circuit did not uphold the size of the judgment but rather

held only that the size of the judgment did not create a non-justiciable political question," and

ultimately "t[ook] no view" on whether "the court erred on the side of generosity."  Dkt. No. 498

at 2 (quoting *Ungar v. Palestine Liberation Org.*, 402 F.3d 274, 282 (1st Cir. 2005) (emphasis

added)).  Defendants' brief also quoted the "extensive discussion about whether the $116 million

award would survive adversarial testing and whether the propriety of the award was a proper

consideration in the Rule 60(b)(6) context" which had taken place at the First Circuit's 2010 oral

argument.  *Id.* at 3-4.

On July 26, 2010, Plaintiffs filed a "Response" to Defendants' Motion.  Dkt. No. 503.

Plaintiffs' Response noted their position that (1) Defendants had previously "waived any

challenge to the assessment of damages" other than those asserted in 2004, and (2) even if there

was no such waiver, defendants were not entitled to discovery.  *Id.* at 1.  However, Plaintiffs'
response went on to state that, nevertheless, "the Ungars will not oppose (without waiving or
derogating from their position as set forth above) defendants' motion to permit them to take
some damages discovery."  *Id.* at 2.  On August 18, 2010, the Court granted Defendants' Motion
because "[i]n light of this response, the Court finds that the motion is unopposed."  Dkt. No. 506.

The PA served its Second Set of Interrogatories (19-21) to Plaintiffs and its Second
Request for Production of Documents and Things (23-26) to Plaintiffs on August 25, 2010.  The
PA served its Third Request for Production of Documents and Things (27-36) to Plaintiffs on
September 16, 2010.  These discovery requests generally sought to discover:  (1) the identity of
Plaintiffs' hearing witnesses, (2) expert reports for any expert witnesses Plaintiffs' may call at
the hearing, (3) any documents Plaintiffs may offer in evidence at the hearing, and (4) evidence
regarding Plaintiffs' contention that the amount of damages would withstand adversarial testing.
Plaintiffs served their Objections and Answers to the Second Set of Interrogatories and their
Objections and Responses to the Second Request for Production on September 27, 2010.
Plaintiffs served their Objections and Responses to the Third Request for Production on October
18, 2010.

Despite repeated discussions between the parties, and receipt of Defendants' disclosure of
their anticipated hearing witnesses, anticipated hearing exhibits, and Rule 26(a)(2) expert reports
on October 15, 2010, Plaintiffs have steadfastly refuse to identify whom they may call as
witnesses at the January 18, 2011 hearing (requested in Interrogatory No. 19), reports from the
experts they may offer at the hearing (requested in Interrogatory No. 20), or the documents that
they may introduce into evidence at the hearing (requested in Request No. 23).  *See* Exh. 1 at 2-
4; Exh. 2 at 2; Exh. 4 (Oct. 19, 2010 Letter from D. Strachman to M. Rochon) at 1-2.  Plaintiffs'

stated justification for their refusal to provide this basic discovery is their claim that responding to these discovery requests "will become possible only after, *inter alia*, Defendants have complied with plaintiffs' outstanding discovery requests and submit[ted] their pretrial memorandum." *See, e.g.*, Exh. 1 at 2-3.

But Defendants' "pretrial memorandum" is not due until December 17, 2010 -- nearly a month after the November 19, 2010 deadline for completion of discovery. Obviously, if Plaintiffs do not disclose their witnesses, expert reports and proposed hearing exhibits sufficiently prior to November 19, Defendants will not have any meaningful opportunity to take discovery regarding those witnesses, expert reports or documents. Plaintiffs have recently re-confirmed that they intend to sand-bag Defendants in precisely this manner by withholding any disclosure of their expert disclosures until after the filing of the parties' pretrial memoranda in December. *See* Exh. 4.

Moreover, despite *not opposing* Defendants' motion for discovery on whether the amount of amount of damages is likely to withstand adversarial testing, and thereby consenting to this Court's August 18, 2010 order allowing discovery on that very topic, in response to Defendant's Interrogatory No. 21 and Request Nos. 25-26 and 29-35 seeking discovery on that topic, Plaintiffs claim that the information and documents sought is "irrelevant." Moreover, in their answer to Defendant's Interrogatory No. 21 Plaintiffs expressly "contend that the amount of the [default] judgment would withstand any other adversarial testing." Plaintiffs then state that the "factual basis" for this contention includes, "*inter alia*," three categories. However, Plaintiffs have refused to provide any information in their possession concerning the additional categories subsumed by the *inter alia* phrase. In their responses to Defendant's Request Nos. 25-26 and 29-35 concerning damages, Plaintiffs have similarly stood on their objections and refused to provide

any responsive documents.  In addition, Plaintiffs indicate in their privilege log, produced on September 27, 2010, that they are withholding from production documents exchanged between Plaintiffs' counsel and the experts retained by Plaintiffs to testify during the July 2002 damages hearing.  *See* Exh. 2 at 10 (Document ID Nos. 18-25).

Counsel for the parties held a telephonic meet and confer relating to the Second Set of Interrogatories and Second Request for Production on October 7, 2010.  During this conference, Plaintiffs' counsel indicated that Plaintiffs would not withdraw their relevance objections to Defendant's discovery requests related to damages and that they would not provide any additional information in response to Interrogatory No. 21.  Plaintiffs' counsel further stated that they would continue to withhold document numbers 18 through 25 listed on their privilege log, and had no intention of responding to the interrogatories and request regarding identification of witnesses, exhibits and expert disclosures.  Counsel for the parties also held a telephonic meet and confer relating to the Third Request for Production on October 21, 2010.  Again, Plaintiffs' counsel refused to withdraw their objections and stated that Plaintiffs would continue to stand on their objections to Request Nos. 29-34.  Plaintiffs' counsel also could not confirm or deny the existence of photographs responsive to Request No. 35, and defense counsel explained that Defendants therefore had no choice but to move to compel such photographs, if any exist, due to the approaching end of discovery.  Finally, Plaintiffs' counsel gave no indication that Plaintiffs would provide their hearing witness list, exhibit list and expert disclosures.  At the conclusion of this call, defense counsel indicated that Defendant would move to compel the information and documents sought in this Motion.

## DISCOVERY ANSWERS AND RESPONSES AT ISSUE

Pursuant to LR Cv 37, Defendant reproduces below the interrogatories and requests for production at issue in this motion, along with Plaintiffs' objections, responses and privilege log entries relating thereto (full copies of Plaintiffs' objections and responses are also attached hereto as Exhibits 1, 2 and 3):[1]

## INTERROGATORY NO. 19:

Identify all persons whose testimony the Plaintiffs will or may present to the Court, whether live or via deposition, in opposition to The Motion.

## OBJECTIONS TO INTERROGATORY NO. 19:

As explained below, the plaintiffs have not yet determined which witnesses and testimony they will present in opposition to Defendants' motion to vacate, if any.

However, if and when plaintiffs' counsel do communicate with such actual or potential witnesses, such communications may be protected by attorney-client privilege and/or the attorney work product privilege.

Accordingly, plaintiffs object to this Interrogatory to the extent that it seeks information that does not currently exist but will be protected by attorney-client privilege and/or the attorney work product privilege once it comes into existence.

## ANSWER TO INTERROGATORY NO. 19:

Subject to and without derogating from the Objections set forth above, the plaintiffs answer this interrogatory as follows:

Plaintiffs have not yet determined which witness which witnesses (sic) and testimony they will present in opposition to Defendants' motion to vacate, if any.  Such a determination will become possible only after, *inter alia*, Defendants have complied with plaintiffs' outstanding discovery requests and submit their pretrial memorandum.

## INTERROGATORY NO. 20:

Identify all persons whom you expect to call as expert witnesses in opposition to The Motion and all other persons whom you expect to call to present opinion testimony in opposition

---

[1] In accordance with LR Cv 37(a), Defendant includes in this section the full interrogatories and document requests at issue, along with Plaintiffs' objections and responses, despite some overlap and repetition.

to The Motion pursuant to Fed. R. Evid. 701, 702 or otherwise.  With respect to each such person, state and identify:  the opinions held by the person; a summary of the grounds for those opinions; the facts, data, documents or other information considered by the person in forming the opinions; any exhibits to be used as a summary of, or support for, the person's opinions; the qualifications of the person (including all current resumes of the person and a list of all publications authored by the person within the preceding ten years); any compensation paid or to be paid for the person's analysis; opinions and testimony in or relating to the Civil Action; and a list of any other cases or legal proceedings in which the person has testified as an expert at trial, by deposition or otherwise within the preceding four (4) years.

## OBJECTIONS TO INTERROGATORY NO. 20:

As explained below, the plaintiffs have not yet determined which expert witnesses and other persons who will present opinion testimony they will present in opposition to Defendants' motion to vacate, if any.  However, if and when plaintiffs' counsel do communicate with such actual or potential witnesses, such communications may be protected by attorney-client privilege and/or the attorney work product privilege.

Accordingly, plaintiffs object to this Interrogatory to the extent that it seeks information that does not currently exist but will be protected by attorney-client privilege and/or the attorney work product privilege once it comes into existence.

## ANSWER TO INTERROGATORY NO. 20:

Subject to and without derogating from the Objections set forth above, the plaintiffs answer this interrogatory as follows:

Plaintiffs have not yet determined which expert witness and other persons who will present opinion testimony they will present in opposition to Defendants' motion to vacate, if any.  Such a determination will become possible only after, *inter alia*, Defendants have complied with plaintiffs' outstanding discovery requests and submit their pretrial memorandum.

## INTERROGATORY NO. 21:

If you contend that the amount of the judgment is likely to withstand adversarial testing, state the factual basis for that contention.

