```
             UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF RHODE ISLAND


THE ESTATE OF YARON UNGAR, et al.,   :
                       Plaintiffs,   :
                                     :
    v.                               :      CA 00-105L
                                     :
THE PALESTINIAN AUTHORITY, et al.,   :
                       Defendants.   :
```

**ORDER**

**GRANTING DEFENDANTS'**

**MOTION FOR PROTECTIVE ORDER**

**AND IDENTIFYING RELEVANT RULE 30(b)(6) TOPICS**

Before the Court is Defendants' Motion for Entry of a Protective Order Regarding Plaintiffs' Notices of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) (Docket ("Dkt.") #548) ("Defendant's Motion for Protective Order" or "Defendant's Motion").  A hearing was held on October 26, 2010.  After reading the parties' memoranda and the relevant case law and also listening to the arguments of counsel, the Court GRANTS Defendants' Motion.

The Court so rules because each of the Rule 30(b)(6) notices which Plaintiffs have served upon Defendants identifies over 100 separate topics.  See Memorandum in Support of Defendants' Motion for Entry of a Protective Order Regarding Plaintiffs' Notices of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) (Dkt. #549) ("Defendants' Mem."), Exhibit ("Ex.") 1 (Plaintiffs' Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) to The

Palestinian Authority); id., Ex. 2 ("Plaintiffs' Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) to The Palestine Liberation Organization").  The Court has little difficulty concluding that the notices are unreasonable on their face, especially given the limited time remaining as of the date Plaintiffs issued the notices.[1]  It would be onerous to require that Defendants prepare witnesses to testify on each of these topics in the four weeks provided by Plaintiffs' notices.  Cf. Lipari v. U.S. Bancorp, N.A., CIVIL ACTION No. 07-2146-CM-DJW, 2008 U.S. Dist. LEXIS 82594, at *16 (D. Kan. Oct. 16, 2008)("When the notice is overbroad, the responding party is unable to identify the outer limits of the areas of inquiry noticed, and designating a representative in compliance with the deposition notice becomes impossible.").  While the Court recognizes that Plaintiffs went to great effort in annotating the basis for many of the topics identified in the notices, the sheer number of those topics and the minute detail sought with respect to those topics made compliance by the date specified (September 28, 2010) virtually impossible.

---

[1] The Court announced in its order of April 1, 2010, that there would be discovery, see Order (Dkt. #482) at 2, and stated in the June 1, 2010, Pre-Hearing Order (Dkt. #489) that "all pre-hearing discovery [would] be completed by **November 19, 2010**," Pre-Hearing Order at 1. Notwithstanding this notice, Plaintiffs did not serve their Rule 30(b)(6) notices until August 31, 2010. At that point more than half of the period for discovery had already elapsed.

To assist the parties and to avoid future discovery disputes, the Court makes the following additional rulings regarding the matters indicated below:

**1. Relevant Topics**.  The relevant topics for the Rule 30(b)(6) depositions are:

    a.    the willfulness of Defendants' default;[2]

    b.    the timeliness of the motion to vacate;[3]

---

[2] The Court is unpersuaded by Defendants' argument that because they admit their default was willful, the reason(s) for their default is not a proper subject for discovery.  The First Circuit, in identifying the "substantial dispute between the parties about the incidence and weight of other, potentially relevant factors [to the determination of the Rule 60(b)(6) motion]," Ungar v. Palestine Liberation Org., 599 F.3d 79, 86 (1st Cir. 2010), noted that Defendants "blame[d] political extremism within the PLO and the PA for their earlier decision to default," id.  The First Circuit appeared to include this explanation as being among the arguments by Defendants which, taken together, could "ultimately carry the day ...," id.  Thus, Plaintiffs should not be precluded from exploring the validity of Defendants' explanation.

    Moreover, separate and apart from the First Circuit's opinion, Judge Lagueux's April 1, 2010, Order is explicit in stating that "the Court will hold an evidentiary hearing to determine precisely what the facts are concerning the deliberate decision to default and the factual circumstances surrounding that matter."  Order (Dkt. #482) at 2.  Accordingly, it appears to this Magistrate Judge that Judge Lagueux contemplated that there would be discovery relative to this issue.

