**Rick Gaskins, MBA, CPA**
Gaskins Associates, PC

**Forensic Economics**

602 Cromwell Whye Lane
PO Box 326
Monkton, MD 21111
Telephone: 410-357-9503
E-mail: RRGaskins@aol.com
http://www.RickGaskins.com

15 October 2010

Brian A. Hill, Esq.
Miller & Chevalier, Chartered
Suite 900
655 Fifteenth Street, NW
Washington, DC 20005-5701

Re:   Yaron Ungar, et al, v. PA, PLO

Dear Mr. Hill:

You have asked for my opinion of whether the default judgment in this matter for economic and non-economic damages would withstand adversarial testing. In this report I present a brief background of the case and issue, my expert opinion and information supporting my opinion. I also provide the disclosures required in Federal Rule 26 pertaining to expert testimony.

Background and Understanding

I understand that Mr. Ungar was a citizen of the United States and a resident of Israel. He died, along with his wife, in Israel in a violent incident in June 1996. Their two children, Dvir and Yishai, survived. Mr. Ungar was born 19 August 1970 and was therefore 25.81 years old at the time of his death. He alleges that the perpetrator(s) of his 1996 death were supported by the defendants in this lawsuit. A default judgment was ordered in the matter in the amount of $ 38,800,926 before statutory trebling. Defendants contend that the judgment grossly overstates the damages that would be awarded in an adversarial trial and seek to have that default judgment vacated.

Scope of Report

This report presents my opinion, with supporting evidence, of the reasonableness of the default judgment damages awarded for economic and non-economic damages in the subject action.

Brian A. Hill, Esq.            15 October 2010            Page 2

Beyond Scope of Report

I express no opinions regarding liability in the subject action.

Basis

I was provided and reviewed numerous documents pertaining to Mr. Ungar, the claims for lost financial support and for the value of his household services lost, both assessed by Adrian Ziderman, Ph.D., transcripts from hearings in this matter, and the decisions of the Honorable Judge Ronald R. Lagueux dated 27 January 2004 and 12 July 2004. I also obtained documents and information about court verdicts for wrongful death, about compensation to victims of the September 11, 2001 terror attacks in the United States, and about the court-approved Plan of Distribution for damages to the victims of the Station Nightclub Fire. All of the documents and information I reviewed in working on this assignment are listed in report Appendix A, Documents Reviewed. In reaching my opinion I also relied on my judgment, experience and expertise developed through over thirty years as a forensic economist assessing personal damages.

Supporting Information and Analyses

I have selected three relevant sources of information about the amount of compensation for wrongful death and I present them as objective information that is consistent with my opinion formed by experience and expertise. These sources are:

- The statistically expected damages that a Rhode Island jury would award for economic and non-economic damages in cases involving a man of Mr. Ungar's earnings and family composition, based on analysis of actual jury verdicts.

- The amounts awarded for economic and non-economic damages for deaths resulting from the terror attacks in the United States of September 11, 2001, through the Victim Compensation Fund (VCF).

- The amounts awarded for economic and non-economic damages for deaths resulting from the Station Nightclub Fire in Rhode Island through the court-approved Plan of Distribution.

I have prepared analyses for each of these information topics together with a summary. The attached schedules are:

Schedule 1, Summary, Analysis of compensation for wrongful death

   The summary shows the results of damages indicated by the three sources detailed in Schedules 2, 3 and 4. The indicators for total economic and non-economic damages range from a low of approximately $1,230,000 to a high of approximately $2,180,000, averaging approximately $1,760,000.

Schedule 2, Analysis of court verdict data for comparable death claims

   The Jury Verdict Research (JVR) company is a data acquisition and publishing company that has collected case information, jury verdicts and settlement information for in excess of 280,000 personal damages cases in the United States. In conjunction with the case data, JVR provides analytical tools that permit one to specify case parameters and report probable award amounts. Schedule 2 shows the case parameters for the analysis specified to provide an estimate of the probable award related to Mr. Ungar's status at the time of his death.[1] The earnings input is the average working years earnings of Mr. Ungar from the report of Dr. Ziderman. The analysis results in a verdict award estimate of approximately $2,180,000, total, for both economic and non-economic damages.

