# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

    Plaintiffs – Judgment Creditors,

v.                                                      C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.,

    Defendants – Judgment Debtors.

## PLAINTIFFS-JUDGMENT CREDITORS' MEMORANDUM IN OPPOSITION TO DEFENDANT-JUDGMENT DEBTOR THE PALESTINIAN AUTHORITY'S MOTION TO COMPEL ANSWERS TO THE PA'S INTERROGATORY NOS. 19-21 AND RESPONSES TO PA'S REQUEST FOR PRODUCTION NOS. 23, 25-26 AND 29-35

### Introduction

Plaintiffs-Judgment Creditors ("Ungars") respectfully submit this memorandum in opposition to the Motion to Compel Answers to Defendant's Interrogatory Nos. 19-21 and Responses to Defendant's Request for Production Nos. 23, 25-26 and 29-35 filed by Defendant-Judgment Debtor Palestinian Authority ("PA") (dkt. # 572).

For the reasons set forth below, the PA's motion should be denied.

### ARGUMENT

**I. The PA Cannot Unilaterally Modify the Schedule Set by the Court**

In Part I of its memorandum the PA seeks to compel the Ungars to provide responses to the PA's Interrogatory Nos. 19-20 (which seek the identity of the Ungars' fact and expert witnesses) and document Request No. 23 (requesting the Ungars' hearing exhibits).

But as explained in their responses to these requests, the Ungars have not determined which witnesses and documents they will present at the hearing on Defendants' Rule 60(b)(6) motion.

Dissatisfied with this response, the PA seeks to compel the Ungars to decide *now* which fact and expert witnesses and which documents they will present at the hearing.

The PA's demand that the Ungars decide on their witnesses and exhibits immediately flies directly in the face of the Court's Pre-Hearing Order, which requires the Ungars to decide on their witnesses and exhibits no earlier than December 17, 2010. Dkt. # 489.

Accordingly, the PA's demand should be rejected out of hand.

Of course, the Ungars fully recognize their duty to supplement their responses to the PA's discovery requests as responses become available. Therefore, as they decide on their fact and expert witnesses and select their exhibits between now and December 17, the Ungars will provide the PA with appropriate supplemental responses to these discovery requests.

The PA also complains that the Defendants have already identified the witnesses and exhibits they intend to present at the hearing, and that it is therefore unfair that the Ungars have not yet decided on their witnesses and exhibits. This argument is specious. Defendants had no duty to decide on their witnesses and exhibits before the Ungars or before December 17 (though as the movants who bear the burden of proof and persuasion it is unsurprising that they did), and the fact that Defendants have done so does not obligate the Ungars to follow suit.

Furthermore, just days ago Defendants identified four new witnesses. *Compare* Exhibit 5 to the PA's instant motion at 5-6 with Exhibit A at 7-8.

Thus, contrary to the representation in the PA's motion, the Defendants have not finalized their case. Indeed, Defendants purport to "reserve the right" to supplement their witness list and to "tender a final witness list in advance of the January 2011 hearing." Exhibit A at 8.[1]

The PA also invokes Rule 26(a)(2) in support of its claim that the Ungars are required to identify their expert witnesses prior to December 17 but this argument fails for several reasons.

*First*, Rule 26(a)(2) has no application to Defendants' Rule 60(b)(6) motion. That provision requires a party to disclose the identity of expert witnesses "it may use at trial." The Ungars are aware of no authority holding that Rule 26(a)(2) applies to post-judgment motions and the PA has cited none. Motions are governed by Rule 43(c) which gives the court broad discretion as to the conduct of any motion hearing.

*Second*, if Defendants really believed that Rule 26 applied here they would have provided, and sought from the Ungars, the initial disclosures required by Rule 26(a)(1), and they would not have sought the Ungars' agreement to provide expert disclosures prior to the December 17, 2010 deadline. Indeed, if Rule 26 applied to this proceeding, pursuant to Rule 37(c)(1) Defendants' failure to provide the initial disclosures required by Rule 26(a)(1) would preclude them from presenting ***any*** evidence whatsoever at the hearing.

*Third*, even assuming *arguendo* that Rule 26(a)(2) applied here, the timing provisions set forth in Rule 26(a)(2)(C) govern only absent "a court order." This Court explicitly directed that expert witness disclosures occur no later than December 17, 2010. *See* dkt. # 489 at ¶ 4. That court-ordered deadline clearly preempts the timing provisions of Rule 26(a)(2)(C).

