# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

      Plaintiffs – Judgment Creditors,

v.                                                                      Civ. No. 00-105L

THE PALESTINIAN AUTHORITY, et al.,

      Defendants – Judgment Debtors.

## PLAINTIFFS-JUDGMENT CREDITORS' URGENT MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

For the reasons set forth in the accompanying verified memorandum and the exhibits thereto, Plaintiffs-Judgment Creditors respectfully move this Court

(1) Pursuant to Fed.R.Civ.P. 65 for a preliminary injunction prohibiting Defendant-Judgment Debtor Palestinian Authority ("PA") from taking any actions to collect or enforce any debt owed by Orascom Telecom Holding S.A.E. ("Orascom") to the Palestine Investment Fund ("PIF") until the judgment entered in this action on July 13, 2004 is satisfied in full or until further order of this Court;

(2) Pursuant to Fed.R.Civ.P. 65 for an temporary restraining order prohibiting the PA from taking any actions to collect or enforce any debt owed by Orascom to the PIF pending the hearing on and disposition of the motion for a preliminary injunction; and

(3) For any other relief that is just, necessary or appropriate.

A proposed temporary restraining order is attached hereto.

1

Dated: November 11, 2010

Plaintiffs-Judgment Creditors,
by their Attorneys,

_____
David J. Strachman #4404
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com


Max Wistow #0330
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

      Plaintiffs – Judgment Creditors,

v.                                                                                          Civ. No. 00-105L

THE PALESTINIAN AUTHORITY, et al.,

      Defendants – Judgment Debtors.

## VERIFIED MEMORANDUM IN SUPPORT OF PLAINTIFFS-JUDGMENT CREDITORS' URGENT MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

### Summary of the Facts and the Relief Sought

Before presenting the relevant background and grounds for this motion in full detail, and their exhibits and evidence in support thereof, the Plaintiffs-Judgment Creditors ("Ungars") will first briefly summarize the essential facts and the nature of and need for the relief sought:

For over five years the Ungars have been attempting to enforce their judgment against assets of Defendant-Judgment Debtor Palestinian Authority ("PA") held by the Palestine Investment Fund ("PIF"), a corporation established by the PA circa 2002 as a self-settled trust tasked to manage and invest the commercial assets of the PA.

Specifically, since June 2005 the Ungars have been conducting proceedings in three different U.S. courts in an effort to enforce their judgment against a $45 million debt owed to the PA/PIF by Orascom Telecom Holding SAE ("Orascom"), an Egyptian cellular phone company.

This debt is restrained by a writ of execution issued from a New York State court.

Additionally, the Ungars brought a creditor's bill in this Court requesting that this Court assign them the PA's ownership of the PIF. On September 19, 2006, this Court entered a final judgment on the creditor's bill, transferring to the Ungars ownership of the PIF.

Exercising their rights as the new owners of the PIF the Ungars dismissed the directors and officers of the PIF and appointed new directors and officers of the PIF.

The PA has refused to honor the 2006 creditor's bill judgment entered by this Court assigning ownership of the PIF to the Ungars. The Economic Adviser to the President of the PA, Mohammed Mustafa, who holds a Ministerial-level rank in the PA and also served as CEO of the PIF when the creditor's bill judgment was entered, has continued to exercise full control over the PIF and over the PA assets held by the PIF, and to use those assets for the benefit of the PA, despite entry of the creditor's bill judgment and his dismissal from his position by the Ungars.[1]

Moreover, the PA, via its Economic Advisor Minister Mustafa, has brought legal actions in Ramallah, Amman and Cairo, putatively in the name of the PIF, seeking to prevent the Ungars from exercising their rights to the PIF under the creditor's bill judgment.

In the Cairo suit the PA, via Mustafa, seeks to force Orascom to transfer its $45 million debt to the PIF notwithstanding the creditor's bill judgment entered by this Court and notwithstanding the fact that Orascom is prohibited from doing so by the New York execution. The PA evidently assumed (correctly as it turned out, as discussed below) that an Egyptian court would not honor a judgment against the PA or a writ of execution issued by the U.S. courts on behalf of victims of a terrorist attack in Israel.

---

[1] Indeed, the PA's published financial statements show that since entry of the creditor's bill judgment in 2006 **the PA has siphoned tens of millions of dollars from the PIF**.

