

STRICTLY CONFIDENTIAL

March 28, 2006

SENT VIA TELEFAX TO: 00-9702-297-4148
Total Pages = 2
CONFIRMATION VIA E-MAIL TO: aalhasan@pif.ps

Dr. Mohamed Abdullah Mostafa
Chief Executive Officer
Palestine Investment Fund (PIF)
Ramallah, Palestine

Dear Dr. Mostafa,

Thank you for your March 25, 2006. Regarding your request for payment of the US$45 million amount of Orascom Telecom Algerie (OTA) dividends, and as discussed by our Legal Department with representatives of the PIF and the Palestinian Pension Fund (PPF) over the past several months, Orascom Telecom Holding SAE (OTH) is currently subject to a New York State court order that obligates it to make all payments due to the PIF and the PPF to the Estate of Ungar (the "Order").

As mentioned in telephone conversations with representatives of the PIF and PPF last year and earlier this year, OTH's contractual obligation to pay OTA dividends, or any other amounts, to the PIF and PPF would be deemed illegal in light of the Order. In the summer of 2005, OTH appointed outside counsel for purposes of vigorously challenging the validity of the Order both on jurisdictional and substantive grounds and has coordinated with PIF's outside counsel in setting forth a consistent challenge to the Order and other claims of the Estate.

Over the past ten months, OTH has been subject to perpetual and extremely burdensome challenges to their defense by the Estate of Ungar that have involved a substantial amount of time and effort. In addition, representatives of the Estate have sought to shamelessly tarnish me personally by baselessly associating me with so-called 'terrorists' in the press. Through our ongoing efforts, which I emphasize directly benefit PIF's position in the Estate of Ungar dispute, we are striving to invalidate the Order in order to be able to finalize the payments to PIF and PPF as soon as legally possible. However, OTH is in no position to directly or indirectly violate the Order until it is fully and finally invalidated.



Orascom Telecom Holding S.A.E, (Société Anonyme Egyptienne), with a Paid Capital: 1,100,000,000 L.E.
(Subject to law No. 95 / 1992), CR. 365751 - Cairo
Nile City Towers, Cornish El Nile, Ramlet Beaulac, Cairo, Egypt
South Tower, 26th & 27th Floor
Tel :(202) 461 50 50/1
Fax :(202) 461 50 54/5
e-mail: info@otelecom.com



As mentioned by our Legal Department in previous discussions with Mr. Shqirat and Mr. Najjab, OTH will deduct the direct legal fees and expenses incurred in challenging the Order from the amounts payable to PIF and PPF in light of OTH's complete independence from the Estate of Ungar matter and the benefit to PIF and PPF from OTH's ongoing efforts.

In the meantime, we will certainly keep you apprised of all relevant developments regarding this matter.

Kind regards,

Naguib Sawiris
Chairman & CEO
Orascom Telecom Holding S.A.E.



Orascom Telecom Holding S.A.E, (Société Anonyme Egyptienne), with a Paid Capital: 1,100,000,000 LE.
(Subject to law No. 95 / 1992), CR. 365751 - Cairo
Nile City Towers, Cornish El Nile, Ramlet Beaulac, Cairo, Egypt
South Tower, 26th & 27th Floor
Tel :(202) 461 50 50/1
Fax:(202) 461 50 54/5
e-mail: info@otelecom.com



STRICTLY CONFIDENTIAL

May 28, 2006

SENT VIA TELEFAX TO: 00-9702-297-4148
Total Pages = 2
CONFIRMATION VIA E-MAIL TO: aalhasan@pif.ps

Dr. Mohamed Abdullah Mostafa
Chief Executive Officer
Palestine Investment Fund (PIF)
Ramallah, Palestine

Re: U.S. Law Preventing Orascom Telecom Holding S.A.E. from Presently Meeting its Obligations to the PIF

Dear Dr. Mostafa:

I write in response to the May 21, 2006 fax of your internal counsel, which attached an opinion letter dated May 11, 2006 from your U.S. counsel.

I respectfully disagree with your U.S. counsel's conclusion that Orascom has no legal basis for withholding the $45 million payment. Not only is Orascom legally barred under U.S. law from making the transfer, the opinion letter itself seems to recognize as much. See, e.g., Op. Letter at 4 (recognizing that "[a] restraining notice served under § 5222 prohibits the restrained party from transferring any property to a judgment debtor."); id. ("In this case, Plaintiffs have argued that the PIF (as an alter ego, shell or alias of the PA) is a judgment debtor to Plaintiffs and that Orascom is prohibited from transferring any property to the PIF."); id. at 6 n.4 ("Should Orascom choose to make the deferred payment to the PIF during the pendency of the Orascom Litigation, Plaintiffs will likely argue that Orascom is in contempt for violating the restraining notice that seeks to prevent any transfers to the PIF."). While Orascom has challenged the legal validity of the Restraining Notice imposed upon it, the fact of the matter is that Orascom is legally bound to comply with the Notice until it is invalidated by the U.S. court.

