# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------- x
DAVID STRACHMAN, Administrator of the :
Estate of Yaron Ungar, et al.,            :   Case No. 3:05-mc-00208-PCD
                                          :
              Plaintiffs,                 :
                                          :
    -against-                             :
                                          :
THE PALESTINIAN AUTHORITY, et al.,        :
                                          :
              Defendants.                 :
                                          :
---------------------------------- x

## DECLARATION OF DR. MOHAMMAD MUSTAFA

Dr. Mohammad Mustafa hereby declares pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Chief Executive Officer of the Palestine Investment Fund ("PIF") and a member of the Board of Directors of the PIF. I have held these positions since December 2005.

2. The statements set forth in this Declaration are based upon my own personal knowledge.

3. In 2000, the Palestinian Authority ("PA") committed to transfer all of its investment assets to the PIF. In 2000, a Presidential decree was issued by the President of the PA establishing an independent investment trust called the PIF and decreeing that all of the PA's investment assets were to be transferred to the PIF.

4. In early 2003, years before David Strachman ("Strachman") and the Ungars obtained a judgment against the PA in the United States District Court for the District of Rhode Island (the "Rhode Island Court"), the PIF was legally established. The PIF was established with the support and backing of the international community, especially the World Bank and the International Monetary Fund. In 2003, the PA contributed investment assets to the PIF.

5. Since its creation, the purpose of the PIF has been to make investments that promote economic growth and infrastructure development in the Palestinian Territories.

6. Since its creation, the PIF has acted as a trustee of the investment assets for the benefit of the Palestinian people and the development of the economy and infrastructure of the Palestinian people and the future Palestinian State.

7. These investment assets can only be used to develop the infrastructure and economy of the Palestinian Territories.

8. The PIF and its directors owe fiduciary duties to the Palestinian people to restrict the use of these investment assets for those purposes. I have a fiduciary responsibility to protect the PIF and its assets by making sure they are being used in the best interests of the Palestinian people.

9. The PIF is a separate legal entity from the PA.

10. The PA receives tax revenue, imposes duties, and has its own funds for the operations of government.

11. The PIF's employees and officers are paid by the PIF, not the PA.

12. The PIF's accounts have been, and are, separate from the Treasury, in order to promote transparency and accountability. A true and correct copy of the Ernst & Young Audited Financial Statement for PIF for Year Ending December 31, 2006 is attached hereto as Exhibit 1. A true and correct copy of the Ernst & Young Audited Financial Statements for PIF for Year Ending December 31, 2005 and of the Forbes article the Ungars attached to their Creditors Bill as Exhibit H are attached hereto as Exhibits 2 and 3, respectively.

Case 1:00-cv-00105-L-DLM   Document 561-6   Filed 10/07/10   Page 4 of 8 PageID #: 5981

13. The international community, including the United States Government and different agencies and instrumentalities operating thereunder, were kept abreast of the steps taken by the PIF to maintain its independence and to serve the interests of the Palestinian people, and often commended the PIF for its efforts.

14. As the Chief Executive Officer of the PIF, I have a duty to preserve and protect the PIF's investment assets from diversion by anyone, including the Ungar family, the PA or the President.

15. By its Articles of Association, the ownership of the PIF cannot be transferred.

16. The PIF has always been located in the West Bank and Gaza and has always been governed by Palestinian law.

17. The PIF never had any assets in Rhode Island nor was it ever subject to the jurisdiction of the Rhode Island Court.

18. The PIF was never served with notice regarding any of the proceedings brought by Strachman and the Ungars in the Rhode Island Court.

19. The PIF was never lawfully summoned to appear in any of the proceedings brought by Strachman and the Ungars in the Rhode Island Court.

20. The PIF has assets far in excess of the Ungars' default judgment. The PIF had substantially more than $116 million in net assets on September 19, 2006 when the Rhode Island Court entered the Final Judgment.

21. The State Department recognized me as the head of the PIF prior to the time the Ungars obtained their judgment in the Rhode Island action. After the Rhode Island Court's action in purporting to transfer ownership of the PIF to the Ungars, the U.S. State Department

3

has continued to recognize me -- not the Ungars -- as the Chief Executive Officer and representative of the PIF and deals with me on all matters relating to the PIF.

22. In addition to its fiduciary duties to the Palestinian people, the PIF also has obligations and duties towards its business partners, which include private and public entities, both local and international.

23. The international partners to which the PIF has obligations include the United States of America through the American Overseas Private Investment Corporation ("OPIC"), which is a U.S. government agency, and the Aspen Institute.

