# EXHIBIT 5

1

```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF RHODE ISLAND


YARON UNGAR, et al                    C.A. NO. 00-105 L

    Plaintiff

    vs


THE PALESTINIAN LIBERATION            OCTOBER 26, 2010
ORGANIZATION, et al                   PROVIDENCE, RI

    Defendant


    BEFORE: MAGISTRATE JUDGE DAVID L. MARTIN


APPEARANCES:

FOR THE PLAINTIFF:     DAVID J. STRACHMAN, Esq.
                       321 S. Main St.
                       Suite 400
                       Providence, RI 02903
                       401-351-7700

                       MAX WISTOW, Esq.
                       61 Weybosset St.
                       Providence, RI 02903
                       401-831-2700

FOR THE DEFENDANT:     DEMING F. SHERMAN, Esq.
                       2800 Financial Plaza
                       Providence, RI 02903
                       401-274-9200

                       MARK J. ROCHON, Esq.
                       BRIAN A. HILL, Esq.
                       655 Fifteenth St., NW
                       Suite 900
                       Washington, DC 20005
                       202-626-5800
```

1  testing. That's what that opinion says.
2       The plaintiffs would like to exclude damages
3  from the hearing. The first circuit disagrees with
4  the plaintiffs, in our view. And, therefore, the
5  amounts of the judgment, which was part of the
6  default, and as to which the defendants did not
7  participate, and we've admitted on behalf -- the
8  defense have admitted that was a willful decision,
9  they apologized for it, but the question is would,
10 with an adversarial testing, the amounts had been
11 different. Awkward to argue this to you, your Honor,
12 because I know this is your ruling, that is the
13 judgment itself. But the first circuit said that the
14 district court needs to give that argument full
15 throated consideration.
16      Now we filed a motion saying that part of
17 that would be to have independent medical examination
18 of the plaintiffs, and the plaintiffs' counsel have
19 argued that that would be inappropriate for a host of
20 reasons, one of them being that the record should be
21 deemed fixed. We are prepared to take them at that
22 offer, and to test whether or not, in other words, to
23 present evidence as to whether that record would have
24 withstood adversarial testing, but without creating
25 new factual evidence, without having them retested,

1  without hearing how their high school grades are
2  going, without hearing about fact events since that
3  time, but rather to bring to the argument our experts
4  and others that would say, no, that had we -- had the
5  defendants participated, as they should have, and as
6  we admitted they should have, and had they presented
7  these challenges, that indeed that may well have
8  informed the judgment of the Court as to the amount of
9  judgment. In other words, I want to win on the
10 argument as to whether or not we're allowed to discuss
11 and have part of the hearing before the district court
12 the amount of damages. And the plaintiffs contest
13 whether we may do so. But if the plaintiffs are not
14 going to seek to introduce new evidence as to damages,
15 and the focus shall be solely on the strength or lack
16 thereof of the evidence they did put on, with the help
17 of our expert witnesses, we will attack that and show
18 in our view that the amount of judgment would not have
19 withstood adversarial testing. That approach saved
20 the plaintiffs from that which plaintiffs' counsel
21 said would be an unpleasant experience, and I
22 recognize that.
23         THE COURT: I'm not sure I'm understanding.
24 You say that approach saved the plaintiffs from an
25 unpleasant experience. You're saying no examination?

1       MR. ROCHON:  That's what I just said.
2       THE COURT:  So what is the motion before me?
3       MR. ROCHON:  Well, the motion before you was
4  for these examinations.
5       THE COURT:  Which you no longer want.
6       MR. ROCHON:  Well, what I want, and what the
7  defendants of the motion -- the plaintiffs have argued
8  before you that we can't challenge damages at all,
9  even though, as we've laid out, they did not oppose
10 our motion for discovery on damages.  We're willing to
11 have the record fixed so long as -- I don't want the
12 plaintiffs to come to court and then when I start --
13 we have our experts, and so on and so forth, to attack
14 that evidence, for them to say, oh, this is new
15 evidence, that's inconsistent, or to say, you're not
16 allowed to test this.  We provide our expert reports
17 to them.  All we want to do is what the first circuit
18 told us we can do, which is put on evidence to show
19 that the judgment as it existed back then on the
20 evidence presented to this Court would not have
21 withstood adversarial testing, and among the expert
22 reports are reports that suggest some arguments to
23 that effect.  You're maybe saying to me, Mr. Rochon,
24 what do I have to decide.  Once we saw the plaintiffs'
25 position suggesting that they're willing to lock the

