# Exhibit D

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

        Plaintiffs – Judgment Creditors,

    v.                                     C.A. No. 00 - 105L

THE PALESTINIAN AUTHORITY, et al.,

        Defendants – Judgment Debtors.

## PLAINTIFFS-JUDGMENT CREDITORS' THIRD REQUEST OF DEFENDANT-JUDGMENT DEBTOR THE PALESTINIAN AUTHORITY FOR PRODUCTION OF DOCUMENTS AND THINGS RELEVANT TO DEFENDANTS-JUDGMENT DEBTORS' RULE 60(b)(6) MOTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs–Judgment Creditors, by counsel, request that Defendant–Judgment Debtor the Palestinian Authority ("PA") produce, within thirty (30) days of the service of these requests, the following documents, things and electronically stored information as described in Fed.R.Civ.P. 34(a)(1)(A) (collectively hereinafter: "documents").

1.    **Regarding the Defendants' burden to demonstrate absence of prejudice:**

    a.  All documents supporting the Defendants' claims that vacating the Judgment will not cause prejudice to the Plaintiffs.

    b.  All documents on the basis of which the Defendants "vigorously disput[e]" that evidence and witnesses have been irreparably compromised.[1]

---

[1] See Ungar v. The Palestine Liberation Organization, 599 F.3d 79, 86 (1st Cir. 2010) ("They [Defendants] vigorously dispute the plaintiffs' claim that evidence and witnesses have been irreparably compromised.").

s.   All documents relating to, referring to and/or evidencing the conflicting instructions and confusion caused by the PA's failure to establish lines of authority for handling foreign litigation.[67]

t.   All documents relating to, referring to and/or evidencing the conflicting instructions and confusion caused by the PLO's failure to establish lines of authority for handling foreign litigation.[68]

u.   All documents, from any time prior to December 2007, relating to, referring to, evidencing, containing and/or constituting policies, procedures and/or guidelines for the handling of lawsuits brought against the PA.

v.   All documents, from any time prior to December 2007, relating to, referring to, evidencing, containing and/or constituting policies, procedures and/or guidelines for the handling of lawsuits brought against the PLO.

**10.    Regarding the Palestine Investment Fund:**

a.   All documents relating to, referring to and/or evidencing the relationship between the Palestinian Investment Fund and the PA.[69]

b.   All documents relating to, referring to and/or evidencing the PA's knowledge of, and when the PA first became aware of, the 2006 Judgment.

c.   All documents relating to, referring to and/or evidencing the transfer and/or payment of any funds, monies or assets from the Palestine Investment Fund to the PA from the date the 2006 Judgment was entered until the present day, including all documents relating to, referring to and/or evidencing the amounts of such transfers and/or payments.

d.   All documents relating to, referring to and/or evidencing all decisions to carry out the transfers and/or payments referred to in the previous subsection (c), including all documents relating to, referring to and/or evidencing the name, title, and present whereabouts of any person involved in making, participating in and/or authorizing such transfers and/or payments.

e.   All documents constituting the Palestine Investment Fund's articles of association and/or by-laws at any time.

---

[67] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 35 ("As Mr. Abdel-Rahman notes, '[t]he failure to establish such lines of authority had created conflicting instructions and confusion in the litigation, to the Defendants' detriment.'").

[68] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 35 ("As Mr. Abdel-Rahman notes, '[t]he failure to establish such lines of authority had created conflicting instructions and confusion in the litigation, to the Defendants' detriment.'").

[69] See Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment at 44.

f.  All documents relating to, referring to and/or evidencing the Palestine Investment Fund's governing structure and decision-making procedures.

g.  All documents relating to, referring to and/or evidencing any efforts to change the articles of association of the Palestine Investment Fund at any time subsequent to the date that the 2006 Judgment was entered, including all documents relating to, referring to and/or evidencing the name, title, and present whereabouts of any person involved in making, participating in and/or authorizing such changes. [70]

h.  All documents relating to, referring to and/or evidencing the impairment of the PA's ability to carry on its governmental function caused by the freezing of assets of the PA and of various "independent entities", including but not limited to the Palestine Investment Fund.[71]

i.  All documents relating to, referring to and/or evidencing erosion of support for the PA's leadership and compromise of the efforts of the PA to achieve economic stability caused by the turning over of ownership of the Palestine Investment Fund.[72]

j.  All documents relating to, referring to and/or evidencing all actions carried by Mohammed Mustafa on behalf of the PA and all services rendered by Mohammed Mustafa to or on behalf of the PA between July 2004 and the present day.

k.  Authentic copies of all papers, pleadings, affidavits and declarations submitted by the PA and/or PLO in the Israeli Proceedings, at any time, that reference the Palestine Investment Fund.

