UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____

THE ESTATE OF YARON UNGAR, et al.,

    Plaintiffs,

        v.

THE PALESTINIAN AUTHORITY, et al.,

    Defendants.
_____

C.A. No. 00-105L

**DEFENDANT'S OPPOSITION TO PLAINTIFFS-JUDGMENT
CREDITORS' URGENT MOTION FOR A TEMPORARY
RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

The Plaintiffs come to the Court with a motion seeking a preliminary injunction related to a debt owed by Orascom — an entity with no U.S., let alone Rhode Island, contacts.  The debt is owed to the Palestine Investment Fund ("PIF") — an entity over which this Court has admitted it has no jurisdiction.  And, the debt itself relates to a transaction that occurred overseas and which has been adjudicated by Egyptian courts.  Obviously, a District Court in Rhode Island normally would have no reason to concern itself with foreign debts between overseas non-parties over whom the Court has no jurisdiction.  Yet, the Plaintiffs, once again, are trying to drag this Court into a procedural quagmire, just as they did when they sought and received the Creditor's Bill judgment on which the current injunctive action is predicated.

Indeed, the instant motion to obtain a preliminary injunction, combined with Plaintiffs' position argued in other recent filings before the Court that failure to abide the Creditor's Bill judgment is an independent basis to deny the Defendants' motion to vacate the underlying judgment, have necessitated the Court's review of the validity of the Creditor's Bill judgment. Defendant The Palestinian Authority ("PA") has today filed a Rule 60(b)(4) motion for relief

from that judgment.  Dkt. Nos. 597, 598.  It is, simply, time for that flawed judgment to be done

away with, given all of the mischief that Plaintiffs' counsel seeks to create based upon it.  At the

same time, however, the instant motion can be resolved, and readily denied, even before the

Court rules on the newly filed Rule 60(b)(4) motion.  The fact is that the Plaintiffs' preliminary

injunction motion is without factual or legal basis, and it should be denied.

### BACKGROUND

**I.    THE CREDITOR'S BILL JUDGMENT AND THE PALESTINE INVESTMENT FUND**

On July 13, 2004, this Court entered a $116 million default judgment against Defendants

in this case.  As part of Plaintiffs' efforts to satisfy that judgment, in July 2006, they presented in

this Court a "Creditor's Bill" pursuant to Rhode Island General Law § 9-28-1 and Federal Rule

of Civil Procedure 69, requesting that the Court assign to them the PA's legal and equitable

interests in the PIF.  *See generally* Dkt. No. 370.[1]  Plaintiffs brought the Creditor's Bill as part of

the above-referenced matter (to which the PIF is not a party), instead of filing a separate action

against the PA or PIF.

The PIF was "was established in 2003 as an independent investment company, which

aims to strengthen the local economy through key strategic investments, while maximizing long-

run returns for its ultimate shareholder; the people of Palestine."  Palestine Investment Fund

2009 Annual Report at 16 ("PIF Annual Report"), *available at*

http://www.pif.ps/resources/file/annual_report/AnnualReportEnglishFinal.pdf (last visited Nov.

16, 2010); *see also* Defendant's Memorandum in Support of Rule 60(b)(4) Motion for Relief

---

[1] Plaintiffs also requested that the Court assign to them the PA's legal and equitable interests in the Palestinian Commercial Services Company ("PCSC").  *Id.*  The PCSC is not relevant to the Plaintiffs' motion for a preliminary injunction and will not be addressed herein.

1118151.6

from Creditor's Bill Judgment Regarding the Palestine Investment Fund at 26-27 (Dkt. No. 598) (describing the PIF's role in various economic development initiatives, alongside the Overseas Private Investment Corporation and the Aspen Institute).  Though a public economic development corporation, PIF is "financially and administratively independent and is governed by an independent General Assembly and Board of Directors."  PIF Annual Report at 18.  Since December 2005, Dr. Mohammad Mustafa has been the Chief Executive Officer of the PIF and a member of its Board of Directors.  *See id.* at 12.  Dr. Mustafa is also an Economic Advisor to the President of the PA.  *Id*.

This Court has previously recognized that the PIF is not a party before the Court, and that there are no assets of the PA or PLO in Rhode Island:

> And I have limited jurisdiction because none of those entities are before this Court.  The only jurisdiction I have is over the PA and the PLO, which I determined a long time ago.  So there's certainly a question about any judgment that I enter in this case as to its territorial effect.
> . . . .
> If I enter a judgment assigning to the plaintiffs all the rights that the PA has in these two entities, that's the limit of the order of the Court, the judgment of the Court, then that has to be executed somewhere where these two entities are doing business.  They're not doing business in Rhode Island. . . . [T]here are no assets in this jurisdiction of the PA and the PLO.

Sept. 13, 2006 Hearing Tr. at 5, 10-11, 12-13, 14 (Exhibit 1 hereto).

The PIF was not served with the Creditor's Bill.  Nor did the PIF receive a meaningful opportunity to be heard on the Creditor's Bill.  Despite the fact that the PIF was not a party before the Court, and despite the fact that there were admittedly no assets of the PA, the PLO, or the PIF in Rhode Island, on September 19, 2006 the Court entered final judgment on the Creditor's Bill, purporting to transfer ownership of the PIF to Plaintiffs in its entirety.  Dkt. No. 381.  The judgment states in part:

1118151.6

> [A]ll of the Palestinian Authority's ownership rights in the [PIF] . . . that are evidenced by the certificate attached hereto as Appendix 3, and all rights, benefits and interests of the Palestinian Authority in all property, assets and credits of any type, that are titled and/or owed to the . . . [PIF] . . ., are hereby assigned, transferred and conveyed to [Plaintiffs].

