# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

               Plaintiffs – Judgment Creditors,

        v.                                                      Civ. No. 00-105L

THE PALESTINIAN AUTHORITY, et al.,

               Defendants – Judgment Debtors.

**REPLY IN FURTHER SUPPORT OF PLAINTIFFS-JUDGMENT CREDITORS'
URGENT MOTION FOR A TEMPORARY RESTRAINING ORDER
AND A PRELIMINARY INJUNCTION**

Plaintiffs-Judgment Creditors ("Ungars") respectfully submit this brief memorandum to reply to six specific claims made in the Opposition to Plaintiffs-Judgment Creditors' Urgent Motion for a Temporary Restraining Order and a Preliminary Injunction filed by Defendants-Judgment Debtors PA and PLO ("Defendants") (dkt. # 600).

1)      Defendants' claim that the Ungars are not entitled to injunctive relief because any harm they suffer could be remedied by the payment of money damages is the epitome of gall. Defendants have fought and interfered with the Ungars' attempts to enforce their judgment for the last six years. Indeed, a privilege log that Defendants were ordered by Magistrate Judge Martin to produce just a few days ago listing all written communications between the Defendants and persons claiming to represent the PIF relating to the instant case, the underlying 2004 judgment 2004 and the 2006 creditor's bill judgment contains <u>over 300 entries</u> – many of them from long *prior* to the filing of Defendants' motion to vacate. Exhibit A.

This log provides further shocking evidence of the extent of Defendants' efforts to interfere with the Ungars' judgment

2)    Defendants also misstate the nature of the PIF and its portfolio based on current self-serving descriptions purporting to be published in the name of the PIF.

But *prior* to the Ungars' enforcement proceedings against the PIF, the PIF openly identified the assets held by the PIF <u>as assets of the PA</u>. Thus, in an Annual Report published in 2004, the Chairman of the PIF stated:

> This first Annual Report of the Palestinian Investment Fund for fiscal year 2003 presents a full accounting and valuation **of the assets of the Palestinian Authority**.

Exhibit B at "Chairman's Statement" (emphasis added).

Notably, the PA's Orascom investments were expressly listed in that report. *Id*. at 45. Thus, by the PIF's own definition in its Annual Report, these Orascom investments are in fact "assets of the Palestinian Authority" and so subject to execution by the Ungars.

Likewise, the "About Us" page on the PIF's website – which was changed soon after the Ungars initiated their proceedings against Orascom – expressly stated that the PIF "provides responsible stewardship of the assets and holdings of the Palestine National Authority … All investment assets and commercial holdings of the PNA [i.e. the PA] were transferred to and consolidated under the management of the PIF." Exhibit C.

Thus, Defendants are blatantly misleading this Court about the ownership of the assets held by the PIF and the amenability of the debt owed by Orascom to execution by the Ungars.

3)    Defendants' claim that the Ungars can afford to have the Orascom debt seized by the PA because they have sufficient security in light of the funds currently restrained by the Israeli Treasury is the apogee of cynicism. As this Court previously noted, the Ungars will only

be able to reach these funds if they (a) prevail on the Defendants' appeal of the Jerusalem District Court decision finding the Ungars' 2004 judgment enforceable in Israel, **and** (b) prevail on their claim that the funds restrained are subject to execution (which the Defendants challenge). *See Ungar v. PA*, 715 F.Supp.2d 253, 258 (D.R.I. 2010) (discussing the hurdles that the Ungars would have to clear in order to ultimately execute against these funds).

For Defendants – who are actively fighting the Ungars' attempts to reach the Israeli funds – to come before this Court and point to those assets as sufficient security is gross bad-faith.

