UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____

|  |  |  |
|---|---|---|
| THE ESTATE OF YARON UNGAR, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 00-105L |
| | ) | |
| THE PALESTINIAN AUTHORITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____)

**DEFENDANT THE PALESTINIAN AUTHORITY'S REPLY
IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ANSWERS TO
DEFENDANT'S INTERROGATORY NOS. 19-21 AND RESPONSES TO
DEFENDANT'S REQUEST FOR PRODUCTION NOS. 23, 25-26 AND 29-35**

Defendant The Palestinian Authority's ("PA's") Motion to Compel Answers to

Defendant's Interrogatory Nos. 19-21 and Responses to Request Nos. 23, 25-26 and 29-35

demonstrated that Plaintiffs lack a reasonable basis to withhold from disclosure the identity of

their hearing witnesses, their hearing exhibits and expert disclosures.  Whether Rule 26 governs

these disclosures or Plaintiffs are required to produce this information in response to Defendant's

written discovery requests, Plaintiffs have no excuse for delaying the production of these

materials.  Indeed, Plaintiffs' recent identification of ten expert witnesses and disclosure of six

expert reports no more than a week before the close of discovery, combined with Plaintiffs'

refusal to produce nine of their ten experts for deposition, reveals that their motivation for

sandbagging the Defendant on its requests was to avoid having to provide meaningful discovery

before the close of the discovery period.

Defendant's Motion also demonstrated that it is entitled to receive discovery relating to

whether the amount of the default judgment would withstand adversarial testing.  Indeed,

1117830.4

contrary to Plaintiffs' position, this Court's August 18, 2010 Order explicitly allows discovery on this very topic.

Finally, Plaintiffs cannot escape having to produce the non-privileged communications between Plaintiffs' counsel and their 2002 damages hearing experts listed on their privilege log based on their theory that Defendants have "no need" for them. Plaintiffs have stated in their response to Interrogatory 19 that they intend to rely on the opinions Dr. Friedman and Professor Ziederman provided at the July 2002 damages hearing in arguing that the amount of the default judgment would withstand adversarial testing. So long as Plaintiffs intend to rely on these opinions, Defendants are entitled to discover relevant information and documents relating to those opinions.

Because of the time-sensitive nature of these issues and the prejudice that Defendant will suffer absent a quick ruling, the PA hereby waives its right to oral argument on this issue and respectfully requests that the Court expedite consideration of this motion and enter an order requiring Plaintiffs to produce responsive documents and fully responsive interrogatory answers forthwith. The only other equitable result would be to exclude from evidence at the January hearing any witnesses, testimony or documents not adequately disclosed by Plaintiffs prior to the close of discovery. Defendants, of course, reserve the right to request such relief in an appropriate motion.

## RECENT DEVELOPMENTS

Since the filing of the instant motion on October 22 and Plaintiffs' Opposition on November 8, 2010, Plaintiffs have provided some, but not all, of the discovery requested in this motion. Because the provision of this material is relevant to the pending motion, Defendant briefly summarizes here the recent procedural and disclosure history.

2

On October 25, Plaintiffs noticed the depositions of four of their own expert witnesses (Ofer Saad, Daniel Reisner, Roni Shaked and Shlomo Politis). *See* Exhs. 1-4. Plaintiffs subsequently cancelled all but one of these depositions (Ofer Saad). Exh. 5. Defendants then noticed the depositions of the other three experts, but Plaintiffs indicated that the experts would not appear. Exh. 6.

