UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE ESTATE OF YARON UNGAR, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 00-105L |
| | ) | |
| THE PALESTINIAN AUTHORITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS-JUDGMENT
CREDITORS' MOTION TO STRIKE DEFENDANTS' OBJECTIONS TO AND
COMPEL COMPLIANCE WITH CERTAIN REQUESTS CONTAINED IN
PLAINTIFFS-JUDGMENT CREDITORS' THIRD REQUEST FOR PRODUCTION**

The Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") (collectively, "Defendants"), by and through counsel, respectfully submit this Opposition to Plaintiffs-Judgment Creditors' Motion to Strike Defendants' Objections to and Compel Compliance with Certain Requests Contained in Plaintiffs-Judgment Creditors' Third Request for Production (Dkt. No. 584) ("Motion to Strike and Compel").

**INTRODUCTION AND PROCEDURAL HISTORY**

This Motion to Strike and Compel is the culmination of Plaintiffs' efforts to convince this Court, without basis, that Defendants are unwilling, or inadequately prepared to engage in the discovery process. The Plaintiffs' discovery efforts, since the inception of the limited pre-hearing discovery period set by this Court, have been designed not to get information in preparation for the upcoming hearing, but to consume the Defendants time with wild goose chases and discovery litigation.

1119481.1

In this respect, it is notable that Plaintiffs do not even bother to inform the Court of the background relevant to their Motion to Strike and Compel (*see* Dkt. No. 584 at 1-2), but instead launch straight into portraying Defendants' extensive efforts to respond to the **205** requests contained in Plaintiffs' Third Request for Production as consisting of nothing but "boiler-plate objections," "cherry pick[ed]" responses, and representations that should be taken with "a large grain of salt." *See* Dkt. No. 584 at 2, n.2; 3; and 4, n.4. Defendants provide the actual context behind Plaintiffs' Motion to Strike and Compel below.

With less than 12 weeks to go before the close of discovery, Plaintiffs served their Third Request for Production on August 26, 2010. *See* Exh. 1 (Third Request for Production Served on the PA); Exh. 2 (Third Request for Production Served on the PLO). Plaintiffs served these requests on the PA and on the PLO individually, but both sets of requests were identical. *See id.* Vast numbers of these requests sought discovery related to individual sentences contained in Defendants' briefing in support of their Motion to Vacate, or in court decisions addressing that briefing. In this regard, the requests echoed the types of topics in the Plaintiffs' contemporaneously filed 30(b)(6) notices, which this Court subsequently criticized. *See* Dkt. No. 578 ("The Court has little difficulty concluding that the notices are unreasonable on their face.").

Soon after receiving these overbroad, excessive requests, and determining that complying with them would be impossible in any instance, let alone in the context of the limited discovery period, Defendants suggested to Plaintiffs that the parties discuss this Third Request for Production during the next meet-and-confer conference, which took place on September 8th. This conference was also scheduled to address Defendants' objections to Plaintiffs' recently-issued Rule 30(b)(6) notices, given their substantial overlap with the Third Request for

Production and which each contained over 100 deposition topics upon which Plaintiffs expected Defendants to designate witnesses to testify. *See* Exh. 3 (Rule 30(b)(6) Notice Served on the PA); Exh. 4 (Rule 30(b)(6) Notice Served on the PLO).

During the September 8th meet-and-confer, defense counsel pointed out that the 205 subparts in the Third Request for Production were facially unreasonable, and asked whether Plaintiffs' counsel would be amenable to working with defense counsel to determine how Plaintiffs could narrow the requests and still obtain the information that they required from Defendants. Plaintiffs' counsel refused to engage in a meet and confer regarding the requests over the phone, and said he would be willing to consider only written suggestions from the Defendants.

Thus, in a second attempt to narrow the Third Request for Production to a reasonable scope, defense counsel sent Plaintiffs' counsel a letter on September 13, 2010. *See* Exh. 5 (Sep. 13, 2010 Letter from M. Rochon to D. Strachman). In this letter, defense counsel explained that most of the requests in the Third Request for Production (1) pertained to topics that Defendants did not view as relevant to the vacatur proceedings; (2) sought discovery on issues Plaintiffs themselves deemed irrelevant in response to Defendants' discovery requests; and/or (3) sought material that was facially protected or privileged from production in discovery. *See id.* at 5-6. Defendants also pointed out the burdens caused by the requests. *See id.* at 5 ("The sheer volume of the requests demonstrates that Plaintiffs have made no effort to narrow the discovery to the handful of issues properly before the Court . . . ."); *see also id.* at 6 ("For example, Request No. 2(b) facially requires Defendants to produce 'all documents relating to' President Abbas."). Plaintiffs responded to this letter by flatly rejecting the notion that there was anything overbroad or unreasonable about the Third Request for Production. *See* Exh. 6 (Sep. 17, 2010 Letter from

1119481.1

D. Strachman to M. Rochon), at 3 ("Your objections to our requests for production (Letter at ¶ 2) repeat your objections to our interrogatories, and we reject them for all the reasons set forth above.").

In a subsequent letter -- sent the day before Defendants' production in response to Plaintiffs' requests was due -- Plaintiffs' counsel withdrew only six of their 205 requests, and attempted to fix several errors in the Third Request for Production. *See* Exh. 7 (Sep. 26, 2010 Letter from D. Strachman to M. Rochon), at 2-4.

On September 27, 2010, Defendants served their Objections and Responses to Plaintiffs' Third Request for Production (*see* Dkt. No. 584 (Exh. C)), and also produced five boxes of documents responsive to the 199 remaining requests. *See* Exh. 8 (Sep. 27, 2010 Email from B. Hill to D. Strachman); *see also* Exh. 9 (Sep. 27, 2010 Letter from B. Hill to D. Strachman).

Plaintiffs responded to this production on September 29th, demanding that Defendants provide an index indicating which documents were responsive to which of the 199 subpart requests. *See* Exh. 10 (Sep. 29, 2010 Email from D. Strachman to M. Rochon). Plaintiffs also asked for a meet-and-confer conference to discuss the objections that Defendants had raised to Plaintiffs' Third Request for Production. *See id.* Defense counsel responded by providing the requested index, by proposing dates for a meet-and-confer conference, and also by supplementing their September 27 production with additional responsive documents and with a privilege log identifying other responsive documents. *See* Exh. 11 (Oct. 5, 2010 Email from B. Hill to D. Strachman); *see also* Exh. 12 (Oct. 5, 2010 Letter from B. Hill to D. Strachman).

