# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

      Plaintiffs – Judgment Creditors,

    v.                                                                         Civ. No. 00-105L

THE PALESTINIAN AUTHORITY, et al.,

      Defendants – Judgment Debtors.

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS-JUDGMENT CREDITORS' SECOND MOTION IN LIMINE

### Introduction

On October 26, 2010, the Court entered an Order granting in part Plaintiffs-Judgment Creditors' ("Ungars") Motion to Preclude, to Compel and for Related Relief, and providing that Defendants-Judgment Creditors Palestinian Authority and Palestine Liberation Organization ("Defendants") "may only rely upon materials in the public record" in support of their argument that the judgment in this case has foreign policy implications and/or that the denial of Defendants' Rule 60(b)(6) motion to vacate will have foreign policy implications. Dkt. # 574, p. 1.

Unfortunately, Defendants have indicated their intention to violate this Order by seeking to introduce testimony from expert and fact witnesses in support of their "foreign policy implications" argument at the upcoming hearing on their motion to vacate.

The provisions of the Court's October 26 Order are of course self-executing and need not be reiterated in a new order. But unless the Court issues an order prohibiting the Defendants, in advance, from seeking to introduce these witnesses at the hearing, the Court will unnecessarily

waste precious time and resources during the hearing considering and ruling on Defendants' efforts to introduce this precluded testimony. An *in limine* ruling is therefore necessary.

## **RELEVANT BACKGROUND**

Defendants have consistently and vigorously asserted, before this Court and the Court of Appeals, that their Rule 60(b)(6) motion to vacate should be granted because the judgment in this case has foreign policy implications and/or because denial of the motion to vacate will have foreign policy implications. *See* dkt. # 519 at 3-6 (collecting and quoting Defendants' arguments and submissions on this issue in this Court and the First Circuit).

Defendants sought to support this argument with a declaration from PA Prime Minister Salam Fayyad. *See* Declaration of Salam Fayyad, dkt. # 408-2 at Exhibit B.

Accordingly, when the Ungars took Fayyad's deposition in this matter on July 28, 2010, they sought to test Defendants' "foreign policy implications" claim by questioning Fayyad about his communications with the U.S. government regarding this case.

Mr. Fayyad refused to answer the Ungars' questions on this topic, asserting that his communications with the U.S. government are subject to "diplomatic privilege."

In light of Fayyad's refusal to answer questions on this issue, the Ungars filed a motion for an order precluding the Defendants from asserting in support of their motion to vacate that the judgment in this case has foreign policy implications and/or that the denial of their motion to vacate will have foreign policy implications, and precluding Defendants from introducing any evidence or testimony in putative support of any such assertion. Dkt. # 518.

The Ungars argued in their motion to preclude that "Defendants cannot have it both ways: they cannot claim in support of their motion to vacate that leaving the judgment intact

would have foreign policy implications and then refuse to enable the Ungars to test those claims by asserting a claim of "diplomatic privilege." Dkt. # 519 at 10.

In their opposition to the Ungars' motion to preclude, the Defendants reiterated their position that Fayyad's communications with the U.S. government are subject to "diplomatic privilege" (or, more precisely, "state secrets" privilege), argued that the Ungars' motion should not be granted and asserted that, in any event, Defendants' foreign policy implications argument would be based on materials in the public record. Dkt. # 12 at 4 n. 1 and at 12.

In their reply, the Ungars noted the Defendants' agreement to limit the evidence they will present in support of their "foreign policy implications" argument to materials in the public record, but pointed out that this putative "concession" was in fact *mandated* by the rule that when a governmental party relies on the "state secrets privilege" (including "diplomatic privilege") the court must provide relief to the party seeking the evidence by making "orders which the interests of justice require, including striking the testimony of a witness [and/or] finding against the government upon an issue as to which the evidence is relevant." Dkt. # 566 at 4-6 (quoting Proposed Rule 509(e), Revised Draft of the Proposed Rules of Evidence, 51 F.R.D. 315, 375-376 (1971), and citing other authorities for this principle).

The Ungars took the position in their reply that: "Defendants' agreement to limit the substance of their 'foreign policy implications' argument and limit the evidence they will present in support of that argument to materials in the public record is required by their invocation of diplomatic privilege, and the Ungars have no objection to withdrawing this prong of their motion provided that Defendants' agreement to so limit their argument and evidence is expressly anchored in a court order." *Id*. at 6.

On October 26, 2010, the Court granted the motion to preclude in part, and directed that Defendants "may only rely upon materials in the public record" in support of their argument that that the judgment in this case has foreign policy implications and/or that the denial of Defendants' Rule 60(b)(6) motion to vacate will have foreign policy implications. Dkt. # 574, p.1.

