# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

      Plaintiffs – Judgment Creditors,

v.                                                          Civ. No. 00-105L

THE PALESTINIAN AUTHORITY, et al.,

      Defendants – Judgment Debtors.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS-JUDGMENT CREDITORS' MOTION TO COMPEL AND FOR SANCTIONS

### Introduction

On October 27, 2010, the Court entered an Order granting in part Plaintiffs-Judgment Creditors' ("Ungars") Motion to Strike and to Compel and denying in part the motion for a protective order filed by Defendants-Judgment Creditors Palestinian Authority and Palestine Liberation Organization ("Defendants").

That October 27 Order struck all of the objections asserted by Defendants to the Ungars' requests for written communications between the Defendants (including any officeholder, employee, attorney and/or agent of the Defendants) and (1) the Palestine Investment Fund ("PIF") (including any person purporting to be an office-holder, employee, attorney and/or agent of the PIF) and (2) the Palestinian Commercial Services Company ("PCSC") (including any officeholder, employee, attorney and/or agent of PCSC), except for objections based on privilege, and directed the Defendants to produce by November 12, 2010: (1) all such

communications except those for which a claim of privilege is asserted and (2) a privilege log listing all such communications for which a claim of privilege is asserted. Dkt. # 575.

Defendants have failed to comply with this Order. They did not produce a single such communication on November 12 or since. Instead, Defendants produced a privilege log listing only communications between Defendants' counsel, Miller & Chevalier, and various third parties between April 2007 and the present, all of which Defendants claim are "work-product."

Subsequently, Defendants produced an amended privilege log which, like the original, lists only communications between Miller & Chevalier and sundry third parties between April 2007 and the present, all of which are designated as "work-product." Exhibit A.

Defendants' privilege log does not list any *direct* communications (i.e. communications not via attorneys) between the Defendants and the PIF or persons purporting to represent the PIF, nor does it list any communications *whatsoever* for the entire period between April 2005 (when the Ungars initiated enforcement proceedings against assets titled to the PIF) and April 2007.

In other words, Defendants' "production" in response to the October 27 Order consists solely and entirely of a privilege log listing Miller & Chevalier's communications between April 2007 and the present. Obviously, then, Defendants' "search" for documents in response to the Order included nothing more than Miller & Chevalier's own in-house search.

Moreover, as discussed below, the privilege log served by Defendants is fatally inadequate, because it does not show – indeed, it does not even attempt to show – why the documents listed therein are purportedly protected by the "work product" privilege.

Upon receipt of the privilege log the Ungars' counsel contacted Defendants' counsel and requested that Defendants withdraw their unsubstantiated assertions of privilege and produce or

provide a privilege log for all pre-April 2007 communications and all communications between the Defendants and the PIF and PCSC that were not conducted via attorneys. Exhibits B, C, D.

In response, Defendants' counsel refused to withdraw or support the assertions of privilege and indicated that Defendants would not produce or provide a privilege log for any pre-2007 communications or direct communications between the Defendants and the PIF/PCSC unless the Ungars can show they exist. *See* Exhibit E ("If you are aware of any such written communications, please identify them as soon as possible, and Defendants will undertake additional search efforts directed to finding those written communications.").

In other words, Defendants have taken the "catch-me-if-you-can" position that they will not produce communications from before April 2007 or direct communications between the PA and PIF/PCSC, unless the Ungars can first prove that the Defendants are hiding them.

At the same time, Defendants' counsel admitted that Defendants' search for documents was ***not*** comprehensive, but merely what Defendants unilaterally deemed to be "a ***reasonable*** search and investigation ***under the circumstances***." Exhibit E (emphasis added). Defendants' counsel also indicated that this "search" was called off on November 12. *See id*. ("No additional, responsive documents were identified by the time of the November 12, 2010 deadline.").

The Ungars' counsel asked Defendants' counsel whether they were representing that there were never any written communications between their and the PIF regarding the relevant topics except via attorneys and that there were never any written communications between the their clients and the PIF (i.e. via attorneys or otherwise) between 2005 and 2007. Exhibit D.

The Ungars' counsel also asked Defendants' counsel to specify exactly what "reasonable" search was made by the Defendants in response to the October 27 Order. *Id*.

Defendants' counsel refused to respond to these requests.

