# EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

                 Plaintiffs – Judgment Creditors,

       v.

                                       Civ. No. 00-105L

THE PALESTINIAN AUTHORITY, et al.,

                 Defendants – Judgment Debtors.

## PLAINTIFF JUDGMENT-CREDITORS' RESPONSES AND OBJECTIONS TO THE PALESTINIAN AUTHORITY'S AND THE PALESTINE LIBERATION ORGANIZATION'S FIRST REQUEST FOR ADMISSIONS TO ALL PLAINTIFFS

       Plaintiffs, by and through their counsel, pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure hereby submit their objections and responses to "Defendants The Palestinian Authority's and the Palestine Liberation Organization's First Request for Admissions to All Plaintiffs" Nos. 1-233 dated October 20, 2005 ("Requests") and state as follows:

### GENERAL RESPONSES AND OBJECTIONS

       Plaintiffs assert the following Objections to each of the requests for admissions ("Requests"):

       1.     Plaintiffs object to the Requests to the extent that the definitions or instructions set forth therein seek to impose requirements beyond those contained in the Federal Rules of Civil Procedure of the Local Rules of this Court.

       2.     Plaintiffs object to the Requests to the extent that they seek information protected from disclosure by the attorney-client privilege, the work-product doctrine, the joint defense

privilege, the common interests doctrine or any other applicable statutory or common law privilege.

     3.     Plaintiffs object to the Requests to the extent that they seek information which is not a proper subject under Fed. R. Civ. P. 26 and 36 and/or that they are not reasonably calculated to lead to the discovery of information which is relevant to the proceedings that are presently before the Court.

     4.     Plaintiffs object to the Requests to the extent they seek admissions regarding allegations or information that is not within Plaintiffs' possession, custody or control.

     5.     Plaintiffs object to the Requests to the extent that they are vague or ambiguous or fail to describe the allegations or information sought with sufficient particularity to allow for a meaningful response by Plaintiffs.  When attempting to respond to each Request, Plaintiffs will make such responses to the extent that they understand the Request.

     6.     Plaintiffs object to the Requests to the extent they seek disclosure of any confidential, or other protected information or documents prior to, or in the absence of, an appropriate protective order or confidentiality agreement placing proper limitations and restrictions on the post-production use or disclosure of such information by Defendants.

     7.     Plaintiffs object to the Requests to the extent that they lack any date or time period definition or restriction.  To the extent that Defendants have failed to specify their claims or issues at all or to the degree necessary to determine a proper scope of request and to identify information responsive thereto, Plaintiffs reserve the right to modify, amend or supplement their responses to these Requests accordingly.

     8.     The response to any Request shall not be deemed a waiver of any objection Plaintiffs may wish to interpose at any proceeding, hearing or trial with respect to the matters

disclosed thereby or with respect to the relevancy, materiality or admissibility of the information referenced or contained in that response. Each response is made without prejudice to, or waiver of, any objection Plaintiffs may make to any future use of such response.

9.      Any responses by Plaintiffs are based on the knowledge and information presently available to Plaintiffs. Plaintiffs reserve the right to revise, alter, amend or supplement their responses to the Requests if and when relevant facts, information or documents become known to Plaintiffs.

10.     Plaintiffs object to the Requests to the extent that any of the terms used by Defendants: (a) mischaracterize certain persons, events or documents; (b) are based on, or derive from, allegations or statements by Plaintiffs that are vague, ambiguous or misleading; (c) assume certain facts which have not been established; or (d) entail, assume or reflect conclusions of law.

11.     To the extent that any Request, or portion of a Request, is not specifically addressed by a response below, Plaintiffs deny that Request or portion of the Request.

12.     Plaintiffs reserve the right to amend, modify or supplement their responses in the manner and to the extent required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

13.     Plaintiffs object to the Requests to the extent that they seek admissions and/or a response with respect to issues to which Defendants have not yet fully complied with outstanding discovery demands, failed and/or refused to provide discovery and/or to the extent that discovery is not yet complete.

14.     Plaintiffs object to the Requests to the extent that they seek information and/or admissions with respect to topics, issues, subjects, areas of inquiry, facts, allegations and statements that are beyond the parameters of Judge Lagueux's Order of April 1, 2010 (dkt. #

3

482), Magistrate Judge Martin's Order Granting in Part and Denying in Part Motions (dkt. #

575), Order Granting in Part and Denying in Part Defendants' Motion to Compel (dkt. # 577),

Order Granting Defendants' Motion for Protective Order Identifying Relevant Rule 30(b)(6)

Topics (dkt. # 578), Order Denying Defendants' Motion for Mental Examinations (dkt. # 579)

and/or beyond the scope of Defendants' Motion to for (sic) Relief from Default Judgment.  Dkt.

# 408.  (Defendants' "Rule 60(b) Motion to Vacate").

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST    1.**    Jamal Abdel Fatah Tzabich Al Hor, Abdel Rahman Ismail Abdel Rahman

Ghanimat, and Raed Fahri Abu Hamdiya were members of a Hamas cell.

### Response

Plaintiffs incorporate by reference, as if fully set forth herein, the foregoing General

Objections.  In addition, Plaintiffs object to this Request on the grounds that: (a) it is not

reasonably calculated to lead to the discovery of admissible evidence relating to the proceeding

that is presently before this Court, i.e., Defendants' Rule 60(b) Motion to Vacate, (b) it requests

information contrary to Magistrate Judge Martin's ruling that "Defendant The Palestinian

Authority ("PA") does not need discovery from Plaintiffs in order to establish the existence of a

meritorious defense. . .accordingly, Defendant is not entitled to merits of discovery," Dkt. # 577,

p. 2, and (c) Magistrate Judge Martin has already ruled that Defendants are not permitted

discovery which "would have the practical effect of re-opening this case before the Court has

determined whether it should be reopened." Dkt. # 577, p. 3.

