UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE ESTATE OF YARON UNGAR, et al.,

    Plaintiffs – Judgment Creditors,

v.                                                                                                  Civ. No. 00-105L

THE PALESTINIAN AUTHORITY, et al.,

    Defendants – Judgment Debtors.

**REPLY IN FURTHER SUPPORT OF PLAINTIFFS-JUDGMENT CREDITORS'
FIRST MOTION IN LIMINE**

Plaintiffs-Judgment Creditors hereby file this reply in further support of their First Motion In Limine, dkt. # 585.

**I.  DEFENDANTS' CONCEDE THAT THEY WAIVED CONTESTING DAMAGES AND ATTEMPT TO MASK THEIR WAIVER BY ATTACKING PLAINTIFFS**

In what has become Defendants' standard practice, instead of arguing on the merits, they begin their response memorandum with an all out attempt to paper over their own prior (in)actions and spend a large amount of ink attacking Plaintiffs.

First, Defendants make the snide claim that "the Ungars are intent on shielding their $116 million judgment from the scrutiny imposed by adversarial testing." Response p. 1.  Since the damage award was rendered after careful consideration by both Magistrate Judge Martin and Judge Lagueux, and eventually upheld by the Court of Appeals, this malicious assertion is blatantly absurd.  The award is solidly grounded (Judge Lagueux found that "Judge Martin reviewed the submitted memoranda and exhibits, *performed independent research*, and then issued an extensive Report and Recommendation," *Ungar v. Palestinian Authority*, 325

F.Supp.2d 15, 21 (D.R.I. 2004)(emphasis added)) but it is also typical for Antiterrorism Act ("ATA") cases – including litigated cases. See e.g. *Boim v. Quranic Literacy Institute*, 2005 WL 433463 at 5 (N.D. Ill. 2005) (Court denied motion by an appearing defendant to set aside a jury award of $156 million under the ATA to the parents and estate of a 17 year-old American citizen murdered by Hamas, finding that it "simply cannot agree" that "the damages award was excessive" considering "the nature of the case (one seeking damages for the murder of a son in a brutal and senseless terrorist act), and given the nature of the relationship between the victim and the plaintiffs (child/parent)."

Thus, Plaintiffs have not filed the present motion because of fear of scrutiny of their judgment but rather, as indicated in their opening papers, they moved for an order in limine because they do not want to (a) waste the resources of the Court and themselves and (b) further delay the disposition of this three year old motion to vacate by dealing with irrelevancies and relitigating matters which Defendants already had an opportunity to challenge on *several* prior occasions.

Second, Defendants attack Plaintiffs for being "silent on the nature of the [Defendants'] objections" to Magistrate Judge Martin's Report and Recommendation in which he recommended an award of $116 million. Defendants then cite their own objections, effectively conceding that they did in fact challenge damage recommendation and litigate the amount of the award before Judge Lagueux. Response p. 3. Attempting to minimize the nature of their objections, Defendants describe them as merely a "one-paragraph objection on political grounds" but cite no authority for the proposition that they should have the right to further challenge what they already litigated and lost both before Judge Lagueux and the Court of Appeals. Similarly they cite no authority for the position that the quality of the argument can be reviewed six years

later by attacking the nature and scope of arguments former and current counsel made years ago. In sum, the issue was litigated – whether it was litigated well or not is irrelevant now six years later.

Third, Defendants attack Plaintiffs by arguing that their motion in limine is "inconsistent" with their "Memorandum in Response to Defendants'-Judgment Debtors' Motion for Leave to Take Discovery on Whether the Damage Award Would Withstand Adversarial Testing, Dkt. No. 503" in which they stated that they "will not oppose (without waiving or derogating from their position as set forth above) defendants' motion to permit them to take some damages discovery," in part "because the Ungars do not want to hand defendants the opportunity to assert on appeal . . . that they were improperly deprived of all discovery regarding damages." *Id*. at 2. This claim is utterly baseless because that motion related *only* to discovery. While Plaintiffs declined to oppose a superfluous motion for discovery with respect to damages, they did so while explicitly preserving their position that Defendants may not challenge the amount of the judgment. Thus Defendants conflate the standard for obtaining discovery with the criterion for admissibility at the evidentiary hearing. Now that discovery has closed and Defendants have made clear their intention to waste weeks of hearing time on this foreclosed issue, Plaintiffs are constrained to move for an in limine ruling to curtail this plan.

## II. DEFENDANTS' PLAN TO RELITIGATE THE DAMAGES AWARD IS BASED ON SEVERAL FALSE ASSUMPTIONS

Defendants' several substantive arguments against the request for an order in limine are based on several false assumptions. When these assumptions are exposed, Defendants' defense to the motion necessarily must fail.

