```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF RHODE ISLAND


THE ESTATE OF YARON UNGAR, et al.,   :
                     Plaintiffs,     :
                                     :
     v.                              :        CA 00-105L
                                     :
THE PALESTINIAN AUTHORITY, et al.,   :
                     Defendants.     :
```

**ORDER**

**GRANTING IN PART**

**DEFENDANT THE PALESTINIAN AUTHORITY'S**

**MOTION TO COMPEL ANSWERS AND RESPONSES**

Before the Court is Defendant The Palestinian Authority's Motion to Compel Answers to Defendant's Interrogatory Nos. 19-21 and Responses to Defendant's Request for Production Nos. 23, 25-26 and 29-35 and Memorandum in Support Thereof (Docket ("Dkt.") #572) ("Motion to Compel" or "Motion").  A hearing was held on December 3, 2010.

Defendant The Palestinian Authority ("PA") states that the discovery requests at issue in the present Motion seek to discover: "(1) the identity of Plaintiffs' hearing witnesses, (2) expert reports for any expert witnesses Plaintiffs[] may call at the hearing, (3) any documents Plaintiffs may offer in evidence at the hearing, and (4) evidence regarding Plaintiffs['] contention that the amount of damages would withstand adversarial testing."  Motion at 4.  At the hearing, counsel for Plaintiffs represented that Plaintiffs have: (a) disclosed to Defendants the

identity of their hearing witnesses except for one possible additional witness who is in Israel, (b) provided Defendants with reports from Plaintiffs' experts, and (c) provided Defendants with a copy of any document which Plaintiffs may offer in evidence or determined that a copy of such document is already part of the record in this case and readily available to Defendants.  The PA complains that the provision of this information has come too late and that it has moved to exclude Plaintiffs' witnesses from the hearing.  However, the motion to exclude has not been referred to this Magistrate Judge, and the Court must address the instant Motion.

Accordingly, the Court rules as indicated below with respect to the interrogatories and requests for production that are the subject of the Motion.

IDENTITY OF HEARING WITNESSES

**Interrogatory Nos. 19 and 20.**  Plaintiffs' objections are overruled, and the Motion is **GRANTED**.  Plaintiffs shall identify all persons whose testimony they will or may present at the hearing on the pending Motion to Vacate the Judgment.

DOCUMENTS TO BE OFFERED AT THE HEARING

**Request No. 23.**  The Motion is **GRANTED** to the extent that Plaintiffs must give notice to Defendants of the particular

documents which Plaintiffs intend to introduce in evidence at the hearing. However, given the large volume of documents in this case, Plaintiffs are not required to provide copies of documents which Defendants already have or which are readily available to Defendants.

AMOUNT OF DAMAGES

Plaintiffs object to Interrogatory No. 21 and to related requests for production on the ground that Defendants are precluded from challenging the amount of damages in the context of their motion to vacate. See, e.g., Plaintiffs' Objection to Interrogatory No. 21 ¶ 1. Plaintiffs also argue that even if Defendants are not precluded from seeking to challenge the amount of the judgment, as a matter of law Defendants cannot base such a challenge on changes or developments in Plaintiffs' condition subsequent to the damages hearing. See id. ¶ 3. These are substantial objections.

At the hearing, counsel for the PA urged the Court to defer ruling on these objections and require Plaintiffs to answer the interrogatories and requests for production relating to damages, thereby allowing Judge Lagueux to make the determination as to whether Defendants may challenge the amount of the damages at the Rule 60(b) hearing. The PA's counsel reasoned that if the PA is denied this discovery and Judge Lagueux subsequently rules that

Defendants are allowed to challenge the amount of damages, the PA will have been deprived of the discovery needed to do so. The PA's counsel further argued that if, on the other hand, this Magistrate Judge grants the discovery and Judge Lagueux does not allow Defendants to challenge the amount of the damages, the consequences are far less severe. Defendants would simply be precluded from utilizing the materials obtained. The Court is persuaded by this argument.

Accordingly, Plaintiffs' objections are overruled only for purposes of resolving the instant Motion. Plaintiffs continue to have the right to object and to argue in the future that the Defendants are precluded from contesting the amount of damages and, at the very least, precluded from utilizing circumstances and events subsequent to the damages hearing. Having stated this, the Court proceeds consider the PA's discovery requests which pertain to the amount of damages.

**Interrogatory No. 21.** The Motion is **granted to the extent** that the words "*inter alia*" are stricken from Plaintiffs' Answer to Interrogatory No. 21 ("Answer to No. 21"), and if there are any additional reasons for Plaintiffs' contention that "the amount of the judgment would withstand any other adversarial testing," Answer to No. 21, Plaintiffs shall state those reasons. To the extent that the Motion seeks to require Plaintiffs to identify "the numerous federal decisions in terrorism cases

awarding victims of terrorism similar or greater damages," id., the Motion is denied because the PA should be able to find these decisions by performing basic legal research.

**Request No. 25.**[1]  The Motion is **granted to the extent** that the Court requires Plaintiffs to submit the documents for an in camera review.

