# United States Court of Appeals
## For the First Circuit

No. 10-2145

EFRAT UNGAR ET AL.,

Plaintiffs, Appellees,

v.

YASSER ARAFAT ET AL.,

Defendants, Appellees,

_____

THE PALESTINIAN PENSION FUND FOR THE STATE ADMINISTRATIVE
EMPLOYEES IN THE GAZA STRIP,

Movant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Lipez, Circuit Judge,
Souter,[*] Associate Justice,
and Selya, Circuit Judge.

Deanne E. Maynard, with whom Brian R. Matsui, Charles L. Kerr, Mark David McPherson, Morrison & Foerster LLP, Joseph V. Cavanagh, Jr., Joseph V. Cavanagh, III, and Blish & Cavanagh LLP were on brief, for appellant.
Robert J. Tolchin, with whom Jaroslawicz & Jaros LLC, David J.

---

[*]Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

Strachman, and McIntyre, Tate & Lynch, LLP were on brief, for plaintiffs-appellees.

February 9, 2011

**SELYA**, <u>Circuit Judge</u>.  This appeal, brought by a putative intervenor, has its genesis in an injunction issued in a bitter dispute between victims of terrorist violence and governmental entities in the Palestinian territories.  The putative intervenor claims that the injunction, which does not refer to it by name, has frozen its assets.  The district court rejected this claim and denied the motion to intervene.  After careful consideration, we conclude that the putative intervenor has failed to demonstrate that it has a sufficient interest in the underlying action to justify intervention as of right.  Accordingly, we affirm.

**I. BACKGROUND**

The underlying action has narrowed to a dispute between the estate of Yaron Ungar, on the one hand, and the Palestinian Authority (PA) and the Palestine Liberation Organization (PLO), on the other hand.  The litigation has been extensively chronicled.  <u>See</u>, <u>e.g.</u>, <u>Ungar</u> v. <u>PLO</u> (<u>Ungar II</u>), 599 F.3d 79 (1st Cir. 2010); <u>Ungar</u> v. <u>PLO</u> (<u>Ungar I</u>), 402 F.3d 274 (1st Cir. 2005).  We rehearse here only those facts needed to bring this appeal into perspective.  Readers who hunger for more detail should consult our earlier opinions.

While in Israel, Yaron Ungar, a citizen of the United States, and his wife Efrat were ambushed and murdered by terrorists affiliated with the Hamas Islamic Resistance movement.  In March of 2000, the personal representative of Ungar's estate (the Estate)

-3-

brought suit in the United States District Court for the District of Rhode Island against the PA and the PLO under the Anti-Terrorism Act (ATA), 18 U.S.C. §§ 2331-2338.[1] The ATA permits, inter alia, recovery for United States nationals injured by acts of international terrorism. Id. § 2333(a).

We fast-forward to July 12, 2004, when the district court entered a default judgment for more than $116,000,000 against the PA and the PLO. We affirmed that order. Ungar I, 402 F.3d at 293-94. Since then, the defendants have engaged in a series of determined efforts to set aside the judgment. Although they have not succeeded thus far, their efforts are still ongoing. See, e.g., Ungar II, 599 F.3d at 87.

To aid in the collection of the judgment, the district court, on the Estate's motion, granted an injunction. The injunction, issued on May 5, 2005, restrained the PA, the PLO, and "their officers, agents, servants, employees, . . . fiduciaries, and any natural or legal persons in privity with them and/or acting on their behalf" from selling, transferring, or otherwise alienating any of their property located within the United States. As the defendants had no known assets in Rhode Island, the injunction was intended to allow the Estate to domesticate the judgment in other states — states in which assets could be found.

---

[1] There were originally other plaintiffs and defendants, but their identities are of no consequence here.

By its terms, the injunction was to remain in place until further order of the court. It contained no bond requirement.

With the injunction in hand, the Estate proceeded to notify a galaxy of financial institutions of the injunction's existence. Pertinently, this roster included Swiss American Securities, Inc. (SASI), a New York-based affiliate of Credit Suisse. SASI held the assets of the Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip (the Fund). Despite the Fund's protestation that it was not affiliated in any way with the PA or the PLO, SASI froze the Fund's assets.

Litigation in a New York state court ensued. On February 14, 2006, the Estate filed both a turnover action and a declaratory judgment action against SASI and the Fund. The state court judge held a hearing and concluded that the Estate had not produced sufficient evidence to warrant a turnover order. Accordingly, she dismissed the turnover action without prejudice.

The declaratory judgment action soldiered on. After a period of pretrial discovery, the Estate and the Fund cross-moved for summary judgment. On June 5, 2008, the state court judge concluded that genuine issues of material fact precluded her from granting either motion.

As the New York case proceeded, the parties began to wrangle over the availability of a jury trial. When the court denied the Fund's motion to strike the Estate's jury trial demand,

the Fund moved to stay the action pending resolution of (i) its interlocutory appeal of that ruling, and (ii) the defendants' motion in the Rhode Island federal case to vacate the underlying default judgment. The stay was granted and the declaratory judgment action remains pending.