## OBJECTIONS TO INTERROGATORY NO. 21:

1.      Plaintiffs object to this Interrogatory as seeking information that is irrelevant. The information sought is irrelevant because Defendants are precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, for several reasons:

a)      Defendants already objected to Magistrate Judge Martin's recommendation of March 31, 2004 regarding damages, claiming that the amount of damages recommended was too large. *See Ungar v. Palestinian Authority*, 325 F. Supp.2d 15, 24 (D.R.I. 2004). This objection was overruled (*id.* at 24-25), and cannot be relitigated via a Rule 60(b) motion.  *See e.g.*, *George P. Reintjes Co. v. Riley Stoker*, 71 F.3d 44, 49 (1st Cir. 1995) ("Rule 60(b) does not license a

party to relitigate . . . any issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense.") (internal quotation marked omitted).

b)     On appeal, Defendants abandoned their earlier claim in this Court that the amount of the damages was overlarge, thereby forever waiving this claim.  *See Ungar v. PLO*, 402 F.3d 4 274, 282 (1st Cir. 2005) ("The defendants have not challenged either the measure of damages utilized by the lower court or the integrity of its mathematical computations.");

c)     Defendants argued on appeal only that "the district court made a political statement in calibrating the size of the award."  *Id.*  This argument was rejected and cannot be relitigated in the context of a Rule 60(b) motion.  *See George P. Reintjes Co.*, 71 F.3d at 49; and

d)     Pursuant to 28 U.S.C. § 636, Defendants waived any and all challenges to the assessment of damages other than the argument that the damages award was too large (which was rejected by Judge Lagueux and abandoned on appeal) that was made in defendants' objections to Magistrate Judge Martin's March 31, 2004, report and recommendation.

2.     Plaintiffs object to this Interrogatory as it seeks the production of information already produced to Defendants and/or already put into the record in this action and/or already within Defendants' knowledge since the production and/or redundant production of such information by plaintiffs would entail unreasonable burden and expense to plaintiffs.

3.     Plaintiffs object to this Interrogatory to the extent that it seeks information relating to any events or circumstances subsequent to July 13, 2004.  As a matter of law, the propriety of the damages award must be measured at the time that judgment was entered, and subsequent events or circumstances affecting (for better or for worse) plaintiffs' actual or projected damages at the time that judgment entered are irrelevant.  *See e.g.*, *Davis by Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 136 (6th Cir. 1990) ("Death of a judgment plaintiff following so shortly after a jury award of damages based on an expected life span not realized is rare, but it is not the sort of 'extraordinary circumstance' contemplated by Rule 60(b)(6)."); *Campbell v. American Foreign SS Corp.*, 116 F.2d 926, 928 (2nd Cir. 1941) (If "facts occurring subsequent to the trial" were "ground for a new trial," the "litigation would never come to an end."); *Multimatic, Inc. v. Faurecia Interior Systems USA, Inc.*, 542 F. Supp. 2d 677, 682-683 (E.D. Mich. 2008) (Change in circumstances subsequent to judgment that indicated that damages award was excessive do not constitute grounds for relief under Rule 60(b)(6) since a change in projected damages is "not the type of 'extraordinary circumstances' contemplated by Rule 60(b)(6).").

4.     Plaintiffs object to this Interrogatory because it asks for an opinion or contention that relates to fact or the application of law to fact.  Plaintiffs expressly reserve the right, pursuant to Fed. R. Civ. P. 26 and 33(a)(2), to answer and/or amend and/or supplement their answer to this Interrogatory at a later time.  *Freitas v. Emhart Corp.*, 715 F. Supp. 1149, 1150 (D. Mass. 1989).

5.     Plaintiffs object to this Interrogatory because it uses the present tense ("is likely to withstand adversarial testing") which usage assumes without any basis that Defendants are entitled to and/or will be given an opportunity to actually test the amount of the judgment.

**ANSWER TO INTERROGATORY NO. 21:**

Subject to and without derogating from the Objections set forth above, the plaintiffs answer this interrogatory as follows:

Plaintiffs contend that the Defendants have already tested the amount of the damages in their objections to Magistrate Judge Martin's March 31, 2004 report and recommendation and that Defendants failed to demonstrate that the amount of the damages was too large.

Plaintiffs also contend that the amount of the judgment would withstand any other adversarial testing. The factual basis for this contention includes, *inter alia,* (a) the evidence and testimony submitted by the plaintiffs in the context of the damages hearing held by this Court (b) the findings and conclusions reached by this Court in *Ungar v. Palestinian Authority*, 304 F. Supp.2d 232 (D.R.I. 2004) (including in the report and recommendation attached thereto) and (c) the numerous federal decisions in terrorism cases awarding victims of terrorism similar or greater damages. *See e.g.*, *Boim v. Quranic Literacy Institute*, 2005 WL 433463 at *5 (N.D. Ill. 2005) (federal court denied motion to set aside a jury award of $156 million to the parents and estate of an American citizen murdered by Hamas after finding that it "simply cannot agree" that "the damages award was excessive" considering "the nature of the case (one seeking damages for the murder of a son in a brutal and senseless terrorist act), and given the nature of the relationship between the victim and the plaintiffs (child/parent)").

**REQUEST NO. 23:**

All documents that Plaintiffs will and/or intend to seek to submit to the court and/or seek to introduce into evidence in opposition to The Motion at any time subsequent to the date of these requests.

**RESPONSE TO REQUEST NO. 23:**

Plaintiffs have not yet determined which documents will be presented in opposition to Defendants' motion to vacate, if any.

Such a determination will become possible only after, *inter alia*, Defendants have complied with plaintiffs' outstanding discovery requests and submit their pretrial memorandum.

**REQUEST NO. 25:**

All documents provided by the Plaintiffs to, or relied upon in connection with the testimony of, Alan Friedman, Adrian Ziderman, Meir Ungar, Judith Ungar, Michal Cohen, Amichai Ungar, Dafna (or Daphne) Ungar, Uri Dasberg or Yehudit Dasberg relating to their testimony at the July 2002 evidentiary hearings in the Civil Action.

**OBJECTIONS TO REQUEST NO. 25:**

1.    Plaintiffs object to this Request as seeking documents that are irrelevant. The documents sought are irrelevant because Defendants are precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, for several reasons:

a)  Defendants already objected to Magistrate Judge Martin's recommendation of March 31, 2004 regarding damages, claiming that the amount of damages recommended was too large.  *See Ungar v. Palestinian Authority*, 325 F. Supp.2d 15, 24 (D.R.I. 2004).  This objection was overruled (*id.* at 24-25), and cannot be relitigated via a Rule 60(b) motion.  *See e.g.*, *George P. Reintjes Co. v. Riley Stoker,* 71 F.3d 44, 49 (1st Cir. 1995) ("Rule 60(b) does not license a party to relitigate . . . any issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense.") (internal quotation marked omitted).

b)  On appeal, Defendants abandoned their earlier claim in this Court that the amount of the damages was overlarge, thereby forever waiving this claim.  *See Ungar v. PLO*, 402 F.3d 274, 282 (1st Cir. 2005) ("The defendants have not challenged either the measure of damages utilized by the lower court or the integrity of its mathematical computations.");

c)  Defendants argued on appeal only that "the district court made a political statement in calibrating the size of the award."  *Id.*  This argument was rejected and cannot be relitigated in the context of a Rule 60(b) motion.  *See George P. Reintjes Co.*, 71 F.3d at 49; and

d)  Pursuant to 28 U.S.C. § 636, Defendants waived any and all challenges to the assessment of damages other than the argument that the damages award was too large (which was rejected by Judge Lagueux and abandoned on appeal) that was made in defendants' objections to Magistrate Judge Martin's March 31, 2004, report and recommendation.

2.  Plaintiffs object to this Request as it seeks the production of documents already produced to Defendants and/or already put into the record in this action and/or already within Defendants' possession since the production and/or redundant production of such documents by plaintiffs would entail unreasonable burden and expense to plaintiffs.

3.  Plaintiffs object to this Request because it seeks the production of documents subject to the attorney-client privilege and the attorney work-product privilege.  To date, plaintiffs have located the documents identified in the attached privilege log.  It is possible that plaintiffs' search for documents to date did not uncover all existing documents, due to the more than eight years that have passed since July 2002, and that additional privileged documents will be located.  If and when plaintiffs locate any such documents, they will assert attorney-client privilege and/or the attorney work-product privilege as may be necessary or appropriate and provide an amended privilege log as required by the Federal Rules.

**RESPONSE TO REQUEST NO. 25:**

Plaintiffs stand on their Objections set forth above.

**REQUEST NO. 26:**

All documents related to the fact or amount of any damages claimed by any Plaintiff in the Civil Action.

## OBJECTIONS TO REQUEST NO. 26:

1.      Plaintiffs object to this Request as seeking documents that are irrelevant.  The documents sought are irrelevant because Defendants are precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, for several reasons:

a)      Defendants already objected to Magistrate Judge Martin's recommendation of March 31, 2004 regarding damages, claiming that the amount of damages recommended was too large.  *See Ungar v. Palestinian Authority*, 325 F. Supp.2d 15, 24 (D.R.I. 2004).  This objection was overruled (*id.* at 24-25), and cannot be relitigated via a Rule 60(b) motion.  *See e.g.*, *George P. Reintjes Co. v. Riley Stoker*, 71 F.3d 44, 49 (1st Cir. 1995) ("Rule 60(b) does not license a party to relitigate . . . any issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense.") (internal quotation marked omitted).

b)      On appeal, Defendants abandoned their earlier claim in this Court that the amount of the damages was overlarge, thereby forever waiving this claim.  *See Ungar v. PLO*, 402 F.3d 274, 282 (1st Cir. 2005) ("The defendants have not challenged either the measure of damages utilized by the lower court or the integrity of its mathematical computations.");

c)      Defendants argued on appeal only that "the district court made a political statement in calibrating the size of the award."  *Id.*  This argument was rejected and cannot be relitigated in the context of a Rule 60(b) motion.  *See George P. Reintjes Co.*, 71 F.3d at 49; and

d)      Pursuant to 28 U.S.C. § 636, Defendants waived any and all challenges to the assessment of damages other than the argument that the damages award was too large (which was rejected by Judge Lagueux and abandoned on appeal) that was made in defendants' objections to Magistrate Judge Martin's March 31, 2004, report and recommendation.