[3] The Court rejects Defendants' argument that this Court and the First Circuit have already determined that Defendants' motion to vacate is timely (or not untimely).  The most that reasonably can be inferred from the First Circuit's decision is that the Court of Appeals did not believe that Defendants' motion to vacate was so untimely that this sole factor "inexorably dictate[d]," Ungar, 599 F.3d at 86, that the motion be denied.  This is quite different than concluding, as Defendants do, that the Court of Appeals must have necessarily determined that the motion was timely (or it would not have remanded the motion to

      c.  the relationship between Defendants and the Palestine Investment Fund ("PIF") and the Palestine Commercial Services Company ("PCSC"), Defendants' knowledge of: i) Plaintiffs' collection efforts relative to the PIF and PCSC, ii) actions taken by the PIF and/or the PCSC in response to such efforts, and iii) Defendants' own actions, if any, in response to or because of such collection efforts;[4]

      d.  the Defendants' meritorious defenses;

      e.  the prejudice, or the lack of prejudice, to Plaintiffs if the motion to vacate is granted, the basis for Defendants' disputation of "plaintiffs' claim that evidence and witnesses have been irreparably compromised," Ungar v. Palestine Liberation Org., 599 F.3d 79, 86 (1st Cir. 2010), and the roles of certain leadership persons whom Plaintiffs sought to depose

---

this Court to "analyze the totality of the circumstances," id. at 87), or that Judge Lagueux also believed that the motion was timely because he did not deny it based on this factor. Whether Defendants' motion is timely or untimely and how this factor should be weighed in calibrating the Rule 60(b)(6) balance have yet to be determined by this Court. See id. at 87. While there may be some validity to Defendants' observation that "the timing 'is what it is,'" Defendants' Reply in Further Support of Their Motion for Entry of a Protective Order Regarding Plaintiffs' Notices of Deposition Pursuant to Rule 30(b)(6) ("Defendants' Reply") at 8, the Court declines to rule that Plaintiffs are precluded from seeking discovery relative to this factor on the ground that the question of timeliness has already been determined.

    [4] See Order Granting in Part and Denying in Part Motions (Dkt. #575) at 3-5 for the reasons that the Court finds such discovery relevant as to the PIF and PCSC.

prior to the entry of default judgment and who are no longer available;

      f.  the "political ramifications," id., of the case;

      g.  the potential effect of the case "on international relations," id.; and

      h.  the Defendants' ability, willingness, and commitment to participate in discovery and litigate the merits of this case, including how that ability may differ from its previous ability as described in Dr. Nasser Al-Kidwa's January 27, 2003, letter to Magistrate Judge Martin.

    **2.  Attorney-Client Privilege.**  Without attempting to address all the possible scenarios and contexts in which the issue of attorney-client privilege might arise, given the representation of Defendants' counsel at the October 26, 2010, hearing that Defendants do not contend that their willful default was attributable to the advice and/or information provided by their prior counsel,[5] the Court states that, with respect to

---

[5] The following exchange occurred during the October 26, 2010, hearing between the Court and Defendants' counsel:

    THE COURT: Defendants are not blaming their prior counsel
          for this, for the decision to willfully default
          in this case?

    MR. ROCHON: No.

    THE COURT: They are not.

communications between Defendants and their prior counsel, Defendants do not appear to be using the privilege as both a sword and a shield.  Similarly, with respect to the timing of the motion to vacate, so long as Defendants do not contend that any delay in the filing of the motion to vacate is attributable to advice or information provided by past or current counsel, the Court would not be inclined to find that Defendants are attempting to use the attorney-client privilege as both a sword and a shield.

    **3. Detailed Written Designations.**  With regard to Plaintiffs' request that Defendants detail: (a) how each Rule 30(b)(6) witness was selected, (b) the efforts made to inform and/or educate each witness about his or her testimony, and (c) whether any witness was asked to testify but refused, see Defendants' Mem., Ex. 1 at 2, such detailing is not required by the Rule.  Accordingly, Defendants need not provide such information to Plaintiffs in connection with a deposition pursuant to Rule 30(b)(6).  However, Defendants must advise Plaintiffs which witness will testify to which topic(s).

    **4. Contention Interrogatories.**  While the Court encourages Plaintiffs to consider using contention interrogatories as they may be the most effective and productive manner of obtaining the

---

    MR. ROCHON: Double no.  ....
Recording of Oct. 26, 2010, Hearing.

information sought, the Court declines to limit Plaintiffs' right to conduct Rule 30(b)(6) depositions beyond the limitations imposed by this Order.

    **5. Location of Depositions**. As the parties indicated at the October 25-26, 2010, hearing that counsel will be traveling to the Middle East to conduct other depositions, the Court rules that the Rule 30(b)(6) deposition(s) to address the above topics shall be conducted where the witness(es) are located. In making this ruling the Court is also influenced by Defendants' plausible argument that obtaining visas within a short period of time for the witnesses to come to the United States may be problematic.

    **6. Appointment of Special Master or Judge.** The Court declines to grant Defendants' request for appointment of a special master or judge to preside over the depositions as it is unpersuaded that such action is necessary. It does not appear that behavior of counsel at previous depositions has been problematic,[6] and this and the other Orders which the Court has issued in the last two days will hopefully reduce, if not eliminate, areas of disagreement.

So ordered.

---

[6] The Court notes that Defendants' memoranda describe an incident where the conduct of one of Plaintiffs' counsel during a telephone call may have momentarily departed from the standards which this Court expects from members of its bar. If the reported lapse occurred, it should not be repeated.

ENTER:


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
October 28, 2010