Schedule 3, Analysis of 9/11 Victim Compensation Fund awards for death

   The United States government established a victim compensation fund in 2001 to compensate victims of the terror attacks in the United States of September 11th, 2001. The Victim Compensation Fund (VCF) compensated victims of the September 11th attack for both economic and non-economic damages. The Special Master overseeing the fund took care to create guidelines for compensation that would be both fair and transparent. For death, the method for determining the presumed award for economic damages was documented in "Explanation of Process for Computing Presumed Economic Loss" (Revised August 27, 2002), which the Special Master made publicly available on the internet, and which had the filename "vc_matrices.pdf". The VCF award guidelines presumed that non-economic damages for death would be fairly compensated at $250,000 for the decedent and if there were a surviving spouse or dependents of the decedent non-economic damages of $100,000 to each such person.

---

[1] The selected liability type is the available option closest to an intentional shooting in my opinion. There should be no, or little, impact on economic damages, as the analysis of economic damages by forensic economists is unaffected by cause of loss.

Brian A. Hill, Esq.                15 October 2010                            Page 4

Schedule 3 presents data from the final report of the Special Master of that compensation fund for categories of claimants that appear comparable to Mr. Ungar's circumstances in 1996. For reference purposes it also presents data for awards to uniformed workers (Police, Fire, Emergency Medical Services and Port Authority) and for all death claims. It is important to note that the reported awards include compensation for both economic and non-economic damages, and that the awards, with the exception of the presumed award for the single parent of two children illustration, have been reduced for any applicable collateral source receipts. As to fairness of the VCF plan of compensation, the Special Master stated that "The presumed methodology was designed to provide generous awards to the families ...."[2]

Schedule 4, Analysis of damages under the Station Nightclub Fire plan of distribution

For the Station Nightclub Fire litigation in Rhode Island a plan of distribution was developed to equitably compensate the victims of that disaster. Known as the McGovern Plan of Distribution, the plan used a point system to determine the gross award for each of the victims. Special Master William A. Poore evaluated the plan with respect to the child claimants. In his conclusion recommending the plan he stated "The amount [to be] received responds proportionately to the settlement matrix which this court has previously found to be fair and equitable. Moreover, the actual financial assignments to each child correspond appropriately to known litigation values."[3] Schedule 4 details the award determination for a decedent of Mr. Ungar's family circumstances, with an indicated gross award of approximately $1,230,000.

Finding and Opinion

The default judgment entered in this matter in the amount of $ 38,800,926 before statutory trebling is approximately 22 times the amount of the average indicated award from Schedule 1, and approximately 18 times the amount of the high indicator of award from Schedule 1. Based on my judgment, experience and expertise in assessing personal damages for injury and death, and based on the supporting information presented in this report, in my opinion the default judgment grossly exceeds the award that a Rhode Island civil jury might rationally render in this matter.

---

[2] "Final Report of the Special Master for the September 11th Victim Compensation Fund of 2001", page 7.
[3] "Report and Recommendation of Special Master William A. Poore Relating to Settlement of Minors' Claims", filed 23 November 2009, page 44.

Brian A. Hill, Esq.                    15 October 2010                                    Page 5

Certification

1. The statements of fact, reported analyses, opinions and conclusions expressed in this study are to the best of my knowledge and belief true and correct.

2. This valuation was performed on a basis of non-advocacy, and I have no present or contemplated interest in the litigation, nor any interest or bias, which would impair a fair and unbiased appraisal. My compensation for this appraisal is independent of the value reported and is not contingent on any action or event resulting from the appraisal.

3. This appraisal has been conducted and this report issued in conformity with the Statement of Ethical Principles and Principles of Professional Practice of the National Association of Forensic Economics and the Statement of Ethical Principles of the American Academy of Economic and Financial Experts.