In sum, the PA's motion to compel responses to the Interrogatory Nos. 19-20 and document Request No. 23 should be denied.

---

[1] Of course the Defendants have no such "right." Pursuant to the Court's Pre-Hearing Order their witness list must be completed by December 17, 2010.

## II. Discovery Relating to the Amount of the Judgment Should Not Be Permitted

In Part II of its memorandum the PA argues that the Ungars should be compelled to provide responses to the PA's Interrogatory No. 21 and document to Request Nos. 25-26 and 29-35[2], which seek information and documents relevant to the damage award in this case.

This prong of the PA's motion should be denied for two reasons:

### A. Defendants Are Precluded From Challenging the Amount of the Judgment[3]

It is well established that Rule 60(b) may not be used to relitigate issues already decided in the underlying case or on appeal. *See e.g. Dasey v. Massachusetts Dept. of State Police*, 111 Fed.Appx. 620 (1st Cir. 2004) (holding that a party "may not use a Rule 60(b) motion to relitigate issues already decided by [the court of appeals], or to raise issues that might have been, but were not, asserted in prior court proceedings.") *George P. Reintjes Co., Inc. v. Riley Stoker Corp.*, 71 F.3d 44, 49 (1st Cir. 1995) ("Rule 60(b) does not license a party to relitigate, whether via motion or independent action, any 'issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense.'") (quoting Moore, 7 Federal Practice, ¶ 60.37); *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 60 (2nd Cir. 1984) (a party "may not use proceedings seeking relief from or modification of a judgment under F.R.Civ.P. 60 simply to

---

[2] The PA notes in its motion that the Ungars' counsel agreed to provide the color photos sought in Request No. 35 and consented to withdraw its motion in respect to this Request "[i]f those color photographs include all documents responsive to Request No. 35." Dkt. # 572 at n. 2. The photographs, which include all documents in the Ungars' possession, custody or control responsive to Request No. 35, have been provided to Defendants. The PA's motion is thus moot in respect to Request No. 35.

[3] Because Defendants have indicated their intention to present at least three purported expert witnesses at the hearing on their Rule 60(b)(6) motion in an effort to challenge the amount of the judgment – which, if permitted, will waste the time and resources of the Court and the Ungars – the Ungars have filed a Motion In Limine seeking an order precluding the Defendants from presenting any arguments, evidence or testimony on this issue. *See* dkt. # 585. Thus, the disposition of the Ungars' Motion In Limine is directly related to the arguments presented in this section, and vice versa.

4

relitigate matters settled by the original judgment."); *In re Wylie*, 349 B.R. 204, 209 (9th Cir.BAP 2006) ("when reconsideration is sought under FRCP 60(b) after the appeal period has expired, the party seeking reconsideration is not permitted to revisit the merits of the underlying judgment or argue that the trial court committed some legal error in arriving at that judgment."); *Standard Quimica De Venezuela v. Central Hispano Intern., Inc.*, 189 F.R.D. 202, 205 n. 4 (D.P.R. 1999) ("a motion under Rule 60(b) cannot be used as a vehicle to relitigate matters already litigated and decided by the court."); *Gibson v. Commissioner of Mental Health*, 2006 WL 2192865 at *2 (S.D.N.Y. 2006) ("Rule 60(b) motions that simply attempt to relitigate issues and thereby circumvent the appellate process are routinely dismissed."); *Batac Dev. Corp. v. B & R Consultants, Inc.*, 2000 WL 307400, at *3 (S.D.N.Y. 2000) (holding that a party "may not ... use Rule 60(b) as a substitute for appeal or to relitigate matters already resolved by the court adversely to that party."); *Nutter v. Wefald*, 885 F.Supp. 1445, 1450 (D.Kan. 1995) ("Not a substitute for a direct appeal, a rule 60(b) motion addresses matters outside the issues on which the judgment was entered. It is not the opportunity for the court to revisit the issues already addressed in the underlying order …") (citation omitted).

There is no question that the propriety of the amount of the judgment was actively litigated in the underlying proceedings. Defendants filed objections to Magistrate Judge Martin's recommendation of March 31, 2004 regarding damages, claiming that the amount of damages recommended was too large. *See Ungar v. Palestinian Authority*, 325 F.Supp.2d 15, 24 (D.R.I. 2004). This objection was overruled (*id*. at 24-25).