Orascom has contested the Cairo suit in order to head off any future claim by the Ungars that it did not do all in its power to honor the New York execution restraining the debt.

Three days ago the Ungars learned (via a letter from Orascom's counsel) that on October 31, 2010, an Egyptian appellate court rejected Orascom's position and authorized the "PIF" (i.e. PA minister Mustafa purporting to act in the name of the PIF), to collect the debt immediately.

Since Orascom is headquartered in Cairo, there is now nothing to prevent the PA/Mustafa from collecting the $45 million debt by executing against Orascom's accounts in Cairo.

Once the PA and Mustafa have seized the debt from Orascom, the latter would be able to assert a defense of double-liability to the Ungars' enforcement action in New York.

Thus, if the PA and Mustafa are not immediately enjoined from seizing this debt, the Ungars' five years of efforts to enforce their judgment against the $45 million Orascom debt will "go down the drain" and their opportunity to execute against that debt will be lost.

This Court is the only address for the relief sought. Orascom is already restrained from releasing the funds by the New York execution – a restraint which the Cairo court refused to recognize – and an injunction against Orascom would be just as ineffective and would not prevent the PA and Mustafa from executing against Orascom in Cairo. Neither the PA nor Mustafa are parties to the New York proceeding and so cannot be enjoined by the New York court. By contrast, Rule 65 of the Federal Rules of Civil Procedure permits this Court to issue an injunction prohibiting the PA from taking any action to seize the PIF debt and that injunction would also automatically bind, by operation of Rule 65(d)(2), the PA's "officers [and] agents" and any "other persons who are in active concert or participation with" the PA. Since Mustafa is an officer and agent of the PA, and is acting in active concert or participation with the PA, any injunction against the PA would automatically enjoin him as well.

The Ungars are seeking a temporary restraining order to freeze the status quo and prevent the PA and Mustafa from taking immediate collection actions pending the hearing on the preliminary injunction.

The relevant background and grounds for this motion are set forth in full detail below.

## RELEVANT BACKGROUND

Defendants PA and PLO have refused to honor the judgment entered by this Court over six years ago. Indeed, this Court recently found that "Defendants have made it abundantly clear that they will ***never satisfy the judgment***." *Ungar v. PA*, 715 F.Supp.2d 253, 269 (D.R.I. 2010) (emphasis added, internal quotations and brackets omitted) and that the Ungars "have for a long enough time been ***stonewalled by these Defendants*** in attempting to collect on this judgment." Hearing transcript 6/15/10 (relevant pages attached as Exhibit A) at 28:9-11 (emphasis added).

Accordingly, the Ungars have been constrained to initiate extremely expensive and time-consuming enforcement proceedings against assets of the PA held by the PIF. In 2005, the Ungars began turnover proceedings in the U.S. District Court for the Southern District of New York against Orascom, which owes $45 million to the PIF as the result of investments in Orascom subsidiaries made by Yasser Arafat using PA funds. After years of intensive litigation over jurisdictional discovery this proceeding was dismissed without prejudice for lack of subject-matter jurisdiction,[2] and the Ungars refiled their enforcement proceedings against Orascom in New York State Supreme Court[3] and in the U.S. District Court for the District of Columbia.[4]

Orascom's debt to the PIF is restrained by a New York State writ of execution.

---

[2] *Ungar v. Orascom Telecom Holding S.A.E*, 578 F.Supp.2d 536 (S.D.N.Y. 2008).

[3] *Ungar v. Orascom Telecom Holding S.A.E*, Index No. 12145/10 (Kings County). Service of process in this case was perfected on September 15, 2010.

[4] *Ungar v. Palestinian Authority et al*, 05-mc-00180-GK (D.D.C.). This proceeding was recently dismissed for lack of personal jurisdiction.

4

On July 3, 2006, the Ungars filed a creditor's bill against the PA pursuant to R.I.G.L. § 9-28-1 requesting that this Court assign to the Ungars the PA's ownership of the PIF. Dkt. # 370.

On September 19, 2006, this Court entered judgment on the creditor's bill, transferring to the Ungars, *inter alia*, ownership of the PIF. See Exhibit B; dkt. # 381.