As your U.S. counsel notes in detail, Orascom has been aggressively litigating against the Estate of Ungar in both New York state and federal court for almost one year. Orascom expects to ultimately prevail, but until that time Orascom remains subject to the



Orascom Telecom Holding S.A.E., (Société Anonyme Egyptienne), with a Paid Capital: 1,100,000,000 LE.
(Subject to law No. 95 / 1992), C.R. 365731 - Cairo
Nile City Towers, Cornish El Nile, Ramlet Beaulac, Cairo, Egypt
South Tower, 26th & 27th Floor
Tel :(202) 461 50 50/1
Fax:(202) 461 50 54/5
e-mail: info@otelecom.com



Restraining Notice, and therefore legally foreclosed from transferring the funds to the PIF.

Orascom appreciates the financial difficulties the Palestinian Authority is currently experiencing, and we have consistently desired to meet our obligation to pay the PIF the $45 million (less legal fees). Orascom cannot meet this obligation, however, until the U.S. litigation is fully resolved. Until the New York state court vacates the Restraining Notice, or the New York state and federal courts conclude that they lack personal jurisdiction over Orascom, Orascom is prohibited from violating the Restraining Notice by transferring the funds to the PIF.

Naturally, the PIF could choose to intervene in the U.S. litigation and in that manner directly advance its interests. Indeed, I understand that one of the U.S. judges has said that it would be appropriate for the PIF rather than Orascom to advance certain arguments, such as the argument that the PIF is not an alter ego of the Palestinian Authority (the judgment debtor).

Finally, I note that our U.S. litigation counsel has repeatedly received overtures from counsel for the Estate indicating that the Estate may be prepared to accept a fraction of the funds being restrained. These overtures suggest to us that the PIF may have alternatives available to it to resolve the situation short of bringing this protracted litigation to a final conclusion. Please advise if you would like the details surrounding these overtures.

In closing, I emphasize that Orascom is doing what it can to comply with its agreement with the PIF but, through no fault of its own, is at present legally precluded from forwarding the funds to the PIF.

Kind regards,

Amr El-Bayoumi
Vice President, Legal Affairs
Orascom Telecom Holding S.A.E.

Orascom Telecom Holding S.A.E, (Société Anonyme Egyptienne), with a Paid Capital: 1,100,000,000 LE.
(Subject to law No. 95 / 1992), CR. 36575) - Cairo
Nile City Towers, Cornich El Nile, Ramlet Beaulac, Cairo, Egypt
South Tower, 26th & 27th Floor
Tel: (202) 461 50 50/1
Fax: (202) 461 50 5/5
e-mail: info@otelecom.com




STRICTLY CONFIDENTIAL

رسالة مرسلة من قبل
كمرو اليوم إلى الصندوق
لذات الوقت

June 12th, 2006

SENT VIA TELEFAX TO: 00-9702-297-4976
Total Pages = 2
CONFIRMATION VIA E-MAIL TO: aalhasan@pif.ps

Dr. Mohamed Abdullah Mostafa
Chief Executive Officer
Palestine Investment Fund (PIF)
Ramallah, Palestine

Re:   Legal Bar to Fund Transfer

Dear Mr. Moustafa:

This will respond to your letter dated June 4, 2006 to Mr. Naguib Sawi is, which is the latest of a series of communications from PIF urging Orascom to defy the U.S. court's restraining notice.

To confirm our prior communications to PIF, Orascom is legally barred under the restraining notice from transferring funds to PIF. The restraining notice, which was served upon Orascom officials while in the United States, expressly prohibits Orascom from transferring funds to PIF, identified by name and not merely implicit in the term "Palestinian Authority". We understand, but firmly disagree with, PIF's view that the restraining notice is not binding on Orascom. While Orascom is a company established under the laws of Egypt, no Egyptian court or other authority has jurisdiction over the matter at issue. Orascom will not pay PIF unless and until the restraining notice is determined to be invalid by the U.S. courts. If Orascom were to violate the restraining order by transferring the funds, not only could Orascom be subject to contempt of court, but the judgment creditors could bring a separate action against Orascom that may render Orascom personally liable to the judgment creditors for the amount of the funds.