24. Both OPIC and the Aspen Institute are in constant direct contact with the Board of Directors of the PIF and the management of the PIF, represented by me, and regularly conduct business with the PIF.

25. As recently as July 2007, OPIC, the PIF (represented by me), and the Aspen Institute signed an agreement to launch the Middle East Investment Initiative loan fund ("MEII").

26. The ceremony launching the MEII loan fund was attended by U.S. Under Secretary for Public Affairs Karen Hughes, the President of OPIC, and me, on behalf of the PIF. The Ungars were not present.

27. A press release from the U.S. State Department described the MEII loan fund as

> a close collaboration between OPIC, the PIF and the Aspen Institute for over two years and will use funds from the U.S. Government entity OPIC and the PIF to leverage $228 million in loans to small businesses. The Norweigan government is providing $5 million for operating costs for the fund and the Aspen Institute has raised funds from American, European, and Arab donors to operate and manage the initiative.

4

A true and correct copy of the press release issued by the U.S. State Department is attached as Exhibit 4.

28. At the ceremony, Under Secretary Hughes discussed President Bush's approval of the loan program, in which funds of the PIF -- which the Ungars contend belong to them -- will be used to leverage loans to small businesses:

> The United States is committed to strengthening the Palestinian economy as an important step towards a peaceful and independent Palestinian state. This joint loan program is part of the on-going effort by U.S. President Bush to provide assistance to the Palestinian people and shows his confidence in the Palestinian Government of President Abbas and Prime Minister Fayyad.

State Department Press Release attached as Exhibit 4.

29. After Hamas took control of the PA, the U.S. government boycotted the agencies and instrumentalities of the PA between January 2006 and June 2007. The U.S. Government, however, explicitly excluded the PIF from that boycott. The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury explicitly authorized U.S. citizens and entities to contract and do business with the PIF, recognizing the unique role of the PIF as trustees of the investment assets of the Palestinian people and the PIF's independence from the PA. A true and correct copy of OFAC General License Number 4 is attached as Exhibit 5.

30. The PIF and I wish to be heard by this Court because we understand that the Ungars are attempting to execute on PIF assets which they allege can be found in Connecticut.

31. The other Directors of the PIF and I have a responsibility and fiduciary duty to defend those investment assets.

32. After learning of the Rhode Island action, the PIF retained counsel -- LeBoeuf Lamb Greene & MacRae LLP (now Dewey & LeBoeuf LLP) -- to represent its interests in Connecticut. The same counsel have been retained to represent me in this action.

33. The PIF also commenced a proceeding in the Ramallah Court of First Instance. That Court, which has jurisdiction over the PIF, has ruled that the purported actions of the Ungars in the Rhode Island Court are invalid and that there has been no change in ownership or control of the PIF, notwithstanding the purported impact of the Final Judgment entered by the Rhode Island Court. A true and correct copy of the Order of the Ramallah Court of First Instance, dated November 7, 2006, in original Arabic and an English translation of that Order are attached hereto as Exhibits 6 and 7, respectively. Pursuant to that Order, the PIF filed suit against the Ungars within eight days of the Order, on November 12, 2006.

34. In another proceeding commenced by the PIF, the Amman Court of First Instance has also ruled that there has been no change in ownership or control of the PIF, notwithstanding the purported impact of the Final Judgment entered by the Rhode Island Court. A true and correct copy the Order of the Amman Court of First Instance, issued November 27, 2006, in original Arabic and an English translation of that Order are attached hereto as Exhibits 8 and 9, respectively.

35. As a private citizen, I also serve as an Economic Advisor to the President of the PA. This is a purely voluntary position. I am not an employee or officer of the PA. I do not receive a salary or any other compensation from the PA. I provide economic advice as a private citizen without being remunerated for that advice.

36. In addition to investing with OPIC in the Middle East Investment Initiative loan fund, the PIF has joined with Arab investors to develop a $200 million West Bank residential and commercial real estate project near the West Bank city of Ramallah.

6

37. The PIF has also used its investment assets for the benefit of the Palestinian people and a future Palestinian State by paying $45 million to the United States Agency for International Development ("USAID"), an independent agency that provides economic, development and humanitarian assistance around the world in support of the foreign policy goals ~~of the United States, to repay a grant.~~

38. While the PIF can provide funds to the PA as dividends on investments or for a public purpose approved by the PIF, the decision to do so rests with the PIF.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 09, 2008.

Dr. Mohammad Mustafa

274722

7