1  evidence in as it was at that time, which wasn't that
2  clear to us, this, what I'm telling you now is what we
3  would have said in our reply. We just have moved
4  forward quickly. My replies to their filing would
5  have been, okay, you say you're willing to lock the
6  evidence as it was. They're not going to come up and
7  say new psychological damages. They're not going to
8  come up and say new test scores. They're not going to
9  call witnesses to say that problems have been
10 exacerbated or continued. They're not going to try to
11 alter the factual damages record. That's what they've
12 represented in their opposition. I didn't have that.
13     THE COURT: Are you withdrawing the motion
14 before me?
15     MR. ROCHON: Well, the motion before you
16 includes a legal issue as to whether we're allowed to
17 challenge damages. That is one of the issues before
18 you now. Yes, we're asking for IMEs. No. In light
19 of the plaintiffs representations that they're willing
20 to close the record, we're willing to withdraw it.
21 But, you know, I don't want them to say I'm
22 sandbagging them at the hearing when I come up and say
23 it. I'm saying it in the open now.
24     MR. WISTOW: Here's my proposal on that. I'm
25 totally unclear, frankly, exactly the ramifications of

1  what he's proposing. I'm happy to have him prepare a
2  stipulation that sets forth exactly what he wants,
3  which I candidly want to run by my clients. I don't
4  want to be just sitting here and making, you know, far
5  ranging decisions like that without consulting the
6  clients. What I would like to do is say, I'm prepared
7  to argue on the merits against this. I don't want to
8  delay the arguments. I don't want to even give any
9  hope to him that his solution is going to cure the
10 situation. So my proposal is let's argue this on the
11 merits. If he wants to give me a written stipulation
12 that we can agree to, we will get back to your Honor
13 promptly with a solution, but I have no authority to
14 make such a decision. This is a very important thing
15 for me to just stand here and say, yeah, I agree to
16 this. Frankly, I don't even understand it. All I'm
17 saying is if he wants to withdraw the motion, that's
18 his right. If he doesn't, you know, let's argue this
19 thing.
20        MR. ROCHON: Here's what I suggest to the
21 Court, I suggest that in light of what I understand to
22 be the plaintiffs' position that you hold this motion
23 in abeyance and decide it if we're not able to work
24 out this stipulation on the papers without further
25 oral argument.

```
1            MR. WISTOW:  No, I really would like to
2   argue.  This is very important, your Honor, and I
3   stayed up until 4 o'clock in the morning doing this.
4   I'd like to talk about it.
5            THE COURT:  Mr. Wistow, I'll give you a
6   chance to argue, to respond.  Just let Mr. Rochon
7   complete his remarks.
8            MR. ROCHON:  Your Honor, the need for the
9   examinations would be relevant to -- if the -- let me
10  back up.  We thought, when the Court of Appeals says
11  whether or not the damage would withstand adversarial
12  testing, that it would be unfair to the plaintiffs to
13  leave the record as it was, and to say, okay, they're
14  stuck with the record they created in our absence.  So
15  we said, therefore the record would be expanded and
16  therefore be relevant what their current condition is,
17  and other information since 2004 would be relevant.
18  Plaintiffs come back, no, no, no, we want to leave the
19  record as it was and decide this question if it's
20  going to be decided by reference to that record.  We
21  would be okay with that.  Now, so that's our position.
22  I don't know why it's not clear to Mr. Wistow.  Maybe
23  it's not clear to the Court.  I can only put it so
24  many ways.  Either the damages assessment, that is
25  what the plaintiffs' claim on the damages, is based on
```

1  the 2004 record created in our absence, or the
2  plaintiffs are going to argue something since then.
3  If they're willing to sit on that record, then we will
4  simply attack it, but not seek to create new evidence
5  as to the plaintiffs' damages since 2004. In other
6  words, not seeking the school records since then. Not
7  seeking their mental examinations or physical
8  examinations of them. Not seeking to change the
9  record or introduce any new evidence or seek to
10 introduce any new factual evidence since 2004. We'll
11 take the plaintiffs at that offer. If on the other
12 hand the plaintiffs were going to offer anything since
13 then, obviously we would need to have the
14 examinations. They can't have it both ways if they're
15 going to offer any evidence since then. That's where
16 we are. I'd like to attack that record. I'm fine
17 attacking that record. So that's where our position
18 is. If Mr. Wistow can tell the Court that he's
19 satisfied with that record, I still think he ought to
20 take it under abeyance and see where we are after we
21 negotiate.
22         THE COURT: Mr. Rochon, this motion, document
23 559, defendants' Rule 35(a), motion to compel mental
24 examination of plaintiffs. Are the defendants
25 pressing this motion, yes or no?