---

[70] See Declaration of Robert J. Tolchin, Ex. C to Plaintiffs-Judgment Creditors' Memorandum in Opposition to Defendants' Motion for Relief from Default Judgment, at ¶ 8 ("In the Connecticut case, attorneys purporting to act on behalf of the PIF (but in fact acting on behalf of the former CEO of the PIF, who is none other than the current Economic Advisor to the PA) appeared and advised the Court that in early 2007 the PA had purported to make self-serving changes to the PIF's bylaws in a post-hoc effort to defeat the effect of the judgment entered by this Court in September 2006 on the Ungars' creditor's bill conveying ownership of the PIF to the Ungars.").

[71] See June 18, 2005 letter from Salam Fayyad to Condoleezza Rice at 4 ("As set forth above, the enforcement actions taken by Plaintiffs and their supporters in the *Ungar* Case have already resulted in the freezing of numerous assets of both the PNA and various independent entities that are *not* subject to the District Court's Preliminary Injunction. The freezing of these assets poses an imminent threat to the continuing operation of critical institutions on which the Palestinian people depend for a functioning civil society. In addition, it also has significantly impaired the ability of the PNA to carry on its governmental function and, in fact, threatens to bankrupt the PNA.").

[72] See 3/6/08 Defendants' Reply to Plaintiffs' Objection to Motion for Relief from Default Judgment at 29 ("If the U.S. courts turn over the pension fund assets of Palestinian government workers and the ownership of the Palestine Investment Fund in satisfaction of this judgment, support for the moderate leadership of the PA will be severely eroded and its efforts to achieve economic stability compromised.").

l.  All documents relating to, referring to and/or evidencing all legal actions and/or proceedings brought against Orascom Telecom Holding S.A.E. by persons purporting to represent the Palestine Investment Fund, including without limitation all such actions and/or proceeding brought in Egypt.

m.  Authentic copies of all papers and pleadings submitted by any party to legal actions and/or proceedings brought against Orascom Telecom Holding S.A.E. by persons purporting to represent the Palestine Investment Fund, and authentic copies of all transcripts, orders and decisions from such proceedings.

**11.    Regarding the Defendants' ability to participate in discovery**

a.  All documents relating to, referring to and/or evidencing the PA's difficulties finding documents and responding to requests for discovery between 2000 and December 2007.[73]

b.  All documents relating to, referring to and/or evidencing the PLO's difficulties finding documents and responding to requests for discovery between 2000 and December 2007.[74]

c.  All documents relating to, referring to and/or evidencing the present ability of the PA to produce documents and respond to discovery requests, and how its current ability differs from that which obtained in 2000, 2001, 2002, 2003, and 2004.[75]

d.  All documents relating to, referring to and/or evidencing the present ability of the PLO to produce documents and respond to discovery requests, and how its current ability differs from that which obtained in 2000, 2001, 2002, 2003, and 2004.[76]

---

[73] See 1/27/03 Al-Kidwa letter to Judge Martin, Ex. L to Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment, at 1 ("Government offices and officials cannot work effectively or organize even on matters of extreme urgency. It has been impossible under such circumstances to locate people who could seek and find documents, who could gather information and prepare answers to interrogatories and could respond to requests for admissions.").

[74] See 1/27/03 Al-Kidwa letter to Judge Martin, Ex. L to Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment, at 1 ("Government offices and officials cannot work effectively or organize even on matters of extreme urgency. It has been impossible under such circumstances to locate people who could seek and find documents, who could gather information and prepare answers to interrogatories and could respond to requests for admissions.").

[75] See 1/27/03 Al-Kidwa letter to Judge Martin, Ex. L to Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment, at 2 ("Only the achievement of a level of stability, free from the threat of daily attacks in our territory can make it possible to free personnel to gather the materials and information needed to proceed with a defense.").

[76] See 1/27/03 Al-Kidwa letter to Judge Martin, Ex. L to Defendants' 12/28/07 Memorandum in Support of Defendants' Motion to Vacate Default Judgment, at 2 ("Only the achievement of a level of stability, free from the threat of daily attacks in our territory can make it possible to free personnel to gather the materials and information needed to proceed with a defense.").

10.    "Bucheit Proceedings" shall mean, refer to and include collectively all proceedings in the matter of *Bucheit v. PLO*, Civ. No. 00-1455GK (D.D.C.)

Dated: August 26, 2010

Plaintiffs-Judgment Creditors,
by their Attorney,

_____
David J. Strachman #4404
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com


Max H. Wistow #0330
Wistow & Barylick
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on August 26, 2010, a true and genuine copy of the foregoing was sent by first class mail and electronic mail to Defendants' counsel of record listed below and hand delivered to Deming E. Sherman at the address below:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701