*Id.* at 2.[2]

According to the PIF's independent auditors, Ernst & Young, the PIF currently has assets amounting to more than $800 million — far in excess of Plaintiffs' default judgment against the PA. *See* Exh. 2 (PIF Annual Report at 150). Even the sole exhibit submitted by the Ungars in support of their Creditor's Bill as to the 2006 value of PIF (Dkt. No. 370 at 6 and Exh. H), stated that PIF is "now believed to hold $1.4 billion in assets." *See* Exh. 3 (Creditor's Bill Exhibit H, a March 9, 2006 Forbes magazine article). Thus, the Court purportedly transferred to Plaintiffs full ownership of a Palestinian company that is worth several times more than the Plaintiffs' $116 million judgment against the PA.

After the Court entered the Creditor's Bill judgment, Plaintiffs purported to dismiss the directors and officers of the PIF and to appoint new directors and officers — themselves. Dkt. No. 588 at 2, 5. Plaintiffs' action in this regard has not been recognized by the courts in Ramallah or Amman. Dkt. No. 552 at Exh. N, pp. 3-4; *id.* at Exh. O, p. 2. Nor has it been recognized by the United States government: the U.S. State Department has continued to recognize Dr. Mustafa — not Plaintiffs — as the CEO and representative of the PIF, and the State Department continues to deal with Dr. Mustafa on all matters relating to the PIF. *See* Exh. 4 at 1 (July 25, 2007, U.S. Department of State press release describing the Middle East Investment Initiative program, a "close collaboration between OPIC, the PIF, and the Aspen

---

[2] As noted *supra*, Defendants are separately moving contemporaneously herewith to vacate this judgment under Federal Rule of Civil Procedure 60(b)(4). *See generally* Dkt. Nos. 597, 598.

Institute for over two years" that will "use funds from the U.S. Government entity OPIC and the PIF to leverage $228 million in loans to small businesses"). *See also* Exh. 5 at 1 (June 2, 2010, OPIC Press Release, "$500 Million Mortgage Facility Launched in Palestine"); Exh. 6 at 2 (June 3, 2010, Remarks by Senator George J. Mitchell at the Palestine Investment Conference).

## II.    ORASCOM

Orascom is an Egyptian telecommunications company that operates in the Middle East, Africa, and South Asia. *Ungar v. Palestinian Auth.*, No. 1:05-mc-180-GK (D.D.C. Sept. 8, 2010) (Exhibit 7 hereto) (J. Kessler Opinion). In February 2005, Orascom and the PIF executed a share purchase agreement. *Estate of Ungar v. Orascom Telecom Holding S.A.E.*, 578 F. Supp. 2d 536, 543 (S.D.N.Y. 2008). A subsequent dispute between Orascom and the PIF regarding the share purchase agreement was settled in April 2005. *Id.* The settlement required, *inter alia*, "that Orascom pay the PIF $ 45 million at a future date." *Id.*

The PIF has brought suit against Orascom in Egypt, demanding delivery of these funds. Dkt. No. 588 at Exh. M, p. 2. On March 27, 2010, an Egyptian court held that the PIF is allowed to recover its assets from Orascom. *Id.* According to Plaintiffs, on October 31, 2010, the Egyptian court authorized the PIF "to collect the debt immediately." Dkt. No. 588 at 3. The Egyptian court also apparently fined Orascom for failing to pay its debt to the PIF. *Id.* at Exh. S.

Meanwhile, Plaintiffs have endeavored to restrain these very same funds, claiming that the $45 million debt owed by Orascom to the PIF is subject to the execution of the PA's creditors, including Plaintiffs themselves. *Id.* at 1. They have raised this argument in various proceedings in multiple New York State and federal courts. As Plaintiffs themselves admit, the United States District Court for the Southern District of New York dismissed their case for lack of subject matter jurisdiction, and the United States District Court for the District of Columbia

dismissed their case for lack of personal jurisdiction.  *Id.* at 4; *see also* Exh. 7 at 2 ("There is absolutely no dispute that Orascom has no contacts whatsoever with the District of Columbia or the United States.  The law is crystal clear that in such a situation this Court has no personal jurisdiction over Orascom.").  Proceedings in the New York State courts remain pending, and Plaintiffs claim, without citation or support, that "Orascom's debt to the PIF is restrained by a New York State writ of execution."  Dkt. No. 588 at 4.