Defendants' argument that the Israeli funds are sufficient security is particularly galling in light of the fact that they moved the Jerusalem District Court for a stay of enforcement of the Ungars' judgment pending appeal on the grounds that they have strong chances on appeal:

> [Movants PA and PLO] assert that a stay of enforcement is justified … in light of the good chances of the appeal … The movants claim that the judgment is unusual and constitutes a first of its kind precedent in the case law of the courts in Israel for various reasons, and *inter alia* because at issue is a foreign judgment given in the absence of a defense which, they claim, imposes liability on a foreign political entity for acts of terror, and because of the high amount of damages awarded. The movants believe that declaring the foreign judgment enforceable has far reaching public ramifications on the State of Israel and its citizens and that the outcome of the judgment is not correct and not proper in the circumstances of the matter. Additionally, the movants reiterate their main arguments in the main case. In light of the above, the movants believe that there is a real and strong chance that the appeal will be granted and the foreign judgment will not be declared enforceable.

Exhibit D, internal exhibit 1, at ¶ 2 (emphasis added).

Since the Defendants argued to the Jerusalem District Court that "that there is a real and strong chance that the appeal will be granted and the [Ungars'] judgment will not be declared enforceable" in Israel – an outcome which would entirely extinguish the Ungars' ability to

collect their judgment in Israel – the Court should reject their claim that the funds being held by

the Israeli Treasury constitute sufficient security for the Ungars.

    4)    Defendants' claim that Orascom has no U.S. contacts (dkt. # 600 at 1) is false. In

their turnover proceeding against Orascom in the S.D.N.Y. (which was dismissed for lack of

subject-matter jurisdiction without reaching the issue of personal jurisdiction) the Ungars

presented proof that Orascom has extensive contacts with New York. *See* Exhibit E at 15-25.

Whether Orascom's New York contacts suffice for the exercise of personal jurisdiction has not

been litigated, much less decided, and is currently before a New York state court.

    Moreover, the Southern District  found the Ungars' claims against Orascom sufficiently

well-founded to grant their motion to issue a subpoena on a U.S. citizen living outside the United

States (the Chairman of Orascom) – a very rare remedy.

    That court's grounds for granting this unusual relief are highly salient here:

> In light of the arduous journey the Plaintiffs have endured, which
> has included numerous motions, the entry of a default judgment
> (subsequently affirmed by the First Circuit Court of Appeals), the
> registration of the default judgment in this District, and since then,
> multiple attempts to ascertain information about the assets of and
> debts owed to the Defendants, ultimately bringing the Plaintiffs
> before this Court almost six years after filing their initial cause of
> action, and almost ten years since the events giving rise to their
> cause of action occurred, I find that it is in the interest of justice to
> issue the subpoena compelling the testimony of the Respondent in
> an effort to establish that Orascom is subject to the personal
> jurisdiction of this Court. Given the apparent intent of the
> Defendants to evade the Rhode Island District Court's entry of
> default judgment, and the likelihood that Plaintiffs will never be
> able to satisfy the default judgment absent information of an
> elusive and amorphous judgment debtor, there exists a "compelling
> reason" to issue the subpoena for the testimony of the Respondent
> for the purposes of establishing the required minimum contacts for
> valid personal jurisdiction over Orascom. Such information, should
> it exist, possibly could enable the Plaintiffs to seize the debt

> Orascom owes to the Defendants and to satisfy the judgment they are owed as a matter of law. The question of whether Orascom is in fact subject to the personal jurisdiction of this Court must be resubmitted to Judge McMahon for her reconsideration … after the deposition of the Respondent is held pursuant to this order.

*Ungar v. Palestinian Authority*, 412 F.Supp.2d 328, 334 (S.D.N.Y. 2006) (emphasis added).

In the event, the court dismissed the turnover proceeding for lack of subject-matter jurisdiction without resolving the question of personal jurisdiction. *Ungar v. Orascom Telecom Holding S.A.E.*, 578 F.Supp.2d 536, 552 (S.D.N.Y. 2008) ("Because the Court finds subject matter jurisdiction is lacking, it is unnecessary to address the other arguments raised in the briefs, including arguments pertaining to personal jurisdiction. Accordingly, Plaintiffs' motion for additional discovery on personal jurisdiction is DENIED.").