On November 12, 2010, just seven days before the close of discovery, Plaintiffs identified six additional expert witnesses (Barry Rubin, Matthew Levitt, Lone Thanning, Allan Brenman, Boaz Shnoor and Emanuel Gross), and served two expert "reports," one of which (Dr. Thanning's) bore no relation to this case. *See* Exh. 7. Plaintiffs claimed that they were not providing this information "pursuant to Rule 26," but instead in response to Defendants' interrogatories. *Id.* at 1. Despite Plaintiffs' late production of this information, Defendants immediately responded and offered to attempt to cure the prejudice caused by Plaintiffs' late disclosure if Plaintiffs agreed to (1) produce all of their experts' reports by noon on Monday, November 15, and (2) produce all of their experts for deposition before November 19. *See* Exh. 8. Plaintiffs did not respond to this offer, and instead produced a relevant report from Dr. Thanning on November 13, and two additional expert reports (from Ofer Saad and Matthew Levitt) prior to the close of business on November 15, without stating whether they intended to serve expert reports from the other six experts.

At the end of the business day on November 15, Defendants again asked Plaintiffs to immediately comply with their obligations to respond to Defendants' Interrogatories. *See* Exh. 9. Defendants also served deposition notices for the six additional experts that Plaintiffs identified on November 12. *Id.* Plaintiffs still refused to answer Defendants' requests, but produced two more expert reports (from Daniel Reisner and Barry Rubin) on the evening of

3

November 15.  *See* Exh. 10-11.  On November 16, Defendants emailed again asking whether the six experts noticed for deposition would attend their depositions as noticed.  *See* Exh. 12. Plaintiffs finally responded to Defendants' queries with a one-sentence email stating that the expert witnesses would not be appearing and that Plaintiffs intended to file a motion for protective order.  *See* Exh. 13.  As of the date of this filing on the day before the close of discovery, no expert reports have been served for Roni Shaked, Shlomo Politis, Boaz Shnoor or Emanuel Gross.

## ARGUMENT

**I.**     **PLAINTIFFS SHOULD BE COMPELLED TO ANSWER INTERROGATORIES AND PRODUCE DOCUMENTS IDENTIFYING THEIR HEARING WITNESSES, EXPERT OPINIONS, AND HEARING EXHIBITS FORTHWITH**

Plaintiffs initially claim that Defendant's discovery requests seeking Plaintiffs' expert disclosures, witness list and hearing exhibits (Interrogatory Nos. 19-20, Request No. 23) impermissibly attempt to modify this Court's June 1, 2010 scheduling order (Dkt. No. 489), which states that the parties must file pre-trial memoranda containing the identity of hearing witnesses, experts and exhibits with the Court on or before December 17, 2010.  Dkt. No. 587 at 2.  Plaintiffs' argument is a *non sequitur*.  The Court's June 1, 2010 order set a period for the parties to engage in pre-hearing "discovery."  Dkt. No. 489.  The order also set a December 17, 2010 deadline for the parties to file pre-trial memoranda with the Court, which memoranda are required to include witness and exhibit lists and identification of experts.  *Id.*  However, the mere fact that the Court has ordered the parties to disclose to the Court the identities of their hearing witnesses, experts and exhibits by a date certain, does not demonstrate that the Court has precluded the parties from discovering the identities of hearing witnesses, experts and exhibits from one another prior to that date.

Indeed, the deadline for filing disclosures of witnesses and exhibits with the Court is approximately one month before the hearing, which is the same time that such materials would ordinarily be required to be filed under Rule 26(a)(3). *See* Fed. R. Civ. P. 26(a)(3) (requiring witness lists, deposition designations and exhibit lists to be filed "at least 30 days before trial"). But the mere fact that Rule 26(a)(3) ordinarily requires such disclosures to be filed with the Court shortly before trial does not make the content of such disclosures undiscoverable by the parties prior to that date. To the contrary, Rule 26(a)(1) and (a)(2) explicitly require such disclosures to be made to opposing parties prior to the date Rule 26(a)(3) requires such disclosures to be filed with the Court.

Moreover, and as noted in our opening brief, Plaintiffs' contention that the Court's Order bars discovery of the identity of their witnesses, experts and documents prior to December 17 is inconsistent with the fact that Plaintiffs have already sought, and received, discovery of Defendants' anticipated hearing witnesses and exhibits in their own discovery requests. *See* Dkt. No. 572 at 22 (citing *id.* Exh. 5 at 4-7 & Exh. 6 at 5-6). Thus, Plaintiffs own conduct in taking discovery from Defendants is consistent with Defendant's position (and that of normal civil discovery) that while the Court's scheduling order sets the final date by which the parties must disclose witnesses and exhibits to the Court, it does not preclude the parties from seeking and receiving this information from one another during the pre-hearing discovery period.