Leaving aside the exchange of letters and emails, the only meet-and-confer conference that took place between the parties concerning Defendants' objections and production in response to Plaintiffs' Third Request for Production occurred on October 7, 2010. Despite the

1119481.1

content of Plaintiffs' counsel's September 29 email, at no point during that conference did counsel indicate that Plaintiffs were in any way dissatisfied with the quality of the massive document production that Defendants had made in response to Plaintiffs' voluminous discovery requests, nor did Plaintiffs' counsel indicate that there was anything inappropriate with any of the objections that Defendants had raised in response to the 199 discovery requests remaining in the Third Request for Production.  Instead, Plaintiffs' counsel focused on four unrelated issues:

- Counsel requested that defense counsel direct Plaintiffs' counsel to that portion of the production containing documents other than the massive amount of court filings that Plaintiffs had asked for (which defense counsel did that same day, *see* Exh. 13 (Oct. 7, 2010 Email from B. Hill to D. Strachman));

- Counsel requested defense counsel to direct Plaintiffs' counsel to that portion of the production that contained Defendants' discovery responses in other litigation against the PA/PLO (which was also done that same day, *see id.*);

- Counsel requested that Defendants provide a more detailed chart correlating their production to the various subparts in Plaintiffs' Third Request for Production (which defense counsel provided on October 15th); and

- Counsel inquired whether Defendants' objections to the Third Request for Production corresponded with the objections that Defendants had raised in response to Plaintiffs' multi-subpart Rule 30(b)(6) notices (which defense counsel confirmed during the meet-and-confer call).

Later that day, Plaintiffs' counsel made one other demand:  that Defendants provide translations for the "large number of Arabic documents" contained in Defendants' production. Exh. 14 (Oct. 7, 2010 Email from D. Strachman to B. Hill).

In other words, at no point during the *only* meet-and-confer conference between the parties concerning Defendants' objections and responses to the Third Request for Production did Plaintiffs' counsel raise *any* of the issues now made in Plaintiffs' Motion to Strike and Compel.

The only further interaction between the parties concerning Plaintiffs' Third Request for Production would take place on October 15th and October 29th, when Defendants again supplemented their production in response to those discovery requests, and also provided Plaintiffs with several translations. *See* Exh. 15 (Oct. 15, 2010 Letter from B. Hill to D. Strachman); Exh. 16 (Oct. 29, 2010 Letter from B. Hill to D. Strachman). Defendants provided Plaintiffs' counsel with the detailed correlation chart counsel had requested on the 15th. *See* Exh. 15; *see also* Exh. 17 (correlation chart).

On October 28, 2010, Magistrate Judge Martin issued six orders in response to several disputes that had arisen between the parties over the course of the discovery period. *See* Dkt. Nos. 574, 575, 576, 577, 578, 579. One of these orders, Dkt. No. 578, addressed Plaintiffs' Rule 30(b)(6) deposition notices and granted Defendants' request for a protective order barring Plaintiffs from seeking discovery on the topics listed in those notices. *See id.* This Order is particularly salient, as many of the more-than 100 deposition topics in these notices mirrored -- sometimes word for word -- the document requests in Plaintiffs' Third Request for Production. *Compare* Exh. 1, *with* Exh. 3.

In this Order, the Court commented on the voluminous nature of Plaintiffs' deposition notices, and explained he "had little difficulty concluding that the notices are *unreasonable on their face*, especially given the limited time remaining [in the discovery period] as of the date Plaintiffs issued the notices." Dkt. No. 578 at 2 (emphasis added). The Court also noted that "Plaintiffs did not serve their Rule 30(b)(6) notices until August 31, 2010" (the instant requests

1119481.1

had been served on August 26) and "[a]t that point more than half of the period for discovery had already elapsed." *Id.* at 2, n.2. The Court found that "the sheer number of [] topics and the minute detail sought with respect to those topics made compliance by the date specified (September 28, 2010) virtually impossible." *Id.* at 2. The Court then went on to substantially narrow the scope of Plaintiffs' deposition topics by identifying only eight discrete areas in which he believed deposition discovery would be appropriate. *See id.* at 3-5.

Defendants had noted in their Motion regarding the 30(b)(6) Notices, that they were prepared to present witnesses on topics that the Defendants thought reasonable and responsive to the issues in the Motion to Vacate. Preparation of those witnesses was underway prior to the Court's rulings, and it continued following the Order. After putting Defendants to the trouble and expense of briefing and arguing a motion for a protective order, and after taking the Court's time with hearing argument on and resolving the motion, Plaintiffs then *did not even bother to conduct the 30(b)(6) depositions*. They withdrew their 30(b)(6) notices and took no depositions. Instead, Plaintiffs filed the instant Motion to Strike and Compel, which asks this Court to endorse the very same facially burdensome discovery practice that the Court had just rejected in the Order on the Rule 30(b)(6) deposition notices. Moreover, the Plaintiffs have so moved despite the fact they made no effort whatsoever to meet and confer with defense counsel to determine whether the parties could resolve any issues raised in the Motion to Strike and Compel in light of the Court's just issued discovery rulings, and thereby avoid or minimize the need for further Court intervention.

This Court can assess Plaintiffs' motivations without Defendants characterizing them. However, Defendants respectfully suggest that, having obtained the Court's imprimatur on narrowed 30(b)(6) depositions, actually taking the depositions would have been the most direct

1119481.1

and (with the narrowing imposed by the Court's ruling) least burdensome route to obtaining the information sought through the parallel Rule 30(b)(6) notices and Third Request for Production.

So too, this Court can now assess whether Plaintiffs were using this pre-hearing discovery period to facilitate resolution of Defendants' Motion to Vacate, or whether they were engaged in discovery tactics aimed at causing undue burden, in an effort to seek tactical advantage. However, without regard to motivation, it is undeniable that Plaintiffs have repeatedly propounded discovery that would burden Defendants, only as a prelude to motions practice designed to portray Defendants as recalcitrant litigants. The fact that when they actually obtained the opportunity to take the 30(b)(6) depositions, they failed to do so, speaks volumes. However the Court views the tactics of the Plaintiffs, there are numerous independent grounds for the Court's denial of the Plaintiffs' Motion to Strike and Compel.