Defendants have served the Ungars' counsel with an "expert report" from Glenn E. Robinson, whom Defendants intend to call as an expert witness at the hearing on their motion. Pages 17-19 of Robinson's report indicate that he intends to present opinion testimony in support of Defendants' "foreign policy implications" argument. Exhibit A at 17-19.

Additionally, Defendants have informed the Ungars' counsel of the identity of several fact witnesses they intend to call at the hearing, at least one of whom Defendants previously indicated would testify in support of their "foreign policy implications" argument.

In light of the above, the Ungars' counsel emailed Defendants' counsel to request that the latter confirm, pursuant to the Court's October 26 Order, that the Defendants will not seek to present opinion testimony from Mr. Robinson or any other purported expert, or any fact testimony, or any evidence other than "materials in the public record," in support of their "foreign policy implications" argument. Exhibit B.

Defendants' counsel refused this request and, to the contrary, expressly stated Defendants' intention to introduce both Robinson's opinion testimony and possibly the testimony of fact witnesses in support of their "foreign policy" argument. Exhibit C.

In light of Defendants' position, and to avoid wasting the limited time and resources of the Court litigating this dispute in the midst of the hearing, the Ungars bring the instant motion.

**ARGUMENT**

Defendants assert that they are entitled to introduce opinion and fact testimony in support of their "foreign policy implications" argument, so long as their expert and fact witnesses use materials in the public record as props for their testimony. Exhibit C.

According to Defendants, they can "rely[] on" Robinson's opinion testimony in support of their argument, as long as Robinson "references" materials in the public record. *Id*.

Defendants' position should be rejected because it flies in the face of the express language of the October 26 Order. The Court directed that "that Defendants in making [their foreign policy] argument may only rely upon materials in the public record." Dkt. # 574.

The Order speaks of Defendants' reliance on public materials – clearly meaning that Defendants may rely only on such materials in supporting their "foreign policy" argument. Under the plain language of the Order such reliance must be ***direct*** – the Order does ***not*** state that Defendants may rely on the testimony of opinion or fact witness, so long as the latter pepper their testimony with reference to public documents. Such testimony would constitute an entirely new form of proof, which the Order does not permit.

Defendants' somewhat arrogant argument that "[w]e made clear to the Court that we were calling Professor Robinson" during oral argument (Exhibit C) should be rejected. Parties cannot dictate to the Court and the Court's Order makes no allowance for expert testimony. That is unsurprising, considering that Defendants' passing reference to Robinson's testimony (for the first time at oral argument) directly contradicted the representation in their opposition to the motion to preclude that they would rely only on materials in the public record.

Moreover*,* Defendants' position makes a complete mockery of the substance and purpose of the remedy granted to the Ungars in the Court's October 26 Order. Defendants have come to this Court seeking extraordinary relief loudly asserting that "foreign policy" issues are at stake.

5

Yet, Defendants refused to permit the Ungars to test that claim by examining the main proponent of Defendants' "foreign policy" claims, Mr. Fayyad. As the Ungars correctly argued in their motion to preclude, "Defendants cannot have it both ways: they cannot claim in support of their motion to vacate that leaving the judgment intact would have foreign policy implications and then refuse to enable the Ungars to test those claims." Dkt. # 519 at 10.

Since Defendants elected to block the Ungars from eliciting testimony from Mr. Fayyad on this issue, the proper course was to limit the type of evidence Defendants are permitted to adduce in support of this claim – as the Court's October 26 Order does.

To now permit the Defendants to introduce expert opinion testimony and fact testimony regarding this issue would completely undermine the remedy crafted by the Court in its October 26 Order. Such a result would leave the Ungars – and the Court – totally ignorant of the contents of the communications between Fayyad and the U.S. government regarding this case – which are obviously the ***best*** possible source of information supporting or refuting Defendants' "foreign policy" argument – while allowing Defendants to introduce testimony that ***might very well be completely at odds*** with the substance of what our government told Fayyad.

That such witnesses would "reference" or "rely on" documents in the public record in the context of their testimony is of no moment: allowing opinion or fact testimony about this issue means allowing Defendants to introduce ***an entirely new and different type of proof*** – beyond materials in the public record – in support of their "foreign policy" argument. Allowing such testimony would be no different than allowing the introduction of non-public documents.

**WHEREFORE**, the instant motion should be granted.

6

Dated: November 26, 2010

Plaintiffs-Judgment Creditors,
by their Attorneys,

/s/ David J. Strachman
David J. Strachman (#4404)
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com

Max Wistow (#0330)
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com

Robert Joseph Tolchin
111 Livingston Street
Suite 1928
Brooklyn, NY 11201
(718) 855-3627
(718) 504-4943 (fax)
rjt@tolchinlaw.com

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that, on November 26, 2010, a true copy of the foregoing was filed by ECF which served Defendants' counsel of record listed below:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701

                                                   /s/ David J. Strachman