3

In light of the above the Ungars bring the instant motion.

## ARGUMENT

**I.  Defendants Should Be Compelled to Produce, by December 15, 2010, All Responsive Documents Not Listed in Their Privilege Log**

Request No. 1 of the Ungars' Second Request for Production of Documents and Things Relevant to Defendants-Judgment Debtors' Rule 60(b)(6) Motion, as endorsed and modified by the Court's October 27 Order, requires Defendants to produce:

> Authentic copies of all written communications, relating to the instant case, the [July 13, 2004] Judgment and/or the [September 19,] 2006 [Creditor's Bill] Judgment, between the PA and/or the PLO (including any office-holder, employee, attorney and/or agent of the PA and/or PLO) and the following entities: … (f) the Palestine Investment Fund (including any person purporting to be an office-holder, employee, attorney and/or agent of the Palestine Investment Fund); and (g) the Palestinian Commercial Services Company (a/k/a Palestine Commercial Services Company) (hereinafter "PCSC") (including any office-holder, employee, attorney and/or agent of PCSC).

*See* dkt. # 552, Exhibit V at Request 1 as modified by dkt. # 575 at ¶ 2.

As discussed *supra*, notwithstanding the October 27 Order, the Defendants have not produced any documents, and their privilege log lists no ***direct*** communications between Defendants and PIF/ PCSC and no communications ***of any kind*** prior to April 2007. Exhibit A.

On its face, then, Defendants' privilege log is obviously nothing more than the product of Miller & Chevalier's own internal search for documents.

Indeed, Defendants do not even claim to have made a comprehensive search for responsive documents as required by the Court. Rather, they conducted nothing more than what they consider "a reasonable search and investigation under the circumstances." Exhibit E.

4

And when Defendants' counsel were asked by the Ungars' counsel to describe the substance of this search, and whether they would represent as officers of the Court that there are no additional response documents (Exhibit D), Defendants' counsel simply refused to respond.

Defendants' admission that their search was not comprehensive and their refusal to affirmatively represent that there are no additional responsive documents are unsurprising, given that any claim that there were no *direct* communications between Defendants and the PIF/PCSC and that there were no communications *at all* between Defendants and the PIF/PCSC (direct or via attorneys) prior to April 2007 would strain credulity far past the breaking point.

As detailed in the Ungars' Motion to Strike and to Compel, the Ungars first initiated enforcement proceedings against PIF-held assets in early 2005, and these enforcement proceedings have been litigated ever since. Dkt. # 552 at 5-7. Moreover, on September 19, 2006, this Court entered judgment on the Ungars' creditor's bill, transferring to the Ungars ownership of the PIF and PCSC. *Id.*.

Additionally, since 2005 or 2006, Mohammed Mustafa, the "Economic Adviser" to the President of the PA, who also purports to be the CEO of the PIF, has brought a number of a legal proceedings overseas to block the Ungars' efforts to enforce their judgment. *Id*. at 10-11.

Moreover, in November 2006 PA President Abbas stated that the PIF was "under the supervision" of his office, and that he had tasked the counsel for the PA and Mustafa himself to challenge the Ungars' enforcement proceedings regarding the PIF. *See* Exhibit F.

Given the fact that the PA's Economic Advisor is also the person who controls the PIF "under the supervision" of the PA President's office, and the fact that the Ungars' enforcement proceedings against PIF-held assets began in 2005, and the attempts by the PA/PIF to stymie those efforts no later than 2006, it would be absurd to conclude that between 2005 and the

5

present day there were no *direct* communications between Defendants and the PIF or that there were no communications *at all* between Defendants and the PIF prior to April 2007.

Therefore, the Court should order the Defendants to conduct a thorough and comprehensive search for *all* responsive documents. Given the December 17 deadline for the filing of the parties' pre-hearing submissions, Defendants should be ordered to produce these documents no later than December 15. And since Defendants have failed to include these documents in their privilege log, Defendants should be found to have waived any claims of privilege in respect to these missing documents.

## II. Defendants Should Be Compelled to Produce, by December 15, 2010, All Documents Listed in Their Privilege Log

For the reasons set forth below, the Defendants should be ordered to produce all the documents listed in their privilege log.