**REQUEST    2.**    The Hamas cell of which Jamal Abdel Fatah Tzabich Al Hor, Abdel

Rahman Ismail Abdel Rahman Ghanimat, and Raed Fakhri Abu Hamdiya were members

received instructions, weapons, money, and material support from the commanders and leaders of Hamas.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.[1]

**REQUEST  3.**    The Hamas cell of which Jamal Abdel Fatah Tzabich Al Hor, Abdel Rahman Ismail Abdel Rahman Ghanimat, and Raed Fakhri Abu Hamdiya were members did not receive instructions, weapons or money from the PA prior to the shooting.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST  4.**    The Hamas cell of which Jamal Abdel Fatah Tzabich Al Hor, Abdel Rahman Ismail Abdel Rahman Ghanimat, and Raed Fakhri Abu Hamdiya were members did not receive instructions, weapons or money from the PLO prior to the shooting.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST  5.**    Plaintiffs have no evidence that the Hamas cell of which Jamal Abdel Fatah Tzabich Al Hor, Abdel Rahman Ismail Abdel Rahman Ghanimat, and Raed Fakhri Abu Hamdiya were members received instructions, weapons or money from the PA prior to the shooting.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST  6.**    Plaintiffs have no evidence that the Hamas cell of which Jamal Abdel Fatah Tzabich Al Hor, Abdel Rahman Ismail Abdel Rahman Ghanimat, and Raed Fakhri Abu

---

[1] Plaintiffs incorporate objections previously asserted in order to avoid excessive duplication and to make this document less cumbersome.

5

Hamdiya were members received instructions, weapons or money from the PLO prior to the shooting.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST   7.**     Plaintiffs have no evidence that the Hamas cell of which Jamal Abdel Fatah Tzabich Al Hor, Abdel Rahman Ismail Abdel Rahman Ghanimat, and Raed Fakhri Abu Hamdiya were members received instructions, weapons or money from either the PA or the PLO prior to the shooting.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST   8.**     No one other than Jamal Abdel Fatah Tzabich Al Hor and Abdel Rahman Ismail Abdel Rahman Ghanimat carried out a machine-gun attack on Yaron Ungar on June 9, 1996 from a car driven by Raed Fakhri Abu Hamdiya.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST   9.**     No one other than Jamal Abdel Fatah Tzabich Al Hor and Abdel Rahman Ismail Abdel Rahman Ghanimat were passengers in the car driven by Raed Fakhri Abu Hamdiya when the June 9, 1996 machine gun attack on Yaron Ungar was carried out.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST   10.**     The weapons used in the shooting attack on Yaron Ungar were two Kalashnikov rifles.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    11.**    Jamal Abdel Fatah Tzabich Al Hor, Abdel Rahman Ismail Abdel Rahman Ghanimat, and Raed Fakhri Abu Hamdiya carried out a machine-gun attack on Yaron Ungar as agents of Hamas.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    12.**    Jamal Abdel Fatah Tzabich Al Hor, Abdel Rahman Ismail Abdel Rahman Ghanimat, and Raed Fakhri Abu Hamdiya did not carry out the shooting attack on Yaron Ungar as agents of the PA.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    13.**    Jamal Abdel Fatah Tzabich Al Hor, Abdel Rahman Ismail Abdel Rahman Ghanimat, and Raed Fakhri Abu Hamdiya did not carry out the shooting attack on Yaron Ungar as agents of the PLO.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    14.**    Plaintiffs have no evidence that Jamal Abdel Fatah Tzabich Al Hor, Abdel Rahman Ismail Abdel Rahman Ghanimat, and Raed Fakhri Abu Hamdiya carried out the shooting attack on Yaron Ungar as agents of the PA.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    15.**    Plaintiffs have no evidence that Jamal Abdel Fatah Tzabich Al Hor, Abdel Rahman Ismail Abdel Rahman Ghanimat, and Raed Fakhri Abu Hamdiya carried out the shooting attack on Yaron Ungar as agents of the PLO.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    16.**    Plaintiffs have no evidence that Jamal Abdel Fatah Tzabich Al Hor, Abdel Rahman Ismail Abdel Rahman Ghanimat, and Raed Fakhri Abu Hamdiya carried out the shooting attack on Yaron Ungar as agents of either the PA or the PLO.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    17.**    Abdel Rahman Ismail Abdel Rahman Ghanimat resided in the town of Surif.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    18.**    Jamal Abdel Fatah Tzabich Al Hor resided in the town of Surif.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    19.**    Raed Fakhri Abu Hamdiya resided in Jerusalem.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    20.**    Under the Interim Agreement on the West Bank and Gaza, the Palestinian Authority has no civil or security authority in Jerusalem during the 1996-1997 period.

**Response** Plaintiffs incorporate by reference, as if fully set forth herein, the foregoing General Objections.  In addition, Plaintiffs object to this Request on the grounds that: (a) it is not reasonably calculated to lead to the discovery of admissible evidence relating to the proceeding that is presently before this Court, i.e., Defendants' Rule 60(b) Motion to Vacate, (b) it requests information contrary to Magistrate Judge Martin's ruling that "Defendant The Palestinian Authority ("PA") does not need discovery from Plaintiffs in order to establish the existence of a meritorious defense. . .accordingly, Defendant is not entitled to merits of discovery," Dkt. # 577, p. 2, (c) Magistrate Judge Martin has already ruled that Defendants are not permitted discovery which "would have the practical effect of re-opening this case before the Court has determined whether it should be reopened." Dkt. # 577, p. 3, and (d) it relates to or seeks a conclusion of law.

**REQUEST    21.**    In 1996, Israel had not transferred any civil authority or security authority to the Palestinian Authority as to the West Bank area that included Surif.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    22.**    At the time of the shooting, the Palestinian Authority had no civil or security authority over the vicinity of Beit Shemesh, where the shooting attack occurred.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    23.**    In 1998, an Israeli court convicted Raed Fakhri Abu Hamdiya of membership in Hamas and of abetting the murder of Yaron Ungar.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    24.**    In 1998, an Israeli court convicted Abdel Rahman Ismail Abdel Rahman Ghanimat of membership in Hamas and of the murder of Yaron Ungar.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    25.**    In 1998, an Israeli court convicted Jamal Abdel Fatah Tzabich Al Hor of membership in Hamas and of the murder of Yaron Ungar.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    26.**    Ronni Shaked gave testimony as a witness for Plaintiffs at the January 15, 2002 hearing in *Ungar v. The Islamic Republic of Iran,* Civ. No. 00-2606 JR (D.D.C.).