First, the overarching defect of Defendants' response to the motion in limine is their unfounded assumption that the 2004 judgment is merely a typical default judgment wherein the

defaulting party failed to appear, no defenses were raised and truly nothing was litigated. As this Court has repeatedly mentioned, this case is dramatically different from the garden variety default judgment as attested by the tortured four and a half years of litigation (covering 280 docket entries) prior to entry of judgment and the fact that the *only* matter not litigated was liability. Thus, Defendants fail to distinguish between litigated and non-litigated matters. Their citation to *Ariz. v. Cal.*, 530 U.S. 392, 414 (2000) for (a) the proposition that in "the case of a judgment entered by default, none of the issues is actually litigated" and (b) their assertion that "not one of the cases" Plaintiffs cite for the rule that a Rule 60(b) movants cannot relitigate issues already resolved "involves a default judgment" is preposterous in the circumstances of this case. For Defendants to pretend that they did not already litigate and lose numerous issues almost a decade ago in multiple motions to dismiss is absurd.

Second, the claim that the First Circuit rejected Plaintiffs' argument during oral argument fails for several reasons. First, regardless of what was said during the colloquy on oral argument, the First Circuit decision did not ***rule*** on this issue. Remarks during a colloquy do not constitute a ruling and the First Circuit's own rules prohibit citation to comments made at oral argument. [1]

---

[1] Defendants' attempt to "go behind" the First Circuit ruling (which was evidently disappointing to them) by citing to brief comments at oral argument is highly improper and a violation of the First Circuit rules: "Oral arguments in all cases are digitally recorded for *the use of the Court and are not part of the permanent record of the case*." Internal Operating Procedure VIII. Oral Argument D (emphasis added). cf *Knaust v. City of Kingston*, 177 F.R.D. 109, 110 (N.D.N.Y. 1998) ("Defendant-Appellee's assertion that both transcripts in their entirety are relevant because the appellate court must be aware of what was and was not before this Court is flawed. This is not a situation in which the Court rendered its decision from the bench during oral argument, but one in which the Court provided a written decision.") Defendants cite no authority for this unseemly attempt to undermine the First Circuit's decision. Accordingly their prohibited use of a non-official transcript of the oral argument recording should be stricken from Defendants' response memorandum.

Indeed, notably, as the First Circuit declined to address this issue in its decision, it is evident that Defendants' argument that Plaintiffs' counsel's statements at oral argument "fell on deaf ears" (Response p. 6) has got it backwards.  It was *Defendants'* argument (that they should be given an explicit opportunity to re-litigate issues they previously waived on appeal) that the Court failed to adopt.  The *sole* reference to the amount of the judgment contained in the First Circuit's decision is: "defendants tell a different tale ... They ... see the amount of the judgment as unlikely to withstand adversarial testing." *Ungar v. Palestinian Authority*, 599 F.3d 79, 86 (1st Cir. 2010).

Moreover, the question of whether the judgment can withstand adversarial testing was *never* raised by Defendants in their motion papers in this Court (*see* dkt. # 408, *passim*) or in their appellate briefs (*see* Exhibits A and B, *passim*), and was raised for the first time only during oral argument before the Court of Appeals. Thus, the Ungars had no reason or occasion to argue that Defendants are precluded from challenging the amount of the judgment and neither this Court nor the Court of Appeals ever had any reason or occasion to consider – much less decide – the Ungars' preclusion argument.

Accordingly, and as is clear from the text of its decision, the Court of Appeal's reference to the question of whether the judgment can withstand adversarial testing is not a ***holding*** that the Defendants are entitled to assert such a claim, but merely an ***iteration*** of Defendants' claim. In other words, the Court of Appeals' reference is purely descriptive, not prescriptive.

Also, because the question of whether the amount of the judgment can withstand adversarial testing was never raised by Defendants in their motion papers in this Court or in their appellate briefs and arose only for the first time during oral argument on appeal, the Ungars' counsel was forced to address this issue without notice, and merely pointed out during oral

argument that Defendants had failed to <u>appeal</u> the propriety of the amount of the judgment, without discussing the fact (which counsel did not happen to recall on the spur of the moment) that Defendants had ***filed objections*** to the amount of the judgment. *See* dkt. # 612 at 6-7 ("Mr. Strachman … They had an opportunity to address those issues [regarding damages] when they took their second appeal after the judgment entered and they addressed the impact, alleged impact, on the Palestinian government at the time.").

Thus, the First Circuit never addressed the issue of whether Judge Lagueux's overruling Defendants' objections means that the issue was litigated. Defendant never presented this question to the First Circuit.

Clearly, it would be absurd to conclude from an ad hoc colloquy, that the First Circuit reversed the extensive case law clearly holding that an issue already litigated cannot be challenged on a Rule 60(b)(6) motion. Obviously, the First Circuit never took the simple colloquy as significant as it never included the issue in its decision. Accordingly, Defendants' desperate attempt to look for support in the far corners of the appellate proceedings (when they themselves, for good reason, never bothered to even raise the issue on appeal) is an obvious rear guard action to salvage some crumbs from an otherwise disappointing decision.