**Request No. 26.**  The Motion is **granted to the extent** that Plaintiffs shall provide (or confirm that the PA already has) all documents which Plaintiffs introduced, or referred to, during the damages hearing, or referred to in any filing in connection with that hearing.

**Request Nos. 29, 30, 31, and 32.**  The PA argues that psychiatric, mental health, medical, daycare, preschool, and school records of Dvir Ungar and Yishai Ungar are needed allegedly because "a substantial portion of the Court's damages award was expressly based upon possible future mental illnesses that the minor Plaintiffs[] might sustain."  Motion at 31 (citing Estate of Ungar v. Palestinian Auth., 325 F.Supp.2d 15, 67 (D.R.I. 2004)(awarding the minors $30,000,000, each, after trebling, for "loss of companionship, society, and guidance and mental anguish").  In making this assertion, the PA overstates matters considerably.

---

[1] At the hearing, counsel for the PA indicated that the only documents being sought with respect to Request No. 25 were those pertaining to Alan Friedman and Adrian Ziderman.

The Court did not state in that opinion (or in its earlier opinion which contains the damages findings to which Defendants presumably refer, Estate of Ungar v. Palestinian Auth., 304 F.Supp.2d 232, 270-74 (D.R.I. 2004)), that "a substantial portion" of the damages award was attributable to "possible future mental illnesses." A review of the damages opinion reveals that in determining the amount to be awarded for loss of companionship, society and guidance, and mental anguish, the Court first found that "the duration of the injury is very long," Estate of Ungar v. Palestinian Auth., 304 F.3d at 272, and observed that Yishai and Dvir would have likely enjoyed the love and companionship of their father for fifty years if he had not been murdered, see id. The Court also found that they had been deprived of the special educational skills and talents which their father possessed. Id. It was only after making these explicit findings that the Court discussed Dr. Brenman's testimony. See id. at 273.

At the conclusion of that discussion, the Court summarized his opinion by stating that "although the children were doing well at present, they were at increased risk for developing problems in the future as a result of the loss of both their parents." Id. The Court then explained its rationale for making a "substantial" award:

> **Given that Dvir and Yishai have been deprived of the companionship of their father for approximately fifty**

> **years, including virtually all of their childhood, and that they will eventually know that their father died a bloody and painful death at the hands of terrorists, a substantial award is warranted.** The court also takes into consideration the awards for loss of consortium and mental anguish which have been made in other cases involving the death or abduction of a parent in a terrorist attack[.]

Id.

Thus, contrary to the PA's contention, the Court did not indicate that a substantial portion of the Court's damages award was attributable to possible future mental illnesses that the minor Plaintiffs might sustain. Rather, the Court's use of the word "substantial" was directly connected to the fifty year duration of the loss suffered by Dvir and Yishai, the fact that it encompassed "virtually all of their childhood ...," id., and that they would "eventually know that their father died a bloody and painful death at the hands of terrorists ...," id.

While it is fair to conclude that the Court accepted Dr. Brenman's testimony that the boys were at increased risk of developing mental health problems in the future, to say that this risk was the reason for "a substantial portion of the Court's damages award," Motion at 31, as the PA claims, id., goes well beyond what the opinion states. The Court is unpersuaded that the value of the records to the PA is sufficient to warrant imposing on Plaintiffs the significant burden of trying to obtain records from Israel when there are only a few weeks remaining before the Rule 60(b) hearing. Cf. Order Denying Plaintiffs'

Motion to Strike and to Compel (Dkt. #640) at 4 (denying Plaintiffs' motion to compel where granting it would "impos[e] an onerous burden on Defendants when both sides are trying to prepare for the January 17, 2011, hearing").

Even if the records indicated that since the July 2002 damages hearing Dvir and Yishai have continued to do "well," 304 F.Supp.2d at 273, such fact would not necessarily be inconsistent with Dr. Brenman's testimony that they "were at increased risk for developing problems in the future ...," id.  While Defendants' expert might be able to opine that because the boys have not manifested any problems during the last eight years their risk of developing problems in the future is reduced, this would not, in the Court's view, impact the calculation of damages for loss of companionship, society and guidance, and mental anguish to a degree which justifies granting the Motion with respect to Request Nos. 29, 30, 31, and 32 and imposing a significant discovery burden on Plaintiffs during the last few weeks before the Rule 60(b) hearing.[2]  Accordingly, the Motion is **DENIED** as to **Request Nos. 29, 30, 31, and 32**.

As to documents sought by Requests Nos. 33, 34, and 35 it would seem to the Court that these documents should already in

---

[2] The Court doubts that any expert would be able to testify that if Dvir and Yishai have been problem free to date, there is no longer any risk that they will develop mental health problems in the future. They are now, respectively, sixteen and fifteen years old and are still in adolescence.

Plaintiffs' possession and their production would not require searching for documents abroad.  Therefore, the Motion is **GRANTED** as to **Request Nos. 33, 34, and 35.**

In summary, the Motion is granted to the extent stated above.  In all other respects it is denied.  Plaintiffs shall comply with this Order within seven days.

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
December 6, 2010