On August 18, 2010, the Fund opened a second front in its campaign against the Estate: it moved in the federal district court for leave to intervene as of right in the original action. Its stated purpose in intervening was to vacate or modify the injunction.[2] In the alternative, it sought to have the Estate post a bond to ensure recompense for any losses resulting from the freezing of its assets. The Estate opposed the motion.

The district court heard arguments on September 21, 2010. Ruling ore tenus, the court denied the motion. It noted that the injunction applied only to the PA, the PLO, and those in privity with them. The factual question of whether the Fund fell within the scope of the injunction was being litigated in New York and permitting intervention to thrash out that question would, therefore, result in wasteful duplication of effort.

This timely appeal followed.

---

[2] In its brief, the Fund characterizes this injunction as a preliminary one. But when the district court observed at the hearing on the motion to intervene that the injunction had been made permanent, the Fund's counsel agreed. We regard that concession as binding. See, e.g., CMM Cable Rep., Inc. v. Ocean Coast Props., Inc., 48 F.3d 618, 622 (1st Cir. 1995).

-6-

**II. ANALYSIS**

An order denying a motion to intervene as of right is immediately appealable as a collateral order. R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009); Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197, 204 (1st Cir. 1998). Consequently, we have jurisdiction to consider this appeal.

**A. The Legal Landscape**.

Under the Civil Rules, intervention comes in two flavors: intervention as of right, Fed. R. Civ. P. 24(a), and permissive intervention, Fed. R. Civ. P. 24(b). The Fund has framed its motion as a motion to intervene as of right. We cabin our discussion accordingly.[3] Negrón-Almeda v. Santiago, 528 F.3d 15, 21 (1st Cir. 2008).

Specifically, the Fund invokes Rule 24(a)(2). In the absence of a triggering federal statute — and none is involved here — Rule 24(a)(2) provides an authoritative recipe that lists the essential ingredients for intervention as of right:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so

---

[3] Inasmuch as the Fund did not seek permissive intervention below and has not advanced such a claim in this court, any claim for permissive intervention is waived. See Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) (holding that theories not raised squarely in the trial court cannot be raised for the first time on appeal); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that arguments not briefed on appeal are deemed waived).

> situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

It follows that a would-be intervenor must demonstrate that: (i) its motion is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of the ongoing action; (iii) the disposition of the action threatens to impair or impede its ability to protect this interest; and (iv) no existing party adequately represents its interest. See R & G Mortg., 584 F.3d at 7; Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989). Each of these requirements must be fulfilled; failure to satisfy any one of them defeats intervention as of right. B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 545 (1st Cir. 2006); Patch, 136 F.3d at 204.

Determining whether the necessary showings have been made requires a series of judgment calls — a balancing of factors that arise in highly idiosyncratic factual settings. See Patch, 136 F.3d at 204; Int'l Paper Co. v. Inhab. of Town of Jay, 887 F.2d 338, 344 (1st Cir. 1989). Moreover, the "inherent imprecision of Rule 24(a)(2)'s individual elements" dictates that the rule should be applied with an eye toward the "commonsense view of the overall litigation." Patch, 136 F.3d at 204 (citing United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 983 (2d Cir. 1984) (Friendly, J.)).

-8-

The grant or denial of a motion to intervene engenders review for abuse of discretion. R & G Mortg., 584 F.3d at 7; Int'l Paper, 887 F.2d at 344. In the context of intervention as of right, "the district court's discretion is somewhat more circumscribed than in the context of intervention generally." Negrón-Almeda, 528 F.3d at 22; B. Fernández, 440 F.3d at 544; see Int'l Paper, 887 F.2d at 344. If the district court either fails to follow the general recipe provided in Rule 24(a)(2) or reaches a plainly incorrect decision, we will intrude. Patch, 136 F.3d at 204; Int'l Paper, 887 F.2d at 344.

### B. **The Merits**.

With this landscape in place, we turn to the Fund's assignments of error.

The Fund first claims that the district court abused its discretion by failing to cogitate the requirements of Rule 24(a)(2). This claim lacks force.

The district court denied the motion to intervene in a bench decision. It did not subdivide its analysis into discrete silos. Nevertheless, its findings and reasoning can easily be inferred from the record. Thus, we can gauge whether the court applied the Rule 24(a)(2) factors appropriately. No more is exigible.[4] See Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 64

---

[4] In any event, an appellate court is not wedded to the trial court's reasoning but, rather, may affirm a judgment on any independently sufficient ground made manifest in the record. Banco

(1st Cir. 2008); Cotter v. Mass. Ass'n of Minority Law Enf. Officers, 219 F.3d 31, 34 (1st Cir. 2000).

The Fund's most loudly bruited claim is that it is entitled to intervene as of right because it satisfied all of the factors elaborated in Rule 24(a)(2). This claim comprises more cry than wool. We need not venture beyond the second requisite of Rule 24(a)(2) — that the movant have an "interest relating to the property or transaction that is the subject of the action" — in order to debunk this claim.