2.      Plaintiffs object to this Request as it seeks the production of documents already produced to Defendants and/or already put into the record in this action and/or already within Defendants' possession since the production and/or redundant production of such documents by plaintiffs would entail unreasonable burden and expense to plaintiffs.

3.      Plaintiffs object to this Request because it seeks the production of documents subject to the attorney-client privilege and the attorney work-product privilege.  To date, plaintiffs have located the documents identified in the attached privilege log.  It is possible that plaintiffs' search for documents to date did not uncover all existing documents, due to the more than eight years that have passed since July 2002, and that additional privileged documents will be located.  If and when plaintiffs locate any such documents, they will assert attorney-client privilege and/or the attorney work-product privilege as may be necessary or appropriate and provide an amended privilege log as required by the Federal Rules.

## RESPONSE TO REQUEST NO. 26:

Plaintiffs stand on their Objections set forth above.

## PLAINTIFFS' PRIVILEGE LOG RE: DEFENDANT'S REQUEST NOS. 25 AND 26

| 18 | June 2002 | Emails between Strachman and Friedman | Regarding testimony at damages hearing |
|---|---|---|---|
| 19-21 | Undated | description of photographs/captions | Scene of attack |
| 22-23 | 7/1/02, 6/30/02, 6/29/02 | Emails between Strachman and Freidman | Regarding testimony at damages hearing |
| 24-25 | Undated | memo from Ziderman | Regarding testimony at damages hearing |

## REQUEST NO. 29:

Any and all psychiatric or mental-health records of Dvir Ungar and Yishai Ungar.

## OBJECTIONS TO REQUEST NO. 29:

1.     Plaintiffs object to this Request as seeking documents that are irrelevant.  The documents sought are irrelevant because Defendants are precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, for several reasons:

a)     Defendants already objected to Magistrate Judge Martin's recommendation of March 31, 2004 regarding damages, claiming that the amount of damages recommended was too large.  *See Ungar v. Palestinian Authority*, 325 F. Supp.2d 15, 24 (D.R.I. 2004).  This objection was overruled (*id.* at 24-25), and cannot be relitigated via a Rule 60(b) motion.  *See e.g.*, *George P. Reintjes Co. v. Riley Stoker*, 71 F.3d 44, 49 (1st Cir. 1995) ("Rule 60(b) does not license a party to relitigate . . . any issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense.") (internal quotation marked omitted).

b)     On appeal, Defendants abandoned their earlier claim in this Court that the amount of the damages was overlarge, thereby forever waiving this claim.  *See Ungar v. PLO*, 402 F.3d 274, 282 (1st Cir. 2005) ("The defendants have not challenged either the measure of damages utilized by the lower court or the integrity of its mathematical computations.");

c)     Defendants argued on appeal only that "the district court made a political statement in calibrating the size of the award."  *Id.*  This argument was rejected and cannot be relitigated in the context of a Rule 60(b) motion.  *See George P. Reintjes Co.*, 71 F .3d at 49; and

d)     Pursuant to 28 U.S.C. § 636, Defendants waived any and all challenges to the assessment of damages other than the argument that the damages award was too large (which was rejected by Judge Lagueux and abandoned on appeal) that was made in defendants' objections to Magistrate Judge Martin's March 31, 2004, report and recommendation.

2.     Plaintiffs object to this Request as seeking documents that are irrelevant to the extent it seeks documents relating to the period subsequent to the damages hearing held in this matter.  Even assuming *arguendo* that Defendants were not precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, as a matter of law

Defendants could not base such a challenge on changes or developments in Plaintiffs' condition subsequent to the damages hearing. *See e.g.*, *Davis by Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 136 (6th Cir. 1990) ("Death of a judgment plaintiff following so shortly after a jury award of damages based on an expected life span not realized is rare, but it is not the sort of 'extraordinary circumstance' contemplated by Rule 60(b)(6)"); *Campbell v. American Foreign SS Corp.*, 116 F.2d 926, 928 (2nd Cir. 1941) (If "facts occurring subsequent to the trial" were "ground for a new trial," the "litigation would never come to an end."); *Multimatic, Inc. v. Faurecia Interior Systems USA, Inc.*, 542 F. Supp. 2d 677, 682-683 (E.D. Mich. 2008) (Change in circumstances subsequent to judgment that indicated that damages award was excessive do not constitute grounds for relief under Rule 60(b)(6) since a change in projected damages is "not the type of 'extraordinary circumstances' contemplated by Rule 60(b)(6).").

## RESPONSE TO REQUEST NO. 29:

Plaintiffs stand on their Objections set forth above.

## REQUEST NO. 30:

Any and all medical records of Dvir Ungar and Yishai Ungar.

## OBJECTIONS TO REQUEST NO. 30:

1.      Plaintiffs object to this Request as seeking documents that are irrelevant. The documents sought are irrelevant because Defendants are precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, for several reasons:

a)      Defendants already objected to Magistrate Judge Martin's recommendation of March 31, 2004 regarding damages, claiming that the amount of damages recommended was too large. *See Ungar v. Palestinian Authority*, 325 F. Supp.2d 15, 24 (D.R.I. 2004). This objection was overruled (*id.* at 24-25), and cannot be relitigated via a Rule 60(b) motion. *See e.g.*, *George P. Reintjes Co. v. Riley Stoker*, 71 F.3d 44, 49 (1st Cir. 1995) ("Rule 60(b) does not license a party to relitigate . . . any issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense.") (internal quotation marked omitted).

b)      On appeal, Defendants abandoned their earlier claim in this Court that the amount of the damages was overlarge, thereby forever waiving this claim. *See Ungar v. PLO*, 402 F.3d 274, 282 (1st Cir. 2005) ("The defendants have not challenged either the measure of damages utilized by the lower court or the integrity of its mathematical computations.");

c)      Defendants argued on appeal only that "the district court made a political statement in calibrating the size of the award." *Id.* This argument was rejected and cannot be relitigated in the context of a Rule 60(b) motion. *See George P. Reintjes Co.*, 71 F .3d at 49; and

d)      Pursuant to 28 U.S.C. § 636, Defendants waived any and all challenges to the assessment of damages other than the argument that the damages award was too large (which was rejected by Judge Lagueux and abandoned on appeal) that was made in defendants' objections to Magistrate Judge Martin's March 31, 2004, report and recommendation.

2.      Plaintiffs object to this Request as seeking documents that are irrelevant to the extent it seeks documents relating to the period subsequent to the damages hearing held in this matter.  Even assuming *arguendo* that Defendants were not precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, as a matter of law Defendants could not base such a challenge on changes or developments in Plaintiffs' condition subsequent to the damages hearing.  *See e.g.*, *Davis by Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 136 (6th Cir. 1990) ("Death of a judgment plaintiff following so shortly after a jury award of damages based on an expected life span not realized is rare, but it is not the sort of 'extraordinary circumstance' contemplated by Rule 60(b)(6)"); *Campbell v. American Foreign SS Corp.*, 116 F.2d 926, 928 (2nd Cir. 1941) (If "facts occurring subsequent to the trial" were "ground for a new trial," the "litigation would never come to an end."); *Multimatic, Inc. v. Faurecia Interior Systems USA, Inc.*, 542 F. Supp. 2d 677, 682-683 (E.D. Mich. 2008) (Change in circumstances subsequent to judgment that indicated that damages award was excessive do not constitute grounds for relief under Rule 60(b)(6) since a change in projected damages is "not the type of 'extraordinary circumstances' contemplated by Rule 60(b)(6).").

## RESPONSE TO REQUEST NO. 30:

Plaintiffs stand on their Objections set forth above.

## REQUEST NO. 31:

Any and all daycare or preschool records of Dvir Ungar and Yishai Ungar.

## OBJECTIONS TO REQUEST NO. 31:

1.      Plaintiffs object to this Request as seeking documents that are irrelevant.  The documents sought are irrelevant because Defendants are precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, for several reasons:

a)      Defendants already objected to Magistrate Judge Martin's recommendation of March 31, 2004 regarding damages, claiming that the amount of damages recommended was too large.  *See Ungar v. Palestinian Authority*, 325 F. Supp.2d 15, 24 (D.R.I. 2004).  This objection was overruled (*id.* at 24-25), and cannot be relitigated via a Rule 60(b) motion.  *See e.g.*, *George P. Reintjes Co. v. Riley Stoker*, 71 F.3d 44, 49 (1st Cir. 1995) ("Rule 60(b) does not license a party to relitigate . . . any issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense.") (internal quotation marked omitted).

b)      On appeal, Defendants abandoned their earlier claim in this Court that the amount of the damages was overlarge, thereby forever waiving this claim.  *See Ungar v. PLO*, 402 F.3d 274, 282 (1st Cir. 2005) ("The defendants have not challenged either the measure of damages utilized by the lower court or the integrity of its mathematical computations.");

c)      Defendants argued on appeal only that "the district court made a political statement in calibrating the size of the award."  *Id.*  This argument was rejected and cannot be relitigated in the context of a Rule 60(b) motion.  *See George P. Reintjes Co.*, 71 F .3d at 49; and

d)      Pursuant to 28 U.S.C. § 636, Defendants waived any and all challenges to the assessment of damages other than the argument that the damages award was too large (which was rejected by Judge Lagueux and abandoned on appeal) that was made in defendants' objections to Magistrate Judge Martin's March 31, 2004, report and recommendation.