4. No one provided significant professional assistance to me in the conduct of this appraisal.

Appendix A, which follows the detailed schedules attached to this report, includes a listing of documents I was provided or obtained, reviewed or considered. It also includes detailed identification of the documents relied on in my opinions and data presentation in this report.

My qualifications and list of publications authored in the previous ten years are contained in my resume, which is attached to this report as Appendix B.

A list of all other cases in which I have testified as an expert at trial or by deposition during at least the previous four years is attached as Appendix C.

My compensation for review, analysis and preparation of this report is at my standard hourly rate of $325. Subsequent expert services related to his case, including deposition and trial testimony, will be at my standard hourly rate of $325 per hour. No invoice for services performed has been rendered as of this date.

For trial testimony I expect to use the four schedules of this report as exhibits supporting my testimony.

Brian A. Hill, Esq. 15 October 2010 Page 6

Should resolution of this matter require my testimony in deposition or trial, I would appreciate the opportunity to incorporate any additional data then known, and to update the analyses for the passage of time and its impact on present value.

I hope this information contributes to a fair resolution of this matter. If you require further assistance, I would be pleased to respond.

Very truly yours,

Rick R. Gaskins, MBA, CPA

Attachments: Schedules 1, 2, 3 and 4
              Appendix A, Documents Reviewed
              Appendix B, Resume of Rick R. Gaskins, MBA, CPA
              Appendix C, Testimony List, Rick R. Gaskins, MBA, CPA

Schedule 1
Summary
Analysis of compensation for wrongful death
Total awards for economic (EC) and non-economic (NEC) damages

|  | Reference schedule | Total award for EC + NEC |
|---|---|---|
| Analysis of jury verdict data for wrongful death | 2 | $2,177,434 |
| Analysis of 9/11 Victim Compensation Fund awards for death |  |  |
| Claim for death, single parent of two children | 3 | $1,687,086 |
| Claims for death, uniformed workers | 3 | $1,619,995 |
| Claims for death, all | 3 | $2,082,035 |
| Analysis of Station Nightclub Fire wrongful death damages | 4 | $1,233,646 |

|  |  |
|---|---|
| Indicators low | $1,233,646 |
| Indicators average | $1,760,039 |
| Indicators high | $2,177,434 |

Schedule 2
Analysis of jury verdict data for wrongful death
Yaron Ungar fact pattern applied
Total awards for economic (EC) and non-economic (NEC) damages
Source: Jury Verdict Research, Horsheim, PA

| Geographic Information | |
|---|---|
| State: | Rhode Island |
| County: | Providence |

| Plaintiff Information | |
|---|---|
| Age: | 26 |
| Sex: | Male |
| Race: | Caucasian |
| Marital Status: | Single with Minor Child(ren) |
| Occupation: | Teacher |
| Salary Adjustment on: | $57,000 |
| Alcohol/Drug Abuse: | No |
| Criminal Record: | No |
| Disabled: | No |
| Death Unrelated to Incident: | No |
| Obesity: | No |

| Defendant Information | |
|---|---|
| Defendant Type: | Multiple Defendants |

| Liability Information | |
|---|---|
| Liability Type: | Non-Vehicular |
| General Liability: | Police Negligence* |
| Specific Liability: | Police Negligence, Accidental Shooting* |
| Admitted Liability: | No |

| Death Information | |
|---|---|
| Probable Verdict Amount: | **$2,177,434** |

\* Most applicable selections available. Analysis of economic damages
   by forensic economists is unaffected by cause of loss.

Schedule 3
Analysis of 9/11 Victim Compensation Fund awards for death
Total awards for economic (EC) and non-economic (NEC) damages
And gross presumed award for single parent of children by earnings

|  | Source | Number of claims | Total amount awarded | Average total award for EC + NEC |
|---|---|---|---|---|
| Claim for death, single parent of two children, by earnings level | 1 |  |  | $1,687,086 |
| Claims for death, uniformed workers Fire, Police, EMS, Port Authority | 2 | 406 | $657,717,962 | $1,619,995 |
| Claims for death, all | 3 | 2,880 | $5,996,261,003 | $2,082,035 |

Sources:
1 "Explanation of Process for Computing Presumed Economic Loss" (Revised August 27, 2002), the "vc_matrices.pdf" of the Special Master, page 13, adjusted from 1 child to 2 children.
2 "Final Report of the Special Master for the September 11th Victim Compensation Fund of 2001", table 9.
3 "Final Report of the Special Master for the September 11th Victim Compensation Fund of 2001", table 8.