On appeal, Defendants abandoned their earlier claim in this Court that the amount of the damages was overlarge, thereby forever waiving this claim. *See Ungar v. PLO*, 402 F.3d 274,

282 (1st Cir. 2005) ("The defendants have not challenged either the measure of damages utilized by the lower court or the integrity of its mathematical computations.").

Defendants argued on appeal only that "the district court made a political statement in calibrating the size of the award." *Id*. This argument was rejected.

Thus, as the extensive case law cited above clearly shows, Defendants are now precluded from challenging the amount of the judgment in the context of their Rule 60(b)(6) motion.

The PA proffers several arguments why it should nonetheless be permitted discovery on this issue, all of which are meritless.

Defendants first assert that the Ungars "intend to rely on the evidence presented at the July 12 and 15, 2002 hearings to support their contention that the damages award is likely to withstand adversarial testing." Dkt. # 572 at 25. In fact, the Ungars' position – backed up by a Motion In Limine (dkt. # 585) – is that no evidence or testimony whatsoever should be introduced regarding the amount of the judgment, because Defendants are precluded from challenging it. The Ungars would only "rely on the evidence presented at the July 12 and 15, 2002 hearings" to rebut Defendants' challenge to the award of damages, if the Court rejects the Ungars' position that this entire topic is out-of-bounds.

The PA next argues that "[t]he matter at issue is whether Defendant may take discovery from Plaintiffs concerning the default judgment, not how Defendant may use that discovery." Dkt. # 572 at 26. Defendants are mistaken. If the propriety of the amount of the judgment is irrelevant to Defendants' Rule 60(b)(6) motion – and as shown above and in the Ungars' Motion In Limine it is – then Defendants have no right to seek discovery in respect thereto.

The PA also seeks to rely on the order granting Defendants' unopposed motion to take discovery regarding damages. Dkt. # 572 at 26 ("[T]his Court could not have been clearer – it granted Defendants' Motion to take discovery on this very matter. *See* Dkt. No. 506").

This argument is frivolous: Defendants' motion was granted as unopposed, not on the merits, and the Ungars expressly stated in their response that Defendants are not entitled to challenge the amount of the judgment and "expressly reserve[d] their rights to object to any and all specific discovery requests propounded by defendants on any available ground." Dkt. # 503.

The PA further asserts that "Defendants did not engage in adversarial litigation of this action before the entry of default judgment." Dkt. # 572 at 28. This claim is an insult to the intelligence. While it is true that defendants were ultimately defaulted for their refusal to answer or conduct discovery, that occurred only some four and a half years into the litigation and after numerous issues – including the propriety of the sum of the judgment – were litigated on the merits. Thus, Defendants cannot now challenge the amount of the judgment any more than they can challenge venue, personal jurisdiction, justiciability, whether the complaint states a claim or any of the other myriad issues actively litigated and determined prior to entry of judgment.

The PA also claims that if the Ungars are correct "a defendant would never be able to raise any meritorious defense in support of a Rule 60(b)(6) motion, rendering the 'meritorious defenses' factor of the Court's 60(b)(6) analysis completely superfluous." *Id*. at 28-29.

This argument is a whopping red-herring. There is obviously a clear difference between a matter that was contested and litigated in the underlying case – such as the amount of damages – and a matter that was not – such as Defendants' liability.

7

The rule is very simple: matters that were already litigated on the merits cannot constitute a "meritorious defense" under Rule 60(b) (except where the defendant claims fraud or the like) and matters that were defaulted can be the basis for a meritorious defense.

The PA's thesis – that a defendant who litigates and loses numerous issues on the merits before ultimately defaulting can then file a Rule 60(b) motion asserting as a meritorious defense an issue that was already decided – is preposterous and has no support in the case law.

The PA also argues that Defendants are entitled to challenge the sum of the judgment in the context of their motion to vacate because "the First Circuit has told [sic] this Court to consider whether the damages award could withstand adversarial testing." Dkt. # 572 at 26. This claim is baseless. The sole reference to the amount of the judgment contained in the First Circuit's decision is: "defendants tell a different tale ... They ... see the amount of the judgment as unlikely to withstand adversarial testing." *Ungar*, 599 F.3d at 86.

Moreover, the question of whether the judgment can withstand adversarial testing was never raised by Defendants in their motion papers in this Court (*see* dkt. # 408, *passim*) or in Defendants' appellate briefs (*see* Exhibits B and C, *passim*), and was raised for the first time only during oral argument before the Court of Appeals.