The Ungars then exercised their rights as the sole owners of the PIF to dismiss the directors and officers of the PIF and appoint themselves as the new directors and officers of PIF. *See* Exhibits C, D.[5] The Court discussed the change in the control of the PIF during a September 18, 2007, hearing concerning whether to modify a prior confidentiality order involving the PIF:

> THE COURT: All right. The situation has changed drastically since this stipulation was filed and the confidentiality order was executed by the Court in the spring of 2005.
>
> Since that time, the Court has entered judgment in the petition to reach and apply the assets of the Palestinian Authority in the Palestine Investment Fund. And the Palestinian Authority defaulted, and the Court entered judgment and transferred to the Plaintiffs all interests of the Palestinian Authority in that Fund, that separate corporation. So the Plaintiffs became the stockholders, the sole stockholders of the Palestine Investment Fund.
>
> \*\*\*
>
> So, essentially, the Plaintiffs are standing in the position of the Palestine Investment Fund at this point, and there's no now sound basis for the confidentiality agreement. They should be able to use their own documents in any way they see fit.

Tr. 9/18/2007 at 13:4-14:18. Relevant portions attached as Exhibit E.

---

[5] *See also* dkt. # 383.

At the time that the creditor's bill judgment was entered the CEO of the PIF was Mohammad Mustafa, who is the "Economic Adviser" to the President of the PA, which according to Mustafa's own website is "a Ministerial level" position in the PA. *See* Exhibit F.[6]

Unfortunately, the PA and Mustafa – who was dismissed by the Ungars following entry of the creditor's bill judgment by this Court[7] – have refused to recognize that judgment or relinquish their control over the PIF. For example, the public reports of the PA Ministry of Finance show that since the entry of this Court's judgment on the creditor's bill in September 2006 (which transferred ownership of the PIF to the Ungars) and through 2010, the Defendants have flouted the Court's judgment and improperly siphoned (or, more accurately – stolen) tens of millions of dollars from the PIF and transferred these funds to the PA. *See* Exhibit G at ¶ 3, Appendix 1; Exhibit H at "Total Other Financing: Palestinian Investment Fund advances"[8]; Exhibit I at footnote 2[9]; Exhibit J at 3.[10]

(Notably, many of these PIF-PA transfers were made ***after*** the Defendants filed their motion to vacate in December 2007 and even continued throughout 2010. As such, they clearly show that Defendants still refuse to respect this Court or its judgments, notwithstanding their claims to have turned over a new leaf).

---

[6] Downloaded from www.pif.ps/print.php?page=124558849291&lang=en.

[7] As discussed *supra*, the Ungars dismissed the prior directors and officers of the PIF following the Court's transfer of ownership of the PIF.

[8] Downloaded from: www.pmof.ps/news/plugins/spaw/uploads/files/table4%20comparison%20english%202007.pdf

[9] Downloaded from: www.pmof.ps/news/plugins/spaw/uploads/files/table5_eng_3.pdf

[10] Downloaded from: www.pmof.ps/en/news/plugins/spaw/uploads/files/First%20quarter%20fiscal%20report%20_6_%20%20May%2010_%202010.pdf

Additionally, the PA, via Mustafa, has brought legal actions in Ramallah, Amman and Cairo, putatively on behalf of the PIF, seeking to prevent the Ungars from exercising their rights to the PIF under the creditor's bill judgment. *See* Exhibits K, L, M and N.[11]

Significantly here, the Cairo proceeding seeks to force Orascom to transfer its $45 million debt to the PIF despite the creditor's bill judgment entered by this Court and despite the fact that Orascom is restrained from paying this debt by process issued by U.S. courts.

Correspondence between Mustafa and Orascom's principals shows that Mustafa – the PA's Economic Advisor – is leading this litigation effort. *See* Exhibits O, P, and Q. Moreover, there is no question that Mustafa, who holds a Ministerial rank in the PA as the PA's Economic Advisor (*see* Exhibit F) is pursuing this litigation at the direction and on behalf of the PA. In a November 28, 2006 letter, Defendants' leader, Mahmoud Abbas, expressly stated that he had tasked Mustafa with fighting the creditor's bill judgment. Exhibit R at 2.