Please be assured that Orascom continues to consider the funds as owable to PIF, pending resolution of the U.S. restraining notice litigation. If the restraining notice is invalidated, Orascom fully intends to pay the funds to PIF, from Orascom's receipt of its calendar year 2004 dividends as a shareholder in Orascom Telecom Algeria s.p.a., less the legal fees incurred by Orascom from litigating the matter in the U.S. courts.

---

Orascom Telecom Holding S.A.E. (Société Anonyme Egyptienne), with a Paid Capital: 1,100,000,000 L.E.
subject to law No. 95 / 1992, C.R. 175414 - Cairo
Nile City Towers, Cornish El Nil - Ramlet Beaulac, Cairo, Egypt
South Tower, 26th & 27th Floor
T: (202) 461 50 50/1
F: (202) 461 50 54/5
mail: info@otelecom.com



We understand PIF's position that it is not considered part of the Palestinian Authority organization. Orascom urges PIF to appear in the U.S. courts to establish this fact, which could lead to a lifting of the restraining notice as to assets and debts owed to PIF. Our understanding from court records is that PIF was served with judicial process by one U.S. court but has failed to appear. Another U.S. court has stated that only PIF, and not Orascom, has legal standing to dispute the alleged link between PIF and the Palestinian Authority. This latter statement was made only recently and PIF remains free to appear and present argument on its own behalf. While we alert you to this circumstance as a matter of courtesy, Orascom disclaims any responsibility to keep PIF abreast of developments in the U.S. litigation as PIF has its own counsel fully capable of doing so.

Finally, your closing threat "to undertake all necessary actions that PIF sees fit" is unproductive and, indeed, unappreciative of the significant efforts that Orascom has exerted to fulfill its contractual obligations to PIF. Not only has Orascom mounted a strong defense against the restraining notice for the benefit of PIF, Orascom and its officers and even those who have business with Orascom or its affiliates have been subject to considerable harassment and inconvenience in the process. Should PIF act against Orascom, Orascom would of course have to consider the advisability of continuing its legal efforts in the United States to permit itself to pay the funds to PIF.

Sincerely,

*[signature]*

Amr El Bayoumi
Vice President, Legal Affairs
Orascom Telecom Holding S.A.E.

scorn Telecom Holding S.A.E., Société Anonyme Egyptienne), with a Paid Capital: 1,100,000,000 LE
ject to law No. 95 / 1992), CR. 155751 - Cairo
City Towers, Cornish El Nil - Ramlet Beaulac, Cairo, Egypt
h Tower, 26th & 27th Floor
(202) 461 50 50/1
(202) 461 50 54/5
il: info@otelecom.com



**PALESTINE LIBERATION ORGANIZATION**

**Palestine National Authority**

The President



منظمـــة التحـــريـــر الفلسطينيــة

السلطة الوطنية الفلسطينية

الرئيس

November 28, 2006

The Honorable Dr. Condoleezza Rice
Secretary of State
U.S. State Department
Washington, D.C.

*Subject:    Law Suits against the Palestine Investment Fund*

Dear Secretary Rice,

I am writing to bring to your attention and seek your assistance in addressing serious crisis that is facing the Palestine Investment Fund (PIF). The crisis relates to a court ruling that was issued by the United States District Court for the District of Rhode Island (the court) against the PIF. The court ruling was issued in the case between the Estate of Yaron Ungar et al (Ungars) against the Palestinian Authority (PA) et al (Ungar Case). The PIF is not a party to this case. On September 19, 2006, the court decided that "all of the Palestinian Authority's ownership rights in the Palestinian Commercial Services Company (PCSC) and in the Palestine Investment Fund (PIF), and all rights, benefits and interests of the Palestinian Authority in all property, assets and credits, of any type, that are titled and/or owed to the PCSC and/or to the PIF are assigned, transferred and conveyed to the Estate of Yaron Ungar, …etc." On October 20, 2006, the counsels of the plaintiffs in the Ungar Case sent letters to the directors of PIF, claiming that their clients are the "new owners of the PIF", and that the "new owners" have dismissed the current directors of the fund, effective October 17, 2006, and appointed a new "Board of Directors".