1  MR. ROCHON: I was going to point how we're
2  passing like two ships in the night, and would point
3  out that aspect.
4  THE COURT: I'll give you five minutes, then
5  Mr. Wistow gets five minutes next, and then we're done
6  on this motion.
7  MR. ROCHON: Since I was the movant, I was
8  anticipating rebuttal, but I can be very brief, your
9  Honor. We are passing like two ships in the night,
10  and all I'm saying to the Court, and offer to
11  Mr. Wistow, is if they're not going to further seek to
12  put into evidence the mental status of these
13  individuals, then we don't need this examination.
14  Mr. Wistow spoke all that time and didn't address the
15  one thing that I said to you in my first argument. If
16  I'm not going to hear that the motion to vacate in
17  January, or the hearing on the motion to vacate in
18  January, or in between now and then, or as to any
19  additional mental health status from these
20  individuals, then I'm not seeking the IME. If I am
21  going to have them further put into issue, their
22  mental status, then I believe we are entitled to it.
23  That's our position. Thank you.
24  THE COURT: All right, Mr. Wistow.
25  MR. WISTOW: Very briefly, your Honor. Apart

from the fact that I'm not authorized to be making such agreements now without consultation with the clients, apart from the fact that we really need to think through the ramifications of all this, I see a perfectly valid objection in the sense if their psychiatrist comes in, for example, and says this is utterly preposterous what they're suggesting here, there's no way that these kids would have had any problems. It's ridiculous. Am I going to be foreclosed from introducing evidence and say on examination of her, on cross, and say, look, you know, I'm going to show you a record they've been institutionalized for three months? By the way, I'm not suggesting any of this is happening. I'm just suggesting -- I just can't stand up and agree in the abstract to what we're talking about. I've never encountered this problem, and even if I had, I would want to consult with the clients. I'm not looking to make a big complicated thing out of it, but I just can't accept the prohibition to introduce evidence no matter what.

I can say this, at the moment, and I hope this representation counts for something, at the moment we have no intention of doing that, at the moment, but I'm not authorized to make a concession on

1  the point. And I'll give one example where we might
2  feel we were forced to introduce such evidence. Thank
3  you, your Honor.
4       THE COURT: I can tell, Mr. Rochon, that you
5  are really desirous of speaking one final time. Stay
6  there and just say what you want to say briefly.
7       MR. ROCHON: We have supplied our expert
8  reports consistent with as to how we interpret the
9  rules. So they have what our experts will say is
10 available to them. It won't be a surprise at the
11 hearing. And if they had such documents that
12 Mr. Wistow referenced, they've already been the
13 subject of a discovery demand and have not been
14 satisfied. I have no reason to believe they're going
15 to do that thing that I'm concerned about, but if they
16 are, I think we would be entitled to the examination.
17 Thank you for the additional time.
18      THE COURT: All right. Take up the last
19 motion now which I believe is interrogatories. This
20 is document 530 which is (Noise from microphone)
21 motion to file answers to defendants' interrogatory
22 numbers 12 to 18, and responses defendants' request
23 for production numbers 15, 17, 19. Is that the
24 correct motion, Mr. Hill?
25      MR. HILL: That is the correct motion, your

1  the plaintiffs utilized in connection with another
2  action they brought for the same death of Mr. and Mrs.
3  Ungar, that was brought against Iran, and that action
4  was brought in the District of Columbia, and Iran in
5  that instance defaulted, and there was a hearing on
6  the merits because it's a different statute and you
7  had to have a hearing on the merits before you could
8  enter the default under that particular statute, and
9  the plaintiffs put on evidence. They called
10 witnesses. They put in exhibits. They propounded a
11 Hague request to the government of Israel. The
12 government of Israel responded and provided. It
13 appears from the transcript of the hearing in D.C. a
14 variety of information, including statements of the
15 actual killers that were involved in this case, and
16 we've asked for the plaintiffs to turn that over, and
17 in any normal case you would be able to get from your
18 opponent the discovery they've obtained from a
19 non-party, in this case the State of Israel. We have
20 in this action, as part of this discovery, made a
21 similar Hague request to the government of Israel and
22 they haven't got back to us yet. So we're facing the
23 prospect of discovery closing on the 19th of November
24 and going to a hearing with the plaintiffs in the
25 possession of the Israeli government documents that

1  engaged in, it would be relevant for an entirely
2  different reason which it also goes to the plaintiffs
3  claims that they've been prejudiced. The plaintiffs'
4  claim here, and they will argue this undoubtedly to
5  Judge Lagueux in January, is that they can't prove
6  their case because they can't access certain
7  witnesses, some of which, as Mr. Wistow alluded to
8  earlier, have now passed away, some of which no longer
9  are employed by the defendants, and their contention
10 is that the default judgment should remain in place
11 because they can't access that testimony. Well,
12 obviously it would be irrelevant to determining
13 whether or not they are prejudiced to see what they
14 have. This is like playing poker and saying, well, I
15 can draw cards but I'm not going to show you what I've
16 got but I'm prejudiced. Trust me, Judge, you know, I
17 can't prove my case -- I can see what's in my hand, I
18 won't let the defendants see it.
19         And respectfully, Judge, it just doesn't make
20 any sense. Discovery should be two ways, at least on
21 relevant topics, and this one is concededly relevant.
22 I was pausing in case your Honor had a question.
23         THE COURT: I do but I want you to complete
24 your argument. Are you finished?
25         MR. HILL: I'm pretty close on this point.