Plaintiffs have now brought in this Court their latest attempt to collect the Orascom debt for themselves.  They claim that "Orascom is already restrained from releasing the funds by [a] New York [writ of] execution."  *Id.* at 3.  In fact, the Sheriff's Levy upon which Plaintiffs relied has expired and is void, Exh. 8 at 20-21 (Orascom Telecom Holding S.A.E.'s Mem. of Law in Support of Its Motion to Join Proceedings, to Dismiss, and for Other Relief in *Estate of Ungar v. Palestinian Auth.*, Index No. 105521/05 (N.Y. Sup. Ct.)), and Orascom has moved to vacate it. In any event, because neither the PA nor Dr. Mustafa are parties to the New York State proceeding, they cannot be enjoined by the New York court.  Dkt. No. 588 at 4.  Instead, Plaintiffs urge this Court to issue an injunction "prohibiting the PA from taking any action to seize the PIF debt."  *Id.*  According to Plaintiffs, this would "automatically bind, by operation of Rule 65(d)(2), the PA's 'officers [and] agents' and any 'other persons who are in active concert or participation with' the PA."  *Id.*  Plaintiffs claim that Dr. Mustafa is "an officer and agent of the PA, and is acting in active concert or participation with the PA."  *Id.*  To Plaintiffs, this means that "any injunction against the PA would automatically enjoin him as well."  *Id.*

## **STANDARD OF REVIEW**

The Court must weigh four factors in determining whether a preliminary injunction should be granted:

1118151.6

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

*Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004). It is the movant's burden to establish "that these four factors weigh in his favor." *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006).

Two of the four factors — the movant's likelihood of success on the merits and the potential for irreparable harm — constitute necessary thresholds for preliminary injunctive relief. If the movant fails to establish either one of these factors, the Court need not address the remaining factors. *See*, *e.g.*, *id.* ("The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."); *Bl(a)ck Tea Soc'y*, 378 F.3d at 15 ("We have frequently said that likelihood of success is an essential prerequisite for the issuance of a preliminary injunction."); *Charlesbank Equity Fund II, LP v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) (holding that "irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief").

Because a preliminary injunction is "an extraordinary and drastic remedy," the applicable standard is onerous: the Court must not grant a preliminary injunction "unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original); *see also Charlesbank Equity Fund II, LP*, 370 F.3d at 163 ("A preliminary injunction is a potent weapon that should be used only when necessary to safeguard a litigant's *legitimate* interests.") (emphasis added).

1118151.6

This requires the movant to proffer *evidence* amounting to "substantial proof," *Mazurek*, 520 U.S. at 972, "not just assertion[s]." *Bolduc v. Beal Bank, SSB*, 167 F.3d 667, 674-675 (1st Cir. 1999). "Mere conjecture and unsupported allegations will not suffice. Rather, [the movant] must demonstrate the existence of *specific facts*" supporting the issuance of a preliminary injunction. *DeNovellis v. Shalala*, 135 F.3d 58, 65 (1st Cir. 1998) (emphasis added).

## ARGUMENT

### I. PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THEY WILL SUFFER IRREPARABLE HARM IF THE PRELIMINARY INJUNCTION IS DENIED

As noted above, irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief. *Charlesbank Equity Fund II, LP*, 370 F.3d at 162. Plaintiffs, however, can show neither that they have been "harmed" nor that any such harm could be considered "irreparable." Plaintiffs claim that they will be harmed in the absence of a preliminary injunction because "if the PA and Mustafa are not immediately enjoined from seizing this debt, the Ungars' five years of efforts to enforce their judgment against the $45 million Orascom debt will 'go down the drain' and their opportunity to execute against that debt will be lost." Dkt. No. 588 at 3. *See also id.* at 10 ("The 'potential for irreparable harm if the injunction is denied' is also clear . . . if the amount of the debt is seized from Orascom . . . the Ungars enforcement proceeding in New York will almost certainly be extinguished, and the funds will disappear").

However, all of these alleged "harms" are based on the same unsupportable premise, namely that the Ungars are legally entitled to execute against Orascom's debt to PIF in satisfaction of the Ungars' judgment against the PA. If that premise is incorrect, as two separate federal district courts have already ruled, then Plaintiffs will suffer no harm at all if Orascom pays PIF as it has been ordered by the Egyptian court because Plaintiffs have no legitimate claim

to those funds.  Moreover, even if Plaintiffs can "execute" on Orascom's debt to PIF in satisfaction of their judgment against the PA, their inability to do so because Orascom paid PIF would not be "irreparable" because it would be capable of being remedied with a payment of money damages.  Accordingly, because Plaintiffs have not met their burden of demonstrating irreparable harm, their motion for preliminary injunction must be denied.

### A.    Plaintiffs Will Not Be Harmed At All if the Injunction Is Denied

Plaintiffs assert they will eventually be able to collect $45 million from Orascom in satisfaction of the judgment in this action.  In fact, because Plaintiffs lack a legitimate claim against Orascom, there will be no "harm" at all to Plaintiffs if Orascom pays PIF what it owes PIF.  The record of Plaintiffs' multiple attempts over the last five years to execute its judgment in this matter against Orascom in federal and state courts makes it abundantly clear they have no legitimate claim against Orascom.  Indeed, as Plaintiffs acknowledge, Dkt. No. 588 at 4 & n. 4, both federal cases that the Ungars filed against Orascom were dismissed for lack of subject matter and personal jurisdiction.  *See Ungar v. Orascom Telecom Holding S.A.E.*, 578 F. Supp.2d 536 (S.D.N.Y. 2008); Exh. 7 (J. Kessler Opinion).  Indeed, Plaintiffs have admitted, and Judge Kessler in the District Court for the District of Columbia has expressly found "[t]here is absolutely no dispute that Orascom has no contacts whatsoever with the District of Columbia *or the United States*."  Exh. 7 at 2 (emphasis added).