Upon dismissing the Ungars' proceeding for lack of subject-matter jurisdiction the court noted that the Ungars were free to initiate a proceedings in state court. *Id*. at 551-552 ("[T]his Court's decision does not leave Plaintiffs without recourse to seek satisfaction of the default judgment. The operative deficiency here is only one of federal jurisdiction ... a dismissal for want of subject matter jurisdiction is not a decision on the merits. Consequently, upon such a dismissal the plaintiff is free to institute the suit anew in a jurisdiction or under circumstances supporting jurisdiction." (internal quotations, citations and ellipses omitted).

Thus, the issue of personal jurisdiction over Orascom is now pending before a New York State court and Defendants' swaggeringly presumptuous prediction that the Ungars will lose on

5

that point ("it is only a matter of time before the New York State court dismisses the Plaintiffs action against Orascom for lack of personal jurisdiction," dkt. # 600 at 9-10) is rank speculation.[1]

Thus, the Ungars' chances of success against Orascom are at least as good as the judgment creditors in *Iantosca v. Step Plan Services, Inc.*, 604 F.3d 24 (1st Cir. 2010).

In any event, irrespective of whether they ultimately demonstrate personal jurisdiction over Orascom, the Ungars will definitely suffer harm absent a preliminary injunction because they own the PIF, and the PA is trying to seize a debt from Orascom that should rightfully be going to the Ungars as the sole shareholders of the PIF.

5)    Defendants' claim that Orascom's debt is not currently restrained by a New York execution is also false. If the execution "has expired and is void" as Defendants' claim (dkt. # 600 at 6) Orascom would not have "moved to vacate it" – as Defendants admit it has. *Id*.

6)    Defendants also oppose the instant motion on the ground that the creditor's bill judgment is not valid, incorporating by reference the arguments contained in their newly-filed motion to vacate the creditor's bill judgment.

---

[1] Defendants' claim that "Plaintiffs have admitted, and Judge Kessler in the District Court for the District of Columbia has expressly found '[t]here is absolutely no dispute that Orascom has no contacts whatsoever with the District of Columbia or the United States'" (dkt. # 600 at 9) is blatantly false.

The Ungars never "admitted" nor did Judge Kessler find any such thing. In the D.C. proceeding Orascom moved to dismiss the Ungars' turnover enforcement proceedings for lack of personal jurisdiction, asserting that it had no contacts with the United States whatsoever. In response, the Ungars argued (based on decisions of the D.C. Circuit holding that foreign entities with no contacts with the United States are not entitled to Due Process protections) that by asserting it had no contacts with the United States whatsoever, Orascom had effectively waived any Due Process defenses to personal jurisdiction, and thereby "pled itself into court." In other words, the Ungars made no factual argument at all in the D.C. proceeding about Orascom's jurisdictional contacts, and merely argued – as a matter of law and of pleading burdens – that Orascom had waived its constitutional personal jurisdiction argument by disclaiming any contacts at all with the United States. *See* Exhibits F, G. The D.C. court rejected the Ungars' waiver argument, but it did not, and could not have, made any ruling as to whether in fact Orascom has any contacts with the United States, since that factual issue was never litigated.

If the Court is inclined to even consider this argument prior to its disposition of the motion to vacate, the creditor's bill judgment (which the Ungars respectfully believe it should not), the Ungars respectfully refer the Court to pages 10-42 of the memorandum filed by the Ungars in their enforcement proceedings in Connecticut (Exhibit H), which addresses and refutes the arguments made by Defendants in their motion to vacate the creditor's bill judgment. As shown in the Ungars' Connecticut papers (a) there is a vast body of federal case law holding unanimously that, contrary to the Defendants' arguments, a corporation has no right or standing to participate in a proceeding regarding the disposition of its own shares, and (b) it is well established that a corporation is in privity with its owners and are therefore collaterally estopped by judgments entered against their owners. Thus, even if the PIF had standing to participate in the creditor's bill proceeding (which it did not), it was fully represented in that proceeding by its privy, the PA, which was at that time the sole owner of the PIF. *See* Exhibit H.