Plaintiffs also argue that Rule 26(a)(2) does not technically apply to the discovery period prescribed by the Court because the upcoming hearing is a "motion hearing" rather than a "trial." Dkt. No. 587 at 3. This is a red herring. Defendant is not seeking in the instant motion to compel compliance with Rule 26(a)(2). Rather, Defendant is seeking to compel answers to its outstanding interrogatories which are long overdue. Thus, as Defendant noted in its opening

5

brief, the outcome of this motion does not turn on whether or not Rule 26(a)(2) technically applies.  Dkt. No. 572 at 24.  For similar reasons, the fact that the parties have not made Rule 26(a)(1) initial disclosures is irrelevant to the instant issue of whether Plaintiffs should be required to answer the PA's outstanding interrogatories and document requests.[1]

Plaintiffs' untenable argument that they have no duty to disclose their witnesses, experts, or exhibits prior to December 17 is further undercut by their concession that they have a "duty to supplement their responses to the PA's discovery requests as responses become available."  Dkt. No. 587 at 2.  Such supplementation would only be useful and non-prejudicial to Defendants, however, if it occurred sufficiently in advance of the November 19, 2010 discovery deadline for Defendants to be able to conduct meaningful discovery.  Plaintiffs have obviously delayed providing any such "supplement[ation]" in order to "run out the clock" on the discovery period.

Finally, it is worth noting that, as described above, notwithstanding Plaintiffs' assertion that Rule 26(a)(2) does not apply, they have, as of the date of this filing, nevertheless served Defendants with six expert reports, and indicated that such reports should be treated as supplements to their prior response to Interrogatory 20.  However, Plaintiffs have also disclosed by name four other experts without providing reports for such persons.  Accordingly, at this point, Defendants do not have the information responsive to Interrogatory 20 for those four persons.  Moreover, Plaintiffs at this point have identified no hearing witnesses other than their ten experts, and have produced no documents they intend to use as hearing exhibits.  Thus, with

---

[1] In any event, Plaintiffs have not been prejudiced by Defendants' failure to make Rule 26(a)(1) initial disclosures because they have already learned the identity of Defendants' hearing witnesses and hearing exhibits through Defendants' responses to Plaintiffs' Interrogatory and Document Request which sought such information.  *See* Dkt. No. 572 at 22 (citing *id.* Exh. 5 at 4-7 & Exh. 6 at 5-6).  And, as Plaintiffs themselves have noted, Dkt. No. 587 at 2 (citing *id.* Exh. A), Defendants have continued to supplement those disclosures as required by Rule 26(e).  *See also* Exh. 14 at 9 -10.

only one day left in the discovery period, Defendants do not know if Plaintiffs will call any

witnesses beyond the ten experts they have disclosed or what exhibits, if any, Plaintiffs may

offer at the January hearing.  Accordingly, the Court should immediately compel Plaintiffs to

provide a complete answer to Interrogatories 19 and 20 and Document Request 23 forthwith.

Any further delay will obviously prejudice Defendants in their preparation of their December 17

pre-hearing memoranda and their case for the January 18 hearing.

## II.   DEFENDANT MAY TAKE DISCOVERY RELATING TO WHETHER THE DEFAULT JUDGMENT WOULD WITHSTAND ADVERSARIAL TESTING

In response to Plaintiffs' Opposition concerning discovery relating to whether the default

judgment would withstand adversarial testing, Defendant will not address Plaintiffs' arguments

point-by-point, but instead respectfully submits that it has become apparent that the parties need

the Court to address two important issues, the resolution of which will be essential to the parties'

remaining discovery efforts in this matter, to the hearing scheduled for January 18, 2011, and,

ultimately, to the Court's determination of Defendants' Rule 60(b)(6) motion to vacate the

default judgment against them.