## I. THE MOTION TO STRIKE AND COMPEL MUST BE DENIED BECAUSE PLAINTIFFS DID NOT COMPLY WITH FEDERAL RULE OF CIVIL PROCEDURE 37(a)(1)'S MEET AND CONFER REQUIREMENT

Federal Rule of Civil Procedure ("Rule") 37(a)(1) requires that any party moving to compel production pursuant to Rule 37 must certify "that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Failure to comply with the requirements of Rule 37(a)(1) constitutes grounds to deny the motion, regardless of its merit. *See, e.g., Hasbro, Inc. v. Serafino,* 168 F.R.D. 99, 101, 102 (D. Mass. 1996) ("As Plaintiff correctly asserts, Defendant's motion to compel fails to comply with the[] requirements [of former Fed. R. Civ. P. 37(a)(2)(A)]. . . . Accordingly, Defendant's motion to compel is DENIED . . . ."); *id.* at 101-02 ("[T]he purpose of full consultation . . . is to enable the parties to attempt to narrow, if not resolve, their dispute. It is not up to the Court to expend its energies when the parties have not sufficiently expended their own. The rules are purposeful, not

1119481.1

arbitrary."); *see also Aponte-Navedo v. Nalco Chem. Co.*, 268 F.R.D. 31, 40-41 (D.P.R. 2010)

("It is clear that plaintiffs' [Rule 37(a)(1)] certification is deficient. . . . Thus, plaintiffs' failure to

comply with the meet and confer requirements constitutes sufficient reason to deny the motion to

compel."); *Thompson v. UBS Fin. Servs.*, C.A. No. 09-033S, 2009 U.S. Dist. LEXIS 84347, at

*10-11 (D.R.I. Sept. 15, 2009) ("The issues as to scope of written discovery . . . only ends up

before the Court pursuant to a motion under Fed. R. Civ. P. 37 if the party . . . remains

dissatisfied after conferring in good faith with the other side *and* ultimately chooses to invest the

time and resources in seeking Court intervention . . . ."); *Burton v. R.J. Reynolds Tobacco Co.*,

203 F.R.D. 624, 627 (D. Kan. 2001) ("[T]he requirement that counsel confer about discovery

disputes before filing such motions is mandatory under [former] Fed. R. Civ. P. 37(a)(2)(A) and

D. Kan. R. 37.2. Accordingly, plaintiff's motion for sanctions must be denied on that basis.").

Here, Plaintiffs' counsel has included a Rule 37 Certificate with Plaintiffs' Motion to

Strike and Compel stating that counsel "made a good faith effort" to resolve the issues presented

in Plaintiffs' filing "prior to the commencement of this motion practice." *See* Dkt. No. 583 at 9;

Dkt. No. 584 at 18. Notably, the certificate itself doesn't describe that effort, and the lack of

procedural background section in Plaintiffs' memorandum in support of the Motion does nothing

to describe the effort (or lack thereof) either. In fact, as explained on pages 2-7, *supra*, Plaintiffs

made no meaningful effort whatsoever to narrow or eliminate the issues presented by

Defendants' objections and responses to Plaintiffs' Third Request for Production before filing

their Motion to Strike and Compel, let alone the "good faith" effort required by Rule 37.

Most crucially, the Plaintiffs never sought, let alone held, a meet-and-confer conference

to discuss Plaintiffs' Third Request for Production after the Court issued its Rule 30(b)(6) ruling

that Plaintiffs contend should govern disposition of their Motion to Strike and Compel. Nor in

the single meet-and-confer that did take place after Defendants responded to Plaintiffs' Third Request on September 27th did Plaintiffs' counsel engage with defense counsel on any of the substance of their Motion to Strike and Compel.

Moreover, the instant discovery dispute shows why meet-and-confer conferences are mandated by the Federal Rules. A meet-and-confer conference would certainly have resolved at least *some* of the complaints raised in Plaintiffs' Motion to Strike and Compel, which would have narrowed the issues now before the Court. Proof of this can be seen in the fact that Plaintiffs have moved to compel production even of some documents that Defendants have already produced to them.

For example, Plaintiffs have moved to strike Defendants' objections to, and compel production on their Request 14(a) (*see* Dkt. No. 584 at 15), which asks for "[a]n authentic copy of the letter of resignation referred to by Salam Fayyad on pp. 289-92 of the transcript of his July 28, 2010 deposition" (Exh. 1 at 28). In their Motion, Plaintiffs state: "Defendants object to this request as irrelevant and as improperly requiring them to produce an authentic document. These objections should be rejected, particularly since at his deposition Mr. Fayyad offered to provide a copy of this letter. Accordingly, Defendants' objections should be stricken and the production of these documents compelled." *Id.* (internal citation omitted).

But, had Plaintiffs conducted a proper meet-and-confer conference, Defendants would have explained that their response to Request 14(a) states that they will produce the document sought in that request. *See* Dkt. No. 584 (Exh. C at 207) ("Defendants state that they will produce a document responsive to a reasonable and proper scope and interpretation of this request."). Defendants would then have been able to direct Plaintiffs to the production index they provided at Plaintiffs' request on October the 15th (*see* Exh. 17), which in turn would have

1119481.1

informed Plaintiffs that Defendants had already produced document number 01:0012158-01:0012159 in response to Request 14(a). Plaintiffs might then have looked at that document and discovered it is, in fact, the exact thing sought by Request 14(a).[1] All of this would have eliminated at least a half a page of the Motion to Strike and Compel.

This is but one such example. Defendants have not taken the time to identify and discuss each instance where Plaintiffs have moved to compel documents that Defendants have already produced to them, but there are others, including the documents responsive to Plaintiffs' requests 14(b) through 14(f), discussed on pages 13-14 below.

Moreover, even the fact that Plaintiffs attempt to justify their Motion to Strike and Compel as reasonable by arguing that the Motion moves to compel on "only" 90 requests in the Third Request for Production cuts against their decision not to meet-and-confer. *See* Dkt. No. 584 at 2. Defendants had no way of knowing that these 90 requests were the only *really* important ones in Plaintiffs eyes, because Plaintiffs never bothered to tell Defendants as much. *See* Dkt. No. 584 at 2 (Plaintiffs explaining that these 90 requests seek the "small group of [] most important documents" out of the universe of documents sought in their original 205 requests). Had they done so, that would have been a good start to negotiation between the parties.

While it is probable the parties would not have resolved all their disputes concerning the Third Request for Production without Court intervention, that does not justify Plaintiffs' failure to abide by Rule 37(a)(1) before filing their Motion to Strike and Compel. *See Burton*, 203 F.R.D. at 627 ("Without citing any authority, [plaintiff] argued . . . any such conference among

---

[1] Defendants have not attached this document as an exhibit because it has been marked confidential subject to the protective order in this case.

1119481.1

counsel would have been futile. . . . The court respectfully disagrees . . . the requirement that counsel confer about discovery disputes before filing such motions is mandatory . . . . Accordingly, plaintiff's motion for sanctions must be denied on that basis.").

Accordingly, because Plaintiffs failed to meet the requirements of Rule 37(a)(1), the Court should deny the Motion to Strike and Compel.

## II.   PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS DID NOT COMPLY WITH THE LOCAL RULES OF THIS COURT

Plaintiffs' Motion to Strike and Compel also fails to comply with Local Rule 37(a), which states: "A motion to compel a response or further response to an interrogatory, request for production, or request for admission shall state the interrogatory or request, the response made, if any, and the reasons for why the movant maintains that the response is inadequate." LR Cv 37(a). Plaintiffs' Motion to Strike and Compel does not comport with this Rule, and it should be denied for that reason. *See TG Plastics Trading, Co. v. Toray Plastics*, C.A. No. 09-336S, 2010 U.S. Dist. LEXIS 23498 (D.R.I. Mar. 11, 2010).