### A. Defendants Have Waived Privilege by Producing an Inadequate Log

It is fundamental that "[t]he party asserting the privilege bears the burden of proof that privilege applies to the contested document." *Mullins v. Department of Labor of Puerto Rico*, 269 F.R.D. 172, 174 (D.P.R. 2010) (citing *U.S. v. Wilson*, 798 F.2d 509, 512 (1st Cir. 1986)).

As part of this burden the party asserting the privilege must provide the Court with a privilege log containing sufficient details to establish the basis for the claimed privilege; a failure to do so will result in an order compelling production. *See e.g. Anaya v. CBS Broadcasting, Inc.*, 251 F.R.D. 645, 651 (D.N.M. 2007) ("The law is well settled that failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege.") (quotations omitted); *Alleyne v. New York State Educ. Dept.*, 248 F.R.D. 383, 386 (N.D.N.Y. 2008) ("The failure to provide sufficient detail to test each legal element of an asserted privilege may result in rejection of the assertion."); *Johnson v. Kraft Foods North America, Inc.*, 2007 WL

6

2815969 (D.Kan. 2007) (Court ordered production where party's privilege log "had not met its burden of clearly establishing that the documents were prepared in anticipation of litigation" because of the "the absence of information in the privilege log" establishing that the documents concerned "litigation or anticipated litigation.").

The Defendants assert that all the documents listed in their privilege log are protected by the "work product" privilege. Exhibit A, *passim*.

The "work product privilege" applies only materials "prepared in anticipation of litigation or for trial." Fed.R.Civ.P. 26(b)(3)(A). Importantly, "[i]t is not enough to trigger work product protection that the *subject matter* of a document relates to a subject that might conceivably be litigated. Rather, as the Supreme Court explained, "the literal language of [Rule 26(b)(3)] protects materials *prepared for* any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *U.S. v. Textron Inc. and Subsidiaries*, 577 F.3d 21, 29 (1st Cir. 2009) (quoting *Federal Trade Commission v. Grolier Inc.*, 462 U.S. 19, 25 (1983)).

Thus, in order for Defendants to successfully assert a claim of privilege in respect to the documents listed in their privilege log, they would need to provide the Court with information demonstrating that each of the documents was (1) "*prepared for* any litigation or trial," (2) "by or for a party to the subsequent litigation." *U.S. v. Textron Inc.*, 577 F.3d at 29.

Defendants' privilege log makes no showing whatsoever that any of the communications listed therein were "*prepared for* any litigation or trial."

Furthermore, nothing in the log demonstrates that the communications were prepared "by or for a party" to any litigation. The Defendants are not parties to the Ungars' enforcement proceedings. Nor does the log provide the slightest hint that that the communications were prepared "for" the actual parties to those proceedings. Moreover, none of the parties to the

7

enforcement proceedings are parties to this action. Therefore, none of these communications can constitute work-product. *See e.g. Loustalet v. Refco*, 154 F.R.D 243, 247 (C.D.Cal. 1993) (Work-product doctrine does not protect from discovery documents prepared for one who is not a party to the present suit, even if the person may be a party closely related to the lawsuit in which he will be disadvantaged if he must disclose in present suit); *Ostrowski v. Holem*, 2002 WL 31956039 at *3 (N.D.Ill. 2002) (same); 8 Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2024, at 354 ("Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged.").

Not only have Defendants failed to substantiate their claims of privilege, but numerous documents listed in their log are clearly ***not*** protected by the work product privilege. For example, items 18, 37, 39, 46, 95, 125, 126, 137, 152, 153-164, 211, 230, 234, 237-248, 258, 261-266, 269, 271-273, 277-278, 288, 290, 293-295 and 297 all relate to communications with the U.S. Government, which is not a party to and has not appeared in any of the Ungars' enforcement proceedings relating to the PIF. Exhibit A.

It is well established that such communications are not privileged "work product." *See e.g. Information Resources, Inc. v. Dun & Bradstreet Corp.*, 999 F.Supp. 591, 593 (S.D.N.Y. 1998) ("[T]he voluntary submission of material to a government agency to incite it to attack the informant's adversary" waives any work-product privilege).

In sum, because the Defendants have failed to show that the documents listed in their privilege log meet the definition of "work product" their claims of privilege should be rejected and they should be ordered to produce the documents on or before December 15, 2010.