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    27.**    Ronni Shaked is beyond the subpoena power of the United States District Court for the District of Rhode Island.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    28.**    Reuvan (sic) Paz gave testimony as a witness for Plaintiffs at the January 15, 2002 hearing in *Ungar v. The Islamic Republic of Iran,* Civ. No. 00-2606 JR (D.D.C.).

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    29.**    Reuvan (sic) Paz is beyond the subpoena power of the United States District Court for the District of Rhode Island.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    30.**    Patrick Clawson gave testimony as a witness for Plaintiffs at the January 15, 2002 hearing in *Ungar v. The Islamic Republic of Iran*, Civ. No. 00-2606 JR (D.D.C.).

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    31.**    Patrick Clawson is beyond the subpoena power of the United States District Court for the District of Rhode Island.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    32.**    The United States District Court for the District of Columbia ordered Plaintiffs' counsel David Strachman to serve as the file clerk for all documents delivered to the court by the Israeli government in *Ungar v. The Islamic Republic of Iran*, Civ. No. 00-2606 JR (D.D.C.)

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    33.**    Plaintiffs' counsel David Strachman retains copies of all documents delivered to the court by the Israeli government in *Ungar v. The Islamic Republic of Iran*, Civ. No. 00-2606 JR (D.D.C.).

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    34.**    All of the exhibits received into evidence by the court at the January 15, 2002 hearing in *Ungar v. The Islamic Republic of Iran,* Civ. No. 00-2606 JR (D.D.C.) are authentic copies of what they purport to be.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    35.**    Yaron Ungar was murdered by agents of Hamas acting on behalf of Hamas.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    36.**    Yaron Ungar was murdered by agents of Hamas acting pursuant to the authorization of Hamas.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    37.**    The commander of the Hamas cell that murdered Yaron Ungar was Nasser Salah Talachmeh.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    38.**    At the time of the shooting, Nasser Salah Talachmeh was a high-ranking Hamas commander.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    39.**    Prior to the shooting, Nasser Salah Talachmeh supplied the Hamas cell that murdered Yaron Ungar with a steady supply of money to increase the volume of Hamas terrorist activity.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    40.**    Prior to the shooting, Nasser Salah Talachmeh supplied the Hamas cell that murdered Yaron Ungar with a Kalashnikov automatic rifle used to shoot at the car in which Yaron Ungar was killed, as well as funds to purchase other weapons.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    41.**    Prior to the shooting, Nasser Salah Talachmeh supplied Abdel Rahman Ismail Abdel Rahman Ghanimat with 2000 Jordanian Dinar.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    42.**    Prior to the shooting, Abdel Rahman Ismail Abdel Rahman Ghanimat supplied Imam Mahmud Hassan Fuad Kafishe with the 2000 Jordanian Dinar he had received from Nasser Salah Talachmeh.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    43.**    Prior to the shooting, Iman Mahmud Hassan Fuad Kafishe used the 2000 Jordanian Dinar he received from Abdel Rahman Ismail Abdel Rahman Ghanimat to buy a Kalashnikov automatic rifle.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    44.**      The Hamas cell that murdered Yaron Ungar used the rifle purchased by Iman Mahmud Hassan Fuad Kafishe to shoot at the car in which Yaron Ungar was killed.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    45.**      Prior to the shooting, Nasser Salah Talachmeh supplied Abdel Rahman Ismail Abdel Rahman Ghanimat with 2000 Jordanian Dinar, which Abdel Rahman Ismail Abdel Rahman Ghanimat gave to Iman Mahmud Hassan Fuad Kafishe, who used that money to buy a Kalashnikov automatic rifle used to shoot at the car in which Yaron Ungar was killed.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    46.**      In 1995, the terrorist activities of the Hamas cell that murdered Yaron Ungar were not particularly successful, involved mostly killing with pistols, and were limited to the West Bank.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    47.**      In 1995, the Hamas cell that murdered the Ungars suffered from a lack of training.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    48.**      At the time of the shooting, Hassan Salameh was a senior member of Hamas.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    49.**        Prior to the shooting, Hassan Salameh had been trained by Iran to train others how to commit terrorist operations.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    50.**        Prior to the shooting, Nasser Salah Talachmeh specifically requested that Hassan Salameh train members of the cell that murdered Yaron Ungar in Shooting techniques.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    51.**        By the time of the shooting, Nasser Salah Talachmeh has trained the Hamas cell that murdered Yaron Ungar in how to commit terrorist operations.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    52.**        The operational ability of the Hamas cell that murdered Yaron Ungar improved sharply when Hamas military commander Hassan Salameh became the military trainer of the cell.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    53.**        Senior Hamas operative Hassan Salameh, who was personally trained in Iran by Iranian personnel in the use of machine-guns and in conducting ambushes from moving vehicles, was the military trainer of the Hamas cell that murdered Yaron Ungar.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    54.**    Prior to the shooting, Hassan Salameh transferred the technical knowledge and expertise he acquired in Iran to the Hamas cell that murdered Yaron Ungar.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    55.**    Without the training provided by Hassan Salameh to the Hamas cell that murdered Yaron Ungar, the cell would not have been able to achieve success in its terrorist activities.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    56.**    At the time of the shooting, only those Hamas members trained by Iran were trained to shoot from moving cars.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    57.**    At the time of the shooting, Iran specifically trained Hamas operatives to carry out shooting attacks and ambushes from moving vehicles.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    58.**    Prior to the shooting, Hassan Salameh has been trained in Iran in weapons use and in executing ambushes from moving vehicles.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST   59.**    Without training on how to carry out shooting attacks from moving vehicles, Hamas could not have executed the attack in which Yaron Ungar was killed.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST   60.**    It is very likely that Hassan Salameh was the person who trained members of the Hamas cell who shot Yaron Ungar how to shoot from a moving car.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST   61.**    Yaron Ungar was shot from a moving car.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST   62.**    At the time of the shooting, Hamas viewed itself as a rival and as an alternative to the PLO.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST   63.**    At the time of the shooting, Hamas viewed itself as a rival and as an alternative to the Palestinian Authority.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST   64.**    At the time of the shooting, Hamas viewed itself as a rival and as an alternative to the Palestinian leadership.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    65.**    At the time of the shooting, Iran encouraged Hamas to carry out as much terrorist activity as possible to prevent any improvement or any progress in the peace process between Israel and the Palestinian leadership.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    66.**    At the time of the shooting, Hamas used the terrorism as a tool to interfere with the peace process between Israel and the Palestinian leadership.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    67.**    Without the support provided to it by Iran, Hamas would have been quite anemic at the time of the shooting.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    68.**    Without the support provided to it by Iran, Hamas would not have been the well-organized and successful group that it was at the time of the shooting.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    69.**    Without the support provided to it by Iran, Hamas would have been extremely limited in its operational capabilities at the time of the shooting.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    70.**    Absent Iranian support and training, Hamas would have been unable to carry out the attack in which Yaron Ungar was killed.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    71.**    Hamas would have been unable to mount and execute the attack in which the Yaron Ungar was killed without Iranian training of some provenance.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    72.**    At the time of the shooting, PLO Chairman Yasser Arafat was not happy about the relationship between Hamas and Iran.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    73.**    At the time of the shooting PLO Chairman Arafat was blaming Iran for its encouragement of terrorist acts.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    74.**    Iran had a direct involvement with the Hamas cell that shot Yaron Ungar.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    75.**    There is a direct connection between Iran and the shooting of Yaron Ungar.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    76.**    Iran provided the resources that led very specifically to the shooting of Yaron Ungar.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    77.**    Iran provided the know-how that led very specifically to the shooting of Yaron Ungar.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    78.**    Iran provided the knowledge that led very specifically to the shooting of Yaron Ungar.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    79.**    Iran provided the technical skills that led very specifically to the shooting of Yaron Ungar.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    80.**    At the time of the shooting, Hamas had ruled out any possibility of peace between the Palestinians and Israelis, and considered it the prime religious obligation to eradicate the Jewish State by use of violence.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    81.**    At the time of the shooting, the only source from which Hamas could receive weapons to conduct and expand its armed struggle against Israel was Iran.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST     82.**     At the time of the shooting, the only source from which Hamas could receive financing to conduct and expand its armed struggle against Israel was Iran.