### III. DEFENDANTS FAIL TO REBUT PLAINTIFFS' ARGUMENT THAT THEY ARE PRECLUDED FROM CHALLENGING THE LEGAL VIABILITY OF THE UNGARS' ISRAELI CAUSE OF ACTION

Again as has been their practice throughout the litigation over their motion for equitable relief, instead of acknowledging their own unclean hands during the first eight years of this litigation, Defendants attack Plaintiffs' recitation of the history of this case. They then systematically conflate and confuse the issue of whether they can now seek to assert a meritorious defense to the Israeli causes of action based on factual claims (which they are not

precluded from doing) with the question of whether they are precluded from asserting a meritorious defense to the Israeli causes of action challenging their sufficiency (which they are precluded from doing because this issue has already been litigated and decided against them). Plaintiffs' motion seeks relief only in respect to the **latter** issue, and their purported expert, Muhammed Dahleh, addresses only the **latter** issue.

Here, too, they argue that prior (and present) counsel did not do a good job challenging the validity of the Israeli law claims and that this self serving qualitative critique of the arguments made by Ramsey Clark, Lawrence Schilling and Deming Sherman warrants another bite at the apple nine years later. However, as indicated above, successor counsel's appraisal of the quality of the work of prior (and present) counsel is irrelevant. Naturally, they find no authority in the entire American legal system to support this wild and unusual proposition.

Defendants' next argument that "Plaintiffs' preclusion theory would operate only to bar Defendants from filing another motion to dismiss" is mistaken and contrary to clear authority. Response p. 11. The sufficiency of a cause of action may be attacked in one of two ways: by a motion to dismiss or a motion for judgment on the pleadings. The same standard is applied in both motions. *See Weber v. Sanborn*, 502 F.Supp.2d 197, 199 (D.Mass. 2007) (Motions for judgment on the pleadings are adjudicated according to the standard used for a motion to dismiss for failure to state a claim). Thus, because this Court has already determined, in the context of a motion to dismiss, that the Ungars' Amended Complaint states valid claims under Israeli law, that finding is the law of the case and Defendants are precluded from challenging this issue in the context of their motion to vacate.

Defendants further argue that "Plaintiffs offer no citation for their theory that Rule 60(b)(6) requires the movant to present meritorious defenses as to all causes of action pled in the

7

complaint." Response pp. 11-12. While this claim actually supports the Ungars' motion in limine (since, if Defendants are not required to present defenses to all the claims, what right or need do they have to waste the time and resources of the Court and the Ungars discussing the Israeli law claims?), the Ungars will respond to it lest their silence be misinterpreted as agreement.

In fact, it is well established that a motion to vacate must present a meritorious defense to each and every cause of action asserted in the complaint. *See e.g. Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994) (denying motion to vacate because defendant presented meritorious defense to only one of two causes of action asserted by the plaintiff); *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2nd Cir. 1998) (Meritorious defense under Rule 60(b) must constitute "a complete defense."); *Balabanos v. North American Inv. Group, Ltd.*, 1988 WL 23797 at *2 (N.D.Ill. 1988) (Unless the defendant shows "a meritorious defense to *all* of plaintiffs' claims, it is not entitled to have the entry of default vacated.") (emphasis in the original). Thus, unless Defendants can present a meritorious defense to *all* the causes of action set forth in the Amended Complaint, their motion to vacate must be denied.

Lastly, Defendants' claim that the judgment in this action was entered only as to the ATA, and that therefore "Defendants need only establish meritorious defenses as to that claim when seeking Rule 60(b)(6) relief" is incorrect. Response p. 12. Defendants defaulted and so were found liable for *all* the claims in the Amended Complaint, and unless they can present a meritorious defense to all of those claims, their motion to vacate must be denied.

Accordingly, as the Israeli claims were challenged by Mssrs Clark, Schilling and Sherman early on in 2001 and Judge Lagueux ruled on their request to dismiss the Israeli claims, the issue was litigated and Defendants' new attempt to test these claims should be denied as

8

nothing more than the same old litigation strategy that the Court and the Ungars were made to suffer in 2000-2004.

**WHEREFORE** Plaintiffs' First Motion to Limine should be granted.

Dated: December 2, 2010                          Plaintiffs-Judgment Creditors,
By their Attorneys,

/s/ David J. Strachman
David J. Strachman (#4404)
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com

Max Wistow (#0330)
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752 (fax)
mw@wistbar.com

Robert J. Tolchin
The Berkman Law Office, LLC
111 Livingston Street
Suite 1928
Brooklyn, NY 11201
(718) 855-3627
(718)-504-4943 (fax)
rjt@tolchinlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on December 2, 2010, a true and genuine copy of the foregoing was served by ECF on Defendants' counsel of record listed below:

Deming E. Sherman
Edwards Angell Palmer & Dodge LLP
2800 Bank Boston Plaza
Providence, RI 02903

Richard A. Hibey
Mark J. Rochon
Brian Hill
Miller & Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701

/s/ David J. Strachman