It is black-letter law that an aspiring intervenor's claim "must bear a sufficiently close relationship to the dispute between the original litigants." Travelers Indem., 884 F.2d at 638 (internal quotation marks omitted). Although this requirement is not amenable to a surgically precise definition, we know that the interest must be direct and "significantly protectable." Donaldson v. United States, 400 U.S. 517, 531 (1971); see Patch, 136 F.3d at 205; 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1908.1, at 309 (3d ed. 2007). An interest that is too contingent or speculative — let alone an interest that is wholly nonexistent — cannot furnish a basis for intervention as of right. See Travelers Indem., 884 F.2d at 638;

Popular de P.R. v. Greenblatt, 964 F.2d 1227, 1230 (1st Cir. 1992).

-10-

Moosehead Sanitary Dist. v. S.G. Phillips Corp., 610 F.2d 49, 53 (1st Cir. 1979).

The Fund asserts that it possesses the requisite interest because the injunction, as a practical matter, is restraining its assets. In the same breath, however, it assures us that the assets in question do not belong to either the PA or the PLO (and, thus, do not come within the sweep of the injunction). To the contrary, "those assets belong to [the Fund] alone." Appellant's Br. at 26. This assurance defenestrates the claimed interest in the ongoing action.

At the expense of carting coal to Newcastle, let us explain this conclusion. The injunction, as written, applies only to assets of the PA, the PLO, and their privies. The Fund insists that it is not in any way associated with either the PA or the PLO, nor is it in privity with them. It proclaims instead that the assets frozen by SASI belong only to it and that, therefore, the injunction does not reach those assets. Nor does the Fund claim any legally cognizable interest in the civil case arising from the Ungars' murders.

To satisfy the "interest" requirement, the Fund would have to assert, at a minimum, that it has something at stake in the underlying action or that it possesses some tie to either the defendants or their assets. This is the polar opposite of what the Fund claims. It follows inexorably that the Fund cannot meet the

-11-

interest requirement; it simply has no interest that is at risk in the ongoing litigation.

The short of it is that the Fund wants to challenge the injunction while at the same time insisting that the injunction does not apply to it. The Fund cannot have it both ways. Cf. United States v. Tierney, 760 F.2d 382, 388 (1st Cir. 1985) ("Having one's cake and eating it, too, is not in fashion in this circuit.").

The district court perspicaciously recognized this reality. It noted that the language of the injunction was clear and "only applie[d] to the PA and the PLO." It then noted the Fund's insistence that it was a separate, unrelated entity. Finally, it concluded that the Fund's asserted interest "doesn't have anything to do" with the underlying dispute. This was, we think, an implicit recognition that the Fund had failed to satisfy the "interest" prong of Rule 24(a)(2).[5] In so holding, the court acted comfortably within the confines of its discretion.

There are two loose ends. We pause to tie them tightly.

---

[5] Even if the Fund could show a sufficient interest in the ongoing litigation (which it cannot do), it would still have to satisfy the other three requirements of Rule 24(a)(2). We doubt that it could. To cite but one example, the Fund would have to show that its motion to intervene was timely. See R & G Mortg., 584 F.3d at 10. This requirement would likely prove to be an insurmountable hurdle, given that the Fund knew of the injunction and its potentially deleterious effects more than five years before it sought to intervene in the underlying action.

First, the Fund's claim that the injunction prevents it from managing the assets held at SASI misses the mark. It is not the injunction that is the problem; it is the Fund's inability to date to prove that the assets are unaffected by the injunction. That, of course, is the subject of the New York declaratory judgment proceeding, where the issue may be resolved.

Second, the Fund's claim that the Estate should have been required to post a bond under Rule 65(c) is baseless.[6] For one thing, the injunction is no longer preliminary, see supra note 2, so Rule 65(c) does not apply to it at all. Ty, Inc. v. Publ'ns Int'l Ltd., 292 F.3d 512, 516 (7th Cir. 2002); accord Forest Park II v. Hadley, 336 F.3d 724, 734 (8th Cir. 2003). For another thing, "[t]he purpose of the injunction bond rule is to provide protection to a defendant who is under injunction . . . but who ultimately prevails on the merits." Commerce Tankers Corp. v. Nat'l Mar. Union of Am., 553 F.2d 793, 800 (2d Cir. 1977); see 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2954, at 305-06 (2d ed. 1995). The Fund is not a defendant and insists that it is not subject to the

---

[6] Rule 65(c) states, in pertinent part: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

injunction.  Thus, the Fund lacks standing to complain about the absence of a bond.

### III.  CONCLUSION

The Fund is not without an adequate remedy.  It has been litigating in the New York state courts to vindicate its position that its assets are separate and apart from those of the PA and the PLO.  That forum is competent to settle the question of who owns the Fund's assets.

We need go no further.  There is no principled way that we can allow the Fund to intervene as of right in a case in which it has no legally cognizable interest.

**Affirmed**.

-14-