2.      Plaintiffs object to this Request as seeking documents that are irrelevant to the extent it seeks documents relating to the period subsequent to the damages hearing held in this matter.  Even assuming *arguendo* that Defendants were not precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, as a matter of law Defendants could not base such a challenge on changes or developments in Plaintiffs' condition subsequent to the damages hearing.  *See e.g.*, *Davis by Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 136 (6th Cir. 1990) ("Death of a judgment plaintiff following so shortly after a jury award of damages based on an expected life span not realized is rare, but it is not the sort of 'extraordinary circumstance' contemplated by Rule 60(b)(6)"); *Campbell v. American Foreign SS Corp.*, 116 F.2d 926, 928 (2nd Cir. 1941) (If "facts occurring subsequent to the trial" were "ground for a new trial," the "litigation would never come to an end."); *Multimatic, Inc. v. Faurecia Interior Systems USA, Inc.*, 542 F. Supp. 2d 677, 682-683 (E.D. Mich. 2008) (Change in circumstances subsequent to judgment that indicated that damages award was excessive do not constitute grounds for relief under Rule 60(b)(6) since a change in projected damages is "not the type of 'extraordinary circumstances' contemplated by Rule 60(b)(6).").

## RESPONSE TO REQUEST NO. 31:

Plaintiffs stand on their Objections set forth above.

## REQUEST NO. 32:

Any and all school records of Dvir Ungar and Yishai Ungar.

## OBJECTIONS TO REQUEST NO. 32:

1.      Plaintiffs object to this Request as seeking documents that are irrelevant.  The documents sought are irrelevant because Defendants are precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, for several reasons:

a)      Defendants already objected to Magistrate Judge Martin's recommendation of March 31, 2004 regarding damages, claiming that the amount of damages recommended was too large.  *See Ungar v. Palestinian Authority*, 325 F. Supp.2d 15, 24 (D.R.I. 2004).  This objection was overruled (*id.* at 24-25), and cannot be relitigated via a Rule 60(b) motion.  *See e.g.*, *George P. Reintjes Co. v. Riley Stoker*, 71 F.3d 44, 49 (1st Cir. 1995) ("Rule 60(b) does not license a party to relitigate . . . any issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense.") (internal quotation marked omitted).

b)      On appeal, Defendants abandoned their earlier claim in this Court that the amount of the damages was overlarge, thereby forever waiving this claim.  *See Ungar v. PLO*, 402 F.3d 274, 282 (1st Cir. 2005) ("The defendants have not challenged either the measure of damages utilized by the lower court or the integrity of its mathematical computations.");

16

c)    Defendants argued on appeal only that "the district court made a political statement in calibrating the size of the award." *Id.* This argument was rejected and cannot be relitigated in the context of a Rule 60(b) motion. *See George P. Reintjes Co.*, 71 F .3d at 49; and

d)    Pursuant to 28 U.S.C. § 636, Defendants waived any and all challenges to the assessment of damages other than the argument that the damages award was too large (which was rejected by Judge Lagueux and abandoned on appeal) that was made in defendants' objections to Magistrate Judge Martin's March 31, 2004, report and recommendation.

2.    Plaintiffs object to this Request as seeking documents that are irrelevant to the extent it seeks documents relating to the period subsequent to the damages hearing held in this matter. Even assuming *arguendo* that Defendants were not precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, as a matter of law Defendants could not base such a challenge on changes or developments in Plaintiffs' condition subsequent to the damages hearing. *See e.g., Davis by Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 136 (6th Cir. 1990) ("Death of a judgment plaintiff following so shortly after a jury award of damages based on an expected life span not realized is rare, but it is not the sort of 'extraordinary circumstance' contemplated by Rule 60(b)(6)"); *Campbell v. American Foreign SS Corp.*, 116 F.2d 926, 928 (2nd Cir. 1941) (If "facts occurring subsequent to the trial" were "ground for a new trial," the "litigation would never come to an end."); *Multimatic, Inc. v. Faurecia Interior Systems USA, Inc.*, 542 F. Supp. 2d 677, 682-683 (E.D. Mich. 2008) (Change in circumstances subsequent to judgment that indicated that damages award was excessive do not constitute grounds for relief under Rule 60(b)(6) since a change in projected damages is "not the type of 'extraordinary circumstances' contemplated by Rule 60(b)(6).").

## RESPONSE TO REQUEST NO. 32:

Plaintiffs stand on their Objections set forth above.

## REQUEST NO. 33:

Any and all crime laboratory records containing information about the shooting of Yaron Ungar and Efrat Ungar including, but not limited to, crime lab studies, ballistics tests, and other evidence..

## OBJECTIONS TO REQUEST NO. 33:

1.    Plaintiffs object to this Request as seeking documents that are irrelevant. The documents sought are irrelevant because Defendants are precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, for several reasons:

a)    Defendants already objected to Magistrate Judge Martin's recommendation of March 31, 2004 regarding damages, claiming that the amount of damages recommended was too large. *See Ungar v. Palestinian Authority*, 325 F. Supp.2d 15, 24 (D.R.I. 2004). This objection was overruled (*id.* at 24-25), and cannot be relitigated via a Rule 60(b) motion. *See e.g., George P. Reintjes Co. v. Riley Stoker*, 71 F.3d 44, 49 (1st Cir. 1995) ("Rule 60(b) does not license a

party to relitigate . . . any issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense.") (internal quotation marked omitted).

b)    On appeal, Defendants abandoned their earlier claim in this Court that the amount of the damages was overlarge, thereby forever waiving this claim. *See Ungar v. PLO*, 402 F.3d 274, 282 (1st Cir. 2005) ("The defendants have not challenged either the measure of damages utilized by the lower court or the integrity of its mathematical computations.");

c)    Defendants argued on appeal only that "the district court made a political statement in calibrating the size of the award." *Id.*  This argument was rejected and cannot be relitigated in the context of a Rule 60(b) motion. *See George P. Reintjes Co.*, 71 F .3d at 49; and

d)    Pursuant to 28 U.S.C. § 636, Defendants waived any and all challenges to the assessment of damages other than the argument that the damages award was too large (which was rejected by Judge Lagueux and abandoned on appeal) that was made in defendants' objections to Magistrate Judge Martin's March 31, 2004, report and recommendation.

2.    Plaintiffs object to this Request as seeking documents that are irrelevant to the extent it seeks documents relating to the period subsequent to the damages hearing held in this matter.  Even assuming *arguendo* that Defendants were not precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, as a matter of law Defendants could not base such a challenge on changes or developments in Plaintiffs' condition subsequent to the damages hearing. *See e.g.*, *Davis by Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 136 (6th Cir. 1990) ("Death of a judgment plaintiff following so shortly after a jury award of damages based on an expected life span not realized is rare, but it is not the sort of 'extraordinary circumstance' contemplated by Rule 60(b)(6)"); *Campbell v. American Foreign SS Corp.*, 116 F.2d 926, 928 (2nd Cir. 1941) (If "facts occurring subsequent to the trial" were "ground for a new trial," the "litigation would never come to an end."); *Multimatic, Inc. v. Faurecia Interior Systems USA, Inc.*, 542 F. Supp. 2d 677, 682-683 (E.D. Mich. 2008) (Change in circumstances subsequent to judgment that indicated that damages award was excessive do not constitute grounds for relief under Rule 60(b)(6) since a change in projected damages is "not the type of 'extraordinary circumstances' contemplated by Rule 60(b)(6).").

## RESPONSE TO REQUEST NO. 33:

Plaintiffs stand on their Objections set forth above.

## REQUEST NO. 34:

Any and all records containing information about any forensic examin[a]tion done on Yaron Ungar and Efrat Ungar including, but not limited to, autopsy reports, color autopsy photographs, and x-rays.

**OBJECTIONS TO REQUEST NO. 34:**

1.     Plaintiffs object to this Request as seeking documents that are irrelevant.  The documents sought are irrelevant because Defendants are precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, for several reasons:

a)     Defendants <u>already</u> objected to Magistrate Judge Martin's recommendation of March 31, 2004 regarding damages, claiming that the amount of damages recommended was too large.  *See Ungar v. Palestinian Authority*, 325 F. Supp.2d 15, 24 (D.R.I. 2004).  This objection was overruled (*id.* at 24-25), and cannot be relitigated via a Rule 60(b) motion.  *See e.g.*, *George P. Reintjes Co. v. Riley Stoker*, 71 F.3d 44, 49 (1st Cir. 1995) ("Rule 60(b) does not license a party to relitigate . . . any issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense.") (internal quotation marked omitted).

b)     On appeal, Defendants abandoned their earlier claim in this Court that the amount of the damages was overlarge, thereby forever waiving this claim.  *See Ungar v. PLO*, 402 F.3d 274, 282 (1st Cir. 2005) ("The defendants have not challenged either the measure of damages utilized by the lower court or the integrity of its mathematical computations.");

c)     Defendants argued on appeal only that "the district court made a political statement in calibrating the size of the award."  *Id.*  This argument was rejected and cannot be relitigated in the context of a Rule 60(b) motion.  *See George P. Reintjes Co*., 71 F .3d at 49; and

d)     Pursuant to 28 U.S.C. § 636, Defendants waived any and all challenges to the assessment of damages other than the argument that the damages award was too large (which was rejected by Judge Lagueux and abandoned on appeal) that was made in defendants' objections to Magistrate Judge Martin's March 31, 2004, report and recommendation.