Schedule 4
Analysis of Station Nightclub Fire wrongful death damages
Total award for economic (EC) and non-economic (NEC) damages
Yaron Ungar fact pattern applied to court approved McGovern Plan of Distribution
Source: William A. Poore, Esq. Report and Recommendation Exhibits B and E

|  |  | Estate of Yaron Ungar | Yishai Ungar | Dvir Ungar | **Total** |
|---|---|---|---|---|---|
| Wrongful Death Points | 100 | 100 |  |  |  |
| Education adjustment Points | 7 | 7 |  |  |  |
| Spousal consortium Points | 12 | 12 |  |  |  |
| Child: Dvir Points | 38 |  | 38 |  |  |
| Child: Yishai Points | 37 |  |  | 37 |  |
| Total Points | 194 | 119 | 38 | 37 |  |
| Point Value |  | $6,359 | $6,359 | $6,359 |  |
| Gross award Dollars |  | $756,721 | $241,642 | $235,283 | **$1,233,646** |

**Appendix A**

Documents Reviewed
Updated 15 October 2010

| | |
|---|---|
| 1 | "Complete Life Tables of Israel, Jews, Males, 2004 - 2008", Israel Central Burea of Statistics, http://www.cbs.gov.il/ |
| 2 | "Expenditures on Children by Families, 2009", U.S. Department of Agriculture, Miscellaneous Publication No. 1528-2009. |
| 3 | Explanation of Process for Computing Presumed Economic Loss, vc_matrices.pdf, Revised 27 August 2002 |
| 4 | Final Report of the Special Master for the September 11th Victim Compensation Fund of 2001, Volume 1 |
| 5 | Jury Verdict Research, Case Evaluation Software Web Deluxe, http://www.shoplrp.com/product/p-2302.html. |
| 6 | Memorandum and Order, 27 January 2004 |
| 7 | Memorandum and Order, 12 July 2004 |
| 8 | "Report on Economic Losses Due to the Death of Yaron Ungar", Adrian Ziderman, Ph.D., November 2001. |
| 9 | "Report and Recommendation of Special Master William A. Poore Relating to Settlement of Minors' Claims", filed 23 November 2009. |
| 10 | "Report and Recommendation of Special Master William A. Poore Relating to Settlement of Minors' Claims", filed 23 November 2009, Exhibit B, McGovern Plan of Distribution |
| 11 | "Report and Recommendation of Special Master William A. Poore Relating to Settlement of Minors' Claims", filed 23 November 2009, Exhibit E, Form Distribution Settlement Sheets. |
| 12 | Rhode Island Code, Title 10, Chapter 7, Death by Wrongful Act |
| 13 | Rhode Island Model Jury Instructions, Chapter 10000, Compensatory Damages for Personal Injuries. |
| 14 | Transcript of hearing before Magistrate Judge David L. Martin, 12 July 2002, pps 1 - 153. |
| 15 | Transcript of hearing before Magistrate Judge David L. Martin, 15 July 2002, pps 1 - 43. |

**Appendix B**

**Rick Gaskins, MBA, CPA**
**Gaskins Associates, PC**                                **Forensic Economics**

602 Cromwell Whye Lane
PO Box 326
Monkton, MD 21111
Telephone: 410-357-9503
E-mail: RRGaskins@aol.com
http://www.RickGaskins.com

January 2010

Resume of Rick R. Gaskins, MBA, CPA

Experience:   Rick Gaskins has 33 years of experience in the public accounting profession and 31 years of experience as an expert witness and consultant in the fields of forensic economics and accounting. He has extensive experience in performing and directing consulting engagements involving:

- Damages in personal injury and wrongful death
- Business, pension and financial assets valuation
- Damages in commercial disputes
- Marital property distribution analysis
- Civil and criminal matters
- Alternate dispute resolution

Prior to forming Gaskins Associates he was senior Management Advisory Services Partner with a regional certified public accounting (CPA) firm. Earlier he was a senior consultant with the health care consulting division of a national CPA firm. His experience also includes management positions in banking and higher education.