Thus, the Ungars had no reason or occasion to argue that Defendants are precluded from challenging the amount of the judgment and neither this Court nor the Court of Appeals ever had any reason or occasion to consider – much less decide – the Ungars' preclusion argument.

Accordingly, and as is clear from the text of its decision, the Court of Appeal's reference to the question of whether the judgment can withstand adversarial testing is not a ***holding*** that the Defendants are entitled to assert such a claim, but merely an ***iteration*** of Defendants' claim.

In other words, the Court of Appeals' reference is purely descriptive, not prescriptive.

In sum: Defendants are precluded from challenging the amount of the judgment, and this prong of the PA's motion should be summarily denied on that basis.

### B. Any Post-Judgment Changes in the Ungars' Circumstances and Condition Would Be Irrelevant As a Matter of Law

Even assuming *arguendo* that Defendants were not precluded from seeking to challenge the amount of the judgment in the context of their motion to vacate, Defendants could not base such a challenge on changes in the Ungars' condition subsequent to the damages hearing. The Ungars' post-judgment mental and emotional state is wholly irrelevant to Defendants' Rule 60(b)(6) motion as a matter of law. Just as a plaintiff is not entitled to subsequently re-open his judgment to obtain an increased damages award because his post-judgment circumstances turn out to worse than anticipated at the time of trial, so too a defendant cannot obtain Rule 60(b)(6) relief on the grounds that the harm to the plaintiff ultimately turns out to be less than predicted at trial. *See e.g. Davis by Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 136 (6th Cir. 1990) ("Death of a judgment plaintiff following so shortly after a jury award of damages based on an expected life span not realized is rare, but it is not the sort of 'extraordinary circumstance' contemplated by Rule 60(b)(6)"); *Campbell v. American Foreign S.S. Corp.*, 116 F.2d 926, 928 (2nd Cir. 1941) (If "facts occurring subsequent to the trial" were "ground for a new trial," the "litigation would never come to an end."); *Multimatic, Inc. v. Faurecia Interior Systems USA, Inc.*, 542 F.Supp.2d 677, 682-683 (E.D.Mich. 2008) (Change in circumstances subsequent to the judgment that indicated the original damages award was excessive do not constitute grounds for relief under Rule 60(b)(6) since a change in projected damages is "not the type of 'extraordinary circumstances' contemplated by Rule 60(b)(6).")

Indeed, if the PA's absurd approach were adopted, every personal injury judgment debtor could file a Rule 60(b) motion from time to time attacking the damages award by asserting that the plaintiff's condition *might* have changed.

Thus, even if the Defendants were permitted to now challenge the damages award (which they are not), the only challenge they could make would be to the amount awarded based on what was known about the Ungars condition at the time judgment entered.

Accordingly, to the extent that the PA seeks documents or information subsequent to that point in time, its motion must be denied.

### III.     The Ungars Are Not Required to Produce Documents Listed in the Privilege Log

In Part III of its memorandum the PA seeks to compel production of documents listed in the Ungars' privilege log. This prong of the PA's motion should be denied for several reasons.

*First*, the materials relate to the amount of the judgment which, as shown above (and in the Ungars' Motion In Limine) Defendants are not entitled to challenge.

*Second*, as discussed above, Rule 26 is not applicable to this proceeding.

*Third*, even if Rule 26 applied, Dr. Friedman and Professor Ziederman will not be testifying at the hearing in this matter and Defendants will not be deposing them. Thus, Defendants have no need for these materials or right to request them. *See Galvin v. Pepe*, 2010 WL 3092640 at *5 (D.N.H. 2010) (Noting that the purpose of allowing discovery of otherwise privileged materials furnished to experts is "the facilitation of effective cross-examination.").

*Fourth*, some of the materials at issue contain attorney opinion work product that is not discoverable. *Nexxus Prods. Co. v. CVS New York, Inc.*, 188 F.R.D. 7, 11 (D.Mass. 1999) (core attorney "opinion work product" furnished to expert is protected from mandatory disclosure).

**WHEREFORE**, Defendants' motion should be denied.

Dated: November 8, 2010

Plaintiffs-Judgment Creditors,
by their Attorneys,

/s/ David J. Strachman
David J. Strachman #4404
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com

Max Wistow #0330
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com

Case 1:00-cv-00105-L-DLM   Document 587   Filed 11/08/10   Page 11 of 12 PageID #: 7522

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 8, 2010, a true copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701

/s/ David J. Strachman