Moreover, in a letter sent to Mustafa on May 28, 2006, Orascom stated that it "appreciates the financial difficulties the ***Palestinian Authority*** is currently experiencing, and we have consistently desired to meet our obligation to pay the PIF the $45 million (less legal fees)." Exhibit P at 2 (emphasis supplied).

Clearly, then, not only is the PA behind the suit to force Orascom to pay the debt attached by the Ungars, but the ultimate purpose of the litigation is ***to transfer the funds to the PA***.

Though Orascom is no friend of the Ungars, it has contested the Cairo proceedings to protect itself from a claim by the Ungars that it did not do all in its power to honor the New York writ of execution restraining the debt.

---

[11] The Ungars have never been served with process in any of these proceedings, and in any event the courts in Ramallah, Amman and Cairo lack any jurisdiction over the Ungars or the subject-matter.

7

In a November 5 letter to the New York court in which the Ungars' enforcement proceeding against Orascom is pending (which was sent after the close of business on Friday and was first seen by the Ungars' New York counsel only on Monday November 8), Orascom's counsel provided notice that on October 31, 2010, an Egyptian appellate court had rejected Orascom's legal challenges and authorized the "PIF" (i.e. PA minister Mustafa purporting to act in the name of the PIF), to collect the debt immediately. Exhibit S. The letter included the Egyptian decision and a translation thereof. *Id.*

Orascom is headquartered in Cairo. Thus, there is now nothing preventing the PA and Mustafa from collecting the $45 million by simply executing on Orascom's accounts in Cairo.

New York does not permit enforcement of a judgment against a garnishee which faces double-liability. *See e.g. JPMorgan Chase Bank, N.A. v. Motorola, Inc.*, 47 A.D.3d 293, 846 N.Y.S.2d 171 (N.Y.A.D. 1 Dept. 2007).

Therefore, once the PA and Mustafa seize the debt from Orascom, the latter would be able to assert a defense of double-liability to the Ungars' enforcement action in New York.[12]

Accordingly, if the PA and Mustafa are not prevented from seizing the funds from Orascom, the Ungars' five years of efforts to enforce their judgment against Orascom's debt to the PIF will have been wasted and their opportunity to execute against that debt will be lost.

## ARGUMENT

It is well established that "a federal court can issue an injunction to protect its judgment; this is a conventional ground for equitable relief." *Aristud-Gonzalez v. Government Development Bank for Puerto Rico*, 501 F.3d 24, 27 (1st Cir. 2007). *See also e.g. Ying Fong v. Ashcroft*, 317

---

[12] To the best of their knowledge, the Ungars' only defense to such a claim would be to prove that Orascom was complicit in or did not challenge the suit against it vigorously enough – a matter that would extremely difficult to prove if true.

F.Supp.2d 398, 405 (S.D.N.Y. 2004) ("It is well settled that the courts of the United States have the inherent ... power and authority to enter such orders as may be necessary to enforce and effectuate their lawful orders and judgments, and to prevent them from being thwarted and interfered with by force, guile, or otherwise.") (quoting *Mississippi Valley Barge Line Co. v. United States*, 273 F.Supp. 1, 6 (E.D.Mo. 1967) (three-judge panel), *aff'd* 389 U.S. 579 (1968)).

As shown above, the PA is seeking to undermine both the underlying judgment entered by this Court in 2004 and the creditor's bill judgment entered by this Court in 2006 and to "thwart[] and interfere[] with" those judgments by falsely purporting to act in the name of the PIF (ownership of which was assigned to the Ungars by this Court in the creditor's bill judgment) in order to force Orascom to pay a debt to the PIF against which the Ungars have been seeking to enforce their underlying judgment for five years and to thereby render the Ungars' enforcement proceedings moot.

Accordingly, this Court can and respectfully should exercise its authority "to issue an injunction to protect its judgment." *Aristud-Gonzalez*, 501 F.3d at 27.

The recent decision in *Iantosca v. Step Plan Services, Inc.*, 604 F.3d 24 (1st Cir. 2010) is highly apposite here. In *Iantosca* the First Circuit affirmed the district court's entry of preliminary injunctions prohibiting this transfer of assets against which the plaintiff-judgment creditors sought to enforce their judgment. The First Circuit identified the considerations governing the propriety of the preliminary injunction as "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest," (*id.* at 29 n. 5), and found that the injunctions were proper.