The PIF was incorporated in 2003, in response to calls from the United States Government (USG) and the European Union (EU) for increased transparency and accountability within the Palestinian Authority institutions and affiliates. It falls under the supervision of my office, and encapsulates the investments that are held for the benefit of the Palestinian people. Accordingly, the U.S. Office of Foreign Assets Control (OFAC) General License # 4 (dated April 12, 2006) explicitly authorizes U.S. persons to "engage in all transaction otherwise prohibited under 31 C.F.R. parts 594, 595, or 597" with PIF. Since 2003, the PIF has been headed by a nine-member Board of Directors (BOD), with majority members of prominent Palestinian private sector leaders. Currently, the Chief Executive Officer (CEO) of the PIF is Dr. Mohammad Mustafa—a prominent private sector development specialist who had been serving at the World Bank in Washington for the last 15 years, and whom I selected to become my economic adviser in November 2005.

01:0000067

**PALESTINE LIBERATION ORGANIZATION**

**Palestine National Authority**

The President



منظمة التحرير الفلسطينية

السلطة الوطنية الفلسطينية

الرئيس

PIF has retained the prestigious New York-based LeBoeuf, Lamb, Greene & MacRae (LeBoeuf) law firm to take the necessary legal measures to defend its interests in this case, as well as in any other litigations that are brought against it before U.S. courts. Recently, the counsels for the plaintiffs in the Ungar Case sent letters to LeBoeuf threatening them to take legal action against them because of their representation of PIF, and requesting that they remove themselves from such representation. LeBoeuf remains committed to representing PIF, and is taking the necessary legal actions against such outrageous and illegal behavior from the plaintiffs. The counsels of the PA are also taking the necessary legal steps to counter such assaults.

Today, the PIF serves as an enabling catalyst for sustainable economic and social development in the Palestinian Territories. This is achieved through undertaking and partnering in strategic investment projects in the areas of energy, information and communication technology, real estate, tourism, among other sectors. The PIF is committed to transparent and accountable corporate behavior, free market economy, and strives to build a pool of top notch professionals who would become the future leaders of Palestine. Currently, tens of thousands of Palestinian men and women are employed by projects and businesses that are either owned or managed by the PIF.

We are aware of a number of other cases that are brought against the PA on the same basis. Those cases are politically motivated, and primarily aim at causing the collapse of the Palestinian institutions through bankrupting them, and at jeopardizing the Palestinian – U.S. relations.

With the current status of the mentioned litigations before the U.S. courts, substantial portions of PIF's assets in the U.S. are either frozen or are in jeopardy of confiscation. Should such assets be confiscated or transferred to the plaintiffs, the Palestinian economy and private sector would be severely damaged and is likely to collapse. Such outcome would not serve U.S., Israeli or Palestinian national interests. To the contrary, it may cause the Palestinian Authority to collapse; push tens of thousands of Palestinian families into a vicious circle of poverty and unemployment—an environment that nurtures radicalism, violence and terrorism; and would sharply increase anti-U.S. sentiments in Palestine, as well as the Arab and Moslem worlds.

Therefore, and given the political aspects and likely ramification of these dramatic developments, I seek your kind assistance in addressing this serious matter. I will ask my economic adviser and the CEO of the PIF—Dr. Mohammad Mustafa to follow up on this matter with U.S. Consul General in Jerusalem Mr. Jacob Walles.

01:0000068

**PALESTINE LIBERATION ORGANIZATION**

**Palestine National Authority**

The President



منظمة التحرير الفلسطينية

السلطة الوطنية الفلسطينية

الرئيس

I am confident that, through the joint work of our teams, we will be able to achieve an outcome that would serve the interests of the USG and the PA, and would be in concert with the law.

Sincerely,

Mahmoud Abbas
Chairman
Executive Committee of the Palestine Liberation Organization
President
Palestinian Authority

Cc:
- Dr. Mohammad Mustafa - CEO of PIF
- Mr. Afif Safieh – PLO Mission Director in Washington
- U.S. Consul General Jacob Walles – Jerusalem

01:0000069

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Tel + 1 202 626 3600
Fax + 1 202 639 9355
www.whitecase.com

November 5, 2010

<u>VIA FACSIMILE</u>

Honorable Shirley Kornreich
Supreme Court of the State of New York
60 Centre Street
New York, New York 10007

Re:   <u>Ungar v. The Palestinian Authority</u>, No. 105521/2005 (N.Y. Sup. Ct.)

Your Honor,

    We represent Orascom Telecom Holding S.A.E. ("Orascom"). Currently pending before this Court is Orascom's Motion to Join Proceedings, to Dismiss, and for Other Relief, which was filed on September 30, 2010, in the above-referenced action (the "Motion to Join"), in response to Plaintiffs' pursuit of certain assets that Orascom holds for the Palestinian Investment Fund ("PIF") in Egypt. We write to inform Your Honor of developments in Egyptian proceedings concerning the same assets.