1   entered. Would you address --
2       MR. HILL: Yeah, certainly, your Honor.
3       THE COURT: I heard you, Mr. Hill, make a
4   somewhat impassioned argument about the unfairness
5   that the defendants are being subjected to, and I
6   recall that the defendants refused to provide
7   discovery, and so I have at least that as a background
8   for your claim that what's happening now is unfair, so
9   let me hear you on that.
10      MR. HILL: Well, your Honor, I mean, you
11  know, the obvious truism that two wrongs don't make a
12  right. The defendants did refuse to make discovery
13  previously before I was counsel. We're here seeking
14  to have the default judgment that was the consequence
15  of that failure vacated. We're seeking to be able to
16  make the arguments to the district court that we
17  believe on balance, a balancing of the equities would
18  merit, giving us a chance to challenge this case on
19  its merits, and one of the issues that everybody
20  agrees is, you know, is it all a waste of time because
21  the defendants are liable anyway, and that's one of
22  the issues that the Judge is going to have to grapple
23  with in January, and if we're going into that hearing
24  unable to know, you know, what document is coming
25  next, or what witness is coming next, that doesn't

Case 1:00-cv-00105-L-DLM   Document 594-5   Filed 11/15/10   Page 16 of 18 PageID #: 8140

110

```
1   advance the fact finding process that the first
2   circuit wanted Judge Lagueux to undertake, and, you
3   know, your Honor, I can't defend the prior decision to
4   not give discovery by the defendants other than to say
5   that it was wrong, and as Mr. Rochon said in his
6   argument earlier, you have before you new counsel
7   representing defendants that are under different
8   management, different leadership. The individuals who
9   made those decision, probably the individual, in
10  fairness, who made that decision, is not the party in
11  the case. These are organizations of people that are
12  under new leadership, who have had a change in
13  approach, a change in leadership, and they want the
14  opportunity to defend the organizations on the merits,
15  and the fact that they previously decided not to do
16  so, if we're going to have discovery on a Rule
17  60(b)(6) motion, it doesn't make sense now to say,
18  well, you didn't give discovery before therefore you
19  can't take any discovery in this process. Judge
20  Lagueux's order doesn't say discovery shall be by the
21  plaintiffs of the defendants only, but the defendants
22  shall not have the opportunity to take discovery from
23  the plaintiffs, and that's just not the way courts
24  usually do things, and that's my response. I
25  appreciate your Honor where you're coming from, and I
```

Case 1:00-cv-00105-L-DLM   Document 594-5   Filed 11/15/10   Page 17 of 18 PageID #: 8141

132

1  complaint. No more was needed at the pleadings stage.
2  So there might be one view of the world that says,
3  look, defendants have filed an answer. That's it, we
4  have a meritorious defense. We've denied these
5  things, and if that were where we were, then maybe we
6  wouldn't need any discovery on this, and the
7  plaintiffs wouldn't be trying to take discovery on
8  this, and they wouldn't be trying to call people who
9  may well be expert witnesses to give opinions about
10 our liability in the case, but for better or for
11 worse, that's not where we are. Where we are is they
12 have propounded extensive discovery to us, including
13 the most recent 30(b)(6) notice, which I think I
14 brought up with me, which seeks to require to have us
15 designate someone and prepare to talk about an alleged
16 agreement between the PA and Hamas that occurred in
17 December of 1995. That has got to be about
18 meritorious defense, and if we're going to have
19 discovery on the factor of whether the defendants have
20 a meritorious defense, my only point is that in
21 fairness it needs to be both ways. It just would not
22 be fair for us to go to a hearing, frankly to the
23 defendants or to Judge Lagueux, to go to a hearing in
24 January where the only evidence from the plaintiffs is
25 what the plaintiffs want to show us, and whatever they

138

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11              C E R T I F I C A T I O N
12    I, court approved transcriber, certify that the
13    foregoing is a correct transcript from the official
14    electronic sound recording of the proceedings in the
15    above-entitled matter.
16
17
18    /sJOSEPH A. FONTES/
19    COURT REPORTER
20    NOVEMBER 11, 2010
21    DATE
22
23
24
25
```