Plaintiffs have now "refiled" an enforcement action against Orascom in New York State court.  However, regardless of the venue Plaintiffs choose to continue their misguided and unfounded pursuit of Orascom, they simply cannot prevail in an enforcement action in any state of the United States against a foreign company that has no contacts with any state of the United States.  Indeed, Orascom has moved to dismiss Plaintiffs' New York State action on precisely these grounds, Exh. 8 at 13-18, and it is only a matter of time before the New York State court

1118151.6

dismisses the Plaintiffs action against Orascom for lack of personal jurisdiction.  In fact, the federal courts have repeatedly done precisely this.  Exh. 7 (J. Kessler Opinion); *Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d. 541, 552 (S.D.N.Y. 2005) (holding the court cannot exercise personal jurisdiction over Orascom in New York because [t]he total of Orascom's contacts with the United States is insufficient to satisfy the requirements of due process").  Accordingly, because Plaintiffs cannot demonstrate that they will suffer any "harm" if this Court declines to preliminarily enjoin the PA "from taking any actions to collect or enforce any debt owed" by Orascom to PIF, Plaintiffs' Motion should be denied..

### B.    Plaintiffs Will Not Be Irreparably Harmed if the Injunction is Denied

Moreover, even if Plaintiffs had a legitimate claim against Orascom, Plaintiffs fail to articulate how they would be irreparably harmed by Orascom's payment of its $45 million debt to PIF.  The end result of Orascom abiding by the order of the Egyptian court would be PIF receiving $45 million.  That conveyance, in and of itself, does not irreparably harm Plaintiffs because Plaintiffs' interest in that $45 million is premised upon the $116 million default judgment, in which this Court has already found Plaintiffs have "sufficient security" for pending resolution of Defendants' vacatur motion without taking into account Plaintiffs' chase for the $45 million at issue here.  *See* June 15, 2010 Hearing Tr. at 27:21-28:5.[3]

Furthermore, again assuming *arguendo* that Plaintiffs have a legitimate claim against Orascom, Plaintiffs still cannot establish "irreparable" harm, which "most often exists where a party has no adequate remedy at law," *Charlesbank Equity Fund II, LP*, 370 F.3d at 162, because

---

[3] In addition, Plaintiffs assert that they would still be able to seek the $45 million from Orascom even if Orascom abides by the Egyptian court's order and conveys the money to PIF.  *See* Dkt. No. 588 at 8 n.12. Thus, because Plaintiffs, by their own contention, may still be able to recover the $45 million from Orascom even after Orascom satisfies its debt to PIF, there can be no "irreparable harm" to Plaintiffs if that debt is paid.

1118151.6

"[w]here pecuniary damages will make a party whole, its legal remedy is adequate." *Id.*;

*Braintree Laboratories, Inc. v. Citigroup Global Mkts., Inc.*, 671 F. Supp. 2d 202, 208 (D. Mass. 2009). Here, both the $45 million and Plaintiffs' costs in seeking it clearly constitute "pecuniary damages" for which Plaintiffs have an adequate remedy at law, and for which this Court has already recognized Plaintiffs possess "sufficient security." Thus, because the Court is "unable to discern anything resembling a realistic prospect of irreparable harm," it should deny injunctive relief. *Charlesbank Equity Fund II, LP*, 370 F.3d at 162.[4]

Accordingly, Plaintiffs Motion should be denied.

## II.    PLAINTIFFS HAVE FAILED TO ESTABLISH LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs' motion asserts that "[t]he Ungars' 'likelihood of success on the merits' is not even in issue, because the Court has already awarded them ownership of the PIF, and the PA therefore has no right to purport to act on behalf of the PIF to interfere with the Ungars' efforts to reach PIF-held assets." Dkt. No. 588 at 10. In further support of their motion, Plaintiffs rely upon *Iantosca v. Step Plan Services, Inc.*, 604 F.3d 24 (1st Cir. 2010). In *Iantosca*, the injunction at issue prevented two insurance companies from distributing settlement proceeds to companies that the creditor plaintiffs alleged were controlled by the original debtor defendants that had not satisfied the original judgment. *Id.* at 27-28. The district court granted the injunction based on a finding that the companies set to receive settlement proceeds were "likely

---

[4] Both cases cited by Plaintiffs for the proposition that a federal court may issue an injunction to protect its judgment are distinguishable on this basis, as both decisions involved requests for equitable, non-pecuniary relief. *See Aristud-Gonzalez v. Gov't Dev. Bank for Puerto Rico*, 501 F.3d 24, 26 (1st Cir. 2007) (affirming the district court's rejection of defendant's request for an injunction barring plaintiff from filing a new case); *Ying Fong v. Ashcroft*, 316 F. Supp. 2d 398, 404 (S.D.N.Y. 2004) (ordering petitioner to be "promptly returned to the jurisdiction of this court, to comply with the Order of this court").

1118151.6

abusing the corporate form." *Id.* at 28.  Indeed, the creditor plaintiffs "presented substantial evidence" that one of the companies "should be subject to the doctrine of corporate disregard." *Id.* at 31 n.7.  Here, Plaintiffs have failed to present any evidence that the PA and PIF are somehow the same entity or that Dr. Mustafa is acting in his capacity as an economic advisor to the PA when taking action as CEO of PIF.  Moreover, Plaintiffs base their claim for injunctive relief on their ability to collect Orascom's debt to PIF directly from Orascom, which, as Defendants have already demonstrated, is nonexistent.