The Ungars' Connecticut papers also respond to Defendants' claim regarding the value of the PIF, and their various procedural arguments. *Id*.

The only argument raised by Defendants in their motion not addressed in the Ungars' Connecticut papers is their claim that the creditor's bill judgment exceeded the Court's ancillary subject-matter jurisdiction as delineated in *Peacock v. Thomas*, 516 U.S. 349 (1996). This argument is frivolous. *Peacock* established a simple bright-line rule: As long as the judgment creditor is claiming only that the asset at issue belongs to the judgment debtor and not that the third party is liable for the judgment, the court has ancillary jurisdiction. *See e.g. Epperson v. Entertainment Express,* 242 F.3d 100, 103-107 (2nd Cir. 2001) (explaining *Peacock*); *UFCW Local 174 Commercial Health Care Fund v. Homestead Meadows Foods Corp.*, 425 F.Supp.2d 392, 393 (S.D.N.Y.2005) ("Because the plaintiffs seek to collect a judgment issued by this Court

by tracing the judgment debtor's assets into the hands of a third party, there is subject matter jurisdiction over this action.").[2]

The creditor's bill judgment did not find PIF liable for the judgment, or that any specific asset titled to the PIF belongs to the PA. It merely assigned the PA's ownership of the PIF, and any rights the PA has to property titled to the PIF, whatever those may be, (without specifying that any specific asset belong to the PA rather than the PIF) to the Ungars.

Accordingly, the creditor's bill judgment is entirely proper under *Peacock*.[3]

**WHEREFORE** the instant motion should be granted.

---

[2] *See also Aaron v. Mattikow*, 225 F.R.D. 407, 415 (E.D.N.Y. 2004) (holding that ancillary action by judgment creditor to reach stock titled to judgment debtor's wife "is proper under both *Peacock* and *Epperson*, for this Court's exercise of ancillary jurisdiction" and denying motion to dismiss for lack of subject-matter jurisdiction); *Securities & Exchange Comm'n v. Antar,* 120 F. Supp. 2d 431, 440 (D.N.J. 2000) (holding a proceeding seeking "to reach assets belonging to the judgment debtor but found in the hands of" third parties "is exactly the sort of claim approved in *Peacock*"); *Merrell v. Miller*, 1998 WL 329264, at * 2 (E.D. Va. 1998) (permitting claim to proceed on basis of *Peacock* since "plaintiff does not allege that he should be able to satisfy his judgments by reaching Ms. Deal's assets or Ms. Locher's assets; rather, he alleges that the assets in question rightly belong to defendant Miller.").

[3] Defendants' attempt to rely on the decision of the S.D.N.Y. dismissing the Ungars' proceeding against Orascom for lack of ancillary subject-matter under *Peacock* (and the related decision in *Knox v. Orascom Telecom Holding S.A.E.*, 477 F. Supp. 2d 642 (S.D.N.Y. 2007)) is unavailing for a very simple, dispositive reason: in those proceedings the Ungars (and the Knoxes) sought to have the S.D.N.Y. determine whether a specific asset titled to the PIF – Orascom's debt – was owned by the PA. The S.D.N.Y. found that making such a determination would require a veil-piercing or an alter ego finding, which are not permitted under *Peacock*. By contrast, the creditor's bill judgment entered by this Court transferred to the Ungars an asset titled to the PA – i.e. the PA's ownership of the PIF – as well as any rights the PA has in assets titled to the PIF – without any finding that any specific asset titled to the PIF belongs to the PA. Thus, the S.D.N.Y. cited by the Defendants are completely inapposite.

Dated: November 18, 2010

Plaintiffs-Judgment Creditors,
by their Attorneys,


/s/ David J. Strachman
David J. Strachman #4404
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com


Max Wistow #0330
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on November 18, 2010, I filed this memorandum via ECF

which served the following counsel of record:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701


/s/ David J. Strachman

9