The first issue is simply whether Defendants are allowed to demonstrate that the amount

of damages previously awarded to Plaintiffs would not withstand adversarial testing.  Based on

the First Circuit's March 25, 2010 decision in this matter and this Court's August 18, 2010 Order

explicitly granting discovery on this very topic, Defendant believes the answer to this question

must be yes.  If Defendant's belief on this first point proves to be true, the second issue then

concerns the nature of the factual record on which Defendants may challenge the damages award

— more specifically, whether, as Plaintiffs urge, the factual and disclosure record must be frozen

in time as of the date the Court entered judgment, or whether additional factual development is

warranted, including discovery of the documentary bases for Plaintiffs' damages claims.

First, there can be little doubt that Defendants should be permitted to challenge the amount of the $116 million judgment entered against them.  In its March 25, 2010 decision, the First Circuit generally concluded that a Rule 60(b)(6) determination requires "a holistic appraisal of the circumstances." *Ungar v. Palestine Liberation Org*, 599 F.3d 79, 84 (1st Cir. 2010).  The First Circuit then laid out the parties' "substantial dispute" about what factors should be considered as part of that appraisal, including Defendants' view that "the amount of the judgment [would be] unlikely to withstand adversarial testing." *Id.* at 86.  While declining to decide whether any of Defendants' arguments would "ultimately carry the day," the Court of Appeals found that they were "substantial." *Id.*  And it ultimately held that Defendants' "asseverational array deserves full-throated consideration." *Id.* at 86-87.  In reaching its decision, the First Circuit did not limit this Court's consideration of Defendants' Rule 60(b)(6) motion to any particular factors (for example, their merit-based defenses), nor did it preclude Defendants from advancing any of the factors presented in its "asseverational array," which specifically included the amount of the judgment. *Id.* at 86   Plaintiffs' argument — that Defendants should be precluded from raising one factor, the amount of judgment, out of many — attempts to impose the very type of "hard-and-fast rule[]" that the Court of Appeals found to be "[in]compatible with Rule 60(b)(6) determinations." *Id.* at 84.

Moreover, Plaintiffs premise their arguments on this issue on the fact that there was appellate litigation on the amount of damages after the damages hearing had occurred.  However, as the First Circuit noted, the question now is whether the amount of damages would have withstood "adversarial testing" at a contested damages hearing.[2]

---

[2] Plaintiffs also cite a string of cases for the proposition that "Rule 60(b) may not be used to relitigate issues already decided in the underlying case or on appeal." Dkt. No. 587 at 2.  None of those cases involves the unique posture of this matter:  a motion to vacate the entry of a default judgment, where,

(footnote continued on next page)

Assuming that Defendants should be permitted to challenge the amount of damages, this raises the second issue requiring the Court's attention:  whether the factual record on damages must be frozen in time as of the date the Court entered judgment on July 12, 2004, or whether additional factual development is warranted.  *See* Dkt. No. 587 at 9-10; Plfs.' Objection to Defendants' Interrogatory No. 21 (objecting "to the extent that [the interrogatory] seeks information relating to any events or circumstances subsequent to July 13, 2004.  As a matter of law, the propriety of the damages award must be measured at the time that judgment was entered, and subsequent events or circumstances affecting (for better or for worse) plaintiffs' actual or projected damages at the time that judgment entered are irrelevant.").  Should the Court permit Defendants to challenge the amount of damages, they agree to do so based on the *factual* record before the Court at the time it entered judgment.  That being said, Defendant wants to make clear that it intends to subject the "frozen" factual record to adversarial testing — which includes the development and use of expert opinions and testimony.  Plaintiffs do not contest the fact that the documentary materials sought by this motion are relevant to expert testimony