In *TG Plastics Trading Company*, the Court explained that a party moving to compel discovery has the "burden of showing its relevance." *Id.* at *5-6. Accordingly, Local Rule 37(a) requires a party to list each and every discovery request on which they are moving to compel and explain the *specific* relevance of each of those *particular* requests, rather than grouping them together and claiming, as Plaintiffs have done here, that the "theme" of these requests is relevant and not overly burdensome, so each particular request in the group must be relevant and not overly burdensome as well. As the *TG Plastics Trading Company* Court explained in dealing with the case before it:

> Unfortunately, although each of its nineteen requests seeks distinct business and/or financial information, Plaintiff did not organize its Motion to Compel as required by Local Rule Cv 37(a) . . . . Instead, Plaintiff groups all of the requests together and argues generally that its requests are not irrelevant, overbroad, or

> beyond the scope of the Settlement Agreement but rather are narrowly tailored . . .
> . Plaintiff's initial burden of establishing relevance requires it to do more.
> Plaintiff does not individually discuss its document requests and explain how each
> seeks relevant information or may lead to the discovery of admissible
> evidence. . . . Without such explanation, I am forced to review Plaintiff's nineteen
> requests in a vacuum and, doing so, many of the requests on their face strike me
> as overly broad and not narrowly tailored to the disputes at hand in this case.

*Id.* at *3-4, 6-7. As in *TG Plastics Trading Company*, Plaintiffs' failure to abide by Local Rule 37 has allowed them to gloss over the reasons why *each* of the 90 document requests on which they are moving "seeks relevant information or may lead to the discovery of admissible evidence." *See id.*

For example, Plaintiffs group together document requests 14(b) through 14(f) and claim all aspects of those requests seek relevant information because they "obviously" seek information pertaining to "the prejudice [Plaintiffs] would suffer if required to litigate the case today." Dkt. No. 584 at 16. They then argue the requests are not overly broad or burdensome because none of Defendants' "cut-and-pasted usual litany of boilerplate objections" has merit. *Id.* But had Plaintiffs complied with the Local Rules and listed requests 14(b) through 14(f) individually, it would be readily apparent that they consist of 28 subparts, which essentially call for every single document containing the name of five public figures (Mohammad Dahlan, Jibril Rajoub, Razi Jabali, Tawfik Tirawi, and Amin Al-Hindi) in Defendants' possession, custody, or control. *See, e.g.,* Dkt. No. 584 (Exh. C, Request 14(b)(v), at 211) ("All documents relating to, referring to and/or evidencing . . . [t]he nature, purposes, responsibilities and duties of any and all positions, titles, and/or jobs held by Mohammed Dahlan at the times and/or during the time periods described in subsections (i)-(v) above.").

Further, had Plaintiffs bothered to list Defendants' objections and responses to those requests, it would be apparent that Defendants objected to the facially broad scope of the requests, but stated they would produce responsive documents. *See, e.g., id.* at 212. Had

1119481.1

Plaintiffs then explained the production made by Defendants in response to this request, as required by the local rules, the Court would have known that Defendants produced many pages of documents in response to these requests. *See* Exh. 17 at 2-3 (correlation chart showing production in response to requests 14(b) through 14(f)). The Local Rules would then require Plaintiffs to explain to the Court why this production is insufficient, which Plaintiffs have not bothered to do here at all. Instead, Plaintiffs ignore all of these steps and demand production of documents they already have.[2]

Indeed, the fact that Plaintiffs did not comply with Local Rule 37(a) shows just how overbroad the Third Request for Production is in its totality. Had Plaintiffs listed each of the requests on which they are now moving individually and made particularized arguments as to why each request was appropriate, their Motion to Strike and Compel could not have been made in its current 16-page form. Instead, the Motion would have required the Court to wade into the minutia of Plaintiffs' Third Request for Production before deciding *each* individual request was narrowly tailored and geared towards obtaining relevant evidence such that Defendants should be compelled to respond.

In sum, because Plaintiffs' Motion to Strike and Compel does not comply with the Local Rules of this Court, the Motion should be denied. It is not the Court's role, or Defendants' role

---

2 Another example of this tactic is found on page 9-10 of Plaintiffs' Motion to Strike and Compel. There, Plaintiffs lump together several requests -- Nos. 9(a)-(b), 9 (u)-(v), 13(h)-(s), 13(v)-(w) and 13(dd)-(vv) -- and state in two paragraphs that the requests are relevant because they seek "admissible evidence . . . regarding Defendants' policy guidelines for responding to litigation, Defendants' participation on the merits in U.S. and European litigation since 1985 and Defendants' participation on the merits in the Israeli litigation since 1997." Dkt. No. 584 at 9-10. This may sound superficially innocuous to the Court, but these requests actually seek, for example, "*[a]ll*" documents "relating to" individuals within the PA responsible for making decisions regarding lawsuits filed against the PA/PLO in the U.S. and Israel between 1993 and December 2007. *See* Exh. 1 at 15. This would require Defendants to produce every piece of paper with the name of anyone involved in any litigation the PA was involved in over a 15-year period. The Court should not countenance Plaintiffs' attempt to force Defendants to comply with such improper requests.

1119481.1

to parse the requests and objections for the Plaintiffs in order to narrow or make more reasonable their nature, especially when the Plaintiffs have failed to have a meet and confer on their narrowed requests or otherwise sought to sharpen the issues for the Court.

## III.    THE COURT SHOULD DENY PLAINTIFFS' MOTION TO STRIKE AND COMPEL ON THE SAME RATIONALE AS THE COURT'S OCTOBER 28, 2010 ORDER

Plaintiffs justify their Motion to Strike and Compel because they claim it is brought in "the spirit of the Court's October 28 [Rule 30(b)(6)] order." *See* Dkt. No 584 at 2.  But the Motion to Strike and Compel makes clear that Plaintiffs' purported understanding of the rationale behind that Order is entirely mistaken.

In that order, the Court ruled Plaintiffs could seek deposition discovery on "the willfulness of Defendants' default," for example (Dkt. No. 578 at 3), but the Court did not endorse the notion that Plaintiffs ought to receive all of the documents pertaining in any way to the "Achille Lauro proceedings" brought against the PLO in the 1980's just because Plaintiffs purport to believe that such documents are somehow related to the issue of willfulness (*see* Dkt. No. 584 at 7-8; *see also* Exh. 1, Requests 13(dd)-13(ii), at 26-27).