### B. Alternatively, Defendants Should Be Ordered to Produce the Documents Because the Ungars Have Substantial Need for Them

Alternatively, if the Court finds that some or all of the documents listed in the privilege log are indeed privileged, it should nonetheless order their production under Rule 26(b)(3)(A).

Rule 26(b)(3)(A) provides in relevant part that work-product materials are discoverable if: "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed.R.Civ.P. 26(b)(3)(A)(i)-(ii).

These conditions are all met here. These documents are relevant and not subject to any other privilege, and are therefore "discoverable under Rule 26(b)(1)." Moreover, these documents, which the Ungars cannot otherwise obtain without undue hardship, if at all, are extremely important to the Ungars' defense of the Rule 60(b)(6) motion for two reasons:

***First***, this Court has already determined that "Defendants' post-judgment conduct relative to Plaintiff's efforts to enforce the judgment via proceedings against or regarding the PIF and/or PCSC is relevant for purposes of deciding whether the motion to vacate should be granted." Dkt. # 575 at 4.

***Second***, Defendants' privilege log demonstrates that between April 2007, when they were first retained, and late December 2007, when they finally filed the Rule 60(b)(6) motion, Defendants' new counsel, Miller & Chevalier, were intensively involved (from behind the scenes) in assisting the entities resisting the Ungars' enforcement proceedings, sending and and receiving some 175 (!!) communications regarding the PIF alone. *See* Exhibit A at items 11-13, 24-36, 40-46, 53, 71-74, 78-79, 91-96, 102-117, 119-123, 125-145, 147, 152-164, 200-203, 209-213, 219-223, 227-231, 223-251, 255, 257-275, 277-298, 306 and 310.

The active involvement of Defendants' new counsel in the Ungars' enforcement actions during this period is highly relevant to the timeliness of Defendants' motion to vacate.

In their motion, Defendants tried to explain away the nine-month delay in filing their motion after hiring new counsel, by claiming that Miller & Chevalier was too busy with other proceedings to file a Rule 60(b) motion in this Court. Dkt. # 408 at 46.

The 175 communications listed in the log for this period regarding PIF alone (one can only imagine how many other hundreds of communications there must have been regarding the Ungars' other enforcement actions) undermine Defendants' claim that their counsel were too busy with other matters to file a Rule 60(b)(6) motion in this case; the existence of these communications indicates that Miller & Chevalier were involved in this case from behind the scene from day one, and could have filed the Rule 60(b)(6) motion soon after being retained.

For this reason, too, the Court should order production of these documents.

C. *The Crime-Fraud Exception Applies to the Documents Sought*

Alternatively, Defendants' claims of privilege should be rejected under the crime-fraud exception. It is well established that the crime-fraud exception applies where, as here, the documents are sought to prove an attempt to hinder or delay enforcement of a judgment. *See e.g. In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1041 (2nd Cir. 1984) (legal advice sought to enable corporation to take steps "to hinder or delay the government's collection of moneys owing or about to be due from it" was subject to crime-fraud exception to attorney-client privilege); *Cendant Corp. v. Shelton*, 246 F.R.D. 401 (D.Conn. 2007) (Crime-fraud exception to attorney-client privilege applied to permit deposition of defendant's former attorneys regarding formation and operation of trust and limited partnership

that were allegedly used by defendant as vehicles to hinder, delay or defraud creditors); *U.S. v. Gasparik*, 141 F.Supp.2d 361 (S.D.N.Y. 2001) (same).

A party seeking to overcome a claim of privilege on the basis of the crime-fraud exception need not show that the documents or information sought ***definitely*** evidence an attempt to hinder or delay enforcement of a judgment (or some other crime or fraud). Rather, "all that is required for the crime-fraud exception to apply is 'that a prudent person have a reasonable basis to suspect the perpetration of a crime or fraud, and that the communications were in furtherance thereof.'" *In re Grand Jury Subpoena*, 220 F.R.D. 130, 153 (D.Mass. 2004) (quoting *In re Grand Jury Subpoena*, 731 F.2d at 1039).