    **Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST     83.**     At the time of the shooting, the only source from which Hamas could receive military training to conduct and expand its armed struggle against Israel was Iran.

    **Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST     84.**     By 1996, the professional military training provided to Hamas by Iran had significantly boosted Hamas' operational capabilities.

    **Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST     85.**     By 1996, the skills acquired by Hamas operatives during Iranian training enabled Hamas to translate its militant ideology into effective and deadly terrorist attacks, since many of those skills are precisely the things that Hamas did not have a few years earlier before its cooperation with Iran became much closer.

    **Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST     86.**     The overwhelming Iranian contribution to Hamas' operational capabilities is clearly evident in the terrorist attack in which Yaron Ungar was killed.

    **Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST** **87.** The overwhelming Iranian contribution to Hamas' operational capabilities is clearly evident in the structure of the Hamas cell that carried out the attack in which Yaron Ungar was killed.

**Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST** **88.** The overwhelming Iranian contribution to Hamas' operational capabilities is clearly evident in the activities of the Hamas cell that carried out the attack in which Yaron Ungar was killed.

**Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST** **89.** At the time of the shooting, Abdel Rahman Ismail Abdel Rahman Ghanimat was not an agent of the PA.

**Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST** **90.** Plaintiffs have no evidence that Abdel Rahman Ismail Abdel Rahman Ghanimat was an agent of the PA at the time of the shooting.

**Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST** **91.** At the time of the shooting, Abdel Rahman Ismail Abdel Rahman Ghanimat was not an employee of the PA.

**Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    92.**    Plaintiffs have no evidence that Abdel Rahman Ismail Abdel Rahman Ghanimat was an employee of the PA at the time of the shooting.

   **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    93.**    At the time of the shooting, Abdel Rahman Ismail Abdel Rahman Ghanimat was not an agent of the PLO.

   **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    94.**    Plaintiffs have no evidence that Abdel Rahman Ismail Abdel Rahman Ghanimat was an agent of the PLO at the time of the shooting.

   **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    95.**    At the time of the shooting, Abdel Rahman Ismail Abdel Rahman Ghanimat was not an employee of the PLO.

   **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    96.**    Plaintiffs have no evidence that Abdel Rahman Ismail Abdel Rahman Ghanimat was an employee of the PLO at the time of the shooting.

   **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    97.**    At the time of the shooting, Jamal Abdel Fatah Tzabich Al Hor was not an agent of the PA.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST     98.**     Plaintiffs have no evidence that Jamal Abdel Fatah Tzabich Al Hor was an agent of the PA at the time of the shooting.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST     99.**     At the time of the shooting, Jamal Abdel Fatah Tzabich Al Hor was not an employee of the PA.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST     100.**     Plaintiffs have no evidence that Jamal Abdel Fatah Tzabich Al Hor was an employee of the PA at the time of the shooting.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST     101.**     At the time of the shooting, Jamal Abdel Fatah Tzabich Al Hor was not an agent of the PLO.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST     102.**     Plaintiffs have no evidence that Jamal Abdel Fatah Tzabich Al Hor was an agent of the PLO shooting.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    103.**    At the time of the shooting, Jamal Abdel Fatah Tzabich Al Hor was not an employee of the PLO.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    104.**    Plaintiffs have no evidence that Jamal Abdel Fatah Tzabich Al Hor was an employee of the PLO at the time of the shooting.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    105.**    At the time of the shooting, Raed Fakhri Abu Hamdiya was not an agent of the PA.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    106.**    Plaintiffs have no evidence that Raed Fakhri Abu Hamdiya was an agent of the PA at the time of the shooting.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    107.**    At the time of the shooting, Raed Fakhri Abu Hamdiya was not an employee of the PA.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    108.**    Plaintiffs have no evidence that Raed Fakhri Abu Hamdiya was an employee of the PA at the time of the shooting.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the

foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    109.**    At the time of the shooting, Raed Fakhri Abu Hamdiya was not an agent

of the PLO.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the

foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    110.**    Plaintiffs have no evidence that Raed Fakhri Abu Hamdiya was an agent

of the PLO at the time of the shooting.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the

foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    111.**    At the time of the shooting, Raed Fakhri Abu Hamdiya was an employee

of the PLO at the time of the shooting.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the

foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    112.**    Plaintiffs have no evidence that Raed Fakhri Abu Hamdiya was an

employee of the PLO at the time of the shooting.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the

foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    113.**    At the time of the shooting, Ibrahim Ghanimat was not an agent of the PA.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the

foregoing General Objections and the specific objections asserted in response to Request No.