2.     Plaintiffs object to this Request as it seeks the production of documents already produced to Defendants and/or already put into the record in this action and/or already within Defendants' possession.

3.     Subject to and without derogating from their objections set forth above, plaintiffs will produce color photographs of the photographs responsive to this request that were previously provided to Defendants.

**RESPONSE TO REQUEST NO. 34:**

Plaintiffs stand on their Objections set forth above.

**REQUEST NO. 35:**

Any and all color photographs taken of the scene where Yaron Ungar and Efrat Ungar w[]ere shot.

**OBJECTIONS TO REQUEST NO. 35:**

1.    Plaintiffs object to this Request as seeking documents that are irrelevant.  The documents sought are irrelevant because Defendants are precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, for several reasons:

a)    Defendants already objected to Magistrate Judge Martin's recommendation of March 31, 2004 regarding damages, claiming that the amount of damages recommended was too large.  *See Ungar v. Palestinian Authority*, 325 F. Supp.2d 15, 24 (D.R.I. 2004).  This objection was overruled (*id.* at 24-25), and cannot be relitigated via a Rule 60(b) motion.  *See e.g.*, *George P. Reintjes Co. v. Riley Stoker*, 71 F.3d 44, 49 (1st Cir. 1995) ("Rule 60(b) does not license a party to relitigate . . . any issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense.") (internal quotation marked omitted).

b)    On appeal, Defendants abandoned their earlier claim in this Court that the amount of the damages was overlarge, thereby forever waiving this claim.  *See Ungar v. PLO*, 402 F.3d 274, 282 (1st Cir. 2005) ("The defendants have not challenged either the measure of damages utilized by the lower court or the integrity of its mathematical computations.");

c)    Defendants argued on appeal only that "the district court made a political statement in calibrating the size of the award."  *Id.*  This argument was rejected and cannot be relitigated in the context of a Rule 60(b) motion.  *See George P. Reintjes Co.*, 71 F .3d at 49; and

d)    Pursuant to 28 U.S.C. § 636, Defendants waived any and all challenges to the assessment of damages other than the argument that the damages award was too large (which was rejected by Judge Lagueux and abandoned on appeal) that was made in defendants' objections to Magistrate Judge Martin's March 31, 2004, report and recommendation.

2.    Plaintiffs object to this Request as it seeks the production of documents already produced to Defendants and/or already put into the record in this action and/or already within Defendants' possession.

3.    Subject to and without derogating from their objections set forth above, plaintiffs will produce color photographs of the photographs responsive to this request that were previously provided to Defendants.

**RESPONSE TO REQUEST NO. 35:**

Plaintiffs stand on their Objections set forth above.[2]

---

[2] During the parties' October 21, 2010 meet and confer teleconference, Plaintiffs' counsel indicated that he would send Defendants color photographs previously provided in black and white at the 2002 damages hearing.  If those color photographs include all documents responsive to Request No. 35, Defendant will withdraw its Motion to Compel with respect to this Request.

## **ARGUMENT**

Local Rule Cv 37 requires the party moving to compel to identify as to each disputed discovery request the reason the response is inadequate.  Plaintiffs provided only objections and one non-substantive response as to the requests for production, a non-exclusive summary list as to Interrogatory No. 21 and non-substantive answers to Interrogatory Nos. 19-20.  Defendant has therefore grouped this Motion to Compel into categories.  In Part I below, Defendant discusses its request that Plaintiffs identify their witnesses, expert opinions and documents they intend to introduce into evidence at the hearing (regarding Interrogatory Nos. 19-21 and Request No. 23). In Part II below, Defendant addresses the inadequacy of Plaintiffs' responses to the remaining interrogatory and document requests pertaining to Plaintiffs' contention that the amount of damages is likely to withstand adversarial testing on an objection-by-objection basis, rather than as to each discovery request, because the same objections apply to multiple discovery requests. There are five different objections at issue, each of which is addressed in turn in Part II, Sections A through E.[3]  Finally, in Part III, Defendant addresses Plaintiffs' claim that communications between their counsel and experts are privileged.

For the reasons that follow, Plaintiffs' objections to the requests should be overruled, and Plaintiffs should be compelled to provide responsive interrogatory answers and documents forthwith.

---

[3] Plaintiffs' Objection Nos. 3 and 5 to Defendant's Interrogatory No. 21 and Objection No. 2 to Defendant's Request Nos. 29-32 are essentially identical and are therefore addressed jointly.

I.    **PLAINTIFFS SHOULD BE REQUIRED TO ANSWER INTERROGATORIES AND PRODUCE DOCUMENTS IDENTIFYING THEIR HEARING WITNESSES, EXPERT OPINIONS, AND HEARING EXHIBITS FORTHWITH**

Plaintiffs have no good basis to withhold from disclosure the identity of their hearing witnesses (requested in Interrogatory No. 19), their hearing exhibits (requested in Request No. 23) and expert reports (requested in Interrogatory No. 20). Save for privilege objections (which, as demonstrated at Part III, *infra*, cannot apply to any communications between Plaintiffs' counsel and Plaintiffs' expert witnesses), Plaintiffs' only proffered reason for refusing to respond to these discovery requests is that they have not yet identified their witnesses, exhibits or experts, and that doing so "will become possible only after, *inter alia*, Defendants have complied with plaintiffs' outstanding discovery requests and submit[ted] their pretrial memorandum." *See, e.g.*, Exh. 1 at 2-3. As Defendant explains below, if this excuse ever applied, it no longer applies, and fairness dictates that this Court order Plaintiffs to produce the responsive information forthwith in order to give Defendants an opportunity to conduct discovery of Plaintiffs' witnesses and documents before the November 19, 2010 date for the close of discovery.

In response to similar requests from Plaintiffs that Defendants disclose their hearing witnesses and hearing exhibits, *see* Exh. 5 (Defendants' Oct. 15, 2010 Second Supplemental Objections and Answers to Plaintiffs' First Set of Interrogatories) at 4-7 & Exh. 6 (Defendants' Oct. 15, 2010 Second Supplemental Objections and Responses to Plaintiffs' First Request for Production) at 5-6, defense counsel have repeatedly attempted to secure Plaintiffs' agreement to a schedule for the exchange of standard pre-hearing disclosures relating to witnesses, documents and expert reports. *See*, *e.g.*, Exh. 7 (Aug. 10-12, 2010 Email chain between B. Hill and M. Wistow). Plaintiffs' counsel, however, refused to agree to any such schedule. Accordingly, in an effort to ensure that Defendants would not be prejudiced by a post-discovery disclosure of such standard discovery, Defendant PA formally propounded discovery requests seeking: (1) the

identity of Plaintiff's hearing witnesses, (2) disclosure of the material typically provided in an expert report, and (3) any documents Plaintiffs may use as exhibits at the hearing. These are standard discovery requests, and there is no basis for Plaintiffs to refuse to disclose this type of information. Indeed, the type of expert disclosures sought by Defendant's Interrogatory 20 are expressly required by Rule 26(a)(2).

In accordance with the requirement of Rule 26(a)(2) that expert disclosures be served "at least 90 days before the date set for trial," Defendants made their expert disclosures and produced their expert reports on October 15, 2010. *See* Exh. 8 (Oct. 15, 2010 Letter from B. Hill to D. Strachman). Defendants simultaneously supplemented their prior responses to Plaintiffs' interrogatories and document requests to disclose Defendants' likely hearing witnesses and exhibits. Exh. 5 at 4-7; Exh. 6 at 5-6. In response, Plaintiffs sent a letter to Defendants claiming that Rule 26(a)(2) does not apply, and confirming that they will not make any expert disclosures until after the close of discovery. Exh. 4 at 1-2. During the October 21, 2010 meet and confer teleconference, Plaintiffs' counsel similarly refused to commit to disclosing Plaintiffs' fact witnesses or exhibits before December 17.

Plaintiffs thus take the position that discovery in this action should be completely one-sided. According to Plaintiffs, while it is proper for them to propound discovery requests requiring Defendants to identify their witnesses and produce their hearing exhibits, Plaintiffs are free to ignore substantially similar requests from Defendants and withhold such information until after discovery has closed and after Defendants' pre-hearing brief has been filed. Indeed, Plaintiffs claim that this absurd result is required by the Court's scheduling Order. Exh. 4 at 2. Plaintiff's position is unreasonable, to say the least. If Plaintiffs' position were correct, one might fairly wonder why the parties are engaged in discovery at all. Indeed, if, as Plaintiffs'

contend, one party cannot discover very basic facts such as the identity of its opponents' witnesses or exhibits or expert opinions, what meaningful discovery can be had?  The answer, according to Plaintiffs, is that they can take discovery of Defendants, including on these very issues, but that Defendants cannot take discovery of them.

Plaintiffs' recent assertion that Rule 26(a)(2) does not technically apply in these proceedings is a diversion.  If Defendant is correct in its view that Rule 26(a)(2) applies, then Plaintiffs' reports are overdue under the plain language of that Rule.  But even if Plaintiffs are correct in their view that Rule 26(a)(2) does not apply, then Plaintiffs' reports are still overdue in response to Interrogatory 20.  Thus, in either event, the Court should order Plaintiffs to produce their expert reports forthwith.  The only other equitable result would be for the Court to exclude any experts (as well as other witnesses or exhibits) which are not promptly and fully disclosed. *See* Fed. R. Civ. P. 37 (c)(1), (d)(1).  Accordingly, the Court should enter an order compelling Plaintiffs to answer Interrogatories 19 and 20 and produce all responsive documents to Request 23 forthwith.