He is a past adjunct instructor at the Georgetown University School of Business Administration where he taught financial and managerial accounting theory. He also serves as an instructor for continuing professional education seminars on forensic economics, forensic accounting and business damages/valuation.

He augments his consulting capabilities with computer programming skills in high-level languages, database management systems, computer modeling and statistical analysis tools. In addition, he has special training in computer controls evaluation and computer auditing. He has training and experience in collaborative law and a genuine interest in contributing to the advancement of alternative dispute resolution.

<u>Resume of Rick R. Gaskins, MBA, CPA</u>          January 2010          <u>Page 2 of 5</u>

| | |
|---|---|
| <u>Representative Engagements:</u> | <u>Forensic accounting, economic analysis and expert testimony</u> |

    Economic loss in personal injury and wrongful death cases, before federal and state courts.

    Identification, valuation and analysis for distributions of marital property.

    Business valuation and lost profits analysis for commercial torts and business interruption, before state courts.

    Mediation of business value in alternate dispute resolution.

    Damages from violations of lending laws and for damage to credit standing.

    Funds flow analysis in criminal fraud and RICO case, before federal court.

    Business valuation and pension valuation in marital dissolutions.

    Economic analysis of a real estate investment trust's (REIT's) management of a major real estate development project, before bankruptcy court.

    Assessment of damages for contract cancellation and misappropriation of intellectual property (software), before federal court.

    Testimony in support of consideration of punitive damages awards.

    Cost of proposed (injunctive relief) worldwide medical treatment program, financial management, and accounting to the court, in federal court.

    Assessment of damages resulting from cancellation of wholesale distribution agreement, before federal court.

    Forensic accounting regarding fraud, embezzlement and Securities Acts violations by bank management, before federal court.

    Economic loss of foreign nationals for injury and death, before federal courts.

Resume of Rick R. Gaskins, MBA, CPA             January 2010             Page 3 of 5

| | |
|---|---|
| Representative Engagements (continued) | **Cost studies and economic analyses not in litigation:** |
| | Fraud and abuse detection system for a federal health insurance program. |
| | Market assessment and forecast for worldwide demand of a pharmaceutical product for private placement of securities. |
| | Differential costs of two policy options for a federal program. |
| | Stock valuation for wholly-owned subsidiary of national professional association. |
| | Medicare data collection cost. |
| | Economics of burn injury treatment in 500 hospitals. |
| | Business valuation and negotiation for purchase of a technical consulting firm. |
| | **Computer system consulting and software development:** |
| | Comprehensive automation for 245-bed acute care general hospital: system specification and selection. |
| | Distribution system for 500,000-member not-for-profit association: remedy flawed system selection and stalled software development. |
| | Point-of-sale system for 15-store retail chain: specification and selection. |
| | Real-time order entry and dispatch system for delivery of highly perishable product: custom software design and development. |
| | Design and development of programs for preparation and transmission of Federal Reserve (NACHA) formatted direct deposit payroll and direct debit transactions to banks via data communications. The software applications have been marketed nationally since 1988. |
| License: | Certified Public Accountant, Maryland, Certificate 5039, issued January 31, 1977. |