Significantly some of the parties enjoined by the injunctions in *Iantosca* were not judgment debtors or parties to the original litigation, but were merely parties alleged to be potentially subject to the judgment under a veil-piercing theory.

Here, by contrast, the Ungars seek an injunction against the judgment debtor itself – the PA. Thus, *Iantosca*'s approval of the use of injunctions to enjoin the transfer of assets in order to protect post-judgment enforcement proceedings applies to the instant motion *a fortiori*.

Nor is there any question that the criteria enumerated in *Iantosca* are met here. The Ungars' "likelihood of success on the merits" is not even in issue, because this Court has already awarded them ownership of the PIF, and the PA therefore has no right to purport to act on behalf of the PIF or to interfere with the Ungars' efforts to reach PIF-held assets. The "potential for irreparable harm if the injunction is denied" is also clear: as discussed above, if the amount of the debt is seized from Orascom by the PA and Mustafa, the Ungars' enforcement proceeding in New York will almost certainly be extinguished, and the funds will disappear into the faux-"PIF" accounts in the West Bank controlled by Mustafa. Likewise, "the balance of relevant impositions" tilts entirely in the Ungars' favor: the PA is a scofflaw judgment debtor that stubbornly refuses to honor the judgment entered by this Court over six years ago. Finally, "the effect ... of the court's ruling on the public interest" is also clearly in the Ungars' favor. First, *any* interference with the judgment of a federal court is against the public interest. Second, as this Court recently noted, "there is an extremely strong interest in enforcing judgments, like the Ungars' judgment, entered under the civil provisions of the Antiterrorism Act ("ATA"). *Ungar*, 715 F.Supp.2d at 268. *See also Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 50 (E.D.N.Y. 2007) ("Congress has explicitly granted private parties the right to pursue common tort claims against terrorist organizations and those that provide material support or financing to

terrorist organizations.... [P]rivate tort actions directed at compensating victims of terrorism and thwarting the financing of terrorism vindicate the national and international public interest.").

All of the criteria for the injunction sought by the Ungars are therefore clearly fulfilled.

Moreover, as discussed *supra*, this Court is the only venue in which the Ungars can obtain relief. Since Orascom is already restrained by the New York execution, a separate injunction against Orascom from the New York court would be of no utility and would not prevent the PA and Mustafa from executing against Orascom pursuant to the ruling of the Cairo court. And since the PA and Mustafa are not parties to the New York action they cannot be enjoined by that court. Thus, this Court is the only court that can provide a remedy.

The Ungars also respectfully request entry of a temporary restraining order until this motion can be heard. As discussed, in light of the recent decision of the Egyptian court nothing now prevents the PA/Mustafa from seizing the amount of the PIF debt from Orascom, and absent a temporary restraining order they may well do so during the pendency of this motion.

A temporary restraining order in the form attached hereto should therefore issue.

While Rule 65 permits a court to require security as a condition of entering a temporary restraining order or an injunction, it is well established, however, that security is not mandatory and is within the sound discretion of the court. *See e.g. Doctor's Associates v. Stuart*, 85 F.3d 975, 985 (2nd Cir. 1996) ("[T]he District Court is vested with wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm.") (quoting *Ferguson v. Tabah*, 288 F.2d 665, 675 (2nd Cir. 1961).

Here, there is no likelihood of harm whatsoever to the PA, since the ownership of the PIF has already been adjudicated. Moreover, the PA is indebted to the Ungars and the Ungars' judgment constitutes more than adequate security if any were required.

11

**WHEREFORE** the instant motion should be granted.

Dated: November 11, 2010

Plaintiffs-Judgment Creditors,
by their Attorneys,

_____
David J. Strachman #4404
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com


Max Wistow #0330
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com

## VERIFICATION

I am an attorney licensed to practice in the State of New York and I represent the Plaintiff-Judgment Creditors herein in proceedings to enforce the judgment entered in their favor by this Court. I hereby affirm that the facts set forth in the attached Verified Memorandum in Support of Plaintiffs-Judgment Creditors' Urgent Motion for a Temporary Restraining Order and a Preliminary Injunction are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

November 11, 2010

_____
Robert J. Tolchin