    As set forth in the Motion to Join and our letter to this Court dated April 7, 2010, Orascom has been defending itself for four years against litigation brought by the PIF in Egypt, in which the PIF is demanding delivery of the same property that Plaintiffs are pursuing in New York courts. Also as set forth in such documents, an Egyptian court ruled on March 27, 2010 that the PIF is allowed to recover its assets from Orascom (the "March 27 Decision").

    On October 31, 2010, in an oral ruling, an Egyptian court rejected Orascom's latest challenge to the March 27 Decision, authorized the PIF to enforce the March 27 Decision, and fined Orascom for having delayed enforcement of the March 27 Decision (the "October 31 Decision"). The written decision was released on or about November 3, a certified translation of which is attached hereto. It is our understanding that the October 31 Decision is immediately enforceable.

ABU DHABI   ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT
HAMBURG   HELSINKI   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUNICH
NEW YORK   PALO ALTO   PARIS   PRAGUE   RIYADH   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

WASHINGTON 1951927 (2K)

Honorable Shirley Kornreich

**WHITE & CASE**

November 5, 2010

      Should this Court wish to have additional information regarding the Egyptian proceedings, Orascom stands ready to provide the Court with any such additional information available to Orascom at that time.

Respectfully,

*[signature]*

Nicole Erb

cc: Robert J. Tolchin, Jaroslawicz & Jaros, Esqs.
     William M. Sullivan, Winston & Strawn LLP

Enclosure



**GEOTEXT**
Translations, Inc.

STATE OF NEW YORK    )
                    ) ss
COUNTY OF NEW YORK  )

### CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Arabic into English of the attached Ruling, dated October 31, 2010.

Kristin Schreffler, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me
this 5th day of November, 20 10.

JEFFREY AARON CURETON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CU6169789
Qualified In Queens County
My Commission Expires July 02, 2011

New York 259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A. tel +1.212.631.7432 fax +1.212.631.7778
San Francisco 220 Montgomery Street Ste. 438, San Francisco CA 94104 U.S.A tel +1.415.576.9500 fax +1.415.520.0525
Washington 1025 Connecticut Avenue, Suite 1000, Washington, DC 20036. U.S.A. Tel +1.202.828.1267 Fax +1.202.828.1271
London 8-11 St. John's Lane. London EC1M 4BF, United Kingdom Tel +44.20.7553.4100 Fax+44.20.7990 9909
Paris 75 Boulevard Haussmann, F- 75008 Paris, France tel +33.1.42.68.61.47 fax +33.1.77.72.90.25
Hong Kong 20th Floor. Central Tower, 28 Queen's Road, Central, Hong Kong tel +852.2159.9143 fax +852.3010.0082
translations@geotext.com | www.geotext.com

[illegible]

In the public hearing held at the Courthouse on Sunday, October 31, 2010
Under presidency of Mr. Tamer al-Fayl          Presiding Judge
And the presence of: Mr. Imad Kamal             Secretary

### The Following Order Was Issued in Lawsuit No. 76 of the year 2010 Bolaq Execution

**Filed by:**

The legal representative of Orascom Telecom Company, located in Nile City Tower, Nile Corniche, Cairo, with its domicile being the office of Ibrachy & Dermarkar, 16 Hussein Wassef Street, Al-Mesaha Square, Dukki, Giza.

### Against

1. The legal representative of the Palestinian Investment Fund (PIF), to be served at its chosen domicile, the office of Dr. Yahya al-Jamal, attorney before appellate courts, located at 4 Gaber bin Hayyan Street, Dukki, Giza.

2. The President of the enforcement division of the summary Court of Bolaq Abu al-Ela, to be served at his workplace at the courthouse, located at the Jala'a Courts Compound, Jala'a Street.

3. Chief Bailiff of the summary Court of Bolaq Abu al-Ela, to be served at the courthouse, located at the Jala'a Compound.

### The Court

**After hearing the pleadings and reviewing the documents:**

\*\* Whereas the facts of the case can be obtained from a case statement filed by the Petitioner in its capacity with the clerk of the court on June 6, 2010, and duly served, requesting acceptance of the petition *pro forma* and, on the merits, the stay of enforcement of ruling No. 1936/2008 Civil Appeal of North Cairo, and requiring the first Respondent to defray the costs and fees, for the following reasons: The disputed ruling cannot be enforced mandatorily because it does not require performance of anything specific; the absence of a substantive order establishing the debt and its amount; and the writ of enforcement is defective. In support of this, the Petitioner submitted an exhibit bundle containing a photocopy of the writ of enforcement of the disputed ruling, which was issued pursuant to summary proceedings in interim enforcement, requesting acceptance of the appeal *pro forma* and, on the merits, to repeal the appealed judgment and to rule anew in favor of staying the enforcement of the two Rhode Island rulings subject of the litigation, and to permit the Appellant in its capacity to receive its debt from the Appellee in its capacity.