In sum, Plaintiffs assert that (1) the PA and PIF are one and the same for the purposes of receiving Orascom's debt, and (2) Dr. Mustafa is acting both as the CEO of PIF and as an "Economic Advisor" to the President of the PA at all relevant times.  Relying only upon a "Verified Memorandum" signed by one of the Ungars long-time-attorneys (who recently moved to appear in this case), Plaintiffs premise their right to Orascom's debt on a house of cards that lacks a sufficient factual foundation to withstand scrutiny.  *See Ass'n of Community Organizations for Reform Now v. Town of East Greenwich*, 239 Fed. Appx. 612, 613 (1st Cir. 2007) (holding that district court did not abuse its discretion in determining the evidence was insufficient to establish likelihood of success on the merits).

There are several fundamental problems with Plaintiffs' assertions, any one of which justifies denying the Motion for Preliminary Injunction.  First, as detailed in Defendants' contemporaneously filed Motion to Vacate the Creditor's Bill Judgment, the Order which purports to "award" the Ungars "ownership of PIF" is void and must be vacated by the Court under Rule 60(b)(4).  Second, the Court does not have subject matter jurisdiction to decide whether, as Plaintiffs claim, the PA, as opposed to PIF, is engaged in the actions to collect Orascom's debt to the PIF.  Finally, as a matter of law, any actions taken by Dr. Mustafa in

1118151.6

connection with PIF's efforts to collect its debt from Orascom were done in his capacity as the CEO of PIF, and he cannot be enjoined from taking such actions in the future, as Plaintiffs request, in his capacity as the Economic Advisor to the President of the PA. For each and all of these reasons, the Preliminary Injunction motion must be denied.

> **A.    The Creditor's Bill Judgment Is Void and Is Therefore Irrelevant to Plaintiffs' Likelihood of Success on the Merits**

The creditor's bill judgment, entered as a purported exercise of the Court's ancillary enforcement jurisdiction and pursuant to Rule 69(a) and Rhode Island General Law § 9-28-1, transferred to the Ungars (1) "all of the Palestinian Authority's ownership rights in the Palestine Investment Fund Company," and (2) "all rights, benefits and interests of the Palestinian Authority in all property, assets and credits, of any type, that are titled and/or owed to the . . . Palestine Investment Fund Company." Dkt. No. 381 at 2.

PIF, a separate juridical entity, incorporated in Ramallah in March 2003 under Palestinian Law; was not a party to the lawsuit giving rise to the $116 million default judgment; and, as the Court has acknowledged on more than one occasion, is not subject to the personal jurisdiction of the Court. Moreover, the Court did not have jurisdiction over the PA's stock certificates or "property, assets, or credits . . . titled and/or owed to the . . . Palestine Investment Fund Company" that it purported to transfer to the Ungars. Even more troubling, at the time of the creditor's bill judgment, PIF's assets were approximately $800 million, far in excess of the $116 million judgment. Exh. 9 (Ernst & Young Audited Financial Statement for PIF for Year Ending December 31, 2006) at 1 (showing assets of approximately $800 million).

For the reasons stated in the Memorandum supporting the PA's Rule 60(b)(4) motion, Dkt. No. 598, the creditor's bill judgment is void because it suffered from jurisdictional and due process defects. Under First Circuit precedent, parties are entitled to relief under Rule 60(b)(4)

"if the court that rendered judgment lacked jurisdiction or in circumstances in which the court's action amounts to a plain usurpation of power constituting a violation of due process." *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990); *Hoult v. Hoult*, 57 F.3d 1, 6 (1st Cir. 1995) (same). *See also Peacock v. Thomas*, 516 U.S. 349 (1996) (holding that a federal court may not exercise ancillary jurisdiction over a judgment-creditor's attempt to enforce a prior federal judgment against a third party as an "alter ego" of the judgment debtor); *Futura Dev. of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7, 10-12 (1st Cir. 1998) (same); *N. Atl. Distrib. v. Teamsters Local Union No. 430*, 497 F. Supp. 2d 315, 323 (D.R.I. 2007) (holding that a judgment was unenforceable for lack of due process where court imposing judgment lacked personal jurisdiction).

### B. The Court Does Not Have Ancillary Jurisdiction to Decide Whether the PIF Is an Alter Ego of the PA

Plaintiffs repeatedly assert that the PIF is an alter ego of the PA, and premise their request for relief on this purported fact. *See*, *e.g.*, Dkt. No. 588 at 2 ("Moreover, *the PA* via its Economic Advisor Mustafa, has brought legal actions in Ramallah, Amman and Cairo, *putatively in the name of the PIF*, seeking to prevent the Ungars from exercising their rights to the PIF under the creditor's bill judgment.") (emphasis added). It is only by blindly equating the PIF with the PA that the Plaintiffs then claim that, by virtue of their judgment against the PA, they are entitled to collect the debt owed to the PIF by Orascom. The Court, however, does not have ancillary jurisdiction to reach the question of whether the PIF is an alter ego of the PA. Thus, Plaintiffs' claim necessarily fails.