---

(footnote continued from previous page)

necessarily, the amount of damages was not litigated *by both parties on the merits at a contested damages hearing*.  *See*, *e.g.*, *Dasey v. Massachusetts Dept. of State Police*, 111 Fed. Appx. 620 (1st Cir. 2004) (holding that plaintiff could not use Rule 60(b) to relitigate issues decided on a previous appeal concerning the entry of summary judgment); *Geo. P. Reintjes Co., Inc. v. Riley Stoker Corp.*, 71 F.3d 44, 45 (1st Cir. 1995) (involving evidence discovered after the parties' arbitration and settlement agreement); *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 60 (2d Cir. 1984) (holding that defendant could not relitigate the applicability of certain time limits); *United States Funds v. Wylie*, 349 B.R. 204 (9th Cir. 2006) (affirming bankruptcy court's denial of motion for reconsideration of an order "sustaining an objection to its proof of claim"); *Standard Quimica De Venezuela v. Central Hispano Intern., Inc.*, 189 F.R.D. 202, 205 n.4 (D.P.R. 1999) (denying defendants' motion for reconsideration on the issue of *forum non conveniens*); *Gibson v. Commissioner of Mental Health*, No. 04-civ-4350, 2006 U.S. Dist. LEXIS 53876, at *7 (S.D.N.Y. Aug. 1, 2006) (rejecting plaintiff's attempt to provide "an expanded discussion of certain arguments he raised at the motion to dismiss stage"); *Batac Dev. Corp. v. B&R Consultants, Inc.*, No. 98-civ-721, 2000 U.S. Dist. LEXIS 3695 (S.D.N.Y. Mar. 16, 2000) (involving defendant's motion challenging summary judgment); *Nutter v. Wefald*, 885 F. Supp. 1445, 1450 (D. Kans. 1995) (same).

Defendant seeks to admit from its psychiatrist Dr. Ryan and its pathologist Dr. Baden. *See* Dkt. No. 572 at 32-33.

Indeed, Plaintiffs themselves have recently disclosed expert reports from their own mental heath expert, Allan Brenman, who testified at the damages hearing in 2002, and their own pathologist, Lone Thanning. *See* Exh. 15-16. Although this disclosure was made subject to Plaintiffs' pending objections and relevance, *see* Exh. 7, Plaintiffs are nevertheless reserving the right to call Dr. Brenman and Dr. Thanning at the January hearing. Thus, notwithstanding their position on this motion, Plaintiffs are clearly preparing to do more than just rely on the previous evidence at the January hearing. Defendants should be afforded the same opportunity.

In fact, it appears that, in preparing her report, at least one of the Plaintiffs' experts was able to consider materials that Plaintiffs only produced to Defendants *today*. *See* Exh. 16 at 1 (listing as the fifth item considered by Dr. Thanning an "Israeli Military Court Verdict against Abdel Rahman Ismail Abdel Rahman Ghnaimat (which discusses the Ungar shooting under section i., eighth charge)"). That "Israeli Military Court Verdict" was first produced to Defendants on the afternoon of this filing even though it is responsive to the document requests at issue, and was obviously provided to the Plaintiffs' own expert witness some time ago. Dr. Thanning has also considered "Additional Statements by Abdel Rahman Ghnaimat," *id.*, and defense counsel cannot tell from that description whether they have now those materials or not. Civil discovery is not supposed to allow a party to hide the ball in this fashion, and for that reason as well, Plaintiffs should be immediately compelled to produce all documents relevant to the damages they have allegedly sustained so Defendant's own experts can consider those materials, and Defendant's counsel can effectively prepare to cross-examine Plaintiffs' experts.

Accordingly, Plaintiffs should be compelled to answer Interrogatory No. 21 and produce all documents responsive to Request Nos. 25-26 and 29-35 forthwith.