Similarly, when the Court ruled that deposition discovery on "the timeliness of the motion to vacate" would be relevant (Dkt. No. 578 at 3), the Court did not state, as Plaintiffs seem to believe, that Plaintiffs are entitled to all documents having anything to do with the PA/PLO's involvement with the Israeli court system "at any time prior to 2007" (*see* Dkt. No. 584 at 8-9; *see also* Exh. 1, Requests 13(h)-13(s); 13(v)-13(w), at 24-26).

Still further, when the Court allowed deposition discovery on "the prejudice, or lack of prejudice, to Plaintiffs if the motion to vacate is granted" (Dkt. No. 578 at 4), the Court was not telling Plaintiffs that they made a reasonable discovery request in seeking "*[a]ll documents relating to, referring to and/or evidencing . . . [t]he nature, purposes, responsibilities and duties of*

15

any and all positions, titles, and/or jobs held by Mohammed Dahlan at the times and/or during the time periods described in subsections (i)-(v) above" (Exh. 1, Request 14(b)(v), at 29 (emphasis added)).

Plaintiffs' interpretation of the Order is untenable. The Court took the 132 topics in Plaintiffs' Rule 30(b)(6) notice to the PA and the 114 topics in their Rule 30(b)(6) notice to the PLO and reduced them *to eight*. *See* Dkt. No. 578. The Court did so, in part, because Plaintiffs waited to notice those depositions until August 31, 2010 -- more than halfway through the discovery period -- and allowed Defendants only until the 28th of September to respond. *See id.* at 2. It is therefore unsupportable that Plaintiffs would view reducing the original 205 requests in their Third Request for Production to 90 comports with "the spirit of the Court's October 28 order." *See* Dkt. No. 584 at 2. This is especially so when Plaintiffs unilaterally narrowed the requests in their Motion, not through any meet and confer.

Plaintiffs' Third Request for Production was also served more than halfway through discovery, on August 26, 2010. Like their deposition notices, which gave Defendants only until September 28th to respond, Defendants' production in response to the Third Request for Production was due on September 27th. Moreover, the "sheer number" of Plaintiffs' subpart document requests and the "minute detail sought" through these requests is at least as burdensome as the multi-subpart deposition notices served by Plaintiffs. But unlike with Plaintiffs' Rule 30(b)(6) notices -- which, due to Defendants' timely request for Court intervention, resulted in a ruling that permitted deposition discovery to be had *within* the discovery period allowed by the Court -- Plaintiffs' waited more than a month after Defendants responded to Plaintiffs' Third Request for Production to bring their Motion to Strike and Compel. What this means is that if the Court does not deny the Motion, Defendants will be

1119481.1

burdened with discovery efforts well after the discovery period closes on November 19th, and well into the pre-hearing briefing period. There is simply no justification for this, and the Court's October 28, 2010 Rule 30(b)(6) order certainly provides no such justification.

Accordingly, Plaintiffs' Motion to Strike and Compel should be denied on the basis of the Court's October 28th Rule 30(b)(6) order that Plaintiffs cite to support it.

## IV.    DEFENDANTS' GENERAL OBJECTIONS ARE PROPER, LAY A SUFFICIENT FOUNDATION FOR THEIR SPECIFIC OBJECTIONS AND ABIDE BY THE FEDERAL RULES OF CIVIL PROCEDURE

Plaintiffs spend considerable, and undue, time complaining about Defendants' general objections. Given Defendants' specific objections to each improper document request, however, these arguments do not reach the heart of the matter. Specifically, Plaintiffs assert that Defendants' general objections to their discovery requests are "boiler-plate" and "ineffective." Dkt. No. 584 at 3. Defendants note that general objections are a standard means of addressing problems that are pervasive throughout a set of document requests and of preserving a party's positions. *E.g., Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 304 (D. Kan. 1996) ("General objections may occasionally serve as an efficient response. The court may consider and rule upon general objections raised against sets of interrogatories or requests for production."). Plaintiffs themselves have asserted four pages and fourteen paragraphs of general objections in responding and objecting to Defendants' First Request for Admissions to All Plaintiffs. *See* Exh. 18 at 1-4.

Though Defendants do not retreat from their view that Plaintiffs' requests suffer from systemic problems, Plaintiffs' failure to meet and confer with Defendants concerning these general objections precluded the possibility that the parties could discuss and narrow them. Indeed, Plaintiffs' decision to abandon approximately 105 of their document requests suggests

1119481.1

that even Plaintiffs recognized that there were general problems with their Third Request for Production.

Plaintiffs also assert that Defendants' assertions of privilege and protection in their general objections should be stricken. Dkt. No. 584 at 3. A number of Plaintiffs' document requests facially call for work-product or privileged documents, or could be construed to call for such documents. In addition to their general objection, Defendants lodged objections to specific requests on a request-by-request basis, where those requests could be construed to call for production of materials protected by the attorney-client privilege or work-product doctrine. As discussed further in Part V.B., consistent with the Court's ruling of October 27, 2010, regarding another document request (Dkt. No. 575), Defendants are not producing a privilege log until the Court rules on whether the documents are "otherwise discoverable." *See* Fed. R. Civ. P. 26(b)(5)(A). In its October 27 Order, the Court ruled: "[g]iven the likely large number of documents which fell within the scope of the discovery requests and Defendants' objection that producing the requested material and/or information was unduly burdensome, Defendants were not required to file a privilege log until their other objections were addressed." Dkt. No. 575 at 6 (citing *United States v. Philip Morris, Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003)).

## V.    DEFENDANTS SHOULD NOT BE COMPELLED TO PRODUCE DOCUMENTS RESPONSIVE TO THE REQUESTS IDENTIFIED BY PLAINTIFFS IN THEIR MOTION

### A.    Defendants Should Not be Compelled to Produce Documents Responsive to Request Nos. 4(o)-(v) Because They Have Searched for, But Located No Documents Responsive to These Requests

Plaintiffs' demand that Defendants produce documents in response to Request Nos. 4(o)-(v) provides a good example of why Plaintiffs should be required to confer before filing this Motion. Defendants informed Plaintiffs in their responses that there were no documents responsive to 4(o)-(r). *See* Dkt. No. 584 (Exh. C at 36-39). In addition, Defendants have

conducted a reasonable search for documents responsive to 4(s)-(v), but have not yet located any responsive documents. *Id.* at 39-43. If Defendants subsequently locate any documents responsive to 4(o)-(v), they will produce them.

**B.    Defendants Should Not be Compelled to Produce Documents Responsive to Request Nos. 9(a)-(b), 9(u)-(v), 13(h)-(s), 13(v)-(w) and 13(dd)-(vv)**

Defendants maintain that documents and information relating to the willfulness of Defendants' default or the timeliness of Defendants' filing of the vacatur motion are irrelevant to the matters at issue at the January 2011 hearing. Defendants recognize that Magistrate Judge Martin has ruled otherwise in the context of Plaintiffs' request for Rule 30(b)(6) depositions and have appealed that aspect of those rulings. *See* Dkt. Nos. 593, 594.