Here, there is far more than "a reasonable basis to suspect" that the Defendants have been taking actions to hinder or delay enforcement of the judgment and that "the communications [sought by the Ungars] were in furtherance thereof" because Defendants have admitted that the documents will show that they have been coordinating with persons purporting to represent the PIF to hinder or delay enforcement of the Ungars' judgment while Defendants' motion to vacate is pending – in effect arrogating to themselves an unauthorized "stay":

> [T]he PA/PLO and … PIF … have ***a common litigation interest in the PA/PLO having an opportunity to litigate the Ungar case on the merits and in avoiding a default judgment being enforced*** as to Palestinian entities who had no role in the underlying attack and whose assets should not be used to satisfy a judgment as to the PA or PLO.

Dkt. # 527 at 18 (emphasis added).

In plain English, the Defendants are arguing that they have the right to work together with the persons purporting to represent the PIF in order to seek to delay enforcement of the Ungars' judgment until after resolution of their Rule 60(b)(6) motion.

In fact, however, (aside from the fact that this argument is inapplicable to the 175 communications that took place prior to the filing of the Rule 60(b) motion) the Defendants **have no such right**. The Defendants have not sought much less obtained a stay of enforcement pending resolution of their motion. Accordingly, Defendants have no right whatsoever to delay or hinder enforcement of the judgment. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) (Judgment debtor "may be *able* as a practical matter to ... avoid execution of ... judgment, but it has no *right* to do so.") (emphasis in the original).

Moreover, Defendants' attempts to do so are unlawful and unethical. "The use of this court solely as a dilatory tactic to avoid paying a judgment is a serious breach of professional ethics" and a violation of Fed.R.Civ.P. 11. *Overmyer v. Fidelity & Deposit Co. of Maryland*, 554 F.2d 539, 543 n. 4 (2nd Cir. 1977).

Accordingly, the crime-fraud exception overrides any privilege asserted by Defendants.

### III. If Defendants Fail to Produce All Responsive Documents by December 15, 2010, the Court Should Impose a Sanction Pursuant to Fed.R.Civ.P. 37(b)(2)(A)

The Ungars are interested in prevailing on Defendants' motion on the merits and have therefore returned to this Court seeking production, rather than a sanction, in the first instance, despite the fact that they are ***already*** entitled to imposition of a sanction under Rule 37(b)(2)(A) due to Defendants failure to comply with the Court's October 27 Order.

At the same time, the Ungars are facing a looming deadline: their pre-hearing memoranda and exhibits are due on December 17, 2010. Accordingly, the Ungars request that the Court direct, pursuant to Rule 37(b)(2)(A), that if Defendants fail to produce the documents sought in this motion by December 15, 2010: (a) it shall be deemed established as a fact for the purpose of Defendants' Rule 60(b)(6) motion that between July 13, 2004 and the present day Defendants have been intentionally and consistently interfering with the Ungars' efforts to enforce the

judgments entered in their favor by the Court on July 13, 2004 and September 19, 2006; and (b) Defendants are precluded from challenging or contesting the aforementioned established fact.

## IV. Defendants Should be Sanctioned Under Fed.R.Civ.P. 37(b)(2)(C)

Rule 37(b)(2)(C) provides for imposition of a party's reasonable expenses, including attorney's fees, caused by the failure to obey a court order. A shown above, Defendants have failed to obey the Court's October 27 Order – inter alia, even admitting that they did not conduct a comprehensive search for responsive documents.

Accordingly, the Court should order Defendants to pay the Ungars their expenses, including attorney's fees, arising from the instant motion.

**WHEREFORE**, the instant motion should be granted.

Dated: November 26, 2010

Plaintiffs-Judgment Creditors,
by their Attorneys,

/s/ David J. Strachman
David J. Strachman (#4404)
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com

Max Wistow (#0330)
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com

                                      Robert J. Tolchin
                                      The Berkman Law Office, LLC
                                      111 Livingston Street
                                      Suite 1928
                                      Brooklyn, NY 11201
                                      (718) 855-3627
                                      (718)-504-4943 (fax)
                                      rjt@tolchinlaw.com

Case 1:00-cv-00105-L-DLM    Document 619    Filed 11/29/10    Page 14 of 15 PageID #: 9167

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 29, 2010, a true copy of the foregoing was filed by ECF which served Defendants' counsel of record listed below:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701

I HEREBY CERTIFY that, on November 29, 2010, a true copy of the foregoing was hand served at the office of the following counsel:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

/s/ David J. Strachman