201.

**REQUEST    114.**    Plaintiffs have no evidence that Ibrahim Ghanimat was an agent of the PA at the time of the shooting.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    115.**    At the time of the shooting Ibrahim Ghanimat was not an employee of the PA.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    116.**    Plaintiffs have no evidence that Ibrahim Ghanimat was an employee of the PA at the time of the shooting.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    117.**    At the time of the shooting, Ibrahim Ghanimat was not an agent of the PLO.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    118.**    Plaintiffs have no evidence that Ibrahim Ghanimat was an agent of the PLO at the time of the shooting.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    119.**    At the time of the shooting, Ibrahim Ghanimat was not an employee of the PLO.

27

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    120.**    Plaintiffs have no evidence that Ibrahim Ghanimat was an employee of the PLO at the time of the shooting.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    121.**    Ibrahim Ghanimat was not in the car with members of the Hamas cell who shot Yaron Ungar when Yaron Ungar was shot.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

**REQUEST    122.**    Plaintiffs have no evidence that Ibrahim Ghanimat was in the car with members of the Hamas cell who shot Yaron Ungar when Yaron Ungar was shot.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    123.**    Ibrahim Ghanimat was not a proximate cause of Yaron Ungar's death.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    124.**    Plaintiffs have no evidence that Ibrahim Ghanimat was a proximate cause of Yaron Ungar's death.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    125.**    At the time of the shooting, Iman Mahmud Hassan Fuad Kafishe was not an agent of the PA.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    126.**     Plaintiffs have no evidence that Iman Mahmud Hassan Fuad Kafishe was an agent of the PA at the time of the shooting.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    127.**     At the time of the shooting, Iman Mahmud Hassan Fuad Kafishe was not a member of the PA.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    128.**     Plaintiffs have no evidence that Iman Mahmud Hassan Fuad Kafishe was an employee of the PA at the time of the shooting.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    129.**     At the time of the shooting, Iman Mahmud Hassan Fuad Kafishe was not an agent of the PLO.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    130.**     Plaintiffs have no evidence that Iman Mahmud Hassan Fuad Kafishe was an agent of the PLO at the time of the shooting.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    131.**    At the time of the shooting, Iman Mahmud Hassan Fuad Kafishe was not an employee of the PLO.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    132.**    Plaintiffs have no evidence that Iman Mahmud Hassan Fuad Kafishe was an employee of the PLO at the time of the shooting.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    133.**    At the time of the shooting, Hassan Salameh was not an agent of the PA.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    134.**    Plaintiffs have no evidence that Hassan Salameh was an employee of the PA at the time of the shooting.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    135.**    At the time of the shooting, Hassan Salameh was not an employee of the PA.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    136.**    Plaintiffs have no evidence that Hassan Salameh was an employee of the PA at the time of the shooting.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    137.**    At the time of the shooting, Hassan Salameh was not an agent of the PLO.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    138.**    Plaintiffs have no evidence that Hassan Salameh was an employee of the PLO at the time of the shooting.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    139.**    At the time of the shooting, Hassan Salameh was not an agent of the PLO.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    140.**    Plaintiffs have no evidence that Hassan Salameh was an employee of the PLO at the time of the shooting.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    141.**    At the time of the shooting, Nasser Salah Talachmeh was not an agent of the PA.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    142.**    Plaintiffs have no evidence that Nasser Salah Talachmeh was an agent of the PA at the time of the shooting.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    143.**    At the time of the shooting, Nasser Salah Talachmeh was not an employee of the PA.

 **Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    144.**    Plaintiffs have no evidence that Nasser Salah Talachmeh was an employee of the PA at the time of the shooting.

 **Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    145.**    At the time of the shooting, Nasser Salah Talachmeh was not an agent of the PLO.

 **Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    146.**    Plaintiffs have no evidence that Nasser Salah Talachmeh was an agent of the PLO at the time of the shooting.

 **Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    147.**    At the time of the shooting, Nasser Salah Talachmeh was not an employee of the PLO.

 **Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    148.**    Plaintiffs have no evidence that Nasser Salah Talachmeh was an employee of the PLO at the time of the shooting.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    149.**    At the time of the shooting, Hamas was not an agent of the PA.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    150.**    Plaintiffs have no evidence that Hamas was an agent of the PA at the time of the shooting.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    151.**    At the time of the shooting, Hamas was not an alter-ego of the PA.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    152.**    Plaintiffs have no evidence that Hamas was an alter-ego of the PA at the time of the shooting.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    153.**    At the time of the shooting, Hamas was not an agent of the PLO.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    154.**    Plaintiffs have no evidence that Hamas was an agent of the PLO at the time of the shooting.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    155.**    At the time of the shooting, Hamas was not an alter-ego of the PLO.

  **Response**  Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    156.**    Plaintiffs have no evidence that Hamas was an alter-ego of the PLO at the time of the shooting.

  **Response**  Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    157.**    Dvir Ungar has never suffered from a severe mental injury.

  **Response**  Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

  Plaintiffs further object on the grounds that (a) this Request is in violation of the Order denying Defendants' Motion for Mental Examination (dkt. # 579) since the request for information and/or an admission about damages is "premature because Defendants' motion to vacate has yet to be granted," (b) the amount of damages has already been litigated, and (c) Defendants' have waived their right to challenge the measure of damages. *Ungar v. PLO*, 402 F.3d 274 (1st Cir. 2005).