## II. PLAINTIFFS SHOULD BE COMPELLED TO RESPOND TO INTERROGATORY 21 AND DOCUMENT REQUESTS SEEKING INFORMATION AND DOCUMENTS CONCERNING DAMAGES

### A. Defendants Discovery Requests are Not Irrelevant

Plaintiffs take the position in Objection 1 (a.-d.) to Interrogatory No. 21 and Objection 1 (a.-d.) to Request Nos. 25-26 and 29-35 that they are not required to provide any discovery concerning the amount of the default judgment.  Plaintiffs' principal objection is that the information and documents "sought [are] irrelevant because Defendants are precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate."  *See, e.g.*, Exh. 1 at 4 (Objection 1 to Interrogatory No. 21).

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Plaintiffs' claim of irrelevancy cannot be squared with the First Circuit's remand or with the Court's directive that the parties engage in discovery as a prelude to an evidentiary hearing on Defendants' Rule 60(b)(6) motion.  In its March 25, 2010 decision, the Court of Appeals concluded that "hard-and-fast rules generally are not compatible with Rule 60(b)(6) determination," which instead requires "a holistic appraisal of the circumstances."  *Ungar*, 599 F.3d at 84.  Thus, as discussed *supra*, whether the amount of the judgment against Defendants is likely to withstand adversarial testing, among other factors, "deserves full-throated consideration."  *Id*. at 86-87.

Nor can Plaintiffs' claim of irrelevancy be squared with its answer to Interrogatory No. 21, in which Plaintiffs concede that they intend to rely on the evidence presented at the July 12 and 15, 2002 hearings to support their contention that the damages award is likely to withstand adversarial testing.  *See* Exh. 1 at 6 (stating that the factual basis for Plaintiffs' contention that "the amount of the judgment would withstand any other adversarial testing" includes "(a) the evidence and testimony submitted by plaintiffs in the context of the damages hearing held by this Court.").  Nonetheless, Plaintiffs now maintain that Defendant cannot pursue discovery relating to the amount of the default judgment.  Plaintiffs cite four reasons for their position.

For their first and second reasons, Plaintiffs claim that because Defendants already objected to Magistrate Judge Martin's March 31, 2004 recommendation regarding damages on the basis that it was too large, and this objection was overruled, it "cannot be relitigated via a Rule 60(b) motion" and Defendants "forever waiv[ed]" any challenge to the damages award. Exh. 1 at 4.  For their third reason, Plaintiffs state that Defendants' argument on appeal that "the district court made a political statement in calibrating the size of the award" also cannot be

"relitigated" in the context of Defendants' Rule 60(b) motion.  *Id.* at 5.  For their fourth reason, Plaintiffs assert that, "[p]ursuant to 28 U.S.C. § 636, Defendants waived any and all challenges to the assessment of damages other than the argument that the damages award was too large." *Id.*

Plaintiffs, however, put the proverbial cart before the horse.  The matter at issue is whether Defendant may take discovery from Plaintiffs concerning the default judgment, not how Defendant may use that discovery or the admissibility of whatever responsive information or documents Plaintiffs produce in response to that discovery.  On the threshold discovery issue, this Court could not have been clearer -- it granted Defendants' Motion to take discovery on this very matter.  *See* Dkt. No. 506.  None of Plaintiffs' cited authorities addresses the discoverability of the information and documents requested by Defendants.

Moreover, Plaintiffs misconstrue the sole case cited in support of their theory in an attempt to contravene the very purpose of Rule 60(b) vacatur motions.  Plaintiffs' claim that the Court should not permit Defendants to "relitigate[]" any issues that were raised previously is based on an out-of-context citation to *Reintjes Co., Inc. v. Riley Stoker Corp.*, 71 F.3d 44, 49 (1st Cir. 1995), which, in turn, quotes 7 Moore's Federal Practice 60.37.  Plaintiffs' reliance on this dicta from *Reintjes Co.* is misplaced, and *Reintjes Co.* itself is distinguishable on its facts. Before explaining at length why *Reintjes Co.* is distinguishable, Defendant notes that the fact here is that the First Circuit has told this Court to consider whether the damages award could withstand adversarial testing.  There is no case Plaintiffs can cite that supports the proposition that District Courts should not abide directives from Circuit Courts.

However, since Plaintiffs apparently intend to rely on *Reintjes Co.*, Defendant will explain its further inapplicability.  In *Reintjes Co.*, the parties engaged in arbitration and

ultimately entered into a settlement agreement. 71 F.3d at 45. Two years later, after Reintjes

learned that Riley Stoker employees might have committed perjury in the arbitration proceedings

that led up to the parties' settlement, Reintjes brought a completely separate action under

Massachusetts law for "unfair or deceptive act . . . in the conduct of . . . trade or commerce," and

sought damages. *Id.* According to Reintjes, its new suit rested "not on the original cause of

action, but on the independent allegation of fraud in procurement of the settlement agreement."

*Id.* The district court held that "Reintjes' only route to relief from the settlement and underlying

judgment [was] through application of [Rule] 60(b)." *Id.* at 46. Within this context, Reintjes

argued that Riley Stoker's conduct constituted a fraud upon the court, and that the judgment

against it should be vacated pursuant to Rule 60(b)(2) or 60(b)(3). *Id.* at 46-47. But both of

those subsections have an explicit one-year time limitation. *Id.* In finding that Reintjes had

given the court no reason why the newly discovered evidence of perjury "might justify relief

from judgment beyond the statutory time frame," *id.* at 49, the court held that "Reintjes' claims

amount, at best, to ordinary fraud which . . . cannot form the basis of an independent action

under the Rule's saving provision when they would certainly be barred if presented as a motion

under section (3)." *Id.* at 49.

It was within this context that the First Circuit cited to and quoted from Moore's Federal

Practice as follows: "See Moore, 7 Federal Practice, P 60.37 (Rule 60(b) does not license a party

to relitigate, whether via motion or independent action, any 'issues that were made or open to

litigation in the former action where he had a fair opportunity to make his claim or defense.')."

*Id.* Plaintiffs' reliance on *Reintjes Co.* thus depends entirely on the First Circuit's citation to this

particular passage from Moore's Federal Practice. Yet, notably, this language was apparently

stripped from Moore's discussion of Rule 60(b) sometime after the First Circuit decided *Reintjes Co.* in 1995.[4]

Regardless, the First Circuit held that Reintjes had brought its claim outside the statutory time limit and that "[d]iscrediting witnesses does not generally justify an 'extraordinary' second opportunity." *Id.* Thus, simply put, the court's holding was based wholly on the timing of Reintjes' independent claim of fraud and whether that claim itself was sufficiently substantial to overcome the one-year time limitation, not on whether any of the issues presented in Reintjes' fraud complaint had been previously raised or whether they should be "relitigate[d]." Plainly, *Reintjes Co.*, which did not involve *any* issues relating to the vacatur of a default judgment, is inapposite.

Moreover, Plaintiffs' argument ignores the history of this case and most other cases involving default judgments. As freely acknowledged by Defendants before the First Circuit, Defendants did not engage in adversarial litigation of this action before the entry of default judgment. Indeed, while Plaintiffs claim that Defendants litigated the amount of the judgment, this Court recognized that Defendants did not participate in the July 2002 damages hearing. *Ungar v. Palestine Liberation Org.*, 325 F. Supp.2d 15, 66-67 (D.R.I. Mar. 31, 2004). Yet even in these circumstances, one of the factors the Court must consider in the context of Defendants' Rule 60(b)(6) Motion is, *inter alia*, whether Defendants have meritorious defenses. Presumably, all such defenses "were open to litigation" before default judgment was entered. Meaning, if Plaintiffs had their way, a defendant would never be able to raise any meritorious defense in support of a Rule 60(b)(6) motion, rendering the "meritorious defenses" factor of the Court's

---

[4] Undersigned counsel searched the Moore's database on LEXIS and was unable to find the quoted language.

60(b)(6) analysis completely superfluous.  The Court should not permit Plaintiffs to extend their

misguided theory to the analogous issue of whether the amount of damages is likely to withstand

adversarial testing.

Similarly, if Defendants had waived all objections to every decision made by this Court

on its way to granting Plaintiffs' default judgment, then even the granting of Defendants' Rule

60(b)(6) Motion to Vacate would be meaningless.  Under Plaintiffs' misguided view, following

the granting of Defendants' vacatur motion, they would need only ask the Court to reinstate its

prior decisions and thus summarily rule in favor of Plaintiffs without any true litigation on the

merits.  This is not the purpose or meaning of Rule 60(b).

Accordingly, Plaintiffs should be compelled to provide a full and complete answer to

Defendant's Interrogatory No. 21 and produce documents responsive to Defendant's Request

Nos. 25-26 and 29-35.

### B.    Plaintiffs Must Produce All the Responsive Information or Documents Within Their Possession, Custody or Control

In addition to the relevancy objection, Plaintiffs objected as to Interrogatory No. 21 and

Request Nos. 25-26 and 33-35 on the ground that they allegedly seek information or documents

"already produced to Defendants and/or already put into the record in this action and/or already

within Defendants' knowledge."  *See* Exh. 1 at 5 (Objection 2 to Interrogatory No. 21).  In their

answer to the interrogatory and responses to the document requests, Plaintiffs did not, however,

state that they have no responsive information or documents that were not already produced, put

into the record or were otherwise within Defendants' knowledge or possession.