Resume of Rick R. Gaskins, MBA, CPA          January 2010          Page 4 of 5

| | |
|---|---|
| Education: | Continuing professional education seminars and teaching |
| | Professional seminars and meetings on forensic economics, valuation and forensic accounting annually |
| | Multi-disciplinary collaborative law |
| | Wharton School, University of Pennsylvania, 1975, Master of Business Administration (emphasis in accounting, economics, finance, statistics and quantitative methods) |
| | University of Rhode Island, studies in mathematics and accounting |
| | Brown University, 1971, BA in English literature, minor in sciences |
| Professional Affiliations: | American Academy of Economic and Financial Experts<br>Board of Directors 2001 - 2004<br>Board of Directors 2006 - 2009 |
| | American Institute of Certified Public Accountants |
| | Associated Collaborative Professionals |
| | Collegium of Pecuniary Damages Experts<br>Past-president Pro-tem 2008 – 2009 |
| | Institute of Business Appraisers |
| | International Academy of Collaborative Professionals |
| | Journal of Legal Economics<br>Board of Editors, 2006 – 2007 |
| | Maryland Collaborative Law Association |
| | National Association of Forensic Economics<br>Vice-president, Eastern Region 2002 - 2005 |

<u>Resume of Rick R. Gaskins, MBA, CPA</u>         <u>January 2010</u>         <u>Page 5 of 5</u>

<u>Publications:</u>    *The Costs of Acute Care Utilization Review Activities Conducted by Medicare Fiscal Intermediaries, Medicaid State Agencies, and State Licensing and Certification Agencies* (Report OPEL 77-12), Gaskins, Rick R., et al., U.S. National Technical Information Service, Washington, DC.

"Worklife Estimates by Occupation: A Comment", Gaskins, Rick R. and Paul C. Taylor, *Journal of Forensic Economics*, Vol. 11, No. 2, Spring/Summer 1998, pp. 139-141.

<u>Publications in process:</u>

"The Effect of the Loss of a Parent on the Future Earnings of a Minor Child", Kane, John, Lawrence M. Spizman, James D. Rodgers and Rick R. Gaskins.

"The Application of Time Expectancy Data in Personal Damages Assessment", Gaskins, Rick R.

**Appendix C**

Rick R. Gaskins, MBA, CPA
Deposition and trial testimony listing
1 January 2006 to 17 August 2010

| Date | Dep/Trial | Attorney | Parties |
|---|---|---|---|
| 01/25/06 | D | Pomeroy, Esq., Richard L. | USA v. CNA Financial Corp. |
| 04/20/06 | D | Israel, Esq., Deborah J. | Murry v. BNA |
| 05/01/06 | D | Arnold, Esq., Ariana Wright | Meredith v USA |
| 07/26/06 | D | Katz, Esq., James Lee | Wesley Smith |
| 09/12/06 | T | Taylor, Esq., K. Leigh | Thomas v. Weise |
| 09/13/06 | T | Katz, Esq., James Lee | Wesley Smith |
| 11/13/06 | D | Fang, Esq., Vickie | Norden v. Smithsonian |
| 01/17/07 | T | Levy, Esq., David M. | VanWormer v. VanWormer |
| 07/06/07 | D | Rosen, Esq., Marc Seldin | Dunston v. Perrigo Co. |
| 12/05/07 | D | Price, Esq., Andrew M. | Matesic v. OVMC |
| 03/21/08 | T | Goldis, Esq., Edward S. | May v. Menchavez |
| 07/30/08 | T | Campen, Esq., Steven D. | Upcounty Donuts v. Frederick Donuts |
| 05/30/09 | T | Johnson, Esq., William C., Jr. | Glover v. AIG et al |
| 07/13/09 | D | Heatherington, Esq., Robert B. | Wagner v. Moore |
| 10/15/09 | D | Palmer, Esq., Mark D. | Blank v. Truffles at the Belvedere |
| 11/05/09 | D | Decker, Esq., Suzanne W. | Findley v. Mack Trucks |
| 11/12/09 | D | Fowler, Esq., Stephen T. | Nguyen v. Roth & Rau AG |
| 12/09/09 | D | Smith, Esq., Douglas R. | Grossman v. Ain & Bank |
| 04/08/10 | T | Espo, Esq., Joseph B. | Blank v. Truffles at the Belvedere |
| 06/16/10 | D | Proctor, Esq., Melissa | St. Holder v. Horton |