-- Whereas deliberations concerning this lawsuit occurred as evidenced in its files with the representation of the Petitioner and the first Respondent, and the latter submitted during the hearing of July 14, 2010, two exhibit bundles containing an official copy of the ruling and the writ of enforcement. At the hearing of July 21, 2010, each party submitted a memorandum in their defense, where the Petitioner put forth its claims, and the Respondent requested a dismissal of the dispute and, alternatively, a denial of the dispute and to resume the enforcement. During the hearing of October 13, 2010, the Court decided to reserve the lawsuit for judgment at the hearing of October 27, 2010, and the ruling was postponed until today's hearing in order to complete the review.

Whereas it is established pursuant to the provisions of Article 275 of the Procedures Code that:

"The enforcement judge alone shall be exclusively competent to adjudicate all substantive and interim enforcement disputes, irrespective of the amount thereof, and shall be competent to issue enforcement rulings and orders with respect to the interim enforcement disputes, given that he is a summary proceedings judge."

Whereas this dispute has met its established conditions and was brought prior to the completion of enforcement, it is thus accepted *pro forma* pursuant to the provisions of Article 312 of the Procedures Code.

Whereas it is established by law that: "The enforcement judge shall be competent to review interim enforcement disputes prior to the completion of enforcement given his capacity as a summary proceedings judge, and thus he shall adhere to the jurisdiction of the summary proceedings judge. The legislator assumed the existence of the urgency factor in disputes of enforcement, and thus there is no need for the enforcement judge to re-examine the case. All that restrains him is that his ruling shall not affect

[signature]                                                          [signature]

*the meritorious right even if achieving such goal requires him to examine* both parties' documents *prima facie* in order to reach what is proper in the interim procedure required of him, which is to stay or continue the enforcement."

(Civil Appeal Hearing of June 7, 1951, Collection of Appellate Rulings, II, p. 1989)

Whereas it is established in law that the "enforcement judge shall adjudicate interim enforcement disputes given that he is an urgent matters judge pursuant to the provisions of Article 275(2) of the Procedures Code. Whereas he examines on an interim basis, within the dispute presented before him, the validity of the dispute, he does not adjudicate that in a definite way that would resolve the dispute, but for the purpose of obtaining what is relevant in the interim procedure petitioned, and so he rules in favor of either staying or continuing the enforcement. This assessment is temporal in nature; it does not affect the right that is under dispute, as it shall remain valid and under dispute by the parties of interest before the competent authority."

(Appeal Hearing of May 30, 1984, Appeal No. 1313 of the Judicial Year 50 – Summary Judicial Proceedings and Enforcement Jurisprudence, Danasouri and Okkaz, Publication of the Judiciary Association, Year 86, p. 697)

- Pursuant to the above and based on review of the lawsuit's records, it appears that service of the writ of enforcement was conducted properly and consistent with law and that part of the holding of the ruling authorized the Appellant to collect its debt from the Appellee, which amounts to USD 45 million, according to the arguments underlying the ruling. As such, the Petitioner did not provide a valid reason for protection against enforcement and the court concludes, according to its conviction, that the Petitioner's sole intention for bringing this dispute was to delay and hinder the enforcement without any basis in the law, which entails its rejection and the continuation of enforcement.

Whereas it is established in the law under the provisions of Article 315 of the Procedures Code, that: "If the Petitioner loses its case, it may be issued a fine of no less than two hundred Egyptian pounds and no more than eight hundred Egyptian pounds, without prejudice to compensations if warranted."

- Accordingly, and given that the Court has ruled in favor of dismissing the dispute, it shall fine the Petitioner in its capacity in the amount of five hundred Egyptian pounds in conformity with the provisions of Article 315 Procedures, as will be stated in the wording of the ruling.

-- Regarding the costs of the dispute, including legal fees, the court requires the Petitioner to pay them in its capacity, pursuant to the provisions of Articles 184(1) of the Procedures Code and 187 of the Legal Profession Law as amended by Law No. 10 of the year 2002.