As Plaintiffs observe in their Motion, *see* Dkt. No. 588 at 8-9, a federal court has the ancillary enforcement jurisdiction necessary to "manage its proceedings, vindicate its authority, and effectuate its decrees." *U.S.I. Properties Corp. v. M.D. Construction Co.*, 230 F.3d 489, 496

1118151.6

(1st Cir. 2000). But "the enforcement proceeding must be a mere continuation of the prior proceeding and not an action based on new grounds." *Id.* at 497. Pursuant to the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349 (1996), when a party instead "asserts a postjudgment claim against a nonparty not arising out of the operative facts that produced the original judgment, an independent basis for federal jurisdiction must exist." *Sandlin v. Corporate Interiors, Inc.*, 972 F.2d 1212, 1216 (10th Cir. 1992).

Here, Plaintiffs' claim is not a mere continuation of their ATA suit against the PA and the PLO. Instead, they have asserted a post-judgment claim against the PIF, based on an alter ego theory that arises out of different operative facts.[5] As a result, an independent basis for federal jurisdiction must exist. Notably, this Court has already concluded that it does not have independent jurisdiction over the PIF and that the PIF is not before the Court. Exh. 1 at 5 ("I have limited jurisdiction because none of those entities are before this Court. The only jurisdiction I have is over the PA and the PLO…").

Under identical circumstances, at least two federal judges have found that they lacked ancillary jurisdiction over the PIF, and declined to decide whether the PIF is, in essence, the PA. *See Estate of Yaron Ungar v. Orascom Telecom Holding SAE*, 578 F. Supp. 2d 536 (S.D.N.Y. 2008) (holding that there was no ancillary subject matter jurisdiction over Orascom due to

---

[5] Even if Plaintiffs' claim does not present a true "alter ego" theory, it is sufficiently similar that the alter ego analysis still applies. *See Estate of Yaron Ungar v. Orascom Telecom Holding S.A.E.*, 578 F. Supp. 2d 536, 548 (S.D.N.Y. 2008) ("The fact of the matter is that the assets sought by Plaintiffs in this proceeding are monies owed to the PIF, not the PA. Plaintiffs' allegations continue to acknowledge -- as they must -- that these assets are 'nominally titled to' the PIF. As Judge Marrero noted, 'While Plaintiffs artfully attempt to diminish the significance of PIF's role in this action by describing its entitlement to the amounts due from Orascom as "nominal[],'' it is nevertheless an undisputed material allegation in Plaintiffs' complaint that the assets held and debts owed by Orascom at issue in the proceeding are in fact due to the PIF, not the PA.' *Such allegations require this Court to make a determination about the relationship between the PA and the PIF -- a determination that, for purposes of assessing ancillary enforcement jurisdiction under relevant precedent, is not unlike an alter-ego determination*.") (emphasis added) (citations omitted).

1118151.6

inability to resolve whether the PIF and the PA were the same entity); *Knox v. Orascom Telecom Holding S.A.E.*, 477 F. Supp. 2d 642 (S.D.N.Y. 2007) (same).  These courts held that enforcement of a judgment against the PIF, predicated on alter-ego and veil-piercing theories, falls outside the ancillary jurisdiction of the court.  *See*, *e.g.*, *Knox v. Orascom Telecom Holding S.A.E.*, 242 F.R.D. 251 (S.D.N.Y. 2007) (denying the plaintiffs' motion for reconsideration and emphasizing that "Plaintiffs' complaint requires the Court to address whether the PIF would be obligated to turn these funds over to the PA, which makes this action founded upon facts different from those underlying the ATA action, and makes it inappropriate for a federal court to assert ancillary enforcement jurisdiction.").[6]  Plaintiffs have provided no basis for the Court to depart from the sound analysis provided by these judges.  Accordingly, Plaintiffs' Motion must be denied.

### C. Plaintiffs Have Not Demonstrated That When Acting as the PIF's CEO, Dr. Mustafa Is Actually Wearing His PA "Hat"

Plaintiffs also repeatedly assert that Dr. Mustafa has taken certain actions to collect the debt Orascom owes PIF in his capacity as the Economic Advisor to the President of the PA, and that he therefore can be enjoined from taking such actions in the future under the terms of Rule 65.  However, even assuming *arguendo* that the Court has jurisdiction to enjoin Dr. Mustafa by virtue of his role as Economic Advisor to the President of the PA, such an injunction could not restrain Dr. Mustafa from acting in his role as CEO of PIF.[7]  Plaintiffs' request for injunctive

---

[6] *See also* Defendant's Memorandum in Support of Rule 60(b)(4) Motion for Relief from Creditor's Bill Judgment Regarding the Palestine Investment Fund, Dkt. No. 598 at 11-20 (further explaining the lack of ancillary enforcement jurisdiction over Plaintiffs' claim).

[7] Defendants do not in any way concede that Dr. Mustafa is an officer, director, or managing agent of the PA.  Such a determination is unnecessary, however, because there is no evidence that even if he had such a status that he acts on behalf of the PA in his role as CEO of the PIF.

1118151.6

relief thus improperly conflates Dr. Mustafa's two "hats" and assumes, without any evidence or authority, that because Dr. Mustafa wears both "hats" at different times, an injunction of the PA will enjoin Dr. Mustafa as CEO of the PIF. That assumption is incorrect.