**III.    PLAINTIFFS SHOULD BE COMPELLED TO PRODUCE COMMUNICATIONS BETWEEN PLAINTIFFS' COUNSEL AND THEIR EXPERTS BECAUSE SUCH DOCUMENTS ARE NOT PRIVILEGED OR PROTECTED**

Plaintiffs argue that Defendants have "no need" for Documents 18 through 25 listed on Plaintiffs' Privilege Log because Dr. Friedman and Professor Ziederman will not be testifying at the January 2011 hearing, yet Plaintiffs have already stated in their answer to Interrogatory 21 that they intend to rely upon the testimony of these individuals from the 2002 damages hearing in arguing that the amount of the default judgment would withstand adversarial testing.  Because Plaintiffs have stated that they intend to rely on their testimony, then the sought-after information is both discoverable and important to Defendants in arguing that the amount of the default judgment would not withstand adversarial testing.

Moreover, though Plaintiffs now state without specification that "some" of the materials at issue contain "attorney opinion work product," *see* Dkt. No. 587 at 10, they cannot escape the fact that information and documents concerning an expert's "testimony," as document numbers 18 and 22-25 are described, are particularly relevant to the formation of an expert's opinion and therefore discoverable under Rules 26(a) and 26(b).  *See Galvin v. Pepe*, Civil No. 09-cv-104-PB, 2010 U.S. Dist. LEXIS 92442 (D.N.H. Aug. 5, 2010) (granting motion to compel correspondence between attorney and expert witness, including correspondence that constitutes opinion work product).  Indeed, the more recent cases cited by Defendant reflect the growing trend of courts requiring disclosure of all materials shared with experts by counsel.  *Compare* Dkt. No. 572 at 37-38 *with* Dkt. No. 587 at 10.

Accordingly, because these documents are not protected from disclosure by the attorney-client privilege or the work product doctrine, Plaintiffs should be compelled to produce them to Defendant.

## IV.    DEFENDANT WAIVES ITS RIGHT TO ORAL ARGUMENT IN ORDER TO EXPEDITE CONSIDERATION OF ITS MOTION

Because the November 19, 2010 discovery deadline falls tomorrow, Defendant hereby waives its previously requested oral argument pursuant to Local Rule of Civil Procedure 7(e). Instead, Defendant respectfully requests that this Court expedite consideration of this Motion and rule immediately on the papers.  Defendant also respectfully requests that, if its Motion to Compel is granted, the Court order the Plaintiffs to provide the responsive documents and fully responsive interrogatory responses forthwith so as to minimize the obvious prejudice Defendant will suffer from Plaintiffs' late production of this material.

Respectfully submitted,

Dated:  November 18, 2010                      /s/ Mark J. Rochon
                                               Mark J. Rochon (D.C. Bar #376042)
                                               Admitted *pro hac vice*
                                               Richard A. Hibey (D.C. Bar #74823)
                                               Admitted *pro hac vice*
                                               Brian A. Hill (D.C. Bar #456086)
                                               Admitted *pro hac vice*
                                               MILLER & CHEVALIER CHARTERED
                                               655 Fifteenth Street, N.W., Suite 900
                                               Washington, DC  20005-5701
                                               Tel. (202) 626-5800
                                               Fax. (202) 628-0858
                                               mrochon@milchev.com
                                               rhibey@milchev.com
                                               bhill@milchev.com

                                               Deming E. Sherman (#1138)
                                               EDWARDS ANGELL PALMER
                                               & DODGE LLP
                                               2800 Financial Plaza

Providence, Rhode Island 02903
Tel. (401) 274-9200
Fax. (401) 276-6611
dsherman@eapdlaw.com

*Attorneys for the Palestinian Authority and*
*the Palestine Liberation Organization*

13

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 18th day of November, 2010, a true and genuine copy

of the foregoing was filed by ECF, which will automatically send notification and a copy of such

filing to:

David J. Strachman
McIntyre, Tate & Lynch, LLP
321 South Main Street, Suite 400
Providence, RI  02903
djs@mtlhlaw.com

Max Wistow
Wistow and Barylick Incorporated
61 Weybosset Street
Providence, RI 02903
mwistow@wistbar.com

*Attorneys for Plaintiffs*


/s/ Mark J. Rochon