Even if willfulness and timeliness are relevant, however, Plaintiffs' Request Nos. 9(a)-(b) and 13(v)-(w) remain irrelevant and overbroad. Indeed, if Plaintiffs had abided by Local Rule 37(a) and listed in full the document requests on which they are moving to compel they would have discovered that Request No. 9(a) seeks the same information as Request No. 13(v) and Request No. 9(b) seeks the same information as Request No. 13(w). Had Plaintiffs taken the time, as the Federal Rules of Civil Procedure require, to meet and confer with Defendants about these specific requests, this fact would have come to light and saved time for the parties and this Court.

Plaintiffs' motion to compel documents responsive to Request Nos. 9(a)-(b) and 13(v)-(w) should also be denied because they seek information covering an exceedingly overbroad time frame, from 1993 through 2007. *See, e.g., Gateway Healthcare, Inc. v. Phila. Indem. Ins. Co.*, No. 08-170S, 2009 U.S. Dist. LEXIS 34236, at *3 (D.R.I. Apr. 23, 2009) ("The Request is overly broad and not limited by [] time frame . . . .").

1119481.1

Plaintiffs' Request Nos. 9(a)-(b), 9 (u)-(v), 13(h)-(s), 13(v)-(w) and 13(dd)-(vv), which seek documents relating to "Defendants' policy guidelines for responding to litigation, Defendants' participation on the merits in U.S. and European litigation since 1985 and Defendants' participation on the merits in the Israeli litigation since 1997," *see* Dkt. No. 584 at 9, also constitute prime examples of overbroad discovery. These issues were discussed at some length in a decision relied upon by this Court in its recent discovery rulings (Dkt. No. 578 at 2) -- *Lipari v. U.S. Bancorp, N.A.*, No. 07-2146, 2008 U.S. Dist. LEXIS 82594 (D. Kan. Oct. 15, 2008). "It is well settled that a party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed, or evidentiary support" for its objection that the party "will be unduly burdened if required to respond to [it]." *Id.* at *9 (emphasis omitted); *see also TG Plastics Trading, Co.*, 2010 U.S. Dist. LEXIS 23498, at *7 (basing denial of a motion to compel on grounds of irrelevance and a finding that "many of the requests *on their face* strike me as overly broad and not narrowly tailored to the disputes at hand in this case.") (emphasis added).

The *Lipari* decision also gives the Court guidance as to what constitutes an overly broad and unduly burdensome request. "[A] discovery request is overly broad and unduly burdensome on its face if it uses an omnibus term such as 'relating to,' 'pertaining to,' or 'concerning' to modify a general category or broad range of documents or information." *Lipari*, 2008 U.S. Dist. LEXIS 82594, at *6. "[S]uch broad language makes arduous the task of deciding which of numerous documents may conceivably fall within its scope." *Id.* (quotation marks omitted); *see also, e.g.*, *Maale v. Caicos Beach Club Charter, Ltd.*, No. 08-80131, 2010 U.S. Dist. LEXIS 10211, at *27 (S.D. Fla. Jan. 14, 2010) ("The Court finds that this request is over broad in scope, because it seeks all communications on any and all subjects between (1) the defendants and (2) a wide range of potential individuals, 'related to any real property located in the South Caicos

1119481.1

Island, Turks & Caicos.'"); *Fullbright v. State Farm Mut. Auto. Ins. Co.*, No. 09-297, 2010 U.S. Dist. LEXIS 3942, at *8 (W.D. Okla. Jan. 15, 2010) ("[T]he Court agrees with Plaintiffs that the subpoena is overly broad because it seeks discovery of 'any and all records relating to T.F.'").

The *Lipari* case is instructive here. There, defendants objected to several document requests, one example of which required defendants to produce "all communications with the Royal Bank of Canada and the Edward Jones Co. concerning the potential sale of US Bancorp Piper Jaffray." *Id.* at *4. The Court issued a protective order on the basis of defendants' objection that the requests were unduly burdensome by their language alone. It reasoned that "Plaintiff's use of omnibus terms such as 'related to' and 'concerning' do not modify a specific document or event, or even discrete or narrow categories of documents. Rather, those terms modify very general and vast categories of documents. The Court therefore concludes that the requests are so all-encompassing as to be unduly burdensome on their face." *Id.* at *9.

Here, Plaintiffs' Request Nos. 9(a)-(b), 9 (u)-(v), 13(h)-(s), 13(v)-(w) and 13(dd)-(vv) are indistinguishable from those the *Lipari* court correctly identified as overly broad and unduly burdensome. Plaintiffs seek "all" documents "relating to, referring to and/or evidencing" various issues involving lawsuits filed against Defendants and the individuals dealing with them. *See, e.g.*, Exh. 1 at 15-28. Plaintiffs' use of such "omnibus" wording in connection with broad and open-ended subjects makes their discovery requests unduly burdensome. This is made clear by the fact that Prime Minister Salam Fayyad became responsible for all pending U.S. litigation against the PA in early 2007. *See* Dkt. No. 562 at 4. Thus, several of Plaintiffs' requests facially require Defendants to produce every document with Salam Fayyad's name on it. This improper and inefficient result should not be countenanced by the Court.

1119481.1

Plaintiffs' requests would also encompass privileged communications between Defendants and their counsel. Defendants decline to take the time to describe every discovery request seeking privileged and protected documents -- an obligation that falls on the moving and not the responding party under the Local Rules of this Court -- but Defendants note that they include at least Request Nos. 9(u)-(v) and 13(v)-(w). As this Court held in its October 27, 2010 Order, Defendants are not required to "file a privilege log until their other objections were addressed." Dkt. No. 575 at 6. Moreover, as this Court held in its October 28, 2010 Order, Defendants are not asserting an advice of counsel defense in this action and have not waived privilege between Defendants and their counsel. Dkt. No. 578 at 5-6. Because Defendants have not put their attorney's advice at issue and because the Court has recognized that no waiver of privilege between Defendants and their attorneys has occurred in this case, Defendants should not be forced to produce a privilege log on these issues.

Notwithstanding the positions described above, if this Court sustains willfulness and timeliness as relevant topics of inquiry, Defendants will search further for and produce documents responsive to Plaintiffs' Request No. 9(u)-(v) to the extent they can be reasonably located. However, it is not clear that a pre-2007 policy for handling lawsuits was in place for the PA and there is nothing to suggest that a pre-2007 policy exists for the PLO. Defendants, however, should not be compelled to produce "all" documents "relating to" to any such policies, as many of any such documents would call for litigation-related materials including attorney client privileged material and work product.