**REQUEST    158.**    Dvir Ungar did not suffer from a severe mental injury in 2002.

  **Response**  Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    159.**    Dvir Ungar does not currently suffer from a severe mental injury.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    160.**    Dvir Ungar has never suffered from psychosis.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    161.**    Dvir Ungar did not suffer from psychosis in 2002.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    162.**    Dvir Ungar does not currently suffer from psychosis.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    163.**    Dvir Ungar has never suffered from neurosis.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    164.**    Dvir Ungar did not suffer from neurosis in 2002.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST**    **165.**    Dvir Ungar does not currently suffer from neurosis.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST**    **166.**    Dvir Ungar has never suffered from a psychiatric disorder.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST**    **167.**    Dvir Ungar did not suffer from a psychiatric disorder in 2002.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST**    **168.**    Dvir Ungar does not currently suffer from a psychiatric disorder.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST**    **169.**    Dr. Allan Brenman has never performed an in-depth assessment of Dvir Ungar.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST**    **170.**    Dr. Allan Brenman has never performed a forensic evaluation of Dvir Ungar.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST   171.**   Dr. Allan Brenman has never performed a psychological evaluation of Dvir Ungar.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST   172.**   Dr. Allan Brenman has never performed a psychiatric evaluation of Dvir Ungar.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST   173.**   Yishai Ungar has never suffered from a severe mental injury.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST   174.**   Yishai Ungar did not suffer from a severe mental injury in 2002.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST   175.**   Yishai Ungar does not currently suffer from a severe mental injury.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    176.**    Yishai Ungar has never suffered from psychosis.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    177.**    Yishai Ungar did not suffer from psychosis in 2002.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    178.**    Yishai Ungar does not currently suffer from psychosis.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    179.**    Yishai Ungar has never suffered from neurosis.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    180.**    Yishai Ungar did not suffer from neurosis in 2002.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST** **181.** Yishai Ungar does not currently suffer from neurosis.

**Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST** **182.** Yishai Ungar has never suffered from a psychiatric disorder.

**Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST** **183.** Yishai Ungar did not suffer from a psychiatric disorder in 2002.

**Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST** **184.** Yishai Ungar does not currently suffer from a psychiatric disorder.

**Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST** **185.** Dr Allan Brenman has never performed an in-depth assessment of Yishai Ungar.

**Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST** **186.** Dr. Allan Brenman has never performed a forensic evaluation of Yishai Ungar.

39

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    187.**    Dr. Allan Brenman has never performed a psychological evaluation of Yishai Ungar.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    188.**    Dr. Allen Brenman has never performed a psychiatric evaluation of Yishai Ungar.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 157.

**REQUEST    189.**    Judith Dasberg and Uri Dasberg told Benjamin Netanyahu that an appropriate way to prevent acts of terror such as the one in which Yaron Ungar was killed is to build a settlement every time an Israeli is killed by terrorists.

**Response**  Plaintiffs incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 1.

In addition, Plaintiffs object to this Request on the grounds that it: (a) is not reasonably calculated to lead to the discovery of admissible evidence relating to the relevant issues as determined  by Judge Lagueux in his April 1, 2010 Order (dkt. # 482), (b) it seeks information and/or an admission concerning the parties' political, legal, religious and/or social beliefs and (c) seeks information and/or an admission concerning the motivation for bringing suit. See, e.g.,

*Walton v. Bridgestone/Firestone, Inc.*, No. 05-CV-3027, 2009 WL 2778441, at *9 (D. Ariz. Jan. 16, 2009) ("Irrelevant and prejudicial references to Plaintiffs' plans for lawsuit proceeds or Plaintiffs' motives for initiating this action are also precluded."); *Woods v. Frensenius Med. Care Group of N. Am.*, No. 06-CV-1804, 2008 WL 151836, at *2 (S.D. Ind. Jan. 16, 2008) (quashing subpoenas for records from plaintiff's former employer served by defendant "to show Plaintiff's credibility and motive in bringing suit"); *Couch v. Village of Dixmoor*, No. 05-CV-963, 2006 WL 3409153, at *3 (N.D. Ill. Nov. 27, 2006) (granting motion to "keep out of the case evidence as to 'plaintiff's motives for filing suit'" and explaining that it is improper to "impugn the motives of any plaintiff for doing what the law not only permits but encourages: the pursuit of his or her perceived rights through litigation"); *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 414 (M.D.N.C. 1992) ("It is well-established that in ordinary litigation, not involving the clean hands defense, the plaintiff's motive in bringing suit is not relevant to the subject matter of the litigation and is not a matter for discovery."); *Digital Equip. Corp. v. Sys. Indus., Inc.*, 108 F.R.D. 742, 743 (D. Mass. 1986) (discussing various cases "where discovery was sought concerning the initiation of a lawsuit" and "the motive behind the institution of the action was deemed not relevant to the subject matter involved"); *Foremost Promotions, Inc. v. Pabst Brewing Co.*, 15 F.R.D. 128, 130 (N.D. Ill. 1953) ("It is difficult to see how an inquiry into the circumstances surrounding the instigation of the action could affect the substance of the claim."); *Horsey v. Asher*, 741 F.2d 209, 212-13 (8th Cir. 1984) ("We can assume that plaintiff harbors bitter feelings towards [defendant], in part, at least, because of his having given evidence against him. But if in fact [defendant] wrongfully beat [plaintiff] and unconstitutionally seized his property, the fact that plaintiff hates the defendant, for these or other reasons, does not justify dismissal of the complaint as malicious. It is the maliciousness of the complaint, not of the

plaintiff personally, that is important. It may be assumed that most people who have been deprived of their constitutional rights have little regard for those who have wronged them.").

**REQUEST    190.**    Judith Dasberg told Benjamin Netanyahu that an appropriate way to prevent acts of terror such as the one in which Yaron Ungar was killed is to build a settlement every time an Israeli is killed by terrorists.

 **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 189.

**REQUEST    191.**    Uri Dasberg told Benjamin Netanyahu that an appropriate way to prevent acts of terror such as the one in which Yaron Ungar was killed is to build a settlement every time an Israeli is killed by terrorists.

 **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 189.

**REQUEST    192.**    At the time of the shooting, the town of Surif was under Israeli administrative control.

 **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    193.**    At the time of the shooting, the town of Surif was under Israeli security control.

 **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    194.**    At the time of the shooting, the town of Surif was not under PA administrative control.

   **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    195.**    At the time of the shooting, the town of Surif was not under PA security control.

   **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    196.**    At the time of the shooting, the town of Surif was not under PLO administrative control.

   **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    197.**    At the time of the shooting, the town of Surif was not under PLO security control.

   **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.

**REQUEST    198.**    Judith Dasberg and Uri Dasberg told Benjamin Netanyahu that Yasser Arafat was a wicked man.

   **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 189.

**REQUEST    199.**    Judith Dasberg told Benjamin Netanyahu that Yasser Arafat was a wicked man.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 189.