Through the discovery at issue, Defendant seeks discovery of the information and

documents that Plaintiffs have regarding the amount of the default judgment that has not already

been produced to Defendants or placed in the record in this action.  Indeed, defense counsel

made this clear to Plaintiffs' counsel during the October 7 meet-and-confer teleconference. Plaintiffs clearly prepared their witnesses and experts for the July 2002 damages hearing. As this Court ruled, Defendants are entitled to seek discovery of the non-privileged information and documents relating to that hearing. *See* Dkt. No. 506. Accordingly, Defendants are entitled to receive whatever discovery Plaintiffs are withholding based upon their objections.

### C.    The Passage of Time Does Not Excuse Plaintiffs from Producing the Information and Documents at Issue

Plaintiffs also object to Interrogatory No. 21 and Request Nos. 29-32 on the grounds that it seeks information "relating to any events or circumstances subsequent to July 13, 2004" and "uses the present tense ('is likely to withstand adversarial testing') which usage assumes without any basis that Defendants are entitled to and/or will be given an opportunity to actually test the amount of the judgment." *See* Exh. 1 at 5-6 (Objections 3 and 5 to Interrogatory No. 21); *see also* Exh. 3 at 3-9 (Objection 2 to Request Nos. 29-32 as "seeking documents that are irrelevant to the extent it seeks documents relating to the period subsequent to the damages hearing held in this matter").

Once again, Plaintiffs make an argument based on their view of how Defendant will use information instead of whether Defendant is entitled to receive it. Because this Court has ruled that Defendants may seek discovery on this issue, Plaintiffs have a duty to provide responsive information.

In addition, Plaintiffs' cited authority is inapposite. Neither *Davis by Davis v. Jellico Community Hosp., Inc.*, 912 F.2d 129 (6th Cir. 1990), *Campbell v. Am. Foreign S.S. Corp.*, 116 F.2d 926 (2d Cir. 1941), nor *Multimatic, Inc. v. Faurecia Interior Systems USA, Inc.*, 542 F. Supp. 2d 677 (E.D. Mich. 2008), all cited by Plaintiffs in their objections, involved a motion to vacate a default judgment. And in none of these three cases did the court hold that the cut-off for

discovery related to damages in the context of a default judgment must be the date on which the court entered judgment.  Instead, all of these cases involve damages awarded by juries after full adversarial litigation of the propriety of the amounts awarded.  For example, in *Davis*, a medical malpractice case, a jury had awarded damages to the plaintiff based, in part, on plaintiff's expected life span; plaintiff died 33 days after the verdict.  912 F.2d at 131.  The defendants moved for a new trial on damages.  Contrary to Plaintiffs' contention, *Davis* did not establish that "the propriety of a damages award must be measured at the time that judgment was entered," but instead merely held that the plaintiff's death in *Davis*, "following so shortly after a jury award of damages based on an expected life span not realized is . . . not the sort of 'extraordinary circumstance' contemplated by Rule 60(b)(6)."  *Id.* at 136; *see also Multimatic, Inc. v. Faurecia Interior Systems USA, Inc.*, 542 F. Supp. 2d at 682-83 (holding that changes in projections underlying a jury's damages award "is not the type of 'extraordinary  circumstances' contemplated by Rule 60(b)(6).").[5]

Here, by contrast, a substantial portion of the Court's damage award was expressly based upon possible future mental illnesses that the minor Plaintiffs' might sustain.  *See Ungar*, 325 F. Supp.2d at 67 (awarding Dvir Ungar and Yishai Ungar $30,000,000 each, after trebling, for "loss of companionship, society, and guidance and mental anguish").  The Court's findings that these minor Plaintiffs might sustain future mental illness were expressly based on expert testimony sponsored by the Plaintiffs which predicted such future injuries.  Whether those injuries in fact have been manifested in the subsequent years may be relevant to whether the expert predictions

---

[5] Plaintiffs' reliance on *Campbell* is likewise misplaced.  *Campbell*, a "cure and maintenance" case dating back more than 70 years, simply held that in the context of a Rule 59 motion for a new trial based on newly discovered evidence, such evidence must have existed at the time of the trial and the aggrieved party must have been "excusably ignorant" of those facts.  116 F.2d at 928.  Because defendants did not meet that standard, the Second Circuit affirmed the district court's denial of their motion for a new trial.

upon which the Court relied were scientifically reliable.  And if the Court relied upon testimony that was not scientifically reliable, that would clearly be relevant to whether the amount of damages are likely to withstand adversarial testing.

In fact, Defendants' own mental health expert has opined that the examination conducted by Plaintiffs' expert was not scientifically sufficient to render an opinion on the minor Plaintiffs' mental health to a reasonable degree of medical certainty, and has specified the type of materials that a competent practitioner would need to examine in order to form a scientifically valid opinion.  *See* Exh. 9 (Oct. 15, 2010 Expert Report of Dr. Eileen P. Ryan's Opinion) at 2.  The materials such a practitioner would need include precisely the materials Defendants are seeking here.  *Compare id.* at 2 *with* Exh. 3 at 3-10.  These materials will therefore not only be needed to support a scientifically reliable expert assessment of the minor Plaintiffs' mental health, but will also potentially impeach the prior expert testimony upon which the Court relied in awarding damages to the minor Plaintiffs.

The Court also previously made a damage award to the Estate of Yaron Ungar for the pain and suffering he endured between the time the attack commenced and his loss of consciousness.  *Ungar*, 325 F. Supp.2d at 67 (awarding the Estate of Yaron Ungar $1,500,000, after trebling, for "pain and suffering of decedent").  In so doing, the Court expressly relied upon the testimony of another expert offered by Plaintiff who opined that Mr. Ungar had survived for up to 30 seconds after the attack began.  This testimony was rendered by a medical doctor who had no experience in forensic pathology or crime scene investigation.  Exh. 10 (July 12, 2002 Hearing Tr.) at 63:24-64:4.  Defendants have, however, retained an eminent forensic pathologist who has opined based on the current record that Mr. Ungar could have lived no more than a couple of seconds after the attack.  Exh. 11 (Oct. 14, 2010 Expert Report of Dr. Michael M.

Baden) at 2 (stating opinion that "Mr. Ungar would have experienced less than two seconds of conscious pain and suffering").  The remaining documentary materials sought by Defendants pertain to this issue and can obviously be used not only by Defendants' expert in preparing his testimony, but may serve to impeach the prior expert testimony relied upon by the Court in calculating its damage award.

Finally, it is obviously only possible for Defendants to take post-default-judgment discovery in the present, and the Court has already ordered that such discovery can occur.  If, as the Court of Appeals has already ruled, whether "the damages are unlikely to withstand adversarial testing" is a proper issue for consideration, and, as this Court has already ruled, this subject is a proper area of discovery, the fact that such discovery is by necessity occurring now instead of prior to the default judgment is obviously no reason to preclude the discovery from taking place.  Accordingly, Plaintiffs should be compelled to provide a full and complete answer to Defendant's Interrogatory No. 21 and produce all documents in their possession responsive to Request Nos. 29-32.

### D.    Plaintiffs Cannot Delay Responding to Defendant's Interrogatory

Plaintiffs objected to Interrogatory No. 21 for the additional reason that it allegedly "asks for an opinion or contention that relates to fact or the application of law to fact."  *See, e.g.*, Exh. 1 at 6 (Objection 4 to the PA's Interrogatory No. 21).

As a matter of law, Plaintiffs cannot delay their answers to Defendant PA's contention interrogatories or requests for production on the grounds that they seek information that relates to fact or the application of law to fact.  Contention interrogatories, *i.e.*, those interrogatories that inquire into an opinion or contention that relates to fact or the application of law to fact, are a permissible form of written discovery.  Indeed, Federal Rules of Civil Procedure 33(a)(2) explicitly provides:  "An interrogatory is not objectionable merely because it asks for an opinion

or contention that relates to fact or the application of law to fact."  Fed. R. Civ. P. 33(a)(2).

Moreover, "a contention interrogatory should be treated in the same manner as any other

interrogatory, with the burden on the party opposing discovery to show why it cannot answer."  7

JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 33.02[2][b] (3d ed. 2010).

      The Plaintiffs have not provided a fully substantive answer to Interrogatory No. 21,

instead choosing to provide a vague, non-exclusive list of factual bases upon which they plan to

rely to argue that the amount of the judgment would withstand adversarial testing.  *See* Exh. 1 at

6-7.  Despite their lack of response, Plaintiffs attempt to arrogate to themselves the "right,

pursuant to Fed. R. Civ. P. 26 and 33(a)(2), to answer and/or amend and/or supplement their

answer to this Interrogatory at a later time."  *Id.* at 6 (citing *Freitas v. Emhart Corp.*, 715 F.

Supp. 1149, 1150 (D. Mass. 1989)).  Plaintiffs rely on a provision in Rule 33(a)(2), under which

"the court may order that the interrogatory need not be answered until designated discovery is

complete, or until a pretrial conference or some other time."  Fed. R. Civ. P. 33(a)(2).  Rule

33(a)(2), however, does not create a self-declared right to defer answers to contention

interrogatories.  Rather, it gives the district court discretion to grant a deferral when appropriate.

*See* Fed. R. Civ. P. 33 advisory committee's note to 1970 Amendment ("Since interrogatories

involving mixed questions of law and fact may create disputes between the parties which are best

resolved after much or all of the other discovery has been completed, the court is expressly

authorized to defer an answer.").  *See also Hypertherm, Inc. v. American Torch Tip Co.*, No. 05-

cv-373-JD, 2008 U.S. Dist. LEXIS 108269, at *7 (D.N.H. Dec. 29, 2008) (explaining that the

"general view is that contention interrogatories are a perfectly permissible form of discovery, to

which a response ordinarily would be required") (internal quotation and citation omitted);

*Natural Resources Defense Council v. Curtis*, 189 F.R.D. 4, 13 (D.D.C. 1999) ("[W]hile a court

has discretion to postpone responses to contention interrogatories until some other point in the

discovery process, plaintiffs provide me with no reason to exercise my discretion to do so now.