<u>Therefore,</u>

<u>The Court Orders: Regarding the Interim Enforcement:</u>

To accept the dispute *pro forma* and, on the merits, to dismiss it; to continue the enforcement, to fine the Petitioner an amount of five hundred Egyptian pounds, and to require it to pay the costs in addition to an amount of seventy-five Egyptian pounds as legal fees.

|  |  |
|---|---|
| Secretary | Presiding Judge |
| [signature] | [signature] |

FROM WHITE & CASE LLP DC

بالجلسة المنعقدة علنا بسراي المحكمـــــــــــــــــة يوم الأحد الموافق ٢٠١٠/١٠/٣١
برئاسة السيد الأستاذ/ تامر الفيل            رئيس المحكمة
وبحضور الســـــيد/ عماد كمال              أمين السر

صدر الحكم الآتي
في الدعوى رقم ٧٦ لسنة ٢٠١٠
تنفيذ بولاق

المرفوعة مـــــن:
الممثل القانوني لشركة اوراسكوم تليكوم - والكائن مقرها / برج نايل سيتي – كورنيش النيل – القاهرة وحله المختار مكتب الاساتذة/ الابراشي ودارماركار ١٦ شارع حسين واصف ميدان المساحة – الدقي – الجيزة.

ضــــــد
١- السيد/ الممثل القانوني لشركة صندوق الاستثمار الفلسطيني ويعلن على موطنه المختار مكتب الاستاذ الدكتور /يحيى الجمل المحامي بالنقض الكائن ٤ شارع جابر بن حيان – الدقي – الجيزة.
٢- رئيس ادارة تنفيذ محكمة بولاق ابو العلا الجزئية – ويطلن بمقر عمله بسراي المحكمة الكائن مجمع محاكم الجلاء،
- شارع الجلاء.
٣- محضر اول تنفيذ محكمة بولاق ابو العلا الجزئية - ويعلن بسراي المحكمة الكائن مجمع الجلاء.

المحكمــــــة

بعد سماع المرافعة و مطالعة الأوراق:-
** حيث تتحصل وقائع الدعوى في أن المستشكل بصفته اقامها بصحيفة أودعت قلم الكتاب في ٢٠١٠/٦/٦ وأعلنت قانونا ابتغاء الحكم بقبول الإشكال شكلا وفي الموضوع بوقف تنفيذ الحكم رقم ١٩٣٢ لسنة ٢٠٠٨ مدني مستأنف شمال القاهرة مع إلزام المستشكل ضده الأول بالمصروفات والأتعاب ، وذلك لأسباب حاصلها :- أن الحكم المستشكل غير قابل للتنفيذ الجبري لخلوه من إلزام بأداء شيء معين و لعدم وجود حكم موضوعي بثبوت الدين و قيمته ، ولبطلان الإعلان بالصيغة التنفيذية،وقدم سندا لذلك حافظة طويت، على صورة ضوئية من الصيغة التنفيذية للحكم المستشكل في تنفيذه الصادر بصفة مستعجلة في مادة تنفيذ وقتية بقبول الإستئناف، شكلا و في الموضوع بإلغاء الحكم المستأنف و القضاء مجددا بوقف تنفيذ حكمي محكمة رود ايلاند موضوع الدعوى والإذن للمستأنف بصفته بقبض دينه من المستأنف ضده بصفته.

----- وحيث تداولت الدعوى بالجلسات على النحو الثابت بمحاضرها مثل خلالها المستشكل والد.. تتدل ضده الأول و قدم الأخير بجلسة ٢٠١٠/٧/١٤ حافظتين طويتا على صورة رسمية من الحكم واعلان الصيغة التنفيذية و بجلسة ٢٠١٠/٧/٢١ قدم كلا من الطرفين مذكرة بدفاعه صمم فيها المستشكل على طلباته وطلب المستشكل ضده أصليا رفض الإشكال و إحتياطيا بعدم قبول الإشكال و الإستمرار في التنفيذ فقررت المحكمة بجلسة ٢٠١٠/١٠/١٣ حجز الدعوى للحكم لجلسة ٢٠١٠/١٠/٢٧ و مد أجل الحكم لجلسة اليوم لإتمام الاطلاع .

وحيث أنه من المقرر طبقا لنص المادة ٢٧٥ من قانون المرافعات أنه :-
" يختص قاضي التنفيذ دون غيره بالفصل في جميع منازعات التنفيذ الموضوعية والوقتية أيا كانت قيمتها كما يختص بإصدار القرارات والأوامر المتعلقة بالتنفيذ في منازعات التنفيذ الوقتية بوصفه قاضيا للأمور المستعجلة "
وحيث أن الإشكال قد استوفى أوضاعه المقررة وأقيم قبل تمام التنفيذ ومن ثم فه مقبول شكلا عملا بنص المادة ٣١٢ مرافعات.