The Supreme Court has made clear that officers and directors may wear two "hats" in different corporations. *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). According to this "time-honored common law rule," there is no "automatic attribution of the actions of dual officers and directors" to either corporate entity. *Bestfoods*, 524 U.S. at 69. Instead, "courts generally presume the officers and directors are wearing the appropriate hats at the appropriate times *unless there is evidence to the contrary*." *Seiko Epson Corp. v. Print-Rite Holding, Ltd.*, No. CV-01-500-BR, 2002 U.S. Dist. LEXIS 27427, at *58 (D. Oregon Apr. 30, 2002) (emphasis added) (citing *Bestfoods*, 524 U.S. at 69); *see also Frontier Communs. Corp. v. Barrett Paving Materials, Inc.*, No. 1:07-cv-00113-GZS, 2010 U.S. Dist. LEXIS 112404, at *23 (D. Me. Oct. 19, 2010); *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 604 F. Supp. 2d 325, 329 (D. Mass. 2009).[8]

This presumption places the burden on Plaintiffs to show that when Dr. Mustafa acts on behalf of the PIF, he is actually acting in his capacity as Economic Advisor to the President of the PA. *Am. Med. Sys., Inc.*, 604 F. Supp. 2d at 330. This they certainly have not done, nor will they be able to do so at the hearing on their motion.

Plaintiffs have employed attempts at clever phrasing to dodge this evidentiary hurdle. *See* Pltfs.' Mem. at 2 ("In the Cairo suit the PA, via Mustafa, seeks to force Orascom to transfer

---

[8] Though *Bestfoods* involved the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the courts have held that the Supreme Court's decision "enunciated a key, general corporate law principle" that has broad application outside the context of CERCLA. *Am. Med. Sys., Inc.*, 604 F. Supp. 2d at 329. *See also CCBN.com, Inc. v. Thomson Fin., Inc.*, 270 F. Supp. 2d 146, 151 (D. Mass. 2003) (rejecting argument that "Thomson Financial is liable under the doctrine of respondeat superior for the breach of fiduciary duty by its own employees and former executives who sat on" another company's board of directors).

1118151.6

its $45 million debt to the PIF…"); *id.* at 3 ("[O]n October 31, 2010, an Egyptian appellate court rejected Orascom's position and authorized the 'PIF' (i.e. PA minister Mustafa purporting to act in the name of the PIF), to collect the debt immediately."); *id.* ("Since Orascom is headquartered in Cairo, there is now nothing to prevent the PA/Mustafa from collecting the $45 million debt…"); *id.* at 7 ("[T]he PA, via Mustafa, has brought legal actions in Ramallah, Amman and Cairo, putatively on behalf of the PIF, seeking to prevent the Ungars from exercising their rights to the PIF under the creditor's bill judgment.").

But aside from word-play, Plaintiffs have simply proffered no *evidence* that Dr. Mustafa, when acting on behalf of the PIF, is at all times actually wearing his PA "hat."  Plaintiffs cite a single letter in which PA President Mahmoud Abbas purportedly "stated that he had tasked Mustafa with fighting the creditor's bill judgment." Dkt. No. 588 at 7.  But even a cursory glance at the letter, which is attached to Plaintiffs' Memorandum as Exhibit R, makes clear that President Abbas did no such thing.  All the letter demonstrates is that President Abbas conveyed to then-Secretary of State Condoleezza Rice that he would "ask" Dr. Mustafa "to follow up on this matter with U.S. Consul General in Jerusalem Mr. Jacob Walles."  *Id.* at Exh. R, p. 2. "Asking" Dr. Mustafa, in his role as CEO of the PIF, to follow up on what Mr. Abbas felt was a "serious crisis" facing the PIF, *id.* at 1, in no way demonstrates that President Abbas had "tasked Mustafa with fighting the creditor's bill judgment," let alone that he had  been tasked to do so in his capacity as a PA, as opposed to PIF, agent.

Proving that Dr. Mustafa actually acts on behalf of the PA when he purports to act on behalf of the PIF takes more than just repeatedly putting the words "the PA" and "Mustafa" together in close proximity in a legal brief.  *See* Dkt. No. 588 at 8 ("Thus, there is now nothing preventing the PA and Mustafa from collecting the $45 million…"); *id.* ("[O]nce the PA and

Mustafa seize the debt from Orascom…"); *id.* ("[I]f the PA and Mustafa are not prevented from seizing the funds from Orascom…").  Because Plaintiffs have failed to support their claim with any evidence, they cannot demonstrate any likelihood of success on the merits.

## III.  PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE BALANCE OF RELEVANT IMPOSITIONS WEIGHS IN THEIR FAVOR

Plaintiffs rely solely on an *ad hominem* attack to argue that the balance of relevant impositions tilts "entirely in the Ungars' favor," namely that the PA is allegedly "a scofflaw judgment debtor that stubbornly refuses to honor the judgment entered by the Court over six years ago." Dkt. No. 588 at 10.  Leaving the Plaintiffs' name calling aside, the mere fact that the PA has not paid the judgment is not relevant to the balance of harms.  As demonstrated in Part I above, Plaintiffs will actually suffer no harm if the motion for preliminary injunction is denied.  Moreover, Plaintiffs' current gambit to prejudice the PA is actually rather transparent:  if the requested preliminary injunction issues, Plaintiffs obviously intend to assert that any subsequent payment by Orascom to PIF of the debt at issue evidences a violation of the preliminary injunction by the PA which justifies the denial of the Defendants' pending Motion to Vacate the underlying merits judgment.  Thus, the balance of harms in fact favors the PA.