Plaintiffs' Request Nos. 13(h)-(s) and (dd)-(vv) seek documents from litigation in Israeli involving Defendants as well as documents relating to other foreign and U.S. litigation involving Defendants. Plaintiffs previously sought Rule 30(b)(6) depositions on Defendants' conduct of

1119481.1

other litigation and the Court did not identify this area as one of the relevant topics for the approved Rule 30(b)(6) depositions. *See* Dkt. No. 578. Moreover, these requests are far afield from the factors relevant to Defendants' entitlement to Rule 60(b)(6) relief because they seek testimony on pre-2007 legal proceedings, which have no bearing on the *Ungar* litigation or the PA/PLO's ability to participate in and defend this litigation. Additionally, both the scope (requesting "all" documents) and time frame of these requests (either all documents before December 2007 or documents from 1985 through 2007) are overly broad and unduly burdensome for the same reasons explained above.

In addition, many of the documents requested by Plaintiffs through Request Nos. 13(h)-(s) and (dd)-(vv) are either publicly available, such as documents relating to U.S. litigation, or shielded from public availability, such as those filed in Israeli courts. Plaintiffs can obtain the publicly available documents as readily as Defendants, and should do so. As to Plaintiffs' requests for documents filed in Israeli proceedings, Defendants have learned that documents filed in Israeli court proceedings are not deemed "public" documents and that any non-party wishing to examine such documents must file a pleading with the judge handling that case explaining the reasons they seek access to the case files. *See* Exh. 19 (Nov. 19, 2010 Decl. of Advocate Joseph Arnon) at ¶ 8. Indeed, it is common practice in Israeli courts for a judge to request the responses of all the concerned parties and third parties when such a request is made. *Id.* at ¶ 10. Additionally, the documents sought by Plaintiffs may also include confidential information subject to Israeli privacy laws. *Id.* at ¶ 12. In sum, the PA/PLO's Israeli counsel believes that producing the documents requested by Plaintiffs could potentially expose them to legal action in Israel. *Id.* at ¶ 15. Plaintiffs' U.S. counsel should be well aware of these issues given that they are co-counseling this case with an Israeli attorney.

1119481.1

Defendants also note that searching for documents responsive to Request Nos. 13(h)-(s) and (dd)-(vv) would call for the PA/PLO's Israeli counsel to parse through voluminous amounts of documents, remove attorney work product and non-responsive materials and generally take on an onerous, time-consuming and entirely unnecessary task. *Id.* at ¶ 7. The PA/PLO's Israeli counsel is not equipped to perform this work, which they estimate would require at least 200 hours. *Id.*

More importantly, PA/PLO's Israeli counsel harbors significant concerns that the documents requested by Plaintiffs Request Nos. 13(h)-(s) and (dd)-(vv) would be turned over to Israeli lawyers representing plaintiffs in other cases and potentially damage the PA/PLO's defense in Israeli courts. *Id.* at ¶ 11. If Plaintiffs' counsel seeks these materials with any intent to use them in other cases pending in Israel, these requests are improper as a matter of law. *See* 6 James W. Moore, et al., Moore's Federal Practice § 26.101[1][6] (Matthew Bender 3d ed. 2010) (noting that "courts are empowered to issue protective orders on a good cause showing that the party intends to use the discovery for an unrelated purpose . . . [including] to gain information for use in a different action against the same party or in a similar type of lawsuit").

Plaintiffs' Request Nos. 13(h)-(s) and (dd)-(vv) therefore appear to be designed to distract Defendants from their preparation for the January hearing. Indeed, when Defendants produced similar materials relating to other ATA cases pending against the PA/PLO in the United States, Plaintiffs complained that Defendants produced too much material. Compelling Defendants to produce this material would therefore be a waste of time and resources.

C.   **Defendants Should Not be Compelled to Produce Documents Responsive to Request Nos. 10(a)-(g), 10(j)-(m) or 13(a) or 13(bb)**

In Request Nos. 10(a)-(g), (j)-(m), 13(a) and (bb), Plaintiffs seek PIF-related documents and materials related to the Creditor's Bill proceedings and other cases. Defendants note that

24

they have appealed the rulings finding PIF relevant to the hearing on the vacatur motion. *See* Dkt. Nos. 593, 594.

As with their other requests, Plaintiffs again seek "all" documents and further seek to force Defendants to log obviously privileged materials. For the reasons set forth above concerning other Plaintiffs' requests, these deficiencies alone warrant denial of Plaintiffs' motion to compel responses to Request Nos. 10(a)-(g), (j)-(m), 13(a) and (bb). Granting Plaintiffs' Motion as to these requests would be a waste of time.

Defendants address the deficiencies in Plaintiffs' specific requests as follows:

- Request No. 10(a) is unbounded in time and improperly seeks "[a]ll" documents concerning the PA's relationship with PIF. As Plaintiffs are well aware, any documents responsive to this request that predate September 2006 -- when the Creditor's Bill issued -- would be irrelevant.

- Request Nos. 10(b) and 13(a) are irrelevant, as they seek documents concerning the 2006 judgment in this case. Plaintiffs' request seeks privileged communications between the PA/PLO and their counsel, the privilege for which this Court has held has not been waived. Dkt. No. 578. It would be a waste of time for Defendants to log such obviously privileged information.

- Request No. 10(c) seeks "[a]ll" documents "relating to" transfers of assets from PIF to the PA after the date of the 2006 judgment, which is unduly burdensome and largely available in the public record. Once again, there is no need for Plaintiffs to see "[a]ll" documents, and the Court should deny Plaintiffs' Motion.

- Request No. 10(d), which seeks "[a]ll" documents for every person who was ever involved in any transfer of assets, is both overly broad and wholly irrelevant. The identity of persons involved in these transfers is not relevant to any issue before this Court.

- Request Nos. 10(e)-(g) seek "[a]ll"documents concerning PIF's foundational documents and any change thereto. If Plaintiffs believe these documents are at all relevant, they should attempt to discover them from PIF and not the PA or PLO. Additionally, as with numerous other categories of documents sought by Plaintiffs in these requests, they are improperly sought for use in other cases involving the PA and/or PLO.

- Request No. 10(j) seeks "[a]ll" documents concerning Dr. Mustafa's actions for the PA from July 2004 to the present. This request is overbroad in both scope and

1119481.1

timing, as pre-September 2006 materials are not relevant even under Plaintiffs' theory.

- Request No. 10(k), which seeks "all" documents submitted by the PA and/or PLO in any case involving them in Israel, is both subsumed within the 13 additional requests Plaintiffs propounded seeking documents from the Israeli cases and unduly burdensome due to the search that would have to be undertaken to search all PA/PLO filings. *See* Exh. 19 at ¶ 7.