**REQUEST    200.**    Uri Dasberg told Benjamin Netanyahu that Yasser Arafat was a wicked man.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 189.

**REQUEST    201.**    Uri Dasberg has said that an appropriate response to the attack in which Yaron Ungar was killed is to hold on to the West Bank more strongly with our fingers, with nails deep, deep in the earth.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 189.

**REQUEST    202.**    Judith Dasberg has said that the Ungars were victims of the Oslo Accords.

**Response**        Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 189.

**REQUEST    203.**    Yasser Arafat was a PA/PLO official whom the Court ordered Defendants to produce at one time.

**Response**        Plaintiffs incorporate by reference, as if fully set forth herein, the foregoing General Objections.

In addition, Plaintiffs object to this Request on the grounds that: (a) it is not reasonably calculated to lead to the discovery of admissible evidence relating to the proceeding that is presently before this Court, i.e., Defendants' Rule 60(b) Motion to Vacate, (b) that it requests information contrary to Magistrate Judge Martin's ruling that "Defendant The Palestinian Authority ("PA") does not need discovery from Plaintiffs in order to establish the existence of a meritorious defense. . .accordingly, Defendant is not entitled to merits of discovery," Dkt. # 577, p. 2, (c) Magistrate Judge Martin has already ruled that Defendants are not permitted discovery which "would have the practical effect of re-opening this case before the Court has determined whether it should be reopened." Dkt. # 577, p. 3, (d) it seeks information/and or an admission concerning a matter that was previously litigated, (e) it seeks information/or an admission relating to the prejudice Plaintiffs suffer as a result of Defendants' refusal to comply with prior discovery orders, and (f) it violates Magistrate Judge Martin's ruling of October 27, 2010, "Defendant PA also argues that it is entitled to this discovery as a means of testing whether Plaintiffs would truly be prejudiced by the granting of the motion to vacate. See Defendant The Palestinian Authority's Reply in Further Support of Its Motion to Compel Answers to Defendants' Interrogatory Nos. 12-18 and Responses to Defendants' Request for Production Nos. 8-15, 17-19 ("Defendants' Reply") at 7 ("The extent to which Plaintiffs currently posses[] information and documents supporting their claims is something for this Court to consider when determining whether Plaintiffs would be prejudiced by the granting of Defendants' Motion to Vacate."). While this argument has a certain surface appeal, the reality is that accepting it would result in Defendant being able to impose on Plaintiffs the same discovery burden which the Court has already concluded is inappropriate unless and until the judgment is vacated. The Court declines to do so." Dkt. # 577 pp. 2-3.

45

**REQUEST   204.**   Plaintiffs have never interviewed Yasser Arafat about the allegations in the Complaint.

**Response**   Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 203.

**REQUEST   205.**   Razi Jabali was a PA/PLO official whom the Court ordered Defendants to produce at one time.

**Response**   Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 203.

**REQUEST   206.**   Plaintiffs have never interviewed Razi Jabali about the allegations in the Complaint.

**Response**   Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 203.

**REQUEST   207.**   Muhammed Dahlan was a PA/PLO official whom the Court ordered Defendants to produce at one time.

**Response**   Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 203.

**REQUEST   208.**   Plaintiffs have never interviewed Muhammed Dahlan about the allegations in the Complaint.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 203.

**REQUEST    209.**    Amin Al-Hindi was a PA/PLO official whom the Court ordered Defendants to produce at one time.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 203.

**REQUEST    210.**    Plaintiffs have never interviewed Amin Al-Hindi about the allegations in the Complaint.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 203.

**REQUEST    211.**    Tawfik Tirawi was a PA/PLO official whom the Court ordered Defendants to produce at one time.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 203.

**REQUEST    212.**    Plaintiffs have never interviewed Tawfik Tirawi about the allegations in the Complaint.

**Response**     Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 203.

**REQUEST    213.**    Jibril Rajoub was a PA/PLO official whom the Court ordered Defendants to produce at one time.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 203.

**REQUEST    214.**    Plaintiffs have never interviewed Jibril Rajoub about the allegations in the Complaint.

    **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 203.

**REQUEST    215.**    Exhibit A to Defendants' Reply in support of their Motion to Vacate (Dkt. No. 423) is an authentic copy of a letter from the United States Department of Justice to the United States District Court for the Southern District of New York.

    **Response**  Admitted.

**REQUEST    216.**    The document produced to Plaintiffs by Defendants and labeled 01:0012160-01:0012178 is an authentic copy of what it purports to be.

    **Response**  Plaintiffs incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20.  Plaintiffs further object to this Request as (a) it seeks information and/or a request to authenticate a copy of an archived document, the first page of which is #01:0012162 but is unreadable,  (b) they have never seen said document, nor have the expertise or ability to authenticate it and (c) this request for information and/or an admission is not a proper subject for a request for admissions under Rule 36.

**REQUEST    217.**    The document produced to Plaintiffs by Defendants and labeled 01:0012179 is an authentic copy of what it purports to be.

   **Response**   Plaintiffs incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20. Plaintiffs further object to this Request as Document No. 12179 is a transcription of a document known as the Balfour Declaration of November 1917 and is not a copy of an authentic document. Accordingly, this request for information and/or an admission is not a proper subject for a request for admissions under Rule 36.

**REQUEST    218.**    The document produced to Plaintiffs by Defendants and labeled 01:0012181-01:0012210 is an authentic copy of what it purports to be.

   **Response**   Plaintiffs incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20. Plaintiffs further object to this Request as it seeks authentication of a United Nations General Assembly resolution/statement.  Accordingly, this request for information and/or an admission is not a proper subject for a request for admissions under Rule 36.

**REQUEST    219.**    The document produced to Plaintiffs by Defendants and labeled 01:0012207-01:0012210 is an authentic copy of what it purports to be.

   **Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 218.

**REQUEST    220.**    The document produced to Plaintiffs by Defendants and labeled 01:0012212-01:0012291 is an authentic copy of what it purports to be.

**Response**  Plaintiffs incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 20. Plaintiffs further object as this Request seeks Plaintiffs to authenticate a copy of a Geneva Convention, and accordingly, this request for information and/or an admission is not a proper subject for a request for admissions under Rule 36.

**REQUEST    221.**    The document produced to Plaintiffs by Defendants and labeled 01:0012293-01:0012294 is an authentic copy of what it purports to be.