[Defendant] is therefore entitled to the discovery it seeks now rather than later.").[6]

     If Plaintiffs wanted to defer answering this interrogatory, they should have sought relief

from the Court instead of unilaterally declaring themselves entitled to such relief.  In *Huthnance*

*v. District of Columbia*, 255 F.R.D. 297, 298-99 (D.D.C. 2008), the Court found that, even

assuming the defendants' interrogatories could be deemed contention interrogatories, and that

answers could appropriately be deferred until the close of discovery, "this does not absolve

plaintiff of her responsibility to reply to them in a timely fashion."  Rather, "[p]laintiff should

have responded to defendants' interrogatories to the best of her ability at the time they were

propounded.  Alternatively, plaintiff should have sought relief from the court in the form of a

protective order, seeking to delay her responses until other events had transpired."  *Id.* at 299.

Therefore, in *Huthnance*, the court ruled that plaintiff's options were either (1) timely answer the

interrogatories to the best of her ability, or (2) file a motion for a protective order.  *Id.*  The

approach taken by plaintiff, whereby she "*sua sponte* granted herself an extension of time within

which to answer them," was not authorized by the Rule.  *Id.*  Granting the defendants' motion to

compel, the court concluded:  "[plaintiff] must answer the interrogatories."  *Id.* at 300.

     Such is precisely the case here.  Unwilling to timely answer the PA's interrogatory,

Plaintiffs sought to grant themselves an extension to fully respond until they see fit,

inappropriately shifting the burden to the Defendant to seek an order compelling an answer.

Even if Plaintiffs were otherwise entitled to an order postponing their answer, their failure to

---

[6] The case cited by Plaintiffs in their objection, *Freitas v. Emhart Corp.*, 715 F. Supp. 1149 (D. Mass.
1989), provides no basis for Plaintiffs to fail to provide a full and complete answer to Defendant's
Interrogatory No. 21 and instead concerns a party's attempt to correct an erroneous interrogatory answer.

proactively seek such relief effectively waives their right to now seek the Court's intercession by opposing Defendant's Motion on this point.  Thus, Plaintiffs must answer the interrogatory and provide the information they have to date, with the understanding that Rule 26(e) allows them to amend or supplement their answers as they obtain additional information.  *See* 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 33.02[2][b] (3d ed. 2010) ("a party may provide answers based on information it has to date, and amend or supplement its answers at a later date pursuant to Rule 26(e)").  Finally, given that discovery closes on November 19, 2010, and that the answer sought likely will lead to further requests or deposition notices, it is urgent that Defendants obtain appropriate a full and appropriate answer at this time.

### E.    Plaintiffs' Answer to Interrogatory 21 is Inadequate and Incomplete

Plaintiffs' answer to Interrogatory No. 21, which they claim supports their contention "that the amount of the judgment would withstand any other adversarial testing," states that the "factual basis for this contention includes, *inter alia,* (a) the evidence and testimony submitted by the plaintiffs in the context of the damages hearing held by this Court (b) the findings and conclusions reached by this Court in *Ungar v. Palestinian Authority*, 304 F. Supp.2d 232 (D.R.I. 2004) (including in the report and recommendation attached thereto) and (c) the numerous federal decisions in terrorism cases awarding victims of terrorism similar or greater damages."  *See* Exh. 1 at 6-7.

Plaintiffs' brief answer is inadequate in two respects.  First, Plaintiffs' use of "*inter alia*," which references "other things," indicates that the three-part list provided is non-exclusive.  Defendant, however, is entitled to the full factual bases for Plaintiffs' contention.  *See*, *e.g.*, *Steir v. Girl Scouts*, 383 F.3d 7, 14 (1st Cir. 2004) ("[T]he spirit of the Civil Rules requires that a party be responsive, complete, and forthcoming in its answer . . . "); *Ass'n of Am. Physicians & Surgeons v. Clinton*, 837 F. Supp. 454, 457 (D.D.C. 1993) (finding party's conduct to be

"egregious" where a list provided by that party in response to an interrogatory was admittedly not "fully exhaustive"), *rev'd on other grounds*, 187 F.3d 655 (D.C. Cir. 1999); *see also* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately *and fully* in writing under oath.) (emphasis added).  Second, Plaintiffs' third basis, though referencing "numerous" decisions, cites only one.  *See* Exh. 1 at 7 (citing *Boim v. Quranic Literacy Institute*, 2005 WL 433463 at *5 (N.D. Ill. 2005)).  Once again, Defendant is entitled to the full list of decisions upon which Plaintiffs intend to rely in support of their contention.  *Id.*  Unless Defendant can be assured that Plaintiffs have provided the full basis for their contention that the amount of the judgment would withstand adversarial testing, its ability to gather evidence to support its contrary position will be compromised.  Accordingly, Plaintiffs should be compelled to provide a full and complete answer to Defendant's Interrogatory No. 21.

## III.    COMMUNICATIONS BETWEEN PLAINTIFFS' COUNSEL AND THEIR EXPERTS ARE NOT PRIVILEGED

Documents 18 through 25 on Plaintiffs' Privilege Log With Respect to the Palestinian Authority's 2nd Request for Production of Documents, #25 and #26 concern emails, memoranda and other documents prepared by Plaintiffs' experts, Dr. Friedman and Dr. Ziderman, or exchanged between those experts and Plaintiffs' counsel.  *See* Exh. 2 at 10.  Plaintiffs claim that all of these documents are subject to "both the attorney-client privilege and the attorney work-product privilege."  *Id.* at 9.  Defense counsel asked that Plaintiffs withdraw their privilege objections as to these documents during the parties' October 7 meet-and-confer teleconference. Plaintiffs' counsel refused.

Documents and information shared with a party's expert witnesses or prepared by expert witnesses may not be shielded from discovery through privilege objections.  *See, e.g.*, *Galvin v. Pepe*, Civil No. 09-cv-104-PB, 2010 U.S. Dist. LEXIS 92442 (D.N.H. Aug. 5, 2010); *Reg'l*

*Airport Auth. v. LFG, LLC*, 460 F.3d 697, 716-717 (6th Cir. 2006) (mandating disclosure of all materials considered by an expert, even if the materials were otherwise attorney work product); *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co.*, 171 F.R.D. 57, 67 (S.D.N.Y. 1997) (holding that conversations between attorneys and experts are discoverable). Indeed, information and documents concerning an expert's "testimony," as document numbers 18 and 22-25 are described, are particularly relevant to the formation of an expert's opinion and therefore discoverable under Rules 26(a) and 26(b). *Galvin*, 2010 U.S. Dist. LEXIS 92442 at *6-7. Finally, documents prepared by an expert in preparation for testimony, as document numbers 19-21 appear to be, are likewise discoverable. *Id.* at *6. Because these documents are not protected from disclosure by the attorney-client privilege or the work product doctrine, Plaintiffs should be compelled to produce them to Defendant.

## IV.    THE COURT SHOULD ORDER EXPEDITED PRODUCTIONS

As this Court is aware, the looming November 19, 2010 discovery deadline affords Defendant little time to collect and process the information and documents sought in this Motion to Compel. For example, the medical and school records of Dvir and Yishai Ungar requested by Defendant in Request Nos. 29-32 are specifically mentioned in Dr. Eileen P. Ryan's expert report as "critical . . . additional data" necessary to properly evaluate the psychological statuses of the minor Plaintiffs. *See* Exh. 9 at 2. Defendants would require this information in advance of any Rule 35(a) examinations of Dvir and Yishai Ungar that this Court may permit Defendants to conduct, which would necessarily have to take place before the close of discovery. *See* Dkt. No. 559 (Defendants' Rule 35(a) Motion to Compel Mental Examinations of Plaintiffs).

Accordingly, Defendant requests that, if its Motion to Compel is granted, the Court expedite the time for Plaintiffs' compliance under LR Cv 37(b) from twenty-one (21) days to four (4) business days.

## CONCLUSION

For the foregoing reasons, Defendant PA's Motion to Compel Answers to the PA's Interrogatory Nos. 19-21 and Request for Production Nos. 23, 25-26 and 29-35 should be granted.

Respectfully submitted,

Dated:  October 22, 2010

/s/ Mark J. Rochon___
Mark J. Rochon (D.C. Bar #376042)
Admitted *pro hac vice*
Richard A. Hibey (D.C. Bar #74823)
Admitted *pro hac vice*
Brian A. Hill (D.C. Bar #456086)
Admitted *pro hac vice*
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
mrochon@milchev.com
rhibey@milchev.com
bhill@milchev.com


Deming E. Sherman (#1138)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, Rhode Island 02903
Tel. (401) 274-9200
Fax. (401) 276-6611
dsherman@eapdlaw.com

*Attorneys for the Palestinian Authority and the Palestine Liberation Organization*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 22nd day of October, 2010, a true and genuine copy

of the foregoing was filed by ECF, which will automatically send notification and a copy of such

filing to:

> David J. Strachman
> McIntyre, Tate & Lynch, LLP
> 321 South Main Street, Suite 400
> Providence, RI  02903
> <u>djs@mtlhlaw.com</u>
>
> Max Wistow
> Wistow and Barylick Incorporated
> 61 Weybosset Street
> Providence, RI 02903
> <u>mwistow@wistbar.com</u>
>
> *Attorneys for Plaintiffs*

<u>/s/ Mark J. Rochon</u>