وحيث أنه من المقرر قانونا أن:-" قاضي التنفيذ يختص بنظر منازعات التنفيذ الوقتية السابقة على تمام التنفيذ بوصفه قاضيا للأمور المستعجلة ومن ثم فهو يتقيد باختصاص قاضي الأمور المستعجلة وقد افترض المشرع توافر عنصر الاستعجال في اشكالات التنفيذ وعلى ذلك فلا حاجة لقاضي التنفيذ لإعادة بحثه وكلي ما يتقيد به هو الا يمس



في حكمها أصل الحق ولوعلى سبيل ذلك بحث مستندات الطرفين بحثا ظاهريا يتبين به وجه الصواب في الإجراء الوقتي المطلوب منه وهو وقف التنفيذ أو الاستمرار فيه "

( نقض مدني جلسة ١٩٥١/٦/٧ مجموعة أحكام النقض س ٢ ص ١٩٨٩ ) .

وحيث أنه من المقرر قانونا أن :- "قاضي التنفيذ يفصل في منازعات التنفيذ الوقتية بوصفه قاضيا للأمور المستعجلة إعمالا لنص المادة ٢٧٥/ ٢ مرافعات وهو يتناول بصفة وقتيه في نطاق الإشكال المطروح عليه تقدير جدية النزاع لا يفصل فيه بحكم حاسم للخصومة ولكن ليتحسس منه وجه الصواب في الإجراء الوقتي المطلوب فيه فيقضي على هداه بوقف التنفيذ المستشكل فيه أو باستمراره وتقدير هذا وقتي بطبيعته لا يؤثر على الحق المتنازع فيه إذ يبقى محفوظا سليما يتناضل فيه ذوو الشأن أمام الجهة المختصة"

( نقض جلسة ١٩٨٤/٦/٣٠ الطعن رقم ١٣١٣ لسنة ٥٠ ق - الإنهاء المستعجل وقضاء التنفيذ / للدناصوري ، وعكاز طبعة نادي القضاة سنة ٨٦ ص ٦٩٧ )

----- لما كان ما تقدم وكان البادي من مطالعته ظاهر أوراق الدعوى أن إعلان الصيغة التنفيذية تم صحيحا وفقا للقانون وأن الحكم المستشكل في تنفيذه أورد في شق من منطوقه الإذن للمستأنف بقبض دينه من المستأنف ضده و البالغ وفق أسباب الحكم ٤٥ مليون دولار و من ثم فإن المستشكل لم يبدي سببا جديرا بالحماية بامتناعه عن التنفيذ ، ومن ثم تخلص المحكمة وحسب قناعتها إلى أن المستشكل لم يقصد من وراء إقامة هذا الإشكال سوى تأجير التنفيذ ووضع العراقيل في سبيله دون مسوغ من القانون متعينا رفضه و الاستمرار في التنفيذ.

وحيث أنه من المقرر قانونا بنص المادة ٣١٥ من قانون المرافعات أنه :- " إذا خسر المستشكل دعواه جاز الحكم عليه بغرامة لا تقل عن مائتي جنيه ولا تزيد على ثمانمائة جنيه وذلك مع عدم الإخلال بالتعويضات إن كان لها وجه" ------- ومتى كان ذلك وكانت المحكمة قد انتهت في قضائها سلفا إلى رفض الإشكال ، الأمر الذي نرى معه والحال كذلك تغريم المستشكل بصفته مبلغ خمسمائة جنيه عملا بنص المادة ٣١٥ مرافعات وذلك على نحو ما سيرد بالمنطوق .

------ وحيث أنه عن مصاريف الإشكال شاملة أتعاب المحاماة فالمحكمة تلزم بها المستشكل بصفته عملا بنص المادتين ١٨٤/١ مرافعات ، ١٨٧ من قانون المحاماة والمعدلة بق ١٠ لسنة ٢٠٠٢ ..

**فلهذه الأسباب**

حكمت المحكمة /: - في مادة تنفيذ وقتية :-

بقبول الإشكال شكلا ، وفي الموضوع برفضه والاستمرار في التنفيذ ؛ وبتغريم المستشكل بصفته مبلغ خمسمائة جنيه ، وألزمته بالمصاريف ومبلغ خمسة وسبعين جنيها مقابل أتعاب المحاماة .

أمين السر                    رئيس المحكمة