Moreover, the relief sought by Plaintiffs effectively attempts to require Orascom, a non-party to this action, to ignore an order issued by an Egyptian court.  Orascom has already been sanctioned by the same Egyptian court that has ordered it to pay its $45 million debt to the PIF, and Orascom could suffer additional sanctions if this Court prevents it from fulfilling its obligation in Egypt.  *See* Dkt. No. 588 at Exh. S.  This imposition, unlike Plaintiffs' irrelevant and non-substantive aspersions, could create significant financial liability for a party not before this Court.  Accordingly, the balance of relevant impositions favors the rejection of Plaintiffs' requested relief.

1118151.6

IV. **PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE PUBLIC HAS ANY INTEREST IN INTERFERING WITH A FOREIGN COURT'S JUDGMENT CONCERNING TWO FOREIGN ENTITIES THAT HAVE NO TIES TO THE U.S.**

Finally, Plaintiffs have not demonstrated that the public interest weighs in favor of their requested relief. *Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d at 11. Plaintiffs' claim on this factor is two-fold. First, they state that "any interference with the judgment of a federal court is against the public interest." Pltfs.' Mem. at 10. Second, they assert that "there is an extremely strong interest" in enforcing judgments entered pursuant to the ATA. *Id*. at 10-11. Neither of Plaintiffs' contentions is persuasive in the context of their present Motion. The PIF — the target of Plaintiffs' request for an injunction — is not "interfering" with Plaintiffs' judgment, and Plaintiffs have offered no evidence to demonstrate otherwise. Moreover, despite Plaintiffs' protestations to the contrary, the American public has no interest in the U.S. federal courts interfering with a judgment entered in an Egyptian court involving an Egyptian corporation's debt to a Palestinian third-party — especially where, as here, the Court has no jurisdiction over either company, and where the agreement giving rise to the debt was executed overseas.

V. **PLAINTIFFS SHOULD BE REQUIRED TO POST A BOND PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65(c)**

Despite requesting extraordinary relief that would negatively impact non-parties to the underlying action, Plaintiffs refuse to offer security as a condition of entering the preliminary injunction. *See* Dkt. No. 588 at 11. Plaintiffs attempt to justify this refusal by stating that there is no "likelihood of harm whatsoever to the PA" because "ownership of the PIF has already been adjudicated" and "the PA is indebted to the Ungars and the Ungars' judgment constitutes more than adequate security if any were required." *Id.*

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that

1118151.6

the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Essentially, the required security places a plaintiff on notice of "the maximum extent of its potential liability, since the amount of the bond is the limit of the damages the defendant can obtain for a wrongful injunction, . . . provided the plaintiff was acting in good faith."  *Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 21 (1st Cir. 2007) (citing *Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989)) (internal quotations omitted).  "A party is deemed to be wrongfully enjoined when it had a right all along to do what it was enjoined from doing, or to not do what the court ordered it to do."  *Sanchez v. Esso Std. Oil Co.*, Civil No. 08-2151 (JAF), 2010 U.S. Dist. LEXIS 9942, at *36 (D.P.R. Feb. 5, 2010) (internal citations and quotations omitted).

Plaintiffs again fail to acknowledge that their requested relief could have negative financial consequences for non-party Orascom which could face additional sanctions from an Egyptian court if it does not satisfy its debt to PIF as ordered.  Indeed, the case upon which Plaintiffs heavily rely in seeking this relief, *Iantosca v. Step Plan Services, Inc.*, required the debtor plaintiffs seeking the injunction to post a $400,000 bond to protect the insurers from the consequences of a delay in transferring settlement funds.  *Iantosca*, 604 F.3d at 28, 32. Accordingly, Plaintiffs should be required to post a bond pursuant to Rule 65(c) "in an amount that the court considers proper to pay the costs and damages sustained" by Orascom if it is later "found to have been wrongfully enjoined or restrained" in satisfying its debt to PIF.

## CONCLUSION

For the reasons set forth herein, the Court should deny Plaintiffs' motion and decline to enter a preliminary injunction.

1118151.6

Respectfully submitted,


Dated:  November 16, 2010                 /s/ Mark J. Rochon
                                          Mark J. Rochon (D.C. Bar #376042)
                                          Admitted *pro hac vice*
                                          Richard A. Hibey (D.C. Bar #74823)
                                          Admitted *pro hac vice*
                                          Brian A. Hill (D.C. Bar #456086)
                                          Admitted *pro hac vice*
                                          MILLER & CHEVALIER CHARTERED
                                          655 Fifteenth Street, N.W., Suite 900
                                          Washington, DC  20005-5701
                                          Tel. (202) 626-5800
                                          Fax. (202) 628-0858
                                          mrochon@milchev.com
                                          rhibey@milchev.com
                                          bhill@milchev.com

                                          Deming E. Sherman (#1138)
                                          EDWARDS ANGELL PALMER
                                          & DODGE LLP
                                          2800 Financial Plaza
                                          Providence, Rhode Island 02903
                                          Tel. (401) 274-9200
                                          Fax. (401) 276-6611
                                          dsherman@eapdlaw.com

                                          *Attorneys for the Palestinian Authority and*
                                          *the Palestine Liberation Organization*

1118151.6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 16th day of November 2010, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to counsel of record for all parties.

/s/ Mark J. Rochon