- Request Nos. 10(l)-(m) seeks "[a]ll" documents "relating to" or pleadings submitted in any proceedings brought against Orascom Telecom Holding S.A.E. ("Orascom"). These requests are sought by Plaintiffs for use in other litigation and this Court ruled that Orascom was irrelevant. *See* Dkt. No. 575 at 1-2.

- Request No. 13(bb) seeks an "authentic" copy of an affidavit submitted by an individual in other cases. As a matter of law, Defendants have no obligation to authenticate documents for Plaintiffs through requests for production. Indeed, authentication of documents requires that specific steps be taken in accordance with Federal Rule of Evidence 901, and it is the party wishing to introduce a document into evidence at trial that has the burden of taking these steps, not the opposing party. *See* Fed. R. Evid. 901(a) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its *proponent* claims.") (emphasis added). Moreover, this affidavit has already been produced to the Ungars' Israeli counsel and was marked as an exhibit at the preliminary injunction hearing by PA/PLO counsel. Defendants should not be burdened with producing it.

D.  **Defendants Should Not be Compelled to Produce Documents Responsive to Request Nos. 6(j)-(l) or 14(a)**

In Request Nos. 6(j)-(l), Plaintiffs seek "[a]ll" documents relating to communications and agreements to which Hamas and the PA and/or PLO were parties between September 1, 1993 and June 9, 1996. According to Plaintiffs, this information relates to issues of Defendants' alleged liability for the claims asserted by Plaintiffs in this action or Defendants' meritorious defenses to such claims, to which Defendants object in light of the Order of Magistrate Judge Martin dated October 27, 2010 (Dkt. No. 577), which is the subject of a pending appeal by Defendants. *See* Dkt. Nos. 593, 594.

1119481.1

Moreover, there were no "agreements" as represented by Plaintiffs. In December 1995, representatives from the PA and the PLO and persons purporting to represent Hamas met in Cairo to discuss then-President Yasser Arafat's request that Hamas leaders order an end to all forms of violence by Hamas in the West Bank, the Gaza Strip, and in Israel. The PA, PLO and Hamas representatives also discussed the possible participation by Hamas in elections for the Palestinian Legislative Council that would take place in 1996. Defendants are not aware of the existence of any written minutes of the meeting that occurred in Cairo, at least in the files of the PA or PLO.

In any event, Defendants have looked for documents responsive to Request Nos. 6(j)-(l), but have not yet found any. Should the Court decide that Defendants must produce documents in response to Request Nos. 6(j)-(l), Defendants will produce documents if any are located.

As to Plaintiffs' Request No. 14(a), Defendants have produced the letter Plaintiffs seek. *See* Exh. 17 at 2. Yet again, had Plaintiffs observed the Federal Rules of Civil Procedure and engaged in a meaningful meet and confer process with Defendants, they would know what they had before they moved.

### E.    Defendants Should Not be Compelled to Produce Documents Responsive to Request Nos. 14(b)-(f)

Finally, in truncated fashion, Plaintiffs argue that Defendants should be compelled to produce documents responsive to Request Nos. 14(b)-(f), which seek "[a]ll" documents concerning the positions, titles and/or jobs held by numerous individuals. However, each of these document requests includes multiple sub-parts. *See* Exh. 1 at 28-29. Plaintiffs gloss over the overbroad nature of the requests and fail to even identify which sub-part(s) they want to have compelled. The Court should deny Plaintiffs' Motion with respect to these requests for this reason alone.

1119481.1

Plaintiffs also fail to present arguments against Defendants' objections, except to call them "boilerplate." Dkt. No. 584 at 16. Indeed, Plaintiffs' entire argument to compel responses to these requests consists of eight lines. Plaintiffs ignore that these requests are tremendously overbroad because they essentially seek "[a]ll" documents with the name of individual referenced on it.

Additionally, in their overbreadth, Request Nos. 14(b)-(f) could be seen as calling for the production of privileged materials. The individuals identified by Plaintiffs in these requests -- Mohammad Dahlan, Jibril Rajoub, Razi Jabali, Tawfik Tirawi and Amin Al-Hindi -- are or were potential witnesses in this case and have been the subject of motions practice, including within Defendants' pending Rule 60(b)(6) motion. Plaintiffs' requests could be construed as seeking defense counsel's communications with Defendants' regarding these individuals related to the pending Rule 60(b)(6) motion.

Plaintiffs' Request Nos. 14(b)-(f) also seek each individual's "home and work addresses," which are irrelevant to this case. To the extent these individuals may be witnesses at the January 2011 hearing, Defendants have provided their current addresses in their latest interrogatory answers. There is no need for Defendants to divulge the current home or work addresses of the remaining individuals for the purposes of this litigation. Additionally, as Defendants have noted elsewhere in this opposition, to the extent that Plaintiffs seek this information for use in other cases, then the requests are improper in any event.

Finally, Defendants have already produced responsive documents sufficient to show what Plaintiffs claim to want to know -- the titles, positions and jobs of these individuals on particular dates. *See* Exh. 17 at 2-3. Plaintiffs seem not to realize that they possess this information. At the risk of being repetitive, Defendants are forced to note that these requests would not have

1119481.1

been included in their Motion to Strike and Compel had they properly conferred with Defendants. Plaintiffs' abuse of the discovery process and ignorance of their obligations are reason enough for the Court to deny their Motion.

## CONCLUSION

For the reasons set forth herein, the Court should deny Plaintiffs' Motion to Strike Defendants' Objections to and Compel Compliance with Certain Requests Contained in Plaintiffs-Judgment Creditors' Third Request for Production.

Respectfully submitted,

Dated: November 19, 2010

/s/ Mark J. Rochon
Mark J. Rochon (D.C. Bar #376042)
Admitted *pro hac vice*
Richard A. Hibey (D.C. Bar #74823)
Admitted *pro hac vice*
Brian A. Hill (D.C. Bar #456086)
Admitted *pro hac vice*
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
mrochon@milchev.com
rhibey@milchev.com
bhill@milchev.com

Deming E. Sherman (#1138)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, Rhode Island 02903
Tel. (401) 274-9200
Fax. (401) 276-6611
dsherman@eapdlaw.com

*Attorneys for the Palestinian Authority and
the Palestine Liberation Organization*

1119481.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 19th day of November 2010, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to:

> David J. Strachman
> McIntyre, Tate & Lynch, LLP
> 321 South Main Street, Suite 400
> Providence, RI 02903
> djs@mtlhlaw.com
>
> Max Wistow
> Wistow and Barylick Incorporated
> 61 Weybosset Street
> Providence, RI 02903
> mwistow@wistbar.com

And that a copy was served by First Class Mail on the following:

> Robert J. Tolchin
> The Berkman Law Office, LLC
> 111 Livingston Street, Suite 1928
> Brooklyn, New York 11201
> RJT@TolchinLaw.com
>
> *Attorneys for Plaintiffs*

/s/ Mark J. Rochon

1119481.1