**Response**  Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 218.

**REQUEST    222.**    The document produced to Plaintiffs by Defendants and labeled 01:0012295 is an authentic copy of what it purports to be.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 218.

**REQUEST    223.**    The document produced to Plaintiffs by Defendants and labeled 01:0012296-01:0012297 is an authentic copy of what it purports to be.

**Response**      Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 218.

**REQUEST    224.**    The document produced to Plaintiffs by Defendants and labeled 01:0012298-01:0012299 is an authentic copy of what it purports to be.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 218.

**REQUEST    225.**    The document produced to Plaintiffs by Defendants and labeled 01:0012300-01:0012304 is an authentic copy of what it purports to be.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 218.

**REQUEST    226.**    The document produced to Plaintiff by Defendants and labeled 01:0012305-01:0012320 is an authentic copy of what it purports to be.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 218.

**REQUEST    227.**    The document produced to Plaintiffs by Defendants and labeled 01:0012321-01:0012358 is an authentic copy of what it purports to be.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 218.

**REQUEST    228.**    The document produced to Plaintiffs by Defendants and labeled 01:0012459-01:0012401 is an authentic copy of what it purports to be.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 218.

**REQUEST    229.**    The document produced to Plaintiffs by Defendants and labeled 01:0012402-01:0012464 is an authentic copy of what it purports to be.

**Response**    Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 218.

**REQUEST    230.**    Nitsana Darshan-Leitner has an attorney-client relationship with the Plaintiffs.

**Response**    Plaintiffs incorporate by reference, as if fully set forth herein, the foregoing General Objections. In addition, Plaintiffs object to this Request on the grounds that it: (a) is not reasonably calculated to lead to the discovery of admissible evidence relating to the proceeding that is presently before this Court, i.e., Defendants' Rule 60(b) Motion to Vacate, (b) relates to or seeks a conclusion of law, (c) requests information and/or an admission concerning counsel which the Defendants were previously admonished and warned by the Court is not relevant to this case, (d) was the subject of a disciplinary complaint and (e) is an improper topic of inquiry. *Garza v. Inglewood City*, 967 F.2d 586 (9th Cir. 1992) ("We do not condone the disparagement of counsel's motives."); *U.S. ex rel. Block v. Del Campo*, 2010 WL 2698295 (N.D.Ill. 2010) ("Defendants' repeated personal attacks on Plaintiffs and their counsel in their Objections are inappropriate and unfounded. Defendants' characterizations of Plaintiffs' and their counsel's motives and tactics go beyond the appropriate bounds of professional and zealous advocacy."), and 5) seek information and/or an admission concerning the motivation for bringing this suit which is irrelevant. See, e.g., *Walton v. Bridgestone/Firestone, Inc.*, No. 05-CV-3027, 2009 WL 2778441, at *9 (D. Ariz. Jan. 16, 2009) ("Irrelevant and prejudicial references to Plaintiffs' plans for lawsuit proceeds or Plaintiffs' motives for initiating this action are also precluded."); *Woods*

*v. Frensenius Med. Care Group of N. Am.*, No. 06-CV-1804, 2008 WL 151836, at *2 (S.D. Ind. Jan. 16, 2008) (quashing subpoenas for records from plaintiff's former employer served by defendant "to show Plaintiff's credibility and motive in bringing suit"); *Couch v. Village of Dixmoor*, No. 05-CV-963, 2006 WL 3409153, at *3 (N.D. Ill. Nov. 27, 2006) (granting motion to "keep out of the case evidence as to 'plaintiff's motives for filing suit'" and explaining that it is improper to "impugn the motives of any plaintiff for doing what the law not only permits but encourages: the pursuit of his or her perceived rights through litigation"); *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 414 (M.D.N.C. 1992) ("It is well-established that in ordinary litigation, not involving the clean hands defense, the plaintiff's motive in bringing suit is not relevant to the subject matter of the litigation and is not a matter for discovery."); *Digital Equip. Corp. v. Sys. Indus., Inc.*, 108 F.R.D. 742, 743 (D. Mass. 1986) (discussing various cases "where discovery was sought concerning the initiation of a lawsuit" and "the motive behind the institution of the action was deemed not relevant to the subject matter involved"); *Foremost Promotions, Inc. v. Pabst Brewing Co.*, 15 F.R.D. 128, 130 (N.D. Ill. 1953) ("It is difficult to see how an inquiry into the circumstances surrounding the instigation of the action could affect the substance of the claim."); *Horsey v. Asher*, 741 F.2d 209, 212-13 (8th Cir. 1984) ("We can assume that plaintiff harbors bitter feelings towards [defendant], in part, at least, because of his having given evidence against him. But if in fact [defendant] wrongfully beat [plaintiff] and unconstitutionally seized his property, the fact that plaintiff hates the defendant, for these or other reasons, does not justify dismissal of the complaint as malicious. It is the maliciousness of the complaint, not of the plaintiff personally, that is important. It may be assumed that most people who have been deprived of their constitutional rights have little regard for those who have wronged them.").

**REQUEST    231.**    Nitsana Darshan-Leitner is the founder and director of Shurat HaDin Israel Law Center.

 **Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 230.

**REQUEST    232.**    Shurat HaDin, on its website, www.israellawcenter.org, uses the motto "Bankrupting Terrorism One Lawsuit at a Time."

 **Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 230.

**REQUEST    233.**    Shurat HaDin, on its website, www.israellawcenter.org, describes Nitsana Darshan-Leitner as leading the struggle to fight Palestinian terrorist organizations in the courtroom and identifies the Palestinian Authority as one of the Palestinian "terrorist organizations."

 **Response** Plaintiffs hereby incorporate by reference, as if fully set forth herein, the foregoing General Objections and the specific objections asserted in response to Request No. 230.

54

Dated: November 19, 2010

Plaintiffs-Judgment Creditors,
by their Attorneys,

David J. Strachman #4404
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com

Max H. Wistow #0330
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com

Robert Joseph Tolchin
111 Livingston Street
Suite 1928
Brooklyn, NY 11201
(718) 855-3627
(718) 504-4943 (fax)
rjt@tolchinlaw.com

55

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 19, 2010, a true and genuine copy of the

foregoing was sent by first class mail and electronic mail to Defendants' counsel of record listed

below:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered.
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701